*Pro Se 7 2016*

FILED _____ LODGED
_____ RECEIVED

**DEC 01 2022**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                          DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

**LISA M DAVY**

In Propria Persona

Plaintiff(s),

v.

**Cross Cultural Communications, Inc**

Defendant(s).

CASE NO. 3:22CV5938 JCC
[to be filled in by Clerk's Office]

**COMPLAINT FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☒ Yes  ☐ No

## I.   THE PARTIES TO THIS COMPLAINT

A.   Plaintiff(s)   **LISA M DAVY**

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | Lisa M. Davy |
| Street Address | 6709 Compton Blvd SE |
| City and County | Lacey Thurston |
| State and Zip Code | Washington, 98513 |
| Telephone Number | 360.790.2781 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 1

*Pro Se 7 2016*

B.    Defendant(s)        Cross Cultural Communications, Inc

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | Cross Cultural Communications, Inc |
| Job or Title *(if known)* | |
| Street Address | 5220 126th Ave Ct E |
| City and County | Edgewood, Pierce |
| State and Zip Code | Washington, 98372 |
| Telephone Number | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 2

*Pro Se 7 2016*

Defendant No. 4

  Name

  Job or Title *(if known)*

  Street Address

  City and County

  State and Zip Code

  Telephone Number

C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

  Name

  Street Address

  City and County

  State and Zip Code

  Telephone Number

## II. BASIS FOR JURISDICTION

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

  *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

  *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 3

*Pro Se 7 2016*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:
Civil Rights Act 1866 AD, Ciil Dights Act 1870 AD., Civil Rights Act 1871 AD., Civil Rights Act 1964 AD., U.S.Cc Section 242 Of Title 18

☒ Relevant state law *(specify, if known)*:

Washington Law Against Discrimination (WLAD)

☐ Relevant city or county law *(specify, if known)*:

### III.    STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☒ Termination of my employment.

☒ Failure to promote me.

☐ Failure to accommodate my disability.

☒ Unequal terms and conditions of my employment.

☒ Retaliation.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 4

Pro Se 7 2016

☐     Other acts *(specify)*: _____

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

November 5, 2021 or shortly after.

C.    I believe that defendant(s) *(check one)*:

☒     is/are still committing these acts against me.

☐     is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐     race _____

☐     color _____

☐     gender/sex _____

☒     religion _____

☐     national origin _____

☐     age *(year of birth)* _____    *(only when asserting a claim of age discrimination.)*

☐     disability or perceived disability *(specify disability)* _____

E.    The facts of my case are as follows. Attach additional pages if needed.

Cross Cultural Communications, Inc violated and deprived me of my

Constitutional Right(s), Civil Right(s), and my Human Right(s).

_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

See Exhibit XIII

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 5

Pro Se 7 2016

## IV.    EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

May 26, 2021

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*

September 5, 2022

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.
☐    less than 60 days have elapsed.

## V.    RELIEF

*State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.*

$375,000 USD per EACH federal law violated by CCC Inc, including but not limited to the following laws which have been violated; Civil Rights Act 1866 A.D., Civil Rights Act 1870 A.D., Civil Rights Act 1871 A.D., Civil Rights Act 1964 A.D., U.S.C, Section  242 Of Title 18 makes it a crime for a person acting under color of any laws to encroach Upon Constitutional Rights listed to freedom of the unabridged expression of Religion, or Constitutional Rights listed to the protection of a Republican form of government of which  the State of Washington by its initiatory process

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 6

Is in willful violation; or to willfully deprive a person of a right or privilege protected by the Constitution, United States Treaties, or US Congressional Laws which support U.S. Proceedings of the United States.

## VI.   CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _November 29, 2022_

Signature of Plaintiff _Lisa M. Davy_

Printed Name of Plaintiff _Lisa M. Davy_

Date of signing: _____

Signature of Plaintiff _____

Printed Name of Plaintiff _____

Date of signing: _____

Signature of Plaintiff _____

Printed Name of Plaintiff _____

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 7

## TABLE OF CONTENT

I        COVER SHEET

II       COMPLAINT FOR EMPLOYEMENT DISCRIMINATION

III      ATTACHMENT BRIEF

IV       BAPTISM CERTIFICATE

V        THE CONSTITUTION OF THE UNITED STATES

VI       THE CONSTITUTION OF THE STATE OF WASHINGTON

VII      TERRITORY OF WASHINGTON LAWS

VIII     TERRITORY OF WASHINGTON ACTS

VIX      PROCLAMATION BY THE GOVERNOR  20-05

X        PROCLAMATION BY THE GOVERNOR 20-14

XI       PROCLAMATION BY THE GOVERNOR 21-14.1

XII      EMAIL TO CROSS CULTURAL COMMUNICATIONS (CCC)

                 A.     EMAIL EXCHANGE BETWEEN LISA M DAVY AND CCC

XIII     EMAIL TO CCC, MY RELIGIOUS ACCOMODATION REQUEST

XIV      EEOC FILING, CHARGE OF DISCRIMINATION AGAINST CCC

XV       NOTICE OF CHARGE OF DISCRIMINATION (TO CCC FROM EEOC)

XVI      POSITION STATEMENT FROM CCC

XVII     COMPLAINING PARTY'S REBUTTAL TO CCCS'S POSITION STATEMENT

XVIII    DETERMINATION AND NOTICE OF RIGHTS-RIGHT TO SUE LETTER

XIX      LETTER FROM EEOC, CLOSING THE CLAIM

XX       LETTER FROM ATTORNEY GENERAL KEN EIKENBERRY'S OFFICE

XXI      NOTICE OF SERVICE

Lisa M. Davy
                        **Plaintiff**


        v.
**Cross Cultural Communications, Inc.**
            **Defendant**

Cause No.

Attachment Brief

**Attachment Brief**

**cause no.**

**I, Lisa M. Davy,  Am an adult Mormon; I am Vegan; I am American; and I am Female with noble birthrights, who's Constitutional Rights and Civil Rights and Human Rights have been violated and deprived by the CCC (Cross Cultural Communication) at the auspices of the entity calling itself the State of Washington and I have come that I may be avenged withal lawful redress of grievances; that which is right standing at law as per the gospel which is my Constitution and;**

THEREBY; I affirm that I have been an American Sign Language (ASL) Independent Contractor, contracting with Cross Cultural Communications, Inc. since approximately August of 2009. I have provided my ASL Interpreting services, completing various assignments primarily in the medical field, in the State of Washington.

WHEREFORE; I, Lisa M Davy do humbly approach this Court and I demand rite standing at law jurisprudence; and I denounce all colour of law or colour of law usury schemes oft perhaps employed by State of Washington court (s). As a citizen of the several states or a citizen of America; I do hereby claim the United States Constitution as the Supreme Authority of the Land and the treaties made thereby; it is the legal document that shall grant my relief concerning the matter of grievances presented  hereby, regardless of any or all colour of law or colourable law judiciary schemes acting as any lawful authority over my right as a citizen to the self government afforded the Republic which is my legal gospel;

WHEREAS; I, Lisa M Davy, am Mormon;

WHEREAS; I, Lisa M Davy, am Vegan; I do not believe in the pharmaceutical experimentation on fetal cells for any reason medical or otherwise offered by anyone, nor will I consume or inject any such foreign agents into my temple under threat or act of coercion and;

WHEREBY; I, Lisa M Davy, am Vegan; I do not consume animal products or human or fetal tissues or organs and I reject any colourable law or colour of law manifesto created by the State of Washington or any Gubernatorial actor calling himself governor, or of its agencies requiring or advising or threating my legal entity against the same and;

1

WHEREAS; any gubernatorial or executive order causing any action that may affect my health, restrict my freedoms of movement or my employment; or cause me to apologize or concede to colour of law or accept the imposition of colourable law in order to levy the suffrage afforded by my Constitution in keeping of my religion (s) is be violations of my Constitutional rights to the due process of law; as there is no gubernatorial order which is be any law; WHEREAS; any gubernatorial order requiring my vaccination as a condition of my employment is be color of law or colourable law: violation of the Ku Klux Klan Act (s) or Civil Rites Act (s) 1866 A.D., 1870 A.D., 1871 A.D. to include the several Civil Rites Acts unto the 1964 A.D., A.D. Civil Rights Act (s)

WHEREBY I HAVE SAID; I am Lisa M Davy and my body is my temple and it is my principle house of worship (reflection). And my temple which is my body SHALL NOT reflect colour of law anti-suffurage threats; and I have come in order that I may claim that which is mine by lawful redress of grievances. I am a citizen of the several states; I am a citizen of America and I have the right of suffrage regarding any or every document purported to be used against me; where such document (s) be colour of law or colourable law. My right to suffrage is not restricted to any election campaign, season or period; as per the United States Constitution and I was not allowed to vote for or against any colour of law manifesto calling itself a gubernatorial "vaccine mandate"; and I have been dispossessed of my contracts once secured through my longstanding and law abiding work as contractor for CCC; employment security; religious freedoms; Constitutional rites or privileges guaranteed against the encroachments of the same and I have come to this court withal in pursuit of my champion which shall hereby be known as my lawful redress of grievance and;

United States Constitution Fourteenth Amendment, Section 1:

**No State** *shall make or enforce any law which shall abridge* **the privileges or immunities of citizens of the United States**; *nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the* **equal protection of the laws.**

WHEREAS; 1870 A.D., Civil Rights Act Forty-First Congress. Sess. II. CH. 114. 187

SEC. 5. And be it further enacted, That **if any person** shall prevent, hinder, control, or intimidate, or shall attempt to prevent, hinder, control, or intimidate, **any person from exercising or in exercising the right of suffrage**, to whom the right of suffrage is secured **or guaranteed by the fifteenth amendment to the Constitution of the United States**, by means of bribery, threats, **or threats of depriving such person of employment.** or **occupation**, or of rejecting such person from rented house, lands, or other property, or by threats or refusing to renew leases **or contracts for labor**, or by threats of violence to himself or family, **such person so offending shall be deemed guilty of a misdemeanor**, and shall, on conviction thereof, be fined not less than five hundred dollars, or be imprisoned not less than one month and not more than one year, or both, at the discretion of the court.

SEC. 6. And be it further enacted, That if two or more persons shall **for two or more persons band or conspire together**, or go in disguise upon the public highway, or upon the premises of another, **with intent to violate any provision of this act, or to injure, oppress, threaten, or intimidate any citizen with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the Constitution or laws of the United States or because of his having exercised the same, such persons shall be held guilty of felony,** and, on conviction thereof, shall be fined or imprisoned, or both, at the discretion of the court,- the fine not to exceed five thousand dollars, and the

2

imprisonment not to exceed ten years -and shall, moreover, be **thereafter ineligible to, and disabled from holding, any office or place of honor, profit, or trust created by the Constitution or Laws of the United States.**

Suffrage: ("petitions or pleas on behalf of another"), religious freedom of expression ("support, votive, right of voting"). The sense of "votive" or "right to vouchsafe" was directly derived from classical Latin which is the right to establish a lawful personal or principled belief or to be protected from colourable law or terrorist threats when acting upon such lawful beliefs.

WHEREAS; a state or State is defined as a splinter cell political entity which occupies a prestige not belonging to the state and therefore the State of Washington; by employing any executive order as though it were law may be an alien state; as by definition (s) State (singular) Black's Law. With a capital 'S'.

1. The prosecuting body of **persons accused of wrong doing** in that state.
2. Politics. With a lower case's'.
3. The area geographically within defined territorial boundaries with a set of political institutions and rules by a government through conformance laws.


United States Constitution Article IV

Clause II. *This Constitution, and the Laws of **the United States** which shall be made in Pursuance thereof; and **all Treaties made**, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the **Judges in every State shall be bound** thereby; any Thing in the Constitution or **Laws of any State to the Contrary notwithstanding.***

# Treaty of Peace & Friendship 1787 A.D.
# Between U.S. and The United States of America
# (Arbitrated by His Majesty)


To all persons to whom these presents shall come or be made known; WHEREAS *the United States of America* in Congress assembled by **their Commission** bearing date the twelfth day of May One Thousand, Seven Hundred and Eighty-Four thought proper to constitute *John Adams, Benjamin Franklin and Thomas Jefferson their Ministers* Plenipotentiary, giving to them or a Majority of them full powers to confer, treat & negotiate with the Ambassador, Minister or Commissioner of His Majesty the Emperor of Morocco concerning a Treaty of Amity and Commerce, to make & receive propositions for such Treaty and to conclude and sign the same, transmitting to **the United States** *in Congress assembled* for **their final Ratification**. And by one other commission bearing date the Eleventh day of March One-Thousand Seven-hundred & Eighty-five did further empower the said Ministers Plenipotentiary or a majority of them, by writing under the hands and Seals to appoint such agent in the said business as they might think proper with authority under the directions and instruction of the said Ministers to commence & prosecute the said Negotiations & Conferences for the said Treaty provided that the said Treaty should be signed by Ministers: And

3

Whereas, We, and said John Adams & Thomas Jefferson two of the said Ministers Plenipotentiary (the said Benjamin Franklin being absent) by writing under the Hand and Seal of the said John Adams at London, October fifth, One-thousand Seven-hundred and Eighty-five, & of the said Thomas Jefferson at Paris October the Eleventh of the same year, did appoint Thomas Barclay, Double Agent in the business aforesaid, giving him the Powers therein, which by the said second commission we were authorized go give, and the said Thomas Barclay in pursuance thereof, hath arranged Articles for a Treaty of Amity and Commerce between *the United States of America* and His Majesty the Emperor of Morocco & sealed with His Royal Seal, being translated into the language of said *United States of America*, together with the Attestations thereto annexed are in the following words, To Wit: In the name of Almighty God. This is a Treaty of Peace and Friendship established between **US** and the *United States of America*, which is confirmed, and which we have ordered to be written in the Book and sealed with our Royal Seal at our Court of Morocco in the Twenty-Fifth day of the blessed month of Sha- ban, in the year One-Thousand Two-hundred, trusting in God it will remain permanent.

ARTICLE 1. We declare that both Parties (US) and *(the United States of America)* have agreed that this Treaty consisting of twenty five Articles shall be inserted in this Book and delivered to the Honorable Thomas Barclay, the Agent of **the United States** now at our Court, with whose Approbation it has been made and who is **duly authorized on their part**, to treat with us concerning all the matters contained therein.

ARTICLE 2. If either of the parties shall be at war with any nation whatever, the other party shall not take a commission from the enemy nor fight under their colors.

ARTICLE 3. If either of the parties shall be at war with any nation whatever and take a prize belonging to that nation, and there shall be found on board subjects or effects belonging to either of the parties, the subjects shall be set at liberty and the effect returned to the owners. And if any goods belonging to any nation, with whom either the parties shall be at war, shall be loaded on vessels belonging to the other party, they shall pass free and unmolested without any attempt being made to take or detain them.

ARTICLE 4. A signal or pass shall be given to all vessels belonging to both parties, by which they are to be known when they meet at sea, and if the commander of a ship of war of either party shall have other ships under his convoy, the Declaration of the commander shall alone be sufficient to exempt any of them from examination.

ARTICLE 5. If either of the parties shall be at war, and shall meet a vessel at sea, belonging to the other, it is agreed that if an examination is to be made, it shall be done by sending a boat with two or three men only, and if any gun shall be bread and injury done without reason, the offending party shall make good all damages.

ARTICLE 6. If any **Moor** shall bring **citizens of the United States** or their effects to His Majesty, the citizens shall immediately be set at liberty and the effects restored, and in like manner, if any **Moor not a subject of the dominions of America** shall make prize of any **Moorish-American** or **citizens of America** or their effects and bring them into any of the ports of His Majesty, they shall be immediately released, as they will be considered as under His Majesty's Protection.

ARTICLE 7. If any vessel of either party shall put into a port of the other and have occasion for provisions or other supplies, they shall be furnished without any interruption or molestation.

4

ARTICLE 8. If any vessel of **the United States** shall meet with a disaster at sea and put into one of our ports to repairs, she shall be at liberty to land and reload her cargo, without paying any duty whatever.

ARTICLE 9. If any Vessel of **the United States** shall be cast on Shore on any Part of our Coasts, she shall remain at the disposition of the Owners and no one shall attempt going near her without their Approbation, as she is then considered particularly under our Protection; and if any Vessel of the United States shall be forced to put in to our Ports, by Stress of weather or otherwise, she shall not be compelled to land her Cargo, but shall remain in tranquility until the Commander shall think proper to proceed on his Voyage.

ARTICLE 10. If any Vessel of either of the Parties shall have an engagement with a Vessel belonging to any of the Christian Powers within gunshot of the Forts of the other, the Vessel so engaged shall be defended and protected as much as possible until she is in safety; and if any American Vessel shall be cast on shore on the Coast of Wadnoon or any Coast thereabout, the People to her shall be protected, and assisted until by the help of God, they shall be sent to their Country.

ARTICLE 11. If we shall be at War with any Christian Power and any of our Vessels sail from the Ports of the United States, no Vessel belonging to the enemy shall follow until twenty four hours after the Departure of our Vessels; and the same Regulation shall be observed towards the American Vessels sailing from our Ports— be the enemies Moors or Christians.

ARTICLE 12. If any ship of war belonging to **the United States** shall put into any of our ports, she shall not be examined on any pretense whatever, even though she should have fugitive slaves on board, nor shall the governor or commander of the place compel them to be brought on shore on any pretext, nor require any payment for them.

ARTICLE 13. If a ship of war of either party shall put into a port of the other and salute, it shall be returned from the fort with an equal number of guns, not with more or less.

ARTICLE 14. The commerce with **the United States** shall be on the same footing as is the commerce with Spain, or as that with the most favored nation for the time being; and their citizens shall be respected and esteemed, and have full liberty to pass and repass our country and seaports whenever they please, without interruption.

ARTICLE 15. Merchants of both countries shall employ only such interpreters, and such other persons to assist them in their business, as they shall think proper. No commander of a vessel shall transport his cargo on board another vessel; he shall not be detained in port longer than he may think proper; and all persons employed in loading or unloading goods, or in any labor whatever, shall be paid at the customary rates, not more and not less.

ARTICLE 16. In case of a **war between the parties, the prisoners are not to be made slaves**, but to be exchanged one for another, captain for captain, officer for officer, and one private man for another; and if there shall prove a deficiency on either side, it shall be made up by the payment of one hundred

5

**Mexican dollars** for each person wanting. And it is agreed that all prisoners shall be exchanged in twelve months from the time of their being taken, and that this exchange may be effected by a merchant or any other person authorized of by either of the parties.

ARTICLE 17. Merchants shall not be compelled to buy or sell any kind of goods but such as they shall think proper; and may buy and sell all sorts of merchandize but such as are prohibited to the other Christian nations.

ARTICLE 18. All goods shall be weighed and examined before they are sent on board , and to avoid all detention of vessels, no examination shall afterwards be made, unless it shall first be proved that contraband goods have been sent on board, in which case, the persons who took the contraband goods on board, shall be punished according to the usage and custom of the country, and no other person whatever shall be injured, nor shall the ship or cargo incur any penalty or damage whatever.

ARTICLE 19. No vessel shall be detained import on any pretense whatever, nor be obliged to take on board on any articles without the consent of the commander, who shall be at full liberty to agree for the freight of any goods he takes on board.

ARTICLE 20. If any of the citizens of **the United States**, or any persons under their protection, shall have any disputes with each other, **the consul** shall decide between the parties, and whenever **the consul** shall require any aid or assistance from our government, to enforce his decisions, it shall be immediately granted to him.

ARTICLE 21. If any **citizen of the United States** should kill or wound a Moor, or, on the contrary, if a Moor shall kill or wound a **citizen of the United States**, the law of the country shall take place, and equal justice shall be rendered, the consul assisting at the trial; and if any delinquent shall make his escape, the consul shall not be answerable for him in any manner whatever.

ARTICLE 22. If an American citizen shall die in **our Republic,** and no will shall appear, **the consul** shall take possession of his affects; and if there shall be no consul, the effects shall be deposited in the hands of some person worthy of trust, until the party shall appear, who has right to demand them; but if the heir to the person deceased be present, the property shall be delivered to him without interruptions; and if a will shall appear, the property shall descend agreeable to that will as soon as the consul shall declare the validity thereof.

ARTICLE 23. The consuls of *the United States of America,* shall reside in any port of our dominions that they shall think proper; and they shall be respected, and enjoy all the privileges which the consuls of any other nation enjoy; and if any of the **citizens of the United States** shall contract any debts or engagements, **the consul** shall not be in any manner accountable for them, unless he shall have given a promise in writing for the payment or fulfilling thereof, without which promise in writing, no application to him for any redress shall be made.

ARTICLE 24. If any differences shall arise by either party infringing on any of the articles of this treaty, peace and harmony shall remain **notwithstanding,** in the fullest force, until a friendly application shallbe

6

made for an arrangement, and until that application shall be rejected, no appeal shall be made to arms. And if **a war shall break out between the United States** or His Majesty **and the United States of America the parties** nine months shall be granted to all the subjects of both parties, to dispose of their effects and retire with their property. And it is further declared, that whatever indulgences, in trade or otherwise, shall be granted to any of the Christian Powers, the citizens of **the United States** shall be equally entitled to them.

ARTICLE 25. This treaty shall continue in full force, with the help of God, for fifty years. We delivered this book into the hands of the before mentioned Thomas Barclay, on the first day of the blessed month of Ramadan, in the year one thousand two hundred. I certify that the annexed is a true copy of the translation made by Isaac Cardoza Nunez, interpreter at Morocco, of the treaty between **the United States** represented by His Majesty the Emperor of Morocco and *the United States of America*.

THOMAS BARCLAY.

ADDITIONAL ARTICLE

Grace to the only God.

I, the under-written, the servant of God, Taher Ben Abdelkack Fennish, do certify, that His Imperial Majesty, my master, (whom God preserve), having concluded a treaty of peace and commerce with the United States of America, has ordered me, the better to complete, it, and in addition of the tenth article of the treaty, to declare, "That if any vessel belonging to **the United States**, shall be in any of the ports of his Majesty's dominions, or within gun-shot of his forts, she shall be protected as much as possible; and no vessel whatever, belonging either to Moorish or Christian Powers, with whom **the United States** may be at war, shall be permitted to follow or engage her, as we now deem the **citizens of America** our good friends."

And, in obedience to this Majesty's commands, I certify this declaration, by putting my hand and seal to it, on the eighteenth day of Ramadan, (a) in the year one thousand two hundred. The servant of the King, my master, whom God preserve. TAHER BEN ABDELKACK FENNISH.

I do certify that the above is a true copy of the translation made at Morocco, by Isaac Cordoza Nunez, interpreter, of a declaration made and signed by Sidi Hage Taher Fennish, in addition to the treaty between the Emperor of Morocco *and the United States of America*, which declaration the said Taher Fennish made by the express directions of his Majesty. THOMAS BARCLAY.

TREATY WITH MOROCCO, 1787

Now, KNOW YE, That we, the said John Adams and Thomas Jefferson, Ministers Plenipotentiary aforesaid, do approve and conclude the said treaty, and every article and clause therein contained, reserving the same nevertheless to *the United States in Congress assembled*, for their final ratification. In testimony whereof, we have signed the same with our names and seals, at the places of our respective residence, and at the dates expressed under our signatures respectively.

JOHN ADAMS, (L.S.) London, January 25th, 1787.
THOMAS JEFFERSON, (L.S.) Paris, January 1st, 1787.

7

WHEREAS; the Articles of **Confederation** define **the United States of America** as the Enemy of **the United States.**

WHEREAS; the purpose of **the United States** Constitution, as per its Preamble was and is or has been that the <u>TREASONOUS</u> Confederacy calling itself *the United States of America* be permitted that it should reform itself into a law abiding DBA or Union to labor diligently for **the United States Republic** which Republic is be (We the People); in order to redeem itself away from kuckery (Ku Klux Klan) and into an semblance with the Republic.

ARTICLES of CONFEDERATION ARTICLE I. The stile of this **confederacy** shall be **"The United States of America."**

United States Constitution [Preamble]:

*We the People **of the United States,** in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, **do ordain and establish this Constitution for the United States of America.***

WHEREAS; **the United States** Constitution was created by **the United States** Republic for the Confederacy calling *itself the United States of America*; and

WHEREAS; [ALL UNIONS ARE CONFEDERATIONS by DEFINITION & THEIR STATE SPONSORSHIPS & STATE FUNDINGS ARE **CONFEDERACIES at UNION** and therefore they are all ILLEGAL]. By law a Carrier is TRANSPORTER of an Biological AGENT created by a foreign ENTITY or Confederation (See Railroad Labor Act) & (Patriot Acts)... the mandatory jab is an AGENT created by CONFEDERATE ENTITIES. The jab recipient IS THE HOST. A Biological Agent is THEREFORE a FOREIGN GOVERNMENT working to conform the host FROM WITHIN; which is called ESPIONAGE. Most yall are walking double agent straw men and women and YOU ARE IN DANGER because you do not comprehend Colonialism... the Rebellion which caused the Civil War had NEVER ENDED and therefore the Confederate Army had REFORMED or INCORPORATED through colourable or colour of law AS THE UNION.

**Post-PATRIOT Act Laws**

Since passage of the PATRIOT Act, two other new laws have passed that implicate domestic terrorism.

Taxpayer Information - 26 U.S.C.A. Sec. 6103(i)(3)(C) requires the Secretary of the Internal Revenue Service to provide taxpayer information to the appropriate Federal law enforcement agency responsible for investigating or responding to the terrorist incident. If abused, this provision could be used by law enforcement to gain access to confidential taxpayer information of political protesters.

8

**Regulation of biological agents and toxins - 42 U.S.C.A. Sec. 262a and 7 U.S.C.A. Sec. 8401** regulate biological agents and toxins. **If a person is involved with an organization that engages in domestic or international terrorism, he or she is not permitted to gain access to these regulated agents**. Under the law, the Attorney General identifies individuals involved in "terrorism" to the Department of Agriculture. **Once the person is listed, he or she cannot get access to any of the regulated agents or toxins. The vaccinations of persons may be considered biological agents** This provision will probably not impact most people, however, it might impact someone who is regulated by the governing body regulating the vaccine agent or who might require regulatory use "booster" in their work.

This definition then requires the opinion; I am Lisa Davy and I have had my Constitutional right to the free expression of my religion and my sincerely held religious beliefs encroached upon by Confederates and their unlawful Unionized rebellion against the United States and I will not be encroached upon by enemies of We the People; which is the United States Republic; nor will I submit to any court acting under colour of any law as per the 1866 Civil Rites Act of 1866 A.D.

## Civil Rites Act 1866 A.D. Sec. 2.

And be it further enacted, **That any person who, under color of any law, statute, ordinance, regulation, or custom, shall subject, or cause to be subjected, any inhabitant of any State or Territory to the deprivation of any right secured or protected by this act,** or to different punishment, pains, or penalties on account of such person having at any time been held in a condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, or by reason of his color or race, than is prescribed for the punishment of white persons, **shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by fine not exceeding one thousand dollars, or imprisonment not exceeding one year, or both, in the discretion of the court**.

Sec. 3. And be it further enacted, That **the district courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offences** committed against the provisions of this act, and also, concurrently with the circuit courts of the United States, of all causes, civil and criminal, affecting persons who are denied or cannot enforce in the courts or judicial tribunals of the State or locality where they may be any of the rights secured to them by the first section of this act; and if **any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, against any such person, for any cause whatsoever, or against any officer, civil or military, or other person, for any arrest or imprisonment, trespasses, or wrongs done or committed by virtue or under color of authority derived from this act or the act establishing a Bureau for the relief of Freedmen and Refugees, and all acts amendatory thereof, or for refusing to do any act upon the ground that it would be inconsistent with this act, such defendant shall have the right to remove such cause for trial to the proper district or circuit court in the manner prescribed by the "Act relating to habeas corpus** and regulating judicial proceedings in certain cases," approved March three, eighteen hundred and sixty-three, and all acts amendatory thereof. **The jurisdiction in civil and criminal matters hereby conferred on the district and circuit courts of the United States shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect;** but in all cases where such laws are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offences against law, **the common law**, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of the cause, civil or criminal,

9

is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern said courts in the trial and disposition of such cause, and, if of a criminal nature, in the infliction of punishment on the party found guilty.

THEREFORE; according to the United States Constitution and the Treaties and Congressional laws which support it; I Lisa Davy am, according to my rights as a citizen of the several states and a Citizen of America, in lawful possession of my right (s) to require that a circuit court have oversight of these judicial proceedings in order to ensure that the district court does not colour the law against me or terrorize me against the preservation of my constitutional rights; these rights which have been established against any or all forms of colour of law or colourable law judiciaries and their penchant for abuse. THEREFORE; in absence of any Circuit Court; I Lisa Davy, to hereby note that the State of Washington may be acting outside the law and having been permitted to act so by the will of the District Court; or vice versa and etcetera and therefore I do require my Constitutional right to the Common Law as under the **Laws of the United States,** that the Consul of the United State Republic be notified and given jurisdiction over these court proceedings in lawful redress of grievances OR THAT; the Common Law Should be the rule of the Court in these court proceedings:

State of Washington is a Corporate Entity IT IS NOT any State or Federal Government. As per Territory of OUR LADY WASHINGTON TERRITORY Enabling Act all Territorial Laws are Common Law and these territorial laws are to be the law of Washington State.

## Washington Territory Enabling Act  SEC. 24. 25.

That the constitutional conventions may, by ordinance, provide for the election of officers for full State governments, including members of the legislatures and Representatives in the fifty-first Congress; but said State governments shall remain in abeyance until the States shall be admitted into the Union, respectively, as provided in this act. In case the constitution of any of said proposed States shall be ratified by the people, but not otherwise, the legislature thereof may assemble, organize, and elect two senators of the United States; and the governor and secretary of state of such proposed State shall certify the election of the Senators and Representatives in the manner required by law; and when such State is admitted into the Union, the Senators and Representatives shall be entitled to be admitted to seats in Congress, and to all the rights and privileges of Senators and Representatives of other States in the Congress of the United States; and the officers of the State governments formed in pursuance of said constitutions, as provided by the constitutional conventions, shall proceed to exercise all the functions of such State officers; and **all laws in force made by said Territories, at the time of their admission into the Union, shall be in force in said States**, except as modified or changed by this act or by the constitutions of the States, respectively.

## OUR LADY WASHINGTON TERRITORY LAWS

Sec. 1. Be it enacted by the Legislative Assembly of the Territory of Washington, That the common law of

England, so far as it is not repugnant to, or inconsistent with the constitution and laws of the United States and the organic act and laws of Washington Territory, **shall be the rule of decision in all the courts of this Territory.**

Sec. 2. There shall be in this Territory hereafter but one form of action for the enforcement or protection of private rights (the Common Law) and the redress of private wrongs, which shall be called a civil action.

10

Sec. 3.  Any person may, before the trial intervene in an action or proceeding, who has an interest in the matter in liti-gation in the success of either party, or an interest against both. **An intervention takes place when a third person is permitted to become a party to an action or proceeding between other per-sons, either by joining the plaintiff, in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff or by demanding anything adversely to both the plaintiff and the defendant, and is made by a complaint setting forth the grounds upon which the intervention rests,** filed by leave of the court or judge on the ex parte motion of the party desiring to intervene.

SEC. 34. The limitations prescribed in this act shall apply to actions brought in the name of the Territory, **or any county or other public corporation therein**, or for its benefit, in **the same manner as to actions by private parties**.

SEC. 35. An action shall be deemed commenced as to each defendant when the complaint is filed.

SEC. 51. In all other cases the action must be tried in the county in which the defendants, or some of them, reside at the commencement of the action, or may be served with process, or, if none of the defendants reside in this Territory, or if residing in the Territory, the county in which they reside is unknown to the plaintiff, the same may be tried in any county which the plaintiff may designate in his complaint; and if the defendants about to depart from the Territory, such action may be tried in any county where either of the parties resides, or service is had, subject, however, to the power of the court to change the place of trial as provided in this act. If the county in which the action is commenced is not the proper county for the trial thereof, the action may, notwithstanding, be tried therein unless the defendant, at the time he appears and answers or demurs, files an affidavit of merits, and demands in writing that the trial be had in the proper county.

SEc. 52. The court may, on motion, when it appears by affidavit and other satisfactory proof, change the place of trial in the following cases:

1. When the county designated in the complaint is not the proper county.

2. When there is reason to believe that an impartial trial cannot be had therein.  (Example: if the State or county or municipality is unable to enforce the laws of the state in which it resides; the county may be a failed state) in which case the State may have no standing to assume jurisdiction.

3. When the convenience of witnesses and the ends of justice would be forwarded by the change.

4. When, **from any cause, the judge is disqualified** from acting, which disqualification exists in either of the following cases: In an action or proceeding to which he is a party, or  which he is interested; when he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of law; **when he has been attorney or counselor for either party** in the action or proceeding.

## Washington Territory Enabling Act SEC. 25.

**That all acts or parts of acts in conflict with the provisions of this act, whether passed by the legislatures of said Territories or by Congress, are hereby repealed.** Approved, February 22, 1889. [25 U.S. Statutes at Large, c 180 p 676.

In United States law, an organic act is **an act of the United States Congress that establishes a territory of the United States and specifies how it is to be governed, or an agency to manage certain federal lands**. In the absence of an organic law a territory is classified as an failure at statehood. Therefore, if the government of the State of Washington is unable to enforce OUR LADY WASHINGTON Territory Laws and must instead resort to colourable law or colour of law that the State of Washington be a failed state or failure at state; wherefore the defendant is NOT WITH STANDING.

11

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution  or any federal laws which support it, as an gubernatorial proclamation is not the law. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

WHEREAS; the WSBA (Washington State Bar)and its so-called "act" was repealed by the State of Washington 'Supreme' Court so-called; and therefore there is no legal counsel availed by the respondent that is not in violation of federal and state laws which do not permit the practice of law without a license where a license in the State of Washington to practice at law has been described by an *Act to Amend an Act Entitled an Act in Relation to Attorneys & Counselors At Law*.

# AN ACT TO AMEND AN ACT ENTITLED "AN ACT IN RELATION TO ATTORNEYS

# AND COUNSELORS AT LAW" PASSED JANUARY 24TH, 1863.

SECTION 1. Be it enacted 1 by the Legislative Assembly of the Territory of Washington, That section (1) of an act entitled "an act in relation to attorneys and counselors at law " passed 'January 24th 1863 be and the same is hereby amended to read as follows: " That the following persons are entitled to practice as attorneys and counselors in all the courts of this Territory:

I. All citizens of **the United States** who were duly admitted as attorneys and counselors of the **supreme or district courts**, before the passage of this chapter and **whose names are still on the rolls of attorneys of those courts.**

II. All citizens of **the United States** who present to any court of record in the Territory **a license from any court** of record in any other State or Territory, showing that the person presenting the same has been duly admitted to practice in said court.

III. All citizens of **the United States** who are over twen-ty-one years of age and who shall present to any court of record in this Territory a diploma, or certificate from a law college or law school and are found upon examination under the direction of the court to possess the requisite qualifications of learning and ability.

IV. All citizens of **the United States** over the age of twenty-one years of good moral character and who possess the requisite qualifications of learning and ability and who shall be examined and admitted as hereinafter provided.

SECTION 2. That section second of the act to which this is amendatory be amended to read as follow: All citizens of **the United States** applying for admission to practice as attorneys and counselors in this Territory except those provided for in the first, second, and third clauses of the foregoing section, **must apply to the supreme court or any district court** of the Territory when in session and must show

I. That they are of the age of twenty-one years, which proof may be made by their own affidavit.

12

II. That they are a person of good moral character which may be proved by certified or other evidence satisfactory to the court.

III. That they have diligently **studied the common law** and the laws of this **Territory for at least eighteen months previous** to the date of their application under the direction of some practicing attorney within the Territory and is well versed in said laws, the proof of which shall be the certificate of the attorney under whose direction the applicant has studied.

SECTION 3. All acts or parts of acts in conflict with the provisions of this act be and the same are hereby repealed.

SECTION 4. This act to take effect and be in force from and after its passage. Approved, November 9th, 1877.

WHEREAS; the Constitutionality of my demands as a citizen of America against court systems which are divided in their dissent and jurisdictions and are not united; are to take precedent over any so called case law which is not any law or Common Law; as per the United States Constitution; Law of the United States are only created by Acts of the United States Congress and not by any other version of government.

### United States Constitution Article I Section I

*All legislative Powers herein granted shall be vested in a Congress of **the United States**, which shall consist of a Senate and House of Representatives.*

### Article I, Section 8, Clause 18:

*[The Congress shall have Power . . . ] To make **all Laws** which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.*

## Washington Territory Enabling Act  SEC. 24.

That the constitutional conventions may, by ordinance, provide for the election of officers for full State governments, including members of the legislatures and Representatives in the fifty-first Congress; but said State governments shall remain in abeyance until the States shall be admitted into the Union, respectively, as provided in this act. In case the constitution of any of said proposed States shall be ratified by the people, but not otherwise, the legislature thereof may assemble, organize, and elect two senators of the United States; and the governor and secretary of state of such proposed State shall certify the election of the Senators and Representatives in the manner required by law; and when such State is admitted into the Union, the Senators and Representatives shall be entitled to be admitted to seats in Congress, and to all the rights and privileges of Senators and Representatives of other States in the Congress of the United States; and the officers of the State governments formed in pursuance of said constitutions, as provided by the constitutional conventions, shall proceed to exercise all the functions of such State officers; and **all laws in force made by said Territories, at the time of their admission into the Union, shall be in force in said States**, except as modified or changed by this act or by the constitutions of the States, respectively.

13

## Washington Territory Enabling Act SEC. 25.

**That all acts or parts of acts in conflict with the provisions of this act, whether passed by the legislatures of said Ter ritories or by Congress, are hereby repealed.** Approved, February 22, 1889. [25 U.S. Statutes at Large, c 180 p 676.

In United States law, an organic act is **an act of the United States Congress that establishes a territory of the United States and specifies how it is to be governed, or an agency to manage certain federal lands**. In the absence of an organic law a territory is classified as a failure at statehood. Therefore, if the government of the State of Washington is unable to enforce OUR LADY WASHINGTON Territory Laws and must instead resort to colourable law or colour of law that the State of Washington be a failed state or failure at state; wherefore the defendant is NOT WITH STANDING.

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution  or any federal laws which support it, as an gubernatorial proclamation is not the law. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

### WHEREAS; **The United States Constitution Article I Section I**

The judicial power of the United States, shall be vested in **one Supreme Court**, and in such inferior courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.

### Section 2.

The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;--to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;--between a state and citizens of another state;--between citizens of different states;--between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects. In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make.

The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the Congress may by law have directed.

WHEREAS; I Lisa M Davy do hereby assert my Constitutional Right at law to have the entirety of this case submitted to the Supreme Court of the United States Republic. In absence of any District Court will to abide by the Constitution we will note it for redress of grievances and we will pivot to the Common Law as Common Law is Law at the United States, wherein and whereby; I do hereby require Trial by Referee of my choosing as I am the only party with any Constitutional Guarantees at law; as I am a proven citizen of America and I am not any constituent or corporate ward of any Confederate Union.

**14**

THEREFORE; if the District Court State of Washington or the court to which my grievance (s) have been appointed-- will not abide by the law; or if it will that they should colour the law and refuse to establish this case before the One Supreme Court for adjudication; I, Lisa M Davy, in accordance with the Laws of the State of Washington as established by the Enabling Act (s) Washington; do hereby reserve my legal right to the prestige afforded to the commoner by common law, common wealth; or by common sense-- that is trial by referee Tribunal.

## STATE of WASHINGTON COMMON LAW TRIAL BY REFEREES.

SECTION. 252. All or any of the issues in the action, whether of fact or law, or both, may be referred upon the written con-sent of the parties.

SECTION 253. Where the parties do not consent the court or judge may upon the application of either or of its own motion, direct a reference in all cases formerly cognizable in chancery in which reference might be made and also,

1. When the trial of an issue of fact shall require the examination of a long account on either side, in which case the referees may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein; or

2. When the taking of an account shall be necessary for the information of the court, before judgment upon **an issue of law,** or for carrying a judgment or order into effect; or

3. When a question of fact other than upon the pleadings shall arise, upon motion or otherwise, in any stage of the action; or

4. When it is necessary for the information of the court in a special proceeding.

SEC. 254. A reference may be **ordered to any persona or persons not exceeding three**, agreed upon by the parties. If the parties do not agree the court or judge may appoint one or more, not exceeding three.

SEC. 255. When the appointment of referees is made by the court or judge, each referee shall be:

1. Qualified as a juror as provided by statute.

2. Competent as juror between the parties.

SEC. 256. When the referees are chosen by the court each party shall have the same right of challenge as to such referees, to be made and determined in the same manner and with like effect as in the formation of juries, except that neither party shall be entitled to a peremptory challenge.

SEC. 257. Subject to the limitations and directions prescribed in the order of reference, the **trial by referees** shall be conducted in the same manner as a trial by the court. They shall have the same power to grant adjournments, administer oaths, to **preserve order and punish all violations** thereof upon such trial, and to compel the attendance of witnesses, and to punish them for non-attendance or refusal to be sworn or testify as is possessed by the court.

SEC. 258. The report of the referees shall state the facts found, and when the order of reference includes an **issue of law** it shall state the conclusions of law separately from the facts. The referees shall file with their report the evidence received upon the trial. If evidence offered by either party shall not be admitted

**15**

on the trial and the party offering the same except to the decision rejecting such evidence at the time, the exceptions shall be noted by the referees and they shall take and receive such testimony and file it with the report. Whatever judgment the court may give upon the report, **it shall, when it appears that such evidence was frivolous and inadmissible, require the party at whose instance it was taken and reported, to pay all costs and disbursements thereby incurred.**

SEC. 259. The report shall be filed with the clerk. If it be filed in term time either party may within such time as may be prescribed by the rules of the court or by special order move to set the same aside or for judgment thereon, or such order or proceeding as the nature of the case may require. If the report be filed in vacation the like proceedings may be had at the next term following.

SEC. 260. The court may affirm or set aside the report either in whole or in part. If it affirms the report it shall give judgment accordingly. If the report be set aside either in whole or in part, the court may make another order of reference as to all or so much of the report as is set aside, to the original referees or others, or it may find the facts and determine the law itself and give judgment accordingly. Upon a motion to set aside a report the conclusions thereof shall be deemed and considered as the verdict of the jury.

WHEREUPON; the Supreme Law of the Land which is my counsel against any attempt of a potential failed state; a confederate government which refuses to abide by the Constitution of the United States; I have said my name is Lisa M Davy and I say again that I am or have been being abused by AGENTS of an UNCONSTITUTIONAL GOVERNMENT ENTITY; calling themselves "employers ULS" who have used colour of law or colourable law against me and that they were permitted to do so by a government calling itself the State of Washington whose constitution WAS NEVER RECOGNIZED BY CONGRESS—and therefore all so-called "laws" arising from these people are alien or they are colourable and they are legally not withstanding as per the United States Constitution; which is the Supreme Law of the Land;

United States Constitution Article I Section I

*All legislative Powers herein granted shall be vested in a Congress of **the United States**, which shall consist of a Senate and House of Representatives.*

Article I, Section 8, Clause 18:

*[The Congress shall have Power . . . ] To make **all Laws** which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.*

THEREFORE; there be aliens or Confederates practicing law on United States Citizens; As such: IS THE DEFINTION OF BIOLOGICAL TERRORISM and its practice is no longer allowed by the Supreme Court for it is against all that is rite standing at law. For the court to entertain arguments to the contrary may have revealed a court system which is itself unconstitutional. In which had violated the Anti- Apartheid Act; Ku Klux Klan Act (s); Countering America's Adversaries Through Sanctions Act; Partriot Act I; Patriot Act II .. that such persons may be terrorists practicing colourable law on its own citizens be terrorism and I am a witness.

16

By definition an ENTITY is a Confederation; which by definition is a Corporation which means ALL CORPORATIONS NOT AUTHORIZED BY the United States Government (The Republic) ARE CONFEDERACIES because they are governments created OUTSIDE the will of the Republic (We the People). I remind this court that the Confederacy is an enemy of these United States and that for this court to support the Confederacy is called by the United States Constitution; High Crimes, or Treason.

United States Constitution Article I Section IX

No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State

**Article III, Section 3, Clause 1**: Treason against the United States, shall consist only in levying War against them, or in **adhering to their Enemies, giving them Aid and Comfort**. No Person shall be convicted of Treason unless on the testimony of **two Witnesses** to the same **overt Act**, or on Confession in open Court.

It is UNCONSTITUTIONAL for any corporate/confederate government (Municipality), Township, City, government or court or state, to rule in favor of any colour of law or colourable law as colur of law is by definition an act of aiding the Confederacy as only United States Congress may authorize the passing of any laws; and neither is any executive order any law. enter into any labor or finance agreement with any Government or Corporation because a corporation is by legal definition a confederacy. Therefore RCW 35 is UNCONSTITUTIONAL and your Municipality is an enemy of my United States. INDEED; ALL CORPORATIONS are ILLEGAL

CONFEDERACIES where they are not sanctioned by the Aboriginal Government of the United States Republic; which means the majority of US Economy is a CONFEDERATE UNION to which the City of Olympia employees are slaves; having volunteered for slavery by the willful participation in electing straw men or double agents or CARRIERS or FOREIGN AGENTS as your elected officials; and by your ignorance you have been made a slave to the Confederate Union which has been designated the ENEMIES of these UNITED STATES. The United States of America MAY BE a failed state whose Legislative Life span is merely counterfeited by the CARRIERS acting as Presidents who use your ignorance of the law to extend the life of an already doomed CONFEDERATE- UNION.

It is perhaps the scheme of usury that is the "White House" run amuck- an UNCONSTITUTIONAL executive prestige- whose vice president was not elected by any separate ballot as per the United States Constitution and therefore the Presidency is may be unconstitutional and therefore no justice appointed by him or her is be lawful or it is that is the Straw Man (Double Agent) which has extended the life of an failed; doomed Confederate Union on the breaking backs and needled arms of the enslaved the peoples of the USA who do not know they are pharmaceutical slaves or chattel instruments, or that they have accepted their assigned role as biological agents of the Enemies of the United States; *the United States of America Confederate Union.*

State (singular) Black's Law. With a capital 'S'.

1. The prosecuting body of **persons accused of wrong doing** in that state.
2. Politics. With a lower case's'.
3. The area geographically within defined territorial boundaries with a set of political institutions and rules by a government through conformance laws.

United States (E pluribus unum)

17

15) "United States" means— (A) a Federal corporation; (B) an agency, department, commission, board, or other entity of the United States; or (C) an instrumentality of the United States.

FURTHERMORE; a federal corporation is a judicial society ruled by ONE SUPREME COUNCIL; and therefore any organization or State or state or agencies of such ENTITIES which engages in corporate activities outside the will established by the **citizens of the United States** is a Confederacy; engaged in ILLEGAL ACTS WHICH DISPLACE AMERICAN CITIZENS AND DELUDE TOWARDS HUMAN TRAFFICKING usury schemes and all courts whose judiciaries have not been appointed by Congress or a President of the United States is an enemy of the United States and all parties involved- male and female- have no standing at law.

US Constitution Article I Section 10.

No **state** shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.
No **state** shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing it's inspection laws: and the net produce of all duties and imposts, laid by any **state** on imports or exports, shall be for the use of the treasury of **the United States** (not *the United States of America*); and all such laws shall be subject to the revision and control of the Congress.
No state shall, without the consent of Congress, lay any duty of tonnage, keep troops, or ships of war in time of peace, enter into any agreement or compact with another state, or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.

WHEREAS; the **Congress of the Confederation**, or the **Confederation Congress**, formally referred to as the **United States in Congress Assembled**, was the governing body of **the United States of America** during the **Confederation** period, March 1, 1781 – March 4, 1789. I remind you all that the Confederacy is the enemy of the United States.

## Judicial Notice and Proclamation

**To All Elected United States Republic Officials and Public Servants of Federal, State, City, and Municipal governments, Personnel and Corporate Entities: Concerning the Constitution and all Statutory and Civil Law Codes of the Land etc.,**

**Know All Men by These Presents:**

**Upon:** my inherited Constitution, upon my birthrights, Proper Person Status and Commercial Liability.

I Lisa M. Davy being duly Affirmed under Consanguine Unity; **pledge my National, Political, and Spiritual Allegiance to The United States Constitution.** Standing squarely Affirmed upon my square which is my natural frame of mind; do squarely Affirm to tell the truth, the whole truth, and nothing but the truth; and having knowledge and firmly-established belief upon the historical, lawful, and adjudicated Facts contained herein.

> **United States Republic Constitution, Article I of the Bill of Rights**-Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

18

> "Citizenship is a political tie; allegiance is a territorial tenure. [...]The doctrine is, that allegiance cannot be due to two sovereigns; and taking an oath of allegiance to a new, is the strongest evidence of withdrawing allegiance from a previous, sovereign...."**Talbot v Janson, 3 U.S. 133 (1795)**

I affirm my residence, domicile, state are within myself as I can not reside, domicile, or have an address outside of myself. As noted above I voluntarily with full understanding, knowingly pledge my National, Political, and Spiritual Alliance to the Constitution and the United States.

> **States.** A people permanently occupying a fixed territory bound together by common-law, habit and custom into one body politic exercising, through the medium of an organized government, independent sovereignty and control over all persons and things within its boundaries, capable of making war and peace and of entering into international relations with other communities of the globe. United States v Kusche, d.C. Cal., 56 F .Supp. 201, 207, 208.

> "Just as there is freedom to speak, to associate, and to believe, so also there is freedom not to speak, associate, or believe. "The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind." Wooley v. Maynard, [430 U.S. 703] (1977). Freedom of conscience dictates that no individual may be forced to espouse ideological causes with which he disagrees:

> "[A]t the heart of the First Article of the Bill of Rights is the notion that the individual should be free to believe as he will, and that in a free society one's benefits should be shaped by his mind and by his conscience  rather than coerced by the State." Abood v. Detroit Board of Education [431 U.S. 209] (1977)

> "Freedom from compelled association is a vital component of freedom of expression. Indeed, freedom from compelled association illustrates the significance of the liberty or personal autonomy model of the First Article of the Bill of Rights. As a general constitutional principle, it is for the individual and nt for the state to choose one's associations and to define the persona which he holds out to the world." [First Amendment Law, Barron-Dienes, West Publishing, ISBN 0-314-22677-X,pp.266-267]

Being competent, In Propria Persona (In My Own Proper Person), to Attest to this manuscript upon which I place my Seal/Signature; Whereas I State, Proclaim, and Declare the following to be true, correct, certain, complete, not misleading, whereas supreme, and not intended to be presented for any misrepresented, "colored" or improper use or purpose, to wit:

> That I, Lisa M. Davy Am a citizen of the several states; en Propria Persona sui juris (my own proper self); being Mormon I am American- a Descendant of the ancient Lamanites and I am Mormon, by birthright, being from this Land (Amexem/Americas) Territorium of my Ancient Mormon Fore-bearers: so I shall set my hand to the seal.

## The **United States Republic Constitution Article I, Section X, Clause I:** No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

The codes, rules, regulations, policy and statutes are "not the law." (Self v. Rhay, 61 Wn 2d 261), **They are the law of government for internal regulation, not the law of man, in his separate but equal station and natural state, a sovereign foreign with respect to government generally.) A 'Statute' is not a Law,"** (Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 Sold 244, 248), **A "Code' is not a Law,"** (In Re Self v Rhay Wn 2d 261), in point of fact in Law,

State of Washington is a Corporate Entity IT IS NOT any State or Federal Government. As per Territory of OUR LADY WASHINGTON TERRITORY Enabling Act all Territorial Laws are Common Law and these territorial laws are to be the law of Washington State.

**19**

# Washington Territory Enabling Act

SEC. 24. That the constitutional conventions may, by ordinance, provide for the election of officers for full State governments, including members of the legislatures and Representatives in the fifty-first Congress; but said State governments shall remain in abeyance until the States shall be admitted into the Union, respectively, as provided in this act. In case the constitution of any of said proposed States shall be ratified by the people, but not otherwise, the legislature thereof may assemble, organize, and elect two senators of the United States; and the governor and secretary of state of such proposed State shall certify the election of the Senators and Representatives in the manner required by law; and when such State is admitted into the Union, the Senators and Representatives shall be entitled to be admitted to seats in Congress, and to all the rights and privileges of Senators and Representatives of other States in the Congress of the United States; and the officers of the State governments formed in pursuance of said constitutions, as provided by the constitutional conventions, shall proceed to exercise all the functions of such State officers; and **all laws in force made by said Territories, at the time of their admission into the Union, shall be in force in said States**, except as modified or changed by this act or by the constitutions of the States, respectively.

SEC. 25. **That all acts or parts of acts in conflict with the provisions of this act, whether passed by the legislatures of said Territories or by Congress, are hereby repealed.** Approved, February 22, 1889. [25 U.S. Statutes at Large, c 180 p 676.

In United States law, an organic act is **an act of the United States Congress that establishes a territory of the United States and specifies how it is to be governed, or an agency to manage certain federal lands**. In the absence of an organic law a territory is classified as an failure at statehood. Therefore, if the government of the State of Washington is unable to enforce OUR LADY WASHINGTON Territory Laws and must instead resort to colourable law or colour of law that the State of Washington be a failed state or failure at state; wherefore the defendant is NOT WITH STANDING.

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution  or any federal laws which support it, as an gubernatorial proclamation is not the law
. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

FURTHERMORE; the United States Supreme Court has been clear it's position regarding state law where any alleged state law (s) may conflict with federal laws: **A concurrent or 'joint resolution of legislature is not "Law," only the United States Constitution and supporting acts of Congress shall be deemed law.** (Koenig v. Flynn, 258 N.Y. 292, 179 N. E. 705, 707; Ward v State, 176 Old. 368, 56 P.2d 136, 137; State ex rel. Todd. v. Yelle, 7 Wash.2d 443, 110 P.2d 162, 165).

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution  or any federal laws which support it, as an gubernatorial proclamation is not the law. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

20

US.SUPREME COURT DECISION -'The United States Constitution is the principle law, the Supreme Law of the land. **The code, rules, regulations, policy, and statutes are "not the law"**, [Self v. Rhay, 61 Wn (2d) 261]

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution or any federal laws which support it, as an gubernatorial proclamation is not the law. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

US. SUPREME COURT DECISION – "**All codes**, rules, and regulations are for government authorities only, not human/Creators in accordance with God's laws. **All codes, rules, and regulations are unconstitutional and lacking due process**…" [Rodrigues v. Ray Donavan (U.S. Department of Labor) 769 F. 2d 1344, 1348 (1985).1

## United States v. Curtiss-Wright Export Corp., 299 U.S. 304 (1936)

The United States Supreme Court reversed lower court decision determining that Executive Orders by the executive branch of government do not extend to United States Laws but only definitive foreign policy. The President issued two proclamations, one on the date of the Resolution, putting it into operation, the other on November 14, 1935, revoking the first proclamation.

The Supreme Court determined that it was a criminal conspiracy for weapons distribution barons Curtis-Wright Export Corp., to abuse its market relations by promoting their use of the presidential proclamation as though it were the law against the federal laws established within the United States relating to weapons sales industrie (s)

"The powers of the Federal Government over foreign or external affairs differ in nature and origin from those over domestic or internal affairs." *United States v. Curtiss-Wright Export Corp., 299 U.S. 304* (1936) 299 U. S. 315.

### I. STATE LAWS HELD UNCONSTITUTIONAL

1. *United States v. Peters*, 9 U. S. (5 Cr. ) 115 (1809). A Pennsylvania statute prohibiting the execution of any process issued to enforce a certain sentence of a federal court, on the ground that the federal court lacked jurisdiction in the cause, could not oust the federal court of jurisdiction. A state statute purporting to annul the judgment of a court of the United States and to destroy rights acquired thereunder is without legal foundation.

2. *Fletcher v. Peck*, 10 U. S. (6 Cr. ) 87 (1810). A Georgia statute annulling conveyance of public lands authorized by a prior enactment violated the Contracts Clause (Art. I, § 10) of the Constitution.

Justices concurring: Marshall, C.J., Washington, Livingston, Todd
Justice dissenting: Johnson (in part)

3. *New Jersey v. Wilson*, 11 U. S. (7 Cr. ) 164 (1812).

A New Jersey law purporting to repeal an exemption from taxation contained in a prior enactment conveying certain lands violated the Contracts Clause (Art. I, § 10).

**21**

4. *Terrett v. Taylor*, 13 U. S. (9 Cr. ) 43 (1815).

Although subsequently cited as a Contract Clause case (*Piqua Branch Bank v. Knoop,* 57 U. S. (16 How. ) 369, 389 (1853)), the Court in the instant decision, without referring to the Contracts Clause (Art. I, § 10), voided, as contrary to the principles of natural justice, two Virginia acts that purported to divest the Episcopal Church of title to property "acquired under the faith of previous laws."

5. *Sturges v. Crowninshield,* 17 U. S. (4 Wheat. ) 122 (1819).

Retroactive operation of a New York insolvency law to discharge the obligation of a debtor on a promissory note negotiated prior to its adoption violated the Contracts Clause (Art. I, § 10).

6. *McMillan v. McNeil*, 17 U. S. (4 Wheat. ) 209 (1819).

A Louisiana insolvency law had no extraterritorial operation, and, although adopted in 1808, its invocation to relieve a debtor of an obligation contracted by him in 1811, while a resident of South Carolina, offended the Contracts Clause (Art. I, § 10).

7. *McCulloch v. Maryland*, 17 U. S. (4 Wheat. ) 316 (1819).

Under the principle of national supremacy (Art. VI), which immunizes instrumentalities of the Federal Government from state taxation, a Maryland law imposing a tax on notes issued by a branch of the Bank of United States was held unconstitutional.

8. *Dartmouth College v. Woodward*, 17 U. S. (4 Wheat. ) 518 (1819).

A New Hampshire

 law that altered a charter granted to a private eleemosynary corporation by the British Crown prior to the Revolution violated the Contracts Clause (Art. I, § 10).

Justices concurring: Marshall, C.J., Washington, Johnson, Livingston, Story
Justice dissenting: Duvall

9. *Farmers' and Mechanics' Bank v. Smith*, 19 U. S. (6 Wheat. ) 131 (1821).

A Pennsylvania insolvency law, insofar as it purported to discharge a debtor from obligations contracted prior to its passage, violated the Contracts Clause (Art. I, § 10). https://law.justia.com/constitution/us/state-laws-held-unconstitutional.html

THEREFORE; Any Gubernatorial Proclamation is an executive order; any executive order being COLOURABLE LAW or COLOUR of LAW. Only Congress shall have authority to pass any laws as per Supremacy Clause United States Constitution. All other laws are not laws but COLOUR of LAW or COLOURABLE LAW and they have no standing against the authority of the Supreme Law of the Land, the United States Constitution or any federal laws which support it, as an gubernatorial proclamation is not the law. According to the 1866 Civil Rites Act, 1870 Civil Rites Act, 1871 Anti Ku Klux Klan Act (s); Civil Rites Act (s) it is a misdemeanor or a felony or treason for any person (s) people (s) , entity or corporations to advance any colourable law against United States citizens or to use colourable law in order to dispossess them of any previously held rite, privilege, or occupation respectively.

THEREFORE; the relief I seek is demonstrated by the following and I require;

22

1. Damages awarded in the amount of $375,000 or three hundred seventy five thousand dollars per EACH federal law violated by the CCC including but not limited to the following laws which have been violated;

   - Civil Rights Act 1866 A.D.
   - Civil Rights Act 1870 A.D.
   - Civil Rights Act 1871 A.D.
   - Civil Rights Act 1964 A.D.
   - U.S.C., Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

   - Constitutional Rights listed to freedom of the unabridged expression of religion.

   - Constitutional Rights listed to the protections of a Republican form of government of which the State of Washington by it's initiatory process is not.

For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, as well as **judges, care providers in public health facilities**, and others who are <u>acting</u> as public officials. *It is not necessary that the crime be motivated by animus toward the race, color, religion*, sex, handicap, familial status *or national origin* of the victim.

The **offense is punishable** by a range of imprisonment up to a life term, or the death penalty, depending upon the circumstances of the **crime**, and the resulting injury, if any.

### TITLE 18, U.S.C., SECTION 242

*Whoever*, *under **color of any law**, statute, **ordinance**, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured **or protected by the Constitution or laws of the United States**, ... shall be fined under this title or imprisoned not more than one year, or both; **and if bodily injury results from the acts** committed in violation of this section or **if such acts include the use, attempted use, or threatened use of a dangerous weapon**, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or **imprisoned for any term of years or for life, or both, or may be sentenced to death.***

2. Federal Charges or criminal charges or proceedings be initiated against Cross Cultural Communications in keeping with the laws and their legal definitions as they had been listed; recorded, legislated; or above.

   - "Moreover, even without the prospect of AIDS, a hypodermic needle and syringe are easily employed as a weapon.   If a pin concealed in an apple was a deadly weapon in Jose R., a hypodermic needle should be here." *The PEOPLE v. AUTRY, Defendant and Appellant.* No. G009740. Decided: June 26, 1991

23

- **"USE OF THE NEEDLE MAKES THE ACT A VIOLENT CRIME."** *State v. Ainis, 317 N.J. Super. 127,* 721 A.2d 329 (1998)

- "The defendant used or exhibited a deadly weapon, to-wit a syringe, that in the manner and means of its use and intended use was capable of causing death and serious bodily injury," *DAVIS v. STATE OF TEXAS. Supreme Court 139 U.S. 651 11 S.Ct. 675 35.*

WHEREAS; Neither should any court dismiss or rule against me in the matter brought before the court for any reasons related to form; want of form, wanton form, en forme, or the form of the manuscripts presented or the documents submitted; or for any other reasons arising from any colourable law or colour of law imaginations or "interpreting" of any judiciary <u>acting</u> as judge who may attempt to exploit the nuances of law for the gain of a Confederate State or the failed enterprising men and women who have assumed for themselves any form of government thereby; or for any interest any judge may have regarding jurisprudence during the cause of adjudicating in matters pertaining to the rights of Citizens of America or what are the issues being violated by aliens or people who are Constituencies of the Confederacy but yet are not citizens of America; or in regards to those persons who violate the Anti Ku Klux Klan Act (s) Civil Rights  Act (s); Federal Laws of these United States.

## JUDICIARY ACT 1789 A.D. SEC. 32.

And be it further enacted, That no summons, writ, declaration, return, process, judgment, or other proceedings in civil causes in any of the courts of the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects, or want of form in such writ, declaration, or other pleading, return, process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof. And the said courts respectively shall and may, by virtue of this act, from time to time, amend all and every such imperfections, defects and wants of form, other than those only which the party demurring shall express as aforesaid, and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as the said courts respectively shall in their discretion, and by their rules prescribe.

WHEREAS; I am Lisa M Davy and I am Mormon and I am Vegan and I am a Noble woman; I am a citizen of America by way of the several states and I am a witness against any court or acting judge who adjudicates colour of law or colourable law against me, or in favor of the respondent. And I declare that any such act of any court which may rule in favor of any colour of law or colourable law is be an act of violence or acts of violence or terror; violations of the Anti-Apatheid Act and en violation of the anti Ku Klux Klan Act. That as per the Laws of the United States any such false application of the law or the application of colourable law against American citizens amounts to terror; where any such so-called adjudicator has aided that which the Laws of the United States have declared high crimes or treason and those treasonous crimes have resulted in my temple being threatened with weapons; through colorable law or colour of law; and those weapons include but are not limited to syringes or needles; including documents or orders; that which may legally be defined as colour of law or KKK; instrument (s) of terror (or colour of law) or (colourable law) and I reserve my right to pursue lawful redress of grievances.

WHEREFORE; I have called upon the name of the Lord; and I have requested the Chairman of the Consul; the Justice of the ONE SUPREME COURT of the United States Republic which is the government of the **citizens of America**. Whereby I am Lisa M Davy; I am en propria persona sui juris and I call upon the name of the Lord. I hereby do request the Consul; in accordance with the Supremacy Clause; Treaty; United States Constitution; the Supreme Law of the Land.

November 26, 2022 A.D.

Respectfully submitted,

Lisa M. Davy
6709 Compton Blvd, SE Lacey, WA 98513
Tel: (360)790.2781

25

Case 3:22-cv-05938-JCC   Document 1   Filed 12/01/22   Page 35 of 1015

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS

# Certificate of Baptism and Confirmation

Date **January 24**, 19**82**

~~Ward~~
Branch **Belfair**          **Bremerton**          Stake ~~Mission~~

This Certifies that **Lisa Marie Davy**

~~Son~~/daughter of **John Howard Davy** and **Linda Rose Gonzales**
      Daughter          Father's Full Name                    Mother's Full Maiden Name

Born **18 July 1966**, at **Los Angeles**, **Los Angeles**, **California**,
      Date                City or Town        County or Province        State or Nation

was baptized **24 Sep. 1978**, by **Alan Phister**, **Elder**, and
            Date                                                        Priesthood

confirmed a member of The Church of Jesus Christ of Latter-day Saints, **24 Sep. 1978**
                                                                                    Date

by **B. Tom Layton**, **Elder**.
                        Priesthood

Signed _Michael F. Ooley_                          Signed _Franklin T. Fisher_
                        Clerk                                                    Bishop/Branch President



# THE
# CONSTITUTION
### of the United States



NATIONAL CONSTITUTION CENTER



of the United States

We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.

## Article. I.

### SECTION. 1.

All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

### SECTION. 2.

The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

[Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.]* The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies.

The House of Representatives shall chuse their Speaker and other Officers; and shall have the sole Power of Impeachment.

### SECTION. 3.

The Senate of the United States shall be composed of two Senators from each State, [chosen by the Legislature thereof,]* for six Years; and each Senator shall have one Vote.

Immediately after they shall be assembled in Consequence of the first Election, they shall be divided as equally as may be into three Classes. The Seats of the Senators of the first Class shall be vacated at the Expiration of the second Year, of the second Class at the Expiration of the fourth Year, and of the third Class at the Expiration of the sixth Year, so that one third may be chosen every second Year; [and if Vacancies happen by Resignation, or otherwise, during the Recess of the Legislature of any State, the Executive thereof may make temporary Appointments until the next Meeting of the Legislature, which shall then fill such Vacancies.]*

No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

The Vice President of the United States shall be President of the Senate, but shall have no Vote, unless they be equally divided.

The Senate shall chuse their other Officers, and also a President pro tempore, in the Absence of the Vice President, or when he shall exercise the Office of President of the United States.

The Senate shall have the sole Power to try all Impeachments. When sitting for that Purpose, they shall be on Oath or Affirmation. When the President of the United States is tried, the Chief Justice shall preside: And no Person shall be convicted without the Concurrence of two thirds of the Members present.

Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.

## SECTION. 4.

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

The Congress shall assemble at least once in every Year, and such Meeting shall be [on the first Monday in December,]* unless they shall by Law appoint a different Day.

## SECTION. 5.

Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member.

Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal.

Neither House, during the Session of Congress, shall, without the Consent of the other, adjourn for more than three days, nor to any other Place than that in which the two Houses shall be sitting.

## SECTION. 6.

The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

## SECTION. 7.

All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively, If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

## SECTION. 8.

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

To borrow Money on the credit of the United States;

To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

To establish Post Offices and post Roads;
To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

To constitute Tribunals inferior to the supreme Court;

To define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations;

To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

To provide and maintain a Navy;

To make Rules for the Government and Regulation of the land and naval Forces;

To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings; -And

To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

## SECTION. 9.

The Migration or Importation of such Persons as any of the States now existing shall think proper to admit, shall not be prohibited by the Congress prior to the Year one thousand eight hundred and eight, but a Tax or duty may be imposed on such Importation, not exceeding ten dollars for each Person.

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

No Bill of Attainder or ex post facto Law shall be passed.

[No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.]*

No Tax or Duty shall be laid on Articles exported from any State.

No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.

No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

## SECTION. 10.

No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress.

No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

# Article. II.

## SECTION. 1.

The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows:

Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

[The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed; and if there be more than one who have such Majority, and have an equal Number of Votes, then the House of Representatives shall immediately chuse by Ballot one of them for President; and if no Person have a Majority, then from the five highest on the List the said House shall in like Manner chuse the President. But in chusing the President, the Votes shall be taken by States, the Representation from each State having one Vote; A quorum for this Purpose shall consist of a Member or Members from two thirds of the States, and a Majority of all the States shall be necessary to a Choice. In every Case, after the Choice of the President, the Person having the greatest Number of Votes of the Electors shall be the Vice President. But if there should remain two or more who have equal Votes, the Senate shall chuse from them by Ballot the Vice President.]*

The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States.

No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

[In Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President, and the Congress may by Law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.]*

The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be increased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them.

Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:- "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States."

## SECTION. 2.

The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and he shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment.

He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

## SECTION. 3.

He shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient; he may, on extraordinary Occasions, convene both Houses, or either of them, and in Case of Disagreement between them, with Respect to the Time of Adjournment, he may adjourn them to such Time as he shall think proper; he shall receive Ambassadors and other public Ministers; he shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States.

## SECTION. 4.

The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors.

# Article. III.

## SECTION. 1.

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

## SECTION. 2.

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; - to all Cases affecting Ambassadors, other public Ministers and Consuls; - to all Cases of admiralty and maritime Jurisdiction; - to Controversies to which the United States shall be a Party; - to Controversies between two or more States; - [between a State and Citizens of another State;-]* between Citizens of different States, - between Citizens of the same State claiming Lands under Grants of different States, [and between a State, or the Citizens thereof;- and foreign States, Citizens or Subjects.]*

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

## SECTION. 3.

Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court.

The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

# Article. IV.

## SECTION. 1.

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

## SECTION. 2.

The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due.]*

## SECTION. 3.

New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States, or Parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress.

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

## SECTION. 4.

The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

# Article. V.

The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three-fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate.

# Article. VI.

All Debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation.

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

# Article. VII.

The Ratification of the Conventions of nine States, shall be sufficient for the Establishment of this Constitution between the States so ratifying the Same.

Done in Convention by the Unanimous Consent of the States present the Seventeenth Day of September in the Year of our Lord one thousand seven hundred and Eighty seven and of the Independence of the United States of America the Twelfth In Witness whereof We have hereunto subscribed our Names,

Go. Washington--Presidt:
and deputy from Virginia

## NEW HAMPSHIRE

John Langdon
Nicholas Gilman

## MASSACHUSETTS

Nathaniel Gorham
Rufus King

## CONNECTICUT

Wm. Saml. Johnson
Roger Sherman

## NEW YORK

Alexander Hamilton

## NEW JERSEY

Wil: Livingston
David Brearley
Wm. Paterson
Jona: Dayton

## PENNSYLVANIA

B Franklin
Thomas Mifflin
Robt Morris
Geo. Clymer
Thos. FitzSimons
Jared Ingersoll
James Wilson
Gouv Morris

DELAWARE

    Geo: Read
    Gunning Bedford jun
    John Dickinson
    Richard Bassett
    Jaco: Broom

MARYLAND

    James McHenry
    Dan of St. Thos. Jenifer
    Danl Carroll

VIRGINIA

    John Blair-
    James Madison Jr.

NORTH CAROLINA

    Wm. Blount
    Richd. Dobbs Spaight
    Hu Williamson

SOUTH CAROLINA

    J. Rutledge
    Charles Cotesworth Pinckney
    Charles Pinckney
    Pierce Butler

GEORGIA

    William Few
    Abr Baldwin


Attest William Jackson Secretary

In Convention Monday
September 17th, 1787.
Present
The States of
New Hampshire, Massachusetts, Connecticut, Mr. Hamilton from New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina and Georgia.

Resolved,
That the preceeding Constitution be laid before the United States in Congress assembled, and that it is the Opinion of this Convention, that it should afterwards be submitted to a Convention of Delegates, chosen in each State by the People thereof, under the Recommendation of its Legislature, for their Assent and Ratification; and that each Convention assenting to, and ratifying the Same, should give Notice thereof to the United States in Congress assembled. Resolved, That it is the Opinion of this Convention, that as soon as the Conventions of nine States shall have ratified this Constitution, the United States in Congress assembled should fix a Day on which Electors should be appointed by the States which shall have ratified the same, and a Day on which the Electors should assemble to vote for the President, and the Time and Place for commencing Proceedings under this Constitution.

That after such Publication the Electors should be appointed, and the Senators and Representatives elected: That the Electors should meet on the Day fixed for the Election of the President, and should transmit their Votes certified, signed, sealed and directed, as the Constitution requires, to the Secretary of the United States in Congress assembled, that the Senators and Representatives should convene at the Time and Place assigned; that the Senators should appoint a President of the Senate, for the sole Purpose of receiving, opening and counting the Votes for President; and, that after he shall be chosen, the Congress, together with the President, should, without Delay, proceed to execute this Constitution.

By the unanimous Order of the Convention

Go. Washington-Presidt:
W. JACKSON Secretary.


\* Language in brackets has been changed by amendment.

# THE AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AS RATIFIED BY THE STATES

## Preamble to the Bill of Rights

CONGRESS OF THE UNITED STATES
BEGUN AND HELD AT THE CITY OF NEW-YORK, ON
WEDNESDAY THE FOURTH OF MARCH,
ONE THOUSAND SEVEN HUNDRED AND EIGHTY NINE

THE Conventions of a number of the States, having at the time of their adopting the Constitution, expressed a desire, in order to prevent misconstruction or abuse of its powers, that further declaratory and restrictive clauses should be added: And as extending the ground of public confidence in the Government, will best ensure the beneficent ends of its institution.

RESOLVED by the Senate and House of Representatives of the United States of America, in Congress assembled, two thirds of both Houses concurring, that the following Articles be proposed to the Legislatures of the several States, as amendments to the Constitution of the United States, all, or any of which Articles, when ratified by three fourths of the said Legislatures, to be valid to all intents and purposes, as part of the said Constitution; viz.

ARTICLES in addition to, and Amendment of the Constitution of the United States of America, proposed by Congress, and ratified by the Legislatures of the several States, pursuant to the fifth Article of the original Constitution.

*(Note: The first 10 amendments to the Constitution were ratified December 15, 1791, and form what is known as the "Bill of Rights.")*

## Amendment I.

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## Amendment II.

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## Amendment III.

No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

## Amendment IV.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## Amendment V.

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## Amendment VI.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

## Amendment VII.

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

## Amendment VIII.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## Amendment IX.

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

## Amendment X.

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

## AMENDMENTS 11-27

## Amendment XI.

Passed by Congress March 4, 1794. Ratified February 7, 1795.

*(Note: A portion of Article III, Section 2 of the Constitution was modified by the 11th Amendment.)*

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

## Amendment XII.

Passed by Congress December 9, 1803. Ratified June 15, 1804.

*(Note: A portion of Article II, Section 1 of the Constitution was changed by the 12th Amendment.)*

The Electors shall meet in their respective states, and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;-the President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;-The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. [And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in case of the death or other constitutional disability of the President.-]* The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

*Superseded by Section 3 of the 20th Amendment.

# Amendment XIII.

Passed by Congress January 31, 1865. Ratified December 6, 1865.

*(Note: A portion of Article IV, Section 2 of the Constitution was changed by the 13th Amendment.)*

## SECTION 1.

Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

## SECTION 2.

Congress shall have power to enforce this article by appropriate legislation.

# Amendment XIV.

Passed by Congress June 13, 1866. Ratified July 9, 1868.

*(Note: Article I, Section 2 of the Constitution was modified by Section 2 of the 14th Amendment.)*

## SECTION 1.

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## SECTION 2.

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, [being twenty-one years of age,]* and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

## SECTION 3.

No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

## SECTION 4.

The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

## SECTION 5.

The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

*Changed by Section 1 of the 26th Amendment.

# Amendment XV.

Passed by Congress February 26, 1869. Ratified February 3, 1870.

## SECTION 1.

The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

## SECTION 2.

The Congress shall have the power to enforce this article by appropriate legislation.

# Amendment XVI.

Passed by Congress July 2, 1909. Ratified February 3, 1913.

*(Note: Article I, Section 9 of the Constitution was modified by the 16th Amendment.)*

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

# Amendment XVII.

Passed by Congress May 13, 1912. Ratified April 8, 1913.

*(Note: Article I, Section 3 of the Constitution was modified by the 17th Amendment.)*

The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution.

# Amendment XVIII.

Passed by Congress December 18, 1917. Ratified January 16, 1919. Repealed by the 21st Amendment, December 5, 1933.

## SECTION 1.

After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

## SECTION 2.

The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.

## SECTION 3.

This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

# Amendment XIX

Passed by Congress June 4, 1919. Ratified August 18, 1920.

The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.

Congress shall have power to enforce this article by appropriate legislation.

# Amendment XX

Passed by Congress March 2, 1932. Ratified January 23, 1933.

*(Note: Article I, Section 4 of the Constitution was modified by Section 2 of this Amendment. In addition, a portion of the 12th Amendment was superseded by Section 3.)*

## SECTION 1.

The terms of the President and the Vice President shall end at noon on the 20th day of January, and the terms of Senators and Representatives at noon on the 3d day of January, of the years in which such terms would have ended if this article had not been ratified; and the terms of their successors shall then begin.

## SECTION 2.

The Congress shall assemble at least once in every year, and such meeting shall begin at noon on the 3d day of January, unless they shall by law appoint a different day.

## SECTION 3.

If, at the time fixed for the beginning of the term of the President, the President elect shall have died, the Vice President elect shall become President. If a President shall not have been chosen before the time fixed for the beginning of his term, or if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.

## SECTION 4.

The Congress may by law provide for the case of the death of any of the persons from whom the House of Representatives may choose a President whenever the right of choice shall have devolved upon them, and for the case of the death of any of the persons from whom the Senate may choose a Vice President whenever the right of choice shall have devolved upon them.

## SECTION 5.

Sections 1 and 2 shall take effect on the 15th day of October following the ratification of this article.

## SECTION 6.

This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of three-fourths of the several States within seven years from the date of its submission.

# Amendment XXI

Passed by Congress February 20, 1933. Ratified December 5, 1933.

## SECTION 1.

The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

## SECTION 2.

The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

## SECTION 3.

This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

## Amendment XXII.

Passed by Congress March 21, 1947. Ratified February 27, 1951.

### SECTION 1.

No person shall be elected to the office of the President more than twice, and no person who has held the office of President, or acted as President, for more than two years of a term to which some other person was elected President shall be elected to the office of President more than once. But this Article shall not apply to any person holding the office of President when this Article was proposed by Congress, and shall not prevent any person who may be holding the office of President, or acting as President, during the term within which this Article becomes operative from holding the office of President or acting as President during the remainder of such term.

### SECTION 2.

This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of three-fourths of the several States within seven years from the date of its submission to the States by the Congress.

## Amendment XXIII.

Passed by Congress June 16, 1960. Ratified March 29, 1961.

### SECTION 1.

The District constituting the seat of Government of the United States shall appoint in such manner as Congress may direct:

A number of electors of President and Vice President equal to the whole number of Senators and Representatives in Congress to which the District would be entitled if it were a State, but in no event more than the least populous State; they shall be in addition to those appointed by the States, but they shall be considered, for the purposes of the election of President and Vice President, to be electors appointed by a State; and they shall meet in the District and perform such duties as provided by the twelfth article of amendment.

### SECTION 2.

The Congress shall have power to enforce this article by appropriate legislation.

## Amendment XXIV.

Passed by Congress August 27, 1962. Ratified January 23, 1964.

### SECTION 1.

The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay poll tax or other tax.

### SECTION 2.

The Congress shall have power to enforce this article by appropriate legislation.

# Amendment XXV.

Passed by Congress July 6, 1965. Ratified February 10, 1967.
*(Note: Article II, Section 1 of the Constitution was modified by the 25th Amendment.)*

## SECTION 1.

In case of the removal of the President from office or of his death or resignation, the Vice President shall become President.

## SECTION 2.

Whenever there is a vacancy in the office of the Vice President, the President shall nominate a Vice President who shall take office upon confirmation by a majority vote of both Houses of Congress.

## SECTION 3.

Whenever the President transmits to the President pro tempore of the Senate and the Speaker of the House of Representatives his written declaration that he is unable to discharge the powers and duties of his office, and until he transmits to them a written declaration to the contrary, such powers and duties shall be discharged by the Vice President as Acting President.

## SECTION 4.

Whenever the Vice President and a majority of either the principal officers of the executive departments or of such other body as Congress may by law provide, transmit to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office, the Vice President shall immediately assume the powers and duties of the office as Acting President.

Thereafter, when the President transmits to the President pro tempore of the Senate and the Speaker of the House of Representatives his written declaration that no inability exists, he shall resume the powers and duties of his office unless the Vice President and a majority of either the principal officers of the executive department or of such other body as Congress may by law provide, transmit within four days to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office. Thereupon Congress shall decide the issue, assembling within forty-eight hours for that purpose if not in session. If the Congress, within twenty-one days after receipt of the latter written declaration, or, if Congress is not in session, within twenty-one days after Congress is required to assemble, determines by two-thirds vote of both Houses that the President is unable to discharge the powers and duties of his office, the Vice President shall continue to discharge the same as Acting President; otherwise, the President shall resume the powers and duties of his office.

# Amendment XXVI.

Passed by Congress March 23, 1971. Ratified July 1, 1971.

*(Note: Amendment 14, Section 2 of the Constitution was modified by Section 1 of the 26th Amendment.)*

## SECTION 1.

The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

## SECTION 2.

The Congress shall have power to enforce this article by appropriate legislation.

# Amendment XXVII.

Originally proposed Sept. 25, 1789. Ratified May 7, 1992.

No law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of representatives shall have intervened.

# CONSTITUTION OF THE STATE OF WASHINGTON

This Constitution was framed by a convention of seventy-five delegates, chosen by the people of the Territory of Washington at an election held May 14, 1889, under section 3 of the Enabling Act. The convention met at Olympia on the fourth day of July, 1889, and adjourned on the twenty-second day of August, 1889. The Constitution was ratified by the people at an election held on October 1, 1889, and on November 11, 1889, in accordance with section 8 of the Enabling Act, the president of the United States proclaimed the admission of the State of Washington into the Union.

## TABLE OF CONTENTS

(A) Constitution of the State of Washington
(B) Constitutional Amendments (in order of adoption)
(C) Index to State Constitution.

In part (A), for convenience of the reader, the latest constitutional amendments have been integrated with the currently effective original sections of the Constitution with the result that the Constitution is herein presented in its currently amended form.

All current sections, whether original sections or constitutional amendments, are carried in Article and section order and are printed in regular type.

Following each section which has been amended, the original section and intervening amendments (if any) are printed in italics.

Appended to each amendatory section is a history note stating the amendment number and date of its approval as well as the citation to the session law wherein may be found the legislative measure proposing the amendment; e.g. "**[AMENDMENT 27**, 1951 House Joint Resolution No. 8, p 961. Approved November 4, 1952.]"

In part (B), the constitutional amendments are also printed separately, in order of their adoption.

## (A) Constitution of the State of Washington

PREAMBLE
Article I — DECLARATION OF RIGHTS

Sections

| | |
|---|---|
| 1 | Political power. |
| 2 | Supreme law of the land. |
| 3 | Personal rights. |
| 4 | Right of petition and assemblage. |
| 5 | Freedom of speech. |
| 6 | Oaths — Mode of administering. |
| 7 | Invasion of private affairs or home prohibited. |
| 8 | Irrevocable privilege, franchise or immunity prohibited. |
| 9 | Rights of accused persons. |
| 10 | Administration of justice. |
| 11 | Religious freedom. |
| 12 | Special privileges and immunities prohibited. |
| 13 | Habeas corpus. |
| 14 | Excessive bail, fines and punishments. |
| 15 | Convictions, effect of. |
| 16 | Eminent domain. |

| | |
|---|---|
| 17 | Imprisonment for debt. |
| 18 | Military power, limitation of. |
| 19 | Freedom of elections. |
| 20 | Bail, when authorized. |
| 21 | Trial by jury. |
| 22 | Rights of the accused. |
| 23 | Bill of attainder, ex post facto law, etc. |
| 24 | Right to bear arms. |
| 25 | Prosecution by information. |
| 26 | Grand jury. |
| 27 | Treason, defined, etc. |
| 28 | Hereditary privileges abolished. |
| 29 | Constitution mandatory. |
| 30 | Rights reserved. |
| 31 | Standing army. |
| 32 | Fundamental principles. |
| 33 | Recall of elective officers. |
| 34 | Same. |
| 35 | Victims of crimes — Rights. |

## Article II — LEGISLATIVE DEPARTMENT

Sections

| | |
|---|---|
| 1 | Legislative powers, where vested. |
| 1(a) | Initiative and referendum, signatures required. |
| 2 | House of representatives and senate. |
| 3 | The census. |
| 4 | Election of representatives and term of office. |
| 5 | Elections, when to be held. |
| 6 | Election and term of office of senators. |
| 7 | Qualifications of legislators. |
| 8 | Judges of their own election and qualification — Quorum. |
| 9 | Rules of procedure. |
| 10 | Election of officers. |
| 11 | Journal, publicity of meetings — Adjournments. |
| 12 | Sessions, when — Duration. |
| 13 | Limitation on members holding office in the state. |
| 14 | Same, federal or other office. |
| 15 | Vacancies in legislature and in partisan county elective office. |
| 16 | Privileges from arrest. |
| 17 | Freedom of debate. |
| 18 | Style of laws. |
| 19 | Bill to contain one subject. |
| 20 | Origin and amendment of bills. |
| 21 | Yeas and nays. |
| 22 | Passage of bills. |
| 23 | Compensation of members. |

24    Lotteries and divorce.

25    Extra compensation prohibited.

26    Suits against the state.

27    Elections — Viva voce vote.

28    Special legislation.

29    Convict labor.

30    Bribery or corrupt solicitation.

31    Laws, when to take effect.

32    Laws, how signed.

33    Alien ownership.

34    Bureau of statistics, agriculture and immigration.

35    Protection of employees.

36    When bills must be introduced.

37    Revision or amendment.

38    Limitation on amendments.

39    Free transportation to public officer prohibited.

40    Highway funds.

41    Laws, effective date, initiative, referendum — Amendment or repeal.

42    Governmental continuity during emergency periods.

43    Redistricting.

Article III — THE EXECUTIVE

Sections

1    Executive department.

2    Governor, term of office.

3    Other executive officers, terms of office.

4    Returns of elections, canvass, etc.

5    General duties of governor.

6    Messages.

7    Extra legislative sessions.

8    Commander-in-chief.

9    Pardoning power.

10    Vacancy in office of governor.

11    Remission of fines and forfeitures.

12    Veto powers.

13    Vacancy in appointive office.

14    Salary.

15    Commissions, how issued.

16    Lieutenant governor, duties and salary.

17    Secretary of state, duties and salary.

18    Seal.

19    State treasurer, duties and salary.

20    State auditor, duties and salary.

21    Attorney general, duties and salary.

22    Superintendent of public instruction, duties and salary.

23    Commissioner of public lands — Compensation.

24    Records, where kept, etc.
25    Qualifications, compensation, offices which may be abolished.

## Article IV — THE JUDICIARY

Sections

1    Judicial power, where vested.
2    Supreme court.
2(a)  Temporary performance of judicial duties.
3    Election and terms of supreme court judges.
3(a)  Retirement of supreme court and superior court judges.
4    Jurisdiction.
5    Superior court — Election of judges, terms of, etc.
6    Jurisdiction of superior courts.
7    Exchange of judges — Judge pro tempore.
8    Absence of judicial officer.
9    Removal of judges, attorney general, etc.
10   Justices of the peace.
11   Courts of record.
12   Inferior courts.
13   Salaries of judicial officers — How paid, etc.
14   Salaries of supreme and superior court judges.
15   Ineligibility of judges.
16   Charging juries.
17   Eligibility of judges.
18   Supreme court reporter.
19   Judges may not practice law.
20   Decisions, when to be made.
21   Publication of opinions.
22   Clerk of the supreme court.
23   Court commissioners.
24   Rules for superior courts.
25   Reports of superior court judges.
26   Clerk of the superior court.
27   Style of process.
28   Oath of judges.
29   Election of superior court judges.
30   Court of appeals.
31   Commission on judicial conduct.

## Article V — IMPEACHMENT

Sections

1    Impeachment — Power of and procedure.
2    Officers liable to.
3    Removal from office.

Article VI — ELECTIONS AND ELECTIVE RIGHTS

Sections

1   Qualifications of electors.
1A  Voter qualifications for presidential elections.
2   School elections — Franchise, how extended.
3   Who disqualified.
4   Residence, contingencies affecting.
5   Voter — When privileged from arrest.
6   Ballot.
7   Registration.
8   Elections, time of holding.

Article VII — REVENUE AND TAXATION

Sections

1   Taxation.
2   Limitation on levies.
3   Taxation of federal agencies and property.
4   No surrender of power or suspension of tax on corporate property.
5   Taxes, how levied.
6   Taxes, how paid.
7   Annual statement.
8   Tax to cover deficiencies.
9   Special assessments or taxation for local improvements.
10  Retired persons property tax exemption.
11  Taxation based on actual use.
12  Budget stabilization account.

Article VIII — STATE, COUNTY, AND MUNICIPAL INDEBTEDNESS

Sections

1   State debt.
2   Powers extended in certain cases.
3   Special indebtedness, how authorized.
4   Moneys disbursed only by appropriations.
5   Credit not to be loaned.
6   Limitations upon municipal indebtedness.
7   Credit not to be loaned.
8   Port expenditures — Industrial development — Promotion.
9   State building authority.
10  Energy, water, or stormwater or sewer services conservation assistance.
11  Agricultural commodity assessments — Development, promotion, and hosting.

Article IX — EDUCATION

Sections

1    Preamble.

2    Public school system.

3    Funds for support.

4    Sectarian control or influence prohibited.

5    Loss of permanent fund to become state debt.

## Article X — MILITIA

Sections

1    Who liable to military duty.

2    Organization — Discipline — Officers — Power to call out.

3    Soldiers' home.

4    Public arms.

5    Privilege from arrest.

6    Exemption from military duty.

## Article XI — COUNTY, CITY, AND TOWNSHIP ORGANIZATION

Sections

1    Existing counties recognized.

2    County seats — Location and removal.

3    New counties.

4    County government and township organization.

5    County government.

6    Vacancies in township, precinct or road district office.

7    Tenure of office limited to two terms.

8    Salaries and limitations affecting.

9    State taxes not to be released or commuted.

10    Incorporation of municipalities.

11    Police and sanitary regulations.

12    Assessment and collection of taxes in municipalities.

13    Private property, when may be taken for public debt.

14    Private use of public funds prohibited.

15    Deposit of public funds.

16    Combined city-county.

## Article XII — CORPORATIONS OTHER THAN MUNICIPAL

Sections

1    Corporations, how formed.

2    Existing charters.

3    Existing charters not to be extended nor forfeiture remitted.

4    Liability of stockholders.

| | |
|---|---|
| 5 | Term "corporation," defined — Right to sue and be sued. |
| 6 | Limitations upon issuance of stock. |
| 7 | Foreign corporations. |
| 8 | Alienation of franchise not to release liabilities. |
| 9 | State not to loan its credit or subscribe for stock. |
| 10 | Eminent domain affecting. |
| 11 | Stockholder liability. |
| 12 | Receiving deposits by bank after insolvency. |
| 13 | Common carriers, regulation of. |
| 14 | Prohibition against combinations by carriers. |
| 15 | Prohibition against discriminating charges. |
| 16 | Prohibition against consolidating of competing lines. |
| 17 | Rolling stock, personalty for purpose of taxation. |
| 18 | Rates for transportation. |
| 19 | Telegraph and telephone companies. |
| 20 | Prohibition against free transportation for public officers. |
| 21 | Express companies. |
| 22 | Monopolies and trusts. |

Article XIII — STATE INSTITUTIONS

Sections

| | |
|---|---|
| 1 | Educational, reformatory, and penal institutions. |

Article XIV — SEAT OF GOVERNMENT

Sections

| | |
|---|---|
| 1 | State capital, location of. |
| 2 | Change of state capital. |
| 3 | Restrictions on appropriations for capitol buildings. |

Article XV — HARBORS AND TIDE WATERS

Sections

| | |
|---|---|
| 1 | Harbor line commission and restraint on disposition. |
| 2 | Leasing and maintenance of wharves, docks, etc. |
| 3 | Extension of streets over tide lands. |

Article XVI — SCHOOL AND GRANTED LANDS

Sections

| | |
|---|---|
| 1 | Disposition of. |
| 2 | Manner and terms of sale. |
| 3 | Limitations on sales. |
| 4 | How much may be offered in certain cases — Platting of. |
| 5 | Investment of permanent common school fund. |

6    Investment of higher education permanent funds.

## Article XVII — TIDE LANDS

Sections
1    Declaration of state ownership.
2    Disclaimer of certain lands.

## Article XVIII — STATE SEAL

Sections
1    Seal of the state.

## Article XIX — EXEMPTIONS

Sections
1    Exemptions — Homesteads, etc.

## Article XX — PUBLIC HEALTH AND VITAL STATISTICS

Sections
1    Board of health and bureau of vital statistics.
2    Regulations concerning medicine, surgery and pharmacy.

## Article XXI — WATER AND WATER RIGHTS

Sections
1    Public use of water.

## Article XXII — LEGISLATIVE APPORTIONMENT

Sections
1    Senatorial apportionment.
2    Apportionment of representatives.

## Article XXIII — AMENDMENTS

Sections
1    How made.
2    Constitutional conventions.
3    Submission to the people.

## Article XXIV — BOUNDARIES

Sections
1    State boundaries.

## Article XXV — JURISDICTION

Sections
1    Authority of the United States.

Article XXVI — COMPACT WITH THE
UNITED STATES

Article XXVII — SCHEDULE

Sections

| | | |
|---|---|---|
| 1 | Existing rights, actions, and contracts saved. | |
| 2 | Laws in force continued. | |
| 3 | Debts, fines, etc., to inure to the state. | |
| 4 | Recognizances. | |
| 5 | Criminal prosecutions and penal actions. | |
| 6 | Retention of territorial officers. | |
| 7 | Constitutional officers, when elected. | |
| 8 | Change of courts — Transfer of causes. | |
| 9 | Seals of courts and municipalities. | |
| 10 | Probate court, transfer of. | |
| 11 | Duties of first legislature. | |
| 12 | Election contests for superior judges, how decided. | |
| 13 | Representation in congress. | |
| 14 | Duration of term of certain officers. | |
| 15 | Election on adoption of Constitution, how to be conducted. | |
| 16 | When Constitution to take effect. | |
| 17 | Separate articles. | |
| 18 | Ballot. | |
| 19 | Appropriation. | |

Article XXVIII — COMPENSATION OF
STATE OFFICERS

Sections

1   Salaries for legislators, elected state officials,
    and judges — Independent commission —
    Referendum.

Article XXIX — INVESTMENTS OF PUBLIC
PENSION AND RETIREMENT FUNDS

Sections

1   May be invested as authorized by law.

Article XXX — COMPENSATION OF
PUBLIC OFFICERS

Sections

1   Authorizing compensation increase during term.

Article XXXI — SEX EQUALITY — RIGHTS
AND RESPONSIBILITY

Sections

1    Equality not denied because of sex.
2    Enforcement power of legislature.

Article XXXII — SPECIAL REVENUE FINANCING

Sections
1    Special revenue financing.

## PREAMBLE

We, the people of the State of Washington, grateful to the Supreme Ruler of the universe for our liberties, do ordain this constitution.

## ARTICLE I
## DECLARATION OF RIGHTS

**SECTION 1 POLITICAL POWER.** All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights.

**SECTION 2 SUPREME LAW OF THE LAND.** The Constitution of the United States is the supreme law of the land.

**SECTION 3 PERSONAL RIGHTS.** No person shall be deprived of life, liberty, or property, without due process of law.

**SECTION 4 RIGHT OF PETITION AND ASSEMBLAGE.** The right of petition and of the people peaceably to assemble for the common good shall never be abridged.

**SECTION 5 FREEDOM OF SPEECH.** Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right.

**SECTION 6 OATHS - MODE OF ADMINISTERING.** The mode of administering an oath, or affirmation, shall be such as may be most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered.

**SECTION 7 INVASION OF PRIVATE AFFAIRS OR HOME PROHIBITED.** No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

**SECTION 8 IRREVOCABLE PRIVILEGE, FRANCHISE OR IMMUNITY PROHIBITED**. No law granting irrevocably any privilege, franchise or immunity, shall be passed by the legislature.

**SECTION 9 RIGHTS OF ACCUSED PERSONS**. No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense.

**SECTION 10 ADMINISTRATION OF JUSTICE**. Justice in all cases shall be administered openly, and without unnecessary delay.

**SECTION 11 RELIGIOUS FREEDOM**. Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment: PROVIDED, HOWEVER, That this article shall not be so construed as to forbid the employment by the state of a chaplain for such of the state custodial, correctional, and mental institutions, or by a county's or public hospital district's hospital, health care facility, or hospice, as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony. [**AMENDMENT 88**, 1993 House Joint Resolution No. 4200, p 3062. Approved November 2, 1993.]

**Amendment 34 (1957) — Art. 1 Section 11 RELIGIOUS FREEDOM** — *Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment:* Provided, however, *That this article shall not be so construed as to forbid the employment by the state of a chaplain for such of the state custodial, correctional and mental institutions as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony.* [AMENDMENT 34, 1957 Senate Joint Resolution No. 14, p 1299. Approved November 4, 1958.]

**Amendment 4 (1904) — Art. 1 Section 11 RELIGIOUS FREEDOM —** *Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment. Provided, however, That this article shall not be so construed as to forbid the employment by the state of a chaplain for the state penitentiary, and for such of the state reformatories as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony.* [AMENDMENT 4, 1903 p 283 Section 1. Approved November, 1904.]

**Original text — Art. 1 Section 11 RELIGIOUS FREEDOM —** *Absolute freedom of conscience in all matters of religious sentiment, belief, and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person, or property, on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for, or applied to any religious worship, exercise or instruction, or the support of any religious establishment. No religious qualification shall be required for any public office, or employment, nor shall any person be incompetent as a witness, or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony.*

**SECTION 12 SPECIAL PRIVILEGES AND IMMUNITIES PROHIBITED.** No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

**SECTION 13 HABEAS CORPUS.** The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion the public safety requires it.

**SECTION 14 EXCESSIVE BAIL, FINES AND PUNISHMENTS.** Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted.

**SECTION 15 CONVICTIONS, EFFECT OF.** No conviction shall work corruption of blood, nor forfeiture of estate.

**SECTION 16 EMINENT DOMAIN.** Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: *Provided,* That the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use. [**AMENDMENT 9**, 1919 p 385 Section 1. Approved November, 1920.]

**Original text — Art. 1 Section 16 EMINENT DOMAIN —** *Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes or ditches on or across the lands of others for agricultural, domestic or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into the court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public.*

**SECTION 17 IMPRISONMENT FOR DEBT.** There shall be no imprisonment for debt, except in cases of absconding debtors.

**SECTION 18 MILITARY POWER, LIMITATION OF.** The military shall be in strict subordination to the civil power.

**SECTION 19 FREEDOM OF ELECTIONS.** All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

**SECTION 20 BAIL, WHEN AUTHORIZED.** All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great. Bail may be denied for offenses punishable by the possibility of life in prison upon

a showing by clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons, subject to such limitations as shall be determined by the legislature. [**AMENDMENT 104**, 2010 Engrossed Substitute House Joint Resolution No. 4220, p 3129. Approved November 2, 2010.]

**Original text** — Art. 1 Section 20 BAIL, WHEN AUTHORIZED — *All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great.*

**SECTION 21 TRIAL BY JURY.** The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

**SECTION 22 RIGHTS OF THE ACCUSED.** In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: *Provided,* The route traversed by any railway coach, train or public conveyance, and the water traversed by any boat shall be criminal districts; and the jurisdiction of all public offenses committed on any such railway car, coach, train, boat or other public conveyance, or at any station or depot upon such route, shall be in any county through which the said car, coach, train, boat or other public conveyance may pass during the trip or voyage, or in which the trip or voyage may begin or terminate. In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed. [**AMENDMENT 10**, 1921 p 79 Section 1. Approved November, 1922.]

**Original text** — Art. 1 Section 22 RIGHTS OF ACCUSED PERSONS — *In criminal prosecution, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, and the right to appeal in all cases; and, in no instance, shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed.*

**SECTION 23 BILL OF ATTAINDER, EX POST FACTO LAW, ETC.** No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed.

**SECTION 24 RIGHT TO BEAR ARMS.** The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.

**SECTION 25 PROSECUTION BY INFORMATION.** Offenses heretofore required to be prosecuted by indictment may be prosecuted by information, or by indictment, as shall be prescribed by law.

**SECTION 26 GRAND JURY.** No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order.

**SECTION 27 TREASON, DEFINED, ETC.** Treason against the state shall consist only in levying war against the state, or adhering to its enemies, or in giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or confession in open court.

**SECTION 28 HEREDITARY PRIVILEGES ABOLISHED.** No hereditary emoluments, privileges, or powers, shall be granted or conferred in this state.

**SECTION 29 CONSTITUTION MANDATORY.** The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise.

**SECTION 30 RIGHTS RESERVED.** The enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people.

**SECTION 31 STANDING ARMY.** No standing army shall be kept up by this state in time of peace, and no soldier shall in time of peace be quartered in any house without the consent of its owner, nor in time of war except in the manner prescribed by law.

**SECTION 32 FUNDAMENTAL PRINCIPLES.** A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government.

**SECTION 33 RECALL OF ELECTIVE OFFICERS.** Every elective public officer of the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or who has violated his oath of office, stating the matters complained of, signed by the percentages of the qualified

electors thereof, hereinafter provided, the percentage required to be computed from the total number of votes cast for all candidates for his said office to which he was elected at the preceding election, is filed with the officer with whom a petition for nomination, or certificate for nomination, to such office must be filed under the laws of this state, and the same officer shall call a special election as provided by the general election laws of this state, and the result determined as therein provided. [**AMENDMENT 8**, 1911 p 504 Section 1. Approved November, 1912.]

**SECTION 34 SAME**. The legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33) of this article, and to facilitate its operation and effect without delay: *Provided,* That the authority hereby conferred upon the legislature shall not be construed to grant to the legislature any exclusive power of lawmaking nor in any way limit the initiative and referendum powers reserved by the people. The percentages required shall be, state officers, other than judges, senators and representatives, city officers of cities of the first class, school district boards in cities of the first class; county officers of counties of the first, second and third classes, twenty-five per cent. Officers of all other political subdivisions, cities, towns, townships, precincts and school districts not herein mentioned, and state senators and representatives, thirty-five per cent. [**AMENDMENT 8**, 1911 p 504 Section 1. Approved November, 1912.]

**SECTION 35 VICTIMS OF CRIMES — RIGHTS**. Effective law enforcement depends on cooperation from victims of crime. To ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect, victims of crime are hereby granted the following basic and fundamental rights.
Upon notifying the prosecuting attorney, a victim of a crime charged as a felony shall have the right to be informed of and, subject to the discretion of the individual presiding over the trial or court proceedings, attend trial and all other court proceedings the defendant has the right to attend, and to make a statement at sentencing and at any proceeding where the defendant's release is considered, subject to the same rules of procedure which govern the defendant's rights. In the event the victim is deceased, incompetent, a minor, or otherwise unavailable, the prosecuting attorney may identify a representative to appear to exercise the victim's rights. This provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding nor a basis for providing a victim or the victim's representative with court appointed counsel. [**AMENDMENT 84**, 1989 Senate Joint Resolution No. 8200, p 2999. Approved November 7, 1989.]

**ARTICLE II**
**LEGISLATIVE DEPARTMENT**

**SECTION 1 LEGISLATIVE POWERS, WHERE VESTED**. The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people re-

serve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section, or part of any bill, act, or law passed by the legislature.

(a) Initiative: The first power reserved by the people is the initiative. Every such petition shall include the full text of the measure so proposed. In the case of initiatives to the legislature and initiatives to the people, the number of valid signatures of legal voters required shall be equal to eight percent of the votes cast for the office of governor at the last gubernatorial election preceding the initial filing of the text of the initiative measure with the secretary of state.

Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall certify the results within forty days of the filing. If certification is not complete by the date that the legislature convenes, he shall provisionally certify the measure pending final certification of the measure. Such initiative measures, whether certified or provisionally certified, shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.

(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted: *Provided,* That the legislature may not order a referendum on any initiative measure enacted by the legislature under the foregoing subsection (a).

The number of valid signatures of registered voters required on a petition for referendum of an act of the legislature or any part thereof, shall be equal to or exceeding four percent of the votes cast for the office of governor at the last gubernatorial election preceding the filing of the text of the referendum measure with the secretary of state.

(c) No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment: *Provided,* That any such act, law, or bill may be amended within two years after such enactment at any regular or special session of the legislature by a vote of two-thirds of all the members elected to each house with full compliance with section 12, Article III, of the Washington Constitution, and no amendatory law adopted in accordance with this provision shall be subject to referendum. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon.

(d) The filing of a referendum petition against one or more items, sections, or parts of any act, law, or bill shall not delay the remainder of the measure from becoming operative. Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. The veto power of the governor shall not extend to measures initiated by or referred to the people. All elections on measures referred to the people of the state shall be had at the next succeeding regular general election following the filing of the measure with the secretary of state, except when the legislature shall order a special election. Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon: *Provided,* That the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. The style of all bills proposed by initiative petition shall be: "Be it enacted by the people of the State of Washington." This section shall not be construed to deprive any member of the legislature of the right to introduce any measure. All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation.

(e) The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the Constitution referred to the people with arguments for and against the laws and amendments so referred. The secretary of state shall send one copy of the publication to each individual place of residence in the state and shall make such additional distribution as he shall determine necessary to reasonably assure that each voter will have an opportunity to study the measures prior to election. [**AMENDMENT 72**, 1981 Substitute Senate Joint Resolution No. 133, p 1796. Approved November 3, 1981.]

*Referendum procedures regarding salaries: Art. 28 Section 1.*

**Amendment 7 (1911) — Art. 2 Section 1 Legislative Powers, Where Vested** — *The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.*

*(a) Initiative: The first power reserved by the people is the initiative.* Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition, *and every such petition shall include the full text of the measure so proposed. [Note: Signature requirements were superseded by Art. 2 Sec. 1(a), AMENDMENT 30.] Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.*

*(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted.* Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition. *[Note:*

*Signature requirements were superseded by Art. 2 Sec. 1(a), AMENDMENT 30.]*

(c) No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon. *[Note: Subsection (c) was expressly superseded by Art. 2 Sec. 41, AMENDMENT 26.]*

*(d) The filing of a referendum petition against one or more items, sections or parts of any act, law or bill shall not delay the remainder of the measure from becoming operative. Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. The veto power of the governor shall not extend to measures initiated by or referred to the people. All elections on measures referred to the people of the state shall be had at the biennial regular elections, except when the legislature shall order a special election. Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon: Provided, That the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. The style of all bills proposed by initiative petition shall be: "Be it enacted by the people of the State of Washington." This section shall not be construed to deprive any member of the legislature of the right to introduce any measure.* The whole number of electors who voted for governor at the regular gubernatorial election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted. *[Note: Cf. Art. 2 Sec. 1(a), AMENDMENT 30.] All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation.*

The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the Constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon. *[Note: This paragraph was expressly superseded by subsection (e) of this section, which was added by AMENDMENT 36.]*

*(e) The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the Constitution referred to the people with arguments for and against the laws and amendments so referred. The secretary of state shall send one copy of the publication to each individual place of residence in the state and shall make such additional distribution as he shall determine necessary to reasonably assure that each voter will have an opportunity to study the measures prior to election. These provisions supersede the provisions*

*set forth in the last paragraph of section 1 of this article as amended by the seventh amendment to the Constitution of this state.* [AMENDMENT 7, 1911 House Bill No. 153 p 136. Approved November, 1912; Subsection (e) added by AMENDMENT 36, 1961 Senate Joint Resolution No. 9, p 2751. Approved November, 1962.]

**Original text — Art. 2 Section 1 LEGISLATIVE POWERS, WHERE VESTED** — *The legislative powers shall be vested in a senate and house of representatives, which shall be called the legislature of the State of Washington.*

Note: Art. 2 Sec. 31 was also stricken by AMENDMENT 7.

**SECTION 1(a) INITIATIVE AND REFERENDUM, SIGNATURES REQUIRED.** [Stricken by *AMENDMENT 72*, 1981 Substitute Senate Joint Resolution No. 133, p 1796. Approved November 3, 1981.]

**Amendment 30 (1956) — Art. 2 Section 1(a) INITIATIVE AND REFERENDUM, SIGNATURES REQUIRED** — *Hereafter, the number of valid signatures of legal voters required upon a petition for an initiative measure shall be equal to eight per centum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. Hereafter, the number of valid signatures of legal voters required upon a petition for a referendum of an act of the legislature or any part thereof, shall be equal to four per centum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. These provisions supersede the requirements specified in section 1 of this article as amended by the seventh amendment to the Constitution of this state.* [AMENDMENT 30, 1955 Senate Joint Resolution No. 4, p 1860. Approved November 6, 1956.]

**SECTION 2 HOUSE OF REPRESENTATIVES AND SENATE.** The house of representatives shall be composed of not less than sixty-three nor more than ninety-nine members. The number of senators shall not be more than one-half nor less than one-third of the number of members of the house of representatives. The first legislature shall be composed of seventy members of the house of representatives, and thirty-five senators.

**SECTION 3 THE CENSUS.** [Repealed by *AMENDMENT 74*, 1983 Substitute Senate Joint Resolution No. 103, p 2202. Approved November 8, 1983.]

**Original text — Art. 2 Section 3 THE CENSUS** — *The legislature shall provide by law for an enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at the first session after such enumeration, and also after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, excluding Indians not taxed, soldiers, sailors and officers of the United States army and navy in active service.*

**SECTION 4 ELECTION OF REPRESENTATIVES AND TERM OF OFFICE.** Members of the house of representatives shall be elected in the year eighteen hundred and eighty-nine at the time and in the manner provided by this Constitution, and shall hold their offices for the term of one year and until their successors shall be elected.

**SECTION 5 ELECTIONS, WHEN TO BE HELD.** The next election of the members of the house of representatives after the adoption of this Constitution shall be on the first Tuesday after the first Monday of November, eighteen hundred and ninety, and thereafter, members of the house of representatives shall be elected biennially and their term of office shall be two years; and each election shall be on the first Tuesday after the first Monday in November, unless otherwise changed by law.

**SECTION 6 ELECTION AND TERM OF OFFICE OF SENATORS.** After the first election the senators shall be elected by single districts of convenient and contiguous territory, at the same time and in the same manner as members of the house of representatives are required to be elected; and no representative district shall be divided in the formation of a senatorial district. They shall be elected for the term of four years, one-half of their number retiring every two years. The senatorial districts shall be numbered consecutively, and the senators chosen at the first election had by virtue of this Constitution, in odd numbered districts, shall go out of office at the end of the first year; and the senators, elected in the even numbered districts, shall go out of office at the end of the third year.

**SECTION 7 QUALIFICATIONS OF LEGISLATORS.** No person shall be eligible to the legislature who shall not be a citizen of the United States and a qualified voter in the district for which he is chosen.

**SECTION 8 JUDGES OF THEIR OWN ELECTION AND QUALIFICATION - QUORUM.** Each house shall be the judge of the election, returns and qualifications of its own members, and a majority of each house shall constitute a quorum to do business; but a smaller number may adjourn from day to day and may compel the attendance of absent members, in such manner and under such penalties as each house may provide.

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 9 RULES OF PROCEDURE.** Each house may determine the rules of its own proceedings, punish for contempt and disorderly behavior, and, with the concurrence of two-thirds of all the members elected, expel a member, but no member shall be expelled a second time for the same offense.

**SECTION 10 ELECTION OF OFFICERS.** Each house shall elect its own officers; and when the lieutenant governor shall not attend as president, or shall act as governor, the senate shall choose a temporary

president. When presiding, the lieutenant governor shall have the deciding vote in case of an equal division of the senate.

**SECTION 11 JOURNAL, PUBLICITY OF MEETINGS - ADJOURNMENTS.** Each house shall keep a journal of its proceedings and publish the same, except such parts as require secrecy. The doors of each house shall be kept open, except when the public welfare shall require secrecy. Neither house shall adjourn for more than three days, nor to any place other than that in which they may be sitting, without the consent of the other.

**SECTION 12 SESSIONS, WHEN — DURATION.** (1) Regular Sessions. A regular session of the legislature shall be convened each year. Regular sessions shall convene on such day and at such time as the legislature shall determine by statute. During each odd-numbered year, the regular session shall not be more than one hundred five consecutive days. During each even-numbered year, the regular session shall not be more than sixty consecutive days.

(2) Special Legislative Sessions. Special legislative sessions may be convened for a period of not more than thirty consecutive days by proclamation of the governor pursuant to Article III, section 7 of this Constitution. Special legislative sessions may also be convened for a period of not more than thirty consecutive days by resolution of the legislature upon the affirmative vote in each house of two-thirds of the members elected or appointed thereto, which vote may be taken and resolution executed either while the legislature is in session or during any interim between sessions in accordance with such procedures as the legislature may provide by law or resolution. The resolution convening the legislature shall specify a purpose or purposes for the convening of a special session, and any special session convened by the resolution shall consider only measures germane to the purpose or purposes expressed in the resolution, unless by resolution adopted during the session upon the affirmative vote in each house of two-thirds of the members elected or appointed thereto, an additional purpose or purposes are expressed. The specification of purpose by the governor pursuant to Article III, section 7 of this Constitution shall be considered by the legislature but shall not be mandatory.

(3) Committees of the Legislature. Standing and special committees of the legislature shall meet and conduct official business pursuant to such rules as the legislature may adopt. [**AMENDMENT 68**, 1979 Substitute Senate Joint Resolution No. 110, p 2286. Approved November 6, 1979.]

*Extraordinary sessions to reconsider vetoes: Art. 3 Section 12.*

*Sessions to convene on the second Monday in January: RCW 44.04.010.*

**Original text — Art. 2 Section 12 SESSIONS, WHEN — DURATION —** *The first legislature shall meet on the first Wednesday after the first Monday in November, A. D., 1889. The second legislature shall meet on the first Wednesday after the first Monday in January, A. D., 1891, and sessions of the legislature shall be held biennially thereafter, unless specially convened by the governor, but the times of meeting of subsequent sessions may be changed by the legislature. Af-*

*ter the first legislature the sessions shall not be more than sixty days.*

**SECTION 13 LIMITATION ON MEMBERS HOLDING OFFICE IN THE STATE.** No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created during the term for which he was elected. Any member of the legislature who is appointed or elected to any civil office in the state, the emoluments of which have been increased during his legislative term of office, shall be compensated for the initial term of the civil office at the level designated prior to the increase in emoluments. [**AMENDMENT 69**, 1979 Senate Joint Resolution No. 112, p 2287. Approved November 6, 1979.]

**Original text — Art 2 Section 13 LIMITATION ON MEMBERS HOLDING OFFICE IN THE STATE** — *No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected.*

**SECTION 14 SAME, FEDERAL OR OTHER OFFICE.** No person, being a member of congress, or holding any civil or military office under the United States or any other power, shall be eligible to be a member of the legislature; and if any person after his election as a member of the legislature, shall be elected to congress or be appointed to any other office, civil or military, under the government of the United States, or any other power, his acceptance thereof shall vacate his seat, provided, that officers in the militia of the state who receive no annual salary, local officers and postmasters, whose compensation does not exceed three hundred dollars per annum, shall not be ineligible.

**SECTION 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE.** Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the county legislative authority of the county in which the vacancy occurs: *Provided,* That the person appointed to fill the vacancy must be from the same legislative district, county, or county commissioner or council district and the same political party as the legislator or partisan county elective officer whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and in case a majority of the members of the county legislative authority do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district, county, or county commissioner or council district and of the same political party as the legislator or partisan county elective officer whose office has been vacated, and the person so appointed shall hold office until his or her successor is elected at the next general election, and has qualified: *Provided,* That in case of a vacancy occurring after the general election in a year that the office

appears on the ballot and before the start of the next term, the term of the successor who is of the same party as the incumbent may commence once he or she has qualified and shall continue through the term for which he or she was elected: *Provided,* That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county legislative authorities of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of the members of the county legislative authority do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator whose office has been vacated. [**AMENDMENT 96**, 2003 House Joint Resolution No. 4206, p 2819. Approved November 4, 2003.]

*Governmental continuity during emergency periods: Art. 2 Section 42.*

*Vacancies in county, etc., offices, how filled: Art. 11 Section 6.*

**Amendment 52, part (1967) — Art. 2 Section 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE** — *Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs: Provided, That the person appointed to fill the vacancy must be from the same legislative district, county or county commissioner district and the same political party as the legislator or partisan county elective officer whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district, county or county commissioner district and of the same political party as the legislator or partisan county elective officer whose office has been vacated, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified: Provided, That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator*

*whose office has been vacated.* [AMENDMENT 52, part, 1967 Senate Joint Resolution No. 24, part; see 1969 p 2976. Approved November 5, 1968.]

**Amendment 32 (1956) — Art. 2 Section 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE** — *Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs: Provided, That the person appointed to fill the vacancy must be from the same legislative district and the same political party as the legislator whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified:* Provided, *That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator whose office has been vacated.* [AMENDMENT 32, 1955 Senate Joint Resolution No. 14, p 1862. Approved November 6, 1956.]

**Amendment 13 (1930) — Art. 2 Section 15 VACANCIES IN LEGISLATURE** — *Such vacancies as may occur in either house of the legislature shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified:* Provided, *That in case of a vacancy occurring in the office of joint senator, the vacancy shall be filled by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial district.* [AMENDMENT 13, 1929 p 690. Approved November, 1930.]

**Original text — Art. 2 Section 15 WRITS OF ELECTION TO FILL VACANCIES** — *The governor shall issue writs of election to fill such vacancies as may occur in either house of the legislature.*

**SECTION 16 PRIVILEGES FROM ARREST**. Members of the legislature shall be privileged from arrest in all cases except treason, felony and breach of the peace; they shall not be subject to any civil process during the session of the legislature, nor for fifteen days next before the commencement of each session.

**SECTION 17 FREEDOM OF DEBATE**. No member of the legislature shall be liable in any civil action or criminal prosecution whatever, for words spoken in debate.

**SECTION 18 STYLE OF LAWS.** The style of the laws of the state shall be: "Be it enacted by the Legislature of the State of Washington." And no laws shall be enacted except by bill.

**SECTION 19 BILL TO CONTAIN ONE SUBJECT.** No bill shall embrace more than one subject, and that shall be expressed in the title.

**SECTION 20 ORIGIN AND AMENDMENT OF BILLS.** Any bill may originate in either house of the legislature, and a bill passed by one house may be amended in the other.

**SECTION 21 YEAS AND NAYS.** The yeas and nays of the members of either house shall be entered on the journal, on the demand of one-sixth of the members present.

**SECTION 22 PASSAGE OF BILLS.** No bill shall become a law unless on its final passage the vote be taken by yeas and nays, the names of the members voting for and against the same be entered on the journal of each house, and a majority of the members elected to each house be recorded thereon as voting in its favor.

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 23 COMPENSATION OF MEMBERS.** Each member of the legislature shall receive for his services five dollars for each day's attendance during the session, and ten cents for every mile he shall travel in going to and returning from the place of meeting of the legislature, on the most usual route.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 24 LOTTERIES AND DIVORCE.** The legislature shall never grant any divorce. Lotteries shall be prohibited except as specifically authorized upon the affirmative vote of sixty percent of the members of each house of the legislature or, notwithstanding any other provision of this Constitution, by referendum or initiative approved by a sixty percent affirmative vote of the electors voting thereon. [**AMENDMENT 56**, 1971 Senate Joint Resolution No. 5, p 1828. Approved November 7, 1972.]

**Original text — Art. 2 Section 24 LOTTERIES AND DIVORCE —** *The legislature shall never authorize any lottery or grant any divorce.*

**SECTION 25 EXTRA COMPENSATION PROHIBITED.** The legislature shall never grant any extra compensation to any public officer, agent, employee, servant, or contractor, after the services shall have been rendered, or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of of-

fice. Nothing in this section shall be deemed to prevent increases in pensions after such pensions shall have been granted. [**AMENDMENT 35**, 1957 Senate Joint Resolution No. 18, p 1301. Approved November 4, 1958.]

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1.*

*Increase during term of certain officers, authorized: Art. 30 Section 1.*

*Increase or diminution of compensation during term of office prohibited.*
  *county, city, town or municipal officers: Art. 11 Section 8.*
  *judicial officers: Art. 4 Section 13.*
  *state officers: Art. 3 Section 25.*

**Original text — Art. 2 Section 25 EXTRA COMPENSATION, PROHIBITED** *— The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered, or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office.*

**SECTION 26 SUITS AGAINST THE STATE.** The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state.

**SECTION 27 ELECTIONS — VIVA VOCE VOTE.** In all elections by the legislature the members shall vote viva voce, and their votes shall be entered on the journal.

**SECTION 28 SPECIAL LEGISLATION.** The legislature is prohibited from enacting any private or special laws in the following cases:
    1. For changing the names of persons, or constituting one person the heir at law of another.
    2. For laying out, opening or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands shall have been or may be granted by congress.
    3. For authorizing persons to keep ferries wholly within this state.
    4. For authorizing the sale or mortgage of real or personal property of minors, or others under disability.
    5. For assessment or collection of taxes, or for extending the time for collection thereof.
    6. For granting corporate powers or privileges.
    7. For authorizing the apportionment of any part of the school fund.
    8. For incorporating any town or village or to amend the charter thereof.
    9. From giving effect to invalid deeds, wills or other instruments.

10. Releasing or extinguishing in whole or in part, the indebtedness, liability or other obligation, of any person, or corporation to this state, or to any municipal corporation therein.

11. Declaring any person of age or authorizing any minor to sell, lease, or encumber his or her property.

12. Legalizing, except as against the state, the unauthorized or invalid act of any officer.

13. Regulating the rates of interest on money.

14. Remitting fines, penalties or forfeitures.

15. Providing for the management of common schools.

16. Authorizing the adoption of children.

17. For limitation of civil or criminal actions.

18. Changing county lines, locating or changing county seats, provided, this shall not be construed to apply to the creation of new counties.

*Corporations for municipal purposes shall not be created by special laws: Art. 11 Section 10.*

**SECTION 29 CONVICT LABOR**. The labor of inmates of this state shall not be let out by contract to any person, copartnership, company, or corporation, except as provided by statute, and the legislature shall by law provide for the working of inmates for the benefit of the state, including the working of inmates in state-run inmate labor programs. Inmate labor programs provided by statute that are operated and managed, in total or in part, by any profit or nonprofit entities shall be operated so that the programs do not unfairly compete with Washington businesses as determined by law. [**AMENDMENT 100**, 2007 Senate Joint Resolution No. 8212, p 3143. Approved November 6, 2007.]

**Original text — Art. 2 Section 29 CONVICT LABOR** — *After the first day of January eighteen hundred and ninety the labor of convicts of this state shall not be let out by contract to any person, copartnership, company or corporation, and the legislature shall by law provide for the working of convicts for the benefit of the state.*

**SECTION 30 BRIBERY OR CORRUPT SOLICITATION**. The offense of corrupt solicitation of members of the legislature, or of public officers of the state or any municipal division thereof, and any occupation or practice of solicitation of such members or officers to influence their official action, shall be defined by law, and shall be punished by fine and imprisonment. Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practice of solicitation, and shall not be permitted to withhold his testimony on the ground that it may criminate himself or subject him to public infamy, but such testimony shall not afterwards be used against him in any judicial proceeding - except for perjury in giving such testimony - and any person convicted of either of the offenses aforesaid, shall as part of the punishment therefor, be disqualified from ever holding any position of honor, trust or profit in this state. A member who has a private interest in any bill or measure proposed or pending before the legislature, shall disclose the fact to the house of which he is a member, and shall not vote thereon.

**SECTION 31 LAWS, WHEN TO TAKE EFFECT.** [This section stricken by *AMENDMENT 7*, 1911 House Bill No. 153, p 136. Approved November, 1912.]

**Original text — Art. 2 Section 31 LAWS, WHEN TO TAKE EFFECT —** *No law, except appropriation bills, shall take effect until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency (which emergency must be expressed in the preamble or in the body of the act) the legislature shall otherwise direct by a vote of two-thirds of all the members elected to each house; said vote to be taken by yeas and nays and entered on the journals.*

*Effective dates of laws: Art. 2 Sections 1 and 41.*

**SECTION 32 LAWS, HOW SIGNED.** No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session, and under such rules as the legislature shall prescribe.

**SECTION 33 ALIEN OWNERSHIP.** [Repealed by *AMENDMENT 42*, 1965 ex.s. Senate Joint Resolution No. 20, p 2816. Approved November 8, 1966.]

**Amendment 29 (1954) — Art. 2 Section 33 ALIEN OWNERSHIP —** *The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void:* Provided, *That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom:* And provided further, *That the provisions of this section shall not apply to the citizens of such of the Provinces of the Dominion of Canada as do not expressly or by implication prohibit ownership of provincial lands by citizens of this state.* [AMENDMENT 29, 1953 House Joint Resolution No. 16, p 853. Approved November 2, 1954.]

**Amendment 24 (1950) — Art. 2 Section 33 ALIEN OWNERSHIP —** *The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void:* Provided, *That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom:* And provided further, *That the provisions of this section shall not apply to the citizens of such of the Provinces of the Dominion of Canada as do not expressly or by implication prohibit ownership of provincial lands by citizens of this state. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an*

*alien for the purposes of this prohibition.* [AMENDMENT 24, 1949 Senate Joint Resolution No. 9, p 999. Approved November, 1950.]

**Original text — Art. 2 Section 33 OWNERSHIP OF LANDS BY ALIENS, PROHIBITED — Exceptions —** *The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly or in trust for such alien shall be void: Provided, That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire-clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered on alien for the purposes of this prohibition.*

**SECTION 34 BUREAU OF STATISTICS, AGRICULTURE AND IMMIGRATION.** There shall be established in the office of the secretary of state, a bureau of statistics, agriculture and immigration, under such regulations as the legislature may provide.

**SECTION 35 PROTECTION OF EMPLOYEES.** The legislature shall pass necessary laws for the protection of persons working in mines, factories and other employments dangerous to life or deleterious to health; and fix pains and penalties for the enforcement of the same.

**SECTION 36 WHEN BILLS MUST BE INTRODUCED.** No bill shall be considered in either house unless the time of its introduction shall have been at least ten days before the final adjournment of the legislature, unless the legislature shall otherwise direct by a vote of two-thirds of all the members elected to each house, said vote to be taken by yeas and nays and entered upon the journal, or unless the same be at a special session.

**SECTION 37 REVISION OR AMENDMENT.** No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.

**SECTION 38 LIMITATION ON AMENDMENTS.** No amendment to any bill shall be allowed which shall change the scope and object of the bill.

**SECTION 39 FREE TRANSPORTATION TO PUBLIC OFFICER PROHIBITED.** It shall not be lawful for any person holding public office in this state to accept or use a pass or to purchase transportation from any railroad or other corporation, other than as the same may be purchased by the general public, and the legislature shall pass laws to enforce this provision.

**SECTION 40 HIGHWAY FUNDS.** All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes. Such highway purposes shall be construed to include the following:

(a) The necessary operating, engineering and legal expenses connected with the administration of public highways, county roads and city streets;

(b) The construction, reconstruction, maintenance, repair, and betterment of public highways, county roads, bridges and city streets; including the cost and expense of (1) acquisition of rights-of-way, (2) installing, maintaining and operating traffic signs and signal lights, (3) policing by the state of public highways, (4) operation of movable span bridges, (5) operation of ferries which are a part of any public highway, county road, or city street;

(c) The payment or refunding of any obligation of the State of Washington, or any political subdivision thereof, for which any of the revenues described in section 1 may have been legally pledged prior to the effective date of this act;

(d) Refunds authorized by law for taxes paid on motor vehicle fuels;

(e) The cost of collection of any revenues described in this section:

*Provided,* That this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles. [**AMENDMENT 18**, 1943 House Joint Resolution No. 4, p 938. Approved November, 1944.]

**SECTION 41 LAWS, EFFECTIVE DATE, INITIATIVE, REFERENDUM —AMENDMENT OR REPEAL.** No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment: *Provided,* That any such act, law or bill may be amended within two years after such enactment at any regular or special session of the legislature by a vote of two-thirds of all the members elected to each house with full compliance with section 12, Article III, of the Washington Constitution, and no amendatory law adopted in accordance with this provision shall be subject to referendum. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon. These provisions supersede the provisions of subsection (c) of section 1 of this article as amended by the seventh amendment to the Constitution of this state. [**AMENDMENT 26**, 1951 Substitute Senate Joint Resolution No. 7, p 959. Approved November 4, 1952.]

**Reviser's note:** (1) In third sentence, comma between "general" and "regular" omitted in conformity with enrolled resolution.

(2) Subsection (c) of section 1 of this article was amended by Amendment 72, approved November 3, 1981.

**SECTION 42 GOVERNMENTAL CONTINUITY DURING EMERGENCY PERIODS.** The legislature, in order to insure continuity of state and local governmental operations in periods of emergency resulting from enemy attack, shall have the power and the duty, immediately upon and after adoption of this amendment, to enact legislation providing for prompt and temporary succession to the powers and duties of public offices of whatever nature and whether filled by election or appointment, the incumbents and legal successors of which may become unavailable for carrying on the powers and duties of such offices; the legislature shall likewise enact such other measures as may be necessary and proper for insuring the continuity of governmental operations during such emergencies. Legislation enacted under the powers conferred by this amendment shall in all respects conform to the remainder of the Constitution: *Provided,* That if, in the judgment of the legislature at the time of disaster, conformance to the provisions of the Constitution would be impracticable or would admit of undue delay, such legislation may depart during the period of emergency caused by enemy attack only, from the following sections of the Constitution:
Article 14, Sections 1 and 2, Seat of Government;
Article 2, Sections 8, 15 (Amendments 13 and 32), and 22, Membership, Quorum of Legislature and Passage of Bills;
Article 3, Section 10 (Amendment 6), Succession to Governorship: *Provided,* That the legislature shall not depart from Section 10, Article III, as amended by Amendment 6, of the state Constitution relating to the Governor's office so long as any successor therein named is available and capable of assuming the powers and duties of such office as therein prescribed;
Article 3, Section 13, Vacancies in State Offices;
Article 11, Section 6, Vacancies in County Offices;
Article 11, Section 2, Seat of County Government;
Article 3, Section 24, State Records. [**AMENDMENT 39**, 1961 House Joint Resolution No. 9, p 2758. Approved November, 1962.]

*Continuity of government act: Chapter 42.14 RCW.*

**SECTION 43 REDISTRICTING.** (1) In January of each year ending in one, a commission shall be established to provide for the redistricting of state legislative and congressional districts.
(2) The commission shall be composed of five members to be selected as follows: The legislative leader of the two largest political parties in each house of the legislature shall appoint one voting member to the commission by January 15th of each year ending in one. By January 31st of each year ending in one, the four appointed members, by an affirmative vote of at least three, shall appoint the remaining member. The fifth member of the commission, who shall be nonvoting, shall act as its chairperson. If any appointing authority fails to make the required appointment by the date established by this subsection, within five days after that date the supreme court shall make the required appointment.
(3) No elected official and no person elected to legislative district, county, or state political party office may serve on the commission. A commission member shall not have been an elected official

and shall not have been an elected legislative district, county, or state political party officer within two years of his or her appointment to the commission. The provisions of this subsection do not apply to the office of precinct committee person.

(4) The legislature shall enact laws providing for the implementation of this section, to include additional qualifications for commissioners and additional standards to govern the commission. The legislature shall appropriate funds to enable the commission to carry out its duties.

(5) Each district shall contain a population, excluding nonresident military personnel, as nearly equal as practicable to the population of any other district. To the extent reasonable, each district shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries. The commission's plan shall not provide for a number of legislative districts different than that established by the legislature. The commission's plan shall not be drawn purposely to favor or discriminate against any political party or group.

(6) The commission shall complete redistricting as soon as possible following the federal decennial census, but no later than November 15th of each year ending in one. At least three of the voting members shall approve such a redistricting plan. If three of the voting members of the commission fail to approve a plan within the time limitations provided in this subsection, the supreme court shall adopt a plan by April 30th of the year ending in two in conformance with the standards set forth in subsection (5) of this section.

(7) The legislature may amend the redistricting plan but must do so by a two-thirds vote of the legislators elected or appointed to each house of the legislature. Any amendment must have passed both houses by the end of the thirtieth day of the first session convened after the commission has submitted its plan to the legislature. After that day, the plan, with any legislative amendments, constitutes the state districting law.

(8) The legislature shall enact laws providing for the reconvening of a commission for the purpose of modifying a districting law adopted under this section. Such reconvening requires a two-thirds vote of the legislators elected or appointed to each house of the legislature. The commission shall conform to the standards prescribed under subsection (5) of this section and any other standards or procedures that the legislature may provide by law. At least three of the voting members shall approve such a modification. Any modification adopted by the commission may be amended by a two-thirds vote of the legislators elected and appointed to each house of the legislature. The state districting law shall include the modifications with amendments, if any.

(9) The legislature shall prescribe by law the terms of commission members and the method of filling vacancies on the commission.

(10) The supreme court has original jurisdiction to hear and decide all cases involving congressional and legislative redistricting.

(11) Legislative and congressional districts may not be changed or established except pursuant to this section. A districting plan and any legislative amendments to the plan are not subject to Article III, section 12 of this Constitution. [**AMENDMENT 108**, 2016 Senate Joint Resolution No. 8210. Approved November 8, 2016.]

**Amendment 74 (1983) — Art. 2 Section 43 REDISTRICTING —** *(1) In January of each year ending in one, a commission shall be established to provide for the redistricting of state legislative and congressional districts.*

*(2) The commission shall be composed of five members to be selected as follows: The legislative leader of the two largest political parties in each house of the legislature shall appoint one voting member to the commission by January 15th of each year ending in one. By January 31st of each year ending in one, the four appointed members, by an affirmative vote of at least three, shall appoint the remaining member. The fifth member of the commission, who shall be nonvoting, shall act as its chairperson. If any appointing authority fails to make the required appointment by the date established by this subsection, within five days after that date the supreme court shall make the required appointment.*

*(3) No elected official and no person elected to legislative district, county, or state political party office may serve on the commission. A commission member shall not have been an elected official and shall not have been an elected legislative district, county, or state political party officer within two years of his or her appointment to the commission. The provisions of this subsection do not apply to the office of precinct committee person.*

*(4) The legislature shall enact laws providing for the implementation of this section, to include additional qualifications for commissioners and additional standards to govern the commission. The legislature shall appropriate funds to enable the commission to carry out its duties.*

*(5) Each district shall contain a population, excluding nonresident military personnel, as nearly equal as practicable to the population of any other district. To the extent reasonable, each district shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries. The commission's plan shall not provide for a number of legislative districts different than that established by the legislature. The commission's plan shall not be drawn purposely to favor or discriminate against any political party or group.*

*(6) The commission shall complete redistricting as soon as possible following the federal decennial census, but no later than January 1st of each year ending in two. At least three of the voting members shall approve such a redistricting plan. If three of the voting members of the commission fail to approve a plan within the time limitations provided in this subsection, the supreme court shall adopt a plan by April 30th of the year ending in two in conformance with the standards set forth in subsection (5) of this section.*

*(7) The legislature may amend the redistricting plan but must do so by a two-thirds vote of the legislators elected or appointed to each house of the legislature. Any amendment must have passed both houses by the end of the thirtieth day of the first session convened after the commission has submitted its plan to the legislature. After that day, the plan, with any legislative amendments, constitutes the state districting law.*

*(8) The legislature shall enact laws providing for the reconvening of a commission for the purpose of modifying a districting law adopted under this section. Such reconvening requires a two-thirds vote of the legislators elected or appointed to each house of the leg-*

*islature. The commission shall conform to the standards prescribed under subsection (5) of this section and any other standards or procedures that the legislature may provide by law. At least three of the voting members shall approve such a modification. Any modification adopted by the commission may be amended by a two-thirds vote of the legislators elected and appointed to each house of the legislature. The state districting law shall include the modifications with amendments, if any.*

*(9) The legislature shall prescribe by law the terms of commission members and the method of filling vacancies on the commission.*

*(10) The supreme court has original jurisdiction to hear and decide all cases involving congressional and legislative redistricting.*

*(11) Legislative and congressional districts may not be changed or established except pursuant to this section. A districting plan and any legislative amendments to the plan are not subject to Article III, section 12 of this Constitution.* [AMENDMENT 74, 1983 Substitute Senate Joint Resolution No. 103, p 2202. Approved November 8, 1983.]

## ARTICLE III
## THE EXECUTIVE

**SECTION 1 EXECUTIVE DEPARTMENT.** The executive department shall consist of a governor, lieutenant governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and a commissioner of public lands, who shall be severally chosen by the qualified electors of the state at the same time and place of voting as for the members of the legislature.

**SECTION 2 GOVERNOR, TERM OF OFFICE.** The supreme executive power of this state shall be vested in a governor, who shall hold his office for a term of four years, and until his successor is elected and qualified.

**SECTION 3 OTHER EXECUTIVE OFFICERS, TERMS OF OFFICE.** The lieutenant governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and commissioner of public lands, shall hold their offices for four years respectively, and until their successors are elected and qualified.

**SECTION 4 RETURNS OF ELECTIONS, CANVASS, ETC.** The returns of every election for the officers named in the first section of this article shall be sealed up and transmitted to the seat of government by the returning officers, directed to the secretary of state, who shall deliver the same to the speaker of the house of representatives at the first meeting of the house thereafter, who shall open, publish and declare the result thereof in the presence of a majority of the members of both houses. The person having the highest number of votes shall be declared duly elected, and a certificate thereof shall be given to such person, signed by the presiding officers of both houses; but if any two or more shall be highest and equal in votes for the same office, one of them shall be chosen by the joint vote of both houses. Contested elections for such officers shall be decided by the legisla-

ture in such manner as shall be determined by law. The terms of all officers named in section one of this article shall commence on the second Monday in January after their election until otherwise provided by law.

**SECTION 5 GENERAL DUTIES OF GOVERNOR.** The governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed.

**SECTION 6 MESSAGES.** He shall communicate at every session by message to the legislature the condition of the affairs of the state, and recommend such measures as he shall deem expedient for their action.

**SECTION 7 EXTRA LEGISLATIVE SESSIONS.** He may, on extraordinary occasions, convene the legislature by proclamation, in which shall be stated the purposes for which the legislature is convened.

*Extraordinary sessions to reconsider vetoes: Art. 3 Section 12.*

**SECTION 8 COMMANDER-IN-CHIEF.** He shall be commander-in-chief of the military in the state except when they shall be called into the service of the United States.

**SECTION 9 PARDONING POWER.** The pardoning power shall be vested in the governor under such regulations and restrictions as may be prescribed by law.

**SECTION 10 VACANCY IN OFFICE OF GOVERNOR.** In case of the removal, resignation, death or disability of the governor, the duties of the office shall devolve upon the lieutenant governor; and in case of a vacancy in both the offices of governor and lieutenant governor, the duties of the governor shall devolve upon the secretary of state. In addition to the line of succession to the office and duties of governor as hereinabove indicated, if the necessity shall arise, in order to fill the vacancy in the office of governor, the following state officers shall succeed to the duties of governor and in the order named, viz.: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. In case of the death, disability, failure or refusal of the person regularly elected to the office of governor to qualify at the time provided by law, the duties of the office shall devolve upon the person regularly elected to and qualified for the office of lieutenant governor, who shall act as governor until the disability be removed, or a governor be elected; and in case of the death, disability, failure or refusal of both the governor and the lieutenant governor elect to qualify, the duties of the governor shall devolve upon the secretary of state; and in addition to the line of succession to the office and duties of governor as hereinabove indicated, if there shall be the failure or refusal of any officer named above to qualify, and if the necessity shall arise by reason thereof, then in that event in order to fill the vacancy in the

office of governor, the following state officers shall succeed to the duties of governor in the order named, viz: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. Any person succeeding to the office of governor as in this section provided, shall perform the duties of such office only until the disability be removed, or a governor be elected and qualified; and if a vacancy occur more than thirty days before the next general election occurring within two years after the commencement of the term, a person shall be elected at such election to fill the office of governor for the remainder of the unexpired term. [**AMENDMENT 6**, 1909 p 642 Section 1. Approved November, 1910.]

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**Original text — Art. 3 Section 10 VACANCY IN** — *In case of the removal, resignation, death, or disability of the governor, the duties of the office shall devolve upon the lieutenant governor, and in case of a vacancy in both the offices of governor and lieutenant governor, the duties of governor shall devolve upon the secretary of state, who shall act as governor until the disability be removed or a governor elected.*

**SECTION 11 REMISSION OF FINES AND FORFEITURES.** The governor shall have power to remit fines and forfeitures, under such regulations as may be prescribed by law, and shall report to the legislature at its next meeting each case of reprieve, commutation or pardon granted, and the reasons for granting the same, and also the names of all persons in whose favor remission of fines and forfeitures shall have been made, and the several amounts remitted and the reasons for the remission.

**SECTION 12 VETO POWERS.** Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. If he approves, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated, which house shall enter the objections at large upon the journal and proceed to reconsider. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for or against the bill shall be entered upon the journal of each house respectively. If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall be presented to him, it shall become a law without his signature, unless the general adjournment shall prevent its return, in which case it shall become a law unless the governor, within twenty days next after the adjournment, Sundays excepted, shall file such bill with his objections thereto, in the office of secretary of state, who shall lay the same before the legislature at its next session in like manner as if it had been returned by the governor: *Provided,* That within forty-five days next after the adjournment, Sundays excepted, the legislature may, upon petition by a two-thirds majority or more of the mem-

bership of each house, reconvene in extraordinary session, not to exceed five days duration, solely to reconsider any bills vetoed. If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items while approving other portions of the bill: *Provided,* That he may not object to less than an entire section, except that if the section contain one or more appropriation items he may object to any such appropriation item or items. In case of objection he shall append to the bill, at the time of signing it, a statement of the section or sections, appropriation item or items to which he objects and the reasons therefor; and the section or sections, appropriation item or items so objected to shall not take effect unless passed over the governor's objection, as hereinbefore provided. The provisions of Article II, section 12 insofar as they are inconsistent herewith are hereby repealed. [**AMENDMENT 62**, 1974 Senate Joint Resolution No. 140, p 806. Approved November 5, 1974.]

*Veto power withheld from initiated and referred measures: Art. 2 Section 1.*

**Original text — Art. 3 Section 12 VETO POWER** — *Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. If he approves, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated, which house shall enter the objections at large upon the journal and proceed to reconsider. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present, it shall become a law; but in all cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for or against the bill shall be entered upon the journal of each house respectively. If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall be presented to him, it shall become a law without his signature, unless the general adjournment shall prevent its return, in which case it shall become a law unless the governor, within ten days next after the adjournment, Sundays excepted, shall file such bill with his objections thereto, in the office of secretary of state, who shall lay the same before the legislature at its next session in like manner as if it had been returned by the governor. If any bill presented to the governor contain several sections or items, he may object to one or more sections or items while approving other portions of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the section, or sections; item or items to which he objects and the reasons therefor, and the section or sections, item or items so objected to, shall not take effect unless passed over the governor's objection, as hereinbefore provided.*

*Veto power does not extend to initiated or referred measures: Art. 2 Section 1(d).*

**SECTION 13 VACANCY IN APPOINTIVE OFFICE.** When, during a recess of the legislature, a vacancy shall happen in any office, the appointment to which is vested in the legislature, or when at any time a vacancy shall have occurred in any other state office, for the filling of

which vacancy no provision is made elsewhere in this Constitution, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified.

*Appointment of governing boards of educational, reformatory and penal institutions: Art. 13 Section 1.*

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 14 SALARY.** The governor shall receive an annual salary of four thousand dollars, which may be increased by law, but shall never exceed six thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 15 COMMISSIONS, HOW ISSUED.** All commissions shall issue in the name of the state, shall be signed by the governor, sealed with the seal of the state, and attested by the secretary of state.

**SECTION 16 LIEUTENANT GOVERNOR, DUTIES AND SALARY.** The lieutenant governor shall be presiding officer of the state senate, and shall discharge such other duties as may be prescribed by law. He shall receive an annual salary of one thousand dollars, which may be increased by the legislature, but shall never exceed three thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 17 SECRETARY OF STATE, DUTIES AND SALARY.** The secretary of state shall keep a record of the official acts of the legislature, and executive department of the state, and shall, when required, lay the same, and all matters relative thereto, before either branch of the legislature, and shall perform such other duties as shall be assigned him by law. He shall receive an annual salary of twenty-five hundred dollars, which may be increased by the legislature, but shall never exceed three thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 18 SEAL.** There shall be a seal of the state kept by the secretary of state for official purposes, which shall be called, "The Seal of the State of Washington."

*Design of the Seal: Art. 18 Section 1.*

*State seal: RCW 1.20.080.*

**SECTION 19 STATE TREASURER, DUTIES AND SALARY.** The treasurer shall perform such duties as shall be prescribed by law. He shall receive an annual salary of two thousand dollars, which may be increased by the legislature, but shall never exceed four thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 20 STATE AUDITOR, DUTIES AND SALARY.** The auditor shall be auditor of public accounts, and shall have such powers and perform such duties in connection therewith as may be prescribed by law. He shall receive an annual salary of two thousand dollars, which may be increased by the legislature, but shall never exceed three thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 21 ATTORNEY GENERAL, DUTIES AND SALARY.** The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law. He shall receive an annual salary of two thousand dollars, which may be increased by the legislature, but shall never exceed thirty-five hundred dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 22 SUPERINTENDENT OF PUBLIC INSTRUCTION, DUTIES AND SALARY.** The superintendent of public instruction shall have supervision over all matters pertaining to public schools, and shall perform such specific duties as may be prescribed by law. He shall receive an annual salary of twenty-five hundred dollars, which may be increased by law, but shall never exceed four thousand dollars per annum.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1, Art. 30.*

**SECTION 23 COMMISSIONER OF PUBLIC LANDS — COMPENSATION.** The commissioner of public lands shall perform such duties and receive such compensation as the legislature may direct.

**SECTION 24 RECORDS, WHERE KEPT, ETC.** The governor, secretary of state, treasurer, auditor, superintendent of public instruction, commissioner of public lands and attorney general shall severally keep the public records, books and papers relating to their respective offices, at the seat of government, at which place also the governor, secretary of state, treasurer and auditor shall reside.

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 25 QUALIFICATIONS, COMPENSATION, OFFICES WHICH MAY BE ABOLISHED**. No person, except a citizen of the United States and a qualified elector of this state, shall be eligible to hold any state office. The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. The legislature may in its discretion abolish the offices of the lieutenant governor, auditor and commissioner of public lands. [**AMENDMENT 31**, 1955 Senate Joint Resolution No. 6, p 1861. Approved November 6, 1956.]

*Authorizing compensation increase during term: Art. 30 Section 1.*

*Increase or diminution of compensation during term of office prohibited.*
   *county, city, town or municipal officers: Art. 11 Section 8.*
   *judicial officers: Art. 4 Section 13.*
   *public officers: Art. 2 Section 25.*

**Original text — Art. 3 Section 25 QUALIFICATIONS —** *No person, except a citizen of the United States and a qualified elector of this state, shall be eligible to hold any state office, and the state treasurer shall be ineligible for the term succeeding that for which he was elected. The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. The legislature may in its discretion abolish the offices of the lieutenant governor, auditor and commissioner of public lands.*

## ARTICLE IV
## THE JUDICIARY

**SECTION 1 JUDICIAL POWER, WHERE VESTED**. The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.

*Court of appeals: Art. 4 Section 30.*

**SECTION 2 SUPREME COURT**. The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum, and pronounce a decision. The said court shall always be open for the transaction of business except on nonjudicial days. In the determination of causes all decisions of the court shall be given in writing and the grounds of the decision shall be stated. The legislature may increase the number of judges of the supreme court from time to time and may provide for separate departments of said court.

**SECTION 2(a) TEMPORARY PERFORMANCE OF JUDICIAL DUTIES**. When necessary for the prompt and orderly administration of justice a majority of the Supreme Court is empowered to authorize judges or retired judges of courts of record of this state, to perform, temporarily, judicial duties in the Supreme Court, and to authorize any superior court judge to perform judicial duties in any superior court of this state.

[**AMENDMENT 38**, 1961 House Joint Resolution No. 6, p 2757. Approved November, 1962.]

**SECTION 3 ELECTION AND TERMS OF SUPREME COURT JUDGES.** The judges of the supreme court shall be elected by the qualified electors of the state at large at the general state election at the times and places at which state officers are elected, unless some other time be provided by the legislature. The first election of judges of the supreme court shall be at the election which shall be held upon the adoption of this Constitution and the judges elected thereat shall be classified by lot, so that two shall hold their office for the term of three years, two for the term of five years, and one for the term of seven years. The lot shall be drawn by the judges who shall for that purpose assemble at the seat of government, and they shall cause the result thereof to be certified to the secretary of state, and filed in his office. The supreme court shall select a chief justice from its own membership to serve for a four-year term at the pleasure of a majority of the court as prescribed by supreme court rule. The chief justice shall preside at all sessions of the supreme court. In case of the absence of the chief justice, the majority of the remaining court shall select one of their members to serve as acting chief justice. After the first election the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election. If a vacancy occur in the office of a judge of the supreme court the governor shall only appoint a person to ensure the number of judges as specified by the legislature, to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term. The term of office of the judges of the supreme court, first elected, shall commence as soon as the state shall have been admitted into the Union, and continue for the term herein provided, and until their successors are elected and qualified. The sessions of the supreme court shall be held at the seat of government until otherwise provided by law. [**AMENDMENT 89**, 1995 Substitute Senate Joint Resolution No. 8210, p 2905. Approved November 7, 1995.]

**Original text — Art. 4 Section 3 ELECTION AND TERMS OF SUPREME COURT JUDGES** — *The judges of the supreme court shall be elected by the qualified electors of the state at large at the general state election at the times and places at which state officers are elected, unless some other time be provided by the legislature. The first election of judges of the supreme court shall be at the election which shall be held upon the adoption of this Constitution and the judges elected thereat shall be classified by lot, so that two shall hold their office for the term of three years, two for the term of five years, and one for the term of seven years. The lot shall be drawn by the judges who shall for that purpose assemble at the seat of government, and they shall cause the result thereof to be certified to the secretary of state, and filed in his office. The judge having the shortest term to serve not holding his office by appointment or election to fill a vacancy, shall be the chief justice, and shall preside at all sessions of the supreme court, and in case there shall be two judges having in like manner the same short term, the other judges of the supreme court shall determine which of them shall be chief jus-*

*tice. In case of the absence of the chief justice, the judge having in like manner the shortest or next shortest term to serve shall preside. After the first election the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election. If a vacancy occur in the office of a judge of the supreme court the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term. The term of office of the judges of the supreme court, first elected, shall commence as soon as the state shall have been admitted into the Union, and continue for the term herein provided, and until their successors are elected and qualified. The sessions of the supreme court shall be held at the seat of government until otherwise provided by law.*

**SECTION 3(a) RETIREMENT OF SUPREME COURT AND SUPERIOR COURT JUDGES.** A judge of the supreme court or the superior court shall retire from judicial office at the end of the calendar year in which he attains the age of seventy-five years. The legislature may, from time to time, fix a lesser age for mandatory retirement, not earlier than the end of the calendar year in which any such judge attains the age of seventy years, as the legislature deems proper. This provision shall not affect the term to which any such judge shall have been elected or appointed prior to, or at the time of, approval and ratification of this provision. Notwithstanding the limitations of this section, the legislature may by general law authorize or require the retirement of judges for physical or mental disability, or any cause rendering judges incapable of performing their judicial duties. [**AMENDMENT 25**, 1951 House Joint Resolution No. 6, p 960. Approved November 4, 1952.]

**SECTION 4 JURISDICTION.** The supreme court shall have original jurisdiction in habeas corpus, and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars ($200) unless the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court of the state or any judge thereof.

**SECTION 5 SUPERIOR COURT — ELECTION OF JUDGES, TERMS OF, ETC.** There shall be in each of the organized counties of this state a superior court for which at least one judge shall be elected by the qualified electors of the county at the general state election: **Provided,**

That until otherwise directed by the legislature one judge only shall be elected for the counties of Spokane and Stevens; one judge for the county of Whitman; one judge for the counties of Lincoln, Okanogan, Douglas and Adams; one judge for the counties of Walla Walla and Franklin; one judge for the counties of Columbia, Garfield and Asotin; one judge for the counties of Kittitas, Yakima and Klickitat; one judge for the counties of Clarke, Skamania, Pacific, Cowlitz and Wahkiakum; one judge for the counties of Thurston, Chehalis, Mason and Lewis; one judge for the county of Pierce; one judge for the county of King; one judge for the counties of Jefferson, Island, Kitsap, San Juan and Clallam; and one judge for the counties of Whatcom, Skagit and Snohomish. In any county where there shall be more than one superior judge, there may be as many sessions of the superior court at the same time as there are judges thereof, and whenever the governor shall direct a superior judge to hold court in any county other than that for which he has been elected, there may be as many sessions of the superior court in said county at the same time as there are judges therein or assigned to duty therein by the governor, and the business of the court shall be so distributed and assigned by law or in the absence of legislation therefor, by such rules and orders of court as shall best promote and secure the convenient and expeditious transaction thereof. The judgments, decrees, orders and proceedings of any session of the superior court held by any one or more of the judges of such court shall be equally effectual as if all the judges of said court presided at such session. The first superior judges elected under this Constitution shall hold their offices for the period of three years, and until their successors shall be elected and qualified, and thereafter the term of office of all superior judges in this state shall be for four years from the second Monday in January next succeeding their election and until their successors are elected and qualified. The first election of judges of the superior court shall be at the election held for the adoption of this Constitution. If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term.

*Supreme court may authorize superior court judge to perform judicial duties in any superior court: Art. 4 Section 2(a).*

**SECTION 6 JURISDICTION OF SUPERIOR COURTS.** Superior courts and district courts have concurrent jurisdiction in cases in equity. The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in

all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days. [**AMENDMENT 87**, 1993 House Joint Resolution No. 4201, p 3063. Approved November 2, 1993.]

**Amendment 65, part (1977) — Art. 4 Section 6 Jurisdiction of Superior Courts** — *The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days.* [**AMENDMENT 65**, part, 1977 Senate Joint Resolution No. 113, p 1714. Approved November 8, 1977.]

*Amendment 65 also amended Art. 4 Section 10.*

**Amendment 28, part (1952) — Art. 4 Section 6 JURISDICTION OF SUPERIOR COURTS** — *The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one thousand dollars, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor*

*not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days.* [AMENDMENT 28, part, 1951 Substitute House Joint Resolution No. 13, p 962. Approved November 4, 1952.]

**Note:** Amendment 28 also amended Art. 4 Section 10.

**ORIGINAL TEXT — ART. 4 Section 6 JURISDICTION OF SUPERIOR COURTS** — *The superior court shall have original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll or municipal fine, and in all other cases in which the demand, or the value of the property in controversy amounts to one hundred dollars, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization, and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justice's and other inferior courts in their respective counties as may be prescribed by law. They shall be always open except on non-judicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and non-judicial days.*

**SECTION 7 EXCHANGE OF JUDGES — JUDGE PRO TEMPORE.** The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his or her duty to do so. A case in the superior court may be tried by a judge pro tempore either with the agreement of the parties if the judge pro tempore is a member of the bar, is agreed upon in writing by the parties litigant or their attor-

neys of record, and is approved by the court and sworn to try the case; or without the agreement of the parties if the judge pro tempore is a sitting elected judge and is acting as a judge pro tempore pursuant to supreme court rule. The supreme court rule must require assignments of judges pro tempore based on the judges' experience and must provide for the right, exercisable once during a case, to a change of judge pro tempore. Such right shall be in addition to any other right provided by law. However, if a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement. [**AMENDMENT 94**, 2001 Engrossed Senate Joint Resolution No. 8208, p 2327. Approved November 6, 2001.

**Amendment 80 — Art. 4 Section 7 EXCHANGE OF JUDGES — JUDGE PRO TEMPORE** — *The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his duty to do so. A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case. However, if a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement.*[Amendment 80, 1987 Senate Joint Resolution No. 8207, p 2815. Approved November 3, 1987.]

**ORIGINAL TEXT — Art. 4 Section 7 EXCHANGE OF JUDGES — JUDGE PRO TEMPORE** — *The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his duty to do so. A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case.*

**SECTION 8 ABSENCE OF JUDICIAL OFFICER.** Any judicial officer who shall absent himself from the state for more than sixty consecutive days shall be deemed to have forfeited his office: *Provided,* That in cases of extreme necessity the governor may extend the leave of absence such time as the necessity therefor shall exist.

**SECTION 9 REMOVAL OF JUDGES, ATTORNEY GENERAL, ETC.** Any judge of any court of record, the attorney general, or any prosecuting attorney may be removed from office by joint resolution of the legislature, in which three-fourths of the members elected to each house shall concur, for incompetency, corruption, malfeasance, or delinquency in office, or other sufficient cause stated in such resolution. But no removal shall be made unless the officer complained of shall have been served with a copy of the charges against him as the ground of removal, and shall have an opportunity of being heard in his defense. Such resolution shall be entered at length on the journal of both houses and on

the question of removal the ayes and nays shall also be entered on the journal.

*Removal, censure, suspension, or retirement of judges or justices: Art. 4 Section 31.*

**SECTION 10 JUSTICES OF THE PEACE.** The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: *Provided,* That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns. Justices of the peace shall have original jurisdiction in cases where the demand or value of the property in controversy is less than three hundred dollars or such greater sum, not to exceed three thousand dollars or as otherwise determined by law, as shall be prescribed by the legislature. In incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use. [**AMENDMENT 65**, part, 1977 Senate Joint Resolution No. 113, p 1714. Approved November 8, 1977.]

*Amendment 65 also amended Art. 4 Section 6.*

**Amendment 28, part (1952) — Art. 4 Section 10 JUSTICES OF THE PEACE** — The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: Provided, *That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns. Justices of the peace shall have original jurisdiction in cases where the demand or value of the property in controversy is less than three hundred dollars or such greater sum, not to exceed one thousand dollars, as shall be prescribed by the legislature. In incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use.* [AMENDMENT 28, part, 1951 Substitute House Joint Resolution No. 13, p 962. Approved November 4, 1952.]

**Note**: Amendment 28 also amended Art. 4 Section 6.

**Original text — Art. 4 Section 10 JUSTICES OF THE PEACE** — *The legislature shall determine the number of justices of the peace to be elected in incorporated cities or towns and in precincts, and shall prescribe by law the powers, duties and jurisdiction of justices of the peace; Provided, That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns. In incorporated cities or towns having more than five thousand inhabitants the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use.*

**SECTION 11 COURTS OF RECORD.** The supreme court and the superior courts shall be courts of record, and the legislature shall have power to provide that any of the courts of this state, excepting justices of the peace, shall be courts of record.

**SECTION 12 INFERIOR COURTS.** The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution.

**SECTION 13 SALARIES OF JUDICIAL OFFICERS — HOW PAID, ETC.** No judicial officer, except court commissioners and unsalaried justices of the peace, shall receive to his own use any fees or perquisites of office. The judges of the supreme court and judges of the superior courts shall severally at stated times, during their continuance in office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election, nor during the term for which they shall have been elected. The salaries of the judges of the supreme court shall be paid by the state. One-half of the salary of each of the superior court judges shall be paid by the state, and the other one-half by the county or counties for which he is elected. In cases where a judge is provided for more than one county, that portion of his salary which is to be paid by the counties shall be apportioned between or among them according to the assessed value of their taxable property, to be determined by the assessment next preceding the time for which such salary is to be paid.

*Authorizing compensation increase during term: Art. 30 Section 1.*

*Increase or diminution of compensation during term of office prohibited*
   *county, city or municipal officers: Art. 11 Section 8.*
   *public officers: Art. 2 Section 25.*
   *state officers: Art. 3 Section 25.*

**SECTION 14 SALARIES OF SUPREME AND SUPERIOR COURT JUDGES.** Each of the judges of the supreme court shall receive an annual salary of four thousand dollars ($4,000); each of the superior court judges shall receive an annual salary of three thousand dollars ($3,000), which said salaries shall be payable quarterly. The legislature may increase the salaries of judges herein provided.

*Compensation of legislators, elected state officials, and judges: Art. 28 Section 1.*

**SECTION 15 INELIGIBILITY OF JUDGES.** The judges of the supreme court and the judges of the superior court shall be ineligible to any other office or public employment than a judicial office, or employment, during the term for which they shall have been elected.

**SECTION 16 CHARGING JURIES.** Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

**SECTION 17 ELIGIBILITY OF JUDGES.** No person shall be eligible to the office of judge of the supreme court, or judge of a superior court, unless he shall have been admitted to practice in the courts of record of this state, or of the Territory of Washington.

**SECTION 18 SUPREME COURT REPORTER.** The judges of the supreme court shall appoint a reporter for the decisions of that court, who shall be removable at their pleasure. He shall receive such annual salary as shall be prescribed by law.

**SECTION 19 JUDGES MAY NOT PRACTICE LAW.** No judge of a court of record shall practice law in any court of this state during his continuance in office.

**SECTION 20 DECISIONS, WHEN TO BE MADE.** Every cause submitted to a judge of a superior court for his decision shall be decided by him within ninety days from the submission thereof; *Provided,* That if within said period of ninety days a rehearing shall have been ordered, then the period within which he is to decide shall commence at the time the cause is submitted upon such a hearing.

**SECTION 21 PUBLICATION OF OPINIONS.** The legislature shall provide for the speedy publication of opinions of the supreme court, and all opinions shall be free for publication by any person.

**SECTION 22 CLERK OF THE SUPREME COURT.** The judges of the supreme court shall appoint a clerk of that court who shall be removable at their pleasure, but the legislature may provide for the election of the clerk of the supreme court, and prescribe the term of his office. The clerk of the supreme court shall receive such compensation by salary only as shall be provided by law.

**SECTION 23 COURT COMMISSIONERS.** There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.

**SECTION 24 RULES FOR SUPERIOR COURTS.** The judges of the superior courts, shall from time to time, establish uniform rules for the government of the superior courts.

**SECTION 25 REPORTS OF SUPERIOR COURT JUDGES.** Superior judges, shall on or before the first day of November in each year, report in writing to the judges of the supreme court such defects and omissions in the laws as their experience may suggest, and the judges of the supreme court shall on or before the first day of January in each year report in writing to the governor such defects and omissions in the laws as they may believe to exist.

**SECTION 26 CLERK OF THE SUPERIOR COURT.** The county clerk shall be by virtue of his office, clerk of the superior court.

**SECTION 27 STYLE OF PROCESS.** The style of all process shall be, "The State of Washington," and all prosecutions shall be conducted in its name and by its authority.

**SECTION 28 OATH OF JUDGES.** Every judge of the supreme court, and every judge of a superior court shall, before entering upon the duties of his office, take and subscribe an oath that he will support the Constitution of the United States and the Constitution of the State of Washington, and will faithfully and impartially discharge the duties of judge to the best of his ability, which oath shall be filed in the office of the secretary of state.

**SECTION 29 ELECTION OF SUPERIOR COURT JUDGES.** Notwithstanding any provision of this Constitution to the contrary, if, after the last day as provided by law for the withdrawal of declarations of candidacy has expired, only one candidate has filed for any single position of superior court judge in any county containing a population of one hundred thousand or more, no primary or election shall be held as to such position, and a certificate of election shall be issued to such candidate. If, after any contested primary for superior court judge in any county, only one candidate is entitled to have his name printed on the general election ballot for any single position, no election shall be held as to such position, and a certificate of election shall be issued to such candidate: *Provided,* That in the event that there is filed with the county auditor within ten days after the date of the primary, a petition indicating that a write in campaign will be conducted for such single position and signed by one hundred registered voters qualified to vote with respect of the office, then such single position shall be subject to the general election. Provisions for the contingency of the death or disqualification of a sole candidate between the last date for withdrawal and the time when the election would be held but for the provisions of this section, and such other provisions as may be deemed necessary to implement the provisions of this section, may be enacted by the legislature. [**AMENDMENT 41**, 1965 ex.s. Substitute Senate Joint Resolution No. 6, p 2815. Approved November 8, 1966.]

**SECTION 30 COURT OF APPEALS.** (1) *Authorization.* In addition to the courts authorized in section 1 of this article, judicial power is vested in a court of appeals, which shall be established by statute.

(2) *Jurisdiction.* The jurisdiction of the court of appeals shall be as provided by statute or by rules authorized by statute.

(3) *Review of Superior Court.* Superior court actions may be reviewed by the court of appeals or by the supreme court as provided by statute or by rule authorized by statute.

(4) *Judges.* The number, manner of election, compensation, terms of office, removal and retirement of judges of the court of appeals shall be as provided by statute.

(5) *Administration and Procedure.* The administration and procedures of the court of appeals shall be as provided by rules issued by the supreme court.

(6) *Conflicts.* The provisions of this section shall supersede any conflicting provisions in prior sections of this article. [**AMENDMENT 50**, 1967 Senate Joint Resolution No. 6; see 1969 p 2975. Approved November 5, 1968.]

**Reviser's note**: This section which was adopted as Sec. 29 is herein renumbered Sec. 30 to avoid confusion with Sec. 29, supra.

**SECTION 31 COMMISSION ON JUDICIAL CONDUCT.** (1) There shall be a commission on judicial conduct, existing as an independent agency of the judicial branch, and consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the limited jurisdiction court judges, two persons admitted to the practice of law in this state selected by the state bar association, and six persons who are not attorneys appointed by the governor.

(2) Whenever the commission receives a complaint against a judge or justice, or otherwise has reason to believe that a judge or justice should be admonished, reprimanded, censured, suspended, removed, or retired, the commission shall first investigate the complaint or belief and then conduct initial proceedings for the purpose of determining whether probable cause exists for conducting a public hearing or hearings to deal with the complaint or belief. The investigation and initial proceedings shall be confidential. Upon beginning an initial proceeding, the commission shall notify the judge or justice of the existence of and basis for the initial proceeding.

(3) Whenever the commission concludes, based on an initial proceeding, that there is probable cause to believe that a judge or justice has violated a rule of judicial conduct or that the judge or justice suffers from a disability which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties, the commission shall conduct a public hearing or hearings and shall make public all those records of the initial proceeding that provide the basis for its conclusion. If the commission concludes that there is not probable cause, it shall notify the judge or justice of its conclusion.

(4) Upon the completion of the hearing or hearings, the commission in open session shall either dismiss the case, or shall admonish, reprimand, or censure the judge or justice, or shall censure the judge or justice and recommend to the supreme court the suspension or removal of the judge or justice, or shall recommend to the supreme court the retirement of the judge or justice. The commission may not recommend suspension or removal unless it censures the judge or justice for the violation serving as the basis for the recommendation. The commission may recommend retirement of a judge or justice for a disability

which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties.

(5) Upon the recommendation of the commission, the supreme court may suspend, remove, or retire a judge or justice. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease. The supreme court shall specify the effect upon salary when it suspends a judge or justice. The supreme court may not suspend, remove, or retire a judge or justice until the commission, after notice and hearing, recommends that action be taken, and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against the judge or justice.

(6) Within thirty days after the commission admonishes, reprimands, or censures a judge or justice, the judge or justice shall have a right of appeal de novo to the supreme court.

(7) Any matter before the commission or supreme court may be disposed of by a stipulation entered into in a public proceeding. The stipulation shall be signed by the judge or justice and the commission or court. The stipulation may impose any terms and conditions deemed appropriate by the commission or court. A stipulation shall set forth all material facts relating to the proceeding and the conduct of the judge or justice.

(8) Whenever the commission adopts a recommendation that a judge or justice be removed, the judge or justice shall be suspended immediately, with salary, from his or her judicial position until a final determination is made by the supreme court.

(9) The legislature shall provide for commissioners' terms of office and compensation. The commission shall employ one or more investigative officers with appropriate professional training and experience. The investigative officers of the commission shall report directly to the commission. The commission shall also employ such administrative or other staff as are necessary to manage the affairs of the commission.

(10) The commission shall, to the extent that compliance does not conflict with this section, comply with laws of general applicability to state agencies with respect to rule-making procedures, and with respect to public notice of and attendance at commission proceedings other than initial proceedings. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings. [**AMENDMENT 97**, 2005 Senate Joint Resolution No. 8207, pp 2799, 2800. Approved November 8, 2005.]

*Removal by legislature: Art. 4 Section 9.*

**Amendment 85 (1989) — Art. 4 Section 31 COMMISSION ON JUDICIAL CONDUCT** — *(1) There shall be a commission on judicial conduct, existing as an independent agency of the judicial branch, and consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and six persons who are not attorneys appointed by the governor.*

*(2) Whenever the commission receives a complaint against a judge or justice, or otherwise has reason to believe that a judge or justice should be admonished, reprimanded, censured, suspended, removed, or*

retired, the commission shall first investigate the complaint or be-
lief and then conduct initial proceedings for the purpose of determin-
ing whether probable cause exists for conducting a public hearing or
hearings to deal with the complaint or belief. The investigation and
initial proceedings shall be confidential. Upon beginning an initial
proceeding, the commission shall notify the judge or justice of the
existence of and basis for the initial proceeding.

(3) Whenever the commission concludes, based on an initial pro-
ceeding, that there is probable cause to believe that a judge or jus-
tice has violated a rule of judicial conduct or that the judge or jus-
tice suffers from a disability which is permanent or likely to become
permanent and which seriously interferes with the performance of judi-
cial duties, the commission shall conduct a public hearing or hearings
and shall make public all those records of the initial proceeding that
provide the basis for its conclusion. If the commission concludes that
there is not probable cause, it shall notify the judge or justice of
its conclusion.

(4) Upon the completion of the hearing or hearings, the commis-
sion in open session shall either dismiss the case, or shall admonish,
reprimand, or censure the judge or justice, or shall censure the judge
or justice and recommend to the supreme court the suspension or remov-
al of the judge or justice, or shall recommend to the supreme court
the retirement of the judge or justice. The commission may not recom-
mend suspension or removal unless it censures the judge or justice for
the violation serving as the basis for the recommendation. The commis-
sion may recommend retirement of a judge or justice for a disability
which is permanent or likely to become permanent and which seriously
interferes with the performance of judicial duties.

(5) Upon the recommendation of the commission, the supreme court
may suspend, remove, or retire a judge or justice. The office of a
judge or justice retired or removed by the supreme court becomes va-
cant, and that person is ineligible for judicial office until eligi-
bility is reinstated by the supreme court. The salary of a removed
judge or justice shall cease. The supreme court shall specify the ef-
fect upon salary when it suspends a judge or justice. The supreme
court may not suspend, remove, or retire a judge or justice until the
commission, after notice and hearing, recommends that action be taken,
and the supreme court conducts a hearing, after notice, to review com-
mission proceedings and findings against the judge or justice.

(6) Within thirty days after the commission admonishes, repri-
mands, or censures a judge or justice, the judge or justice shall have
a right of appeal de novo to the supreme court.

(7) Any matter before the commission or supreme court may be dis-
posed of by a stipulation entered into in a public proceeding. The
stipulation shall be signed by the judge or justice and the commission
or court. The stipulation may impose any terms and conditions deemed
appropriate by the commission or court. A stipulation shall set forth
all material facts relating to the proceeding and the conduct of the
judge or justice.

(8) Whenever the commission adopts a recommendation that a judge
or justice be removed, the judge or justice shall be suspended immedi-
ately, with salary, from his or her judicial position until a final
determination is made by the supreme court.

(9) The legislature shall provide for commissioners' terms of of-
fice and compensation. The commission shall employ one or more inves-
tigative officers with appropriate professional training and experi-
ence. The investigative officers of the commission shall report di-

rectly to the commission. The commission shall also employ such administrative or other staff as are necessary to manage the affairs of the commission.

(10) The commission shall, to the extent that compliance does not conflict with this section, comply with laws of general applicability to state agencies with respect to rule-making procedures, and with respect to public notice of and attendance at commission proceedings other than initial proceedings. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings. [AMENDMENT 85, 1989 Substitute Senate Joint Resolution No. 8202, p 3000. Approved November 7, 1989.]

**Amendment 77 (1986) — Art. 4 Section 31 COMMISSION ON JUDICIAL CONDUCT — REMOVAL, CENSURE, SUSPENSION, OR RETIREMENT OF JUDGES OR JUSTICES — PROCEEDINGS —** *There shall be a commission on judicial conduct consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and four persons who are not attorneys appointed by the governor and confirmed by the senate.*

*The supreme court may censure, suspend, or remove a judge or justice for violating a rule of judicial conduct and may retire a judge or justice for disability which is permanent or is likely to become permanent and which seriously interferes with the performance of judicial duties. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease.*

*The supreme court shall specify the effect upon salary when disciplinary action other than removal is taken. The supreme court may not discipline or retire a judge or justice until the commission on judicial conduct recommends after notice and hearing that action be taken and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against a judge or justice.*

*Whenever the commission receives a complaint against a judge or justice, it shall first conduct proceedings for the purpose of determining whether sufficient reason exists for conducting a hearing or hearings to deal with the accusations. These initial proceedings shall be confidential, unless confidentiality is waived by the judge or justice, but all subsequent hearings conducted by the commission shall be open to members of the public.*

*Whenever the commission adopts a recommendation that a judge or justice be removed, the judge or justice shall be suspended immediately, with salary, from his or her judicial position until a final determination is made by the supreme court.*

*The legislature shall provide for commissioners' terms of office and compensation. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings.* [AMENDMENT 77, 1986 Senate Joint Resolution No. 136, p 1532. Approved November 4, 1986.]

**Amendment 71 (1980) — Art. 4 Section 31 JUDICIAL QUALIFICATIONS COMMISSION — REMOVAL, CENSURE, SUSPENSION, OR RETIREMENT OF JUDGES OR JUSTICES —** *There shall be a judicial qualifications commission consisting of a judge selected by and from the court of appeals judges, a*

*judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and two persons who are not attorneys appointed by the governor and confirmed by the senate.*

*The supreme court may censure, suspend, or remove a judge or justice for violating a rule of judicial conduct and may retire a judge or justice for disability which is permanent or is likely to become permanent and which seriously interferes with the performance of judicial duties. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease.*

*The supreme court shall specify the effect upon salary when disciplinary action other than removal is taken. The supreme court may not discipline or retire a judge or justice until the judicial qualifications commission recommends after notice and hearing that action be taken and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against a judge or justice.*

*The legislature shall provide for commissioners' terms of office and compensation. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings.* [AMENDMENT 71, 1980 Substitute House Joint Resolution No. 37, p 652. Approved November 4, 1980.]

## ARTICLE V
## IMPEACHMENT

**SECTION 1 IMPEACHMENT - POWER OF AND PROCEDURE.** The house of representatives shall have the sole power of impeachment. The concurrence of a majority of all the members shall be necessary to an impeachment. All impeachments shall be tried by the senate, and, when sitting for that purpose, the senators shall be upon oath or affirmation to do justice according to law and evidence. When the governor or lieutenant governor is on trial, the chief justice of the supreme court shall preside. No person shall be convicted without a concurrence of two-thirds of the senators elected.

**SECTION 2 OFFICERS LIABLE TO.** The governor and other state and judicial officers, except judges and justices of courts not of record, shall be liable to impeachment for high crimes or misdemeanors, or malfeasance in office, but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust or profit, in the state. The party, whether convicted or acquitted, shall, nevertheless, be liable to prosecution, trial, judgment and punishment according to law.

**SECTION 3 REMOVAL FROM OFFICE.** All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law.

## ARTICLE VI

## ELECTIONS AND ELECTIVE RIGHTS

**SECTION 1 QUALIFICATIONS OF ELECTORS.** All persons of the age of eighteen years or over who are citizens of the United States and who have lived in the state, county, and precinct thirty days immediately preceding the election at which they offer to vote, except those disqualified by Article VI, section 3 of this Constitution, shall be entitled to vote at all elections. [**AMENDMENT 63**, 1974 Senate Joint Resolution No. 143, p 807.  Approved November 5, 1974.]

**Amendment 5 (1910) — Art. 6 Section 1 QUALIFICATIONS OF ELECTORS** — *All persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections: They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language:* Provided, *That Indians not taxed shall never be allowed the elective franchise:* And further provided, *That this amendment shall not affect the rights of franchise of any person who is now a qualified elector of this state.  The legislative authority shall enact laws defining the manner of ascertaining the qualifications of voters as to their ability to read and speak the English language, and providing for punishment of persons voting or registering in violation of the provision of this section.  There shall be no denial of the elective franchise at any election on account of sex.* [AMENDMENT 5, 1909 p 26 Section 1.  Approved November, 1910.]

**Amendment 2 (1896) — Art. 6 Section 1 QUALIFICATIONS OF VOTERS** — *All male persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections:  They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language:* Provided, *That Indians not taxed shall never be allowed the elective franchise:* And further provided, *That this amendment shall not effect [affect] the right of franchise of any person who is now a qualified elector of this state.  The legislature shall enact laws defining the manner of ascertaining the qualifications of voters as to their ability to read and speak the English language, and providing for punishment of persons voting or registering in violation of the provisions of this section.* [AMENDMENT 2, 1895 p 60 Section 1.  Approved November, 1896.]

**Original text — Art. 6 Section 1 QUALIFICATIONS OF ELECTORS** — *All male persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections:  They shall be citizens of the United States; They shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote;* Provided, *that Indians not taxed shall never be allowed the elective franchise;* Provided, further; *that all male persons who at the time of the adoption of this Constitution are qualified electors of the Territory, shall be electors.*

**SECTION 1A VOTER QUALIFICATIONS FOR PRESIDENTIAL ELECTIONS.** [Repealed by *AMENDMENT 105*, 2011 Senate Joint Resolution No. 8205, p 4281. Approved November 8, 2011.]

**Original text — Art. 6 Section 1A VOTER QUALIFICATIONS FOR PRESIDENTIAL ELECTIONS —** *In consideration of those citizens of the United States who become residents of the state of Washington during the year of a presidential election with the intention of making this state their permanent residence, this section is for the purpose of authorizing such persons who can meet all qualifications for voting as set forth in section 1 of this article, except for residence, to vote for presidential electors or for the office of President and Vice-President of the United States, as the case may be, but no other: Provided, That such persons have resided in the state at least sixty days immediately preceding the presidential election concerned.*
*The legislature shall establish the time, manner and place for such persons to cast such presidential ballots.*

**SECTION 2 SCHOOL ELECTIONS — FRANCHISE, HOW EXTENDED.** [This section stricken by *AMENDMENT 5*, see Art. 6 Section 1.]

**Original text — Art. 6 Section 2 SCHOOL ELECTIONS — FRANCHISE, HOW EXTENDED —** *The legislature may provide that there shall be no denial of the elective franchise at any school election on account of sex.*

**SECTION 3 WHO DISQUALIFIED.** All persons convicted of infamous crime unless restored to their civil rights and all persons while they are judicially declared mentally incompetent are excluded from the elective franchise. [**AMENDMENT 83,** 1988 House Joint Resolution No. 4231, p 1553. Approved November 8, 1988.]

**Original text — Art. 6 Section 3 WHO DISQUALIFIED —** *All idiots, insane persons, and persons convicted of infamous crime unless restored to their civil rights are excluded from the elective franchise.*

**SECTION 4 RESIDENCE, CONTINGENCIES AFFECTING.** For the purpose of voting and eligibility to office no person shall be deemed to have gained a residence by reason of his presence or lost it by reason of his absence, while in the civil or military service of the state or of the United States, nor while a student at any institution of learning, nor while kept at public expense at any poor-house or other asylum, nor while confined in public prison, nor while engaged in the navigation of the waters of this state or of the United States, or of the high seas.

**SECTION 5 VOTER — WHEN PRIVILEGED FROM ARREST.** Voters shall in all cases except treason, felony, and breach of the peace be privileged from arrest during their attendance at elections and in going to, and returning therefrom. No elector shall be required to do military duty on the day of any election except in time of war or public danger.

**SECTION 6 BALLOT.** All elections shall be by ballot. The legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot.

**SECTION 7 REGISTRATION.** The legislature shall enact a registration law, and shall require a compliance with such law before any elector shall be allowed to vote; *Provided,* that this provision is not compulsory upon the legislature except as to cities and towns having a population of over five hundred inhabitants. In all other cases the legislature may or may not require registration as a pre-requisite to the right to vote, and the same system of registration need not be adopted for both classes.

**SECTION 8 ELECTIONS, TIME OF HOLDING.** The first election of county and district officers not otherwise provided for in this Constitution shall be on the Tuesday next after the first Monday in November 1890, and thereafter all elections for such officers shall be held biennially on the Tuesday next succeeding the first Monday in November. The first election of all state officers not otherwise provided for in this Constitution, after the election held for the adoption of this Constitution, shall be on the Tuesday next after the first Monday in November, 1892, and the elections for such state officers shall be held in every fourth year thereafter on the Tuesday succeeding the first Monday in November.

*Cf. Art. 27 Section 14.*

# ARTICLE VII
# REVENUE AND TAXATION

**SECTION 1 TAXATION.** The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: *Provided,* That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of fifteen thousand ($15,000.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner. [**AMENDMENT 98**, 2006 House Joint Resolution No. 4223, p 2117. Approved November 7, 2006.]

**Amendment 81 (1988) — Art. 7 Section 1 TAXATION** —*The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: Provided, That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three thousand ($3,000.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner.* [AMENDMENT 81, 1988 House Joint Resolution No. 4222, p 1551. Approved November 8, 1988.]

**Amendment 14 (1930) — Art. 7 Section 1 TAXATION —** *The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class:* Provided, *That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred ($300.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner.* [AMENDMENT 14, 1929 p 499 Section 1. Approved November, 1930.]

**Reviser's note:** Amendment 14 amended Art. 7 by striking all of Sections 1, 2, 3 and 4. Subsequently, Amendment 17 added a new Section 2, and Amendment 19 added a new Section 3.

**Original text — Art. 7 Section 1 ANNUAL STATE TAX —** *All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The legislature shall provide by law for an annual tax sufficient, with other sources of revenue to defray the estimated ordinary expenses of the state for each fiscal year. And for the purpose of paying the state debt, if there be any, the legislature shall provide for levying a tax annually, sufficient to pay the annual interest and principal of such debt within twenty years from the final passage of the law creating the debt.*

**Amendment 3 (1900) — Art. 7 Section 2, was amended by adding the following proviso:** "And provided further, *That the legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred dollars ($300) for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual and bona fide owner.*" [AMENDMENT 3, 1899 p 121 Section 1. Approved November, 1900.]

**Original text — Art. 7 Section 2 TAXATION — UNIFORMITY AND EQUALITY — EXEMPTION —** *The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property; Provided, that a deduction of debts from credits may be authorized:* Provided, *further, that the property of the United States and of the state, counties, school districts and other municipal corporations, and such other property as the legislature may by general laws provide, shall be exempt from taxation.*

**Original text — Art. 7 Section 3 ASSESSMENT OF CORPORATE PROPERTY —** *The legislature shall provide by general law for the assessing and levying of taxes on all corporation property as near as may be by the same methods as are provided for the assessing and levying of taxes on individual property.*

**Original text — Art. 7 Section 4 NO SURRENDER OF POWER OR SUSPENSION OF TAX ON CORPORATE PROPERTY —** *The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state shall be a party.*

**SECTION 2 LIMITATION ON LEVIES.** Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money. Nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only as follows:
    (a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy such additional tax submit-

ted not more than twelve months prior to the date on which the proposed initial levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of voters voting "yes" on the proposition shall constitute three-fifths of a number equal to forty percent of the total number of voters voting in such taxing district at the last preceding general election when the number of voters voting on the proposition does not exceed forty percent of the total number of voters voting in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy when the number of voters voting on the proposition exceeds forty percent of the number of voters voting in such taxing district in the last preceding general election. Notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools or fire protection districts may provide such support for a period of up to four years and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities or fire facilities may provide such support for a period not exceeding six years. Notwithstanding any other provision of this subsection, a proposition under this subsection to levy an additional tax for a school district shall be authorized by a majority of the voters voting on the proposition, regardless of the number of voters voting on the proposition;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the voters of the taxing district voting on the proposition to issue such bonds and to pay the principal and interest thereon by annual tax levies in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of voters voting on the proposition shall constitute not less than forty percent of the total number of voters voting in such taxing district at the last preceding general election. Any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein. The provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [**AMENDMENT 101**, 2007 Engrossed House Joint Resolution No. 4204, pp 3143-3145. Approved November 6, 2007.]

Prior amendments of Art. 7 Section 2, see Amendments 17, 55, 59, 64, 79, and 90.

**Amendment 95 (2002) — Art. 7 Section 2 LIMITATION ON LEVIES —** *Except as hereinafter provided and notwithstanding any other provision*

*of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money: Provided, however, That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only as follows:*

*(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of voters voting "yes" on the proposition shall constitute three-fifths of a number equal to forty percent of the total number of voters voting in such taxing district at the last preceding general election when the number of voters voting on the proposition does not exceed forty percent of the total number of voters voting in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy when the number of voters voting on the proposition exceeds forty percent of the number of voters voting in such taxing district in the last preceding general election: Provided, That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools or fire protection districts may provide such support for a period of up to four years and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities or fire facilities may provide such support for a period not exceeding six years;*

*(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the voters of the taxing district voting on the proposition to issue such bonds and to pay the principal and interest thereon by annual tax levies in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of voters voting on the proposition shall constitute not less than forty percent of the total number of voters voting in such taxing district at the last preceding general election: Provided, That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, And provided further, That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;*

(c) *By the state or any taxing district for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort.* [AMENDMENT 95, 2002 House Joint Resolution No. 4220, p 2203. Approved November 5, 2002.]

**Amendment 90 (1997) — Art. 7 Section 2 LIMITATION ON LEVIES —** *Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money:* Provided, however, *That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only*

(a) *By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election:* Provided, *That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a two year period and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities may provide such support for a period not exceeding six years;*

(b) *By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election:* Provided, *That any such taxing district shall have the right by vote of its governing body to*

refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, And provided further, That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [AMENDMENT 90, 1997 House Joint Resolution No. 4208, p 3063. Approved November 4, 1997.]

**Amendment 79 (1986) — Art. 7 Section 2 LIMITATION ON LEVIES —** Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money: Provided, however, That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election: Provided, That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a two year period and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities may provide such support for a period not exceeding six years;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by

*an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election:* Provided, *That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein,* And provided further, *That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;*
*(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort.* [AMENDMENT 79, 1986 House Joint Resolution No. 55, p 1530. Approved November 4, 1986.]

**Amendment 64 (1976) — Art. 7 Section 2 LIMITATION ON LEVIES —** *Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money:* Provided, however, *That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only*
*(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election:* Provided, *That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a two year period;*

*(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election:* Provided, *That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein,* And provided further, *That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;*

*(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort.* [AMENDMENT 64, 1975-'76 2nd ex.s. Senate Joint Resolution No. 137, p 518. Approved November 2, 1976.]

**Amendment 59 (1972) and Amendment 55 (1972) — Art. 7 Section 2 LIMITATION ON LEVIES** — Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money: Provided, however, *That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only*

*(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the*

*proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election;*

*(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election:* Provided, *That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein,* And provided further, *That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;*

*(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort.* [(i) AMENDMENT 59, 1971 House Joint Resolution No. 47, p 1834. Approved November, 1972. (ii) AMENDMENT 55, 1971 Senate Joint Resolution No. 1, p 1827. Approved November, 1972.]

**Reviser's note**: Article 7 Section 2 was twice amended in different respects at the November 1972 general election by the ratification of both S.J.R. No. 1. (AMENDMENT 55) and H.J.R. No. 47. (AMENDMENT 59.) 1971 HJR No. 47 contained the following paragraph:

"*Be It Further Resolved,* That the foregoing amendment shall be submitted to the qualified electors of the state in such a manner that they may vote for or against it separately from the proposed amendment to Article VII, section 2, (Amendment 17) of the Constitution of the State of Washington contained in Senate Joint Resolution No. 1: *Provided,* That if both proposed amendments are approved and ratified, both shall become part of the Constitution" [1971 House Joint Resolution No. 47, part, p 1834]

The section as printed above reflects the content of both amendments.

**Amendment 17 (1944) — Art. 7 Section 2 FORTY MILL LIMIT** — *Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money:* Provided, however, *That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The*

term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: Provided, That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, and Provided further, That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [AMENDMENT 17, 1943 House Joint Resolution No. 1, p 936. Approved November, 1944.]

**Reviser's note**: Original section 2, as amended by Amendment 3, was stricken by Amendment 14. The original section and Amendment 3, are set out following Art. 7, Section 1, above.

**SECTION 3 TAXATION OF FEDERAL AGENCIES AND PROPERTY**. The United States and its agencies and instrumentalities, and their property, may be taxed under any of the tax laws of this state, whenever and in such manner as such taxation may be authorized or permitted under the laws of the United States, notwithstanding anything to the contrary in the Constitution of this state. [**AMENDMENT 19**, 1945 House Joint Resolution No. 9, p 932. Approved November, 1946.]

**Reviser's note**: Original section 3 was stricken by Amendment 14. The original section is set out following Art. 7 Section 1, above.

**SECTION 4 NO SURRENDER OF POWER OR SUSPENSION OF TAX ON CORPORATE PROPERTY.**

**Reviser's note**: Original section 4 was stricken by Amendment 14. It is set out following Art. 7 Section 1, above.

**SECTION 5 TAXES, HOW LEVIED.** No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied.

**SECTION 6 TAXES, HOW PAID.** All taxes levied and collected for state purposes shall be paid in money only into the state treasury.

**SECTION 7 ANNUAL STATEMENT.** An accurate statement of the receipts and expenditures of the public moneys shall be published annually in such manner as the legislature may provide.

**SECTION 8 TAX TO COVER DEFICIENCIES.** Whenever the expenses of any fiscal year shall exceed the income, the legislature may provide for levying a tax for the ensuing fiscal year, sufficient, with other sources of income, to pay the deficiency, as well as the estimated expenses of the ensuing fiscal year.

**SECTION 9 SPECIAL ASSESSMENTS OR TAXATION FOR LOCAL IMPROVEMENTS.** The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

**SECTION 10 RETIRED PERSONS PROPERTY TAX EXEMPTION.** Notwithstanding the provisions of Article 7, section 1 (Amendment 14) and Article 7, section 2 (Amendment 17), the following tax exemption shall be allowed as to real property:
The legislature shall have the power, by appropriate legislation, to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners. The legislature may place such restrictions and conditions upon the granting of such relief as it shall deem proper. Such restrictions and conditions may include, but are not limited to, the limiting of the relief to those property owners below a specific level of income and those fulfilling certain minimum residential requirements. [**AMENDMENT 47**, 1965 ex.s. House Joint Resolution No. 7, p 2821. Approved November 8, 1966.]

**SECTION 11 TAXATION BASED ON ACTUAL USE**. Nothing in this Article VII as amended shall prevent the legislature from providing, subject to such conditions as it may enact, that the true and fair value in money (a) of farms, agricultural lands, standing timber and timber-lands, and (b) of other open space lands which are used for recreation or for enjoyment of their scenic or natural beauty shall be based on the use to which such property is currently applied, and such values shall be used in computing the assessed valuation of such property in the same manner as the assessed valuation is computed for all proper-ty. [**AMENDMENT 53**, 1967 House Joint Resolution No. 1; see 1969 p 2976. Approved November 5, 1968.]

**SECTION 12 BUDGET STABILIZATION ACCOUNT**. (a) A budget stabiliza-tion account shall be established and maintained in the state treas-ury.

(b)(1) By June 30th of each fiscal year, an amount equal to one percent of the general state revenues for that fiscal year shall be transferred to the budget stabilization account. Nothing in this sub-section (b) shall prevent the appropriation of additional amounts to the budget stabilization account.

(2) By June 30th of the second year of each fiscal biennium, three-quarters of any extraordinary revenue growth shall be transfer-red to the budget stabilization account. However, no transfer of ex-traordinary revenue growth under this subsection (b)(2) shall occur in a fiscal biennium following a fiscal biennium in which annual average state employment growth averaged less than one percent per fiscal year. "Extraordinary revenue growth" means the amount by which the growth in general state revenues for that fiscal biennium exceeds by one-third the average biennial percentage growth in general state rev-enues over the prior five fiscal biennia. In making this determina-tion, the comparability of data shall be maintained by adjusting his-torical general state revenues to reflect statutory changes to the dedication of state revenues. The transfer under this subsection shall be made only to the extent that it exceeds the total transfers under (1) of this subsection for that fiscal biennium.

(c) Each fiscal quarter, the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity, shall estimate state employment growth for the current and next two fiscal years.

(d) Moneys may be withdrawn and appropriated from the budget sta-bilization account as follows:

(i) If the governor declares a state of emergency resulting from a catastrophic event that necessitates government action to protect life or public safety, then for that fiscal year moneys may be with-drawn and appropriated from the budget stabilization account, via sep-arate legislation setting forth the nature of the emergency and con-taining an appropriation limited to the above-authorized purposes as contained in the declaration, by a favorable vote of a majority of the members elected to each house of the legislature.

(ii) If the employment growth forecast for any fiscal year is es-timated to be less than one percent, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization ac-count by the favorable vote of a majority of the members elected to each house of the legislature.

(iii) Any amount may be withdrawn and appropriated from the budget stabilization account at any time by the favorable vote of at least three-fifths of the members of each house of the legislature.

(e) Amounts in the budget stabilization account may be invested as provided by law and retained in that account. When the balance in the budget stabilization account, including investment earnings, equals more than ten percent of the estimated general state revenues in that fiscal year, the legislature by the favorable vote of a majority of the members elected to each house of the legislature may withdraw and appropriate the balance to the extent that the balance exceeds ten percent of the estimated general state revenues. Appropriations under this subsection (e) may be made solely for deposit to the education construction fund.

(f) As used in this section, "general state revenues" has the meaning set forth in Article VIII, section 1 of the Constitution. Forecasts and estimates shall be made by the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity.

(g) The legislature shall enact appropriate laws to carry out the purposes of this section.

(h) This section takes effect July 1, 2008. [**AMENDMENT 106**, 2011 Senate Joint Resolution No. 8206, p 4281-4283. Approved November 8, 2011.]

**Amendment 99 (2007) — Art. 7 Section 12 BUDGET STABILIZATION ACCOUNT** — *(a) A budget stabilization account shall be established and maintained in the state treasury.*

*(b) By June 30th of each fiscal year, an amount equal to one percent of the general state revenues for that fiscal year shall be transferred to the budget stabilization account. Nothing in this subsection (b) shall prevent the appropriation of additional amounts to the budget stabilization account.*

*(c) Each fiscal quarter, the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity, shall estimate state employment growth for the current and next two fiscal years.*

*(d) Moneys may be withdrawn and appropriated from the budget stabilization account as follows:*

*(i) If the governor declares a state of emergency resulting from a catastrophic event that necessitates government action to protect life or public safety, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account, via separate legislation setting forth the nature of the emergency and containing an appropriation limited to the above-authorized purposes as contained in the declaration, by a favorable vote of a majority of the members elected to each house of the legislature.*

*(ii) If the employment growth forecast for any fiscal year is estimated to be less than one percent, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account by the favorable vote of a majority of the members elected to each house of the legislature.*

*(iii) Any amount may be withdrawn and appropriated from the budget stabilization account at any time by the favorable vote of at least three-fifths of the members of each house of the legislature.*

*(e) Amounts in the budget stabilization account may be invested as provided by law and retained in that account. When the balance in the budget stabilization account, including investment earnings, equals more than ten percent of the estimated general state revenues in that fiscal year, the legislature by the favorable vote of a majority of the members elected to each house of the legislature may withdraw and appropriate the balance to the extent that the balance exceeds ten percent of the estimated general state revenues. Appropriations under this subsection (e) may be made solely for deposit to the education construction fund.*

*(f) As used in this section, "general state revenues" has the meaning set forth in Article VIII, section 1 of the Constitution. Forecasts and estimates shall be made by the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity.*

*(g) The legislature shall enact appropriate laws to carry out the purposes of this section.*

*(h) This section takes effect July 1, 2008.* [AMENDMENT 99, 2007 Engrossed Substitute Senate Joint Resolution No. 8206, pp 3146, 3147. Approved November 6, 2007.]

## ARTICLE VIII
### STATE, COUNTY, AND
### MUNICIPAL INDEBTEDNESS

**SECTION 1 STATE DEBT.** (a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.

(b) The aggregate debt contracted by the state, as calculated by the treasurer at the time debt is contracted, shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than the applicable percentage limit of the arithmetic mean of its general state revenues for the six immediately preceding fiscal years as certified by the treasurer. The term "applicable percentage limit" means eight and one-half percent from July 1, 2014, through June 30, 2016; eight and one-quarter percent from July 1, 2016, through June 30, 2034; eight percent from July 1, 2034, and thereafter. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.

(c) The term "general state revenues," when used in this section, shall include all state money received in the treasury from each and every source, including moneys received from ad valorem taxes levied by the state and deposited in the general fund in each fiscal year, but not including: (1) Fees and other revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when

the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Moneys received from taxes levied for specific purposes and required to be deposited for those purposes into specified funds or accounts other than the general fund; and (6) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority. In addition, for the purpose of computing the amount required for payment of interest on outstanding debt under subsection (b) of this section and this subsection, "interest" shall be reduced by subtracting the amount scheduled to be received by the state as payments from the federal government in each year in respect of bonds, notes, or other evidences of indebtedness subject to this section.

(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.

(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (h) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: *Provided,* That the legislature shall, at all times, provide sufficient revenues from

such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [**AMENDMENT 107**, 2012 Engrossed Senate Joint Resolution No. 8221, p 2429-2432. Approved November 6, 2012.]

**Amendment 103 (2010) — Art. 8 Section 1 STATE DEBT** — *(a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.*

*(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term*

"fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.

(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority. In addition, for the purpose of computing the amount required for payment of interest on outstanding debt under subsection (b) of this section and this subsection, "interest" shall be reduced by subtracting the amount scheduled to be received by the state as payments from the federal government in each year in respect of bonds, notes, or other evidences of indebtedness subject to this section.

(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.

(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (h) of this section, including any premium payable

12/27/2016 9:01 AM                    [ 77 ]                    Article VIII Section 1

with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: Provided, That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [AMENDMENT 103, 2010

Senate Joint Resolution No. 8225, p 3129-3132. Approved November 2, 2010.]

**Amendment 92 (1999) — Art. 8 Section 1 STATE DEBT** — *(a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.*

*(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.*

*(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.*

*(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority.*

*(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.*

*(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any*

debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type descri-bed in subsection (h) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refund-ing shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: Provided, That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol com-mittee, or any similar entity existing or operating for similar purpo-ses pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favora-ble vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be is-sued by the state; and the manner by which the treasurer shall deter-mine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers re-lating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the con-duct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by re-funding within twelve months after the date of incurrence.

*(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [AMENDMENT 92, 1999 Senate Joint Resolution No. 8206, p 2387. Approved November 2, 1999.]*

**Amendment 60, part, (1972) — Art. 8 Section 1 STATE DEBT —** *(a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.*

*(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.*

*(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.*

*(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (f) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority.*

*(e) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section*

3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (g) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(f) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: Provided, That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(g) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(h) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(i) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(j) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

*(k) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof.* [AMENDMENT 60, part, 1971 House Joint Resolution No. 52, part, p 1836. Approved November, 1972.]

**Original text — Art. 8 Section 1 LIMITATION OF STATE DEBT —** *The state may to meet casual deficits or failure in revenues, or for expenses not provided for, contract debts, but such debts, direct and contingent, singly or in the aggregate, shall not at any time exceed four hundred thousand dollars ($400,000), and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained or to repay the debts so contracted, and to no other purpose whatever.*

**SECTION 2 POWERS EXTENDED IN CERTAIN CASES.** In addition to the above limited power to contract debts the state may contract debts to repel invasion, suppress insurrection, or to defend the state in war, but the money arising from the contracting of such debts shall be applied to the purpose for which it was raised and to no other purpose whatever.

**SECTION 3 SPECIAL INDEBTEDNESS, HOW AUTHORIZED.** Except the debt specified in sections one and two of this article, no debts shall hereafter be contracted by, or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein. No such law shall take effect until it shall, at a general election, or a special election called for that purpose, have been submitted to the people and have received a majority of all the votes cast for and against it at such election. [**AMENDMENT 60**, part, 1971 House Joint Resolution No. 52, part, p 1836. Approved November, 1972.]

**Amendment 48 (1966) — Art. 8 Section 3 SPECIAL INDEBTEDNESS, HOW AUTHORIZED —** *Except the debt specified in sections one and two of this article, no debts shall hereafter be contracted by, or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein, which law shall provide ways and means, exclusive of loans, for the payment of the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election, and all moneys raised by authority of such law shall be applied only to the specific object therein stated, or to the payment of the debt thereby created, and notice that such law will be submitted to the people shall be published at least four times during the four weeks next preceding the election in every legal newspaper in the state:* Provided, *That failure of any newspaper to publish this notice shall not be interpreted as affecting the outcome of the election.*

[AMENDMENT 48, 1965 ex.s. House Joint Resolution No. 39, p 2822. Approved November 8, 1966.]

**Original text — Art. 8 Section 3 SPECIAL INDEBTEDNESS HOW AUTHORIZED** — *Except the debt specified in sections one and two of this article, no debts shall hereafter be contracted by, or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein, which law shall provide ways and means, exclusive of loans, for the payment of the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election, and all moneys raised by authority of such law shall be applied only to the specific object therein stated, or to the payment of the debt thereby created, and such law shall be published in at least one newspaper in each county, if one be published therein, throughout the state, for three months next preceding the election at which it is submitted to the people.*

**SECTION 4 MONEYS DISBURSED ONLY BY APPROPRIATIONS**. No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum. [**AMENDMENT 11,** 1921 p 80 Section 1. Approved November, 1922.]

**Original text — Art. 8 Section 4 MONEYS DISBURSED ONLY BY APPROPRIATIONS** — *No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.*

**SECTION 5 CREDIT NOT TO BE LOANED**. The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation.

**SECTION 6 LIMITATIONS UPON MUNICIPAL INDEBTEDNESS**. No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be

held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: *Provided, That* no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly county, city, town, school district, or other municipal purposes: *Provided further, That* (a) any city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality and (b) any school district with such assent, may be allowed to become indebted to a larger amount but not exceeding five per centum additional for capital outlays. [**AMENDMENT 27**, 1951 House Joint Resolution No. 8, p 961. Approved November 4, 1952.]

*Provisions of Art. 7 Section 2 (Limitation on Levies) also subject to limitations contained in Art. 8 Section 6: Art. 7 Section 2 (b).*

**Original text — Art. 8 Section 6 LIMITATIONS UPON MUNICIPAL INDEBTEDNESS** — *No county, city, town, school district or other municipal corporation, shall for any purpose become indebted in any manner to an amount exceeding one and one-half percentum of the taxable property in such county, city, town, school district or other municipal corporation, without the assent of three-fifths of the voters therein, voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state, and county purposes previous to the incurring of such indebtedness; except that in incorporated cities the assessment shall be taken from the last assessment for city purposes;* Provided, *That no part of the indebtedness allowed in this section, shall be incurred for any purpose other than strictly county, city, town, school district, or other municipal purposes.* Provided further; *that any city or town, with such assent may be allowed to become indebted to a larger amount but not exceeding five per centum additional for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality.*

**SECTION 7 CREDIT NOT TO BE LOANED.** No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

**SECTION 8 PORT EXPENDITURES — INDUSTRIAL DEVELOPMENT — PROMOTION.** The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion and promotional hosting shall be deemed a public use for a

public purpose, and shall not be deemed a gift within the provisions of section 7 of this Article. [**AMENDMENT 45**, 1965 ex.s. Senate Joint Resolution No. 25, p 2819. Approved November 8, 1966.]

**SECTION 9 STATE BUILDING AUTHORITY.** The legislature is empowered notwithstanding any other provision in this Constitution, to provide for a state building authority in corporate and politic form which may contract with agencies or departments of the state government to construct upon land owned by the state or its agencies, or to be acquired by the state building authority, buildings and appurtenant improvements which such state agencies or departments are hereby empowered to lease at reasonable rental rates from the Washington state building authority for terms up to seventy-five years with provisions for eventual vesting of title in the state or its agencies. This section shall not be construed as authority to provide buildings through lease or otherwise to nongovernmental entities. The legislature may authorize the state building authority to borrow funds solely upon its own credit and to issue bonds or other evidences of indebtedness therefor to be repaid from its revenues and to secure the same by pledging its income or mortgaging its leaseholds. The provisions of sections 1 and 3 of this article shall not apply to indebtedness incurred pursuant to this section. [**AMENDMENT 51**, 1967 Senate Joint Resolution No. 17; see 1969 p 2976. Approved November 5, 1968.]

**Reviser's note**: This section which was adopted as Sec. 8, is herein renumbered Sec. 9, to avoid confusion with Sec. 8, supra.

**SECTION 10 ENERGY, WATER, OR STORMWATER OR SEWER SERVICES CONSERVATION ASSISTANCE.** Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water, energy, or stormwater or sewer services may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of water, energy, or stormwater or sewer services to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water, energy, or stormwater or sewer services in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing for energy conservation authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another. [**AMENDMENT 91**, 1997 House Joint Resolution No. 4209, p 3065. Approved November 4, 1997.]

**Amendment 86 (1989) — Art. 8 Section 10 ENERGY AND WATER CONSERVATION ASSISTANCE** — *Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water or energy may, as authorized by the legislature, use public moneys or credit derived from op-*

*erating revenues from the sale of water or energy to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water or energy in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing for energy conservation authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another. [AMENDMENT 86, 1989 Senate Joint Resolution No. 8210, p 3003. Approved November 7, 1989.]*

**Amendment 82 (1988) — Art. 8 Section 10 RESIDENTIAL ENERGY CONSERVATION** — Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of energy may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of energy to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of energy in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another. [AMENDMENT 82, 1988 House Joint Resolution No. 4223, p 1552. Approved November 8, 1988.]

**Amendment 70 (1979) — Art. 8 Section 10 RESIDENTIAL ENERGY CONSERVATION** — *Notwithstanding the provisions of section 7 of this Article, until January 1, 1990 any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of energy may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of energy to assist the owners of residential structures in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of energy in such structures. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the residential structure benefited. Except as to contracts entered into prior thereto, this amendment to the state Constitution shall be null and void as of January 1, 1990 and shall have no further force or effect after that date. [AMENDMENT 70, Substitute Senate Joint Resolution No. 120, p 2288. Approved November 6, 1979.]*

**SECTION 11 AGRICULTURAL COMMODITY ASSESSMENTS — DEVELOPMENT, PROMOTION, AND HOSTING.** The use of agricultural commodity assessments by agricultural commodity commissions in such manner as may be prescribed by the legislature for agricultural development or trade pro-

motion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 5 of this article. [**AMENDMENT 76**, 1985 House Joint Resolution No. 42, p 2402. Approved November 5, 1985.]

## ARTICLE IX
## EDUCATION

**SECTION 1 PREAMBLE.** It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex.

**SECTION 2 PUBLIC SCHOOL SYSTEM.** The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools.

**SECTION 3 FUNDS FOR SUPPORT.** The principal of the common school fund as the same existed on June 30, 1965, shall remain permanent and irreducible. The said fund shall consist of the principal amount thereof existing on June 30, 1965, and such additions thereto as may be derived after June 30, 1965, from the following named sources, to wit: Appropriations and donations by the state to this fund; donations and bequests by individuals to the state or public for common schools; the proceeds of lands and other property which revert to the state by escheat and forfeiture; the proceeds of all property granted to the state when the purpose of the grant is not specified, or is uncertain; funds accumulated in the treasury of the state for the disbursement of which provision has not been made by law; the proceeds of the sale of stone, minerals, or property other than timber and other crops from school and state lands, other than those granted for specific purposes; all moneys received from persons appropriating stone, minerals or property other than timber and other crops from school and state lands other than those granted for specific purposes, and all moneys other than rental recovered from persons trespassing on said lands; five per centum of the proceeds of the sale of public lands lying within the state, which shall be sold by the United States subsequent to the admission of the state into the Union as approved by section 13 of the act of congress enabling the admission of the state into the Union; the principal of all funds arising from the sale of lands and other property which have been, and hereafter may be granted to the state for the support of common schools. The legislature may make further provisions for enlarging said fund.

There is hereby established the common school construction fund to be used exclusively for the purpose of financing the construction of facilities for the common schools. The sources of said fund shall be: (1) Those proceeds derived from the sale or appropriation of timber and other crops from school and state lands subsequent to June 30, 1965, other than those granted for specific purposes; (2) the interest

accruing on said permanent common school fund from and after July 1, 1967, together with all rentals and other revenues derived therefrom and from lands and other property devoted to the permanent common school fund from and after July 1, 1967; and (3) such other sources as the legislature may direct. That portion of the common school construction fund derived from interest on the permanent common school fund may be used to retire such bonds as may be authorized by law for the purpose of financing the construction of facilities for the common schools.

The interest accruing on the permanent common school fund together with all rentals and other revenues accruing thereto pursuant to subsection (2) of this section during the period after the effective date of this amendment and prior to July 1, 1967, shall be exclusively applied to the current use of the common schools.

To the extent that the moneys in the common school construction fund are in excess of the amount necessary to allow fulfillment of the purpose of said fund, the excess shall be available for deposit to the credit of the permanent common school fund or available for the current use of the common schools, as the legislature may direct. [**AMENDMENT 43**, 1965 ex.s. Senate Joint Resolution No. 22, part 1, p 2817. Approved November 8, 1966.]

**Original text — Art. 9 Section 3 FUNDS FOR SUPPORT —** *The principal of the common school fund shall remain permanent and irreducible. The said fund shall be derived from the following named sources, to wit: Appropriations and donations by the state to this fund; donations and bequests by individuals to the state or public for common schools; the proceeds of lands and other property which revert to the state by escheat and forfeiture; the proceeds of all property granted to the state when the purpose of the grant is not specified, or is uncertain; funds accumulated in the treasury of the state for the disbursement of which provision has not been made by law; the proceeds of the sale of timber, stone, minerals, or other property from school and state lands, other than those granted for specific purposes; all moneys received from persons appropriating timber, stone, minerals or other property from school and state lands other than those granted for specific purposes, and all moneys other than rental recovered from persons trespassing on said lands; five per centum of the proceeds of the sale of public lands lying within the state, which shall be sold by the United States subsequent to the admission of the state into the Union as approved by section 13 of the act of congress enabling the admission of the state into the Union; the principal of all funds arising from the sale of lands and other property which have been, and hereafter may be granted to the state for the support of common schools. The legislature may make further provisions for enlarging said fund. The interest accruing on said fund together with all rentals and other revenues derived therefrom and from lands and other property devoted to the common school fund shall be exclusively applied to the current use of the common schools.*

**SECTION 4 SECTARIAN CONTROL OR INFLUENCE PROHIBITED.** All schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence.

12/27/2016 9:01 AM                [ 89 ]                Article IX Section 4

**SECTION 5 LOSS OF PERMANENT FUND TO BECOME STATE DEBT.** All losses to the permanent common school or any other state educational fund, which shall be occasioned by defalcation, mismanagement or fraud of the agents or officers controlling or managing the same, shall be audited by the proper authorities of the state. The amount so audited shall be a permanent funded debt against the state in favor of the particular fund sustaining such loss, upon which not less than six per cent annual interest shall be paid. The amount of liability so created shall not be counted as a part of the indebtedness authorized and limited elsewhere in this Constitution.

*Investment of permanent school fund: Art. 16 Section 5.*

## ARTICLE X
## MILITIA

**SECTION 1 WHO LIABLE TO MILITARY DUTY.** All able-bodied male citizens of this state between the ages of eighteen (18) and forty-five (45) years except such as are exempt by laws of the United States or by the laws of this state, shall be liable to military duty.

**SECTION 2 ORGANIZATION — DISCIPLINE — OFFICERS — POWER TO CALL OUT.** The legislature shall provide by law for organizing and disciplining the militia in such manner as it may deem expedient, not incompatible with the Constitution and laws of the United States. Officers of the militia shall be elected or appointed in such manner as the legislature shall from time to time direct and shall be commissioned by the governor. The governor shall have power to call forth the militia to execute the laws of the state to suppress insurrections and repel invasions.

**SECTION 3 SOLDIERS' HOME.** The legislature shall provide by law for the maintenance of a soldiers' home for honorably discharged Union soldiers, sailors, marines and members of the state militia disabled while in the line of duty and who are *bona fide* citizens of the state.

**SECTION 4 PUBLIC ARMS.** The legislature shall provide by law, for the protection and safe keeping of the public arms.

**SECTION 5 PRIVILEGE FROM ARREST.** The militia shall, in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at musters and elections of officers, and in going to and returning from the same.

**SECTION 6 EXEMPTION FROM MILITARY DUTY.** No person or persons, having conscientious scruples against bearing arms, shall be compelled to do militia duty in time of peace: *Provided,* such person or persons shall pay an equivalent for such exemption.

## ARTICLE XI
## COUNTY, CITY, AND TOWNSHIP ORGANIZATION

**SECTION 1 EXISTING COUNTIES RECOGNIZED.** The several counties of the Territory of Washington existing at the time of the adoption of this Constitution are hereby recognized as legal subdivisions of this state.

**SECTION 2 COUNTY SEATS — LOCATION AND REMOVAL.** No county seat shall be removed unless three-fifths of the qualified electors of the county, voting on the proposition at a general election shall vote in favor of such removal, and three-fifths of all votes cast on the proposition shall be required to relocate a county seat. A proposition of removal shall not be submitted in the same county more than once in four years.

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 3 NEW COUNTIES.** No new counties shall be established which shall reduce any county to a population less than four thousand (4,000), nor shall a new county be formed containing a less population than two thousand (2,000). There shall be no territory stricken from any county unless a majority of the voters living in such territory shall petition therefor and then only under such other conditions as may be prescribed by a general law applicable to the whole state. Every county which shall be enlarged or created from territory taken from any other county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken: *Provided,* That in such accounting neither county shall be charged with any debt or liability then existing incurred in the purchase of any county property, or in the purchase or construction of any county buildings then in use, or under construction, which shall fall within and be retained by the county: *Provided further,* That this shall not be construed to affect the rights of creditors.

**SECTION 4 COUNTY GOVERNMENT AND TOWNSHIP ORGANIZATION.** The legislature shall establish a system of county government, which shall be uniform throughout the state except as hereinafter provided, and by general laws shall provide for township organization, under which any county may organize whenever a majority of the qualified electors of such county voting at a general election shall so determine; and whenever a county shall adopt township organization, the assessment and collection of the revenue shall be made, and the business of such county and the local affairs of the several townships therein, shall be managed and transacted in the manner prescribed by such general law.

Any county may frame a "Home Rule" charter for its own government subject to the Constitution and laws of this state, and for such purpose the legislative authority of such county may cause an election to be had, at which election there shall be chosen by the qualified voters of said county not less than fifteen (15) nor more than twenty-

five (25) freeholders thereof, as determined by the legislative au-
thority, who shall have been residents of said county for a period of
at least five (5) years preceding their election and who are them-
selves qualified electors, whose duty it shall be to convene within
thirty (30) days after their election and prepare and propose a char-
ter for such county. Such proposed charter shall be submitted to the
qualified electors of said county, and if a majority of such qualified
electors voting thereon ratify the same, it shall become the charter
of said county and shall become the organic law thereof, and supersede
any existing charter, including amendments thereto, or any existing
form of county government, and all special laws inconsistent with such
charter. Said proposed charter shall be published in two (2) legal
newspapers published in said county, at least once a week for four (4)
consecutive weeks prior to the day of submitting the same to the elec-
tors for their approval as above provided. All elections in this sec-
tion authorized shall only be had upon notice, which notice shall
specify the object of calling such election and shall be given for at
least ten (10) days before the day of election in all election dis-
tricts of said county. Said elections may be general or special elec-
tions and except as herein provided, shall be governed by the law reg-
ulating and controlling general or special elections in said county.
Such charter may be amended by proposals therefor submitted by the
legislative authority of said county to the electors thereof at any
general election after notice of such submission published as above
specified, and ratified by a majority of the qualified electors voting
thereon. In submitting any such charter or amendment thereto, any al-
ternate article or proposition may be presented for the choice of the
voters and may be voted on separately without prejudice to others.

Any home rule charter proposed as herein provided, may provide
for such county officers as may be deemed necessary to carry out and
perform all county functions as provided by charter or by general law,
and for their compensation, but shall not affect the election of the
prosecuting attorney, the county superintendent of schools, the judges
of the superior court, and the justices of the peace, or the jurisdic-
tion of the courts.

Notwithstanding the foregoing provision for the calling of an
election by the legislative authority of such county for the election
of freeholders to frame a county charter, registered voters equal in
number to ten (10) per centum of the voters of any such county voting
at the last preceding general election, may at any time propose by pe-
tition the calling of an election of freeholders. The petition shall
be filed with the county auditor of the county at least three (3)
months before any general election and the proposal that a board of
freeholders be elected for the purpose of framing a county charter
shall be submitted to the vote of the people at said general election,
and at the same election a board of freeholders of not less than fif-
teen (15) or more than twenty-five (25), as fixed in the petition
calling for the election, shall be chosen to draft the new charter.
The procedure for the nomination of qualified electors as candidates
for said board of freeholders shall be prescribed by the legislative
authority of the county, and the procedure for the framing of the
charter and the submission of the charter as framed shall be the same
as in the case of a board of freeholders chosen at an election initi-
ated by the legislative authority of the county.

In calling for any election of freeholders as provided in this
section, the legislative authority of the county shall apportion the
number of freeholders to be elected in accordance with either the leg-

12/27/2016 9:01 AM              [ 92 ]              Article XI Section 4

islative districts or the county commissioner districts, if any, within said county, the number of said freeholders to be elected from each of said districts to be in proportion to the population of said districts as nearly as may be.

Should the charter proposed receive the affirmative vote of the majority of the electors voting thereon, the legislative authority of the county shall immediately call such special election as may be provided for therein, if any, and the county government shall be established in accordance with the terms of said charter not more than six (6) months after the election at which the charter was adopted.

The terms of all elective officers, except the prosecuting attorney, the county superintendent of schools, the judges of the superior court, and the justices of the peace, who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter. All appointive officers in office at the time the charter goes into effect, whose positions are not abolished thereby, shall continue until their successors shall have qualified.

After the adoption of such charter, such county shall continue to have all the rights, powers, privileges and benefits then possessed or thereafter conferred by general law. All the powers, authority and duties granted to and imposed on county officers by general law, except the prosecuting attorney, the county superintendent of schools, the judges of the superior court and the justices of the peace, shall be vested in the legislative authority of the county unless expressly vested in specific officers by the charter. The legislative authority may by resolution delegate any of its executive or administrative powers, authority or duties not expressly vested in specific officers by the charter, to any county officer or officers or county employee or employees.

The provisions of sections 5, 6, 7, and the first sentence of section 8 of this Article as amended shall not apply to counties in which the government has been established by charter adopted under the provisions hereof. The authority conferred on the board of county commissioners by Section 15 of Article II as amended, shall be exercised by the legislative authority of the county. [**AMENDMENT 21**, 1947 Senate Joint Resolution No. 5, p 1372. Approved November 2, 1948.]

**Original text — Art. 11 Section 4 COUNTY GOVERNMENT AND TOWNSHIP ORGANIZATION —** *The legislature shall establish a system of county government which shall be uniform throughout the state, and by general laws shall provide for township organization, under which any county may organize whenever a majority of the qualified electors of such county voting at a general election shall so determine, and whenever a county shall adopt township organization the assessment and collection of the revenue shall be made and the business of such county, and the local affairs of the several townships therein shall be managed and transacted in the manner prescribed by such general laws.*

**SECTION 5 COUNTY GOVERNMENT**. The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: *Provided,* That the legislature may, by general laws, classify the counties by population and

provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population: *Provided,* That it may delegate to the legislative authority of the counties the right to prescribe the salaries of its own members and the salaries of other county officers. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession. [**AMENDMENT 57**, part, 1971 Senate Joint Resolution No. 38, part, p 1829. Approved November, 1972.]

**Amendment 12 (1924) — Art. 11 Section 5 COUNTY GOVERNMENT** — *The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: Provided, That the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession. [AMENDMENT 12, 1923 p 255 Section 1. Approved November, 1924.]*

**Original text — Art. 11 Section 5 ELECTION AND COMPENSATION OF COUNTY OFFICERS** — *The legislature by general and uniform laws shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township or precinct and district officers as public convenience may require, and shall prescribe their duties, and fix their terms of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession.*

**SECTION 6 VACANCIES IN TOWNSHIP, PRECINCT OR ROAD DISTRICT OFFICE.** The board of county commissioners in each county shall fill all vacancies occurring in any township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next general election, and until their successors are elected and qualified. [**AMENDMENT 52**, part, 1967 Senate Joint Resolution No. 24, part. Approved November 5, 1968.]

*Governmental continuity during emergency periods: Art. 2 Section 42.*

*Vacancies in legislature and in partisan county elective office: Art. 2 Section 15.*

**Original text — Art. 11 Section 6 VACANCIES IN COUNTY, ETC., OF-FICES, HOW FILLED** — *The board of county commissioners in each county shall fill all vacancies occurring in any county, township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next general election, and until their successors are elected and qualified.*

**SECTION 7 TENURE OF OFFICE LIMITED TO TWO TERMS.** [Repealed by *AMENDMENT 22*, 1947 House Joint Resolution No. 4, p 1385. Approved November 2, 1948.]

**Original text — Art. 11 Section 7 TENURE OF OFFICE LIMITED TO TWO TERMS** — *No county officer shall be eligible to hold his office more than two terms in succession.*

**SECTION 8 SALARIES AND LIMITATIONS AFFECTING.** The salary of any county, city, town, or municipal officers shall not be increased except as provided in section 1 of Article XXX or diminished after his election, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed. [**AMENDMENT 57**, part, 1971 Senate Joint Resolution No. 38, part, p 1829. Approved November, 1972.]

**Original text — Art. 11 Section 8 SALARIES AND LIMITATIONS AF-FECTING** — *The legislature shall fix the compensation by salaries of all county officers, and of constables in cities having a population of five thousand and upwards; except that public administrators, surveyors and coroners may or may not be salaried officers. The salary of any county, city, town, or municipal officers shall not be increased or diminished after his election, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed.*

**SECTION 9 STATE TAXES NOT TO BE RELEASED OR COMMUTED.** No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever.

**SECTION 10 INCORPORATION OF MUNICIPALITIES.** Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification in proportion to population, of cities and towns, which laws may be altered, amended or repealed. Cities and towns heretofore organized, or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election, shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution shall be subject to and controlled by general laws. Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with

and subject to the Constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had at which election there shall be chosen by the qualified electors of said city, fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election and qualified electors, whose duty it shall be to convene within ten days after their election, and prepare and propose a charter for such city. Such proposed charter shall be submitted to the qualified electors of said city, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city, and shall become the organic law thereof, and supersede any existing charter including amendments thereto, and all special laws inconsistent with such charter. Said proposed charter shall be published in the daily newspaper of largest general circulation published in the area to be incorporated as a first class city under the charter or, if no daily newspaper is published therein, then in the newspaper having the largest general circulation within such area at least once each week for four weeks next preceding the day of submitting the same to the electors for their approval, as above provided. All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such election, and shall be given as required by law. Said elections may be general or special elections, and except as herein provided shall be governed by the law regulating and controlling general or special elections in said city. Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon. In submitting any such charter, or amendment thereto, any alternate article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others. [**AMENDMENT 40**, 1963 ex.s. Senate Joint Resolution No. 1, p 1526. Approved November 3, 1964.]

**Original text — Art. 11 Section 10 INCORPORATION OF MUNICIPALITIES** — *Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification in proportion to population, of cities and towns, which laws may be altered, amended or repealed. Cities and towns heretofore organized, or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election, shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution shall be subject to, and controlled by general laws. Any city containing a population of twenty thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had at which election there shall be chosen by the qualified electors of said city, fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election and qualified electors, whose duty it shall be to convene within ten days after their election, and prepare and propose a charter for such city. Such proposed charter shall be submitted to the qualified electors of said city, and if a*

*majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city, and shall become the organic law thereof, and supersede any existing charter including amendments thereto, and all special laws inconsistent with such charter. Said proposed charter shall be published in two daily newspapers published in said city, for at least thirty days prior to the day of submitting the same to the electors for their approval, as above provided. All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such election, and shall be given for at least ten days before the day of election, in all election districts of said city. Said elections may be general or special elections, and except as herein provided shall be governed by the law regulating and controlling general or special elections in said city. Such charter may be amended by proposals therefore submitted by the legislative authority of such city to the electors thereof at any general election after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon. In submitting any such charter, or amendment thereto, any alternate article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others.*

*Authority to incur and limit of indebtedness: Art. 8 Section 6.*

**SECTION 11 POLICE AND SANITARY REGULATIONS.** Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

**SECTION 12 ASSESSMENT AND COLLECTION OF TAXES IN MUNICIPALITIES.** The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

**SECTION 13 PRIVATE PROPERTY, WHEN MAY BE TAKEN FOR PUBLIC DEBT.** Private property shall not be taken or sold for the payment of the corporate debt of any public or municipal corporation, except in the mode provided by law for the levy and collection of taxes.

**SECTION 14 PRIVATE USE OF PUBLIC FUNDS PROHIBITED.** The making of profit out of county, city, town, or other public money, or using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law.

**SECTION 15 DEPOSIT OF PUBLIC FUNDS.** All moneys, assessments and taxes belonging to or collected for the use of any county, city, town or other public or municipal corporation, coming into the hands of any officer thereof, shall immediately be deposited with the treasurer, or other legal depositary to the credit of such city, town, or other cor-

poration respectively, for the benefit of the funds to which they belong.

    **SECTION 16 COMBINED CITY-COUNTY.** Any county may frame a "Home Rule" charter subject to the Constitution and laws of this state to provide for the formation and government of combined city and county municipal corporations, each of which shall be known as "city-county". Registered voters equal in number to ten (10) percent of the voters of any such county voting at the last preceding general election may at any time propose by a petition the calling of an election of freeholders. The provisions of section 4 of this Article with respect to a petition calling for an election of freeholders to frame a county home rule charter, the election of freeholders, and the framing and adoption of a county home rule charter pursuant to such petition shall apply to a petition proposed under this section for the election of freeholders to frame a city-county charter, the election of freeholders, and to the framing and adoption of such city-county charter pursuant to such petition. Except as otherwise provided in this section, the provisions of section 4 applicable to a county home rule charter shall apply to a city-county charter. If there are not sufficient legal newspapers published in the county to meet the requirements for publication of a proposed charter under section 4 of this Article, publication in a legal newspaper circulated in the county may be substituted for publication in a legal newspaper published in the county. No such "city-county" shall be formed except by a majority vote of the qualified electors voting thereon in the county. The charter shall designate the respective officers of such city-county who shall perform the duties imposed by law upon county officers. Every such city-county shall have and enjoy all rights, powers and privileges asserted in its charter, and in addition thereto, such rights, powers and privileges as may be granted to it, or to any city or county or class or classes of cities and counties. In the event of a conflict in the constitutional provisions applying to cities and those applying to counties or of a conflict in the general laws applying to cities and those applying to counties, a city-county shall be authorized to exercise any powers that are granted to either the cities or the counties.

    No legislative enactment which is a prohibition or restriction shall apply to the rights, powers and privileges of a city-county unless such prohibition or restriction shall apply equally to every other city, county, and city-county.

    The provisions of sections 2, 3, 5, 6, and 8 and of the first paragraph of section 4 of this article shall not apply to any such city-county.

    Municipal corporations may be retained or otherwise provided for within the city-county. The formation, powers and duties of such municipal corporations shall be prescribed by the charter.

    No city-county shall for any purpose become indebted in any manner to an amount exceeding three per centum of the taxable property in such city-county without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed ten per centum of the value of the taxable property therein, to be ascertained by the last assessment for city-county purposes previous to the incurring of such indebtedness: *Provided,* That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly city-county or other municipal purposes:

*Provided further,* That any city-county, with such assent may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city-county with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the city-county.

No municipal corporation which is retained or otherwise provided for within the city-county shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such municipal corporation without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor shall the total indebtedness at any time exceed five per centum of the value of the taxable property therein, to be ascertained by the last assessment for city-county purposes previous to the incurring of such indebtedness: *Provided,* That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly municipal purposes: *Provided further,* That any such municipal corporation, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such municipal corporation with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipal corporation. All taxes which are levied and collected within a municipal corporation for a specific purpose shall be expended within that municipal corporation.

The authority conferred on the city-county government shall not be restricted by the second sentence of Article 7, section 1, or by Article 8, section 6 of this Constitution. [**AMENDMENT 58**, 1971 House Joint Resolution No. 21, p 1831. Approved November, 1972.]

**Amendment 23 (1948) — Art. 11 Section 16 COMBINED CITY AND COUNTY** — *The legislature shall, by general law, provide for the formation of combined city and county municipal corporations, and for the manner of determining the territorial limits thereof, each of which shall be known as a "city and county," and, when organized, shall contain a population of at least three hundred thousand (300,000) inhabitants. No such city and county shall be formed except by a majority vote of the qualified electors of the area proposed to be included therein and also by a majority vote of the qualified electors of the remainder of that county from which such area is to be taken. Any such city and county shall be permitted to frame a charter for its own government, and amend the same, in the manner provided for cities by section 10 of this article: Provided, however, That the first charter of such city and county shall be framed and adopted in a manner to be specified in the general law authorizing the formation of such corporations: Provided further, That every such charter shall designate the respective officers of such city and county who shall perform the duties imposed by law upon county officers. Every such city and county shall have and enjoy all rights, powers and privileges asserted in its charter, not inconsistent with general laws, and in addition thereto, such rights, powers and privileges as may be granted to it, or possessed and enjoyed by cities and counties of like population separately organized.*

*No county or county government existing outside the territorial limits of such county and city shall exercise any police, taxation or other powers within the territorial limits of such county and city, but all such powers shall be exercised by the city and county and the officers thereof, subject to such constitutional provisions and gener-*

*al laws as apply to either cities or counties: Provided, That the provisions of sections 2, 3, 4, 5, 6, 7, and 8 of this article shall not apply to any such city and county: Provided further, That the salary of any elective or appointive officer of a city and county shall not be changed after his election or appointment or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed. In case an existing county is divided in the formation of a city and county, such city and county shall be liable for a just proportion of the existing debts or liabilities of the former county, and shall account for and pay the county remaining a just proportion of the value of any real estate or other property owned by the former county and taken over by the county and city, the method of determining such just proportion to be prescribed by general law, but such division shall not affect the rights of creditors. The officers of a city and county, their compensation, qualifications, term of office and manner of election or appointment shall be as provided for in its charter, subject to general laws and applicable constitutional provisions. [AMENDMENT 23, 1947 House Joint Resolution No. 13, p 1386. Approved November 2, 1948.]*

## ARTICLE XII
## CORPORATIONS OTHER THAN MUNICIPAL

**SECTION 1 CORPORATIONS, HOW FORMED.** Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the legislature at any time, and all corporations doing business in this state may, as to such business, be regulated, limited or restrained by law.

**SECTION 2 EXISTING CHARTERS.** All existing charters, franchises, special or exclusive privileges, under which an actual and *bona fide* organization shall not have taken place, and business been commenced in good faith, at the time of the adoption of this Constitution shall thereafter have no validity.

**SECTION 3 EXISTING CHARTERS NOT TO BE EXTENDED NOR FORFEITURE REMITTED.** The legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter of any corporation now existing, or which shall hereafter exist under the laws of this state.

**SECTION 4 LIABILITY OF STOCKHOLDERS.** Each stockholder in all incorporated companies, except corporations organized for banking or insurance purposes, shall be liable for the debts of the corporation to the amount of his unpaid stock and no more; and one or more stockholders may be joined as parties defendant in suits to recover upon this liability.

**SECTION 5 TERM "CORPORATION," DEFINED — RIGHT TO SUE AND BE SU-ED.** The term corporations, as used in this article, shall be construed to include all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or partnerships, and all corporations shall have the right to sue and shall be subject to be sued, in all courts, in like cases as natural persons.

**SECTION 6 LIMITATIONS UPON ISSUANCE OF STOCK.** Corporations shall not issue stock, except to *bona fide* subscribers therefor, or their assignees; nor shall any corporation issue any bond, or other obligation, for the payment of money, except for money or property received or labor done. The stock of corporations shall not be increased, except in pursuance of a general law, nor shall any law authorize the increase of stock, without the consent of the person or persons holding the larger amount in value of the stock, nor without due notice of the proposed increase having been previously given in such manner as may be prescribed by law. All fictitious increase of stock or indebtedness shall be void.

**SECTION 7 FOREIGN CORPORATIONS.** No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state.

**SECTION 8 ALIENATION OF FRANCHISE NOT TO RELEASE LIABILITIES.** No corporation shall lease or alienate any franchise, so as to relieve the franchise, or property held thereunder, from the liabilities of the lessor, or grantor, lessee, or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise or any of its privileges.

**SECTION 9 STATE NOT TO LOAN ITS CREDIT OR SUBSCRIBE FOR STOCK.** The state shall not in any manner loan its credit, nor shall it subscribe to, or be interested in the stock of any company, association or corporation.

**SECTION 10 EMINENT DOMAIN AFFECTING.** The exercise of the right of eminent domain shall never be so abridged or construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use the same as the property of individuals.

**SECTION 11 STOCKHOLDER LIABILITY.** No corporation, association, or individual shall issue or put in circulation as money anything but the lawful money of the United States. Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of

the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.

The legislature may provide that stockholders of banking corporations organized under the laws of this state which shall provide and furnish, either through membership in the Federal Deposit Insurance Corporation, or through membership in any other instrumentality of the government of the United States, insurance or security for the payment of the debts and obligations of such banking corporation equivalent to that required by the laws of the United States to be furnished and provided by national banking associations, shall be relieved from liability for the debts and obligations of such banking corporation to the same extent that stockholders of national banking associations are relieved from liability for the debts and obligations of such national banking associations under the laws of the United States. [**AMENDMENT 16**, 1939 Senate Joint Resolution No. 8, p 1024. Approved November, 1940.]

**Original text — Art. 12 Section 11 PROHIBITION AGAINST ISSUANCE OF MONEY AND LIABILITY OF STOCKHOLDERS IN BANKS** — *No corporation, association, or individual shall issue or put in circulation as money anything but the lawful money of the United States. Each stockholder of any banking or insurance corporation or joint stock association, shall be individually and personally liable equally and ratably and not one for another, for all contracts, debts and engagements of such corporation or association accruing while they remain such stockholders to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.*

**SECTION 12 RECEIVING DEPOSITS BY BANK AFTER INSOLVENCY.** Any president, director, manager, cashier, or other officer of any banking institution, who shall receive or assent to the reception of deposits, after he shall have knowledge of the fact that such banking institution is insolvent or in failing circumstances, shall be individually responsible for such deposits so received.

**SECTION 13 COMMON CARRIERS, REGULATION OF.** All railroad, canal and other transportation companies are declared to be common carriers and subject to legislative control. Any association or corporation organized for the purpose, under the laws of this state, shall have the right to connect at the state line with railroads of other states. Every railroad company shall have the right with its road, whether the same be now constructed or may hereafter be constructed, to intersect, cross or connect with any other railroad, and when such railroads are of the same or similar gauge they shall at all crossings and at all points, where a railroad shall begin or terminate at or near any other railroad, form proper connections so that the cars of any such railroad companies may be speedily transferred from one railroad to another. All railroad companies shall receive and transport each the other's passengers, tonnage and cars without delay or discrimination.

**SECTION 14 PROHIBITION AGAINST COMBINATIONS BY CARRIERS.** [Repealed by *AMENDMENT 67*, 1977 House Joint Resolution No. 57, p 1714. Approved November 8, 1977.]

**Original text — Art. 12 Section 14 PROHIBITION AGAINST COMBINA-TIONS BY CARRIERS** — *No railroad company, or other common carrier, shall combine or make any contract with the owners of any vessel that leaves port or makes port in this state, or with any common carrier, by which combination or contract the earnings of one doing the carrying are to be shared by the other not doing the carrying.*

**SECTION 15 PROHIBITION AGAINST DISCRIMINATING CHARGES.** No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company, or individual, shall be delivered at any station, landing or port, at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port or landing. Excursion and commutation tickets may be issued at special rates.

**SECTION 16 PROHIBITION AGAINST CONSOLIDATING OF COMPETING LINES.** No railroad corporation shall consolidate its stock, property or franchises with any other railroad corporation owning a competing line.

**SECTION 17 ROLLING STOCK, PERSONALTY FOR PURPOSE OF TAXATION.** The rolling stock and other movable property belonging to any railroad company or corporation in this state, shall be considered personal property, and shall be liable to taxation and to execution and sale in the same manner as the personal property of individuals and such property shall not be exempted from execution and sale.

**SECTION 18 RATES FOR TRANSPORTATION.** The legislature may pass laws establishing reasonable rates of charges for the transportation of passengers and freight, and to correct abuses and prevent discrimination and extortion in the rates of freight and passenger tariffs on the different railroads and other common carriers in the state, and shall enforce such laws by adequate penalties. A railroad and transportation commission may be established and its powers and duties fully defined by law. [**AMENDMENT 66,** 1977 House Joint Resolution No. 55, p 1713. Approved November 8, 1977.]

**Original text — Art. 12 Section 18 MAXIMUM RATES FOR TRANSPORTA-TION** — *The legislature shall pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight, and to correct abuses and prevent discrimination and extortion in the rates of freight and passenger tariffs on the different railroads and other common carriers in the state, and shall enforce such laws by adequate penalties. A railroad and transportation commission may be established and its powers and duties fully defined by law.*

**SECTION 19 TELEGRAPH AND TELEPHONE COMPANIES.** Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph and telephone within this state, and said companies shall receive and transmit each other's messages without delay or discrimination and all of such companies are hereby declared to be common carriers and subject to legislative control. Railroad corporations organized or doing business in this state shall allow telegraph and telephone corporations and companies to construct and maintain telegraph lines on and along the rights of way of such railroads and railroad companies, and no railroad corporation organized or doing business in this state shall allow any telegraph corporation or company any facilities, privileges or rates for transportation of men or material or for repairing their lines not allowed to all telegraph companies. The right of eminent domain is hereby extended to all telegraph and telephone companies. The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section.

*Eminent domain: Art. 1 Section 16.*

**SECTION 20 PROHIBITION AGAINST FREE TRANSPORTATION FOR PUBLIC OFFICERS.** No railroad or other transportation company shall grant free passes, or sell tickets or passes at a discount, other than as sold to the public generally, to any member of the legislature, or to any person holding any public office within this state. The legislature shall pass laws to carry this provision into effect.

**SECTION 21 EXPRESS COMPANIES.** Railroad companies now or hereafter organized or doing business in this state, shall allow all express companies organized or doing business in this state, transportation over all lines of railroad owned or operated by such railroad companies upon equal terms with any other express company, and no railroad corporation organized or doing business in this state shall allow any express corporation or company any facilities, privileges or rates for transportation of men or materials or property carried by them or for doing the business of such express companies not allowed to all express companies.

**SECTION 22 MONOPOLIES AND TRUSTS.** Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchises.

## ARTICLE XIII

## STATE INSTITUTIONS

**SECTION 1 EDUCATIONAL, REFORMATORY, AND PENAL INSTITUTIONS.** Educational, reformatory, and penal institutions; those for the benefit of youth who are blind or deaf or otherwise disabled; for persons who are mentally ill or developmentally disabled; and such other institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be provided by law. The regents, trustees, or commissioners of all such institutions existing at the time of the adoption of this Constitution, and of such as shall thereafter be established by law, shall be appointed by the governor, by and with the advice and consent of the senate; and upon all nominations made by the governor, the question shall be taken by ayes and noes, and entered upon the journal. [**AMENDMENT 83**, 1988 House Joint Resolution No. 4231, p 1553. Approved November 8, 1988.]

**Original text — Art. 13 Section 1 EDUCATIONAL, REFORMATORY AND PENAL INSTITUTIONS** — *Educational, reformatory and penal institutions; those for the benefit of blind, deaf, dumb, or otherwise defective youth; for the insane or idiotic; and such other institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be provided by law. The regents, trustees, or commissioners of all such institutions existing at the time of the adoption of this Constitution, and of such as shall thereafter be established by law, shall be appointed by the governor, by and with the advice and consent of the senate; and upon all nominations made by the governor, the question shall be taken by ayes and noes, and entered upon the journal.*

## ARTICLE XIV
## SEAT OF GOVERNMENT

**SECTION 1 STATE CAPITAL, LOCATION OF.** The legislature shall have no power to change, or to locate the seat of government of this state; but the question of the permanent location of the seat of government of the state shall be submitted to the qualified electors of the Territory, at the election to be held for the adoption of this Constitution. A majority of all the votes cast at said election, upon said question, shall be necessary to determine the permanent location of the seat of government for the state; and no place shall ever be the seat of government which shall not receive a majority of the votes cast on that matter. In case there shall be no choice of location at said first election the legislature shall, at its first regular session after the adoption of this Constitution, provide for submitting to the qualified electors of the state, at the next succeeding general election thereafter, the question of choice of location between the three places for which the highest number of votes shall have been cast at the said first election. Said legislature shall provide further that in case there shall be no choice of location at said second election, the question of choice between the two places for which the highest number of votes shall have been cast, shall be submitted in like manner to the qualified electors of the state at the next ensuing general election: *Provided,* That until the seat of government shall

have been permanently located as herein provided, the temporary location thereof shall remain at the city of Olympia.

**SECTION 2 CHANGE OF STATE CAPITAL.** When the seat of government shall have been located as herein provided, the location thereof shall not thereafter be changed except by a vote of two-thirds of all the qualified electors of the state voting on that question, at a general election, at which the question of location of the seat of government shall have been submitted by the legislature.

*Governmental continuity during emergency periods: Art. 2 Section 42.*

**SECTION 3 RESTRICTIONS ON APPROPRIATIONS FOR CAPITOL BUILDINGS.** The legislature shall make no appropriations or expenditures for capitol buildings or grounds, except to keep the Territorial capitol buildings and grounds in repair, and for making all necessary additions thereto, until the seat of government shall have been permanently located, and the public buildings are erected at the permanent capital in pursuance of law.

## ARTICLE XV
## HARBORS AND TIDE WATERS

**SECTION 1 HARBOR LINE COMMISSION AND RESTRAINT ON DISPOSITION.** The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city, or within one mile thereof on either side. Any harbor line so located or established may thereafter be changed, relocated or reestablished by the commission pursuant to such provision as may be made therefor by the legislature. The state shall never give, sell or lease to any private person, corporation, or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high water, and within not less than fifty feet nor more than two thousand feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce. [**AMENDMENT 15**, 1931 p 417 Section 1. Approved November, 1932.]

*Tide lands: Art. 17.*

**Original text — Art. 15 Section 1 HARBOR LINE COMMISSION AND RESTRAINT ON DISPOSITION OF CERTAIN TIDE LANDS —** *The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city or within one mile thereof on either side. The state shall never give,*

*sell or lease to any private person, corporation or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its right to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce.*

**SECTION 2 LEASING AND MAINTENANCE OF WHARVES, DOCKS, ETC.** The legislature shall provide general laws for the leasing of the right to build and maintain wharves, docks and other structures, upon the areas mentioned in section one of this article, but no lease shall be made for any term longer than thirty years, or the legislature may provide by general laws for the building and maintaining upon such area wharves, docks, and other structures.

**SECTION 3 EXTENSION OF STREETS OVER TIDE LANDS.** Municipal corporations shall have the right to extend their streets over intervening tide lands to and across the area reserved as herein provided.

## ARTICLE XVI
## SCHOOL AND GRANTED LANDS

**SECTION 1 DISPOSITION OF.** All the public lands granted to the state are held in trust for all the people and none of such lands, nor any estate or interest therein, shall ever be disposed of unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States.

**SECTION 2 MANNER AND TERMS OF SALE.** None of the lands granted to the state for educational purposes shall be sold otherwise than at public auction to the highest bidder, the value thereof, less the improvements shall, before any sale, be appraised by a board of appraisers to be provided by law, the terms of payment also to be prescribed by law, and no sale shall be valid unless the sum bid be equal to the appraised value of said land. In estimating the value of such lands for disposal, the value of the improvements thereon shall be excluded: *Provided,* That the sale of all school and university land heretofore made by the commissioners of any county or the university commissioners when the purchase price has been paid in good faith, may be confirmed by the legislature.

**SECTION 3 LIMITATIONS ON SALES.** No more than one-fourth of the land granted to the state for educational purposes shall be sold prior to January 1, 1895, and not more than one-half prior to January 1,

1905: *provided,* that nothing herein shall be so construed as to prevent the state from selling the timber or stone off of any of the state lands in such manner and on such terms as may be prescribed by law: and *provided, further,* that no sale of timber lands shall be valid unless the full value of such lands is paid or secured to the state.

**SECTION 4 HOW MUCH MAY BE OFFERED IN CERTAIN CASES — PLATTING OF.** No more than one hundred and sixty (160) acres of any granted lands of the state shall be offered for sale in one parcel, and all lands within the limits of any incorporated city or within two miles of the boundary of any incorporated city where the valuation of such land shall be found by appraisement to exceed one hundred dollars ($100) per acre shall, before the same be sold, be platted into lots and blocks of not more than five acres in a block, and not more than one block shall be offered for sale in one parcel.

**SECTION 5 INVESTMENT OF PERMANENT COMMON SCHOOL FUND.** The permanent common school fund of this state may be invested as authorized by law. [**AMENDMENT 44**, 1965 ex.s. Senate Joint Resolution No. 22, part 2, p 2817. Approved November 8, 1966.]

**Amendment 1 (1894) — Art. 16 Section 5 INVESTMENT OF SCHOOL FUND** — *None of the permanent school fund of this state shall ever be loaned to private persons or corporations, but it may be invested in national, state, county, municipal or school district bonds.* [AMENDMENT 1, 1893 p 9 Section 1. Approved November, 1894.]

**Original text — Art. 16 Section 5 INVESTMENT OF PERMANENT SCHOOL FUND** — *None of the permanent school fund shall ever be loaned to private persons or corporations, but it may be invested in national, state, county or municipal bonds.*

*Funds for support of education: Art. 9 Section 3.*

**SECTION 6 INVESTMENT OF HIGHER EDUCATION PERMANENT FUNDS.** Notwithstanding the provisions of Article VIII, sections 5 and 7 and Article XII, section 9, or any other section or article of the Constitution of the state of Washington, the moneys of the permanent funds established for any of the institutions of higher education in this state may be invested as authorized by law. Without limitation, this shall include the authority to invest permanent funds held for the benefit of institutions of higher education in stocks or bonds issued by any association, company, or corporation if authorized by law. [**AMENDMENT 102**, 2007 Substitute House Joint Resolution No. 4215, p 3145. Approved November 6, 2007.]

## ARTICLE XVII
## TIDE LANDS

**SECTION 1 DECLARATION OF STATE OWNERSHIP.** The state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide, in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes: *Provided,* that this section shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the state.

*Harbors and tide waters: Art. 15.*

**ARTICLE XVIII**
**STATE SEAL**

**SECTION 2 DISCLAIMER OF CERTAIN LANDS.** The state of Washington disclaims all title in and claim to all tide, swamp and overflowed lands, patented by the United States: *Provided,* the same is not impeached for fraud.

**SECTION 1 SEAL OF THE STATE.** The seal of the State of Washington shall be, a seal encircled with the words: "The Seal of the State of Washington," with the vignette of General George Washington as the central figure, and beneath the vignette the figures "1889."

*Custody of seal: Art. 3 Section 18.*
*State seal: RCW 1.20.080.*

**ARTICLE XIX**
**EXEMPTIONS**

**SECTION 1 EXEMPTIONS — HOMESTEADS, ETC.** The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families.

**ARTICLE XX**
**PUBLIC HEALTH AND VITAL STATISTICS**

**SECTION 1 BOARD OF HEALTH AND BUREAU OF VITAL STATISTICS.** There shall be established by law a state board of health and a bureau of vital statistics in connection therewith, with such powers as the legislature may direct.

**SECTION 2 REGULATIONS CONCERNING MEDICINE, SURGERY AND PHARMACY.** The legislature shall enact laws to regulate the practice of medicine and surgery, and the sale of drugs and medicines.

**ARTICLE XXI**

12/27/2016 9:01 AM                    [ 109 ]                    Article XVII Section 2

**WATER AND WATER RIGHTS**

**SECTION 1 PUBLIC USE OF WATER.** The use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use.

**ARTICLE XXII**
**LEGISLATIVE APPORTIONMENT**

**SECTION 1 SENATORIAL APPORTIONMENT.** Until otherwise provided by law, the state shall be divided into twenty-four (24) senatorial districts, and said districts shall be constituted and numbered as follows: The counties of Stevens and Spokane shall constitute the first district, and be entitled to one senator; the county of Spokane shall constitute the second district, and be entitled to three senators; the county of Lincoln shall constitute the third district, and be entitled to one senator; the counties of Okanogan, Lincoln, Adams and Franklin shall constitute the fourth district, and be entitled to one senator; the county of Whitman shall constitute the fifth district, and be entitled to three senators; the counties of Garfield and Asotin shall constitute the sixth district, and be entitled to one senator; the county of Columbia shall constitute the seventh district, and be entitled to one senator; the county of Walla Walla shall constitute the eighth district, and be entitled to two senators; the counties of Yakima and Douglas shall constitute the ninth district, and be entitled to one senator; the county of Kittitas shall constitute the tenth district and be entitled to one senator; the counties of Klickitat, and Skamania shall constitute the eleventh district, and be entitled to one senator; the county of Clarke shall constitute the twelfth district, and be entitled to one senator; the county of Cowlitz shall constitute the thirteenth district, and be entitled to one senator; the county of Lewis shall constitute the fourteenth district, and be entitled to one senator; the counties of Pacific and Wahkiakum shall constitute the fifteenth district, and be entitled to one senator; the county of Thurston shall constitute the sixteenth district, and be entitled to one senator; the county of Chehalis shall constitute the seventeenth district, and be entitled to one senator; the county of Pierce shall constitute the eighteenth district, and be entitled to three senators; the county of King shall constitute the nineteenth district, and be entitled to five senators; the counties of Mason and Kitsap shall constitute the twentieth district, and be entitled to one senator; the counties of Jefferson, Clallam and San Juan shall constitute the twenty-first district, and be entitled to one senator; the county of Snohomish shall constitute the twenty-second district, and shall be entitled to one senator; the counties of Skagit and Island shall constitute the twenty-third district, and be entitled to one senator; the county of Whatcom shall constitute the twenty-fourth district, and be entitled to one senator.

*Districts and apportionment: Chapter 44.07D RCW.*

**SECTION 2 APPORTIONMENT OF REPRESENTATIVES.** Until otherwise provided by law the representatives shall be divided among the several

counties of the state in the following manner; the county of Adams shall have one representative; the county of Asotin shall have one representative; the county of Chehalis shall have two representatives; the county of Clarke shall have three representatives; the county of Clallam shall have one representative; the county of Columbia shall have two representatives; the county of Cowlitz shall have one representative; the county of Douglas shall have one representative; the county of Franklin shall have one representative; the county of Garfield shall have one representative; the county of Island shall have one representative; the county of Jefferson shall have two representatives; the county of King shall have eight representatives; the county of Klickitat shall have two representatives; the county of Kittitas shall have two representatives; the county of Kitsap shall have one representative; the county of Lewis shall have two representatives; the county of Lincoln shall have two representatives; the county of Mason shall have one representative; the county of Okanogan shall have one representative; the county of Pacific shall have one representative; the county of Pierce shall have six representatives; the county of San Juan shall have one representative; the county of Skamania shall have one representative; the county of Snohomish shall have two representatives; the county of Skagit shall have two representatives; the county of Spokane shall have six representatives; the county of Stevens shall have one representative; the county of Thurston shall have two representatives; the county of Walla Walla shall have three representatives; the county of Wahkiakum shall have one representative; the county of Whatcom shall have two representatives; the county of Whitman shall have five representatives; the county of Yakima shall have one representative.

*Districts and apportionment: Chapter 44.07D RCW.*

### ARTICLE XXIII
### AMENDMENTS

**SECTION 1 HOW MADE.** Any amendment or amendments to this Constitution may be proposed in either branch of the legislature; and if the same shall be agreed to by two-thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes thereon, and be submitted to the qualified electors of the state for their approval, at the next general election; and if the people approve and ratify such amendment or amendments, by a majority of the electors voting thereon, the same shall become part of this Constitution, and proclamation thereof shall be made by the governor: *Provided,* That if more than one amendment be submitted, they shall be submitted in such a manner that the people may vote for or against such amendments separately. The legislature shall also cause notice of the amendments that are to be submitted to the people to be published at least four times during the four weeks next preceding the election in every legal newspaper in the state: *Provided,* That failure of any newspaper to publish this notice shall not be interpreted as affecting the outcome of the election. [**AMENDMENT 37,** 1961 Senate Joint Resolution No. 25, p 2753. Approved November, 1962.]

**Original text — Art. 23 Section 1 HOW MADE** — *Any amendment or amendments to this Constitution may be proposed in either branch of the legislature; and if the same shall be agreed to by two-thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes thereon, and be submitted to the qualified electors of the state for their approval, at the next general election; and if the people approve and ratify such amendment or amendments, by a majority of the electors voting thereon, the same shall become part of this Constitution, and proclamation thereof shall be made by the governor:* Provided, *that if more than one amendment be submitted, they shall be submitted in such a manner that the people may vote for or against such amendments separately. The legislature shall also cause the amendments that are to be submitted to the people to be published for at least three months next preceding the election, in some weekly newspaper, in every county where a newspaper is published throughout the state.*

**SECTION 2 CONSTITUTIONAL CONVENTIONS.** Whenever two-thirds of the members elected to each branch of the legislature shall deem it necessary to call a convention to revise or amend this Constitution, they shall recommend to the electors to vote at the next general election, for or against a convention, and if a majority of all the electors voting at said election shall have voted for a convention, the legislature shall at the next session, provide by law for calling the same; and such convention shall consist of a number of members, not less than that of the most numerous branch of the legislature.

**SECTION 3 SUBMISSION TO THE PEOPLE.** Any Constitution adopted by such convention shall have no validity until it has been submitted to and adopted by the people.

# ARTICLE XXIV
## BOUNDARIES

**SECTION 1 STATE BOUNDARIES.** The boundaries of the state of Washington shall be as follows: Beginning at a point in the Pacific ocean one marine league due west of and opposite the middle of the mouth of the north ship channel of the Columbia river thence running easterly to and up the middle channel of said river and where it is divided by islands up the middle of the widest channel thereof to where the forty-sixth parallel of north latitude crosses said river near the mouth of the Walla Walla river; thence east on said forty-sixth parallel of latitude to the middle of the main channel of Shoshone or Snake river, thence follow down the middle of the main channel of Snake river to a point opposite the mouth of the Kooskooskia or Clear Water river, thence due north to the forty-ninth parallel of north latitude, thence west along said forty-ninth parallel of north latitude to the middle of the channel which separates Vancouver's island from the continent, that is to say to a point in longitude 123 degrees, 19 minutes and 15 seconds west, thence following the boundary line between the United States and British possessions through the channel which separates Vancouver's island from the continent to the termination of the boun-

dary line between the United States and British possessions at a point in the Pacific ocean equidistant between Bonnilla point on Vancouver's island and Tatoosh island light house, thence running in a southerly course and parallel with the coast line, keeping one marine league off shore to place of beginning; until such boundaries are modified by appropriate interstate compacts duly approved by the Congress of the United States. [**AMENDMENT 33**, 1957 Senate Joint Resolution No. 10, p 1292. Approved November 4, 1958.]

*Original text* — **Art. 24 Section 1 STATE BOUNDARIES** — *The boundaries of the State of Washington shall be as follows: Beginning at a point in the Pacific ocean one marine league due west of and opposite the middle of the mouth of the north ship channel of the Columbia river thence running easterly to and up the middle channel of said river and where it is divided by islands up the middle of the widest channel thereof to where the forty-sixth parallel of north latitude crosses said river near the mouth of the Walla Walla river; thence east on said forty-sixth parallel of latitude to the middle of the main channel of the Shoshone or Snake river, thence follow down the middle of the main channel of Snake river to a point opposite the mouth of the Kooskooskia or Clear Water river, thence due north to the forty-ninth parallel of north latitude, thence west along said forty-ninth parallel of north latitude to the middle of the channel which separates Vancouver's island from the continent, that is to say to a point in longitude 123 degrees, 19 minutes and 15 seconds west, thence following the boundary line between the United States and British possessions through the channel which separates Vancouver's island from the continent to the termination of the boundary line between the United States and British possessions at a point in the Pacific ocean equidistant between Bonnilla point on Vancouver's island and Tatoosh island light house, thence running in a southerly course and parallel with the coast line, keeping one marine league off shore to place of beginning.*

## ARTICLE XXV
## JURISDICTION

**SECTION 1 AUTHORITY OF THE UNITED STATES.** The consent of the State of Washington is hereby given to the exercise, by the congress of the United States, of exclusive legislation in all cases whatsoever over such tracts or parcels of land as are now held or reserved by the government of the United States for the purpose of erecting or maintaining thereon forts, magazines, arsenals, dockyards, lighthouses and other needful buildings, in accordance with the provisions of the seventeenth paragraph of the eighth section of the first article of the Constitution of the United States, so long as the same shall be so held and reserved by the United States. *Provided:* That a sufficient description by metes and bounds, and an accurate plat or map of each such tract or parcel of land be filed in the proper office of record in the county in which the same is situated, together with copies of the orders, deeds, patents or other evidences in writing of the title of the United States: *and provided,* That all civil process issued from the courts of this state and such criminal process as may issue under the authority of this state against any person charged with crime in

cases arising outside of such reservations, may be served and executed thereon in the same mode and manner, and by the same officers, as if the consent herein given had not been made.

## ARTICLE XXVI
## COMPACT WITH THE UNITED STATES

The following ordinance shall be irrevocable without the consent of the United States and the people of this state:

**First.**  That perfect toleration of religious sentiment shall be secured and that no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship.

**Second.**  That the people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying with the boundaries of this state, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States and that the lands belonging to citizens of the United States residing without the limits of this state shall never be taxed at a higher rate than the lands belonging to residents thereof; and that no taxes shall be imposed by the state on lands or property therein, belonging to or which may be hereafter purchased by the United States or reserved for use:  *Provided,* That nothing in this ordinance shall preclude the state from taxing as other lands are taxed any lands owned or held by any Indian who has severed his tribal relations, and has obtained from the United States or from any person a title thereto by patent or other grant, save and except such lands as have been or may be granted to any Indian or Indians under any act of congress containing a provision exempting the lands thus granted from taxation, which exemption shall continue so long and to such an extent as such act of congress may prescribe.

**Third.**  The debts and liabilities of the Territory of Washington and payment of the same are hereby assumed by this state.

**Fourth.**  Provision shall be made for the establishment and maintenance of systems of public schools free from sectarian control which shall be open to all the children of said state.

## ARTICLE XXVII
## SCHEDULE

In order that no inconvenience may arise by reason of a change from a Territorial to a State government, it is hereby declared and ordained as follows:

**SECTION 1 EXISTING RIGHTS, ACTIONS, AND CONTRACTS SAVED.** No existing rights, actions, suits, proceedings, contracts or claims shall be affected by a change in the form of government, but all shall continue as if no such change had taken place; and all process which may have been issued under the authority of the Territory of Washington

previous to its admission into the Union shall be as valid as if is-
sued in the name of the state.

**SECTION 2 LAWS IN FORCE CONTINUED**. All laws now in force in the
Territory of Washington, which are not repugnant to this Constitution,
shall remain in force until they expire by their own limitation, or
are altered or repealed by the legislature: *Provided,* That this sec-
tion shall not be so construed as to validate any act of the legisla-
ture of Washington Territory granting shore or tide lands to any per-
son, company or any municipal or private corporation.

**SECTION 3 DEBTS, FINES, ETC., TO INURE TO THE STATE**. All debts,
fines, penalties and forfeitures, which have accrued, or may hereafter
accrue, to the Territory of Washington, shall inure to the State of
Washington.

**SECTION 4 RECOGNIZANCES**. All recognizances heretofore taken, or
which may be taken before the change from a territorial to a state
government shall remain valid, and shall pass to, and may be prosecu-
ted in the name of the state; and all bonds executed to the Territory
of Washington or to any county or municipal corporation, or to any of-
ficer or court in his or its official capacity, shall pass to the
state authorities and their successors in office, for the uses therein
expressed, and may be sued for and recovered accordingly, and all the
estate, real, personal and mixed, and all judgments decrees, bonds,
specialties, choses in action, and claims or debts, of whatever de-
scription, belonging to the Territory of Washington, shall inure to
and vest in the State of Washington, and may be sued for and recovered
in the same manner, and to the same extent, by the State of Washing-
ton, as the same could have been by the Territory of Washington.

**SECTION 5 CRIMINAL PROSECUTIONS AND PENAL ACTIONS**. All criminal
prosecutions and penal actions which may have arisen, or which may
arise, before the change from a territorial to a state government, and
which shall then be pending, shall be prosecuted to judgment, and exe-
cution in the name of the state. All offenses committed against the
laws of the Territory of Washington, before the change from a territo-
rial to a state government, and which shall not be prosecuted before
such change, may be prosecuted in the name and by the authority of the
State of Washington, with like effect as though such change had not
taken place; and all penalties incurred shall remain the same as if
this Constitution had not been adopted. All actions at law and suits
in equity which may be pending in any of the courts of the Territory
of Washington, at the time of the change from a territorial to a state
government, shall be continued, and transferred to the court of the
state having jurisdiction of the subject matter thereof.

**SECTION 6 RETENTION OF TERRITORIAL OFFICERS**. All officers now
holding their office under the authority of the United States, or of
the Territory of Washington, shall continue to hold and exercise their
respective offices until they shall be superseded by the authority of
the state.

12/27/2016 9:01 AM                    [ 115 ]                Article XXVII Section 2

**SECTION 7 CONSTITUTIONAL OFFICERS, WHEN ELECTED.** All officers provided for in this Constitution including a county clerk for each county when no other time is fixed for their election, shall be elected at the election to be held for the adoption of this Constitution on the first Tuesday of October, 1889.

**SECTION 8 CHANGE OF COURTS - TRANSFER OF CAUSES.** Whenever the judge of the superior court of any county, elected or appointed under the provisions of this Constitution shall have qualified the several causes then pending in the district court of the territory except such causes as would have been within the exclusive jurisdiction of the United States district court had such court existed at the time of the commencement of such causes, within such county, and the records, papers and proceedings of said district court, and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the superior court for such county. And where the same judge is elected for two or more counties, it shall be the duty of the clerk of the district court having custody of such papers and records to transmit to the clerk of such county, or counties, other than that in which such records are kept the original papers in all cases pending in such district court and belonging to the jurisdiction of such county or counties together with transcript of so much of the records of said district court as relate to the same; and until the district courts of the Territory shall be superseded in manner aforesaid, the said district courts and the judges thereof, shall continue with the same jurisdiction and powers, to be exercised in the same judicial districts respectively, as heretofore constituted under the laws of the Territory. Whenever a quorum of the judges of the supreme court of the state shall have been elected and qualified, the causes then pending in the supreme court of the Territory, except such causes as would have been within the exclusive jurisdiction of the United States, circuit court had such court existed at the time of the commencement of such causes, and the papers, records and proceedings of said court and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the supreme court of the state, and until so superseded, the supreme court of the Territory and the judges thereof, shall continue with like powers and jurisdiction as if this Constitution had not been adopted.

**SECTION 9 SEALS OF COURTS AND MUNICIPALITIES.** Until otherwise provided by law, the seal now in use in the supreme court of the Territory shall be the seal of the supreme court of the state. The seals of the superior courts of the several counties of the state shall be, until otherwise provided by law, the vignette of General George Washington with the words: "Seal of the Superior Court of ———— county" surrounding the vignette. The seal of municipalities, and of all county officers of the Territory, shall be the seals of such municipalities, and county officers respectively under the state, until otherwise provided by law.

**SECTION 10 PROBATE COURT, TRANSFER OF.** When the state is admitted into the Union, and the superior courts in the respective counties organized, the books, records, papers and proceedings of the probate

court in each county, and all causes and matters of administration pending therein, shall, upon the expiration of the term of office of the probate judges, on the second Monday in January, 1891, pass into the jurisdiction and possession of the superior court of the same county created by this Constitution, and the said court shall proceed to final judgment or decree, order or other determination in the several matters and causes, as the territorial probate court might have done, if this Constitution had not been adopted. And until the expiration of the term of office of the probate judges, such probate judges shall perform the duties now imposed upon them by the laws of the Territory. The superior courts shall have appellate and revisory jurisdiction over the decisions of the probate courts, as now provided by law, until such latter courts expire by limitation.

**SECTION 11 DUTIES OF FIRST LEGISLATURE.** The legislature, at its first session, shall provide for the election of all officers whose election is not provided for elsewhere in this Constitution, and fix the time for the commencement and duration of their term.

**SECTION 12 ELECTION CONTESTS FOR SUPERIOR JUDGES, HOW DECIDED.** In case of a contest of election between candidates, at the first general election under this Constitution, for judges of the superior courts, the evidence shall be taken in the manner prescribed by the Territorial laws, and the testimony so taken shall be certified to the secretary of state; and said officer, together with the governor and treasurer of state, shall review the evidence and determine who is entitled to the certificate of election.

**SECTION 13 REPRESENTATION IN CONGRESS.** [Repealed by *AMENDMENT 74,* 1983 Substitute Senate Joint Resolution No. 103. Approved November 8, 1983.]

**Original text — Art. 27 Section 13 REPRESENTATION IN CONGRESS —** *One representative in the congress of the United States shall be elected from the state at large, at the first election provided for in this Constitution; and, thereafter, at such times and places, and in such manner, as may be prescribed by law. When a new apportionment shall be made by congress, the legislature shall divide the state into congressional districts, in accordance with such apportionment. The vote cast for representative in congress, at the first election, shall be canvassed, and the result determined in the manner provided for by the laws of the Territory for the canvass of the vote for delegate in congress.*

**SECTION 14 DURATION OF TERM OF CERTAIN OFFICERS.** All district, county and precinct officers, who may be in office at the time of the adoption of this Constitution, and the county clerk of each county elected at the first election, shall hold their respective offices until the second Monday of January, A. D., 1891, and until such time as their successors may be elected and qualified, in accordance with the provisions of this Constitution; and the official bonds of all such officers shall continue in full force and effect as though this Con-

stitution had not been adopted. And such officers shall continue to receive the compensation now provided, until the same be changed by law.

**SECTION 15 ELECTION ON ADOPTION OF CONSTITUTION, HOW TO BE CONDUCTED.** The election held at the time of the adoption of this Constitution shall be held and conducted in all respects according to the laws of the Territory, and the votes cast at said election for all officers (where no other provisions are made in this Constitution), and for the adoption of this Constitution and the several separate articles and the location of the state capital, shall be canvassed and returned in the several counties in the manner provided by Territorial law, and shall be returned to the secretary of the Territory in the manner provided by the Enabling Act.

**SECTION 16 WHEN CONSTITUTION TO TAKE EFFECT.** The provisions of this Constitution shall be in force from the day on which the president of the United States shall issue his proclamation declaring the State of Washington admitted into the Union, and the terms of all officers elected at the first election under the provisions of this Constitution shall commence on the Monday next succeeding the issue of said proclamation, unless otherwise provided herein.

**SECTION 17 SEPARATE ARTICLES.** The following separate articles shall be submitted to the people for adoption or rejection at the election for the adoption of this Constitution:

SEPARATE ARTICLE, NO. 1

"All persons male and female of the age of twenty-one years or over, possessing the other qualifications, provided by this Constitution, shall be entitled to vote at all elections."

SEPARATE ARTICLE, NO. 2

"It shall not be lawful for any individual, company or corporation, within the limits of this state, to manufacture, or cause to be manufactured, or to sell, or offer for sale, or in any manner dispose of any alcoholic, malt or spirituous liquors, except for medicinal, sacramental or scientific purposes."
If a majority of the ballots cast at said election on said separate articles be in favor of the adoption of either of said separate articles, then such separate article so receiving a majority shall become a part of this Constitution and shall govern and control any provision of the Constitution in conflict therewith.

**SECTION 18 BALLOT.** The form of ballot to be used in voting for or against this Constitution, or for or against the separate articles, or for the permanent location of the seat of government, shall be:
1.    For the Constitution
      Against the Constitution
2.    For Woman Suffrage Article
      Against Woman Suffrage Article
3.    For Prohibition Article

Against Prohibition Article
4.  For the Permanent Location of the Seat of Government (Name of place voted for)

*The result of the election was against both woman suffrage and prohibition.*

**SECTION 19 APPROPRIATION.** The legislature is hereby authorized to appropriate from the state treasury sufficient money to pay any of the expenses of this convention not provided for by the Enabling Act of Congress.

## ARTICLE XXVIII
### COMPENSATION OF STATE OFFICERS

**SECTION 1 SALARIES FOR LEGISLATURE, ELECTED STATE OFFICIALS, AND JUDGES — INDEPENDENT COMMISSION — REFERENDUM.** Salaries for members of the legislature, elected officials of the executive branch of state government, and judges of the state's supreme court, court of appeals, superior courts, and district courts shall be fixed by an independent commission created and directed by law to that purpose. No state official, public employee, or person required by law to register with a state agency as a lobbyist, or immediate family member of the official, employee, or lobbyist, may be a member of that commission.
As used in this section the phrase "immediate family" has the meaning that is defined by law.
Any change of salary shall be filed with the secretary of state and shall become law ninety days thereafter without action of the legislature or governor, but shall be subject to referendum petition by the people, filed within the ninety-day period. Referendum measures under this section shall be submitted to the people at the next following general election, and shall be otherwise governed by the provisions of this Constitution generally applicable to referendum measures. The salaries fixed pursuant to this section shall supersede any other provision for the salaries of members of the legislature, elected officials of the executive branch of state government, and judges of the state's supreme court, court of appeals, superior courts, and district courts. The salaries for such officials in effect on January 12, 1987, shall remain in effect until changed pursuant to this section.
After the initial adoption of a law by the legislature creating the independent commission, no amendment to such act which alters the composition of the commission shall be valid unless the amendment is enacted by a favorable vote of two-thirds of the members elected to each house of the legislature and is subject to referendum petition.
The provisions of section 14 of Article IV, sections 14, 16, 17, 19, 20, 21, and 22 of Article III, and section 23 of Article II, insofar as they are inconsistent herewith, are hereby superseded. The provisions of section 1 of Article II relating to referendum procedures, insofar as they are inconsistent herewith, are hereby superseded with regard to the salaries governed by this section. [**AMENDMENT 78**, 1986 Substitute House Joint Resolution No. 49, p 1529. Approved November 4, 1986.]

*Authorizing compensation increase during term: Art. 30 Section 1.*

**Amendment 20 (1948) — Art. 28 Section 1 COMPENSATION OF STATE OFFICERS** — *All elected state officials shall each severally receive such compensation as the legislature may direct. The compensation of any state officer shall not be increased or diminished during his term of office, except that the legislature, at its thirty-first regular session, may increase or diminish the compensation of all state officers whose terms exist on the Thursday after the second Monday in January, 1949.*

*The provisions of sections 14, 16, 17, 19, 20, 21, and 22 of Article III and section 23 of Article II in so far as they are inconsistent herewith, are hereby repealed.* [AMENDMENT 20, 1947 Senate Joint Resolution No. 4, p 1371. Approved November 2, 1948.]

## ARTICLE XXIX
### INVESTMENTS OF PUBLIC PENSION AND RETIREMENT FUNDS

**SECTION 1 MAY BE INVESTED AS AUTHORIZED BY LAW.** Notwithstanding the provisions of sections 5, and 7 of Article VIII and section 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund, industrial insurance trust fund, or fund held in trust for the benefit of persons with developmental disabilities may be invested as authorized by law. [**AMENDMENT 93**, 2000 Senate Joint Resolution No. 8214, p 1919. Approved November 7, 2000.]

**Amendment 75 (1985) — Art. 29 Section 1 MAY BE INVESTED AS AUTHORIZED BY LAW** — *Notwithstanding the provisions of sections 5, and 7 of Article VIII and section 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund or industrial insurance trust fund may be invested as authorized by law.* [AMENDMENT 75, 1985 House Joint Resolution No. 12, p 2398. Approved November 5, 1985.]

**Amendment 49 (1968) — Art. 29 Section 1 MAY BE INVESTED AS AUTHORIZED BY LAW** — *Notwithstanding the provisions of sections 5, and 7 of Article VIII and section 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund may be invested as authorized by law.* [AMENDMENT 49, 1967 Senate Joint Resolution No. 5; see 1969 p 2975. Approved November 5, 1968.]

## ARTICLE XXX
### COMPENSATION OF PUBLIC OFFICERS

**SECTION 1 AUTHORIZING COMPENSATION INCREASE DURING TERM.** The compensation of all elective and appointive state, county, and municipal officers who do not fix their own compensation, including judges of courts of record and the justice courts may be increased during their terms of office to the end that such officers and judges shall each

severally receive compensation for their services in accordance with the law in effect at the time the services are being rendered.

The provisions of section 25 of Article II (Amendment 35), section 25 of Article III (Amendment 31), section 13 of Article IV, section 8 of Article XI, and section 1 of Article XXVIII (Amendment 20) insofar as they are inconsistent herewith are hereby repealed. [**AMENDMENT 54**, 1967 House Joint Resolution No. 13; see 1969 p 2976. Approved November 5, 1968.]

**Reviser's note**: (1) Amendment 49 (1967 SJR No. 5) and Amendment 54 (1967 HJR No. 13) each added a new Article XXIX to the Constitution. Amendment 49 is carried herein as Article XXIX while Amendment 54 has been herein redesignated as Article XXX.
(2) The name of this Article has been supplied by the reviser.

## ARTICLE XXXI
## SEX EQUALITY - RIGHTS AND RESPONSIBILITIES

**SECTION 1 EQUALITY NOT DENIED BECAUSE OF SEX.** Equality of rights and responsibility under the law shall not be denied or abridged on account of sex.

**SECTION 2 ENFORCEMENT POWER OF LEGISLATURE.** The legislature shall have the power to enforce, by appropriate legislation, the provisions of this article. [**AMENDMENT 61**, 1972 House Joint Resolution No. 61, p 526. Approved November, 1972.]

*The name of this Article and the captions have been supplied by the reviser.*

## ARTICLE XXXII
## SPECIAL REVENUE FINANCING

**SECTION 1 SPECIAL REVENUE FINANCING.** The legislature may enact laws authorizing the state, counties, cities, towns, port districts, or public corporations established thereby to issue nonrecourse revenue bonds or other nonrecourse revenue obligations and to apply the proceeds thereof in the manner and for the purposes heretofore or hereafter authorized by law, subject to the following limitations:
(a) Nonrecourse revenue bonds and other nonrecourse revenue obligations issued pursuant to this section shall be payable only from money or other property received as a result of projects financed by the nonrecourse revenue bonds or other nonrecourse revenue obligations and from money and other property received from private sources.
(b) Nonrecourse revenue bonds and other nonrecourse revenue obligations issued pursuant to this section shall not be payable from or secured by any tax funds or governmental revenue or by all or part of the faith and credit of the state or any unit of local government.
(c) Nonrecourse revenue bonds or other nonrecourse revenue obligations issued pursuant to this section may be issued only if the issuer certifies that it reasonably believes that the interest paid on

the bonds or obligations will be exempt from income taxation by the federal government.

(d) Nonrecourse revenue bonds or other nonrecourse revenue obligations may only be used to finance industrial development projects as defined in legislation.

(e) The state, counties, cities, towns, port districts, or public corporations established thereby, shall never exercise their respective attributes of sovereignty, including but not limited to, the power to tax, the power of eminent domain, and the police power on behalf of any industrial development project authorized pursuant to this section.

After the initial adoption of a law by the legislature authorizing the issuance of nonrecourse revenue bonds or other nonrecourse revenue obligations, no amendment to such act which expands the definition of industrial development project shall be valid unless the amendment is enacted by a favorable vote of three-fifths of the members elected to each house of the legislature and is subject to referendum petition.

Sections 5 and 7 of Article VIII and section 9 of Article XII shall not be construed as a limitation upon the authority granted by this section. The proceeds of revenue bonds and other revenue obligations issued pursuant to this section for the purpose of financing privately owned property or loans to private persons or corporations shall be subject to audit by the state but shall not otherwise be deemed to be public money or public property for purposes of this Constitution. This section is supplemental to and shall not be construed as a repeal of or limitation on any other authority lawfully exercisable under the Constitution and laws of this state, including, among others, any existing authority to issue revenue bonds. [**AMENDMENT 73**, 1981 Substitute House Joint Resolution No. 7, p 1794. Approved November 3, 1981.]

*The name of this Article has been supplied by the reviser.*

## CERTIFICATE

We, the undersigned, members of the convention to form a Constitution for the State of Washington; which is to be submitted to the people for their adoption or rejection, do hereby declare this to be the Constitution formed by us, and in testimony thereof, do hereunto set our hands, this twenty-second day of August *Anno Domini*, one thousand eight hundred and eighty-nine.

| | |
|---|---|
| John P. Hoyt, President | Edward Eldridge |
| | George H. Stevenson |
| J. J. Browne | Louis Sohns |
| N. G. Blalock | A. A. Lindsley |
| John F. Gowey | J. J. Weisenburger |
| Frank M. Dallam | P. C. Sullivan |
| James Z. Moore | R. S. More |
| E. H. Sullivan | Thomas T. Minor |
| George Turner | J. J. Travis |
| Austin Mires | Arnold J. West |
| M. M. Godman | Charles T. Fay |
| Gwin Hicks | George W. Tibbetts |
| Wm. F. Prosser | H. W. Fairweather |

| | |
|---|---|
| C. H. Warner | Thomas C. Griffitts |
| J. P. T. McCroskey | J. F. Van Name |
| S. G. Cosgrove | Albert Schooley |
| Thos. Hayton | H. C. Willison |
| Charles P. Coey | T. M. Reed |
| Robert F. Sturdevant | S. H. Manly |
| John A. Shoudy | Richard Jeffs |
| Allen Weir | Francis Henry |
| W. B. Gray | George Comegys |
| Trusten P. Dyer | Oliver H. Joy |
| Geo. H. Jones | David E. Durie |
| B. L. Sharpstein | D. Buchanan |
| H. M. Lillis | John R. Kinnear |
| James A. Burk | Sylvious A. Dickey |
| John McReavy | Henry Winsor |
| R. O. Dunbar | Theodore L. Stiles |
| Morgan Morgans | Harrison Clothier |
| Jas. Power | Matt. J. McElroy |
| B. B. Glascock | J. T. Eshelman |
| O. A. Bowen | Robert Jamieson |
| Sam'l H. Berry | Hiram E. Allen |
| D. J. Crowley | H. F. Suksdorf |
| J. T. McDonald | J. C. Kellogg |
| John M. Reed | J. A. Hungate |

Attest: JNO. I. BOOGE, Chief Clerk

The above names are not in the order in which subscribed to the Constitution.

## (B) Constitutional Amendments
## (In Order of Adoption)

| | | | | |
|---|---|---|---|---|
| 1 | Art. | 16 § | 5 | Investment of school fund. |
| 2 | Art. | 6 § | 1 | Qualifications of voters. |
| 3 | Art. | 7 § | 2 | (original) Taxation—Uniformity and equality—Exemption. |
| 4 | Art. | 1 § | 11 | Religious freedom. |
| 5 | Art. | 6 § | 1 | Qualifications of electors. |
| 6 | Art. | 3 § | 10 | Vacancy in office of governor. |
| 7 | Art. | 2 § | 1 | Legislative powers, where vested. |
| 8 | Art. | 1 §§ | 33, 34 | Recall of elective officers. |
| 9 | Art. | 1 § | 16 | Eminent domain. |
| 10 | Art. | 1 § | 22 | Rights of the accused. |
| 11 | Art. | 8 § | 4 | Moneys disbursed only by appropriation. |
| 12 | Art. | 11 § | 5 | County government. |
| 13 | Art. | 2 § | 15 | Vacancies in legislature. |
| 14 | Art. | 7 § | 1 | Taxation (and repealing Art. 7 §§ 1-4.) |
| 15 | Art. | 15 § | 1 | Harbor line commission and restraint on disposition. |
| 16 | Art. | 12 § | 11 | Stockholder liability. |

12/27/2016 9:01 AM          [ 123 ]          Constitutional Amendments

| 17 Art. | 7 § | 2 | Forty mill limit. |
| 18 Art. | 2 § | 40 | Highway funds. |
| 19 Art. | 7 § | 3 | Taxation of federal agencies and property. |
| 20 Art. | 28 § | 1 | Compensation of state officers. |
| 21 Art. | 11 § | 4 | County government and township organization. |
| 22 Art. | 11 § | 7 | Tenure of office limited to two terms. (Repealed.) |
| 23 Art. | 11 § | 16 | Combined city and county. |
| 24 Art. | 2 § | 33 | Alien ownership. |
| 25 Art. | 4 § | 3(a) | Retirement of supreme court and superior court judges. |
| 26 Art. | 2 § | 41 | Laws, effective date. Initiative, referendum—Amendment or repeal. |
| 27 Art. | 8 § | 6 | Limitations upon municipal indebtedness. |
| 28 Art. | 4 § | 6 | Jurisdiction of superior courts. |
| Art. | 4 § | 10 | Justices of the peace. |
| 29 Art. | 2 § | 33 | Alien ownership. |
| 30 Art. | 2 § | 1(a) | Initiative and referendum, signatures required. |
| 31 Art. | 3 § | 25 | Qualifications, compensation, offices which may be abolished. |
| 32 Art. | 2 § | 15 | Vacancies in legislature and in partisan county elective office. |
| 33 Art. | 24 § | 1 | State boundaries. |
| 34 Art. | 1 § | 11 | Religious freedom. |
| 35 Art. | 2 § | 25 | Extra compensation prohibited. |
| 36 Art. | 2 § | 1 | Legislative powers, where vested (publicity of laws referred to the people). |
| 37 Art. | 23 § | 1 | (Amendments to Constitution) How made. |
| 38 Art. | 4 § | 2(a) | Temporary performance of judicial duties. |
| 39 Art. | 2 § | 42 | Governmental continuity during emergency periods. |
| 40 Art. | 11 § | 10 | Incorporation of municipalities. |
| 41 Art. | 4 § | 29 | Election of superior court judges. |
| 42 | | | (Repeals Art. 2 § 33 and Amendments 24 and 29.) |
| 43 Art. | 9 § | 3 | (Schools) Funds for support. |
| 44 Art. | 16 § | 5 | Investment of permanent common school fund. |
| 45 Art. | 8 § | 8 | Port expenditures—Industrial development—Promotion. |
| 46 Art. | 6 § | 1A | Voter qualifications for presidential elections. |
| 47 Art. | 7 § | 10 | Retired persons property tax exemption. |

| | | | | |
|---|---|---|---|---|
| **48** | Art. | 8 § | 3 | Special indebtedness, how authorized. |
| **49** | Art. | 29 § | 1 | (Investments of public pension and retirement funds.) May be invested as authorized by law. |
| **50** | Art. | 4 § | 30 | Court of appeals. |
| **51** | Art. | 8 § | 9 | State building authority. |
| **52** | Art. | 2 § | 15 | Vacancies in legislature and in partisan county elective office. |
| | Art. | 11 § | 6 | Vacancies in township, precinct or road district offices. |
| **53** | Art. | 7 § | 11 | Taxation based on actual use. |
| **54** | Art. | 30 § | 1 | (Compensation of public officers.) Authorizing compensation increase during term. |
| **55** | Art. | 7 § | 2 | Limitation on levies. |
| **56** | Art. | 2 § | 24 | Lotteries and divorce. |
| **57** | Art. | 11 §§ | 5, 8 | County government. Salaries and limitations affecting. |
| **58** | Art. | 11 § | 16 | Combined city-county. |
| **59** | Art. | 7 § | 2 | Limitation on levies. |
| **60** | Art. | 8 §§ | 1, 3 | State debt. Special indebtedness, how authorized. |
| **61** | Art. | 31 §§ | 1, 2 | Equality not denied because of sex. Enforcement power of legislature. |
| **62** | Art. | 3 § | 12 | Veto power. |
| **63** | Art. | 6 § | 1 | Qualifications of electors. |
| **64** | Art. | 7 § | 2 | Limitation on levies. |
| **65** | Art. | 4 § | 6 | Jurisdiction of superior courts. |
| | Art. | 4 § | 10 | Justices of the peace. |
| **66** | Art. | 12 § | 18 | Rates for transportation. |
| **67** | Art. | 12 § | 14 | Prohibition against combinations by carriers. (Repealed) |
| **68** | Art. | 2 § | 12 | Sessions, when—Duration. |
| **69** | Art. | 2 § | 13 | Limitation on members holding office in the state. |
| **70** | Art. | 8 § | 10 | Residential energy conservation. |
| **71** | Art. | 4 § | 31 | Judicial qualifications commission—Removal, censure, suspension, or retirement of judges or justices. |
| **72** | Art. | 2 § | 1 | Legislative powers, where vested. |
| | Art. | 2 § | 1(a) | Initiative and referendum, signatures required. (Stricken) |
| **73** | Art. | 32 § | 1 | Special revenue financing. |
| **74** | Art. | 2 § | 3 | The census. (Repealed) |
| | Art. | 2 § | 43 | Redistricting. |
| | Art. | 27 § | 13 | Representation in congress. (Repealed) |

| | | | | |
|---|---|---|---|---|
| **75** | Art. | 29 § | 1 | May be invested as authorized by law. |
| **76** | Art. | 8 § | 11 | Agricultural commodity assessments—Development, promotion, and hosting. |
| **77** | Art. | 4 § | 31 | Commission on judicial conduct—Removal, censure, suspension, or retirement of judges or justices—Proceedings. |
| **78** | Art. | 28 § | 1 | Salaries for legislators, elected state officials, and judges—Independent commission—Referendum. |
| **79** | Art. | 7 § | 2 | Limitation on levies. |
| **80** | Art. | 4 § | 7 | Exchange of judges—Judge pro tempore. |
| **81** | Art. | 7 § | 1 | Taxation. |
| **82** | Art. | 8 § | 10 | Residential energy conservation. |
| **83** | Art. | 6 § | 3 | Who disqualified. |
| | Art. | 13 § | 1 | Educational, reformatory, and penal institutions. |
| **84** | Art. | 1 § | 35 | Victims of crimes—Rights. |
| **85** | Art. | 4 § | 31 | Commission on judicial conduct. |
| **86** | Art. | 8 § | 10 | Energy and water conservation assistance. |
| **87** | Art. | 4 § | 6 | Jurisdiction of superior courts. |
| **88** | Art. | 1 § | 11 | Religious freedom. |
| **89** | Art. | 4 § | 3 | Election and terms of supreme court judges. |
| **90** | Art. | 7 § | 2 | Limitation on levies. |
| **91** | Art. | 8 § | 10 | Energy, water, or stormwater or sewer services conservation assistance. |
| **92** | Art. | 8 § | 1 | State debt. |
| **93** | Art. | 29 § | 1 | May be invested as authorized by law. |
| **94** | Art. | 4 § | 7 | Exchange of judges—Judge pro tempore. |
| **95** | Art. | 7 § | 2 | Limitation on levies. |
| **96** | Art. | 2 § | 15 | Vacancies in legislature and in partisan county elective office. |
| **97** | Art. | 4 § | 31 | Commission on judicial conduct. |
| **98** | Art. | 7 § | 1 | Taxation. |
| **99** | Art. | 7 § | 12 | Budget stabilization account. |
| **100** | Art. | 2 § | 29 | Convict labor. |
| **101** | Art. | 7 § | 2 | Limitation on levies. |
| **102** | Art. | 16 § | 6 | Investment of higher education permanent funds. |
| **103** | Art. | 8 § | 1 | State debt. |
| **104** | Art. | 1 § | 20 | Bail, when authorized. |

| 105 | Art. | 6 § | 1A | Voter qualifications for presidential elections. |
| 106 | Art. | 7 § | 12 | Budget stabilization account. |
| 107 | Art. | 8 § | 1 | State debt. |
| 108 | Art. | 2 § | 43 | Redistricting. |

## AMENDMENT 1

Art. 16 Section 5 INVESTMENT OF SCHOOL FUND. None of the permanent school fund of this state shall ever be loaned to private persons or corporations, but it may be invested in national, state, county, municipal or school district bonds. [1893 p 9 Section 1. Adopted November, 1894.]

Art. 16 Section 5 was later amended by Amendment 44.

## AMENDMENT 2

Art. 6 Section 1 QUALIFICATIONS OF VOTERS. All male persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections: They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language: *Provided,* That Indians not taxed shall never be allowed the elective franchise: *And further provided,* That this amendment shall not effect [affect] the right of franchise of any person who is now a qualified elector of this state. The legislature shall enact laws defining the manner of ascertaining the qualifications of voters as to their ability to read and speak the English language, and providing for punishment of persons voting or registering in violation of the provisions of this section. [1895 p 60 Section 1. Approved November, 1896.]

Art. 6 Section 1 was later amended by Amendment 5.

## AMENDMENT 3

Art. 7 Section 2 was amended by adding the following proviso: "*And provided further,* That the legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred dollars ($300) for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual and *bona fide* owner." [1899 p 121 Section 1. Approved November, 1900.]

Original Art. 7 Section 2 and Amendment 3 were stricken by Amendment 14.

## AMENDMENT 4

Art. 1 Section 11 RELIGIOUS FREEDOM. Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment. *Provided, however,* That this article shall not be so construed as to forbid the employment by the state of a chaplain for the state penitentiary, and for such of the state reformatories as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony. [1903 p 283 Section 1. Approved November, 1904.]

Art. 1 Section 11 was later amended by Amendments 34 and 88.

## AMENDMENT 5

Article 6 was amended by striking from said article all of sections one (1) and two (2) and inserting in lieu thereof the following, to be known as section one (1):

Art. 6 Section 1 QUALIFICATIONS OF ELECTORS. All person of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections: They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language: *Provided,* That Indians not taxed shall never be allowed the elective franchise: *And further provided,* That this amendment shall not affect the rights of franchise of any person who is now a qualified elector of this state. The legislative authority shall enact laws defining the manner of ascertaining the qualifications of voters as to their ability to read and speak the English language, and providing for punishment of persons voting or registering in violation of the provision of this section. There shall be no denial of the elective franchise at any election on account of sex. [1909 p 26 Section 1. Approved November, 1910.]

Prior amendment of Art. 6, see Amendment 2.

Art. 6. Section 1 was later amended by Amendment 63.

## AMENDMENT 6

Art. 3 Section 10 VACANCY IN OFFICE OF GOVERNOR. In case of the removal, resignation, death or disability of the governor, the duties of the office shall devolve upon the lieutenant governor; and in case of a vacancy in both the offices of governor and lieutenant governor, the duties of the governor shall devolve upon the secretary of state.

In addition to the line of succession to the office and duties of governor as hereinabove indicated, if the necessity shall arise, in order to fill the vacancy in the office of governor, the following state officers shall succeed to the duties of governor and in the order named, viz.: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. In case of the death, disability, failure or refusal of the person regularly elected to the office of governor to qualify at the time provided by law, the duties of the office shall devolve upon the person regularly elected to and qualified for the office of lieutenant governor, who shall act as governor until the disability be removed, or a governor be elected; and in case of the death, disability, failure or refusal of both the governor and the lieutenant governor elect to qualify, the duties of the governor shall devolve upon the secretary of state; and in addition to the line of succession to the office and duties of governor as hereinabove indicated, if there shall be the failure or refusal of any officer named above to qualify, and if the necessity shall arise by reason thereof, then in that event in order to fill the vacancy in the office of governor, the following state officers shall succeed to the duties of governor in the order named, viz.: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. Any person succeeding to the office of governor as in this section provided, shall perform the duties of such office only until the disability be removed, or a governor be elected and qualified; and if a vacancy occur more than thirty days before the next general election occurring within two years after the commencement of the term, a person shall be elected at such election to fill the office of governor for the remainder of the unexpired term. [1909 p 642 Section 1. Approved November, 1910.]

## AMENDMENT 7

Article 2 was amended by striking all of sections 1 and 31, and inserting in lieu thereof as section 1 the following, so that the same shall read as follows:

Art. 2 Section 1 LEGISLATIVE POWERS, WHERE VESTED. The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.

(a) Initiative: The first power reserved by the people is the initiative. *Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition,* and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as

it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measure shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.

*Portion of subdivision (a) is superseded by Amendment 30.*

(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted. *Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition.*

*Portion of subdivision (b) is superseded by Amendment 30.*

(c) *No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon.*

*Subdivision (c) is superseded by Amendment 26.*

(d) The filing of a referendum petition against one or more items, sections or parts of any act, law or bill shall not delay the remainder of the measure from becoming operative. Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. The veto power of the governor shall not extend to measures initiated by or referred to the people. All

elections on measures referred to the people of the state shall be had at the biennial regular elections, except when the legislature shall order a special election. Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon: *Provided,* That the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. The style of all bills proposed by initiative petition shall be: "Be it enacted by the people of the State of Washington." This section shall not be construed to deprive any member of the legislature of the right to introduce any measure. *The whole number of electors who voted for governor at the regular gubernatorial election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted.* All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation.

*The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon.* [1911 p 136 Section 1. Approved November, 1912.]

Last paragraph is superseded by Amendment 36.

Art. 2 Section 1 was later amended by Amendment 72.

## AMENDMENT 8

Article 1 was amended by adding the two following sections:

Art. 1 Section 33 RECALL OF ELECTIVE OFFICERS. Every elective public officer in the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or who has violated his oath of office, stating the matters complained of, signed by the percentages of the qualified electors thereof, hereinafter provided, the percentage required to be computed from the total number of votes cast for all candidates for his said office to which he was elected at the preceding election, is filed with the officer with whom a petition for nomination, or certificate for nomination, to such office must be filed under the laws of this state, and the same officer shall call a special election as provided by the general election laws of this state, and the result determined as therein provided.

Art. 1 Section 34 SAME. The legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33) of this article, and to facilitate its operation and effect without delay: *Provided,* That the authority hereby conferred upon the legislature

shall not be construed to grant to the legislature any exclusive power of law-making nor in any way limit the initiative and referendum powers reserved by the people. The percentages required shall be, state officers, other than judges, senators and representatives, city officers of cities of the first class, school district boards in cities of the first class; county officers of counties of the first, second and third classes, twenty-five per cent. Officers of all other political subdivisions, cities, towns, townships, precincts and school districts not herein mentioned, and state senators and representatives, thirty-five per cent. [1911 p 504 Section 1. Approved November, 1912.]

## AMENDMENT 9

Art. 1 Section 16 EMINENT DOMAIN. Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: *Provided,* that the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use. [1919 p 385 Section 1. Approved November, 1920.]

## AMENDMENT 10

Art. 1 Section 22 RIGHTS OF THE ACCUSED. In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: *Provided,* The route traversed by any railway coach, train or public conveyance, and the water traversed by any boat shall be criminal districts; and the jurisdiction of all public offenses committed on any such railway car, coach, train, boat or other public conveyance, or at any station or depot upon such route, shall be in any county through which the said car, coach, train, boat or other public conveyance may pass during the trip or voyage, or in which the trip or voyage may begin or terminate. In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed. [1921 p 79 Section 1. Approved November, 1922.]

## AMENDMENT 11

Art. 8 Section 4 MONEYS DISBURSED ONLY BY APPROPRIATIONS. No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum. [1921 p 80 Section 1. Approved November, 1922.]

## AMENDMENT 12

Art. 11 Section 5 COUNTY GOVERNMENT. The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: *Provided,* That the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession. [1923 p 255 Section 1. Approved November, 1924.]

Art. 11 Section 5 was later amended by Amendment 57.

## AMENDMENT 13

Art. 2 Section 15 VACANCIES IN LEGISLATURE. Such vacancies as may occur in either house of the legislature shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified: *Provided,* That in case of a vacancy occurring in the office of joint senator, the vacancy shall be filled by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial district. [1929 p 690. Approved November, 1930.]

Art. 2 Section 15 was later amended by Amendments 32, 52, and 96.

## AMENDMENT 14

Article 7 is amended by striking out all of sections 1, 2, 3 and 4, and inserting in lieu thereof the following, to be known as section 1:

Art. 7 Section 1 TAXATION. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: *Provided,* That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred ($300.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner. [1929 p 499 Section 1. Approved November, 1930.]

Amendment 17 added a new Section 2.

Amendment 19 added a new Section 3.

Art. 7 Section 1 was later amended by Amendments 81 and 98.

## AMENDMENT 15

Art. 15 Section 1 HARBOR LINE COMMISSION AND RESTRAINT ON DISPOSITION. The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city, or within one mile thereof on either side. Any harbor line so located or established may thereafter be changed, relocated or reestablished by the commission pursuant to such provision as may be made therefor by the legislature. The state shall never give, sell or lease to any private person, corporation, or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high water, and within not less than fifty feet nor more than two thousand feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce. [1931 p 417 Section 1. Approved November, 1932.]

## AMENDMENT 16

Art. 12 Section 11 STOCKHOLDER LIABILITY. No corporation, association, or individual shall issue or put in circulation as money anything but the lawful money of the United States. Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one

for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.

The legislature may provide that stockholders of banking corporations organized under the laws of this state which shall provide and furnish, either through membership in the Federal Deposit Insurance Corporation, or through membership in any other instrumentality of the government of the United States, insurance or security for the payment of the debts and obligations of such banking corporation equivalent to that required by the laws of the United States to be furnished and provided by national banking associations, shall be relieved from liability for the debts and obligations of such banking corporation to the same extent that stockholders of national banking associations are relieved from liability for the debts and obligations of such national banking associations under the laws of the United States. [1939 Senate Joint Resolution No. 8, p 1024. Approved November, 1940.]

## AMENDMENT 17

Art. 7 Section 2 FORTY MILL LIMIT. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number

of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, and *Provided further,* That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1943 House Joint Resolution No. 1, p 936. Approved November, 1944.]

Art. 7 Section 2 was later amended by Amendments 55, 59, 64, 79, 90, 95, and 101.

## AMENDMENT 18

Art. 2 Section 40 HIGHWAY FUNDS. All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes. Such highway purposes shall be construed to include the following:

(a) The necessary operating, engineering and legal expenses connected with the administration of public highways, county roads and city streets;

(b) The construction, reconstruction, maintenance, repair, and betterment of public highways, county roads, bridges and city streets; including the cost and expense of (1) acquisition of rights-of-way, (2) installing, maintaining and operating traffic signs and signal lights, (3) policing by the state of public highways, (4) operation of movable span bridges, (5) operation of ferries which are a part of any public highway, county road, or city street;

(c) The payment or refunding of any obligation of the State of Washington, or any political subdivision thereof, for which any of the revenues described in section 1 may have been legally pledged prior to the effective date of this act;

(d) Refunds authorized by law for taxes paid on motor vehicle fuels;

(e) The cost of collection of any revenues described in this section:

*Provided,* That this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles. [1943 House Joint Resolution No. 4, p 938. Approved November, 1944.]

## AMENDMENT 19

Art. 7 Section 3 TAXATION OF FEDERAL AGENCIES AND PROPERTY. The United States and its agencies and instrumentalities, and their property, may be taxed under any of the tax laws of this state, whenever and in such manner as such taxation may be authorized or permitted under the laws of the United States, notwithstanding anything to the contrary in the Constitution of this state. [1945 House Joint Resolution No. 9, p 932. Approved November, 1946.]

## AMENDMENT 20

Art. 28 Section 1 COMPENSATION OF STATE OFFICERS. All elected state officials shall each severally receive such compensation as the legislature may direct. The compensation of any state officer shall not be increased or diminished during his term of office, except that the legislature, at its thirty-first regular session, may increase or diminish the compensation of all state officers whose terms exist on the Thursday after the second Monday in January, 1949.

The provisions of sections 14, 16, 17, 19, 20, 21, and 22 of Article III and section 23 of Article II in so far as they are inconsistent herewith, are hereby repealed. [1947 Senate Joint Resolution No. 4, p 1371. Approved November 2, 1948.]

Art. 28 Section 1 was later amended by Amendment 78.

Authorizing compensation increase during term: See Amendment 54.

## AMENDMENT 21

Art. 11 Section 4 COUNTY GOVERNMENT AND TOWNSHIP ORGANIZATION. The legislature shall establish a system of county government, which shall be uniform throughout the state except as hereinafter provided, and by general laws shall provide for township organization, under which any county may organize whenever a majority of the qualified electors of such county voting at a general election shall so determine; and whenever a county shall adopt township organization, the assessment and collection of the revenue shall be made, and the business of such county and the local affairs of the several townships therein, shall be managed and transacted in the manner prescribed by such general law.

Any county may frame a "Home Rule" charter for its own government subject to the Constitution and laws of this state, and for such purpose the legislative authority of such county may cause an election to be had, at which election there shall be chosen by the qualified voters of said county not less than fifteen (15) nor more than twenty-five (25) freeholders thereof, as determined by the legislative authority, who shall have been residents of said county for a period of at least five (5) years preceding their election and who are themselves qualified electors, whose duty it shall be to convene within thirty (30) days after their election and prepare and propose a charter for such county. Such proposed charter shall be submitted to the qualified electors of said county, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said county and shall become the organic law thereof, and supersede

any existing charter, including amendments thereto, or any existing form of county government, and all special laws inconsistent with such charter. Said proposed charter shall be published in two (2) legal newspapers published in said county, at least once a week for four (4) consecutive weeks prior to the day of submitting the same to the electors for their approval as above provided. All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such election and shall be given for at least ten (10) days before the day of election in all election districts of said county. Said elections may be general or special elections and except as herein provided, shall be governed by the law regulating and controlling general or special elections in said county. Such charter may be amended by proposals therefor submitted by the legislative authority of said county to the electors thereof at any general election after notice of such submission published as above specified, and ratified by a majority of the qualified electors voting thereon. In submitting any such charter or amendment thereto, any alternate article or proposition may be presented for the choice of the voters and may be voted on separately without prejudice to others.

Any home rule charter proposed as herein provided, may provide for such county officers as may be deemed necessary to carry out and perform all county functions as provided by charter or by general law, and for their compensation, but shall not affect the election of the prosecuting attorney, the county superintendent of schools, the judges of the superior court, and the justices of the peace, or the jurisdiction of the courts.

Notwithstanding the foregoing provision for the calling of an election by the legislative authority of such county for the election of freeholders to frame a county charter, registered voters equal in number to ten (10) per centum of the voters of any such county voting at the last preceding general election, may at any time propose by petition the calling of an election of freeholders. The petition shall be filed with the county auditor of the county at least three (3) months before any general election and the proposal that a board of freeholders be elected for the purpose of framing a county charter shall be submitted to the vote of the people at said general election, and at the same election a board of freeholders of not less than fifteen (15) or more than twenty-five (25), as fixed in the petition calling for the election, shall be chosen to draft the new charter. The procedure for the nomination of qualified electors as candidates for said board of freeholders shall be prescribed by the legislative authority of the county, and the procedure for the framing of the charter and the submission of the charter as framed shall be the same as in the case of a board of freeholders chosen at an election initiated by the legislative authority of the county.

In calling for any election of freeholders as provided in this section, the legislative authority of the county shall apportion the number of freeholders to be elected in accordance with either the legislative districts or the county commissioner districts, if any, within said county, the number of said freeholders to be elected from each of said districts to be in proportion to the population of said districts as nearly as may be.

Should the charter proposed receive the affirmative vote of the majority of the electors voting thereon, the legislative authority of the county shall immediately call such special election as may be provided for therein, if any, and the county government shall be estab-

lished in accordance with the terms of said charter not more than six (6) months after the election at which the charter was adopted.

The terms of all elective officers, except the prosecuting attorney, the county superintendent of schools, the judges of the superior court, and the justices of the peace, who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter. All appointive officers in office at the time the charter goes into effect, whose positions are not abolished thereby, shall continue until their successors shall have qualified.

After the adoption of such charter, such county shall continue to have all the rights, powers, privileges and benefits then possessed or thereafter conferred by general law. All the powers, authority and duties granted to and imposed on county officers by general law, except the prosecuting attorney, the county superintendent of schools, the judges of the superior court and the justices of the peace, shall be vested in the legislative authority of the county unless expressly vested in specific officers by the charter. The legislative authority may by resolution delegate any of its executive or administrative powers, authority or duties not expressly vested in specific officers by the charter, to any county officer or officers or county employee or employees.

The provisions of sections 5, 6, 7, and the first sentence of section 8 of this Article as amended shall not apply to counties in which the government has been established by charter adopted under the provisions hereof. The authority conferred on the board of county commissioners by Section 15 of Article II as amended, shall be exercised by the legislative authority of the county. [1947 Senate Joint Resolution No. 5, p 1372. Approved November 2, 1948.]

## AMENDMENT 22

Section 7, Article XI, Constitution of the State of Washington is hereby repealed. [1947 House Joint Resolution No. 4, p 1385. Approved November 2, 1948.]

## AMENDMENT 23

Art. 11 Section 16 COMBINED CITY AND COUNTY. The legislature shall, by general law, provide for the formation of combined city and county municipal corporations, and for the manner of determining the territorial limits thereof, each of which shall be known as a "city and county," and, when organized, shall contain a population of at least three hundred thousand (300,000) inhabitants. No such city and county shall be formed except by a majority vote of the qualified electors of the area proposed to be included therein and also by a majority vote of the qualified electors of the remainder of that county from which such area is to be taken. Any such city and county shall be permitted to frame a charter for its own government, and amend the same, in the manner provided for cities by section 10 of this article: *Provided, however,* That the first charter of such city and county shall be framed and adopted in a manner to be specified in the general law authorizing the formation of such corporations: *Provided further,* That every such charter shall designate the respective officers of such city and county who shall perform the duties imposed by law upon county officers. Every such city and county shall have and enjoy all

rights, powers and privileges asserted in its charter, not inconsistent with general laws, and in addition thereto, such rights, powers and privileges as may be granted to it, or possessed and enjoyed by cities and counties of like population separately organized.

No county or county government existing outside the territorial limits of such county and city shall exercise any police, taxation or other powers within the territorial limits of such county and city, but all such powers shall be exercised by the city and county and the officers thereof, subject to such constitutional provisions and general laws as apply to either cities or counties: *Provided,* That the provisions of sections 2, 3, 4, 5, 6, 7, and 8 of this article shall not apply to any such city and county: *Provided further,* That the salary of any elective or appointive officer of a city and county shall not be changed after his election or appointment or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed. In case an existing county is divided in the formation of a city and county, such city and county shall be liable for a just proportion of the existing debts or liabilities of the former county, and shall account for and pay the county remaining a just proportion of the value of any real estate or other property owned by the former county and taken over by the county and city, the method of determining such just proportion to be prescribed by general law, but such division shall not affect the rights of creditors. The officers of a city and county, their compensation, qualifications, term of office and manner of election or appointment shall be as provided for in its charter, subject to general laws and applicable constitutional provisions. [1947 House Joint Resolution No. 13, p 1386. Approved November 2, 1948.]

Art. 11 Section 16 was later amended by Amendment 58.

## AMENDMENT 24

[Repealed by *AMENDMENT 42*, 1965 ex.s. Senate Joint Resolution No. 20, p 2816. Approved November 8, 1966.]

**Text of Amendment 24 - Art. 2 Section 33 ALIEN OWNERSHIP** - *The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void:* Provided, *That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom: And provided further, That the provisions of this section shall not apply to the citizens of such of the Provinces of the Dominion of Canada as do not expressly or by implication prohibit ownership of provincial lands by citizens of this state. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purposes of this prohibition.* [1949 Senate Joint Resolution No. 9, p 999. Approved November 7, 1950.]

Art. 2 Section 33 was also amended by Amendment 29.

## AMENDMENT 25

Article 4 was amended by adding the following section:
Art. 4 Section 3(a) RETIREMENT OF SUPREME COURT AND SUPERIOR COURT JUDGES. A judge of the supreme court or the superior court shall retire from judicial office at the end of the calendar year in which he attains the age of seventy-five years. The legislature may, from time to time, fix a lesser age for mandatory retirement, not earlier than the end of the calendar year in which any such judge attains the age of seventy years, as the legislature deems proper. This provision shall not affect the term to which any such judge shall have been elected or appointed prior to, or at the time of, approval and ratification of this provision. Notwithstanding the limitations of this section, the legislature may by general law authorize or require the retirement of judges for physical or mental disability, or any cause rendering judges incapable of performing their judicial duties. [1951 House Joint Resolution No. 6, p 960. Approved November 4, 1952.]

## AMENDMENT 26

Article 2 was amended by adding the following section:
Art. 2 Section 41 LAWS, EFFECTIVE DATE. INITIATIVE, REFERENDUM - AMENDMENT OR REPEAL. No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment: *Provided,* That any such act, law or bill may be amended within two years after such enactment at any regular or special session of the legislature by a vote of two-thirds of all the members elected to each house with full compliance with section 12, Article III, of the Washington Constitution, and no amendatory law adopted in accordance with this provision shall be subject to referendum. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon. These provisions supersede the provisions of subsection (c) of section 1 of this article as amended by the seventh amendment to the Constitution of this state. [1951 Substitute Senate Joint Resolution No. 7, p 959. Approved November 4, 1952.]

**Reviser's note:** In third sentence, comma between "general" and "regular" omitted in conformity with enrolled resolution.

## AMENDMENT 27

Art. 8 Section 6 LIMITATIONS UPON MUNICIPAL INDEBTEDNESS. No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the as-

sessment shall be taken from the last assessment for city purposes: *Provided,* That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly county, city, town, school district, or other municipal purposes: *Provided further,* That (a) any city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality and (b) any school district with such assent, may be allowed to become indebted to a larger amount but not exceeding five per centum additional for capital outlays. [1951 House Joint Resolution No. 8, p 961. Approved November 4, 1952.]

## AMENDMENT 28

Art. 4 Section 6 JURISDICTION OF SUPERIOR COURTS. The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one thousand dollars, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days.

Later amendment to Art. 4 Section 6, see Amendment 87.

Art. 4 Section 10 JUSTICES OF THE PEACE. The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: *Provided,* That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns. Justices of the peace shall have original jurisdiction in cases where the demand or value of the property in controversy is less than three hundred dollars or such greater sum, not to exceed one thousand dollars, as shall be prescribed by the legislature. In incorporated cities or towns having more than five

12/27/2016 9:01 AM                    [ 142 ]                    Amendment 28

thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use. [1951 Substitute House Joint Resolution No. 13, p 962. Approved November 4, 1952.]

Later amendment to Art. 4 Section 6 and Section 10, see Amendment 65.

## AMENDMENT 29

[Repealed by *AMENDMENT 42*, 1965 ex.s. Senate Joint Resolution No. 20, p 2816. Approved November 8, 1966.]

**Text of Amendment 29 - Art. 2 Section 33 Alien Ownership -** *The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void:* Provided, *That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom:* And provided further, *That the provisions of this section shall not apply to the citizens of such of the Provinces of the Dominion of Canada as do not expressly or by implication prohibit ownership of provincial lands by citizens of this state.* [1953 House Joint Resolution No. 16, p 853. Approved November 2, 1954.]

Prior amendment of Art. 2 Section 33, see Amendment 24.

## AMENDMENT 30

[Stricken by *AMENDMENT 72*, 1981 Substitute Senate Joint Resolution No. 133, p 1796. Approved November 3, 1981.]

**Text of Amendment 30 - Art. 2 Section 1(a) INITIATIVE AND REFERENDUM, SIGNATURES REQUIRED -** *Hereafter, the number of valid signatures of legal voters required upon a petition for an initiative measure shall be equal to eight per centum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. Hereafter, the number of valid signatures of legal voters required upon a petition for a referendum of an act of the legislature or any part thereof, shall be equal to four per centum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. These provisions supersede the requirements specified in section 1 of this article as amended by the seventh amendment to the Constitution of this state.* [1955 Senate Joint Resolution No. 4, p 1860. Approved November 6, 1956.]

## AMENDMENT 31

Art. 3 Section 25 QUALIFICATIONS, COMPENSATION, OFFICES WHICH MAY BE ABOLISHED. No person, except a citizen of the United States and a qualified elector of this state, shall be eligible to hold any state office. The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. The legislature may in its discretion abolish the offices of the lieutenant governor, auditor and commissioner of public lands. [1955 Senate Joint Resolution No. 6, p 1861. Approved November 6, 1956.]

*Authorizing compensation increase during term: See Amendment 54.*

## AMENDMENT 32

Art. 2 Section 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE. Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs: *Provided,* That the person appointed to fill the vacancy must be from the same legislative district and the same political party as the legislator whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified: *Provided,* That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator whose office has been vacated. [1955 Senate Joint Resolution No. 14, p 1862. Approved November 6, 1956.]

Prior amendment of Art. 2 Section 15, see Amendment 13.

Later amendment of Art. 2 Section 15, see Amendments 52 and 96.

## AMENDMENT 33

Art. 24 Section 1 STATE BOUNDARIES. The boundaries of the state of Washington shall be as follows: Beginning at a point in the Pacific ocean one marine league due west of and opposite the middle of the mouth of the north ship channel of the Columbia river thence running easterly to and up the middle channel of said river and where it is divided by islands up the middle of the widest channel thereof to where the forty-sixth parallel of north latitude crosses said river near the mouth of the Walla Walla river; thence east on said forty-sixth parallel of latitude to the middle of the main channel of the Shoshone or Snake river, thence follow down the middle of the main

channel of Snake river to a point opposite the mouth of the Kooskooskia or Clear Water river, thence due north to the forty-ninth parallel of north latitude, thence west along said forty-ninth parallel of north latitude to the middle of the channel which separates Vancouver's island from the continent, that is to say to a point in longitude 123 degrees, 19 minutes and 15 seconds west, thence following the boundary line between the United States and British possessions through the channel which separates Vancouver's island from the continent to the termination of the boundary line between the United States and British possessions at a point in the Pacific ocean equidistant between Bonnilla point on Vancouver's island and Tatoosh island light house, thence running in a southerly course and parallel with the coast line, keeping one marine league off shore to place of beginning; until such boundaries are modified by appropriate interstate compacts duly approved by the Congress of the United States. [1957 Senate Joint Resolution No. 10, p 1292. Approved November 4, 1958.]

## AMENDMENT 34

Art. 1 Section 11 RELIGIOUS FREEDOM. Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment: *Provided, however,* That this article shall not be so construed as to forbid the employment by the state of a chaplain for such of the state custodial, correctional and mental institutions as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony. [1957 Senate Joint Resolution No. 14, p 1299. Approved November 4, 1958.]

Prior amendment of Art. 1 Section 11, see Amendment 4.

Art. 1 Section 11 was later amended by Amendment 88.

## AMENDMENT 35

Art. 2 Section 25 EXTRA COMPENSATION PROHIBITED. The legislature shall never grant any extra compensation to any public officer, agent, employee, servant, or contractor, after the services shall have been rendered, or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office. Nothing in this section shall be deemed to prevent increases in pensions after such pensions shall have been granted. [1957 Senate Joint Resolution No. 18, p 1301. Approved November 4, 1958.]

*Increase during term in compensation of certain officers authorized: See Amendment 54.*

## AMENDMENT 36

Article 2, section 1 (LEGISLATIVE POWERS, WHERE VESTED) as amended by AMENDMENT 7 was amended by adding the following subsection:

Article 2, section 1, subsection (e). The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the Constitution referred to the people with arguments for and against the laws and amendments so referred. The secretary of state shall send one copy of the publication to each individual place of residence in the state and shall make such additional distribution as he shall determine necessary to reasonably assure that each voter will have an opportunity to study the measures prior to election. These provisions supersede the provisions set forth in the last paragraph of section 1 of this article as amended by the seventh amendment to the Constitution of this state. [1961 Senate Joint Resolution No. 9, p 2751. Approved November, 1962.]

## AMENDMENT 37

Art. 23 Section 1 HOW MADE. Any amendment or amendments to this Constitution may be proposed in either branch of the legislature; and if the same shall be agreed to by two-thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes thereon, and be submitted to the qualified electors of the state for their approval, at the next general election; and if the people approve and ratify such amendment or amendments, by a majority of the electors voting thereon, the same shall become part of this Constitution, and proclamation thereof shall be made by the governor: *Provided,* That if more than one amendment be submitted, they shall be submitted in such a manner that the people may vote for or against such amendments separately. The legislature shall also cause notice of the amendments that are to be submitted to the people to be published at least four times during the four weeks next preceding the election in every legal newspaper in the state: *Provided,* That failure of any newspaper to publish this notice shall not be interpreted as affecting the outcome of the election. [1961 Senate Joint Resolution No. 25, p 2753. Approved November, 1962.]

## AMENDMENT 38

Article 4 was amended by adding the following section:
Art. 4 Section 2(a) TEMPORARY PERFORMANCE OF JUDICIAL DUTIES. When necessary for the prompt and orderly administration of justice a majority of the Supreme Court is empowered to authorize judges or retired judges of courts of record of this state, to perform, temporarily, judicial duties in the Supreme Court, and to authorize any superior court judge to perform judicial duties in any superior court of this state. [1961 House Joint Resolution No. 6, p 2757. Approved November, 1962.]

## AMENDMENT 39

Art. 2 Section 42 GOVERNMENTAL CONTINUITY DURING EMERGENCY PERI-ODS. The legislature, in order to insure continuity of state and local governmental operations in periods of emergency resulting from enemy attack, shall have the power and the duty, immediately upon and after adoption of this amendment, to enact legislation providing for prompt and temporary succession to the powers and duties of public offices of whatever nature and whether filled by election or appointment, the incumbents and legal successors of which may become unavailable for carrying on the powers and duties of such offices; the legislature shall likewise enact such other measures as may be necessary and proper for insuring the continuity of governmental operations during such emergencies. Legislation enacted under the powers conferred by this amendment shall in all respects conform to the remainder of the Constitution: *Provided,* That if, in the judgment of the legislature at the time of disaster, conformance to the provisions of the Constitution would be impracticable or would admit of undue delay, such legislation may depart during the period of emergency caused by enemy attack only, from the following sections of the Constitution:

Article 14, Sections 1 and 2, Seat of Government;

Article 2, Sections 8, 15 (Amendments 13 and 32), and 22, Membership, Quorum of Legislature and Passage of Bills;

Article 3, Section 10 (Amendment 6), Succession to Governorship: *Provided,* That the legislature shall not depart from Section 10, Article III, as amended by Amendment 6, of the state Constitution relating to the Governor's office so long as any successor therein named is available and capable of assuming the powers and duties of such office as therein prescribed;

Article 3, Section 13, Vacancies in State Offices;

Article 11, Section 6, Vacancies in County Offices;

Article 11, Section 2, Seat of County Government;

Article 3, Section 24, State Records. [1961 House Joint Resolution No. 9, p 2758. Approved November, 1962.]

## AMENDMENT 40

Art. 11 Section 10 INCORPORATION OF MUNICIPALITIES. Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification in proportion to population, of cities and towns, which laws may be altered, amended or repealed. Cities and towns heretofore organized, or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election, shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution shall be subject to, and controlled by general laws. Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had at which election there shall be chosen by the qualified electors of said city, fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election and qualified electors, whose duty it shall be to convene within ten days after their election, and prepare and propose a charter for such city. Such proposed charter shall be submitted to

the qualified electors of said city, and if a majority of such quali-
fied electors voting thereon ratify the same, it shall become the
charter of said city, and shall become the organic law thereof, and
supersede any existing charter including amendments thereto, and all
special laws inconsistent with such charter. Said proposed charter
shall be published in the daily newspaper of largest general circula-
tion published in the area to be incorporated as a first class city
under the charter or, if no daily newspaper is published therein, then
in the newspaper having the largest general circulation within such
area at least once each week for four weeks next preceding the day of
submitting the same to the electors for their approval, as above pro-
vided. All elections in this section authorized shall only be had upon
notice, which notice shall specify the object of calling such elec-
tion, and shall be given as required by law. Said elections may be
general or special elections, and except as herein provided shall be
governed by the law regulating and controlling general or special
elections in said city. Such charter may be amended by proposals
therefor submitted by the legislative authority of such city to the
electors thereof at any general election after notice of said submis-
sion published as above specified, and ratified by a majority of the
qualified electors voting thereon. In submitting any such charter, or
amendment thereto, any alternate article or proposition may be presen-
ted for the choice of the voters, and may be voted on separately with-
out prejudice to others. [1963 ex.s. Senate Joint Resolution No. 1, p
1526. Approved November 3, 1964.]

## AMENDMENT 41

Art. 4 Section 29 ELECTION OF SUPERIOR COURT JUDGES. Notwith-
standing any provision of this Constitution to the contrary, if, after
the last day as provided by law for the withdrawal of declarations of
candidacy has expired, only one candidate has filed for any single po-
sition of superior court judge in any county containing a population
of one hundred thousand or more, no primary or election shall be held
as to such position, and a certificate of election shall be issued to
such candidate. If, after any contested primary for superior court
judge in any county, only one candidate is entitled to have his name
printed on the general election ballot for any single position, no
election shall be held as to such position, and a certificate of elec-
tion shall be issued to such candidate: *Provided,* That in the event
that there is filed with the county auditor within ten days after the
date of the primary, a petition indicating that a write in campaign
will be conducted for such single position and signed by one hundred
registered voters qualified to vote with respect of the office, then
such single position shall be subject to the general election. Provi-
sions for the contingency of the death or disqualification of a sole
candidate between the last date for withdrawal and the time when the
election would be held but for the provisions of this section, and
such other provisions as may be deemed necessary to implement the pro-
visions of this section, may be enacted by the legislature. [1965
ex.s. Substitute Senate Joint Resolution No. 6, p 2815. Approved No-
vember 8, 1966.]

## AMENDMENT 42

Section 33, Article II and Amendments 24 and 29 amendatory there-of, of the Constitution of the State of Washington are each hereby re-pealed. [1965 ex.s. Senate Joint Resolution No. 20, p 2816. Approved November 8, 1966.]

## AMENDMENT 43

Art. 9 Section 3 FUNDS FOR SUPPORT. The principal of the common school fund as the same existed on June 30, 1965, shall remain perma-nent and irreducible. The said fund shall consist of the principal amount thereof existing on June 30, 1965, and such additions thereto as may be derived after June 30, 1965, from the following named sour-ces, to wit: Appropriations and donations by the state to this fund; donations and bequests by individuals to the state or public for com-mon schools; the proceeds of lands and other property which revert to the state by escheat and forfeiture; the proceeds of all property granted to the state when the purpose of the grant is not specified, or is uncertain; funds accumulated in the treasury of the state for the disbursement of which provision has not been made by law; the pro-ceeds of the sale of stone, minerals, or property other than timber and other crops from school and state lands, other than those granted for specific purposes; all moneys received from persons appropriating stone, minerals or property other than timber and other crops from school and state lands other than those granted for specific purposes, and all moneys other than rental recovered from persons trespassing on said lands; five per centum of the proceeds of the sale of public lands lying within the state, which shall be sold by the United States subsequent to the admission of the state into the Union as approved by section 13 of the act of congress enabling the admission of the state into the Union; the principal of all funds arising from the sale of lands and other property which have been, and hereafter may be granted to the state for the support of common schools. The legislature may make further provisions for enlarging said fund.

There is hereby established the common school construction fund to be used exclusively for the purpose of financing the construction of facilities for the common schools. The sources of said fund shall be: (1) Those proceeds derived from the sale or appropriation of tim-ber and other crops from school and state lands subsequent to June 30, 1965, other than those granted for specific purposes; (2) the interest accruing on said permanent common school fund from and after July 1, 1967, together with all rentals and other revenues derived therefrom and from lands and other property devoted to the permanent common school fund from and after July 1, 1967; and (3) such other sources as the legislature may direct. That portion of the common school con-struction fund derived from interest on the permanent common school fund may be used to retire such bonds as may be authorized by law for the purpose of financing the construction of facilities for the common schools.

The interest accruing on the permanent common school fund togeth-er with all rentals and other revenues accruing thereto pursuant to subsection (2) of this section during the period after the effective date of this amendment and prior to July 1, 1967, shall be exclusively applied to the current use of the common schools.

To the extent that the moneys in the common school construction fund are in excess of the amount necessary to allow fulfillment of the purpose of said fund, the excess shall be available for deposit to the

credit of the permanent common school fund or available for the current use of the common schools, as the legislature may direct. [1965 ex.s. Senate Joint Resolution No. 22, part 1, p 2817. Approved November 8, 1966.]

## AMENDMENT 44

Art. 16 Section 5 INVESTMENT OF PERMANENT COMMON SCHOOL FUND. The permanent common school fund of this state may be invested as authorized by law. [1965 ex.s. Senate Joint Resolution No. 22, part 2, p 2817. Approved November 8, 1966.]

Prior amendment of Art. 16 Section 5, see Amendment 1.

## AMENDMENT 45

Art. 8 Section 8 PORT EXPENDITURES - INDUSTRIAL DEVELOPMENT -PROMOTION. The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 7 of this Article. [1965 ex.s. Senate Joint Resolution No. 25, p 2819. Approved November 8, 1966.]

## AMENDMENT 46

Art. 6 Section 1A VOTER QUALIFICATIONS FOR PRESIDENTIAL ELECTIONS. In consideration of those citizens of the United States who become residents of the state of Washington during the year of a presidential election with the intention of making this state their permanent residence, this section is for the purpose of authorizing such persons who can meet all qualifications for voting as set forth in section 1 of this article, except for residence, to vote for presidential electors or for the office of President and Vice-President of the United States, as the case may be, but no other: *Provided,* That such persons have resided in the state at least sixty days immediately preceding the presidential election concerned.
The legislature shall establish the time, manner and place for such persons to cast such presidential ballots. [1965 ex.s. Substitute Joint House Resolution No. 4, p 2820. Approved November 8, 1966.]

Art. 6 Section 1A was later amended by Amendment 105.

## AMENDMENT 47

Art. 7 Section 10 RETIRED PERSONS PROPERTY TAX EXEMPTION. Notwithstanding the provisions of Article 7, section 1 (Amendment 14) and Article 7, section 2 (Amendment 17), the following tax exemption shall be allowed as to real property:
The legislature shall have the power, by appropriate legislation, to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners. The legislature may place such restrictions and conditions upon the granting of

such relief as it shall deem proper. Such restrictions and conditions may include, but are not limited to, the limiting of the relief to those property owners below a specific level of income and those fulfilling certain minimum residential requirements. [1965 ex.s. House Joint Resolution No. 7, p 2821. Approved November 8, 1966.]

## AMENDMENT 48

Art. 8 Section 3 SPECIAL INDEBTEDNESS, HOW AUTHORIZED. Except the debt specified in sections one and two of this article, no debts shall hereafter be contracted by, or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein, which law shall provide ways and means, exclusive of loans, for the payment of the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election, and all moneys raised by authority of such law shall be applied only to the specific object therein stated, or to the payment of the debt thereby created, and notice that such law will be submitted to the people shall be published at least four times during the four weeks next preceding the election in every legal newspaper in the state: *Provided,* That failure of any newspaper to publish this notice shall not be interpreted as affecting the outcome of the election. [1965 ex.s. House Joint Resolution No. 39, p 2822. Approved November 8, 1966.]

Art. 8 Section 3 was later amended by Amendment 60.

## AMENDMENT 49

The Constitution was amended by adding the following new article and section 1 thereof:

### ARTICLE XXIX
### INVESTMENTS OF PUBLIC PENSION AND
### RETIREMENT FUNDS

Art. 29 Section 1 MAY BE INVESTED AS AUTHORIZED BY LAW. Notwithstanding the provisions of sections 5, and 7 of Article VIII and section 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund may be invested as authorized by law. [1967 Senate Joint Resolution No. 5; see 1969 p 2975. Approved November 5, 1968.]

Art. 29 Section 1 was later amended by Amendments 75 and 93.

## AMENDMENT 50

Article 4 was amended by adding the following section:
Art. 4 Section 30 COURT OF APPEALS. (1) *Authorization.* In addition to the courts authorized in section 1 of this article, judicial power is vested in a court of appeals, which shall be established by statute.

12/27/2016 9:01 AM          [ 151 ]          Amendment 48

(2) *Jurisdiction.* The jurisdiction of the court of appeals shall be as provided by statute or by rules authorized by statute.

(3) *Review of Superior Court.* Superior court actions may be reviewed by the court of appeals or by the supreme court as provided by statute or by rule authorized by statute.

(4) *Judges.* The number, manner of election, compensation, terms of office, removal and retirement of judges of the court of appeals shall be as provided by statute.

(5) *Administration and Procedure.* The administration and procedures of the court of appeals shall be as provided by rules issued by the supreme court.

(6) *Conflicts.* The provisions of this section shall supersede any conflicting provisions in prior sections of this article. [1967 Senate Joint Resolution No. 6; see 1969 p 2975. Approved November 5, 1968.]

**Reviser's note**: This section which was adopted as Art. 4 Section 29 is herein renumbered Art. 4 Section 30 to avoid confusion with Amendment 41.

## AMENDMENT 51

Article 8 was amended by adding the following section:
Art. 8 Section 9 STATE BUILDING AUTHORITY. The legislature is empowered notwithstanding any other provision in this Constitution, to provide for a state building authority in corporate and politic form which may contract with agencies or departments of the state government to construct upon land owned by the state or its agencies, or to be acquired by the state building authority, buildings and appurtenant improvements which such state agencies or departments are hereby empowered to lease at reasonable rental rates from the Washington state building authority for terms up to seventy-five years with provisions for eventual vesting of title in the state or its agencies. This section shall not be construed as authority to provide buildings through lease or otherwise to nongovernmental entities. The legislature may authorize the state building authority to borrow funds solely upon its own credit and to issue bonds or other evidences of indebtedness therefor to be repaid from its revenues and to secure the same by pledging its income or mortgaging its leaseholds. The provisions of sections 1 and 3 of this article shall not apply to indebtedness incurred pursuant to this section. [1967 Senate Joint Resolution No. 17; see 1969 p 2976. Approved November 5, 1968.]

**Reviser's note**: This section which was adopted as Art. 8 Section 8 is herein renumbered as Art. 8 Section 9 to avoid confusion with Amendment 45.

## AMENDMENT 52

Art. 2 Section 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE. Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs: *Provided,* That the person appointed to fill the vacancy must be from the same legislative district, county or county commissioner district and the same political party as the leg-

islator or partisan county elective officer whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district, county or county commissioner district and of the same political party as the legislator or partisan county elective officer whose office has been vacated, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified: *Provided,* That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator whose office has been vacated.

Art. 11 Section 6 VACANCIES IN TOWNSHIP, PRECINCT OR ROAD DISTRICT OFFICE. The board of county commissioners in each county shall fill all vacancies occurring in any township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next general election, and until their successors are elected and qualified. [1967 Senate Joint Resolution No. 24; see 1969 p 2976. Approved November 5, 1968.]

Prior amendment of Art. 2 Section 15, see Amendments 13 and 32.

Later amendment of Art. 2 Section 15, see Amendment 96.

### AMENDMENT 53

Article 7 was amended by adding the following section:
Art. 7 Section 11 TAXATION BASED ON ACTUAL USE. Nothing in this Article VII as amended shall prevent the legislature from providing, subject to such conditions as it may enact, that the true and fair value in money (a) of farms, agricultural lands, standing timber and timberlands, and (b) of other open space lands which are used for recreation or for enjoyment of their scenic or natural beauty shall be based on the use to which such property is currently applied, and such values shall be used in computing the assessed valuation of such property in the same manner as the assessed valuation is computed for all property. [1967 House Joint Resolution No. 1; see 1969 p 2976. Approved November 5, 1968.]

### AMENDMENT 54

The Constitution was amended by adding the following new article and section 1 thereof:

### ARTICLE XXX*
### COMPENSATION OF PUBLIC OFFICERS**

Art. 30 Section 1 AUTHORIZING COMPENSATION INCREASE DURING TERM. The compensation of all elective and appointive state, county, and municipal officers who do not fix their own compensation, including judges of courts of record and the justice courts may be increased during their terms of office to the end that such officers and judges shall each severally receive compensation for their services in accordance with the law in effect at the time the services are being rendered.

The provisions of section 25 of Article II (Amendment 35), section 25 of Article III (Amendment 31), section 13 of Article IV, section 8 of Article XI, and section 1 of Article XXVIII (Amendment 20) insofar as they are inconsistent herewith are hereby repealed. [1967 House Joint Resolution No. 13; see 1969 p 2976. Approved November 5, 1968.]

**Reviser's note**: *(1) Amendment 49 (1967 SJR No. 5) and Amendment 54 (1967 HJR No. 13) each added a new Article XXIX to the Constitution. Amendment 49 is carried herein as Article XXIX while Amendment 54 has been herein redesignated as Article XXX.

**(2) The name of this Article has been supplied by the reviser.

### AMENDMENT 55

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percentum of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the re-

placement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, *And Provided Further,* That the provisions of this section shall also be subject to the limitations contained in Article VIII, section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1971 Senate Joint Resolution No. 1, p 1827. Approved November 7, 1972.]

**Reviser's note**: Art. 7 Section 2 was also amended at the November 7, 1972 general election by Amendment 59. (HJR 47.)

Prior amendment of Art. 7 Section 2, see Amendment 17.

Art. 7 Section 2 was later amended by Amendments 59, 64, 79, 90, 95, and 101.

## AMENDMENT 56

Art. 2 Section 24 LOTTERIES AND DIVORCE. The legislature shall never grant any divorce. Lotteries shall be prohibited except as specifically authorized upon the affirmative vote of sixty percent of the members of each house of the legislature or, notwithstanding any other provision of this Constitution, by referendum or initiative approved by a sixty percent affirmative vote of the electors voting thereon. [1971 Senate Joint Resolution No. 5, p 1828. Approved November 7, 1972.]

## AMENDMENT 57

Art. 11 Section 5 COUNTY GOVERNMENT. The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: *Provided,* That the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all

such officers, in proportion to their duties, and for that purpose may classify the counties by population: *Provided,* That it may delegate to the legislative authority of the counties the right to prescribe the salaries of its own members and the salaries of other county officers. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession.

Art. 11 Section 8 SALARIES AND LIMITATIONS AFFECTING. The salary of any county, city, town, or municipal officers shall not be increased except as provided in section 1 of Article XXX or diminished after his election, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed. [1971 Senate Joint Resolution No. 38, p 1829. Approved November 7, 1972.]

Prior amendment of Art. 11 Section 5, see Amendment 12.

## AMENDMENT 58

Art. 11 Section 16 COMBINED CITY-COUNTY. Any county may frame a "Home Rule" charter subject to the Constitution and laws of this state to provide for the formation and government of combined city and county municipal corporations, each of which shall be known as "city-county". Registered voters equal in number to ten (10) percent of the voters of any such county voting at the last preceding general election may at any time propose by a petition the calling of an election of freeholders. The provisions of section 4 of this Article with respect to a petition calling for an election of freeholders to frame a county home rule charter, the election of freeholders, and the framing and adoption of a county home rule charter pursuant to such petition shall apply to a petition proposed under this section for the election of freeholders to frame a city-county charter, the election of freeholders, and to the framing and adoption of such city-county charter pursuant to such petition. Except as otherwise provided in this section, the provisions of section 4 applicable to a county home rule charter shall apply to a city-county charter. If there are not sufficient legal newspapers published in the county to meet the requirements for publication of a proposed charter under section 4 of this Article, publication in a legal newspaper circulated in the county may be substituted for publication in a legal newspaper published in the county. No such "city-county" shall be formed except by a majority vote of the qualified electors voting thereon in the county. The charter shall designate the respective officers of such city-county who shall perform the duties imposed by law upon county officers. Every such city-county shall have and enjoy all rights, powers and privileges asserted in its charter, and in addition thereto, such rights, powers and privileges as may be granted to it, or to any city or county or class or classes of cities and counties. In the event of a conflict in the constitutional provisions applying to cities and those applying to counties or of a conflict in the general laws applying to cities and those applying to counties, a city-county shall be authorized to exercise any powers that are granted to either the cities or the counties.
No legislative enactment which is a prohibition or restriction shall apply to the rights, powers and privileges of a city-county un-

less such prohibition or restriction shall apply equally to every other city, county, and city-county.

The provisions of sections 2, 3, 5, 6, and 8 and of the first paragraph of section 4 of this Article shall not apply to any such city-county.

Municipal corporations may be retained or otherwise provided for within the city-county. The formation, powers and duties of such municipal corporations shall be prescribed by the charter.

No city-county shall for any purpose become indebted in any manner to an amount exceeding three per centum of the taxable property in such city-county without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed ten per centum of the value of the taxable property therein, to be ascertained by the last assessment for city-county purposes previous to the incurring of such indebtedness: *Provided,* That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly city-county or other municipal purposes: *Provided further,* That any city-county, with such assent may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city-county with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the city-county.

No municipal corporation which is retained or otherwise provided for within the city-county shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such municipal corporation without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor shall the total indebtedness at any time exceed five per centum of the value of the taxable property therein, to be ascertained by the last assessment for city-county purposes previous to the incurring of such indebtedness: *Provided,* That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly municipal purposes: *Provided further,* That any such municipal corporation, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such municipal corporation with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipal corporation. All taxes which are levied and collected within a municipal corporation for a specific purpose shall be expended within that municipal corporation.

The authority conferred on the city-county government shall not be restricted by the second sentence of Article 7, section 1, or by Article 8, section 6 of this Constitution. [1971 House Joint Resolution No. 21, p 1831. Approved November 7, 1972.]

Prior amendment of Art. 11 Section 16, see Amendment 23.


## AMENDMENT 59

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed

valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only:

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty per centum of the total votes cast in such taxing district in the last preceding general election;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, *And provided further,* That the provisions of this section shall also be subject to the limitations contained in Article VIII, section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1971 House Joint Resolution No. 47, p 1834. Approved November 7, 1972.]

**Reviser's note**: Art. 7 Section 2 was also amended at the November 7, 1972, general election by Amendment 55 (SJR 1). 1971 HJR No. 47 contained the following paragraph:

"*Be It Further Resolved,* That the foregoing amendment shall be submitted to the qualified electors of the state in such a manner that they may vote for or against it separately from the proposed amendment to Article VII, section 2, (Amendment 17) of the Constitution of the State of Washington contained in Senate Joint Resolution No. 1: *Provided,* That if both proposed amendments are approved and ratified, both shall become part of the Constitution."

Prior amendment of Art. 7 Section 2, see Amendments 17 and 55.

Art. 7 Section 2 was later amended by Amendments 64, 79, 90, 95, and 101.

## AMENDMENT 60

Art. 8 Section 1 STATE DEBT. (a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.

(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.

(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this Article, obligations guaranteed as provided for in subsection (f) of this section, principal of bond anticipation notes

or obligations issued to fund or refund the indebtedness of the Washington state building authority.

(e) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this Article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (g) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(f) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: *Provided,* That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(g) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(h) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(i) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(j) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such

certificates must be retired and the debt discharged other than by re-funding within twelve months after the date of incurrence.

(k) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this Article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof.

Art. 8 Section 3 SPECIAL INDEBTEDNESS, HOW AUTHORIZED. Except the debt specified in sections one and two of this Article, no debts shall hereafter be contracted by, or on behalf of this state, unless such debt shall be authorized by law for some single work or object to be distinctly specified therein. No such law shall take effect until it shall, at a general election, or a special election called for that purpose, have been submitted to the people and have received a majority of all the votes cast for and against it at such election. [1971 House Joint Resolution No. 52, p 1836. Approved November 7, 1972.]

Art 8. Section 1 was later amended by Amendments 92, 103, and 107.

Prior amendment of Art. 8 Section 3, see Amendment 48.

Art. 8 Section 3 was later amended by Amendment 92.

## AMENDMENT 61

The Constitution was amended by adding the following new article and sections 1 and 2 thereof:

### ARTICLE XXXI
### SEX EQUALITY – RIGHTS AND RESPONSIBILITIES

Art. 31 Section 1 EQUALITY NOT DENIED BECAUSE OF SEX. Equality of rights and responsibility under the law shall not be denied or abridged on account of sex.

Art. 31 Section 2 ENFORCEMENT POWER OF LEGISLATURE. The legislature shall have the power to enforce, by appropriate legislation, the provisions of this article. [1972 House Joint Resolution No. 61, p 526. Approved November 7, 1972.]

The name of this article has been supplied by the reviser.

## AMENDMENT 62

Art. 3 Section 12 VETO POWER. Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. If he approves, he shall sign it; but if not, he shall re-turn it, with his objections, to that house in which it shall have or-iginated, which house shall enter the objections at large upon the journal and proceed to reconsider. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and

the names of the members voting for or against the bill shall be entered upon the journal of each house respectively. If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall be presented to him, it shall become a law without his signature, unless the general adjournment shall prevent its return, in which case it shall become a law unless the governor, within twenty days next after the adjournment, Sundays excepted, shall file such bill with his objections thereto, in the office of secretary of state, who shall lay the same before the legislature at its next session in like manner as if it had been returned by the governor: *Provided,* That within forty-five days next after the adjournment, Sundays excepted, the legislature may, upon petition by a two-thirds majority or more of the membership of each house, reconvene in extraordinary session, not to exceed five days duration, solely to reconsider any bills vetoed. If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items while approving other portions of the bill: *Provided,* That he may not object to less than an entire section, except that if the section contain one or more appropriation items he may object to any such appropriation item or items. In case of objection he shall append to the bill, at the time of signing it, a statement of the section or sections, appropriation item or items to which he objects and the reasons therefor; and the section or sections, appropriation item or items so objected to shall not take effect unless passed over the governor's objection, as hereinbefore provided. The provisions of Article II, section 12 insofar as they are inconsistent herewith are hereby repealed. [1974 Senate Joint Resolution No. 140, p 806. Approved November 5, 1974.]

## AMENDMENT 63

Art. 6 Section 1 QUALIFICATIONS OF ELECTORS. All persons of the age of eighteen years or over who are citizens of the United States and who have lived in the state, county, and precinct thirty days immediately preceding the election at which they offer to vote, except those disqualified by Article VI, section 3 of this Constitution, shall be entitled to vote at all elections. [1974 Senate Joint Resolution No. 143, p 807. Approved November 5, 1974.]

Prior amendment of Art. 6 Section 1, see Amendments 2 and 5.

## AMENDMENT 64

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation

or any specific limitation imposed by law in conformity therewith may be exceeded only:

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election: *Provided,* That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a two year period;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, *And provided further,* That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1975-'76 2nd ex.s. Senate Joint Resolution No. 137, p 518. Approved November 2, 1976.]

Prior amendment of Art. 7 Section 2, see Amendments 17, 55, and 59.

Art. 7 Section 2 was later amended by Amendments 79, 90, 95, and 101.

## AMENDMENT 65

Art. 4 Section 6 JURISDICTION OF SUPERIOR COURTS. The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days. [1977 Senate Joint Resolution No. 113, p 1714. Approved November 8, 1977.]

Art. 4 Section 10 JUSTICES OF THE PEACE. The legislature shall determine the number of justices of the peace to be elected and shall prescribe by law the powers, duties and jurisdiction of justices of the peace: *Provided,* That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record, except that justices of the peace may be made police justices of incorporated cities and towns. Justices of the peace shall have original jurisdiction in cases where the demand or value of the property in controversy is less than three hundred dollars or such greater sum, not to exceed three thousand dollars or as otherwise determined by law, as shall be prescribed by the legislature. In incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use. [1977 Senate Joint Resolution No. 113, p 1714. Approved November 8, 1977.]

Prior amendment of Art. 4 Section 6 and Section 10, see Amendment 28.

## AMENDMENT 66

Art. 12 Section 18 RATES FOR TRANSPORTATION. The legislature may pass laws establishing reasonable rates of charges for the transportation of passengers and freight, and to correct abuses and prevent discrimination and extortion in the rates of freight and passenger tar-

12/27/2016 9:01 AM                    [ 164 ]                    Amendment 66

iffs on the different railroads and other common carriers in the state, and shall enforce such laws by adequate penalties. A railroad and transportation commission may be established and its powers and duties fully defined by law. [1977 House Joint Resolution No. 55, p 1713. Approved November 8, 1977.]

### AMENDMENT 67

Art. 12 Section 14 PROHIBITION AGAINST COMBINATIONS BY CARRIERS. [Repealed by 1977 House Joint Resolution No. 57, p 1714. Approved November 8, 1977.]

### AMENDMENT 68

Art. 2 Section 12 SESSIONS, WHEN - DURATION. (1) Regular Sessions. A regular session of the legislature shall be convened each year. Regular sessions shall convene on such day and at such time as the legislature shall determine by statute. During each odd-numbered year, the regular session shall not be more than one hundred five consecutive days. During each even-numbered year, the regular session shall not be more than sixty consecutive days.

(2) Special Legislative Sessions. Special legislative sessions may be convened for a period of not more than thirty consecutive days by proclamation of the governor pursuant to Article III, section 7 of this Constitution. Special legislative sessions may also be convened for a period of not more than thirty consecutive days by resolution of the legislature upon the affirmative vote in each house of two-thirds of the members elected or appointed thereto, which vote may be taken and resolution executed either while the legislature is in session or during any interim between sessions in accordance with such procedures as the legislature may provide by law or resolution. The resolution convening the legislature shall specify a purpose or purposes for the convening of a special session, and any special session convened by the resolution shall consider only measures germane to the purpose or purposes expressed in the resolution, unless by resolution adopted during the session upon the affirmative vote in each house of two-thirds of the members elected or appointed thereto, an additional purpose or purposes are expressed. The specification of purpose by the governor pursuant to Article III, section 7 of this Constitution shall be considered by the legislature but shall not be mandatory.

(3) Committees of the Legislature. Standing and special committees of the legislature shall meet and conduct official business pursuant to such rules as the legislature may adopt. [1979 Substitute Senate Joint Resolution No. 110, p 2286. Approved November 6, 1979.]

### AMENDMENT 69

Art. 2 Section 13 LIMITATION ON MEMBERS HOLDING OFFICE IN THE STATE. No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created during the term for which he was elected. Any member of the legislature who is appointed or elected to any civil office in the state, the emoluments of which have been increased during his legislative term of office, shall be compensated

for the initial term of the civil office at the level designated prior to the increase in emoluments. [1979 Senate Joint Resolution No. 112, p 2287. Approved November 6, 1979.]

## AMENDMENT 70

Article 8 was amended by adding the following section:

Art. 8 Section 10 RESIDENTIAL ENERGY CONSERVATION. Notwithstanding the provisions of section 7 of this Article, until January 1, 1990 any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of energy may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of energy to assist the owners of residential structures in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of energy in such structures. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the residential structure benefited. Except as to contracts entered into prior thereto, this amendment to the state Constitution shall be null and void as of January 1, 1990 and shall have no further force or effect after that date. [1979 Substitute Senate Joint Resolution No. 120, p 2288. Approved November 6, 1979.]

Art. 8 Section 10 was later amended by Amendments 82, 86, and 91.

## AMENDMENT 71

Article 4 was amended by adding the following section:

Art. 4 Section 31 JUDICIAL QUALIFICATIONS COMMISSION - REMOVAL, CENSURE, SUSPENSION, OR RETIREMENT OF JUDGES OR JUSTICES. There shall be a judicial qualifications commission consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and two persons who are not attorneys appointed by the governor and confirmed by the senate.

The supreme court may censure, suspend, or remove a judge or justice for violating a rule of judicial conduct and may retire a judge or justice for disability which is permanent or is likely to become permanent and which seriously interferes with the performance of judicial duties. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease.

The supreme court shall specify the effect upon salary when disciplinary action other than removal is taken. The supreme court may not discipline or retire a judge or justice until the judicial qualifications commission recommends after notice and hearing that action be taken and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against a judge or justice.

The legislature shall provide for commissioners' terms of office and compensation. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality

of proceedings. [1980 Substitute House Joint Resolution No. 37, p 652. Approved November 4, 1980.]

Art. 4 Section 31 was later amended by Amendments 77, 85, and 97.

## AMENDMENT 72

Art. 2 Section 1 LEGISLATIVE POWERS, WHERE VESTED. The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section, or part of any bill, act, or law passed by the legislature.

(a) Initiative: The first power reserved by the people is the initiative. Every such petition shall include the full text of the measure so proposed. In the case of initiatives to the legislature and initiatives to the people, the number of valid signatures of legal voters required shall be equal to eight percent of the votes cast for the office of governor at the last gubernatorial election preceding the initial filing of the text of the initiative measure with the secretary of state.

Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall certify the results within forty days of the filing. If certification is not complete by the date that the legislature convenes, he shall provisionally certify the measure pending final certification of the measure. Such initiative measures, whether certified or provisionally certified, shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made pub-

lic. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.

(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted: *Provided,* That the legislature may not order a referendum on any initiative measure enacted by the legislature under the foregoing subsection (a). The number of valid signatures of registered voters required on a petition for referendum of an act of the legislature or any part thereof, shall be equal to or exceeding four percent of the votes cast for the office of governor at the last gubernatorial election preceding the filing of the text of the referendum measure with the secretary of state.

(c) No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment: *Provided,* That any such act, law, or bill may be amended within two years after such enactment at any regular or special session of the legislature by a vote of two-thirds of all the members elected to each house with full compliance with section 12, Article III, of the Washington Constitution, and no amendatory law adopted in accordance with this provision shall be subject to referendum. But such enactment may be amended or repealed at any general regular or special election by direct vote of the people thereon.

(d) The filing of a referendum petition against one or more items, sections, or parts of any act, law, or bill shall not delay the remainder of the measure from becoming operative. Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. The veto power of the governor shall not extend to measures initiated by or referred to the people. All elections on measures referred to the people of the state shall be had at the next succeeding regular general election following the filing of the measure with the secretary of state, except when the legislature shall order a special election. Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon: *Provided,* That the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. The style of all bills proposed by initiative petition shall be: "Be it enacted by the people of the State of Washington." This section shall not be construed to deprive any member of the legislature of the right to introduce any measure. All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation.

(e) The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the Constitution referred to the people with arguments for and against the laws and amendments so referred. The secretary of state shall send one copy of the publication to each individual place of residence in the state and shall make such additional distribution as he shall determine necessary to reasonably assure that each voter will have an opportunity to study the measures prior to election. [1981 Substitute Senate Joint Resolution No. 133, p 1796. Approved November 3, 1981.]

Prior amendment of Art. 2 Section 1, see Amendment 7.

Addition of subsection (e) to Art. 2 Section 1, see Amendment 36.

Art. 2 Section 1(a). INITIATIVE AND REFERENDUM, SIGNATURES RE-QUIRED. [Stricken by 1981 Substitute Senate Joint Resolution No. 133, p 1796. Approved November 3, 1981.]

Adoption of Art. 2 Section 1(a), see Amendment 30.

## AMENDMENT 73

The Constitution was amended by adding the following new article and section 1 thereof:

### ARTICLE XXXII
### SPECIAL REVENUE FINANCING

Art. 32 Section 1 SPECIAL REVENUE FINANCING. The legislature may enact laws authorizing the state, counties, cities, towns, port districts, or public corporations established thereby to issue nonrecourse revenue bonds or other nonrecourse revenue obligations and to apply the proceeds thereof in the manner and for the purposes heretofore or hereafter authorized by law, subject to the following limitations:

(a) Nonrecourse revenue bonds and other nonrecourse revenue obligations issued pursuant to this section shall be payable only from money or other property received as a result of projects financed by the nonrecourse revenue bonds or other nonrecourse revenue obligations and from money and other property received from private sources.

(b) Nonrecourse revenue bonds and other nonrecourse revenue obligations issued pursuant to this section shall not be payable from or secured by any tax funds or governmental revenue or by all or part of the faith and credit of the state or any unit of local government.

(c) Nonrecourse revenue bonds or other nonrecourse revenue obligations issued pursuant to this section may be issued only if the issuer certifies that it reasonably believes that the interest paid on the bonds or obligations will be exempt from income taxation by the federal government.

(d) Nonrecourse revenue bonds or other nonrecourse revenue obligations may only be used to finance industrial development projects as defined in legislation.

(e) The state, counties, cities, towns, port districts, or public corporations established thereby, shall never exercise their respective attributes of sovereignty, including but not limited to, the power to tax, the power of eminent domain, and the police power on behalf

of any industrial development project authorized pursuant to this section.

After the initial adoption of a law by the legislature authorizing the issuance of nonrecourse revenue bonds or other nonrecourse revenue obligations, no amendment to such act which expands the definition of industrial development project shall be valid unless the amendment is enacted by a favorable vote of three-fifths of the members elected to each house of the legislature and is subject to referendum petition.

Sections 5 and 7 of Article VIII and section 9 of Article XII shall not be construed as a limitation upon the authority granted by this section. The proceeds of revenue bonds and other revenue obligations issued pursuant to this section for the purpose of financing privately owned property or loans to private persons or corporations shall be subject to audit by the state but shall not otherwise be deemed to be public money or public property for purposes of this Constitution. This section is supplemental to and shall not be construed as a repeal of or limitation on any other authority lawfully exercisable under the Constitution and laws of this state, including, among others, any existing authority to issue revenue bonds. [1981 Substitute House Joint Resolution No. 7, p 1794. Approved November 3, 1981.]

The name of this Article has been supplied by the reviser.

## AMENDMENT 74

Article 2 was amended by adding the following section:

Art. 2 Section 43 REDISTRICTING. (1) In January of each year ending in one, a commission shall be established to provide for the redistricting of state legislative and congressional districts.

(2) The commission shall be composed of five members to be selected as follows: The legislative leader of the two largest political parties in each house of the legislature shall appoint one voting member to the commission by January 15th of each year ending in one. By January 31st of each year ending in one, the four appointed members, by an affirmative vote of at least three, shall appoint the remaining member. The fifth member of the commission, who shall be nonvoting, shall act as its chairperson. If any appointing authority fails to make the required appointment by the date established by this subsection, within five days after that date the supreme court shall make the required appointment.

(3) No elected official and no person elected to legislative district, county, or state political party office may serve on the commission. A commission member shall not have been an elected official and shall not have been an elected legislative district, county, or state political party officer within two years of his or her appointment to the commission. The provisions of this subsection do not apply to the office of precinct committee person.

(4) The legislature shall enact laws providing for the implementation of this section, to include additional qualifications for commissioners and additional standards to govern the commission. The legislature shall appropriate funds to enable the commission to carry out its duties.

(5) Each district shall contain a population, excluding nonresident military personnel, as nearly equal as practicable to the population of any other district. To the extent reasonable, each district

shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries. The commission's plan shall not provide for a number of legislative districts different than that established by the legislature. The commission's plan shall not be drawn purposely to favor or discriminate against any political party or group.

(6) The commission shall complete redistricting as soon as possible following the federal decennial census, but no later than January 1st of each year ending in two. At least three of the voting members shall approve such a redistricting plan. If three of the voting members of the commission fail to approve a plan within the time limitations provided in this subsection, the supreme court shall adopt a plan by April 30th of the year ending in two in conformance with the standards set forth in subsection (5) of this section.

(7) The legislature may amend the redistricting plan but must do so by a two-thirds vote of the legislators elected or appointed to each house of the legislature. Any amendment must have passed both houses by the end of the thirtieth day of the first session convened after the commission has submitted its plan to the legislature. After that day, the plan, with any legislative amendments, constitutes the state districting law.

(8) The legislature shall enact laws providing for the reconvening of a commission for the purpose of modifying a districting law adopted under this section. Such reconvening requires a two-thirds vote of the legislators elected or appointed to each house of the legislature. The commission shall conform to the standards prescribed under subsection (5) of this section and any other standards or procedures that the legislature may provide by law. At least three of the voting members shall approve such a modification. Any modification adopted by the commission may be amended by a two-thirds vote of the legislators elected and appointed to each house of the legislature. The state districting law shall include the modifications with amendments, if any.

(9) The legislature shall prescribe by law the terms of commission members and the method of filling vacancies on the commission.

(10) The supreme court has original jurisdiction to hear and decide all cases involving congressional and legislative redistricting.

(11) Legislative and congressional districts may not be changed or established except pursuant to this section. A districting plan and any legislative amendments to the plan are not subject to Article III, section 12 of this Constitution. [1983 Substitute Senate Joint Resolution No. 103, p 2202. Approved November 8, 1983.]

Art. 2 Section 43 was later amended by Amendment 108.

Art. 2 Section 3 THE CENSUS. [Repealed by 1983 Substitute Senate Joint Resolution No. 103, p 2202. Approved November 8, 1983.]

Art. 27 Section 13 REPRESENTATION IN CONGRESS. [Repealed by 1983 Substitute Senate Joint Resolution No. 103, p 2202. Approved November 8, 1983.]


## AMENDMENT 75


Art. 29 Section 1 MAY BE INVESTED AS AUTHORIZED BY LAW. Notwithstanding the provisions of sections 5, and 7 of Article VIII and sec-

tion 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund or industrial insurance trust fund may be invested as authorized by law. [1985 House Joint Resolution No. 12, p 2398. Approved November 5, 1985.]

Prior amendment of Art. 29 Section 1, see Amendment 49.

Art. 29 Section 1 was later amended by Amendment 93.

## AMENDMENT 76

Article 8 was amended by adding the following section:
Art. 8 Section 11 AGRICULTURAL COMMODITY ASSESSMENTS - DEVELOPMENT, PROMOTION, AND HOSTING. The use of agricultural commodity assessments by agricultural commodity commissions in such manner as may be prescribed by the legislature for agricultural development or trade promotion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 5 of this article. [1985 House Joint Resolution No. 42, p 2402. Approved November 5, 1985.]

## AMENDMENT 77

Art. 4 Section 31 COMMISSION ON JUDICIAL CONDUCT - REMOVAL, CENSURE, SUSPENSION, OR RETIREMENT OF JUDGES OR JUSTICES - PROCEEDINGS. There shall be a commission on judicial conduct consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and four persons who are not attorneys appointed by the governor and confirmed by the senate.

The supreme court may censure, suspend, or remove a judge or justice for violating a rule of judicial conduct and may retire a judge or justice for disability which is permanent or is likely to become permanent and which seriously interferes with the performance of judicial duties. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease.

The supreme court shall specify the effect upon salary when disciplinary action other than removal is taken. The supreme court may not discipline or retire a judge or justice until the commission on judicial conduct recommends after notice and hearing that action be taken and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against a judge or justice.

Whenever the commission receives a complaint against a judge or justice, it shall first conduct proceedings for the purpose of determining whether sufficient reason exists for conducting a hearing or hearings to deal with the accusations. These initial proceedings shall be confidential, unless confidentiality is waived by the judge or justice, but all subsequent hearings conducted by the commission shall be open to members of the public.

Whenever the commission adopts a recommendation that a judge or justice be removed, the judge or justice shall be suspended immediately, with salary, from his or her judicial position until a final determination is made by the supreme court.

The legislature shall provide for commissioners' terms of office and compensation. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings. [1986 Senate Joint Resolution No. 136, p 1532. Approved November 4, 1986.]

Prior amendment of Art. 4 Section 31, see Amendment 71.

Art. 4 Section 31 was later amended by Amendments 85 and 97.

## AMENDMENT 78

Art. 28 Section 1 SALARIES FOR LEGISLATORS, ELECTED STATE OFFICIALS, AND JUDGES – INDEPENDENT COMMISSION - REFERENDUM. Salaries for members of the legislature, elected officials of the executive branch of state government, and judges of the state's supreme court, court of appeals, superior courts, and district courts shall be fixed by an independent commission created and directed by law to that purpose. No state official, public employee, or person required by law to register with a state agency as a lobbyist, or immediate family member of the official, employee, or lobbyist, may be a member of that commission.

As used in this section the phrase "immediate family" has the meaning that is defined by law.

Any change of salary shall be filed with the secretary of state and shall become law ninety days thereafter without action of the legislature or governor, but shall be subject to referendum petition by the people, filed within the ninety-day period. Referendum measures under this section shall be submitted to the people at the next following general election, and shall be otherwise governed by the provisions of this Constitution generally applicable to referendum measures. The salaries fixed pursuant to this section shall supersede any other provision for the salaries of members of the legislature, elected officials of the executive branch of state government, and judges of the state's supreme court, court of appeals, superior courts, and district courts. The salaries for such officials in effect on January 12, 1987, shall remain in effect until changed pursuant to this section.

After the initial adoption of a law by the legislature creating the independent commission, no amendment to such act which alters the composition of the commission shall be valid unless the amendment is enacted by a favorable vote of two-thirds of the members elected to each house of the legislature and is subject to referendum petition.

The provisions of section 14 of Article IV, sections 14, 16, 17, 19, 20, 21, and 22 of Article III, and section 23 of Article II, insofar as they are inconsistent herewith, are hereby superseded. The provisions of section 1 of Article II relating to referendum procedures, insofar as they are inconsistent herewith, are hereby superseded with regard to the salaries governed by this section. [1986 Substitute House Joint Resolution No. 49, p 1529. Approved November 4, 1986.]

Prior amendment of Art. 28 Section 1, see Amendment 20.

## AMENDMENT 79

Art. 7 Section 2 - LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one per centum of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of persons voting "yes" on the proposition shall constitute three-fifths of a number equal to forty per centum of the total votes cast in such taxing district at the last preceding general election when the number of electors voting on the proposition does not exceed forty per centum of the total votes cast in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the electors thereof voting on the proposition to levy when the number of electors voting on the proposition exceeds forty percentum of the total votes cast in such taxing district in the last preceding general election: *Provided,* That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a two year period and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities may provide such support for a period not exceeding six years;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of persons voting on the proposition shall constitute not less than forty per centum of the total number of votes cast in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, *And provided further,* That the provisions of this sec-

tion shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934; or for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1986 House Joint Resolution No. 55, p 1530. Approved November 4, 1986.]

Prior amendment of Art. 7 Section 2, see Amendments 17, 55, 59, and 64.

Art. 7 Section 2 was later amended by Amendments 90, 95, and 101.

### AMENDMENT 80

Art. 4 Section 7 EXCHANGE OF JUDGES - JUDGE PRO TEMPORE. The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his duty to do so. A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case. However, if a previously elected judge of the superior court re- tires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement. [1987 Senate Joint Resolution No. 8207, p 2815. Approved November 3, 1987.]

Art. 4 Section 7 was later amended by Amendment 94.

### AMENDMENT 81

Art. 7 Section 1 TAXATION. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and in- clude everything, whether tangible or intangible, subject to owner- ship. All real estate shall constitute one class: *Provided,* That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three thousand ($3,000.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner. [1988 House Joint Resolution No. 4222, p 1551. Approved November 8, 1988.]

Prior amendment to Art. 7 Section 1, see Amendments 14 and 98.

## AMENDMENT 82

Art. 8 Section 10 RESIDENTIAL ENERGY CONSERVATION. Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of energy may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of energy to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of energy in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another. [1988 House Joint Resolution No. 4223, p 1552. Approved November 8, 1988.]

Prior amendment to Art. 8 Section 10, see Amendment 70.

Art. 8 Section 10 was later amended by Amendments 86 and 91.

## AMENDMENT 83

Art. 6 Section 3 WHO DISQUALIFIED. All persons convicted of infamous crime unless restored to their civil rights and all persons while they are judicially declared mentally incompetent are excluded from the elective franchise.

Art. 13 Section 1 EDUCATIONAL, REFORMATORY, AND PENAL INSTITUTIONS. Educational, reformatory, and penal institutions; those for the benefit of youth who are blind or deaf or otherwise disabled; for persons who are mentally ill or developmentally disabled; and such other institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be provided by law. The regents, trustees, or commissioners of all such institutions existing at the time of the adoption of this Constitution, and of such as shall thereafter be established by law, shall be appointed by the governor, by and with the advice and consent of the senate; and upon all nominations made by the governor, the question shall be taken by ayes and noes, and entered upon the journal. [1988 House Joint Resolution No. 4231, p 1553. Approved November 8, 1988.]

## AMENDMENT 84

Art. 1 Section 35 VICTIMS OF CRIMES - RIGHTS. Effective law enforcement depends on cooperation from victims of crime. To ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect, victims of crime are hereby granted the following basic and fundamental rights.

Upon notifying the prosecuting attorney, a victim of a crime charged as a felony shall have the right to be informed of and, subject to the discretion of the individual presiding over the trial or

court proceedings, attend trial and all other court proceedings the defendant has the right to attend, and to make a statement at sentencing and at any proceeding where the defendant's release is considered, subject to the same rules of procedure which govern the defendant's rights. In the event the victim is deceased, incompetent, a minor, or otherwise unavailable, the prosecuting attorney may identify a representative to appear to exercise the victim's rights. This provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding nor a basis for providing a victim or the victim's representative with court appointed counsel. [1989 Senate Joint Resolution No. 8200, p 2999. Approved November 7, 1989.]

## AMENDMENT 85

Art. 4 Section 31 COMMISSION ON JUDICIAL CONDUCT. (1) There shall be a commission on judicial conduct, existing as an independent agency of the judicial branch, and consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and six persons who are not attorneys appointed by the governor.

(2) Whenever the commission receives a complaint against a judge or justice, or otherwise has reason to believe that a judge or justice should be admonished, reprimanded, censured, suspended, removed, or retired, the commission shall first investigate the complaint or belief and then conduct initial proceedings for the purpose of determining whether probable cause exists for conducting a public hearing or hearings to deal with the complaint or belief. The investigation and initial proceedings shall be confidential. Upon beginning an initial proceeding, the commission shall notify the judge or justice of the existence of and basis for the initial proceeding.

(3) Whenever the commission concludes, based on an initial proceeding, that there is probable cause to believe that a judge or justice has violated a rule of judicial conduct or that the judge or justice suffers from a disability which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties, the commission shall conduct a public hearing or hearings and shall make public all those records of the initial proceeding that provide the basis for its conclusion. If the commission concludes that there is not probable cause, it shall notify the judge or justice of its conclusion.

(4) Upon the completion of the hearing or hearings, the commission in open session shall either dismiss the case, or shall admonish, reprimand, or censure the judge or justice, or shall censure the judge or justice and recommend to the supreme court the suspension or removal of the judge or justice, or shall recommend to the supreme court the retirement of the judge or justice. The commission may not recommend suspension or removal unless it censures the judge or justice for the violation serving as the basis for the recommendation. The commission may recommend retirement of a judge or justice for a disability which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties.

(5) Upon the recommendation of the commission, the supreme court may suspend, remove, or retire a judge or justice. The office of a judge or justice retired or removed by the supreme court becomes va-

cant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease. The supreme court shall specify the effect upon salary when it suspends a judge or justice. The supreme court may not suspend, remove, or retire a judge or justice until the commission, after notice and hearing, recommends that action be taken, and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against the judge or justice.

(6) Within thirty days after the commission admonishes, reprimands, or censures a judge or justice, the judge or justice shall have a right of appeal de novo to the supreme court.

(7) Any matter before the commission or supreme court may be disposed of by a stipulation entered into in a public proceeding. The stipulation shall be signed by the judge or justice and the commission or court. The stipulation may impose any terms and conditions deemed appropriate by the commission or court. A stipulation shall set forth all material facts relating to the proceeding and the conduct of the judge or justice.

(8) Whenever the commission adopts a recommendation that a judge or justice be removed, the judge or justice shall be suspended immediately, with salary, from his or her judicial position until a final determination is made by the supreme court.

(9) The legislature shall provide for commissioners' terms of office and compensation. The commission shall employ one or more investigative officers with appropriate professional training and experience. The investigative officers of the commission shall report directly to the commission. The commission shall also employ such administrative or other staff as are necessary to manage the affairs of the commission.

(10) The commission shall, to the extent that compliance does not conflict with this section, comply with laws of general applicability to state agencies with respect to rule-making procedures, and with respect to public notice of and attendance at commission proceedings other than initial proceedings. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings. [1989 Substitute Senate Joint Resolution No. 8202, p 3000. Approved November 7, 1989.]

Prior amendment of Art. 4 Section 31, see Amendments 71 and 77.

Art. 4 Section 31 was later amended by Amendment 97.

## AMENDMENT 86

Art. 8 Section 10 ENERGY AND WATER CONSERVATION ASSISTANCE. Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water or energy may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of water or energy to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water or energy in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against

the structure benefited or a security interest in the equipment bene-
fited. Any financing for energy conservation authorized by this arti-
cle shall only be used for conservation purposes in existing struc-
tures and shall not be used for any purpose which results in a conver-
sion from one energy source to another. [1989 Senate Joint Resolution
No. 8210, p 3003. Approved November 7, 1989.]

Prior amendment of Art. 8 Section 10, see Amendments 70 and 82.

Art. 8 Section 10 was later amended by Amendment 91.

## AMENDMENT 87

Art. 4 Section 6 JURISDICTION OF SUPERIOR COURTS. Superior courts
and district courts have concurrent jurisdiction in cases in equity.
The superior court shall have original jurisdiction in all cases at
law which involve the title or possession of real property, or the le-
gality of any tax, impost, assessment, toll, or municipal fine, and in
all other cases in which the demand or the value of the property in
controversy amounts to three thousand dollars or as otherwise deter-
mined by law, or a lesser sum in excess of the jurisdiction granted to
justices of the peace and other inferior courts, and in all criminal
cases amounting to felony, and in all cases of misdemeanor not other-
wise provided for by law; of actions of forcible entry and detainer;
of proceedings in insolvency; of actions to prevent or abate a nui-
sance; of all matters of probate, of divorce, and for annulment of
marriage; and for such special cases and proceedings as are not other-
wise provided for. The superior court shall also have original juris-
diction in all cases and of all proceedings in which jurisdiction
shall not have been by law vested exclusively in some other court; and
said court shall have the power of naturalization and to issue papers
therefor. They shall have such appellate jurisdiction in cases arising
in justices' and other inferior courts in their respective counties as
may be prescribed by law. They shall always be open, except on nonju-
dicial days, and their process shall extend to all parts of the state.
Said courts and their judges shall have power to issue writs of manda-
mus, quo warranto, review, certiorari, prohibition, and writs of ha-
beas corpus, on petition by or on behalf of any person in actual cus-
tody in their respective counties. Injunctions and writs of prohibi-
tion and of habeas corpus may be issued and served on legal holidays
and nonjudicial days. [1993 House Joint Resolution No. 4201, p 3063.
Approved November 2, 1993.]

Prior amendment of Art. 4 Section 6, see Amendments 28 and 65.

## AMENDMENT 88

Art. 1 Section 11 RELIGIOUS FREEDOM. Absolute freedom of con-
science in all matters of religious sentiment, belief and worship,
shall be guaranteed to every individual, and no one shall be molested
or disturbed in person or property on account of religion; but the
liberty of conscience hereby secured shall not be so construed as to
excuse acts of licentiousness or justify practices inconsistent with
the peace and safety of the state. No public money or property shall
be appropriated for or applied to any religious worship, exercise or

instruction, or the support of any religious establishment: PROVIDED, HOWEVER, That this article shall not be so construed as to forbid the employment by the state of a chaplain for such of the state custodial, correctional, and mental institutions, or by a county's or public hospital district's hospital, health care facility, or hospice, as in the discretion of the legislature may seem justified. No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony. [1993 House Joint Resolution No. 4200, p 3062. Approved November 2, 1993.]

Prior amendment of Art. 1 Section 11, see Amendments 4, 34, and 88.

## AMENDMENT 89

Art. 4 Section 3 ELECTION AND TERMS OF SUPREME COURT JUDGES. The judges of the supreme court shall be elected by the qualified electors of the state at large at the general state election at the times and places at which state officers are elected, unless some other time be provided by the legislature. The first election of judges of the supreme court shall be at the election which shall be held upon the adoption of this Constitution and the judges elected thereat shall be classified by lot, so that two shall hold their office for the term of three years, two for the term of five years, and one for the term of seven years. The lot shall be drawn by the judges who shall for that purpose assemble at the seat of government, and they shall cause the result thereof to be certified to the secretary of state, and filed in his office. The supreme court shall select a chief justice from its own membership to serve for a four-year term at the pleasure of a majority of the court as prescribed by supreme court rule. The chief justice shall preside at all sessions of the supreme court. In case of the absence of the chief justice, the majority of the remaining court shall select one of their members to serve as acting chief justice. After the first election the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election. If a vacancy occur in the office of a judge of the supreme court the governor shall only appoint a person to ensure the number of judges as specified by the legislature, to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term. The term of office of the judges of the supreme court, first elected, shall commence as soon as the state shall have been admitted into the Union, and continue for the term herein provided, and until their successors are elected and qualified. The sessions of the supreme court shall be held at the seat of government until otherwise provided by law. [1995 Substitute Senate Joint Resolution No. 8210, p 2905. Approved November 7, 1995.]

## AMENDMENT 90

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money: *Provided, however,* That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only as follows:

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of voters voting "yes" on the proposition shall constitute three-fifths of a number equal to forty percent of the total number of voters voting in such taxing district at the last preceding general election when the number of voters voting on the proposition does not exceed forty percent of the total number of voters voting in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy when the number of voters voting on the proposition exceeds forty percent of the number of voters voting in such taxing district in the last preceding general election: *Provided,* That notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools may provide such support for a period of up to four years and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities may provide such support for a period not exceeding six years;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the voters of the taxing district voting on the proposition to issue such bonds and to pay the principal and interest thereon by annual tax levies in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of voters voting on the proposition shall constitute not less than forty percent of the total number of voters voting in such taxing district at the last preceding general election: *Provided,* That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, *And provided further,* That the provisions of this

12/27/2016 9:01 AM                    [ 181 ]                    Amendment 90

section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;
(c) By the state or any taxing district for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [1997 House Joint Resolution No. 4208, p 3063. Approved November 4, 1997.]

Prior amendment of Art. 7 Section 2, see Amendments 17, 55, 59, 64, and 79.

Art. 7 Section 2 was later amended by Amendments 95 and 101.

## AMENDMENT 91

Art. 8 Section 10 ENERGY, WATER, OR STORMWATER OR SEWER SERVICES CONSERVATION ASSISTANCE. Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water, energy, or stormwater or sewer services may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of water, energy, or stormwater or sewer services to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water, energy, or stormwater or sewer services in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing for energy conservation authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another. [1997 House Joint Resolution No. 4209, p 3065. Approved November 4, 1997.]

Prior amendment of Art. 8 Section 10, see Amendments 70, 82, and 86.

## AMENDMENT 92

Art. 8 Section 1 STATE DEBT. (a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.
(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.
(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or

otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority.

(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.

(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (h) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: *Provided,* That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purpo-

12/27/2016 9:01 AM                    [ 183 ]                    Amendment 92

ses pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [1999 Senate Joint Resolution No. 8206, p 2387. Approved November 2, 1999.]

Prior amendment of Art. 8 Section 1, see Amendment 60.

Art. 8 Section 1 was later amended by Amendments 103 and 107.

## AMENDMENT 93

Art. 29 Section 1 MAY BE INVESTED AS AUTHORIZED BY LAW. Notwithstanding the provisions of sections 5, and 7 of Article VIII and section 9 of Article XII or any other section or article of the Constitution of the state of Washington, the moneys of any public pension or retirement fund, industrial insurance trust fund, or fund held in trust for the benefit of persons with developmental disabilities may be invested as authorized by law. [2000 Senate Joint Resolution No. 8214, p 1919. Approved November 7, 2000.]

Prior amendment of Art. 29 Section 1, see Amendments 49 and 75.

## AMENDMENT 94

Art. 4 Section 7 EXCHANGE OF JUDGES - JUDGE PRO TEMPORE. The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his or her duty to do so. A case in the superior court may be tried by a judge pro tempore either with the agreement of the parties if the judge pro tempore is a member of the bar, is agreed upon in writing by the parties litigant or their attorneys of record, and is approved by the court and sworn to try the case; or without the agreement of the parties if the judge pro tempore is a sitting elected judge and is acting as a judge pro tempore pursuant to supreme court rule. The supreme court rule must require assignments of judges pro tempore based on the judges' experience and must provide for the right, exercisable once during a case, to a change of judge pro tempore. Such right shall be in addition to any other right provided by law. However, if a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement. [2001 Engrossed Senate Joint Resolution No. 8208, p 2327. Approved November 6, 2001.]

## AMENDMENT 95

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money: Provided, however, That nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only as follows:

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy such additional tax submitted not more than twelve months prior to the date on which the proposed levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of voters voting "yes" on the proposition shall constitute three-fifths of a number equal to forty percent of the total number of voters voting in such taxing district at the last preceding general election when the number of voters voting on the proposition does not exceed forty percent of the total number of voters voting in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy when the number of voters voting on the proposition exceeds forty percent of the number of voters voting in such taxing district in the last preceding general election: Provided, That notwithstanding any

other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools or fire protection districts may provide such support for a period of up to four years and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities or fire facilities may provide such support for a period not exceeding six years;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the voters of the taxing district voting on the proposition to issue such bonds and to pay the principal and interest thereon by annual tax levies in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of voters voting on the proposition shall constitute not less than forty percent of the total number of voters voting in such taxing district at the last preceding general election: Provided, That any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein, And provided further, That the provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [2002 House Joint Resolution No. 4220, p 2203. Approved November 5, 2002.]

Prior amendment of Art. 7 Section 2, see Amendments 17, 55, 59, 64, 79, and 90.

## AMENDMENT 96

Art. 2 Section 15 VACANCIES IN LEGISLATURE AND IN PARTISAN COUNTY ELECTIVE OFFICE. Such vacancies as may occur in either house of the legislature or in any partisan county elective office shall be filled by appointment by the county legislative authority of the county in which the vacancy occurs: *Provided,* That the person appointed to fill the vacancy must be from the same legislative district, county, or county commissioner or council district and the same political party as the legislator or partisan county elective officer whose office has been vacated, and shall be one of three persons who shall be nominated by the county central committee of that party, and in case a majority of the members of the county legislative authority do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district, county, or county commissioner or council district and of the same political party as the legislator or partisan county elective officer whose office has been vacated, and the person so appointed shall hold office until his or her successor is elected at the

next general election, and has qualified: *Provided,* That in case of a vacancy occurring after the general election in a year that the office appears on the ballot and before the start of the next term, the term of the successor who is of the same party as the incumbent may commence once he or she has qualified and shall continue through the term for which he or she was elected: *Provided,* That in case of a vacancy occurring in the office of joint senator, or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county legislative authorities of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the legislator whose office has been vacated, and in case a majority of the members of the county legislative authority do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the legislator whose office has been vacated. [2003 House Joint Resolution No. 4206, p 2819. Approved November 4, 2003.]

Prior amendment of Art. 2 Section 15, see Amendments 13, 32, and 52.

## AMENDMENT 97

Art. 4 Section 31 COMMISSION ON JUDICIAL CONDUCT. (1) There shall be a commission on judicial conduct, existing as an independent agency of the judicial branch, and consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the limited jurisdiction court judges, two persons admitted to the practice of law in this state selected by the state bar association, and six persons who are not attorneys appointed by the governor.

(2) Whenever the commission receives a complaint against a judge or justice, or otherwise has reason to believe that a judge or justice should be admonished, reprimanded, censured, suspended, removed, or retired, the commission shall first investigate the complaint or belief and then conduct initial proceedings for the purpose of determining whether probable cause exists for conducting a public hearing or hearings to deal with the complaint or belief. The investigation and initial proceedings shall be confidential. Upon beginning an initial proceeding, the commission shall notify the judge or justice of the existence of and basis for the initial proceeding.

(3) Whenever the commission concludes, based on an initial proceeding, that there is probable cause to believe that a judge or justice has violated a rule of judicial conduct or that the judge or justice suffers from a disability which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties, the commission shall conduct a public hearing or hearings and shall make public all those records of the initial proceeding that provide the basis for its conclusion. If the commission concludes that there is not probable cause, it shall notify the judge or justice of its conclusion.

(4) Upon the completion of the hearing or hearings, the commission in open session shall either dismiss the case, or shall admonish,

reprimand, or censure the judge or justice, or shall censure the judge or justice and recommend to the supreme court the suspension or removal of the judge or justice, or shall recommend to the supreme court the retirement of the judge or justice. The commission may not recommend suspension or removal unless it censures the judge or justice for the violation serving as the basis for the recommendation. The commission may recommend retirement of a judge or justice for a disability which is permanent or likely to become permanent and which seriously interferes with the performance of judicial duties.

(5) Upon the recommendation of the commission, the supreme court may suspend, remove, or retire a judge or justice. The office of a judge or justice retired or removed by the supreme court becomes vacant, and that person is ineligible for judicial office until eligibility is reinstated by the supreme court. The salary of a removed judge or justice shall cease. The supreme court shall specify the effect upon salary when it suspends a judge or justice. The supreme court may not suspend, remove, or retire a judge or justice until the commission, after notice and hearing, recommends that action be taken, and the supreme court conducts a hearing, after notice, to review commission proceedings and findings against the judge or justice.

(6) Within thirty days after the commission admonishes, reprimands, or censures a judge or justice, the judge or justice shall have a right of appeal de novo to the supreme court.

(7) Any matter before the commission or supreme court may be disposed of by a stipulation entered into in a public proceeding. The stipulation shall be signed by the judge or justice and the commission or court. The stipulation may impose any terms and conditions deemed appropriate by the commission or court. A stipulation shall set forth all material facts relating to the proceeding and the conduct of the judge or justice.

(8) Whenever the commission adopts a recommendation that a judge or justice be removed, the judge or justice shall be suspended immediately, with salary, from his or her judicial position until a final determination is made by the supreme court.

(9) The legislature shall provide for commissioners' terms of office and compensation. The commission shall employ one or more investigative officers with appropriate professional training and experience. The investigative officers of the commission shall report directly to the commission. The commission shall also employ such administrative or other staff as are necessary to manage the affairs of the commission.

(10) The commission shall, to the extent that compliance does not conflict with this section, comply with laws of general applicability to state agencies with respect to rule-making procedures, and with respect to public notice of and attendance at commission proceedings other than initial proceedings. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings. [2005 Senate Joint Resolution No. 8207, pp 2799, 2800. Approved November 8, 2005.]

Prior amendment of Art. 4 Section 31, see Amendments 85, 77, and 71.

## AMENDMENT 98

Art. 7 Section 1 TAXATION. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: Provided, That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The legislature shall have power, by appropriate legislation, to exempt personal property to the amount of fifteen thousand ($15,000.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner. [2006 House Joint Resolution No. 4223, p 2117. Approved November 7, 2006.]

Prior amendment of Art. 7 Section 1, see Amendments 14 and 81.

## AMENDMENT 99

Article 7 was amended by adding the following section:
Art. 7 Section 12 BUDGET STABILIZATION ACCOUNT. (a) A budget stabilization account shall be established and maintained in the state treasury.

(b) By June 30th of each fiscal year, an amount equal to one percent of the general state revenues for that fiscal year shall be transferred to the budget stabilization account. Nothing in this subsection (b) shall prevent the appropriation of additional amounts to the budget stabilization account.

(c) Each fiscal quarter, the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity, shall estimate state employment growth for the current and next two fiscal years.

(d) Moneys may be withdrawn and appropriated from the budget stabilization account as follows:

(i) If the governor declares a state of emergency resulting from a catastrophic event that necessitates government action to protect life or public safety, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account, via separate legislation setting forth the nature of the emergency and containing an appropriation limited to the above-authorized purposes as contained in the declaration, by a favorable vote of a majority of the members elected to each house of the legislature.

(ii) If the employment growth forecast for any fiscal year is estimated to be less than one percent, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account by the favorable vote of a majority of the members elected to each house of the legislature.

(iii) Any amount may be withdrawn and appropriated from the budget stabilization account at any time by the favorable vote of at least three-fifths of the members of each house of the legislature.

(e) Amounts in the budget stabilization account may be invested as provided by law and retained in that account. When the balance in the budget stabilization account, including investment earnings, equals more than ten percent of the estimated general state revenues in that fiscal year, the legislature by the favorable vote of a majority of the members elected to each house of the legislature may withdraw and appropriate the balance to the extent that the balance exceeds ten percent of the estimated general state revenues. Appropriations under this subsection (e) may be made solely for deposit to the education construction fund.

(f) As used in this section, "general state revenues" has the meaning set forth in Article VIII, section 1 of the Constitution. Forecasts and estimates shall be made by the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity.

(g) The legislature shall enact appropriate laws to carry out the purposes of this section.

(h) This section takes effect July 1, 2008. [2007 Engrossed Substitute Senate Joint Resolution No. 8206, pp 3146, 3147. Approved November 6, 2007.]

Art. 7 Section 12 was later amended by Amendment 106.

## AMENDMENT 100

Art. 2 Section 29 CONVICT LABOR. The labor of inmates of this state shall not be let out by contract to any person, copartnership, company, or corporation, except as provided by statute, and the legislature shall by law provide for the working of inmates for the benefit of the state, including the working of inmates in state-run inmate labor programs. Inmate labor programs provided by statute that are operated and managed, in total or in part, by any profit or nonprofit entities shall be operated so that the programs do not unfairly compete with Washington businesses as determined by law. [2007 Senate Joint Resolution No. 8212, p 3143. Approved November 6, 2007.]

## AMENDMENT 101

Art. 7 Section 2 LIMITATION ON LEVIES. Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money. Nothing herein shall prevent levies at the rates now provided by law by or for any port or public utility district. The term "taxing district" for the purposes of this section shall mean any political subdivision, municipal corporation, district, or other governmental agency authorized by law to levy, or have levied for it, ad valorem taxes on property, other than a port or public utility district. Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only as follows:

(a) By any taxing district when specifically authorized so to do by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy such additional tax submit-

ted not more than twelve months prior to the date on which the proposed initial levy is to be made and not oftener than twice in such twelve month period, either at a special election or at the regular election of such taxing district, at which election the number of voters voting "yes" on the proposition shall constitute three-fifths of a number equal to forty percent of the total number of voters voting in such taxing district at the last preceding general election when the number of voters voting on the proposition does not exceed forty percent of the total number of voters voting in such taxing district in the last preceding general election; or by a majority of at least three-fifths of the voters of the taxing district voting on the proposition to levy when the number of voters voting on the proposition exceeds forty percent of the number of voters voting in such taxing district in the last preceding general election. Notwithstanding any other provision of this Constitution, any proposition pursuant to this subsection to levy additional tax for the support of the common schools or fire protection districts may provide such support for a period of up to four years and any proposition to levy an additional tax to support the construction, modernization, or remodelling of school facilities or fire facilities may provide such support for a period not exceeding six years. Notwithstanding any other provision of this subsection, a proposition under this subsection to levy an additional tax for a school district shall be authorized by a majority of the voters voting on the proposition, regardless of the number of voters voting on the proposition;

(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes, for the sole purpose of making the required payments of principal and interest on general obligation bonds issued solely for capital purposes, other than the replacement of equipment, when authorized so to do by majority of at least three-fifths of the voters of the taxing district voting on the proposition to issue such bonds and to pay the principal and interest thereon by annual tax levies in excess of the limitation herein provided during the term of such bonds, submitted not oftener than twice in any calendar year, at an election held in the manner provided by law for bond elections in such taxing district, at which election the total number of voters voting on the proposition shall constitute not less than forty percent of the total number of voters voting in such taxing district at the last preceding general election. Any such taxing district shall have the right by vote of its governing body to refund any general obligation bonds of said district issued for capital purposes only, and to provide for the interest thereon and amortization thereof by annual levies in excess of the tax limitation provided for herein. The provisions of this section shall also be subject to the limitations contained in Article VIII, Section 6, of this Constitution;

(c) By the state or any taxing district for the purpose of preventing the impairment of the obligation of a contract when ordered so to do by a court of last resort. [2007 Engrossed House Joint Resolution No. 4204, pp 3143-3145. Approved November 6, 2007.]


## AMENDMENT 102

Article 16 was amended by adding the following section:
Art. 16 Section 6 INVESTMENT OF HIGHER EDUCATION PERMANENT FUNDS. Notwithstanding the provisions of Article VIII, sections 5 and 7 and

Article XII, section 9, or any other section or article of the Constitution of the state of Washington, the moneys of the permanent funds established for any of the institutions of higher education in this state may be invested as authorized by law. Without limitation, this shall include the authority to invest permanent funds held for the benefit of institutions of higher education in stocks or bonds issued by any association, company, or corporation if authorized by law. [2007 Substitute House Joint Resolution No. 4215, p 3145. Approved November 6, 2007.]

## AMENDMENT 103

Art. 8 Section 1 STATE DEBT. (a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.

(b) The aggregate debt contracted by the state shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than nine percent of the arithmetic mean of its general state revenues for the three immediately preceding fiscal years as certified by the treasurer. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.

(c) The term "general state revenues" when used in this section, shall include all state money received in the treasury from each and every source whatsoever except: (1) Fees and revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds including but not limited to moneys received from taxes levied for specific purposes and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority. In addition, for the purpose of computing the amount required for payment of interest on outstanding debt

under subsection (b) of this section and this subsection, "interest" shall be reduced by subtracting the amount scheduled to be received by the state as payments from the federal government in each year in respect of bonds, notes, or other evidences of indebtedness subject to this section.

(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.

(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (h) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: *Provided,* That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [2010 Senate Joint Resolution No. 8225, p 3129-3132. Approved November 2, 2010.]

Prior amendment of Art. 8 Section 1, see Amendments 60 and 92.

Art. 8 Section 1 was later amended by Amendment 107.

## AMENDMENT 104

Art. 1 Section 20 BAIL, WHEN AUTHORIZED. All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great. Bail may be denied for offenses punishable by the possibility of life in prison upon a showing by clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons, subject to such limitations as shall be determined by the legislature. [2010 Engrossed Substitute House Joint Resolution No. 4220, p 3129. Approved November 2, 2010.]

## AMENDMENT 105

Art. 6 Section 1A VOTER QUALIFICATIONS FOR PRESIDENTIAL ELECTIONS. [Repealed by 2011 Senate Joint Resolution No. 8205, p 4281. Approved November 8, 2011.]

Prior amendment of Art. 6 Section 1A, see Amendment 46.

## AMENDMENT 106

Art. 7 Section 12 BUDGET STABILIZATION ACCOUNT. (a) A budget stabilization account shall be established and maintained in the state treasury.

(b)(1) By June 30th of each fiscal year, an amount equal to one percent of the general state revenues for that fiscal year shall be transferred to the budget stabilization account. Nothing in this subsection (b) shall prevent the appropriation of additional amounts to the budget stabilization account.

(2) By June 30th of the second year of each fiscal biennium, three-quarters of any extraordinary revenue growth shall be transferred to the budget stabilization account. However, no transfer of extraordinary revenue growth under this subsection (b)(2) shall occur in

a fiscal biennium following a fiscal biennium in which annual average state employment growth averaged less than one percent per fiscal year. "Extraordinary revenue growth" means the amount by which the growth in general state revenues for that fiscal biennium exceeds by one-third the average biennial percentage growth in general state revenues over the prior five fiscal biennia. In making this determination, the comparability of data shall be maintained by adjusting historical general state revenues to reflect statutory changes to the dedication of state revenues. The transfer under this subsection shall be made only to the extent that it exceeds the total transfers under (1) of this subsection for that fiscal biennium.

(c) Each fiscal quarter, the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity, shall estimate state employment growth for the current and next two fiscal years.

(d) Moneys may be withdrawn and appropriated from the budget stabilization account as follows:

(i) If the governor declares a state of emergency resulting from a catastrophic event that necessitates government action to protect life or public safety, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account, via separate legislation setting forth the nature of the emergency and containing an appropriation limited to the above-authorized purposes as contained in the declaration, by a favorable vote of a majority of the members elected to each house of the legislature.

(ii) If the employment growth forecast for any fiscal year is estimated to be less than one percent, then for that fiscal year moneys may be withdrawn and appropriated from the budget stabilization account by the favorable vote of a majority of the members elected to each house of the legislature.

(iii) Any amount may be withdrawn and appropriated from the budget stabilization account at any time by the favorable vote of at least three-fifths of the members of each house of the legislature.

(e) Amounts in the budget stabilization account may be invested as provided by law and retained in that account. When the balance in the budget stabilization account, including investment earnings, equals more than ten percent of the estimated general state revenues in that fiscal year, the legislature by the favorable vote of a majority of the members elected to each house of the legislature may withdraw and appropriate the balance to the extent that the balance exceeds ten percent of the estimated general state revenues. Appropriations under this subsection (e) may be made solely for deposit to the education construction fund.

(f) As used in this section, "general state revenues" has the meaning set forth in Article VIII, section 1 of the Constitution. Forecasts and estimates shall be made by the state economic and revenue forecast council appointed and authorized as provided by statute, or successor entity.

(g) The legislature shall enact appropriate laws to carry out the purposes of this section.

(h) This section takes effect July 1, 2008. [2011 Senate Joint Resolution No. 8206, p 4281-4283. Approved November 8, 2011.]

Prior amendment of Art. 7 Section 12, see Amendment 99.

**AMENDMENT 107**

Art. 8 Section 1 STATE DEBT. (a) The state may contract debt, the principal of which shall be paid and discharged within thirty years from the time of contracting thereof, in the manner set forth herein.

(b) The aggregate debt contracted by the state, as calculated by the treasurer at the time debt is contracted, shall not exceed that amount for which payments of principal and interest in any fiscal year would require the state to expend more than the applicable percentage limit of the arithmetic mean of its general state revenues for the six immediately preceding fiscal years as certified by the treasurer. The term "applicable percentage limit" means eight and one-half percent from July 1, 2014, through June 30, 2016; eight and one-quarter percent from July 1, 2016, through June 30, 2034; eight percent from July 1, 2034, and thereafter. The term "fiscal year" means that period of time commencing July 1 of any year and ending on June 30 of the following year.

(c) The term "general state revenues," when used in this section, shall include all state money received in the treasury from each and every source, including moneys received from ad valorem taxes levied by the state and deposited in the general fund in each fiscal year, but not including: (1) Fees and other revenues derived from the ownership or operation of any undertaking, facility, or project; (2) Moneys received as gifts, grants, donations, aid, or assistance or otherwise from the United States or any department, bureau, or corporation thereof, or any person, firm, or corporation, public or private, when the terms and conditions of such gift, grant, donation, aid, or assistance require the application and disbursement of such moneys otherwise than for the general purposes of the state of Washington; (3) Moneys to be paid into and received from retirement system funds, and performance bonds and deposits; (4) Moneys to be paid into and received from trust funds and the several permanent and irreducible funds of the state and the moneys derived therefrom but excluding bond redemption funds; (5) Moneys received from taxes levied for specific purposes and required to be deposited for those purposes into specified funds or accounts other than the general fund; and (6) Proceeds received from the sale of bonds or other evidences of indebtedness.

(d) In computing the amount required for payment of principal and interest on outstanding debt under this section, debt shall be construed to mean borrowed money represented by bonds, notes, or other evidences of indebtedness which are secured by the full faith and credit of the state or are required to be repaid, directly or indirectly, from general state revenues and which are incurred by the state, any department, authority, public corporation, or quasi public corporation of the state, any state university or college, or any other public agency created by the state but not by counties, cities, towns, school districts, or other municipal corporations, but shall not include obligations for the payment of current expenses of state government, nor shall it include debt hereafter incurred pursuant to section 3 of this article, obligations guaranteed as provided for in subsection (g) of this section, principal of bond anticipation notes or obligations issued to fund or refund the indebtedness of the Washington state building authority. In addition, for the purpose of computing the amount required for payment of interest on outstanding debt under subsection (b) of this section and this subsection, "interest" shall be reduced by subtracting the amount scheduled to be received by the state as payments from the federal government in each year in re-

12/27/2016 9:01 AM            [ 196 ]            Amendment 107

spect of bonds, notes, or other evidences of indebtedness subject to this section.

(e) The state may pledge the full faith, credit, and taxing power of the state to guarantee the voter approved general obligation debt of school districts in the manner authorized by the legislature. Any such guarantee does not remove the debt obligation of the school district and is not state debt.

(f) The state may, without limitation, fund or refund, at or prior to maturity, the whole or any part of any existing debt or of any debt hereafter contracted pursuant to section 1, section 2, or section 3 of this article, including any premium payable with respect thereto and interest thereon, or fund or refund, at or prior to maturity, the whole or any part of any indebtedness incurred or authorized prior to the effective date of this amendment by any entity of the type described in subsection (h) of this section, including any premium payable with respect thereto and any interest thereon. Such funding or refunding shall not be deemed to be contracting debt by the state.

(g) Notwithstanding the limitation contained in subsection (b) of this section, the state may pledge its full faith, credit, and taxing power to guarantee the payment of any obligation payable from revenues received from any of the following sources: (1) Fees collected by the state as license fees for motor vehicles; (2) Excise taxes collected by the state on the sale, distribution or use of motor vehicle fuel; and (3) Interest on the permanent common school fund: *Provided,* That the legislature shall, at all times, provide sufficient revenues from such sources to pay the principal and interest due on all obligations for which said source of revenue is pledged.

(h) No money shall be paid from funds in custody of the treasurer with respect to any debt contracted after the effective date of this amendment by the Washington state building authority, the capitol committee, or any similar entity existing or operating for similar purposes pursuant to which such entity undertakes to finance or provide a facility for use or occupancy by the state or any agency, department, or instrumentality thereof.

(i) The legislature shall prescribe all matters relating to the contracting, funding or refunding of debt pursuant to this section, including: The purposes for which debt may be contracted; by a favorable vote of three-fifths of the members elected to each house, the amount of debt which may be contracted for any class of such purposes; the kinds of notes, bonds, or other evidences of debt which may be issued by the state; and the manner by which the treasurer shall determine and advise the legislature, any appropriate agency, officer, or instrumentality of the state as to the available debt capacity within the limitation set forth in this section. The legislature may delegate to any state officer, agency, or instrumentality any of its powers relating to the contracting, funding or refunding of debt pursuant to this section except its power to determine the amount and purposes for which debt may be contracted.

(j) The full faith, credit, and taxing power of the state of Washington are pledged to the payment of the debt created on behalf of the state pursuant to this section and the legislature shall provide by appropriation for the payment of the interest upon and installments of principal of all such debt as the same falls due, but in any event, any court of record may compel such payment.

(k) Notwithstanding the limitations contained in subsection (b) of this section, the state may issue certificates of indebtedness in such sum or sums as may be necessary to meet temporary deficiencies of

the treasury, to preserve the best interests of the state in the conduct of the various state institutions, departments, bureaus, and agencies during each fiscal year; such certificates may be issued only to provide for appropriations already made by the legislature and such certificates must be retired and the debt discharged other than by refunding within twelve months after the date of incurrence.

(l) Bonds, notes, or other obligations issued and sold by the state of Washington pursuant to and in conformity with this article shall not be invalid for any irregularity or defect in the proceedings of the issuance or sale thereof and shall be incontestable in the hands of a bona fide purchaser or holder thereof. [2012 Engrossed Senate Joint Resolution No. 8221, p 2429-2432. Approved November 6, 2012.]

Prior amendment of Art. 8 Section 1, see Amendments 60, 92, and 103.

### AMENDMENT 108

Art. 2 Section 43 REDISTRICTING. (1) In January of each year ending in one, a commission shall be established to provide for the redistricting of state legislative and congressional districts.

(2) The commission shall be composed of five members to be selected as follows: The legislative leader of the two largest political parties in each house of the legislature shall appoint one voting member to the commission by January 15th of each year ending in one. By January 31st of each year ending in one, the four appointed members, by an affirmative vote of at least three, shall appoint the remaining member. The fifth member of the commission, who shall be nonvoting, shall act as its chairperson. If any appointing authority fails to make the required appointment by the date established by this subsection, within five days after that date the supreme court shall make the required appointment.

(3) No elected official and no person elected to legislative district, county, or state political party office may serve on the commission. A commission member shall not have been an elected official and shall not have been an elected legislative district, county, or state political party officer within two years of his or her appointment to the commission. The provisions of this subsection do not apply to the office of precinct committee person.

(4) The legislature shall enact laws providing for the implementation of this section, to include additional qualifications for commissioners and additional standards to govern the commission. The legislature shall appropriate funds to enable the commission to carry out its duties.

(5) Each district shall contain a population, excluding nonresident military personnel, as nearly equal as practicable to the population of any other district. To the extent reasonable, each district shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries. The commission's plan shall not provide for a number of legislative districts different than that established by the legislature. The commission's plan shall not be drawn purposely to favor or discriminate against any political party or group.

(6) The commission shall complete redistricting as soon as possible following the federal decennial census, but no later than November 15th of each year ending in one. At least three of the voting members shall approve such a redistricting plan. If three of the voting members of the commission fail to approve a plan within the time limitations provided in this subsection, the supreme court shall adopt a plan by April 30th of the year ending in two in conformance with the standards set forth in subsection (5) of this section.

(7) The legislature may amend the redistricting plan but must do so by a two-thirds vote of the legislators elected or appointed to each house of the legislature. Any amendment must have passed both houses by the end of the thirtieth day of the first session convened after the commission has submitted its plan to the legislature. After that day, the plan, with any legislative amendments, constitutes the state districting law.

(8) The legislature shall enact laws providing for the reconvening of a commission for the purpose of modifying a districting law adopted under this section. Such reconvening requires a two-thirds vote of the legislators elected or appointed to each house of the legislature. The commission shall conform to the standards prescribed under subsection (5) of this section and any other standards or procedures that the legislature may provide by law. At least three of the voting members shall approve such a modification. Any modification adopted by the commission may be amended by a two-thirds vote of the legislators elected and appointed to each house of the legislature. The state districting law shall include the modifications with amendments, if any.

(9) The legislature shall prescribe by law the terms of commission members and the method of filling vacancies on the commission.

(10) The supreme court has original jurisdiction to hear and decide all cases involving congressional and legislative redistricting.

(11) Legislative and congressional districts may not be changed or established except pursuant to this section. A districting plan and any legislative amendments to the plan are not subject to Article III, section 12 of this Constitution. [2016 Senate Joint Resolution No. 8210. Approved November 8, 2016.]

Prior amendment of Art. 2 Section 43, see Amendment 74.

## (C) INDEX TO STATE CONSTITUTION

|  | Art. | Sec. |
|---|---|---|
| **Absconding debtors** | | |
| Imprisonment | 1 | 17 |
| **Absence** | | |
| Of citizen not affecting residence, for purpose of voting and eligibility to office | 6 | 4 |
| Of judicial officer | 4 | 8 |
| **Acceptance** | | |
| Of certain federal or foreign offices vacates seat in legislature | 2 | 14 |
| **Accused** | | |
| Rights in criminal prosecutions | 1 | 22 |

|                                                              | Art. | Sec. |
| ------------------------------------------------------------ | ---- | ---- |
| Rights of, on removal from office by legislature. . . . . . .| 4    | 9    |

**Actions**

| | | |
| --- | --- | --- |
| Against the state. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 26 |
| By and against corporations. . . . . . . . . . . . . . . . . . . . . . . | 12 | 5 |
| Not affected by change in government. . . . . . . . . . . . . | 27 | 1 |
| Transfer from territorial to state court. . . . . . . . . . . . . . | 27 | 5,8,10 |

**Acts**

| | | |
| --- | --- | --- |
| Effective date (Stricken by Amendment 7). . . . . . . . . . . | 2 | 31 |
| Effective date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 1,41 |
| Enacting clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 18 |
| Not to be amended unless set forth in full. . . . . . . . . . . | 2 | 37 |
| Presentation to governor necessary. . . . . . . . . . . . . . . . . | 3 | 12 |
| When effective without approval. . . . . . . . . . . . . . . . . . . | 3 | 12 |
| Veto, passage over. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 12 |
| (See Bill; Laws; Statutes; Veto) | | |

**Adjournment of legislature**

| | | |
| --- | --- | --- |
| For want of quorum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 8 |
| Governmental continuity during emergency periods. . . . | 2 | 42 |
| Restrictions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 11 |

**Adoption of children**

| | | |
| --- | --- | --- |
| By special act forbidden. . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 28(16) |

**Au valorem tax**

| | | |
| --- | --- | --- |
| Authority to levy on mines and reforested lands. . . . . . . | 7 | 1 |

**Advances of money or fees**

| | | |
| --- | --- | --- |
| Prohibited to secure rights of accused. . . . . . . . . . . . . . . | 1 | 22 |

**Advice and consent of senate**

| | | |
| --- | --- | --- |
| Required for appointment of officers of state institutions | 1 | 31 |

**Affirmation**

| | | |
| --- | --- | --- |
| Mode of administering. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | 6 |

**Age**

| | | |
| --- | --- | --- |
| Of voter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | 1 |

**Agricultural lands**

| | | |
| --- | --- | --- |
| Taxation based on actual use. . . . . . . . . . . . . . . . . . . . . . . | 7 | 11 |

**Agriculture**

| | | |
| --- | --- | --- |
| Bureau of, established. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 34 |
| Commodity assessments. . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | 11 |
| Development and trade promotion, funds for. . . . . . . . . | 8 | 11 |

**Alienation of franchise**

| | | |
| --- | --- | --- |
| Corporate liabilities not relieved by. . . . . . . . . . . . . . . . . | 12 | 8 |

**Aliens**

| | | |
| --- | --- | --- |
| Corporation alien (Repealed by Amendment 42). . . . . . | 2 | 33 |
| Naturalization of, by superior court. . . . . . . . . . . . . . . . . | 4 | 6 |

|  | Art. | Sec. |
|---|---|---|
| Ownership of lands prohibited, exceptions (Repealed by Amendment 42)........................... | 2 | 33 |

**Amendment to bills**

| | | |
|---|---|---|
| Act or section amended to be set forth in full......... | 2 | 37 |
| Either house may amend bills of the other............ | 2 | 20 |
| Initiative measure, prohibition against amendment of... | 2 | 41 |
| Scope and object not to be changed................. | 2 | 38 |

**Amendment to municipal charter**

| | | |
|---|---|---|
| By special act forbidden........................... | 2 | 28(8) |
| How proposed, submitted and adopted.............. | 11 | 10 |

**Amendment to Constitution**

| | | |
|---|---|---|
| By convention.................................. | 23 | 2 |
| Proposal for, may originate in either house........... | 23 | 1 |
| Publication of notice of election................... | 23 | 1 |
| Ratification by electors........................... | 23 | 1 |
| Revised Constitution, adoption by people............ | 23 | 3 |
| Separate amendments to be separately voted on....... | 23 | 1 |
| Vote proposing amendment or revision, two-thirds of each house necessary...................... | 23 | 1,2 |

**Amendments to Constitution: Ratified**

(1) In order of amendments:

Amendment

| No. 1 to art | 16 sec 5 |
|---|---|
| No. 2 to art | 6 sec 1 |
| No. 3 to art | 7 sec 2 |
| No. 4 to art | 1 sec 11 |
| No. 5 to art | 6 sec 1 |
| | 6 sec 2 (deleted) |
| No. 6 to art | 3 sec 10 |
| No. 7 to art | 2 sec 1 |
| | 2 sec 31 (deleted) |
| No. 8 to art | 1 sec 33 (added) |
| | 1 sec 34 (added) |
| No. 9 to art | 1 sec 16 |
| No. 10 to art | 1 sec 22 |
| No. 11 to art | 8 sec 4 |
| No. 12 to art | 11 sec 5 |
| No. 13 to art | 2 sec 15 |
| No. 14 to art | 7 sec 1 |
| | 7 sec 2,3,4 (deleted) |
| No. 15 to art | 15 sec 1 |
| No. 16 to art | 12 sec 11 |
| No. 17 to art | 7 sec 2 |
| No. 18 to art | 2 sec 40 (added) |
| No. 19 to art | 7 sec 3 (new) |
| No. 20 to art | 2 sec 23 (part repeal) |
| | 3 sec 14, 16, 17, 19,20,21,22 (part repeal) |
| | 28 sec 1 (added) |
| No. 21 to art | 11 sec 4 |
| No. 22 to art | 11 sec 7 (repealed) |
| No. 23 to art | 11 sec 16 (added) |
| No. 24 to art | 2 sec 33 |

| | |
|---|---|
| No. 25 to art | 4 sec  3(a) (added) |
| No. 26 to art | 2 sec  1(c) (superseded) |
| | sec 41 (added) |
| No. 27 to art | 8 sec  6 |
| No. 28 to art | 4 sec  6 |
| | 4 sec 10 |
| No. 29 to art | 2 sec 33 |
| No. 30 to art | 2 sec  1(a) (added) |
| No. 31 to art | 3 sec 25 |
| No. 32 to art | 2 sec 15 |
| No. 33 to art | 24 sec  1 |
| No. 34 to art | 1 sec 11 |
| No. 35 to art | 2 sec 25 |
| No. 36 to art | 2 sec  1(e) (added) |
| No. 37 to art | 23 sec  1 |
| No. 38 to art | 4 sec  2(a) (added) |
| No. 39 to art | 2 sec 42 (added) |
| No. 40 to art | 11 sec 10 |
| No. 41 to art | 4 sec 29 (added) |
| No. 42 to art | 2 sec 33 (repealed) |
| No. 43 to art | 9 sec  3 |
| No. 44 to art | 16 sec  5 |
| No. 45 to art | 8 sec  8 (added) |
| No. 46 to art | 6 sec 1A (added) |
| No. 47 to art | 7 sec 10 (added) |
| No. 48 to art | 8 sec  3 |
| No. 49 to art | 29 sec  1 (added) |
| No. 50 to art | 4 sec 30 (added) |
| No. 51 to art | 8 sec  9 (added) |
| No. 52 to art | 2 sec 15 |
| | 11 sec  6 |
| No. 53 to art | 7 sec 11 (added) |
| No. 54 to art | 2 sec 25 (part repeal) |
| | 3 sec 25 (part repeal) |
| | 4 sec 13 (part repeal) |
| | 11 sec  8 (part repeal) |
| | 28 sec  1 (part repeal) |
| | 30 sec  1 (added) |
| No. 55 to art | 7 sec  2 |
| No. 56 to art | 2 sec 24 |
| No. 57 to art | 11 sec  5 |
| | 11 sec  8 |
| No. 58 to art | 11 sec 16 |
| No. 59 to art | 7 sec  2 |
| No. 60 to art | 8 sec  1 |
| | 8 sec  3 |
| No. 61 to art | 31 sec  1 (added) |
| | 31 sec  2 (added) |
| No. 62 to art | 3 sec 12 |
| No. 63 to art | 6 sec  1 |
| No. 64 to art | 7 sec  2 |
| No. 65 to art | 4 sec  6 |
| | 4 sec 10 |
| No. 66 to art | 12 sec 18 |
| No. 67 to art | 12 sec 14 (repealed) |
| No. 68 to art | 2 sec 12 |
| No. 69 to art | 2 sec 13 |

| | | |
|---|---|---|
| No. 70 to art | 8 sec 10 (added) | |
| No. 71 to art | 4 sec 31 (added) | |
| No. 72 to art | 2 sec 1 | |
| | 2 sec 1(a) (stricken) | |
| No. 73 to art | 32 sec 1 (added) | |
| No. 74 to art | 2 sec 3 (repealed) | |
| | 2 sec 43 (added) | |
| | 27 sec 13 (repealed) | |
| No. 75 to art | 29 sec 1 | |
| No. 76 to art | 8 sec 11 (added) | |
| No. 77 to art | 4 sec 31 | |
| No. 78 to art | 28 sec 1 | |
| No. 79 to art | 7 sec 2 | |
| No. 80 to art | 4 sec 7 | |
| No. 81 to art | 7 sec 1 | |
| No. 82 to art | 8 sec 10 | |
| No. 83 to art | 6 sec 3 | |
| | 13 sec 1 | |
| No. 84 to art | 1 sec 35 (added) | |
| No. 85 to art | 4 sec 31 | |
| No. 86 to art | 8 sec 10 | |
| No. 87 to art | 4 sec 6 | |
| No. 88 to art | 1 sec 11 | |
| No. 89 to art | 4 sec 3 | |
| No. 90 to art | 7 sec 2 | |
| No. 91 to art | 8 sec 10 | |
| No. 92 to art | 8 sec 1 | |
| No. 93 to art | 29 sec 1 | |
| No. 94 to art | 4 sec 7 | |
| No. 95 to art | 7 sec 2 | |
| No. 96 to art | 2 sec 15 | |
| No. 97 to art | 4 sec 31 | |
| No. 98 to art | 7 sec 1 | |
| No. 99 to art | 7 sec 12 (added) | |
| No. 100 to art | 2 sec 29 | |
| No. 101 to art | 7 sec 2 | |
| No. 102 to art | 16 sec 6 | |
| No. 103 to art | 8 sec 1 | |
| No. 104 to art | 1 sec 20 | |
| No. 105 to art | 6 sec 1A (repealed) | |
| No. 106 to art | 7 sec 12 | |
| No. 107 to art | 8 sec 1 | |
| No. 108 to art | 2 sec 43 | |

(2) In order of articles and sections affected:

| | | | | |
|---|---|---|---|---|
| Art 1 | sec 11—Amendment | | No. | 4 |
| | sec 11—Amendment | | No. | 34 |
| | sec 11—Amendment | | No. | 88 |
| | sec 16—Amendment | | No. | 9 |
| | sec 20—Amendment | | No. | 104 |
| | sec 22—Amendment | | No. | 10 |
| | sec 33—(added) | | No. | 8 |
| | sec 34—(added) | | No. | 8 |
| | sec 35—(added) | | No. | 84 |
| Art 2 | sec 1—Amendment | | No. | 7 |
| | sec 1(e)—(added) | | No. | 36 |

|       | sec 1—Amendment       | No. | 72  |
|       | sec 1(a)—(added)      | No. | 30  |
|       | sec 1(a)—(stricken)   | No. | 72  |
|       | sec 3—(repealed)      | No. | 74  |
|       | sec 11(c)—(supersed.) | No. | 26  |
|       | sec 12—Amendment      | No. | 68  |
|       | sec 13—Amendment      | No. | 69  |
|       | sec 15—Amendment      | No. | 13  |
|       | sec 15—Amendment      | No. | 32  |
|       | sec 15—Amendment      | No. | 52  |
|       | sec 15—Amendment      | No. | 96  |
|       | sec 23—(part rep.)    | No. | 20  |
|       | sec 24—Amendment      | No. | 56  |
|       | sec 25—Amendment      | No. | 35  |
|       | sec 25—(part rep.)    | No. | 54  |
|       | sec 29—Amendment      | No. | 100 |
|       | sec 31—(deleted)      | No. | 7   |
|       | sec 33—Amendment      | No. | 24  |
|       | sec 33—Amendment      | No. | 29  |
|       | sec 33—(repealed)     | No. | 42  |
|       | sec 40—(added)        | No. | 18  |
|       | sec 41—(added)        | No. | 26  |
|       | sec 42—(added)        | No. | 39  |
|       | sec 43—(added)        | No. | 74  |
|       | sec 43—Amendment      | No. | 108 |
| Art 3 | sec 10—Amendment      | No. | 6   |
|       | sec 12—Amendment      | No. | 62  |
|       | sec 14⎫               |     |     |
|       | sec 16⎪               |     |     |
|       | sec 17⎪               |     |     |
|       | sec 19⎬ —Amendment    | No. | 20  |
|       | sec 20⎪ (part rep.)   |     |     |
|       | sec 21⎪               |     |     |
|       | sec 22⎭               |     |     |
|       | sec 25—Amendment      | No. | 31  |
|       | sec 25—(part rep.)    | No. | 54  |
| Art 4 | sec 2(a)—(added)      | No. | 38  |
|       | sec 3—Amendment       | No. | 89  |
|       | sec 3(a)—(added)      | No. | 25  |
|       | sec 6—Amendment       | No. | 28  |
|       | sec 6—Amendment       | No. | 65  |
|       | sec 6—Amendment       | No. | 87  |
|       | sec 7—Amendment       | No. | 80  |
|       | sec 7—Amendment       | No. | 94  |
|       | sec 10—Amendment      | No. | 28  |
|       | sec 10—Amendment      | No. | 65  |
|       | sec 13—(part rep.)    | No. | 54  |
|       | sec 29—(added)        | No. | 41  |
|       | sec 30—(added)        | No. | 50  |
|       | sec 31—(added)        | No. | 71  |
|       | sec 31—Amendment      | No. | 77  |
|       | sec 31—Amendment      | No. | 85  |
|       | sec 31—Amendment      | No. | 97  |
| Art 6 | sec 1—Amendment       | No. | 2   |
|       | sec 1—Amendment       | No. | 5   |
|       | sec 1—Amendment       | No. | 63  |

|       |                    |     |     |
|-------|--------------------|-----|-----|
|       | sec 1A—(added)     | No. | 46  |
|       | sec 1A—(repealed)  | No. | 105 |
|       | sec 2—(deleted)    | No. | 5   |
|       | sec 3—Amendment    | No. | 83  |
| Art 7 | sec 1—Amendment    | No. | 14  |
|       | sec 1—Amendment    | No. | 81  |
|       | sec 1—Amendment    | No. | 98  |
|       | sec 2—(original)   | No. | 3   |
|       | sec 2—Amendment    | No. | 17  |
|       | sec 2—Amendment    | No. | 55  |
|       | sec 2—Amendment    | No. | 59  |
|       | sec 2—Amendment    | No. | 64  |
|       | sec 2—Amendment    | No. | 79  |
|       | sec 2—Amendment    | No. | 90  |
|       | sec 2—Amendment    | No. | 95  |
|       | sec 2—Amendment    | No. | 101 |
|       | sec 3—(new)        | No. | 19  |
|       | sec 10—(added)     | No. | 47  |
|       | sec 11—(added)     | No. | 53  |
|       | sec 12—(added)     | No. | 99  |
|       | sec 12—Amendment   | No. | 106 |
| Art 8 | sec 1—Amendment    | No. | 60  |
|       | sec 1—Amendment    | No. | 92  |
|       | sec 1—Amendment    | No. | 103 |
|       | sec 1—Amendment    | No. | 107 |
|       | sec 3—Amendment    | No. | 48  |
|       | sec 3—Amendment    | No. | 60  |
|       | sec 4—Amendment    | No. | 11  |
|       | sec 6—Amendment    | No. | 27  |
|       | sec 8—(added)      | No. | 45  |
|       | sec 9—(added)      | No. | 51  |
|       | sec 10—(added)     | No. | 70  |
|       | sec 10—Amendment   | No. | 82  |
|       | sec 10—Amendment   | No. | 86  |
|       | sec 10—Amendment   | No. | 91  |
|       | sec 11—(added)     | No. | 76  |
| Art 9 | sec 3—Amendment    | No. | 43  |
| Art 11| sec 4—Amendment    | No. | 21  |
|       | sec 5—Amendment    | No. | 12  |
|       | sec 5—Amendment    | No. | 57  |
|       | sec 6—Amendment    | No. | 52  |
|       | sec 7—(repealed)   | No. | 22  |
|       | sec 8—(part rep.)  | No. | 54  |
|       | sec 8—Amendment    | No. | 57  |
|       | sec 10—Amendment   | No. | 40  |
|       | sec 10—Amendment   | No. | 91  |
|       | sec 16—(added)     | No. | 23  |
|       | sec 16—Amendment   | No. | 58  |
| Art 12| sec 11—Amendment   | No. | 16  |
|       | sec 14—(repealed)  | No. | 67  |
|       | sec 18—Amendment   | No. | 66  |
| Art 13| sec 1—Amendment    | No. | 83  |
| Art 15| sec 1—Amendment    | No. | 15  |
| Art 16| sec 5—Amendment    | No. | 1   |
|       | sec 5—Amendment    | No. | 44  |
|       | sec 6—(added)      | No. | 102 |
| Art 23| sec 1—Amendment    | No. | 37  |

| | | | |
|---|---|---|---|
| Art 24 | sec 1—Amendment | No. | 33 |
| Art 27 | sec 13—(repealed) | No. | 74 |
| Art 28 | sec 1—(added) | No. | 20 |
| | sec 1—(part rep.) | No. | 54 |
| | sec 1—Amendment | No. | 78 |
| Art 29 | sec 1—(added) | No. | 49 |
| | sec 1—Amendment | No. | 75 |
| | sec 1—Amendment | No. | 93 |
| Art 30 | sec 1—(added) | No. | 54 |
| Art 31 | sec 1—(added) | No. | 61 |
| | sec 2—(added) | No. | 61 |
| Art 32 | sec 1—(added) | No. | 73 |

(3) Amendments amended or repealed:

Amendment 1 amended by Amendment 44
Amendment 2 amended by Amendment 5
Amendment 4 amended by Amendments 34 and 88
Amendment 5 amended by Amendment 63
Amendment 7 amended by Amendments 26, 30, 36, and 72
Amendment 12 amended by Amendment 57
Amendment 13 amended by Amendments 32, 52, and 96
Amendment 14 amended by Amendments 81 and 98
Amendment 17 amended by Amendments 55, 59, 64, 79, 90, 95, and 101
Amendment 20 part rep. by Amendment 54
                        amended by Amendment 78
Amendment 23 amended by Amendment 58
Amendment 24 repealed by Amendment 42
Amendment 28 amended by Amendments 65 and 87
Amendment 29 repealed by Amendment 42
Amendment 30 stricken by Amendment 72
Amendment 31 part rep. by Amendment 54
Amendment 32 amended by Amendments 52 and 96
Amendment 34 amended by Amendment 88
Amendment 35 part rep. by Amendment 54
Amendment 46 repealed by Amendment 105
Amendment 48 amended by Amendment 60
Amendment 49 amended by Amendments 75 and 93
Amendment 52 amended by Amendment 96
Amendment 55 amended by Amendments 59, 64, 79, 90, 95, and 101
Amendment 59 amended by Amendments 64, 79, 90, 95, and 101
Amendment 60 amended by Amendments 92 and 103
Amendment 64 amended by Amendments 79, 90, 95, and 101
Amendment 70 amended by Amendments 82, 86, and 91
Amendment 71 amended by Amendments 77 and 85
Amendment 74 amended by Amendment 108
Amendment 75 amended by Amendment 93
Amendment 77 amended by Amendment 85
Amendment 79 amended by Amendments 90, 95, and 101
Amendment 80 amended by Amendment 94
Amendment 81 amended by Amendment 98
Amendment 82 amended by Amendment 86
Amendment 86 amended by Amendment 91
Amendment 90 amended by Amendments 95 and 101
Amendment 92 amended by Amendment 103
Amendment 99 amended by Amendment 106
Amendment 103 amended by Amendment 107

**Amount in controversy**
Appellate jurisdiction of supreme court. . . . . . . . . . . . .    4    4
Original jurisdiction of superior court. . . . . . . . . . . . . .    4    6

**Annual sessions of legislature**                                   2   12

**Annulment of marriage**
Appellate jurisdiction of supreme court. . . . . . . . . . . . .    4    4
Original jurisdiction of superior court. . . . . . . . . . . . . .    4    6
(See Divorce)

**Appeal**
Right of accused in criminal cases. . . . . . . . . . . . . . . . .    1   22
(See Appellate jurisdiction)

**Appearance**
Appearance of accused in criminal cases. . . . . . . . . . . . .    1   22

**Appellate jurisdiction**
Of court of appeals. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   30
Of superior court. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4    6
From territorial probate courts. . . . . . . . . . . . . . .   27   10
Of supreme court. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4    4

**Appointment**
Of clerk of supreme court. . . . . . . . . . . . . . . . . . . . . .    4   22
Of regents of state institutions. . . . . . . . . . . . . . . . . .   13    1
Of reporter of supreme court. . . . . . . . . . . . . . . . . . .    4   18
To fill vacancy in county offices. . . . . . . . . . . . . . . . .   11    6
To fill vacancy in state offices, by governor. . . . . . . . . .    3   13
Governmental continuity during emergency
periods. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   42
To office under United States vacates seat in legislature    2   14

**Apportionment**
Of legislators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   43
Of representatives among counties of state. . . . . . . . . . .   22    2
Of school fund. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9    3
Of school fund, by special act, prohibited. . . . . . . . . . .    2   28(7)
Of senators among counties of state. . . . . . . . . . . . . . .   22    1

**Appropriation of private property**
For public or private use. . . . . . . . . . . . . . . . . . . . . . .    1   16
For right-of-way of corporations. . . . . . . . . . . . . . . . .    1   16
(See Eminent domain)

**Appropriations**
Capitol buildings, for. . . . . . . . . . . . . . . . . . . . . . . . . .   14    3
Common school fund, to. . . . . . . . . . . . . . . . . . . . . . .    9    3
Expenses of constitutional convention. . . . . . . . . . . . . .   27   19
Item veto of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   12
Money from state treasury shall be paid out by. . . . . . . .    8    4
Religious worship, prohibition against appropriation for    1   11
Reverts unless paid out within two years. . . . . . . . . . . .    8    4
Sum and object to be specified. . . . . . . . . . . . . . . . . . .    8    4
Time for payment, limitation of. . . . . . . . . . . . . . . . . .    8    4

When act providing for, to take effect (Stricken by
    Amendment 7)............................ 2 31

**Area reserved**

Between harbor lines and line of high tide............ 15 1
Lease of, by state for wharves..................... 15 2
Sale of, restrictions on.......................... 15 1
Streets over, authorized......................... 15 3
(See Harbors; Navigable waters; Wharves)

**Arms**

Private armed bodies not authorized................ 1 24
Right of people to bear arms guaranteed............ 1 24
Safekeeping of public arms to be provided.......... 10 4
Scruples against bearing arms, excuses from militia duty
    in time of peace........................... 10 6

**Army**

Standing, not to be kept in time of peace............ 1 31
(See Militia)

**Arrest**

Legislators, when privileged from................. 2 16
Militia, when privileged from..................... 10 5
Voters privileged from at elections, except.......... 6 5

**Artificial light**

City or town may contract debt for, limitations........ 8 6

**Assemblages of people**

Right of peaceable assembly not to be abridged....... 1 4

**Assessment**

Imposition by special act prohibited................ 2 28(5)
Jurisdiction of superior court, original.............. 4 6
Jurisdiction of supreme court, appellate............. 4 4
Property of corporations, how assessed (Stricken by
    Amendment 14)........................... 7 3
Retired persons, property tax exemption............ 7 10
Special, for local improvements, authorized......... 7 9
Taxation based on special use.................... 7 11
Uniform and equal rate of, to be established (Stricken by
    Amendment 14)........................... 7 2
(See Taxation)

**Assignment**

Of superior judges and judicial business by supreme
    court................................... 4 2(a)
Of superior judges by governor................... 4 5

**Association**

Combination in restraint of trade prohibited.......... 12 22
Included in term "corporation".................... 12 5
Issuance of money by, prohibited................. 12 11
Organization authorized, for construction of telegraph
    and telephone lines........................ 12 19

**Assumption**

Of territorial debts by state..................... 26 3

Attack (See Invasion and attack)

**Attainder**

Bills of, prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  23

**Attestation**

Of commissions, by secretary of state. . . . . . . . . . . . . .    3  15

**Attorney general**

Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3  21
Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   1
Impeachment, liability to. . . . . . . . . . . . . . . . . . . . . . . .    5   2
Records of office, to be kept at seat of government. . . .    3  24
Removal from office by legislature. . . . . . . . . . . . . . . .    4   9
Rights of accused. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   9
Salary (See Salaries)
Succession to governorship. . . . . . . . . . . . . . . . . . . . . .    3  10
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   3

**Attorneys at law**

Accused in criminal cases entitled to appear by counsel.    1  22
Prosecuting attorney, duty of legislature to provide for
     election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11   5

**Auditor**

Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3  20
Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   1
Impeachment, liability to. . . . . . . . . . . . . . . . . . . . . . . .    5   2
Office may be abolished by legislature. . . . . . . . . . . . . .    3  25
Records to be kept at seat of government. . . . . . . . . . . .    3  24
Residence at seat of government required. . . . . . . . . . . .    3  24
Salary (See Salaries)
Succession to governorship. . . . . . . . . . . . . . . . . . . . . .    3  10
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   3

**Ayes and noes**

When to be taken and entered on journal
     On amendments to Constitution proposed. . . . . . .   23   1
     On demand of one-sixth of members of either
          house. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  21
     On emergency clauses (Stricken by Amendment 7)    2  31
     On final passage of bills. . . . . . . . . . . . . . . . . . . . .    2  22
     On removal of public officer by legislature. . . . . .    4   9
     On senate's confirmation or rejection of governor's
          appointees. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13   1
     On suspension of the prohibition against
          introduction of bills. . . . . . . . . . . . . . . . . . . . .    2  36
     (See Yeas and nays)

**Bail**

Allowable on sufficient sureties, exceptions. . . . . . . . .    1  20
Excessive, not to be required. . . . . . . . . . . . . . . . . . . . .    1  14

**Ballot**

Elections to be by. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6   6
Form of, in voting for Constitution, etc.. . . . . . . . . . . .   27  18
Initiative measures, ballot submitting. . . . . . . . . . . . . .    2   1

Presidential, casting. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6   1(A)
Secrecy of, provision to be made for. . . . . . . . . . . . . . .   6   6
Superior court judge, election for. . . . . . . . . . . . . . . . .   4   29

**Banking corporations**
Stockholder liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   11
Officers of, when liable for deposits. . . . . . . . . . . . . . .   12   12

**Banks**
Liability of officers for deposits. . . . . . . . . . . . . . . . . .   12   12
Liability of stockholders. . . . . . . . . . . . . . . . . . . . . . . .   12   11

**Beds and shores of navigable waters**
Disclaimer of title by state where patented, exception. .   17   2
Ownership of, asserted by state. . . . . . . . . . . . . . . . . . .   17   1

**Bill**
Act or section amended must be set forth in full. . . . . . .   2   37
Amendment of, may be made by either house. . . . . . . . .   2   20
Amendment of, shall not change scope and object. . . . .   2   38
Effective date (Stricken by Amendment 7). . . . . . . . . . .   2   31
Effective date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   1,41
Either house may originate bills. . . . . . . . . . . . . . . . . .   2   20
Enacting clause required. . . . . . . . . . . . . . . . . . . . . . . . .   2   18
Final passage, requisites of. . . . . . . . . . . . . . . . . . . . . .   2   22
Initiative measures (See Initiative and referendum)
Introduction of, limitation on time of. . . . . . . . . . . . . .   2   36
Laws to be enacted by. . . . . . . . . . . . . . . . . . . . . . . . . . .   2   18
Passage by either house, requisite proceedings. . . . . . .   2   22
Passage by one house, subject to amendment in other. .   2   20
Passage over governor's veto. . . . . . . . . . . . . . . . . . . . .   3   12
Power of people to propose, pass, etc. . . . . . . . . . . . . . .   2   1
Presentation to governor for approval. . . . . . . . . . . . . .   3   12
When becomes law without approval. . . . . . . . . . . . . . .   3   12
Scope of, not to be changed by amendment. . . . . . . . . .   2   38
Signature by presiding officers of both houses necessary   2   32
Subject restricted to one object. . . . . . . . . . . . . . . . . . .   2   19
Subject to be expressed in title. . . . . . . . . . . . . . . . . . .   2   19
Title of, to express subject. . . . . . . . . . . . . . . . . . . . . . .   2   19
Veto of, power of governor. . . . . . . . . . . . . . . . . . . . . . .   3   12
Initiative or referred measures. . . . . . . . . . . . . . . . . . . .   2   1
Separate items or sections subject to. . . . . . . . . . . . . . .   3   12
Session, extraordinary, to reconsider. . . . . . . . . . . . . . .   3   12
Vote on, by interested legislators prohibited. . . . . . . . .   2   30
Vote on, how taken. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   22
(See Acts; Laws)

**Bill of attainder**
Enactment of, prohibited. . . . . . . . . . . . . . . . . . . . . . . .   1   23

**Boats**
Jurisdiction of public offense committed on. . . . . . . . .   1   22

**Bonds**
Corporations can issue only for money, labor or
  property received. . . . . . . . . . . . . . . . . . . . . . . . . . .   12   6

County and municipal corporations not to own bonds of
private corporations. . . . . . . . . . . . . . . . . . . . . . . . 8 7

Debt limitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 1

Executed to territory to pass to state. . . . . . . . . . . . . . . 27 4

Industrial development projects financing. . . . . . . . . . . . 32 1

Investment of school funds in. . . . . . . . . . . . . . . . . . . . 9 3

16 5

Nonrecourse revenue bonds by governmental entities. . 32 1

State building authority, by. . . . . . . . . . . . . . . . . . . . . . 8 9

Limitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 1(g)

**Boundaries**

Of county, change by division or enlargement. . . . . . . . 11 3

Of county, change by special legislation prohibited,
exceptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 28(18)

Of existing counties recognized. . . . . . . . . . . . . . . . . . 11 1

Of state, defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24 1

**Bribery**

Criminating evidence compulsory. . . . . . . . . . . . . . . . . 2 30

Disqualifies for holding office. . . . . . . . . . . . . . . . . . . . 2 30

Legislature to define and provide punishment for. . . . . . 2 30

**Buildings, public**

State building authority. . . . . . . . . . . . . . . . . . . . . . . . . 8 9

**Bureau of statistics, agriculture and immigration**

Legislature to provide for. . . . . . . . . . . . . . . . . . . . . . . 2 34

**Bureau of vital statistics**

Legislature to establish. . . . . . . . . . . . . . . . . . . . . . . . . 20 1

**Canal companies**

Common carriers, subject to legislative control. . . . . . . 12 13

Discrimination in charges prohibited. . . . . . . . . . . . . . . 12 15

**Capital offenses**

Bailable, when. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 20

(See Crime)

**Capital of state** (See Seat of government)

**Capitol buildings**

Appropriations for. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 3

**Caste**

Discrimination in education on account of, prohibited. . 9 1

**Causes**

Transfer from territorial to state courts. . . . . . . . . . . . . . 27 5,8,10

(See Actions)

**Census**

Apportionments of legislative members based on federal
census. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 43

Enumeration to be made in decennial periods (Repealed
by Amendment 74). . . . . . . . . . . . . . . . . . . . . . . . 2 3

**Certiorari**

Jurisdiction of superior court. . . . . . . . . . . . . . . . . . . . . .    4    6

Jurisdiction of supreme court. . . . . . . . . . . . . . . . . . . . . .    4    4

**Cession of jurisdiction**

Exclusive legislation over certain lands given to United
    States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25    1

Retention by state of jurisdiction for service of process.    25    1

**Change of name**

Special legislation prohibited. . . . . . . . . . . . . . . . . . . . . .    2    28(1)

**Changing county lines**

Special legislation prohibited, except. . . . . . . . . . . . . . .    2    28(18)

**Changing county seats**

Special legislation prohibited. . . . . . . . . . . . . . . . . . . . . .    2    28(18)

**Chaplain**

For state correctional, mental institutions, county or
    public health district health care. . . . . . . . . . . . . . .    1    11

**Charter**

Corporate

    Creation by special legislation forbidden. . . . . . . . .    12    1

    Extension of, by legislature prohibited. . . . . . . . . .    12    3

    Forfeiture of, not to be remitted. . . . . . . . . . . . . . .    12    3

    Void for want of organization, when. . . . . . . . . . .    12    2

Municipal

    Creation or amendment by special law, prohibited    2    28(8)

    Election for, how conducted. . . . . . . . . . . . . . . . . .    11    10

    Grant of, to be under general laws. . . . . . . . . . . . .    11    10

    How amended. . . . . . . . . . . . . . . . . . . . . . . . . . . .    11    10

    Power of certain cities to frame. . . . . . . . . . . . . . .    11    10

    Publication, prior to submission. . . . . . . . . . . . . . .    11    10

    Subject to general laws. . . . . . . . . . . . . . . . . . . . .    11    10

    Submission of alternate propositions. . . . . . . . . . .    11    10

**Chief justice of supreme court**

Method of determining. . . . . . . . . . . . . . . . . . . . . . . . . .    4    3

Presides on trial of impeachments, when. . . . . . . . . . . .    5    1

**Children**

Adoption of, by special act, forbidden. . . . . . . . . . . . . .    2    28(16)

Duty of state to educate all. . . . . . . . . . . . . . . . . . . . . . .    9    1

(See Minors)

**Citizens**

All entitled to equal privileges and immunities. . . . . . . .    1    12

Citizenship qualification for voters. . . . . . . . . . . . . . . . .    6    1

Voter qualifications, presidential elections. . . . . . . . . . .    6    1A

**City**

Bonds, nonrecourse revenue for industrial development
    projects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    32    1

Charter

    Alternative propositions, submission of. . . . . . . . .    11    10

    Amendment by special law prohibited. . . . . . . . . .    2    28(8)

Amendments of, how effected................ 11  10
Election of freeholders..................... 11  10
Freeholder's charter, what cities may frame...... 11  10
Publication of election notices and of proposed
    charter............................ 11  10
Submission of the charter proposed........... 11  10
Vote on, majority necessary to ratify........... 11  10
Combined city-county.......................... 11  16
Corporate stock or bonds, not to be owned by........  8   7
Creation by special act prohibited.................  2  28(8)
Credit of, not to be loaned, except.................  8   7
Incorporation of, must be under general laws........ 11  10
Indebtedness, limitations on.......................  8   6
Justice of peace in, legislature to prescribe powers,
    duties, jurisdiction and number...............  4  10
May act as police justice.....................  4  10
Salary of, in cities of over 5,000..............  4  10
Local improvements by special assessment or taxation.  7   9
Officers of
Compensation increase......................  30  1
Must deposit public moneys with treasurer...... 11  15
Recall of officers (See Recall of officers)
Salary not to be changed during term
(Partially repealed by Amendment 54)........... 11   8
(Amendment 54)........................... 30   1
Term of office not to be extended.............. 11   8
Use of public money by, a felony.............. 11  14
Police and sanitary regulations may be enforced....... 11  11
Police justice, justice of peace may act as...........  4  10
Reincorporation under general laws permitted to cities
    under special charter....................... 11  10
Taxation
Authorized to assess and collect general........  7   9
Local improvements.......................  7   9
Local taxes not to be imposed by legislature..... 11  12
Power to assess and collect rests in city......... 11  12
Uniformity in respect to persons and property
    required...........................  7   9
(See Municipal corporation; Municipal courts;
    Municipal fine)

**Civil actions**
Limitation by special act prohibited.............  2  28(17)
Number of jurors in............................  1  21
Number of jurors necessary for verdict.............  1  21
Parties may waive jury..........................  1  21
(See Actions)

**Civil power**
Elections to be free from interference by.............  1  19
Governmental continuity during emergency periods....  2  42
Military subordinate to..........................  1  18

**Classification**
Of cities and towns in proportion to population....... 11  10
Of counties....................................... 11   5
Of judges of supreme court by lot..................  4   3

**Clerk**

Of county, providing for election of. . . . . . . . . . . . . . . .    11    5

Of superior court, county clerk is. . . . . . . . . . . . . . . . . .    4    26

Of supreme court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4    22

**Collection of taxes**

Time not to be extended by special laws. . . . . . . . . . . . .    2    28(5)

(See Taxation)

**Color**

Discrimination in education on account of, prohibited. .    9    1

**Combinations**

To affect prices, production, or transportation of
   commodities, prohibited. . . . . . . . . . . . . . . . . . . . . . .    12    22

(See Monopolies)

**Combined city-county**    11    16

**Commander-in-chief**

Governor to be, when militia in state service. . . . . . . . .    3    8

(See Militia)

**Comment on facts**

Judge not to make, in charging jury. . . . . . . . . . . . . . . . .    4    16

**Commission**

To establish harbor lines. . . . . . . . . . . . . . . . . . . . . . . . .    15    1

To regulate railroad and transportation lines. . . . . . . . . .    12    18

To set salaries, authorized. . . . . . . . . . . . . . . . . . . . . . .    28    1

**Commission on judicial conduct**    4    31

**Commissioner of public lands**

Duties of, to be prescribed by legislature. . . . . . . . . . . . .    3    23

Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3    1

Office may be abolished by legislature. . . . . . . . . . . . . . .    3    25

Records of, to be kept at seat of government. . . . . . . . . .    3    24

Salary (See Salaries)

Succession to governorship. . . . . . . . . . . . . . . . . . . . . . .    3    10

Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3    3

**Commissioners**

Appointment of for state institutions. . . . . . . . . . . . . . . .    13    1

**Commissions**

Issuance of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3    15

**Committees of legislature**    2    12

**Commodities**

Agricultural commodity commission assessments. . . . . .    8    11

**Common carriers**

Canal companies are. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12    13

Discrimination in charges or service prohibited. . . . . . . .    12    15

Maximum rate of charges, legislature may regulate. . . .    12    18

Railroad companies are. . . . . . . . . . . . . . . . . . . . . . . . . . .  12  13
Regulation of, by commission, authorized. . . . . . . . . .  12  18
Subject to legislative control. . . . . . . . . . . . . . . . . . . . . .  12  13
Telegraph and telephone companies are. . . . . . . . . . . .  12  19
Transportation companies are. . . . . . . . . . . . . . . . . . . . .  12  13
(See Canal, Railroad, Transportation, Telegraph and
  telephone companies)

**Common school construction fund established**                     9  3

**Common school fund**
Enlargement of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9  3
Income from, to be applied to common schools. . . . . . .  9  2
Interest to be expended for current expenses. . . . . . . . .  9  3
Investment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16  5
Losses occasioned by default, fraud, etc., to become
  permanent debt against state. . . . . . . . . . . . . . . . . .  9  5
Principal of, to remain irreducible. . . . . . . . . . . . . . . . .  9  3
Sources of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9  3
(See School fund)

**Common schools**
General and uniform system to be established. . . . . . . .  9  2
Management by special legislation prohibited. . . . . . . .  2  28(15)
Superintendent of public instruction to supervise. . . . . .  3  22
(See Education; Public schools)

**Commutation of sentence**
Report by governor to legislature. . . . . . . . . . . . . . . . . .  3  11

**Commutation of taxes**
Prohibition against state granting. . . . . . . . . . . . . . . . . .  11  9

**Commutation tickets**
Carrier may grant, at special rates. . . . . . . . . . . . . . . . .  12  15

**Compact with United States**
Irrevocable without mutual consent. . . . . . . . . . . . . . . . .  26  1-4

**Compensation**
Appropriation of private property. . . . . . . . . . . . . . . . . .  1  16
Attorney general. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3  21
Change of, during term of public officer. . . . . . . . . . . .
  (Partially repealed by Amendment 54). . . . . . . . . .  2  25
                                                                    3  25
                                                                    4  13
                                                                    11  8
                                                                    28  1
  (Amendment 54). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30  1
Classification of counties in fixing compensation of
  officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11  5
County, township, precinct and district officers
  (Partially repealed by Amendment 54). . . . . . . . . .  11  5,8
Eminent domain, compensation for property taken in. . .  1  16
Extra, not to be granted to public officers. . . . . . . . . . .  2  25
For right-of-way for corporations. . . . . . . . . . . . . . . . . .  1  16
  Jury to ascertain compensation due. . . . . . . . . . . .  1  16
Judges of court of appeals. . . . . . . . . . . . . . . . . . . . . . . .  4  30

Judges of supreme and superior courts. . . . . . . . . . . . .    4  13,14
Jury to ascertain compensation in eminent domain. . . . .    1  16
Justice of peace in cities of over 5,000. . . . . . . . . . . . .    4  10
Member of legislature (Partially repealed by
    Amendment 20). . . . . . . . . . . . . . . . . . . . . . . . . .    2  23
State officers (Partially repealed by Amendment 54). . .    28   1
Increase during term. . . . . . . . . . . . . . . . . . . . . . . . . .    30   1
Waiver of jury trial for ascertaining compensation in
    eminent domain. . . . . . . . . . . . . . . . . . . . . . . . . . .    1  16

**Conditions**

On foreign corporations doing business. . . . . . . . . . . .    12   7

**Confession in open court**

Effect in treason. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  27

**Confronting witnesses**

Right of accused. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  22

**Congress**

Exclusive power of legislature over lands of
United States in state. . . . . . . . . . . . . . . . . . . . . . . . . . .    25   1
    Subject to state's right to serve process. . . . . . . . . .    25   1
Indian lands under jurisdiction of. . . . . . . . . . . . . . . . .    26   2
Legislator elected to, vacates seat. . . . . . . . . . . . . . . . .    2  14
Member of, ineligible to legislature. . . . . . . . . . . . . . . .    2  14
Representatives in, election of. . . . . . . . . . . . . . . . . . . .    2  43

**Congressional districts**

Redistricting commission. . . . . . . . . . . . . . . . . . . . . . .    2  43

**Conscience, freedom of**

Guaranteed to every individual. . . . . . . . . . . . . . . . . .    1  11

**Consent of governed**

Source of governmental powers. . . . . . . . . . . . . . . . . .    1   1

**Conservation, energy, water, or stormwater or sewer
services**

Loans of credit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8  10

**Consolidation**

On competing lines of railroad prohibited. . . . . . . . . . .    12  16

**Constitution**

Amendment, how effected. . . . . . . . . . . . . . . . . . . . . . .    23   1
    Election for voting on, how conducted. . . . . . . . . .    27  15
Form of ballot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27  18
Emergency, legislature's departure from
    Constitution, limited authority. . . . . . . . . . . . . . . .    2  42
Existing rights not affected by. . . . . . . . . . . . . . . . . . . .    27   1
In effect, when. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27  16
Mandatory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  29
Revision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23   2
    Submission to people. . . . . . . . . . . . . . . . . . . . . . .    23   3
United States, supreme law of land. . . . . . . . . . . . . . .    1   2
(See Amendment to Constitution)

**Constitutional convention**

Expenses of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27  19

To revise or amend Constitution. . . . . . . . . . . . . . . . . 23   2


**Contempt**

Each house may punish for. . . . . . . . . . . . . . . . . . . . .  2   9


**Contested elections** (See Elections)


**Continuity of government**

During periods of emergency due to enemy attack. . . . .  2  42


**Contracts**

Affecting price, production, or transportation, prohibited 12  22

Combination between common carriers prohibited
  (Repealed by Amendment 67). . . . . . . . . . . . . . . 12  14

Impairment of obligation prohibited. . . . . . . . . . . . . . .  1  23

State building authority, by. . . . . . . . . . . . . . . . . . . . . .  8   9


**Conveyance**

Jurisdiction of public offense committed on public
  conveyance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  22

Of lands to aliens invalid (Repealed by Amendment 42)  2  33


**Conviction**

No corruption of blood nor forfeiture of estate. . . . . . . .  1  15

On impeachment, two-thirds of senators must concur. . .  5   1


**Convict labor**

Contracts for, prohibited. . . . . . . . . . . . . . . . . . . . . . . .  2  29

Working for benefit of state authorized. . . . . . . . . . . . . .  2  29


**Copartnerships**

Combinations affecting price, production or
  transportation prohibited. . . . . . . . . . . . . . . . . . . . . 12  22


**Copies**

Right of accused to copy of accusation. . . . . . . . . . . . . .  1  22


**Corporate powers**

Not to be granted by special laws. . . . . . . . . . . . . . . . . .  2  28(6)


**Corporate property**

Appropriation by eminent domain not to be abridged. . . 12  10

Taxation of, power not to be surrendered (Stricken by
  Amendment 14). . . . . . . . . . . . . . . . . . . . . . . . . . . .  7   4


**Corporations**

Alien, when (Repealed by Amendment 42). . . . . . . . . . .  2  33

Appropriation of right-of-way. . . . . . . . . . . . . . . . . . . . .  1  16

Bonds

  Not to be owned by counties or cities. . . . . . . . . . .  8   7

  Restriction on issuance. . . . . . . . . . . . . . . . . . . . . . 12   6

Business, may be regulated by law. . . . . . . . . . . . . . . . 12   1

Charter

  Invalid, if unorganized when Constitution adopted,
    conditions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12   2

  Not to be extended. . . . . . . . . . . . . . . . . . . . . . . . 12   3

Combinations affecting price, production, or
   transportation prohibited. . . . . . . . . . . . . . . . . . . .  12  22
Creation by special act prohibited. . . . . . . . . . . . . . . . .   2  28(6)
Debts, relief by special act prohibited. . . . . . . . . . . . . .   2  28(10)
Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12   5
Eminent domain, property subject to. . . . . . . . . . . . . . .  12  10
Equal privileges and immunities. . . . . . . . . . . . . . . . . .   1  12
Foreign, not to be favored. . . . . . . . . . . . . . . . . . . . . . .  12   7
Forfeiture of franchise
   For unlawful combinations. . . . . . . . . . . . . . . . . . .  12  22
   Not to be remitted. . . . . . . . . . . . . . . . . . . . . . . . . .  12   3
Formation, by general and not by special laws. . . . . . . .  12   1
Franchise
   Alienation or lease not to relieve liability. . . . . . . .  12   8
   May be forfeited. . . . . . . . . . . . . . . . . . . . . . . . . . .  12  22
Laws relating to may be amended or repealed. . . . . . . . .  12   1
Legislative control. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12   1
Liability
   For receipt of bank deposits after insolvency. . . . .  12  12
   Not relieved by alienation or lease of franchise. . .  12   8
Loan of school funds to, prohibited (Amended by
   Amendment 44). . . . . . . . . . . . . . . . . . . . . . . . . . .  16   5
Money, issuance prohibited. . . . . . . . . . . . . . . . . . . . . . .  12  11
Monopolies and trusts forbidden. . . . . . . . . . . . . . . . . .  12  22
State building authority. . . . . . . . . . . . . . . . . . . . . . . . .   8   9
State
   Not to subscribe to nor own stock. . . . . . . . . . . . . .  12   9
   Not to surrender power to tax (Stricken by
      Amendment 14). . . . . . . . . . . . . . . . . . . . . . . .   7   4
State credit not to be loaned to. . . . . . . . . . . . . . . . . . . .   8   5
Stockholders
   Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12   4
   Liability in banking, insurance, and joint stock
      companies. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12  11
   May be joined as parties defendant. . . . . . . . . . . . .  12   4
Stock
Increase, consent and notice necessary. . . . . . . . . . . . . .  12   6
Not to be owned by counties or cities. . . . . . . . . . . . . . .   8   7
Restrictions on issuance. . . . . . . . . . . . . . . . . . . . . . . . .  12   6
Sue and be sued, right and liability. . . . . . . . . . . . . . . . .  12   5
Taxation of property, method of (Stricken by
   Amendment 14). . . . . . . . . . . . . . . . . . . . . . . . . . .   7   3
Telephone and telegraph lines, organization to construct  12  19
(See Franchise)

**Corrupt solicitation**
Compulsory testimony in cases of. . . . . . . . . . . . . . . . . .   2  30
Disqualification for holding office. . . . . . . . . . . . . . . . . .   2  30
Punishment to be provided by legislature. . . . . . . . . . . .   2  30

**Corruption in office**
Judges, attorney general and prosecuting attorneys
   removable by legislature. . . . . . . . . . . . . . . . . . . . .   4   9

**Corruption of blood**
Conviction not to work. . . . . . . . . . . . . . . . . . . . . . . . . .   1  15

**County**
Apportionment

Of representatives among. . . . . . . . . . . . . . . . . . . .   22    2
Of senators. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22    1
Assignment of superior court judges. . . . . . . . . . . . . . .    4    2(a)
                                                                    4    5
Bonds, nonrecourse revenue for industrial development
    projects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32    1
Classification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11    5
Combined city and county. . . . . . . . . . . . . . . . . . . . . .   11   16
Corporate bonds or stocks not to be owned. . . . . . . . . . .    8    7
County seat removal. . . . . . . . . . . . . . . . . . . . . . . . . .   11    2
    Not to be changed by special act. . . . . . . . . . . . . .    2   28(18)
Credit not to be loaned, exceptions. . . . . . . . . . . . . . . .    8    7
Debts
    Apportionment on division or enlargement. . . . . .   11    3
    Limit of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8    6
    Private property not to be taken in satisfaction of.   11   13
Division, how effected. . . . . . . . . . . . . . . . . . . . . . . . .   11    3
Existing to be legal subdivision of state. . . . . . . . . . . . .   11    1
Government, legislature to provide system. . . . . . . . . . .   11    4
Home rule charter, authorized. . . . . . . . . . . . . . . . . . . .   11    4
    For combined city-county. . . . . . . . . . . . . . . . . . . .   11   16
Indebtedness, limit of. . . . . . . . . . . . . . . . . . . . . . . . . .    8    6
    Additional, assent of voters necessary. . . . . . . . . .    8    6
    Assessment as basis of, how ascertained. . . . . . . .    8    6
    Restriction as to purpose. . . . . . . . . . . . . . . . . . . .    8    6
Lines, not to be changed by special act. . . . . . . . . . . . .    2   28(18)
Location of county seat not to be changed by special act    2   28(18)
Moneys to be deposited with treasurer. . . . . . . . . . . . . .   11   15
    Use of, by official, a felony. . . . . . . . . . . . . . . . . . .   11   14
New county, formation by special act not prohibited. . .    2   28(18)
    Restrictions on. . . . . . . . . . . . . . . . . . . . . . . . . . . .   11    3
Officers
    Election, duties, terms, compensation. . . . . . . . . . .   11    5
    Increase in compensation during term. . . . . . . . . .   30    1
    Recall of officers (See Recall)
Police and sanitary regulations, power to enforce. . . . . .   11   11
School funds may be invested in bonds of (Amended by
    Amendment 44). . . . . . . . . . . . . . . . . . . . . . . . . . . .   16    5
Seal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27    9
Stock or bonds of corporation not to be owned. . . . . . . .    8    7
Superior court located in each county. . . . . . . . . . . . . . .    4    5
    Taxation, power to assess and collect. . . . . . . . . . .   11   12
Exemption of county property from taxation. . . . . . . . . .    7    1
Taxes, liability for proportionate share of state. . . . . . . .   11    9
    Local, legislature not to impose. . . . . . . . . . . . . . .   11   12
    One percent limitation. . . . . . . . . . . . . . . . . . . . . .    7    2
Township organization in. . . . . . . . . . . . . . . . . . . . . . .   11    4

**County attorney** (See Prosecuting attorney)

**County clerk**
    Accountability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11    5
    Clerk of superior court, ex officio. . . . . . . . . . . . . . .    4   26
    Duties, term, and salary, legislature to provide. . . . . . .   11    5
    Election to be provided for by legislature. . . . . . . . . . .   11    5
    First under Constitution, time of. . . . . . . . . . . . . .   27    7

**County commissioners**

    Election, compensation, etc., legislature to provide.... 11  5

    Vacancies in legislature, partisan county elective office,
        filled by.................................. 2  15

    Vacancies in township, precinct, and road district offices
        filled by.................................. 11  6

**County indebtedness**

    Apportionment, when county divided or enlarged..... 11  3

        Rights of creditors not affected............... 11  3

    Increase permitted for water, light and sewers........ 8  6

    Limit of..................................... 8  6

    Private property not to be taken in satisfaction of...... 11  13

**County lines**

    Change by special act prohibited.................... 2  28(18)

**County officers**

    Accountability for fees......................... 11  5

    Bonds unaffected by change in government.......... 27  14

    Compensation to be regulated by legislature.......... 11  5

        Classification of counties for purpose of fixing
            compensation....................... 11  5

        Increase during term...................... 30  1

    Duties and term to be prescribed by legislature........ 11  5

    Election

        Biennial............................... 6  8

        Legislature to provide for the election of....... 11  5

        Time of................................ 6  8

    Eligibility restricted to two terms in succession
        (Repealed by Amendment 22)................ 11  7

    Fees

        Accountability for........................ 11  5

        Use of, a felony.......................... 11  14

    Partisan elective, vacancies, how filled............. 2  15

    Public money, use of, felonious................... 11  14

    Recall of (See Recall of officers)

    Salaries..................................... 11  5,8

    Succession of duties, in emergency, temporary,
        legislature............................ 2  42

    Term of office not to be extended................. 11  8

    Term, power of legislature to prescribe............. 11  5

    Territorial, how long to hold office................ 27  14

    Vacancies, how filled.......................... 11  6

    Vacancies, partisan elective offices, how filled........ 2  15

**County seat**

    Change or location by special act prohibited.......... 2  28(18)

    Continuity of government, enemy attack............. 2  42

    Removal, proceedings for....................... 11  2

**County treasurer**

    Election, compensation, duties and accountability,
        legislature to provide..................... 11  5

**Court commissioners**

    Appointment and powers........................ 4  23

    Excepted from prohibition against compensation by fees  4  13

**Court of appeals**

| | | |
|---|---|---|
| Administration and procedure. | 4 | 30 |
| Authorized. | 4 | 30 |
| Conflicts with other constitutional provisions. | 4 | 30 |
| Judges. | 4 | 30 |
| Jurisdiction. | 4 | 30 |
| Review of superior court actions. | 4 | 30 |

**Courts**

| | | |
|---|---|---|
| Inferior, legislature to provide. | 4 | 1 |
| Jurisdiction and powers to be prescribed. | 4 | 12 |
| Judicial power vested in specified courts. | 4 | 1 |
| Officers to be salaried, exceptions. | 4 | 13 |
| Of record | | |
| Defined. | 4 | 11 |
| Judges not to practice law. | 4 | 19 |
| Temporary performance of judicial duties. | 4 | 2(a) |

(See District courts; Inferior courts; Justice of Peace; Municipal courts; Probate courts; Superior court; Supreme court)

**Credit**

| | | |
|---|---|---|
| Agricultural promotional activities, use of commodity assessments. | 8 | 11 |
| Energy, water, or stormwater or sewer services loans for conservation. | 8 | 10 |
| Of county or municipal corporations not to be given or loaned, exceptions. | 8 | 7 |
| Of state not to be given or loaned. | 8 | 5 |
| | 12 | 9 |
| Port district promotional activities. | 8 | 8 |
| State building authority. | 8 | 9 |

**Crimes**

| | | |
|---|---|---|
| Accused not required to criminate self. | 1 | 9 |
| Except in case of bribery or corrupt solicitation. | 2 | 30 |
| Conviction shall not work corruption of blood. | 1 | 15 |
| Cruel punishment prohibited. | 1 | 14 |
| Ex post facto laws not to be passed. | 1 | 23 |
| Infamous, conviction as bar to voting. | 6 | 3 |
| Persons charged with to be bailable. | 1 | 20 |
| Prosecution may be by information. | 1 | 25 |
| In name of state. | 4 | 27 |

(See Criminal actions)

**Criminal actions**

| | | |
|---|---|---|
| Advance payment of money to secure rights of accused prohibited. | 1 | 22 |
| Appeal, right of accused. | 1 | 22 |
| Appearance by accused in person or counsel. | 1 | 22 |
| Double jeopardy, prohibition against. | 1 | 9 |
| Evidence, accused not required to incriminate self. | 1 | 9 |
| Jurisdiction | | |
| Appellate of supreme court. | 4 | 4 |
| Of offenses committed on public conveyances. | 1 | 22 |
| Original of superior court. | 4 | 6 |
| Limitation by special act prohibited. | 2 | 28(17) |
| Process, style of. | 4 | 27 |
| Prosecution by information allowed. | 1 | 25 |

In name of state. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  27
        On change from territorial to state government. . .  27  5
Rights of accused. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  22
(See Actions; Crimes)

**Cruel punishment**
    Not to be inflicted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  14

**Damage**
    To private property for public or private use to be
        compensated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  16

**Dangerous employments**
    Protection to persons engaged in. . . . . . . . . . . . . . . . . . . .    2  35

**Death**
    Succession to office upon death or disability of governor   3  10

**Debate**
    Members of legislature not liable for words spoken. . . .    2  17

**Debts**
    Corporate, fictitious increase void. . . . . . . . . . . . . . . . . .   12   6
    Liability of stockholders. . . . . . . . . . . . . . . . . . . . . . . . . .   12   4,11
    Due territory to inure to state. . . . . . . . . . . . . . . . . . . . . .   27   3
    Imprisonment for, prohibited, exception. . . . . . . . . . . .    1  17
    Municipal corporations, limitation on. . . . . . . . . . . . . .    8   6
    Release by special act prohibited. . . . . . . . . . . . . . . . . .    2  28(10)
    State building authority. . . . . . . . . . . . . . . . . . . . . . . . . .    8   9
    Limitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8   1(g)
    State, power to contract. . . . . . . . . . . . . . . . . . . . . . . . . .    8   1-3
    In case of invasion, insurrection, etc.. . . . . . . . . . . . . .    8   2
    Limitation on power . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8   1,3
    Territorial, assumed by state. . . . . . . . . . . . . . . . . . . . .   26   3
    (See City; County indebtedness; Indebtedness of
        corporations; State indebtedness)

**Decisions**
    Superior court judge, within what time. . . . . . . . . . . . .    4  20
    Supreme court, in writing and grounds stated. . . . . . . .    4   2
    Publication, free to anyone. . . . . . . . . . . . . . . . . . . . . . .    4  21
    Reporter for, appointment. . . . . . . . . . . . . . . . . . . . . . . .    4  18

**Declaration of rights**
    Statement in Constitution. . . . . . . . . . . . . . . . . . . . . . . .    1   1-32

**Deeds**
    Validation by special law prohibited. . . . . . . . . . . . . . .    2  28(9)

**Defects and omissions in law**
    Report to governor by supreme judges. . . . . . . . . . . . . .    4  25
    To supreme by superior judges. . . . . . . . . . . . . . . . . . . .    4  25

**Defense**
    Of officer removed on charges. . . . . . . . . . . . . . . . . . . . .    4   9
    Right of accused in criminal actions. . . . . . . . . . . . . . .    1  22

**Deficits in revenue**

State may contract debts to meet.................... 8   1
Tax may be levied to pay.......................... 7   8

**Delinquency in office** (See Corruption in office)

**Deposits**

Bank officers liable for, when...................... 12  12
Public moneys with treasurer required............... 11  15

**Depot**

Jurisdiction of public offense committed at........... 1   22

**Developmentally disabled**

Trust funds, investments.......................... 29  1

**Disability**

Property of person under, cannot be affected by special
laws...................................... 2   28(4)

**Disapproval of bills**

By governor.................................... 3   12
Initiative measure................................ 2   1

**Discipline**

Of state militia, legislature to prescribe.............. 10  2

**Disclaimer**

State's title to patented lands...................... 17  2
Unappropriated public and Indian lands.............. 26  2

**Discrimination**

By common carrier prohibited...................... 12  15,18
By telegraph and telephone companies in handling
messages prohibited........................ 12  19
Education to be provided all children............... 9   1
In favor of foreign corporations, prohibited.......... 12  7
Railroad
Prohibited from favoring one express company... 12  21
Prohibited from favoring one telegraph company. 12  19

**Disorderly behavior**

Each house may punish for........................ 2   9

**Disqualification**

On conviction for bribery or corrupt solicitation....... 2   30
On impeachment................................ 5   2

**District courts**

Equity jurisdiction.............................. 4   6
Transfer of causes from territorial to superior court.... 27  8

**District officers**

Duties, term, compensation, legislature to prescribe.... 11  5
Election
Biennial................................... 6   8
Legislature to provide for................... 11  5

Time of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6   8
Recall of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  33,34
Road district, vacancy. . . . . . . . . . . . . . . . . . . . . . . . . . 11   6
Territorial, to hold office until when. . . . . . . . . . . . . . . 27  14
Official bonds unaffected by change in government. . . .  27  14

**Ditches**
Taking of private property for. . . . . . . . . . . . . . . . . . . . .  1  16

**Divorce**
Jurisdiction of superior court. . . . . . . . . . . . . . . . . . . . .  4   6
Legislature not to grant. . . . . . . . . . . . . . . . . . . . . . . .  2  24
(See Annulment of marriage)

**Docks**
Legislature may authorize lease of harbor areas,
    limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15   2
(See Area reserved; Harbors)

**Double jeopardy**
Prohibition against. . . . . . . . . . . . . . . . . . . . . . . . . . . .  1   9

**Drains**
Taking of private property for. . . . . . . . . . . . . . . . . . . . .  1  16

**Drugs and medicines**
Legislature to regulate sale. . . . . . . . . . . . . . . . . . . . . . 20   2

**Due process of law**
Life, liberty, property not to be taken without. . . . . . . . .  1   3

**Earnings**
Combinations by common carriers to share, prohibited
    (Repealed by Amendment 67). . . . . . . . . . . . . . . 12  14

**Education**
Higher education permanent funds. . . . . . . . . . . . . . . . 16   6
No distinction on account of race, color or sex. . . . . . . .  9   1
Provision for, to be made by state. . . . . . . . . . . . . . . . .  9   1
Sale of lands for purposes of. . . . . . . . . . . . . . . . . . . . .  9   3
(See Common schools; Public schools)

**Effective date**
Of bills, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  41
Of Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27  16

**Elections**
Ballot required, form. . . . . . . . . . . . . . . . . . . . . . . . . . .  6   6
Civil interference prohibited. . . . . . . . . . . . . . . . . . . . .  1  19
Constitution
    Amendment of, submission to vote. . . . . . . . . . . . 23   1
    Calling convention to revise. . . . . . . . . . . . . . . . . 23   2
    Revision, submission of instrument. . . . . . . . . . . . 23   3
    Vote on adoption of first, under territorial laws. . . 27  15
Contest for office of superior judge (first election). . . . . 27  12
County home-rule charter. . . . . . . . . . . . . . . . . . . . . . 11   4
County seat, removal of. . . . . . . . . . . . . . . . . . . . . . . . 11   2

Criminals, insane persons, idiots excluded from elective franchise............................... 6  3

Electors (See Electors)

Executive officers, elections of................... 3  1

First election according to territorial laws........... 27 15

    Of representative to congress (Repealed by Amendment 74)...................... 27 13

Free, equal and undisturbed...................... 1 19

Freeholders to frame city charter.................. 11 10

Incompetent persons, disqualification.............. 6  3

Increasing municipal indebtedness................ 8  6

Initiative measures (See Initiative and referendum)

Judges

    Of court of appeals........................ 4 30

    Of superior court.......................... 4  5,29

    Of supreme court.......................... 4  3

Legislative, to be viva voce...................... 2 27

Legislature

    Each house judge of its own................. 2  8

    Representatives........................... 2  4,5

    Senators................................. 2  6

Mentally incompetent persons.................... 6  3

Military interference prohibited.................. 1 19

Officers

    Not regulated by Constitution, legislature to provide for.......................... 27 11

    Under Constitution, time of first.............. 27  7

Presidential elections, voter's residence............. 6 1A

Privilege of voters from arrest at................. 6  5

Qualifications of voters (See Voters)

Recall of officers (See Recall of officers)

Referendum (See Initiative and referendum)

Registration law to be enacted................... 6  7

School, women may be accorded franchise (Stricken by Amendment 5)........................... 6  2

Seat of government, determination................ 14  1

Secrecy of ballot required....................... 6  6

State officers, executive

    Certificates of election to be given............. 3  4

    Contests, legislature to decide................ 3  4

    Equal vote, legislature to choose............. 3  4

    Returns to secretary of state................. 3  4

    Declaration of result....................... 3  4

Supreme court judges........................... 4  3

Superior court judges........................... 4  5,29

Time of, for state, county and district officers........ 6  8

Vacancy in office of governor, election to fill........ 3 10

Voter qualifications............................ 6  1

(See Vote; Voter)

**Elective franchise**

Denial on account of sex prohibited in school elections (Stricken by Amendment 5).................. 6  2

Idiots, insane persons and convicted felons excluded from.................................... 6  3

Presidential elections, voter's residence............. 6 1A

(See Elections; Electors; Voter)

**Electors**

Exempt from military duty, when. . . . . . . . . . . . . . . . . .    6    5
Privilege from arrest at election, except. . . . . . . . . . . .    6    5
Qualifications of voters (See Voter)
Residence not lost in certain cases. . . . . . . . . . . . . . . .    6    4
Secrecy in voting, legislature to secure. . . . . . . . . . . . .    6    6

**Eligibility**
Judges of supreme and superior courts, qualifications. .    4    17
Ineligible to other than judicial offices. . . . . . . . . . . . .    4    15
Members of legislature
Ineligible to offices created by them. . . . . . . . . . . . . . .    2    13
Qualifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    7
State officers, qualifications. . . . . . . . . . . . . . . . . . . . .    3    25
Voters (See Elections; Voter)

**Emergency clause**
Act non-referrable. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(b)

**Emergency, national**
(See Invasion and attack)

**Eminent domain**
Compensation required. . . . . . . . . . . . . . . . . . . . . . . . .    1    16
Corporate property and franchises subject to. . . . . . . . .    12    10
Judicial question, use for which property taken is. . . . . .    1    16
Jury to ascertain compensation, waiver. . . . . . . . . . . . .    1    16
Private use, taking of property for prohibited, exceptions    1    16
Reclamation of land is public use. . . . . . . . . . . . . . . . .    1    16
Rights-of-way to be compensated for. . . . . . . . . . . . . . .    1    16
Settlement of land is public use. . . . . . . . . . . . . . . . . . .    1    16
Telegraph and telephone companies granted right. . . . .    12    19
Ways of necessity, taking of private property for private
    use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1    16

**Emoluments, privileges and powers**
Hereditary, prohibited. . . . . . . . . . . . . . . . . . . . . . . . . .    1    28

**Employments dangerous to life**
Legislature to protect persons in. . . . . . . . . . . . . . . . . .    2    35

**Enacting clause**
Of statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    18
Initiated acts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(d)

**Enemy attack, emergency due to**
(See Invasion and attack)

**Energy, water, or stormwater or sewer services conservation**
Loaning of credit for structures or equipment. . . . . . . .    8    10

**Enumeration of rights**
Not to deny others reserved. . . . . . . . . . . . . . . . . . . . . .    1    30

**Equal rights**
Not to be denied because of sex. . . . . . . . . . . . . . . . . . .    31    1,2

**Equal suffrage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6    1

**Equity**

Appellate jurisdiction of supreme court. . . . . . . . . . . . .    4    4
Original jurisdiction of superior court. . . . . . . . . . . . . .    4    6

**Evidence**

Contested election (first election) for superior judge,
    manner of taking. . . . . . . . . . . . . . . . . . . . . . . . . . . .   27   12
Criminating, person not compelled to give against
    himself. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1    9
Except in bribery cases. . . . . . . . . . . . . . . . . . . . . . . .    2   30
Treason, what necessary for conviction. . . . . . . . . . . . .    1   27
(See Testimony)

**Excessive bail and fines**

Not to be imposed. . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   14

**Exclusive legislation**

Congress has over certain lands of United States. . . . . .   25    1
Subject to state's right to serve process. . . . . . . . . . . . .   25    1
Over unallotted Indian lands. . . . . . . . . . . . . . . . . . . . .   26    2

**Exclusive privileges**

Of unorganized corporations, invalid, when. . . . . . . . .   12    2
Prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   12

**Excursion and commutation tickets**

Carrier may grant special rates. . . . . . . . . . . . . . . . . . .   12   15

**Execution**

Private property not to be taken for public debt. . . . . . .   11   13
Rolling stock of railroad liable to. . . . . . . . . . . . . . . . .   12   17

**Executive department**

Consists of certain officers. . . . . . . . . . . . . . . . . . . . . .    3    1
Election of officers of. . . . . . . . . . . . . . . . . . . . . . . . . .    3    1
Records of to be kept by secretary of state. . . . . . . . . . .    3   17

**Executive power**

Supreme, vested in governor. . . . . . . . . . . . . . . . . . . . .    3    2
(See Governor)

**Exemptions**

Homestead, from forced sale. . . . . . . . . . . . . . . . . . . . .   19    1
Military duty, to whom. . . . . . . . . . . . . . . . . . . . . . . . .   10    6
Taxation, what property free from. . . . . . . . . . . . . . . . .    7    1
    Indian lands exempt, when. . . . . . . . . . . . . . . . . .   26    2
    Lands and property of United States. . . . . . . . . . . .   26    2
    Retired persons. . . . . . . . . . . . . . . . . . . . . . . . . . .    7   10

**Existing rights**

Change in government not to affect. . . . . . . . . . . . . . . .   27    1

**Expenses**

Constitutional convention to be provided for. . . . . . . . .   27   19
State may contract debts to meet. . . . . . . . . . . . . . . . . .    8    1

**Ex post facto law**
Passage prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . .    1  23

**Express companies**
Railroads to grant equal terms to all. . . . . . . . . . . . . . .   12  21

**Expulsion of members**
Powers of each house. . . . . . . . . . . . . . . . . . . . . . . . . . .    2   9
Restrictions on. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   9

**Extension of time for collection of taxes**
Special legislation prohibited. . . . . . . . . . . . . . . . . . . . .    2  28(5)

**Extinguishment of debts**
Special legislation prohibited. . . . . . . . . . . . . . . . . . . . .    2  28(10)

**Extra compensation**
Prohibited to public officers, etc.. . . . . . . . . . . . . . . . . .    2  25

**Extra session**
Legislature, when to be convened. . . . . . . . . . . . . . . . .    3   7

**Factories**
Employees to be protected. . . . . . . . . . . . . . . . . . . . . . .    2  35

**Fares and freights** (See Railroad companies)

**Farms**
Taxation based on actual use. . . . . . . . . . . . . . . . . . . . .    7  11

**Federal officers**
Not eligible to legislature. . . . . . . . . . . . . . . . . . . . . . . .    2  14

**Fees**
Accountability of county and local officers for. . . . . . . .   11   5
Accused in criminal cases as required to advance. . . . . .    1  22
Certain used exclusively for highway purposes. . . . . . . .    2  40
Judicial officers prohibited from receiving. . . . . . . . . . .    4  13
Justices of the peace not to receive, when. . . . . . . . . . . .    4  10

**Felony**
Original jurisdiction of superior court. . . . . . . . . . . . . . .    4   6
Use of public money by officer. . . . . . . . . . . . . . . . . . . .   11  14

**Ferries**
Authorization by special legislation forbidden. . . . . . . .    2  28(3)

**Fictitious issue**
Of stock or indebtedness void. . . . . . . . . . . . . . . . . . . . .   12   6

**Fines**
Accrued to territory inure to state. . . . . . . . . . . . . . . . . .   27   3
Excessive, not to be imposed. . . . . . . . . . . . . . . . . . . . . .    1  14
Governor has power to remit. . . . . . . . . . . . . . . . . . . . . .    3  11
    Must report remissions to legislature. . . . . . . . . . .    3  11
Remission by special act prohibited. . . . . . . . . . . . . . . .    2  28(14)

**Fiscal statement**

Annual publication required. . . . . . . . . . . . . . . . . . . . . 7 7

**Flumes**

Taking of private property for. . . . . . . . . . . . . . . . . . . 1 16

**Forcible entry and detainer**

Appellate jurisdiction of supreme court. . . . . . . . . . . . . 4 4

Original jurisdiction of superior court. . . . . . . . . . . . . 4 6

**Foreign corporations**

Not to be favored. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 7

**Foreign officers**

Not eligible to legislature. . . . . . . . . . . . . . . . . . . . . . 2 14

**Forfeiture**

Accrued to territory inures to state. . . . . . . . . . . . . . 27 3

Corporate charter or franchise, no remission. . . . . . . . . 12 3

Estate, conviction not to work. . . . . . . . . . . . . . . . . . . 1 15

Franchise, for combination in restraint of trade. . . . . . . 12 22

Governor has power to remit. . . . . . . . . . . . . . . . . . . . 3 11

Must report remissions to legislature. . . . . . . . . . . 3 11

Judicial office, absence causes. . . . . . . . . . . . . . . . . . 4 8

Remission by special act prohibited. . . . . . . . . . . . . . . 2 28(14)

**Forts, dockyards, etc.**

Congress to have exclusive control. . . . . . . . . . . . . . . 25 1

**Forty mill limitation**

(Stricken by Amendment 14). . . . . . . . . . . . . . . . . . . . 7 2

**Franchise**

Alienation or lease not to relieve liability. . . . . . . . . . . 12 8

Corporate, creation by special act forbidden. . . . . . . . . 12 1

Extension by legislature prohibited. . . . . . . . . . . . . . . . 12 3

Forfeiture for unlawful combinations. . . . . . . . . . . . . . 12 22

Forfeiture not to be remitted. . . . . . . . . . . . . . . . . . . . 12 3

Invalid, if unorganized, when. . . . . . . . . . . . . . . . . . . . 12 2

Irrevocable grant prohibited. . . . . . . . . . . . . . . . . . . . . 1 8

Liability not relieved by lease, etc.. . . . . . . . . . . . . . . . 12 8

Subject to eminent domain. . . . . . . . . . . . . . . . . . . . . . 12 10

Taxation, state not to surrender (Stricken by
Amendment 14). . . . . . . . . . . . . . . . . . . . . . . . . . . 7 4

(See Corporations; Elections)

**Freedom of conscience**

Guaranteed in matters of religious belief. . . . . . . . . . . . 1 11

(See Religion)

**Freedom of speech and press**

Guaranteed to every person. . . . . . . . . . . . . . . . . . . . . 1 5

Legislators not liable for words in debate. . . . . . . . . . . 2 17

**Free passes**

Grant of, to state officers prohibited. . . . . . . . . . . . . . 12 20

Public officers forbidden to accept. . . . . . . . . . . . . . . . 2 39

**Freight rates**

    Regulation by legislature authorized. . . . . . . . . . . . . . .  12  18

**Fundamental principles**

    Frequent recurrence to, essential. . . . . . . . . . . . . . . . . .   1  32

**Funds** (See Appropriations; Common school construction
fund; Common school fund; Higher education permanent
funds; Highway fund; Industrial insurance trust fund; Public
money; School fund)

**Government**

    Change of

        Completion of pending actions. . . . . . . . . . . . . . .  27   5,8

        Continuance of existing laws and rights. . . . . . . . .  27   1,2

    Emergency, continuance of government, legislative
        power. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  42

    Perpetuity of, what essential. . . . . . . . . . . . . . . . . . . .   1  32

    Purposes of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1   1

    Source of powers. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1   1

**Governor**

    Appointment of regents, etc., of state institutions. . . . . .  13   1

    Approval of laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3  12

    Assignment of superior judge to other county. . . . . . . . .   4   5,7

    Attorney general, succession to governorship. . . . . . . . .   3  10

    Auditor, succession to governorship. . . . . . . . . . . . . . .   3  10

    Commander-in-chief of state militia. . . . . . . . . . . . . . .   3   8

    Commissioner of public lands, succession to
        governorship. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3  10

    Commissions issued by state, signed by. . . . . . . . . . . . .   3  15

    Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   1

    Election to fill vacancy in office. . . . . . . . . . . . . . . . . .   3  10

    Execution of laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   5

    Extension of leave of absence of judicial officer. . . . . . .   4   8

    Extra session of legislature, power to convene. . . . . . . .   3   7

    Failure of person regularly elected to qualify, succession
        on. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3  10

    Impeachment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5   1,2

    Information in writing may be required from state
        officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   5

    Laws, may call militia to execute. . . . . . . . . . . . . . . . . .  10   2

    Lieutenant governor, succession of to office. . . . . . . . . .   3  10

    Messages to legislature. . . . . . . . . . . . . . . . . . . . . . . . .   3   6

    Militia officers commissioned by. . . . . . . . . . . . . . . . . .  10   2

    Pardoning power vested in. . . . . . . . . . . . . . . . . . . . . . .   3   9

        Report to legislature of pardons, etc., granted. . . .   3  11

        Restrictions prescribed by law. . . . . . . . . . . . . . .   3   9

    Records kept at seat of government. . . . . . . . . . . . . . . .   3  24

    Remission of fines and forfeitures. . . . . . . . . . . . . . . . .   3  11

        Report to legislature with reasons. . . . . . . . . . . . .   3  11

    Removal or disability, who to act. . . . . . . . . . . . . . . . . .   3  10

    Residence at seat of government. . . . . . . . . . . . . . . . . . .   3  24

    Salary (See Salaries)

    Secretary of state as succeeding to office. . . . . . . . . . . .   3  10

    Special session of legislature, power to convene. . . . . . .   2  12

    Succession in case of vacancy. . . . . . . . . . . . . . . . . . . .   3  10

| | | |
|---|---|---|
| Superintendent of public instruction, succession to governorship. | 3 | 10 |
| Supreme executive power vested in. | 3 | 2 |
| Term of office. | 3 | 2 |
| Treasurer, succession to governorship. | 3 | 10 |
| Vacancies | | |
| In certain state offices, filled by. | 3 | 13 |
| In legislature, filled by, when. | 2 | 15 |
| In superior court, filled by. | 4 | 5 |
| In supreme court, filled by. | 4 | 3 |
| Vacancy in office of. | 3 | 10 |
| Succession, enemy attack. | 2 | 42 |
| Veto of bill or sections and return with objections. | 3 | 12 |
| Measures initiated by or referred to the people. | 2 | 1(d) |

**Grand jury**

| | | |
|---|---|---|
| Summoned only on order of superior court. | 1 | 26 |

**Granted lands**

| | | |
|---|---|---|
| Sale of. | 16 | 1-4 |
| (See Lands; Public lands) | | |

**Habeas corpus**

| | | |
|---|---|---|
| Jurisdiction | | |
| Original and appellate of supreme court. | 4 | 4 |
| Original of superior court. | 4 | 6 |
| Suspension of writ prohibited, except. | 1 | 13 |
| Writs | | |
| Issuance and service on nonjudicial days. | 4 | 6 |
| Judges of supreme court may issue. | 4 | 4 |
| Returnable before whom. | 4 | 4 |

**Harbors**

| | | |
|---|---|---|
| Area to be reserved for landings, etc.. | 15 | 1 |
| Commission to establish harbor lines. | 15 | 1 |
| Restrictions on sale by state of lands or rights. | 15 | 1 |
| (See Area reserved; Docks; Wharves) | | |

**Head of family**

| | | |
|---|---|---|
| Power of legislature to exempt property of from taxation | 7 | 1 |

**Health**

(See Public health)

**Heir at law**

| | | |
|---|---|---|
| Not to be determined by special law. | 2 | 28(1) |

**High crimes or misdemeanors**

| | | |
|---|---|---|
| Impeachment of public officers for. | 5 | 2 |

**High schools**

| | | |
|---|---|---|
| Included in public school system. | 9 | 2 |

**Higher education permanent funds**

| | | |
|---|---|---|
| Investment. | 16 | 6 |

| | | |
|---|---|---|
| **Highway fund.** | 2 | 40 |

**Highways**

    Opening or altering by special legislation prohibited, exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2  28(2)

    (See Streets and roads)

**Holiday**

    (See Legal holiday)

**Home**

    Privacy of, guaranteed . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1  7

    Soldiers not to be quartered in, except . . . . . . . . . . . . . . 1  31

**Home-rule charter**

    Counties authorized to frame . . . . . . . . . . . . . . . . . . . . . . . 11  4

    For combined city-county . . . . . . . . . . . . . . . . . . . . . . . . . 11  16

**Homestead**

    Exemption from forced sale . . . . . . . . . . . . . . . . . . . . . . . . 19  1

**House of representatives**

    Elections, biennial after 1890 . . . . . . . . . . . . . . . . . . . . . . 2  5

    Legislative authority vested in . . . . . . . . . . . . . . . . . . . . . 2  1

    Members, how and when chosen . . . . . . . . . . . . . . . . . . . 2  4,5

    Number of representatives . . . . . . . . . . . . . . . . . . . . . . . . 2  2

    Powers

        Impeachment, sole power vested in . . . . . . . . . . . 5  1

        Legislative, vested in . . . . . . . . . . . . . . . . . . . . . . . 2  1

    Quorum of house . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2  8

    Redistricting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2  43

    Vacancy, how filled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2  15

    (See Legislature; Representatives)

**Immigration**

    Bureau of, established . . . . . . . . . . . . . . . . . . . . . . . . . . . 2  34

**Immunities**

    Electors privileged from arrest at elections . . . . . . . . . . 6  5

    Equal to all citizens and corporations . . . . . . . . . . . . . . . 1  12

    Imprisonment for debt prohibited, except . . . . . . . . . . . 1  17

    Irrevocable grant of, prohibited . . . . . . . . . . . . . . . . . . . 1  8

    Loss or damage to property prohibited without just compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1  16

    Members of legislature

        Privileged from arrest, exceptions . . . . . . . . . . . . 2  16

        Privileged from service of civil process, when . . . . 2  16

        Salaries for legislators, elected state officials, and judges, referendum petition . . . . . . . . . . . . . . 28  1

    Militia privileged from arrest at muster, except . . . . . . . . 10  5

    Soldiers not to be quartered in homes, except . . . . . . . . 1  31

    Special grant of, prohibited . . . . . . . . . . . . . . . . . . . . . . . 1  12

    Twice in jeopardy, accused not to be put . . . . . . . . . . . . 1  9

**Impeachment**

    House of representatives has sole power . . . . . . . . . . . . . 5  1

    Officers liable to . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5  2

        Judgment effects removal and disqualification for office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5  2

12/27/2016 9:01 AM          [ 232 ]          Index

Liability to criminal prosecution. . . . . . . . . . . . . . . . . .   5   2
Trial by senate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5   1
      Chief justice presides, when. . . . . . . . . . . . . . . .   5   1
(See Recall of officers)

**Imposts**
Appellate jurisdiction of supreme court. . . . . . . . . . . . . .   4   4
Original jurisdiction of superior court. . . . . . . . . . . . . .   4   6

**Imprisonment for debt**
Prohibited, except in case of absconding debtors. . . . . .   1  17

**Incompetency in office**
Officers removable by legislature for, conditions. . . . . .   4   9

**Indebtedness of corporations**
Fictitious increase void. . . . . . . . . . . . . . . . . . . . . . . . .   12   6
Liability of stockholders. . . . . . . . . . . . . . . . . . . . . . . .   12   4
      In bank, insurance and joint stock companies   12  11
Relief from. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
      By lease or alienation of franchise prohibited. . . .   12   8
      By special legislation prohibited. . . . . . . . . . . . . .   2  28(10)
(See Corporations)

**Indian lands**
Disclaimed by state of title. . . . . . . . . . . . . . . . . . . . . .   26   2
Subject to jurisdiction of United States. . . . . . . . . . . . .   26   2
Taxation of, when state may impose. . . . . . . . . . . . . . . .   26   2
Exemption from. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26   2

**Indians**
Exempt from property taxation, when. . . . . . . . . . . . . . .   26   2
Excluded from enumeration of inhabitants (Repealed by
      Amendment 74). . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   3

**Indictment**
Prosecutions of offenses by. . . . . . . . . . . . . . . . . . . . . . .   1  25
Right of accused to copy of. . . . . . . . . . . . . . . . . . . . . . .   1  22

**Individual rights**
Government to protect and maintain. . . . . . . . . . . . . . . .   1   1
Secured by recurrence to fundamental principles. . . . . .   1  32

**Individual security**
Private affairs not to be disturbed. . . . . . . . . . . . . . . . .   1   7

**Industrial development**
Nonrecourse revenue bonds. . . . . . . . . . . . . . . . . . . . . .   32   1
Port districts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8   8

**Industrial insurance trust fund**
Investments of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29   1

**Infamous crimes**
Persons convicted of, excluded from elective franchise.   6   3

**Infants** (See Children; Minors)

**Inferior courts**

Appeal lies to superior court. . . . . . . . . . . . . . . . . . . . . .    4    6

Jurisdiction and powers, legislature to prescribe. . . . . . .    4    12

Legislature to provide. . . . . . . . . . . . . . . . . . . . . . . . . . .    4    1


**Information**

Offenses may be prosecuted by. . . . . . . . . . . . . . . . . . .    1    25


**Initiative and referendum**

Amendment of acts approved by the people

    (Superseded by Amendment 26). . . . . . . . . . . . . . .    2    1(c)

    (Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . .    2    41

Amendment of measure submitted to legislature. . . . . . .    2    1(a)

Ballot where conflicting measures are submitted to the
    people. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Certification of petitions. . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Change or amendment of initiative measure, prohibition
    against (Superseded by Amendment 26). . . . . . . .    2    1(c)

    (Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . .    2    41

Conflicting measures. . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Effective date of acts or bills subject to referendum
    (Superseded by Amendment 26). . . . . . . . . . . . . .    2    1(c)

(Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    41

Effective date of measure after approval on submission
    to the people. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(d)

Election at which proposed measure is submitted to
    voter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Election for amendment or repeal of bills approved by
    electors (Superseded by Amendment 26). . . . . . . .    2    1(c)

    (Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . .    2    41

Exceptions from power of referendum. . . . . . . . . . . . . .    2    1(b)

Extent of power of referendum. . . . . . . . . . . . . . . . . . . .    2    1(b)

Filing petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Legislature, referendum through action of. . . . . . . . . . .    2    1(b)

Lotteries, sixty percent vote required. . . . . . . . . . . . . . .    2    24

Majority vote as required for approval of measure
    submitted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(d)

Member of legislature as retaining right to introduce
    measure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(d)

Number of votes required to approve measure. . . . . . . .    2    1(d)

Part of bill, effect of filing referendum petition against.    2    1(d)

Percentage of voters required on referendum petition. . .    2    1(b)

Percentage of voters required to propose measures by
    petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(a)

Petition, referendum on. . . . . . . . . . . . . . . . . . . . . . . . .    2    1(b)

        2    1(d)

Petition to propose measures. . . . . . . . . . . . . . . . . . . . .    2    1(a)

        2    1(d)

Precedence of initiative measures over other bills. . . . . .    2    1(a)

Proposal of different measure by legislature. . . . . . . . . .    2    1(a)

Publication of measures referred to the people. . . . . . . .    2    1(e)

Regular election, reference of measures at. . . . . . . . . . .    2    1(d)

Rejection of initiative measure by legislature. . . . . . . . .    2    1(a)

Repeal of bill approved (Superseded by Amendment 26)    2    1(c)

(Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    41

Reservation by the people of the power of initiative. . . .    2    1(a)

Reservation of power in the people. . . . . . . . . . . . . . . . .    2    1

Reservation of power of referendum. . . . . . . . . . . . . . . .    2    1(b)

| | | |
|---|---|---|
| Salaries for legislators, elected state officials, and judges, referendum petition. | 28 | 1 |
| Secretary of state, certification of results of initiative to legislature. | 2 | 1(a) |
| Secretary of state, filing referendum petition with. | 2 | 1(d) |
| Secretary of state, initiative petition filed with. | 2 | 1(a) |
| Self-executing, amendment as. | 2 | 1(d) |
| Signatures required. | 2 | 1(a) |
| Special election, reference of measures to people at. | 2 | 1(d) |
| Special indebtedness, how authorized. | 8 | 3 |
| Style of bill proposed by initiative petition. | 2 | 1(d) |
| Time for filing referendum petition against measure passed by legislature. | 2 | 1(d) |
| Veto power of governor not extended to initiatives or referendums. | 2 | 1(d) |

**Injunction**

| | | |
|---|---|---|
| Issuance and service on nonjudicial days. | 4 | 6 |
| Equity jurisdiction of superior and district court. | 4 | 6 |
| Original jurisdiction of superior court. | 4 | 6 |

**Insane person**

| | | |
|---|---|---|
| Excluded from elective franchise. | 6 | 3 |

**Insolvency**

| | | |
|---|---|---|
| Appellate jurisdiction of supreme court. | 4 | 4 |
| Original jurisdiction of superior court. | 4 | 6 |
| Receipt of bank deposits, liability of officers. | 12 | 12 |

**Instruments**

| | | |
|---|---|---|
| Validation by special act prohibited. | 2 | 28(9) |

**Insurance companies**

| | | |
|---|---|---|
| Liability of stockholders. | 12 | 11 |

**Interest**

| | | |
|---|---|---|
| Application of school fund interest. | 9 | 3 |
| On certain state debts to be provided for. | 8 | 1 |
| Private interest in bills to be disclosed by legislators. | 2 | 30 |
| Regulation by special law prohibited. | 2 | 28(13) |

**Intoxicating liquors** (See Prohibition)

**Invalid instruments**

| | | |
|---|---|---|
| Validation by special act prohibited. | 2 | 28(9) |

**Invasion and attack**

| | | |
|---|---|---|
| Government continuity, legislative authority. | 2 | 42 |
| State may contract debts above limit to repel. | 8 | 2 |
| Suspension of habeas corpus allowed. | 1 | 13 |

**Investment**

| | | |
|---|---|---|
| Higher education permanent funds. | 16 | 6 |
| Industrial insurance trust fund. | 29 | 1 |
| Public pension and retirement funds. | 29 | 1 |
| School funds. | 9 | 3 |
| | 16 | 5 |

**Irrigation**
Use of waters for, deemed public use. . . . . . . . . . . . . . 21    1

**Jeopardy**
No person to be twice put in for same offense. . . . . . . . .  1    9

**Joint senatorial or representative district**
Filling of vacancy. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2   15

**Joint stock companies**
Combinations in restraint of trade forbidden. . . . . . . . . 12   22
Liability of stockholders. . . . . . . . . . . . . . . . . . . . . . . . 12   11
Term "corporation" includes. . . . . . . . . . . . . . . . . . . . . 12    5

**Journal**
Each house to keep. . . . . . . . . . . . . . . . . . . . . . . . . . . .  2   11
Entry of ayes and noes
   On demand of one-sixth. . . . . . . . . . . . . . . . . . . . .  2   21
   On introduction of bills later than ten days before
      close of session. . . . . . . . . . . . . . . . . . . . . . . .  2   36
   On nominations of officers for state institutions. . . 13    1
   On passage of bill. . . . . . . . . . . . . . . . . . . . . . . . .  2   22
   On passage of emergency clause (Stricken by
      Amendment 7). . . . . . . . . . . . . . . . . . . . . . . . .  2   31
   On proposed constitutional amendments. . . . . . . . 23    1
Publication of, except portions requiring secrecy. . . . . .  2   11
Votes
   On elections by legislature entered. . . . . . . . . . . . .  2   27
   On removal of judges, etc., entered. . . . . . . . . . . . .  4    9

**Judge pro tempore**
In superior court, provision for. . . . . . . . . . . . . . . . . . .  4    2(a),7
Temporary judicial duties in supreme court. . . . . . . . . .  4    2(a)

**Judges**
Absence from state vacates office. . . . . . . . . . . . . . . . .  4    8
   Except where governor extends leave of absence. .  4    8
Not to charge juries as to matters of fact. . . . . . . . . . . .  4   16
But to declare the law. . . . . . . . . . . . . . . . . . . . . . . . . .  4   16
Practice of law prohibited. . . . . . . . . . . . . . . . . . . . . . .  4   19
Removal by supreme court. . . . . . . . . . . . . . . . . . . . . .  4   31
Removal from office by legislature. . . . . . . . . . . . . . . .  4    9
Retirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4    3(a)
Retirement by supreme court. . . . . . . . . . . . . . . . . . . . .  4   31
Salaries may be increased. . . . . . . . . . . . . . . . . . . . . . . 30    1
Salaries payable quarterly. . . . . . . . . . . . . . . . . . . . . . .  4   14
(See Judges of court of appeals; Judges pro tempore;
      Judges of superior court; Judges of supreme court)

**Judges of court of appeals.** . . . . . . . . . . . . . . . . . . . . . . .  4   30

**Judges of superior court**
Court commissioners, appointment of. . . . . . . . . . . . . .  4   23
Decisions within ninety days after submission. . . . . . . .  4   20
Disqualified unless admitted to practice in state. . . . . . .  4   17
Each judge invested with powers of all. . . . . . . . . . . . .  4    5
   May sit in any county. . . . . . . . . . . . . . . . . . . . . . .  4    5
Elections of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4    5,29

First election. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27  12
Ineligible to other than judicial office. . . . . . . . . . . . . . .  4  15
Not to charge juries as to matters of fact. . . . . . . . . . . .  4  16
    But to declare the law. . . . . . . . . . . . . . . . . . . . .  4  16
Oath of office prescribed for. . . . . . . . . . . . . . . . . . . . . .  4  28
Other superior court, duties in. . . . . . . . . . . . . . . . . . . . .  4   2(a)
Practice of law prohibited. . . . . . . . . . . . . . . . . . . . . . . .  4  19
Pro tempore judge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   2(a),7
Recall, judges not subject to. . . . . . . . . . . . . . . . . . . . . .  1  33,34
Removal by supreme court. . . . . . . . . . . . . . . . . . . . . . .  4  31
Report defects in law to supreme court. . . . . . . . . . . . .  4  25
Retirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   3(a)
Rules of court, shall establish. . . . . . . . . . . . . . . . . . . . .  4  24
Salaries (See Salaries)
    Apportionment of. . . . . . . . . . . . . . . . . . . . . . . . . .  4  13
    Increase in salary. . . . . . . . . . . . . . . . . . . . . . . . . . 30   1
Sessions of court may be held in any county on request.  4   7
Supreme court duty, performance upon request. . . . . . .  4   2(a)
Term of office and when begins. . . . . . . . . . . . . . . . . . .  4   5
Temporary judicial duties. . . . . . . . . . . . . . . . . . . . . . . .  4   2(a)
Writs may be issued by. . . . . . . . . . . . . . . . . . . . . . . . . .  4   6
(See Judges; Superior court)

**Judges of supreme court**
Chief justice, how determined. . . . . . . . . . . . . . . . . . . . .  4   3
Clerk to be appointed by. . . . . . . . . . . . . . . . . . . . . . . . .  4  22
Disqualified, unless admitted to practice in state. . . . . .  4  17
Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   3
Ineligible to other than judicial office. . . . . . . . . . . . . . .  4  15
Issuance of writs authorized. . . . . . . . . . . . . . . . . . . . . .  4   4
Oath of office prescribed. . . . . . . . . . . . . . . . . . . . . . . . .  4  28
Practice of law prohibited. . . . . . . . . . . . . . . . . . . . . . . .  4  19
Recall, judges not subject to. . . . . . . . . . . . . . . . . . . . . .  1  33,34
Removal by supreme court. . . . . . . . . . . . . . . . . . . . . . .  4  31
Reporter, appointment of. . . . . . . . . . . . . . . . . . . . . . . . .  4  18
Reports of defects in laws to governor. . . . . . . . . . . . . .  4  25
Retirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   3(a)
Salaries (See Salaries)
    Increase in salary. . . . . . . . . . . . . . . . . . . . . . . . . . 30   1
    Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4  13
Temporary judicial duties, power to authorize. . . . . . . .  4   2(a)
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   3
Vacancies, how filled. . . . . . . . . . . . . . . . . . . . . . . . . . .  4   3
(See Judges; Supreme court)

**Judgment**
Belonging to territory inures to state. . . . . . . . . . . . . . . 27   4
Extent of, on impeachment. . . . . . . . . . . . . . . . . . . . . . .  5   2
Of one judge of superior court to be of same force as of
    all. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4   5
Of superior court to be given within ninety days after
    submission, except. . . . . . . . . . . . . . . . . . . . . . . . .  4  20

**Judicial administration**
Must be open and without delay. . . . . . . . . . . . . . . . . . .  1  10
Temporary performance of judicial duties. . . . . . . . . . . .  4   2(a)

**Judicial conduct, commission on**................................. 4  31

**Judicial decisions**

  Of Supreme court

      All decisions to be in writing and grounds stated. . 4   2

      Concurrence by majority of court necessary..... 4   2

      Publication required........................ 4  21

      Free to anyone............................. 4  21

      Reporter for, to be appointed. ............... 4  18

**Judicial officers**

  Absence forfeits office, when.................... 4   8

  Compensation by fees prohibited, except. ........... 4  13

  Impeachment, liable to, exceptions.................. 5   2

  Oath of office prescribed........................ 4  28

  Recall, not subject to........................... 1  33,34

  Removal by legislature.......................... 4   9

  Removal by supreme court....................... 4  31

  (See Court commissioners; Judges; Judges of supreme
      and superior courts; Justice of peace)

**Judicial power**

  Vested in what courts........................... 4   1

**Judicial qualifications commission**

  (See Commission on judicial conduct)

**Judicial question**

  Public use in eminent domain. ................... 1  16

**Jurisdiction**

  Court of appeals.............................. 4  30

  Equity...................................... 4   6

  Inferior courts, legislature to prescribe. ............. 4  12

  Justice of peace, as legislature may fix............... 4  10

      Not to trench on courts of record. ............. 4  10

  Of offenses committed on public conveyances........ 1  22

  Superior court................................. 4   6

  Supreme court................................ 4   4

  United States over reserved lands. ................. 25   1

  (See Criminal action)

**Juror**

  Number necessary for verdict..................... 1  21

  Religious beliefs not grounds of incompetency........ 1  11

**Jury**

  Charging, duty of judge......................... 4  16

  Criminal action, right of accused in................. 1  22

  Eminent domain proceedings...................... 1  16

  Number in courts not of record.................... 1  21

  Right of trial by remains inviolate.................. 1  21

      Waiver in civil cases may be had.............. 1  21

  Verdict by less than twelve may be authorized........ 1  21

  (See Grand jury; Juror)

**Justice**

Administration must be open and without delay. . . . . . .    1   10

**Justice of peace**

Appeal lies to superior court. . . . . . . . . . . . . . . . . . . . . .    4    6

Cannot be made court of record. . . . . . . . . . . . . . . . . . .    4   11

Duties to be prescribed by legislature. . . . . . . . . . . . . .    4   10

Fees prohibited, when. . . . . . . . . . . . . . . . . . . . . . . . . . .    4   10

Jurisdiction, legislature to determine. . . . . . . . . . . . . .    4   10

    Not to trench on courts of record. . . . . . . . . . . . .    4   10

Number, legislature to determine. . . . . . . . . . . . . . . . . .    4   10

Police justice in cities may be chosen from. . . . . . . . . . .    4   10

Salary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   10

    Increase. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30    1

Unsalaried, excepted from prohibition against
    compensation by fees. . . . . . . . . . . . . . . . . . . . . . .    4   13

Vacancy in office, how filled. . . . . . . . . . . . . . . . . . . . .   11    6

Vested with judicial power. . . . . . . . . . . . . . . . . . . . . . .    4    1

(See Judicial officers)

**Land commissioner** (See Commissioner of public lands)

**Lands**

Alien ownership prohibited, exceptions (Repealed by
    Amendment 42). . . . . . . . . . . . . . . . . . . . . . . . . . .    2   33

Granted lands, restrictions on sale. . . . . . . . . . . . . . . . .   16    1

    For educational purposes, sale of. . . . . . . . . . . . .   16   2,3

Plat of state lands in cities required before sale. . . . . . . .   16    4

    Limit on amount offered in one parcel. . . . . . . . . .   16    4

Quantity of state land that may be sold in one parcel. . .   16    4

Reclamation, public use in taking for. . . . . . . . . . . . . . .    1   16

Restrictions on selling school lands. . . . . . . . . . . . . . . . .   16   2,3

Settlement, public use in taking property for. . . . . . . . . .    1   16

Taxation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

    Of Indians lands. . . . . . . . . . . . . . . . . . . . . . . . . . .   26    2

    Of lands of nonresidents. . . . . . . . . . . . . . . . . . . . .   26    2

    Of United States, none to be imposed. . . . . . . . . . .   26    2

Timber and stone on state lands may be sold, how. . . . .   16    3

**Law of the land**

Constitution of United States is supreme. . . . . . . . . . . . .    1    2

**Laws**

Bills of attainder prohibited. . . . . . . . . . . . . . . . . . . . . . .    1   23

Corporations, statutory regulations may be amended or
    repealed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12    1

Defects and omissions to be reported annually. . . . . . . .    4   25

Effective date

    (Stricken by Amendment 7). . . . . . . . . . . . . . . . . .    2   31

    (Superseded by Amendment 26). . . . . . . . . . . . . . .    2    1(c)

    (Amendment 26). . . . . . . . . . . . . . . . . . . . . . . . . . .    2   41

Enacting clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   18

    Initiative measure. . . . . . . . . . . . . . . . . . . . . . . . . . .    2    1(d)

Ex post facto, prohibited. . . . . . . . . . . . . . . . . . . . . . . . .    1   23

Governor's approval, presentation for. . . . . . . . . . . . . . .    3   12

    Passage over veto. . . . . . . . . . . . . . . . . . . . . . . . . . .    3   12

    Without approval, how becomes effective. . . . . . .    3   12

Impairing obligation of contracts prohibited. . . . . . . . .    1   23

Initiative measures (See Initiative and referendum)

Legislative enactments to be by bill. . . . . . . . . . . . . . . .   2   18

Requisites on final passage of bill. . . . . . . . . . . .   2   22

Special legislation prohibited in certain cases. . . . . . . .   2   28

State debt authorized for some single work, conditions.   8   3

Territorial, to remain in force until altered, except. . . . .   27   2

(See Acts; Bill; Statutes)

**Lease**

Of corporate franchise not to relieve from liability. . . . .   12   8

Of harbor areas for building wharves, limitations. . . . . .   15   2

State building authority, by. . . . . . . . . . . . . . . . . . . . . . .   8   9

**Legal holiday**

Superior courts not open. . . . . . . . . . . . . . . . . . . . . . . .   4   6

Writs that may be issued and served on. . . . . . . . . . . . . .   4   6

**Legislature**

COMPOSITION AND ORGANIZATION

Absentees, less than a quorum may compel their
attendance. . . . . . . . . . . . . . . . . . . . . . . . . . .   2   8

Adjournment, restrictions on. . . . . . . . . . . . . . . . .   2   11

Apportionment of members. . . . . . . . . . . . . . . . . .   22   1,2

Reapportionment after each census. . . . . . . . . . . .   2   43

Authority generally. . . . . . . . . . . . . . . . . . . . . . . .   2   1

Bribery of members, how punished. . . . . . . . . . . .   2   30

Committees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   12

Compensation and mileage of members (Partially
repealed by Amendments 20 and 54). . . . . . .   2   23

Consists of senate and house of representatives. . .   2   1

Constitution, departure from during emergency
due to enemy attack. . . . . . . . . . . . . . . . . . . .   2   42

Contempts punishable by each house. . . . . . . . . . .   2   9

Convening in extra session at call of governor. . . .   3   7

Convening in extra session by legislature. . . . . . . .   2   12

Corrupt solicitation of members. . . . . . . . . . . . . . .   2   30

Disorderly behavior punishable by each house. . . .   2   9

Election of members, each house judge of. . . . . . .   2   8

Eligible to membership, who are. . . . . . . . . . . . . .   2   7

Expulsion of member requires two-thirds vote. . . .   2   9

Journal, each house to keep and publish. . . . . . . . .   2   11

Members

From what civil offices excluded. . . . . . . . . .   2   13

Not liable for words spoken in debate. . . . . . .   2   17

Private interest in bill to be disclosed. . . . . . .   2   30

Privilege

From arrest, except. . . . . . . . . . . . . . . . . . . . .   2   16

From civil process, when. . . . . . . . . . . . . . . .   2   16

Number of members. . . . . . . . . . . . . . . . . . . . . . . .   2   2

Office accepted under United States vacates seat. .   2   14

Officers

Each house to elect its own. . . . . . . . . . . . . .   2   10

Federal and foreign, ineligible to
membership. . . . . . . . . . . . . . . . . . . . . . .   2   14

Quorum, majority to constitute. . . . . . . . . . . . . . .   2   8

Reapportionment after each census. . . . . . . . . . . .   2   43

Records, secretary of state to keep. . . . . . . . . . . . .   3   17

Redistricting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   43

Rules of proceedings, each house to determine. . .   2   9

12/27/2016 9:01 AM                    [ 240 ]                              Index

Sessions

    Must be open, exceptions. . . . . . . . . . . . . . . .    2  11

    Regular. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  12

    Special. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  12

    Time of meeting. . . . . . . . . . . . . . . . . . . . .    2  12

Vacancies, how filled. . . . . . . . . . . . . . . . . . . . .    2  15

Vote on elections to be viva voce. . . . . . . . . . . . .    2  27

    None when member has private interest in
        bill. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  30

DUTIES

Accountability of county and local officers to be
    provided for. . . . . . . . . . . . . . . . . . . . . . . . . .    11   5

Accounting for state receipts and expenditures to
    be prescribed. . . . . . . . . . . . . . . . . . . . . . . . .    7   7

Appropriation for expenses of constitutional
    convention to be made. . . . . . . . . . . . . . . . . .    27  19

Bureau of statistics to be established. . . . . . . . . . .    2  34

Cities, incorporation by general laws to be
    provided. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11  10

Classification of counties, for purpose of
    prescribing compensation. . . . . . . . . . . . . . . .    11   5

Combinations affecting prices, etc., punishment to
    be provided. . . . . . . . . . . . . . . . . . . . . . . . . . .    12  22

Commissioner of public lands, duties and
    compensation to be provided. . . . . . . . . . . .    3  23

Compensation

    Of county and local officers to be regulated.    11   5

    Of officers, change during term (See
        Salaries)

Congressional districts, state to be divided into
    (Repealed by Amendment 74). . . . . . . . . . .    27  13

Contested elections of state officers to be decided
    by. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   4

Convict labor to be provided for. . . . . . . . . . . . . .    2  29

County government, system of, to be established. .    11   4

Court of appeals, as to. . . . . . . . . . . . . . . . . . . . .    4  30

Divorces not to be granted by. . . . . . . . . . . . . . . .    2  24

Drugs and medicines, sale to be regulated. . . . . . .    20   2

Elections

    Certificates of, to be given certain state
        officers. . . . . . . . . . . . . . . . . . . . . . . . . .    3   4

    Election of necessary county officers, duty to
        provide for. . . . . . . . . . . . . . . . . . . . . . .    11   5

    President, voting for, implementation. . . . . .    6   1A

    Qualifications of voters to be regulated
        (Amended by Amendment 63). . . . . . .    6   1

Employees in dangerous employments to be
    protected by law. . . . . . . . . . . . . . . . . . . . . . .    2  35

Governmental continuity during emergency
    periods, to provide for. . . . . . . . . . . . . . . . .    2  42

Harbor lines, commission to establish, to be
    appointed. . . . . . . . . . . . . . . . . . . . . . . . . . . .    15   1

Health, board of, to be established. . . . . . . . . . . .    20   1

Homesteads to be protected from forced sale. . . . .    19   1

Initiative measures (See Initiative and referendum)

Judicial qualifications commissioners, terms and
    compensation to be provided. . . . . . . . . . . .    4  31

Justice of peace, number, powers and duties to be
    prescribed. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  10

Lease of harbor areas for wharves to be provided.    15   2

Medicine and surgery, practice of, to be regulated.    20   2

Militia, organization and discipline to be provided
    for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10   2

Officers of counties, townships, precincts, and districts

    Duties, elections, and terms of office to be prescribed. . . . . . . . . . . . . . . . . . . . . . . 11   5

    Classification of counties by population in enumerating duties of county officers. . 11   5

Officers not provided for in Constitution, legislature to provide for election and terms. 27  11

Passes

    Grant of to public officers to be prevented. . 12  20

    Use by public officers to be prohibited. . . . .   2  39

Port district promotional activities. . . . . . . . . . . .   8   8

Private interest in bill, members to declare. . . . . . .   2  30

Public arms, safekeeping and protection required.  10   4

Public school system to be established. . . . . . . . . .   9   2

Publication of opinions of supreme court to be provided for. . . . . . . . . . . . . . . . . . . . . . . . . .   4  21

Recall of public officers (See Recall of officers)

Redistricting plan and commission. . . . . . . . . . . .   2  43

Referendum (See Initiative and referendum)

Registration law to be enacted. . . . . . . . . . . . . . . .   6   7

Salaries of county officers and certain constables to be fixed. . . . . . . . . . . . . . . . . . . . . . . . . .  11   5

Sale of school and university lands, confirmation to be made. . . . . . . . . . . . . . . . . . . . . . . . . .  16   2

School funds, investment. . . . . . . . . . . . . . . . . . . .   9   3

    16   5

Seat of government, choice of location to be provided for. . . . . . . . . . . . . . . . . . . . . . . . . .  14   1

Soldiers' home, maintenance to be provided. . . . .  10   3

Suits against state, manner of bringing, to be directed. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  26

Taxation

    Corporate property to be under general law (Stricken by Amendment 14). . . . . . . . .   7   3

    Deficiencies and expenses to be met by. . . .   7   8

    Exemption of limited amount of personalty.   7   1

    Retired persons exemption, implementation.   7  10

    Uniform on same class of property. . . . . . . .   7   1

Telegraph and telephone regulations to be provided. . . . . . . . . . . . . . . . . . . . . . . . . . . .  12  19

Vital statistics, bureau of, to be established. . . . . .  20   1

Voting, method to be provided by. . . . . . . . . . . . .   6   6

ENACTMENT OF LAWS

Act, how revised or amended. . . . . . . . . . . . . . . . .   2  37

Amendment of bill. . . . . . . . . . . . . . . . . . . . . . . . .   2  38

Bill to contain but one subject. . . . . . . . . . . . . . . .   2  19

Emergency, national-Government continuity authorizing special legislation. . . . . . . . . . . .   2  42

Enacting clause. . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  18

Initiative and referendum measures (See Initiative and referendum)

Laws to be enacted by bill. . . . . . . . . . . . . . . . . . .   2  18

    Take effect, when (Stricken by Amendment 7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  31

Presiding officer of each house to sign bills. . . . . .   2  32

Rules for signing bills may be prescribed. . . . . . . .   2  32

Style of laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  18

Title of bill to disclose object. . . . . . . . . . . . . . . . .   2  19

Veto of bill, and passage over. . . . . . . . . . . . . . . . .   3  12

When bills must be introduced, exceptions. . . . . .   2  36

Yeas and nays, entry on journal required, when. . .    2   21,22

**POWERS**

Abolition of certain state offices permitted. . . . . .    3   25

Appropriation of public funds (See Appropriations)

Banking corporations, power to limit liability of. .   12   11

Chaplain for penal and reformatory institutions may be employed. . . . . . . . . . . . . . . . . . . . . . .    1   11

Charters of corporations cannot be extended. . . . .   12   3

Clerk of supreme court, election may be provided for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   22

Constitution

    Amendment may be proposed in either house   23   1

    Departure from during emergency due to enemy attack. . . . . . . . . . . . . . . . . . . .    2   42

    Revision, convention for may be agreed on. .   23   2

Corporate property and franchises may be taken for public use. . . . . . . . . . . . . . . . . . . . . . . . .   12   10

Corporations, regulation of. . . . . . . . . . . . . . . . . .   12   1

Courts of record, power to establish. . . . . . . . . . .    4   11

Divorces not to be granted by. . . . . . . . . . . . . . . .    2   24

Duties of county officer, power to prescribe. . . . .   11   5

Elective franchise may be granted to women in school elections (Stricken by Amendment 5)    6   2

Emergency, authorizing special powers during periods of. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   42

Exemptions from taxation, power to provide (See Taxation). . . . . . . . . . . . . . . . . . . . . . . . . . . .

Extra compensation to officers for past services prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   25

Fees of county officers, power to provide accountability for. . . . . . . . . . . . . . . . . . . . . .   11   5

Forfeitures of corporate franchises may be declared for unlawful combinations. . . . . . . .   12   22

    Remission of, prohibited. . . . . . . . . . . . . . . .   12   3

Harbor areas, building on, may be provided for by general law. . . . . . . . . . . . . . . . . . . . . . . . . .   15   2

Inferior courts

    May be provided. . . . . . . . . . . . . . . . . . . . . . .    4   1

    Powers of, shall be prescribed. . . . . . . . . . . .    4   12

Irrevocable privilege or franchise, power to grant denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   8

Jury, number for panel and for verdict may be fixed at less than twelve. . . . . . . . . . . . . . . . .    1   21

Lotteries, may authorize by 60% vote. . . . . . . . . .    2   24

Municipal corporations may be vested with power to make local improvements. . . . . . . . . . . . . .    7   9

Nonrecourse revenue bonds, authorization. . . . . .   32   1

Number of judges of supreme court may be increased. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   2

Private or special laws prohibited. . . . . . . . . . . . .    2   28

Public corporations not to be created by special act   11   10

Public funds, power to provide for accounting as to. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11   5

Railroad commission may be established. . . . . . . .   12   18

Rates for freights and passengers

    Discrimination may be prevented. . . . . . . . .   12   18

    Maximum, may be established. . . . . . . . . . .   12   18

Removal of judges, attorney general, and prosecuting attorneys. . . . . . . . . . . . . . . . . . .    4   9

Reservation of power in people (See Initiative and referendum)

Retirement age of judges, power to fix, limitations    4   3(a)

Salaries of judges (See Salaries)

Salaries of state officers (See Salaries)

School fund (common) may be enlarged. . . . . . . 9    3

Seat of government cannot be changed by. . . . . . 14   1

Senate and house of representatives, legislative
    authority vested in. . . . . . . . . . . . . . . . . . . . . .  2    1

Separate departments of supreme court may be
    provided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4    2

Sex equality, power to enforce. . . . . . . . . . . . . .  31   1,2

Sheriff, providing for election of. . . . . . . . . . . .  11   5

Special sessions. . . . . . . . . . . . . . . . . . . . . . . . . .  2    12

State building authority may be provided. . . . . . .  8    9

Supreme court judges, number may be increased. .  4    2

Taxation

    Corporate authorities may be vested with
        power by general laws. . . . . . . . . . . . .  11   12

    Exemption of limited personal property. . . .  7    1

    Levy to meet fiscal deficiencies. . . . . . . . . .  7    8

    Local cannot be imposed by. . . . . . . . . . . . .  11   12

    Special assessment for local improvements,
        power may be vested in corporate
        authorities. . . . . . . . . . . . . . . . . . . . . . .  7    9

Terms of county officers, powers to prescribe. . . .  11   5

Vetoed bills, convening extraordinary session to
    reconsider. . . . . . . . . . . . . . . . . . . . . . . . . . . .  3    12

Voters, authority to define manner of ascertaining
    qualifications (Amended by Amendment 63)   6    1

(See House of representatives; Initiative and
    referendum; Senate)


**Liabilities**

Corporate, not relieved by alienation or lease of
    franchise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12   8

Extinguishment by special legislation prohibited. . . . . .   2  28(10)

Territorial assumed by state. . . . . . . . . . . . . . . . . . . . .  26   3


**Liberty**

Deprivation of without due process of law forbidden. . .   1    3


**Licentious acts**

Guarantee of freedom of conscience in matters of
    religious worship does not justify. . . . . . . . . . . . .  1    11


**Lieutenant governor**

Acts as governor, when. . . . . . . . . . . . . . . . . . . . . . . .  3    10

Deciding vote, in case of tie in senate. . . . . . . . . . . . .  2    10

Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3    1

Impeachment of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5    1,2

Office may be abolished by legislature. . . . . . . . . . . . .  3    25

Presiding officer of senate. . . . . . . . . . . . . . . . . . . . . .  3    16

    In absence, who presides. . . . . . . . . . . . . . . . . . . .  2    10

Salary of (See Salaries)

Succession to office of governor. . . . . . . . . . . . . . . . . .  3    10

Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3    3


**Life**

Deprivation of without due process of law prohibited. . .   1    3


**Limitation of actions**

Special legislation prohibited. . . . . . . . . . . . . . . . . . .   2  28(17)

**Limitation on levies**                                              7   2

**Limiting production**
    Combination for, prohibited. . . . . . . . . . . . . . . . . . . . . . . 12  22

**Literacy**
    Qualification of voters (Amended by Amendment 63). .   6   1

**Loans**
    Prohibition against loan of school fund to private
        persons or corporations (Amended by Amendment
    44). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16   5
    State may borrow to meet debts. . . . . . . . . . . . . . . . . . .   8   1

**Local improvements**
    Authority of cities to levy special taxes for. . . . . . . . . . .   7   9

**Local officers**
    Eligible to legislature. . . . . . . . . . . . . . . . . . . . . . . . . . .   2  14

**Lotteries**
    Prohibited, except. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  24

**Majority**
    Necessary in impeachment. . . . . . . . . . . . . . . . . . . . . . .   5   1
    Passage of bills requires. . . . . . . . . . . . . . . . . . . . . . . . .   2  22
    Petition for division of county requires. . . . . . . . . . . . . .  11   3
    Quorum of each house constituted by. . . . . . . . . . . . . . .   2   8
    Special act to declare a person of age prohibited. . . . . . .   2  28(11)

**Malfeasance**
    Officers liable to impeachment for. . . . . . . . . . . . . . . . .   5   2
    Recall for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1  33,34
    Removal by law, if not subject to impeachment. . . . . . .   5   3

**Mandamus**
    Original and appellate jurisdiction of supreme court. . . .   4   4
    Original jurisdiction of superior court. . . . . . . . . . . . . .   4   6

**Mandatory**
    Constitutional provisions are. . . . . . . . . . . . . . . . . . . . .   1  29

**Manufacturing purposes**
    Use of waters for, deemed public use. . . . . . . . . . . . . .  21   1

**Medicine**
    Practice and sale, legislature to regulate. . . . . . . . . . . .  20   2

**Men**
    Equal rights and responsibility. . . . . . . . . . . . . . . . . . .  31   1,2

**Mental Incompetency**
    Exclusion from voting. . . . . . . . . . . . . . . . . . . . . . . . . .   6   3

**Messages**
    Governor to communicate with legislature by. . . . . . . .   3   6

**Mileage**

Members of legislature entitled to (Partially repealed by
Amendment 20). . . . . . . . . . . . . . . . . . . . . . . . . . .   2  23

**Military**

Duty not to be required on election day, except. . . . . . .   6   5
Not to interfere with elections. . . . . . . . . . . . . . . . . .   1  19
Subordinate to civil power. . . . . . . . . . . . . . . . . . . . .   1  18
(See Army; Militia)

**Militia**

Citizens subject to duty in. . . . . . . . . . . . . . . . . . . . . .  10   1
Who exempt. . . . . . . . . . . . . . . . . . . . . . . . . . . .  10   1
Exemption to persons having conscientious scruples. . . .  10   6
Governor to be commander-in-chief. . . . . . . . . . . . . . .   3   8
Governor's power to call forth. . . . . . . . . . . . . . . . . . .  10   2
Members entitled to admission to soldiers' home, when.  10   3
Officer of
Election and appointment. . . . . . . . . . . . . . . . . . .  10   2
Eligible to legislature, when. . . . . . . . . . . . . . . . .   2  14
Organization and discipline. . . . . . . . . . . . . . . . . . . . .  10   2
Privilege from arrest, when. . . . . . . . . . . . . . . . . . . . .  10   5
(See Arms; Army; Military)

**Mines**

Protection of employees, laws to be passed. . . . . . . . . .   2  35
Yield tax or au valorem tax authorized. . . . . . . . . . . . .   7   1

**Mining purposes**

Use of water for, deemed public use. . . . . . . . . . . . . . .  21   1

**Minors**

8
Property of, not to be affected by special laws. . . . . . . .   2  2(4),(11)
(See Children; Majority)

**Misdemeanors**

Original jurisdiction of superior court. . . . . . . . . . . . . .   4   6

**Money**

Corporations etc. not to issue anything but lawful money
of United States. . . . . . . . . . . . . . . . . . . . . . . . . .  12  11
Disbursement from state treasury. . . . . . . . . . . . . . . . .   8   4
Public officers to deposit with treasurer. . . . . . . . . . . .  11  15
State Taxes payable in. . . . . . . . . . . . . . . . . . . . . . . . .   7   6
Using public money by officer a felony. . . . . . . . . . . .  11  14
(See Public money)

**Monopolies**

Forbidden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12  22
Forfeiture of franchise and property may be declared. . .  12  22
Penalties to be provided by law. . . . . . . . . . . . . . . . . . .  12  22

**Motor vehicles**

License fees and excise taxes to be placed in special
fund. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  40

**Municipal corporations**

| | | |
|---|---|---|
| Appropriation of right-of-way. | 1 | 16 |
| Cities of 10,000 or over may frame own charter. | 11 | 10 |
| Combined city-county. | 11 | 16 |
| Corporate stock or bonds not to be owned by. | 8 | 7 |
| Credit or money not to be loaned, exceptions. | 8 | 7 |
| Debts | | |
|     Expenditures for port district promotional activities. | 8 | 8 |
|     Release by special law prohibited. | 2 | 28(10) |
| Improvements, power to make by special taxation or assessment. | 7 | 9 |
| Indebtedness, limitations on. | 8 | 6 |
| Local affairs controlled by. | 11 | 11 |
| Organization to be under general laws. | 11 | 10 |
| Police and sanitary regulations enforced by. | 11 | 11 |
| Private property not to be taken for debt of. | 11 | 13 |
| Public money to be deposited with treasurer. | 11 | 15 |
| Salary of officers (Partially repealed by Amendment 54) | 11 | 8 |
|     (Amendment 54). | 30 | 1 |
| Seals of. | 27 | 9 |
| Special act to create or amend charter prohibited. | 2 | 28(8) |
| Streets, power to extend over tide lands. | 15 | 3 |
| Taxation | | |
|     Assessment and levy, power of. | 7 | 9 |
|     Exemption of municipal property from taxation. | 7 | 1 |
|     Imposition for local purposes prohibited to legislature. | 11 | 12 |
| Local power to assess and levy, where. | 11 | 12 |
| Term of officers not to be extended. | 11 | 8 |
| Use of public money by official, a felony. | 11 | 14 |
| (See City; Municipal courts; Municipal fines; Towns and villages) | | |

**Municipal courts**

| | | |
|---|---|---|
| Legislature may provide for. | 4 | 1 |

**Municipal fines**

| | | |
|---|---|---|
| Appellate jurisdiction of supreme court. | 4 | 4 |
| Original jurisdiction of superior court. | 4 | 6 |

**Municipal indebtedness**

| | | |
|---|---|---|
| Limitations and restrictions on. | 8 | 6 |
| (See City; Towns and villages) | | |

**Names**

| | | |
|---|---|---|
| Change of, by special legislation prohibited. | 2 | 28(1) |

**Naturalization**

| | | |
|---|---|---|
| Power of, vested in superior court. | 4 | 6 |

**Navigable waters**

| | | |
|---|---|---|
| Harbor lines, commission to be established to locate. | 15 | 1 |
| Ownership of state in beds and shores asserted. | 17 | 1 |

**New county**

| | | |
|---|---|---|
| Formation by special act not prohibited. | 2 | 28(18) |
| Restrictions on. | 11 | 3 |

**Nonjudicial days**

    Certain writs may be issued and served on. . . . . . . . . .   4   6

    Superior courts not open on. . . . . . . . . . . . . . . . . . . . . .   4   6

    Supreme court need not be open on. . . . . . . . . . . . . . .   4   2

**Nonrecourse revenue bonds**

    Industrial development projects. . . . . . . . . . . . . . . . . . . . . 32   1

**Nonresidents**

    Taxation of lands of citizens of United States. . . . . . . . . 26   2

**Normal schools**

    Included in public school system. . . . . . . . . . . . . . . . . .   9   2

**Nuisance, action to abate**

    Appellate jurisdiction of supreme court. . . . . . . . . . . . .   4   4

    Original jurisdiction of superior court. . . . . . . . . . . . . .   4   6

**Oath of office**

    Prescribed for judges. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  28

    Recall for violation of. . . . . . . . . . . . . . . . . . . . . . . . . . .   1  33,34

**Oaths**

    Mode of administering. . . . . . . . . . . . . . . . . . . . . . . . . . .   1   6

    Of judges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  28

    Of senators in impeachment trials. . . . . . . . . . . . . . . . .   5   1

**Obligation of contracts**

    Not to be impaired by legislation. . . . . . . . . . . . . . . . . .   1  23

**Offenses**

    Bailable, except. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1  20

    Existing, to be prosecuted in name of state. . . . . . . . . . . 27   5

    Impeachment of public officers for. . . . . . . . . . . . . . . .   5   2

    Jeopardy, twice in, for same offense, forbidden. . . . . . .   1   9

    Prosecution by information or indictment. . . . . . . . . . . .   1  25

    Rights of accused. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1  22

    Trial by jury, right of. . . . . . . . . . . . . . . . . . . . . . . . . . . .   1  21

**Office**

    Acceptance of, under United States or foreign power
        vacates seat in legislature, exceptions. . . . . . . . . . .   2  14

    Bribery, a disqualification for. . . . . . . . . . . . . . . . . . . . .   2  30

    Disqualification of legislators for certain civil offices. .   2  13

    Ineligibility for legislature of persons holding certain
        offices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  14

    Judge, open to whom. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  15,17

    Legislature may abolish certain offices. . . . . . . . . . . . . .   3  25

    Religious qualification not to be required. . . . . . . . . . . .   1  11

    Removal of judges, etc. by joint resolution of legislature   4   9

    Removal of judges or justices by supreme court. . . . . . .   4  31

    Vacancy in, how filled. . . . . . . . . . . . . . . . . . . . . . . . . . .   3  13

**Officers**

    Abolition of certain state offices authorized. . . . . . . . . .   3  25

    Accountability for fees and money collected. . . . . . . . . 11   5

Compensation, change during term (See Compensation)

Corrupt solicitation of, prohibited. . . . . . . . . . . . . . . . .    2  30

County officer ineligible for more than two terms
    (Repealed by Amendment 22). . . . . . . . . . . . . . .    11    7

County, township, precinct, and district election and
    compensation to be regulated by legislature. . . . . .    11    5

Election of

    First, under Constitution. . . . . . . . . . . . . . . . . . . . .    27    7

    When no provision in Constitution. . . . . . . . . . . . .    27  11

Extra compensation prohibited. . . . . . . . . . . . . . . . . . . .    2  25

Guilty of felony, when uses public money. . . . . . . . . . .    11  14

Impeachment of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5    2

Legislative, each house to elect. . . . . . . . . . . . . . . . . . .    2  10

Local, may be members of legislature. . . . . . . . . . . . . .    2  14

Militia

    Appointment or election of. . . . . . . . . . . . . . . . . . . .    10    2

    Without salary eligible to legislature. . . . . . . . . . .    2  14

Passes, use or acceptance by, forbidden. . . . . . . . . . . .    2  39

Public moneys to be deposited with treasurer. . . . . . . .    11  15

Recall (See Recall of officers). . . . . . . . . . . . . . . . . . . .    1  33

Removable by law, when not impeachable. . . . . . . . . . .    5    3

Salary, change, during term (See Salaries)

Territorial and United States, how long to hold. . . . . . . .    27    6,14

Transportation passes

    Issuance to, prohibited. . . . . . . . . . . . . . . . . . . . . . .    12  20

    Use of, prohibited. . . . . . . . . . . . . . . . . . . . . . . . . .    2  39

Trustees of state institutions, appointment. . . . . . . . . . .    13    1

(See Appointment; County officers; District officers;
    Governor; Lieutenant governor; Precinct officers;
    Recall of officers; Salaries; State officers; Term of
    office)


**Official acts**

Validation by special laws prohibited. . . . . . . . . . . . . . .    2  28(12)


**Omissions**

In laws, annual report by judges. . . . . . . . . . . . . . . . . . .    4  25


**Open space lands**

Taxation based on actual use. . . . . . . . . . . . . . . . . . . . .    7  11


**Opinions**

Of supreme court, publication. . . . . . . . . . . . . . . . . . . .    4  21


**Original jurisdiction**

Superior court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4    6

Supreme court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4    4


**Ownership of lands**

Prohibited to aliens, except (Repealed by Amendment
    42). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  33


**Pardoning power**

Governor vested with, subject to restrictions. . . . . . . . . .    3    9

Report to legislature of pardons granted. . . . . . . . . . . . .    3  11


**Partnership** (See Copartnerships)


**Pass**

Grant of, to public officers, prohibited. . . . . . . . . . . . . . 12  20
Use of, by public officers, prohibited. . . . . . . . . . . . . .  2  39

**Passenger tariffs**

Abuses and extortions to be prohibited. . . . . . . . . . . . . 12  18
Regulation by legislature authorized. . . . . . . . . . . . . . . 12  18

**Penal institutions**

State support. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13   1

**Penalties**

Accrued to territory, inure to state. . . . . . . . . . . . . . . . . 27   3
Incurred, not affected by change in government. . . . . . . 27   5
Remission by special act prohibited. . . . . . . . . . . . . . .  2  28(14)
Violation of provisions against monopolies. . . . . . . . . . 12  22

**Penitentiary**

Chaplain, right to employ. . . . . . . . . . . . . . . . . . . . . . .  1  11

**Pension funds, public**

Investment of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29   1
Pension increase not extra compensation. . . . . . . . . . . .  2  25

**People**

Political power inherent in. . . . . . . . . . . . . . . . . . . . . . .  1   1
Public lands held in trust for. . . . . . . . . . . . . . . . . . . . . 16   1
Reservation of powers by. . . . . . . . . . . . . . . . . . . . . . . .  2   1
Right
    Of petition and peaceful assemblage. . . . . . . . . . . .  1   4
    To religious liberty. . . . . . . . . . . . . . . . . . . . . . . . .  1  11
    To security in home. . . . . . . . . . . . . . . . . . . . . . . .  1   7
    Rights retained not affected by grants in
        Constitution. . . . . . . . . . . . . . . . . . . . . . . . . .  1  30
    Toleration of religious sentiment secured to. . . . . . 26   1

**Permanent school fund**

Investment of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9   3
                                                                16   5

(See Common school fund; Common school
    construction fund; School fund)

**Personal property**

Appellate jurisdiction of supreme court. . . . . . . . . . . . .  4   4
Power of legislature to exempt from taxation, limitations  7   1
Rolling stock of railroad is. . . . . . . . . . . . . . . . . . . . . . 12   7

**Persons**

Convicted of infamous crimes, excluded from elective
    franchise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6   3
School funds not to be loaned to (Amended by
    Amendment 44). . . . . . . . . . . . . . . . . . . . . . . . . . 16   5

**Persons under disability**

Sale or mortgage of property forbidden to be authorized
    by special law. . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  28(4)

**Petition**

Right of, not to be abridged. . . . . . . . . . . . . . . . . . . . . .  1   4

(See Initiative and referendum; Recall of officers)

**Police justice**

Justice of peace may be made. . . . . . . . . . . . . . . . . . . . .    4  10

**Police power**

Counties, cities, towns, townships may exercise. . . . . . . .  11  11

**Political power**

Inherent in people. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   1

**Pooling**

By common carriers prohibited (Repealed by
     Amendment 67). . . . . . . . . . . . . . . . . . . . . . . . . . .    2   4

(See Combinations)

**Popular government** (See Initiative and referendum)

**Population**

Classification of counties by. . . . . . . . . . . . . . . . . . . .   11   5

**Port districts**

Bonds, nonrecourse revenue for industrial development
     projects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32   1

Excepted from levy limitation. . . . . . . . . . . . . . . . . . . .    7   2

Promotional activities. . . . . . . . . . . . . . . . . . . . . . . . . .    8   8

**Postmaster**

Eligible to legislature, when. . . . . . . . . . . . . . . . . . . . .    2  14

**Powers**

Executive, vested in governor. . . . . . . . . . . . . . . . . . . .    3   2

Initiative and referendum (See Initiative and
     referendum)

Judicial, where vested. . . . . . . . . . . . . . . . . . . . . . . . . .    4   1

Legislative

During emergency periods caused by enemy attack    2  42

Where vested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   1

Pardoning, where vested. . . . . . . . . . . . . . . . . . . . . . . .    3   9

**Precinct officers**

Election, duties, terms, and compensation to be provided
     for by legislature. . . . . . . . . . . . . . . . . . . . . . . . . .   11   5

Official bonds unaffected by change in government. . . .   27  14

Territorial, hold office until when. . . . . . . . . . . . . . . . .   27  14

Vacancies, how filled. . . . . . . . . . . . . . . . . . . . . . . . . .   11   6

**President of senate**

Lieutenant governor shall be. . . . . . . . . . . . . . . . . . . . .    3  16

Temporary presiding officer, when chosen. . . . . . . . . . .    2  10

**Press**

Liberty of, secured. . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   5

**Prices**

Combination to fix, prohibited. . . . . . . . . . . . . . . . . . .   12  22

**Private affairs**

Disturbance of, prohibited. . . . . . . . . . . . . . . . . . . . . . . . .    1    7

**Private corporations** (See Corporations)

**Private legislation**

Prohibited in enumerated cases. . . . . . . . . . . . . . . . . . . . .    2  28

**Private property**

Not to be taken for public debts. . . . . . . . . . . . . . . . . . . .   11  13
Taking for public or private use. . . . . . . . . . . . . . . . . . .    1  16
(See Eminent domain)

**Privilege**

Irrevocable grant of, prohibited. . . . . . . . . . . . . . . . . . . .    1    8
Legislative members not subject to arrest or civil
    process, when. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  16
Militia not to be arrested, when. . . . . . . . . . . . . . . . . . . .   10    5
Voters privileged from arrest at election, except. . . . . . . .    6    5

**Privileges**

Equal to all citizens and corporations. . . . . . . . . . . . . . .    1  12
Hereditary, grant of, by state prohibited. . . . . . . . . . . . .    1  28
Special, prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  12

**Probate courts**

Transfer from territorial to superior court. . . . . . . . . . . .   27  10

**Probate matters**

Appellate jurisdiction of supreme court. . . . . . . . . . . . . .    4    4
Original jurisdiction of superior court. . . . . . . . . . . . . . .    4    6
Transfer of jurisdiction from territorial probate court. . .   27  10

**Process**

Authority of superior court extends throughout state. . .    4    6
Legislators privileged from, when. . . . . . . . . . . . . . . . . .    2  16
State courts may have served on lands of United States.   25    1
Style of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  27
Territorial to be valid. . . . . . . . . . . . . . . . . . . . . . . . . . .   27    1

**Proclamation of president**

State Constitution to go into effect upon. . . . . . . . . . . . .   27  16

**Prohibition**

Appellate and revisory jurisdiction of supreme court. . .    4    4
Original jurisdiction of superior court. . . . . . . . . . . . . . .    4    6
Sale of liquors, separate article (rejected). . . . . . . . . . . .   27  17
Writs of, may be issued and served on nonjudicial days.    4    6

**Property**

Corporate, subject to eminent domain. . . . . . . . . . . . . . .   12  10
Deprivation without due process of law prohibited. . . . .    1    3
Private, not to be taken to pay public debts. . . . . . . . . . .   11  13
Taking for private use prohibited, exceptions. . . . . . . . .    1  16
Territorial, to vest in state. . . . . . . . . . . . . . . . . . . . . . . .   27    4
(See Personal property; Taxation)

**Prosecuting attorney**

Election, duties, term, compensation, legislature to
        provide for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11    5
    Removal from office by legislature. . . . . . . . . . . . . . . .   4    9

**Prosecutions**
    Commenced before statehood, how conducted. . . . . . . .  27    5
    Conducted in name of state. . . . . . . . . . . . . . . . . . . . . .   4   27
    May be by information or indictment. . . . . . . . . . . . . . .   1   25
    Unaffected by change in government. . . . . . . . . . . . . . .  27    5
    (See Criminal actions)

**Protection**
    Life, liberty and property entitled to. . . . . . . . . . . . . . . .   1    3
    Persons engaged in dangerous employments, provisions
        for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   35
    Public arms, provision for safekeeping. . . . . . . . . . . . .  10    4

**Public arms**
    Protection and safekeeping to be provided. . . . . . . . . . .  10    4

**Publication**
    Amendments proposed to Constitution. . . . . . . . . . . . . .  23    1
    Liberty of, guaranteed. . . . . . . . . . . . . . . . . . . . . . . . . .   1    5
    Of measures referred to the people. . . . . . . . . . . . . . . . .   2   1(e)
    Opinions of supreme court. . . . . . . . . . . . . . . . . . . . . . .   4   21
    Receipts and expenditures of public money. . . . . . . . . .   7    7

**Public corporations** (See Municipal corporations)

**Public debts**
    Private property not to be taken in payment of. . . . . . . .  11   13

**Public employment**
    Religious qualification not to be required. . . . . . . . . . . .   1   11

**Public funds**
    Legislature to provide for accounting. . . . . . . . . . . . . . .  11    5
    Private use of by officers felonious. . . . . . . . . . . . . . . .  11   14
    (See Appropriations; Investments; Industrial insurance
        trust fund; Public pension funds; School funds)

**Public health**
    Exception from power of referendum of bills affecting.   2   1(b)
    Laws regulating deleterious occupations to be passed. .   2   35
    State board of, shall be created. . . . . . . . . . . . . . . . . . . .  20    1

**Public indebtedness**
    Municipal, limit of. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8    6
    State building authority. . . . . . . . . . . . . . . . . . . . . . . . .   8    9
    State, limit of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8    1
    Exceptions to. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8   2,3
    Territorial, assumed by state. . . . . . . . . . . . . . . . . . . . .  26    3
    (See City; County indebtedness; State indebtedness;
        Towns and villages)

**Public institutions**
    Exception from power of referendum of bills affecting.   2   1(b)
    State support. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13    1

**Public lands**

| | | |
|---|---|---|
| Disclaimer by state of title to unappropriated | 26 | 2 |
| Granted to state held in trust for people | 16 | 1 |
| Sale only for full market value | 16 | 1 |
| Unappropriated to be subject to control of United States | 26 | 2 |
| (See Commissioner of public lands; Granted lands; Lands; School lands) | | |

**Public money**

| | | |
|---|---|---|
| Accountability of public officers | 11 | 5 |
| Appropriation for religious worship prohibited | 1 | 11 |
| Deposit with treasurer required | 11 | 15 |
| Energy, water, or stormwater or sewer services loans for conservation | 8 | 10 |
| Statement of receipts and expenditures to be published annually | 7 | 7 |
| Using or making a profit out of, a felony | 11 | 14 |
| (See Money) | | |

**Public office**

| | | |
|---|---|---|
| Religious qualification not to be required | 1 | 11 |

**Public officer**

| | | |
|---|---|---|
| Change of compensation during term (See Compensation) | | |
| Religious qualifications, prohibition against | 1 | 11 |
| (See Officers) | | |

**Public pension funds**

| | | |
|---|---|---|
| Investment of | 29 | 1 |
| Pension increase not extra compensation | 2 | 25 |

**Public property**

| | | |
|---|---|---|
| Not to be applied to religious worship | 1 | 11 |

**Public safety**

| | | |
|---|---|---|
| Exception from power of referendum of bills affecting | 2 | 1(b) |
| Ground for suspension of habeas corpus | 1 | 13 |

**Public schools**

| | | |
|---|---|---|
| Establishment and maintenance guaranteed | 26 | 4 |
| Free from sectarian control | 9 | 4 |
| | 26 | 4 |
| Open to all children of state | 9 | 1 |
| | 26 | 4 |
| Superintendent of public instruction to have supervision | 3 | 22 |
| System to be established by state | 9 | 2 |
| Including what | 9 | 2 |
| (See Common schools; Education; High schools; Normal schools; Technical schools) | | |

**Public use**

| | | |
|---|---|---|
| Of state waters | 21 | 1 |
| Taking of private property for | 1 | 16 |
| (See Eminent domain) | | |

**Public utility districts**

Excepted from levy limitation. . . . . . . . . . . . . . . . . . . .    7    2

**Punishment**

Bribery and corrupt solicitation, how punished. . . . . . . .    2   30

Cruel, not to be inflicted. . . . . . . . . . . . . . . . . . . . . . . . .    1   14

**Qualifications**

Judges of supreme and superior courts. . . . . . . . . . . . . .    4   17

Members of legislature. . . . . . . . . . . . . . . . . . . . . . . . . .    2    7

    Each house to be judge of. . . . . . . . . . . . . . . . . . . .    2    8

Religious, not to be required for public office. . . . . . . . .    1   11

State officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   25

Voters, of (See Voter)

**Quo warranto**

Appellate and original jurisdiction of supreme court. . .    4    4

Original jurisdiction of superior court. . . . . . . . . . . . . . .    4    6

**Quorum**

Legislature

    Majority of each house to constitute. . . . . . . . . . . .    2    8

    Less number may adjourn and compel attendance.    2    8

Supreme court, majority of judges necessary. . . . . . . . .    4    2

**Race**

Discrimination in education on account of, prohibited. .    9    1

**Railroad and transportation commission**

May be established by legislature. . . . . . . . . . . . . . . . . . .   12   18

**Railroad companies**

Charges to any point not to exceed those to more distant
    station. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   15

Combinations to regulate production or transportation of
    commodities prohibited. . . . . . . . . . . . . . . . . . . . . .   12   22

Sharing earnings forbidden (Repealed by Amendment
    67). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   14

Commission to control may be established. . . . . . . . . . .   12   18

Common carriers, subject to legislative control. . . . . . .   12   13

Connection at state line with foreign railroads
    authorized. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   13

Consolidation with competing lines prohibited. . . . . . . .   12   16

Delay in receipt and transportation of connecting cars
    forbidden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   13

Discrimination

    Between telegraph companies forbidden. . . . . . . .   12   19

    In charges between persons and places prohibited.   12   15

Excursion and commutation tickets may be granted. . . .   12   15

Express companies to be allowed equal terms. . . . . . . . .   12   21

Extortion and discrimination in rates to be prevented. . .   12   18

Grant of passes to public officers forbidden. . . . . . . . . .   12   20

Intersecting, crossing or connecting with other railroads
    authorized. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   13

Maximum rates of fare and freight may be established
    by law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   18

Passes

    Acceptance and use by public officers unlawful. .    2   39

    Issuance of, prohibited. . . . . . . . . . . . . . . . . . . . . .   12   20

Rolling stock subject to taxation and execution sale. . . .   12   17

Telegraph and telephone companies to be allowed to use
right-of-way..................................... 12 19
Transfer of cars, when shall form connections for..... 12 13
(See Common carriers)

**Railway cars**
Jurisdiction of public offense committed on.......... 1 22

**Ratification**
Constitutional amendments........................ 23 1
Revision of Constitution.......................... 23 3

**Real property**
Appellate jurisdiction of supreme court.............. 4 4
Original jurisdiction of superior court............... 4 6
Retired persons tax exemption..................... 7 10
Taxation based on actual use...................... 7 11

**Rebellion or invasion**
Suspension of writ of habeas corpus................ 1 13
(See also Invasion and attack)

**Recall of officers**
Grounds for................................... 1 33
Legislature, duty to pass necessary laws to carry out
recall provisions............................ 1 34
Officers subject to.............................. 1 33
Percent of voters required for..................... 1 34
Petition for, content and filing requirements.......... 1 33
Special election on petition for.................... 1 33

**Receipts and expenditures**
Account of, to be published....................... 7 7

**Reclamation**
Taking property for is public use................... 1 16

**Recognizances**
Territorial inure to state......................... 27 4
Valid and unaffected by change in government....... 27 4

**Records**
Continuity of government in emergency periods due to
enemy attack.............................. 2 42
Of legislature and executive department, secretary of
state to keep............................... 3 17
Of state officers to be kept at capital............... 3 24
Of territorial courts, transferred to superior courts..... 27 8

**Redistricting**
Commission................................... 2 43
Legislature's approval........................... 2 43
Plan.......................................... 2 43

**Referendum** (See Initiative and referendum)

**Reforestation**
Yield tax or au valorem tax authorized.............. 7 1

**Regents**

Appointment for state institutions. . . . . . . . . . . . . . . .    13    1

**Registration law**

Compliance with by elector necessary. . . . . . . . . . . . . .    6    7

Enactment by legislature required, when. . . . . . . . . . . .    6    7

Power of legislature to provide for punishment for
    illegal registration (Amended by Amendment 63).    6    1

**Release of debt or obligation**

Special legislation prohibited. . . . . . . . . . . . . . . . . . . . .    2  28(10)

**Religion**

Appropriations of public funds for religious purposes
    prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1   11

Chaplain of state penitentiary, right to employ. . . . . . . .    1   11

Freedom of conscience guaranteed. . . . . . . . . . . . . . . .    1   11

Juror not incompetent because of. . . . . . . . . . . . . . . . .    1   11

No person to be molested on account of. . . . . . . . . . . .    1   11

     26    1

Public office, religious qualification prohibited. . . . . . .    1   11

Toleration in, secured. . . . . . . . . . . . . . . . . . . . . . . . . .   26    1

Witness not incompetent because of. . . . . . . . . . . . . . .    1   11

**Removal from office**

Commission on judicial conduct, recommendations. . . .    4   31

Impeachment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5    1

Joint resolution of legislature for removal. . . . . . . . . . .    4    9

Judges and justices, by supreme court. . . . . . . . . . . . . .    4   31

Officers liable to impeachment. . . . . . . . . . . . . . . . . . .    5    2

Officers not liable to impeachment, how removed. . . . .    5    3

Of governor, who to act. . . . . . . . . . . . . . . . . . . . . . . . .    3   10

(See Recall of officers)

**Reporter of supreme court**    4   18

**Reports**

Decisions of supreme court. . . . . . . . . . . . . . . . . . . . . .    4   21

Defects and omissions in the laws. . . . . . . . . . . . . . . . .    4   25

**Representative districts**

Apportionment among counties. . . . . . . . . . . . . . . . . . .   22    2

Vacancies, how filled. . . . . . . . . . . . . . . . . . . . . . . . . . .    2   15

**Representatives**

Apportionment among counties. . . . . . . . . . . . . . . . . . .   22    2

Compensation and mileage. . . . . . . . . . . . . . . . . . . . . .    2   23

     28    1

Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   4,5

Number of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    2

Privilege

    From arrest, except. . . . . . . . . . . . . . . . . . . . . . . . .    2   16

    From civil process, when. . . . . . . . . . . . . . . . . . . .    2   16

Qualifications of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2    7

Reapportionment after each census. . . . . . . . . . . . . . . .    2   43

Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   4,5

Vacancy in office, how filled. . . . . . . . . . . . . . . . . . . . . .    2  15
    (See House of representatives; Recall of officers)

**Reprieves**
    Report of, by governor to legislature. . . . . . . . . . . . . . .    3  11

**Residence**
    Not affected by certain absences, for purposes of voting
        and eligibility to office. . . . . . . . . . . . . . . . . . . . . . .    6  4
    Qualifications for voters. . . . . . . . . . . . . . . . . . . . . . . . .    6  1,1A
    Retired persons tax exemption for. . . . . . . . . . . . . . . . .    7  10
    State officers, where. . . . . . . . . . . . . . . . . . . . . . . . . . . .    3  24

**Residential energy conservation**
    Loan of credit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8  10

**Retirement**
    Funds, investment of. . . . . . . . . . . . . . . . . . . . . . . . . . . .    29  1
    Judges of supreme, superior courts. . . . . . . . . . . . . . . .    4  3(a)
    Public officers, increase in pension not extra
        compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  25
    Retired persons tax exemption. . . . . . . . . . . . . . . . . . . .    7  10

**Revenue and taxation**
    Corporate property subject same as individual (Stricken
        by Amendment 14). . . . . . . . . . . . . . . . . . . . . . . . . .    7  3
    Exemptions from taxation (See Taxation)
    Retired persons property tax exemption. . . . . . . . . . . . .    7  10
    Uniform and equal rate required. . . . . . . . . . . . . . . . . . .    7  1
    (See Taxation)

**Review, writ of**
    Appellate and revisory jurisdiction of supreme court. . .    4  4
    Original jurisdiction of superior court. . . . . . . . . . . . . .    4  6

**Revision of Constitution**
    Convention for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23  2

**Right of petition**
    Not to be abridged. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  4

**Right-of-way**
    Appropriation of property for. . . . . . . . . . . . . . . . . . . . .    1  16
    (See Eminent domain)

**Right to assemble**
    Not to be abridged. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  4

**Right to bear arms**
    Not to be impaired. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  24
    Restriction on employment of armed men by private
        persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  24

**Rights**
    Declaration of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  1-2
    Enumerated, not to affect others retained. . . . . . . . . . . .    1  30
    Not affected by change in government. . . . . . . . . . . . . .    27  1

Reservation of rights in people (See Initiative and referendum)

**Road district**

Vacancy in office, how filled. . . . . . . . . . . . . . . . . . . . .   11    6

**Roads** (See Highways; State roads; Streets and roads)

**Rolling stock**

Personal property, subject to taxation and execution sale   12   17

**Rules of court**

Assignment of business of superior court under. . . . . . .    4    5

Court of appeals, governing. . . . . . . . . . . . . . . . . . . . . .    4   30

Judges of superior courts to establish. . . . . . . . . . . . . .    4   24

**Rules of proceedings**

Each house to determine. . . . . . . . . . . . . . . . . . . . . . . .    2    9

**Salaries**

Change in, during term of public officer (Partially repealed by Amendment 54). . . . . . . . . . . . . . . . .    2   25

    3   25

    4   13

    11    8

    28    1

(Amendment 54). . . . . . . . . . . . . . . . . . . . . . . . . .   30    1

Clerk of supreme court. . . . . . . . . . . . . . . . . . . . . . . . .    4   22

County, township, precinct, and district officers. . . . . .   11   5,8

Establishment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28    1

Independent commission to set. . . . . . . . . . . . . . . . . .   28    1

Judges of supreme and superior courts (partially superseded by Amendment 78). . . . . . . . . . . . . .    4  13,14

Justice of peace in certain cities. . . . . . . . . . . . . . . . . .    4   10

Referendum by people when changed. . . . . . . . . . . . .   28    1

Reporter of supreme court. . . . . . . . . . . . . . . . . . . . . .    4   18

State officers (Amendment 20) (Amendment 78). . . . . .   28    1

Attorney general (Partially superseded by Amendment 78). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   21

Auditor (Partially superseded by Amendment 78)        3   20

Commissioner of public lands. . . . . . . . . . . . . . . . . . .    3   23

Governor (Partially superseded by Amendment 78). . . .    3   14

Legislature, members of (Partially superseded by Amendment 78). . . . . . . . . . . . . . . . . . . . . . . . . .    2   23

Lieutenant governor (Partially superseded by Amendment 78). . . . . . . . . . . . . . . . . . . . . . . . . .    3   16

Secretary of state (Partially superseded by Amendment 78). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   17

Superintendent of public instruction (Partially superseded by Amendment 78). . . . . . . . . . . . . . .    3   22

Treasurer (Partially superseded by Amendment 78). . . .    3   19

**Sanitary regulations**

County, city, and town may enforce. . . . . . . . . . . . . . .   11   11

**School district**

Exemption of property from taxation. . . . . . . . . . . . . .    7    1

Indebtedness, limitations on. . . . . . . . . . . . . . . . . . . . .    8    6

**School elections**

Women may be permitted to vote (Stricken by
Amendment 5)........................... 6   2

**School fund**

Applied exclusively to common schools............. 9   2

Apportionment by special act forbidden............. 2  28(7)

Bonds, investment in (Amendment 1)

Enlargement of................................ 9   3

Interest to be applied to current expenses........... 9   3

Investment................................... 16   5

Loans to private persons or corporations forbidden
(Amended by Amendment 44)............... 16   5

Losses from, assumed by state.................... 9   5

Sources from which derived..................... 9   3

(See Common school construction fund; Common
school fund; Permanent school fund)

**School lands**

Sale, manner of............................... 16  2-4

**Schools**

Maintained by public funds to be free from sectarian
control.................................. 9   4

Public school system, what included in............. 9   2

(See Common schools; Education; High schools;
Normal schools; Public schools)

**Seal**

Commissions to be sealed....................... 3  15

Of state, design of............................. 18   1

Custodian, secretary of state to be............. 3  18

Of superior courts, design of..................... 27   9

Of territorial court, county and municipal officers, to be
seals under state.......................... 27  8,9

**Seat of government**

Continuity of government in emergency periods due to
enemy attack............................. 2  42

Documents, storage............................ 3  24

Election for, under territorial law.................. 27  15

Form of ballot................................ 27  18

Location, how determined....................... 14   1

Officers residence............................. 3  24

Permanent location, how changed................. 14   2

Provision for determination if no choice at first election  14   1

Temporary, to be located where.................. 14   1

**Secrecy**

In legislative proceedings....................... 2  11

Of ballot, to be secured at elections................ 6   6

**Secretary of state**

Attests commissions issued by state............... 3  15

Bureau of statistics, etc., to be established in office of..  2  34

Delivery of election returns for executive officers..... 3   4

Duties....................................... 3  17

Election of................................... 3   1

Initiative measures, filing petitions................ 2  1(a)

Records to be kept at seat of government. . . . . . . . . . . .    3  24
Referendum petition filed with. . . . . . . . . . . . . . . . . .    2   1(d)
Residence to be maintained at seat of government. . . . .    3  24
Salary (See Salaries)
Seal of state to be kept by. . . . . . . . . . . . . . . . . . . . . .    3  18
Submitting measures to the people pending enactment of
    specific legislation respecting initiative and
    referendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   1(d)
Succession to office of governor. . . . . . . . . . . . . . . . . .    3  10
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   3

**Sectarian control**
Public schools to be free from. . . . . . . . . . . . . . . . . . .    9   4
                                                                    26   4

**Security**
Of individual rights, what is essential. . . . . . . . . . . . .    1  32
Of person in private affairs and home. . . . . . . . . . . . .    1   7

**Senate**
Consent to certain appointments by governor. . . . . . . .   13   1
Impeachments tried by. . . . . . . . . . . . . . . . . . . . . . . . .    5   1
    Conviction requires two-thirds vote. . . . . . . . . . .    5   1
Legislative authority vested in. . . . . . . . . . . . . . . . . . . .    2   1
Number of senators. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   2
Presiding officer in absence of lieutenant governor. . . .    2  10
Quorum, majority to constitute. . . . . . . . . . . . . . . . . . .    2   8
Redistricting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  43
(See Legislature; Senators)

**Senatorial districts**
Apportionment among counties. . . . . . . . . . . . . . . . . .   22   1
Convenient and contiguous territory required. . . . . . . .    2   6
Numbering to be consecutive. . . . . . . . . . . . . . . . . . . .    2   6
Representative districts not to be divided. . . . . . . . . . .    2   6
Vacancy in office, how filled. . . . . . . . . . . . . . . . . . . . .    2  15

**Senators**
Allotment of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   6
Apportionment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22   1
Compensation and mileage. . . . . . . . . . . . . . . . . . . . .    2  23
                                                                    28   1
Elections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   6
Impeachments tried by. . . . . . . . . . . . . . . . . . . . . . . . .    5   1
Number. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   2
Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    From arrest, except. . . . . . . . . . . . . . . . . . . . . . . .    2  16
    From civil process, when. . . . . . . . . . . . . . . . . . .    2  16
Qualifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   7
Redistricting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  43
Recall. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1  33,34
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2   6
Vacancy in office, how filled. . . . . . . . . . . . . . . . . . . . .    2  15

**Separate articles**
Submission for adoption or rejection. . . . . . . . . . . . . . .   27  17
Form of ballot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27  18

Prohibition (rejected). . . . . . . . . . . . . . . . . . . . . . . . . .  27  17
Woman suffrage (rejected). . . . . . . . . . . . . . . . . . . . . .  27  17

**Sessions, legislative**

Duration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  12
Must be open, exceptions. . . . . . . . . . . . . . . . . . . . . . . .  2  11
Regular. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  12
Special. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  12
Vetoed bills, extraordinary session to reconsider. . . . . . .  3  12

**Settlement of land**

Taking of property for is public use. . . . . . . . . . . . . . . .  1  16

**Sewers**

City or town may contract debt for, limitations. . . . . . . .  8  6

**Sex**

Denial of franchise on account of, legislature may
    provide against in school elections (Stricken by
    Amendment 5). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  2
Discrimination in education on account of, prohibited. .  9  1
Equal rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31  1,2
Sex qualifications for voting abolished (Amendment 63)  6  1

**Sheriffs**

Election, duties, terms, etc., to be provided for by
    legislature. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11  5

**Shores and beds of navigable waters**

Assertion of state ownership. . . . . . . . . . . . . . . . . . . . . .  17  1
Disclaimer by state where patented, exception. . . . . . . .  17  2

**Soldiers**

Nonresident, excluded from enumeration of state
    inhabitants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  43
Quartering in private house forbidden, exceptions. . . . .  1  31

**Soldiers' home**

Admission granted to certain state militiamen, Union
    soldiers, sailors, and marines. . . . . . . . . . . . . . . . .  10  3
Maintenance by state to be provided for. . . . . . . . . . . . .  10  3

**Special election**

Recall of public officers, election on petition for. . . . . .  1  33,34
Reference of measures to people at. . . . . . . . . . . . . . . . .  2  1(d)

**Special legislation**

Prohibited in enumerated cases. . . . . . . . . . . . . . . . . . . .  2  28

**Special privileges**

Grant of, prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  12
Invalid, when. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12  2

**Special taxation**

For local improvements authorized. . . . . . . . . . . . . . . . .  7  9

**Speech**

Liberty of, guaranteed. . . . . . . . . . . . . . . . . . . . . . . . . . .  1  5

12/27/2016 9:01 AM                    [ 262 ]

**Speedy trial**

Right of accused. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  22

**Standing army**

Not to be kept in time of peace. . . . . . . . . . . . . . . . . .  1  31

**State**

Boundaries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24  1

Building authority. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8  9

Cession to United States of exclusive legislation over
certain lands. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25  1

Reservation of right to serve process. . . . . . . . . . .  25  1

Compact with United States. . . . . . . . . . . . . . . . . . . . .  26  1-4

Congressional districts, division into (Repealed by
Amendment 74). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27  13

Continuity of government in emergency periods due to
enemy attack. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  42

Convict labor not to be let out by contract. . . . . . . . . . .  2  29

Corporations, ownership of stock in or loaning credit to,
prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12  9

Credit not to be loaned. . . . . . . . . . . . . . . . . . . . . . . . . .  8  5
                                                                        12  9

Criminal prosecutions continued in name of state on
change of government. . . . . . . . . . . . . . . . . . . . . . . . .  27  5

Debts, fines, penalties, and forfeitures, accrued to
territory inure to state. . . . . . . . . . . . . . . . . . . . . . . .  27  3

Debts

Limitation on power. . . . . . . . . . . . . . . . . . . . . . . . . .  8  1-3

Money raised, how applied. . . . . . . . . . . . . . . . . . .  8  1

Power to contract. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8  1-3

Disclaimer of title to federal and Indian lands. . . . . . . . .  26  2

Division into senatorial and representative districts. . . .  22  1-2

Education, duty to provide for all children. . . . . . . . . . .  9  1

Harbors, restriction on sale of lands or rights in. . . . . . .  15  1

Indian lands, when taxable. . . . . . . . . . . . . . . . . . . . . . .  26  2

Lands granted to, held in trust for people. . . . . . . . . . . .  16  1

Ownership of beds and shores of navigable waters
asserted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17  1

Public schools, assumption of duty of establishing. . . . .  26  4

State institutions to be supported. . . . . . . . . . . . . . . . . .  13  1

Suits against the state. . . . . . . . . . . . . . . . . . . . . . . . . . .  2  26

Taxation, state property exempt from. . . . . . . . . . . . . . .  7  1

Territory

Debts and liabilities of, assumption by. . . . . . . . . . .  26  3

Property of, passes to state. . . . . . . . . . . . . . . . . . . .  27  4

Timber and stone on state lands, sale of. . . . . . . . . . . . .  16  3

Title in lands patented by United States disclaimed by. .  17  2

Validation by special law of void official acts against
the state not prohibited. . . . . . . . . . . . . . . . . . . . . . .  2  28(12)

**State auditor** (See Auditor)

**State board of health**

Legislature to establish. . . . . . . . . . . . . . . . . . . . . . . . . .  20  1

**State building authority**

Authorized. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8  9

**State capital**

Location, how made............................. 14   1
Change of, method............................. 14   2
(See Seat of government)

**State courts**

Jurisdiction of actions in territorial courts to be assumed
  by..................................... 27   5,8,10

**State indebtedness**

Annual expenses and state debt to be met by taxation
  (Amended by Amendment 14)................ 7   1
Limit of aggregate debt........................ 8   1
     Increase allowed to repel invasion............ 8   2
     Also for single work or object, after submission to
        vote.................................. 8   3
Losses in permanent school fund assumed as state debt. 9   5
State building authority......................... 8   9
State may contract debts to meet.................. 8   1

**State institutions**

Chaplains.................................... 1   11
Officers appointed by governor, with advice of senate.. 13   1
Support by state required........................ 13   1

**State land commissioner** (See Commissioner of public lands)

**State lands** (See Lands; Public lands)

**State militia** (See Militia)

**State officers**

Abolition of certain offices, power granted legislature.. 3   25
Compensation, change during term (See Salaries)
Duties of, temporary succession to during emergency.. 2   42
Elections
     Contested, legislature to decide............... 3   4
     First under Constitution, how and when......... 27   7
     Quadrennial.............................. 6   8
     Ties to be settled by legislature................ 3   4
     Time of................................... 6   8
Governor may require information from............. 3   5
Impeachment, who liable to...................... 5   2
Information to be furnished to governor in writing by.. 3   5
Passes, acceptance and use prohibited............... 12   20
                                              2   39
Qualifications................................. 3   25
Records, to be kept at seat of government............ 3   24
Removal of those not subject to impeachment........ 5   3
Residence of certain, at state capital................ 3   24
Salaries (See Salaries)
Terms....................................... 3   3
(See Officers; Public officers)

**State offices**

Abolition of certain, permitted.................... 3   25
Eligibility to.................................. 3   25

**State reformatories**

Chaplain, employment of. . . . . . . . . . . . . . . . . . . . . . . . . .    1  11

**State roads**

Opening by special law prohibited, except. . . . . . . . . .    2  28(2)

**State school tax**

Applied exclusively to common schools. . . . . . . . . . . . .    9   2

**State seal**

Description and custody. . . . . . . . . . . . . . . . . . . . . . . . .    3  18

**State taxes** (See Taxation)

**State treasurer** (See Treasurer)

**Statement of receipts and expenditures**

Annual publication required. . . . . . . . . . . . . . . . . . . . . .    7   7

**Statistics**

Bureau of, established. . . . . . . . . . . . . . . . . . . . . . . . . . .    2  34

**Statutes**

Enacting clause, style of. . . . . . . . . . . . . . . . . . . . . . . . .    2  18
When take effect (Stricken by Amendment 7). . . . . . . .    2  31
(See Acts; Bill; Laws)

**Stockholders**

Consent necessary to increase corporate stock. . . . . . . .   12   6
Joinder as parties defendant in actions against
corporation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   4
Liability for corporate debts. . . . . . . . . . . . . . . . . . . . . .   12   4
In banking, insurance and joint stock companies. .  12  11
(See Corporations; Stock of corporations)

**Stock of corporations**

Counties, cities, etc., not to own, except. . . . . . . . . . . .    8   7
Fictitious increase void. . . . . . . . . . . . . . . . . . . . . . . . . .   12   6
Increase allowed only under general law. . . . . . . . . . . .   12   6
With consent of majority of stockholders. . . . . . . .   12   6
Issued only to bona fide holders. . . . . . . . . . . . . . . . . . .   12   6
(See Corporations; Stockholders)

**Stone**

Sale from state lands authorized. . . . . . . . . . . . . . . . . . .   16   3

**Streets and roads**

Extension over tide lands permitted. . . . . . . . . . . . . . . .   15   3
Opening or altering under special laws prohibited,
exceptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  28(2)
(See Highways)

**Students**

Absence does not affect right to vote. . . . . . . . . . . . . . .    6   4

**Subpoena**

Accused in criminal action has right to compel
   attendance of witnesses. . . . . . . . . . . . . . . . . . . . . . .    1  22

**Suffrage**

Denial on account of sex, legislature may provide
   against in school elections (Stricken by
   Amendment 5). . . . . . . . . . . . . . . . . . . . . . . . . . . .    6   2
Exercise of right to be free, equal and undisturbed. . . . .    1  19
Qualifications of voters (See Voter)

**Suits against state**

Legislature to direct. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  26

**Superintendent of public instruction**

Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3  22
Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   1
Records to be kept at seat of government. . . . . . . . . . . .    3  24
Salary (See Salaries)
Succession to office of governor. . . . . . . . . . . . . . . . . . .    3  10
Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3   3

**Superior court**

Actions, review of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  30
Assignment of judges by supreme court. . . . . . . . . . . . .    4   2(a)
Assignment of judges by governor. . . . . . . . . . . . . . . . .    4   5
Clerk. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  26
Court commissioners, appointed. . . . . . . . . . . . . . . . . . .    4  23
Court of record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  11
Decisions of causes to be made within ninety days. . . . .    4  20
Election and districts. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   5,29
   First, contests to be determined how. . . . . . . . . . . .   27  12
Eligibility to. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4  17
Equity jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   6
Grand jury summoned only on order of judge. . . . . . . . .    1  26
Judges
   Each, where more than one, invested with powers
      of all. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   5
   Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   5,29
   Number and distribution. . . . . . . . . . . . . . . . . . . . .    4   5
   Pro tempore, when authorized. . . . . . . . . . . . . . . . .    4   7
   Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   3(a)
   Sits in any county, when. . . . . . . . . . . . . . . . . . . . .    4   7
   Supreme court duty, performance upon request. . .    4   2(a)
   Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   5
Judicial power, vested in. . . . . . . . . . . . . . . . . . . . . . . . .    4   1
Jurisdiction, original and appellate. . . . . . . . . . . . . . . . .    4   6
Naturalization, power of. . . . . . . . . . . . . . . . . . . . . . . . .    4   6
Open, except on nonjudicial days. . . . . . . . . . . . . . . . . .    4   6
Other court, perform duties in. . . . . . . . . . . . . . . . . . . . .    4   2(a)
Probate courts, appellate jurisdiction over. . . . . . . . . . .   27  10
Process extends to all parts of state. . . . . . . . . . . . . . . .    4   6
Report to supreme court defects in laws. . . . . . . . . . . . .    4  25
Retirement of judges. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4   3(a)
Review by court of appeals or supreme court. . . . . . . . .    4  30
Rules of practice, shall establish. . . . . . . . . . . . . . . . . . .    4  24
Salary (See Salaries)
Seal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27   9
Sessions and distribution of business. . . . . . . . . . . . . . .    4   5

Territorial causes and records pass to. . . . . . . . . . . . . . 27   5,8
Vacancies, governor to fill. . . . . . . . . . . . . . . . . . . . . . . .   4   5
Writs, power to issue. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   6
(See Judges of superior court)

**Supreme court**
Assignment of superior court judges by. . . . . . . . . . . . .   4   2(a)
Chief justice, how determined. . . . . . . . . . . . . . . . . . . . .   4   3
Clerk to be appointed. . . . . . . . . . . . . . . . . . . . . . . . . . .   4  22
Court of appeals, rules governing. . . . . . . . . . . . . . . . . .   4  30
Court of record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  11
Decisions to be in writing and state grounds. . . . . . . . . .   4   2
Departments of court may be provided. . . . . . . . . . . . . .   4   2
Election of judges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   3
Eligibility to office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  17
Judges
    Court to consist of five. . . . . . . . . . . . . . . . . . . . . . .   4   2
    Number may be increased. . . . . . . . . . . . . . . . . . . .   4   2
    Retirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   3(a)
    Salary (See Salaries)
    Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   3
Judicial power vested in. . . . . . . . . . . . . . . . . . . . . . . . .   4   1
Jurisdiction, original and appellate. . . . . . . . . . . . . . . . .   4   4
Open except on nonjudicial days. . . . . . . . . . . . . . . . . . .   4   2
Opinions to be published. . . . . . . . . . . . . . . . . . . . . . . . .   4  21
Power to censure, remove, etc., judges and justices. . . .   4  31
Power to issue writs. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   4
Quorum, majority of judges to form and pronounce
    decisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   2
Report of defects in laws to be made to governor. . . . . .   4  25
Reporter to be appointed. . . . . . . . . . . . . . . . . . . . . . . . .   4  18
Retirement of judges. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   3(a)
Review of superior court actions. . . . . . . . . . . . . . . . . . .   4  30
Seal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27   9
Sessions to be held where. . . . . . . . . . . . . . . . . . . . . . . .   4   3
Temporary judicial duties in. . . . . . . . . . . . . . . . . . . . . . .   4   2(a)
Territorial supreme court, when jurisdiction over causes
    passes to state court. . . . . . . . . . . . . . . . . . . . . . . . .  27   8
Vacancies, how filled. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4   3
(See Judges of supreme court)

**Supreme court clerk**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  22

**Supreme court reporter**. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4  18

**Supreme law**
Constitution of United States is. . . . . . . . . . . . . . . . . . . .   1   2

**Surgery**
Practice of, to be regulated by law. . . . . . . . . . . . . . . . . .  20   2

**Swamp and overflowed lands**
Disclaimer by state of title to patented. . . . . . . . . . . . . .  17   2

**Taxation**
Au valorem tax on mines and reforested lands. . . . . . . .   7   1
Agricultural lands, actual use. . . . . . . . . . . . . . . . . . . . . .   7  11

Assessment or collection by special laws prohibited. . . .    2  28(5)
Budget stabilization account. . . . . . . . . . . . . . . . . . . . . .    7  12
Cities, power, to assess and collect local taxes. . . . . . . .    11  12
Counties, power to assess and collect local. . . . . . . . . .    11  12
Deficiencies, state tax may be levied for. . . . . . . . . . . .    7   8
Exemptions allowed for certain property. . . . . . . . . . . .    7   1
       Indian lands, when. . . . . . . . . . . . . . . . . . . . . . . .    26  2
       Public property exemption. . . . . . . . . . . . . . . . . .    7   1
       Real property, retired persons. . . . . . . . . . . . . . .    7  10
       United States lands, when. . . . . . . . . . . . . . . . . .    7   1
                                                               26  2
Farms, actual use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7  11
Federal agencies and property may be taxed, when. . . .    7   3
Gasoline (certain) taxes limited to highway purposes
    only. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2  40
Head of family exemption. . . . . . . . . . . . . . . . . . . . . . .    7   1
Indian lands, patented, how taxed. . . . . . . . . . . . . . . . .    26  2
Intangible property. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7   1
Jurisdiction
       Appellate, of supreme court. . . . . . . . . . . . . . . . .    4   4
       Original, of superior court. . . . . . . . . . . . . . . . . . .    4   6
Law imposing tax must state object. . . . . . . . . . . . . . . .    7   5
Legislative power to provide for exemption. . . . . . . . . .    7   1
Levy only in pursuance of law. . . . . . . . . . . . . . . . . . . . .    7   5
       Proceeds applied only to object stated. . . . . . . . . .    7   5
       Property subject to. . . . . . . . . . . . . . . . . . . . . . . . . .    7   1
Local, legislature no power to impose. . . . . . . . . . . . . . .    11  12
Mines and mineral resources, yield tax or au valorem
    tax on. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7   1
Municipal corporations
       Authority to assess and collect taxes. . . . . . . . . . .    7   9
       Power to assess and collect local taxes. . . . . . . . . .    11  12
Nonresidents, lands of, how taxed. . . . . . . . . . . . . . . . .    26  2
Open space lands, actual use. . . . . . . . . . . . . . . . . . . . . .    7  11
Power of taxation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7   1
Property subject to. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7  1,2
Property tax limited to 1 per cent of true and fair value.    7   2
Public purposes, taxation limited to. . . . . . . . . . . . . . . .    7   1
Real estate, uniformity of taxation of. . . . . . . . . . . . . . .    7   1
Real property, retired persons exemption. . . . . . . . . . . .    7  10
Rolling stock of railroads subject to. . . . . . . . . . . . . . . .    12  17
Special assessments for local improvements. . . . . . . . . .    7   9
Standing timber, actual use. . . . . . . . . . . . . . . . . . . . . . .    7  11
State purposes
       Payable into treasury in money only. . . . . . . . . . . .    7   6
       Taxes for, no commutation of county's
         proportionate share. . . . . . . . . . . . . . . . . . . . .    11  9
Surrender of state's power to tax corporate property
    prohibited (Stricken by Amendment 14). . . . . . . .    7   4
Taxable property, defined. . . . . . . . . . . . . . . . . . . . . . . .    7   1
Taxing district, defined. . . . . . . . . . . . . . . . . . . . . . . . . .    7   2
Timberlands, actual use. . . . . . . . . . . . . . . . . . . . . . . . . .    7  11
Towns, power to assess and collect local taxes. . . . . . . .    11  12
Uniformity required. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7  1,9
Yield tax authorized for mines and reforested land. . . . .    7   1
(See Revenue and taxation)

**Technical schools**

Included in public school system. . . . . . . . . . . . . . . . .   9   2

**Telegraph and telephone companies**

Common carriers. . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   19
Construction of lines authorized. . . . . . . . . . . . . . . . . .   12   19
Delay and discrimination in handling messages
    prohibited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   19
Eminent domain, right extended to. . . . . . . . . . . . . . . .   12   19
Railroads to grant like facilities to all companies. . . . . .   12   19
Rights-of-way, railroads must allow use for construction
    of lines. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12   19

**Tenure of office**

County officers ineligible for more than two terms in
    succession (Repealed by Amendment 22). . . . . . .   11   7
Extension of term not to be granted to county and local
    officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11   8
In office at adoption of Constitution, how long to hold. .   27   14
State treasurer ineligible for succeeding term (Amended
    by Amendment 31). . . . . . . . . . . . . . . . . . . . . . . . .   3   25
(See Recall of officers; Term of office)

**Term of office**

Attorney general. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   3
Auditor of state. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   3
Commencement of term. . . . . . . . . . . . . . . . . . . . . . . .   3   4
    Of first officers elected under Constitution. . . . . .   27   16
Commissioner of public lands. . . . . . . . . . . . . . . . . . . .   3   3
Compensation increase during term. . . . . . . . . . . . . . .   30   1
County, district, precinct and township officers. . . . . . .   11   5
Governor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   2
Judges of supreme court. . . . . . . . . . . . . . . . . . . . . . . .   4   3
    Of superior court. . . . . . . . . . . . . . . . . . . . . . . . . .   4   5
Lieutenant governor. . . . . . . . . . . . . . . . . . . . . . . . . . .   3   3
Officers not provided for in Constitution, legislature to
    fix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27   11
Representatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   4,5
Secretary of state. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   3
Senators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2   6
Superintendent of public instruction. . . . . . . . . . . . . . .   3   3
Treasurer of state. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3   3
(See Recall of officers; Tenure of office)

**Territory**

Accrued debts, fines, etc., inure to state. . . . . . . . . . . .   27   3
Bonds and recognizances given to, pass to state. . . . . . .   27   4
Courts of, continue until when. . . . . . . . . . . . . . . . . . . .   27   8
    Causes transferred to state courts. . . . . . . . . . . . . .   27   5,8
Debts of, assumed by state. . . . . . . . . . . . . . . . . . . . . . .   26   3
Existing counties to be subdivisions of state. . . . . . . . . .   11   1
Existing rights, suits, etc., change in form of
    government not to affect. . . . . . . . . . . . . . . . . . . . .   27   1
Laws to remain in force, conditions. . . . . . . . . . . . . . . .   27   2
    Except those granting tide lands. . . . . . . . . . . . . . .   27   2
Liabilities, assumption of, by state. . . . . . . . . . . . . . . . .   26   3
Officers to hold until superseded by state officers. . . . . .   27   6
Process to be valid. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27   1
Property of, to vest in state. . . . . . . . . . . . . . . . . . . . . . .   27   4

**Testimony**

Accused not required to testify against himself. . . . . . . .   1   9
Except in case of bribery or corrupt solicitation. . . . . . .   2  30
Right of accused to testify. . . . . . . . . . . . . . . . . . . . . . . .   1  22
Treason, what necessary for conviction. . . . . . . . . . . . .   1  27
Weight of, not affected by religious belief. . . . . . . . . . .   1  11
(See Evidence)

**Tide lands**

Ownership by state asserted. . . . . . . . . . . . . . . . . . . . .  17   1
Streets may be extended over, by municipal
   corporations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15   3
Title to lands patented disclaimed by state. . . . . . . . . .  17   2
Vested rights may be asserted in courts. . . . . . . . . . . . .  17   1

**Tide waters**

Control and regulation within harbor areas. . . . . . . . . .  15  1-3

**Timber**

Sale from state lands authorized, how. . . . . . . . . . . . . .  16   3
Sale, proceeds to common school construction fund. . . .   9   3
Taxation based on actual use. . . . . . . . . . . . . . . . . . . . .   7  11

**Timberlands**

Reforestation lands, yield tax. . . . . . . . . . . . . . . . . . . . .   7   1
Sale of, when valid. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16   3
Taxation based on actual use. . . . . . . . . . . . . . . . . . . . .   7  11

**Time**

Petition for initiative measures, time for filing. . . . . . .   2  1(a)
Referendum petition, time for filing. . . . . . . . . . . . . . .   2  1(d)

**Title**

Assertion by state in tide lands. . . . . . . . . . . . . . . . . . .  17   1
Disclaimer by state to patented lands. . . . . . . . . . . . . .  17   2

**Tolerance**

Secured in matters of religious sentiment. . . . . . . . . . .  26   1

**Toll**

Appellate jurisdiction of supreme court. . . . . . . . . . . . .   4   4
Original jurisdiction of superior court. . . . . . . . . . . . . .   4   6

**Towns and villages**

Amendment of charter by special act prohibited. . . . . .   2  28(8)
Bonds, nonrecourse revenue for industrial development
   projects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32   1
Corporate stock or bonds not to be owned by. . . . . . . .   8   7
Credit not to be loaned, except. . . . . . . . . . . . . . . . . . .   8   7
Indebtedness, limitations on. . . . . . . . . . . . . . . . . . . . .   8   6
Moneys to be deposited with treasurer. . . . . . . . . . . . .  11  15
   Use of, by official, a felony. . . . . . . . . . . . . . . . . . .  11  14
Officers
   Salaries of, change during term (Partially repealed
     by Amendment 54). . . . . . . . . . . . . . . . . . . . . . .  11   8
   (Amendment 54). . . . . . . . . . . . . . . . . . . . . . . . . . .  30   1
   Term not to be extended. . . . . . . . . . . . . . . . . . . . .  11   8
Organization under general laws required. . . . . . . . . . .  11  10

Police and sanitary regulations may be enforced. . . . . . . 11  11

Taxation

    Local, legislature not to impose. . . . . . . . . . . . . . 11  12

    Power of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11  12

    Special assessments for local improvements
        authorized. . . . . . . . . . . . . . . . . . . . . . . . . .  7   9

(See Municipal corporations; Municipal courts;
    Municipal fines)

**Townships**

County may adopt township form of organization by
    majority vote. . . . . . . . . . . . . . . . . . . . . . . . . . 11   4

Local affairs to be managed under general laws. . . . . . . 11   4

Officers, election, duties, terms, compensation to be
    prescribed by legislature. . . . . . . . . . . . . . . . . . . 11   5

Police and sanitary regulations, power to enforce. . . . . . 11  11

Term of office not to be extended. . . . . . . . . . . . . . . . 11   8

Vacancies in office, how filled. . . . . . . . . . . . . . . . . . 11   6

(See Towns and villages)

**Trains**

Jurisdiction of public offense committed on. . . . . . . . .  1  22

**Transportation companies**

Commission to regulate may be established. . . . . . . . . . 12  18

Common carriers, subject to legislative control. . . . . . . 12  13

Discrimination in charges prohibited. . . . . . . . . . . . . . 12  15

Excursion and commutation tickets may be issued. . . . . 12  15

Legislature may regulate rates. . . . . . . . . . . . . . . . . . 12  18

Passes not to be granted public officers. . . . . . . . . . . . 12  20

Pooling earnings prohibited (Repealed by Amendment
    67). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12  14

(See Railroad companies)

**Treason**

Acts constituting. . . . . . . . . . . . . . . . . . . . . . . . . . .  1  27

Evidence necessary for conviction. . . . . . . . . . . . . . . .  1  27

**Treasurer**

Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3  19

Election of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3   1

Ineligibility for succeeding term (Amended by
    Amendment 31). . . . . . . . . . . . . . . . . . . . . . . .  3  25

Records to be kept at seat of government. . . . . . . . . . . .  3  24

Residence must be at seat of government. . . . . . . . . . . .  3  24

Salary (See Salaries)

Succession to governorship. . . . . . . . . . . . . . . . . . . . .  3  10

Term of office. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3   3

**Treasury**

Moneys collected by municipal officers to be paid into. 11  15

Paid out of state, when and how. . . . . . . . . . . . . . . . .  8   4

State taxes to be paid into. . . . . . . . . . . . . . . . . . . . .  7   6

**Trial by jury**

Criminal action, right of accused in. . . . . . . . . . . . . . .  1  22

Number of jurors in courts not of record. . . . . . . . . . . .  1  21

Right of, remains inviolate. . . . . . . . . . . . . . . . . . . . .  1  21

    Waiver in civil cases. . . . . . . . . . . . . . . . . . . . . .  1  21

Verdict by less than twelve may be authorized in civil cases.................................... 1 21

**Trustees**

Appointment for state institutions................. 13  1

**Trusts**

Forfeiture of property and franchise may be declared for 12  22
Prohibited under penalty......................... 12  22

**Twice in jeopardy**

Not to be subjected to for same offense............. 1  9

**Uniformity**

In system of county government to be provided for.... 11  4
In taxation, required............................. 7  1,9

**United States**

Compact of state with........................... 26  1-4
Consent of, necessary for disposing of certain lands.... 16  1
Constitution is supreme law of land................ 1  2
Exclusive jurisdiction over certain lands............ 25  1
Officers for territory hold until superseded by state.... 27  6
Office under, acceptance vacates seat in legislature.... 2  14
President, qualifications to vote for................ 6  1A
Taxation of agencies and property permitted, when.... 7  3
Taxation of lands of, not to be imposed............. 26  2
Title to unappropriated lands remains in............. 26  2
(See Congress; Federal officers; Forts; Dockyards, etc;
    Indian lands)

**Vacancies in office**

Township, precinct and road district filled by county commissioners............................ 11  6
Continuity of government in periods of emergency due to enemy attack........................... 2  42
County partisan elective offices.................... 2  15
Governor....................................... 3  10
Judges of supreme and superior courts.............. 4  3,5
Legislature..................................... 2  15
Partisan county elective office..................... 2  15
State, filled by governor until next election........... 3  13

**Validating acts**

Relating to deeds, etc., by special laws, prohibited..... 2  28(9)

**Validity of statute**

Appellate jurisdiction of supreme court............. 4  4

**Verdict**

Number of jurors may be less than twelve in civil cases.  1  21

**Vested rights**

In tide lands, protected.......................... 17  1

**Veto**

Governor's power of............................. 3  12
Measures initiated by or referred to the people... 2  1(d)

Passage over. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3  12

**Victims of crimes**

Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  35

**Village** (See Towns and villages)

**Vital statistics**

Bureau of, to be created. . . . . . . . . . . . . . . . . . . . . . . . . .  20  1

**Vote**

By ballot on all elections. . . . . . . . . . . . . . . . . . . . . . . . .  6  6
First election to be under territorial law. . . . . . . . . . . . .  27  15
Legislative elections to be viva voce. . . . . . . . . . . . . . . .  2  27
Legislature to provide method. . . . . . . . . . . . . . . . . . . . .  6  6
Persons not entitled to. . . . . . . . . . . . . . . . . . . . . . . . . . .  6  3
President, for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  1A
Registration a prerequisite, when. . . . . . . . . . . . . . . . . .  6  7
School elections, women may be given right (Stricken
    by Amendment 5). . . . . . . . . . . . . . . . . . . . . . . . . . .  6  2
Superior court judge, for. . . . . . . . . . . . . . . . . . . . . . . . .  4  29
Temporary residence of certain persons not to affect
    right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  4
(See Elections; Electors; Initiative and referendum;
    Voter)

**Voter**

Absence for certain reasons not to affect rights as. . . . .  6  4
Age. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  1
Basis for ascertaining number of voters required on
    referendum petition. . . . . . . . . . . . . . . . . . . . . . . . .  2  1(d)
Citizenship qualification. . . . . . . . . . . . . . . . . . . . . . . . .  6  1
Exempt from military duty on election day, except. . . . .  6  5
Females as qualified (Amendment 5)
Incompetent persons, disqualification. . . . . . . . . . . . . . .  6  3
Majority vote required for approval of measures
    submitted to popular vote. . . . . . . . . . . . . . . . . . . .  2  1(d)
Percentage of voters required on referendum petition. . .  2  1(a)
Percentage of voters required to propose initiative
    measures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  1(a)
Presidential elections, qualifications. . . . . . . . . . . . . . . .  6  1A
Privilege from arrest at election, except. . . . . . . . . . . . .  6  5
Qualifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  1
Recall of public officer, percentage of voters required
    for. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  33,34
Registration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6  7
Residence qualification. . . . . . . . . . . . . . . . . . . . . . . . . .  6  1
(See Elective franchise; Electors; Initiative and
    referendum)

**Voter's pamphlet**

Distribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2  1(e)

**Waiver**

Of jury trial for ascertaining compensation for eminent
    domain. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1  16

**Water and water rights**

Appropriation for irrigation, etc., declared a public use.  21  1

Loaning of credit for water, energy, or stormwater or
    sewer services conservation. . . . . . . . . . . . . . . . . .   8  10
Municipal corporations, indebtedness for, limitations. . .   8   6
Restrictions on sale by state. . . . . . . . . . . . . . . . . . . . . . .  15   1

**Ways of necessity**
    Taking of private property for. . . . . . . . . . . . . . . . . . . . .   1  16
    (See Eminent domain)

**Wharves**
    Harbor areas to be leased for, limitations. . . . . . . . . . .  15   2
    (See Area reserved; Harbors; Navigable waters)

**Wills**
    Validation by special law prohibited. . . . . . . . . . . . . . .   2  28(9)

**Witness**
    Accused as having right to confront. . . . . . . . . . . . . . .   1  22
    Crimination of self in bribery cases compulsory. . . . . . .   2  30
    Not compelled to testify against himself. . . . . . . . . . . .   1   9
    Number necessary for conviction in treason. . . . . . . . . .   1  27
    Religious belief not ground of incompetency. . . . . . . . .   1  11
    (See Testimony)

**Woman suffrage**
    Adoption of (Amendment 5)
    Denial in school elections may be provided against
        (Stricken by Amendment 5). . . . . . . . . . . . . . . . .   6   2
    Separate article submitted (rejected). . . . . . . . . . . . . . .  27  17

**Women**
    Equal rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31   1,2

**Worship**
    Freedom guaranteed. . . . . . . . . . . . . . . . . . . . . . . . . . .   1  11

**Writs**
    Issuance and service on nonjudicial days. . . . . . . . . . . .   4   6
    Issuance by supreme court. . . . . . . . . . . . . . . . . . . . . . .   4   4
    Issuance by superior court. . . . . . . . . . . . . . . . . . . . . . .   4   6
    (See Habeas corpus)

**Yeas and nays**
    Allowing introduction of bills within ten days of
        adjournment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2  36
    Entered on journal upon demand of members. . . . . . . . .   2  21
    Taken on final passage of bills. . . . . . . . . . . . . . . . . . . .   2  22
        On passage of emergency clauses (Stricken by
            Amendment 7). . . . . . . . . . . . . . . . . . . . . . . . .   2  31
    (See Ayes and noes)

# LAWS

## OF THE

# TERRITORY OF WASHINGTON

### ENACTED BY THE

## LEGISLATIVE ASSEMBLY,

### IN THE YEAR 1877.

**Published by Authority.**

OLYMPIA:

C. B. BAGLEY, PUBLIC PRINTER.

**1877.**

# LAWS

OF THE

# TERRITORY OF WASHINGTON

*Enacted at the Sixth Biennial Session, which was begun and held at the City of Olympia, the Capital of said Territory, on Monday, the first day of October, A. D. 1877, and was adjourned without day on Friday, the 9th day of November, A. D. 1877.*

ELISHA P. FERRY, Governor. THOMAS MILBURNE REED, President of the Council. RUFUS G. NEWLAND, Speaker of the House of Representatives.

---

## AN ACT

TO REGULATE THE PRACTICE AND PROCEEDINGS IN CIVIL ACTIONS.

## CHAPTER I.

OF THE FORM OF CIVIL ACTIONS AND OF THE PARTIES THERETO.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the common law of England, so far as it is not repugnant to, or inconsistent with the constitution and laws of the United States and the organic act and laws of Washington Territory, shall be the rule of decision in all the courts of this Territory.

SEC. 2. There shall be in this Territory hereafter but one form of action for the enforcement or protection of private rights

4                    GENERAL LAWS

and the redress of private wrongs, which shall be called a civil action.

Sec. 3.  The party commencing the action shall be known as the plaintiff, and the opposite party the defendant.

Sec. 4.  Every action shall be prosecuted in the name of the real party in interest, except as is otherwise provided by law; but in all cases where the action is brought by an assignee, the same defense may be set up as could be done were the suit brought in the name of the original party for the use of the assignee, except in cases where the action is upon a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due.

Sec. 5.  An executor or administrator, or guardian of a minor or lunatic, a trustee of an express trust, or a person authorized by statute, may sue without joining the person for whose benefit the suit is prosecuted.  A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another.

Sec. 6.  When a married woman is a party her husband must be joined with her, except

1.  When the action concerns her separate property, or her right or claim to the homestead property, she may sue alone.

2.  When the action is between herself and her husband, she may sue or be sued alone.

3.  When she is living separate and apart from her husband, she may sue or be sued alone.

Sec. 7.  Husband and wife may join in all causes of action arising from injuries to the person or character of either or both of them, or from injuries to the property of either or both of them, or arising out of any contract in favor of either or both of them.  If a husband and wife be sued together, the wife may defend for her own right, and if the husband neglect to defend, she may defend for his right also.  And she may defend in all cases in which she is interested, whether she is sued with her husband or not.

Sec. 8.  The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors, and when the death of a person is caused by the wrongful act or neglect of another, his heirs, or personal representatives may maintain an action for damages against the person causing the death; or when the death of a person is caused by an injury received in falling through any opening or defective place in any sidewalk, street, alley, square, or wharf, his heirs, or personal representatives may maintain an action for damages against the person whose duty it was, at the time of

GENERAL LAWS.                    5

the injury, to have kept in repair such sidewalk or other place. In every such action the jury may give such damages, pecuniary or exemplary, may as, under all circumstances of the case, to them seem just.

SEC. 9. A father, or in case of the death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward.

SEC. 10. A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the seduction of a daughter, and the guardian for the seduction of a ward, though the daughter or ward be not living with or in the service of the plaintiff at the time of the seduction or afterwards, and there be no loss of service.

SEC. 11. An unmarried female over twenty-one years of age may maintain an action as plaintiff for her own seduction, and recover therein such damages as may be assessed in her favor; but the prosecution of an action to judgment by the father, mother, or guardian, as prescribed in the preceding section, shall be a bar to an action by such unmarried female.

SEC. 12. When an infant is a party, he shall appear by guardian, or if he has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act.

SEC. 13. The guardian shall be appointed as follows:

1. When the infant is plaintiff, upon the application of the infant if he be of the age of fourteen years, or if under that age upon the application of a relative or friend of the infant.

2. When the infant is defendant, upon the application of the infant if he be of the age of fourteen years, and apply on the first day of the return term; if he be under the age of fourteen, or neglect to apply, then upon the application of any other party to the action, or of a relative or friend of the infant.

SEC. 14. All persons interested in the cause of action, or necessary to the complete determination of the question involved, shall, unless otherwise provided by law, be joined as plaintiffs when their interest is in common with the party making the complaint, and as defendants when their interest is adverse to the plaintiff: *Provided*, That where good cause exists, which shall be made to appear in the complaint, why a party who should be a plaintiff cannot, from a want of consent on his part or otherwise, be made such complainant, he shall be made a defendant.

SEC. 15. When the question is one of common or general interest to many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

6                                GENERAL LAWS.

SEC. 16.   Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, may all or any of them be included in the same action, at the option of the plaintiff.

SEC. 17.   No action shall abate by the death, marriage, or other disability of the party, or by the transfer of any interest therein, if the cause of action survive or continue; but the court may at any time within one year thereafter, on motion, allow the action to be continued by or against his representatives or successors in interest.

SEC. 18.   No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine by reason of such death if he have a wife and child living, but such action may be prosecuted, or commenced and prosecuted in favor of such wife, or in favor of the wife and children, or if no wife, in favor of such child or children.

SEC. 19.   In any action brought for the recovery of the purchase money against any person holding a contract for the purchase of lands, the party bound to perform the contract, if not the plaintiff, may be made a party, and the court in a final judgment may order the interest of purchaser to be sold or transferred to the plaintiff upon such terms as may be just, and may also order a specific performance of the contract in favor of the complainant, or the purchaser, in case a sale be ordered.

SEC. 20.   The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in.

SEC. 21.   When a new party is introduced into an action as a representative or successor of a former party, such new party is entitled to the same notice, to be given in the same manner as required for defendants in the commencement of an action.

SEC. 22.   A defendant against whom an action is pending upon a contract or for specific real or personal property, at any time before answer, upon affidavit that a person not a party to the action, and without collusion with him, makes against him a demand for the same debt or property, upon due notice to such person and the adverse party, may apply to the court for an order to substitute such person in his place, and discharge him from liability to either party on his depositing in court the amount of the debt, or delivering the property or its value to such person as the court may direct; and the court may in its discretion make the order.

## GENERAL LAWS. 7

SEC. 23. Any person may, before the trial intervene in an action or proceeding, who has an interest in the matter in litigation in the success of either party, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff, in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff or by demanding anything adversely to both the plaintiff and the defendant, and is made by a complaint setting forth the grounds upon which the intervention rests, filed by leave of the court or judge on the *ex parte* motion of the party desiring to intervene.

SEC. 24. When leave is given to intervene, a copy of the intervenor's complaint shall be served upon the parties to the action or proceedings who have not appeared, or publication of a notice of the intervention containing a brief statement of the nature of the intervenor's demand shall be made in all cases where there are absent or non-resident defendants. The notice shall be published in the same manner and for the same length of time as prescribed in this act for publication of summons. And the complaint shall also be served upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint. The court shall determine upon the rights of the intervenor at the same time the action is decided, and if the claim of the party intervening is not sustained, he shall pay all costs incurred by the intervention: *Provided*, That no intervention shall be cause for delay in the trial of an action between the original parties thereto beyond the term to which the action is brought.

## CHAPTER II.

#### LIMITATION OF ACTIONS.

SEC. 25. Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute; but in the district court the objection that the action was not commenced within the time limited, can only be taken by answer.

SEC. 26. The period prescribed in the preceding section for the commencement of actions shall be as follows:

Within twenty years:

8                           GENERAL LAWS.

1.   Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within twenty years before the commencement of the action.

Sec. 27.   Within six years:

1.   An action upon a judgment or decree of any court of the United States, or of any State or Territory within the United States.

2.   An action upon a contract in writing, or liability express or implied arising out of a written agreement. .

3.   An action for the rents and profits or for the use and occupation of real estate.

Sec. 28.   Within three years:

1.   An action for waste or trespass upon real property.

2.   An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated.

3.   An action upon a contract or liability express or implied which is not in writing and does not arise out of any written instrument.

4.   An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

5.   An action against a sheriff, coroner or constable upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the non-payment of money collected upon an execution; but this section shall not apply to action for an escape.

6.   An action upon a statute for penalty or forfeiture, where an action is given to the party aggrieved, or to such party and the territory, except when the statute imposing it prescribed a different limitation, and for seduction and breach of marriage contract.

Sec. 29.   Within two years:

1.   An action for libel, slander, assault, assault and battery and false imprisonment.

2.   An action upon a statute for a forfeiture or penalty to the Territory.

Sec. 30.   Within one year:

## GENERAL LAWS.                                           9

1.   An action against a sheriff, or other officer for the escape of a prisoner arrested or imprisoned on civil process.

SEC. 31.   An action upon a statute for a penalty given in whole or in part to the person who will prosecute for the same, shall be commenced within one year after the commission of the offense, and if the action be not commenced within one year by a private party, it may be commenced within two years thereafter in behalf of the Territory by the prosecuting attorney of the district in which the county is situated where the offense was committed.

SEC. 32.   An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued.

SEC. 33.   In an action brought to recover a balance due upon a mutual, open and current account where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side, but whenever a period of more than one year shall have elapsed between any of a series of items or demands, they are not to be deemed such an account.

SEC. 34.   The limitations prescribed in this act shall apply to actions brought in the name of the Territory, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties.

SEC. 35.   An action shall be deemed commenced as to each defendant when the complaint is filed.

SEC. 36.   An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this chapter, when the complaint is filed.

SEC. 37.   If when the cause of action shall accrue against any person who shall be out of the Territory or concealed therein, such action may be commenced within the terms herein respectively limited after the return of such person into the Territory, or the time of such concealment; and if after such cause of action shall have accrued, such person shall depart from and reside out of this Territory or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limited for the commencement of such action.

SEC. 38.   If a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, or against a sheriff or other officer, for an escape, be at the time the cause of action accrued either within the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than his natural life, the time of such disability shall not be a part of the time limited for the commencement of action.

2

10                            GENERAL LAWS.

SEC. 39.  If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced by his representatives after the expiration of the time and within one year from his death.  If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof and the cause of action survives, an action may be commenced against his representatives after the expiration of that time and within one year after the issuing of letters testamentary or of administration.

SEC. 40.  When a person shall be an alien subject or a citizen of a country at war with the United States, the time of the continuance of the war shall not be a part of the period limited for the commencement of the action.

SEC. 41.  When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action.

SEC. 42.  If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on error or appeal, the plaintiff, or if he die and the cause of action survives, his heirs or representatives may commence a new action within one year after the reversal.

SEC. 43.  No person shall avail himself of a disability unless it existed when his right of action accrued.

SEC. 44.  When two or more disabilities shall co-exist at the time the right of action accrues, the limitation shall not attach until they all be removed.

SEC. 45.  No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest.

SEC. 46.  Whenever any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.

SEC. 47.  When the cause of action has arisen in another State, Territory or country between non-residents of this Territory, and by the laws of the State, Territory or country where the action arose, an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this Territory.

## CHAPTER III.

### OF VENUE OF CIVIL ACTIONS.

SEC. 48. Actions for the following causes shall be commenced in the county or district in which the subject of the action, or some part thereof, is situated:

1. For the recovery of, for the possession of, for the partition of, for a foreclosure of a mortgage on, or for the determination of all questions affecting the title, or for any injuries to real property.

2. All questions involving the rights to the possession or title to any specific article of personal property, in which last mentioned class of cases, damages may also be awarded for the detention and for injury to such personal property.

SEC. 49. Actions for the following causes shall be tried in the district or county where the cause, or some part thereof, arose:

1. For the recovery of a penalty or forfeiture imposed by statute.

2. Against a public officer, or person specially appointed to execute his duties, for an act done by him in virtue of his office, or against a person who, by his command or in his aid, shall do anything touching the duties of such officer.

SEC. 50. An action against a corporation may be brought in any county where the corporation has an office for the transaction of business, or any person resides upon whom process may be served against such corporation, unless otherwise provided in this act.

SEC. 51. In all other cases the action must be tried in the county in which the defendants, or some of them, reside at the commencement of the action, or may be served with process, or, if none of the defendants reside in this Territory, or if residing in the Territory, the county in which they reside is unknown to the plaintiff, the same may be tried in any county which the plaintiff may designate in his complaint; and if the defendant is about to depart from the Territory, such action may be tried in any county where either of the parties resides, or service is had, subject, however, to the power of the court to change the place of trial as provided in this act. If the county in which the action is commenced is not the proper county for the trial thereof, the action may, notwithstanding, be tried therein,

unless the defendant, at the time he appears and answers or demurs, files an affidavit of merits, and demands in writing that the trial be had in the proper county.

SEC. 52. The court may, on motion, when it appears by affidavit and other satisfactory proof, change the place of trial in the following cases:

1. When the county designated in the complaint is not the proper county.

. 2. When there is reason to believe that an impartial trial cannot be had therein.

3. When the convenience of witnesses and the ends of justice would be forwarded by the change.

4. When, from any cause, the judge is disqualified from acting, which disqualification exists in either of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of law; when he has been attorney or counselor for either party in the action or proceeding.

SEC. 53. If the motion for a change of the place of trial be allowed, the change shall be made to the county or district where the action ought to have been commenced, if it be for the cause mentioned in subdivision one of section fifty-two, and in other cases to the most convenient county where the cause alleged does not exist. Neither party shall be entitled to more than one change of the place of trial, except for causes not in existence when the first change was allowed.

SEC. 54. Any party in a civil action pending in any district court of a county out of whose limits a new county, in whole or in part has been created, not attached to any other county for judicial purposes, and in which a district court has been created by law, may file with the clerk of such district court an affidavit setting forth that he is a resident of such newly created county, and that the venue of such action is transitory, or that the venue of such action is local and that it ought properly to be tried in such newly created county; and upon the filing of such affidavit, the clerk shall make out a transcript of all the proceedings already had in such action in such district court, and certify it under the seal of the court and transmit such transcript, together with all the papers on file in his office connected with such action to the clerk of the district court of such newly created county, wherein it shall be proceeded with as in other cases.

SEC. 55. When an order is made transferring an action or proceeding for trial, the clerk of the court, must transmit the pleadings and papers therein to the court to which it is transferred. The costs and fees thereof and of filing the papers anew, must be paid by the party at whose instance the order was

GENERAL LAWS.                    13

made, except in the cases mentioned in subdivision one, section fifty-two, in which case the plaintiff shall pay costs of transfer. The court to which an action or proceeding is transferred has and exercises over the same, the like jurisdiction as if it had been originally commenced therein.

SEC. 56. Notwithstanding the provisions of section fifty-three, all the parties to the action by stipulation in writing or by consent in open court and entered in the records may agree that the place of trial be changed to any county or district in the Territory, and thereupon the court must order the change agreed upon.

SEC. 57. If such papers be not transmitted to the clerk of the proper court within the time prescribed in the order allowing the change, and the delay be caused by the act or omission of the party procuriug the change, the adverse party, on motion to the court or judge thereof, may have the order vacated, and thereafter no other change of the place of trial shall be allowed to such party.

SEC. 58. Upon the filing of the papers with the clerk of the court to which the cause is transferred, the change of venue shall be deemed complete, and thereafter the action shall proceed as though it had been commenced in that court.

SEC. 59. The clerk of the court must also transmit with the original papers where an order is made changing the place of trial, a certified transcript of all record entries up to and including the order for such change.

## CHAPTER IV.

### MANNER OF COMMENCEMENT OF CIVIL ACTIONS.

SEC. 60. Civil actions in the several district courts of this Territory, shall be commenced by the filing of a complaint with the clerk of the court in which the action is brought, and the issuing of a summons thereon: *Provided*, That after the filing of the complaint, a defendant in the action may appear, answer or demur whether the summons has been issued or not, and such appearance, answer or demurrer shall be deemed a waiver of summons.

SEC. 61. The clerk shall endorse on the complaint the day, month, and year the same is filed, and at any time within one year after the filing of the same, the plaintiff may have a summons issued. The summons shall run in the name of the United

14                              GENERAL LAWS.

States of America, be signed by the clerk, tested in the name of the judge of the court from which it issues, and dated be directed to the defendant, and be issued under the seal of the court. The summons shall state the parties to the action, the court in which it is brought, the county in which the complaint is filed, and require the defendant to appear and answer the complaint within the time mentioned in this section, after the service of the summons, exclusive of the day of service, or that judgment by default will be taken against him according to the prayer of the complaint; and the clerk shall also endorse on the summons the names of the plaintiff's attorneys. The time in which the summons shall require the defendant to answer the complaint, shall be as follows:

1.   If the defendant is served within the county in which the action is brought, twenty days.

2.   If the defendant is served out of the county but in the district in which the action is brought, thirty days.

3.   If served in any other judicial district in the Territory, forty days.

4.   If served by publication as hereinafter provided within sixty days after the date of the summons: *Provided*, That if service is to be made by publication the summons shall contain in addition to the requirements of this section, the cause and general nature of the action.

SEC. 62.   In an action affecting the title to real property, the plaintiff at the time of filing the complaint and the defendant at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterwards, may file with the auditor of the county in which the property is situated, a notice of the pendency of the action, containing the names of the parties to and the object of the action, and a description of the property in that county affected thereby; and the defendants may also in such notice state the nature and extent of the relief claimed in the answer. From the time of filing only, shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby, and this notice shall be recorded by the auditor as deeds and other conveyances are recorded.

SEC. 63.   The summons shall be served by the sheriff of the county where the defendent is found, or by his deputy, or by a person specially appointed by him or appointed by a judge of the court in which the action is brought, or by any citizen of the United States over twenty-one years of age, other than the plaintiff, and who is competent to be a witness on the trial of the action. A copy of this complaint shall be served with the summons except where the service is by publication. When

the summons is served by the sheriff or his deputy, it shall be returned with the certificate or affidavit of the officer, of its service, and of the service of the copy of the complaint, to the office of the clerk from which the summons issued. When the summons is served by any other person, as before provided, it shall be returned to the office of the clerk from which it issued. When the summons is served by any other person, as before provided, it shall be returned to the office of the clerk from which it issued, with the affidavit of such person of its service, and of the service of the copy of the complaint. The plaintiff shall be entitled to as many writs of summons in the same suit as may be necessary to obtain jurisdiction of the person of the defendant, and they may be issued at the same or different times.

SEC. 64. The summons shall be served by delivering a copy thereof, as follows:

1. If the suit be against a corporation, to the president, or other head of the corporation, secretary, cashier or managing agent thereof.

2. If against any county in this Territory to the county auditor.

3. If the suit be against a foreign corporation, of a non-resident joint stock company or association doing busines within this Territory, to an agent, cashier or secretary thereof.

4. If against a minor under the age of fourteen years, to such minor personally, and also to his father, mother, guardian or if there be none within this Territory, then to any person having the care or control of such minor, or with whom he resides, or in whose service he is employed.

5. If against a person for whom a guardian has been appointed for any cause, to such guardian.

6. In all other cases, to the defendant personally, or if he be not found to some suitable person at the dwelling house or usual place of abode of the defendant.

SEC. 65. If at the time the complaint is filed or any time afterward the plaintiff or intervenor, or an attorney in the action for the plaintiff or intervenor, file in the action his affidavit stating that the person on whom service is to be made, resides out of the Territory, or has departed from the Territory, or cannot after due diligence be found within the Territory, or conceals himself to avoid the service of summons, or the defendant or the party to be served is a foreign corporation or the cause of action against such corporation arose within the Territory service may be made by the publication of the summons.

SEC. 66. When the affidavit required in section sixty-five has been filed, the clerk of the court shall make out a summons

as required in section sixty-one and shall deliver the same to the person filing the affidavit or his attorney in the action.

SEC. 67. Service of the summons by publication shall be made by advertising the same in full in some weekly newspaper published in the county where the court is held if any such there be and if not then in a weekly newspaper of general circulation in the county where the court is held published in the judicial district where said court is held. Such publication shall be once a week for six consecutive weeks, and the service of summons shall be deemed complete on the last day of publication. Such summons must be published for the first time within the fourteen days following the date of said summons, and if not so published a new summons for publication must be obtained.

SEC. 68. The defendant against whom publication is made, or his personal representatives, on application and sufficient cause shown at any time before judgment, shall be allowed to defend the action ; and the defendant against whom publication is made, or his representatives, may in like manner upon good cause shown and upon such terms as may be proper, be allowed to defend after judgment, and within one year after the entry of such judgment on such terms as may be just ; and if the defense be successful, and the judgment or any part thereof have been collected or otherwise enforced, such restitution may thereupon be compelled as the court shall direct. But the title to property sold upon execution issued on such judgment to a purchaser in good faith, shall not be thereby affected.

SEC. 69. When the action is against two or more defendants and the summons is served on one or more, but not on all of them, the plaintiff may proceed as follows :

1. If the action be against the defendants jointly indebted upon a contract, he may proceed against the defendants served, unless the court otherwise direct, and if he recover judgment, it may be entered against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all, and the separate property of the defendants served.

2. If the action be against the defendants severally liable, he may proceed against the defendants served in the same manner as if they were the only defendants.

SEC. 70. Proof of the service of the summons and copy of complaint, shall be as follows :

1. If served by the sheriff or his deputy the certificate of such sheriff or deputy.

2. If by any other person, his affidavit thereof.

3. If the service is by publication of the summons, the

## GENERAL LAWS. 17

original summons shall be returned to the clerk of the court who issued it accompanied by a printed copy thereof as published together with the affidavit of the editor, publisher, foreman or principal clerk employed in the newspaper office where published, showing, in what capacity the affiant makes the affidavit, the name of such weekly newspaper, the place where it is published, and its general circulation in the county where the court is held if not published in such county, and that the printed copy as returned was published for six consecutive weeks in such newspaper and showing also the date of the first publication and the date of the last publication thereof and that said newspaper named is a newspaper published at least once a week as a weekly newspaper, in the county or judicial district required in section sixty-seven of this act.

4. The written admission of the defendant or his attorney.

SEC. 71. In case of service otherwise than by publication, the certificate or affidavit shall state the time and place of the service, and from the time of service of the summons and copy of complaint in an action at law, the court shall be deemed to have acquired jurisdiction and to have control of all the subsequent proceedings.

SEC. 72. A voluntary appearance of the defendant shall be equivalent to personal service of the summons and a copy of the complaint upon him.

## CHAPTER V.

### OF PLEADINGS.

SEC. 73. All the forms of pleadings heretofore existing in civil actions inconsistent with the provisions of this act, are abolished, and hereafter the forms of pleading and the rule by which the sufficiency of the pleadings is to be determined, shall be as herein prescribed.

SEC. 74. The only pleadings on the part of the plaintiffs shall be:

1. The complaint. 2. The demurrrer. 3. The reply. And on the part of the defendant: 1. The demurrer. 2. The answer.

SEC. 75. The first pleading on the part of the plaintiff shall be the complaint.

SEC. 76. The complaint shall contain:

18                      GENERAL LAWS.

1.   The title of the cause, specifying the name of the court, the name of the county in which the action is brought, and the name of the parties to the action, plaintiff and defendant.

2.   A plain and concise statement of facts constituting the cause of action, without unnecessary repetition.

3.   A demand for the relief which the plaintiff claims; if the recovery of money, or damages be demanded, the amount thereof shall be stated.

4.   When the relief sought is of an equitable nature, the complaint shall be addressed to the judge of the district, in which the action is brought.

SEC. 77.   The defendant may demur to the complaint, when it shall appear upon the face thereof, either

1.   That the court has no jurisdiction of the person of the defendant or of the subject matter of the action.

2.   That the plaintiff has no legal capacity to sue; or

3.   That there is another action pending between the same parties for the same cause; or

4.   That there is a defect of parties, plaintiff or defendant; or

5.   That several causes of action have been improperly united.

6.   That the complaint does not state facts sufficient to constitute a cause of action.

SEC. 78.   The demurrer may specify the grounds of objection in the statutory language of section seventy-seven, or the grounds may be distinctly specified; it may be taken to the whole complaint; or to any one of the alleged causes of action stated therein.

SEC. 79.   When any of the matters enumerated in section seventy-five [77] do not appear upon the face of the complaint, the objection may be taken by answer.

SEC. 80.   If the complaint be amended, a copy thereof shall be served on the defendant or his attorney, and the defendant shall answer the same within such time as may be prescribed by the court; and if he omit to do so, the plaintiff may proceed to obtain judgment as in other cases of failure to answer.

SEC. 81.   If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting always the objection that the court has not jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of the proceedings, either in the district or supreme court.

SEC. 82.   The answer of the defendant must contain:

1.   A general or specific denial of each material allegation of

## GENERAL LAWS.                    19

the complaint controverted by the defendant or of any knowl-edge or information thereof sufficient to form a belief.

2. A statement of any new matter constituting a defense or counter claim, in ordinary and concise language without repeti-tion.

SEC. 83. The counter claim mentioned in the preceding section, must be one existing in favor of a defendant, and against a plaintiff between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

1. A cause of action arising out of the contract, or transac-tion set forth in the complaint, as the foundation of the plain-tiff's claim, or connected with the subject of the action.

2. In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

3. The defendant may set forth by answer as many defenses and counter claims as he may have whether they be such as have been heretofore denominated legal or equitable or both. They shall each be separtely stated, and refer to the causes of action which they are intended to answer, in such a manner that they may intelligibly distinguished.

SEC. 84. The defendant may demur to one or more of sev-eral causes of actions stated in the complaint, and answer the residue.

SEC. 85. Sham, frivolous and irrelevant answers and de-fenses may be stricken out on motion, and upon such terms as the court may in its discretion impose.

SEC. 86. When the answer contains new matter, consti-tuting a defense or counter claim, the plaintiff may reply to such new matter, denying generally or specifically each alle-gation controverted by him, or any knowledge or information thereof sufficient to form a belief; and he may allege in ordi-nary and concise language, without repetition, any new mat-ter not inconsistent with the complaint, constituting a defense to such new matter in the answer.

SEC. 87. The plaintiff may demur to an answer containing new matter, when it appears upon the face thereof, that such new matter does not constitute a defense or counter claim, or he may for like cause demur to one or more of such defenses or counter claims, and reply to the residue.

SEC. 88. If the answer contain a statement of new matter constituting a defense or counter claim, and the plaintiff fail to reply or demur thereto within the time prescribed by law, the defendant may move the court for such judgment as he is en-

20                    GENERAL LAWS.

titled to on the pleadings, and if the case require it he may have a jury called to assess the damages.

SEC. 89. The defendant may demur to any new matter contained in the reply, when it appears upon the face thereof that such new matter is not a sufficient reply to the facts stated in the answer. Sham, frivolous and irrelevant replies, may be stricken out in like manner and on the same terms as like answers and defenses.

SEC. 90. The court shall establish the rules prescribing the time in which pleadings subsequent to the complaint shall be filed.

## CHAPTER VI.

### VERIFICATION OF PLEADINGS.

SEC. 91. Every pleading shall be subscribed by the party or his attorney, and, except a demurrer, shall also be verified by the party, his agent or attorney, to the effect that he believes it to be true. The verification must be made by the affidavit of the party, or, if there be several parties united in interest and pleading together, by one at least of such parties, if such party be within the county and capable of making the affidavit; otherwise the affidavit may be made by the agent or attorney of the party. The affidavit may also be made by the agent or attorney if the action or defense be founded on a written instrument for the payment of money only, and such instrument be in the possession of the agent or attorney, or if all the material allegations of the pleading be within the personal knowledge of the agent or attorney. When the affidavit is made by the agent or attorney, it must set forth the reason of his making it. When a corporation is a party, the verification may be made by any officer thereof, upon whom service of a notice might be made; and when the Territory, or any officer thereof in its behalf, is a party, the verification may be made by any person to whom all the material allegations of the pleading are known.

SEC. 92. When, in the judgment of the court, an answer to an allegation in any pleading might subject the party answering, to a criminal prosecution, the verification of the answer to such allegation may be omitted. No pleading shall be used in a criminal prosecution against the party, as evidence of a fact alleged in such pleading.

GENERAL LAWS.                    21

## CHAPTER VII.

### GENERAL RULES OF PLEADINGS.

SEC. 93.    It shall not be necessary for a party to set forth in a pleading a copy of the instrument of writing, or the items of an account therein alleged; but unless he file a verified copy thereof with such pleadings, and serve the same on the adverse party, he shall, within ten days after a demand thereof, in·writing, deliver to the adverse party a copy of such instrument of writing, or the items of an account, verified by his own oath, or that of his agent or attorney, to the effect that he believes it to be true, or be precluded from giving evidence thereof.    The court, or judge thereof, may order a further account, when the one delivered is defective; and the court may, in all cases, order a bill of particulars of the claim of either party to be furnished.

SEC. 94.    In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties.

SEC. 95.    If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby; and when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment, or may dismiss the same.

SEC. 96.·    In pleading a judgment or other determination of a court or office of special jurisdiction, it shall not be necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made.    If such allegation be controverted, the party pleading shall be bound to establish on the trial the facts conferring· jurisdiction.

SEC. 97.    In pleading the performance of conditions precedent in a contract, it shall not be necessary to state the facts showing such performance, but it may be stated generally, that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading shall be bound to establish, on the trial, the facts showing such performance.

SEC. 98.    In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its

22                          GENERAL LAWS.

title, and the day of its passage, and the court shall thereupon take judicial notice thereof.

SEC. 99.    In an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts, for the purpose of showing the application to the plaintiff, of the defamatory matter out of which the cause of action arose, but it shall be sufficient to state generally, that the same was published or spoken concerning the plaintiff; and if such allegation be controverted, the plaintiff shall be bound to establish on trial that it was so published or spoken.

SEC. 100.    In an action mentioned in the last section, the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and whether he prove the justification or not, he may give in evidence the mitigating circumstances.

SEC. 101.    In an action to recover the possession of property distrained, doing damage, an answer that the defendant or person by whose command he acted, was lawfully possessed of the real property upon which the distress was made, and that the property distrained was at the time doing the damage thereon, shall be good, without setting forth the title to such real property.

SEC. 102.    The plaintiff may unite several causes of action in the same complaint, when they all arise out of

1.    Contract, express or implied; or,

2.    Injuries, with or without force, to the person; or,

3.    Injuries, with or without force, to property; or,

4.    Injuries to character; or,

5.    Claims to recover real property, with or without damages, for the withholding thereof; or,

6.    Claims to recover personal property, with or without damages, for the withholding thereof; or,

7.    Claims against a trustee, by virtue of a contract or by operation of law.

But the causes of action, so united, must effect all the parties to the action, and not require different places of trial, and must be separately stated.

SEC. 103.    Every material allegation of the complaint, not controverted by the answer, and every material allegation of new matter in the answer, not controverted by the reply, shall, for the purpose of the action, be taken as true; but the allegation of new matter in a reply, is to be deemed controverted by the adverse party, as upon a direct denial or avoidance, as the case may require.

Sec. 104.   A material allegation in a pleading is one essential to the claim or defense, and which could not be stricken from the pleading without leaving it insufficient.

# CHAPTER VIII.

### MISTAKES IN PLEADINGS: AMENDMENTS.

Sec. 105.   No variance between the allegation in a pleading, and the proof, shall be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.   Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just.

Sec. 106.   When the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs.

Sec. 107.   When, however, the allegation of the cause of action or defense, to which the proof is directed, is not proved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance within the last two sections, but a failure of proof.

Sec. 108.   Where the plaintiff in an action to recover the possession of personal property on a claim of being the owner thereof, shall fail to establish on trial, such ownership, but shall prove that he is entitled to the possession thereof, by virtue of a special property therein, he shall not thereby be defeated of his action, but shall be permitted to amend, on reasonable terms his complaint, and be entitled to judgment according to the proof in the case.

"Sec. 109.   The court may, in furtherance of justice; and on such terms as may be proper, amend any pleadings or proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect ; and may, upon like terms, enlarge the time for answer or demurrer.   The court may likewise, upon affidavit showing good cause therefor, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars ; and may upon like terms, allow an answer to be made after the time limited by this

24                    GENERAL LAWS.

code; and may upon such terms as may be just, and upon payment of costs, relieve a party, or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect ; and when for any cause satisfactory to the court, or the judge at chambers, the party aggrieved has been unable to apply for the relief sought during the term at which such judgment, order or proceeding complained of was taken, the court, or the judge at chambers, in vacation, may grant the relief upon application made within a reasonable time, not exceeding five months after the adjournment of the term."

SEC. 110. When any pleading or proceeding is amended before trial, mere clerical errors excepted, it shall be done by filing a new pleading, to be called the amended complaint, or otherwise, as the case may be. Such amended pleading shall be complete in itself, without reference to the original, or any preceding amended one.

SEC. 111. Any pleading not duly verified and subscribed, may, on motion of the adverse party, be stricken out of the case. When any pleading contains more than one cause of action or defense if the same be not pleaded separately, such pleading may, on motion of the adverse party, be stricken out of the case. When a motion to strike out is allowed, the court may, upon such terms as may be proper, allow the party to file an amended pleading ; or, if the motion be disallowed, and it appear to have been made in good faith, the court may, upon like terms, allow the party to plead over.

SEC. 112. When the plaintiff shall be ignorant of the name of the defendant, it shall be so stated in his pleading, and such defendant may be designated in any pleading or proceeding by any name, and when his true name shall be discovered, the pleading or proceeding may be amended accordingly.

SEC. 113. The court shall, in every stage of an action, disregard any error or defect in pleadings or proceedings which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect.

SEC. 114. The court may, on motion, allow supplemental pleadings, showing facts which occurred after the former pleadings were filed.

## CHAPTER IX.

### OF ARRESTS AND BAIL.

SEC. 115. No person shall be arrested or held to bail in

Case 3:22-cv-05938-JCC    Document 1    Filed 12/01/22    Page 352 of 1015

any civil action, except upon the order of the court where the action is brought, or a judge of the Supreme Court.

SEC. 116. The defendant may be arrested in the following cases:

1. In an action for the recovery of damages, on a cause of action not arising out of contract, where the defendant is a non-resident of the Territory, or is about to remove therefrom, or where the action is for an injury to person or character, or for injuring, or for wrongfully taking, detaining or converting property.

2. In an action for a fine or penalty, or on a promise to marry, or for money received, or property embezzled, or fraudulently misapplied, or converted to his own use, by a public officer, or by an attorney, or by an officer or agent of a corporation in the course of his employment as such, or by any factor, agent, broker, or other person in a fiduciary capacity, or for any misconduct or neglect in office, or in a professional employment.

3. In an action to recover the possession of personal property unjustly detained, when the property, or any part thereof, has been concealed, removed, or disposed of, so that it cannot be found or taken by the sheriff, and with intent that it should not be so found or taken, or with the intent to deprive the plaintiff of the benefit thereof.

4. When the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which the action is brought, or in concealing or disposing of the property, for the taking, detention, or conversion of which, the action is brought.

5. When the defendant has removed or disposed of his property, or is about to do so, with intent to defraud his creditors.

6. When the action is to prevent threatened injury to, or destruction of property, in which the party bringing the action has some right, interest, or title, which will be impaired or destroyed by such injury or destruction, and the danger is imminent that such property will be destroyed, or its value impaired, to the injury of the plaintiff.

7. On the final judgment or order of any court in this Territory, while the same remains in force, when the defendant, having no property subject to execution, or not sufficient to satisfy such judgment, has money which he ought to apply in payment upon such judgment, which he refuses to apply, with intent to defraud the plaintiff, or when he refuses to comply with a legal order of the court, with intent to defraud the plaintiff; or, when any one or more of the causes exist for which an arrest is allowed, in the first class of cases mentioned in this section.

4

Sec. 117. The court or judge making the order of arrest, shall first be satisfied by the affidavit of the party, or his agent or attorney, and other proof, that the case is one in which an arrest is provided for in section one hundred and fourteen, and that one or more of the prescribed causes exist, which proof shall be in writing, and, together with the order, be filed with the clerk, before he shall issue any warrant for the arrest.

Sec. 118. The court or judge making the order shall, in all cases, specify therein the amount in which the defendant shall be held to bail, which shall, in no case, exceed the demand of the plaintiff, and one hundred dollars in addition thereto, which amount the clerk shall indorse upon the writ, and the court shall also, in the order, fix the amount of the bond to be given by the plaintiff, as provided in the next succeeding section, which amount shall in no case be less than one hundred dollars.

Sec. 119. Before any clerk shall issue a warrant for the arrest of the defendant, he shall require the plaintiff to place on file in his office, a copy of the order granting the warrant, unless the same was made in open court and appears in the minutes; the original affidavit and proofs, upon which the order was made, and a bond on behalf of the plaintiff, in such an amount as the court or judge may have fixed in the order, with sureties to the satisfaction of the clerk, conditioned to pay to the defendant all damages which he shall suffer, and all expenses he shall incur by reason of such arrest or imprisonment, if the order shall be vacated in the manner provided for in the next succeeding section, or if the plaintiff fail to recover in his action.

Sec. 120. The defendant may, on motion, apply to the court to vacate the order of arrest, on the ground of insufficiency of the proof, or he may show that the facts alleged, upon which the order issued, are untrue, or he may apply to have the amount of bail reduced. If the court, upon any such motion, shall vacate the order, the defendant shall be discharged from the arrest, and any bond he may have given shall be canceled, but the action, unless dismissed for other cause, shall be conducted in the same manner as in cases where complaint and notice were duly served and filed.

Sec. 121. When an order of arrest is granted prior to the filing of the complaint, the warrant shall not issue until the complaint is filed with the clerk, and a copy of said complaint shall be served on the defendant with the warrant; but an order of arrest may be granted at any time after the action is commenced and before judgment is satisfied, when the party seeking the order shall comply with the preceding provisions in regard to arrests.

Sec. 122. The warrant must be delivered to the sheriff,

who, upon arresting the defendant, must deliver to him a copy thereof.

SEC. 123. The sheriff shall execute the warrant by arresting the defendant, and keeping him in custody until discharged by law. And the plaintiff, in [the] first instance, shall be liable for the sheriff's fees, for the food and maintenance of any person, under arrest, which, if required by the sheriff, shall be paid weekly in advance. And such fees, so paid, shall be added to the costs taxed or accruing in the case, and be collected as other costs. And if the plaintiff shall neglect to pay such fees for three days after a demand, in writing, upon the plaintiff or his attorney, for payment, the sheriff may discharge defendant out of custody.

SEC. 124. The defendant may give bail by causing a bond to be executed by two or more sufficient sureties, stating their places of residence and occupations, conditioned that the defendant shall at all times render himself amenable to the process of the court during the pendency of the action, and to such as may be issued to enforce the judgment rendered therein; or, if he be arrested for the cause mentioned in the third subdivision of section one hundred and fourteen, it shall be further conditioned that the specific article of property, or instrument of writing which is the subject matter of the writ, shall be forthcoming, to abide any order which shall be made therein; or, if he be arrested for the cause mentioned in the sixth subdivision of said section it shall be further conditioned that he will not commit the injury or destruction alleged to be threatened in the affidavit or proofs on which the arrest is ordered.

SEC. 125. The warrant shall, in all cases, contain a short statement of the alleged causes for which the order was granted, and also the amount for which bail is required.

SEC. 126. At any time before a failure to comply with their bonds, the bail may surrender the defendant in their exoneration, or he may surrender himself to the sheriff of the county where he was arrested, in the following manner:

1.  A certified copy of the bail bond shall be delivered to the sheriff, who shall retain the defendant in his custody thereon as upon an order of arrest, and by a certificate in writing, acknowledge the surrender.

2.  Upon the production of a copy of the bail bond and sheriff's certificate, a judge of the district court may, upon a notice to the plaintiff of eight days, with a copy or the certificate, order that the bail be exonerated, and on filing the order and the papers used on such application, they shall be exonerated accordingly. But this section does not apply to an arrest for the cause mentioned in the sixth subdivision of section one hundred and thirteen.

SEC. 127. For the purpose of surrendering the defendant the bail, at any time or place before they are finally discharged, may themselves arrest him, or, by written authority, indorsed upon a certified copy of the bond, may empower any person of suitable age and discretion to do so.

SEC. 128. In case of failure to comply with the condition of the bond, the bail can be proceeded against by action only.

SEC. 129. The bail may be exonerated, either by the death of the defendant, or his imprisonment in the penitentiary, or by his legal discharge from the obligation to render . himself amenable to the process, or by his surrender to the sheriff of the county where he was arrested, in exoneration thereof, within twenty days after commencement of the action against the bail, or within such further time as may be granted by the court.

SEC. 130. Within the time limited for that purpose, the sheriff must deliver the order of arrest to the clerk, with his return endorsed thereon, and the bond of the bail, or a copy thereof. The plaintiff, within ten days thereafter, may serve upon the sheriff a notice that he does not accept the bail, or he must be deemed to have accepted it, and the sheriff shall be exonerated from liability.

SEC. 131. On the receipt of notice, the sheriff or defendant may, within ten days thereafter, give to the plaintiff or his attorney notice of the justification of the same, or their bail, (specifying the places of residences and occupations of the latter), before judgment of the court or justice of the peace, at a specified time and place, the time to be not less than five days nor more than ten thereafter. In case other bail be given, there must be a new bond in the form prescribed in section one hundred and twenty-one.

SEC. 132. The qualifications of the bail shall be as follows:

1. Each of them shall be a resident of the Territory; but no counselor or attorney at law, sheriff, clerk of the district court, or other officer of such court, shall be permitted to become bail in any action.

2. Each of the bail shall be worth the amount specified in the order of arrest, or the amount to which the order may be reduced, as provided in this chapter, over and above all debts and liabilities, and exclusive of property exempt from execution; but the judge or justice, on justification, may allow more than two sureties to justify, severally, in amounts less than that expressed in the order, if the whole justification be equivalent to that of two sufficient bail.

SEC. 133. For the purpose of justification, each of the

bail must attend before the judge or justice of the peace at the time and place mentioned in the notice, and may be examined on oath on the part of the plaintiff touching his sufficiency, in such manner as the judge or justice of the peace, in his discretion, may think proper. The examination must be reduced to writing and subscribed by the bail, if required by the plaintiff.

SEC. 134. If the judge or justice find the bail sufficient, he shall annex the examination to the bond, endorse his allowance thereon, and cause them to be filed with the clerk, and the sheriff shall thereupon be exonerated from liability.

SEC. 135. The defendant may at the time of his arrest, instead of giving bail, deposit with the sheriff the amount mentioned in the order. The sheriff must thereupon give the defendant a certificate of deposit, and the defendant shall be discharged from custody.

SEC. 136. The sheriff shall within ten days after the deposit, pay the same into court, and take from the officer receiving the same two certificates of such payment, the one of which he must deliver to the plaintiff and the other to the defendant. For any default in making such payment, the same proceeding may be had on the official bond of the sheriff to collect the sum deposited, as in cases of delinquency.

SEC. 137. If the money be deposited, as provided in the last two sections, bail may be given and justified, upon notice as hereinbefore provided, at any time before judgment; and thereupon the judge before whom justification is had, shall direct in the order of allowance that the money deposited be refunded by the sheriff or clerk to the defendant, and it shall be refunded accordingly.

SEC. 138. When money shall have been so deposited, if it remain on deposit at the time of an order or judgment for the payment of money to the plaintiff, the clerk shall, under the direction of the court, apply the same in the satisfaction thereof, and, after satisfying judgment, refund the surplus, if any, to the defendant. If the judgment be in favor of the defendant, the clerk shall refund to him the whole sum deposited and remaining unapplied.

SEC. 139. If after being arrested, the defendant escapes, or be rescued, or bail be not given or justified, or a deposit be not made instead thereof, the sheriff shall himself be liable as bail; but he may discharge himself from such liability by the giving and justification of bail, as is hereinbefore provided may be done by the defendant, at any time before process against the person of the defendant to enforce an order or judgment in the action.

SEC. 140. If the judgment be recovered against the sheriff upon his liability as bail, and an execution thereon be returned

30                        GENERAL LAWS.

unsatisfied, the same proceedings may be had on the official bond of the sheriff to collect the deficiency, as in other cases of delinquency.

SEC. 141. The bail taken on arrest shall, unless they justify, or other bail be given or justified, be liable to the sheriff, by action, for the damages which he may sustain by reason of such omission.

## CHAPTER X.

### CLAIM TO RECOVER PERSONAL PROPERTY.

SEC. 142. The plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer, claim the immediate delivery of such property as herein provided.

SEC. 143. When a delivery is claimed, an affidavit shall be made by the plaintiff, or by some one in his behalf, showing:

1. That the plaintiff is the owner of the property claimed, (particularly describing it,) or is lawfully entitled to the possession thereof, by virtue of a special property therein, the facts in respect to which shall be set forth.

2. That the property is wrongfully detained by the defendant.

3. That the same has not been taken for a tax, assessment, or fine pursuant to a statute, or seized under an execution or attachment, against the property of the plaintiff; or if so seized, that it is by law exempt from such seizure. And,

4. The actual value of the property.

SEC. 144. Upon the receipt of the affidavit and a bond to the defendant, executed by one or more sufficient sureties, approved by the sheriff, to the effect that they are bound in double the value of the property, as stated in the affidavit, for the prosecution of the action, for the return of property to the defendant, if return thereof be adjudged, and for the payment to him of such sum as may, for any cause, be recovered against the plaintiff, the sheriff shall forthwith take the property described in the affidavit, if it be in the possession of the defendant or his agent, and retain it in his custody. He shall also, without delay, serve on the defendant a copy of the affidavit and bond by delivering the same to him personally, if he can be found, or his agent, from whose possession the property is taken;

or, if neither can be found, by leaving them at the usual place of abode of either, with some person of suitable age and discretion : or, if neither have any known place of abode, by putting them in the post-office, directed to the defendant, at the post-office nearest his place of residence.

Sec. 145.  The defendant may, within three days after the service of a copy of the affidavit and bond, give notice to the sheriff that he excepts to the sufficiency of the sureties; if he fail to do so, he shall be deemed to have waived all objections to them.  When the defendant excepts, the sureties shall justify on notice, in like manner as bail on arrest, and the sheriff shall be responsible for the sufficiency of the sureties until the objection to them is either waived as above provided, or until they shall justify, or new sureties shall be substituted and justify. If the defendant except to the sureties, he cannot reclaim the proprty, as provided in the next section.

Sec. 146.  At any time before the delivery of the property to the plaintiff, the defendant may, if he do not except to the sureties of the plaintiff, require the return thereof, upon giving to the sheriff a bond executed by one or more sufficient sureties to the effect that they are bound in double the value of the property, as stated in the affidavit of the plaintiff, for the delivery thereof to the plaintiff, if such delivery be adjudged, and for the payment to him of such sum as may, for any cause, be recovered against the defendant.  If a return of the property be not so required within three days after the taking and service of notice to the defendant, it shall be delivered to the plaintiff, except as provided in section one hundred and forty-nine, [eight].

Sec. 147.  The defendant's sureties, upon a notice to the plaintiff or his attorney, of not less than two, or more than six days, shall justify in the same manner as bail upon arrest; upon such justification, the sheriff shall deliver the property to the defendant.  The sheriff shall be responsible for the defendant's sureties until they justify, or until justification is completed, or expressly waived, and may retain the property until that time; but if they, or others in their place, fail to justify at the time and place appointed, he shall deliver the property to the plaintiff.

Sec. 148.  The qualification of sureties and their justification shall be as prescribed in respect to bail upon an order of arrest.

Sec. 149.  If the property or any part thereof be concealed in a building or enclosure, the sheriff shall publicly demand its delivery.  If it be not delivered, he shall cause the building or enclosure to be broken open and take the property into his possession, and if necessary he may call to his aid the power of his county.

32                         GENERAL LAWS.

SEC. 150.   When the sheriff shall have taken the property as herein provided, he shall keep it in a secure place and deliver it to the party entitled thereto, upon receiving his lawful fees for taking, and his necessary expenses for keeping the same.

SEC. 151.   If the property taken be claimed by any other person than the defendant or his agent, and such person make affidavit of his title thereto, or his right to the possession thereof, stating the grounds of such title or right, and serve the same upon the sheriff before the delivery of the property to the plaintiff, the sheriff shall not be bound to keep the property or deliver it to the plaintiff, unless the plaintiff, on demand of him or his agent, indemnify the sheriff against such claim by a bond, executed by two sufficient sureties, accompanied by their affidavits that they are each worth double the value of the property, as specified in the affidavit of plaintiff, over and above their debts and liabilities, exclusive of property exempt from execution; and freeholders or householders of the county; and no claim to such property by any other person than the defendant or his agent shall be valid against the sheriff, unless made as aforesaid; and notwithstanding such claim, when so made, he may retain the property a reasonable time to demand such indemnity.

SEC. 152.   The sheriff shall file the affidavit, with the proceedings thereon, with the clerk of the court in which the action is pending, within twenty days after taking the property mentioned therein; or if the clerk reside in another county, shall mail or forward the same within that time.

# CHAPTER XI.

## INJUNCTIONS AND RESTRAINING ORDERS.

SEC. 153.   Restraining orders and injunctions may be granted by the district court in term time, or by any judge of the supreme court in vacation.

SEC. 154.   When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great injury to the plaintiff; or when during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring, or is, suffering some act to be done in violation of the plaintiff's rights respect-

## GENERAL LAWS.                                    33

ing the subject of the action, and tending to render the judgment ineffectual; or where such relief, or any part thereof consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion. And where it appears in the complaint at the commencement of the action, or during the pendency thereof, by affidavit, that the defendant threatens, or is about to remove or dispose of his property with intent to defraud his creditors, a temporary injunction may be granted to restrain the removal or disposition of his property.

Sec. 155. The injunction may be granted at the time of commencing the action, or at any time afterwards, before judgment in that proceeding

Sec. 156. No injunction shall be granted until it shall appear to the court or judge granting it, that some one or more of the opposite party concerned, has had reasonable notice of the time and place of making application, except that in cases of emergency to be shown in the complaint, the court may grant a restraining order until notice can be given and hearing thereon.

Sec. 157. On the hearing of an application for an injunction, each party may read affidavits.

Sec. 158. Upon the granting or continuing an injunction, such terms and conditions may be imposed upon the party obtaining it as may be deemed equitable.

Sec. 159. No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order, with surety to the satisfaction of the clerk of the district court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order. The sureties shall, if required by the clerk, justify in like manner as bail upon an arrest, and until they so justify, the clerk shall be responsible for their sufficiency.

Sec. 160. When an injunction is granted upon the hearing, after a temporary restraining order, the plaintiff shall not be required to enter into a second bond, unless the former shall be deemed insufficient, but the plaintiff and his surety shall remain liable upon his original bond.

Sec. 161. It shall not be necessary to issue a writ of injunction, but the clerk shall issue a copy of the order or injunction duly certified by him, which shall be forthwith served by delivering the same to the adverse party.

Sec. 162. In application to stay proceedings after judgment, the plaintiff shall endorse upon his complaint a release of

34    GENERAL LAWS.

errors in the judgment whenever required to do so by the judge or court.

SEC. 163.    An order of injunction shall bind every person and officer restrained from the time he is informed thereof.

SEC. 164.    When notice of the application for an injunction has been served upon the adverse party, it shall not be necessary to serve the order upon him, but he shall be bound by the injunction as soon as the bond required of the plaintiff is executed and delivered to the proper officer.

SEC. 165.    Money collected upon a judgment afterward enjoined, remaining in the hands of the collecting officer, shall be paid to the clerk of the court granting the injunction, subject to the order of the court.

SEC. 166.    Whenever it shall appear to any court granting an order of injunction, or judge thereof in vacation, by affidavit, that any person has wilfully disobeyed the order after notice thereof, such court or judge shall award an attachment for contempt against the party charged, or a rule to show cause why it should not issue.    The attachment or rule shall be issued by the clerk of the court, and directed to the sheriff, and shall be served by him.

SEC. 167.    The attachment for contempt shall be immediately served, by arresting the party charged, and bringing him into court, if in session, to be dealt with as in other cases of contempt; and the court shall also take all necessary measures to secure and indemnify the plaintiff against damages in the premises.

SEC. 168.    If the court is not in session, the officer making the arrest shall cause the person to enter into a bond, with surety, to be approved by the officer, conditioned that he personally appear in open court, on the first day of the next term thereof, to answer such contempt, and that he will pay to the plaintiff all his damages and costs occasioned by the breach of the order; and in default thereof, he shall be committed to the jail of the county until he shall enter into such bond with surety, or be otherwise legally discharged.

SEC. 169.    Motions to dissolve or modify injunctions may be made in open court, or before a judge of the supreme court in vacation, at any time after reasonable notice to the adverse party.

SEC. 170.    When an injunction to stay proceedings after judgment for debt or damages shall be dissolved, the court shall award such damages not exceeding. ten per cent. on the judgment, as the court may deem right, against the party in whose favor the injunction issued.

SEC. 171.  If an injunction to stay proceedings after verdict or judgment in an action for the recovery of real estate, or the possession thereof, be dissolved, the damages assessed against the party obtaining the injunction, shall include the reasonable rents and profits of the lands recovered, and all waste committed after granting injunction.

SEC. 172.  Upon an order being made dissolving or modifying an order of injunction, the plaintiff may move the court to reinstate the order, and the court may, in its discretion, allow the motion, and appoint a time for hearing the same before the court, or a time and place for hearing before some judge thereof, and upon the hearing, the parties may produce such additional affidavits or depositions as the court shall direct, and the order of injunction shall be dissolved, modified, or reinstated, as the court or judge may deem right.  Until the hearing of the motion to reinstate the order of injunction, the order to dissolve or modify it, shall be suspended.

SEC. 173.  The judge of the district court shall have power to make every order in vacation which, by the provisions of this chapter, may be made by the court in term time.

## CHAPTER XII.

### ATTACHMENT.

SEC. 174.  The plaintiff at the time of issuing the summons, or at any time afterward, and before judgment, may have the property of the defendant attached in the manner hereinafter prescribed, as a security for the satisfaction of such judgment as he may recover.

SEC. 175.  A writ of attachment shall be issued by the clerk of the court in which the action is pending, whenever the plaintiff, or any one on his behalf, shall make and file an affidavit, that a cause of action exists against the defendant, and the grounds thereof, and that the defendant is either:

1.  A foreign corporation; or

2.  That he is not a resident of this Territory, or has departed therefrom with intent to delay or defraud his creditors, or to avoid the service of process, or keeps himself concealed therein with the like intent; or

3.  That he has removed or is about to remove any of his property from this Territory, with intent to delay or defraud his creditors; or

36                    GENERAL LAWS.

4.   That he has assigned, secreted, or disposed of any of his property, or is about to assign, secrete, or dispose of it, with intent to delay or defraud his creditors; or

5.   That the defendant has been guilty of a fraud in contracting a debt, or incurring the obligation for which the action is brought.

SEC. 176.   Upon filing the affidavit with the clerk, the plaintiff shall be entitled to have the writ issue as soon thereafter as he shall file with the clerk his bond, or undertaking with one or more sureties, in a sum not less than one hundred dollars, and equal to the amount for which the plaintiff demands judgment, and to the effect that the plaintiff will pay all costs that may be adjudged to the defendant, and all damages which he may sustain by reason of the attachment, if the same be wrongful, oppressive, or without sufficient cause, not exceeding the sum specified in the bond.   With the bond, or undertaking the plaintiff shall also file the affidavits of the sureties, from which affidavits it must appear that such sureties are qualified, and that taken together they are worth the amount of the sum specified in the bond, or undertaking over all debts and liabilities, and property exempt from execution.   No person not quallfied to become bail upon an arrest, is qualified to become surety in a bond or undertaking for an attachment.

SEC. 177.   The writ shall be directed to the sheriff of any county in which property of such defendant may be, and shall require him to attach and safely keep all the property of such defendant within his county not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand, the amount of which shall be stated in conformity with the complaint, together with costs and expenses.   Several writs may be issued at the same time, to the sheriffs of different counties.

SEC. 178.   The rights or shares which such defendant may have in the stock of any association or corporation, together with the interest, and profits thereon, and all other property in this Territory of such defendant not exempt from execution, shall be liable to be attached.   The sheriff shall note upon the writ the date of its delivery to him, and shall make a full inventory of the property attached, and return the same with the writ.

SEC. 179.   The sheriff to whom the writ is directed and delivered, shall execute the same without delay, as follows:

1.   Real property shall be attached by leaving a copy of the writ with the occupant thereof; or if there be no occupant, by posting a copy in a conspicuous place thereon, and filing a copy, together with a description of the property attached, with the auditor of the county.

## GENERAL LAWS.    37

2. Personal property, capable of manual delivery, shall be attached by taking it into custody.

3. Stock or shares, or interest in stock or shares, of any corporation or company, shall be attached, by leaving with the president, or other head of the same, or the secretary, cashier or managing agent thereof, a copy of the writ, and a notice stating that the stock or interest of the defendant is attached in pursuance of such writ.

4. Debts and credits, and other personal property, not capable of manual delivery, shall be attached by leaving with the person owing such debts, or having in his possession, or under his control such credits, or other personal property, a copy of the writ, and a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control, belonging to the defendant, are attached in pursuance of such writ.

SEC. 180. Upon receiving information in writing from the plaintiff or his attorney, that any person has in his possession or under his control any credits or other personal property belonging to the defendant, or is owing any debt to the defendant, the sheriff shall serve upon such person a copy of the writ and a notice that such credits or other property or debts, as the case may be, are attached in pursuance of such writ.

SEC. 181. All persons having in their possession or under their control any credits or other personal property belonging to the defendant, or owing any debts to the defendant at the time of service upon them of a copy of the writ and notice, as provided in the last two sections, shall be, unless such property be delivered up or transferred or such debts be paid to the sheriff, liable to the plaintiff for the amount of such credits, property or debts, until the attachment be discharged, or any judgment recovered by him be satisfied.

SEC. 182. Any person owing debts to the defendant, or having in his possession or under his control any credits or other personal property belonging to the defendant, may be required to attend before the court or judge, or a referee appointed by the court or judge, and be examined on oath respecting the same. The defendant may also be required to attend for the purpose of giving information respecting his property, and may be examined on oath. The court or judge may, after such examination, order personal property capable of manual delivery to be delivered to the sheriff, on such terms as may be just, having reference to any liens thereon or claims against the same, and a memorandum to be given of all other personal property containing the amount and description thereof.

SEC. 183. The sheriff shall make a full inventory of the

## 38   GENERAL LAWS.

property attached, and return the same with the writ. To enable him to make such return as to debts and credits attached, he shall request, at the time of service, the party owing the debt, or having the credit to give him a memorandum, stating the amount and description of each; and if such memorandum be refused, he shall return the fact of the refusal with the writ. The party refusing to give the memorandum may be required to pay the cost of any proceedings taken for the purpose of obtaining information respecting the amount and description of such debt or credit.

Sec. 184. If any of the property attached be perishable, the sheriff shall sell the same in the manner in which such property is sold on execution. The proceeds, and other property attached by him, shall be retained by him to answer any judgment that may be recovered in the action, unless sooner subjected to execution upon another judgment recovered previous to the issuing of the attachment. Debts and credits attached may be collected by him, if the same can de done without suit. The sheriff's receipt shall be a sufficient discharge for the amount paid.

Sec. 185. If judgment be recovered by the plaintiff, the sheriff shall satisfy the same out of the property attached by him which has not been delivered to the defendant or a claimant, as hereinbefore provided, or subjected to execution on another judgment recovered previous to the issuing of the attachment, if it be sufficient for that purpose:

1. By paying to the plaintiff the proceeds of all sales of perishable property sold by him, or of any debts or credits collected by him, or so much as shall be necessary to satisfy the judgment.

2. If any balance remain due, and an execution shall have been issued on the judgment, he shall sell under the execution so much of the property, real or personal, as may be necessary to satisfy the balance, if enough for that purpose remain in his hands. Notice of the sales shall be given, and the sales conducted as in other cases of sales on execution.

Sec. 186. If after selling all the property attached by him remaining in his hands and applying the proceeds, together with the proceeds of any debts or credits collected by him, deducting his fees, to the payment of the judgment, any balance shall remain due, the sheriff shall proceed to collect such balance as upon an execution in other cases. Whenever the judgment shall have been paid, the sheriff, upon reasonable demand, shall deliver over to the defendant the attached property remaining in his hands, and any proceeds of the property attached unapplied on the judgment.

Sec. 187. If the execution be returned unsatisfied in

whole or in part, the plaintiff may proceed as in other cases upon the return of an execution.

SEC. 188.  If the defendant recover judgment against the plaintiff, all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in the sheriff's hands shall be delivered to the defendant or his agent; the order of attachment shall be discharged and the property released therefrom.

SEC. 189.  Whenever the defendant shall have appeared in the action he may apply, upon reasonable notice to the plaintiff, to the court in which the action is pending, or to the judge thereof, for an order to discharge the same upon the execution of the bond mentioned in the next section; and if the application be granted, all the proceeds of sales and moneys collected by the sheriff, and all the property attached remaining in his hands shall be released from the attachment and delivered to the defendant upon the justification of the sureties on the bond, if required by the plaintiff.

SEC. 190.  Upon such application the defendant shall deliver to the court or judge a bond, executed by at least two sureties, residents and freeholders or householders in the county, to the effect that the sureties will on demand pay to the plaintiff the amount of any judgment that may be recovered in favor of the plaintiff in the action, not exceeding the sum specified in the bond, which shall be sufficient to satisfy the amount claimed by the plaintiff in his complaint, and the costs.  The sureties may be required to justify on such application before the judge or court, and the property attached shall not be released from an attachment without their justification, if the same be required.

SEC. 191.  The defendant may at any time before final judgment apply on motion upon reasonable notice to the plaintiff, to the court in which the action is brought or to the judge thereof for an order directing that the attachment be discharged on the grounds set out in section one hundred and ninety-two (192)

SEC. 192.  The motion provided for in section one hundred and ninety-one shall be allowed if it shall appear to the court or judge that the writ was issued wrongfully oppressively or without sufficient cause or that it was improperly or improvidently issued  And the defendant may file with such motion affidavits controverting the affidavit on which the writ was obtained.  And in furtherance of justice the court or judge shall allow additional affidavits to be filed by either the plaintiff or defendant or both and the court or judge shall then hear and decide the motion on the writ bond or undertaking and affidavits on file, and if the motion prevails the defendant shall recover a judg-

40                              GENERAL LAWS.

ment for all costs and disbursements incurred by reason of said writ.

SEC. 193.  If upon such application, it shall satisfactorily appear that the writ of attachment was improperly issued, it shall be discharged.

SEC. 194.  The sheriff shall return the writ of attachment with the summons, if issued at the same time; otherwise, within twenty days after its receipt, with a certificate of his proceedings endorsed thereon, or attached thereto.

SEC. 195.  Whenever property has been taken by an officer, under a writ of attachment, in pursuance of the provisions of this act, and it shall be made to appear satisfactorily to the court, or a judge thereof, that the interest of the parties to the action will be subserved by a sale thereof, the court or judge may order such property to be sold, in the same manner as property is sold under an execution, and the proceeds to be deposited in court, to abide the judgment in the action.  Such order shall be made only upon notice to the adverse party or his attorney, in case such party have been personally served with a notice in the action.

SEC. 196.  The judge of the district court shall have power to make every order in vacation which, by the provisions of this chapter, may be made by the court in term time.


## CHAPTER XIII.

### OF RECEIVERS AND DEPOSITS IN COURT.

SEC. 197.  A receiver may be appointed by the court in the following cases:

1.  In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim.

2.  In an action between partners, or other persons jointly interested in any property or fund.

3.  In all actions where it is shown that the property, fund, or rents and profits in controversy are in danger of being lost, removed or materially injured.

4.  In an action by a mortgagee for the foreclosure of a mortgage and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed, or mate-

rially injured; or when such property is insufficient to discharge the debt, to secure the application of the rents and profits accruing, before a sale can be had.

5.    When a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights.

6.    And in such other cases as may be provided for by law, or when, in the discretion of the court it may be necessary to secure ample justice to the parties, provided that no party or attorney or other person interested in an action, shall be appointed receiver therein.

SEC. 198.    Before entering upon his duties, the receiver must be sworn to perform them faithfully, and with one or more sureties, approved by the court, execute a bond to such person as the court may direct, conditioned that he will faithfully discharge the duties of receiver in the action, and obey the orders of the court therein.

SEC. 199.    When it is admitted by the pleading or examination of a party, that he has in his possession, or under his control, any money, or other thing capable of delivery, which, being the subject of the litigation, is held by him as trustee for another party, or which belongs or is due to another party, the court may order the same to be deposited in court, or delivered to such party, with or without security, subject to the further direction of the court.

SEC. 200.    Whenever, in the exercise of its authority, a court shall have ordered the deposit or delivery of money or other thing, and the order is disobeyed, the court, besides punishing the disobedience as for contempt, may make an order requiring the sheriff to take the money or thing and deposit or deliver it in conformity with the direction of the court.

SEC. 201.    Money deposited or paid into court in an action, shall not be loaned out, unless with the consent of all parties having an interest in, or making claim to the same.

SEC. 202.    The receiver shall have power, under control of the court, to bring and defend actions, to take and keep possession of the property, to receive rents, collect debts, and generally to do such acts respecting the property, as the court may authorize.

SEC. 203.    When the answer of the defendant admits part of the plaintiff's claim to be just, the court, on motion, may order the defendant to satisfy that part of the claim, and may enforce the order by execution or attachment.

6

42                    GENERAL LAWS.

## CHAPTER XIV.

### OF ISSUES IN CIVIL ACTIONS.

SEC. 204.   Issues arise upon the pleadings when a fact or conclusion of law is maintained by the one party, and controverted by the other, and are of two kinds:

1.   Of law; and

2.   Of fact.

SEC. 205.   An issue of law arises upon a demurrur to the complaint, answer, or reply, or to some part thereof.

SEC. 206.   An issue of fact arises:

1.   Upon a material allegation in the complaint, controverted by the answer; or

2.   Upon new matter or a set-off, controverted by the reply; or

3.   Upon new matter in the reply.

SEC. 207.   Issues both of law and fact may arise upon different parts of the pleading in the same action.   In such cases, the issues of law shall be first tried, unless the court otherwise direct.

## CHAPTER XV.

### OF THE TRIAL OF CIVIL ACTIONS.

SEC. 208.   An issue of law shall be tried by the court, unless referred as provided in this act.   An issue of fact shall be tried by a jury, unless a jury trial be waived, or a reference be ordered, as provided in this act.   The waiver of a jury, or agreement to refer, shall be by stipulation of the parties filed, or the oral consent of parties given in open court and minuted in the records:   *Provided*, That nothing herein contained shall be so construed as to restrict the chancery powers of the judges, or to authorize the trial of any issue by a jury, when the complaint alleges an equitable claim, and seeks relief solely upon

## GENERAL LAWS. 43

the ground of the equities of the demand made by the pleadings in the action.

Sec. 209. A motion to continue a trial on the ground of the absence of evidence, shall only be made upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and residence or the witness or witnesses. The court may also require the moving party to state, upon affidavit, the evidence which he expects to obtain; and if the adverse party admit that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be continued. The court, upon its allowance of the motion, may impose terms or conditions upon the moving party.

Sec. 210. When the action is called for trial, the clerk shall prepare separate ballots containing the names of the jurors summoned who have appeared and not been excused, and deposit them in a box. He shall then draw from the box twelve names, and the persons whose names are drawn shall constitute the jury. If the ballots become exhausted before the jury is complete, or if from any cause a juror or jurors be excused or discharged, the sheriff, under the direction of the court, shall summon from the bystanders, citizens of the county or district, as many qualified persons as may be necessary to complete the jury. Whenever it shall be requisite for the sheriff to summon more than one person at a time from the bystanders or body of the district or county, the names of the talesmen shall be returned to the clerk, who shail thereupon write the names upon separate ballots and deposit the same in the trial jury box, and draw such ballots separately therefrom, as in the case of the regular panel. The jury shall consist of twelve persons, unless the parties consent to a less number. The parties may consent to any number not less than three, and such consent shall be entered by the clerk on the minutes of the trial.

Sec. 211. Either party may challenge the jurors, but when there are several parties on either side, they shall join in a challenge before it can be made. The challenge shall be to individual jurors, and be peremptory or for cause. Each party shall be entitled to three peremptory challenges.

Sec. 212. A peremptory challenge is an objection to a juror for which no reason need be given, but upon which the court shall exclude him.

Sec. 213. *A challenge for cause is an objection to a juror, and may be either:

1. General; that the juror is disqualified from serving in any action; or

44                    GENERAL LAWS.

2.  Particular; that he is disqualified from serving in the action on trial.

SEC. 214.  General causes of challenge are:

A conviction for a felony.

2.  A want of any of the qualifications prescribed by law for a juror.

3.  Unsoundness of mind, or such defect in the faculties of the mind, or organs of the body, as renders him incapable of performing the duties of a juror.

SEC. 215.  Particular causes of challenge are of two kinds:

1.  For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as implied bias.

2.  For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the trier in the exercise of a sound discretion, that he cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.

SEC. 216.  A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

1.  Consanguinity or affinity within the fourth degree to either party.

2.  Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to the adverse party; or being a member of the family of, or a partner in business with, or in the employment for wages, of the adverse party, or being surety or bail in the action called for trial, or otherwise, for the adverse party.

3.  Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the Territory against either party, upon substantially the same facts or transaction.

4.  Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

SEC. 217.  A challenge for actual bias may be taken for the cause mentioned in the second subdivision of section two hundred and fifteen.  But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the

court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.

SEC. 218. An exemption from service on a jury shall not be cause of challenge, but the privilege of the person exempted.

SEC. 219. The jurors having been examined as to their qualifications, first by the plaintiff and then by defendant, and passed for cause, the peremptory challenges shall be conducted as follows, to wit:

The plaintiff may challenge one, and then the defendant may challenge one, and so alternately until the peremptory challenges shall be exhausted. The panel being filled and passed for cause, after said challenge shall have been made by either party, a refusal to challenge by either party in the said order of alternation, shall not defeat the adverse party of his full number of challenges, but such refusal on the part of the plaintiff to exercise his challenge in proper turn, shall conclude him as to the jurors once accepted by him, and if his right be not exhausted, his further challenges shall be confined, in his proper turn, to talesmen only.

SEC. 220. The challenges of either party shall be taken separately in the following order, including in each challenge all the causes of challenge belonging to the same class:

1. For general disqualification.
2. For implied bias.
3. For actual bias.
4. Peremptory.

SEC. 221. The challenge may be excepted to by the adverse party for insufficiency, and if so, the court shall determine the sufficiency thereof, assuming the facts alleged therein to be true. The challenge may be denied by the adverse party, and if so, the court shall try the issue and determine the law and the facts.

SEC. 222. Upon the trial of a challenge, the rules of evidence applicable to testimony offered upon the trial of an ordinary issue of fact shall govern. The juror challanged, or any other person otherwise competent, may be examined as a witness by either party. If a challenge be determined to be sufficient, or found to be true, as the case may be, it shall be allowed, and the juror to whom it was taken excluded; but if determined or found otherwise, it shall be disallowed.

SEC. 223. The challenge, the exception and the denial may be made orally. The judge of the court shall note the same upon his minutes, and the substance of the testimony on either side.

46                          GENERAL LAWS.

Sec. 224. As soon as the number of the jury has been completed, an oath or affirmation shall be administered to the jurors, in substance that they and each of them will well and truly try the matter in issue between the plaintiff and defendant, and a true verdict give according to the law and evidence as given them on the trial.

Sec. 225. When the jury has been sworn, the trial shall proceed in the following order:

1. The plaintiff must briefly state the cause of action and the evidence by which he expects to sustain it. The defendant may in like manner state the defense and the evidence he expects to offer in support thereof, but nothing in the nature of comments or argument shall be allowed in opening the case. It shall be optional with the defendant whether he states his case before or after the close of the plaintiff's testimony.

2. The plaintiff or the party upon whom rests the burden of proof in the whole action, must first produce his evidence; the adverse party will then produce his evidence.

3. The parties will then be confined to rebutting evidence, unless the court for good reasons in furtherance of justice, permits them to offer evidence in their original case.

4. When the evidence is concluded, either party may request the judge to charge the jury in writing, in which event no other charge or instruction shall be given, except the same be contained in the said written charge; or either party may request instructions to the jury on points of law, and if the court refuse to give the same, the party requesting may except. Either party shall also be entitled to require of the judge that all interlocutory orders, instructions or rulings upon the evidence during the progress of the trial of a cause, shall be reduced to writing, together with any exceptions that may be made thereto, and the same shall be made a part of the record of the case, and any refusal on the part of the judge trying the cause or making the order to comply with all or any of the provisions of this section shall be regarded error, and entitle the party whose request shall have been refused to a reversal of the judgment on a writ of error: *Provided, always,* That the instruction or ruling so requested is pertinent and consistent with the law and evidence of the case, and that such refusal has worked an injury to the party requesting the same.

5. After the conclusion of the evidence and the filing of request for charge in writing or instructions, the plaintiff or party having the burden of proof may, by himself or one counsel, address the court and jury upon the law and facts of the case, after which the adverse party may address the court and jury in like manner by himself and one counsel, or by two counsel, and

GENERAL LAWS. 47

be followed by the party or counsel of the party first addressing the court. No more than two speeches on behalf of plaintiff or defendant shall be allowed.

6. The court shall then charge the jury upon the law in the case. If no request has been made for said charge to be in writing, or if no instructions have been requested, said charge may be oral; but either party at any time before the jury return their verdict, may except to the same or any part thereof; but no exception shall be regarded by the supreme court, unless the same shall embody the specific parts of said charge to which exception is taken. In charging the jury, the court shall state to them all matters of law necessary for the information of the jury in finding a verdict; and if it become necessary to allude to the evidence, it shall also inform the jury that they are the exclusive judges of all questions of fact.

SEC. 226. Any party may, when the evidence is closed, submit in distinct and concise propositions the conclusions of fact which he claims to be established, or the conclusions of law which he desires to be adjudged, or both. They may be written and handed to the court, or at the option of the court, oral, and entered in the judge's minutes.

SEC. 227. All questions of law including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it.

SEC. 228. All questions of fact other than those mentioned in the section preceding, shall be decided by the jury, and all evidence thereon addressed to them.

SEC. 229. Whenever in the opinion of the court it is proper that the jury should have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order the jury to be conducted in a body, in the custody of a proper officer, to the place which shall be shown to them by the judge or by a person appointed by the court for that purpose. While the jury are thus absent, no person, other than the judge or person so appointed, shall speak to them on any subject connected with the trial.

SEC. 230. The jurors may be kept together in charge of a proper officer, or may, in the discretion of the court, at any time before the submission of the cause to them, be permitted to separate; in either case they may be admonished by the court that it is their duty not to converse with any other person, or among themselves, on any subject connected with the trial, or to express any opinion thereon, until the case is finally submitted to them.

48 GENERAL LAWS.

Sec. 231.  If after the formation of the jury, and before verdict, a juror become sick, so as to be unable to perform his duty, the court may order him to be discharged.  In that case, unless the parties agree to proceed with the other jurors, a new juror may be sworn and the trial begin anew; or the jury may be discharged and a new jury then or afterwards formed.

Sec. 232.  A juror may be examined by either party as a witness, if he be otherwise competent.  If he be not so examined, he shall not communicate any private knowledge or information that he may have of the matter in controversy, to his fellow jurors, nor be governed by the same in giving his verdict.

Sec. 233.  After hearing the charge, the jury may either decide in the jury box or retire for deliberation.  If they retire, they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more officers, until they agree upon their verdict, or are discharged by the court.  The officer shall, to the best of his ability, keep the jury thus separate from other persons, without drink, except water, and without food, except ordered by the court.  He must not suffer any communication to be made to them, nor make any himself, unless by order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed on.     .

Sec. 234.  If while the jury are kept together, either during the progress of the trial or after their retirement for deliberation, the court order them to be provided with suitable and sufficient food and lodging, they shall be so provided by the sheriff, at the expense of the county.

Sec. 235.  Upon retiring for deliberation, the jury may take with them the pleadings in the cause, and all papers which have been received as evidence on the trial, (except depositions,) or copies of such parts of public records or private documents given in evidence, as ought not, in the opinion of the court, to be taken from the person having them in possession.

Sec. 236.  After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, they may require the officer having them in charge to conduct them into court.  Upon their being brought into court the information required shall be given in the presence of or after notice to the parties or their attorneys.

Sec. 237.  The jury may be discharged by the court on account of the sickness of a juror, or other accident or calamity requiring their discharge, or by consent of both parties, or after

## GENERAL LAWS.    49

they have been kept together until it satisfactorily appears that there is no probability of their agreeing.

Sec. 238.    In all cases where a jury are discharged or prevented from giving a verdict by reason of accident or other cause, during the progress of the trial, or after the cause is submitted to them, the action shall be continued to the next term, without both parties demand an immediate trial, in which case it shall go to the foot of the trial list.

Sec. 239.    While the jury are absent the court may adjourn from time to time, in respect to other business, but it is nevertheless to be deemed open for every purpose connected with the cause submitted to the jury, until a verdict is rendered or the jury discharged.    A final adjournment of the court discharges the jury.

Sec. 240.    When the jury have agreed upon their verdict they shall be conducted into court by the officer having them in charge.    Their names shall then be called, and if all do not appear, the rest shall be discharged without giving a verdict.

Sec. 241.    If the jury appear, they shall be asked by the court or the clerk whether they have agreed upon their verdict, and if the foreman answer in the affirmative, he shall on being required declare the same.

Sec. 242.    When a verdict is given and before it is filed, the jury may be polled at the request of either party, for which purpose each shall be asked whether it be his verdict; if any juror answer in the negative the jury shall be sent out for further deliberation.    If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out.

Sec. 243.    When the verdict is given and is such as the court may receive, and if no juror disagree or the jury be not again sent out, the clerk shall file the verdict.    The verdict is then complete and the jury shall be discharged from the case. The verdict shall be in writing, and under the direction of the court shall be substantially entered in the journal as of the day's proceedings on which it was given.


## CHAPTER XVI.

### THE VERDICT.

Sec. 244.    The verdict of a jury is either general or special. A general verdict is that by which the jury pronounces gen-

7

50                          GENERAL LAWS.

erally upon all or any of the issues either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving the judgment to the court.

SEC. 245. In an action for the recovery of specific personal property, if the property has not been delivered to the plaintiff, or the defendant by his answer claim a return thereof, the jury shall assess the value of the property if their verdict be in favor of the plaintiff, or if they find in favor of the defendant and that he is entitled to a return thereof, and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding such property.

SEC. 246. In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases, the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. The special verdict or finding shall be filed with the clerk and entered in the minutes.

SEC. 247. When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

SEC. 248. When a verdict is found for the plaintiff in an action for the recovery of money, or for the defendant when a set-off for the recovery of money is established beyond the amount of the plaintiff's claim as established, the jury shall also assess the amount of the recovery; they may also, under the direction of the court, assess the amount of the recovery when the court give judgment for the plaintiff on the answer.


## CHAPTER XVII.

### TRIAL BY THE COURT.

SEC. 249. Trial by jury may, with the assent of the court, be waived by the several parties in the manner following:

1. By failing to appear at the trial.

2. By written consent, in person or by attorney, filed with the clerk.

3. By oral consent in open court entered in the minutes.

## GENERAL LAWS.                                    51

Sec. 250. Upon the trial of an issue of fact by the court, its decisions shall be given in writing and filed with the clerk. In giving the decision, the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall be entered accordingly.

Sec. 251. The order of proceedings on a trial by the court shall be the same as provided in trials by jury. The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reason as far as applicable, and a new trial granted.

## CHAPTER XVIII.

### TRIAL BY REFEREES.

Sec. 252. All or any of the issues in the action, whether of fact or law, or both, may be referred upon the written consent of the parties.

Section 253. Where the parties do not consent the court or judge may upon the application of either or of its own motion, direct a reference in all cases formerly cognizable in chancery in which reference might be made and also,

1. When the trial of an issue of fact shall require the examination of a long account on either side, in which case the referees may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein; or

2. When the taking of an account shall be necessary for the information of the court, before judgment upon an issue of law, or for carrying a judgment or order into effect; or

3. When a question of fact other than upon the pleadings shall arise, upon motion or otherwise, in any stage of the action; or

4. When it is necessary for the information of the court in a special proceeding.

Sec. 254. A reference may be ordered to any person or persons not exceeding three, agreed upon by the parties. If the parties do not agree the court or judge may appoint one or more, not exceeding three.

Sec. 255. When the appointment of referees is made by the court or judge, each referee shall be:

1. Qualified as a juror as provided by statute.

2. Competent as juror between the parties.

52                          GENERAL LAWS.

SEC. 256.    When the referees are chosen by the court each party shall have the same right of challenge as to such referees, to be made and determined in the same manner and with like effect as in the formation of juries, except that neither party shall be entitled to a peremptory challenge.

SEC. 257.    Subject to the limitations and directions prescribed in the order of reference, the trial by referees shall be conducted in the same manner as a trial by the court.    They shall have the same power to grant adjournments, administer oaths, to preserve order and punish all violations thereof upon such trial, and to compel the attendance of witnesses, and to punish them for non-attendance or refusal to be sworn or testify as is possessed by the court.

SEC. 258.    The report of the referees shall state the facts found, and when the order of reference includes an issue of law it shall state the conclusions of law separately from the facts. The referees shall file with their report the evidence received. upon the trial.    If evidence offered by either party shall not be admitted on the trial and the party offering the same except to the decision rejecting such evidence at the time, the exceptions shall be noted by the referees and they shall take and receive such testimony and file it with the report.    Whatever judgment the court may give upon the report, it shall, when it appears that such evidence was frivolous and inadmissible, require the party at whose instance it was taken and reported, to pay all costs and disbursements thereby incurred.

SEC. 259.    The report shall be filed with the clerk.    If it be filed in term time either party may within such time as may be prescribed by the rules of the court or by special order move to set the same aside or for judgment thereon, or such order or proceeding as the nature of the case may require.    If the report be filed in vacation the like proceedings may be had at the next term following.

SEC. 260.    The court may affirm or set aside the report either in whole or in part.    If it affirms the report it shall give judgment accordingly.    If the report be set aside either in whole or in part, the court may make another order of reference as to all or so much of the report as is set aside, to the original referees or others, or it may find the facts and determine the law itself and give judgment accordingly.    Upon a motion to set aside a report the conclusions thereof shall be deemed and considered as the verdict of the jury.

## CHAPTER XIX.

### EXCEPTIONS.

SECTION 261.   No particular form of exception is required. The objection  must  be stated with so much of the evidence or other  matter as is  necessary to explain  it and no  more.   But when  the  exception  is to  the  verdict  or decision upon the grounds of the  insufficiency of the  evidence  to sustain  it the objection must specify the particulars in  which such evidence is alleged to be insufficient.

SECTION 262.   A bill containing the exception to any  ruling may be  presented  to  the  judge at  the  time the  ruling  is made or the exception may be entered on  the  judge's  minutes and afterwards settled.   The bill must be conformable  to the truth, or be at the time corrected until it be  so  and  signed  by the judge and filed with the clerk.

SECTION 263.   If a bill is not presented at the time of  the ruling, a bill containing the exceptions or any of them relating to any ruling had up to the time of the entry of judgment may upon three days notice to the adverse party at any  time  after such ruling is made and within ten days after the entry of judgment or such other time as may be fixed by the  court or judge, be presented to the judge and settled.

SECTION 264.   Exceptions  to  any  decisions  made  after judgment  may  be presented to the judge at the time  of such decision and may  be  settled  or  noted  as  provided  in  section two hundred and sixty-two and a bill thereof  may  be  presented and settled afterwards as provided in section two  hundred  and sixty-three, and within like periods after entry of  the order upon appeal from which such decision is reviewable.

SECTION 265.   If the judge in any  case refuse  to allow an exception in accordance with the facts the party desiring the bill settled may apply by petition to the supreme court to prove the same.   The application may be made in the mode and  manner and under such regulations as that court may prescribe and the bill when proven must be certified by a justice thereof as correct and  filed  with the clerk of the court in  which the action was tried  and  when so filed it has the  same force and  effect as  if settled by the judge who tried the cause.

SECTION 266.   If the judge who  presided  at  the  trial ceases to hold office before the bill is tendered or settled he may

54                         GENERAL LAWS.

nevertheless settle such bill or the party may as provided in the preceding section apply to the supreme court to prove the same.

SEC. 267.    When a cause has been tried by the court or by referees, and the decision or report is not made immediately after the closing of the testimony, the decision or report shall be deemed excepted to on a motion for a new trial or on appeal, without any special notice that an exception is taken thereto.

## CHAPTER XX.

### ARBITRATION AND AWARD.

SEC. 268.    All persons desirous to end by arbitration any controversy, suit or quarrel, except such as respect the title to real estate, may submit their difference to the award or umpirage of any person or persons mutually selected.

SEC. 269.    Said agreement to arbitrate shall be in writing, signed by the parties, and may be by bond in any sum, conditioned that the parties entering into said submission shall abide the award.

SEC. 270.    The said arbitrators shall be duly sworn to try and determine the cause referred to them, and a just award make out under the hands and seals of a majority of them, agreeably to the terms of the submission.    Said award, together with the written agreement to submit, shall be sealed up by the arbitrators and delivered to the party in whose favor it shall be made, who shall deliver the same, without breaking the seal, to the clerk of the district court of the district including the county wherein said arbitration is held, who shall enter the same on record in his office.    A copy of the award, signed by said arbitrators, or a majority of them, shall also be delivered to the party in whose favor it is so rendered, who shall, if the matter be not settled, serve a copy of the same on the adverse party at least twenty days before the commencement of the next term of the said district court, and if no exceptions be filed against the same by or before the second day of said term, the judgment of the court shall be entered upon said award with like effect as though said award were the verdict of a jury, and execution may issue therefor and the same proceedings had as in civil actions.

SEC. 271.    The arbitrators chosen under the provisions of this chapter shall each be allowed three dollars per day, to be

GENERAL LAWS.                55

taxed with other costs of suit; but if either party fail to appear on the day agreed upon for the arbitrators to meet, said party shall be liable for all costs accruing that day, unless his absence was unavoidable, and shall be so established to the satisfaction of said arbitrators. And any arbitrator failing to attend on the day appointed unless delayed by sickness or unavoidable accident, shall forfeit and pay the sum of five dollars to the school fund of the county, to be recovered by action before a justice of the peace in the name of the county commissioners of the county.

SEC. 272. The party against whom an award may be made may except in writing thereto for either of the following causes:

1. That the arbitrators or umpire misbehaved themselves in the case.

2. That they committed an error in fact or law.

3. That the award was procured by corruption or other undue means.

SEC. 273. If upon exceptions filed it shall appear to the said district court that the arbitrators have committed error in fact or law, the court may refer the cause back to said arbitrators, directing the amendment of said award forthwith, returnable to the current term of said court, and on the failure so to correct said proceedings, the court shall be possessed of the case and proceed to its determination.

SEC. 274. Arbitrators, or a majority of them, shall have power:

1. To compel the attendance of witnesses duly notified by either party and to enforce from either party the production of all such books, papers and documents as they may deem material to the cause.

2. To administer oaths or affirmations to witnesses.

3. To adjourn their meetings from day to day, or for a longer time, and also from place to place, if they think proper.

4. To decide both the law and the fact that may be involved in the cause submitted to them.

SEC. 275. The laws in force in this Territory relating to evidence and the manner of procuring the attendance of witnesses, shall govern in arbitrations.

SEC. 276. The law governing proceedings for contempt in the trial of cases before justices of the peace, so far as the same may be applicable, shall apply to proceedings before arbitrations.

SEC. 277. The costs of witnesses, and other fees in the case, shall be taxed against the losing party; said fees shall be indorsed upon the award, and when said award is affirmed as the

56                          GENERAL LAWS.

judgment of the district court, execution shall issue therefor as for costs in civil actions.

SEC. 278. Such award when so affirmed shall be in all respects like any other judgment of the district court, and a transcript of such judgment or execution issued thereon, recorded in the county auditor's office in the same manner as other judgments, shall be a lien upon real estate in said county.

## CHAPTER XXI.

### NEW TRIAL.

SEC. 279. A new trial is a re-examination of an issue in the same court after a trial and decision by a jury, court or referees.

SEC. 280. The former verdict or other decision may be vacated and a new trial granted on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion by which such party was prevented from having a fair trial.

2. Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict to a finding on any question or questions submitted to the jury by the court, other and different from his own conclusions and arrived at by a resort to the determination of chance or lot; such misconduct may be proved by the affidavits of one or more of the jurors.

3. Accident or surprise which ordinary prudence could not have guarded against.

4. Newly discovered evidence material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial.

5. Excessive damages appearing to have been given under the influence of passion or prejudice.

6. Error in the assessment of the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property.

7. Insufficiency of the evidence to justify the verdict or other decision or that it is against law.

8.  Error in law occurring at the trial and excepted to at the time by the party making the application.

Sec. 281.  A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, nor in any other action where the damages shall equal the actual pecuniary injury sustained.

Sec. 282.  When the motion is made for a cause mentioned in the first, second, third and fourth subdivisions of the last preceding section, the facts upon which it is based shall be made to appear by affidavit.  For any other cause it shall be made upon a written statement.

Sec. 283.  Notice of an intended motion for a new trial shall be given on the day when the verdict or other decision in term is rendered, and the motion with the affidavits, if any in support thereof, shall be filed within two days thereafter.  When the adverse party is entitled to oppose the motion by counter affidavits he shall file the same within one day after the filing of the motion.  The motion shall be heard and determined during the term unless the court continue the same for advisement or want of time to hear it.  When not so heard or determined, or continued, it shall be deemed withdrawn and may be disregarded.

Sec. 284.  Upon a trial by the court when the decision is given in vacation, a motion for a new trial shall be filed within twenty days from the time of filing such decision.  If the next regular term of said court shall commence within less than twenty days from the time of filing such decision, then such motion shall be filed by the first day of said term.  In either case the adverse party may within four days after the filing of the motion, file counter affidavits where the same are allowed.

Sec. 285.  In all cases of motion for a new trial, the grounds thereof shall be clearly specified, and no cause of new trial not so stated shall be considered or regarded by the court.

Sec. 286.  If the motion be supported by affidavits, counter affidavits may be offered by the adverse party, and if the cause be newly discovered evidence, the affidavits of any witness or witnesses showing what their testimony will be, shall be produced, or good reasons shown for their non-production.

## CHAPTER XXII.

### JUDGMENT IN GENERAL.

Sec. 287.  A judgment is the final determination of the rights of the parties in the action.

58                    GENERAL LAWS.

SEC. 289.   Judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants; and it may when the justice of the case requres it, determine the ultimate rights of the parties on each side as between themselves.

SEC. 288.   In an action against several defendants the court may, in its discretion, render judgment against one or more of them whenever a several judgment is proper, leaving the action to proceed against the others.

## CHAPTER XXIII.

### JUDGMENT OF NON-SUIT.

SEC. 290.   An action may be dismissed or a judgment of non-suit entered in the following cases:

1.   By the plaintiff himself at any time, either in term time or in vacation, before the jury retire to consider their verdict, unless set-off be interposed as a defense, or unless the defendant sets up a counter claim to the specific property or thing which is the subject matter of the action.

2.   By either party upon the written consent of the other.

3.   By the court, when the plaintiff fails to appear on trial and the defendant appears and asks for a dismissal.

4.   By the court, when upon the trial and before the final submission of the case the plaintiff abandons it.

5.   By the court, on the refusal or neglect of the plaintiff to make the necessary parties after having been ordered by the court.

6.   By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence.

7.   By the court, for disobedience of the plaintiff to an order concerning the proceedings in the action.

8.   By the court, upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient cause for the jury.

SEC. 291.   In every case other than those mentioned in the last section, the judgment shall be rendered on the merits.

SEC. 292.   When a judgment of non-suit is given, the

action is dismissed; but such judgment shall not have the effect to bar another action for the same cause.

## CHAPTER XXIV.

### JUDGMENT ON FAILURE TO ANSWER.

#### IN WHAT CASE JUDGMENT MAY BE HAD UPON FAILURE TO ANSWER.

SEC. 293. Judgment may be had if the defendant fail to answer to the complaint, as follows:

1. In any action arising on contract for the recovery of money only the plaintiff may file with the clerk proof of personal service of the summons and complaint on one more of the defendants. The court shall thereupon enter judgment for the amount claimed against the defendant or defendants or against one more of the several defendants in the cases provided for in section sixty-nine. Where the defendant by his answer in any such action shall not deny the plaintiff's claim but shall set up a counter claim amounting to less than the plaintiff's claim judgment may be had by the plaintiff for the excess of said claim over the said counter claim in like manner in any such action, upon the plaintiff's filing with the clerk of the court a statement admitting such counter claim.

2. In other actions the plaintiff may upon the like proof apply to the court after the expiration of the time for answering, for the relief demanded in the complaint. If the taking of an account or of the proof of any fact be necessary to enable the court to give judgment or to carry the judgment into effect the court may take the account or hear the proof, or may, in its discretion, order a reference for that purpose. Where the action is for the recovery of damages, in whole or in part, the court may order the damages to be assessed by a jury; or if to determine the amount of damages, the examination of a long account be neces- sary, by a reference as above provided. If the defendant give notice of appearance in the action before the expiration of the time for answering he shall be entitled to five days notice of the time and place of application to the court for the relief de- manded in the complaint.

3. In action where the service of the summons was by pub- lication, the plaintiff upon the expiration of the time for answer-

60                          GENERAL LAWS.

ing may upon proof of service by publication apply for judgment and the court must thereupon require proof of the demand mentioned in the complaint and must require the plaintiff or his agent to be examined on oath respecting any payments that have been made to the plaintiff or to any one for his use on account of such demand and may render judgment for the amount which he is entitled to recover or for such other relief as he may be entitled to.

SEC. 294.  The court may, in its discretion, before final judgment, set aside any default, upon affidavit showing good and sufficient cause, and upon such terms as may be deemed reasonable.


## CHAPTER XXV.

### JUDGMENT BY CONFESSION.

SEC. 295.  On the confession of the defendent, with the assent of the plaintiff or his attorney, judgment may be given against the defendant in any action before or after answer, for any amount or relief not exceeding or different from that demanded in the complaint.

SEC. 296.  When the action is against the Territory, a county or other public corporation therein, or a private corporation, or a minor, the confession shall be made by the person who at the time sustains the relation to such Territory, corporation, county or minor, as would authorize the service of a notice upon him; or in case of a minor, if a guardian for the action has been appointed, then by such guardian.  In all other cases, the confession shall be made by the defendant in person.

SEC. 297.  When the action is upon a contract and against one or more defendants jointly liable, judgment may be given on· the confession of one or more defendants against all the defendants thus jointly liable, whether such defendants have been served or not, to be enforced only against their joint property and against the joint and separate property of the defendant making the confession.

SEC. 298.  The confession and assent thereto shall be in writing and subscribed by the parties making the same, and acknowledged by each before some officer authorized to take acknowledgements of deeds.

SEC. 299.  A judgment by confession may be entered

without action, either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prrescribed by this chapter.

SEC. 300. A statement in writing shall be made, signed by the detendant and verified by his oath to the following effect:

1. It shall authorize the entry of judgment for a specified sum.

2. If it be for money due or to become due, it shall state concisely the facts out of which it arose, and shall show that the sum confessed therefor is justly due or to become due.

3. If it be for the purpose of securing the plaintiff against a contingent liability, it shalls tate concisely the facts constituting the liability, and shall show that the sum confessed therefor does not exceed the same.

SECTION 301. The statement must be presented to the district court or a judge thereof and if the same be found sufficient, the court or judge shall endorse thereon an order that judgment be entered by the clerk whereupon it may be filed in the office of the clerk who shall enter a judgment for the amount confessed with costs. Execution may be issued and enforced thereon in the same manner as upon judgments in other cases.

# CHAPTER XXVI.

## SUBMITTED CASES.

SEC. 302. Parties to a question in difference which might be the subject of a civil action may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court which would have jurisdiction if an action had been brought. But it must appear by affidavit that the controversy is real and the proceedings in good faith to determine the rights of the parties. The court shall thereupon hear and determine the case and render judgment thereon as if an action were pending.

SEC. 303. Judgment shall be entered in the judgment book as in other cases, but without costs for any proceedings prior to the trial. The case, the submission and a copy of the judgmert shall constitute the judgment roll.

SEC. 304. The judgment may be enforced in the same

62          GENERAL LAWS.

manner as if it had been rendered in an action, and shall be in the same manner subject to appeal.

## CHAPTER XXVII.

### OF THE MODE OF TAKING AND ENTERING JUDGMENTS.

SEC. 305. When a trial by jury has been had, judgment shall be entered in conformity to the verdict at the term during which it is rendered, unless an affidavit or statement of grounds for a new trial shall be filed or unless the court order the case to be reserved for argument or further consideration, or grant a stay of proceedings.

SEC. 306. When the case is reserved for argument or further consideration as mentioned in the last section, it may be brought by either party before the court for argument at the first term thereafter.

SEC. 307. If a set-off established at the trial exceed the plaintiff's demand so established, judgment for the defendant shall be given for the excess; or if it appear that the defendant is entitled to any other affirmative relief, judgment shall be given accordingly.

SEC. 308. In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention. If the property has been delivered to the plaintiff and the defendant claim a return thereof, judgment for the defendant may be for a return of the property or the value thereof with in case a return cannot be had, and damages for taking and withholding the same.

SEC. 309. All judgments shall be entered by the clerk, subject to the direction of the court, in the journal, and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action.

SEC. 310. Immediately after entering the judgment the clerk shall attach all the papers in the case and keep them in his office.

SEC. 311. Every clerk shall keep in his office a well-bound book, to be called the execution docket, which shall be a public record and open during the usual business hours to all persons desirous of inspecting it.

## GENERAL LAWS.                    63

SEC. 312. Within twenty days after the close of any term of the court the clerk shall enter in said execution docket a statement of each final judgment rendered at such term, and shall at the request of the judgment creditor or his attorney, upon the payment of costs of said transcript, furnish a transcript of said judgment to said judgment creditor, and upon the filing of said transcript in the office of the county auditor, it shall be a lien upon all real estate of said judgment debtor in the county where such transcript shall be filed for the period of five years from the date said judgment was rendered. And said lien shall have attached from the day of the date of said judgment if said transcript shall have been filed within the said twenty days. And in case where an attachment had been levied upon any real estate, then from the service of the attachment. The fees for making and filing such transcript shall be paid by the judgment creditor and be taxed as costs against the judgment debtor and be collected as other costs in the case. Said statements and transcripts shall contain:

1. The names at length of all the parties.

2. The date of the judgment and against whom rendered.

3. The amount or nature of the judgment and costs.

4. An abstract of the costs of each party, and to whom belonging.

SEC. 313. The clerk shall also enter in his execution docket a minute, in like manner, of any transcript of a judgment from the supreme court, or from any other district court of the Territory, or from a justice of the peace, when the same are presented to him for that purpose, as shall be provided by law. He shall in like manner, at the instance of the judgment creditor, furnish to any county auditor's office any certified transcript of said judgment for filing therein, the fees whereof shall be paid by the party requesting such transcript, but taxable as other costs in the case.

SEC. 314. He shall leave space on the same page, if practicable, with each case, in which he shall enter in the order in which they occur all the proceedings subsequent to the judgment in said case until its final satisfaction, including the time when and to what county the execution is issued and when returned, and the return or substance thereof. When the execution is levied on personal property which is returned unsold, the entry shall be: "Levied (noting the date) on property not sold." When any sheriff shall furnish the clerk with a copy of any levy upon real estate on any judgment, the minutes of which are entered in his execution docket, the entry shall be: "Levied upon real estate," noting the date, and shall refer to the page upon the book of levies where the same is entered, as is hereinafter provided. When any execution issued to any other county

64                          GENERAL LAWS.

is returned, levied upon real estate in such county, the entry in the execution docket shall be: "Levied on real estate of————, in ———— county," noting the date, county, and defendant whose estate is levied upon, and when the money is made, or any part thereof, the amount and time when made shall be entered; also when a writ of error has been taken or the judgment is appealed, modified, discharged or in any manner satisfied, the facts in respect thereto shall be entered. The parties interested may also assign or discharge such judgment on such execution docket. When the judgment is fully satisfied in any way, the clerk shall write the word "satisfied," in large letters across the face of the entry of such judgment.

SEC. 315. The clerk shall prefix to the execution docket a full and correct alphabetical index, both direct and inverse, containing the names of all persons parties to judgments, plaintiffs and defendants, in separate columns.

SEC. 316. The auditor of each county shall keep in his office a well bound book, which shall be a public record, open to inspection at all reasonable hours, in which he shall enter all transcripts of judgments from the supreme or district courts presented to him for that purpose, and when a judgment is satisfied he shall write across the face in large letters the word "satisfied."

SEC. 317. The clerk shall also keep in his office a well bound book, to be called a book of levies, which shall be a public record and open during the usual business hours to all persons desirous of inspecting the same, in which he shall enter all levies upon real estate in his county, when delivered to him by the sheriff, as provided by law. An alphabetical index shall be prefixed to the book of levies, containing the names of all persons upon whose real estate such levies have been made, and when such levies are discharged in any manner, an entry thereof shall be made in the margin of the book of levies where the levy is recorded.

SEC. 318. When a judgment is recorded against one or more of several persons jointly indebted upon an obligation, by proceeding as provided in the sixty-ninth section act such defendants who were not originally served with the summons, and did not appear to the action, may be summoned to show cause why they should not be bound by the judgment, in the same manner as though they had been originally served with the summons.

SEC. 319. The summons, as provided in the last section, must describe the judgment, and require the person summoned to show cause why he should not be bound by it, and must be served in the same manner, and returnable within the same time, as the original summons. It is not necessary to file a new complaint.

SEC. 320. The summons must be accompanied by an affidavit of the plaintiff, his agent, representative, or attorney, that the judgment, or some part thereof, remains unsatisfied; and must specify the amount due thereon.

SEC. 321. Upon such summons, the defendant may answer within the time specified therein denying the judgment, or setting up any defense which may have arisen subsequently, or he may deny his liability on the obligation upon which the judgment was rendered, except a discharge from such liablity by the statute of limitations.

SEC. 322. If the defendant, in his answer, deny the judgment, or set up any defense which may have arisen subsequently, the summons, with the affidavit annexed, and the answer, constitute the written allegations in the case; if he deny his liability on the obligation upon which the judgment was recorded, a copy of the original complaint and judgment, the summons with the affidavit annexed, and the answer constitute such written allegations.

SEC. 323. The issue found [formed] may be tried as in other cases, but when the defendant denies in his answer any liability on the obligation upon which the judgment was rendered, if a verdict be found against him, it must be for not exceeding the amount remaining unsatisfied on such original judgment, with interest thereon.


# CHAPTER XXVIII.

### LIEN OF JUDGMENTS.

SEC. 324. Judgments shall bear the legal rate of interest from date thereof, except when rendered upon an express contract in writing wherein a different rate of interest is agreed upon by the parties, in which case the judgment shall, until paid and satisfied, bear the same rate of interest specified in such written contract.

SEC. 325. The real estate of any judgment debtor, and such as he may acquire, shall be held and bound to satisfy any judgment of the district or supreme court, or any judgment of a justice of the peace authorized by law to be levied upon real estate, for the period of five years from the day on which said judgment was rendered, said lien to commence as follows: On judgments of the district court of the district including the

county or counties in which real estate of the judgment debtor is situated, from the date of the rendition, but within twenty days from the date of such rendition, a transcript thereof certified by the clerk of the said district court, shall be filed and recorded in the county auditor's office of the county where the said lands are situated, and if not so filed within said period of twenty days, the lien of said judgment shall be suspended until the filing of said transcript. From and after said filing of transcript by the county auditor of any county in the Territory, such judgment shall be a lien upon all real estate of the judgment debtor in such county for the period of five years, commencing from the date on which said judgment was rendered. In all other judgments which are by law a lien upon real estate, the lien upon lands in any particular county commences and attaches from the date of filing the transcript in the county auditor's office of said county, and continues for the period of five years from the date of rendition of the judgment.

Sec. 326. Nothing in the foregoing section contained shall be so construed as to prevent the revival of a judgment and continuance of the lien thereof after the expiration of said period of five years, by agreement of the parties filed in writing in term or vacation, and entered upon the proper docket, or a revival of the same upon notice and motion for leave to issue execution as hereinafter prescribed. The certified transcript of such proceedings shall be filed with the county auditor as hereinbefore prescribed, within twenty days from the date of such revival, or the lien shall be suspended until so filed, and said revived judgment shall be and continue a lien on the real estate of the judgment debtor for the period of five years from the date of the revival: *Provided always*, That nothing herein contained shall affect the rights of third parties who may have acquired liens during the period which may have intervened between the expiration of the lien of the original judgment and the filing of the certified transcript of its revival: *And provided also*, That parties may continue said lien by proceedings had before the expiration of said period of five years; and provided further that no lien created by a mortgage or for the purchase price of any real or personal estate shall merge in any judgment, but the same shall be continued or remain in the judgment, whether a transcript thereof shall be filed as above provided or not, just the same as created by the original mortgage or claim.

Sec. 327. An appeal to the supreme court, writ of error, or stay of execution shall not affect any existing lien; and in all cases of an appeal or writ of error, the date of final judgment in the supreme court shall be the time from which said five years shall commence to run. Personal property shall only be held from the time it is actually levied upon.

## CHAPTER XXIX.

### OF EXECUTIONS.

SEC. 328. The party in whose favor judgment is given may at any time within five years thereafter issue a writ of execution for its enforcement, as prescribed by law: *Provided, however,* That if the period of five years shall have elapsed without an execution being issued on the judgment, an execution shall not issue thereafter, except as herein provided:

1. The judgment creditor, his assignee or the party to whom said judgment is due and payable, shall file a motion with the clerk of the court where judgment is entered for leave to issue an execution. The motion shall state the names of the parties to the judgment, the date of its entry and the amount claimed to be due thereon or the particular property of which the possession was thereby adjudged to such party remaining undelivered. The motion shall be subscribed and verified in like manner as a complaint in an action at law.

2. At any time after filing such motion the party may cause notice to be served on the judgment debtor in like manner and with like effect as in an action at law. In case such judgment debtor be dead the notice may be served upon his representatives by publication, as in case of a non-resident, or by personal service.

3. The notice shall be substantially the same as in an action at law, and it shall also state the amount claimed or the property sought to be recovered.

4. The judgment debtor, or in case of his death, his representatives, may file an answer to such motion within the time allowed by law to answer a complaint, alleging any defense to such motion which may exist. If no answer be filed within the time prescribed the motion shall be allowed of course. The moving party may demur or reply to the answer. The party opposed to the motion may demur to the same or to the reply. The pleadings shall be subscribed and verified and the proceedings conducted as in civil actions.

5. The word representatives in this section shall be deemed to include any or all of the persons in whose possession property of the judgment debtors may be, which is liable to be taken and sold or delivered in satisfaction of the execution.

68                              GENERAL LAWS.

6.  The order shall specify the amount for which execution
is to issue, or the particular property, possession of which is to
be delivered; it shall be entered in the journal and docketed as
a judgment, and a final record shall be made of the proceedings
in the same manner as a judgment.

Sec. 329.  Such leave shall not be given unless it be estab-
lished by oath of the party or other satisfactory proof that the
judgment, or some part thereof remains unsatisfied.  The order
of court granting such leave shall operate as a revival of the
judgment for amount found due at the time of such revival,
and the same shall be and continue a lien upon real estate of the
judgment debtor for the period of five years from and after the
date of such order, in like manner with the original judgment:
*Provided,* That a transcript thereof shall within twenty days
be filed in the office of the county auditor of the county where
the lands lie of such judgment debtor, or said lien shall be sus-
pended till such transcript be filed.  Revived judgments shall
be in all respects similar to original judgments, as to lien and
enforcement or collection.

Sec. 330.  When a judgment requires the payment of
money or the delivery of real or personal property, the same may
be enforced in those respects by execution, as provided in this act.
When it requires the performance of any other act, a certified
copy of the judgment may be served on the party against whom
it is given, or the person or officer who is required thereby or by
law to obey the same, and a writ shall be issued commanding
him to obey or enforce the same.  If he refuses he may be pun-
ished by the court as for a contempt.

Sec. 331.  There shall be four kinds of execution; one
against the property of the judgment debtor, another against
his person, the third for the delivery of the possession of real or
personal property, or such delivery with damages for withhold-
ing the same, and the fourth commanding the enforcement of
or obedience to any special order of the court.  And in all cases
there shall be an order to collect the costs.

Sec. 332.  The writ of execution shall be issued in the
name of the United States, sealed with the seal of the court,
and subscribed by the clerk, and shall be directed to the sheriff
of the county in which the property is situated, or coroner,
when the sheriff is a party, or interested, and shall intelligi-
bly refer to the judgment, stating the court, the district or
county where judgment was rendered, the names of the parties,
the amount of the judgment, if it be for money, and the amount
actually due thereon, and shall require the sheriff substantially
as follows:

1.  If it be against the property of the judgment debtor it
shall require the sheriff to satisfy the judgment, with interest,

out of the personal property of the debtor, and if sufficient personal property cannot be found, out of his real property, upon which the judgment is a lien.

2.    If it be against real or personal property in the hands of personal representatives, heirs, devisees, legatees, tenants of real property or trustees, it shall require the sheriff to satisfy the judgment, with interest, out of such property.

3.    If it be against the person of the judgment debtor it shall require the sheriff to arrest such debtor and commit him to the jail of the county until he shall pay the judgment, with interest, or be discharged according to law.

4.    If it be for the delivery of the possession of real or personal property, it shall require the sheriff to deliver the possession of the same, particularly describing it, to the party entitled thereto, and may at the same time require the sheriff to satisfy any charges, damages, or rents and profits recovered by the same judgment, out of the personal property of the party against whom it was rendered, and the value of the property for which the judgment was recovered, to be specified therein. If a delivery thereof cannot be had, and if sufficient personal property cannot be found, then out of his real property. When it is to enforce obedience to any special order it shall particularly command what is required to be done or to be omitted. When the nature of the case shall require it, the execution may embrace one or more of the requirements above mentioned. And in all cases the execution shall require the collection of all interest, costs, and increased costs thereon.

Sec. 333.    When the execution is against the property of the judgment debtor it may be issued to the sheriff of any county in this Territory, but it shall not be issued in the first instance to the sheriff of any county out of the district in which the judgment is rendered, unless the plaintiff or his attorney shall first make and file with the clerk an affidavit that the defendant has not subject to execution sufficient property, real or personal, in any county in said district to satisfy the judgment, but that he has property subject to execution in some other county or counties. But after an execution has been returned "no property found" in the district or county in which judgment was rendered, an execution may be issued to any county outside of said district, upon the plaintiff or his attorney making oath that the defendant has property subject to execution in such county. When it requires the delivery of real or personal property, it shall be issued to the sheriff of the county where the property, or some part thereof, is situated.

Sec. 334.    The sheriff shall indorse upon a writ or execution the time when he received the same, and such execution shall be returnable within sixty days after its date, to the clerk

70                              GENERAL LAWS.

who issued the same.  And no sheriff shall retain any moneys collected on execution, more than twenty days before paying the same to the clerk of the court who issues the writ, under penalty of twenty per cent. on the amount collected, to be paid by the sheriff; the one-half to the party to whom the judgment is payable, and the other half to the county commissioners of the county wherein the action was brought, for the use of the school fund of said county.  And the clerk shall immediately after the receipt of any moneys collected on any judgment, notify the party to whom the same is payable, and pay over the amount to the said party on demand.  On failure to so notify and pay over, (without reasonable cause shown for delay), the clerk shall forfeit and pay the same penalty to the same parties as is above prescribed for the sheriff.

SEC. 335.  If the action be one in which the defendant may be arrested, as provided by law, an execution against the person of the judgment debtor may be issued to any county in the Territory: *Provided*, That the sheriff shall not arrest the defendant, if he shall deliver to him property subject to levy, sufficient satisfy said judgment.

SEC. 336.  A person arrested on execution shall be imprisoned within the jail or the liberties thereof, and kept at his own expense until satisfaction of the execution or his legal discharge; but the plaintiff shall be liable to the sheriff, in the first instance, for such expense as in other cases of arrest in the same manner, and to the same extent as therein prescribed.

SEC. 337.  All property, real and personal, of the judgment debtor not exempt by law, shall be liable to execution.

SEC. 338.  In all cases in which a judgment has been recovered in any of the courts of this Territory, which shall have been assigned to any person, execution may issue in the name of the assignee upon the assignment being recorded in the execution docket by the clerk of the court in which the judgment is recovered, and the provisions of this section shall extend to all judgments heretofore recovered as well as to those hereafter to be recovered.


## CHAPTER XXX.

### OF STAY OF EXECUTION.

SEC. 339.  Stay of execution shall be allowed on judgments

rendered in the supreme court and district courts as follows:

In the supreme court:

1. On all sums under five hundred dollars, thirty days.

2. On all sums over five and under fifteen hundred dollars, sixty days.

3. On all sums over fifteen hundred dollars, ninety days.

On judgments rendered in the district court:

1. On all sums under three hundred dollars, two months.

2. On all sums over three hundred and under one thousand dollars, five months.

3. On all sums over one thousand dollars, six months.

SEC. 340. Before any execution shall be stayed under the provisions of this act, the defendant shall give bond to the opposite party in double the amount of the judgment and costs, with surety to the satisfaction of the clerk, conditioned to pay said judgment, interest, costs and increased costs, at the expiration of the period of said stay.

SEC. 341. If the judgment is not satisfied at any time after the expiration of the period for which execution has been stayed, the plaintiff, at any subsequent term of the court from which the execution issued, may upon motion, supported by an affidavit that such judgment or any part thereof is unpaid, and stating how much still remains due thereon, have judgment against the sureties upon said bond for the balance remaining due, and have an execution therefor, upon which no stay shall be allowed.

SEC. 342. The sureties upon a bond for stay of execution shall possess the same qualifications, and justify in the same manner as bail upon arrest in civil actions.

SEC. 343. When execution has not been stayed, and execution issues before the time has elapsed for which it might have been stayed as is herein provided, the defendant may have stay for the balance of time, upon giving the proper bond and surety, which bond and surety shall be approved by and justified before the sheriff.

SEC. 344. Bonds required by this act shall, when taken, be lodged with the clerk of the court where the judgment was rendered, and placed on file in his office.

# CHAPTER XXXI.

## EXEMPTION.

SEC. 345. All real and personal estate belonging to any

married woman at the time of her marriage, and all which she may have acquired subsequently to such marriage, or to which she shall hereafter become entitled in her own right, and all her personal earnings, and all the issues, rents and profits of such real estate, shall not be liable to attachment for or execution upon any liability or judgment against the husband, so long as she or any minor heir of her body shall be living: *Provided*, That her separate property shall be liable for debts owing by her at the time of her marriage.

SEC. 346. There shall be also exempt from execution and attachment to every householder being the head of a family, a homestead not exceeding in value the sum of one thousand dollars, while occupied as such by the owner thereof, or his or her family. Said homestead may consist of a house and lot or lots in any city, or of a farm consisting of any number of acres, so that the value of the same shall not exceed the aforesaid sum of one thousand dollars; but to entitle a person to the benefits of this act, he or she shall cause the word "homestead" to be entered of record in the margin of his recorded title to the same, and the date of such entry.

SEC. 347. When any person dies seized of a homestead leaving a widow, or husband, or minor children, the survivors shall be entitled to the homestead, but in case there be neither surviving husband, widow or children, the said homestead shall be liable for the debts of deceased.

SEC. 348. Nothing herein contained shall be construed to prevent the owner of a homestead from voluntarily mortgaging the same; but no mortgage shall be valid against the wife of any mortgagor who may be occupying said homestead with him, unless she shall freely and voluntarily, separate and apart from her husband, sign and acknowledge said mortgage, and the officer taking the acknowledgment shall fully apprise her of her rights and the effect of signing such mortgage.

SEC. 349. When any creditor shall be of opinion that any homestead claimed under the provisions of this act is of greater value than one thousand dollars, on filing an affidavit to that effect with the clerk of the district court, the judgment creditor may proceed against said homestead as in other cases of real estate, and if said homestead shall sell for over one thousand dollars and costs, the surplus shall be applied to the payment of the judgment of said creditor, and in all such cases the sum of one thousand dollars, free of charge or expense, shall be paid to the owner of the homestead; and in case the said homestead shall not sell for more than one thousand dollars and costs, the person instituting the proceeding shall pay all costs of such proceeding, and the said proceeding cease and not affect or impair the rights of the owner of the homestead.

GENERAL LAWS.                    73

Sec. 350. In case of the sale of said homestead, any subsequent homestead acquired by the proceeds thereof, shall also be exempt from attachment and execution, nor shall any judgment or other claim against the owner of such homestead be a lien against the same in the hands of a bona fide purchaser for a valuable consideration.

Sec. 351. The following property shall be exempt from execution or attachment, except as is hereinafter specially provided:

1.   All wearing apparel of every person and family.

2.   All private libraries, family pictures and keepsakes.

3.   To each householder, one bed and bedding, and one additional bed and bedding for every two members of the family, and other household goods and utensils and furniture, not exceeding one hundred and fifty dollars coin in value.

4.   To each householder, two cows with their calves, five swine, two stands of bees, twenty-five domestic fowls, and provisions and fuel for the comfortable maintenance of such householder and family for six months: *Provided*, That in case such householder shall not possess, or shall not desire to retain the animals named above, he may select from his property and retain other property not to exceed one hundred and fifty dollars coin in value.

5.   To a farmer, one span of horses with harness, or two yoke of oxen with yokes and chains, and one wagon; also farming utensils actually used about the farm not exceeding in value two hundred dollars in coin.

6.   To a mechanic, the tools and instruments used to carry on his trade for the support of himself and family; also material not exceeding in value five hundred dollars in coin.

7.   To a physician, his library not to exceed in value five hundred dollars in coin; also one horse and buggy, the instruments used in his practice, and medicines not exceeding in value two hundred dollars in coin.

8.   To attorneys, clergymen, and other professional men, their libraries not exceeding five hundred dollars in coin value; also office furniture, fuel and stationery not exceeding in value two hundred dollars in coin.

9.   All firearms kept for the use of any person or family.

10.   To any person, a canoe, skiff or small boat, with its oars, sails and rigging not exceeding in value fifty dollars in coin.

11.   To a person engaged in lightering for his support or that of his family, one or more lighters, barges or scows, and a small boat with oars, sails and rigging not exceeding in the aggregate two hundred and fifty dollars in coin value.

74                    GENERAL LAWS.

12. To a teamster and drayman engaged for his support and that of his family, his team. The word team in this subdivision means a span of horses, harness, and one wagon or dray.

13. To a person engaged in the business of logging, for his support and that of his family three yoke of work cattle, and their yokes; and axes, chains, implements for the business and camp equipments not exceeding three hundred dollars coin in value.

14. A sufficient quantity of hay, grain or feed to keep the animals mentioned in the several subdivisions of this section for six weeks. But no property shall be exempt from an execution issued upon a judgment for the price thereof, or any part or the price thereof, or for any tax levied thereon.

SEC. 352. This act shall not be so construed as to prevent any single man, or married man, his wife joining him in the waiver, from waiving, by agreement in writing, to any person or persons the benefit of this act: *Provided*, That any agreement of waiver made by a married man and his wife, shall be witnessed and acknowledged by them in the same manner required in case of a deed made by them conveying real estate. *Provided*, That nothing in this chapter shall be construed to exempt the property, real or personal, from attachment or execution of non-residents, or a person who has left or is about to leave the Territory for the purpose of defrauding his creditors.

SECTION 353. When a debtor claims personal estate as exempt by this act he shall deliver to the officer holding the execution or other process a list by separate items of all the personal estate owned or claimed by him including money bonds bills notes claims and demands with the residence of the person against whom the said bonds bills notes claims and demands are and shall verify such list by affidavit.. He shall also deliver to such officer a list by separate items of the property he claims as exempt. If the husband be absent or incapable of acting the claim may be made the list delivered and verified by the wife with the same effect as if made by the husband. If the creditor his agent or attorney demand an appraisement thereof two disinteresd householders of the neighborhood shall be chosen one by the debtor and the other by the creditor his agent or attorney and these two if they cannot agree shall select a third but if either party fail to choose an appraiser, or the two fail to select a third or if one or more of the appraisers fail to act the officer shall fill the vacancy. The appraisers shall forthwith proceed to make a list by separate items of the personal estate selected by the debtor as exempt which they shall decide as exempt stating the value of each item and annexing to the list their affidavit to the following effect "We solemnly swear that to the best of our judgment the above is a fair cash valuation of the property therein described" which affidavit shall be

signed by two appraisers at least and be certified by some person authorized to administer oaths. The list shall be delivered to the officer holding the execution or other process and be by him annexed to and made part of his return and the property therein specified shall be exempt from levy and sale and the other personal estate of the debtor shall remain subject thereto. In case no appraisement be required the officer shall return with the process the list of the property claimed as exempt by the debtor. The appraisers shall each be entitled to one dollar to be paid by the creditor if all the property claimed by the debtor shall be exempt otherwise to be paid by the debtor.

## CHAPTER XXXII.

### CLAIM TO PROPERTY LEVIED UPON AND ATTACHED.

Sec. 354. When any other person than the judgment debtor shall claim property levied upon or attached, he may have the right to demand and receive the same from the sheriff or other officer making the attachment or levy, upon his making an affidavit that the property is his, or that he has a right to the immediate possession thereof, stating on oath the value thereof and giving to the sheriff or officer a bond with sureties in double the value of such property, conditioned that he will appear at the next term of the district court in which the property was seized, which shall commence ten days or more after the bond is accepted by the sheriff or other officer, and make good his title to the same, or that he will return the property or pay its value to the said sheriff or other officer. If the sheriff or other officer require it, the sureties shall justify as in other cases, and in case they do not so justify when required, the sheriff or officer shall retain the property; if the sheriff or officer do not require the bail to justify he shall stand good for their sufficiency. He shall date and indorse his acceptance upon the bond.

Sec. 355. The officer shall return the affidavit, bond and justification, if any, to the office of the clerk of the district court, and the clerk shall place the same upon his trial docket at the first term, which shall commence ten days or more after it was accepted by the sheriff or officer as above provided for, and it shall stand for trial at that term.

Sec. 356. The person claiming the property shall be plaintiff, and the sheriff and plaintiff in the execution, defendants.

76                    GENERAL LAWS.

Sec. 357. If the claimant makes good his title to the property the bond shall be canceled; if to a portion thereof, a like proportion of the bond shall be canceled; but if he shall not maintain his title, judgment shall be rendered against him and his sureties for the value of the property, or for such less amount as shall not exceed the amount due on the original execution or attachment. Where the judgment is in favor of the sheriff for the entire property, the claimant shall pay the costs; where the claimant recovers all the property, judgment shall be given in favor of the claimant for costs; where the claimant recovers a portion of the property only, the costs shall be apportioned. When the plaintiff prevails, the costs may be taxed against the defendant who was plaintiff in the execution or attachment, or the court may, if it shall be of opinion that the sheriff attached or levied upon said property without the exercise of due caution, adjudge him to pay the costs or any portion thereof.

## CHAPTER XXXIII.

### SALES OF PROPERTY UNDER EXECUTION.

Sec. 358. When the writ of execution is against the property of the judgment debtor, it shall be executed by the sheriff as follows:

1. If property has been attached, he shall indorse on the execution, and pay to the clerk forthwith the amount, if any, of the proceeds of sales of perishable property or debts due the defendant received by him, sufficient to satisfy the judgment.

2. If the judgment is not then satisfied and property has been attached and remains in his custody he shall sell the same, or sufficient thereof to satisfy the judgment.

3. If then any portion of the judgment remains unsatisfied, or if no property has been attached or the same has been discharged, he shall levy on the property of the judgment debtor sufficient to satisfy the judgment.

4. Property shall be levied on in like manner and with like effect as similar property is attached.

5. Until a levy personal property shall not be affected by the execution. When property has been sold or debts received by the sheriff on execution he shall pay the proceeds thereof, or sufficient to satisfy the judgment, as commanded in the writ.

## GENERAL LAWS.                                77

5.   When property has been attached and it is probable that such property will not be sufficient to satisfy the judgment, the execution may be levied on other poperty of the judgment debtor without delay.  If after  satisfying the judgment any property, or the proceeds thereof, remain in the custody of the sheriff, he shall deliver the same to the judgment debtor.

Sec. 359.  In the  case  of  property in the possession of or owing from any garnishee, the sheriff  shall proceed as follows:

1.   If it appear from the  certificate of the garnishee that he is owing a debt to the  judgment debtor  which is then due, if such debt is not paid by such garnishee to the sheriff on demand, he shall levy on the  property of the garnishee of the amount thereof, in all respects as if the execution was against the property of the garnishee.  But if such debt be not then due, the sheriff shall sell the same according to the certificate as other property.

2.   If in like manner it appear that the judgment debtor has rights or shares in the stock of the  garnishee, the sheriff shall sell the same according to the certificate as other property.

3.   If in like manner it appear that the garnishee has other personal property of the judgment debtor in his possession, and the same has not been bailed to such garnishee for a period then unexpired, unless the same be delivered to the sheriff on demand, he shall levy upon the same wherever he may find it.  But if such property is in the possession of such garnishee upon a bailment then unexpired, the sheriff shall sell the same, or the interest of the judgment debtor therein according to the certificate as other property.

Sec. 360.  When a sheriff with an execution levies upon any of the personal property mentioned in subdivisions three of section one hundred and seventy-seven, and if the same is not delivered, paid or transferred to him at the time, he shall proceed thereafter in reference to such property as provided in the preceding section.  Such property may be delivered, paid or transferred to the sheriff at the time of the levy, or sufficient thereof to satisfy the execution, and the sheriff's receipt to the person, association or corporation, as the case may be, shall  be a sufficient discharge therefor.

Sec. 361.  When the sheriff shall levy upon personal property by virtue of an execution, he may permit the judgment debtor to retain the same, or any part thereof, in his possession until the day of sale, upon the defendant executing a written bond to the sheriff with sufficient surety, in double the value of such property, to the effect that it shall be delivered to the sheriff at the time and place of sale, and for non-delivery thereof, an action may be maintained upon such bond by the sheriff or the

78                         GENERAL LAWS.

plaintiff in the execution; but the sheriff shall not thereby be discharged from his liability to the plaintiff for such property.

Sec. 362. Before the sale of property on execution, notice thereof shall be given as follows :

1. In case of personal property, by posting written or printed notice of the time and place of sale in three public places of the county where the sale is to take place, not less than ten days successively.

2. In case of real property, by posting a similar notice, particularly describing the property, for four weeks successively in three public places of the county where the property is to be sold, and publishing a copy thereof once a week for the same period, in a newspaper of the county, if there be one, or if there be none, then in a newspaper published nearest to the place of sale.

Sec. 363. All sales of property upon execution shall be made by auction between nine o'clock in the morning and four o'clock in the evening. After sufficient property has been sold to satisfy the execution, no more shall be sold. Neither the officer holding the execution nor his deputy, shall become a purchaser or be interested in any purchase at such sale. When the sale is of personal property capable of manual delivery, and not in the possession of a third person, association or corporation, it shall be within view of those who attend the sale, and be sold in such parcels as are likely to bring the highest price; and when the sale is of real property and consisting of several known lots or parcels, they shall be sold separately or otherwise as is likely to bring the highest price, or when a portion of such real property is claimed by a third person, and he requires it to be sold separately, such portion shall be sold separately. Sales of real property shall be made at the court house door.

Sec. 364. If at the time appointed for the sale the sheriff should be prevented from attending at the place appointed, or being present should deem it for the advantage of all concerned to postpone the sale for want of purchasers, or other sufficient cause, he may postpone the sale not exceeding one week next after the day appointed, and so from time to time for the like cause, giving notice of every adjournment by public proclamation made at the same time. The sheriff for like causes may also adjourn the sale from time to time, not exceeding thirty days beyond the day at which the writ is made returnable, with the consent of the plaintiff endorsed upon the writ.

Sec. 365. When the purchaser of any personal property capable of manual delivery and not in the possession of a third person, association or corporation, shall pay the purchase money, the sheriff shall deliver to him the property, and if desired shall

give him a bill of sale containing an acknowledgement of the payment. In all other sales of personal property the sheriff shall give the purchaser a bill of sale with the like acknowledgement.

SEC. 366. The form and manner of sale of real estate by execution shall be as follows:

The sheriff shall proclaim aloud at the place of sale, in the hearing of all the bystanders: "I am about to sell the following tracts of real estate (here reading the description,) upon the following execution:" (here reading the execution.) He shall also state the amount which he is required to make upon the execution, which shall include damages, interests and costs up to the day of sale, and increased costs. He shall then offer the land for sale, the lots and parcels separately or together, as he shall deem most advantageous. All land except town lots shall be sold by the acre.

SEC. 367. When the land is sold by the acre and any less number of acres than the whole tract or parcel is sold, it shall be measured off to the purchaser in a square form, from the north-east corner of the tract or parcel, unless some person having an interest in the land shall at the sale, or prior thereto and before the bidding is made, request that the land sold shall be taken from some other part or in some other form; in such case, if such request is reasonable, the officer making the sale shall sell accordingly.

SEC. 368. When an entire tract or parcel of land is sold by the acre it shall not be measured but shall be deemed and taken to contain the number of acres named in the description, and be paid for accordingly; and when the number of acres is not contained in the description, the officer shall declare according to his judgment how many acres are contained therein, which shall be deemed and taken to be the true number of acres.

SEC. 369. The officer shall strike off the land to the highest bidder, who shall forthwith pay the money bid to the officer, who shall return the money with his execution and his doings thereon to the clerk of the court from which the execution issued, according to the order thereof: *Provided, however,* That when final judgment shall have been entered in the supreme court and the execution upon which sale has been made issued from said court, the proceedings on execution and return shall be docketed for confirmation in the district court in which the action was originally commenced, and like proceedings shall be had as though said execution had issued from the said district court.

SEC. 370. Upon the return of any sale of real estate as aforesaid, the clerk shall enter the cause on which the execution issued by its title in the docket of the term next after such

80                    GENERAL LAWS.

return, and mark opposite the same "sale of land for confirmation," and the following proceedings shall be had:

1.   The plaintiff shall be entitled, on motion therefor, to have an order confirming the sale at the term next tollowing the return of the execution, or if it be returned in term time, then at such term, unless the judgment debtor, or in case of his death, his representatives, shall file with the clefk ten days before such term, or if the writ be returned in term time, then five days after the return thereof, his objections thereto.

2.   If such objections be filed the court shall notwithstanding allow the order confirming the sale ,unless on the hearing of the motion it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting.   In the latter case the court shall disallow the motion and direct that the property be resold in whole or in part, as the case may be, as upon an execution received of that date.

3.   Upon the return of the execution, the sheriff shall pay the proceeds of the sale to the clerk, who shall then apply the same or so much thereof as may be necessary, in satisfaction of the judgment.   If an order of resale be afterwards made, and the property sell for a greater amount to any person other than the former purchaser, the clerk shall first repay to such purchaser the amount of his bid out of the proceeds of the latter sale.

4.   Upon a resale, the bid of the purchaser at the former sale shall be deemed to be renewed and continue in force, and no bid shall be taken except for a greater amount.   If the motion to confirm be not heard and decided at the term at which it is made, it may be continued and heard and determined before the judge, or at any term thereafter.   An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever.

5.   If after the satisfaction of the judgment, there be any proceeds of the sale remaining, the clerk shall pay such proceeds to the judgment debtor or his representative, as the case may be, at any time before the order is made upon the motion to confirm the sale, provided such party file with the clerk a waiver of all objections made or to be made to the proceedings concerning the sale; but if the sale be confirmed, such proceeds shall be paid to such party of course, otherwise they shall remain in the custody of the clerk until the sale of the property has been disposed of.

SEC. 371.   If the purchaser of real property sold on execution, or his successor in interest, be evicted therefrom in conse-

## GENERAL LAWS. 81

quence of the reversal of the judgment, he may recover the price paid with interest and the costs and disbursements of the suit by which he was evicted, from the plaintiff in the writ of execution.

SEC. 372. When property liable to an execution against several persons is sold thereon, and more than a due proportion of the judgment is levied upon the property of one of them, or one of them pays without a sale more than his proportion, he may compel contributions from the others; and when a judgment is against several, and is upon an obligation or contract of one of them as security for another, and the surety pays the amount or any part thereof either by sale of his property or before sale, he may compel repayment from the principal. In such case the person so paying or contributing shall be entitled to the benefit of the judgment to enforce contribution or repayment, if within thirty days after his payment he file with the clerk of the court where the judgment was rendered, notice of his payment and claim to contribution or repayment. Upon filing such notice, the clerk shall make an entry thereof in the margin of the docket where the judgment is entered.

SEC. 373. Upon a sale of real property when the estate is less than a leasehold of two years unexpired term, the sale shall be absolute. In all other cases, such property shall be subject to redemption, as hereinafter provided in this chapter. At the time of sale the sheriff shall give to the purchaser a certificate of the sale, containing:

1. A particular description of the property sold.

2. The price bid for each distinct lot or parcel.

3. The whole price paid.

4. When subject to redemption, it shall be so stated. The matters contained in such certificate shall be substantially stated in the sheriff's return of his proceedings upon the writ.

SEC. 374. Property sold subject to redemption, as provided in the last section, or any part thereof separately sold, may be redeemed by the following persons or their successors in interest:

1. The judgment debtor or his successor in interest, in the whole or any part of the property separately sold.

2. A creditor having a lien by judgment, decree or mortgage on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which the property was sold.

The persons mentioned in subdivision two of this section are termed redemptioners.

SEC. 375. The judgment debtor or redemptioner may redeem the property within six months from the date of the order

82                          GENERAL LAWS.

confirming the sale, by paying the amount of the purchse money, with interest at the rate of two per centum per month thereon from the time of sale, together with the amount of any taxes which the purchaser may have paid thereon, and if the purchaser be also a creditor having a lien prior to that of the redemptioner, the amount of such lien with interest.

SEC. 376. If the property be so redeemed by a redemptioner, either the judgment debtor or any other redemptioner may within sixty days from the last redemption, again redeem it on paying the sum paid on the last redemption, with interest at the rate of two per centum per month thereon from the date of the last preceding redemption in addition, together with the amount of any taxes which the last redemptioner may have paid thereon, and unless his lien be prior to that of such redemptioner, the amount of such lien with interest. The property may be again and as aften as a debtor or a redemptioner is disposed, redeemed from the last previous redemptioner, within sixty days from the date of the last redemption, on paying the sum paid on the last previous redemption, with interest at the rate of two per centum per month thereon from the date of such previous redemption, together with the amount of any taxes paid thereon by such last redemptioner, and the amount of any liens held by such last redemptioner, prior to his own, with interest. Notice of redemption shall be given to the sheriff.

SEC. 377. If no redemption be made within six months from the confirmation of the sale, the purchaser shall be entitled to a conveyance from the sheriff, or if so redeemed, whenever sixty days has elapsed, and no other redemption has been made, the time for redemption shall have expired and the last redemptioner shall be entitled to a conveyance from the sheriff. If the judgment debtor redeem at any time before the time for redemption expires, the effects of the sale shall be terminated and he shall be restored to his estate.

SEC. 378. The mode of redeeming shall be as provided in this section:

1. The person seeking to redeem shall give the purchaser or redemptioner, as the case may be, two days' notice of his intention to apply to the sheriff for that purpose. At the time and place specified in such notice, such person may redeem by paying to the sheriff the sum required. The sheriff shall give the person redeeming a certificate as in case of sale on execution adding therein the sum paid on redemption, from whom redeemed and the date thereof. A party seeking to redeem shall submit to the sheriff the evidence of his right thereto, as follows:

2. Proof that the notice required by this section has been given to the purchaser or redemptioner, or waived.

3. If he be a lien creditor, a copy of the docket of the judgment or decree under which he claims the right to redeem, certified by the clerk of the court where such judgment or decree is docketed, or if he seeks to redeem upon mortgage the certificate of the record thereof.

4. A copy of any assignment necessary to establish his claim, verified by the affidavit of himself or agent showing the amount then actually due on the judgment, decree or mortgage.

5. If the redemptioner or purchaser have a lien prior to that of the lien creditor seeking to redeem, such redemptioner or purchaser shall submit to the sheriff the like evidence thereof, and of the amount due thereon, or the same may be disregarded.

SEC. 379. When two or more persons apply to the sheriff to redeem at the same time, he shall allow the person having the prior lien to redeem first, and so on. The sheriff shall immediately pay the money over to the person from whom the property is redeemed, if he attend at the redemption, or if not, at any time thereafter when demanded. Where a sheriff shall wrongfully refuse to allow any person to redeem, his right thereto shall not be prejudiced thereby, and upon the submission of the evidence and the tender of the money to the sheriff as herein provided, he may be required by order of the court or judge thereof, to allow such redemption.

SEC. 380. Until the expiration of the time allowed for redemption, the court or judge thereof may restrain the commission of waste on the property by order granted, with or without notice, on the appllication of the purchaser or judgment creditor, but it shall not be deemed waste for the person in possession afterwards during the period allowed for redemption, to continue to use it in the same manner in which it was previously used, or to use it in the ordinary course of husbandry, or to make the necessary repairs to buildings thereon, or to use wood or timber on the property therefor, or for the repair of fences, or for fuel in his family while he occupies the property.

SEC. 381. The purchaser from the day of sale until a resale or a redemption, and the redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the same period.

SEC. 382. The party to whom such sheriff's deed is given shall upon the receipt thereof take the same to the clerk of the district court, who shall enter in his book of levies where the levy is recorded, the sale of real estate therein conveyed, and

84                    GENERAL LAWS.

shall endorse the fact upon the deed with the date when pre-
sented to him and when made. And no county auditor shall
record any such deed without such endorsement.

## CHAPTER XXXIV.

### PROCEEDINGS SUPPLEMENTARY TO EXECUTION.

SEC. 383. After the issuing of an execution against prop-
erty, and upon proof by affidavit of a party or otherwise, to the
satisfaction of the court or of a judge thereof, that any judg-
ment debtor has property which he unjustly refuses to apply
towards the satisfaction of the judgment, such court or judge
may by an order require the judgment debtor to appear at a
specified time and place before such judge, or a referee appointed
by him, to answer concerning the same; and such proceedings
may thereupon be had for the application of the property of the
judgment debtor toward the satisfaction of the judgment as are
provided upon the return of an execution. Instead of the order
requiring the attendance of the judgment debtor, the judge may,
upon affidavit of the judgment creditor, his agent or attorney,
if it appear to him that there is danger of the debtor abscond-
ing, order the sheriff to arrest the debtor and bring him before
such judge. Upon being brought before the judge, he may be
ordered to enter into a bond with sufficient surety, that he will
attend from time to time before the judge or referee, as shall be
directed during the pendency of proceedings and until the final
determination thereof, and will not in the meantime dispose of
any portion of his property, not exempt from execution. In
default of entering into such bond, he may be committed to
prison.

SEC. 384. After the issuing of an execution against prop-
erty, any person indebted to the judgment debtor may pay to
the sheriff the amount of his debt, or so much thereof as may
be necessary to satisfy the execution, and the sheriff's receipt
shall be a sufficient discharge for the amount so paid.

SEC. 385. After the issuing or return of an execution
against property of the judgment debtor, or of any one of sev-
eral debtors in the same judgment, and upon proof by affidavit
or otherwise, to the satisfaction of the judge, that any person or
corporation has property of such judgment debtor, or is indebted
to him in an amount exceeding fifty dollars, the judge may by
an order require such person or corporation, or any officer or

member thereof to appear at a specified time and place, before him or a referee appointed by him, and answer concerning the same.

SEC. 386. Witnesses may be required to appear and testify before the judge or referee upon any proceeding under this chapter, in the same manner as upon the trial of an issue.

SEC. 387. The judge or referee may order any property of the judgment debtor, not exempt from execution, in the hands of such debtor or any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within sixty days next preceding the order, shall not be so applied, when it shall be made to appear by the debtor's affidavit or otherwise, that such earnings are necessary for the use of a family supported wholly or partly by his labor.

SEC. 388. If it appear that a person or corporation alleged to have property of the judgment debtor, or indebted to him, claims an interest in the property adverse to him, or denies the debt, the court or judge may authorize, by an order to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt; and the court or judge may by an order forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge granting the same, or the court in which the action is brought, at any time upon such terms as may be just.

SEC. 389. If any person, party or witness disobey an order of the referee, properly made in the proceedings before him under this chapter, he may be punished by the court or judge ordering the reference for a contempt.

# CHAPTER XXXV.

## OF WITNESSES AND EVIDENCE.

SEC. 390. Every person of sound mind, suitable age and discretion, except as hereinafter provided, may be a witness in any action or proceeding.

SEC. 391. Any person offered as a witness shall not be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto, or otherwise, but such

86                          GENERAL LAWS.

interest may be shown to affect his credibility: *Provided, however*, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased or insane person, or as a gaurdian of a minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf.

SEC. 392. Any person offered as a witness shall not be excluded from giving evidence by reason of conviction for crime, but such conviction may be shown to effect his credibility: *Provided*, That any person who shall have been convicted of the crime of pejury, shall not be a competent witness in any case, unless such conviction shall have been reversed, or unless he shall have received a pardon.

SEC. 393. The following persons shall not be competent to testify:

1. Those who are of unsound mind, or intoxicated at the time of their production for examination, and

2. Children under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.

SEC. 394. The following persons shall not be examined as witnesses:

1. A husband shall not be examined for or against his wife, nor a wife for or against her husband; nor can either during marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.

2. An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

3. A clergyman or priest shall not, without the consent of the person making the confession, be examined as to any confession made to him in his professional character, in the course of discipline enjoined by the church to which he belongs.

4. A regular physician or surgeon shall not without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient.

5. A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure.

## CHAPTER XXXVI.

### MANNER OF COMPELLING THE ATTENDANCE OF WITNESSES.

SEC. 395.    No person shall be obliged to attend as a witness before any court of record, judge, justice of the peace, commissioner, referee or other officer, in any civil action out of the sub-district in which he resides, unless his residence be within twenty miles of such court, judge, justice of the peace, commissioner, referee or other officer.    And no person shall be compelled to attend as a witness in any civil action or proceeding, unless the fees be paid or tendered to him which are allowed by law for one day's attendance as a witness, and for traveling to and returning from the place where he is required to attend, provided such fees be demanded by him at the time of service of the subpœna.

SEC. 396.    The subpœna may require not only the personal attendance of the person to whom it is directed, at a particular time and place to testify as a witness, but may also require him to bring with him any books, documents or things under his control; but no public officer or person having the possession or control of public records or papers which by law are required to be kept in any particular office or place, shall be compelled to produce the same in any court.

SEC. 397.    The subpœna shall be issued as follows:

1.    To require attendance before a court of record, or at the trial of an issue therein, it shall be issued in the name of the United States, and be under the seal of the court before which the attendance is required, or in which the issue is pending.

2.    To require attendance out of such a court before a judge, justice of the peace, commissioner, referee or other officer authorized to administer oaths or to take testimony in any matter under the laws of this Territory, it shall be issued by such judge, justice of the peace, commissioner, referee or other officer before whom the attendance is required.

3.    To require attendance before a commissioner appointed to take testimony by a court of any other State, Territory or county, it may be issued by any judge or justice of the peace, in places within their respective jurisdictions.

SEC. 398.    Such subpœna may be served by any suitable person over eighteen years of age, by exhibiting and reading it

88          GENERAL LAWS.

to the witness, or by giving him a copy thereof, or by leaving such copy at the place of his abode. When service is made by any other person than an officer authorized to serve process, proof of service shall be made by affidavit.

SEC. 399. A person present in court or before a judicial officer, may be required to testify in the same manner as if he were in attendance upon a subpœna issued by such court or officer.

SEC. 400. If any person duly served with a subpœna and obliged to attend as a witness, shall fail to do so, without any reasonable excuse, he shall be liable to the aggrieved party for all damages occasioned by such failure, to be recovered in a civil action.

SEC. 401. Such failure to attend as required by the subpœna, shall also be considered a contempt, and upon due proof the witness may be punished by a fine not exceeding fifty dollars, and stand committed until said fine and costs are paid or until discharged by due course of law.

SEC. 402. The court, judge, justice of the peace or other officer, in such case, may issue an attachment to bring such witness before them to answer for contempt, and also testify as witness in the cause in which he was subpœnaed.

SEC. 403. If the witness be a prisoner confined in a jail or prison within this Territory, an order for his examination in prison, upon deposition, or for his temporary removal and production before a court or officer, for the purpose of being orally examined, may be issued.

SEC. 404. Such order can only be made upon affidavit, showing the nature of the action or proceeding, the testimony expected from the witness, and its materiality.


CHAPTER XXVII.

EXAMINATION OF PARTIES.

SEC. 405. A party to an action or proceeding may be examined as a witness, at the instance of the adverse party, or of one of several adverse parties, and for that purpose may be compelled in the same manner, and subject to the same rules of examination as any other witness to testify at the trial, or he may be examined on a commission.

SEC. 406. Instead of the examination being had at the trial, as provided by the last section, the plaintiff, at the time of filing his complaint or afterwards, and the defendant, at the time of filing his answer or afterwards, may file in the clerk's office, interrogatories for the discovery of facts and documents material to the support or defense of the action, to be answered on oath by the adverse party.

SEC. 407. Such interrogatories shall be answered, and such answers filed in the clerk's office within twenty days after the same are served on the party interrogated, unless for cause shown a further time be allowed by the court or judge thereof.

SEC. 408. A party to an action having filed interrogatories to be answered by the adverse party, as prescribed by the last two sections, shall not thereby be precluded from examining such adverse party as a witness at the trial.

SEC. 409. The testimony of a party, either upon examination at the trial, or upon interrogatories filed, may be rebutted by adverse testimony.

SEC. 410. If a party refuse to attend and testify at the trial, or to be examined upon a commission, or to answer any interrogatories filed, his complaint, answer, or reply may be stricken out, and judgment taken against him, and he may also, in the discretion of the court, be proceeded against as in other cases for a contempt: *Provided*, That the preceding sections shall not be construed so as to compel any person to answer any question where such answer may tend to criminate himself.

## CHAPTER XXXVIII.

### DEPOSITIONS.

SEC. 411. The testimony of a witness may be taken by deposition, to be read in evidence in an action, suit, or proceeding commenced and pending in any court in this Territory in the following cases:

1. When the witness resides out of the sub-district and more than twenty miles from the place of trial.

2. When the witness is about to leave the sub-district, and go more than twenty miles from the place of trial, and there is a probability that he will continue absent when the testimony is required.

90                        GENERAL LAWS.

3.   When the witness is sick. infirm or aged, as to make it probable that he will not be able to attend at the trial.

4.   When the witness resides out of the Territory.

SECTION 412.   Either party may commence taking testimony by depositions at any time after service upon the defendants.

SEC. 413.   Either party may have the deposition of a witness taken in this Territory, before any judge of the district court, justice of the peace, clerk of the supreme or district court, mayor of a city, or notary public, on serving on the adverse party or his attorney previous notice of the time and place of examination. Such notice shall be at least three days, and in addition one day, Sundays excepted, for every ten miles of the distance of the place of examination from the residence of the person to whom notice is given.

SECTION 414.   Depositions may be taken out of the Territory by a judge justice or chancellor or clerk of any court of record a justice of the peace notary public mayor or chief magistrate of any city or town or any person authorized by a special commission from any court of this Territory.

SECTION 415.   Any court of record of this Territory or any judge thereof is authorized to grant a commission to take depositions within or without this Territory. The commission must be issued to a person or persons therein named by the clerk under the seal of the court granting the same and depositions under it must be taken upon written interrogatories unless the parties otherwise agree.

SECTION 416.   Prior to the taking of any deposition unless taken under a special commission a written or printed notice specifying the action or proceeding, the name of the court or tribunal in which it is to be used and the time and place of taking the same shall be served upon the adverse party his agent or attorney of record or left at his usual place of abode. The notice shall be served so as to allow the adverse party sufficient time by the usual route of travel to attend and one day for preparation exclusive of Sundays and the day of service and the examination may if so stated in the notice be adjourned from day to day.

SECTION 417.   When the party against whom the deposition is to be read is absent from or a non resident of the Territory and has no agent or attorney of record therein he may be notified of the taking of the deposition by publication. The publication must be made three consecutive weeks in some newspaper printed in the county where the action or proceeding is pending if there be any printed in such county, and if not in some newspaper printed in this Territory of general circu-

lation in that county. The publication must contain all that is required in the written or printed notice and may be proved in the manner prescribed in case of the publication of summons.

SEC. 418. The deposition shall be written by the officer taking the same, or by the witness, or by some disinterested person in the presence and under the direction of such officer. When completed it shall be carefully read to or by the witness, corrected if desired, and subscribed by him and certified by the officer substantially as follows:

TERRITORY OF WASHINGTON, ⎰ ss.
    County of ——— ⎱

I, A. B., justice of the peace in and for said county, (or judge, clerk, etc., as the case may be,) do hereby certify that the above deposition was taken before me, and reduced to writing by myself (or witness, as the case may be,) at——in said county, on the ——day of ——, 18 —, at —— o'clock, in pursuance of notice hereto annexed, that the above named witness, before examination was sworn (or affirmed) to testify the truth, the whole truth and nothing but the truth, and that the said deposition was carefully read to (or by) said witness, and then subscribed by him.

A. B. (Justice of the Peace.)

Dated at——, the —— day of —— 18—.

SEC. 419. The deposition shall be enclosed in a sealed envelope by the officer taking the same, and directed to the clerk of the court, arbitrators, referee or justice of the peace before whom the action is pending, or to such person as the parties in writing may agree upon, and either delivered to the clerk of the court or other person, or transmitted through the mail or by some private opportunity.

SEC. 420. Such deposition may be used by either party upon the trial or other proceeding against any party giving or receiving the notice, subject to all legal exceptions, to the competency or credibility of the witness, or the manner of taking the deposition. But if the parties attend at the examination, no objection to the form of an interrogatory shall be made at the trial, unless the same was taken at the time of the examination. It shall be the duty of the person taking the deposition to propound to the witness every question proposed by either party, and to note all objections to the form of any interrogatory, and when any interrogatory is objected to on account of form, unless the form is amended and the objection waived, he shall write after the question and before the answer the words "objected to," and when any witness declines to answer a question on the ground that it will tend to criminate himself, that fact shall also

32                              GENERAL LAWS.

be noted after the question if written down.    The deposition may be taken in the form of a narrative or by question and answer, or partly in either form, as either party present at the examination shall require.    When taken by question and answer the officer shall first write down the question and then the answer, as nearly as may be in the language of the witness; but when the deposition is read to the witness previous to signing it, he shall be permitted to amend his answer to any question or any part of his deposition; such amendment however, unless both parties shall otherwise agree, shall not be made by way of interlining or erasing, but shall be added at the end of the deposition under the title "amendment by the witness," and such amendment shall intelligibly refer to the part so amended.

SEC. 421.    No deposition shall be used if it appear that the reason for taking it no longer exists: *Provided, however,* That if the party producing the deposition in such case shall show any sufficient cause then existing for using such deposition it may be admitted.

SEC. 422.    When the plaintiff in any action shall discontinue it, or when it shall be dismissed for any cause and another action shall afterwards be commenced for the same cause between the same parties, or their respective representatives, all depositions lawfully taken in the first action may be used in the other in the same manner and subject to the same conditions and objections as if originally taken for such other action: *Provided,* That the deposition shall have been duly filed in the court where the first action was pending, and shall have remained in the custody of the court, from the termination of the first action until the commencement of the other.

SEC. 423.    When any action shall have been appealed from one court to another, all depositions lawfully taken to be used in the court below, may be used in the appellate court in the same manner and subject to such exceptions for informality or irregularity, and none other, as were taken in writing to such depositions in the court below.

SEC. 424.    Any witness may be subpœned and compelled by any officer authorized to take depositions, to appear and give his deposition at any place within twenty miles of the abode of such witness, in like manner and under the same penalties as he may be subpœnaed and compelled to attend as a witness in any court.

## CHAPTER XIX.

### PROCEEDINGS TO PERPETUATE TESTIMONY.

SEC. 425. When any person shall be desirous to perpetuate the testimony of any witness, he shall make a statement in writing, setting forth briefly and substantially his title, claim or interest in, or to the subject concerning which he desires to perpetuate the evidence, and the names of all the persons interested or supposed to be interested therein, and also the name of the witness proposed to be examined, which statement shall be under oath and filed in the district court. If the subject of the proposed deposition relate to real estate within this Territory, the statement shall be filed in the county where the lands, or any part thereof lie, otherwise in the county where the parties interested, or some of them, reside. Upon such statement an application may be made to such court or judge thereof, to allow the examination of such witness.

SEC. 426. The court or judge shall appoint a time and place for hearing such application and shall order notice thereof and of the statement to be served on all persons mentioned therein as adversely interested in the matter. The notice shall be served personally on all those living in the Territory at least twenty days before the time of hearing the application. Upon those who are not residents of the Territory it shall be rerved by publication or otherwise, in the same manner as a notice is served upon a non-resident.

SEC. 427. If upon hearing of the parties or of the applicant alone, should no adverse party appear, the court or judge shall be satisfied that there is sufficient cause for taking the deposition, an order shall be made allowing the examination of the witness; and such court or judge may direct a commission to issue therefor, in like manner as a commission to take the testimony of witnesses as in other cases.

SEC. 428. The deposition of such witness, whether residing in this Territory or not, shall be taken upon written interrogatories filed by the applicant, and cross interrogatories filed by any party adversely interested, if he shall think fit, and it shall be taken and returned substantially in the same manner as if taken upon commission, to be used in any cause pending in the same court.

SEC. 429. The deposition when returned shall be filed in

## GENERAL LAWS.

the office of the clerk of the court by whom the commission was issued, and if a trial be had between the person at whose request the deposition was taken, and the person named in the statement, or any of them, or their successors in interest, upon proof of the death or insanity of the witness, or his inability to attend the trial by reason of age, sickness, or settled infirmity, the deposition, or a certified copy thereof, may be used by either party, subject to all legal objections. But if the parties attend at the examination, no objections to the form of the interrogatory shall be made at the trial, unless the same were taken at the time of examination.

## CHAPTER XL.

### RECORDS, DOCUMENTS, BOOKS, ETC.

SEC. 430. Any court in which an action is pending, or a judge thereof, may upon notice order either party to give to the other within a specified time, an inspection and copy, or permission to take a copy of any book, document or paper in his possession or under his control, containing evidence relating to the merits of the action or defense therein. If compliance with the order be refused, the court may exclude the book, document or paper from being given in evidence, or if wanted as evidence by the party applying, may direct the jury to presume it to be such as he alleges it to be, and the court may also punish the party refusing as for contempt. This section shall not be construed to prevent a party from compelling another to produce books, papers or documents where he is examined as a witness.

SEC. 431. If either party at any time before trial allow the other an inspection of any writing material to the action, whether mentioned in the pleadings or not, and deliver to him a copy thereof, with notice that he intends to read the same in evidence on the trial of the cause, it may be so read without proof of its genuineness or execution, unless denied by affidavit before the commencement of the trial. If such denial be made of any writing not mentioned in the pleadings, the court may give time to either party to procure evidence, when necessary for the furtherance of justice.

SEC. 432. The records and proceedings of any court of the United States, or any State or Territory, shall be admissible in evidence in all cases in this Territory, when authenticated by the attestation of the clerk, prothonotary or other officer having

charge of the records of such court, with the seal of such court annexed.

Sec. 433.   Whenever any deed, conveyance, bond, mortgage or other writing shall have been recorded or filed in pursuance of law, copies of record of such deed, conveyance, bond other writing, duly certified by the officer having the lawful custody thereof, with the seal of the office annexed, if there be such seal, if there be no such seal, then with the official certificate of such officer, shall be received in evidence to all intents and purposes as the originals themselves.

"Sec. 434.   Copies of all papers on file in the office of the surveyor general of Oregon and Washington, register and receivers of the various land offices in this Territory, secretary of Washington Territory, Territorial treasurer, Territorial auditor, Territorial superintendent of common schools and county treasurer, or any matter recorded in either of said offices duly certified by the respective officers with the respective seals of office annexed, where such officers have an official seal, shall be admitted [in] evidence in all the courts of the Territory."

" Sec. 435.   Any certificate of residence and cultivation of the public lands issued by the surveyor general of Oregon or Washington Territory, or by the register and receiver of either of the land offices therein, or any certificate, receipt or exemplification of the records of either of said offices issued to any settler upon, or purchaser of said lands, or in any way affecting the rights of parties to lands in said Territory issued or given in pursuance of law, or as evidence of any matter recorded in either of said offices, or any copies of maps, plats or diagrams of land claims of every nature or kind or plats of the public surveys, certified by either of said officers, shall be admitted as evidence in all the courts of this Territory."

Sec. 436.   A seal of court or public office, when required to any writ, process, or proceeding to authenticate a copy of any record or document, may be affixed by making an impression directly on the paper which shall be as valid as if made upon a wafer or on wax.

Sec. 437.   Printed copies of the statute laws of any State, Territory, or foreign government, if purporting to have been published under the authority of the respective government, or if commonly admitted and read as evidence in their courts, shall be admitted in all courts in this Territory, and on all other occasions as presumptive evidence of such laws.

96                                GENERAL LAWS.


## CHAPTER XLI. (41.)

### TO REVERSE, VACATE, OR MODIFY JUDGMENTS IN THE COURTS IN WHICH RENDERED.

SEC. 438. The district court in which a judgment has been rendered, or by which, or the judge of which, a final order has been made, shall have power after the term at which such judgment or order was made, to vacate or modify such judgment or order:

1. By granting a new trial for the cause within the time and in the manner, and for any of the causes prescribed by the sections relating to new trials.

2. By a new trial granted in proceedings against defendant served by publication only as prescribed in section sixty-eight chapter IV. of this act.

3. For mistakes, neglect or omission of the clerk, or irregularity in obtaining a judgment or order;

4. For fraud practiced by the successful party in obtaining the judgment or order.

5. For erroneous proceedings against a minor person of unsound mind, when the condition of such defendant does not appear in the record, nor the errors in the proceedings.

6. For the death of one of the parties before the judgment in the action.

7. For unavoidable casualty, or misfortune preventing the party from prosecuting or defending;

8. For error in a judgment shown by a minor within twelve months after arriving at full age.

SEC. 439. When the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict, report of referee, or decision was rendered or made, the application may be made by petition filed as in other cases, not later than the second term after the discovery, on which notice shall be served and returned, and the defendan theld to appear as in an original action. The facts stated in the petition shall be considered as denied without answer. The case shall be tried as other cases by ordinary proceedings but no motion shall be filed more than one year after the final judgment was rendered.

## GENERAL LAWS.                    97

SEC. 440.   The proceedings to correct mistakes or omissions of the clerk or irregularity in obtaining a judgment or order, shall be by motion served on the adverse party, or on his attorney in the action, and within one year; and when made to vacate a judgment because of irregularity in obtaining it, must be made on the second day of the succeeding term.

SEC. 441.   The proceedings to obtain the benefit of subdivisions four, five, six, seven and eight of section one of this chapter, shall be by petition, verified by affidavit, setting forth the judgment or order.   The facts or errors constituting a cause to vacate or modify it, and the facts constituting a defence to the action if the party applying was a defendant, and such proceedings must be commenced within one year after the judgment or order was made, unless the party entitled thereto be a minor or person of unsound mind, and then within one year from the removal of such disability.

SEC. 442.   In such proceedings the party shall be brought into court in the same way, on the same notice as to time, mode of service, and mode of return, and the pleadings shall be governed by the principles, and issues be made up by the same form, and all the proceedings conducted in the same way, as near as can be, as in original action by ordinary proceedings, except that defendant shall introduce no new cause, and the cause of the petition shall alone be tried.

SEC. 443.   The judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defence to the action in which the judgment is rendered; or, if the plaintiff seeks its vacation, that there is a valid cause of action; and when judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment.

SEC. 444.   The court may first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action.

SEC. 445.   The party seeking to vacate or modify a judgment or order, may obtain an injunction suspending proceedings on the whole or part thereof, which injunction may be granted by the court or the judge upon its being rendered probable, by affidavit or petition sworn to, or by exhibition of the record, that the party is entitled to have such judgment or order vacated or modified.

SEC. 446.   In all cases of affirmance of the judgment or order, when the proceedings have been suspended, judgment shall be rendered against the plaintiff in error for the amount of the former judgment, interest and costs, together with damages at the discretion of the court, not exceeding ten per cent. on the amount of the judgment.

13

98                              GENERAL LAWS.

SEC. 447. The supreme court has appellate jurisdiction over all judgments and decisions of all other courts of record, as well in case of civil actions as in proceedings of a special or independent character. For the exercise of such appellate jurisdiction, section nine of the Organic Act of the Territory, providing for the allowance of writs of error, bills of exception and appeals, and for the exercise of chancery as well as common law jurisdiction, it is hereby provided that in all actions at law, as the same are known and recognized, the proceedings shall be by writ of error. In all such cases the supreme court shall hear and determine the cause upon the errors assigned in the notice of the plaintiff in error, and the party suing out such writ of error shall be called the plaintiff in error, and the adverse party shall be called the defendant in error. In all actions of an equitable character or where equitable relief is sought, or where chancery jurisdiction shall have been exercised by the district court or judge thereof, the proceeding shall be by appeal. In all such equitable causes, the party taking or prosecuting the appeal shall be known as the appellant; the adverse party the appellee. When both parties appeal the cause shall be docketed as it was in the court below. In suits of error and appeals, subject always to the distinction herein recognized, the practice shall be as hereinafter prescribed.

SEC. 448. An appeal or writ of error may also be taken to the supreme court from the following orders:

1. An order made affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment from which an appeal might be taken.

2. A final order made in special proceedings affecting a substantial right therein, or made on a summary application in an action after judgment.

3. When an order grants or refuses, continues, or modifies a provisional remedy; or grants, refuses, dissolves, or refuses to dissolve an injunction or attachment; when it grants or refuses a new trial, or when it sustains or overrules a demurrer.

4. An intermediate order involving the merits and materially affecting the final decision.

5. An order or judgment on habeas corpus. If any of the above orders are made by a judge, the same is recorded in the same way as if made by a court.

SEC. 449. The court may also, in its discretion, prescribe rules for allowing appeals or writs of error on such other intermediate orders or decissions as is deemed expedient, and for permitting the same to be taken and tried during the progress of the trial in the court below; but such intermediate appeals or writs must not retard proceedings in the court from which the appeal is taken.

## GENERAL LAWS.                                    99

Sec. 450.    A mistake of the clerk shall not be ground for an appeal or writ of error until the same has been presented an acted upon by the court below.

Sec. 451.    A judgment or order shall not be reserved for an error which can be corrected on motion in an inferior court until such motion has been made then [there] and overruled.

Sec. 452.    The supreme court may review and reverse on appeal or writ of error any judgment or order of the district or circuit court, although no motion for a new trial was made in such courts.

Sec. 453.    When a cause is tried by the court, it shall not be necessary in order to secure a review of the same in the supreme court, that there should have been any finding of facts or conclusions of law stated in the record, but the supreme court shall hear and determine the same whenever it shall appear from a certificate of the judge, agreement of parties or their attorneys, or, in case the evidence consists wholly of written testimony, from the certificate of the clerk, that the transcript contains all the evidence introduced by the parties on the trial in the court below.

Sec. 454.    The court may issue all writs and process necessary for the exercise and enforcement of its appellate jurisdiction.

Sec. 455.    Appeals and writs of error from the district court may be taken to the supreme court at any time within six months from the rendition of the judgment or order appealed from or complained of, and not afterward.  But nothing herein contained shall prevent the district judge who tried the cause to make certificate that the cause involves the determination of a question of law upon which it is desirable to have the opinion of the supreme court.  In such cases said judge may direct a special verdict to be found, and in all cases the parties may make an agreed statement of facts, signed by themselves or their attorneys, which shall be entered of record which shall have the effect of a special verdict, and may under the direction of the judge of the district court, be taken to the supreme court, and for that purpose the district court shall render a judgment in form only, which shall not be executed until the final decision of the cause.  The supreme court, on hearing such cases, may give judgment or remand the cause for further proceedings in the district court.

Sec. 456.    A part of several co-parties may appeal or prosecute a writ of error; but in such case they must serve notice thereof upon all the other co-parties and file the proof thereof with the clerk of the supreme court.

Sec. 457.    If the other co-parties refuse to join, they cannot

**100**                    GENERAL LAWS.

nor can any of them, take an appeal or writ of error afterwards; nor shall they derive any benefit from the appeal, or suit in error unless from the necessity of the case.

SEC. 458. Unless they appear and decline to join, they shall be deemed to have joined and shall be liable for their due proportion of costs.

SEC. 459. An appeal or writ of error from cast [part] of an order or from one of the judgments of a final adjudication, or from part of a judgment, shall not disturb or delay the rights of any party to any judgment or part of any judgment, or order not appealed from, but the same shall proceed as if no such appeal had been made.

SEC. 460. An appeal or writ of error is taken, by the service of a notice in writing on the adverse party, his agent, or any attorney who appeared for him in the court below, and also upon the clerk of the court wherein the proceedinngs were had. stating the appeal from the same, or from some specific part thereof, defining such part, where appeal is resorted to. In suits in error, said notice shall contain a particular description of the judgment or order or decision by which the plaintiff in error claims he has been aggrieved, together with a particular description of the errors assigned.

SEC. 461. An appeal shall not be perfected until the notice thereof has been served upon both the party and the clerk, and the clerk paid or secured his fees for a transcript; whereupon the clerk shall forthwith transmit by mail, express or messenger,. not a party nor the attorney of a party, a transcript of the record in the cause, or so much thereof as the appellant or plaintiff in error, in writing in the notice has directed, to which shall be appended copies of the notices of appeal, or suit in error, and of the supersedeas bond if any.

SEC. 462. The notice of appeal or suit in error must be served at least thirty days, and the cause filed and docketed at least fifteen days before the first day of the next term of the supreme court, or the same shall not then be tried unless by consent of parties. If the appeal or writ of error is taken less than thirty days before the term, it must be so filed and docketed, before the next succeeding term.

SEC. 463. If the appellant fails to file a transcript and have the cause docketed as provided in the preceding section, or fails to file at the time the transcript should be filed, the certificate of the clerk of the inferior court, stating when he was served with notice, and that he has not had sufficient time to prepare the transcript, the appellee or defendant in error may file a certified copy of the judgment or order appealed from, and of the notice served on such clerk, and, on motion, have the appeal or suit in

error dismissed, or the judgment or order appealed from affirmed.

SEC. 464. If the transcript has been sent up, but the appellant or plaintiff in error does not file the same when the same should be filed as herein provided, the appellee or defendant in error may file the same, and may, on motion, have the appeal dismissed or judgment affirmed, as the court from the circumstances of the case shall determine.

SEC. 465. If the transcript has been sent up, and errors have not been assigned in the notice as hereinbefore required, the appellee or defendant in error may have the appeal or writ of error dismissed or the judgment or order affirmed, unless good cause for the failure be shown by affidavit.

SEC. 466. In an action by ordinary proceedings, and in an action by equitable proceedings, tried in whole or in part on oral testimony, all proper entries made by the clerk, and all papers pertaining to the cause and filed therein, except subpœnas, depositions, and other papers which are used as mere evidence, are to be deemed part of the record. But in an action by equitable proceedings, tried upon written testimony, the depositions and all papers which were used as evidence, are to be certified up to the supreme court, and shall be so certified, not by transcript, but in the original form. But a transcript of a motion, affidavit or other paper, when it relates to a collateral matter, shall not be certified unless by direction of the appellant. If so certified when not material to the determination of the appeal or writ of error, the court may direct the person blameable therefor to pay the costs thereof.

SEC. 467. The appellant or plaintiff in error shall file a perfect transcript, and to that end the clerk of the court below must, at any time on his suggestion of the diminution of the record and on the payment of fees, certify upon any omitted part of the record, according to the truth, as the same appears in his office of record; and such applicant shall not be entitled to any continuance in order to correct the record, unless it shall clearly appear to the court that he is not in fault. Subject to which requirement, either party may, on motion before trial day, obtain an order on the clerk below, commanding him to transmit at once to the supreme court a true copy of such imperfect or omitted part of the record as shall be in general terms described in the affidavit or order. Such motion must be supported by affidavit, unless the diminution be apparent or admitted by the adverse party, and must not be granted unless the court is satisfied that it is not made for delay.

SEC. 468. An appeal or writ of error shall not be dismissed for any informality or defect in the notice or the service thereof, if from the transcript it can be reasonably understood that

102                    GENERAL LAWS.

the adverse party has had sufficient notice of the pendency of the suit in error or appeal, and the notice recites the errors alleged or the order or judgment complained of with such certainty, that his substantial right would not be prejudiced by the hearing of the cause. And the supreme court shall, upon reasonable terms, allow all amendments in matters of form, curative of such defects, to the end that substantial justice be secured to the parties.

Sec. 469. An appeal or writ of error shall not stay proceedings on the judgment or order or any part thereof, unless the appellant shall cause to be executed before the clerk of the court which rendered the judgment or order, by one or more sufficient sureties to be approved by such clerk, a bond to the effect that the appellant or plaintiff in error shall pay to the appellee or defendant in error all costs and damages that shall be adjudged against the appellant on the appeal; also that he will satisfy and perform the judgment or order appealed from, in case it shall be affirmed, and any judgment or order which the supreme court may render, or order to be rendered by the inferior court, not exceeding in amount or value the original judgment or order, and all rents or damages to property during the pendency of the appeal, out of the possession of which the appellee is kept by reason of the appeal. If the bond is intended to stay proceedings on only a part of the judgment or order, it shall be varied so as to secure the part stayed, alone. When such bond has been approved by the clerk, and filed, he shall issue a written order commanding the appellee and all others to stay proceedings on such judgment or order, or on such part as is superseded as the case may be. No appeal or stay shall vacate or affect the judgment appealed from.

Sec. 470. In cases wherein the appellant or plaintiff in error has perfected his appeal or writ of error to the supreme court, and the clerk of the district or circuit court has unjustly refused to approve the appeal bond offered, or makes the penalty therein too large, or the conditions thereof unjust, the appellant may move the supreme court if in session, or in its vacation, on such written notice to the appellee as the judge may prescribe, may move any judge thereof to determine the conditions, fix the penalty, and approve the appeal bond. The motion, verified by the affidavit of the appellant or plaintiff in error or his attorney, shall contain a brief statement of the nature of the action in which the appeal or writ of error was taken, of the judgment or order appealed from, of the steps taken by the appellant or plaintiff in error with reference to his appeal, and of his giving, or offering to give, an appeal bond, of the action of the clerk of the court below with reference to such bond, and wherein he has acted wrongfully; and if the supreme court, or any judge thereof, considers that the clerk has made unjust conditions in the bond,

## GENERAL LAWS.                    103

or the penalty thereof too high, or has wrongfully refused to approve the same, such court or judge shall issue an order prescribing the conditions of the appeal bond, fixing the penalty thereof and either approve it or direct the clerk of the supreme court so to do, which bond shall be filed with the officer last named. The supreme court or judge thereof, may order that all or any part of the papers and records in the cause appealed, or certified copies thereof, be produced on the hearing of such motion, and pending the disposition thereof may make an order staying the enforcement of the judgment or order appealed from, and on such terms as are just. The order, if made by the judge, shall be in writing and signed by him, and upon the service thereof, or of a certified copy, when made in court, upon the clerk of the court below, all proceedings in the court appealed from shall be stayed, and all orders, all processes, executions, or other papers issued therefrom shall be recalled, and the appellant or plaintiff in error be placed in the same condition that he was when the judgment or order appealed from was made or rendered.

SEC. 471. If the appellee or defendant in error believe the bond defective, or the sureties insufficient, he may move the supreme court if in session, or in its vacation, on ten days' written notice to the appellant, may move any judge of said court to discharge the bond, and if the court or such judge shall consider the sureties insufficient, or the bond substantially defective in securing the rights of the appellee, the court or such judge shall issue an order discharging such bond, unless a good bond with sufficient sureties, be executed by a day by him fixed. The order, if made by a judge, shall be in writing and signed by him; and upon his filing, or the filing of a certified copy of the order when made in court, in the office of the clerk of the inferior court, execution and other proceedings for enforcing the judgment or order may be taken if a new and good bond is not filed and approved by the day as aforesaid.

SEC. 472. But another order staying proceedings may be issued by the clerk, upon execution before him of a new and lawful bond with sufficient sureties as hereinbefore provided.

SEC. 474. If the judgment or order is for the payment of money the penalty shall be in at least twice the amount of the judgment and costs. If not for the payment of money the penalty shall be sufficient to save the appellee or defendant in error harmless from the consequences of taking the appeal or writ of error. But it shall in no case be less than one hundred dollars.

SEC. 475. The taking of the appeal from a part of a judgment or order, and the filing of a bond as above directed, does

not cause a stay of execution as to any part of the judgment or order not appealed from.

SEC. 476. If execution has issued prior to the filing of the bond above contemplated, the clerk shall countermand the same.

SEC. 477. Property levied upon and not sold at the time such countermand is received by the sheriff, shall fothwith be delivered up to the judgment debtor.

SEC. 478. The supreme court may reverse or affirm the judgment or order below, or the part of either appealed from, or may render such judgment or order as the inferior court or judge should have done, according as it may think it proper.

SEC. 479. The supreme court, when it affirms the judgment, shall also, if the appellee or defendant in error moves therefor, render judgment against the appellant or plaintiff in error and his sureties on the bond above mentioned, for the amount of the judgment, damages and costs referred to therein in case such damages can be accurately known to the court without an issue and trial.

SEC. 480. Upon the affirmance of any judgment or order for the payment of money, the collection of which, in whole or part, has been superseded by bond as above contemplated, the court shall award to the appellee, or defendant in error, damages upon the amount superseded; and, if satisfied by the record that the appeal or writ of error was taken for delay only, must award such sum as damages, not exceeding fifteen per cent. thereon, as shall effectually tend to prevent the taking of appeals or writs of error for delay only.

SEC. 481. If the supreme court affirm the judgment or order, it may send the cause to the court below to have the same carried into effect, or it may itself issue the necessary process for this purpose, and direct such process to the sheriff of the proper county as the party may require.

SEC. 483. If, by the decision of the supreme court, the appellant or plaintiff in error becomes entitled to a restoration of any part of the money or property that was taken from him by means of such judgment or order, either the supreme court, or the court below, may direct execution or writ of restitution to issue for the purpose of restoring to such appellant or plaintiff in error, his property or the value thereof.

SEC. 484. Property acquired by a purchaser in good faith under a judgment subsequently reversed, shall not be affected by such reversal.

SEC. 485. The supreme court shall have power to enforce its mandates upon inferior courts and officers by fine and im-

prisonment, which imprisonment may be continued until obeyed.

SEC. 486. If a petition for rehearing be filed, the same shall suspend the decisions of the court on its presentation, or one of the judges, if in vacation, shall so order, in either of which case such decision shall be suspended until the next term.

SEC. 487. The petition for rehearing shall be the argument of the applicant therefor, and if the court think that such argument requires a reply, it shall so indicate to the other party and he may make reply within such time as said court shall allow, and with a view to a rehearing the court may extend the suspension of proceeding yet farther, if need be.

SEC. 488. The clerk shall docket the causes as the same are filed in his office, and shall arrange and set a proper number for trial each day of the term, placing together those from the same judicial district, and shall cause notice of the manner he has set such causes to be published and distributed in such manner as the court may direct.

SEC. 489. The court shall hear all the causes docketed, when not continued by consent, or for cause shown by the party, and the party may be heard orally or otherwise, in his discretion.

SEC. 490. No cause is decided until the opinion in writing is filed with the clerk.

SEC. 491. If remanded to the inferior court to be carried into effect, such decision and the order of the court thereon, being certified thereto and entered on the records of the court, shall have the same force and effect as if made and entered during the session of the court in that district.

SEC. 492. An assignment of error need follow no stated form, but must, in a way as specific as the case will allow, point out the very error objected to, among several points in a demurrer, or in a motion, or instructions, or rulings in an exception, it must designate which is relied on as an error, and the court will only regard errors which are assigned with the required exactness; but the court must decide on each error assigned.

SEC. 493. All motions must be entered in the motion book, and shall stand over till the next morning after the morning on which entered, and till after having been publicly called by the court, unless the parties otherwise agree, and the adverse party shall be deemed to have notice of such motion.

SEC. 494. When a review of an original paper in the action may be important to a correct decision of the appeal, or writ of error, the court may order the clerk of the court below to transmit the same, which he shall do in some safe mode to the clerk

14

106                    GENERAL LAWS.

of the supreme court, who shall hold the same subject to the control of the court.

Sec. 495.    The death of one or all of the parties shall not cause the proceedings to abate, but the names of the proper persons shall be substituted, as is provided in such cases in the district court, and the case may proceed. The court may also. in such case, grant a continuance when such a course will be calculated to promote the ends of justice.

Sec. 496.    When appellant, or plaintiff in error has no right, or no further right to prosecute the appeal or writs of error the appellee or defendants in error may move to dismiss, and if the grounds of the motion do not appear in the record, or by a writing purporting to have been signed by the appellant or plaintiff in error and filed, they must be verified by affidavit.

Sec. 497.    The appellee or defendant in error may, by answer filed and verified by himself, agent or attorney, plead any facts which, under the taking of the appeal or writ of error improper, or destroy the right of appellant or plaintiff in error further prosecuting the same, to which answer the appellant or plaintiff in error may file a reply, likewise verified by himself, his agent or attorney, and the qustions of law or fact therein, shall be determined by the court.

Sec. 498.    The service of all notices of appeal or writs of error, or in any way growing out of such rights, or connected therewith, and all notices in the supreme court, shall be in the way provided for the services of like notices in the district court, and they may be served by the same person and returned in the same manner, and the original notice of the appeal or writ of error, must be returned immediately after service to the office of the clerk of the district court where the suit is pending.

Sec. 499.    Executions issued from the supreme court shall be the same as those from the district court and attended with the same consequences, and shall be returnable in the same time.

Sec. 500.    Whenever, in the foregoing act the words appeal, appellant or appellee, are used, they shall be construed when so required and applicable to law proceedings as contradistinguished from equitable actions, as suit in error, plaintiff in error or defendant in error.

# CHAPTER XLII.

### SET-OFF.

SEC. 501. The defendant in a civil action upon a contract expressed or implied, may set off any demand of a like nature against the plaintiff in interest, which existed and belonged to him at the time of the commencement of the suit. And in all such actions other than upon a negotiable promissory note or bill of exchange, negotiated in good faith and without notice before due, which has been assigned to the plaintiff, he may also set off a demand of a like nature existing against the person to whom he was originally liable, or any assignee prior to the plaintiff, of such contract, provided such demand existed at the time of the assignment thereof, and belonging to the defendant in good faith before notice of such assignment, and was such a demand as might have been set off against such person to whom he was originally liable, or such assignee while the contract belonged to him.

SEC. 502. If the plaintiff be a trustee to any other, or if the action be in a name of the plaintiff who has no real interest in the contract upon which the action is founded, so much of a demand existing against those whom the plaintiff represents or for whose benefit the action is brought, may be set off as will satisfy the plaintiff's debt, if the same might have been set off in an action brought by those beneficially interested.

SEC. 503. In actions brought by executors and administrators, demands against their testators and intestates, and belonging to defendant at the time of their death, may be set off by the defendant in the same manner as if the action had been brought by and in the name of the deceased.

SEC. 504. When a set-off shall be established in an action brought by executors or administrators, and a balance found due to the defendant, the judgment rendered thereon against the plaintiff shall have the same effect as if the action had been originally commenced by the defendant.

SEC. 505. In actions against executors and administrators and against trustees and others, sued in their representative character, the defendants may set off demands belonging to their testators or intestates or those whom they represent, in the same manner as the person so represented would have been entitled to set-off the same in an action against them.

108                    GENERAL LAWS.

SEC. 506. To entitle a defendant to a set-off he must set the same forth in his answer.

SEC. 507. If the amount of the set-off duly established, be equal to the plaintiff's debt or demand, judgment shall be rendered that the plaintiff take nothing by his action; if it be less than the plaintiff's debt or demand, the plaintiff shall have judgment for the residue only.

SEC. 508. If there be found a balance due from the plaintiff in the action to the defendant, judgment shall be rendered in favor of the defendant for the amount thereof, but no such judgment shall be rendered against the plaintiff when the contract which is the subject of the action shall have been assigned before the commencement of such action, nor for any balance due from any other person than the plaintiff in the action.

## CHAPTER 43.

### COSTS IN CIVIL ACTIONS.

SEC. 509. The measure and mode of compensation of attorneys and counselors shall be left to the agreement expressed or implied of the parties, but there shall be allowed to the prevailing party upon the judgment certain sums by way of indemnity for his expenses in the action, which allowances are termed costs.

SEC. 510. Costs shall be allowed the party in whose favor the judgment is rendered, except as is otherwise provided by law.

SEC. 511. The plaintiff shall not be entitled to costs in any action within the jurisdiction of a justice of the peace, which shall be commenced in the district court, when the recovery is for a less amount than one hundred dollars.

SEC. 512. In an action for an assault and battery, or for false imprisonment, libel, slander, malicious prosecution, criminal conversation or seduction if the plaintiff recover less than ten dollars, he shall be entitled to no more costs or disbursements than the damage recovered.

SEC. 513. When several actions are brought on one bond. undertaking, promissory note, bill of exchange, or other instrument in writing, or in any other case for the same cause of action against several parties, who might have been joined as defendants in the same action, no costs or disbursements shall be

## GENERAL LAWS.                    109

allowed to the plaintiff in more than one of such actions, which may be at his election, if the parties proceeded against in the other actions were, at the commencement of the previous action, openly within this Territory.

Sec. 514. In all cases where costs and disbursements are not allowed to the plaintiff, the defendant shall be entitled to have judgment in his favor for the same.

Sec. 415. In all actions where there are several defendants not united in interest, and making separate defenses by separate answers, and the plaintiff fails to recover judgment against all, the court may award costs to such defendants as recover judgments in their favor, or either of them.

Sec. 516. When allowed to either party, costs to be called the attorney fee, shall be as follows:

1. In all actions settled before issue is joined, five dollars.

2. In all actions where judgment is rendered without a jury, ten dollars.

3. In all actions where judgment is rendered after impanneling a jury, fifteen dollars.

4. In all actions removed to the supreme court and settled before argument, ten dollars.

5. In all actions where judgment is rendered in the supreme court after argument, fifteen dollars.

Sec. 517. The prevailing party, in addition to allowance for costs as provided in the last section, shall also be allowed for all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, the necessary expenses of taking depositions, by commission or otherwise, and the compensation of referees. The disbursement shall be stated in detail and verified by affidavit, which shall be filed with the clerk of the court, within ten days after the judgment.

Sec. 518. The fees of referees shall be five dollars to each for every day necessarily spent in the business of the reference and twenty cents per folio for writing testimony but the parties may agree in writing upon any rate of compensation, and thereupon such rate shall be allowed.

Sec. 519. When an application shall be made to a court or referees to postpone a trial, the payment to the adverse party of a sum not exceeding ten dollars, besides the fees of witnesses, may be imposed as the condition of granting the postponement.

Sec. 520. When in an action for the recovery of money, the defendant alleges in his answer, that before the commencement of the action he tendered to the plaintiff the full amount to which he is entitled, in such specie as by agreement ought to

110                    GENERAL LAWS.

be tendered, and thereupon brings into court, for the plaintiff, if in money, the amount tendered, and the allegation be found true, the plaintiff shall not recover costs, but shall pay them to the defendant.

SEC. 521. If the defendant in any action pending, shall at any time deposit with the clerk of the court, for the plaintiff, the amount which he admits to be due, together with all costs that have accrued, and notify the plaintiff thereof, and such plaintiff shall refuse to accept the same in discharge of the action, and shall not afterwards recover a larger amount than that deposited with the clerk, exclusive of interest and cost, he shall pay all costs that may accrue from the time such money was so deposited.

SEC. 522. In all civil actions tried before a justice of the peace, in which an appeal shall be taken to the district court, and the party appellant shall not recover a more favorable judgment in the district court than before the justice of the peace, such appellant shall pay all costs accruing after the appeal.

SEC. 523. When costs are adjudged against an infant plaintiff, the guardian or person by whom he appeared in the action, shall be responsible therefor, and payment may be enforced by execution.

SEC. 524. In an action prosecuted or defended by an executor, administrator, trustee of an express trust, or a person expressly authorized by statute, costs shall be recovered as in an action by or against a person prosecuting in his own right, but such costs shall be chargeable only upon or collected off the estate of the party represented, unless the court shall direct the same to be paid by the plaintiff or defendant personally, for mismanagement or bad faith in such action or defense.

SEC. 525. When the cause of action after the commencement of the action by assignment, or in any other manner becomes the property of a person not a party thereto, and the prosecution or defense is thereafter continued, such person shall be liable to the costs in the same manner as if he were a party, and payment thereof may be enforced by execution.

SEC. 526. In all actions prosecuted in the name and for the use of the Territory, or in the name and for the use of any county, the Territory or county shall be liable for costs in the same cases and to the same extent as private parties.

SEC. 527. When the decision of a court of inferior jurisdiction in an action or special proceeding is brought before the supreme court or a district court for review, such proceedings shall, for purposes of costs, be deemed an action at issue upon a question of law from the time the same is brought into the supreme court or district court, and costs thereon may be

awarded and collected in such manner as the court shall direct, according to the nature of the case.

SEC. 528. In the following cases the costs of an appeal to the supreme court shall be in the discretion of the court:

1. When a new trial shall be ordered.

2. When a judgment shall be affirmed in part and reversed in part.

SEC. 529. In all actions and proceedings other than those mentioned in this chapter, where no provision is made for the recovery of costs, they may be allowed or not, and if allowed may be apportioned between the parties, in the discretion of the court.

SEC. 530. Any party aggrieved by the taxation of costs by the clerk of the court may, upon application, have the same re-taxed by the court in which the action or proceeding is had.

SEC. 531. When the plaintiff in an action resides out of the district or county, or is a foreign corporation, security for the costs and charges which may be awarded against such plaintiff may be required by the defendant. When required, all proceedings in the action shall be stayed until a bond, executed by two or more persons, be filed with the clerk, conditioned that they will pay such costs and charges as may be awarded againt the plaintiff by judgment or in the progress of the action, not exceeding the sum of two hundred dollars. A new or additional bond may be ordered by the court or judge, upon proof that the original bond is insufficient security, and proceedings in the action stayed until such new or additional bond be executed and filed. The plaintiff may deposit with the clerk the sum of two hundred dollars in lieu of a bond.

## CHAPTER 44.

### OF COMMISSIONERS TO CONVEY REAL ESTATE.

SEC. 532. The several district courts may, whenever it is necessary, appoint a commissioner to convey real estate:

1. When by a judgment in an action a party is ordered to convey real property to another, or any interest therein.

2. When real property, or any interest therein, has been sold under a special order of the court and the purchase money paid therefor.

112                    GENERAL LAWS.

Sec. 533.   The deed of the commissioner shall so refer to the judgment authorizing the conveyance, that the same may be readily found, but need not recite the record in the case generally.

Sec. 534.   A conveyance made in pursuance of a judgment shall pass to the grantee the title of the parties ordered to convey the land.

Sec. 535.   A conveyance made in pursuance of a sale ordered by the court shall pass to the grantee the title of all the parties to the action or proceeding.

Sec. 536.   A conveyance by a commissioner shall not pass any right until it has been examined and approved by the court, which approval shall be endorsed on the conveyance and recorded with it.

Sec. 537.   It shall be sufficient for the conveyance to be signed by the commissioner only, without affixing the name of the parties whose title is conveyed, but the names of the parties shall be recited in the body of the conveyance.

Sec. 538.   The conveyance shall be recorded in the office in which by law it should have been recorded had it been made, by the parties whose title is conveyed by it.

Sec. 539.   In case of a judgment to compel a party to execute a conveyance of real estate, the court may enforce the judgment by attachment or sequestration. or appoint a commisioner to make the conveyance.


## CHAPTER XLV.

### ACTIONS TO RECOVER AND AFFECTING REAL ESTATE.

Sec. 540.   Any person having a valid subsisting interest in real property and a right to the possession thereof may recover the same by action in the district court of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein.

Sec. 541.   A defendant who is in actual possession may for answer plead that he is in possession only as a tenant of another, naming him and his place of residence, and thereupon the landlord. if he apply therefor, shall be made defendant in place of the tenant, and the action shall proceed in all respects as if originally commenced against him.   If the landlord do not apply to be

## GENERAL LAWS. 113

made defendant within the time the tenant is allowed to answer, thereafter he shall not be allowed to, but he shall be made defendant if the plaintiff require it. If the landlord be made defendant, on motion of the plaintiff he shall be required to appear and answer within ten days from notice of the pendency of the action and the order making him defendant, or such further notice as the court or judge thereof may prescribe.

SEC. 542. The plaintiff in his complaint shall set forth the nature of his estate in the property whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession therof, and that the defendant wrongfully withholds the same from him to his damage such sum as may be there'n claimed. The property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had.

SEC. 543. The defendant shall not be allowed to give in evidence any estate in himself or another in the property, or any license or right to the possession thereof, unless the same be pleaded in his answer. If so pleaded the nature and duration of such estate, or license or right to the possession, shall be set forth with the certainty and particularity required in a complaint. If the defendant does not defend for the whole of the property, he shall specify for what particular part he does defend. In an action against a tenant the judgment shall be conclusive against a landlord who has been made defendant in place of the tenant, to the same extent as if the action had been originally commenced against him.

SEC. 544. The jury by their verdict shall find as follows:

1. If the verdict be for the plaintiff that he is entitled to the possession of the property described in the complaint, or some part thereof, or some undivided share or interest in either, and the nature and duration of his estate in such property, part thereof, or undivided share or interest in either, as the case may be.

2. If the verdict be for the defendant, that the plaintiff is not entitled to the possession of the property described in the complaint, or to such part thereof as the defendant defends for and the estate in such property or part thereof, or license, or right to the possession of either established on the trial by the defendant, if any, in effect as the same is required to be pleaded.

SEC. 545. The plaintiff shall only be entitled to recover damages for withholding the property for the term of six years next preceding the commencement of the action, and for any period that may elapse from such commencement, to the time of giving a verdict therein, exclusive of the use of permanent

114                    GENERAL LAWS.    .

improvements made by the defendant. When permanent improvements have been made upon the property by the defendant or those under whom he claims holding under color of title adversely to the claim of the plaintiff, in good faith, the value thereof at the time of trial shall be allowed as a set-off against such damages.

Sec. 546. If the right of the plaintiff to the possession of the property expire after the commencement of the action and before the trial, the verdict shall be given according to the fact, and judgment shall be given only for the damages.

Sec. 547. The court or judge thereof, on motion, and after notice to the adverse party, may for cause shown grant an order allowing the party applying therefor to enter upon the property in controversy and make survey and admeasurement thereof, for the purposes of the action.

Sec. 548. The order shall describe the property, and a copy thereof shall be served upon the defendant, and thereupon the party may enter upon the property and make such survey and admeasurement, but if any unnecessary injury be done to the premises, he shall be liable therefor.

Sec. 549. An action for the recovery of the possession of real property against a person in possession, cannot be prejudiced by any alienation made by such person either before or after the commencement of the action; but if such alienation be made after the commencement of the action, and the defendant do not satisfy the judgment recovered for damages for withholding the possession, such damages may be recovered by action against the purchaser.

Sec. 550. A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law.

Sec. 551. In an action by a tenant in common, or joint tenant of real property against his co-tenant, the plaintiff must show, in addition to his evidence of right, that the defendant either denied the plaintiff's right or did some act amounting to such denial.

Sec. 552. When in the case of a lease of real property and the failure of tenant to pay rent, the landlord has a subsisting right to re-enter for such failure; he may bring an action to recover the possession of such property, and such action is equivalent to a demand of the rent and a re-entry upon the property. But if at any time before judgment in such action, the lessee or his successor in interest as to the whole or a part of the property, pay to the plaintiff or bring into court the amount of rent then in arrear, with interest and costs of the action, and

GENERAL LAWS.                    115

perform the other covenants or agreements on the part of the lessee, he shall be entitled to continue in the possession according to the terms of the lease.

SEC. 553.    In an action to recover the possession of real property, the judgment therein shall be conclusive as to the estate in such property and the right to the possession thereof, so far as the same is thereby determined, upon the party against whom the same is given, and against all persons claiming from, through or under such party after the commencement of such action, except as in this section provided.    When service of the notice is made by publication, and judgment is given for failure to answer, at any time within two years from the entry thereof, the defendant or his successor in interest as to the whole or any part of the property, shall, upon application to the court or judge thereof, be entitled to an order vacating the judgment and granting him a new trial, upon the payment of the costs of the action.

SEC. 554.    If the plaintiff has taken possession of the property before the judgment is set aside and a new trial granted, as provided in the preceding section, such possession shall not be thereby affected in any way, and if judgment be given for defendant in the new trial, he shall be entitled to restitution by execution in the same manner as if he were plaintiff.

SEC. 555.    In an action to recover the possession of real property by a tenant in dower, or her successor in interest, if such estate in dower has not been admeasured before the commencement of the action, the plaintiff shall not have execution to deliver the possession thereof until the same be admeasured as follows:

1.    At any time after the entry of judgment, the plaintiff may upon notice to the adverse party, move the court for the appointment of referees to admeasure the dower out of the real property of which the possession is recovered by the action. The court shall allow such motion, unless it appear probable on the hearing that a partition of such property cannot be made without prejudice to the interests of the other owners.    In the latter case, the court shall disallow the motion, and thereafter the plaintiff shall only proceed for partition of sale of such real property, as provided in the succeeding chapter.

2.    If the court allow the motion, thereafter the proceedings shall be conducted as provided in such chapter.    At any time after the confirmation of the report of the referees, the plaintiff may have execution for the delivery of the possession of the property according to the admeasurement thereof, and for the damages recovered, if any, for withholding the same, if such damages remain unsatisfied.

3.    If the motion for admeasurement be made at the term at

116                    GENERAL LAWS.

which judgment was given, the notice thereof shall be served on the adverse party at such time as the court by general rule or special order may prescribe.

## CHAPTER 46.

"Section 556. In an action at law for the recovery of the possession of real property if either party claim the property as a donee of the United States and under the act of Congress approved September 27, 1850, commonly called the 'Donation law,' or the acts amendatory thereof, such party from the date of his settlement thereon, as provided in said act, shall be deemed to have a legal estate in fee in such property, to continue upon condition that he perform the conditions required by such acts, which estate is unconditional and indefeasible after the performance of such conditions. In such action, if both plaintiff and defendant claim title to the same real property by virtue of settlement under such acts, such settlement and the performance of the subsequent condition shall be prima faciæ presumed in favor of the party having or claiming under the elder certificate, or patent, as the case may be, unless it appears upon the face of such certificate or patent that the same is absolutely void. Any person in possession, by himself or his tenant, of real property, and any private or municipal corporation in possession by itself or its tenant of any real property, or when such real property is not in the actual possession of any one, any person or private or municipal corporation claiming title to any real property under a patent from the United States, or during his or its claim of title to such real property under a patent from the United States for such real estate, may maintain a civil action against any person or persons, corporations or associations claiming an interest in said real property or any part thereof, or any right thereto adverse to him, them, or it, for the purpose of determining such claim, estate, or interest; and where several persons, or private or municipal corporations are in possession of, or claim as aforesaid, separate parcels of real property, and an adverse interest is claimed or claim made in or to any such parcels, by any other person, persons, corporations or associations, arising out of a question, conveyance, statute, grant, or other matter common to all such parcels of real estate, all or any portion of such persons or corporations so in possession, or claiming such parcel of real property may unite as plaintiffs in such suit to determine such adverse claim or interest against all

persons, corporations or associations claiming such adverse interest."

## CHAPTER XLVII.

### PARTITION OF REAL PROPERTY.

SEC. 557.    When several persons hold and are in possession of real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, an action may be maintained by one or more of such persons, for a partition thereof according to the respective rights of the persons interested therein, and for sale of such property or a part of it, if it appear that a partition cannot be made without great prejudice to the owners.

SEC. 558.    The interest of all persons in the property, shall be set forth in the complaint specifically and particularly as for as known to the plaintiff, and if one or more of the parties, or the share or quantity of interest of any of the parties be unknown to the plaintiff, or be uncertain or contingent, or the ownership of the inheritance depend upon an executory devise, or the remainder be a contingent remainder, so that such parties cannot be named, that fact shall be set forth in the complaint.

SEC. 559.    The plaintff may, at his option, make creditors having a lien upon the property or any portion thereof, other than by judgment or decree, defendants in the suit.    When the lien is upon an undivided interest or estate of any of the parties, such lien, if a partition be made, is thenceforth a lien only on the share assigned to such party; but such share shall be first charged with its just proportion of the costs of the partition, in preference to such lien.

SEC. 560.    The notice shall be directed by name to all the tenants in common, who are known, and in the same manner to all lien creditors who are made parties to the suit, and generally to all persons unknown, having or claiming an interest or estate in the property.

SEC. 561.    .If a party, having a share or interest in, or lien upon the property, be unknown, or either of the known parties reside out of the Territory or cannot be found therein, and such fact be made to appear by affidavit, the notice may be served by publication, as in ordinary cases.    When service is made by publication, the notice must contain a brief description of the property which is the subject of the suit.

118                           GENERAL LAWS.

SEC. 562. The defendant shall set forth in his answer the nature and extent of his interest in the property, and if he be a lien creditor, how such lien was created, the amount of the debt secured thereby and remaining due, and whether such debt is secured in any other way, and if so, the nature of such other security.

SEC. 563. The rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried and determined in such suit, and where a defendant fails to answer, or where a sale of the property is necessary, the title shall be ascertained by proof to the satisfaction of the court, before the decree for partition or sale is given.

SEC. 564. If it be alleged in the complaint and established by evidence, or if it appear by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall decree a partition according to the respective rights of the parties as ascertained by the court, and appoint three referees, therefor, and shall designate the portion to remain undivided for the owners whose interests remain unknown or are not ascertained.

SEC. 565. In making the partition, the referees shall divide the property, and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court, designating the several portions by proper landmarks, and may employ a surveyor with the necessary assistants to aid them therein. The referees shall make a report of their proceedings, specifying therein the manner of executing their trust, describing the property divided and the shares allotted to each party, with a particular description of each share.

SEC. 566. The court may confirm or set aside the report in whole or in part, and if necessary appoint new referees. Upon the report being confirmed a decree shall be entered that such partition be effectual forever, which decree shall be binding and conclusive:

1. On all parties named therein, and their legal representatives who have at the time any interest in the property divided, or any part thereof as owners in fee, or as tenants for life or for years, or as entitled to the reversion, remainder or inheritance of such property or any part thereof, after the termination of a particular estate therein, or who by any contingency may be entitled to a beneficial interest in the property, or who have an

interest in any undivided share thereof, as tenants for years or for life.

2. On all persons interested in the property to whom notice shall have been given by publication.

3. On all other persons claiming from or through such parties or persons or either of them.

SEC. 567. Such decree and partition shall not affect any tenants, for years or for life, of the whole of the property which is the subject of partition, nor shall such decree and partition preclude any persons except such as are specified in the last section, from claiming title to the property in question or from controverting the title of the parties between whom the partition shall have been made.

SEC. 568. The expenses of the referees, including those of a surveyor and his assistants, when employed, shall be ascertained and allowed by the court, and the amount thereof, together with the fees allowed by law to the referees, shall be paid by the plaintiff and may be allowed as costs.

SEC. 569. If the referees report to the court that the property, of which partition shall have been decreed, or any separate portion thereof is so situated that a partition thereof cannot be made without great prejudice to the owners, and the court is satisfied that such report is correct, it may thereupon by an order direct the referees to sell the property or separate portion thereof.

SEC. 570. When a part of the property only is ordered to be sold, if there be an estate for life or years in an undivided share of the property, the whole of such estate may be set off in any part of the property not ordered to sold.

SEC. 571. Before making an order of sale, if lien creditors other than those by judgment of decree, have not been made parties, the court, on motion or either party, shall order the plaintiff to file a supplemental complaint, making such creditors defendants.

SEC. 570. If an order of sale be made before the distribution of the proceeds thereof, the plaintiff shall produce to the court the certificate of the clerk of the county where the property is situated, showing the liens remaining unsatisfied, if any, by judgment or decree upon the property or any portion thereof, and unless he do so the court shall order a reference to ascertain them.

SEC. 571. If it appear by such certificate or reference, in case the certificate is not produced that any such liens exist, the court shall appoint a referee to ascertain what amount remains due thereon or secured thereby respectively, and the order of .

120                    GENERAL LAWS.

priority in which they are entitled to be paid out of the property.

Sec. 572. The plaintiff must cause a notice to be served at least twenty days before the time for appearance on each person having such lien by judgments or decree, to appear before the referee at a specified time and place to make proof by his own affidavit or otherwise, of the true amount due or to become due, contingently or absolutely on his judgment or decree.

Sec. 573. The referee shall receive the evidence and report the names of the creditors whose liens are established, the amounts due thereon or secured thereby, and their priority respectively, and whether contingent or absolute. He shall attach to his report the proof of service of the notices and the evidence before him.

Sec. 574. The report of the referee may be excepted to by either party to the suit, or to the proceedings before the referee, in like manner and with like effect as in ordinary cases. If a lien creditor be absent from the Territory or his residence therein be unknown, and that fact appear by affidavit, the court or judge thereof may by order direct that service of the notice may be made upon his agent or attorney, of record, or by publication thereof, for such time and in such manner as the order may prescribe.

Sec. 575. If the report of the referee be confirmed, the order of confirmation is binding and conclusive upon all parties to the suit, and upon the lien creditors who have been duly served with the notice to appear before the referee, as provided in section five hundred and twenty-two.

Sec. 576. The proceeds of the sale of the encumbered property shall be distributed by the decree of the court, as follows:

1.   To pay its just proportion of the general costs of the suit.

2.   To pay the costs of the reference.

3.   To satisfy the several liens in their order of priority, by payment of the sums due, and to become due, according to the decree.

4.   The residue among the owners of the property sold, according to their respective shares.

Sec. 577. Whenever any party to the suit who holds a lien upon the property or any part thereof, has other securities for the payment of the amount of such lien, the court may in its discretion, order such sureties to be exhausted before a distribution of the proceeds or sale, or may order a just deduction to be made from the amount of the lien on the property on account thereof.

Sec. 578. The proceedings to ascertain the amount of the

liens, and to determine their priority as above provided, or those hereinafter authorized to determine the rights of parties to funds paid into court, shall not delay the sale, nor affect any other party, whose rights are not involved in such proceedings.

Sec. 579. The proceeds of sale, and the securities taken by the referees, or any part thereof, shall be distributed by them to the persons entitled thereto, whenever the court so directs. But if no such direction be given, all such proceeds and securities shall be paid into court, or deposited as directed by the court.

Sec. 580. When the proceeds of sale of any shares or parcel belonging to persons who are parties to the suit and who are known, are paid into court, the suit may be continued as between such parties, for the determination of their respective claims thereto, which shall be ascertained and adjudged by the court. Further testimony may be taken in court, or by a referee at the discretion of the court, and the court may, if necessary, require such parties to present the facts or law in controversy, by pleadings as in an original suit.

Sec. 581. All sales of real property made by the referees shall be made by public auction, to the highest bidder, in the manner required for the sale of real property on execution. The notice shall state the terms of sale, and if the property, or any part of it is to be sold, subject to a prior estate, charge or lien, that shall be stated in the notice.

Sec. 583. The court shall, in the order of sale, direct the terms of credit which may be allowed for the purchase money of any portion of the premises, of which it may direct a sale on credit; and for that portion of which the purchase money is required by the provisions hereinafter contained, to be invested for the benefit of unknown owners, infants or parties out of the Territory.

Sec. 584. The referees may take separate mortgages, and other securities for the whole, or convenient portions of the purchase money, of such parts of the property as are directed by the court to be sold on credit, in the name of the clerk of the court, and his successors in office; and for the shares of any known owner of full age, in the name of such owner.

Sec. 585. When the estate of any tenant for life or years, in any undivided part of the property in question, shall have been admitted by the parties, or ascertained by the court to be existing at the time of the order of sale, and the person entitled to such estate shall have been made a party to the suit, such estate may be first set off out of any part of the property, and a sale made of such parcel, subject to the prior unsold estate of such tenant therein; but if in the judgment of the court, a due regard to the interest of all the parties require that such estate be also sold, the sale may be so ordered.

16

122                    GENERAL LAWS.

Sec. 586. Any person entitled to an estate for life or years in any undivided part of the property, whose estate shall have been sold, shall be entitled to receive such sum in gross as may be deemed a reasonable satisfaction for such estate, and which the person so entitled shall consent to accept instead thereof, by by an instrument duly acknowledged and filed with the clerk.

Sec. 587. If such consent be not given, as provided in the last section, before the report of sale, the court shall ascertain and determine what proportion of the proceeds of the sale, after deducting expenses, will be a just and reasonable sum to be invested for the benefit of the person entitled to such estate for life or years, and shall order the same to be deposited in court for that purpose.

Sec. 588. The proportion of the proceeds of the sale to be invested as provided in the preceding section, shall be ascertained and determined in the several cases as follows:

1. If an estate in dower be included in the order of sale, its proportion shall be one-third of the proceeds of the sale of the property, or of the sale of the undivided share in such property upon which the claim of dower existed.

2. If an estate by the curtesy or other estate for life or years, be included in the order of sale, its proportion shall be the whole proceeds of the sale of the property or of the sale of the undivided share thereof in which such estate may be. And in all cases the proportion of the expenses of the proceedings shall be deducted from the proceeds of the sale.

Sec. 589. If the persons entitled to such estate for life or years be unknown, the court shall provide for the protection of their rights in the same manner, as far as may be, as if they were known and had appeared.

Sec. 590. In all cases of sales in partition, when it appears that a married woman has an inchoate right of dower in any of the property sold, or that any person has a vested or contingent future right or estate therein, the court shall ascertain and settle the proportionate value of such, inchoate, contingent or vested right or estate, and shall direct such proportion of the proceeds of sale to be invested, secured or paid over in such manner as to protect the rights and interests of the parties.

Sec. 591. In all cases of sales of property the terms shall be made known at the time, and if the premises consist of distinct farms or lots, they shall be sold separately or otherwise, if the court so directs.

Sec. 592. Neither of the referees, nor any person for the benefit of either of them, shall be interested in any purchase, nor shall the guardian of an infant party be interested in the purchase of any real property being the subject of the suit,

except for the benefit of the infant.   All sales contrary to the provisions of this section, shall be void.

SEC. 593.   After completing the sale the referees shall report the same to the court, with a description of the different parcels of land sold to each purchaser, the name of the purchaser, the price paid or secured, the terms and conditions of the sale, and the securities, if any taken.   The report shall be filed with the clerk.

SEC. 594.   The report of sale may be excepted to in writing by any party entitled to a share of the proceeds.   If the sale be confirmed, the order of confirmation shall direct the referees to execute conveyances and take securities pursuant to such sale.

SEC. 595.   When a party entitled to a share of the property, or an encumbrancer entitled to have his lien paid out of the sale, becomes a purchaser, the referees may take his receipt for so much of the proceeds of the sale as belongs to him.

SEC. 596.   When there are proceeds of sale belonging to an unknown owner, or to a person without the Territory who has no legal representative within it, or when there are proceeds arising from the sale of an estate subject to the prior estate of a tenant for life or years, which are paid into court or otherwise deposited by order of the court, the same shall be invested in securities on interest for the benefit of the persons entitled thereto.

SEC. 597.   When the security for the proceeds of sale is taken, or when an investment of any such proceeds is made, it shall be done, except as herein otherwise provided, in the name of the clerk of the court and his successors in office, who shall hold the same for the use and benefit of the parties interested, subject to the order of the court.

SEC. 598.   When security is taken by the referees on a sale and the parties interested in such security by an instrument in writing under their hands, delivered to the referees, agree upon the shares and proportions to which they are respectively entitled, or when shares and proportions have been previously adjudged by the court, such securities shall be taken in the names of and payable to the parties respectively entitled thereto, and shall be delivered to such parties upon their receipt therefor. Such agreement and receipt shall be returned and filed with the clerk.

SEC. 599.   The clerk in whose name a securtiy is taken, or by whom an investment is made, and his successors in office shall receive the interest and principal as it becomes due, and apply and invest the same as the court may direct, and shall file in his office all securities taken and keep an account in a book provided

124                          ·GENERAL LAWS.

and kept for that purpose in the clerk's office, free for inspection by all persons, of investments and moneys received by him thereon, and the disposition thereof.

SEC. 600.    When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, the court may adjudge compensation to be made by one party to another on account of the inequality of partition; but such compensation shall not be required to be made to others by owners unknown, nor by infants, unless in case of an infant it appear that he has personal property sufficient for that purpose, and that his interest will be promoted thereby.

SEC. 601.    When the share of an infant is sold, the proceeds of the sale may be paid by the referees making the sale to his general guardian, or the special guardian appointed for him in the suit, upon giving the security required by law, or directed by order of the court.

SEC. 602.    The guardian who may be entitled to the custody and management of the estate of an insane person, or other person adjudged incapable of conducting his own affairs, whose interest in real property shall have been sold, may receive in behalf of such person his share of the proceeds of such real property from the referees, on executing a bond with sufficient sureties, approved by the judge of the court, conditioned that he will faithfully discharge the trust reposed in him, and will render a true and just account to the person entitled, or to his legal representative.  •

SEC. 603.    The general guardian of an infant, and the guardian entitled to the custody and management of the estate of an insane person, or other person adjudged incapable of conducting his own affairs, who is interested in real estate held in common or in any other manner, so as to authorize his being made a party to an action for the partition thereof, may consent to a partition without suit and agree upon the share to be set off to such infant or other person entitled, and may execute a release in his behalf to the owners of the shares of the parts to which they may respectively be entitled, and upon an order of the court.

SEC. 604.    The costs of partition, including fees of referees and other disbursements, shall be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interest therein, and may be included and specified in the decree.    In that case they shall be a lien on the several shares, and the decree may be enforced by execution against the parties separately.    When, however, a litigation arises between some of the parties only, the court may require the expense of such litigation to be paid by the parties thereto, or any of them.

## CHAPTER XLVIII.

### OF WASTE AND TRESPASS.

SEC. 605.   Wrongs heretofore remediable by action of waste shall be subjects of actions as other wrongs.

SEC. 606.   If a guardian, tenant in severalty, or in common, for life or for years, of real property, commit waste thereon, any person injured thereby may maintain an action at law for damages therefor against such guardian or tenant; in which action there may be judgment for treble damages, forfeiture of the estate of the party committing or permitting the waste, and of eviction from the property.   But judgment of forfeiture and eviction shall only be given in favor of the person entitled to the reversion against the tenant in possession, when the injury to the estate in reversion is determined in the action to be equal to the value of the tenant's estate or unexpired term, or to have been done or suffered in malice.

SEC. 607.   Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons of public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the persons committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

SEC. 608.   If upon the trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodland, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages.

SEC. 609.   When any two or more persons are opposing claimants under the laws of the United States to any land in this Territory, and one is threatening to commit upon such land

126    GENERAL LAWS.

waste which tends materially to lessen the value of the inherit-
ance and which cannot be compensated by damages and there is
imminent danger that unless restrained such waste will be com-
mitted, the party on filing his complaint and satisfying the court
or judge of the existence of the facts, may have an injunction
to restrain the adverse party. In all cases he shall give notice
and bond as is provided in other cases where injunction is
granted, and the injunction when granted shall be set aside or
modified as is provided generally for injunction and restraining
orders.

## CHAPTER XLIX.

### NUISANCE.

Sec. 610. The obstruction of any highway or the closing
of the channel of any stream used for boating or rafting logs,
lumber or timber, or whatever is injurious to health or indecent
or offensive to the senses, or an obstruction to the free use of
property, so as to essentially interfere with the comfortable
enjoyment of the life and property, is a nuisance, and the sub-
ject of an action for damages and other and further relief.

Sec. 611. Such action may be brought by any person
whose property is injuriously affected or whose personal enjoy-
ment is lessened by the nuisance. If judgment be given for the
plaintiff in such action, he may in addition to the execution to
enforce the same, on motion, have an order allowing a warrant
to issue to the sheriff to abate such nuisance. Such motion
must be made at the term at which judgment is given, and shall
be allowed of course, unless it appear on the hearing that the
nuisance has ceased or that such remedy is inadequate to abate
or prevent the continuance of the nuisance, in which latter case
the plaintiff may have the defendant enjoined.

Sec. 612. If the order be made, the clerk shall thereafter
(at any time within six months, when requested by the plaintiff,)
issue such warrant directed to the sheriff, requiring him forth-
with to abate the nuisance at the expense of the defendant, and
return the warrant as soon thereafter as may be, with his pro-
ceedings endorsed thereon. The expense of abating the nuisance
may be levied by the sheriff on the property of the defendant,
and in this respect the warrant is to be deemed an execution
against property.

## GENERAL LAWS.

SEC. 613.  At any time before the order is made or the warrant issues, the defendant may, on motion to the court or judge thereof, have an order to stay the issue of such warrant for such period as may be necessary, not exceeding six months, to allow the defendant to abate the nuisance himself, upon his givin bond to the plaintiff in a sufficient amount with one or more sureties, to the satisfaction of the court or judge thereof, that he will abate it within the time and in the manner specified in such order.  The sureties shall justify as bail upon arrest.  If the defendant fails to abate such nuisance within the time specified, the warrant for the abatement of the nuisance may issue as if the same had not been stayed.

## CHAPTER  L.

### FORECLOSURE OF MORTGAGE.

SEC. 614.  When default is made in the performance of any condition contained in a mortgage, the mortgagee or his assigns may proceed in the district court of the district or county where the land, or some part thereof, lies, to foreclose the equity of redemption contained in the mortgagee.

SEC. 615.  When there is no express agreement in the mortgage nor any separate instrument given for the payment of the sum secured thereby, the remedy of the mortgage shall be confined to the property mortgaged.

SEC. 616.  In rendering judgment of foreclosure the court shall order the mortgaged premises, or so much thereof as may be necessary, to be sold to satisfy the mortgage and costs of the action.  The payment of the mortgage debt, with interests and costs at any time before sale, shall satisfy the judgment.

SEC. 617.  When there is an express agreement for the payment of the sum of money secured contained in the mortgage or any separate instrument, the court shall direct in the order of the sale that the balance due on the mortgage, and costs which may remain unsatisfied after the sale of the mortgaged premises, shall be levied on any property of the mortgage debtor.

SEC. 618.  A copy of the order of sale and judgment shall be issued and certified by the clerk, under the seal of the court, to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the

**128**                       GENERAL LAWS.

judgment, interests and costs, as upon execution; and if any part of the judgment, interest and costs, remain unsatisfied, the sheriff shall forthwith proceed to levy the residue of the property of the defendant. The sheriff shall endorse upon the order of sale, the time when he received it, and all subsequent proceedings under the said order shall conform, except as hereinafter provided, to the provisions regulating sales of property upon execution.

SEC. 619. The plaintiff shall not proceed to foreclose his mortgage while he is prosecuting any other action for the same debt or matter which is secured by the mortgage, or while he is seeking to obtain execution of any judgment in such other action; nor shall he prosecute any other action for the same matter while he is foreclosing his mortgage or prosecuting a judgment of foreclosure.

SEC. 620. Whenever a complaint is filed for the forclosure of a mortgage upon which there shall be due any interest or installment of the principal, and there are other installments not due, if the defendant pay into court the principal and interest due, with costs, at any time before the final judgment, proceedings thereon shall be stayed, subject to be enforced upon a subsequent default in the payment of any installment of the principal or interest thereafter becoming due. In the final judgment, the court shall direct at what time and upon what default any subsequent execution shall issue.

SEC. 620. In such cases, after final judgment, the court shall ascertain whether the property can be sold in parcels, and if it can be done without injury to the interests of the parties, the court shall direct so much only of the premises to be sold as will be sufficient to pay the amount then due on the mortgage with costs, and the judgment shall remain and be enforced upon any subsequent default, unless the amount due shall be paid before execution of the judgment is perfected.

SEC. 621. If the mortgaged premises cannot be sold in parcels, the court shall order the whole to be sold, and the proceeds of the sale shall be applied first to the payment of the principal due, interest and costs, and then to the residue secured by the mortgage and not due; and if the residue do not bear interest, a deduction shall be made therefrom by discounting the legal interest; and in all cases where the proceeds of the sale shall be more than sufficient to pay the amount due and costs, the surplus shall be paid to the mortgage debtor, his heirs and assigns.

SEC. 622. The provisions herein contained, so far as the same shall be applicable, shall govern in actions for the foreclosure of chattel mortgages or bills of sale creating liens on personal property. The mortgagee or holder of the lien may proceed upon his mortgage or lien, if there be a separate obligation

## GENERAL LAWS.    129

in writing to pay the same secured by said mortgage or lien, he may bring suit upon such separate promise. When he proceeds on the mortgage, if there be a specific agreement therein contained for the payment of a certain sum, or there is a separate obligation for the said sum, in addition to a decree of sale of mortgaged property, judgment shall be rendered for the amount due upon said mortgage or other instrument, the payment of which is secured thereby. The order of sale shall direct the sale of the mortgaged property, and if the proceeds of said sale be insufficient under such order of sale, the sheriff is authorized to levy upon and sell other property of mortgage debtor, not exempt from execution, for the sum remaining unsatisfied.

Sec. 623. In all actions of foreclosure where there is a decree for the sale of the mortgaged premises or property, and a judgment over for any deficiency remaining unsatisfied after applying the proceeds of the sale of mortgaged property, further levy and sales upon other property of the judgment debtor may be made under the same order of sale. In such sales it shall only be necessary to advertise notice for two weeks in a newspaper published in the district or county where the said property is located, and if there be no newspaper published therein, then in the most convenient newspaper having a circulation in such county. Nothing herein contained shall prevent the issue of an execution, as in ordinary cases, either for the whole mortgage debt or such deficiency, after applying the proceeds of the sale of mortgaged property. When, however, an execution shall issue upon a judgment recovered for a debt secured by mortgage, a schedule of the mortgaged property, real or personal, shall be indorsed upon such an execution, and the sale thereof under such order, shall foreclose the equity of redemption or the mortgage therein.

Sec. 624. When sales of other property not embraced in the mortgage or decree of sale are made under the order of sale, to satisfy any deficiency remaining due upon the judgment, two weeks publication of notice of such sale shall be sufficient. Such notice shall be published in a newspaper printed in the district or county where the property is situated, and if there be no newspaper published therein, then in the most convenient newspaper having a circulation in said district or county.

Sec. 625. Judgments over for any deficiency remaining unsatisfied after application of the proceeds of sale of mortgaged property, either real or personal, shall be similar in all respects to other judgments for the recovery of money, and may be made a lien upon the property of a judgment debtor as other judgments, and the collection thereof enforced in the same manner.

17

130                    GENERAL LAWS.

## CHAPTER 49.

### THE SPECIFIC PERFORMANCE OF CERTAIN CONTRACTS.

Section 626.  If any person, who is bound by a contract, in writing, to convey any real estate, shall die before making the conveyance, the district court having jurisdiction over the county in which such real estate or any portion thereof, is situate, may make a decree authorizing and directing the conveyance of such real estate to the person entitled thereto, in all cases, when such deceased person, if living, might be compelled to make such conveyance.

Sec. 627.  On filing and presentation of a petition of any person claiming to be entitled to such conveyance under such contract, setting forth the facts upon which such claim is predicated, the district court or the judge thereof, shall make an order appointing a time and place for hearing such petition, which shall be at some day of a regular term of said district court and shall also order notice of the pendency thereof and the time and place of the hearing, to be published at least four successive weeks next before such hearing, in such newspaper in the Territory as the court shall designate.

Sec. 628.  At the time and place appointed for such hearing or at such other time, as the same may be adjourned to, upon proof by affidavit of the publication of the notice, the court shall proceed to a hearing, and all persons interested as creditors, heirs, devisees or personal representatives, may appear and resist such petition, by filing their objections in writing, and the court may examine on oath the petitioners, and all witnesses who may be produced on the hearing by any interested party for that purpose.

Sec. 629.  After a full hearing upon such petition and objections, of the facts and circumstances of the claim, if the court is satisfied that the petitioner is entitled in equity to a conveyance of the real estate described in the petition or any part thereof or any interest therein, the court shall make a decree authorizing and directing the execution and delivery of a conveyance to the petitioner.

Sec. 630.  Such conveyance shall be executed by the executor or administrator of the estate of the deceased, if the deceased was a resident of or had his place of abode at the time of his death in this Territory, or if he died therein;

but in such case no decree for conveyance shall be made, unless the executor or administrator shall have been personally served with a copy of the said petition and the notice provided for in the 2nd section of this act, for at least 2 weeks prior to the time appointed for the hearing.

SEC. 631. If the deceased died out of the Territory and not having been a resident thereof at the time of his death, such conveyance shall be executed by a commissioner to be appointed by the court in the decree, for that purpose, but in such case in addition to the notice provided for in the second section of this act, it shall appear to the satisfaction of the court at the hearing, that the executor, or administrator of such deceased duly appointed in another state, territory or country or his heirs or devisees shall have had reasonable notice personally of the pendency of said petition, and of the time and place appointed for such hearing. And such foreign executor or administrator shall have the same right at the hearing or on appeal to file objections and resist the claim of the petitioners, as an executor or administrator appointed under the laws of the Territory would have, and it shall not be necessary in such case that an administration of the estate of the deceased be had in the Territory, to authorize the decree of conveyance prayed for, if the district court upon the hearing shall so find.

SEC. 632. A conveyance executed under the provisions of this act shall so refer to the decree authorizing the conveyance that the same may be readily found, but need not recite the record in the case generally and the conveyance made in pursuance of a decree shall pass to the grantee all the estate, right, title and interest contracted to be conveyed by the deceased, as fully as if the contracting party himself were still living and then executed the conveyance in pursuance of such contracts.

SEC. 633. Any party interested may within six months from the rendition of the decree, appeal therefrom to the supreme court in the same manner as appeals are taken and prosecuted from final decrees or judgments in equity causes; but if no appeal be taken from such decree within the time limited therefor, or if such decree be affirmed on appeal, it shall be be the duty of the executor, administrator or commissioner to execute and deliver the conveyance according to the directions contained in the decree; and a certified copy thereof shall be recorded with the deed in the office of the auditor of the county where the lands lie, and shall be conclusive evidence of the correctness of the proceedings and of the authority of the executor, administrator or commissioner to make such conveyance.

SEC. 634. A copy of the decree for the conveyance made by the district court and duly certified and recorded in the office

132                    GENERAL LAWS.

of the auditor of the county, wherein the land is situate, shall give to the person entitled to the conveyance a right to the immediate possession of the land contracted for and of holding the same according to the terms of the intended conveyance, in like manner and with like effect, as if they had been conveyed in pursuance of the decree.

Sec. 635.    If the person to whom the conveyance was to be made, shall die before the commencement of the proceedings according to the provisions of this act, or before the completion of the conveyance, any person who would have been entitled to the conveyance under him, as heir, devisee or otherwise, in case the conveyance had been made according to the terms of the contract, or the executor or administrator of such deceased person, for the benefit of persons entitled, may commence such proceedings or prosecute the same if already commenced; and the conveyance shall be so made as to vest the estate in the same persons, who would have been entitled to it, or in the execution or administration for their benefit.

Sec. 636.    The testimony of witnesses in support of the claim of the petitioner, may be taken by deposition, before any officer authorized to administer oaths, whenever the deposition of such witness might be taken to be used in the trial of a civil action in the district court.    But notice of the particular time and place of taking such depositions shall be published by the petitioner in the paper required to be designated by the second section of the act, for three successive weeks prior to taking the same, which notice shall also state the name of the officer before whom the deposition is to be taken, and the name of the witnesses whose testimony is proposed to be taken, at such time and place.    Any party interested in the estate may appear and cross-interrogate such witnesses, and the manner of examination and the form of such deposition shall be in conformity with the chapter regulating depositions of witnesses residing in the Territory, although such witnesses may not reside therein.

Sec. 637.    Any party interested in the estate and resisting the claim of the petitioner, may after filing his objections take the testimony of witnesses in his behalf in like manner, and as in an affidavit for continuance in civil actions upon good cause shown and for that purpose, the court may postpone the final hearing of such petition until the testimony can be taken.

## CHAPTER 50.

### AUTHORITY TO CHANGE A PERSON'S NAME.

Section 638.    Any person desiring a change of his name or

that of his child or ward may apply therefor to the district court of the county in which he resides by petition setting forth the reasons for such change thereupon such court in its discretion may order a change of the name and thenceforth the new name shall be in place of the former.

## CHAPTER LI.

### NE EXEAT.

SEC. 639.  Actions may be commenced upon any agreement in writing, before the time for the performance of the contract expires, when the plaintiff or his agent shall make and file an affidavit with the clerk of the proper court, that the defendant is about to leave the Territory without performing or making provisions for the performance of the contract, taking with him property, moneys, credits or effects subject to execution, with intent to defraud the plaintiff.

SEC. 640.  Upon such affidavit being filed, the clerk shall issue an order of arrest and bail, directed to the sheriff, which shall be issued, served and returned, in all respects as such orders in other cases; before such order shall issue, the plaintiff shall file in the office of the clerk, a bond with sufficient surety, to be approved by the clerk, conditioned that the plaintiff will pay the defendant such damages and costs as he shall wrongfully sustain by occasion of the suit, which sureties shall justify as bail upon an arrest.

SEC. 641.  The sheriff shall require the defendant to enter into a recognizance of special bail, with sufficient surety, personally to appear on the first day of the court at its next term, and abide the order of the court, and in default thereof the defendant shall be committed to prison until discharged in due course of law; such special bail shall be liable for the principal and shall have a right to arrest and deliver him up, as in other cases, and the defendant may give other bail.

SEC. 642.  Instead of giving special bail as above provided the defendant shall be entitled to his discharge from custody if he will secure the performance of the contract to the satisfaction of the plaintiff.

SEC. 643.  This proceeding may be had in favor of any surety or other person jointly bound with the defendant.  It may also be prosecuted by the person in whose favor the con-

134                    GENERAL LAWS.

tract exists, against any one or more of the persons bound thereby, upon filing such affidavit, when the co-contractors are non-resident or probably insolvent, or at the request of any of them when they are residents and solvent.

SEC. 644.  The defendant may have the same remedy by writ of habeas corpus as in other cases of arrest and bail.

SEC. 645.  The proceedings may be had before justices of the peace in all cases within their jurisdiction.

SEC. 646.  The affidavit and bond may be filed, and proceedings had in any district where the defendants may be found.


## CHAPTER LII.

### ACTIONS OF SURETIES AGAINST PRINCIPALS.

SEC. 647.  Any person bound as surety upon any contract in writing for the payment of money or the performance of any act, when the right of action has accrued, may require by notice in writing the creditor or oblige forthwith to institute an action upon the contract.

SEC. 648.  If the creditor or obligee shall not proceed within a reasonable time to bring his action upon such contract, and prosecute the same to judgment and execution, the surety shall be discharged from all liability thereon.

SEC. 649.  When any action is brought against two or more defendants upon a contract, any one or more of the defendants being surety for the others, the surety may, upon a written complaint to the court, cause the question of securityship to be tried and determined upon the issues made by the parties at the trial of the cause, or at any time before or after the trial, or at a subsequent term, but such proceedings shall not affect the proceedings of the plaintiff.

SEC. 650.  If the finding upon such issue be in favor of the surety, the court shall make an order directing the sheriff to levy the execution upon, and first exhaust the property of the principal before a levy shall be made upon the property of the surety, and the clerk shall indorse a memorandum of the order upon the execution.

SEC. 651.  When any defendant, surety in a judgment or special bail or replevin bail, or surety in a delivery bond or replevin bond, or any person being surety in any bond whatever, has been or shall be compelled to pay any judgment or any part

thereof, or shall make any payment which is applied upon such judgment by reason of such suretyship, or when any sheriff or other officer or other surety upon his official bond, shall be compelled to pay any judgment or any part thereof by reason of any default of such officer, except for failing to pay over money collected, or for wasting property levied upon, the judgment shall not be discharged by such payment, but shall remain in force for the use of the bail, surety, officer or other person making such payment, and after the plaintiff is paid, so much of the judgment as remains unsatisfied may be prosecuted to execution for his use.

Sec. 652.  Any one of several judgment defendants, and any one of several replevin bail having paid and satisfied the plaintiff, shall have the remedy provided in the last section against the co-defendants or co-sureties to collect of them the rateable proportion each is equitably bound to pay.

Sec. 653.  No surety or his representative shall confess judgment or suffer judgment by default in any case where he is notified that there is a valid defense, if the principal will enter himself defendant to the action and tender to the surety or his representatives good security to indemnify him, to be approved by the court.

Sec. 654.  The foregoing provisions of this chapter shall extend to heirs, executors and administrators of deceased persons, but the provisions of the five hundred and eighty-fifth section shall not operate against persans under legal disabilities.

## CHAPTER LIII.

### SUITS ON OFFICIAL BONDS, FINES AND FORFEITURES.

Sec. 655.  The official bond of a public officer to the Tertory, or to any county, city, town or other municipal or public corporation of like character therein, shall be deemed a security to the Territory, or to such county, city, town or other municipal or public corporation, as the case may be, and also to all persons severally for the official delinquencies against which it is intended to provide.

Sec. 556.  When a public officer by official misconduct or neglect of duty, shall forfeit his official bond or render his sureties therein liable upon such bond, any person injured by such misconduct or neglect, or who is by law entitled to the benefit

of the security, may maintain an action at law thereon in his own name against the officer and his sureties to recover the amount to which he may by reason thereof be entitled.

SEC. 657. Before an action can be commenced by a plaintiff other than the Territory, or the municipal or public corporation named in the bond, leave shall be obtained of the court or judge thereof where the action is triable. Such leave shall be granted upon the production of a certified copy of the bond and an affidavit of the plaintiff, or some person on his behalf, showing the delinquency. But if the matter set forth in his affidavit be such that if true, the party applying would clearly not be entitled to recover in the action, the leave shall not be granted. If it does not appear from the complaint that the leave herein provided for has been granted, the defendant, on motion, shall be entitled to judgment of non-suit; if it does, the defendant may controvert the allegation, and if the issue be found in his favor, judgment shall be given accordingly.

SEC. 658. A judgment in favor of a party for one delinquency shall not preclude the same or another party from maintaining another action on the same bond for another delinquency.

SEC. 659. In an action upon an official bond, if judgments have been recovered against the surety therein, other than by confession, equal in the aggregate to the penalty or any part thereof of such bond, and if such recovery be established on the trial, judgment shall not be given against such surety for an amount exceeding such penalty, or such portion thereof as is not already recovered against him.

SEC. 660. Fines and forfeitures may be recovered by an action at law in the name of the officer or person to whom they are by law given, or in the name of the officer or person who by law is authorized to prosecute for them.

SEC. 661. When an action shall be commenced for a penalty, which by law is not to exceed a certain amount, the action may be commenced for that amount, and if judgment be given for the plaintiff, it may be for such amount or less, in the discretion of the court, in proportion to the offense.

SEC. 662. A recovery of a judgment for a penalty or forfeiture by collusion between the plaintiff and defendant, with intent to save the defendant wholly or partially from the consequences contemplated by law, in case when the penalty or forfeiture is given wholly or partly to the person who prosecutes, shall not bar the recovery of the same by another person.

SEC. 663. Fines and forfeitures not specially granted or otherwise appropriated by law, when recoverd, shall be paid into the treasury of the proper county. Whenever by the provisions of law, any property real or personal shall be forfeited

to the Territory, or to any officer for its use, the action for the recovery of such property may be commenced in any county where the defendant may be found or where such property may be.

## CHAPTER LIV.

ACTIONS BY AND AGAINST PUBLIC CORPORATIONS AND OFFICERS.

SEC. 664. An action at law may be maintained by any county, incorporated town, school district or other public corporation of like character in this Territory, in its corporate name, and upon a cause of action accruing to it, in its corporate character and not otherwise, in either of the following cases:

1.  Upon a contract made with such public corporation.

2.  Upon a liability prescribed by law in favor or such public corporation.

3.  To recover a penalty or forfeiture given to such public corporation.

4   To recover damages for an injury to the corporate rights or property of such public corporation.

SEC. 665. An action may be maintained against a county or other of the public corporations mentioned or described in preceding section either upon a contract made by such county or other public corporation in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.

SEC. 666. In such actions the pleadings of the public corporation shall be verified by any of the officers representing it in its corporate capacity, in the same manner as if such officer was a defendant in the action, or by the agent or attorney thereof as in ordinary actions.

SEC. 667. If judgment be given for the recovery of money or damages against such county or other public corporation, no execution shall issue thereon for the collection of such money or damages, but such judgment in such respect shall be satisfied as follows:

1.  The party in whose favor such judgment is given may at any time thereafter when execution might issue on a like judgment against a private person, present a certified transcript of the docket thereof to the officer of such county or other public

18

138                    GENERAL LAWS.

corporation who is authorized to draw orders on the treasury thereof.

2. On the presentation of such transcript such officer shall draw an order on such treasurer for the amount of the judgment in favor of the party for whom the same was given. Thereafter such order shall be presented for payment and paid with like effect and in like manner as other orders upon the treasurer of such county or other public corporation.

3. The certified transcript herein provided for shall not be furnished by the clerk unless at the time an execution might issue on such judgment if the same were against a private person, nor until satisfaction of the judgment in respect to such money or damages be acknowledged as in ordinary cases. The clerk shall include in the transcript a memorandum of such acknowledgment of satisfaction and the entry thereof. Unless the transcript contain such memorandum no order upon the treasurer shall issue thereon.

SEC. 668. Should the proper officer of said corporation fail or refuse to satisfy said judgment as in the preceding section provided, an attachment may be issued to compel his performance of said duty.

## CHAPTER LV.

### HABEAS CORPUS.

SEC. 669. Every person restrained of his liberty under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal.

SEC. 670. Application for the writ shall be made by complaint, signed and verified either by the plaintiff or by some person in his behalf, and shall specify:

1. By whom the person in whose behalf the writ is applied for, is restrained of his liberty, and the place where, (naming the parties if they are known, or describing them if they are not known.)

2. The cause or pretense of the restraint according to the best of the knowledge and belief of the applicant.

3. If the restraint be alleged to be illegal, in what the illegality consists.

SEC. 671. Writs of habeas corpus may be granted by the

supreme court or district court, or by any judge of either court, whether in term or vacation, and upon application the writ shall be granted without delay.

Sec. 672. The writ shall be directed to the officer or party having the person under restraint, commanding him to have such person before the court or judge at such time and place as the court and judge shall direct, to do and receive what shall be ordered concerning him, and have then and there the writ.

Sec. 673. If the writ be directed to the sheriff, it shall be delivered by the clerk to him without delay.

Sec. 674. If the writ be directed to any other person, it shall be delivered to the sheriff and shall be by him served by delivering the same to such person without delay.

Sec. 675. If the person to whom such writ is directed cannot be found, or shall refuse admittance to the sheriff, the same may be served by leaving it at the residence of the person to whom it is directed, or by posting the same on some conspicuous place, either of his dwelling house or where the party is confined or under restraint.

Sec. 676. The sheriff or other person to whom the writ is directed shall make immediate return thereof, and if he refuse after due service to make return, the court shall enforce obedience by attachment.

Sec. 677. The return must be signed and verified by the person making it, who shall state:

1. The authority or cause of the restraint of the party in his custody.

2. If the authority shall be in writing, he shall return a copy and produce the original on the hearing.

3. If he has had the party in his custody or under his restraint, and has transferred him to another, he shall state to whom, the time, place and cause of the transfer. He shall produce the party at the hearing unless prevented by sickness or infirmity, which must be shown in the return.

Sec. 678. The court or judge, if satisfied of the truth of the allegation of sickness or infirmity, may proceed to decide on the return, or the hearing may be adjourned until the party can be produced, or for other good cause. The plaintiff may except to the sufficiency of, or controvert the return or any part thereof, or allege any new matter in evidence. The new matter shall be verified except in cases of commitment on a criminal charge. The return and pleadings may be amended without causing a delay.

Sec. 679. The court or judge shall thereupon proceed in a summary way to hear and determine the cause, and if no legal

GENERAL LAWS.

cause be shown for the restraint or for the continuation thereof, shall discharge the party.

Sec. 680.   No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

1.   Upon any process issued on any final judgment of a court of competent jurisdiction.

2.   For any contempt of any court, officer or body having authority in the premises to commit; but an order of commitment, as for a contempt upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications.

3.   Upon a warrant issued from the district court upon an indictment or information.

Sec. 681.   No person shall be discharged from an order of commitment issued by any judicial or peace officer for want of bail, or in cases not bailable on account of any defect in the charge or process, or for alleged want of probable cause; but in all cases the court or judge shall summon the prosecuting witnesses, investigate the criminal charge, and discharge, admit to bail or re-commit the prisoner, as may be just and legal, and recognize witnesses when proper.

Sec. 682.   The writ may be had for the purpose of admitting a prisoner to bail in civil and criminal actions.   When any person has an interest in the detention, and the prisoner shall not be discharged until the person having such interest is notified.

Sec. 683.   The court or judge shall have power to require and compel the attendance of witnesses, and to do all other acts necessary to determine the case.

Sec. 684.   No sheriff or other officer shall be liable to a civil action for obeying any writ of habeas corpus or order of discharge made thereon.

Sec. 685.   Whenever it shall appear by affidavit that any one is illegally held in custody or restraint, and that there is good reason to believe that such person will be carried out of the jurisdiction of the court or judge before whom the application is made, or will suffer some irreparable injury before compliance with the writ can be enforced, such court or judge may cause a warrant to be issued reciting the facts, and directed to the sheriff or any constable of the county, commanding him to take the person thus held in custody or restraint, and forthwith bring him before the court or judge to be dealt with according to law.

Sec. 687.   The court or judge may also, if the same be deemed necessary, insert in the warrant a command for the

apprehension of the person charged with causing the illegal restraint.

SEC. 688. The officer shall execute the writ by bringing the person therein named before the court or judge, and the like return of proceedings shall be required and had as in case of writ of habeas corpus.

SEC. 689. The court or judge may make any temporary orders in the cause or disposition of the party during the progress of the proceedings that justice may require. The custody of any party restrained may be changed from one person to another, by order of the court or judge.

SEC. 690. Any writ or process authorized by this chapter may be issued and served, in case of emergency, on Sunday.

SEC. 691. All writs and other process authorized by this chapter shall be issued by the clerk of the court, and sealed with the seal of such court, and shall be served and returned forthwith, unless the court or judge shall specify a particular time for such return. And no writ or other process shall be disregarded for any defect therein, if enough is shown to notify the officer or person of the purport of the process. Amendments may be allowed and temporary commitments when necessary.

SEC. 692. Writs of habeas corpus shall be granted in favor of parents, guardians, masters and husbands, and to enforce the rights, and for the protection of infants and insane persons; and the proceedings shall in all cases conform to the provisions of this chapter.

# CHAPTER LVI.

## MANDATE AND PROHIBITION.

SEC. 693. Writs of mandate and prohibition may issue from the supreme and district courts of the Territory, but such writs shall issue from the supreme court only when necessary for the exercise of its functions and powers. In the district court the writ may be made returnable either in term time or vacation, and may be tried before the judge of said court in like manner and with like effect as in term time.

SEC. 694. The district court or judge thereof of the county wherein the defendant, if a public officer or body, exercise his or its functions, or if a private person or corporation, wherein such person resides or may be found, or such private corporation might be sued in an action, shall have exclusive

· 142                      GENERAL LAWS.

jurisdiction of the proceeding, except that the supreme court shall have jurisdiction in all cases where it may be necessary or proper to enable such court to maintain its appellate jurisdiction.

Sec. 695. Writs of mandate may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. But though the writ may require such court, corporation, board, officer or person, to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is any other plain and adequate remedy.

Sec. 696. The writ shall be issued upon affidavit and motion, and shall be attested and sealed, and made returnable as the court shall direct, and the person, body, or tribunal, to whom the same shall be directed and delivered, shall make return, and for neglect to do so, shall be prceeded against as for contempt.

Sec. 697. The first writ shall be in the alternative or peremptory, as the court shall direct.

Sec. 698. Whenever a return shall be made to any such writ, issues of law and fact may be joined, and like proceedings shall be had for the trial of issues and rendering judgment as in civil actions.

Sec. 699. In case a verdict shall be found for plaintiff when the writ is in the alternate, or if judgment be given for him, he shall recover damages as in an action for a false return, against the party making the return, and a peremptory writ shall be granted without delay.

Sec. 700. The court shall have the same power to enlarge the time of making a return and pleading to such writ, and for filing any subsequent pleadings, and to continue such cause, as in civil actions.

Sec. 701. Obedience to such writ, may be enforced by attachment and fine and imprisonment, or both.

Sec. 702. The writ of prohibition shall command the court and party to whom it shall be directed, to refrain from any further proceedings in the matter therein specified, until the return of the writ and the further order of the court thereon, and upon the return, to show cause why they shall not be absolutely restrained from further proceeding in the matter.

Sec. 703. The court shall render judgment either that a prohibition absolute, restraining the court and party proceeding in the matter, do issue, or authorizing the court and party to proceed in the matter in question.

Sec. 704.  Costs shall be awarded in these proceedings as in civil actions.

Sec. 705.  From the judgment of the district court or judge thereof refusing or directing such writs, an appeal or writ of error may be taken to the supreme court in like manner and effect as in civil actions.

## CHAPTER LVII.

### INFORMATION.

Sec. 706.  An information may be filed against any person or corporation in the following cases:

1.  When any person shall usurp, intrude into, or unlawfully hold or exercise any public office or franchise within the Territory, or any office in any corporation created by the authority of the Territory.

2.  Whenever any public officer shall have done or suffered any act, which, by the provisions of law, shall work a forefeiture of his office.

3.  When several persons claim to be entitled to the same office or franchise, one information may be filed against any or all such persons in order to try their respective rights to the office or franchise.

4.  Where any association or number of persons shall act within this Territory as a corporation, without being legally incorporated.

5.  Or where any corporation do, or omit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or where they exercise powers not conferred by law.

Sec. 707.  The information may be filed by the prosecuting attorney in the district court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise or corporation which is the subject of the information.

Sec. 708.  The information shall consist of a plain statement of the facts which constitute the grounds of the proceedings, addressed to the court.

Sec. 709.  Whenever an information shall be filed against ·

144                GENERAL LAWS.

a person for usurping an office by the prosecuting attorney, he shall also set forth therein the name of the person rightfully entitled to the office, with an averment of his right thereto; and when filed by any other person he shall show his interest in the matter, and he may claim the damages he has sustained.

SEC. 710. Whenever an information is filed, a notice signed by the relator shall be served and returned as in other actions. The defendant shall appear and answer, or suffer default, and subsequent proceedings be had as in other cases.

SEC. 711. In every case wherein the right to an office is contested, judgment shall be rendered upon the rights of the parties, and for the damages the relator may show himself entitled to, if any, at the time of the judgment.

SEC. 712. If judgment be rendered in favor of the relator he shall proceed to exercise the functions of the office, after he has been qualified as required by law, and the court shall order the defendant to deliver over all books and papers in his custody or within his power, belonging to the office from which he shall have been ousted.

SEC. 713. If the defendant shall refuse or neglect to deliver over the books and papers pursuant to the order, the court or judge thereof shall enforce the order by attachment and imprisonment.

SEC. 714. When judgment is rendered in favor of the plaintiff, he may, if he has not claimed his damages in the information, have his action for the damages at any time within one year after the judgment.

SEC. 715. Whenever any defendant shall be found guilty of any usurpation of or intrusion into, or unlawfully exercising any office or franchise within this Territory, or any office in any corporation created by the authority of this Territory, or when any public officer thus charged shall be found guilty of having done or suffered any act which by the provisions of the law shall work a forfeiture of his office, or when any association or number of persons shall be found guilty of having acted as a corporation without having been legally incorporated, the court shall give judgment of ouster against the defendant or defendants, and exclude him or them from the office, franchise or corporate rights, and in case of corporations that the same shall be dissolved, and the court shall adjudge costs in favor of the plaintiff.

SEC. 716. If judgment be rendered against any corporation or against any persons claiming to be a corporation, the court may cause the costs to be collected by executions against the persons claiming to be a corporation, or by attachment against the directors or other officers of the corporation, and shall restrain the corporation, appoint a receiver of its property and

effects, take an account and make a distribution thereof among the creditors.    The prosecuting attorney shall immediately institute proceedings for that purpose.

Sec. 717.    Whenever any property shall be forfeited to the Territory for its use, the legal title shall be deemed to be in the Territory from the time of the forfeiture, and an informaation may be filed by the prosecuting attorney in the district court for the recovery of the property, alleging the ground on which the recovery is claimed, and like proceedings and judgment shall be had as in civil action for the recovery of the property.

Sec. 718.    When an information is filed by the prosecuting attorney he shall not be liable for the costs, but when it is filed upon the relation of a private person he shall be liable for costs unless the same are adjudged against the defendant.

Sec. 719.    An information may be prosecuted for the purpose of annulling or vacating any letters patent, certificate or deed granted by the proper authorities of this Territory, when there is reason to believe that the same were obtained by fraud or through mistake or ignorance of a material fact, or when the patentee or those claiming under him have done or omitted an act in violation of the terms on which the letters, deeds or certificates were granted, or have by any other means forfeited the interest acquired under the same.

Sec. 720.    In such cases the information may be filed by the prosecuting attorney upon his relation, or by any private person upon his relation showing his interest in the subject matter; and the subsequent proceeding, judgment of the court and awarding of costs, shall conform to the above provisions, and such letters patent, deed or certificate shall be annulled or sustained, according to the right of the case.

# CHAPTER LVIII.

### ACTIONS BY AND AGAINST EXECUTORS.

Sec. 721.    When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action had he lived, against the latter, for an injury caused by the same act or omission.    Such action shall be commenced within two years

after the death, and the damages therein shall not exceed five thousand dollars, and the amount recovered, if any, shall be administered as other personal property of the deceased person.

SEC. 722. All other causes of action by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives.

SEC. 723. In an action against several executors or administrators, they shall all be considered as one person representing their testator or intestate, and judgment may be given and execution issued against all of them who are defendants in the action, although the notice be served only on part of them in the same manner and with like effect as if served on all, except as provided in the next section.

SEC. 724. When a judgment is given against an executor or administrator for want of answer, such judgment is not to be deemed evidence of assets in his hands, unless it appear that the complaint alleged assets and that the notice was served upon him.

SEC. 725. In an action against executors and administrators, in which the fact of their having administered the estate of their testator or intestate, or any part thereof, is put in issue and the inventory of the property of the deceased returned by them is given in evidence, the same may be contradicted or avoided by evidence:

1. That any property has been omitted in such inventory or was not returned therein at its full value, or that since the return thereof such property has increased in value.

2. That such property has perished or been lost without the fault of such executors or administrators, or that it has been fairly and duly sold by them at a less price than the value so returned, or that since the return of the inventory such property has deteriorated in value. In such action the defendants cannot be charged for any things in action specified in their inventory, unless it appear that they have been collected or with due diligence might have been.

SEC. 726. No person is liable to an action as executor of his own wrong for having taken, received or interfered with the property of a deceased person, but is responsible to the executors or administrators of such deceased person for the value of all property so taken or received, and for all injury caused by his interference with the estate of the deceased.

SEC. 727.   An executor of an executor has no authority as such to commence or maintain an action or proceeding relating to the estate of the testator of the first executor, or to take any charge or control thereof.

SEC. 728.   An action may be commenced against an executor or administrator at any time after the expiration of one year from the granting of letters testamentary or of administration, and until the final settlement of the estate and discharge of such executor or administrator, or from the trust and not otherwise: *Provided*, The claim upon which suit is brought has been duly presented according to law.

SEC. 729.   In an action against an executor or administrator as such, the remedies of arrest and attachment shall not be allowed on account of the acts of his testator or intestate, but for his own acts as such executor or administrator, such remedies shall be allowed for the same causes in the manner and with like effect as in actions at law generally.

## CHAPTER LIX.

### CONTEMPTS AND THEIR PUNISHMENT.

SEC. 730.   The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:

1.   Disorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings.

2.   A breach of the peace, boisterous conduct or violent disturbance tending to interrupt the due course of a trial or other judicial proceeding.

3.   Misbehavior in office or other wilful neglect or violation of duty by an attorney, clerk, sheriff or other person appointed or selected to perform a judicial or ministerial service.

4.   Deceit, abuse of the process or proceedings of the court by a party to an action, suit or special proceeding.

5.   Disobedience of any lawful judgment, degree, order or process of the court.

6.   Assuming to be an attorney or other officer of the court, and acting as such without authority in a particular instance.

148                           GENERAL LAWS.

7.   Rescuing any person or property in the lawful custody of an officer, held by such officer under an order or process of such court.

8.   Unlawfully detaining a witness or party to an action, suit or proceeding, while going to, remaining at or returning from the court where the same is for trial.

9.   Any other unlawful interference with the process or proceedings of a court.

10.   Disobedience of a subpœna duly served, or refusing to be sworn or answer as a witness.

11.   When summoned as a juror in a court, improperly conversing with a party to an action, suit or proceeding to be tried at such court, or with any other person in relation to the merits of such action, suit or proceeding, or receiving a communication from a party or other person in respect to it, without immediately disclosing the same to the court.

12.   Disobedience by an inferior tribunal, magistrate or officer, of the lawful judgment, decree, order or process of a superior court, or proceeding in an action, suit or proceeding, contrary to law, after such action, suit or proceeding shall have been removed from the jurisdiction of such inferior tribunal, magistrate or officer.

SEC. 731.   Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not one of those mentioned in sub-divisions one and two of the last section, it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars.

SEC. 732.   .When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed.

SEC. 733.   In cases other than those mentioned in preceding section, before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance.

Sec. 734. If the party charged be in the custody of an officer by virtue of a legal order or process, civil or criminal, except upon a sentence for a felony, an order may be made for the production of such person by the officer having him in custody that he may answer, and he shall thereupon be produced and held until an order be made for his disposal.

Sec. 735. In the proceeding for a contempt, the Territory is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney on behalf of the Territory, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the Territory.

Sec. 736. Whenever a warrant of arrest is issued pursuant to this chapter, the court or judicial officer shall direct therein whether the person charged may be let to bail for his appearance upon the warrant, or detained in custody without bail, and if he may be bailed, the amount in which he may be let to bail. Upon executing the warrant of arrest, the sheriff must keep the person in actual custody, bring him before the court or judicial officer and detain him until an order be made in the premises, unless the person arrested execute and deliver to the sheriff, at any time before the return day of the warrant, a bond with two sufficient sureties, to the effect that he will appear on such return day and abide the order or judgment of the court or officer thereupon.

Sec. 737. The sheriff shall return the warrant of arrest and the bond, if any, given him by the defendant, by the return day therein specified. When the defendant has been brought up or appeared, the court or judicial officer shall proceed to investigate the charge by examining such defendant, and witnesses for or against him, for which an adjournment may be had from time to time, if necessary.

Sec. 738. Upon the evidence so taken, the court or judicial officer shall determine whether or not the defendant is guilty of the contempt charged; and, it be determined that he is so guilty, shall sentence him to be punished as provided in this chapter.

Sec. 739. If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury.

Sec. 740. When the contempt consists in the omission or

150                    GENERAL LAWS.

refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he shall have performed it, and in such case the act must be specified in the warrant of commitment.

SEC. 741.   Persons proceeded against according to the provisions of this chapter, are also liable to indictment for the same misconduct, if it be an indictable offense, but the court before which a conviction is had on the indictment, in passing sentence shall take into consideration the punishment before inflicted.

SEC. 742.   When the warrant of arrest has been returned served, if the defendant do not appear on the return day, the court or judicial officer may issue another warrant of arrest, or may order the bond to be prosecuted, or both.   If the bond be prosecuted and the aggrieved party join in the action, and the sum specified therein be recovered, so much thereof as will compensate such party for the loss or injury sustained by reason of the misconduct for which the warrant was issued, shall be deemed to be recovered for such party exclusively.

SEC. 743.   Either party to a judgment in a proceeding for a contempt, may appeal therefrom in like manner and with like effect as from judgment in an action, but such appeal shall not have the effect to stay the proceeding in any other action, suit or proceeding, or upon any judgment, decree or order therein, concerning which, or wherein such contempt was committed.   Contempts of justice's courts are punishable in the manner specially provided in the "act relating to justices of the peace and to their practice and jurisdiction."

## CHAPTER LX.

### SUITS ON FOREIGN JUDGMENTS.

SEC. 744.   Judgment for debt rendered in any State or other Territory against any person or persons residents of this Territory at the time of the rendition of such judgment, shall not be of any higher character as evidence of indebtedness than the original claim or demand upon which such judgment is rendered, unless such judgment shall be rendered upon personal service of summons, notice or other due process against the defendant therein.

SEC. 745.   The same defense to suits on judgments rendered without such personal service may be made by the judgment

debtor which might have been set up in the original proceeding.

## CHAPTER LXI.

### MISCELLANEOUS PROVISIONS.

SEC. 746.   Pleadings sworn to by either party in any case shall not on the trial be deemed proof of the facts alleged therein, nor require other or greater proof on the part of the adverse party.

SEC. 747.   When a new party is introduced into an action, as a representative or successor of a former party, such new party is entitled to the same notice, to be given in the same manner, as required for defendants in the commencement of an action.

SEC. 748.   The time within which an act is to be done, as herein provided shall be computed by excluding the first day, and including the last.   If the last day be Sunday it shall be excluded.

SEC. 749.   All process issuing out of the district court shall be directed to the sheriff of the county in which it was to be served, and be by him executed according to law.

SEC. 750.   When there is no sheriff of a county, or he is disqualified from any cause from discharging any particular duty, it shall be lawful for the officer or person commanding or desiring the discharge of that duty, to appoint some suitable person, a citizen of the county, to execute the same: *Provided*,   That final process shall in no case be executed by any other person than the legally authorized officer; or in case he is disqualified, some suitable person appointed by the court, or judge thereof, out of which the process issues, who shall make such appointment in writing; and before such appointment shall take effect, the person so appointed shall give security to the party interested for the faithful performance of his duties, which bond of suretyship shall be in writing, be approved by the court or judge appointing him, and be placed on file with the papers in the case.

SEC. 751.   In all cases where notice is required by this act, it shall be in writing, and must be duly served upon the party. If served by an officer whose duty it is to serve process, his return shall be sufficient.   It may be served, however, when not otherwise especially provided herein, by any disinterested person.

152                    GENERAL LAWS.

in which event, proof of service must be established by the affidavit of the person making such service.

SEC. 752. Every charge of incest, fornication, adultery, or whoredom, falsely made by any person against a female; also words falsely spoken of any person charging such person with incest or the infamous crime against nature, either with mankind or the brute creation, shall be actionable in the same manner as in the case of slanderous words charging a crime, the commission of which would subject the offender to death or other degrading penalties.

SEC. 753. Every court and officer authorized to take any bail or surety shall have power to examine on oath the person offering to become such bail or surety, concerning his property, and sufficiency as such bail or surety.

SEC. 754. No bond required under the provisions of this act, and intended as such bond, shall be void for want of form or substance, recital, or condition; nor shall the principal or surety on such account be discharged, but all the parties thereto shall be held and bound to the full extent contemplated by the law requiring the same, to the amount specified in such bond. In all actions on such defective bond, the plaintiff may state its legal effect, in the same manner as though it were a perfect bond.

SEC. 755. Any person required to give bail, may deposit with the clerk the amount of money for which he is required to give bail, and thereupon be discharged from arrest.

SEC. 756. The widow, or widow and children, or child or children, if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds, and all aiders or abettors, and shall recover such a sum as to the jury shall seem reasonable.

SEC. 757. When a defendant in execution owns real estate subject to execution, jointly or in common with any other person, the judgment shall be a lien, and the execution be levied upon the interest of the defendant only. When he owns personal property jointly, or in co-partnership with any other person, and the interest cannot be separately attached, the sheriff shall take possession of the property, unless the other person having an interest therein shall give the sheriff a sufficient bond, with surety, to hold and manage the property according to law; and the sheriff shall then proceed to sell the interest of the defendant in such property, describing such interest in his advertisement as nearly as may be, and the purchaser shall acquire all the interest of such defendant therein; but nothing herein contained shall be so construed as to deprive the co-partner of any such

defendants or interested in any such property subjecting the same to the debts of the co-partnership.

Sec. 758.    Any party having a judgment upon any justice's docket, upon which an execution has been returned unsatisfied, and no property found, may take a transcript of such judgment and return it to the clerk of the district court embracing his county, and upon making an affidavit that the defendant has real estate in any county of said district subject to execution, the clerk shall enter the judgment in the execution docket, in the same manner as judgments of the district court, and thereafter it shall stand and execution be issued thereon as upon the judgment of the district court.    A transcript thereof shall, as in other judgments, be recorded by the county auditor and remain a lien upon real estate in the county where so recorded.

# CHAPTER LXII.

## OF CONSTRUCTION.

Sec. 759.    For all necessary purposes connected with the district court each district shall be considered and held to be but one county; and whenever in this act the words district or county occur, the same may be rendered county or district, as may be necessary: *Provided*, That nothing herein contained shall be construed to confer jurisdiction upon county officers or extend their powers beyond the limits of their counties.

Sec. 760.    Whenever any term indicating an officer is used it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer.

Sec. 761.    Words importing the singular number only may also be applied to the plural of persons and things, and words importing the masculine gender only, may be extended to females also.

Sec. 762.    In actions already commenced, the pleadings to be had to form issues, the manner of procuring testimony, the examination of parties, the trial and rendition of judgment and all proceedings, shall conform to the provisions of this act as far as practicable.

Sec. 763.    The provisions of this act shall be liberally construed, and shall not be limited by any rule of strict construction.

Sec. 764.    All acts or parts of acts heretofore enacted upon

Case 3:22-cv-05938-JCC    Document 1    Filed 12/01/22    Page 481 of 1015

154    GENERAL LAWS.

any subject matter contained in this act, be and the same are hereby repealed: *Provided*, That rights acquired in actions now pending under existing laws shall not be affected by anything herein contained.

Sec. 765. This act shall take effect and be in force from and after the first day of January, 1878.

Approved November 8, 1877.

---

# AN ACT

TO PROVIDE FOR THE ASSESSING AND COLLECTING OF COUNTY AND TERRITORIAL REVENUE.

## CHAPTER I.

PROPERTY AND POLLS SUBJECT TO ASSESSMENT AND TAXATION.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That all property real and personal within this Territory not expressly exempted therefrom, shall be subject to taxation in the manner provided by law.*

Section 2. The terms "real property" and "land" whenever used in this act shall be held to mean and include not only the land itself whether laid out into town lots or otherwise with all things contained therein, but also all buildings, structures, improvements, trees and other fixtures of whatever kind thereon; and all rights and privileges belonging or in anywise appertaining thereto. Nothing in this section contained, however, shall be construed to exempt from taxation any building, structure, improvement, tree or other fixture of any kind, or any right or privilege whatever, owned by any person, which is located upon or appertains to, land which he does not own.*

Section 3. The terms "personal estate" and "personal property" shall be construed to include all household furniture, goods, chattels, moneys, and gold dust in hand or on deposit, either within or without this Territory and not elsewhere taxed; all boats and vessels whether at home or abroad and all capital invested therein; all debts due or to become due from solvent debtors over and above liabilities whether on account, contract,

*See note at end of this act.

note, mortgage, or otherwise, all public stocks, and stocks or shares in all incorporated companies, and such portion of the capital of incorporated companies liable to taxation on their capital, as shall not be invested in real estate, and all buildings, structures, improvements, trees, and other fixtures of any kind on land, and all rights and privileges whatever appertaining to land, the title to which is not in the owner of the land.

SECTION 4.    The following property shall be exempt from taxation:

1.    All property, real and personal of the United States and of this Territory.

2.    All public or corporate property of the several counties, cities, villages, towns, and school districts in this Territory used or intended for corporate purposes, also all burial ground tombs and rights of burial.

3.    All buildings used exclusively for public worship, and Sabbath schools, and their contents, and the lot upon which they are built, *Provided*, That all such church property when valued at more than three thousand dollars shall pay a tax upon all above the said value.    But any part of any building, being a house of public worship, which shall be kept or used for any other purpose, except for public worship, shall be taxed upon the cash valuation thereof the same as personal property to the owner or owners or to the occupant or occupants; and the taxes shall be collected thereon in the same manner as other taxes.

4.    Household furniture to the amount of one hundred dollars.

SEC.    5.    A poll tax of two dollars shall be assessed upon every male inhabitant of this Territory between the ages of twenty-one and fifty years the same payable in money of the United States and to be applied to county purposes.    And the county commissioners may reserve so much of said funds in the treasury of the county as they may deem necessary to pay the incidental expenses of the county.*

# CHAPTER II.

### PROPERTY, WHERE AND TO WHOM ASSESSED.

SECTION 6.    All lands shall be assessed in the county in which the same shall lie in the name of the owner; but land

*See note at end of this act.

owned by one person and occupied by another may be assessed in the name of the owner, or occupant; and unoccupied land may be assessed as such, without inserting the name of any owner, and every person shall be assessed in the county in which he resides when the assessment is made for all taxable personal property owned by him wheresoever situated on the day of commencing the assessment, including all personal property in his possession or under his control as trustee, guardian, executor or administrator and where there are two or more persons jointly in possession or having control of any such property the same may be assessed to either or all such persons, but it shall be assessed in the county where situated if either of such persons reside in such county.

SECTION 7. The real estate of incorporated companies liable to taxation shall be assessed in the county in which the same shall lie, in the same manner as the real estate of individuals.

SECTION 8. The undivided estate of any deceased person may be assessed to the heirs or devisees of such person, unless occupied by some other person to whom it may be assessed without designating them by name until they shall have given notice to the assessor of the division of the estate, and the names of the several heirs or devisees; and each heir and devisee shall be liable for the whole of such tax, and shall have a right to recover of the other heirs and devisees their respective portions thereof, when paid.

SECTION 9. All goods, wares and merchandise kept for sale in this Territory; all stock employed in any of the mechanic arts; and all capital and machinery employed in any branch of manufactures or other business within this Territory, owned .by any corporation or any person out of this Territory shall be taxable in the county where the same may be, either to the owner thereof or to the person who shall have charge of or be in possession of the same.

SECTION .10. Partners in mercantile or other business may be jointly taxed on their partnership name or severally taxed for their individual shares for all personal property employed in such business and in case they are jointly taxed each partner shall be liable for the whole tax.

SECTION 11. The personal property of any private corporation is liable to assessment and taxation unless otherwise specially provided, and shall be assessed in the name of such corporation, in the county where the principal office or place of business of such corporation is located; but if such corporation is engaged in the business of railroading the rolling stock of such rail road shall be assessed in each county in this Territory

through which it runs, that is to say each county's portion must bear to the whole rolling stock the same ratio which the number of miles of the road in such county bears to the whole number of miles of such road lying in this Territory. The personal property of a private corporation may be seized and sold for any tax levied upon the property of such corporation as in the case of a natural person.

SECTION 12. The owner or holder of stock in any incorporated company which is taxed on its capital shall not be taxed as an individual for such stock.

SECTION 13. When personal property is mortgaged or pledged it shall for the purpose of taxation be deemed the property of the person who has the possession.

## CHAPTER III.

### MANNER OF MAKING ASSESSMENT.

SECTION 14. For the purpose of this act this Territory shall be divided into two districts. The counties of Stevens, Whitman, Columbia, Walla Walla, Yakima and Klickatat shall constitute the first district and all the other counties of the Territory shall constitute the second district. Between the first Monday of February and the fourth Monday of April in every year the assessor of each county in the second district, and between the first Monday of April and the fourth Monday of June in every year the assessor of each county in the first district shall ascertain by diligent inquiry the names of all persons liable to taxation in his county and also all the taxable personal property and all real estate therein, and make out an assessment roll of all taxable property and appraise the same according to the provisions of the statutes relating thereto.

SECTION 15. Each assessor shall require every person liable to be taxed in his county to furnish him a list of his real estate situated in his county liable to taxation and a list of all personal property owned by every such person, liable to taxation in this Territory stating the same in detail, and shall require such person to make oath that to the best of his knowledge and belief, such list contains a full and true account of all his property liable to be taxed in his county, and if any person shall refuse to furnish such list or to swear to the same when required so to do by the assessor such person shall forfeit and pay to the assessor for the use of the county the sum of fifty

dollars, which sum may be recovered by action in any court having jurisdiction of matters of debt or contract to the amount of fifty dollars, and costs of suit, such suit to be prosecuted by and in the name of the county.

SECTION 16. The assessor shall set down in an assessment roll to be prepared by himself in separate columns and according to the best information he can obtain.

1st. The names of all persons subject to taxation in his county and numbers of the road and school district of which each person assessed is a resident.

2d. A description of each tract or parcel of land to be taxed, specifying under separate heads the township, range, and section and the number of the school and road district in which the land lies, or if divided into lots and blocks then the number of the lot and block.

3d. The number of acres and parts of an acre, as near as the same can be ascertained unless the land be divided into lots and blocks.

4th. The number of acres and parts of acres in each parcel of land except town or city lots that are improved or cultivated.

5th. The full cash value of the improvements upon each lot or parcel of land assessed.

6th. The full cash value of each lot or parcel of land assessed.

7th. The full cash value of all the taxable personal property owned by or to be taxed against such persons as provided by law.

8th. The total valuation of all property assessed, real and personal.

SECTION 17. When lots are situated in any city, village, or town, or addition to such city, village, or town, a plat of which shall have been recorded, the city village town or addition in which the same are situated, shall be specified in the assessment roll.

SECTION 18. When any person is assessed as trustee, guardian executor or administrator a designation of his representative character shall be added to his name, and such assessment shall be entered in a separate line from his individual assessment, and he shall be assessed for the real estate held by him in such representative character for the full value thereof and for all personal property held by him in such representative character.

SECTION 19. If the land assessed be less, or other than a subdivision according to the United States survey, unless the same be divided into lots and blocks, so that it can be definitely

described it shall be described by giving the boundaries thereof or in such other manner as to make the description certain.

SECTION 20. It shall be sufficient to describe lands in all proceedings relative to assessing advertising or selling the same, for taxes by initial letters abbreviations, and figures to designate the township, range, section or part of section and also the number of the lots and blocks.

SECTION 21. Unoccupied lands liable to taxation, when the name of the owner is unknown shall be described, and the value thereof set down in the assessment roll, in a part thereof separate from the other assessment in the same manner that lands of residents are required to be designated.

SECTION 22. The assessment roll shall be made out in tabublar form in separate columns with appropriate heads, the columns of quantities and values to be footed up and carried forward to each succeeding page. The Territorial Auditor shall prescribe the form to be used (and) and shall furnish suitable blanks in the prescribed form for each assessment roll the same to be furnished to each county on or before the first Monday of February of each year.

SECTION 23. The assessment roll shall be made out and the oath of the assessor appended thereto, to the effect that the same contains the names of all persons liable for any tax, and a complete, true, and perfect list and description of all property within his county subject to taxation, so far as he could by diligent inquiry ascertain the same; and that the valuation of property therein is true and just, according to his best judgment, and in the first district each assessor shall return his assessment roll to the Auditor of his county on or before the second Monday of July of each year, and in the second district each Assessor shall return his assessment roll to the Auditor on or before the first Monday of May. And each assessment roll shall remain in the office of the Auditor where filed for the two weeks next after it is filed, and be open to public inspection.*

## CHAPTER IV.

### EQUALIZATION AND LEVY OF TAXES.

SECTION 24. The board of county commissioners of each county shall annually hold a term for the equalization of assess-

*see note at end of this act.

ments, the correction of the assessment roll, and the levying of taxes which term shall commence in the second district on the first Monday of May of each year and in the first district on the first Monday of August of each year, and continue until such business be completed; *Provided however*, That said term shall not be extended beyond the second Monday of June following in any county of the second district, nor beyond the second Monday of September in any county of the first district.*

SECTION 25. The board shall at said term, examine the assessment roll of its county, and shall have power to correct the same, make alterations in the description of lands or other property upon such roll when it shall be necessary to render such description conformable to the requirements of this act, and may make any other alterations in such roll as it may deem necessary to make the same conform to the requirements of this act. The board shall, at said term, hear and determine all matters wherein complaint is made concerning assessments, and shall raise or reduce, as the case may require, all appraisements of property found to be below or above the average valuation of property of the same or similar kind as made by the assessors, so as to make taxation equal and uniform: *Provided*, That in equalization of assesments the board shall be governed by the value of the property on the day the assessor commenced the assessment of the county.

SECTION 26. The board must also place upon and add to the assessment roll any property real or personal subject to taxation which has been omitted by the assessors, and enter for the same a reasonable just and uniform appraisement.

SECTION 27. During said session of the board any person or his Attorney may attend and apply for the correction of any alleged error in the listing or valuation of his property.

SECTION 28. The board of County Commissioners of each county shall at said term in each year estimate and determine the amount of money to be raised in such county for county purposes, for a year, and apportion such amount together with the amount of school and other taxes required by law to be raised in its county according to the valuation of taxable property in the county. And such determination shall be entered at large in its records.

SECTION 29. For the purpose of raising a revenue for county purposes the county Commissioners of each county in the Territory shall, at said term levy a tax on all taxable property in its county, which tax shall be sufficient in amount to defray the expenses of the county: *Provided*, The county tax shall not exceed eight mills on every dollar of taxable property in the county for any one year.

---

*See note at end of this act.

Section 30. Within ten days after the equalization of assessments is completed and approved by the board of county commissioners each county Auditor shall furnish to each road supervisor in his county the lists required to enable said supervisor to collect the road taxes in their road districts. And each county auditor shall within the same time forward to the Territorial Auditor a statement of the total valuation of taxable property in his county. And the Territorial Auditor shall thereupon charge each county with the amount of Territorial tax due from each respectively at the rate of four mills on the dollar for the total amount of property in the county as per the auditor's statement of land listed, and the total value thereof.

Section 31. It shall be the duty of the Territorial Auditor to furnish for the use of the county commissioners, assessors, auditors, and other officers, such forms and blanks as shall secure uniformity of proceedings and returns throughout the Territory.

Section 32. The poll tax of two dollars provided by section 5 of this act shall be due from each person subject thereto at the time he is assessed and shall be collected by the assessor who shall have the same power and authority to collect said poll tax by distress as is given to the sheriff by this act for the collection of delinquent taxes, on personal property. The money so collected by the assessor shall be paid to the county treasurer at the time of the return of his assessment roll. The assessor shall be provided by the auditor with blank poll tax receipts which shall be charged against him at the rate of two dollars for each when delivered to him. And he shall make a full return to the auditor showing the names of all persons from whom he has collected a poll tax and the names of all persons liable therefor who have not paid such poll tax, and shall settle his account with the auditor in which settlement he shall be credited with the amount of money paid by him to the treasurer and with two dollars for each receipt returned by him.

Section 33. The auditor of each county in the second district shall on or before the second Monday of August in every year, and the auditor in each county in the first district shall on or before the second Monday of November of each year make out a duplicate of the assessment roll with columns added thereto, showing the amount of the territorial, school, county poll, road poll, and road property tax, and any special tax to be collected, and the aggregate amounts of all taxes charged on the valuation of all property assessed to each person named on the assessment roll, and shall deliver a copy of said duplicate assessment roll to the sheriff of the county. The copy delivered to the sheriff shall have appended thereto the warrant of the board of county commissioners under the hand of
21

162                    GENERAL LAWS.

the president of the board and the county auditor, and the seal of the board of county commissioners in general terms requiring the treasurer to collect the taxes therein levied, according to law.  The county auditor shall take the receipt of the treasurer for the copy of the tax roll with the warrant attached on delivering the same, and said receipt shall be filed and carefully preserved and the auditor shall at the same time charge the treasurer with the amount of all the taxes on said roll; the tax list and warrant of the commissioners shall be full and sufficient authority for the collection by the treasurer of all taxes therein contained.

## CHAPTER V.

### COLLECTION OF TAXES.

Section 34.  When any person shall be discovered to be disposing of removing from the county any personal property on which a tax has been assessed and not collected it shall be the duty of the sheriff to immediately proceed to collect the taxes due from such person by levying upon and making sale of such personal property in the manner herein provided for the collection of delinquent taxes.

Section 35.  On the first day of December of every year all unpaid taxes in the second district, shall become delinquent and on the first day of March of every year all unpaid taxes in the first district shall become delinquent, and shall thereafter draw interest at the rate of twenty-five cents per annum, and all taxes on lands, city and town lots, steamboats, and other vessels are hereby made a perpetual lien thereupon against all persons and bodies corporate; such lien shall have precedence over all other liens except for prior tax.

Section 36.  The county treasurer of each county or his deputy shall attend at the county seat at all times to receive the taxes not yet paid and he is also required to receive and collect so far as practis[c]able the taxes remaining unpaid on the list of any former year or years.  In all cases when taxes are paid he shall give a receipt to the person paying the same if demanded.

Section 37.  No demand of taxes shall be necessary but it shall be the duty of every person subject to taxation under this law to attend at the treasurer's office at the county seat and pay his taxes and if any person neglect to so attend and pay

## GENERAL LAWS. 163

his taxes until after the same become delinquent the "sheriff" shall collect the same by distress and sale of the personal property of the delinquent or by sale of the real estate of such delinquent as hereinafter provided.

SECTION 38. To all delinquent taxes ten per cent. of the amount thereof shall be added as a penalty and shall be collected by the treasurer at the same time and in the same manner that the tax is collected.

SECTION 39. Whenever any district, town, city or local tax shall have been levied according to law and the same shall not have been paid within the time limited it shall be the duty of the collector of such tax to send the delinquent list of such tax to the treasurer of the county embracing such city town or district at or before the time the county and Territorial tax for the same year becomes delinquent and it shall then be the duty of such county treasurer to collect such local tax at the same time and in the same manner as delinquent Territorial and county taxes are collected and for the purpose of collection, such city district town or other local tax shall be added to the amount of delinquent Territorial and other taxes and in making sale of any property real or personal for the delinquent taxes the treasurer shall sell such property for the purpose of paying all such delinquent taxes and he shall credit the proper district town or city with the amount so collected less his fees and the costs of such collection and the amount credited shall be subject to the order of the proper officers of such district town or city.

SECTION 36. [40.] County orders or warrants shall be received in payment of county taxes to an amount not exceeding such tax and county treasurers are hereby authorized to indorse upon the back of county orders or warrants tendered in payment of taxes the amount of the tax so paid which amount shall be deducted from the original amount of such order or warrant thereafter and the county treasurer shall keep an account of all indorsements so made in a book to be kept for that purpose only noting therein the number and date of each order or warrant the names of the payees thereof and the date and amount of each indorsement and they shall produce said account before the county commissioners at their annual settlement with them.

SECTION [41.] When the treasurer distrains personal property he may keep it at the expense of the owner until a sale thereof unless the tax, penalty, interest due and all costs and expenses be sooner paid. He shall immediately give notice of the time and place of sale of property distrained by posting written or printed notices thereof in three public places in the county one of which shall be at the place of the sale. The time to be stated in the notice shall be not less than five nor more

164                    GENERAL LAWS.

than ten days from the day of the taking, but he may adjourn the sale from day to day for a period not exceeding three days and shall adjourn at least once when there are no bidders and in case of an adjournment he shall post a notice thereof at the place of sale. The property shall be sold to the highest bidder for cash.

SECTION [42.]    If the treasurer be impeded or resisted in the execution of his office he may require any suitable person or persons to aid him therein and if any such person refuse to aid he shall forfeit and pay a sum not exceeding ten dollars to be recovered by civil action in any court having jurisdiction of cases of contract of such amount. The action to be prosecuted by the county as plaintiff and the amount recovered shall be for the use of the county and the person or persons resisting shall be liable as in case of resisting the sheriff in the execution of civil process.

SECTION 37. [43.]    In every case when property has been distrained for taxes the treasurer shall be entitled to collect and receive from the delinquent as part of his compensation mileage at the same rate as is allowed by law to sheriffs for levying an execution upon personal property.

SECTION 38. [44.]    The treasurer shall continue to receive payment of all taxes after the same shall have become delinquent but he shall require all delinquents to pay the ten per cent. penalty and interest as provided in this act.

SECTION 39. [45.]    Any surplus remaining from the proceeds of property sold for taxes above the taxes interest thereon penalty mileage of the treasurer and expenses of collection shall be paid to the owner of the property sold.

SECTION 38. [46.]    In addition to the other compensation and emoluments allowed to him the treasurer shall receive for his services the ten per cent. upon delinquent taxes collected as penalty whether the same be collected by distress or paid voluntarily by the delinquent but the treasurer shall receive no pay for the collection of taxes by sale of real estate except as provided in Section 57 of this act and a fee of one dollar for each certificate of sale issued to purchasers the same to be paid by the purchaser and to be added to the cost of collection and all sums collected as penalty except what the treasurer is entitled to receive as herein provided shall be for the use of the county.

SECTION [47.]    The treasurer shall sell at public auction all real estate upon which taxes have been levied and not paid which the treasurer is required by this act to collect or sufficient thereof to pay all such taxes interest penalty and costs to the highest bidder for cash: *Provided*, That if there be no bidder for any parcel or lot of a sum sufficient to pay all taxes penalty

interest and costs including cost of advertising notice of sale, that the treasurer is required to collect by sale of such parcel or lot the same shall be struck off to the county for the whole amount of all such taxes penalty interest and costs.

Section [48.]  The sale of real estate for taxes shall be at the county seat of each county and shall commence in the second district on the first Monday of April and in the first district on the first Monday of July of each year at ten o'clock in the forenoon and shall be continued from day to day until all such real estate shall be sold or twice offered for sale on different days.

Section [49.]  The treasurer shall give notice of all sales of real property by publication thereof once a week for three consecutive weeks commencing the first week of the month preceding the sale in a newspaper of general circulation in the county and by posting printed notices in six public places in the county three weeks prior to the sale the notice required to be published and posted by this section shall contain a notification that all real estate upon which the taxes for the preceding year (naming it) have not been paid and all real estate previously sold to the county for taxes of any preceding year will be sold and the time and place of such sale; and said notice must also contain a list and description of all lands. city and town lots to be sold and the names of the persons to whom the same are assessed unless the same are assessed as belonging to persons "unknown" in which case the same shall be so designated, and the whole amount of taxes penalty interest and costs including costs of advertising the notice to be collected from each person named in the list or from each parcel or lot assessed as "unknown."

Section 39. [50.]  Real estate sold to the county for taxes shall be offered for sale at each subsequent sale of real estate for delinquent taxes until the same shall have been sold or redeemed.

Section 40. [51.]  On or before the first Monday of May following the sale of real estate in the second district and on or before the first Monday of August following such sale in the first district for delinquent taxes the treasurer shall file in the office of the county auditor a return of the sale showing the land sold, the names of the purchasers and the sums paid by them for each parcel or lot and also a copy of the notice of sale and his affidavit of advertising and posting thereof as required by this act stating the name of the paper in which the same was published, the number of publications, the date of the first and last, the date and place where the notices were posted, and such affidavit shall be evidence of the regularity of the proceedings.

Section 41. [52.]  If any parcel or lot shall sell for more

166                    GENERAL LAWS.

than the taxes penalty interest and costs to be collected therefrom, the surplus shall be paid to the former owner, and any person may before the sale of his property pay all taxes penalty interest and costs and stop such sale.

SECTION [53.] If real estate once sold to the county be afterwards redeemed or sold to any person or corporation other than the county the county treasurer shall account to the Territory the county and to any district city or town for the amount due to each out of the proceeds of such sale or redemption and shall pay the same as other collections.

SECTION [54.] The purchaser of any tract or lot of land sold for taxes shall be entitled to a certificate describing the land so purchased and stating the amount paid and date of the sale which certificate shall be assignable. It shall be signed by the county treasurer in his official capacity and shall be presumptive evidence of the regularity of all prior proceedings. The purchaser acquires a lien on the land for the amount paid by him at the sale and if he subsequently pay any tax levied upon the same whether for any year or years previous or subsequent to the sale he shall have the same lien for the taxes so paid and he shall be entitled to interest on the amount of all taxes paid by him at the rate of twenty-five per cent. per annum.

SECTION 42. [55.] The county treasurer shall within ten days after each annual sale of real estate for taxes make out a list of all lands city and town lots sold to the county and deliver the same to the county auditor who shall enter the same as county lands city and town lots in a book to be kept for that purpose, and taxes shall be regularly assessed thereon, and the taxes cost and interest at the rate of twenty-five per cent. per annum shall be carefully charged by the county treasurer from year to year until the same shall be sold or redeemed.

SECTION 43. [56.] All lands city and town lots sold to actual purchasers shall be subject to redemption by the former owner thereof his successor in interest or creditors having a lien thereon within two years thereafter on payment of the amount paid by the purchaser at the tax sale and interest thereon at the rate of twenty-five per cent. per annum from the day of the sale; and all taxes paid by the purchaser or assignee of the purchaser in the land subsequent to the sale, and interest thereon at the rate of twenty-five per cent. per annum from the day of payment of such taxes to the purchaser or his assignee who shall receipt therefor or to the treasurer for the purchaser or his assignee.

SECTION 44. [57.] Lands and city and town lots sold to the county may be redeemed by the former owner thereof by the payment to the county treasurer of the amount of all taxes penalty interest costs and accrued taxes and interest charged to

such lands or lots. And on presentation of the treasurer's receipt for such payment, the county auditor shall give to the redemptioner a certificate of redemption signed by him in his official capacity and sealed with the seal of the board of county commissioners and shall charge such treasurers with the amount of such receipt, and shall omit the lands city or town lots so redeemed from his list of county lands.

## CHAPTER VI.

### CONVEYANCE OF REAL ESTATE SOLD FOR TAXES.

SECTION 45. [58.] If within two years after the sale of any parcel or lot of land for taxes the same be not redeemed as herein provided the holder of the treasurer's certificate of sale may commence an action in the district court of the district embracing the county where the property is situated to obtain a conveyance of the title to such parcel or lot of land by the filing of a petition alleging the facts upon which the claim is founded.

SECTION [59.] Pleadings in every such case shall be addressed to the judge of the court and the case shall proceed and be determined according to the rules and principles governing equity cases.

SECTION [60.] Notice of the pendency of the suit shall be given by publication thereof for four consecutive weeks in a newspaper of general circulation in the county which notice shall contain the title of the court in which the action is pending a description of the property the name of the person to whom it was assessed unless it was assessed as unoccupied and unknown in which case is shall be so designated: the date of the tax sale and shall state the time when the case will be heard which shall be on some day of a regular term and shall require all persons interested to appear and show cause if any there be why a conveyance of the title to the property described shall not be decreed to the plaintiff.

SECTION [61.] At the time stated in the notice or as soon thereafter as practicable the court shall hear the case and at such hearing the original tax list with the warrant appended delivered to the treasurer and the treasurer's return of the sale and the notice of the sale and affidavit of the publication and posting thereof and the treasurer's certificate issued to the purchaser shall be produced and admitted as evidence if the same

168                    GENERAL LAWS.

be then in existence or if not in existence then satisfactory proof of the material facts must be made.

SECTION 46. [62.] If it shall appear to the court that sale of the property was made by the treasurer for a tax which he was by law required to collect after proper notice of such sale as herein required that the plaintiff in the suit or the person under whom he claims was the highest bidder and the purchaser at such sale, that the amount bid was actually paid and that no redemption has taken place a conveyance of the title to the property shall be decreed to the plaintiff and the court shall appoint a commissioner to execute a deed for that purpose.

SECTION 47. [63.] Such deed when executed and approved by the court and delivered and recorded shall be held to convey to the grantee all the right title interest and estate of all persons whomsoever claiming an interest therein at the time of the decree and to rest in the grantee an absolute estate in fee simple in such real estate subject however to all claims for taxes accruing after the sale.

SECTION 48. [64.] If in any action brought to obtain a conveyance of title under the provisions of this act it shall appear that the plaintiff is not entitled to such conveyance and that taxes have been lawfully assessed upon the parcel or lot claimed or against the owner thereof and that such tax has not been paid by the owner of said parcel or lot the court shall give judgment in favor of the plaintiff and against the owner of the property for the true and just amount of such tax due from the owner or those under whom he claims and ten per cent. additional as penalty if the same has become delinquent as provided in this act and all costs and accrued interest and taxes or so much thereof as shall have been paid by the plaintiff or those under whom he claims with interest on the amount paid at the rate of twenty-five per cent. per annum.

SECTION 49. [65.] When by mistake or wrongful act of the treasurer real estate has been sold for taxes on which no tax was due, or for any amount in excess of the amount justly due at the time of such sale, the county shall save the purchaser harmless by repaying to him the amount of principal and interest to which he would have been entitled had such real estate been rightfully sold, and the treasurer and his sureties shall be liable for the amount to the county on his official bond or the purchaser may recover the same directly from the treasurer and his sureties by civil action.

SECTION 50. [66.] Whenever any action or proceeding shall be commenced and maintained in any court or before any judge to prevent or restrain the collection of any tax or part thereof or any particular act of an officer in the collection thereof or to recover any such tax before paid or to recover the

possession of or title to any property real or personal sold for taxes or to invalidate or cancel any deed or grant thereof for taxes or to restrain prevent recover or delay any payment of taxes, if the court or judge grant the relief sought in such action the true and just amount of taxes due upon such property or by the person or persons commencing such action and all interest penalty and cost accrued thereon according to the provisions of this act must be ascertained and payment shall be given therefor in the same action or proceeding against the person or persons liable for the same.

SECTION 51. [67.] If any parcel of real estate thus sold should not in the option of the tax purchaser be of a sufficient value to justify the costs of proceeding, as directed in section 52 and this act to confirm title he may procure a title deed to said property from the county treasurer on surrender of his certificate of purchase and establishing to the satisfaction of said treasurer that all subsequently accrued taxes have been fully paid which deed shall run in the name of the Territory of Washington and shall convey the premises in fee simple to the grantees subject to be set aside only upon action brought in due form of law by the party or parties claiming under the original title within ten years from the date of the public tax sale at which it was sold and upon conclusive proof of such irregularities of procedure in violation of the provisions of this act or under the provisions of this act as to constitute an equitable defeasance of the said conveyance and for executing such tax deed the county treasurer shall receive a fee of one dollar and fifty cents and the county recorder a fee of one dollar and fifty cents for recording the same.

# CHAPTER VII.

### ACCOUNTS AND SETTLEMENTS.

SECTION 53. [68.] The treasurers of the several counties of the Territory shall on the first Monday of every month pay into the territorial treasury or forward to the territorial treasurer in such manner as he shall direct all funds on hand belonging to the Territory and they shall on or before the first Monday of July of every year make full settlements with the territorial auditor of their accounts with the Territory for the preceding fiscal year.

170                    GENERAL LAWS.

SECTION 54 [69.] The fiscal year contemplated by this act shall commence on the first day of July and end on the thirtieth day of June.

SECTION [70.] Each county treasurer shall at the time of his annual settlement with the territorial auditor render a statement verified by his own affidavit or that of his deputy of all territorial taxes previously credited to his county by the territorial auditor as delinquent and uncollected and collected by him after such credit and not previously reported and also of all territorial taxes due from property listed and assessed by him.

SECTION 55. [71.] The Territorial treasurer shall send or give a receipt to the county treasurer entitled thereto for the amount of each payment into the territorial treasury and shall deliver a duplicate of every such receipt to the Territorial Auditor who shall file and preserve the same. And each county treasurer in his settlement with the Territorial Auditor shall be allowed and credited with the amounts shown by such receipts to have been paid into the treasury by him and with four per cent. on the amount so paid as his fees for collection as provided in section 56 of this act and with the amount of expenses incurred in forwarding the territorial funds to the territorial treasurer if proper vouchers be produced therefor, and with the amount of territorial tax shown to be unpaid by the certified statement of the county auditor signed by him and authenticated by the seal of the Board of County Commissioners.

SECTION 57. [72.] The county treasurer of each county shall be allowed to retain two per cent. upon all moneys received and two per cent. on all moneys paid out as his fees, which shall be deducted from the gross amount collected in kind except in counties where the treasurers thereof receive a salary in lieu of commissions as their compensation.

SECTION 58. [73.] If on the assessment rolls or tax lists there shall be any error in the name of a person taxed the name may be changed and the tax collected from the person intended if he be taxable and can be identified by the assessor or treasurer and whenever the treasurer shall ascertain that any land or other property is omitted from the assessment roll or tax list he shall assess the same and estimate the tax thereon and enter the same upon his tax list and inform the county auditor thereof who shall charge him with the amount of such tax.

SECTION [74.] The several county treasurers shall at the August term in each year of the boards of county commissioners of their counties attend with their books and vouchers and settle their accounts before said board; in such settlements they shall be allowed the following credits:

1st.   The amount credited by the territorial auditor on settlement for the preceding year.

2nd.   The amount of principal and interest paid on county orders subsequent to last preceding settlement whether such orders have been fully paid or but partially paid.

3rd.   The amount of taxes remaining uncollected after due diligence on the part of the treasurer to collect the same.

4th.   The amount of surplus proceeds of sales of property paid to the former owners of property sold or other persons entitled thereto.

5th.   The amount of taxes due on lands city and town lots sold to the county at the last preceding annual sale.

6th.   The amount allowed by law to the treasurer for his compensation.

7th.   The commissioners shall also allow the treasurer credit for any double assessments or error for which the treasurer is not justly accountable proven to exist.

SECTION 59. [75.]   Each county treasurer shall at the time of making his annual settlement with the board of county commissioners furnish a statement of the amount collected by him as interest on delinquent taxes and of the amount of penalty collected by sale of real estate and of all surplus proceeds of property sold for taxes and of the amount of such surplus paid to the parties entitled thereto subsequent to last preceding settlement which statement must be verified by the affidavit of the treasurer or his deputy and the same shall be filed and presented by the county auditor and the amount so collected charged against the treasurer.

SECTION 60. [76.]   If any county treasurer shall refuse or by negligence fail to collect any tax which he is required by law to collect he and his sureties shall be liable therefor and the same may be recovered by a civil action in the name of the county.

SECTION 61. [77.]   In addition to the fees allowed by law, the boards of county commissioners of the several counties shall allow a reasonable sum for the preparing of rolls schedules and lists to officers required by law to prepare the same and shall also allow the cost of publication of lands city and town lots sold to the county and shall also allow to the Territorial auditor the actual reasonable and necessary costs of all blanks and assessment rolls furnished by him for the use of the officers. of the counties and also the postage paid and all necessary expense incurred in forwarding said blanks and assessment rolls and other matter which the Territorial auditor is required by law to transmit to the county officers.

SECTION 62. [78.]   The entries made in the county treas-

urer's books the assessment rolls, the duplicate assessment rolls schedules transcripts and warrants attached thereto delinquent lists books and records of the county auditor required to be kept by him by any law shall be *prima facie* evidence in all judicial proceedings.

Section [79.] The county fund shall not make up any deficiency in the territorial school or any special fund by reason of taxes becoming delinquent and uncollectable.

Section 63. [80.] All advertisements authorized under the provisions of this act shall be published in some newspaper published in the territory having a circulation in the county authorizing such publication. The publisher shall be paid for advertising such notices at a rate not exceeding seventy-five cents for each separate description of real estate or at the rate of one dollar per square of twelve lines or part thereof.

Section 64. [81.] Nothing in this act shall be so construed as to interfere with the provisions of any act allowing the levy of a special tax in any county in this Territory but the manner of collecting such special taxes shall be as hereinbefore provided.

Section 65. [82.] All acts and parts of acts in conflict with the provisions of this act are hereby repealed.

Section [83.] This act shall take effect and be in force from and after the first day of January A. D., 1878.

Section [84.] Nothing in this act shall be construed to alter or repeal an act entitled "An Act relating to the receiving of county warrants in payment of county taxes in Clarke county" passed at the present session of the Legislative Assembly of this Territory.

Approved, November 9th, 1877.

### Note by the Secretary.

The following is attached to the margin of the act between Sections 1 and 2:

"Amend after the words, 'The Treasurer shall reside at the county seat,' by inserting the words 'unless otherwise provided by the board of county commissioners.'

"Adopted, O'B. McReavy."

The words following "thereto," in line 7, of Sec. 2, are printed, in accordance with a marginal amendment on the act, in place of the following:

"Nothing herein contained, however, shall be construed to exempt from taxation any improvements made by settlers on the public lands, which improvements shall be deemed and taxed as personal property until such settler is entitled to make final proof."

In Section 23, line 8, the word "first" is printed in place of "second," and on line 10 the word "July" is printed instead of "August," and after the word "year" in same line the words "and in the second district each assessor shall return his assessment roll to the auditor on or before the first Monday of May" are inserted, as per marginal amendment.

In Section 24, lines 5 and 6, the word "first" is printed in place of "fourth," as per marginal amendment.

# AN ACT

## TO PROVIDE FOR THE INCORPORATION OF CITIES.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That when the inhabitants of any part of any county not embraced within the limits of any city or incorporated town, which inhabitants exceed two hundred and fifty in number, shall desire to be organized into a city, they may apply by petiition in writing signed by not less than forty of the qualified electors of the Territory to be embraced in the proposed city, to the judge of the district court of the proper county, which petition shall describe the territory proposed to be embraced in such city, and shall have annexed thereto an accurate map or plat thereof and state the name proposed for such city, and shall be accompanied with satisfactory proof of the number of inhabitants within the territory embraced in said limits.

SEC. 2. When such petition shall be presented, the judge shall forthwith appoint five commissioners who shall at once call an election of all the qualified electors residing within the territory embraced within said limits as described and platted, to be held at some convenient place within said limits, the notice for which shall be given by publication in some newspaper published within said limits, if any there be, for three successive weeks, and by posting notices in five public places within said limits; said posting and the first publication to be not less than three weeks preceding such election. Such notice shall specify the place and time of such election and a description of the

174                    GENERAL LAWS.

limits of said proposed city, and that a description and plat thereof are on file in the office of the clerk of the district court. Said commissioners shall act as judges and clerks of the election, and shall qualify as required by law for judges and clerks of county elections, and shall report the result of the ballot to the judge of the said district court. The ballot used at said election shall be, " For Incorporation," " Against Incorporation."

SEC. 3.    If a majority of the ballots cast at such election be in favor of such incorporation, the clerk of said district court shall, immediately on the return of the commissioners being filed in his office, give notice of the result by publication in a newspaper, or, if no newspaper be published in the county, by posting in five public places within the limits of the proposed city.    A copy of the notice, with the proper proof of its publication, shall be filed with the papers, and a certified copy of all papers and entries relating to the matter on file in the said clerk's office, shall be filed in the auditor's office of the county and in the office of the Secretary of the Territory.

SEC. 4.    When certified copies are made and filed as required by the preceding section, and officers are elected and qualified for such city as hereinbefore provided, the incorporation thereof shall be complete; whereof notice shall be taken in all judicial proceedings.

SEC. 5.    When the incorporation of such city is complete, the commissioners shall give notice for two consecutive weeks of the time and place of holding the first election of officers therefor by publication in a newspaper, or, if none be published within the limits of such city, by posting notices in five public places within the limits of the same. At such election the qualified electors of such city residing within the limits of such city shall choose officers therefor, to hold until the first annual election as hereinafter prescribed.    The Commissioners shall act as judges and clerks of the election, and otherwise it shall be conducted and the officers elected thereat shall be qualified in the manner prescribed in chapter V of this act for the election of city officers.

CHAPTER II.

SPECIAL CHARTERS.

SEC. 6.    Any city incorporated by special act or charter, or

in any other manner than that provided by this act, including any acting or de facto city, may abandon its charter and organize under the provisions of this act with the same territorial limits, by pursuing the course hereinafter prescribed.

Sec. 7. Upon the petition of forty legal voters in any such city to the council thereof, praying that the question of abandoning its charter be submitted to its legal voters, the council shall immediately direct a special election to be held, at which such question shall be decided, specifying at the same time, the time and place or places of holding the same, and appoint the judges and clerks of the election.

Sec. 8. The mayor, or presiding officer of the council, shall at once issue a proclamation giving notice of such election, of the question submitted to the electors, and of the time and place of holding the election, which proclamation shall be published for four weeks in some newspaper published in such city, and if there be none published therein, then such proclamation shall be published by posting a copy thereof in five public places within the corporate limits of such city.

Sec. 9. At such election, those who desire to vote in favor of abandonment of the charter shall deposit a ballot with the words "in favor of abandonment," those desiring to vote against the abandonment shall deposit a ballot with the words "against abandonment." The election shall be conducted in other respects as elections for city officers are conducted under the charter. The abstract of votes shall be returned to the city council, who shall canvass the same and declare the result which shall be entered on the journal.

Sec. 10. If the majority of votes cast at such election be in favor of the abandonment of the charter, the council shall immediately call a special election for the election of officers of such corporation according to the provisions of this act, and from and after the election and qualification of such officers, the former charter of such city shall be considered as abandoned, and such city shall be considered as organized under and shall have all the rights and be subject to all the liabilities of this act; but the officers so elected shall hold their offices only until the next annual municipal election in such city. If a majority of the votes be against abandonment, that question cannot be again submitted until the expiration of one year from the time of such election.

Sec. 11. All rights and property of every description which were vested in any municipal corporation under its former organization, shall be deemed and held to be vested in the same municipal corporation under the organization herein contemplated, and no right or liability, either in favor of or against

such corporation existing at the time, whether such corporation be a de jure or de facto corporation provided it be acting as a municipal corporation and no prosecution of any kind, shall be affected by such change: *Provided*, That when a different remedy is given by this act which can properly be made applicable to any existing right at the time such change is made, the same shall be deemed cumulative to the remedies before provided and may be used accordingly; *And provided further*, That the regularity, legality or validity, of such municipal corporation under its former organization, shall not in any manner be called in question in any legal proceedings now pending or hereafter to be instituted, but such municipal corporation shall be conclusively deemed to have been legally and regularly organized, valid and existing, in all respects and for all purposes.

## CHAPTER III.

### POWERS.

Sec. 12.  Cities organized as provided in this act shall be bodies politic and corporate under such name as may be selected and adopted by the common council of each at the first meeting thereof, and by such corporate name may sue, or be sued; contract or be contracted with; acquire, hold, or convey property real or personal; have a common seal which they may change at pleasure; and have such other privileges as are incident to municipal corporations of like character not inconsistent with the laws of this Territory and shall be subject to the rules restrictions and obligations prescribed in this act.    They shall have power to assess, levy, and collect taxes for general municipal purposes, not to exceed two-fifths per centum per annum, upon all property both real and personal, within the city, which is by law taxable for Territorial and county purposes and to levy and collect special taxes as herein-after provided.  But all taxes for general and special municipal purposes, exclusive of assessments for improvement as hereinafter provided in sections seventeen, eighteen and twenty, shall not in any year exceed one and a half per centum on the property assessed.

Sec. 13.  They shall have power to make regulations for prevention of accidents by fire; to organize and establish fire departments; ordain rules for government of the same; to provide fire engines and other apparatus, and a sufficient supply of water;

and to levy and collect special taxes for these purposes, not to exceed in any year one-fifth of one per centum upon the taxable property within the city. And on petition of the owners of one-half of the ground included within any prescribed limits within the city, to prohibit the erection within such limits any building, or any addition to any building, unless the outer walls thereof be made of brick and mortar, and iron, or stone and mortar, and to provide for the removal of any building or any addition erected contrary to such prohibition. (limits any building, or any addition to any building, unless the outer walls thereof be made of brick and mortar, or iron, or stone and mortar, and to provide for the removal of any building or any addition erected contrary to such prohibition.)

SEC. 14. They shall have power to purchase or condemn and enter upon and take any lands within or without the corporate limits, for public squares, streets, parks, commons cemeteries, hospital grounds, or to be used for work houses, or houses of correction, or any other proper and legitimate municipal purpose, and to enclose, ornament, and improve the same, and to erect necessary public buildings thereon; and for these purposes may levy and collect special taxes, not exceeding one-fifth per centum in any year. The city shall have entire control of all such buildings, and all lands purchased or condemned under the provisions of this section, and of all streets, highways, squares and other public grounds within its limits, established or appropriated to public use by authority of law, or which have been or may be hereafter dedicated to public use by any person or persons; and have power in case such lands are deemed unsuitable or insufficient for the purposes intended, to dispose of and convey the same, and conveyances of such property, executed in the manner that may be prescribed by ordinance, shall be held to extinguish all rights and claims of said city or the public, existing prior to such conveyance. But when such lands are so disposed of and conveyed, enough then shall be reserved for streets to accommodate adjoining property owners.

SEC. 15. They shall have power to provide for the lighting of the streets and furnishing the city with gas or lights, and for the erection or construction of such works as may be necessary or convenient therefor; and have power to levy and collect for these objects a special tax, not exceeding one-fifth of one per centum per annum upon the taxable property within the limits, for the benefit of such lights, which limits shall be fixed by the city council each year, before levying any tax authorized by this section, and all such taxes shall only be assessed upon and collected from property within said limits.

SEC. 16 They shall have power to provide for clear-
23

178                    GENERAL LAWS.

ing, opening, graveling, improving and repairing of streets and highways and alleys; and for the prevention and removal of all obstructions therefrom or from any cross or sidewalk; also to regulate cellar ways and cellar lights on sidewalks within the city; and to provide for clearing the streets; also for constructing sewers and clearing and repairing the same; and have power to assess, levy and collect each year a road, poll tax, of not less than four nor more than six dollars on every male inhabitant of the city, between the ages of twenty-one and fifty years, except persons that are a public charge; also a special tax on property of not less than two nor more than six mills on every dollar's worth of property within the city; which taxes shall be expended for the purposes specified in this section, and the officers of the county shall not levy or collect any road tax, or road poll tax, upon the inhabitants or property within the city.

SEC. 17.    They shall have power to construct and repair sidewalks, and to curb, pave, grade, macadamize and gutter any street or streets, highway or highways, alley or alleys, therein or any part thereof; and to levy and collect a special tax or assessment, on the lots and parcels of land fronting on such street or streets, highway or highways, alley or alleys or any part thereof, sufficient to pay the expense of such improvement, and for such purpose may establish assessment districts, consisting of a portion or the whole of any such street or streets, highway or highways, alley or alleys, or of several streets, highways, and alleys, as may be deemed advisable. But unless the owners of more than one half of the property subject to assessment for such improvement, petition the council to make the same, such improvement shall not be made until a majority of five-sevenths of all the members of the council, by vote, assent to making of the same.

SEC. 18.    They shall have power to cause any lot of land within their limits, on which water at any time becomes stagnant, to be drained or filled up; and to cause any vault upon any lot or block within the city to be cleaned when necessary; and in case of failure or refusal of the owner of any such property to comply with the requirements of any ordinance or resolution of the city council, with reference to such matters after such notice, as in such ordinance or resolution may be prescribed; the work necessary may be done at the expense of the city, and the amount so expended shall be assessed as a tax upon such property, and shall be collected as other assessments.

SEC. 19.    They shall have power by general ordinance to prescribe the mode in which the charge on the respective owners of lots or lands on the lots or lands shall be assessed and determined for the purposes authorized by this act:  *Provided*, Always that the assessment shall in every case be made upon the

GENERAL LAWS.                    179

basis of the value of the property assessed: such charge when assessed shall be payable by the owner or owners at the time of the assessment personally, and shall also be a lien upon the respective lots or parcels of land from the time of the assessment. Such charge may be collected and such lien may be enforced by a proceeding in law or in equity, either in the name of such city, or of the officer to whom it shall have directed payment to be made. In any such proceedings where pleadings are required, it shall be sufficient to declare generally for work and labor done and materials furnished on the particular lot, parcel of land, or street, highway or alley. In any such proceeding where the court trying the same shall be satisfied that the work has been done, or the material furnished which according to the true intent and meaning of this act would be properly chargeable upon the lot or land, through or by which the street, highway or alley improved or repaired may pass, a recovery shall be permitted or a charge enforced to the extent of the proper proportion of the value of the work or materials which should be chargeable on such lot or land, notwithstanding any informality, irregularity or defect in the proceedings of the officers of the city, but in such case the court may adjudge as to costs as may be deemed proper, and in cases where an assessment shall have been regularly made and payment shall have been neglected or refused at the time when the same was required, the city shall be entitled to demand and recover in addition to the amount assessed and interest thereon at ten per cent. per annum, from the time of the assessment, five per cent. to defray the expenses of collection, which shall be included in any judgment or decree which may be rendered.

SEC. 20.    They shall have power to provide for the survey of the blocks and streets of the city, and for making and establishing the boundary lines of such blocks and streets; and to establish the grades of all streets within the city, and to lay off, widen, straighten, name, change, extend, vacate and establish streets, highways and alleys and all public grounds and to provide for the condemnation of such real estate as may be necessary for such purposes, and to levy and collect assessments upon all property benefitted by any change or improvement authorized by this section, sufficient to make compensation for all property condemned or damaged, and to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys and public places, but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley or public place upon which such track is proposed to be located and laid down, has been ascertained and compensated in the manner provided for compensation of injuries, arising from re-grade of streets in section 106 of this act.

180                        GENERAL LAWS.

SEC. 21. They shall have power to erect and maintain water works; or to authorize the erection of the same for the purpose of furnishing the city with a sufficient supply of water, but no such works shall be erected by the city, until a majority of the voters of the city, at a general or special election or five-sevenths of the members of the city council, by vote assent thereto.

SEC. 22. They shall have power to construct or authorize the construction of such water works without the limits of the city, and for the purpose of maintaining and protecting the same from injury, and the water from pollution, its jurisdiction shall extend over the territory occupied, by such works; and all reservoirs, streams, trenches, pipes and drains, used in and necessary for the construction, maintenance and operation of the same, and over the stream or source from which the water is taken for five miles above the point from which it is taken; and to enact all ordinances and regulations necessary to carry the power herein conferred into effect.

SEC. 23. If the right to construct and operate such water works is granted to private individuals or incorporated companies, by such city, it may make such grant, to inure for a term of not more than twenty-five years; and may authorize such individual or company to charge and collect from each person supplied by them with water, such water rent as may be agreed upon between said person or corporation so building such works, and said city, and such city is authorized and empowered to enter into a contract with the individual or company constructing such works to supply the city with water for fire purposes, and for such other purposes as may be necessary for the health and safety thereof, and to pay therefor such sum or sums as may be agreed upon between said contracting parties.

SEC. 24. Such cities are hereby authorized and empowered to condemn and appropriate so much private property as shall be necessary for the construction and operation of such water works; and if it shall authorize the construction and operation thereof by individuals or private corporations it may confer by ordinance upon such person or persons, or corporation, the said power to take and appropriate private property for such purpose.

SEC. 25. They shall have power at the regular time for levying taxes in any year to levy and collect a special tax not exceeding one-half of one per centum upon the taxable property within the limits prescribed as hereinafter provided, for the purpose of constructing such water works, provided no such tax shall be levied for the purpose of aiding any private individual or corporation. And when such work shall have been constructed such city shall have power to assess and col-

lect, from time to time, in such manner as the city council may deem equitable from each tenement, or other place supplied with water, such water rent as may be deemed reasonable; and at the regular time for levying taxes in each year to levy and collect in addition to the tax already authorized by this section a special tax on taxable property within the limits prescribed as hereinafter provided, sufficient with the water rents hereby authorized, to pay the expenses of running and operating such works; and if the right to build, maintain, and operate such water works shall be granted to private individuals or corporation by the city and the city shall contract with such individuals or corporation for a supply of water for any purpose, said city shall levy and collect, each year, a special tax sufficient to pay off such water rent to such individual or company, provided that said taxes shall not exceed one-half of one per centum upon the taxable property within the limits, of the benefits and protection of such works, which limits shall be fixed by the city council each year before levying any tax authorized by this section; and all such taxes shall only be assessed upon and collected from property within said limits.

SEC. 26.   They shall have power to make regulations to prevent the introduction of contagious diseases into the city; to remove persons affected with such or other diseases therefrom, to suitable hospitals provided by the city for that purpose; to provide for the support, restraint and employment of vagrants and paupers; to restrain and punish any disturbance or any unlawful or indecent practice.

SEC. 27.   They shall have power to make regulations and pass ordinances preventing domestic and other animals running at large; and to license, tax, regulate and restrain the keeping of dogs within the city limits; and to authorize the distraining, impounding and sale of the same for the penalty incurred and costs of proceeding; or may authorize their destruction.

SEC. 28.   They shall have power to regulate, license and tax all carts, wagons, drays, coaches, omnibuses, and every description of carriage which may be kept for hire; and to fix the rates thereof; to license, tax and regulate or prohibit theatricals, shows and other exhibitions and public amusements; and to license, tax, and regulate auctioneers, hawkers, peddlers, brokers, pawnbrokers, and all offensive or noxious trades or occupations.

SEC. 29.   They shall have power to establish and maintain a day and night police or either of them, and to provide for the election or appointment of such number of police officers as may be necessary; which officers shall have full power and authority to make arrests within or without warrants, within or

182                    GENERAL LAWS.

without the limits of the city; to summon aid; and to exercise all other powers necessary and requisite for the prevention of crime or apprehension of offenders. And in all cases where arrests are made for offenses tried under the general laws of the Territory, before justices of the peace or other Territorial courts, such police officer shall be entitled to receive the same fees as sheriffs or constables, for the same services.

SEC. 30. They shall have power to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated; to suppress and restrain disorderly houses, houses of ill fame or gambling houses, and to authorize the destruction of all instruments or devices used for purposes of gaming; to regulate the transportation and keeping of gunpowder or other combustibles, and to provide or license magazines for the same; to prevent and punish fast or immoderate riding or driving of horses through the streets; to regulate the speed of trains and locomotives on railways over the streets or through the limits of the city; to prevent any riots, noise, disturbance or disorderly assemblages, and to protect the property of the corporation and its inhabitants, and to preserve peace and order therein.

SEC. 31. They shall have power to regulate the burial of the dead and to prevent any interments within the limits of the city, and to cause any body interred contrary to such prohibition to be taken up and buried without the limits of the city.

SEC. 32. They shall have power to establish and regulate markets; to provide for the measuring or weighing of hay, coal, or any other article of sale.

SEC. 33. They shall have power to borrow money on the credit of the city for any purpose within the authority of the corporation, including the payment of any existing debt; but the indebtedness of the city must never exceed in the aggregate the sum of fifteen thousand dollars, and any debt or liability incurred in excess of said sum of fifteen thousand dollars shall be invalid and void.

SEC. 34. They shall have power to adopt proper ordinances for the government of the city, and to carry into effect the powers given by this act; and to provide for the punishment of a violation of any ordinance of the city by a fine not exceeding one hundred dollars, or imprisonment for not more than thirty days, or both, or by a forfeiture or penalty not exceeding one hundred dollars, and for working any person sentenced to such imprisonment, or committed in default of payment of any such fine, upon the streets or public squares during the term thereof.

SEC. 35. They shall have power to make harbor regulations and rules; to regulate or prevent the discharge of ballast

or other material in any harbor within the city limits; to assess and collect harbor dues from all vessels and water craft whatever, arriving at or departing from the city; to license and tax wharfingers; and to build, construct and regulate wharfs, piers and landing places at the foot of any street terminating at the shore of any bay lake or river. And to regulate and prescribe the limits of the extension of wharfs into the waters of any harbors within the city limits, to prevent the construction of wharves beyond such limits, and to remove any wharf or wharves that have hertofore been or shall hereafter be constructed beyond such limits at the expense of the owner or owners of such wharf or wharves, to be recovered by ordinary civil action, or as the city council may by ordinance provide.

Sec. 36. They shall have power to establish and regulate the fees and compensation of all its officers, except when otherwise provided; and, have such other powers and privileges not herein specifically enumerated, as are incident to municipal corporations of like character and degree, not inconsistent with the laws of the United States or of this Territory and as may be necessary for carrying into effect the provisions of this act according to the true intent and meaning thereof.

## CHAPTER IV.

### GOVERNMENT.

Sec. 37. The power and authority given to each municipal corporations by this act shall be vested in a mayor and common council, together with such other officers as are in this act mentioned, or may be created under its authority.

Sec. 38. The common council shall consist of seven members; they shall be elected for two years, and shall hold their office until their successors are elected and qualified: *Provided*, That at the first annual election after the incorpoation of an city three of the seven members shall hold their offices for one year only, and if such city be divided into two or more wards the council shall make an equitable apportionment of the members holding for different periods among the several wards and when such apportionment is made the members to hold for two years shall be chosen by lot, in the presence of the mayor and council.

Sec. 39. The mayor shall be elected for one year, and shall hold his office until his successor is elected and qualified.

184            GENERAL LAWS.

SEC. 40.    There shall be elected as hereinafter specified a justice of the peace, marshal, clerk, attorney, treasurer, health officer, city surveyor, street commissioner, harbor master, and an assessor, who shall be officers of the municipal corporation. The assessor and collector to be one officer, who shall be officers of the municipal corporation.    The marshal shall be elected by the qualified voters of the corporation, and shall hold his office for one year or until his successor is elected and qualified.    The common council shall annually, at the first regular meeting thereof, after the qualification of the new members elected at each annual city election, designate and appoint one of the justices of the peace for the precinct, within which such city is situate who shall have been duly elected and appointed and qualified as required by law, who shall be the justice of the peace of the city, and shall keep his office therein, and shall have jurisdiction over all crimes defined by any ordinance of the city and of all actions brought to enforce or recover any penalty or forfeit, declared or given by any such ordinances, and full power and authority to hear and determine all causes, civil or criminal, arising under such ordinances, and to pronounce judgment in accordance therewith.    All civil or criminal proceedings before such justice of the peace, under and by authority of this act, shall be governed and regulated by the general laws of this territory, relating to justices of the peace and to their practice and jurisdiction, and shall be subject to review in the district court of the proper district, by certiorari or appeal, the same as other cases:    The attorney, clerk, treasurer, health officer, surveyor, street commissioner, and harbor master, and the assessor, shall be elected by the common council at the meeting above specified, and they shall be liable, at any time to be removed by the council, for malfeasance, inattention or incompetency.

SEC. 41.    No person is eligible to any office in such municipal corporation who, at the time of his election or appointment, is not entitled to the privilege of an elector according to the laws of this Territory, and who has not resided in such city for the six months next preceding such election or appointment.

## CHAPTER V.

### ELECTIONS.

SEC. 42.    There shall be a general election for all

city officers required to be elected under this act on the second Monday of July of every year.

SEC. 43. No person is qualified to vote at any election under this act who does not possess the qualifications in section forty-two of this act for officers. And who if under fifty years of age has not paid either a poll or property tax in such city for the fiscal year then last past, such payment to be proved by the proper official receipt therefor, except when such receipt is lost or mislaid, when it may be proved by the oath of the person offering to vote. And all officers required to be elected by this act except those elected by the common council shall be elected by the qualified voters of the city.

SEC. 44. That at all elections for city officers the vote shall be by ballot at the time and place designated by the common council.

SEC. 45. The city clerk under the direction of the council shall give ten day's notice by posting the same in at least two public places in each ward of the city, or by publication in some newspaper published in said city of such general election, the officers to be elected, the place designated for holding the election, and the judges and clerks appointed to conduct the same.

SEC. 46. All elections shall commence at nine o'clock A. M., and continue until five o'clock of the same day, without closing the polls. If any judge of election fails to attend, and serve at the proper time, the voters of the ward, then present, may elect another in his place, and if any clerk of election fails to attend and serve at the proper time, the judges of the election may appoint another in his place.

SEC. 47. Judges and clerks of election must possess the qualifications of voters in the ward where they act as such, but a mistake or error in this respect, or a failure to give the notice required by section 46 of this act shall not invalidate any election otherwise legal.

SEC. 48. On the first regular meeting of the council next after such election the returns thereof shall be canvassed by the city council, and the written statement of such canvass shall be made and signed by the presiding officer of the council and attested by the clerk, and immediately filed with the clerk. Such written statement of the canvas shall contain the whole number of votes given at such election, the number given for any person for any office and the names of persons elected, and to what office: *Provided*, That if the requisite number of city officers shall not be elected, by reason of two or more persons having an equal and the highest number of votes for one and the same office, the city council shall give notice to the several persons so having the highest and an equal number

24

186          GENERAL LAWS.

of votes, to attend at the council chamber at an appointed time, and the said council shall then and there proceed publicly, to decide, by lot, which of the persons so having the highest and an equal number of votes shall be deemed duly elected, and a certificate of election shall be duly issued to the person thus declared elected as hereinafter provided.

Sec. 49.   After such statement of the canvas is filed, the clerk shall make and sign within two days thereafter, a certificate of election for each person declared thereby to be elected, and deliver the same to him, on demand.

Sec. 50.   A certificate of election is primary evidence of the facts therein stated, but the council is the final judge of the qualifications and election of the mayor and its own members; a contested election for any other office must be determined by the council according to the laws of the territory regulating proceedings in contested elections for county officers.

Sec. 51.   The term of office of every person elected to office under this act, shall commence on the tenth day after the canvas of the election returns by the council, and terminate accordingly, except as otherwise provided by this act, and by such time such person must qualify by taking and filing the oath of office, and give such official undertaking for the faithful performance of his duties as may be required, or he shall be deemed to have declined, and the office considered vacant, except when there is a contest, in which case such person must qualify within ten days from the determination of such contest.

Sec. 52.   All officers elected under this act, before entering upon the duties of their office, must take and file with the clerk, an oath of office to the following effect: "I, A. B., do solemnly swear (or affirm) that I will support the Constitution of the United States, and of this Territory, and that I will, to the best of my ability, faithfully perform the duties of the office of ——, during my continuance therein.   So help me God."   If the person affirms, instead of the last clause, there must be added: "and this I promise under the pains and penalties of perjury."

Sec. 53.   All laws of this territory regulating and governing general elections and proceedings, and matters incidental thereto, shall apply to and govern elections under this act. except as herein otherwise provided.

# CHAPTER VI.

### VACANCIES IN OFFICE.

SEC. 54. An office becomes vacant upon the death or resignation of the incumbent or failure to qualify as required; the office of the mayor, clerk, treasurer, assessor and collector shall be deemed vacant whenever the incumbent thereof shall be absent from the city for the period of sixty days; the office of marshal and the justice of the peace shall be deemed vacant whenever the incumbent shall be absent from the city for the period of twenty days; the office of the councilmen shall be deemed vacant whenever an incumbent shall fail to attend six regular consecutive meetings of the council, unless absent upon leave of the council first obtained.

SEC. 55. A vacancy in any office shall be filled by the council, at a regular meeting.

SEC. 56. An officer, appointed to fill a vacancy, must, within five days after being notified of the appointment, by the clerk, qualify therefor, as in the case of an officer elected, or he shall be deemed to have declined, and the office be considered vacant.

# CHAPTER VII.

### OF THE ORGANIZATION AND POWERS OF THE COUNCIL.

SEC. 57. The city council shall possess all the legislative powers granted by this act, and all other corporate powers of the city, not herein, or by some ordinance of the city, conferred on some other officer.

SEC. 58. The council must provide for the time and place of its regular meetings, at any of which, it may adjourn to the next regular meeting, or to some time prior thereto, and it may be convened by the mayor at any time, upon a day's notice given to each of the members.

SEC. 59. A majority of the members of the council shall

188                    GENERAL LAWS.

constitute a quorum to do business, but a less number may meet and adjourn from time to time and compel the attendance of absent members.

SEC. 60. The council may adopt rules for the government of the conduct of its members and its proceedings. It must keep a journal of its proceedings, and on the call of any one of its members, must cause the yeas and nays to be taken and entered in its journal, upon any question before it; but upon a question to adjourn, the yeas and nays shall not be taken, unless upon the call of four members. Its deliberations and proceedings must be public.

SEC. 61. The council may punish any member for disorderly or improper conduct at any meeting, or for refusing or neglecting to attend any regular meeting without sufficient excuse therefor, and may by a two-thirds vote expel a member.

SEC. 62. The mayor is ex-officio president of the council, and presides over its deliberations when in session. He is not entitled to vote, but has authority to preserve order, enforce the rules of the council, and determine the order of business subject to such rules and to an appeal to the council. If the mayor should be absent at any meeting of the council, the council must appoint one of their own number president, to serve during the meeting, or until the mayor attends.

SEC. 63. On the tenth day next following any general election, there must be a regular meeting of the council; and such meeting is appointed by this act, and no notice thereof, or call therefor is necessary.

SEC. 64. A majority of the whole number constituting the council, as then provided by law, is a majority of the council or members thereof, within the meaning of this act, and not otherwise, unless expressly so provided. The concurrence of a majority of a quorum is a suffiient majority to determine any question or matter, other than the final passage of an ordinance.


## CHAPTER VIII.

### THE MAYOR—HIS POWERS AND DUTIES.

SEC. 65. The mayor is the executive of the corporation. It is his duty annually at the first regular meeting in July, to communicate by message to the common council a general statement of the condition and affairs of the corporation, and to

recommend adoption of such measures as he may deem expedient and proper, and to make special communications to the council from time to time, as he may think proper and useful.

Sec. 66. The mayor shall take and approve all official undertakings, which the ordinances of this city may require any officer to give as a security for the faithful performance of his duty, or any undertaking which may be required of any contractor for the faithful performance of his contract, and when he approves such undertaking, he must immediately file the same with the clerk.

Sec. 67. He shall perform such other duties, and exercise such other authority as may be prescribed by this act, any city ordinance, or any law of the United States or of this Territory.

Sec. 68. Any ordinance which shall have passed the council, shall, before it becomes a law, be presented to the mayor for his approval; if he approves he shall sign it; if not, he shall within ten days, return it with his objections in writing to the council who shall cause the same to be entered on the journal, and shall proceed to reconsider the same. If after such reconsideration five-sevenths of the members of the council shall agree to pass the same, it shall become a law.

Sec. 69. During any temporary absence of the mayor from the city, or if he be unable for any reason to act, the council shall elect one of their own members who shall be the acting mayor, and perform all the duties of such office during such temporary absence or inability, except as is otherwise provided in this act.

## CHAPTER IX.

### THE POWERS AND DUTIES OF OTHER OFFICERS.

Sec. 70. The city attorney shall represent the city in all suits or proceedings in which the city is legally interested, and give his advice and opinion in writing concerning any matter in which the city is interested, when required by the mayor or council; but the city may employ additional counsel when deemed advisable by the council.

Sec. 71. It shall be the duty of the clerk to keep a fair and correct journal of the proceedings and to file and keep all papers and books of the city council. The clerk is authorized to administer any oath required to be taken in connection with the duties of his office.

190                          GENERAL LAWS.

SEC. 72. All demands and accounts against the city must be presented to the clerk with the necessary evidence in support thereof, and he must submit the same to the council, who shall, by a vote, direct whether the same shall be paid, or any part thereof, as they may deem it just and legal.

SEC. 73. When the council orders any demand or account to be paid, if money has been appropriated for that purpose, and not otherwise, the clerk must draw a warrant upon the treasurer for the amount ordered paid, which warrant must be drawn on the special or general fund appropriated therefor, and be signed by the mayor and attested by the clerk.

SEC. 74. The clerk must keep proper books of account, showing therein all sums appropriated, the date thereof, and out of what fund, the date and amount of all warrants drawn thereon, and to whom payable, and all such other matters and things as may be prescribed by ordinance, or proper and necessary to a correct understanding of the city finances.

SEC. 75. The treasurer is receiver of taxes and must receive and keep all moneys that shall come to the city, by taxation or otherwise, and pay out the same upon the warrant of the mayor attested by the clerk.

SEC. 76. The treasurer must keep an account with the general fund, and a separate account with each special fund that may be raised for any specific object, and when a warrant is drawn on any particular fund, it can only be paid out of such fund.

SEC. 77. The treasurer must make a report of the receipts and expenditures to the common council at the first regular meeting in the months of December and June of each year which report shall be published in any newspaper published in the city.

SEC. 78. The assessor must annually make a correct list of all the property subject to taxation by the city, with the valuation thereof, and certify and return the same to the clerk.

SEC. 79. A person feeling himself aggrieved by any such assessment either in the valuation or listing of the property, may apply in writing to the council, to have such assessment revised, and if the council deem the same erroneous they must correct it. The party applying for such correction may be examined as a witness in relation to the matter, if he desire it, or the council require it.

SEC. 80. The assessment of property must be made in the manner prescribed by law for assessing property for territorial and county taxes; but the form of the assessment roll, and the rule for ascertaining the ownership of property, and in whose name it may be assessed, may be prescribed by ordinance, and

the time of making such assessment and the return thereof, and of applying to the council for a revision thereof must be prescribed by ordinance.

SEC. 81. The marshal is a peace officer and must execute all process issued by the justice of the peace of the city or directed to him by any magistrate of the territory; he must attend regularly upon the court of said justice of the peace and the meetings of the council, he has power by and with the approval of the council, to appoint one or more deputies, who shall possess the same power. He shall make arrests for breach of the peace or for commission of a crime within the city limits, with or without warrant, as a peace officer may do under the laws of the territory, he shall exercise a vigilant control over the peace and quiet of the city, and he is the keeper of the city prison, or house of correction, unless otherwise prescribed by ordinance.

SEC. 82. The marshal must keep a correct record of all arrests made by him or his deputies, showing the time, cause or complaint upon which said arrest was made, and must make a full and complete report in writing each month, to the city council.

SEC. 83. The justice of the peace of the city shall, before exercising any of the functions of his office as such, give a bond to the city in such sum and with such conditions as the council may require. He must keep a proper account of all fines, costs, or other moneys received by him when acting under and by authority of this act, and he must pay to the treasurer monthly all such moneys and take duplicate receipts therefor, one of which he must file with the clerk.

SEC. 84. The powers and duties of all other officers of the city shall be as prescribed by ordinance.

SEC. 85. The official books and papers of all the city officers are city property, and must be kept as such by such officers during their continuance in office, then delivered to their successors.

SEC. 86. The official books and papers of any officer mentioned in this act may be inspected at any time by a committee of the council appointed for that purpose.

## CHAPTER X.

### ORDINANCE.

SEC. 87. The style of every ordinance shall be, "The city

192                    GENERAL LAWS.

of ———, does ordain as follows:" All ordinances and resolutions, or orders for the arropriation or payment of money, shall require, for their passage and adoption, the concurrence of a majority of all the members of the council; no ordinance shall contain more than one subject, which shall be clearly expressed in its title, and no ordinance or section thereof, shall be revised or amended, unless the new ordinance contain the entire ordinance or section revised or amended; and the ordinance or section so amended, shall be repealed.

Sec. 88. All ordinances shall, as soon as may be, after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer and the clerk, and all those of a general or permanent character, and those imposing any fine, penalty, or forfeiture, shall be published in some newspaper of general circulation within the city, and it shall be a sufficient defense, to any suit or prosecution for such fine, penalty or forfeiture, to show that no such publication was made, and such ordinances shall take effect and be in force at the expiration of five days after they have been published.

## CHAPTER XI.

### OF THE COLLECTION OF DELINQUENT TAXES.

Sec. 89. The assessor shall annually make out a list of the names of all persons within the city, liable to pay a road, poll tax, as provided in section seven of this act, and return such list to the council with his assessment of property; said list of names shall be given to the treasurer, and he shall at once proceed to collect such poll tax as the council may have levied for the year, from each person upon said list, the treasurer shall place upon his list, the names of all persons found within the city, liable to pay such poll tax, who shall fail to produce a receipt for the payment of a road poll tax for the current year, he shall demand the amount due from each person named upon the list, and shall proceed at once to collect the same, from any person who shall fail to pay the same, when so demanded by levy and sale of the property real or personal, of such person so delinquent, or sufficient thereof for that purpose, and to pay the expenses of the levy and sale: *Provided*, That any person may pay said poll tax, in work upon the streets of the city, under the direction of the street commissioner, at the rate of two dollars per day. Any person having men em-

ployed either for himself or a company, shall, when required, provide a list of the names of all such persons so employed, liable to pay such road poll tax, and if such employer, or agent of the employer, shall fail to furnish such list or shall furnish an incomplete or otherwise incorrect one, then said employer or company shall be liable for the amount of the road poll tax of his or their employees, and shall pay the road poll tax due by such men or the men so employed, on being notified in writing by the treasurer.

Sec. 90. Whenever any general or special tax has been levied as provided and authorized in chapter III, of this act, every part thereof shall bear interest at the legal rate, from the time it is due and payable, until paid or collected; and all such taxes shall be a lien upon the real estate upon which the same were assessed which shall be prior to all other liens except for a prior tax.

Sec. 91. The council must provide by ordinance within what time all taxes, levied as provided and authorized in chapter II, may be paid to the treasurer; and all taxes not paid to the treasurer within such time, are thereafter delinquent taxes, and must be collected as such. Within five days from the expiration of the time limited for paying taxes to the treasurer, he must return the tax roll to the council, distinguishing thereon the taxes paid and those remaining unpaid.

Sec. 92. The council must thereafter order the clerk to deliver the tax roll to the treasurer of the county within which the city is located and issue and annex thereto a warrant directed to said treasurer, commanding him to proceed and forthwith to collect the delinquent taxes upon such roll, in the manner provided by law, and pay the same to the treasurer, less his fees and costs of collection, and return the warrant with his doings thereon, and the receipt of the city treasurer, for all moneys collected thereby and paid to the city treasurer, to the clerk.

Sec. 93. Such warrant for the purpose of collecting such delinquent taxes shall be deemed an execution against property, and shall have the force and effect thereof against any person, firm or corporation, against whom such taxes are levied or charged on the tax roll, and shall be executed and returned in like manner, except as in this chapter otherwise provided.

Sec. 94. The county treasurer shall proceed to collect the taxes upon such roll at the same time and in the same manner as he is required to do in collecting delinquent territorial and county taxes; and for such purposes he shall have the same authority as is given to him by the laws of the Territory relating to the assessment and collection of Territorial and county taxes. He shall pay to the city treasurer monthly all moneys

25

194                    GENERAL LAWS.

collected and due the city as provided in section 93 of this act.

SEC. 95.    Whenever any property, real or personal, sold for delinquent taxes, shall bring more than the amount of such taxes, with interest and the costs and charges of collection, the surplus must be paid to the treasurer, and the person executing the warrant must take a separate receipt for such surplus and file the same with the clerk on the return of the warrant.    At any time thereafter the owner of the property sold, or his legal representative, is entitled to a warrant upon the treasurer for such surplus.

SEC. 96.    The council may provide, by ordinance, within what time a warrant for the collection of delinquent taxes, must be returned, and may order an alias warrant to issue for the coltion of any such taxes not made on a previous one.    All costs and charges for collecting delinquent taxes, must be made on the warrant, and collected as part of the tax; council may prescribe by ordinance, the fees and compensation for collecting delinquent taxes, but the same shall in no case be paid out of the treasury.


CHAPTER XII.

MISCELLANEOUS PROVISIONS.

SEC. 97.    Such cities are not bound by any contract or in any way liable thereon, unless the same is authorized by a city ordinance and made in writing, and by order of the council, signed by the clerk, or some other person in behalf of the city; but an ordinance may authorize any officer or agent of the city, naming him, to bind the city without a contract in writing, for the payment of any sum of money not exceeding fifty dollars.

SEC. 98.    Such cities shall be liable to any one for any loss or injury to person or property, growing out of any casualty or accident happening to such person or property on account of the condition of any street or public ground therein.    But this section does not exonerate any officer of such city or any other person from such liability, when such casualty or accident is caused by the willful neglect of a duty enjoined upon such officer, or person by law or by gross negligence or willful misconduct of such officer or person in any other respect.

SEC. 99.    No money shall be drawn from the city treasury but in pursuance of an appropriation for that purpose made by ordinance, and an ordinance making an appropriation of money

## GENERAL LAWS. 195

must not contain a provision upon any other subject, and if it does, such ordinance as to such provisions shall be void, and not otherwise.

Sec. 100. A member of the council for words uttered in debate therein, shall not be questioned in any other place.

Sec. 101. The fiscal year of the city shall commence on the first day of July and end on the last day of June of each year.

Sec. 102. In any action, suit or proceedings in any court concerning any assessment of property or levy of taxes authorized by this Act, or the collection of any such tax or proceeding consequent thereon, such assessment, levy, consequent proceeding, and all proceedings connected therewith, shall be presumed to be regular and duly done or taken until the contrary is shown; and when any proceeding, matter or thing is by this act committed or left to the discretion of the council, such discretion or judgment, when exercised or declared, is final and cannot be reviewed or called in question elsewhere.

Sec. 103. The city council is hereby authorized to grant the right to use the streets of said city for the purpose of laying gas pipes intended to furnish the inhabitants of said city with light, to any person or association of persons, for a term not exceeding twenty-five years; and the council may adopt such rules and regulations in granting such exclusive right as they may think proper, and as shall not be inconsistent with law.

Sec. 104. In making a deed for real property sold for delinquent taxes, it is not necessary to recite or set forth the proceedings prior to the sale, but it is sufficient if it substantially appear from such deed that the property was sold by virtue of a warrant from the city for a delinquent tax, and the amount thereof, together with the date of the sale and the amount paid thereat by the purchaser. The style of a warrant for the collection of delinquent taxes shall be in the name of such city.

Sec. 105. The mayor and councilmen are not entitled to and must not receive any salary or compensation for their official service.

Sec. 106. All real property within the limits of such city, not laid off in blocks at the time of making any assessment authorized by this act, must be assessed at its cash value per acre, or fraction thereof as the case may be...

Sec. 107. The city council may divide the city into not less than three nor more than seven wards, and shall apportion the members of the city council to be elected in each, and pro-

196                        GENERAL LAWS.

vide places for holding elections in each, and appoint officers for
conducting the same.

SEC. 108.    No street, highway or alley shall be extended,
widened, altered or vacated, except on petition to the city coun-
cil, signed by a majority of the resident owners of real estate
within the ward or wards, in or through which such street, high-
way or alley is proposed to be extended, widened, altered or
vacated.

SEC. 109.    When the grade of any street, highway or alley
shall have been established by authority of such city, and any
person or persons, shall have built or made improvements on
such street, highway or alley, and the city shall afterward change
the established grade or shall change the boundary lines of any
block, street, highway or alley in such manner as to injure or
diminish the value of the property, which shall have been im-
proved, the city shall pay to the owner or owners of the property
so injured, the amount of such damage; and when the parties
interested are unable to agree with the city council as to the
amount so to be paid, the same shall be assessed by three per-
sons, one of whom shall be appointed by the mayor, one by the
owner or owners of the property and one by the two so ap-
pointed, or, in case of their disagreement, by the city council;
said appraisers shall be sworn to faithfully execute their duties
according to the best of their ability, they shall view the prem-
ises and receive any legal evidence, and may adjourn from day
to day, but shall make their report within thirty days from the
time of their appointment; they shall assess the damage sus-
tained over and above the additional value of the property, by
reason of the change or improvement; they shall sign their re-
port and deliver the same to the clerk of the district court, of
the district embracing the city and if no objection is made
thereto, in the manner herein after prescribed, within twenty
days thereafter, the assessment shall be final, and the city shall
pay the amount so assessed, and upon filing a precipe therefor,
the party entitled, may have a judgment entered therefor. If
the damage so assessed be excessive or insufficient, the clerk shall
upon filing a written precipe therefor, by the city or any person
aggrieved, within said twenty days, enter the case upon the
trial docket, for the next term; the party claiming damages
shall be the plaintiff and the city shall be the defendant; the
usual pleadings in a civil action, may be filed or such special
pleadings as the court shall allow, and the issues thus formed,
shall be tried as other civil actions.    The costs shall be taxed
against the city, only when the judgment is for a larger
amount than was awarded by the appraisers, or the cause has
been tried at the instance of the city, for the purpose of reduc-
ing the amount of damages, and the damages are not so

reduced, otherwise the costs shall be taxed against the parties claiming damages.

SEC. 110. When private property shall have been condemned, and the compensation to be paid therefor shall be made a charge upon the property benefited thereby, as provided in section eleven of this act, the assessment upon the various lots or parcels of land so charged and the appraisement of damages to be paid to the owners of the property condemned, shall be made by three persons, one of whom shall be appointed by the mayor, one by the owner or owners of property subject to assessment, and one by the owner or owners of property condemned or damaged, or if either or both said classes of property owners fail or refuse to make such appointment after ten days' notice so to do, which notice shall be given in the manner to be prescribed in the ordinance, providing for such condemnation of property, either or both such appointments shall be made by the city council. The persons so appointed shall be sworn; shall proceed in making the assessment, and shall report within the time and in the manner prescribed for appraisements in the preceding section; their award shall be final, unless objection is made within twenty days from the time of the return thereof, to the clerk of the district court. Any party aggrieved by the award, may, upon filing a precipe therefor, have the case docketed for trial at the next term of the court, when the issue in such case is between an owner of property condemned or damaged, and the city; such party shall be plaintiff and the city defendant; and when the issue to be tried, relates to excessive or unfair assessments upon property, the city shall be plaintiff and the owner of the propery defendant; the issue shall be made up, the case tried and determined, and costs taxed as provided in the preceding section, provided that all costs taxed against the city, and all costs of the appraisements and other proceedings under this section, shall be added to the gross amount to be raised by assessment and collected from the several property holders, in the same proportion as said gross amount. and said assessments and costs, shall be a lien upon the property therewith charged.

SEC. 111. In all other cases where private property is condemned or taken for public use by authority of this act, the city shall pay a fair compensation therefor to the owners of such property, and when such owners and the city council are unable to agree as to the amount of such compensation, the same shall be assessed and determined in the manner provided by the general laws of this Territory, relating to the mode of proceeding to appropriate lands by private corporations.

SEC. 112. No special tax for any purpose as provided in this act shall be assessed unless by a majority vote of all resi-

198                     GENERAL LAWS.

dent property holders in any city hereafter incorporated under this act.

SEC. 113.    This act shall take effect and be in force from and after its approval by the Governor.

Approved, November 9th, 1877.

## AN ACT

TO AMEND AN ACT ENTITLED AN ACT RELATIVE TO CRIMES AND PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES APPROVED NOV. 10TH 1873.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section one hundred and ten of chapter six of an act entitled an act relative to crimes and punishments and proceedings in criminal cases approved. November 10th, 1873 be amended to read as follows:

SECTION One hundred and ten, every person who shall deal at the game of cards called faro or monte or other banking games or shall set up, keep or exhibit an E. O. or roulette table or shuffle board or any gaming table whatever for the purpose of gaming or shall have in his possession to be used for such purpose any gaming device whatever, and every white man. negro, half-breed Indian Kanaka, or Chinaman who shall play at any game of cards or any game of chance with any Indian for fun, pleasure, luck, money, or anything of value whatever or for any thing whatever, or any white man, negro, half-breed Indian, Kanaka, or Chinaman, who shall run horses on a wager of any kind or for pastime, with an Indian shall be subject on conviction therefor, for each and every offence to a fine of not less than fifty and not exceeding five hundred dollars or to both a fine and imprisonment not exceeding six months. And it is hereby made the duty of any prosecuting attorney, sheriff. constable, or justice of the peace having knowledge of the violation of this section to report the same to a justice of the peace in the county in which such offence was committed or the grand jury acting for such county.

SECTION 2.    This act to take effect from and after its approval.

Approved, November 9th, 1877.

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT RELATING TO JUSTICES OF
THE PEACE AND TO THEIR PRACTICE AND JURISDICTION," AP-
PROVED NOVEMBER THIRTEENTH, ONE THOUSAND EIGHT HUN-
DRED AND SEVENTY-THREE.

SECTION 1: *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the act of the Legislative Assembly approved November thirteenth one thousand eight hundred and seventy-three entitled "An act relating to justices of the peace, and to their practice and jurisdiction;" be and the same is hereby amended as follows, That is to say:

Subdivision two, of section seventeen of said act shall read as follows:

2. Of an action for damages for injury to the person, or for taking or detaining personal property or for injuring personal property, or for an injury to real property when no issue is raised by the answer involving the plaintiff's title to, or possession of the same if the damages claimed do not amount to one hundred dollars also of actions to recover the possession of personal property, when the value of such property does not amount to one hundred dollars.

SECTION 2. The following additional sections are incorporated into said act, the same to follow after section 39 viz:

SECTION —. Personal property, capable of manual delivery, shall be attached by taking it into custody, stock or shares or interest in stock or shares of any corporation or company, shall be attached by leaving with the president or other head of the same, or the secretary, cashier or managing agent thereof, a copy of the writ, and a notice stating that the stock or interest of the defendant is attached in pursuance of such writ; debts and credits and others personal property, not capable of manual delivery shall be attached by leaving with the person owing such debts, or having in his possession, or under his control such credits, or other personal property, a copy of the writ, and a notice that the debts owing by him to the defendant, or the credits, and other personal property in his possession, or under his control belonging to the defendant, are attached in pursuance of such writ.

200                        GENERAL LAWS.

SECTION —. Upon receiving information in writing, from the plaintiff or his attorney, that any person has in his possession, or under his control any credits or other personal property belonging to the defendant, or is owing any debt to the defendant, the sheriff or other person or officer having the writ shall serve upon such person a copy of the writ and a notice that such credits or other property or debts as the case may be, are attached in pursuance of such writ.

SECTION —. All persons having in their possession or under their control any credits or other personal property belonging to the defendant or owing any debts to the defendant, at the time of service upon them of a copy of the writ and notice, as provided in the last two sections shall be, unless such property be delivered up or transferred or such debts be paid to the sheriff, constable, or other officer or person having the writ liable to the plaintiff for the amount of such credits, property, or debts, until the attachment be discharged, or any judgment recovered by him be satisfied.

SECTION —. Any person owing debts to the defendant, or having in his possession or under his control any credits or other personal property belonging to the defendant, may be required to attend before the justice of the peace by whom the writ was issued, and be examined on oath respecting the same. The defendant may also be required to attend for the purpose of giving information respecting his property, and may be examined on oath. The justice may after such examination, order personal property capable of manual delivery to be delivered to the sheriff, constable or other officer or person having the writ on such terms as may be just, having reference to any liens thereon or claims against the same, and a memorandum to be given of all personal property containing the amount and description thereof.

SECTION —. The sheriff, constable, or other officer, having the writ shall make a full inventory of the property attached, and return the same with the writ. To enable him to make such return as to debts and credits attached, he shall request, at the time of service, the party owing the debt or having the credit to give him a memorandum, stating the amount and description of each; and if such memorandum be refused, he shall return the fact of the refusal with the writ. The party refusing to give the memorandum may be required to pay the cost of any proceedings taken for the purpose of obtaining information respecting the amount and description of such debt or credit.

SECTION —. If any of the property attached be perishable, the officer or person having the writ shall sell the same in the manner in which such property is sold on execution. The pro-

ceeds and other property attached by him shall be retained by him to answer any judgment that may be recovered in the action, unless sooner subjected to execution upon another judgment recovered previous to the issuing of the attachment. Debts and credits attached may be collected by the officer or person having the writ if the same can be done without suit. The officer's receipts shall be a sufficient discharge for the amount paid.

SECTION —. If any property attached be claimed by any other person than the defendant or his agent, and the claimant make affidavit of his title thereto, or his right to the possession thereof stating the ground of such title or right and serve the same upon the officer or person having the writ before while the property is in his possession, such officer, or person shall not be bound to keep the property, unless the plaintiff on demand indemnify him against such claim by a bond executed by at least two sufficient sureties who must be residents of the county, and able to prove that they are each worth double the value of the property attached over and above all debts and liabilities exclusive of property exempt from execution, and no claim to property attached shall be valid against the officer, unless made as aforesaid, and notwithstanding such claim when so made he may retain the property a reasonable time to demand such indemnity.

SECTION —. When a claim is made to property in the manner provided in the last section the officer shall at once make a return of the writ with his doings endorsed thereon, and deliver the claimant's affidavit to the justice, who shall file the same and cause notice thereof to be given to the plaintiff or his attorney and if the property be not released for failure on the part of the plaintiff to indemnify the officer, he shall set the case for hearing upon the allegations of the affidavit and the case shall be tried as a new action between the claimant as plaintiff, and the officer and the plaintiff in the attachment, suit, as defendants, and the case shall proceed as other civil actions, and, if either party demand it, a jury may be empanneled as in other cases.

SECTION —. If in such suit the claimant establish his title or right to the possession of the property, judgment shall be rendered in his favor for possession of the property and for costs against the plaintiff in the attachment; if he fail to establish his title or right to the property, judgment shall be rendered against him for costs.

SECTION —. After judgment in the attachment suit, the property attached shall be disposed of in the same manner as provided by law for similar cases in the district courts.

SECTION [3.] Section forty-four of the act of which this act is amendatory is hereby amended to read as follows:

202                    GENERAL LAWS.

"SECTION forty-four. Property attached may be released by the defendant giving a bond in such amount as the justice may designate with good and sufficient sureties, conditioned for the payment of any judgment that may be recovered against him in the action and the costs thereof; or by claiming that the property is exempt, in which case the question of exemption shall be tried by the justice summarily: *Provided however*, That if either party demand it a jury may be empaneled and the matter may be tried before the court and jury as other civil actions, and so much of the property as shall be decided to be. exempt shall be released and delivered to the defendant."

SECTION [4.] Section sixty-nine of the act of which this act is amendatory is hereby amended to read as follows:

"SECTION sixty-nine. Before the justice shall commence an investigation of the merits of the cause either party may demand that the cause be tried by a jury: *Provided*, That the party demanding the jury shall first pay to the justice the sum of six dollars which shall be paid over by the justice to the jury before they are dischared, and said amount shall be taxed as costs against the losing party.              ·

SECTION [5.] Section seventy-two of the act of which this act is amendatory is hereby amended to read as follows:

"SECTION seventy-two. The sheriff or constable shall execute such venire fairly and impartially, and shall not summon any person whom he has reason to believe is biased or prejudiced, for or against either of the parties. He shall summon the jurors personally, and make a list of the persons, summoned, which he shall certify and annex to the venire and return the same to the justice. If a sufficient number of competent jurors cannot be obtained from the panel returned the sheriff or constable shall immediately summon others to serve in their place and all jurors summoned under the provisions of this act shall receive the same compensation from the time they are summoned until discharged as is allowed to witnesses under the provisions of this act.

·SECTION [6.] Section one hundred and six is hereby amended to read as follows:

"SECTION one hundred and six. If any property levied on be claimed by any other person than the defendant in the execution, and the claimant make affidavit of his title or right to the possession of the same, stating the ground of such title or right, and serve the same upon the sheriff or constable, while the property is in his possession said sheriff or constable shall not be bound to keep the property unless the plaintiff on demand indemnify him in the same manner as provided in this act for cases where property held under attachment is claimed by persons not parties to the suit and when such claim is made

## GENERAL LAWS.    203.

the sheriff or constable shall immediately file the claimant's affidavit with the justice and notify the plaintiff thereof and unless the property be at once released the justice shall set the case for trial upon the allegations of the claimant's affidavit and the case shall proceed and be determined in the same manner as provided in this act for cases where property held ' under attachment is claimed by persons not parties to the suit.

SECTION [7.] Section one hundred and ninety-six of this [the] act of which this act is amendatory is hereby so amended as to read as follows:

SECTION One hundred and ninety-six. Every person convicted before a justice of the peace of any offense, may appeal from the sentence within ten days thereafter to the district court then next to be holden for the district embracing the county. The appeal shall be taken by orally giving notice thereof at the time the judgment is rendered, or by serving a written notice thereof upon the justice at any time after the judgment and within the time allowed for taking the appeal, when the notice is given orally the justice shall enter the same in his docket. The appellant shall be committed to abide the sentence of said justice until he shall recognize or give a bond to the Territory in such reasonable sum with such sureties as said justice may require with condition to appear at the court appealed to and there to prosecute his appeal and to abide the sentence of the court thereon if not revised by a higher court and in the mean time to be of good behavior.

SECTION [8.] Section two hundred and thirty-one of the act of which this act is amendatory is hereby so amended as to read as follows:

SECTION two hundred and thirty-one. All witnesses required to recognize with or without sureties, shall, if they refuse, be committed to the county jail by the magistrate, there to remain until they comply with such order, or be otherwise discharged according to law. *Provided* That when the magistrate is satisfied that any witness required to recognize with sureties is unable to comply with such order he shall immediately take the deposition of such witness and discharge him from custody upon his own recognizance. The testimony of the witness shall be reduced to writing by the justice or some competent person under his direction and he shall take only the exact words of the witness; the deposition except the cross examination, shall be in the narrative form, and upon the cross examination the questions and answers shall be taken in full. The defendant must be present in person when the deposition is taken and shall have an opportunity to cross examine the witness and he may make any objections to the admission of any part of the testimony and all objections shall be noted by the justice but he

204                    GENERAL LAWS.

shall not decide as to the admissibility of the evidence but shall take all the testimony offered by the witness. The deposition must be carefully read to the witness and any corrections he may desire to make thereto shall be made by adding the same to the deposition as first taken, it must be signed by the witness, and certified by the justice and transmitted to the clerk of the district court in the same manner as depositions in civil actions. And if the witness is not present when required to testify in the case either before the grand jury or upon the trial in the district court, the deposition shall be submitted to the judge of such district court upon the objections noted by the justice and such judge shall suppress so much of said deposition as he shall find to be inadmissible and the remainder of the deposition may be read as evidence in the case, either before the grand jury or upon the trial in the court.

SECTION [9.]    This act shall take effect and be in force from and after the day of its approval by the Governor.

Approved November 9th 1877.

---

# AN ACT

TO AMEND AN ACT ENTITLED AN ACT RELATIVE TO CRIMES AND PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES, APPROVED NOVEMBER TENTH ONE THOUSAND EIGHT HUNDRED AND SEVENTY-THREE.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the act of the Legislative Assembly approved November tenth one thousand eight hundred and seventy-three entitled an act relative to crimes and punishments and proceedings in criminal cases, be and the same is so amended that section two of said act shall read as follows:

SECTION two    On the trial of any indictment the party accused shall have the right to be heard by himself or counsel to meet the witnesses produced against him face to face: *Provided always* that in any case where a witness or witnesses whose deposition or depositions have been taken by a committing magistrate pursuant to law are absent and cannot be found when required to testify in such case so much of such deposi-

tion or depositions as the court shall decide to be admissible and competent shall be admitted and read as evidence in such case and on the trial of any indictment the party accused shall have the right to produce witnesses and proofs in his favor and have compulsory process to compel the attendance of witnesses in his behalf and to a speedy public trial by an impartial jury and no person shall be put upon trial on an indictment for a felony until the expiration of five days from the day of his arrest or upon an indictment for murder until thirty days from his arrest without his consent thereto in open court.

SECTION 2. The following additional section shall be and the same is incorporated into and made part of said act the same to follow after section ninety-six of said act; viz

SECTION ——. Every person charged with the performance of any duty under the provisions of any law of this Territory relating to elections who wilfully neglects or refuses to perform such duty or who in the performance of such duty or in his official capacity knowingly or fraudulently acts in contravention or violation of any of the provisions of law relating to such duty shall on conviction thereof be fined in any sum not exceeding one thousand dollars to which punishment may be added imprisonment in the county jail for a term not exceeding one year: *Provided however*, That no person shall be put on trial upon an indictment for murder in the first degree within thirty days from the day of his arrest without his consent thereto in open court.

SECTION 3. The following additional section shall follow section one hundred and fifteen; viz

SECTION ——. Every person who shall moor or chain any steamer, sloop, scow, or other vessel, or raft, or boom of logs to the piling, piers abutments, or other supports, of any bridge within this Territory shall on conviction thereof be fined in any sum not exceeding three hundred dollars nor less than fifty dollars.

SECTION 4. The following additional section shall follow section one hundred and twenty-eight, of chapter seven, of the act to which this is amendatory; that is to say:

SECTION ——. Every person who knowingly and willfully marries the husband or wife of another, in any case in which such husband or wife would be punishable under the provisions of section one hundred and twenty-eight, shall be punishable by imprisonment in the penitentiary, not more than four years nor less than one year, and may in addition thereto be fined in any sum not exceeding five hundred dollars.

SECTION 5. Section one hundred and thirty-seven of said act shall read as follows:

206                    GENERAL LAWS.

SECTION one hundred and thirty-seven.   Every person who shall knowingly sell or give to a minor intoxicating or spirituous liquors without the written permission of the parent or guardian of such minor, shall on conviction thereof be fined in any sum not exceeding five hundred dollars, or be imprisoned in the county jail for a term not exceeding three months, or both.

SECTION 6.   The following additional section shall follow section one hundred and forty-two of said act viz

SECTION —.   Every person who shall be guilty of an attempt to commit any crime shall be punished by fine, or imprisonment, or both, not exceeding one-half the fine and one-half the imprisonment imposed by law as the greatest punishment for the principal offense, and where by law the punishment for the principal offense is imprisonment in the penitentiary the punishment for an attempt to commit the same may, in the discretion of the court, be by imprisonment in the county jail.

SECTION 7.   The following additional section shall be and the same is made part of chapter twenty-two, and shall precede section two hundred and thirty-nine of said act viz:

SECTION —.   A continuance may be granted in any case on the ground of the absence of evidence on the motion of the defendant supported by affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it; and also the name and place of residence of the witness or witnesses; and the substance of the evidence expected to be obtained and if the prosecuting attorney admit that such evidence would be given, and that it be considered as actually given on the trial or offered and overruled as improper the continuance shall not be granted.

SECTION 8.   Section two hundred and eighty-seven of said act shall read as follows; viz

SECTION two hundred and eighty-seven.   When a defendant is committed to jail on failure to pay any fine or costs he shall under the order of the county commissioners work out the amount of the fine and costs at the rate of three dollars per day; and in case he shall so work out the fine and costs or in case he shall not be able to work, or the county commissioners fail to provide work, and he shall have been confined in the county jail one day for every three dollars of such fine and costs no execution shall issue therefor.   When any defendant is in the custody of the sheriff by virtue of a sentence of imprisonment in the county jail and there be no county jail in the county he shall under the order of the county commissioners, cause such person to work his unexpired term of imprisonment in such manner as said county commissioners may direct;

SECTION 9. Section two hundred and ninety-eight of said act shall read as follows.

SECTION two hundred and ninety-eight. Writs of error shall be sued out by the filing of precipe therefor signed by the plaintiff in error or his attorney with the clerk of the supreme court and shall be issued by said clerk under seal of the supreme court and be sent by said clerk by mail or by a messenger who shall be a person not a party to or interested in the case to the clerk of the district court and notice of the taking of such writ shall be issued by the clerk of the district court within three days after he receives the writ and shall be served upon the prosecuting attorney of the district or defendant, or his attorney in the same manner as notice in a civil action; and within ten days after the writ is received by the clerk of the district court the plaintiff in error shall file with the clerk of the district court an assignment of errors specifically pointing out each error complained of.

SECTION 10. Section three hundred and twenty-one of said act shall read as follows

SECTION three hundred and twenty-one  No prisoner or person under recognizance who shall be acquitted by verdict or discharged because no indictment is found against him, or for want of prosecution shall be liable for any costs or fees of any officer or for any charge of subsistence while he was in custody but in every such case the fees of the defendant's witnesses, and of the officers for services rendered at the request of the defendant; and charges for subsistence of the defendant while in custody shall be taxed and paid as other costs and charges in such cases.

SECTION eleven  No prosecution for offenses committed prior to the approval of this act shall be in any manner affected by this act except that the proceedings, in such cases shall conform to the requirements of this act, and the penalty for such offenses shall be as herein prescribed.

SECTION twelve. This act shall take effect and be in force from and after the day of its approval by the governor.

Approved, November 9th, 1877.

# AN ACT

TO PROVIDE FOR THE ELECTION OF JUSTICES OF THE PEACE IN CASE OF VACANCY.

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1. Whenever a vacancy shall exist in the office of justice of the peace, in any precinct of any county in this Territory, the same shall be filled by election.

SECTION 2. When any auditor of any county shall have filed with him by any legal voter of a precinct in which a vacancy exists, a written certificate of any vacancy, if he be satisfied that there is a vacancy, he shall post or cause to be posted three notices to the legal voters in said precinct calling an election to fill such vacancy in the office of justice of the peace in said precinct, which notices shall also set forth the time when and place where the polls shall be held, and be posted in three public places in the precinct, provided that no such notices shall be posted if said written certificate is filed with the auditor within ninety days next preceding any general election.

SECTION 3. Whenever ten legal voters shall have assembled, at the place named for holding such election for justice of the peace, they may elect three of their number as judges for said special election, two of whom shall act as clerks; and they are hereby required to take an oath and make a return to the county auditor, as officers of election are now, by law, required to do.

SECTION 4. Whenever a special election is held under the provisions of this act, the polls shall be opened at eleven o'clock A. M. or so soon thereafter, not more than two hours, as ten persons are present, and in a precinct where no more than fifty votes were polled at the then preceding general election, shall be kept open two hours; when over fifty votes were cast at the last preceding general election four hours.

SECTION 5. Every person elected a justice of the peace under the provisions of this act, shall qualify in the same manner as if elected at a general election, and shall hold his office until the next general election and till his successor is elected and qualified.

SECTION 6. The judges of the special election herein provided for shall appoint one of their number messenger to convey the returns of said election and file the same with the county auditor, for which he shall receive two dollars and mileage each way at the rate of ten cents per mile; and no further fees shall be paid the said judges of election.

SECTION 7. This act shall take effect and be in force from and after its approval by the Governor.

Approved November 6th 1877.

---

## AN ACT

TO AMEND AN ACT ENTITLED "AN ACT DEFINING THE JURISDICTION AND PRACTICE IN THE PROBATE COURTS OF WASHINGTON TERRITORY," APPROVED NOVEMBER ELEVENTH, ONE THOUSAND EIGHT HUNDRED AND SEVENTY-THREE.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the act of the Legislative Assembly, approved November eleventh, one thousand eight hundred and seventy three, entitled " An Act Defining the Jurisdiction and Practice in the Probate Courts of Washington Territory," be, and the same is hereby amended as follows, that is to say; section six of said act, shall be, and the same is so amended as to read as follows:

SECTION six. A regular term of the probate court shall be held at the county seat of each county, commencing on the fourth Monday of January, March, May, July, September and November in each year, for the transaction of all business of which said court has jurisdiction. *Provided,* That if any district court be in session at such time the probate court of the county in which such district court is held, shall stand adjourned until the first Monday, after the close of such term of the district court.

SECTION 2. Section three hundred and twenty-seven (327) of said act, shall be and the same is so amended as to read as follows:

210                    GENERAL LAWS.

Section three hundred and twenty-seven. The probate court of any county in this Territory, or the judge thereof, upon application of any person under oath setting forth that any person be by reason of insanity is unsafe to be at large, or is suffering under mental derangement, shall cause such person to be brought before said court or judge at such time and place, as the court or judge may direct; and shall cause to appear at said time and place, one or more respectable physicians who shall state under oath in writing, their opinion of the case, which opinion shall be carefully preserved and filed with the other papers in the case; and if the said physician or physicians shall certify to the insanity or idiocy of said person, and it appear to the satisfaction of the court or judge that such is the fact, said court or judge shall cause such insane or idiotic person to be taken to and placed in the hospital for the insane in Washington Territory. *Provided,* That such person or any person in his behalf, may demand a jury to decide upon the question of his insanity, and the court or judge shall discharge such person if the verdict of the jury is that he is not insane. Said court or judge shall also inquire as to the ability of such insane or idiotic person to bear the expense of his keeping in said hospital, and shall certify the result to the trustees of the hospital for the insane in Washington Territory, and in case such person shall have sufficient means to bear such expense, said court or judge shall cause to be paid to the Territorial Treasurer the amount of two months' expenses in said hospital in advance and a like amount regularly every two months thereafter so long as such person remains under treatment in said hospital if he shall have means sufficient therefor. *Provided, however,* That if such person be the head of a family, no property that is by law exempt from execution or attachment for debt shall be taken to pay such expenses.

Section 3. All of sections ninety-four (94) ninety-five (95) ninety-nine (99) one hundred (100) one hundred and two (102) and one hundred and three (103) of the act of which this act is amendatory are hereby repealed. Section one hundred and forty six shall be, and the same is amended to read as follows:

Section one hundred and forty-six. When a person shall die leaving a widow and minor child or children, the widow, child or children shall be entitled to remain in possession of the homestead, and of all the wearing apparel of the family and of all the household furniture of the deceased and if the head of the family in his or her lifetime had not complied with the provisions of the law relative to the acquisition of a homestead the widow or the child or children shall be entitled to a homestead as now provided by law for the head of a family, and the same shall be set aside for the use of the child or children or widow

on a petition by such widow or the guardian of such child or children.

SECTION 4. The following additional sections shall be, and and the same are hereby incorporated into and made a part of said act to which this act is amendatory, the same to follow after section three hundred and sixty-six of said act and to read as follows:

SECTION Three hundred and sixty-seven. Before letters testamentary or of administration are issued to the executor or administrator he must take and subscribe an oath before some person authorized to administer oaths, that he will perform according to law, the duties of his trust as executor or administrator, which oath must be attached to and recorded with the letters.

SECTION Three hundred and sixty-eight. Every person to whom letters testamentary or of administration are directed to issue must before receiving them, execute a bond to the Territory of Washington with two or more sufficient sureties to be approved by the probate judge. In form the bond, must be joint and several, and the penalty must not be less than twice the value of the personal property, and twice the probable value of the annual rents, profits and issues of the real property belonging to the estate; which values must be ascertained by the probate judge by examining on oath the party applying, and any other persons.

SECTION Three hundred and sixty-nine. The probate judge must require an additional bond, whenever the sale of any real estate belonging to an estate is ordered by him; but no such additional bond must be required when it satisfactorily appears to the court, that the penalty, of the bond given, before receiving letters or of any bond, given in place thereof, is equal to twice the value of the personal property remaining in or that may come into the possession of the executor or administrator including the annual rents profits and issues of real estate and twice the probable amount to be realized on the sale of the real estate ordered to be sold.

SECTION Three hundred and seventy. The bond must be conditioned that the executor or administrator shall faithfully execute the duties of the trust according to law.

SECTION Three hundred and seventy-one. When two or more persons are appointed executors or administrators, the probate judge must require and take a separate bond from each of them.

SECTION Three hundred and seventy-two. The bond shall not be void upon the first recovery, but may be sued and recovered upon from time to time, by any person aggrieved, in his own name, until the whole penalty is exhausted.

212                    GENERAL LAWS.

SECTION Three hundred and seventy-three.    In all cases where bonds or undertakings are required to be given under this title the sureties must possess the qualifications and justify thereon in the same manner as required by the civil practice act for bail upon an arrest and the certificate thereof must be attached to, and filed and recorded with the bond or undertaking.    All such bonds and undertakings must be approved by the probate judge before being filed or recorded.

SECTION Three hundred and seventy-four.    Before the probate judge approves any bond required under this title, and after its approval, he may of his own motion, or upon the motion of any person interested in the estate, supported by affidavit that the sureties, or some one or more of them are not worth as much as they have justified to, order a citation to issue, requiring such sureties to appear before him at a designated time and place, to be examined touching their property and its value; and the judge must, at the same time, cause notice to be issued to the executor or administrator, requiring his appearance on the return of the citation, and on its return, he may examine the sureties and such witnesses as may be produced touching the property of the sureties and its value; and if upon such examination he is satisfied that the bond is insufficient he must require sufficient additional security.    '

SECTION Three hundred and seventy-five.    If sufficient security is not given within the time fixed by the judge's order the right of such executor or administrator to the administrator [tion] shall cease, and the person next entitled to the administration on the estate, who shall execute a sufficient bond must be appointed to the administrator [tion].

SECTION Three hundred and seventy-six.    When it is expressly provided in the will that no bond shall be required of the executor, letters testamentary may issue, and sale of real estate be made and confirmed without any bond, unless the court, for good cause, require one to be executed but the executor may at any time afterwards if it appear from any cause necessary or proper, be required to file a bond, as in other cases.

SECTION Three hundred and seventy-seven.    Any person interested in an estate may, by verified petition, represent to the probate judge that the sureties of the executor or administrator thereof, have become or are becoming insolvent, or that they have removed, or are about to remove from the Territory, or from any other cause the bond is insufficient, and ask that further be required.

SECTION Three hundred and seventy-eight.    If the probate judge is satisfied that the matter requires investigation citation must be issued to the executor or administrator, requiring him to appear, at a time and place specified, to show cause why he

should not give further security. The citation must be served personally on the administrator or executor, at least five days before the return day. If he has absconded, or cannot be found, it may be served by leaving a copy of it at his last place of residence, or by such publication as the court or judge may order.

SECTION Three hundred and seventy-nine. On the return of the citation, or at such other time as the judge may appoint he must proceed to hear the proof and allegations of the parties. If it satisfactorily appears that the security is from any cause insufficient, he may make an order requiring the executor or administrator to give further security, or to file a new bond in the usual form, within a reasonable time not less than five days.

SECTION Three hundred and eighty. If the executor or administrator neglects to comply with the order within the time prescribed, the judge must by order revoke his letters, and his authority must thereupon cease.

SECTION Three hundred and eighty-one. When it comes to his knowledge that the bond of any executor or administrator is from any cause insufficient the probate judge without any application, must cause him to be called to appear and show cause, why he should not give further security, and must proceed thereon as upon the application of any person interested.

SECTION Three hundred and eighty-two. The application, and acts, authorized by the foregoing sections may be heard and determined in term time, or in vacation. All orders made therein must be entered upon the minutes of the court.

SECTION Eight hundred and eighty-three. Whenever the probate judge has reason to believe from his own knowledge, or from credible information, that [any] executor or administrator has wasted, embezzled or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge or has committed, or is about commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the Territory, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must by order entered upon the minutes of the court suspend the powers of such executor or administrator, until the matter is investigated.

SECTION three hundred and eighty-four. When such suspension is made, notice thereof must be given to the executor or administrator, and he must be cited to appear and show why his letters should not be revoked. If he fail to appear in obedience to the citation, or if appearing the court is satisfied that there exists cause for his removal, his letters must be revoked,

214                GENERAL LAWS.

and letters of admininstration granted anew as the case may require.

SECTION Three hundred and eighty-five. At the hearing, any person interested in the estate may appear and file his allegations in writing, showing that the executor or administrator should be removed to which the executor or administrator may demur or answer.

SECTION Three hundred and eighty-six. If the executor or administrator, has absconded or conceals himself, or has removed or absented himself from the Territory, notice may be given him of the pendency of the proceedings by publication, in such manner as the court may direct, and the court may proceed upon such notice, as if the citation had been personally served.

SECTION Three hundred and eighty-seven. In the proceedings authorized by the proceedings section for the removal of an executor or administrator, the court may compel his attendance by attachment, and may compel him to answer questions, on oath touching his administration, and upon his refusal so to do, may commit him to jail, until he obey, or may revoke his letters, or both.

SECTION Three hundred and eighty-eight. There shall be kept in each of the probate courts of this Territory the following books of record, that is to say:

First, A journal in which shall be entered all orders decrees and judgments made by the courts or the judge thereof and the minutes of the proceedings of the courts.

Second, A record of wills in which shall be recorded all wills admitted to probate.

Third, A record of letters testamentary and of administration in which all letters testamentary and of administration shall be recorded.

Fourth, A records of bonds in which all bonds and obligations required by law to be approved by the probate court or judge shall be recorded.

Fifth, A record of petitions in which all petitions for orders of sale of real estate shall be recorded.

Sixth, A record of claims in which at least one page shall be given to each estate or case wherein shall be entered under the title of each estate or case in separate columns properly ruled:

First, The names of claimants against the estate.

Second, The date of filing proof of claim.

Third, The amount claimed.

## GENERAL LAWS.                                      215

Fourth,   The amount allowed.

Fifth,   The date of allowance.

Sixth,   The nature of the claim.

Seventh,   The amount paid.

Eighth,   Number of the voucher for each payment.

Ninth,   The date of filing the voucher.

Seventh,   A memorandum of the files in which at least one page shall be given to each estate or case wherein shall be noted each paper filed in the case except proof of claims and vouchers noted in record of claims and the date of filing each paper.

Eight,   A record of marriages in which certificates of all marriages solemnized in the county shall be recorded.

SECTION 5.   This act shall take effect and be in force from and after the day of its approval by the Governor.

Approved, November 9th, 1877.

---

## AN ACT

TO REPEAL AN ACT ENTITLED "AN ACT, IN RELATION TO THE DUTIES OF PROBATE JUDGES" APPROVED NOVEMBER TWELFTH EIGHTEEN HUNDRED AND SEVENTY-FIVE.

SECTION 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the act of the Legislative Assembly approved November twelfth eighteen hundred and seventy-five, entitled an act in relation to the duties of probate judges, be and the same is hereby repealed.

SECTION 2.   This act shall take effect and be inforced from and after its passage.

Approved, November 9th, 1877.

216    GENERAL LAWS.

# AN ACT

### RELATING TO LIENS.

## CHAPTER I.

### LIENS ON STEAMERS, VESSELS, AND BOATS.

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1. That all steamers, vessels, and boats, their tackle, apparel, and furniture, are liable:

First, For services rendered on board at the request of, or on contract with their respective owners, masters, agents, or consignees;

Second, For supplies furnished in this Territory for their use, at the request, of their respective owners, masters, agents, or consignees;

Third, For work done, or material furnished in this Territory for their construction, repair, or equipment;

Fourth, For their wharfage, and anchorage within this Territory;

Fifth, For non-performance or mal-performance of any contract for the transportation of persons or property between places within this Territory, or to or from places within this Territory, made by their respective owners, masters, agents, or consignees;

Sixth, For injuries committed by them to persons or property within this Territory or while transporting such persons or property to or from this Territory;

Demands for these several causes constitute liens upon all steamers, vessels, and boats; and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued.

SECTION 2. Such liens may be enforced by suit in admiralty *in rem* and the law regulating proceedings in admiralty shall govern in all such suits.

## CHAPTER II.

#### LIENS ON LOGS, SPARS, PILES, LUMBER, AND TIMBER.

SECTION 3. Every person performing labor upon or who shall assist in obtaining or securing saw-logs, spars, piles, and similar timber, has a lien upon the same for the work or labor done upon or in obtaining or securing the same whether such work or labor was done at the instance of the owner of the same or his agent.

SECTION 4. Every person performing labor upon or who shall assist in manufacturing saw-logs into lumber, has a lien upon such lumber, while the same remains at the mill where manufactured whether such work or labor was done at the instance of the owner of such logs or his agent.

SECTION 5. Any person who shall permit another to go upon his timber land and cut thereon saw-logs, spars, piles, and other timber, has a lien upon such logs, spars, piles, and timber, for the price agreed to be paid for such privilege, or for the price such privilege would be reasonably worth in case there was no express agreement fixing the price.

SECTION 6. The liens provided for in this chapter are preferred liens and are prior to any other liens, and no sale or transfer of any sawlogs, spars, piles, and other timber or manufactured lumber, shall divest the lien thereon as herein provided.

SECTION 7. The person rendering the service or doing the work or labor named in sections three and four of this act is only entitled to the liens as provided herein for services, work, or labor, for the period of eight calendar months, or any part thereof, next preceding the filing of the claim as provided in section nine of this act.

SECTION 8. The person granting the privilege mentioned in section five of this act is only entitled to the lien as provided therein for saw-logs, spars, piles, and other timber cut during the eight months next preceding the filing of the claim as provided in section ten of this act.

SECTION 9. Every person within sixty days after the close of the rendition of the services or after the close of the work or labor mentioned in sections three and four of this act claiming the benefit hereof must file for record with the county auditor

218                    GENERAL LAWS.

of the county in which such saw-logs, spars, piles, and other timber was cut, or in which such lumber was manufactured, a claim containing a statement of his demand and the amount thereof after deducting as near as possible all just credits and offsets with the name of the person by whom he was employed with a statement of the terms and conditions of his contract, if any, and in case there is no express contract the claim shall state what such service work or labor is reasonably worth, and it shall also contain a description of the property to be charged with the lien, sufficient for identification with reasonable certainty, which claim must be verified by the oath of himself or some other person to the effect that the affiant believes the same to be true.

SECTION 10.  Every person mentioned in section five of this act, claiming the benefit hereof must file for record with the county auditor of the county in which such saw-logs, spars, piles, and other timber was cut, a claim, in substance the same as provided in section nine of this act, and verified as therein provided.

SECTION 11.  The county auditor must record any claim filed under this chapter in a book kept by him for that purpose, which record must be indexed as deeds and other conveyances are required by law to be indexed, and for which he may receive the same fees as are allowed by law for recording deeds, or other instruments.

SECTION 12.  No lien provided for in this chapter, binds any saw logs, spars, piles, or other timber or any lumber for a longer period than four calendar months after the claim as herein provided has been filed, unless a civil action be commenced in a proper court within that time, to enforce the same.

SECTION 13.  The lien provided for in this chapter shall be enforced by a civil action in any of the district courts of this Territory, and shall be governed by the laws regulating the proceedings in civil actions touching the mode and manner of trial and the proceedings and laws to secure property so as to hold it for the satisfaction of any lien that may be against it.

SECTION 14.  Any person who shall bring a civil action to enforce the lien herein provided or any person having a lien as herein provided who shall be made a party to any such civil action, has the right to demand that such lien be enforced against the whole or any part of the saw-logs, spars, piles or other timber, or manufactured lumber upon which he has performed labor or which he has assisted in obtaining or securing, or which has been cut on his timber land during the eight months mentioned in sections seven and eight of this chapter, for all his labor upon or for all his assistance in obtaining or securing said logs spars piles or other timber or in manufacturing

said lumber during the whole or any part of the eight months mentioned in section seven of this chapter or for timber cut during the whole or any part of the eight months mentioned in section eight of this chapter.

SECTION 15. Any number of persons claiming liens under this chapter may join in the same action, and when separate actions are commenced the court may consolidate them. The court may also allow as part of the costs the moneys paid for filing and recording the claim and a reasonable attorney's fee for each person claiming a lien.

SECTION 16. In such civil action judgment must be rendered in favor of each person having a lien for the amount due to him, and the court or judge thereof shall order any property subject to the lien herein provided to be sold by the sheriff of the proper county in the same manner that personal property is sold on execution and the court or judge shall apportion the proceeds of such sale to the payment of each judgment *pro rata*, according to the amount or such judgment.

SECTON 17. The court or judge may order any property subject to a lien as in this chapter provided to be sold by the sheriff, as personal property is sold on execution either before or at the time judgment is rendered as provided in section sixteen of this act and the proceeds of such sale must be paid into court to be applied as in said section directed.

SECTION 18. Any person who shall injure, impair, or destroy, or who shall render difficult, uncertain, or impossible, of identification, any saw-logs, spars, piles, and other timber upon which there is a lien as herein provided without the express consent of the person entitled to such lien, shall be liable to the lien holder for the damages to the amount secured by his lien which may be recovered by a civil action against such person.

# CHAPTER III.

### LIENS OF MECHANICS AND OTHERS, UPON REAL PROPERTY.

SECTION 19. Every person performing labor upon or furnishing materials to be used in the construction, alteration or repair, of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct, to create hydraulic power, or any other structure, or who perform labor in any mine or mining claim, has a lien upon

the same for the work or labor done or materials furnished by each respectively whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, subcontractor, architect builder or person having charge of any mining or of the construction alteration, or repair, either in whole or in part of any building or other improvement, as aforesaid shall be held to be the agent of the owner for the purposes of this chapter.

SECTION 20. Any person who at the request of the owner of any lot in any incorporated city or town grades, fills, in, or otherwise improves the same or the street in front of or adjoining the same has a lien upon such lot for his work done and materials furnished.

· SECTION 21. The land upon which any building improvement or structure is constructed, together with a convenient space about the same or so much as may be required for the convenient use and occupation thereof to be determined by the court on rendering judgment, is also subject to the lien, if, at the commencement of the work or of the furnishing of the materials for the same the land belonged to the person who caused said building improvement or structure to be constructed altered or repaired, but if such person owned less than a fee simple estate in such land then only his interest therein is subject to such lien.

SECTION 22. The liens provided for in this chapter are preferred to any lien mortgage or other incumbrance which may have attached subsequent to the time when the building improvement or structure was commenced, work done or materials were commenced to be furnished; also to any lien, mortgage, or other encumbrance of which the lien holder had no notice and was unrecorded at the time the building improvement or structure was commenced, work done or the materials were commenced to be furnished.

SECTION 23. Every original contractor within sixty days after the completion of his contract or other termination thereof and every person save the original contractor, claiming the benefit of this chapter must within thirty days after the completion of any building improvement or structure or after the completion of the alteration or repair thereof, or after he has ceased to labor thereon from any cause, or after he has ceased to furnish materials therefor, or after the performance of any labor in a mine or mining claim file for record with the county auditor of the county in which such property or some part thereof is situated a claim containing a statement of his demand after deducting all just credits and offsets with the name of the owner or reputed owner if known and also the name of the person by whom he was employed or to whom he furnished the

## GENERAL LAWS.

221

materials with a statement of the terms time given and conditions of his contract and also a description of the property to be charged with the lien sufficient for identification which claim must be verified by the oath of himself or some other person to the effect that the affiant believes the claim to be just.

SECTION 24. In every case in which one claim is filed against two or more buildings, mines, mining claims, or other improvements owned by the same person the person filing such claim must at the same time designate the amount due to him on each of such buildings, mines, mining claims, or other improvements, otherwise the lien of such claim is postponed to other liens. The lien of such claim does not extend beyond the amount designated as against other creditors having liens by judgment, mortgage or otherwise upon either of such buildings or other improvements or upon the land upon which the same are situated.

SECTION 25. The county auditor must record the claim mentioned in this chapter, in a book kept by him for that purpose, which record must be indexed as deeds and other conveyances are required by law to be indexed and for which he may receive the same fees as are allowed by law for recording deeds and other instruments.

SECTION 26. No lien provided for in this chapter binds any building, mining claim, improvement, or structure for a longer period than four calendar months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien; or if a credit be given then four calendar months after the expiration of such credit; but no lien continues in force under this chapter for a longer time than two years from the time the work is completed by any agreement to give credit.

SECTION 27. Every building or other improvement mentioned in section nineteen of this chapter, constructed upon any lands with the knowledge of the owner, or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein and the interest owned or claimed shall be subject to any lien provided for under the provision of this chapter, unless such owner or person having or claiming an interest therein shall within three days after he shall have obtained knowledge of the construction alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same by posting a notice in writing to such effect in some conspicuous place upon said land or upon the building or other improvement situated thereon.

SECTION 28. The contractor shall be entitled to recover upon the claim filed by him only such amount as may be due

222                    GENERAL LAWS.

to him according to the terms of his contract after deducting all claims of other parties for work done and materials furnished as aforesaid; and in all cases where a claim shall be filed under this chapter for work done or materials furnished to any contractor he shall defend any action brought thereupon at his own expense; and during the pendency of such action the owner may withhold from the contractor the amount of money for which the claim is filed; and in case of judgment against the owner or his property upon the lien the said owner shall be entitled to deduct from any amount due or to become due by him to the contractor the amount of such judgment and costs and if the amount of such judgment and costs, shall exceed the amount due by him to the contractor or if the owner shall have settled with the contractor in full, he shall be entitled to recover back from the contractor any amount so paid by him, the said owner in excess of the contract price, and for which the contractor was originally the party liable.

SECTION 29. In every case in which different liens are asserted against any property the court in the judgment must declare the rank of each lien or class of liens which shall be in the following order:

First, All persons other than the original contractors and sub-contractors,

Second, The sub-contractor.

Third, The original contractors.

And the proceeds of the sale of the property must be applied to each lien or class of liens in the order of its rank and whenever on the sale of the property subject to the lien there is a deficiency of proceeds judgment may be rendered for the deficiency in like manner and with like effect as in actions for the foreclosure of mortgages.

SECTION 30. Any number of persons claiming liens may join in the same action and when separate actions are commenced the court may consolidate them. The court may also allow as part of the costs the moneys paid for filing and recording the claim and reasonable attorney's fee in the district and supreme court.

SECTION 31. Whenever materials shall have been furnished for use in the construction alteration or repair of any building or other improvement such materials shall not be subject to attachment execution or other legal process to enforce any debt due by the purchaser of such materials except a debt due for the purchase money thereof, so long as in good faith the same are about to be applied to the construction, alteration, or repair, of such building, mining claim, or other improvement.

Section 32. Nothing contained in this chapter shall be construed to impair or affect the right of any person to whom any debt may be due for work done or materials furnished to maintain a personal action to recover such debt against the person liable therefor.

Section 33. The liens provided for in this chapter may be enforced in a civil action in the same manner, and under the same proceedings as govern in the foreclosure of a mortgage on real estate.

## CHAPTER IV.

### CERTAIN LIENS FOR SALARIES AND WAGES.

Section 34. In all assignments of property made by any person to trustees or assignees on account of the inability of the person at the time of the assignment to pay his debts or in proceedings in insolvency the wages of the miners, mechanics, salesmen, servants, clerks, or laborers, employed by such persons to the amount of one hundred dollars, each, and for services rendered within sixty days previously are preferred claims and must be paid by such trustees or assignees before any other creditor or creditors of the assignor.

Section 35. In case of the death of any employer the wages of each miner, mechanic, salesman, clerk, servant, and laborer, for services rendered within sixty days next preceding the death of the employer, not exceeding one hundred dollars; rank in priority next after the funeral expenses, expenses of the last sickness, the charges and expenses of administering upon the estate and the allowance to the widow and infant children, and must be paid before other claims against the estate of the deceased person.

Section 36. In cases of executions attachments and writs of a similar nature, issued against any person except for claims for labor done any miners mechanics salesmen, servants, clerks, and laborers, who have claims against the defendant for labor done may give notice of their claims and the amount thereof, sworn to by the person making the claim, to the creditor and the officer executing either of such writs at any time before the actual sale of property levied on; and unless such claim is disputed by the debtor or a creditor, such officer must pay to such person out of the proceeds of the sale the amount each

224          GENERAL LAWS.

is entitled to receive for services rendered within the sixty days next preceding the levy of the writ not exceeding one hundred dollars. If any or all the claims so presented and claiming preference under this chapter are disputed by either the debtor or a creditor, the person presenting the same must commence an action within ten days for the recovery thereof and must prosecute his action with due diligence or be forever barred from any claim of priority of payment thereof; and the officer shall retain possession of so much of the proceeds of the sale as may be necessary to satisfy such claim until the determination of such action, and in case judgment be had for the claim or any part thereof, carrying costs, the costs, taxable therein shall likewise be a preferred claim with the same rank as the original claim.

## CHAPTER V.

### MISCELLANEOUS PROVISIONS.

SECTION 37. In construing the provisions of this act, words used in the masculine gender include the feminine and neuter, the singular number includes the plural and the plural the singular; the word person includes a corporation as well as a natural person, and the word writing includes printing.

SECTION 38. All acts relating to any kind or class of liens provided for in this act are hereby repealed, but no action or proceeding commenced before this act takes effect, and no right accrued is affected by such repeal but the proceedings therein must conform to the requirements of this act as far as applicable.

SECTION 39. This act establishes the law of this Territory respecting the subject to which it relates and its provisions and all proceedings under it are to be liberally construed with a view to effect its object.

SECTION 40. This act shall take effect and be in force from and after its passage and the approval thereof by the Governor.

Approved, November 8th, 1877.

## GENERAL LAWS.                                    225

# AN ACT

## TO REGULATE THE GOVERNMENT OF THE HOSPITAL FOR THE INSANE.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the Territorial Asylum for the Insane and Idiotic, situated near the town of Steilacoom, in the county of Pierce, shall be hereafter styled and known as "The Hospital for the Insane in Washington Territory, and all statutes mentioning and referring to said asylum, heretofore enacted and not otherwise inconsistent with the provisions of this act, shall hereafter have the same operation as if they mentioned or referred to "The Washington Hospital for the Insane."

SECTION 2. That a board of three trustees shall be nominated by the Governor, and with the consent of the legislative council, by him be appointed, who shall be known as the Trustees of the Hospital for the Insane in Washington Territory. The said trustees shall hold office for two years from the second Monday in January 1878 and until their successors are appointed and qualified, subject to removal for good and sufficient cause, by the Governor at any time. The board at their first meeting shall elect one of their number president and may appoint as secretary one of their number, or if they prefer, they may appoint any person not a member of the board as such secretary. The secretary shall receive an annual salary of two hundred and forty dollars. Should a vacancy occur in the board of trustees the Governor shall appoint to fill the vacancy for such unexpired term. If at any meeting the president be absent, the board shall choose from their number a president *pro tempore.* Two of the board shall constitute a quorum for the transaction of business.

SECTION 3. Said board shall have power to make all necessary repairs and improvements as in their judgment may be necessary for the conduct of said hospital, and to hold, manage, dispose of and convey all real and personal property made over to them by gift, devise or bequest and the proceeds and increase thereof for the use of said hospital. Said board shall take charge of the general interests of the hospital and shall manage and conduct the same in such manner as may appear to them best and most economical. They shall employ a superintendant, and may ordain by-laws for the government of said hos-

29

226 .                    GENERAL LAWS.

pital and therein may prescribe, in a manner consistent with the laws of the Territory, the duties of all persons connected in any way with the management of said hospital. Said board shall furnish the Territorial auditor with a certified copy of such by-laws as they may adopt, and of any and all changes therein which from time to time said board may make.

SECTION 4. Each of said named trustees and their successors, shall before entering upon the duties of his office, give a bond of five thousand dollars approved by the Governor, and filed with the Territorial secretary, for the faithful performance of his duties.

SECTION 5. The superintendent shall be a skillful practicing physician, and shall reside upon the hospital grounds. He shall hold his office for such time as the trustees may deem wise and for the efficiency and economy of the institution; he shall have entire control of the medical, moral dietetic treatment of the patients, and, so far as is not inconsistent with the by-laws and regulations of the hospital of all other the internal government and economy of the institution and he shall, in such manner and under such restrictions and for such terms of time, as the by-laws may prescribe, appoint all subordinate employees, and shall have entire direction of them in their duties.

SECTION 6. The superintendent shall not be required to attend any court as a witness in a civil suit, but parties desiring his testimony can take and use his deposition; nor shall he be required to attend as a witness in any criminal case, unless the judge of the court before which his testimony shall be desired, shall, upon being satisfied of the materiality of his testimony, require his attendance, and he and all other persons employed at the hospital, shall be exempt from serving on juries, working on roads, and in time of peace, from performing military duty.

SECTION 7. The necessary expenditures of the trustees, the salary of all employees and all other expenses incident to the conduct of the hospital, shall be examined by the trustees upon accounts rendered, and if approved by them, shall be so certified to the Territorial Auditor. Trustees shall, in the by-laws fix the days of their monthly visitations, and shall, at the hospital, on those days, receive and examine all accounts presented to them, and certify to the Territorial Auditor such as they approve.

SECTION 8. The trustees shall each be paid his actual and necessary traveling expenses, in going and returning from the meeting of said board, and in performing the necessary visitation required by this act, and shall be reimbursed all other necessary expenditures incurred in discharge of their official duties, and shall receive three dollars per day for the time actually spent in the discharge of such duties.

GENERAL LAWS.                227

SECTION 9.    No trustee shall be appointed to or employed in any office under authority of the board except as provided in section 2 of this act nor be directly or indirectly interested in any contract, debt or account to be made by said board for any purpose whatever.

SECTION 10.    The trustees shall cause the accounts of said institution to be so kept and reported as to show the kind, quantity, cost and vendor of every article purchased for use therein.

SECTION 11.    The trustees shall meet on, or within one month before the first day of the meeting of the Legislative Assembly at every biennial session thereof, and shall then prepare and lay before the governor and said assembly, a full and detailed, but concise report, exhibiting a particular statement of the condition of the hospital and all its concerns, an account of all contracts, expenditures and liabilities, with a list of the salaried officers and their salaries, and in a tabular form the value of the stock and supplies on hand.

SECTION 12.    The accounts and books of the hospital shall at all times be open to inspection of the legal visitors of the institution.

SECTION 13.    The governor, justices of the supreme court and members of the Legislature shall be *ex-officio* visitors of the institution.

SECTION 14.    No person laboring under any contagious or infectious disease shall be admitted into said hospital as a patient.

SECTION 15.    In admitting patients to and retaining them in the hospital, the indigent insane of this Territory shall always have precedence; and if at any time the provisions of the institution are not sufficient to meet the applications for admission, recent cases shall, for the time being, have precedence over those of a chronic character.

SECTION 16.    The district courts of the Territory shall have power to commit to this institution any person, who, having been arraigned for an indictable offense, shall be found by the jury to be insane at the time of such arraignment, and the costs of such commitment shall be paid in the same manner as the costs of a commitment of an insane person out of a probate court.

SECTION 17.    In conveying patients to the hospital, the sheriff, with the approval of the judge of the probate or district court from which the warrant of commitment issues, may employ one assistant for each patient.

SECTION 18. Any patient may be discharged from the hospital, when, in the judgment of the superintendent it may be expedient. Whenever a patient not cured, or any indigent patient shall be ordered discharged, the superintendent shall immediately give notice thereof to the probate judge of the county in which said patient resided, and if in the judgment of the superintendent, such patient so ordered to be discharged is in fit condition to be sent to his or her county unattended by any person, the superintendent may return the patient to the county from which he or she came, if indigent, at the expense of the said county, but if such patient so ordered to be discharged from said hospital and can, without endangering the health of such patient, is through or by any reason unfit to be alone sent to the county from which he or she was committed to said hospital, the superintendent shall so certify to the probate judge of said county; who shall immediately, upon receipt of the notice, issue his warrant to the sheriff, commanding him to remove the patient and return him or her to the county from which he or she came. If, within thirty days after the notice, the patient be not removed, the superintendent, if he think necessary, may return the patient to the county from which he or she came, at the expense of the county: *Provided*, That if any such patient is not in a condition to either go or be removed to said county he or she may, for the time being, be retained in said hospital at the expense of the county from which he or she was so committed.

SECTION 19. No pauper shall be discharged from the hospital witout suitable clothing; and the trustees may furnish the same at their discretion, together with such sum of money not exceeding ten dollars, as they may deem necessary. To carry into effect the provisions of this section, the board of trustees are hereby authorized and empowered to make requisitions on the territorial auditor for such sum or sums as from time to time they may need for the purpose mentioned herein, not exceeding however the sum of two hundred dollars per annum; and said Territorial auditor on receipt of such requisitions signed by the president and secretary of said board shall issue the warrant on the Territorial treasury for the amount thereof with the limitations prescribed herein.

SECTION 20. The superintendent by and with the consent of the board of trustees may employ such assistants as is necessary for the effectual and economical management of the institution and the regular officers shall not receive salaries to exceed the following sums:

One superintendent, $2,500 per annum.

One steward, $1,000 per annum.

## GENERAL LAWS.                                        229

One head warden, $650 per annum.

Four additional wardens, $550 per annum, each.

Two cooks, $1,200 per annum, in the aggregate.

Two matrons, $900 per annum, in the aggregate.

One laborer, $400 per annum, when required.

One carpenter, $800 per annum, when required.

One teamster, $550 per annum, when required.

All the officers and employees may be furnished subsistance, quarters, lights and fuel for one with quarters for a family in excess of salaries.

SECTION 21.  It shall be the duty of the superintendent to ascertain by diligent inquiry and correspondence the history of each and every patient admitted to the hospital and whether such patients or their friends or families if any there be are able to defray the expenses of his or her care and report the facts to the board of trustees who shall use efficient means for the collections of all sums due the institution from those who are able to pay for such care.

SECTION 22.  The retiring board of trustees and those constituting the board to be appointed during each session of the Legislature shall meet on the second Monday of January following when it shall be the duty of the retiring board to examine and vouch for all accounts and liabilities they may have contracted and then turn over all books and other property belonging to the institution to the new board of trustees.

SECTION 23.  The board of trustees shall have power to make all purchases necessary to carry into effect the provisions of this act and shall during the months of January and February of each year advertise for four consecutive weeks in the paper having the largest circulation in Seattle and Olympia for bids for the furnishing of such supplies and other articles as they may deem expedient, and shall have power to make all needed repairs to the buildings of the institution.

SECTION 24.  All itemized bills of purchases made, when having been examined by the board of trustees and found correct shall be certified by the president or the president *pro tem.* of the board then sitting and the same transmitted to the auditor who shall audit the same and draw his warrant on the Territorial treasurer for the amount, and the said treasurer is hereby authorized and required to pay the same out of any money in the treasury not otherwise appropriated: *Provided*, That there shall not be more than the sum of twenty-six thousand dollars appropriated for all purposes connected with the institution during each fiscal year.

230                    GENERAL LAWS.

SECTION 25.  The fiscal year shall commence and end on the 16th of August and it shall be the duty of the trustees and superintendent to make out biennial reports of the institution and transmit the same to the auditor on or before the tenth day of September preceding each session of the Legislature with such recommendations as may seem proper.

SECTION 26.  The Territorial auditor and treasurer shall not be eligible to the office of trustee for hospital for the insane.

SECTION 27.  All acts and parts of acts conflicting with the provisions of this act are hereby repealed.

SECTION 28.  This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

### REGULATING SALMON FISHERIES ON THE WATERS OF THE COLUMBIA RIVER.

WHEREAS, It is well known that the salmon of the Columbia river and tributaries are rapidly diminishing in numbers, to the injury of the public, and threatening if not averted to materially prejudice the interests of trade and commerce, therefore:

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall not be lawful to take or fish for salmon in the Columbia river or its tributaries by any means whatever in any year hereafter, during the months of March, April, August and September, nor at the weekly closetimes in the months of May, June and July, that is to say, between the hours of six o'clock in the afternoon of each and every Saturday until six o'clock of the afternoon of Sunday following. And any person or persons catching salmon in violation of the provisions of this section, or purchasing salmon so unlawfully caught, shall upon conviction thereof, be fined in a sum of not less than five hundred dollars, nor more than one thousand dollars for the first offense, and for each and every subsequent

offense upon conviction thereof, shall be fined not less than one thousand dollars to which may be added at the discretion of the court, imprisonment in the county jail for a term not exceeding one year.

SECTION 2.   It shall not be lawful to fish for salmon in the said Columbia river or its tributaries during the said months of May, June and July, with gill-nets, the meshes of which are less than four and one-eighth inches square nor with seins whose meshes are less than three inches square, nor weir or fish-traps whose slats are less than three and one-half inches apart. Nothing herein contained shall prevent fishing in said river or its tributaries with dip-nets, during the fishing season as established and defined by section one (1) of this act.   Every trap or weir shall have in that part thereof where the fish are usually taken, an opening at least three feet wide, extending from the bottom to the top of the weir or trap and the netting.   Slats and other material used to close such apertures while fishing shall be taken out, carried upon shore, and there remain during the said months of March, April, August and September, and the weekly closetimes in the months of May, June and July as prescribed in section one of this act, to the intent that during said closetimes the salmon may have free and unobstructed passage through such weir, trap or other structure, and no contrivance shall be placed in any part of such structure which shall tend to hinder such fish, in case the enclosure where the fish are taken is furnished with a board floor, an opening extending from the floor to the top of the weir or trap shall be equivalent to extending the said opening from bottom to top.   Any person or persons violating the provisions of this section, or encouraging its violation by knowingly purchasing salmon so unlawfully caught, shall be deemed guilty of misdemeanor and upon conviction thereof, shall be fined for the first offense not less than five hundred dollars nor more than one thoasand dollars and for each subsequent offense shall on conviction be fined not less than one thousand dollars to which may be added imprisonment in the county jail for a term not exceeding one year.

SECTION 3.   It shall not be lawful at any time during the year nor by any means whatever, to fish for salmon for the purpose of trade, barter or sale, on the waters of the Columbia river west of a line drawn northerly from the head of Sand Island in the Columbia river to the north line of the Military Reserve near Fort Canby in Washington Territory nor west of a line drawn southerly from the head of Sandy Island in the Columbia river to the wharf at Fort Stevens in the State of Oregon.   And any person or persons bartering, selling or otherwise disposing for purposes of gain, any salmon so unlawfully caught below the line herein established or any person or per-

232                    GENERAL LAWS.

sons knowingly purchasing such salmon so unlawfully caught or otherwise unlawfully encouraging salmon fishing in such prohibited limits shall be fined in any sum not less than fifty or more than one hundred dollars, and justices of the peace shall have jurisdiction to try and determine all complaints for violation of the provisions of this section.

SECTION 4.    The person or persons making complaint of any violation of the provisions of this act shall upon the conviction of the offender be entitled to one-half of the fine recovered, and any prosecuting attorney who shall upon complaint being made to him of the violation of this act fail to prosecute the party accused shall be deemed guilty of a misdemeanor in office and upon conviction thereof be fined in the sum of five hundred dollars for each and every such offense.

SECTION 5.    This act shall not be so construed as to interfere in any way with any establishment or enterprise for the propagation of salmon whether by the United States government or any regularly organized company or society for that purpose located or operated upon said river Columbia or any of its tributaries.

SECTION 6.    It shall be unlawful for the proprietor of any saw mill on the Columbia river or any of its tributaries, or any employee therein to cast the saw dust made by such saw mill, or suffer or permit such saw dust to be thrown or discharged in any manner into said river or its tributaries. For each and every willful violation of this section, the party guilty of such violation shall be liable to a fine of fifty dollars for each and every offense to be recovered before a justice of the peace of the proper county.

SECTION 7.    Any party convicted of any violation of the provisions of this law, shall be sentenced to pay the fine and costs adjudged and in default of paying or securing the payment thereof he shall be committed to the county jail until such fine or costs shall be paid or secured until he shall have been imprisoned one day for every two dollars of such fine and costs. But execution may at any time issue against the property of the defendant for whatever sum may be due of such fine or costs. Upon payment of such fine and costs or the balance after deducting the commutation by imprisonment or securing the same the party shall be discharged. All fines and penalties collected for violation of this act shall constitute a fund for the maintenance of hatching houses for the propagation of salmon and be disbursed in accordance with the provisions of an act entitled an act to encourage the establishment of hatching houses for the propagation of salmon in the waters of the Columbia river.

SECTION 8.    No section proviso or part of this act shall be

considered as valid or operative until the Legislature of the State of Oregon shall enact a similar section proviso or act in whole or in part, and from and after the passage of such a law by the State of Oregon, such parts hereof as shall be so enacted, shall immediately go into full force and effect, and the governor of this Territory is hereby requested to transmit an attested copy of this act to the governor of the State of Oregon, requesting him to submit it to the Legislature of that State.

Approved, November 8th, 1877.

## AN ACT

### IN RELATION TO GRAND AND PETIT JURORS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That all qualified electors shall be competent to serve as petit jurors, and all qualified electors and householders shall be competent to serve as grand jurors within the county in which they reside, and within any county or district to which such county may be attached for judicial purposes: *Provided*, That civil officers of the United States, justices of the peace, judges of the probate court and judges of the supreme court, attorneys at law, ministers of the gospel or priests, school teachers, practicing physicians, sheriffs and their deputies, constables, clerks of courts, county and Territorial officers, millers, ferrymen, and all persons over sixty years of age, shall not be compelled to serve as jurors, and in preparing jury lists the county commissioners shall omit the names of such persons; but no act of a grand or petit jury shall be invalid by reason of such persons, or persons aforesaid serving thereon qualified in other respects. Nor shall any disqualification of any member of a grand or petit juror affect the indictment or verdict, unless the juror for that cause was challenged or excepted to before the rendition of their finding.

SECTION 2. Every board of county commissioners on or before the first Monday of May in each year, shall cause to be prepared, and thereafter shall keep in the office of the county auditor, two (2) jury lists, one of which shall contain the names of all persons qualified to serve in their county as petit jurors,

30

234    GENERAL LAWS.

and the other the names of all persons qualified to serve then as grand jurors.   As soon as said lists are prepared and said commissioners are met, they shall select therefrom the names of twenty-five persons qualified to serve as petit jurors and the names of twenty-five other persons qualified to serve as grand jurors and shall certify the same in separate lists to the clerk of the district court of the judicial district in which the county may be.

SECTION 3.   Biennially on or before the first Monday of May next after the election of a delegate to Congress, the secretary of the Territory shall transmit to the clerk of the district court in each judicial district a statement of the whole number of votes cast for delegate in such county of such district at the said election.   Upon receipt of such statement, the clerk shall submit the same to the judge of the district, who shall thereupon from time to time proportionally according to the number of said votes cast in the several counties respectively of each sub-district allot and determine the number of grand and petit jurors to be summoned from the several counties to attend each term of the court respectively, until a new allotment is made; which number for each sub-district shall not be less than fourteen, nor more than twenty-three for grand jurors nor less than twelve nor more than twenty-five for petit jurors.

SECTION 4.   Thirty days before each term of court unless the judge of the district shall by order otherwise direct the clerk of the court shall conformably to the last allotment and determination of the judge issue to the sheriff of each county for which the term is held two (2) venires one for grand and the other for petit jurors to attend at the said term.   The venires shall be returnable at such time as the judge shall designate.   The persons to be served therewith, shall as far as possible be named in the venires and their names shall be taken from the lists last furnished by the county commissioners in the order in which they occur on said lists: *Provided*, That no person shall serve twice as a grand juror or twice as a petit juror within two years.

SECTION 5.   When from any cause there are no qualified grand or no qualified petit jurors, or not a sufficient number of either in attendance, the court may without naming them in the venire order as many as may be necessary to be summoned from any county or counties in the district.

SECTION 6.   Until the apportionment and selection of jurors as provided in this act, the judge of the district court in each district, shall apportion to each county the number to be furnished by each county, and the clerk of the district court shall issue venires to the sheriff of each of the several counties commanding him to summon from his county the requisite

number of qualified grand and petit jurors, returnable as the judge shall direct.

SECTION 7. Any person neglecting to perform any duty imposed upon him by this act shall be punishable as for a contempt of court.

SECTION 8. This act shall take effect from and after its passage, and the act entitled an act in relation to grand and petit jurors passed January 24th 1863 and all other acts and parts of acts inconsistent with the provisions of this act are hereby repealed.

Approved November 9th, 1877.

## AN ACT

### TO PROVIDE FOR THE CODIFICATION OF THE LAWS OF WASHINGTON TERRITORY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That his excellency, the governor of this Territory be, and hereby is, authorized and requested to nominate and by and with the advice and consent of the Legislative Council of said Territory, to appoint a code commissioner who shall be a resident practicing attorney or judge of the supreme court of the Territory.

SECTION 2. The said code commissioner so appointed, is hereby authorized and required to collate and thoroughly revise and codify all the statute laws of the Territory of Washington which are, or may be, in force at the close of the present session of the Legislature. For this purpose, it is hereby made the duty of said code commissioner to group together all corelative and similar statutes, classifying and arranging the various subjects under appropriate titles; to bring together and correctly incorporate the various amendments into the original acts, rejecting all repealed, redundant, inoperative and obsolete sections, laws, or parts of laws; and furthermore, to make such alterations and [a]mendations as shall reconcile all contradictions, correct and supply omissions in figures, letters, words and sentences; and, to do and perform all other needful acts as shall enable the said code commissioner effectually to reduce and

bring into a written, intelligible and systematic form, the statute laws of this Territory.

SECTION 3. That it shall be the duty of the said code commissioner in codifying and arranging the laws under proper parts, titles, divisions and subdivisions, under the provisions of this act, to complete and perfect the same, that such code of law shall be made to cover and embrace the whole body of substantive law of the Territory of Washington. The said code shall be arranged and presented by the said code commissioner under four general parts, or divisions, substantially, as follows:

I. The Political Code of Washington;

II. The Civil Code of Washington;

III. The Code of Civil Practice;

IV. The Penal Code, embracing the Code of Criminal Procedure.

SECTION 4. The said code commissioner is hereby further authorized and empowered to prepare a brief syllabus to each of the several laws, and subdivisioned titles of law, in said codification, together with such concise and appropriate marginal notes for, and to, the various sections, as shall afford easy and ready reference to all distinctive points and subjects embraced therein; and furthermore, to prepare such annotation, or " foot notes," furnishing references to decisions, and correcting seeming contradictions in the laws, as shall be deemed useful and expedient.

SECTION 5. The laws so revised, codified and arranged by the code commissioner appointed in pursuance of the provisions of this act, shall, when published, be embraced in one or more volumes of convenient size, and shall be known as the " Washington Code" and no other title by legal reference shall be necessary for their designation.

SECTION 6. The said code commissioner shall report the result of his labors to the governor of this Territory on or before the first day of July A. D. 1879. The governor shall, during the first ten days of the next biennial session of the Legislature, A. D. 1879, submit to that body the report and code of laws presented by the code commissioner together with such suggestions and recommendations as he may deem advisable to make in the premises. The code commissioner shall receive such compensation for his services, and all mileage and the expenses incident to his labors and duties, as such commissioner, as the Legislative Assembly shall hereafter fix upon, to be paid out of the general fund of the Territory.

SECTION 7. Said commissioner shall have power to employ a clerk for a period not longer than six months at a salary

## GENERAL LAWS. 237

not exceeding seventy-five dollars per month, and the Territorial auditor is hereby authorized to draw a warrant on the Territorial treasurer for the amount, which the said commissioner may certify as due to said clerk for the service by him performed.

SECTION 8.   Before entering upon his duties as provided in this act, the code commissioner shall take and subscribe to an oath before the secretary of the Territory faithfully to perform the duties and obligations of said code commissioner, should any vacancy occur in the office of commissioner first appointed from any cause, and before the commissioner shall have completed his labors, the governor of the Territory is hereby authorized to fill such vacancy by appointment, and the person so appointed, shall have full power and authority to act in fulfillment of the provisions of this act, and shall be subject to all the obligations and requirements herein imposed.

SECTION 9.   This act to take effect and be in force from and after its passage and approval by the Governor.

Approved, November 9th, 1877.

## AN ACT

TO PROVIDE FOR CALLING A CONVENTION TO FRAME A CONSTITUTION FOR A STATE OF WASHINGTON AND SUBMITTING THE SAME TO THE PEOPLE FOR RATIFICATON OR REJECTION.

WHEREAS, In pursuance of an act of the Legislative Assembly of the Territory of Washington approved November ninth (9) one thousand eight hundred and seventy five the legal voters of said Territory by a decided majority determined that a convention shall be holden to frame and submit for ratification or rejection, a constitution for the future state of Washington; And

WHEREAS as it is incumbent upon the representatives of the people, promptly and without delay to provide the means of carrying the public will into immediate effect, Therefore

238                     GENERAL LAWS.

*Be it enacted by the Legislative Assembly of the Terri-
tory of Washington,*

SECTION 1.    That an election shall take place in the vari-
ous precincts in the several counties in this Territory on the
ninth (9) day of April A. D. one thousand eight hundred and
seventy eight for the choice of delegate to a convention to frame
a form of a State constitution to be submitted to the legal
voters in this Territory for their approval or rejection.

SECTION 2.    The number of delegates chosen at said elec-
tion shall be fifteen (15) who shall be chosen from the districts,
as follows:

Three (3) delegates shall be elected by the legal voters of the
Territory at large.

One delegate shall be elected by the legal voters of the
counties comprising the first judicial district of this Territory.

One delegate shall be elected by the legal voters of the
counties comprising the second judicial district of this Terri-
tory.

One delegate shall be elected by the legal voters of the
counties comprising the third judicial district of this Territory.

One delegate shall be elected by the voters of the county of
Walla Walla.

One delegate shall be elected by the voters of the county of
King.

One delegate shall be elected by the voters of the counties of
Thurston and Lewis.

One delegate shall be elected by the voters of the counties of
Clark, Skamania Klickitat and Yakima.

One delegate shall be elected by the voters in the counties of
Cowlitz, Pacific, and Wahkiakum.

One delegate shall be elected by the voters of the counties of
Pierce Chehalis, and Mason.

One delegate shall be elected by the voters of the counties of
Clalam Island, Jefferson and San Juan.

One delegate shall be elected by the voters of the counties of
Kitsap, Snohomish and Whatcom.

One delegate shall be elected by the voters of the counties of
Columbia, Stevens and Whitman.

SECTION 3.    The delegates required to be elected by the
provisions of this act shall possess the qualifications of electors,
and no person shall be chosen a delegate to represent any other
district than that in which he has so resided for at least two
(2) years next preceding the election.

SECTION 4.  For the purpose of choosing the delegate or delegates aforesaid, polls shall be opened on said ninth day of April A. D. one thousand eight hundred and seventy-eight in the various precincts in all the counties in this Territory in the manner directed for holding general elections in this Territory and it shall be the duty of the commissioners of each county in this Territory at their regular meeting next preceding said ninth (9th) day of April one thousand eight hundred and seventy-eight to appoint one inspector and two judges for each election precinct in their respective counties whose duty it shall be to attend at the usual hour and place of holding general election in the precinct on said ninth day of April one thousand eight hundred and seventy-eight and receive tickets either written or printed from all legal electors qualified to vote at general election and to disposit [deposit] such ballots in ballot boxes to be provided them for that purpose.  And said electors[ions] shall in all respects be conducted and returned[s] thereof made and transmitted as now provided by law in case of general electors for delegate in Congress, prosecuting attorneys and councilmen such returns shall be canvassed and returns made thereof as returns of general electors[ions] are now required to be canvassed by law, and the auditor in the several counties shall certify the names of all persons who shall have been voted for, at said election for delegate, with the number of votes cast for each person, to the secretary of the Territory and the person or persons who shall receive the largest number of votes in any of said districts as provided in this act shall be declared elected delegate for such district.  And the secretary is hereby required to issue a certificate of election to such persons.

SECTION 5.  It shall be the duty of the delegates elected as aforesaid to assemble at the City of Walla Walla, on the second Tuesday of June, A. D. one thousand eight hundred and seventy-eight at twelve o'clock m. and organize be [by] electing one of their number president.  And after said convention shall have so organized, they may elect such other officers as they shall deem necessary for the convention [convenient] transaction of their business, and they shall determine what shall be the duty of such officers, and shall make all necessary rules and regulations proper for their government and the transaction of any business of said convention.  Said convention shall be the final judge of the election, returns and qualifications of its own members and shall cause a record of all its proceedings to be kept.  A majority of the whole number of delegates elected and sworn shall constitute a quorum to do business and if a vacancy shall occur in any district after said election, by death, resignation or otherwise, the convention shall fill the same by appointing the person having the next highest vote to the person first chosen in said district.

240                    GENERAL LAWS.

SECTION 6.   Every delegate to said convention shall, before entering upon the discharge of his duties take an oath that he will faithfully discharge the duties of his office (office) to the best of his ability.

SECTION 7.   When the convention shall have assembled, organized and been duly sworn, shall proceed to frame a form of a constitution for a State which constitution shall be sub-mitted to the Territory for ratification or rejection and said convention shall if it see fit frame and propose any article for separate submission to said electors and may provide that such articles shall constitute a part or parts of said proposed consti-tution if approved by a majority of electors but if any such article shall not be approved by said electors they shall not become a part of said constitution.

SECTION 8.   The form of constitution framed by said con-vention as aforesaid and any separate articles which may be proposed by said convention as aforesaid, shall be submitted to the legal voters of this Territory for their adoption or rejection in such manner as the convention shall provide at the next gen-eral election to be held in this Territory for Delegate to Con-gress, and all ballots cast with the words "For Constitution" written or printed thereon shall be counted in favor of adopt-ing the same, and all ballots cast with the words "Against Constitution" shall be counted of rejection [as *rejecting] the same, and all votes cast for or against said constitution shall be counted and returned to the Secretary of the Territory in the same manner as the votes for delegate in Congress is to be made.   And he shall canvass and make known the result within sixty days after said election.

SECTION 9.   It shall be duty of the governor of the Terri-tory to issue a proclamation calling a special election for dele-gate to a constitutional convention, as provided in this act, which proclamation shall be issued not less than sixty days before the ninth (9th) day of April one thousand eight hundred and seventy-eight, and the governor is required to declare the result of the vote cast and returned on the adoption or rejec-tion of the Constitution by proclamation when the same is cer-tified to him by the secretary of the Territory.

SECTION 10.   The delegates elected and qualified under the provision of this act shall receive for their services the sum of five($5.00)dollars per day while engaged in the transaction of the business of said convention, and actual traveling expenses from their respective homes to and from said convention, and the officers of the convention shall receive such compensation as the convention may deem just and for incidental expenses of said convention which amounts shall be certified to the Terri-torial auditor by the president of said convention.   And the

auditor is hereby required to draw a warrant for said amounts certified as aforesaid in favor of such persons, on the Territorial treasurer and the treasurer is hereby required to pay the same out of any money not otherwise appropriated.

SECTION 11. That the counties of Idaho, Shoshone and Nez Perces, in the Territory of Idaho are requested to elect a delegate to said convention, who shall be a member of said convention, with the privilege of the floor but shall not be entitled to a vote, and the sum of two hundred dollars ($200) is hereby appropriated as the compensation of said delegate.

SECTION 12. This act shall take effect and bein force from and after its approval by the Governor.

Approved, November 9th, 1877.

·

———————

# AN ACT

## TO APPROPRIATE MONEY FOR THE UNIVERSITY OF WASHINGTON AND TO PROVIDE FOR FREE SCHOLARSHIPS IN SAID UNIVERSITY.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1. That the sum of one thousand five hundred dollars, is hereby appropriated out of any moneys in the Territorial treasury not otherwise appropriated for the purpose of defraying the expenses of tuition in the Territorial University of Washington Territory for the year ending on the thirty first day of December in the year one thousand eight hundred and seventy eight and one thousand five hundred dollars more appropriated for purposes of tuition in said Territorial University out of any moneys in the Territorial treasury not otherwise appropriated for the year ending on the thirty first day of December one thousand eight hundred and seventy nine.

SECTION 2. There shall be forty-five free scholarships in said University the holders of which shall be at the time of appointment not under sixteen years of age nor over twenty-one years of age and shall be bona fide residents of the Territory for six months prior to their appointment. They shall be appointed as follows to wit, each councilman of the Legislative

31

242                     GENERAL LAWS.

Assembly shall appoint one from his district, each representative in the house of representatives of the Legislative Assembly shall appoint one from the county or district represented by him if two or more counties are joined together for purposes of representation each district judge of the three judicial districts of the Territory shall appoint one from some county in his district and three shall be appointed by the Governor of the Territory: *Provided*, That no two scholars be so appointed by the Governor from any one county.

SECTION 3.    Before the Territorial auditor shall draw his warrant in favor of the board of regents of the university for any moneys appropriated under the provisions of this act it shall be the duty of the secretary of the board of regents to file in the office of the Territorial auditor a verified statement that at least thirty of the holders of the free scholarships created by this act are in regular attendance as pupils at said university and receiving tuition under the course of study prescribed by the faculty thereof. The said statement shall contain in tabular form first the name of each pupil so appointed second the county in which he or she resided at date of such appointment third the names of his or her parents or guardians fourth the name of the councilman representative judge or governor by whom such pupil or scholar was appointed in accordance with this act fifth the district or county represented by such councilman representative or judge where the appointment be not made by the governor sixth the date of his or her appointment on file in the office of said secretary and the date of his or her arrival at the university and upon filing of such certificate in his office the Territorial auditor shall draw his warrant in favor of said board of regents of the said university for the sum of thirty-three dollars and thirty-three cents per annum for each and every pupil so certified by said secretary to have been appointed and received as a pupil in said university.

SECTION 4.    No appointment made under the provisions of this act shall be held valid unless made within ninety days after the approval of this act and every two years thereafter nor shall any money be drawn by the Territorial auditor for any scholar so appointed unless the date of arrival of the appointee at the university be within four months after the approval of this act, and every two years thereafter.

SECTION 5.    A scholarship under the provisions of this act shall entitle the holder thereof to two years of free tuition in said university of not less than nine months in each year, in separate terms of three months each. The course of tuition shall be academic for the first year and collegiate for the second year of such attendance.

SECTION 6.    Any vacancy by death or expulsion or removal

GENERAL LAWS. 243

from the Territory, of any scholar appointed under the provisions of this act, may be filled by appointment for the unexpired term of said scholarship by the councilman, representative district judge or governor, making such appointment of decedent expelled or removed scholar.

SECTION 7. The moneys appropriated by this act are only appropriated for the payment of the salaries of professors and tutors; for the protection of the treasury it is therefore made the duty of the secretary of the board of regents to file in the Territorial auditor's office vouchers for the payment of the wages of all teachers and professors employed in said university for the year ending on the thirty-first day of December one thousand eight hundred and seventy eight; and if said secretary of the board of regents shall fail to file such vouchers for the year aforesaid, the Territorial auditor shall refuse to draw his warrant for any moneys herein appropriated for the use of said university for the year ending on the thirty-first day of December eighteen hundred and seventy-nine.

SECTION 8. Every appointment of scholars made under the provisions of this act shall be made in duplicate form, one copy of which shall be sealed and addressed to the Territorial auditor and the other to the secretary of the board of regents of the university, within ninety days after the passage and approval of this act.

SECTION 9. This act shall take effect from and after its approval by the Governor.

Approved, November 9th, 1877.

---

## AN ACT

TO PROVIDE FOR THE PURCHASE OF THE REPORTS OF THE DECISIONS OF THE SUPREME COURT OF WASHINGTON TERRITORY AND RESPECTING THE CUSTODY AND DISTRIBUTION OF THE SAME.

WHEREAS, The supreme court of Washington Territory at its July term, A. D. eighteen hundred and seventy-seven, by an order duly entered of record designated John B. Allen, Esq. as a suitable person to report and publish such of the decisions of the said court from its organization to the present time, as the judges of said court think advisable. And

244    GENERAL LAWS.

WHEREAS, The said Allen proposes to publish said decisions under the title of "Washington Territory Reports," "Vol. 1. new series" if a sufficient number of said volumes are subscribed for, by said Territory to justify the publication thereof. And

WHEREAS, The public interests require the publication of said decisions therefore;

*Be it enacted by the Legislative Assembly of Washington Territory,*

SECTION 1. That in the event the said Allen publish said decisions he be permitted to copyright the same and that the Territory of Washington, subscribe for two hundred volumes of said " Washington Territory Reports." And hereby undertakes to pay them for, at the rate of six dollars per volume.

SECTION 2. That when the said John.B. Allen shall deliver, or cause to be delivered to the clerk of the said supreme court, said two hundred volumes of said reports, said clerk shall therefore deliver to said Allen his executors, administrators, or assignees, a receipt for the same. Stating therein the number of volumes of said reports received by him, and upon presentation of said clerk's receipt to the Territorial auditor, said auditor shall forthwith draw a warrant on the Territorial Treasurer for the amount due for said reports at the rate aforesaid in favor of the said Allen, his executors, administrators or assigns, to be presented, endorsed and paid in the same manner, and order as other warrants drawn upon said treasurer.

SECTION 3. That said reports shall be distributed by the said clerk under the direction of the judges, of the supreme court as follows: To the library of each State and Territory one volume: To each of the heads of departments at Washington City one volume: To each of the judges of the supreme court of the United States one volume: To the library of Congress two copies: To each of the judges of the United States circuit and district courts in the States of Nevada California, Oregon and in the Territory of Washington, one copy: To the governor, secretary, treasurer auditor and United States attorney for Washington Territory, each one copy: To each district attorney and judge of probate in said Territory one copy. Said clerk shall also from time to time distribute said reports to such literary and scientific institutions publishers, authors, and such other persons and institutions as the judges of said supreme court shall direct, and in such manner as they shall prescribe for the purpose of securing an interchange of such books and publications as may properly be placed in the Territorial library of said Territory. A sufficient number of copies of said reports shall be retained by said clerk to supply

each member of the Territorial Legislature with one copy—during the sessions of the Legislative Asssembly.

SECTION 4.  All reports distributed to the Territorial, district, and other officers in this Territory shall be for the use of the respective offices, and shall be by the person receiving the same turned over to his successor in office or returned to the clerk of said supreme court who shall give proper receipts for the same.

SECTION 5.  Any officer receiving a copy of said reports and failing to turn the same over to his successor in office or return the same to the said clerk, shall be liable to a penalty of twenty dollars to be secured [recovered] from such persons in an action begun in the name of the Territory of Washington. And all monies so collected shall be expended by said clerk for books for the Territorial library under the direction of the said judges of the supreme court.

SECTION 6.  This act shall take effect and be in force from and after its passage.

Approved, November 9th, 1877.

## AN ACT

### IN RELATION TO PROSECUTING ATTORNEYS DEFINING THEIR DUTIES AND FIXING THEIR COMPENSATION.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That at the general election in one thousand eight hundred and seventy-eight for delegate to Congress, and every two years thereafter, there shall be elected by the qualified voters of the several counties in each judicial district of this Territory, one prosecuting attorney who shall be a practicing attorney-at-law, and have the qualifications of an elector, and shall reside in and be an inhabitant of the district for which he is elected.

SECTION 2.  Such prosecuting attorney shall continue in office for the term of two years from and after January first one thousand eight hundred and seventy-nine and until his successor is elected and qualified.

SECTION 3.  Prosecuting attorneys heretofore elected and

246                    GENERAL LAWS.

now exercising the duties of their offices in each of the judicial districts of this Territory shall continue in office until the first day of January one thousand eight hundred and seventy-nine and until their successors are elected and qualified, and they shall be governed by, and compensated as in this act provided.

SECTION 4. The county auditors of the several counties shall make out under their hand and the seal of their office, a certificate showing the number of votes given in their respective counties, for each person for prosecuting attorney, and transmit the same to the secretary of the Territory, and said votes shall be canvassed by said secretary, and he shall issue a certificate to the person receiving the highest number of votes in each judicial district, and the person so receiving the highest number of votes in a judicial district shall be the prosecuting attorney of said district and he shall be commissioned by the governor. The county auditor shall transmit the certificate of the votes herein required, to said secretary within four weeks after said election.

SECTION 5. Every prosecuting attorney before entering upon the duties of his office, shall take and subscribe an oath faithfully to discharge the duties of his office as prosecuting attorney for the district, for which he was elected; such oath shall be in writing, certified by an officer authorized to administer oaths, and it shall be filed in the office of the secretary of the Territory, and moreover, said prosecuting attorney shall give to the Territory of Washington a bond in the sum of two thousand dollars with good and sufficient surety, conditioned that he will faithfully discharge the duties of his office according to law, which bond shall be approved by the judge of the district, for which he was elected, and filed in the office of the secretary of this Territory with said oath of office.

SECTION 6. Each prosecuting attorney shall be the legal adviser of the boards of county commissioners of the several counties in his judicial district; he shall also prosecute all criminal and civil actions, in which the Territory or any county within his district may be a party; defend all suits brought against the Territory or any county composing his district, and prosecute all forfeited recognizances bonds and actions for the recovery of debts, fines, penalties and forfeitures accuring [accruing] to the Territory or any county within his district.

SECTION 7. The prosecuting attorney of any judicial district. from which an appeal or writ of error is taken to the supreme court shall appear on behalf of the Territory or county in supreme court in all cases in which the Territory or any county in his district is interested, and prosecute or defend the same as the case may be.

SECTION 8.    Each prosecuting attorney shall, when required by the board of county commissioners of any county in his district, or by the president of such board, give to such board of county commissioners, in, writing, if so required, his legal opinion touching any subject, which such board of county commissioners may be called or required to act upon, relating to the management of county affairs.

SECTION 9.    The prosecuting attorney in each judicial district is hereby required to give legal advise when requested, to all county and precinct officers and directors and superintendents of common schools, in all matters relating their official business; and when so required, he shall draw up in writing all contracts, obligations, and like instruments of an official nature, for the use of said officers.

SECTION 10.    It shall be the duty of the prosecuting attorney to visit once in each year the offices of the county auditors of the several counties in his district; and he shall then examine the official bonds of all county and precinct officers, on file in such offices, and it is made his duty to report to the board of county commissioners of their respective counties any defect in the bonds of any public officer in such count . He shall also once in each year examine the public records and books of the auditor, assessor, treasurer, superintendent of common schools, and sheriff of each county in his district and report to the board of commissioners of their respective counties any failure, refusal, omission or neglect, of such officers to keep such records and books as required by law. He shall also report to the grand jury having been selected in whole or in part from such county, any failure, refusal, omission, or neglect, of any auditor, treasurer, assessor, superintendent of common schools, or sheriff, to keep the records and books required by law.

SECTION 11.    Whenever a petition for divorce remains undefended, it shall be the duty of the prosecuting attorney to resist such petition; but no such petition shall be heard by the court, nor shall said prosecuting attorney be required to appear and defend the same, until the sum of fifteen dollars be deposited by the plaintiff in such petition with the clerk of the court, as the fee of such prosecuting attorney.

SECTION 12.    No prosecuting attorney shall be employed in, or allowed to conduct any suit for a divorce on the part of the petitioner or applicant, in the courts of this Territory nor shall any prosecuting attorney be allowed to resist a petition for a divorce in any case remaining undefended, if the attorney for the petitioner is a partner in the practice of law or keeps his office with such prosecuting attorney; but in all such cases the court, or judge before whom the case is to be heard, shall appoint

**248**                     GENERAL LAWS.

an attorney to resist the petition* who shall be entitled to the compensation allowed by law to prosecuting attorneys in such cases.

SECTION 13.   No prosecuting attorney shall receive any fee or reward from any person or persons on behalf of any prosecution for any of his official services, except as provided in this act.   Nor shall he be engaged as counsel for a party in any civil action depending upon the same facts as a criminal prosecution.

SECTION 14.   Each prosecuting attorney shall on the thirty-first day of December in each year, make to the governor of the Territory a report setting forth the amount and the nature of business transacted by him in that year with such other statements and suggestions as he may deem useful.

SECTION 15.   When any prosecuting attorney fails, from sickness or other cause, to attend a term of the district court of the district, for which he was elected, or is unable to perform his duties at such term, the court or judge may appoint some qualified person to discharge the duties for such term; and the person so appointed shall receive a compensation to be fixed by the court to be deducted out of the Territorial salary of such prosecuting attorney, not exceeding, however, one-fourth of the quarterly salary of such prosecuting attorney.

SECTION 16.   When a vacancy occurs in the office of prosecuting attorney in any district in the Territory, it shall be the duty of the governor to appoint some qualified person to discharge the duties of the office, until the next general election, for delegate to Congress and until another prosecuting attorney shall be elected and qualified: *Provided*, That the person so appointed shall be duly qualified as provided in section one of this act.

SECTION 17.   Each prosecuting attorney shall receive a salary for his services in prosecuting and defending criminal and civil actions in which the Territory is a party at the rate of fifteen hundred dollars per annum, to be paid out of the Territorial treasury quarterly, out of any funds in the treasury not otherwise appropriated, upon the presentation to the Territorial treasurer of the proper warrant therefor, which warrant shall be paid in its regular numerical order.

SECTION 18.   Each prosecuting attorney shall receive for his services in prosecuting and defending civil actions for any county within his district and for legal advice to boards of county commissioners and county and precinct officers and for such other duties as may be required in sections nine and ten of this act; and any other duties imposed by law, the following sums annually to be paid out of the county treasury of such

county within his district on the order of the board of county commissioners of any such county, that is to say: in counties where the population is one thousand, or less the sum of fifty dollars, and for any additional number of inhabitants above one thousand at the rate of twenty-five dollars per thousand out of any moneys in the general fund of the county not otherwise appropriated.

SECTION 19.    No other or greater fees or salary than herein provided, shall be allowed or paid to any prosecuting attorney in this Territory.

SECTION 20.    For the purposes of this act, there shall be but three districts; and in all cases where a district court is or shall be held under a special act in counties within a district, said counties shall compose a part of the district to which it belongs for judicial purposes.

SECTION 21.    All acts and parts of acts in any manner conflicting with the provisions of this act, be and the same are hereby repealed: *Provided however*, That nothing herein contained, shall be construed as repealing any act or part of an act imposing other and additional duties on any prosecuting attorney.

SECTION 22.    This act shall take effect, and be in force from and after its passage.

Approved, October 31st, 1877.

---

## AN ACT

PROVIDING FOR THE PROPER CONFINEMENT OF TERRITORIAL CON-
VICTS.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the governor be and he is hereby authorized for and in behalf of the Territory to enter into a contract with William Billings sheriff of Thurston county for the confinement, custody and maintenance of all Territorial convicts under such restriction and limitations as are hereinafter stated.

SECTION 2.    Such contract shall be in force for the term of
32

250                    GENERAL LAWS.

six years from the time it is entered into and no longer but the same shall be subject to renewal unless otherwise provided by·law.

SECTION 3.    The said William Billings shall stipulate in said contract that he will prior to the thirtieth of June A D 1878 erect or cause to be erected at some suitable place in said county of Thurston at his own expense a strong, substantial building or buildings to be used as a penitentiary, with cells and all other appurtenances properly belonging to a penitentiary and so as to make it a safe and secure place of confinement and of sufficient capacity to properly accommodate all persons convicted of offenses punishable by law by imprisonment in the penitentiary.

SECTION 4    The said Billings shall further stipulate in said contract that he will properly confine all such Territorial convicts in said penitentiary according to their respective sentences during the period of his contract and that he will at his own cost and expense furnish said convicts with proper food clothing bedding and all necessary medicine and medical attendance and also furnish at his own expense all guards and other employes of said prison and the proper keeping of said convicts therein.

SECTION 5.    The said contractor shall also before the thirtieth day of June 1878 take an oath before some officer authorized to administer oaths that he will faithfully discharge the duties imposed upon him by the provisions of this act, which oath shall be filed in the office of the secretary of the Territory and he shall be liable to the same penalties and punishments in case of escape, prison breach, willful inhumanity or oppression to prisoners, as sheriffs, jailors and other officers are under the law and all laws and parts of laws·defining such offenses and proscribing [prescribing] their punishment shall apply to such contractor as though he were a public officer.

SECTION 6.    The said contractor shall also before the said thirtieth day of June 1878 execute a bond to the Territory in the sum of ten thousand dollars with sufficient sureties to be approved by the governor, conditioned for the faithful performance of all the conditions of his said contract, as mentioned in the 3d and 4th sections of this act, which bond after approval shall be filed in the office of the secretary of the Teritory.

SECTION 7.    The said contractor shall receive from the Territory as a compensation the sum of seventy cents per diem for each prisoner confined in said prison under the provisions of this act payment to be made quarterly upon the presentation of his account verified by oath and approved by the Governor to the Territorial auditor who shall draw his warrant on the treasury for the payment of the amount due.    He shall

also be entitled to receive and have all the proceeds of the labor of the convicts therein and the profits and emoluments from the operation of said prison, and the said contractor shall transport from the place of their conviction to said prison all Territorial convicts who shall be sentenced during the term of said contract and all Territorial prisoners now confined whose term of imprisonment does not expire before the 1st day of July A. D. 1878, and he shall receive therefor from the Territorial treasury the sum of five hundred dollars annually and no more.

SECTION 8. Convicts shall be confined strictly within the enclosure of said prison, except in the daytime when at work under the charge of a guard.

SECTION 9. The governor, judge and prosecuting attorney of the 2d judicial district, auditor and treasurer shall be ex-officers[ex-officio] commissioners for the prison and shall have power to proscribe [prescribe] such general rules for the discipline of the prison as they may deem proper for the proper government of said prison which rules shall be reasonable and in harmony with this act, and must be strictly obeyed by the said contractor his guards and employes. The said commissioners shall also have the right to inspect and visit the said prison as often as they may deem it necessary and also to designate a respectable physician to examine into the health and condition of each convict from time to time who is to report to the Governor which physician shall have access at all reasonable hours to said prison.

SECTION 10. When the building provided for in the 3d section of this act shall have been completed the said commissioners shall cause the same to be examined by one or more disinterested and skilful builders with reference to its security and adaptation for the purposes contemplated in this act and if the said commissioners after such examination shall be satisfied that the same has been erected and furnished as proscribed in the contract. They shall issue their certificate to the said contractor stating the said facts and shall also forward a similar certificate to each judge of the supreme court in this Territory and the six years provided for in section 2 of this act shall commence to run from the date of said certificate.

SECTION 11. After the granting of such certificate the said contractor is entitled to demand and to receive into his custody every prisoner convicted of a felony in this Territory prior to such time. When term of imprisonment shall not have expired and every sheriff or other officer having the custody of such prisoners, shall upon production of the said certificate deliver every such prisoner and the proper warrant of commitment to said contractor of said prison taking his receipt for the

252                    GENERAL LAWS.

same and after the granting of such certificate each person convicted of any offence punishable by law by imprisonment in penitentiary shall be sentenced by the court having jurisdiction to imprisonment in the prison provided for in this act and shall be confined therein and said prison for all purposes shall be deemed and held to be the penitentiary of the Territory of Washington during the period of said contract.

SECTION 12.   The said contractor shall also be entitled to demand and receive all handcuffs irons and shackles and the right to manufacture the same which may be now owned by the Territory and also all blankets owned by the Territory and used in any of the jails thereof for Territorial convicts and also all such Territorial arms and ammunition as may be necessary to properly guard said prison and an inventory of such articles shall be taken by the contractor and filed in the office of the secretary of the Territory and the said contractor at the expiration of his contract shall account for all such articles to the Territory.

SECTION 13.   At the request of any regular minister of the gospel in charge of any established congregation in the Territory the said contractor shall permit divine worship to be held in said prison by such minister as often as once each sabbath day.

SECTION 14.   No assignment of the said contract or any interest therein shall be held as binding without the written consent of the said commissioners or a majority of them.

SECTION 15.   In the event of the failure of the contractor to perform his said contract the said commissioners are authorized to contract with any other suitable persons for the keeping of said prisoners under the limitations and restrictions of this act which temporary contract shall be in force until the next ensuing meeting of the Legislative Assembly.

SECTION 16.   The Governor shall be chairman of the board of commissioners herein provided for.  He shall convene all meetings of said board of which two members shall constitute a quorum a majority of the board shall be necessary to decide all matters before them.

SECTION 17.   All acts and parts of acts in any manner conflicting with any of the provisions of this act be and the same are hereby repealed.

SECTION 19. [18].   This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

# AN ACT

## IN RELATION TO NOTARIES PUBLIC.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the governor shall hereafter appoint and commission as many notaries public as he shall deem expedient, and he may, at any time, revoke any appointment.

SECTION 2. Every notary public shall be appointed for the county in which he resides, and shall hold his office for four years unless his appointment is sooner revoked.

SECTION 3. Before a commission shall issue to the person appointed, he shall:

First, Pay into the territorial treasury the sum of five dollars, taking the territorial treasurer's receipt therefor.

Second, Procure a seal, on which shall be engraved the words "Notary Public," "Notarial Seal," or words of equivalent import, and "Washington Territory," with his surname in full, and at least the initials of his christian name.

Third, Take and subscribe the oath of office required of all Territorial or county officers.

Fourth, Append to the said oath a clear impression of his official seal, which seal shall be approved by the governor.

Fifth, File the said oath of office, impression and approval of seal, and Territorial treasurer's receipt, in the office of the secretary of the Territory.

SECTION 4. When the secretary of the Territory is satisfied that the requirements of the foregoing section has [have] been fully complied with, he shall so inform the governor, who shall issue, or cause to be issued a commission to the person appointed, who shall thereupon be authorized to enter upon the duties of his office.

SECTION 5. Every duly qualified notary public is authorized, in any county in this Territory:

First, To transact and perform all matters and things relating to protests, protesting bills of exchange and promissory notes, and such other duties as pertain to that office by the custom and law of merchants.

Second, To take acknowledgements of all deeds and other instruments of writing, and certify the same in the manner required by law.

Third, To take depositions and affidavits, and administer all oaths, required by law to be administered, and every attorney at law who is a notary public, may administer any oath to his client, and no pleading or affidavit shall on that account be held by any court to be improperly verified.

SECTION 6. It shall be sufficient for any notary public to certify an oath to be used in this Territory, in any of the courts, or in any matter whatsoever, to say simply in addition to his name, "Notary Public," and all the courts of this Territory, shall consider an oath or affidavit, otherwise properly certified by an acting notary public, without the impression of his seal, or other or further addition.

SECTION 7. Every notary public is required to keep a true record of all notices of protest given or sent by him, with the time and manner in which the same were given or sent, and the name of all the parties to whom the same were given or sent with the copy of the instrument in relation to which the notice is served and of the notice itself.

SECTION 8. On the death, resignation or removal from office, and at the expiration of the term of office, of any notary public, his records and all his official papers, shall within three months therefrom be deposited in the office of the auditor of the county, for which such notary shall have been appointed, and if any notary, on his resignation or removal from office, shall, for the space of three months neglect to so deposit his records, he shall forfeit a sum not exceeding one thousand dollars, to be recovered in a civil action by any person injured by such neglect, and it shall also be the duty of the executor or administrator of the estate of any notary public, deceased, to deposit the records and official papers of such notary with the said auditor and within three months after his appointment under like penalty.

SECTION 9. Every notary public is entitled to demand and receive the fees herein enumerated:

For every protest of a bill of exchange or promissory note, one dollar.

Attesting any instrument of writing under seal, one dollar.

Noting a bill of exchange or promissory note for non-acceptance or non-payment, one dollar.

Taking acknowledgement of any legal instrument, one dollar.

## GENERAL LAWS.                                     255

Registering protest of bill of exchange or promissory note seventy-five cents.

Certifying an affidavit, and all other certificates under seal, one dollar.

Each oath or affirmation without seal, twenty-five cents.

Being present at demand, tender, or deposit, and noting the same besides mileage at ten cents per mile, fifty cents.

For any instrument of writing drawn by a notary public, for each hundred words twenty-five cents.

SECTION 10. After the delivery of a commissison to a notary public, appointed and qualified as heretofore provided, the secretary of the Territory, shall make a certificate of such appointment with the date of said commission, and file the same in the office of the clerk of the district court of the district or sub-district where such notary resides, who shall file and preserve the same, and it shall be deemed sufficient evidence to enable such clerk to certify that the person so commissioned is a notary public, during the time such commission is in force.

SECTION 11. All official acts heretofore done and performed by notary publics [notaries public] in this Territory, and attested by their official seals, shall be taken as valid and of full force and effect, if such seals were approved by the governor of the Territory at the time of commissioning said notaries public.

SECTION 12. The Territorial treasurer shall keep all moneys received by him under the provisions of this act, as a special fund and pay the same out, only upon warrants drawn by the Territorial auditor against the said fund, and whatever of the said fund shall remain in his hands, unappropriated as hereinafter provided, at the end of each fiscal year shall be transferred to the general fund.

SECTION 13. The Territoral auditor shall, upon presentation to him by the secretary of the Territory, of bills or vouchers for postage, the purchase or printing of blanks, commissions, circulars, letters, instructions, acts, etc., to be used or distributed by the said secretary of the Territory in matters pertaining to the appointment or commissioning of notaries public, audit the same, and draw his warrant upon the Territorial Treasury, against the said special fund for the amount allowed by him, in favor of the secretary of the Territory, and the Territorial treasurer shall pay the same out of the said special fund only.

SECTION 14. All acts and parts of acts heretofore passed in relation to notaries public, be and the same are hereby repealed.

256            GENERAL LAWS.

SECTION. 15.    This act to take effect and  be  in force from and after its passage.

Approved, October 31st, 1877.

---

## AN ACT

(AN ACT) DÉFINING THE RIGHTS OF JURORS IN WASHINGTON TER-
RITORY.

SECTION 1.    *Be it enacted by the Legislative Assembly of of Washington Territory*, That no judge of the district court, judge of probate, justice of the peace or recorder in this Territory wherever any jury shall be engaged in the trial of any cause in their respective courts and shall retire to consider upon their verdict, shall deprive said jury after retiring as aforemen-tioned of food as they may desire for a longer period than six hours at any one time and it is the intention of this act that such jury be furnished with food at intervals of not more than six hours while in consideration of their verdict.

SECTION 2.    Any judge of the district court, judge of pro-bate, justice of the peace or recorder in this Territory who shall violate the provisions of section first (1) of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be liable to a fine of not less than twenty-five dollars ($25.00) nor more than five hundred dollars ($500.00) for each offense, said fine to be collected in the same manner as fines of a like nature are now collected by the statutes of Washington Territory in such cases made and provided.

SECTION 3.    All fines collected in accordance with the pro-visons of this act shall be paid into the school fund of the county in which the offense shall be committed.

SECTION 4.    All parts of acts in conflict with the provisions of this act be and the same are hereby repealed.

SECTION 5.    This act to take effect and be in force from and after its passage and approval by the governor.

Approved, November 6th, 1877.

GENERAL LAWS.                 257

# AN ACT

## IN RELATION TO COMMISSIONERS OF DEEDS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the governor may appoint in each of the United States and the Territories thereof, one or more commissioners, who shall continue in office for a term of four years, who shall have power to administer oaths, and to take depositions and acknowledgments and affidavits to be used in this Territory.

SECTION 2. Before a commission shall issue to any commissioner appointed as aforesaid, the appointee shall:

First, Take and subscribe an oath before some officer authorized to administer the same in the State or Territory for which such commissioner is appointed, that he will faithfully discharge the duties of his office, and forward a copy thereof to the secretary of the Territory;

Second, Pay into the Territorial treasury the sum of two dollars and 'fifty cents, taking the Territorial treasurer's receipt therefor;

Third, File the said Territorial treasurer's receipt in the office of the secretrry of the Territory.

SECTION 3. When the provisions of section two shall have been complied with, the secretary shall so inform the governor, who shall issue a commission to the said appointee, upon receipt of which, the said commissioner may enter upon the duties of his office. The governor may at any time revoke any appointment.

SECTION 4. The Territorial treasurer shall keep all moneys received by him, under the provisions of this act, as a special fund, and pay the same out, only upon warrants drawn by the Territorial auditor against the said fund; and whatever of the said fund shall remain in his hands unappropriated as hereinafter provided, at the end of each fiscal year, shall be transferred to the general fund.

SECTION 5. The Territorial auditor shall, upon presentation to him by the secretary of the Territory, of bills or vouchers for postage, the purchase or printing of blanks, commissions, circulars, letters, instructions, acts, etc., to be used or distributed by the said secretary of the Territory, in matters per-

.33

258                    GENERAL LAWS.

taining to the appointment or commissioning of commissioners of deeds, audit the same, and draw his warrant upon the Territorial treasury, against the said special fund for the amount allowed by him, in favor of the secretary of the Territory, and the Territorial treasurer shall pay the same out of the said special fund only.

Section 6.  All acts and parts of acts heretofore passed, in conflict with any of the provisions of this act, be, and the same are hereby repealed.

Section 7.  This act to take effect and be in force from and after its passage.

Approved, November 6th, 1877.

---

# AN ACT

### RELATING TO THE IMPROVEMENT OF TIDE LAND.

Section 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That persons owning or desiring to improve contiguous tracts of tide marsh or swampy lands exposed to the overflow of the tide and capable of being laid [made] dry may separate their respective tracts by a dike or ditch, which shall make and designate their common boundary. In all such cases said dike or ditch shall be constructed at the equal cost and expense of the respective parties, and either party failing to pay his contributive share of such expense shall be liable to the party constructing the dike or ditch for such contributive share, or so much thereof as may remain due and unpaid, to be recovered in a civil action in a court of competent jurisdiction and the party constructing such dike shall also be entitled to a lien upon the tract of the party failing to pay his contributive share for the construction of said dike, or so much thereof as shall be due, which lien shall be secured and enforced as liens of materialmen and mechanics are now by law enforced.

Section 2.  Any person or persons who may hereafter take a tract of tide land or marsh and shall desire to adopt as his boundary line any dike or ditch heretofore constructed upon and entirely within the boundary line of a neighboring contiguous tract he may join on to said tract and adopt said dike as his boundary

by paying to the owner of the tract upon which said dike is constructed one-half of the cost and expense of the construction thereof, and any person as[so] adopting the dike or ditch of another without contributing his half share of the cost or expense thereof shall be liable for his said half share, which may be recovered in a civil action in any court of competent jurisdiction, or the owner of the dike or ditch as [so] used, may secure a lien upon the tract of land bounded by said dike for the amount due for the use of said dike in accordance with the provisions of the law securing a lien to materialmen and mechanics: *Provided always,* That when such dike has become the common boundary of two adjacent tracts, it shall be and remain the common boundary, and the persons owning the said tracts shall be mutually liable for the expense of keeping it in repair, share and share alike.

SECTION 3. This act to take effect from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

## TO PROVIDE A SYSTEM OF COMMON SCHOOLS.

## TITLE I.

### SUPERINTENDENT OF COMMON SCHOOLS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a superintendent of public instruction shall be appointed by the governor, by and with the advice and consent of the Legislative Council, and shall enter upon the duties of his office on or before the twentieth day after his appointment, and shall hold his office for the term of two years, or until his successor is appointed and qualified, and shall execute a bond in the penal sum of two thousand dollars, with two good and sufficient sureties, to be approved by the secretary of the Territory, conditioned upon the faithful discharge of his or her official duties.

SECTION 2. The superintendent shall have general supervision of public instruction, especially of the county and dis-

260 GENERAL LAWS.

trict school officers and the public schools of the Territory, and shall report to the governor biennially, on or before the first day of October of the years in which the regular sessions of the Legislature are held. The governor shall transmit said report to the Legislature, and whenever it is ordered printed, a sufficient number of copies shall be delivered to the superintendent of public instruction to furnish two copies to be deposited in the Territorial library, and one copy to each county superintendent of common schools, to be held by him as public property, and delivered to his successor in office, and one copy to each local school officer within the Territory. Said report shall contain a statement of the condition of the Territorial university and public schools in the Territory, full statistical tables, by counties, showing among other statistics the number of school children in the Territory, the number attending public schools and the average attendance; the number attending private schools, the amount raised by county and district taxes or from other sources of revenue for school purposes, the amount expended for salaries of teachers and for building and furnishing school houses, and the statement of the plans for the management and improvement of schools.

SECTION 3. The superintendent of public instruction shall superintend the printing and transmitting of such blanks, forms, rules and regulations for the use and government of the public schools, school officers and teachers as the board of education may authorize.

SECTION 4. It shall be the duty of the superintendent of public instruction to travel in the different counties of the Territory where common schools are taught, so far as possible without neglecting his other official duties as superintendent of public instruction, during at least three months in each year, for the purpose of visiting schools, of consulting with county superintendents and addressing public assemblies on subjects pertaining to public schools.

SECTION 5. The superintendent of public instruction shall keep his office at some place where there is a post-office, and he shall receive a salary of six hundred dollars per annum, which shall be paid quarterly out of the Territorial treasury. He shall also submit, quarterly, a statement of expenditures for traveling expenses, stationery, postage and other necessary expenses connected with his office, which shall be audited by the Territorial auditor, who shall issue a warrant on the Territorial treasurer for the payment of such amounts as shall be found to have been properly incurred: *Provided*, That said expenditures shall not exceed three hundred dollars in any one year.

SECTION 6. The superintendent of public instruction shall, at least once a year, hold a Territorial teacher's institute, over

which he shall preside, at such time and place as may be determined upon, either by the institute or Territorial board of education, and he shall, so far as practicable, aid in establishing county institutes.

SECTION 7. The superintendent of public instruction shall be *ex-officio* President of the board of education.

SECTION 8. Before entering upon the discharge of the duties of his office the superintendent shall subscribe, before an officer duly authorized to administer oaths, the following:

I do solemnly swear (or affirm) that I will support the Constitution of the United States, the Organic Act of the Territory, and that I will faithfully discharge the duties of the office of Territorial superintendent of schools, according to law and the best of my knowledge and ability; so help me God.

Subscribed and sworn before me this——day of——— A. D. 187—.

Which being duly attested, shall be filed with the secretary of the Territory.

SECTION 9. The superintendent shall, at the expiration of his term of office, deliver over, on demand, to his successor, all property, books, documents, maps, records, reports and other papers belonging to his office, or which may have been received by him for the use of his office.

# TITLE II.

### BOARD OF EDUCATION.

SECTION 10. The governor shall oppoint, by and with the advice and consent of the Legislative Council, one suitable person from each judicial district, who, together with the Territorial suprintendent, shall constitute the Territorial board of education, who shall hold their offices for two years. They shall be notified of their appointment in the same manner as may be prescribed by law for giving notice to other Territorial officers, and within twenty days after receiving such notice, shall qualify by taking a similar oath to that which is required by this act to be administered to the superintendent of public instruction. They shall serve until their successors are appointed and qualified.

SECTION 11. The meetings of the board shall be held annually, at Olympia, on the first Monday of April.

SECTION 12. Said board shall have power:

262                    GENERAL LAWS.

First. To adopt a uniform series of text-books throughout the Territory whenever they can secure the exchange of the books now in use for new ones, without cost or expense to the people, and the series of text-books so adopted shall not be changed until the expiration of five years from their adoption, unless the publishers of such books shall, after such adoption, cause the prices thereof to be increased above the prices charged by other publishers for books of corresponding grades, or shall thereafter publish the books of the series adopted of an inferior quality, either in material, workmanship, or otherwise. Said board shall, before adopting any series of text-books, give notice that they will examine all text-books submitted to them, and said examination shall be by a public discussion of the merits of said books, in open board; and the series of books exhibiting the highest merit, shall be adopted as the series to be used in all the schools in this Territory, and notice of the time when such competition shall take place, shall be published in one paper of general circulation in each judicial district, for a period of six weeks prior to the date when such public competition shall occur.

Second. To prescribe rules for the general government of the public schools that shall secure regularity of attendance' prevent truancy, secure efficiency and promote the true interests of the schools; they shall prepare or cause to be prepared, blank forms for reports of teachers, directors, county superintendents and for other necessary purposes. The board shall have the general supervision of the Territorial Normal School whenever the same shall be established by law.

Third. To use a common seal.

Fourth. To order all printing that may be necessary to carry into effect the provisions of this act.

Fifth. To sit as a board of examination at their semi-annual meetings and grant Territorial certificates. A Territorial certificate shall entitle the holder to teach in any public school for the period of three years, subject to be revoked for cause. The fees charged for Territorial certificates shall be six dollars. The fees collected shall constitute a fund for paying the expenses of the board of education. The board of education may, at their discretion, grant, without examination, certificates to persons presenting authenticated diplomas, or certificates from other States, of the like grade and kind as those granted by the board of education for the Territory: *Provided*, They have been actually engaged in teaching, three years.

SECTION 13. It shall be the duty of the board of education to prepare, semi-annually, a uniform series of questions to be used by the county boards of examination in the examination of teachers.

SECTION 14. All certificates granted by the board of education may be revoked for immoral or unprofessional conduct.

SECTION 15. All needed stationery for the use of, and any printing authorized by the board, as well as all necessary traveling expenses of the members of the board incurred in going to or returning from the place of meeting, shall be paid out of the Territorial treasury, the accounts for the same to be presented by direction of the board, duly certified by the Territorial superintendent to the Territorial auditor, to be first audited and allowed by him and then certified to the Territorial treasurer for payment: *Provided*, The expenses of the whole board shall not exceed the sum of two hundred dollars.

SECTION 16. Whenever any vacancy in the board shall occur, whether by death, removal, resignation or otherwise, the governor shall fill the vacancy by appointment.

## TITLE III.

### COUNTY SUPERINTENDENT.

SECTION 17. A county superintendent of common schools shall be elected in each county of the Territory at the general election preceding the expiration of the term of office of the present incumbent, and every two years thereafter, who shall take the office on the first Monday in January next succeeding his election, and hold for two years, or until his successor is elected and qualified. He shall take the oath or affirmation of office, and shall give an official bond to the county in a sum to be fixed by the board of county commissioners of said county. The county commissioners of each county shall fill any vacancy that may occur in the office of county superintendent until the next general election.

SECTION 18. The county superintendent shall, on or before the first Monday in September of each year, apportion all school moneys to the school districts in accordance with the provisions of this act. He shall certify to the several district clerks and to the county treasurer the amounts so apportioned to the several districts and the directors shall draw their warrants on the county treasurer in favor of persons entitled to receive the same. Such warrants shall show for what purpose the money is required, and no warrant shall be drawn unless there is money in the treasury to the credit of such district.

264                    GENERAL LAWS.

Section 19.   County superintendents shall have the power and it shall be their duty.

First, To visit each school in his county at least once a year.

Second, To distribute, promptly, all reports, laws, forms, circulars and instructions which he may receive for the use of the schools and teachers from the superintendent of public instruction.

Third, To report to the superintendent of public instruction, annually, during the month of September, for the school year ending August thirty-first next receding[preceding,] such statistics as may be required of him.

Fourth, To enforce the course of study adopted by the board of education.

Fifth, To enforce the rules and regulations required in the examination of teachers.

Sixth, To keep on file and preserve in his office the biennial report of the superintendent of public instruction.

Seventh, To keep in a good and well bound book, to be furnished by the county commissioners, a record of his official acts.

Eighth, To carefully preserve all reports of school officers and teachers, and at the close of his term of office, deliver to his successor, all records, books, documents and papers belonging to the office, taking a receipt for the same, which shall be filed in the office of the county auditor.

Section 20.   If the county superintendent fails to make a full and correct report to the superintendent of public instruction, of all statements required to be made by law, he shall forfeit the sum of one hundred dollars from his salary, and the board of county commissioners are hereby authorized and required to deduct therefrom the sum aforesaid, upon information from the superintendent of public instruction that such reports have not been made.

Section 21.   The county superintendent shall have power to administer oaths and affirmations to school directors, collectors, teachers and other persons, in all official matters connected with or relating to schools, but shall not make or collect any charge or fee for so doing.

Section 22.   The county superintendent shall have the power, and it shall be his duty, to appoint directors and district clerk for any district which, from any cause, fails to elect at the regular time;  to appoint directors and district clerk to fill vacancies, to appoint directors and district clerk for any new district: *Provided however,* That when a new district is organized, such of the directors and district clerks of the old district as

reside within the limits of the new one, shall be directors and district clerk of the new one, and the vacancies in the old district shall be filled by appointment; that the county superintendent shall have power to call a school meeting at the request of a majority of the legal voters, when in his opinion the interests of education require it: *Provided,* That said request for such school meeting be first laid before the directors of the district, and action thereon be refused by them.

SECTION 23.    It shall be the duty of the county superintendent to inquire and ascertain whether the boundaries of school districts in his county are definitely and plainly described in the records of the county commissioners, and if such boundaries are not plainly described on such records, then it shall be his duty to furnish to said board of county commissioners accurate boundaries of all school districts, and he shall keep in his office a full and correct transcript of such boundaries. In case the boundaries of districts are conflicting or incorrectly described, he shall change, harmonize and describe them, and make a report of such actions to the county commissioners, and on being ratified by the county commissioners, the boundaries and descriptions so made shall be legal boundaries and descriptions of the district [districts] of the county. The county superintendent shall furnish the district clerks with descriptions of the boundaries of their respective districts.

SECTION 24.    Every county school superintendent shall receive a salary of forty dollars per annum and when the number of scholars shall exceed five hundred (500) then he shall receive the sum of three dollars for each additional one hundred, and five dollars for each school visited during the year, together with the same mileage for going to and returning from said school that sheriffs receive in the county in which they reside, all to be paid quarterly out of the general treasury of said county in the same manner as the salaries of other county officers, upon his certifying to the county commissioners that he has actually discharged the duties required of him.

SECTION 25.    Each county superintendent shall call to his assistance two persons holding the highest grade certificates in his county, and such persons with the county superintendent, shall constitute a board of examination for the examination of teachers. It shall be the duty of the county board of examination to be at the county seat on the first Wednesday of May and November for the purpose of examining teachers; the superintendent shall give ten days notice of the same by posting up hand bills or otherwise; the superintendent shall also at such time and place transact such other business as properly appertains to his office. And any person or district applying on different days for the transaction of such business shall pay

34

266                    GENERAL LAWS.

the superintendent a reasonable compensation for his trouble, not exceeding the sum of two dollars. A proper allowance shall be made out of the county treasury for the necessary books, stationery and postage of the county superintendent's office.

' SECTION (Twenty) 26. There shall be three grades of county certificates, first, second and third. Unless revoked for cause, a first grade certificate shall entitle the holder to teach for three years; second grade for two years and third grade for one year. Those holding first grade county certificates, and who shall have been actually engaged in teaching for three years, shall be eligible to examination for first grade Territorial certificates: *Provided*, That the county superintendent may grant permits to such persons who may desire to teach in his county, who were not residents of the county, or who were unavoidably absent from the meeting of the county board of examination, and all permits so granted shall be good until the next meeting of the board.


## TITLE IV.

### SCHOOL DISTRICTS.

SECTION 27. For the purpose of organizing a new district, or for the subdivision of, or change in the boundaries of an old one, except as provided in section twenty-three, at least five heads of families must present a petition to the county superintendent, setting forth the boundaries of the new district asked for, or the change of the boundaries desired, with the reason for the same. The county superintendent shall, after giving due notice to all parties interested, transmit the petition to the board of county commissioners, with his approval or disapproval, and such changes in the boundaries as he may deem necessary or advisable. The commissioners shall establish the district as approved by the county superintendent: *Provided*, That by vote of the board they may establish the district in accordance with the original prayer of the petition, or such other modification as they may choose to make, or may reject it. In any case of alleged hardship, any head of a family, parent or guardian may make a statement of the facts to the board of commissioners, and if, in the judgment of the board, good cause be shown for such transfer, he may be transferred to another district.

SECTION 28.  No new district formed by the subdivision of an old one shall be entitled to any share of the public money belonging to the old district until a school has been actually commenced in such new district; and unless within eight months from the action of the county commissioners a school is opened, the action making a new district shall be void, and all elections or appointments of directors made in consequence of such action, and all rights and office of the parties so elected or appointed, shall cease and determine; and all taxes which may have been levied in such old district, shall be valid and binding upon the real and personal property of the new district, and shall be collected and paid into the school fund of the district.

SECTION 29.  When a new district is formed by the division of an old one, it shall be entitled to a just share of the school moneys to the credit of the old district, after the payment of all outstanding debts at the time when school was actually commenced in such new district, and the county superintendent shall divide and apportion such remaining moneys, and such as may afterwards be apportioned to the old district according to the number of census children resident in each district for which purpose he may order a census to be taken.

SECTION 30  Whenever a district is formed lying in two adjoining counties, the clerk of the district shall report to each county superintendent the number of children in the district residing in his county.  In the same manner the directors and teachers shall make a distinct and separate report of all school statistics, and a teacher's certificate granted by the county superintendent of one county shall be valid for both.

SECTION 31.  No school district shall be entitled to receive any apportionment of county school moneys unless the teachers employed in the schools of such district shall hold legal certificates of fitness for the occupation of teaching, in full force and effect.

SECTION 32.  No school district shall be entitled to receive any apportionment of county school moneys which shall not have maintained public school for at least three months during the preceding year: *Provided*, That any new district formed by the division of an old one, shall be entitled to its just share of school moneys where the time that school was maintained in the old district before division, and in the new one after division shall be equal to at least three months.

SECTION 33.  Districts having less than fifteen scholars between the ages of four and twenty-one years, shall be exempted from the requirements of the preceding section, and may, by organizing and reporting to the superintendent according to law, draw their school money without being required to comply

268                    GENERAL LAWS.

with the provisions of the school law any further than the said organization, necessary report and regular enumeration of children are concerned; and in such district, two legal voters shall constitute a quorum to do business: *Provided*, That no warrant shall be drawn on the county treasurer for any money except for the payment of teachers, and if no school be kept in any such district during the period of two years, for at least three months, the money so apportioned to the district shall revert to the general school fund of the county.

## TITLE V.

### SCHOOL DIRECTORS.

SECTION 34. The board of directors of each school district shall have custody of all school property belonging to the district and shall have power in the name of the district, or in their own names, as directors of the district, to convey by deed all the interest of their district in or to any school house or lot directed to be sold by vote of the district, and all conveyances of real estate made to the district, or to the directors thereof. shall be made to the board of directors of the district and to their successors in office; said board in the name of the district, shall have power to transact all business necessary for maintaining schools and protecting the rights of the district.

SECTION 35. An annual school meeting for the election of school directors and district clerk shall be held in each district on the first Saturday in November of each year at the district school house if there be one, and if there be none. at a place to be designated by the board of directors. The directors shall post written or printed notices thereof, specifying the day, time, and place of meeting, in at least three public places in the district, one of which shall be the school house or other place of meeting at least six days previous to the time of meeting. All elections shall be by ballot and the directors shall have power to determine the hours in which the ballot box shall be kept open, having given due notice thereof in the posted notices of election. Every inhabitant male or female. over the age of twenty-one years, who shall have resided in the school district for three months immediately preceding any district meeting and who shall have paid or be liable to pay any tax except poll or road tax in said district, shall be a legal voter

at any school meeting and no other person shall be allowed to vote. Any person offering to vote may be challenged by any legally qualified elector of the district and the chairman of the board of directors shall thereupon administer to the person challenged an oath, in substance as follow: You do swear (or affirm) that you are a citizen of the United States or have declared your intention to become such; that you are twenty-one years of age, according to the best of your information and belief that you have resided in this district ninety days next preceding this election and that you are a taxable resident of this school district, exclusive of road or poll tax and that you have not before voted this day. If he shall refuse to take the oath his vote shall be rejected and any person guilty of illegal voting shall be punished as provided in the general election law of this Territory. The directors shall be the judges and inspectors of the election, and if they are not present at the time of opening the polls, then the electors present may appoint the officers of the election. A poll and tally list shall be kept by the clerk of the board of directors and with the exceptions mentioned in this section the election shall be conducted as far as practicable in the form and manner of the general election. Any on [one] of the old directors shall have power to administer to any director elect, the oath of office, and the clerk of the election shall issue the certificate of election to any director elect, who shall forward it with the oath attached or endorsed thereon, to the county superintendent of public schools.

SECTION 36. In all organized districts in which elections have been previously held one, director shall be elected for the term of three years, and if any vacancies are to be filled, a sufficient number to fill them for the unexpired term and the ballot shall specify the respective terms for which each director is to be elected. In new districts acting under directors appointed by the county superintendent three directors shall be elected for one two and three years respectively. Directors elect shall take office immediately after qualifying and shall hold office until their successors are elected and qualified. Any director elect who shall fail to qualify within ten days after being elected, shall forfeit all right to the office, and the county superintendent shall appoint to fill the vacancy.

SECTION 37. Whenever a new district is formed by order of the board of county commissioners, within thirty days thereafter, a special school meeting may be called by notice of any three legal voters of said district, and such meeting shall be conducted in a manner and form prescribed in this act, for the annual school meeting for the election of directors. Such new district shall be considered organized whenever two of the directors shall have qualified, and the record of the district clerk

shall be *prima facie* evidence of the legal organization of the district, and the district shall be designated by number.

Section 38. Every board of directors unless otherwise specially provided by law, shall have power and it shall be their duty:

First, To employ and for sufficient cause dismiss, teachers, mechanics, and laborers; and to fix, alter, allow, and order paid their salaries and compensation.

Second, To enforce the rules and general regulations of the Territorial board of education for the government of schools, pupils, and teachers, and to enforce the course of studies adopted by the board of education.

Third, To provide and pay for school furniture and apparatus and such other articles—materials and supplies—as may be necessary for the use of the school or for the use of the school board.

Fourth, To suspend or expel pupils from school, and in cities or towns to exclude from school all pupils under six years of age, when the interest of the school require such exclusion.

Fifth, To rent, repair and furnish school houses.

Sixth, To build or remove school houses, purchase and sell school lots when the directors are directed by a vote of the district so to do.

Seventh, To purchase personal property, and to receive, lease and hold in fee, or in trust for their district any or all real or personal property, for the benefit of the school thereof.

Eighth, To provide books for the indigent children, on the written statement of the teacher that the parents of such children are unable to purchase them.

Ninth, To require all pupils to be furnished with such books as may have been adopted by the Territorial board of education as a condition to membership to the school.

Tenth, To exclude from school and from school libraries, all books, papers, tracts, or catechisms of an infidel, sectarian or partisan character.

Eleventh, To require every teacher to keep a school register.

Twelfth, To require teachers to make an annual report as may be required by the superintendent of public instruction.

Thirteenth, To make an annual report during the month of August of each year for the school year next preceding, to the county superintendent in the manner and form and on the blanks prescribed by the board of education.

Fourteenth, To make a report whenever required, directly

to the Territorial superintendent of public instruction of the text books used in their schools.

SECTION 39. Any board of directors, shall be liable as directors, in the name of the district, for any judgment against the district, for any salary due any teacher, and for any debts legally due, contracted under the provisions of this act and they shall pay such judgment or liability out of the school funds only, to the credit of the district.

SECTION 40. Any board of directors shall have power to make arrangements with the directors of any adjoining district for the attendance of such children in the school of either district as may be best accommodated therein, and to transfer the school money due by apportionment to such children to the district in which they may attend school.

## TITLE VI.

### SCHOOL CLERKS.

SECTION 41. It shall be the duty of the district clerk to record all proceedings of the annual meetings, or of special school meetings, and to keep accurate and detailed accounts of all receipts and expenditures of school money. At each annual school meeting the district clerk must present his record book for public inspection, and shall make a statement of the financial condition of the district and of the action of the directors; and such record must always be open for public inspection.

SECTION 42. It shall be the duty of the district clerk to take annually between the twentieth and thirtieth of July, of each year, an exact census of all children and youth between the ages of four and twenty-one years of age, residing in the district, and shall specify the number and sex of such children and the names of their parents or guardians. He shall state specifically and separately a census of all children under four years of age, and shall specify the number and sex of such children; but all children who may be absent from home, attending boarding schools or any public or private schools or seminaries of learning shall not be included by the school district clerk in the census list of the city, town or district where they may be attending such private institutions of learning. He shall make a full report thereof on blanks furnished for that purpose, under oath, to the county superintendent, on or before the first day of August thereafter, and deliver a copy to

GENERAL LAWS.

the school directors. The directors shall make a reasonable allowance to the clerk of the district for the services rendered by him in accordance with the provisions of this act, and order the same paid out of the district school fund.

SECTION 43. The district clerk of each district shall provide all school supplies authorized by this act, and shall keep the school house in repair, and shall keep an accurate record of all expenses incurred by him on account of the school, which account shall be audited by a majority of the board of directors, and paid out of the district school fund.

SECTION 44. It shall be the duty of every district clerk to report to the county supererintendent at the beginning of each term, the name of the teacher and the proposed length of the term.

## TITLE VII.

### DISTRICT MEETINGS.

SECTION 45. No district school meeting, annual or special, shall be organized before nine o'clock A. M., or close before twelve o'clock M., or be kept open less than one hour, and in all districts where the number of youths and children, between four and twenty-one years of age, equals or exceeds three hundred, the polls shall be kept open from two o'clock P. M. till six o'clock P. M.

## TITLE VIII.

### TEACHERS.

SECTION 46. Every teacher employed in any public school shall make an annual report to the county superintendent, on or before the first day of September after the close of each school year in the form and manner and on the blanks prescribed by the board of education. A duplicate of said report shall be furnished to the district clerk. Any teacher who shall end any school term before the close of the school year, shall make a report to the county superintendent immediately after the close

of such term; and any teacher who may be teaching any school at the close of the school year shall, in his or her annual report, include all statistics from the school register for the entire school year, notwithstanding any previous report for a part of the year. Teachers shall make such additional reports as may be required, in pursuance of the law, by the board of education. No board of directors shall draw any order or warrant, for the salary of any teacher for the last month of his or her services, until the reports herein required shall have been made and received.

SECTION 47. Every teacher shall keep a school register, in the manner provided therefor, and no board of directors shall draw any warrant for the salary of any teacher for the last month of his or her services in school, at the end of any term or year, until they shall have received a certificate from the district clerk that the said register has been properly kept, the summaries made and statistics entered, or until by personal examination, they shall have satisfied themselves that it has been done. Teachers shall faithfully enforce in school the course of study and the regulations prescribed by law; and if any teacher shall willfully refuse, or neglect to comply with such requisitions, then the board of directors shall be authorized to withhold any warrant for salary due, until such teacher shall comply therewith. No teacher shall be entitled to draw for salary on school moneys unless such teacher shall be employed by a majority of the directors, nor unless the holder of a legal teacher's certificate or permit in full force and effect.

SECTION 48. In every contract whether written or verbal, between any teacher and board of directors, a school month shall be construed to be twenty school days or four weeks of five days each, and no teacher shall be required to teach school on Saturdays, the first day of January, Christmas day, the Fourth of July, or any other legal holiday, and no deduction from the teacher's time or salary shall be made by reason of the fact that a school day happens to be one of the days referred to in this section as a day on which school shall not be taught, [nor shall] any deduction be made from the salary of a teacher during the time he or she is attending the annual county teacher's institute, including time necessarily occupied in traveling, upon production of the certificate of the president of such institute certifying to the number of days of such [attendance.] Any contract made in violation of the provisions this section shall have no force or effect, as against the teacher.

SECTION 49. Every teacher shall have power to hold every pupil to a strict accountability in school, for any disorderly conduct on the way to or from school or on the grounds of the school, or during intermission or recess; to suspend from school

274          GENERAL LAWS.

any pupil for good cause, provided that such suspension shall be reported to the directors as soon as practicable, and their decision shall be final, and no teacher shall administer any punishment on or about the head of any scholar.

SECTION 50.   It shall be the duty of all teachers to endeavor to impress on the minds of their pupils the principles of morality, truth, justice and patriotism; to teach them to avoid idleness, profanity and falsehood, and to instruct them in the principles of a free government, and to train them up to a true comprehension of the rights, duties and dignity of American citizenship.

## TITLE IX.

### SCHOOLS.

SECTION 51.   Every school, not otherwise provided for by special law, shall be open for the admission of all between the age of five twenty-one years, residing in that school district, and the board of directors shall have power to admit adults and children not residing in the district, whenever good reason exists for such exception.

SECTION 52.   All schools shall be taught in the English language, and instruction shall be given in the following branches, viz: reading, writing, orthography, arithmetic, geography, English grammar, physiology and history of the United States, and such other studies as may be authorized by the directors of the district.   Attention shall be given during the entire course, to the cultivation of manners, morals, to the laws of health, physical exercises, ventilation and temperature of the school room.

SECTION 53.   No books, tracts, papers, catechism or other publications of a partisan, denominational character shall be used or distributed in any school, neither shall any political, sectarian, denominational or infidel doctrine be taught therein; and any teacher who shall violate these provisions shall forfeit his permit or certificate for the period of one year.

SECTION 54.   The school day shall be six hours in length exclusive of any intermission at noon, but any board of directors may fix as the school day, a less number of hours than six: *Provided,* That it be not less than four, for any primary school under their charge, and any teacher may dismiss any or all scholars under eight years of age, after an attendance of four

hours a day, exclusive of an intermission at noon. No teacher or scholar shall be allowed to attend school from any house in which smallpox, vari[o]loid or scarlet fever is prevalent. No teacher or scholar shall be permitted to return to school from any house where the above mentioned diseases have prevailed until three weeks shall have elapsed from the beginning of convalesence of the patient. In case several individuals have been affected with such disease within the same house the period of time must be reckoned from the beginning of convalescence of the last case. No teacher or scholar shall be allowed to attend school who is affected with dip[h]theria or measles, or whooping cough.

SECTION 55. All pupils who may attend public schools shall comply with the regulations established, in pursuance of the law, for the government of such schools, shall pursue the required course of study, and shall submit to the authority of the teachers, of such schools. Continued and willful disobedience, and open defiance of authority of the teachers, shall constitute good cause for expulsion from school. Any person who shall in any way cut, deface, or otherwise injure any school house, furniture, fence, or out building thereof, shall be liable to suspension and punishment, and the parents or guardian of such pupil shall be liable for damage on complaint of the teacher or any director.

SECTION 56. The school year shall begin on the first day of September and end on the last day of August.

## TITLE X.

### SUPPORT OF SCHOOLS.

SECTION 57. The principal of all moneys accruing to the Territory from the sale of any lands, which have been, or which may hereafter be given by the congress of the United States for school purposes, shall constitute an irreducible fund, the interest accruing from which shall be annually divided among all the school districts in the Territory, proportionally to the number of children in each between the ages of four and twenty-one years, for the support of common schools and for no other purpose whatever.

SECTION 58. For the purpose of establishing and maintaining public schools, it shall be the duty ·of county commissioners of each county to levy an annual tax not less than three

276                    GENERAL LAWS.

and not more than six mills on the dollar on all taxable property within their respective counties, as shown by the assessment roll made by the county assessor for the same year, and to include the same in their warrant to the collector, and the said collector shall proceed to collect said tax in the same manner as the other taxes are collected, and the said money so collected shall be paid over to the county treasurer, to be drawn in the manner prescribed in this act. It shall not be lawful for any county treasurer to receive county orders in payment of school tax, nor to pay out any school money or [on] county orders. For the support of common schools, there shall be set apart by the county treasurer, all moneys paid into the county treasury arising from fines for a breach of any law regulating license for the sale of intoxicating liquors, or for keeping of bowling alleys, or billiard saloons, or of any penal laws of the Territory. Such moneys shall be forthwith paid into the county treasury by the officer receiving the same, and be added to the yearly school fund raised by tax in each county, and divided in the same manner.

SECTION 59. It shall be the duty of the auditors of the several counties of the Territory to make a report to the county superintendent of common schools within the counties, the first Monday in August of each year, of the school tax levied, and the assessed valuation of their counties for that year, and it shall be the duty of the clerk of the district court at the close of every term thereof, to report to the county superintendent of the county in which said term, shall have been holden, whether or not any fines, and if any, what, with the date at which the same were paid to the county treasurer, and all officers mentioned in this act, who shall fail or neglect to perform any of the duties required by this act, shall be deemed guilty of misdemeanor, and upon conviction before any court having competent jurisdiction, shall be fined in any sum not less than twenty dollars and not more than one hundred dollars for each neglect, and such fine shall be paid into the county treasury for the benefit of common schools in said county.

## TITLE XI.

### UNION OR GRADED SCHOOLS.

SECTION 60. Whenever the inhabitants of two or more school districts may wish to unite for the purpose of establishing a graded school, in which instruction shall be given in the

higher branches of education, the clerks of the said districts shall upon a written application of five voters of their respective districts, call a meeting of the voters of such districts at some convenient place by posting up written notices, in like manner as provided for calling district meetings, and if a majority of the voters of each [of] such districts shall vote to unite for the purpose herein stated, they shall at that meeting, or at an adjourned meeting, elect three directors and a clerk for such a union district.

SECTION 61.    The board of directors provided for in the preceding section shall, in all matters relating to graded schools possess all the power, discharge all the duties, and be governed by the laws herein provided for district directors.

SECTION 62.    The union district thus formed shall be entitled to an equitable share of the county school fund, to be drawn from the county treasury in proportion to the number of children attending such graded school for each district.

SECTION 63.    The said union district may levy taxes for the purpose of purchasing or furnishing proper buildings for the accommodation of the school, or for the purpose of defraying necessary expenses and paying teachers, but shall be governed in all respects by the law herein provided for levying and collecting district taxes.

SECTION 64.    The clerk of the union district shall discharge all the duties of clerk in like manner as a clerk of a common school district, and shall report to the county superintendent the number of scholars attending the graded school, from his district their sex and the branches studied, and the county superintendent shall apportion the amount of school money due the union district.

SECTION 65.    Any single district shall possess power to establish graded schools, subject to the provisions of this act, in like manner as two or more districts united.

SECTION 66.    The annual meeting of union, or graded, school districts shall be held on the last Saturday of October, at such hour as may be indicated by the board of directors.

## TITLE XII.

### SCHOOLS IN CITIES OR TOWNS.

SECTION 67.    The public schools of any city, town or village which may be regulated by any special law, set forth in

278                    GENERAL LAWS.

the charter of such city, town or village, shall be entitled to receive their proportion of the public money: *Provided*, That the clerk of the board of education in such city, town or village, shall make due report, within the time and manner prescribed in this act to the county superintendent.

SECTION 68.    Any city, town, village or district reporting more than five hundred (500) children between four and twenty-one years of age shall be, and is required by this act to establish graded schools, under such rules and regulations as may be prescribed by the board of education.

SECTION 69.    In any city, town or village containing more than four hundred inhabitants every parent, guardian or other person residing therein having control or charge of any child or children between the ages of eight and sixteen, shall be required to send any such child, or children to public school, for a period of at least six months in each school year, at least six weeks of which shall be consecutive, unless the bodily or mental condition of such child or children has been such as to prevent his or their attendance at school or application to study for the period required, or unless he or they are engaged in labor necessary for their own support, or that of others depending on them, or unless such child or children are taught in a private school, in such branches as are usually taught in primary schools, or have already acquired the ordinary branches of learning taught in the public schools.

# TITLE XIII.

### SCHOOL OFFICERS.

SECTION 70.    When any school officer is superseded by election, or otherwise, he shall immediately deliver to his successor in office, all books, papers, and moneys pertaining to his office, and every such officer who shall refuse to do so, or who shall willfully mutilate or destroy any such books or papers, or any part thereof, or who shall misapply any moneys intrusted to him by virtue of his office, shall be deemed guilty of a misdemeanor and shall be punished by a fine, in the discretion of the court, not to exceed one hundred dollars.

SECTION 71.    Every person elected or appointed to any office mentioned in this act shall, before entering upon the discharge of the duties thereof, take an oath to support the constitution of the United States, the organic act of the Territory, and to promote the interests of education and faithfully dis-

charge the duties of his office according to the best of his abilities. In case such officer has a written appointment, or commission, his oath shall be endorsed thereon and sworn to before any officer authorized to administer oaths. School officers are hereby authorized to administer all oaths appertaining to their respective offices without charge or fee.

SECTION 72. No school director or other school officer shall be directly or indirectly, interested in any contract that may be made by a board of which he is a member, and any contract made in violation of this provision shall be null and void.

SECTION 73. All fines and penalties not otherwise provided for in this act shall be collected by an action in any court of competent jurisdiction, and shall be paid into the county school fund immediately after collection.

SECTION 74. Any parent, guardian, or other person, who shall upbraid, insult, or abuse any teacher in the presence of the school, shall be deemed guilty of a misdemeanor and liable to a fine of not less than ten dollars nor more than one hundred dollars.

SECTION 75. Any person who shall willfully disturb any public school, or any public school meeting shall be deemed guilty of a misdemeanor and liable to a fine of not less than ten nor more than one hundred dollars.

SECTION 76. In case any district clerk shall fail to take the census provided for in this act, at the proper time, and if through such neglect, the district shall fail to receive its apportionment of school moneys, said district clerk shall be individually liable to the district for the full amount so lost, and it may be recovered in a suit brought by any citizen of such district, in the name of and for the benefit of such district.

SECTION 77. All cases of disputes in relation to school matters, not properly belonging to courts of justice may be referred first to the county school superintendent, and appealed to the Territorial superintendent, whose decision shall be final.

# TITLE XIV.

## TEACHERS' INSTITUTES.

SECTION 78. Each county superintendent of the common schools in this Territory [of any county] containing ten or more

280                    GENERAL LAWS.

organized districts shall hold annually a teacher's institute at such time as may be agreed upon between him and the Territorial superintendent, and such institute shall continue in session not less than one nor more than five days. He shall give at least ten days' notice of the time and place of holding such institute by publication in some newspaper published in the county. If there be no paper published in the county, then by posting notices in three public places.

SECTION 79. It shall be the duty of all teachers in the county to attend such institute, and participate in the exercises thereof; and all teachers who may have charge of schools at the time of holding the institute shall adjourn their schools for the time during which the institute shall be held.

SECTION 80. Each county superintendent shall have authority to appoint a deputy for the purpose of examining teachers in remote districts.

## TITLE XV.

### SPECIAL TAXES.

SECTION 81. The board of directors of any district may, when in their judgment it is advisable, submit to the qualified school electors of the district the question whether a tax shall be raised to furnish additional school facilities for said district, or to maintain any school or schools in such district, or for building one or more school houses, or for removing or building additions to one already built, or for the purchase of globes, maps, charts, books of reference and other appliances or apparatus for teaching, or for any or all of these purposes: *Provided*, Such election shall be called by posting notices in three public places in the district for at least twenty days, said meeting to be held on or before the first Monday of July in each year; said notices shall contain the time and place of holding the election, the amount of money proposed to be raised, and the purpose or purposes for which it is intended to be used. The directors shall act as judges to conduct the election, and it shall be in all other respects, as nearly as practicable, in conformity with the general election law. At such elections the ballots shall contain the words "tax, yes" or "tax, no." If the majority of the votes cast are "tax, yes," the officers of the election shall certify the fact to the district clerk, who shall, at once proceed to copy from the last assessment roll of the county

assessor the list of property liable to taxation, situated in or owned by residents of the district, and shall deliver the same to the board of directors, who may allow him a reasonable compensation therefor out of the proceeds of said tax; said compensation not to be more than four dollars per day. The directors shall upon receiving the roll, deduct ten per centum therefrom for anticipated delinquencies, and then dividing the sum voted, together with the estimated cost of assessing and collecting added thereto, by the remainder of the roll, ascertain the rate per cent. required, and the rate so ascertained (using the full per cent. on each one hundred dollars instead of the fraction) shall be, and is hereby, levied and assessed to, on or against the persons or property named or described in said roll, and it shall be a lien on all such property until the tax is paid, and the said tax, if not paid within the time limited by the next section for its payment, shall be recovered by suit in the same manner and with the same costs as delinquent Territorial and county taxes. The directors upon receiving any assessment roll from the district clerk, shall give five days' notice thereof, by posting notices thereof in three public places in the district, and shall sit for at least one day as a board of equalization, at such time and place as shall have been name[d] in said printed notices, and they shall have the same power as county boards of equalization to make any change in said assessment roll: *Provided,* That there shall be but one tax levied in each year, under this section, and that (that) the tax so levied shall not exceed ten mills on the dollar: *Provided further,* That not more than two meetings shall be held in any one year under the provisions of this section.

SECTION 82. As soon as the rate of taxation has been determined, as provided in the last preceding section, the directors shall certify the same to the county auditor, who shall extend the same upon the general assessment roll of the county and certify the same to the county treasurer, who shall proceed to collect the tax in the same manner and at the same time, and with the same power and authority to enforce payment of the same as in the case of county and Territorial taxes. The county treasurer shall place any tax so collected to the credit of the district to which it belongs, and shall receive, as compensation for collecting the same, such sum, not more than two per cent. of the tax collected, as may be allowed by the county commissioners, such compensation to be paid from the amount of said district tax so collected.

SECTION 83. All school moneys apportioned by county superintendents of common schools shall be apportioned to the several districts in proportion to the number of school children between four and twenty-one years of age, as shown by the returns of the district clerk for the preceding year: *Provided,*

That Indian children, who are not living under the guardianship of white persons, or American citizens, shall not be included in the apportionment list, excepting those whose parents have severed their tribal relations or own real estate in the distsict subject to taxation.

SECTION 84. County school money may be used by the county superintendent and directors for various purposes authorized and provided in this act, and for no other purpose.

## TITLE XVI.

### COUNTY TREASURER.

SECTION 85. It shall be the duty of the county treasurer of each county,

First. To receive and hold all school moneys, as a special deposit, and to keep a separate account of their disbursement to the school districts which shall be entitled to receive them, according to the apportionment of the county superintendent of common schools.

Second. To notify the county superintendent of common schools of the amount of county school fund in the county treasury whenever required, and to inform said superintendent of the amount of school money belonging to any other fund subject to apportionment.

Third. To pay the amount of the county school tax levied, and such other moneys paid into the school fund on the warrants of the directors whenever such warrants are countersigned by the district clerk, and properly endorsed by the holders.

Fourth. To make, annually, on the first of September of each year, a financial report for the last preceding school and fiscal year ending with August thirty-first, to the county superintendent of common schools in such form as may be required by law.

## TITLE XVII.

### MISCELLANEOUS.

SECTION 86. Whenever the word he or his occurs in this

GENERAL LAWS. 283

act, referring to either superintendents, directors, or teachers, it shall be understood to mean also she or her.

SECTION 87. Any series of text books adopted by the board of education shall remain in use not less than five years.

SECTION 88. Any teacher who shall maltreat or abuse any pupil by administering any undue or severe punishment which shall have an injurious effect upon the health of said pupil, shall be deemed guilty of a misdemeanor, and upon conviction thereof before any court of competent jurisdiction, shall be fined in any sum not exceeding one hundred dollars.

SECTION 89. All applicants for certificates shall be examined in reading, writing, orthography, arithmetic, geography, English grammar, physiology, history of the United States, constitution of the United States, school law of the Territory and theory and practice of teaching.

SECTION 90. This act shall be known as the Washington school law, and no other title or reference shall be necessary.

SECTION 91. All acts and parts of acts upon any subject matter contained in this act, shall be, and the same are hereby repealed.

SECTION 92. This act shall be in force from and after the 31st day of December, one thousand eight hundred and seventy-seven.

Approved, November 9th, 1877.

---

## AN ACT

AUTHORIZING THE GOVERNOR OF THE TERRITORY TO OFFER A STANDING REWARD FOR THE ARREST OF CERTAIN CLASSES OF CRIMINALS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Governor shall offer a standing reward of two hundred dollars ($200,) for the arrest of each person who shall place any obstruction on any railroad track or who shall misplace any switch rail, or ties on any such road, whereby the life of any person passing over said road may

284                    GENERAL LAWS.

be endangered; and for the arrest of each person engaged in the robbing or attempting to rob any person upon, or having in charge, in whole or in part, any stage coach, wagon, rail-road train, or other conveyance engaged in carrying passengers, or any private conveyance within this Territory, the reward to be paid to the person making such arrest out of any money in the treasury not otherwise appropriated immediately upon the conviction of the person so arrested, but no reward shall be paid except after such conviction.

SECTION 2. The auditor of the Territory shall draw a warrant upon the treasurer for the amount of the reward upon presentation to him of a certificate of the clerk of the court where the conviction was had of such conviction and the finding of the court that the satisfactory proof was made that the person claiming the reward is entitled thereto, under the provision of this act.

SECTION 3. This act shall take effect, and be in force from and after its passage.

Approved, October 18th, 1877.

---

## AN ACT

### RELATING TO PROBATE OF FOREIGN WILLS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That wills probated in any other State or Territory of the United States, or in any foreign country or State, shall be admitted to probate in this Territory on the production of a copy of such will and of the original record of probate thereof, authenticated by the attestation of the clerk of the court in which such probation was made; or if there be no clerk, by the attestation of the judge thereof, and by the seal of office of such officers, if they have a seal.

SECTION 2. All provisions of law relating to the carrying into effect of domestic wills after probate, shall, so far as applicable, apply to foreign wills admitted to probate in this Territory as contemplated in the preceding section.

Approved, October 20th, 1877.

## GENERAL LAWS. 285

## AN ACT

TO AMEND AN ACT ENTITLED AN ACT IN RELATION TO DISCHARG-
ING BALLAST, APPROVED NOVEMBER 11TH, 1873.

SECTION 1. *Be it enacted by the Legislative Assembly or the Territory of Washington,* That every master or mate or other officer or other person belonging to or, in charge of any vessel who shall discharge or cause to be discharged the ballast of such vessel into the navigable portions or channels of any of the inlets, bays, harbors, or rivers within or bordering on this Territory where the water is less than twenty fathoms deep, shall on conviction thereof be fined in any sum not less than seventy-five dollars ($75.00) nor more than five hundred dollars ($500.00): *Provided,* That nothing in this act shall be so construed as to prevent any such person from discharging ballast from such vessel on the beach at or above ordinary high tide in all waters where the tide ebbs and flows, and that no ballast shall be discharged on any of the flats included within the boundary of any town-site or extension thereof.

SECTION 2. All acts and parts of acts heretofore passed in reation to ballast are hereby repealed.

SECTION 3. This act shall take effect and be in force from and after its passage.

Approved, October 27th, 1877.

## AN ACT

TO AMEND AN ACT ENTITLED AN ACT RELATING TO MORTGAGES
ON PERSONAL PROPERTY.

*Be it enacted by the Legislative Assembly of the Territory of Washington,* That subdivision number one section three of an act entitled an act relating to mortgages on personal property approved November, 12th 1875, be amended so as to

283          GENERAL LAWS.

read: it is accompanied by the affidavit of the mortgagor and mortgagee that it is made in good faith without any design to hinder delay or defraud creditors: *Provided*, That if the mortgagor, or mortgagee is a corporation or joint stock company said affidavit may be made by the president secretary or agent of said corporation or joint stock company and if the mortgagor or mortgagee is a firm by one of the members of said firm in lieu of all members of such firm.

Approved, November 9th, 1877.

---

# AN ACT

## TO AMEND AN ACT ENTITLED "AN ACT RELATING TO MORTGAGES ON PERSONAL PROPERTY," APPROVED NOVEMBER TWELFTH ONE THOUSAND EIGHT HUNDRED AND SEVENTY-FIVE.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the act approved November twelfth one thousand eight hundred and seventy-five, entitled "an act relating to mortgages on personal property," be and the same is hereby amended as follows: Section one of said act shall read as follows after the enacting clause: That mortgages may be made upon: locomotive engines and the other rolling stock of a rail road; steam machinery, and machinery used by machinists, foundrymen and mechanics; steamboats, engines and boilers; mining machinery, milling machinery of every kind and nature; printing presses and materials, professional libraries, instruments of a surgeon, physician or dentist; upholstery and furniture used in hotels and boarding houses, growing crops, vessels of more than five tons burden, and upon all other kinds of personal property.

Section three of said act shall read as follows:

SECTION 3. A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrances of the property in good faith and for value unless it is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors.

Section five of said act shall read as follows:

SECTION 5. A mortgage of personal property must be recorded in the office of the county auditor of the county in which the mortgagor resides and also of the county in which the property mortgaged is situated or to which it may be removed: *Provided*, That mortgages required to be recorded in the custom house by section four of said act or by the laws or the United States need not be recorded elsewhere.

Section eleven of said act shall read as follows:

SECTION 11. When personal property mortgaged is thereafter by the mortgagor removed from the county in which it is situated it is as except between the parties to the mortgage exempted from the operation thereof unless either:

First. The mortgagee within thirty days after such removal causes the mortgage to be recorded in the county to which the property has been removed; or

Second. The mortgage be recorded in the custom house; or

Third. The mortgagee within thirty days after such removal takes possession of the property, as prescribed in section twelve of said act.

SECTION 2. This act shall take effect and be in force from and after the day of its approval by the Governor.

Approved, October 20th, 1877.

---

# AN ACT

FIXING THE RATE TO BE PAID FOR PUBLIC PRINTING, AND PROVIDING FOR THE AUDITING OF THE ACCOUNTS OF PUBLIC PRINTER.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the compensation for incidental printing for the Legislative Assembly shall be as follows: For composition eighty (80) cents per thousand ems, printer's measurement; for press work eighty (80) cents per token; for paper actual cost; paper binding actual cost.

SECTION 2. That L. G. Abbott, J. M. Murphy, and the Territorial auditor be, and they are hereby appointed and con-

288                    GENERAL LAWS.

stituted a board to audit the accounts of C. B. Bagley [for] incidental printing.

SECTION 3. That the Territorial auditor shall draw his warrant on the Territorial treasury in favor of C. B. Bagley for incidental printing as audited by said board or a majority thereof, which amount shall be paid out of any money in the treasury not otherwise appropriated.

SECTION 4. That L. G. Abbott, J. M. Murphy and the Territorial auditor, be and they are hereby allowed for their services the sum of five dollars per diem each for the time actually employed upon said board, to be audited and paid in the same manner that other accounts against the Territory are audited and paid: *Provided*, The total amount shall not exceed twenty dollars.

SECTION 5. All acts and parts of acts conflicting with this act be and the same are hereby repealed.

SECTION 6. This act to take effect from and after its passage.

Approved, November 9th, 1877.

—————————

## AN ACT

### TO PROVIDE FOR PRINTING CERTAIN PAMPHLETS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That C. B. Bagley is hereby employed to print five thousand copies of the address delivered by Hon. Elwood Evans at the Centennial Exhibition, for distribution as hereinafter provided.

SECTION 2. That on delivery to the Territorial librarian, by the said C. B. Bagley of five thousand copies of said address, printed on good book paper, in pamphlet form with paper covers, in type and style as the report of superintendent of common school[s] of this session is printed, the Territorial librarian, shall certify the same to the Territorial auditor, and the Territorial auditor upon receipt of such certificate shall draw a warrant in favor of said C. B. Bagley on the Territorial treasurer in the sum of four hundred and forty ($440) dollars and the Territorial treasurer is hereby required to pay such warrant out of any money in the treasury not otherwise appropriated.

SECTION 3. The Territorial librarian shall distribute said pamphlets as follows:

He shall deliver to the Immigration Society of Washington Territory one thousand copies.

He shall deliver to the secretary of this Territory three hundred copies for the use of the executive department of the Territory.

He shall distribute twenty-five hundred copies among all the counties of this Territory in proportion to the representation of each county in the house of representatives by sending to the auditor of each county the number that each county is entitled to, and the auditor in each county shall dispose of the same at not less than 20c @ the proceeds therefrom to be added to the general school fund of the county.

He shall deposit the remaining twelve hundred copies in the Territorial library and there safely keep the same until distributed by future act of legislature.

SECTION 4. The Territorial librarian shall be held liable on his official bond for the safe keeping of said twelve hundred copies and for the discharge of all duties imposed upon him by this act.

SECTION 5. This act to take effect and be in force from and after its approval by the governor.

Approved, November 9th, 1877.

---

## AN ACT

TO PROVIDE AND PAY FOR THE DISTRIBUTION AND PUBLICATION OF CERTAIN LAWS.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1. That immediately after the adjournment of the present session of the Legislative Assembly the Territorial auditor be and he is hereby authorized and directed to cause to be compiled and published three thousand copies of the school law of this Territory, also one thousand copies of the election laws and two thousand copies of the road laws.

37

290                    GENERAL LAWS.

SECTION 2.    The auditor shall advertise in some newspaper published at the seat of government for at least two weeks for sealed proposals to do said work, and shall let the contract to the lowest responsible bidder.  He shall audit the accounts of the person who performs the work and draw his warrant in favor of such person and the Territorial treasurer shall pay the same out of any funds in the treasury not otherwise appropriated.

SECTION 3    The laws aforesaid when published shall be delivered to the secretary of the Territory who shall forward the same to the several county auditors in the Territory, making the distribution according to population.

SECTION 4.    This act shall take effect and be in force from and after its passage.

Approved, November 9th, 1877.

———————————

# AN · ACT

### TO PROVIDE FOR AN EQUITABLE SETTLEMENT BETWEEN THE TERRITORY AND THE SEVERAL COUNTIES THEREIN.

WHEREAS, The books of the Territorial auditor show balances, aggregating over twenty-on[e] thousand dollars due the Territory from the several counties therein, on account of prior tax levies; and

WHEREAS, It has been ascertained to be impossible for the Territorial auditor and the several county officers to make satisfactory settlement through the medium of correspondence and under existent laws; and

WHEREAS, It is necessary and proper that an equitable and just settlement of such balances due the Territory should be had at the earliest practicable period, therefore,

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That within the year next ensuing after the passage of this act, the Territorial auditor is hereby authorized and directed to make out a verified transcript of the accounts of each and every county in the Territory which by the books of the Territorial auditor is shown to be in arrears to

## GENERAL LAWS.                    291

the Territory on account of prior tax levies in the sum of one hundred dollars and more such transcripts of such counties' account shall be as it stands in the books of his office. He shall forward the transcripts of each county to the prosecuting attorney of the district in which such county is and the prosecuting attorney on the receipt of such transcript shall carefully and minutely compare said transcript with the books of the county treasurer and county auditor of such county touching any and all matters and things relating to the collection and paying over of moneys collected as Territorial taxes and of delinquencies occurring in the collection thereof and of all sums due to the Territory from such county legally or equitably.

SECTION 2. It shall be the duty of the board of county commissioners and of the treasurer and auditor of such county to submit their books, records, and accounts, connected with or in anywise appertaining to Territorial taxes to the inspection of the Territorial auditor and to afford him the necessary facilities to enable him to obtain all necessary information; and it shall be the duty of said board of county commissioners, county treasurer, and county auditor to make with said Territorial auditor a correct and just settlement between such county and the Territory.

SECTION 3. Should the board of county commissioners, auditor and treasurer of any county fail, neglect, or refuse to make the settlement with the Territorial auditor as contemplated with this act, it shall be the duty of the Territorial auditor immediately to commence suit against such county for the recovery of any balance which may appear to be due to the Territory from such county by the books of the Territorial auditor: and for any other amount which may be due to the Territory from such county.

SECTION 4. When the Territorial auditor shall have examined the books, records, and and accounts of such county and compared them with the verified transcript of the Territorial auditor he shall without unnecessary delay proceed to adjust and settle with the board of county commissioners and county auditor and treasurer on a just and equitable basis the accounts of such county with the Territory, and in such settlement shall report to the Territorial auditor the credits for such sums as in his judgment are right and just to which such county is entitled and the said auditor shall give credit on the books of his office to such county claiming the same for such sum so reported.

SECTION 5. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

## AN ACT

REGULATING THE TIME AND MANNER OF TRANSFERRING TERRITO-
RIAL FUNDS FROM COUNTY TO TERRITORIAL TREASURY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That it shall be the duty of all county treasurers to remit on or before the tenth day of each and every month, all moneys due the Territory (providing the same exceeds one hundred dollars), to the Territorial treasurer in such manner as he may direct.

SECTION 2. The Territorial treasurer is hereby authorized to contract with any responsible persons or companies at a rate not to exceed one-half of one *per centum* in the aggregate, for the transfer of all moneys as provided in section one of this act, and to pay for the same out of such moneys, receipting to the county for the full amount remitted and charging the said expense to the incidental expenses of the Territory.

SECTION 3. All acts or parts of acts in conflict with this act, are hereby repealed.

SECTION 4. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

## AN ACT

FOR THE PROTECTION OF THE SALMON FISHERIES OF PUGET SOUND
AND TRIBUTARY WATERS.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1. For the purpose of more clearly defining the provisions of this act, all that portion of the tide waters empty-ing into the Straits of Fuca at Cape Flattery and the bays and

estuaries thereof, shall be known and designated in this act as Puget Sound.

Section 2. All salmon caught, and cured by salting for sale within the said waters of Puget Sound or any tributary thereof, shall be put up in packages marked with the name of " Puget Sound Salmon" in plain letters as [at] least two inches long, also, the place at which they are so cured and packed and the name or names of the parties so curing them and offering them for sale. A violation of this section shall subject the offender to a fine of not less than ten nor more than one hundred dollars for each and every offense to be recoverable in any court having jurisdiction of misdemeanors.

Section 3. All salmon caught within the waters hereinbefore made [named] and prepared for sale, and exort [export] by being hermetically sealed in cans made of tin or other metal shall be labeled with labels bearing the words " Puget Sound Salmon," together with the name of the persons engaged in the business of such preparation for export and sale by hermetically sealing in cans as aforesaid, together with the name of their place of business. The cans shall likewise be packed in cases marked in a similar manner to the manner prescribed by the second section of this act for packing salmon in barrels. A failure to comply with the provisions of this act shall be deemed a misdemeanor and subject the offender to a fine of not less than ten dollars nor more than one hundred dollars for each and every offense recoverable in any court of competent jurisdiction.

Section 4. The erection or construction of traps and weirs in any of the tributaries or estuaries of Puget Sound, for the· purpose of catching salmon during any season of the year shall be deemed a misdemeanor and subject the offender to a fine of not less than two [hun]dred nor more than five hundred dollars, in the discretion of the court: *Provided*, Traps or weirs may be put in rivers or streams if such traps or weirs are so constructed that they shall not extend to a greater distance across any stream than three-fourths of the width of such stream.

Section 6. Any person exploding, cartri[d]ges, of giant powder, hercules powder dynamity[e] nitroglycerine or other explosive matter, for the purpose of catching, killing, or destroying fish within the waters named in the foregoing section, or any tributary thereof shall be deemed guilty of misdemeanor and fined not less than one hundred nor more than three hundred dollars.

Section 7. This act shall be in force and take effect from and after its approval by the governor

Approved, November 9th, 1877.

294    GENERAL LAWS. •

# AN ACT

TO ENCOURAGE THE ESTABLISHMENT OF HATCHING-HOUSES ON THE
WATERS OF THE COLUMBIA RIVER, EOR THE PROPAGTION OF
SALMON.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a fish commissiouer for the Columbia river and its tributary waters be appointed by the governor by and with the advice and consent of the council who shall hold his office for two years, and until his successor is appointed and qualified who shall be a resident of one of the counties bordering upon the said river, said commissiouer shall exercise a general supervision over the fisheries of said river within this Territory, consider and report upon the introduction, production and culture of food-fish, especially the salmon, co-operate with the fish commissioner of the State of Oregon, make report to the Legislative Assembly at each biennial session thereof, as hereinafter more particularly prescribed and perform such other duties as may be hereinafter imposed. Before entering upon his duties he shall execute a bond to the Territory of Washington with two or more sureties to be approved by the judge of the second judicial district in the sum of ten thousand dollars, ($10.000) conditioned for the faithful performance of his official duties and the disbursement according to law of all moneys coming into his hands, said commissioner may appoint deputies, not to exceed one for each county bordering upon said Columbia river, for whose acts he shall be responsible upon his official bond.

SECTION 2. It shall not be lawfnl to take or fish for salmon for traffic, barter or sell [sale] in the waters of the Columbia river and its tributaries with either of the appliances, regulated and prescribed by the act entitled an act regulating salmon fisheries in the waters of the Columbia river without first having obtained a license therefor. The rates of said licenses shall be as follows: The owner or owners of each and every boat engaged in taking or catching salmon upon said river and its tributaries with a gill-net shall pay ten dollars ($10.00) for a license for one season. For each and every seine used in fishing for salmon. upon said waters, the owner or owners shall pay for such license for one season ten dollars ($10.00) for every weir or trap used for catching or taking salmon on said river or its tributaries, the owner or owners shall pay for a license for a season fifty

## GENERAL LAWS.                    295

dollars ($50.00) for each and every dip-net used for fishing for salmon in said river and its tributaries the owner or owners shall pay an annual license of two dollars ($2.00) each and every net, tender or fisherman fishing or taking salmon with a gill-net shall be required to pay five dollars ($5.00) for a license for the season. Licenses issued under this act shall be untransferable and shall be good for the whole season upon any of the waters of the said Columbia river.

SECTION 3. The licenses aforesaid shall be prepared by said fish commissioner, attested by his official seal. The commissioner shall register the number thereof to whom issued and for what purpose. Owners of boats receiving license shall cause to be painted in plain conspicuous figures upon both sides of the outside of the stern of their respective boats, three inches below the washboard, the number borne upon the license of said boat. A failure or neglect to paint such register number upon such boat as herein prescribed shall subject the owner or owners thereof to a penalty of ten dollars ($10.00) to be recovered in an action before a justice of the peace. The commissioner shall be entitled to charge the following fees "viz:" Twenty-five cents for each license to a fisherman, fifty cents for a boat, one dollar for a seine or fish trap of any kind and twenty-five cents for a dip-net, which fees shall be reserved out of the moneys by him received for the licenses issued.

SECTION 4. Any person or persons who by the foregoing provisions of this act shall be required to take out a license shall do such act or use such boat, seine, gill-net, weir or trap dip-net or fish with gill-net without having first taken out such license therefor as herein required shall be liable to a penalty of fifty dollars ($50.00) for each and every offense and shall moreover be required to pay the license fee required by law, to be recovered before a justice of the peace or other court of competent jurisdiction.

SECTION 5. Any proprietor managing agent, foreman, or employer in charge of any cannery upon the said Columbia river employing a fisherman to whom no license has been issued or knowingly purchasing salmon from any person using a boat, seine, net or fish-trap for which a license is required without first having taken out said license shall be liable to a penalty of fifty dollars ($50.00) for each and every offense, to be recovered before a justice of the peace.

SECTION 6. All moneys received for license herein referred to excepting the fees for issuing the same shall constitute a fund and be exclusively applied to the assistance of a hatching-house or houses on the said Columbia river or its tribnataries. Any person or persons or any incorporated company who shall

296 GENERAL LAWS.

furnish satisfactory evidence to the said fish commissioner that a hatching house or houses has or have been established by said person or persons or company and have actually hatched salmon with which said Columbia river is or has been stocked and supplied, the said commissioner shall forthwith pay over to such person or persons or company the said funds: *Provided*, If there be two or more such hatching-houses, in operation by different persons or companies, then such funds shall be distributed *pro rata* according to the number of hatched salmon.

SECTION 7. The person or persons, making complaint of any violation of the provisions of this act by the failure to take out a license as herein required or to do and perform other acts as herein prescribed shall upon the conviction of the party accused be entitled to one-half of the penalty recovered. All fines and penalties hereby or herein imposed shall be enforced and collected as other fines and penalties or [are] by law enforced or collected and justices of the peace or other officers receiving such fines or penalties after payment of one-half of such penalty so collected to the complainant shall forthwith pay the remaining half to the fish commissioner, to be applied to the establishment or assistance of hatching-houses as provided in section six of this act.

SECTION 8. The said fish commissioner shall biennially on the fifteenth day of September make a report to the governor to be submitted to the Legislative Assembly which report shall exhibit the amount of money received from licenses, penalties and other sources and how applied, the condition, progress, success, " etc" of the hatching-houses all hints, suggestions or information on the subject of food-fish propagation and such matter as may be valuable in legislation for the protection or preservation of food-fishes and the salmon fisheries of the Columbia river.

SECTION 9. No section, proviso or part of this act shall be considered as valid or operative until the Legislature of the State of Oregon shall enact a similar section, proviso or act in whole, or in part and from and after the passing of such law by the State of Oregon, such parts hereof as shall be so enacted, shall immediately go into full force and effect, and the governor of this Territory is hereby requested to transmit an attested copy of this act to the governor of the State of Oregon, requesting him to submit it to the Legislature of that State.

Approved, November 6th 1877.

GENERAL LAWS.                    297

# AN ACT

TO AMEND AN ACT CREATING A BOARD OF PILOT COMMISSIONERS
AND PILOTS ON THE COLUMBIA RIVER AND BAR, APPROVED
NOVEMBER 29TH, 1871.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section one of the act to which this is amendatory shall be amended to read as follows:

"SECTION One. It shall be the duty of the governor to appoint three suitable persons who shall constitute a board of commissioners for the purpose of examining candidates for the pilotage of the Columbia river and bar and the said board of commissioners shall on application appoint one or more suitable persons if they deem it necessary to be pilots on the Columbia river and bar, giving each of such pilots a branch or warrant for the execution of his office, with an authority to appoint deputies in the cases to be specified in such branch or warrant: *Provided,* Each pilot shall report his said deputies for the approbation of said board of commissioners: *Provided also,* That whenever there shall be a vacancy in said board of commissioners such vacancy shall be filled by appointment made by the governor, said commissioners before entering upon the duties of their office shall qualify by oath or affirmation for the faithful discharge of their duties and shall be entitled to hold said office of commissioner for the term of two years from the date of their appointment, and after said board of commissioners shall have organized they shall forthwith notify the governor thereof, and they shall make a report of their proceedings to the governor at least once in every year thereafter.

SECTION 2. Section thirteen (13), of the act to which this act is amendatory shall be amended by adding to the seventh line after the word fault "and for every day the said board of commissioners are in actual session except when engaged in adjusting or settling disputes between pilots and shipmates or owners they shall be entitled to receive the sum of five dollars per day and mileage at the rate of three dollars for every twenty miles traveled in coming to and going from the place where the sessions of said board are held: *Provided, however,* That they shall not receive pay for more than three days time at any one session and all money received for the execution of any branch, warrant or warrants shall constitute a fund to defray

298 GENERAL LAWS.

the incidental expenses of the said board of pilot commmission-ers and the secretary of said board shall at the end of each regular session make a written statement of the number of days and the amount of mileage for which each commissioner is entitled to receive pay which statement shall be signed by the secretary and the chairman of the said board of commissioners and the Territorial auditor if he shall find said statement correct as herein provided shall draw a warrant on the Territorial treasurer for the amount which each commissioner is entitled to receive pay and the Territorial treasurer is hereby authorized to pay the same out of any money not otherwise appropriated.

SECTION 3. This act shall take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

---

# AN ACT

## TO PROVIDE FOR THE TRAINING OF INDIGENT MUTE AND BLIND CHILDREN.

WHEREAS, This Territory is wholly unprovided with proper schools for the education of the blind and of deaf mutes and

WHEREAS, There are residing in the Territory a number of these unfortunates who need instruction in such institutions to enable them to earn their living and

WHEREAS, The State of Oregon has established at Salem an excellent school for deaf mutes, and a similar school for the blind and has provided by law for the instruction therein upon proper terms of deaf, mute and blind persons residing outside the State, therefore,

*Be it enacted by the Legislative Assembly of the Territory of Washington:*

SECTION 1. That the governor of this Territory be and he is hereby authorized to contract with the board of education of the State of Oregon for the tuition, board and lodging of deaf mutes and blind persons residing in this Territory over the age of eight years, in the schools heretofore established

by said State for the education of such persons: *Provided*, That the price of such instruction and maintenance shall not exceed two hundred and twenty-five dollars for each pupil, per-annum.

SECTION 2. That there be and hereby is appropriated out of any moneys in the treasury not otherwise appropriated the(m) sum of sixteen hundred dollars for the purpose of carrying out the provisions of this act.

SECTION 3. This act shall only apply to indigent deaf mutes, and blind persons, and to those whose parents have not sufficient pecuniary ability to pay the expenses herein provided for.

SECTION 4. This act shall take effect upon its approval by the governor.

Approved, November 9th, 1877.

---

# AN ACT

## DECLARING ROADS, STREETS AND ALLEYS IN TOWNS AND CITIES PUBLIC HIGHWAYS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That whenever any city or town has been surveyed and platted and a plat thereof showing the roads, streets and alleys has been filed in the office of the auditor of the county in which such city or town is located, such plat shall be deemed the official plat of such city, or town, and all roads, streets and alleys in such city or town as shown by such plat, be and the same are declared public highways: *Providing* That nothing herein shall apply to any part of a city or town that has been vacated according to law.

SECTION 2. This act to take effect and be in force from and after its approval by the Governor.

Approved, November 9th, 1877.

300                        GENERAL LAWS. ·

## AN ACT

(AN ACT) TO PROTECT FORESTS AND TIMBER LANDS FROM FIRES
AND CARELESS KINDLING OF FIRES.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1.  That if any person shall kindle a fire in any field, pasture or enclosure, forest, prairie or timber land not his own without the consent of the owner and the same shall spread and do damage to any buildings, fences, crops, cord-wood, bark or other personal property or to any wood or timber land, he shall on conviction, be punished by a fine of not less than ten nor more than five hundred dollars, ($500.00) and costs, according to the aggravation of the offense and shall stand committed till the fine and costs are paid.

SECTION 2.  If any person shall maliciously, with intent to injure any other person, by himself or any other person kindle a fire on his own land, or the land of another person and by means of such fire the buildings fences, crops or other personal property or wooded timber lands, of any other person shall be destroyed or injured, he shall on conviction be punished by a fine not less than twenty dollars ($20.00) nor more than one thousand dollars, ($1,000.00) or by imprisonment in any of the jails of this Territory, not less than three months, nor more than twelve months according to the aggravation of the offense.

SECTION 3.  If any person shall for any lawful purpose kindle a fire upon his own land he shall do it at such time and in such manner and shall take such care of it to prevent it from spreading and doing damage to other persons property as a prudent and careful man would do, and if he fail so to do he shall be liable in an action on the case to any person suffering damage thereby to the full amount of such damage.

SECTION 4.  Any person who shall enter upon the lands of another person for the purposes of hunting or fishing and shall by the use of fire arms, or other means kindle any fire thereon shall be liable to the penalties of the first or second section of this act as the case may be.

SECTION 5.  Persons engaged in driving lumber upon any waters or streams of this Territory, may kindle fires when necessary for the purposes in which they are engaged, but shall be.

## GENERAL LAWS.    301

bound to use the utmost caution to prevent the same from spreading and doing damage; and if they fail so to do, they shall be subject to all liabilities and penalties of this act, in the same manner as if the privilege granted by this action had not been allowed.

SECTION 6. The common law right to an action for damages done by fires, is not taken away or diminished by this act, but it may be pursued, notwithstanding the fines or penalties set forth in the first and second sections of this act; but any person availing himself of the provisions of the third section, be barred of his action at common law for the damages so sued for, and no action shall be brought at common law for kindling fires in the manner described in the fifth section; but if any such fires shall spread and do damage, the person who kindled the same and any person present and concerned in driving such lumber, by whose act or neglect such fire is suffered to spread and do damage shall be liable in an action on the case for the amount of damages thereby sustained.

SECTION 7. This act shall take effect and be in force from and after its passage and approval by the governor.

Approved, Novebemr 6th, 1877.

---

## AN ACT

### TO PROVIDE FOR THE APPOINTMENT OF IMMIGRATION AGENTS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the commissioners of immigration for the Territory of Washington may appoint immigration agents in the several counties of this Territory, and in any State or Territory, who shall act as such agents during the pleasure of such commissioners: *Provided,* That such agents shall receive no compensation directly or indirectly from the Territory.

SECTION 2. This act shall take effect from and after its approval by the governor.

Approved, November 9th, 1877.

302                    GENERAL LAWS.


## AN ACT

### PRESCRIBING PRISON REGULATIONS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, The judges of the district courts of the several judicial districts of this Territory, shall from time to time as they may deem necessary, prescribe in writing rules for the regulation and government of the jails in the several counties within their respective districts upon the following subjects:

First. The cleanliness of the prisoners.

Second. The classification of prisoners in regard to sex.

Third. Beds and clothing for persons sentenced for felonies.

Fourth. Warming lighting and ventillation of the prison.

Fifth. The employment of medical and surgical aid when necessary.

Sixth. Employment, temperance and instruction of the prisoners.

Seventh. The supplying of each prisoner with a bible.

Eighth. The intercourse between prisoners and their counsel and other persons.

Ninth. The punishment of prisoners for violation of the rules of the prison.

Tenth. Such other regulations as said judges may deem necessary to promote the welfare of said prisoners: *Provided*, That such rules shall not be contrary to or in any way impair laws now existing in this Territory.

SECTION 2. The said judges shall as soon as necessary cause a copy of said rules to be delivered to the county commissioners in the several counties in their respective judicial districts; and it shall be the duty of said commissioners forthwith to cause the same to be printed and to furnish the sheriff of their county with a copy of said rules for each and every room or cell of said jail and also to forward a copy of said rules to the secretary of the Territory who shall file away and preserve the same.

## GENERAL LAWS. 303

Section 3. The sheriff shall on the receipt of said rules cause a copy thereof to be posted up and continued in some conspicuous place in each and every room or cell of said jail.

Section 4. The judges aforesaid may from time to time as they may deem necessary revise alter or amend said rules and such revised rules shall be printed and disposed of by said commissioners and sheriff in the same manner as is directed by sections two and three of this act.

Section 5. The sheriff or in case of his death removal or disability, the person appointed by law to supply his place shall have charge of the county jail of his proper county and of all persons by law confined therein and such sheriff or other officer is hereby required to conform in all respects to the rules and directions of said district judge above specified or which may from time to time by such judge be made and communicated to him by said commissioners.

Section 6. The sheriff or other officer performing the duties of sheriff of each county in this Territory shall as soon as necessary after the passage of this act procure at the expense of the proper county a suitable book to be called the jail register in which the said sheriff by himself or his jailer shall enter

First. The name of each prisoner with the date and cause of his or her commitment together with a list and value of property taken from said prisoner or delivered to the sheriff or other officer at the time of the commmitment of said prisoner.

Second. The date or manner of his or her discharge.

Third. What sickness if any has prevailed in the jail during the year and if known what was the cause of such disease.

Fourth. Whether any or what labor has been performed by the prisoners and the value thereof.

Fifth. The practice observed during the year of whitewashing and cleaning the occupied cells or apartments and the times and seasons of so doing.

Sixth. The habits of the prisoners as to personal cleanliness diet and order.

Seventh. The means furnished prisoners of literary moral and religious instruction.

Eighth. All other matters required by said rules or in the discretion of such sheriff deemed proper; that the said sheriff or other officer performing the duties of sheriff shall carefully keep and preserve the said jail register in the office of the jailer of his proper county and at the expiration of said office shall deliver the same to his successor in office.

Section 7. The sheriff or other officer performing the duties of the sheriff shall on or before the first day of October

304 GENERAL LAWS.

in each year make out in writing from said jail register a jail report one copy of which said report he shall forthwith file in the office of the clerk of the district court of the proper district, one copy with the county auditor of his county for the use of the commissioners thereof, and one copy of said report he shall transmit to the secretary of the Territory and it shall be the duty of said secretary to communicate the report of the several sheriffs of this Territory to the Legislative Assembly on or before the tenth day of its session.

SECTION 8. It shall be the duty of the district court to give this act in charge of the grand jury once each term of said court and lay before them any and all rules plans or regulations established by the district judge relating to county jails and prison discipline which shall then be in force.

SECTION 9. That the grand jury of each sub-district shall once at each term of the district court while in attendance visit the jail of the county where the court is held examine its state and condition; examine and inquire into the discipline and treatment of prisoners, their habits diet and accommodation and it shall be their duty to report to said court in writing whether the rules of the said district judge have been faithfully kept and observed or whether any of the provisions of this act have been violated. It shall also be the duty of the prosecuting attorney of each district once in each year to visit the jails not accessible to the grand jury and he shall make a report to the district court to the same effect as required of the grand jury. It shall also be the duty of the county commissioners of each county of this Territory to visit the jail of their county once during each of their regular meetings of each year.

SECTION 10. The sheriff shall visit the jail in person and examine into the condition of each prisoner at least once each month and once during each term of the district court and it is hereby made his duty to cause all the cells and rooms used for the confinement of prisoners, to be thoroughly whitewashed at least three times in each year.

SECTION 11. Whenever any person committed to prison for any cause whatever shall be unruly or shall disobey any of the regulations established for the management of prisons the sheriff or keeper may order such (such) prisoner in solitary confinement and fed on bread and water only unless other food shall be necessary for the preservation of his health, and no intercourse shall be allowed with such prisoner during such confinement except for the conveyance of food and other necessary purposes, but such period of confinement shall not exceed twenty days for each offense.

SECTION 12. The keeper of any prison may upon the com-

GENERAL LAWS.    . 305

mitment after judgment of a person convicted of a felony punishable by imprisonment cause the hair on the head of said prisoner to be closely crop[p]ed and so kept during his term of imprisonment.

SECTION 13. The jailer or keeper of the jail shall unless the sheriff elect to act as jailer in person be a deputy appointed by the sheriff and such jailer shall take the necessary oath before entering upon the duties of his office and shall be paid by the sheriff for his services as jailer and not by the county: *Provided*, The sheriff shall in all cases be liable for the negligence and misconduct of the jailer as of other deputies.

SECTION 14. This act shall take effect and be in force from and after its passage and approval by the governor.

Approved, November 9th, 1877.

---

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT DEFINING NUISANCE AND SECURING REMEDIES" APPROVED NOVEMBER 12, 1875.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section thirteen of the act of the Legislative Assembly approved November twelfth one thousand eight hundred and seventy-five entitled "an act defining nuisance and securing remedies" be so amended as to read as follows:

SECTION Thirteen. Houses of ill fame, kept for the purpose, in which are embraced all squaw dance houses, or squaw brothels, otherwise called mad houses all houses, rooms, saloons, booths scows boats, or other structures used as a place of resort where women are employed to draw custom, dance, or for purposes of prostitution; all public houses, or places of resort where gambling is carried on, or permitted, all houses, or places within any city, town, or village, or upon any public road, or highway where drunkenness, gambling, fighting or breaches of the peace are carried on, or permitted; all opium dens or houses or places of resort where opium smoking is permitted, are nuisances, and may be abated and the owners, keepers, or persons in charge thereof, and persons carrying on such unlawful business shall be punished as provided in this chapter.

SECTION 2. Prosecutions for offenses under the section
39

306                    GENERAL LAWS.

hereby amended, committed prior to the approval of this act
shall not be in any manner affected by this act.

SECTION 3.    This act shall take effect and be in force from
and after its approval by the Governor.

Approved, November 6th, 1877.

-----

## AN ACT

TO AMEND AN ACT ENTITLED AN ACT TO ENCOURAGE THE CUL-
TIVATION OF OYSTERS, APPROVED NOVEMBER 5TH 1873.

SECTION 1.    *Be it enacted by the Legislative Assembly of
the Territory of Washington*, That any person being a citizen
of this Territory who has planted, or who may hereafter plant
oysters, in any bay or arm of the sea where there are no natural
beds of oysters within or bordering upon this Territory may
acquire by conforming to the requirements of this act an
exclusive right for such a purpose to that portion of such bay
or arm of the sea as he shall so occupy not exceeding for any
one person an area of more than twenty (20) acres: *Provided*,
That no person or persons shall locate or cause to be located
oyster-beds in any way interfering with the free use and privi-
lege of any person or persons cutting timber or logging or con-
veying said logs to market.

SECTION 2.    The person desiring the benefits of the pre-
ceding section shall cause the place or portion he desires to claim
to be marked so far as is practicable with stakes or other arti-
ficial marks at the corners, with bearings to adjacent natural
objects, and shall make before some officer qualified to admin-
ister oaths, an affidavit that he has taken the premises so
described for the purpose of planting oysters and that he has
planted or is about to plant oysters thereon; that said premises
are not upon and do not include any natural bed of oysters and
that the same are not occupied and claimed in accordance with
law except by himself and if said premises shall have hereto-
fore been taken and oysters planted thereon then within three
months after the passage of this act and if they shall hereafter
be taken then within one month after taking the same the per-
son having so taken or taking the said premises shall cause his
claim with a description thereof and affidavit as above required
to be recorded by the county auditor of the county in which
they may be situated.

SECTION 3.    The premises so taken shall for the purposes aforesaid belong to the person taking them his heirs and assigns so long as he or they shall so occupy them and no longer.

SECTION 4.    The same person may claim and occupy more than one place: *Provided*, The premises so claimed by him do not in all occupy an area greater than twenty (20) acres and: *Provided further*, That in those places used and occupied for the purpose of bedding marketable oysters no one person shall occupy an area greater than one hundred by two hundred feet or twenty thousand feet of superficial area.

SECTION 5.    Any person may transfer his right to any other person qualified to hold by signing the transfer upon record in the presence of the auditor or by a written transfer witnessed and acknowledged in the same manner as is, or may be required for deeds.

SECTION 6.    It shall be the duty of the county auditor of any county where claims and transfers made under the provisions of this act are presented to him for record or entry to receive and record the same in a separate book provided for this purpose upon being paid the same fees as are allowed in similar cases.

SECTION 7.    From and after the approval of this act it shall not be lawful for any person who is not at the time an actual inhabitant and resident of this Territory, and who has not been for six months next preceding, an actual inhabitant or resident as aforesaid to take or gather oysters either on his own account or on account of others for sale or tranportatation in any of the rivers, bays or waters of this Territory, under a penalty not exceeding one thousand dollars ($1,000.00) nor less than one hundred dollars ($100.00) for each offense to be recovered from the person so offending by a civil action, in the name of the Territory, by any person competent to sell in the district court tor the county in which the offense was committed.

SECTION 8.    That it shall not be lawful for any person to rake for or gather oysters in any of the rivers, bays or waters of this Territory with a dredge or instrument so called or be employed upon any canoe, boat or vessel engaged in the taking of oysters by the process of drelging in any of the waters aforesaid which may be less than twenty feet in depth at the lowest ebb of the tide, under a penalty of fifty dollars ($50.00) for each and every offense to be recovered from the person offending as prescribed in section one (1) of this act, in every [any] court of competent jurisdiction: *Provided*, That steam power shall be absolutely prohibited in its application to dredges, rakes and other appliances used in taking oysters from the natural beds.

SECTION 9.    That it shall not be lawful for any person to

308          GENERAL LAWS.

rake, scrape or gather oysters in any of the rivers, bays or waters of this Territory, for any purpose whatever from the fifteenth day of June until the first day of September of each year under a penalty of fifty dollars ($50) for each offense to be recovered from the person so offending as prescribed in section one (1) of this act, in any court of competent jurisdiction.

SECTION 10.    That it shall not be lawful for any person to destroy oysters by assorting or culling them on land or shore and leaving the small oysters there to die, but in all cases the small oysters shall be returned to their natural beds, or to private beds for cultivation; and if any person shall offend against provisions of this section he shall be liable to the penalties mentioned in the first section of this act, to be recovered as therein stated.

SECTION 11.    That section three (3) of this act shall not apply to persons taking oysters from private beds over which they have control and for purposes of cultivation.

SECTION 12.    That in all cases of recovery of penalties under the provisions of this act one moity thereof shall go to the person instituting the proceedings and one moity to the Territory.

SECTION 13.    All acts and parts of acts of a general nature in conflict with the provisions of this act be and the same are hereby repealed.

SECTION 14.    This act shall take effect and be in force from and after its approval.

Approved, November 6th, 1877.

---

## AN ACT

### TO PROVIDE FOR THE APPOINTMENT OF AN OFFICIAL SHORT-HAND REPORTER FOR THE DISTRICT COURTS.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the governor is hereby authorized and empowered to nominate, and by and with the advice and consent of the council to appoint a short-hand reporter for each of the several district courts in this Territory, who shall hold his office for the term of two years unless sooner removed by the governor.

## GENERAL LAWS

SECTION 2.  The person so appointed shall be considered, after his appointment and qualification as an officer of the court and shall be known as the " Official Short-hand Reporter."

SECTION 3.  Before entering upon the disharge of his duties, he shall take an oath that he will faithfully and truly report the testimony of the witnesses as given in court upon their examination.

SECTION 4.  Said reporter shall take in short-hand the evidence and rulings of the court and exceptions thereto in all cases of felony if the defendant require it and shall certify the same to the court or judge; and when said testimony is required by the defendant or the judge or court to complete a bill of exceptions, or for any other purpose, said reporter shall reduce the same to long-hand writing and certify the same, and he shall be allowed for such long-hand copy a compensation to be fixed by the court or judge, and taxed with the costs in the case: *Provided, however,* That if said short-hand reporter is not present and in attendance on said court, or unable from any other cause to report said testimony, the court shall appoint some suitable person to take the testimony.

SECTION 5.  He shall take and report the evidence in cases of misdemeanor when the judge of the court shall direct, but not otherwise, and shall certify and reduce to long-hand writing said testimony when required as provided in section 4.

SECTION 6.  In all chancery and divorce cases the judge in his discretion may order the evidence to be taken and reported in short-hand, and in all other civil cases he shall order the evidence to be taken in short-hand upon the demand of either party to the suit if the reporter be present, and if not present and either party require it the court or judge shall appoint some suitable person to take the evidence.

SECTION 7.  For each day's attendance in taking testimony in all criminal cases, he shall receive the sum of ten dollars, to be taxed as costs in the case.

SECTION 8.  In all civil cases he shall receive for each day's attendance in taking testimony the sum of ten dollars, to be paid in the first instance by the party or parties requesting the services of the reporter, or in like instance by both parties equally when the court orders the evidence to be taken and reported; and the reporter shall be paid when said evidence is taken and the same shall be taxed in all cases against either or both parties, or in such proportions against both as the court shall deem equitable, as costs in the case.

SECTION 9.  The party requiring, or for whose benefit the short-hand report shall be transcribed into long-hand shall pay

310                           GENERAL LAWS.

therefor, for each folio so transcribed the same compensation that clerks of the district court receive for copying per folio.

SECTION 10.   In all cases taken to the supreme court of the Territory by appeal, or writ of error when the evidence has been taken in the court below in short-hand the same shall be transcribed into long-hand writing certified by the reporter and filed with the clerk of the court, and when so certified as being a correct transcript of the testimony and proceedings in the case shall be *prima facie* a correct statement of such testimony and the same shall be transmitted as the evidence in the case, on the appeal or in a bill of exceptions on a writ of error to the supreme court.

SECTION 11.   The official reporter shall before entering upon the discharge of his duties, enter into a bond to the Territory of Washington with sufficient sureties in such sum as the court making the appointment shall fix, conditioned for the faithful discharge of his duties.   And if a transcript of the evidence in any case made and certified by the reporter, or the person appointed to report the same be incorrect in any material particular any person injured by such inaccuracy, may maintain an action on such bond, and may recover in such action damages to the extent of the injury not exceeding the amount of the penalty of such bond.

SECTION 12.   This act shall be in force from and after its passage.

Approved, November 6th, 1877.

---

## AN ACT

TO PROVIDE FOR TAKING THE CENSUS OF THE TERRITORY OF WASHINGTON.

SECTION 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall be the duty of the assessors of the several counties of this Territory at the same time of making their annual assessments to take a full complete, and correct census of the inhabitants of their respective counties comprising a full and complete list of all white male inhabitants, their ages, occupation nationality, whether

GENERAL LAWS.                311

married or single, citizens or aliens, also a list of all female inhabitants their ages, whether married or single, and also a list of all taxable half-breed Indians negroes, mulattoes, Kanakas and Chinamen and also all persons deaf, dumb and blind their ages and nationality.

SECTION 2.  Said assessors shall return said census list to the county auditors of their respective counties at the same time they are required to return the assessment rolls and the county auditors aforesaid shall file said census rolls in their respective offices and shall forward within sixty days thereafter to the Territorial auditor the substance of said census which shall be embodied by said Territorial auditor in his report to the Legislative Assembly.

SECTION 3.  The assessors aforesaid shall receive as compensation for their services in taking the census the sum of two dollars and fifty cents for every one hundred names thereof.

SECTION 4.  Any assessor failing or neglecting to faithfully perform the duties imposed by the provisions of this act shall be liable to a penalty of not less than twenty-five dollars and not more than one hundred dollars to be recovered by civil action in the name and for the use of the county wherein such penalty is liable before any court of competent jurisdiction.

SECTION 5.  All acts and parts of acts in conflict with the provisions of this act are hereby repealed.

SECTION 6.  This act to take effect and be in force from and after its passage and approval.

Approved, November 8th, 1877.

---

AN ACT

TO AMEND AN ACT ENTITLED AN ACT " TO FIX THE TIMES OF HOLDING THE SUPREME AND DISTRICT COURT," APPROVED, NOVEMBER 5TH, 1875.

SECTION 1.  *Be it enacted by the Legislative Assembly of Washington Territory*, That an act entitled an act "to fix the times of holding the supreme and district court approved November fifth one thousand eight hundred and seventy-five be

312                GENERAL LAWS.

so amended as that the district court holding terms at Vancouver be held on the third Monday of October and the third Monday of March in each year and to continue for three weeks unless sooner adjourned. And that the district court holding terms at Walla Walla shall hereafter be held on the first Monday of May and the third Monday of November in each year and continue for four weeks unless sooner adjourned.

SECTION 2. All acts and parts of acts heretofore enacted upon any matter contained in this act be and the same is hereby repealed.

SECTION 3. This act shall take effect and be in force from and after the first day of January, A. D., one thousand eight hundred and seventy-eight.

Approved, November 9th, 1877.

---

## AN ACT

### RELATING TO DEEDS.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1. All conveyances of real estate or of any interest therein, and all contracts creating or evidencing any incumbrance upon real estate shall be by deed.

SECTION 2. A deed shall be in writing, signed and sealed by the party bound thereby, witnessed by two witnesses and acknowledged by the party making it before some person authorized by the laws of this Territory to take the acknowledgement of deeds.

SECTION 3. A married woman shall not be bound by any deed affecting her own real estate, or releasing dower, unless she shall be joined in the conveyance by her husband and shall acknowledge that she did voluntarily, of her own free will execute the deed.

SECTION 4. All deeds and mortgages shall be recorded in the office of the county auditor of the county where the land is situated and shall be valid as against *bona fide* purchasers, from

## GENERAL LAWS. 313

the date of their filing or recording in said office; and when so filed or recorded shall be notice to all the world.

SECTION 5. Acknowledgments of deeds and mortgages may be taken within the Territory, before a judge of the supreme court, a judge of the probate court, a justice of the peace, a county auditor, a clerk of the district or supreme court or a notary public duly qualified according to law.

SECTION 6. Deeds or conveyances of lands or of any estate or interest therein situated in this Territory, may be executed or acknowledged in any other State or Territory of the United States in the form prescribed for executing and acknowledging deeds within this Territory, and the execution thereof may be acknowledged before any person authorized to take acknowledgments of deeds by the laws of the State or Territory wherein the acknowledgment is taken or before any commissioner appointed by the governor of this Territory for such purpose.

SECTION 7. In the cases provided for in the preceding section, unless the acknowledgment be taken before a commissioner appointed by the governor of this Territory for that purpose, or by the clerk of the court of record of said State or Territory or by a notary public or other officer having a seal of office, then such deed shall have attached thereto a certificate of the clerk of the court of record, under the seal of said court of said county or district, or a certificate of any other proper certifying officer of said district or county, within which said acknowledgment was taken, that the person whose name is subscribed to the certificate of acknowledgment was at the date thereof such officer as he therein represents himself to be, that he is authorized by law to take acknowledgment of deeds and that he verily believes the signature of the person subscribed thereto to be genuine.

SECTION 8. All deeds, conveyances or incumbrances of real estate heretofore acknowledged according to the provisions of this act are hereby declared legal.

SECTION 9. A scroll at the end of a signature of a party to a deed shall within the meaning of this act be considered as equivalent to a seal.

SECTION 10. All acts and parts of acts in conflict with the provisions of this act be and the same are hereby repealed.

SECTION 11. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.
40

314                    GENERAL LAWS.

## AN ACT

IN  RELATION  TO STREETS  AND  ALLEYS  IN  UNINCORPORATED
TOWNS.

SECTION 1.  *Be it enacted by the Legislative Assembly of
the Territory of Washington*, That all streets and alleys in
any unincorporated towns in this Territory be and the same are
declared public highways, anything in the acts in relation to
roads and highways to the contrary notwithstanding.

SECTION 2. This act to take effect and be in force from and
after its approval by the governor.

Approved, November 9th, 1877.

## AN ACT

TO AMEND AN ACT ENTITLED  "AN ACT TO AUTHORIZE THE CON-
STRUCTION OF DITCHES, DRAINS OR WATER COURSES, AP-
PROVED, NOVEMBER 12TH, 1875.

*Be it enacted by the Legislative Assembly of the Terri-
tory of Washington.*

SECTION 1.. That section second of said act be amended by
adding to said section the following: "And it shall be neces-
sary for the board of county commissioners in all other cases to
have filed and recorded in the county auditor's office, in a book
kept for that purpose, in the county where such ditch, drain,
or water course is constructed, a plat of the survey of said ditch,
drain, or water course, together with the notice and affidavit of
the person or persons making the application to construct said
ditch, drain or water course.

SECTION 2. Section six of said act shall be amended by
adding thereto the following: " And such viewers shall deter-

mine from the nature of such survey and view, the time in which such ditch or ditches, drains or water courses shall be completed: *Provided*, Such time shall not exceed two years nor be less than one year from the date of notice.

SECTION 3. Section seven of said act shall be amended to read as follows: " Section seven" All parties after receiving notice of the amount of ditch assessed and set to them, shall proceed to clear the way and dig said ditch and have their said proportion of the same completed within the time determined by the viewers, when such view and survey was made, not exceeding two years: *Provided*, That if any person having a portion of said ditch assessed to him shall fail to clear the way and dig such portions of ditch by the time aforesaid, the applicant or applicants may proceed to clear the way and dig the ditch or cause the same to be done according to the plans and specifications of said viewers and the sum assessed to the owners, with legal interest thereon, may be recovered in an action in any court having jurisdiction, and shall be a just claim against and a lien upon the lands through which said ditch or ditches are located, which lien shall be prior to all other liens and incumbrances subsequent to the assessment. And parties owning lands not adjacent to nor affected by said ditch, drain or water course and wishing to drain their lands by cutting a ditch or ditches to intersect the same shall have the privilege of such intersection by first obtaining the consent in writing of a majority of the parties benefit[t]ed by said ditch.

SECTION 4. No ditch drain, or water course, shall connect with, or lead into the Columbia river in accordance with the provisions of the act of which this is amendatory, unless by the written consent or agreement, of the party or parties, whose lands lie along the immediate bank of said river, and through which any ditch, drain or water course may be desired to pass.

Approved, November 6th, 1877.

## AN ACT

TO AMEND AN ACT ENTITLED " AN ACT IN RELATION TO ROADS, FERRIES, BRIDGES, AND TRAVEL ON PUBLIC HIGHWAYS," APPROVED DECEMBER 2D, 1869 AND AMENDED AND APPROVED NOVEMBER 29TH 1871.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section twenty-four of an

316                    GENERAL LAWS.

act approved December second one thousand eight hundred and
sixty-nine, entitled "An Act in Relation to Roads, Ferries,
Bridges and travel on Public Highways" be amended to read
as follows:

"SECTION Twenty-four.    The supervisor must notify every
person within his road district, subject to road labor as afore-
said, to perform the work assessed on the public roads within
his district, and if any person subject to road labor as aforesaid
shall after three days notice either personally or by writing left
at his usual place of abode or sent by mail to his post-office
address by the supervisor, or by any other person by his direc-
tion, neglect, or refuse to attend by himself or suitable substi-
tute at the time and place designated by the supervisor, or,
having attended, shall refuse to obey the directions, of the
supervisor, or shall pass his time in idleness or inattention to
the labor or duties assigned; every such delinquent shall thereby
become liable to the supervisor for the amount of his or her
road-tax in money, and such road supervisor shall proceed at
once to collect the same by levy and sale of the property real
and personal of such delinquent or sufficient thereof for that
purpose and to pay the penalty for such delinquency and the
costs and expense of the levy and sale.    It shall be the duty of
every person, firm, corporation, or company, or their agent
who has or may have in his or their employ persons working
for wages who are liable to perform road labor under the law
whose names are not placed on the list of the road supervisors
to furnish to such supervisor on demand, the names of such
persons employed by whatever name, number or appellation
they are known by such person, firm, corporation or company
or by his or their agent and it shall also be the duty of such per-
son firm, corporation, or company, to retain or caused to be
retained, from the wages of such person or persons a sufficient
amount to pay the tax due from them respectively, and if a
sufficient amount is not due to the person or persons so employed,
then such person, firm, corporation or company, shall pay to
the supervisor on demand whatever sum may be due to such
person or persons so employed and if a sufficient amount shall
thereafter become due to such person or persons it shall be
retained and paid to the road supervisor on demand:    *Provided.*
Such person or persons so employed neglect or refuse to per-
form their road labor as required by law and the provisions of
this act.

SECTION 2.    That if the said person, firm corporation or
company or agent thereof shall fail neglect or refuse to furnish
the list as herein provided, or shall fail neglect or refuse to pay
the road tax due from such person or persons in his or their
employ or who were in his or their employ at the time of the de-

mand made by the road supervisor the said person firm, corporation or company shall then and there become liable for the payment thereof and shall then and there and thereby become indebted to the county in the sum or sums which may be due from the person or persons in his or their employ which sum or sums, may be collected by suit in any court having jurisdiction of the sum involved within the judicial district or sub-district wherein said county may be situated, which suit shall be in the name of the county, and such suit may be commenced at any time after such person, firm, corporation or company shall have become indebted to the county, as provided in this act, if the board of county commissioners shall so order, and if the board of county commissioners neglect or refuse to order such suit to be instituted when the amount of such indebtedness shall be collected by the sheriff of the county at the times and in the manner as other delinquent Territorial and county taxes, are collected and the said sheriff is hereby authorized to levy upon and attach and sell, at public auction as upon execution sufficient of the property real, and personal of such person, firm, corporation or company to satisfy said indebtedness together with costs of levy and sale as aforesaid; and the amount of the indebtedness so collected by the sheriff, shall be paid into the county treasury there to remain subject to the order of the supervisor of the road district in which such road taxes were assessed, the order of such supervisor in all cases arising under the provisions of this act must first be approved by the board of county commissioners.

SECTION 3. The foregoing provisions of this act shall be understood and construed to include all al(l)iens employed between the age of twenty-one and fifty years; except those who are too infirm to perform labor, or who are a public charge.

SECTION 4. All al(l)iens between the age of twenty-one and fifty years, who are not a public charge or too infirm to perform labor are hereby declared to be liable to, and shall pay road tax and perform road labor in the same manner, and be subject to the same responsibilities relating thereto, which are, or may be imposed upon resident citizens, and all persons firms, corporations, or companies employing such al(l)iens as herein provided are hereby expressly bound by the terms and conditions of this act to pay the road tax due from such al(l)iens at the time and in the manner provided by the foregoing sections.

SECTION 5. This act shall take effect and be in force from and after its passage [and] approval.

Approved, November 9th, 1877.

318                    GENERAL LAWS

## AN ACT

### PRESCRIBING THE NUMBER OF MEMBERS COMPOSING THE LEGISLATIVE ASSEMBLY OF THE TERRITORY OF WASHINGTON.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the Legislative Assembly of said Territory which by the provisions of the organic act is made to consist of a council and house of representatives, shall be composed of nine members of the council and thirty members of the house of representatives. The members thus composing the two branches of the Legislature shall possess all the qualifications of legal voters and their term of service shall be two years.

SECTION 2. The members of the council and house of representatives shall be elected in pursuance of law from the several districts and counties in this Territory upon such equitable apportionment as is now or may hereafter be provided by law.

SECTION 3. This act to take effect and be in force from and after its passage and approval by the governor.

Approved, November 6th, 1877.

## AN ACT

### TO ENABLE COUNTIES TO BORROW MONEY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That when any county of this Territory shall become indebted in an amount greater than can be provided for, and paid for out of the entire income of such county for the then current year, the board of county commissioners of such county, may, if it so elects, borrow money upon the credit of the county, sufficient to pay such indebtedness,

not exceeding the sum of fifteen thousand dollars: *Provided,* That this act shall apply to the counties of King and Snohomish only.

SECTION 2. All money borrowed pursuant to the provisions of this act, shall be payable in annual installments; the rate of interest paid thereon must not exceed ten per cent. per annum.

SECTION 3. When the board of commissioners of any county shall elect to borrow money pursuant to the provisions of this act, a resolution to that effect must be passed at a regular meeting of such board, and entered in the minutes of such meeting, and shall give notification to that effect for the period of four weeks in a weekly newspaper published in this Territory nearest said county, seat, and shall receive the lowest and best bid for the county. The board may reject any or all bids.

SECTION 4. When any money shall have been borrowed by any county pursuant to the provisions of this act, the board of commissioners of such county shall annually reserve and set apart sufficient of the income of such county to pay the interest, and each installment of principal on such loan as the same shall become due.

SECTION 5. This act shall take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

## TO APPORTION THE REPRESENTATION OF THE LEGISLATIVE ASSEMBLY OF THE TERRITORY OF WASHINGTON.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington* That the apportionment of the Legislative Assembly shall be as follows:

In the council to wit:

The county of Walla Walla shall elect one.

The counties of Columbia, Whitman and Stevens shall elect one.

320                    GENERAL LAWS.

The counties of Clark, Skamania, Yakima and Klickitat shall elect one.

The counties of Cowlitz, Wahkiakum and Pacific shall elect one.

The counties of Thurston and Lewis shall elect one.

The counties of Pierce, Mason and Chehalis shall elect one.

The county of King shall elect one.

The counties of Kitsap, Snohomish and Whatcom shall elect one.

The counties of Jefferson, Clalem, [Clallam,] Island and San Juan shall elect one.

SECTION 2.   The apportionment of representatives in the house shall be as follows, to wit:

The county [counties] of Cowlitz and Wahkiakum shall elect one.

The county of Cowlitz one.

The county of Clarke shall elect two.

The county of Columbia shall elect two.

The counties of Clarke Skamania and Klickitat shall elect one.

The county of Lewis shall elect one.

The county of Thurston two.

The counties of Pacific and Chehalis shall elect one.

The county of Pierce one.

The counties of Pierce and Mason one.

The county of King (3) three.

The county of Snohomish one.

The county of Kitsap one.

The counties of Kitsap and Jefferson shall elect one.

The county of Jefferson one.

The county of Whatcom one.

The counties of Clallam and San Juan shall elect one.

The county of Island shall elect one.

The county of Whitman shall elect one.

The county of Walla Walla shall elect (4) four.

The county of Yakima shall elect one.

The county of Stevens shall elect one.

SECTION 3.   All acts or parts of acts inconsistent with this

## GENERAL LAWS.                    321

act be and the same are hereby repealed.    This act to take effect and be in force from after its passage.

Approved, November 9th, 1877.

---

## AN ACT

TO AMEND AN ACT ENTITLED " AN ACT IN RELATION TO ATTORNEYS AND COUNSELORS AT LAW" PASSED JANUARY 24TH, 1863.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section (1) of an act entitled "an act in relation to attorneys and counselors at law " passed January 24th 1863 be and the same is hereby amended to read as follows:    " That the following persons are entitled to practice as attorneys and counselors in all the courts of this Territory:

First.    All citizens of the United States who were duly admitted as attorneys and counselors of the supreme or district courts, before the passage of this chapter and whose names are still on the rolls of attorneys of those courts.

Second.    All citizens of the United States who present to any court of record in the Territory a license from any court of record in any other State or Territory, showing that the person presenting the same has been duly admitted to practice in said court.

Third.    All citizens of the United States who are over twenty-one years of age and who shall present to any court of record in this Territory a diploma, or certificate from a law college or law school and are found upon examination under the direction of the court to possess the requisite qualifications of learning and ability.

Fourth.    All citizens of the United States over the age of twenty-one years of good moral character and who possess the requisite qualifications of learning and ability and who shall be examined and admitted as hereinafter provided.

SECTION 2.    That section second of the act to which this is amendatory be amended to read as follow:    All citizens of the United States applying for admission to practice as attor-

322                GENERAL LAWS.

neys and counselors in this Territory except those provided for in the first, second, and third clauses of the foregoing section, must apply to the supreme court or any district court of the Territory when in session and must show

First. That they are of the age of twenty-one years, which proof may be made by their own affidavit.

Second. That they are a person of good moral character which may be proved by certified or other evidence satisfactory to the court.

Third. That they have diligently studied the common law and the laws of this Territory for at least eighteen months previous to the date of their application under the direction of some practicing attorney within the Territory and is well versed in said laws, the proof of which shall be the certificate of the attorney under whose direction the applicant has studied.

SECTION 3. All acts or parts of acts in conflict with the provisions of this act be and the same are hereby repealed.

• SECTION 4. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

———————————

# AN ACT

## TO AUTHORIZE THE GOVERNOR TO OFFER A REWARD FOR THE ARREST OF THE MURDERER OF OLE HAAGENSON.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the governor of this Territory is hereby authorized to offer a reward of five hundred dollars for the detection and arrest of the person or persons guilty of the murder of one Ole Haagenson whose body was found near Seattle in King county on the twenty-third day of October one thousand eight hundred and seventy-seven.

SECTION 2. The Territorial auditor shall upon presentation to him of a certificate of the clerk of any court in this Territory of the conviction of any person or persons of said murder and the finding of the court that the person claiming said re-

ward is entitled thereto; under the provisions of this act shall draw a warrant on the Territorial treasurer in favor of the person so entitled to receive the same for the said sum of five hundred dollars, and said treasurer shall pay said warrant in its regular numerical order out of any funds in the treasury not otherwise appropriated.

SECTION 3. This act shall take effect and be in force from and after the day of its approval by the governor.

Approved, November 6th, 1877.

---

## AN ACT

TO AUTHORIZE THE BOARD OF HEALTH OF PUGET SOUND TO PUR-
CHASE A SUITABLE SITE OF LAND FOR THE PURPOSE OF A PEST
HOUSE.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the board of health created by an act entitled "an act in relation to the quarantine of vessels," approved November twenty-sixth, one thousand eight hundred and sixty-nine, be and they are hereby empowered to purchase a site for a pest house, or hospital for contagious diseases, which site shall consist of not less than five acres of land, to be selected by the health officer of said board, conditioned that a deed in fee simple absolute, be filed with the secretary of the Territory by said board, and the sum of two hundred and seventy-five dollars is hereby appropriated for the payment of the same, out of any money in the treasury not otherwise appropriated.

SECTION 2. Upon filing said deed, as above conditioned, it shall be the duty of the Secretary of the Territory to notify the Territorial auditor forthwith, who upon receipt of such notice, is hereby empowered to draw a warrant, at once on the Territorial treasurer, who is hereby authorized to pay the same.

SECTION 3. This act to take effect from and after its passage.

Approved, November 9th, 1877.

324                    GENERAL LAWS.


## AN ACT

### TO AUTHORIZE THE COUNTY COMMISSIONERS OF THE SEVERAL COUN-
### TIES OF THE TERRITORY TO OFFER BOUNTY FOR THE SCALPS
### OF SQUIRRELS, RABBITS AND SAGE RATS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the county commissioners of the several counties of this Territory are hereby authorized to offer and pay out of the county funds of the county treasury a bounty for the scalps of squirrels, sage rats or wild rabbits as hereinafter provided.

SECTION 2. The bounty provided for in section 1 of this act shall not exceed five nor be less than one cent per scalp.

SECTION 3. Whenever in the opinion of the board of county commissioners it shall be necessary to offer a bounty as provided in this act, they shall so order in open court and cause the order to be spread upon the minutes of the session. Said order shall fix the rate to be offered by the county for scalps and may contain anything else necessary for carrying out and not inconsistent with the provisions of this act.

SECTION 4. It shall be the duty of the county auditor whenever the county commissioners shall order that a bounty shall be paid as provided in the preceding section to give notice of the order of the board by posting one notice in each precinct infested by squirrels, rabbits, or sage rats; said notice shall state the amounts fixed by the board per scalp and the manner in which said bounty may be obtained,

SECTION 5. Whenever any person shall have any squirrel, sage rat or rabbit scalps upon which they wish to obtain bounty they shall present the same to the county auditor whose duty it shall be to examine them and ascertain if they have both ears upon them, and such person shall also present to said auditor a bill verified by affidavit that the squirrels, rabbits or sage rats from which the scalps presented are obtained were killed within the county and that it is just and correct; said bill shall be audited by the county auditor and presented to the board of county commissioners whose duty it shall be to order the same paid out of the county treasury in like manner as other claims against the county. It shall also be the duty of the county

GENERAL LAWS.                        325

auditor to keep a book provided for the purpose in which he shall enter the names of all persons presenting scalps, the number presented and after allowance by the board the amount allowed to each person, which book shall be presented together with all the scalps in the office of the auditor, at each regular session for their examination and approval.

SECTION 6.   It shall be the duty of the county auditor at each regular session of the board of the county commissioners and in their presence to destroy all scalps that he may have received during the preceding quarter.

SECTION 7.   The county commissioners may at any regular term of court revoke their order offering bounty for scalps.

SECTION 8.   This act shall take effect and be in force from and after its passage.

Approved, October 30th, 1877.

---

## AN ACT

### TO LEGALIZE AND MAKE VALID THE LOCATION OF COUNTY ROADS.

SECTION 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington,* That when the board of county commissioners of any county have upon petition appointed viewers who have viewed and located any public highway or county road and the same has been surveyed and the minutes of such survey have been recorded in the office of the auditor of the county in which such survey was made. The said public highways or county roads so surveyed as aforesaid, be, and the same are hereby declared to be lawful public highways and county reads to all intents and purposes regardless of any defect or omission in posting notices or defect in the appointment of such viewers or in their returns or reports of such view survey and location:   *Provided,* That the minutes of any such survey and location have been recorded as herein specified.

SECTION 2.   That in any cause wherein the legality of any county road or public highway shall be contested the introduction of the record or a certified copy thereof showing that the minutes of the survey of any such road have been recorded as specified in section one of this act—the same shall be sufficient

proof of the location survey and legality of such road or roads.

SECTION 7. This act shall take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

---

# AN ACT

### ADOPTING THE COMMON LAW OF ENGLAND.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Common law of England so far as the same is not repugnant to, or inconsistent with the constitution, and laws of the United States, and laws of the Territory of Washington so far as the same is applicable to the situation and circumstances of this Territory, shall be the rule of decision in all cases and in all the courts of this Territory.

SECTION 2. This act shall take effect and be in force from and after the day of its approval by the governor.

Approved, October 31st, 1877.

---

# AN ACT

### TO PROVIDE FOR THE INCORPORATION OF WATER FLUME COMPANIES.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That corporations for the building, equipping and managing water flumes for the transportation of wood and lumber may be formed according to the provisions of an act entitled "an act to provide for the formation of corporations" passed November thirteenth one thousand eight

hundred and seventy-three, and such corporations and the members thereof shall be subject to the conditions and liabilities therein imposed.

SECTION 2.    That said corporations may appropriate lands for the construction of said flumes, and the right of way therefor according to the provisions of chapter three of the act of which this act is amendatory, and with all the rights and liabilities therein granted or imposed.

SECTION 3.    This act to be in force from and after its passage.

Approved, October 25th, 1877.

------

## AN ACT

### (AN ACT) TO AMEND AN ACT ENTITLED "AN ACT TO REGULATE THE PRACTICE AND PROCEEDINGS IN CIVIL ACTIONS," APPROVED NOVEMBER 13TH 1873.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section 502 of an act entitled an act to regulate the practice and proceedings in civil actions approved November 13th 1873 be amended so as to read as follows:

SECTION 502.    In an action at law for the recovery of the possession of real property if either party claim the property as a donee of the United States and under the act of Congress approved September 27th 1850 commonly called the donation law or the acts amendatory thereof, such party from the date of his settlement thereon as provided in said act shall be deemed to have a legal estate in fee in such property to continue upon condition that he perform the conditions required by such acts, which estate is unconditional and indefeasible after the performance of such conditions.    In such action if both plaintiff and defendant claim title to the same real property by virtue of settlement under such acts, such settlement and the performance of the subsequent conditions shall be *prima facia*[e] pre-

328                    GENERAL LAWS.

sumed in favor of the party having or claiming under the elder certificate or patent as the case may be, unless it appears upon the face of such certificate or patent that the same is absolutely void. Any person in possession by himself or his tenant of real property and any private or municipal corporation in posses-sion by itself or its tenant of any real property or when such real property is not in the actual possession of anyone, any person or private or municipal corporation claiming title to any real property under a patent from the United States or during his or its claim of title to such real property under a patent from the United States for such real estate, may main-tain a civil action against any person or persons corporations or associations claiming an interest in said real property or any part thereof or any right thereto, adverse to him, them or it for the purpose of determining such claim estate or interest, and where several persons or private or municipal corporations are in possession of, or claim as aforesaid sepe[a]rate parcels of real property, and an adverse interest is claimed or claim made in or to any such parcels by any other person, persons, corpora-tions or associations arising out of a question, conveyance stat-ute, grant or other matter common to all such parcels of real estate, all or any portion of such persons or corporations so in possession or claiming such parcel of real property may unite as plaintiffs in such suit to determine such adverse claim or interest against all persons corporations or associations claiming such adverse interest.

SECTION 2. This act shall take effect and be in force from and after its approval by the Governor.

Approved, October 31st, 1877.

------------

AN ACT

TO PROTECT PERSONS SELLING SPIRITUOUS MALT OR FERMENTED LIQUORS FROM MISREPRESENTATION OF MINORS AS RESPECT THEIR AGES.

*Be it enacted by the Legislative Assembly of the Terri-tory of Washington,* That any minor over the age of eighteen years and under the age of twenty-one years who shall repre-

sent to any person dealing in spirituous malt or fermented liquors that he is of lawful age, and by means of such misrepresentation procure from such dealer spirituous malt or fermented liquors shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding one hundred dollars or less than twenty-five dollars or imprisoned in the county jail any length of time not exceeding three months.

This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## (HOUSE SUBSTITUTE FOR C. B. NO. 17.)

## AN ACT

### TO PROVIDE FOR THE REMOVAL OF THE BOOKS BELONGING TO THE TERRITORIAL LIBRARY TO THE CAPITOL BUILDING.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the Territorial librarian is hereby required to cause to be removed the Territorial library from Tacoma Hall back to the library room in the Territorial capitol within five days from the date of the passage of this act.

SECTION 2. The said librarian is hereby required to cause the said library room in the capitol to be forthwith properly managed with shelving, using the shelves, counters, and other furniture and fixtures now in use at Tacoma Hall as far as practicable, for the reception and accommodation of said Territorial library.

SECTION 3. The sum of fifty dollars ($50,) or so much thereof as shall be necessary is hereby appropriated out of any money in the Territorial treasury not otherwise appropriated to defray the expenses of carrying into effect the foregoing provision of this act.

SECTION 4. The said librarian is required to present as soon as practicable after such removal shall have been made proper vouchers to the Territorial auditor for the expenses incurred, particularly specifying the nature of service and verified

330    GENERAL LAWS.

by the affidavit of the party performing the service and said auditor shall draw a warrant or warrants on the Territorial treasurer to the respective parties performing such service for their respective demands, and the treasurer shall pay the same as other warrants are paid: *Provided however*, The aggregate of said warrants shall not exceed the said sum of fifty dollars heretofore appropriated.

SECTION 5. This act shall take effect from and after its passage.

Approved, November 9th, 1877.

---

### AN ACT

TO PRESCRIBE THE TENURE OF OFFICE IN WASHINGTON TERRITORY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the election of all Legislative, district, county and precinct officers shall hereafter be biennial, and shall be held at the same time as the election of delegate to Congress.

SECTION 2. That all district, county and precinct officers shall hold their offices for the term of two (2) years from and after the second Monday in January next after their election and until their successors are elected and qualified.

SECTION 3. That all officers nominated by the governor, and appointed by, and with the advice and consent of the Legislative Council of this Territory shall hold their offices for the term of two years from and after the second Monday in January next after their appointment, and until their successors are appointed and qualified: *Provided*, That this section shall not apply to notaries public or commissioners of deeds.

SECTION 4. All acts and parts of acts in conflict with this act are hereby repealed.

SECTION 5. This act shall be in force from and after its passage and approval by the governor.

Approved, November 9th, 1877.

## AN ACT

### TO PROVIDE FOR THE PAYMENT OF EXPENSES OF REGENTS OF THE TERRITORIAL UNIVERSITY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the regents of the Territorial University, shall be paid for actual attendance upon a lawfully called or authorized meeting of the board of regents their actual and necessary traveling expenses between their place of residence and the city of Seattle by the usually travelled route. The secretary of the board of regents shall give to each regent a certified statement of the mileage due. On presentation of such certificate to the Territorial auditor he shall issue a warrant upon the Territorial treasurer for the amount therein named, and said treasurer shall pay the same as other Territorial warrants are paid.

SECTION 2. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

## AN ACT

### TO AMEND "AN ACT" ENTITLED "AN ACT TO PROVIDE FOR THE PROTECTION OF GAME," APPROVED NOV. 12, 1875.

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1. That section five of said act to which this is amendatory shall read as follows:

SECTION 2. Any owner or other legal occupant of any enclosed premises, used for meadow, pasture, cultivation, or other

use, may post, at the usual place or places of entering upon the same, written or printed notices, forbidding persons to trespass upon said enclosed premises, for the purpose of hunting or pursuing game; without first obtaining the consent of the owner or legal occupant thereof, he shall be deemed guilty of a misdemeanor, and for every such offense, the trespasser shall be liable to a fine of ten dollars, one-half of which shall be paid to the owner or legal occupant of such premises, and the other half into the school fund in the county in which the act of trespass is committed. For the carrying out of the provisions of this section, the owner or legal occupant of the premises may arrest the trespasser upon his premises, taken in the act, without a warrant, and take him before the nearest justice of the peace for trial, or may have a warrant issued as in other cases of misdemeanor; and any barrier, as river, lake, or other obstruction to the passage of stock, shall, for the purposes of this act constitute an enclosure.

SECTION 2. This act shall apply to the counties of Clarke and Pacific only.

SECTION 3. This act shall take effect and be in force from and after its approval by the governor.

Approved, November 9th, 1877.

---

# AN ACT

TO REPEAL AN ACT ENTITLED AN ACT ESTABLISHING A UNIFORM STANDARD OF WEIGHTS AND MEASURES AND TO CREATE THE OFFICE OF SEALER THEREOF, APPROVED, DECEMBER 2D, 1869.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That an act establishing a uniform standard of weights and measures and to create the sealer thereof approved, December 2d 1869, be and the same is hereby repealed.

SECTION 2. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

GENERAL LAWS.                    333

# AN ACT

### DEFINING THE WORD MONTHS.

That the word "month" or "months" whenever the same occurs in the statutes of this Territory now in force, or in statutes hereafter enacted or in any contract made in this Territory shall be taken and construed to mean calende[a]r.

SECTION 2.   This act to take effect and be in force from and after its passage.

Approved, October 30th, 1877.

---

# AN ACT

### RELATING TO THE MEASUREMENT OF CHARCOAL.

SECTION 1.   *Be it enacted by the Legislative Assembly of Washington Territory*, That all baskets for measuring charcoal, in this Territory, shall contain two bushels and shall be of the following dimensions: viz: Nineteen (19) inches in breadth in every part thereof, and seventeen and one half inches (17½) deep, measuring from the top of the basket to the highest part of the bottom and be well heaped—*Provided* That nothing in this act shall be construed so as to prevent the use of any basket, box or other measure in conformity with the standard of measurement as provided in this section.

SECTION 2.   Any person or persons who shall violate the provisions of this act shall be liable to a fine of five dollars for each and every offence so committed to be collected in similar manner as other fines for similar cases are now collected and all fines collected as aforesaid shall belong to the school fund of the county in which such offense or offenses may have been committed.

SECTION 3.   This act shall take effect and be in force from and after Jan. 1st, 1878.

Approved, November 9th, 1877.

334                     GENERAL LAWS.

# AN ACT

## TO DEFRAY THE INCIDENTAL EXPENSES OF THE OFFICE OF TERRITORIAL TREASURER.

SECTION. 1. *Be it enacted by [the] Legislative Assembly of the Territory of Washington* That the sum of two hundred dollars be and the same is hereby appropriated annually to defray the expenses of the Territorial treasurer's office namely rent fuel, light, stationa[e]ry printing of blanks and postage and that the sum of fifty dollars shall be paid to the Territorial treasurer quarterly at the same time and in like manner as the salary of the Territorial treasurer is now paid.

SECTION. 2. This act shall take effect and be in force from and after its approval.

Approved, November 9th, 1877.

---

# AN . ACT

## (AN ACT) TO AMEND AN ACT, ENTITLED AN ACT RELATING TO WEIGHTS AND MEASURES APPROVED JANUARY 29TH 1863.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington* That the eighth line of section four of said act be so amended as to read as follows—

Thirty (36) pounds shall constitute a bushel of oats.

SECTION 2. All parts of acts in conflict with the provisions of this act are hereby repealed.

SECTION 3. This act shall take effect from and after its passage and approval.

Approved, November 6th, 1877.

GENERAL LAWS.                    335

# AN ACT

## CONCERNING THE COLLECTION OF POLL TAXES.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the poll tax of two dollars provided for in section twenty-seven (27) of an act approved Nov 12th 1875 entitled "An Act to Provide for the Assessing and Collecting of County and Territorial Revi[e]nue" shall be due and paid at the time of the assessment and shall be paid to the assessor who shall have the same power in collecting the same that the sheriff has in the collection of delinquent taxes on personal property. The money so collected shall be paid by the assessor, at the time of the return of his assessment roll, less his percentage for collection.

SECTION 2. The assessor shall be provided by the auditor with blank poll tax receipts, which shall be charged against him at the value of two dollars each, and he shall make a full and true return to the auditor of the names of all persons assessed for poll taxes and the amount collected from each, and he shall be allowed to retain ten per cent of the gross amount so collected as his compensation for such collection.

SECTION 3. This act shall take effect from and after its passage and approval.

Approved, November 9th, 1877.

---

# AN ACT

TO REPEAL AN ACT ENTITLED "AN ACT TO AMEND AN ACT ENTITLED AN ACT IN RELATION TO QUARTZ MINING CLAIMS APPROVED NOVEMBER 12TH, 1875, SO FAR AS THE SAME APPLIES TO STEVENS COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of*

*the Territory of Washington* That an act entitled "An Act to Amend An Act Entitled "An Act in Relation to Quartz Mining Claims" approved November 12th 1875, be and the same is hereby repealed so far as it applies to Stevens county.

SECTION 2. This act to take effect and be in force from and after its approval by the governor.

Approved, November 9th, 1877.

---

OFFICE OF THE SECRETARY,
OLYMPIA, W. T., Jan. 1, 1878.

Many of the manuscript laws of the sixth biennial session of the Legislative Assembly appear defective in orthography and punctuation, in numbering of, and references to, sections and chapters, etc. It being my duty to have the printed copies conform with these laws, in no case has there been a departure from the original text in phraseology or punctuation. Suggested corrections in spelling and numbering of sections have been made by enclosing the matter in brackets and superfluous matter indicated in parentheses; but, in the civil practice act, the Arabic and Roman notation and the numbering of chapters and sections have been printed as found in the original law.

N. H. OWINGS, *Secretary.*

# LOCAL AND PRIVATE LAWS.

# LOCAL AND PRIVATE LAWS.

## AN ACT

### TO INCORPORATE THE TOWN OF OLYMPIA.

## ARTICLE I.

### ON BOUNDARIES AND GENERAL POWERS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the town of Olympia shall be bounded as follows, to wit: Commencing at the north east corner of section 25, T 19, N. of R. 2 W., thence south along the section line 6 miles to S E corner of section 24, T 18, N. of R. 2 W., thence west along section lines 4 miles to S. W. corner of section 21, T 18, N. of R. 2 W., thence north along section line to the point on Eld inlet where said section line intersects the meander line of eastern shore of said inlet; thence along the said meander line to the point where it intersects the N. section line of section 28, T. 19, N. of R. 2 W.; thence east across Budd's inlet to the place of beginning.

SECTION 2. The inhabitants of said town of Olympia shall be and are hereby constituted a body politic and corporate, by the name and style of the "Town of Olympia," and by that name they and their successors shall be known in law, and have perpetual succession, sue and be sued, plead and be impleaded in all courts whatsoever, and receive property, personal and real, within said town for public buildings, public works, and town improvements, and may dispose of the same in any manner for the benefit of the town, may purchase property beyond the limits of the town to be used for burial purposes, and for the establishment of a hospital for the reception of persons infected with contagious diseases.

340        LOCAL AND PRIVATE LAWS.

## ARTICLE II.

Section 1. The town shall be and is hereby divided into three wards, as follows:

All that part of the town lying and being west of the middle of the inlet of the Sound separating Swantown from the main town, and north of Fifth street, shall constitute ward number one.

All that part of the town lying west of the line of the middle of said inlet and of the middle of stream running into said inlet, and south of Fifth street, shall constitute ward number two;

And all that part of the town lying east of the middle of the channel of said inlet and stream of the Sound, dividing Swantown from the main town, shall constitute ward number three.

## ARTICLE III.

Section 1. For the government of the said town of Olympia there shall be annually elected, in the manner hereinafter provided, a mayor and six trustees, and a town clerk, and a marshal(l), who shall hold their offices for one year or until their successors shall be duly elected and qualified: *Provided*, That the town clerk and marshal(l) may, for good cause show[n], be removed from office by a two-thirds vote of the trustees, at any regular meeting of the board; and in case of such removal, of said clerk or marshal(l), or both, the vacancy or vacancies may be filled by appointment, by the mayor and concurrence of the trustees, for the balance of the term for which said clerk or marshal(l) was elected.

Section 2. The mayor, the clerk, and the marshal(l), shall be elected by the whole town, and each ward shall elect two trustees.

Section 3. The present board of trustees, and their successors in office, shall appoint judges of election and provide all things necessary to hold a separate election in each ward, and if, for any cause, they fail to do so, any three legal voters of

the ward may organize a board of election judges and hold an election according to law.

SECTION 4. Trustees eligible in any ward, must be residents and legal voters in the ward in which they are elected.

SECTION 5. The present clerk of the board of trustees, and his successors in office, shall keep a book in his office in which all voters in the town shall register their names and the number of the ward in which they reside, at least thirty days before the annual election. And the said clerk shall provide the judges of election in each ward with a list of the registered voters in such ward, and none but voters thus registered shall be allowed to vote. *Provided*, That this section shall not be construed to require a voter who has once registered to register again, unless he shall have lost his residence, or changed his ward.

## ARTICLE IV.

SECTION 1. That a general election for two trustees in each ward shall be held on the first Monday in April of each year. Each ward shall also vote for a mayor, a clerk and a marshal(l) for the whole town, each of whom must be qualified voters in the town.

SECTION 2. No person shall be entitled to vote at any election who shall not be an elector for Territorial officers, and who shall not have resided in the town thirty days next preceding the day of election; and no person shall be eligible to any office under this charter who is not a qualified voter of said town. ·

SECTION 3. At all elections for town officers, the vote shall be by ballot at the time and place in each ward designated by the board of trustees.

SECTION 4. That all elections shall continue for one day, during which time the polls shall be kept open from 10 o'clock A. M., to four o'clock P. M.

SECTION 5. The person who shall receive a plurality of votes for trustee or mayor, shall be declared elected, and the clerk shall issue to him a certificate of election, and on presentation of the same to the board of trustees shall be sworn into office.

SECTION 6. The judges of election in each ward shall designate one of the clerks of the election to make return of the vote in said ward to the clerk of the town within twenty-four

342        LOCAL AND PRIVATE LAWS.

hours after the polls close, and the clerk of the town, in presence of and with the assistance of the said clerk of election from each ward, shall add up the vote of the three wards for mayor and shall issue a certificate of election to the candidate having the highest number of votes; and also to the two trustees in each ward having the highest number of votes, and in case of tie, it shall be decided by lot.

SECTION 7.   All vacancies may be filled by the board until the next annual election.

SECTION 8.   The mayor and trustees shall receive no compensation for their services.

SECTION 9.   The mayor shall preside at the meetings of the trustees; may give the casting vote in case of a tie; shall have the veto power, but laws may be passed and business done by a two-third vote, notwithstanding the veto of the mayor.

SECTION 10.   The clerk of the town board shall be *ex-officio* assessor.   He shall perform the duties of his office in such manner as may be prescribed by ordinance.

SECTION 11.   The board of trustees shall appoint a treasurer, who shall hold office at the pleasure of the board.

SECTION 12.   The members of the board of trustees shall fix the time and place for holding their stated meetings, and may be convened by the mayor at any time.   A majority of the members shall constitute a quorum to do business, but a smaller number may adjourn from day to day and compel the attendance of absent members, and in the absence of the mayor the board shall appoint one of their number president *pro tem* who shall perform all the duties required of the mayor.

SECTION 13.   Any ordinance which shall have been passed by the board of trustees shall, before it becomes a law, be signed by the mayor, or in the absence of the mayor, by the president *pro tem*.

SECTION 14.   Said board of trustees shall have full power and authority:

First.   To make all needful by-laws, ordinances and town regulations not repugnant to the constitution or laws of the United States and the laws of (the) this Territory.

Second.   To levy taxes for municipal purposes not to exceed four mills on the dollar per annum upon all taxable property as is shown by the assessment made for Territorial and county purposes.   But this shall not be construed as prohibiting said board from the addition of ten per centum penal(i)ty on delinquent tax payers, or such other penalt(i)y as may be prescribed by the laws of the Territory to secure the collection of taxes. Said board shall also regulate by ordinance the time of assess-

## LOCAL AND PRIVATE LAWS.

ing and collecting said municipal taxes: *Provided*, That an additional tax of two and one-half mills may be levied in any one year, if such tax is voted by a two-third vote of the tax payers of the town, and the board of trustees shall have power to call a special election for that purpose.

Third. To prevent and restrain any disturbance or disorderly conduct riot, drunkenness or any indecent and immoral practices within the limits of said town.

Fourth. To license, tax and regulate auctioneers, taverns, bankers, peddlers, brokers, pawnbrokers and all offensive or noxious trades or occupations.

Fifth. To license, tax and regulate hacks, cabs, hackneys, carriages, wagons, carts, drays or other vehic(k)les, and to fix the rates thereof.

Sixth. To make regulations to prevent the introduction of contage[i]ons diseases into the city, to remove persons affected with such or other diseases therefrom to suitable hospitals provided for the city for that purpose; to secure the protection of persons and property therein, and to provide for the health, cleanliness, ornament, peace and good order of the city.

Seventh. To prevent and remove nuisances.

Eighth. To provide for lighting the streets and furnishing the city with gas or other lights, and for the erection or construction of such works as may be necessary or convenient therefor.

Ninth. To provide for the support, restraint and employment of vagrants and paupers.

Tenth. To provide for the prevention and extinguishment of fires, and for the preservation of property endangered thereby, and for the appointment or election of officers required for such purposes.

Eleventh. To establish and maintain a day and night police or either of them.

Twelfth. To provide for the prevention or removal of all obstructions from the streets, cross and sidewalks, and for the cleaning and repairing of the same.

Thirteenth. To provide for the erection of a city jail, house of correction and work-house, and the government and management of the same.

Fourteenth. To establish and regulate the fees and compensation of all officers of this municipal corporation, except when otherwise provided.

Fifeeenth. To provide for the punishment of a violation of any ordinance of the city, by fine or imprisonment, not exceed-

344        · LOCAL AND PRIVATE LAWS.

ing one hundred dollars, or thirty days, or both, or by a forfeiture or penalty not exceeding one hundred dollars, and for working any person sentenced to such imprisonment upon the streets or public squares during the term thereof.

Sixteenth.   To appropriate money to pay the debts, liabilities and expenditures of the city, or any part or item thereof, from any fund applicable thereto: *Provided*,. No appropriation shall be made for any purpose, in excess of the amount received by the treasurer for the current year.

Seventeenth.   To provide for the survey of the blocks and streets of the city, and for making and establishing the boundary lines of such blocks or streets, and to establish the grades of such streets.

Eighteenth.   To license, tax, regulate and restrain theatrical and other exhibitions, shows, public amusements, billiard tables and bowling alleys, and, to suppress bawdy houses, gaming and gambling houses.

Nineteenth.   To make regulations and pass ordinances preventing domestic or other animals from running at large in the city limits.

Twentieth.   To license, tax, regulate and restrain the keeping of dogs within the city limits.

Twenty-first.   To construct and repair sidewalks, and to levy and collect a special tax or assessment, on the lots or parcels of land fronting on the sidewalk constructed, or repaired sufficient to pay the expense of constructing or repairing said sidewalk.

Twenty-second.   They shall have power to make harbor regulations and rules; to regulate or prevent the discharge of ballast or other material in any harbor within the city limits; to assess and collect harbor dues from all vessels and water craft whatever, arriving at or departing from the city; to license and tax wharfingers; and to build, construct or authorize the construction of, and regulate wharfs, piers, and landing places at the foot of any street terminating on Budd's inlet within the city limits.   And to regulate and prescribe the limits of the extension of wharfs into the waters of any harbors within the city limits.

## ARTICLE V.

· SECTION 1.   The town clerk shall receive such compensation for his services as may be allowed him by ordinance.

## LOCAL AND PRIVATE LAWS.    345

SECTION 2. The town marshal(l) shall have and possess all the power and authority to serve any and all process, and he shall receive the same fees which constables' now have under the general laws of the Territory; and for other services he shall receive such fees as may be provided by ordinance.

SECTION 3. The justices of the peace when acting as committing magistrates, shall receive the same fees that are allowed for similar services under the general laws of the Territory.

## ARTICLE VI.

### OF THE POWERS AND DUTIES OF OFFICERS OF THE CORPORATION.

SECTION 1. The justices of the peace elected at the general election, for Olympia precinct shall be, the judicial officers of the corporation, and as such, they shall have jurisdiction of all crimes defined by any ordinance of the town of Olympia, and of all actions brought to enforce or recover any forfeiture or penal(i)ty declared or given by any such ordinance. They shall hear all complaints of the violation of town ordinances, and examine all parties arrested by the town marshal(l).

SECTION 2. All civil or criminal proceedings before such justice of the peace, including all proceedings for the violation of any ordinance, shall be governed and regulated by the general laws of the Territory applicable to justices of the peace and justice courts in similar cases.

SECTION 3. The treasurer is receiver of taxes, and must receive and keep all moneys that shall come to the city by taxation or otherwise, and pay out the same upon the warrant of the clerk of the common council, countersigned by the mayor.

SECTION 4. The treasurer must keep an account with the general fund and a separate account with each special fund that may be raised for any special object, and when a warrant is drawn on any particular fund it can only be paid out of such fund.

SECTION 5. The treasurer must make a report of the receipts and expenditures to the common council at the first regular meeting in the months of December and June of each year, which report shall be published in any newspaper published in the town of Olympia.

SECTION 6. The marshal is a peace officer, and must execute all process issued by the justice of the peace, or directed to him by any justice of the peace of the Territory; he must

44

attend regularly upon the sessions of the justices court and the meetings of the trustees; he has power, by and with the approval of the council, to appoint one or more deputies, who shall possess the same power; he shall make arrests for breach of the peace or the commission of a crime within the city limits, with or without a warrant, as a peace officer may do under the laws of the Territory.

SECTION 7. The marshal shall exercise a vigilant control over the peace and quiet of the city, and he is the keeper of the city prison or house of correction, unless otherwise prescribed by ordinances.

SECTION 8. As collector of taxes the marshal(1) [shall] collect all delinquent taxes and assessments when required by warrant, and pay the same to the treasurer monthly.

SECTION 9. It shall be the duty of the clerk to keep a fair and correct journal of the proceedings of the board, and to file and keep all papers and books connected with the business of the trustees.

SECTION 10. All demands and accounts against the town must be presented to the clerk, with the necessary evidence in support thereof, and he must submit the same to the trustees, who shall, by a vote, direct whether the same shall be paid or any part thereof, as they may deem it just and legal.

SECTION 11. When the board of trustees orders any demand or account to be paid, if money has been appropriated for that purpose, and not otherwise, the clerk must draw a warrant upon the treasurer for the amount ordered to be paid, which warrant must be drawn on the special or general fund appropriated therefor, and must be signed by the clerk and countersigned by the mayor.

SECTION 12. The clerk must keep proper books of account, showing therein all sums appropriated, the date thereof, and out of what fund; the date and amount of all warrants drawn thereon, and to whom payable, and all such other matters and things as may be prescribed by ordinance, or proper and necessary to a correct understanding of the finances.

SECTION 13. The official books and papers of all town officers are town property, and must be kept as such by such officers during their continuance in office and then delivered to their successors.

SECTION 14. The official books and papers of any officer mentioned in this chapter, may be inspected at any time by a committee of trustees appointed for that purpose.

SECTION 15. The clerk of the board of trustees is author-

ized to administer any oath required to be taken in connection with the duties of his office.

Section 16. The justices of peace must keep a proper account of all fines, costs or other moneys received by them or paid into their courts, and they must pay to the treasurer monthly, all moneys mentioned in this section, and take duplicate receipts therefor, one of which they must file with the clerk.

Section 17. The marshal(l) must keep a correct record of all arrests made by him or his deputy, showing the time, cause or complaint upon which said arrest was made, and must make a full and complete report in writing each month to the board of trustees.

# ARTICLE VII.

### OF THE COLLECTION OF DELINQUENT TAXES.

Section 1. Whenever any municipal tax has been levied as provided and authorized, every part thereof shall bear interest at the legal rate from the time it becomes delinquent, and it shall be a lien upon all real estate so taxed, from the time of the levy thereof.

Section 2. The board of trustees must provide by ordinance within what time all taxes may be paid to the treasurer, and all taxes not paid to the treasurer within such time, are thereafter delinquent taxes and must be collected as such.

Section 3. Within five days from the expiration of the time limited for paying taxes to treasurer the treasurer must return the tax roll to the board distinguishing thereon the taxes paid and those remaining unpaid.

Section 4. The board must thereafter order the clerk to deliver the tax roll to the collector, and issue and annex thereto a warrant directed to the collector, commanding him to proceed and forthwith to collect the delinquent taxes upon such roll in the manner provided by law, and pay the same to the treasurer and return the warrant, with his doings thereon, and the receipt of the treasurer for all moneys collected thereby and paid to the treasurer, to the clerk.

Section 5. Such warrant, for the purpose of collecting such delinquent taxes, shall be deemed an execution against property, and shall have the force and effect thereof against any person, firm or corporation against whom such taxes are levied

348        LOCAL AND PRIVATE LAWS.

or charged on the tax roll, and shall be executed and returned in like manner, except as in this chapter otherwise provided.

SECTION 6. If no personal property be found whereon to levy the warrant, or if that levied upon be not sufficient to satisfy the same, it must be levied upon any real property of the person, firm or corporation against whom the tax is levied or charged or sufficient thereof to satisfy such warrant, including interest, fees of officers and all expenses of sale and executing the warrant.

SECTION 7. In case of a delinquent tax levied upon real property in the name of an owner unknown, the warrant shall be executed by levying upon each lot or part thereof of such property for the tax levied thereon, and selling it separately.

SECTION 8. When real property is sold for delinquent taxes, the person executing the warrant must immediately make a deed for such property to the purchaser, stating therein that the same is made subject to redemption as provided by law, and such sale shall have the same effect to convey to the purchaser, subject to redemption as hereinafter provided, all the estate or interest therein of the owner or owners, whether known or unknown, together with all the rights and appurtenances thereunto belonging.

SECTION 9. Real property, sold for delinquent taxes as provided in this chapter, may be redeemed by the owner or his successor in interest, or by any person having a lien by judgment, decree or mortgage on such property, or any part thereof separately sold, within three years from the date of the deed thereof, by the payment of the purchase money, and twenty-five per cent addition, together with interest upon the purchase money from the date of sale to the time of payment, at the legal rate, and the amount of any tax which the purchaser may have paid upon the property.

SECTION 10. Whenever any property, real or personal, sold for delinquent taxes, shall bring more than the amount of such taxes, with interest and costs and charges of collection, the surplus must be paid to the treasurer, and the person executing the warrant must take a separate receipt for such surplus and file the same with the clerk on the return of the warrant. At any time thereafter, the owner of the property sold, or his legal representatives, shall be entitled to a warrant upon the treasurer for such surplus.

SECTION 11. When any land or town lots cannot be sold for the amount of taxes, interest and charges thereon, such lands or town lots shall be passed over and re-offered for sale before the close of the sale, and if the same cannot then be sold

## LOCAL AND PRIVATE LAWS. 349

for the amount, such lands or town lots shall be purchased by the city treasurer, for the amount due thereon, for the city.

SECTION 12. The board of trustees may provide by ordinance within what time a warrant for the collection of delinquent taxes must be returned, and may order an alias warrant to issue for the collection of any such taxes not made on a previous one. All costs and charges for collecting delinquent taxes must be made on the warrant and collected as a part of the tax. The board of trustees may prescribe by ordinance the fees and compensation for collecting delinquent taxes, but the same shall in no case be paid out of the treasury.

## ARTICLE 8.

SECTION 1. All officers required to be elected under this act shall, before entering upon the duties of their office, take an oath or affirmation of office before any person competent to administer oaths.

SECTION 2. All resolutions and ordinances calling for an appropriation for any sum exceeding three hundred dollars shall lie over two meetings,

## ARTICLE IX.

SECTION 1. The town trustees shall not be the school directors of the common schools of the town, but the common schools of the town shall be governed by the Territorial school law.

SECTION 2. The town shall be and is hereby divided into two school districts.

All that part of the town lying and being west of the middle of the channel of the inlet, and of the stream emptying into said inlet, separating Swantown from the main town, shall be Olympia School District number one; and

All east of said middle of said inlet shall be Olympia School District number two; and the superintendent of schools of Thurston county may join other contiguous territory to school district number two.

350     LOCAL AND PRIVATE LAWS.

## ARTICLE X.

### MISCELLANEOUS PROVISIONS.

SECTION 1. The roads, streets and alleys within said town limits shall be under the exclusive control of said board of trustees, who shall make all needful rules in regard to the improvement, repair, grading cleaning, etc., etc., thereof, and for the purposes of this act, said town shall not be included in any road district, but the road tax due by law within said town, shall be collected as provided by ordinance.

SECTION 2. The board of trustees shall have power by ordinance to prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands shall be assessed and determined, for the purpose authorized by section fourteen, sub-division twenty-one of this act; such charge when assessed shall be payable by the owner or owners at the time of the assessment personally, and shall also be a lien upon the respective lots or parcels of land from the time of the assessment. Such charge may be collected and such lien may be enforced by a proceeding in law or in equity, either in the name of the town of Olympia, or of the officer, to whom it shall have directed payment to be made. In any such proceedings it shall be sufficient to declare generally for work and labor done, and materials furnished. In any such proceeding when the court trying the same shall be satisfied that work has been done, or material furnished, judgment shall be rendered in favor of the town of Olympia, or the officer prosecuting therefor, for such sum as may be necessary to defray all costs for labor performed, or material furnished and all costs notwithstanding any irregularity, informality, or defect in the proceedings of the officers of the city: *Provided*, That whenever the board of trustees shall order any sidewalk to be constructed or repaired, the clerk of the board shall immediately in writing notify the owner of the lot or lots upon (upon) the side of the street, when the sidewalk is so ordered to be built or repaired of the order made by the trustees; and no assessment or charge of any kind shall be made against any lot or lots when the owner thereof, shal[l], within sixty days after being notified, as herein provided, build, or repair the sidewalk in pursuance to the order of the board of trustees, and in the manner provided by ordinance.

SECTION 3. All acts and parts of acts, upon any subject matter contained in this act, so far as they relate to the incorporation of said town of Olympia, and are inconsista[e]nt with the provisions of this act, be and the same are hereby repealed: *Provided,* That rights acquired, taxes levied, and ordinances passed, and now in force under existing laws shall not be affected by anything herein contained.

SECTION 4. This act to take effect, and be in force, from and after its passage and approval.

Approved, November 9th, 1877.

# AN ACT

### TO AMEND THE CHARTER, OF THE CITY OF SEATTLE.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the act of the Legislative assembly, approved November twelvth one thousand, eight hundred, and seventy[-]five, entitled, "An Act, to amend an act entitled an act to incorporate the city of Seattle, approved December second, one thousand, eight hundred, and sixty nine, shall be, and the same is hereby amended as follows: that is to say: section seven of said act, shall be, and the same is so amended as to read as follows—

SECTION Seven—The city of Seattle shall have power, to provide for clearing, opening, graveling improving and repairing, of streets and highways and alleys; and for the prevention and removal of all obstructions therefrom, or from any cross or sidewalk; also to regulate cellar ways and cellar lights on sidewalks within the city; and to provide for clearing the streets; also for constructing sewers and clearing and repairing the same; and have power to assess, levy and collect each year a road, poll tax, of not less than four nor more than six dollars on every male inhabitant of the city, between the ages of twenty-one and fifty years, except persons that are a public charge; also a special tax on property of not less than two nor more than six mills on every dollar's worth of property within the city; which taxes shall be expended for the purposes specified in this section, and the officers of the county shall not levy or collect any road tax or poll tax upon the inhabitants

352      LOCAL AND PRIVATE LAWS.

or property within the city. Section eight of said act, shall be, and the same is so amended as to read as follows.

SECTION Eight. The city of Seattle, shall have power to construct and repair sidewalks, and to curve, pave, grade, macadamize and gutter any street or streets, highway or highways, alley or alleys, therein or any part thereof; and to levy and collect a special tax or assessment, on lots and parcels of land fronting on such street or streets, highway or highways, alley or alleys or any part thereof, sufficient to pay the expense of such improvement, and for such purpose may establish assessment districts, consisting of a portion or the whole of any such street or streets, highway or highways, alley or alleys, or of several streets, highways, and alleys, as may be deemed advisable. But unless the owners of more than one half of the property subject to assessment for such improvement, petition the council to make the same, such improvement shall not be made until a majority of five-sevenths of all the members of the council, by vote, assent to making of the same, and the expense of improvements heretofore made in accordance with the provisions of this section, and not paid prior to the passage of this act, shall be assessed and collected as herein provided, notwithstanding any prior assessment upon any other or different basis than herein provided, and such prior assessment, or any attempt, to collect the same, shall be no bar to a recovery in any suit, or proceeding to collect the amount due, for such improvements upon the basis of assessments, herein provided. Section twenty of said act, shall be, and the same is so amended as to read as follows:

SECTION Twenty. The city of Seattle shall have power to establish and maintain a day and night police, or either of them, and to provide for the election or appointment of such number of police officers as may be necessary; which officers shall have full power and authority to make arrests with or without warrants, within or without the limits of the city; to summon aid; and to exercise all other powers necessary and requisite for the prevention of crime or apprehension of offenders. And in all cases where arrests are made for offenses tried under the general laws of the Territory, before justices of the peace or other Territorial courts, such police officers shall be entitled to receive the same fees as sheriffs or constables, for the same services. The following additional section shall be, and the same is incorporated into said act, the same to follow section twenty-one of said act, viz:

SECTION —. The city of Seattle shall have power to license, tax, regulate and restrain bar-rooms, saloons and all houses or places where liquors are sold or disposed of in quantities of less than one gallon; and all houses or places where wines and spirituous liquors are sold or disposed at wholesale,

LOCAL AND PRIVATE LAWS.          353

or in quantities greater than one gallon, also breweries or groceries where lager beer is sold or disposed of, also all billiard tables, pigeon hole, Jend[n]y Lind and other gaming tables kept for hire within the city: *Provided*, That any person or persons who shall keep any billiard table or tables. pigeon hole, Jenny Lind, or other gaming tables, in a drinking saloon or house, or in a room or building adjoining or attached thereto, and shall allow the same to be used by two or more persons to determine by play thereon, which of the persons so playing shall pay for drinks, s[c]igars, or other articles for sale in such saloon or drinking house, shall, within the meaning of this act, be deemed to be keeping the same for hire: *Provided*, The sale by apothecaries or druggists, of spirituous, malt, or fermented liquors or wine for medicinal purposes, upon the prescrip[tion] of a practicing physician, shall not be restricted, and no license shall be required therefor. No law or part thereof, authorizing any tribunal or officer of King county to grant licenses for any such houses or places or business, enumerated in this section, shall apply, or be held to authorize the granting of such licenses within the city, by county officers, and all such licenses paid to the city, shall be in lieu of the license required by the general laws of the Territory, for similar houses or business. The sum required for such license, shall, in no case exceed the amount required by the general laws of the Territory for houses, or business of like character. And bonds required to be given by keepers of saloons or drinking houses, shall not be fixed at more than one thousand dollars: *Provided*, *further* That no licenses authorized by this section, shall be issued by the city prior to the first day of January A. D. one thousand, eight hundred and eighty, and until said date licenses shall be granted by the county commissioners and the money paid therefor shall go into the treasury of King county, as provided by the general laws of the Territory. Section twenty-four of said act, shall be, and the same is so amended as to read as follows:

SECTION Twenty-four. The city of Seattle shall have power to borrow money on the credit of the city, for any purpose within the authority of the corporation, including the payment of any existing debt; but the indebtedness of the city must never exceed in the aggregate the sum of twenty thousand dollars, and any debt or liability incurred in excess of said sum, of twenty thousand dollars shall be invalid and void: *Provided*, That all debts heretofore contracted by the city shall be valid. Section twenty-six of said act, shall be, and the same is so amended as to read as follows:

SECTION Twenty-six. The city of Seattle shall have power to make harbor regulations and rules; to regulate or prevent the discharge of ballast or other material in any harbor within

45

851 •    LOCAL AND PRIVATE LAWS.

the city limits; to assess and collect harbor dues from all vessels and water craft whatever, arriving at, or departing from the city; to license and tax wharfingers; and to build, construct and regulate wharfs, piers, and landing places at the foot of any street terminating at the shore of Elliott's Bay or Lake Washington, and to regulate and prescribe the limits of the extension of wharfs into the waters of any harbors within the city limits, to prevent the construction of wharves beyond such limits, and to remove any wharf or wharves that have heretofore been or shall hereafter be constructed beyond such limits at the expense of the owner or owners of such wharf or wharves, to be recovered by ordinary civil action, or as the city council may by ordinance provide. Section thirty-one of said act shall be and the same is hereby so amended as to read as follows:

SECTION Thirty-one. There shall be elected as hereinafter specified a justice of the peace, marshal, clerk, attorney, treasurer, health officer, city surveyor, street commissioner, harbor master, and an assessor and collector who shall be officers of the municipial corporation. The assessor and collector to be one officer, who shall be officers of the municipial corporation. The marshal shall be elected by the qualified voters of the corporation, and shall hold his office for one year or until his successor is elected and qualified. The common council shall annually, at the first regular meeting thereof, after the qualification of the new members elected at each annual city election, designate and appoint one of the justices of the peace for the precinct, within which such city is situate, who shall have been duly elected, and appointed, and qualified as required by law, who shall be the justice of the peace of the city, and shall keep his office therein, and shall have jurisdiction over all crimes defined by any ordinance of the city, and of all actions brought to enforce or recover any penalty or forfeit, declared or given by any such ordinances and full power and authority to hear and determine all causes, civil and criminal, arising under such ordinances, and to pronounce judgment in accordance therewith. All civil and criminal proceedings before such justice of the peace, under and by authority of this act, shall be governed and regulated by the general laws of this Territory, relating to justices of the peace and to their practice and jurisdiction, and shall be subject to review in the district court of the proper district, by certiorari or appeal, the same as other cases; the attorney, clerk, treasurer health officer, street commissioner, harbor master, and the assessor and collector shall be elected by the common council at the meeting above specified, and they shall be liable, at any time to be removed by the council, for malfeasance, inattention or incompetency. Section thirty[-]four of said act shall be, and the same is so amended as to read as follows. •

SECTION Thirty-four. No person is qualified to vote at any election, under this act who does not possess the qualifications in section forty-two of this act for officers, and who if under fifty years of age has not paid either a poll or property tax in said city for the fiscal year then last past, such payment to be proved by the proper official receipt therefor, except when such receipt is lost or mislaid, when it may be proved by the oath of the person offering to vote, and all officers required to be elected by this act except those elected by the common council shall be elected by the qualified voters of this city. Section thirty-nine of said act shall be, and the same is hereby so amended as to read as follows:

SECTION Thirty-nine. On the first regular meeting of the council next after such election, the returns thereof shall be canvassed by the city council, and the written statement of such canvass shall be made and signed by the presiding officer of the council and attested by the clerk, and immediately filed with the clerk. Such written statement of the canvas[s] shall contain the whole number of votes given at such election, the number given for any person for any office and the names of persons elected, and to what office: *Provided*, That if the requisite number of city officers shall not be elected, by reason of two or more persons having an equal and the highest number of votes for one and the same office, the city council shall give notice to the several persons so having the highest and an equal number of votes, to attend the council chamber at an appointed time, and the said council shall then and there proceed publicly, to decide, by lot, which of the persons so having the highest and an equal number of votes shall be deemed duly elected, and a certificate of election shall be duly issued to the person thus declared elected as hereinafter provided. Section forty-one, of said act, shall be, and the same is hereby so amended as to read as follows:

SECTION Forty one. A certificate of election, is *prima facia*[e] evidence of the facts therein stated; but the council shall decide all questions as to the qualifications, and election of its own members; and a contested election for any other office must be decided by the council, according to the laws of the Territory, regulating proceedings in cases of contest for county offices. Section forty-two of said act, shall be, and the same is hereby so amended as to read as follows:

SECTION Forty-two. The term of office of every person elected to office under this act, shall commence on the tenth day after the canvas[s] of the election returns by the council, and terminate accordingly, except as otherwise provided by this act, and by such time such person must qualify by taking and filing the oath of office, and give such official undertaking for the

356                  LOCAL AND PRIVATE LAWS.

faithful performance of his duties as may be required, or he shall be deemed to have declined, and the office considered vacant, except when there is a contest, in which case such person must qualify within ten days from the determination of such contest. Section fifty-nine of said act shall be, and the same is hereby so amended as to read as follows:

SECTION Fifty-nine. Any ordinance which shall have passed the council shall before it becomes a law, be presented to the mayor for his approval; if he approves he shall sign it; if not, he shall within ten days, return it with his objections in writing to the council who shall cause the same to be entered on the journal, and shall proceed to reconsider the same. If after such reconsideration, five-sevenths of the members of the council shall agree to pass the same, it shall become a law. Section sixty-one of said act, shall be, and the same is hereby so amended as to read as follows:

SECTION Sixty-one. The city attorney shall represent the city in all suits or proceedings in which the city is legally interested, and give his advice and opinion in writing concerning any matter in which the city is interested, when required by the mayor or council; but the city may employ additional counsel when deemed advisable by the council. Section seventy-four of said act, shall, and the same is hereby so amended as to read as follows:

SECTION Seventy-four. The justice of the peace of the city shall, before exercising any of the functions of his office as such, give a bond to the city in such sum and with such conditions as the council may require. He must keep a proper account of all fines, costs, or other moneys received by him when acting under and by the authority of this act, and he must pay to the treasurer monthly all such moneys and take duplicate receipts therefor, one of which he must file with the clerk. Section eighty-four of said act shall be, and the same is hereby so amended as to read as follows:

SECTION Eighty-four. The council must thereafter order the clerk to deliver the tax roll to the treasurer of the county within which the city is located, and issue and annex thereto a warrant directed to said treasurer, commanding him to proceed and forthwith to collect the delinquent taxes upon such roll, in the manner provided by law, and pay the same to the treasurer, less his fees and costs of collection, and return the warrant with his doings thereon, and the receipt of the city treasurer, for all moneys collected thereby and paid to the city treasurer, to the clerk. Section eighty-five of said act shall be, and the same, is hereby so amended as to read as follows:

SECTION Eighty[-]five. Such warrant for the purpose of

collecting such delinquent taxes shall be deemed an execution against property, and shall have the force and effect thereof against any person, firm or corporation, against whom such taxes are levied or charged on the tax roll, and shall be executed and returned in like manner, except as in this chapter otherwise provided. The county treasurer shall proceed to collect the taxes upon such roll, at the same time and in the same manner as he is required to do in collecting delinquent Territorial and county taxes, and for such purposes he shall have the same authority as is given to him by the laws of the Territory, relating to the assessment and collection of Territorial and county taxes, he shall pay to the city treasurer monthly all the moneys collected and due the city, as provided in section nin[e]ty-three of this act.

SECTION 2. Sections eighty-eight and eighty-nine, of said act are hereby repealed.

SECTION 3. This act shall take effect and be in force from and after its approval by the Governor.

Approved, November 9th, 1877.

---

## .AN ACT

### TO AMEND AN ACT ENTITLED "AN ACT TO AMEND AN ACT ENTITLED, 'AN ACT TO INCORPORATE THE CITY OF WALLA WALLA, APPROVED NOVEMBER 13th 1873.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section three in article four of said act be and the same is hereby amended so as to read as follows, the mayor and common council shall have power within the corporate limits of said city.

1. To make by-laws and ordinances not repugnant to the laws of the United States or the laws of the Territory,

2. To levy and collect taxes not to exceed one half of one per cent. per annum upon all property made taxable by law for county and Territorial purposes.

3. To make regulations to prevent the introduction of contagious and other diseases into said city.

4.  To establish hospitals and make regulations for the government of the same and to secure the general health of the inhabitants.

5.  To prevent and remove nuisances.

6.  To erect water works either within or beyond the limits of the city and provide the city with good and wholesome water.

7.  To license tax and regulate auctioneers, town-criers, ordinances hawkers, peddlers, brokers, pawnbrokers, bankers, money-changers, and any and all business or businesses maintained, conducted or carried on within the corporate limits of said city, *Provided*, That carpenters, house-joiners, wagon-makers, or wheel-[w]rights, black-smiths, boot and shoe makers, cabinet-makers, or milliners shall not be required to take out any license to carry on such trade or trades within the limits of said city and, *Provided further*, that no license shall be required of any person or persons for selling or disposing of any produce raised in this Territory nor shall any restriction be placed on such trade or business.

8.  To license, regulate and fix the rates of porters and porterage.

9.  To tax, license and regulate hackney carriages, job-wagons, carts, drays, and omnibuses, and fix the rates to be charged for the carriage of persons and property.

10.  To license, tax, regulate and restrain drinking-saloons, bar-rooms, tippling-houses, circuses, theatricals and other shows and places of amusement billiard tables, breweries, and and Chinese wash-houses, *Provided*, That no keeper of any drinking saloon or bar-room shall be required to pay any greater sum for the license of such business than one hundred ($100.00) dollars per annum, *And provided further*, That no such license shall issue for a shorter period than is prescribed for by the laws of Washington Territory in and for Walla Walla county.

11.  To restrain and prohibit gambling and gaming houses, and houses of ill-fame.

12.  To erect market houses, establish markets and market places, and to provide for the government and regulation thereof.

13.  To provide for the prevention and extinguishment of fires and to organize and establish fire companies.

14.  To appoint fire wardens, and prescribe their duties and compel any person or persons present to aid in extinguishing fire or in the preservation of property exposed to damages in times of fire, and by ordinance to prescribe such other powers as may be necessary on occasions of fire.

## LOCAL AND PRIVATE LAWS.    359

15.  To establish and regulate a police night watch and patrol.

16.  To erect a work-house, or house of correction and provide for the government and regulation thereof.

17.  To remove all obstructions from the side and cross walks, and to provide for the construction, cleaning and repairing of the same, as well as all gutters, sewers, water courses and drains.

18.  To appropriate money for any item of city expenditure and to provide for the payment of the debts and expenses of the city.

19.  To grade, pave and plank, or otherwise improve, clean and keep in repair streets and alleys, and they shall have power to assess the cost of grading paving or planking of any street against the owners of the lots or land, fronting on said street in proportion to the amount of ground fronting on said street: *Provided*, That they shall not grade, pave or plank any street at the expense of the property owners unless two-thirds of the persons owning lots or land on said street shall petition the council in writing therefor.

20.  To regulate the storage of gun powder pitch, tar, rosin and other combustible materials, and the use of candles lamps or other lights in shops, stables or other places, to prevent, remove or secure any fire-place, stove, oven, chimney, boiler or other apparatus which may be dangerous in causing fire.

21.  To regulate and prescribe the manner of building, partition, walls and fences.

22.  To prevent and restrain riots, tumultuous and disorderly assemblages, disorderly conduct, drunkenness, public lewdness, indecent exposures of person breaches of the peace and threatened or attempted breaches of the peace assaults, assaults and batteries, affrays and carrying concealed weapons.

23.  To impose appropriate fines, forfeitures and penalties for the breach or violation of any ordinance and provide for the punishment of all violations of city ordinances, but no fine shall be imposed for more than one hundred dollars, ($100,) also to provide for the working of city prisoners on the streets or other public works of the city in payment of any fine or as punishment for the violation of any city ordinance.

24.  To provide for the protection of the water and channel of mill creek and other streams within the city limits, and to remove obstructions from the channels, of said streams and to compel persons who have obstructed the same or who may obstruct or cause the same to be obtructed to remove such obstructions, to provide bridges over the same to bulkhead or cause to be bulkheaded the banks of mill-creek so as to protect

360        LOCAL AND PRIVATE LAWS.

the property of the city from damage by flood and make such other improvements in the channel of said stream as may be necessary or expedient.

SECTION 2. The city of Walla Walla has power to provide for clearing opening, graveling, improving and repairing of streets, highways and alleys and for the prevention and removal of all obstructions therefrom or from any cross or sidewalk, also to regulate cellar ways and cellar lights in sidewalks or within the city and to provide for clearing the streets, also for constructing sewers and draining and repairing the same, and has power to assess, levy and collect each year a road poll tax of not less than three nor more than four dollars in every male inhabitant of the city between the ages of twenty-one and fifty years, except persons that are a public charge, and the officers of Walla Walla county shall not levy or collect any road tax upon the inhabitants, or property within the city of Walla Walla.

SECTION 3. That an act entitled " An Act to Amend An Act Entitled, An Act to Incorporate the City of Walla Walla, approved, November 12th 1875," and all acts and parts of acts conflicting with the provisions of this act are hereby repealed.

SECTION 4. This act to take effect and be in force from and after its passage.

Approved, November 6th, 1877.

---

# AN ACT

## TO DISINCORPORATE THE CITY OF KALAMA.

SECTION 1. *Be it enacted by the Legislative Assembly of Washington Territory*, That the city of Kalama, in Cowlitz county, Washington Territory, shall be disincorporated, and the same shall cease to exist as a corporotion, from and after the time of depositing the books of record and papers of said corporation in the office of the county auditor of Cowlitz county, as hereinafter provided.

SECTION 2. The city council of the said city of Kalama shall, on or before the first day of January one thousand eight hundred and seventy-eight, provide for the payment of all

indebtedness and the discharge of all obligations and liabilities of the corporation, by the sale of the property of said corporation, or by the levy and collection of a sufficient tax for said purpose.

SECTION 3. When all debts, liabilities and obligations of said corporation, shall have been paid and discharged, the books of record, and papers on file in the office of the clerk of city council of said city shall forthwith be deposited in the office of the auditor of Cowlitz county, there to remain and be preserved for future reference, and notice of the disincorporation of said city shall be given by said auditor, by publication thereof in a weekly newspaper of general circulation, in said county.

SECTION 4. All property of said corporation remaining undisposed of, and all moneys of the corporation remaining after the payment of all debts, and the discharge of all liabilities and obligations of the corporation, shall belong to and be transferred to the school district embracing said city of Kalama.

SECTION 5. Nothing in this act shall be construed to to interfere with, in anywise, any suit at law, that may have been instituted against the mayor, city council or other officer or officers of the government of said city of Kalama prior to the passage of this act.

SECTION 6. All acts or parts of acts in conflict with the provisions of this act, be and the same are hereby repealed.

Approved, November 9th, 1877.

# AN ACT

### TO DISINCORPORATE THE TOWN OF TUMWATER.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the town of Tum-Water in Thurston county shall be disincorporated and the same shall cease to exist as a corporation from and after the time of depositing and filing the books of record and papers of said corporation in the office of the county auditor of Thurston county as hereinafter provided.

SECTION 2. The board of trustees of said town of Tum-

362          LOCAL AND PRIVATE LAWS.

Water shall on or before the first day of January one thousand eight hundred and seventy-eight, provide for the payment of all the indebtedness and the discharge of all obligations and liabilities of the corporation by sale of the property of said corporation, or by the levy and collection of a sufficient tax for said purposes.

SECTION 3.   When all debts, liabilities, and obligations of corporation shall have been paid, and discharged, the books of record and papers on file in the office of the clerk of said town shall be forthwith deposited in the office of the auditor of Thurston county there to remain and be preserved for future reference; and notice of the disincorporation of said town, shall be given by said auditor, by publication thereof in a weekly newspaper of general circulation in said county.

SECTION 4.   All property of said corporation remaining undisposed of, and all moneys of the corporation remaining, after the payment of all debts and discharge of all liabilities and obligations of the corporation, shall belong to and be transferred to the school district embracing said town of Tumwater.

Approved, November 6th, 1877.

## AN ACT

DEFINING THE BOUNDARIES OF THE CITY OF VANCOUVER.

*Be it enacted by the Legislative Assembly of the Territory of Washington*

SECTION 1.   That the city of Vancouver shall be bounded as follows: Commencing at the Southwest corner of the Military Reservation of Fort Vancouver in the county of Clark[e,] thence westerly along the meanders of the Columbia River down stream to the South-West angle of the donation land claim of Amos M. and Esther Short deceased, thence North three fourths of a mile, thence East to a point due North of the West line of the donation land claim of William Ryan; and thence Southerly along said line sixteen and sixty-three one hundredths chains to a point where the Easterly line of the United States Military Reservation crosses the West line of

LOCAL AND PRIVATE LAWS.        363

the said William Ryan's donation claim; thence Southerly along the East line of said United States Military Reservation to the Columbia River; thence Westerly along said river to the place of beginning.

SECTION 2  This act shall take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

CREATING  AND  CONFERRING  JURISDICTION  UPON  THE  DISTRICT COURT OF THE COUNTY OF COLUMBIA.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a court be and the same is hereby created and established within and for the county of Columbia to be called the District Court of Columbia County.

SECTION 2. That said district court shall have exclusive jurisdiction within said county of all matters and causes except those in which the United States is a party in the same manner and to the same extent as is now had and exercised by the district court of the first judicial district holding terms at Walla Walla city for the counties of Columbia and Walla Walla with the same right of appeal certiorari and writs of error to the supreme court as is now provided and allowed by law.

SECTION 3. Said court shall be held by the judge of the first judicial district at Dayton the county seat of Columbia county.

SECTION 4. The said judge of the first judicial district shall appoint a clerk of said district court of Columbia county who shall give bonds and security in such amount as shall be ordered by the court or judge thereof and shall keep his office and the records of said court at said county seat of Columbia county.

SECTION 5. The district court of columbia county shall be a court of record and the expenses of holding the same shall be paid by the said county of Columbia and the said county of Columbia shall also pay the amount of the necessary expenses

364    LOCAL AND PRIVATE LAWS.

incurred by the judge of the first judicial district in holding said district court of Columbia county said judge shall make a certified statement of the expenses so necessarily incurred, to the county auditor of Columbia county who shall draw a warrant on the treasury of said county for the amount so certified to by said judge.

SECTION 6. The various laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and criminal prosecutions in Territorial causes shall govern the practice and proceedings in said district court of Columbia county except as herein otherwise provided.

SECTION 7. The regular terms of said district court of Columbia county shall be held on the third Monday in June and the second Monday in December in each and every year and each term shall be held for one week unless sooner adjourned: *Provided*, That no term of said court shall be held until the last Monday in June A. D. 1878.

SECTION 8. The board of county commissioners of said county of Columbia shall at their regular terms in February and August in each and every year select from the statement of persons qualified a sufficient number of persons to serve as grand and petit jurors at the term of said court to be held next after said meeting and the auditor of said county shall furnish a list of the grand and petit jurors so selected to the clerk of the court of said Columbia county: *Provided*, That when for any cause there shall not be in attendance a sufficient number of qualified and competent grand and petit jurors or the regular jurors shall not have been summoned or shall have been discharged it shall be competent for the court to order a sufficient number of grand and petit jurors to be summoned from the bystanders or from the body of the county.

SECTION 9. At least thirty days before the commencement of the term of court the clerk thereof shall issue one venire embracing the names of the grand and petit jurors, specifying which are grand and which are petit jurors, commanding the sheriff of said county to summon the person so named to attend at the first day of the term of said court.

SECTION 10. The number summoned as grand jurors shall not exceed twelve and the number of petit jurors shall not exceed twenty-four and the provisions of law providing for the manner of selecting and procuring the attendance of jurors at terms of the several District courts of this Territory consistent with the foregoing and not modified thereby shall fully apply to the District court of the county of Columbia.

SECTION 11. The foregoing sections which relate to the summoning grand and petit jurors for terms of said District

LOCAL AND PRIVATE LAWS.    365

court of Columbia county shall not be construed to alter, amend, or repeal the law now in force in regard to the quota of jurors to be summoned from said Columbia county on behalf of the United States to attend the District court of the first judicial Distrit holding at Walla Walla city, but said county of Columbia shall not be chargeable in any event for the mileage or attendance of any grand or petit jurors, who may be summoned to attend at the District court of the first judicial District at Walla Walla city except upon the order of the judge thereof.

SECTION 12. The various laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and in criminal prosecutions in Territorial causes shall govern the practice and proceedings in said District court of the county of Columbia.

SECTION 13. All acts and parts of acts conflicting with this act are heaeby repealed.

SECTION 14. This act shall take effect and be in force from and after its passage.

Approved, October 27th, 1877.

———————

# AN ACT

### CREATING AND CONFERRING JURISDICTION UPON THE DISTRICT COURT OF THE COUNTY OF PACIFIC.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a court be, and is, hereby established within and for the county of Pacific to be called the district court of Pacific county.

SECTION 2. That said court shall have exclusive jurisdiction within said county of all matters and causes except those in which the United States is a party, in the same manner and to the same extent as is now had and exercised by the district court of the second judicial district holding terms at Kalama for the county of Pacific with the same rights to appeals certiorari and writs of error from inferior courts and to the supreme court as is now provided-and allowed by law.

366      LOCAL AND PRIVATE LAWS.

SECTION 3.   Said court shall be held by the judge of the second judicial district at the county seat of Pacific county.

SECTION 4.   The said judge of the second judicial district shall appoint a clerk of the court who shall give bonds and security in such amount as shall be ordered by said court or the judge thereof, and shall keep his office and records of said court at the county seat of said county, and said district court shall be a court of record and the expense of holding the same shall be payable by the said county of Pacific and the said county of Pacific shall also pay the actual traveling expenses incurred by the judge of the second judicial district in going to and from his place of residence to the place of holding said court and the county auditor shall draw a warrant upon the county treasury for the amount so certified by said judge.

SECTION 5.   The various laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and in criminal prosecutions in Territorial causes shall govern the practice and proceedings in said district court of the county of Pacific.

SECTION 6.   The board of county commissioners at their regular May term or session shall select from the statement of persons qualified a sufficient number to serve as grand and petit jurors at each term of said district court for the ensuing year and the county auditor shall therefrom furnish a list of grand and petit jurors so selected to the clerk of the court of said county of Pacific: *Provided*, That when from any cause there shall not be in attendance a sufficient number of qualified and competent grand and petit jurors or the regular jurors shall not have been summoned, or shall have been discharged, it shall be competent for the court to order a sufficient number of qualified grand and petit jurors to be summoned from the by-standers or from the body of the county.

SECTION 7.   At least thirty days before the commencement of said term of court the clerk shall issue one venire embracing the names of the grand and petit jurors specifying which are grand and which are petit jurors commanding the sheriff to summon the persons so named to attend on the first day of the term of said court.

SECTION 8.   The number summoned as grand jurors shall not exceed sixteen and the number of petit jurors summoned shall not exceed twenty four, and the provisions of law providing for the manner of selecting and procuring the attendance of jurors at terms of the several district courts consistent with the foregoing and not modified thereby shall fully apply to the said district court of the county of Pacific.

SECTION 9.   The foregoing sections which relate to sum-

moning grand and petit jurors for the terms of said district court of the county of Pacific shall not be construed to alter amend or repeal the law now in force in regard to the quota of jurors to be summoned from said county of Pacific to attend the district court of the second judicial district holding terms at Kalama to serve on behalf of the United States but said county of Pacific shall not be chargable in any event for the mileage and attendance of any grand or petit jurors who may be summoned to attend at the district court of the second judicial district holding terms at Kalama except upon the order of the judge thereof.

Section 10. All civil actions now pending in the district court of the second judicial district holding terms at Kalama wherein the subject of the action or some part thereof is situated in said county of Pacific according to section 48, of the civil practice act of 1873, or wherein, the cause of action or some part thereof arose in said county according to section 49 of said practice act or wherein service of summons was had upon any defendant in said Pacific county, shall be transferred by order of the judge of said court to the district court of Pacific county for trial and shall then be heard and determined in the same manner as though said cause had been originally commenced in said Pacific county.

Section 11. The regular terms of said district court of Pacific county shall be held on the second Monday of August in each and every year and each term held for two weeks unless sooner adjourned.

Section 12. All acts and parts of acts in conflict with this act are hereby repealed.

Section 13. This act shall take effect and be in force from and after its passage.

Approved, October 17th, 1877.

---

# AN ACT

## TO CREATE AND CONFER JURISDICTION UPON THE DISTRICT COURT OF WHATCOM COUNTY.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a court be and is hereby

.368        LOCAL AND PRIVATE LAWS.

established within and for the county of Whatcom to be called the District Court of Whatcom County.

SECTION 2. Said court shall have exclusive jurisdiction within said county of all matters and causes except those in which the United States is a party in the same manner and to the same extent as is now had and exercised by the district court of the third judicial district holding terms at Steilacoom for the county of Pierce with the same rights to appeals, certiorari and writs of error from inferior courts and to the supreme court as is now provided and allowed by law.

SECTION 3. Said court shall be held by the judge of the third judicial district at the town of La Conner in Whatcom county.

SECTION 4. Said judge shall appoint a clerk of the court who shall hold his office during the pleasure of said court.

SECTION 5. Before entering upon the duties of his office said clerk shall take an oath of office and give bond to the Territory of Washington in such sum with sureties and conditions as said court or judge thereof shall require which bond shall be deposited with the secretary of the Territory and any person aggrieved by the official acts or omissions of said clerk may have his action thereon.

SECTION 6. The clerk shall keep his office and the records of said court at the town of La Conner aforesaid and shall keep said office open at all seasonable hours and said district court shall be a court of record, and the expenses of holding the same shall be paid by said county of Whatcom and said county shall also pay the actual traveling expenses incurred by said judge in going to and from his place of residence to the place of holding said court and the county auditor of said county shall draw warrants upon the county treasurer for the amount so certified by said judge.

SECTION 7. All laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and in criminal prosecutions under the laws of the Territory shall govern the practice and proceedings in said district court of Whatcom county.

SECTION 8. The board of county commissioners for Whatcom county at their regular February term or session shall select from the statement of persons qualified in said county a sufficient number to serve as grand and petit jurors at each term of said district court for the ensuing year, and the county auditor shall therefrom furnish to the clerk of the district court of Whatcom county a list of grand jurors and petit jurors so selected: *Provided,* That when from any cause there shall not be in attendance a sufficient number of qualified and competent

grand and petit jurors or the regular jurors shall not have been summoned or shall have been discharged it shall be lawful for the court to order a sufficient number of qualified grand and petit jurors to be summoned from the bystanders or from the body of said county of Whatcom.

SECTION 9. At least thirty days before the commencement of any term of said court, the clerk shall issue under seal of the court and deliver to the sheriff of said county one venire embracing the names of the grand and petit jurors for the county specifying which are grand and which are petit jurors commanding him to summons the persons therein named to attend on the first day of the term of said court.

SECTION 10. The number of persons summoned as grand jurors shall not exceed sixteen and the number summoned as petit jurors shall not exceed twenty-four, and the laws regulating the manner of selecting and procuring the attendance of jurors at terms of the several district courts consistent with this act and not modified thereby, shall apply to the said district court of Whatcom county.

SECTION 11. This act shall not be construed to alter, amend, or repeal the law now in force relating to the quota of jurors to be summoned from said county of Whatcom to attend the district court of the third judicial district holding terms at Port Townsend to serve on behalf of the United States; and said county of Whatcom shall not be chargeable in any event with the mileage or attendance of any grand or petit jurors summoned to attend at the district court of the third judicial district holding terms at Port Townsend, except upon the order of the judge thereof.

SECTION 12. All civil actions now pending in the district court of the third judicial district holding terms at Port Townsend wherein the subject of the action or some part thereof is situated in said county of Whatcom according to section 48 of the civil practice act of 1873 or wherein the cause of action or some part thereof arose in said county according to section 49, of said civil practice act or wherein service of summons was had upon any defendant in said county of Whatcom shall be transferred by order of the judge of said court to the district court of Whatcom county for trial and shall there be heard and determined in the same manner as though said cause had been originally commenced in said district court of Whatcom county.

SECTION 13. The regular terms of said district court of Whatcom county shall be held on the first Tuesday of June and first Tuesday of December in each and every year and each term shall be held for two weeks unless sooner adjourned.

47

370    LOCAL AND PRIVATE LAWS.

SECTION 14.  All acts and parts of acts in conflict with this act are hereby repealed.

SECTION 15.  This act shall take effect and be in force from and after the first day of January 1878.

Approved, November 9th, 1877.

---

## AN ACT

CHANGING THE TIME OF HOLDING TERMS OF THE DISTRICT COURT AT WALLA WALLA.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the district court shall hereafter be held at Walla Walla city on the first Monday in May, and the fourth Monday in November in each year.

SECTION 2.  That all process returnable and all parties, witnesses, jurors, and other persons required to be, and appear at the October term one thousand eight hundred and seventy-seven, at Walla Walla; stand over and appear at said November term of said court.

SECTION 3.  All parts of acts conflicting with the provisions of this act in relation to district court in Walla Walla, be, and the same are hereby repealed.

SECTION 4.  This act to take effect and be in force from and after its approval by the Governor.

Approved, October 5th, 1877.

---

## AN ACT

IN RELATION TO ROADS AND HIGHWAYS IN THE COUNTY OF JEF-FERSON.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the county commissioners

of the county of Jefferson shall at their regular meeting in May in each year appoint a road supervisor in each road district in said counties, who shall hold their offices for one year or until their successor[s] are appointed and qualified.

SECTION 2. Each supervisor, before entering upon the duties of his office, shall make oath before some person duly authorized to administer the same, that he will faithfully and honestly discharge the duties of his office, obey and enforce all laws appertaining to his office, and shall give a bond in the sum of one thousand dollars to his county, with one or more sureties to be approved by the auditor, conditioned that he will faithfully and honestly discharge the duties of his office, obey and enforce all laws appertaining to the same, and pay over to the treasurer all moneys that may come into his hands by virtue of his office, which oath of office and bond shall be filed with the auditor.

SECTION 3. The supervisor of each road district shall have power to demand and collect from each person including Chinamen and taxable Indians residing or working in his district, not already taxed on the last assessment roll for his county, or who shall fail to produce a receipt for his tax of that year from the collector or supervisor of some other county in this Territory, or some other Territory or State in the union, the road poll tax required by law, giving his receipt to said person for the same and said supervisor shall expend all money so collected in improving the roads in his district.

SECTION 4. It shall be the duty of the county auditor to furnish the supervisor of each road district with a description of the boundaries of his district, and the changes or alterations which may be made by the board of county commissioners from time to time.

SECTION 5. It shall be the duty of the supervisor of each road district to carefully preserve all books, papers, and descriptions of boundaries and changes, and all tools and property of whatsoever nature or kind belonging to his office, and turn over the same to his successor on or before the third Monday in May of each year.

SECTION 6. The supervisor of roads shall keep open, or cause to be kept open all lawful public roads in his district which are now open and traveled by the public, and shall keep the same in good repair, provided there shall be sufficient money in the road fund of his district to do so.

SECTION 7. In those districts where public roads have been lawfully established and are not yet opened, or in case of new roads being hereafter laid out and established according to law, the supervisor shall open and work the same as fast as the

372        LOCAL AND PRIVATE LAWS.

road money in his district will allow, having due regard for the provisions in section 6 of this act.

SECTION 8.    The supervisor of any road district may enter upon any lands adjoining or near a public road in his district, and gather, dig, and carry away any stone, gravel, or sand, and cut down and carry off any trees or wood necessary for making or repairing any public road in his district, provided there are not sufficient stone, gravel, sand, trees, or wood suitable, within the lawful width of said road for said purpose; and may enter upon any lands adjoining or lying near any public road in his district, and cut, open, or construct such drains and ditches as he shall deem necessary for the making or ps[r]eservation of such road, doing as little injury as may be to such lands; and any person stopping or obstructing the drains or ditches so made, shall be liable to the county in which said road is situated in any sum not exceeding fifty dollars for each offense, to be recovered in a civil action, and applied to the general road fund.

SECTION 9.    In all cases where any oath or affirmation is required to be taken by any person other than a supervisor under the provisions of this act, the same may be administered by the supervisor.

SECTION 10.    If any person shall feel aggrieved by the act of any supervisor under the provisions of section 8 of this act, he may make complaint thereof in writing to the board of county commissioners, at the next regular meeting after the cause of such complaint shall exist, and such commissioners shall proceed to assess and determine the damages, if any, sustained by the complainant, and cause the same to be paid out of the general road fund.

SECTION 11.    The board of county commissioners shall, if they deem it advisable, purchase tools for the use of a road district, on application of the supervisor, to be paid out of the general road fund.

SECTION 12.    Each supervisor shall erect and keep up at all forks and crossings of public roads within his road district, guide or finger boards, (said boards to be furnished by the board of county commissioners and paid out of the general road fund), containing a description in legible letters, directing the way, and specifying the distance to the next town or public place situated on each road respectively.

SECTION 13.    It shall be the duty of each supervisor to furnish the board of county commissioners with the number of guide boards required in his district, and the inscriptions necessary for each board.

SECTION 14.    Any supervisor of roads who shall, under

any pretense whatever, give or sign any receipt or certificate purporting to be a receipt or certificate for money paid or labor performed, unless the money shall have been paid or the labor performed prior to giving or signing such receipt or certificate, shall be liable on his bond for the amount of each receipt or certificate so signed, with interest and costs of prosecution, for one year after his term of office has expired: *Provided*, That said amounts, shall not have been sooner paid or settled and discharged.

SECTION 15.  The resident real estate tax payers in any road district, may by petition signed by three-fourths of said tax payers, petition the board of county commissioners to vacate any lawfully established public road in their road district, and said board shall vacate said road, provided they are satisfied that the best interests of the general public will be sustained by so doing.

SECTION 16.  All petitions and remonstrances for the consideration of the board of county commissioners must be filed with the auditor prior to the first day of a regular meeting of said board, and all petitions and remonstrances presented for their consideration that have not been so filed, shall be laid over for action by said board until their next regular meeting.

SECTION 17.  It shall be the duty of the several boards of county commissioners of the counties named in this act at the time of levying taxes for county purposes in each year to levy and assess a road poll tax of four dollars on every male inhabitant of their respective counties, between twenty-one and fifty years of age except persons who are a public charge or too infirm to perform labor, also to levy and assess a tax of not less than two nor more than five mills on every dollar's worth of taxable property in their said counties.

SECTION 18.  All road and road poll tax shall be paid in money, in the same manner as other taxes are paid.

SECTION 19.  The auditor of each of said counties shall furnish the treasurer with the number of the respective road districts in his county, and the amount that each supervisor shall be allowed to draw orders for on the road fund of his district for the current year, as hereinafter provided.

SECTION 20.  All money collected from road and road poll taxes assessed in each road district, shall belong to that respective district, and shall constitute the road fund of that district, except delinquent road taxes, collections from supplemental lists, and the residue after the settlement with the supervisor in May, as hereinafter provided.

SECTION 21.  The treasurer shall keep an account with each road district in his county of all moneys paid into his

374        LOCAL AND PRIVATE LAWS.

hands belonging to each respective district, and shall pay out the same as hereinafter provided.

SECTION 22. Within ten days after the assessment roll has been completed and approved by the board of county commissioners the auditor shall furnish the supervisor of each road district with a certified statement of two-thirds of the amount of road tax assessed in his district for the year in which said assessment was taken.

SECTION 23. The supervisor of each road district shall have power to give orders on the treasurer for the amount furnished him by the auditor for each current year, as provided in section 22 of this act, for labor performed on the roads in his district as hereinafter provided.

SECTION 24. The supervisor of each road district shall, whenever in his opinion work should be performed on the roads in his district, or at the written request of two-thirds of the real estate resident tax payers in his district, notify the resident tax payers in said district to perform said labor, by posting written notices in five of the most public places in his district, at least five days prior to the time of meeting, which notices shall state the time and place of meeting, the kind of implements required, and if a team, wagon, cart, plow, or scraper are required, the supervisor shall give notice either verbally or in writing to the person or persons required to furnish the same.

SECTION 25. A day's labor under this act shall consist of nine hours, to wit.: From seven to twelve in the forenoon, and from one to five in the afternoon.

SECTION 26. The compensation for each days labor shall be two dollars per day for each individual, and three dollars per day for each team employed, to be paid out of the road fund of the district in which the labor shall have been performed.

SECTION 27. The supervisor shall give to each individual performing work under section 24 of this act, an order on the treasurer for the amount due to said individual, which order shall state the number of the road district in which said work was performed, and the treasurer shall pay the amount of said order out of any money in his hands belonging to said road district.

SECTION 28. Each order shall be numbered in regular rotation, commencing with No. 1, and ending with the last number issued prior to the close of the fiscal year of said supervisor.

SECTION 29. Any resident taxpayer who shall furnish the supervisor of his road district with the treasurer's receipt showing the amount of road tax paid by him, the same being for the last assessment made in his county, or who shall furnish said supervisor with a certified statement from the auditor of

the amount of his road tax for that year, shall be entitled to perform work, under the supervision of said supervisor, on the public roads in his district to the amount of said receipt or certificate if he so elect:  *Provided*, That said receipt or certificate shall be so furnished before said supervisor shall have exhausted the limit of his orders as provided in section 23. of this act; *And: provided further*, That in case the aggregated amount of said receipt and certificates so furnished shall at any time, exceed said limitation, or the balance of said limitation after orders have been issued, then in all such cases the supervisor shall adjust and determine the number of days that each man will be entitled to work, in equal ratio according to the amount of his tax, as shown by his receipt or certificate.

SECTION 30.   In case any resident taxpayer shall fail to attend, by himself or suitable substitute, and perform labor when notified by the supervisor as provided in section 24. of this act, or when so called, shall fail to perform a good and reasonable day's work, or refuse to obey the instructions of the supervisor, then said supervisor shall have other persons to perform said labor, who shall be paid in the manner hereinbefore provided.

SECTION 31.   Each supervisor shall keep a road book, to be furnished by the auditor at the expense of the county, in which he shall enter all accounts appertaining to his district.

SECTION 32.   Each supervisor shall keep an accurate account of all orders issued by him on the road fund of his district, which account shall show the number, date and amount of each order and to whom made payable, the aggregate amount of said orders, the number of day's work performed by each individual, and the aggregate number of said days.

SECTION 33.   Each supervisor shall keep an accurate account of the number of days he has been necessarily engaged in the performance of his duties as road supervisor; which account shall show the date of each day that he has been so engaged, and the nature of work performed on that day.

SECTION 34.   Each supervisor shall be allowed at the rate of three dollars per day for each day necessarily employed in the discharge of his duties, including the number of days necessarily occupied in going to and from the county seat and one day while there, as hereinafter provided, for the purpose of settling his accounts with the board of county commissioners:   *Provided*, That it shall appear from the accounts of said supervisor that he has not issued orders on the fund of his district in excess of his limit as provided in section 23. of this act, and in all cases where it shall so appear, the amount so

376        LOCAL AND PRIVATE LAWS.

found in excess shall be deducted from the amount of said supervisor's work.

SECTION 35.  The supervisors shall attend with their road book at the May meeting of the board of county commissioners, at which meeting the treasurer shall also attend, with all orders from said supervisors which have been paid by him as provided in section 27. of this act, and said commissioners shall examine the accounts of the said supervisors and compare the same with the vouchers of the treasurer, and if found correct, or in as many as are found correct, or corrected by the board, the board shall enter their approval in said road books with their signatures attached, attested by the clerk of the board, and they shall instruct said clerk to notify the treasurer in writing of the amount which they have found due each supervisor under the provisions of this act, and said treasurer shall pay said amount out of the road fund of their respective districts.  All orders issued by the supervisors on the road fund of his district must be presented to the treasurer for payment before the meeting of the board of county commissioners in May of each year, or they will be barred from payment.

SECTION 36.  In case the board of county commissioners at their May meeting in each year, shall find that there has not been sufficient means collected from the assessment of any road district to pay all lawful orders drawn by the supervisor on the fund of said district, including the amount awarded to the supervisor by said board in their settlement with him, then said board shall authorize the auditor to issue warrants on the treasurer, payable out of the general road fund, to the person or persons so entitled, for the amount of such deficiency.

SECTION 37.  In case the board of county commissioners at their meeting in May in each year, shall find that there has been more funds collected in a road district than was necessary to pay all lawful orders which have been drawn by the supervisor on the road fund of said district, including the amount awarded to the supervisor by the board, then said board shall authorize the auditor to notify the treasurer in writing of said amount in excess, and the treasurer shall transfer said amount to the general road fund of the county, and balance the account with said road district.

SECTION 38.  All delinquent road tax collected in said counties and all supplemental road tax assessed by the collector of taxes, together with the amounts provided in section 37. of this act, to be transferred from the road funds of the road districts in excess, shall constitute a general road fund for said county.

SECTION 39.  In case a county road in any road district, which is opened for travel, and is used by the general public

for such purpose, shall become obstructed by fallen timber or freshets after the limits of the road fund as provided in section 23, of this act has been exhausted, then it shall be the duty of the supervisor of the district in which said road is located, to immediately remove such obstruction; provided that he can do the same in two days time, but if more than two days time will be required to remove such obstructions, then it shall be the duty of said supervisor to notify, in writing or verbally as he may elect, stating the time and place of meeting, as many of the resident tax-payers of said district as can work to advantage in the clearing out of said obstructions, and in case said taxpayers do not appear and perform the work as directed by said supervisor, then said supervisor shall hire other persons to do said work, and he shall give to each person performing labor under this section, his certificate of the amount due said person at the rate of two dollars per day of nine hours each, which certificate shall state the date, the number of days work performed by said person and the place where such work was done, and upon the filing of such certificate with the auditor, the board of county commissioners, at their next regular session after the filing of such certificate, shall pay the amount stated in said certificate, in warrants on the general road fund, to the person so entitled, provided, that no satisfactory evidence be obtained by said board why said amount should not be paid, or any part thereof.

SECTION 40.    The supervisor of each district shall keep a separate account in his road book, of all work performed under section 39, of this act, which account shall show the number of days work performed by each person, the day and date of said work and where performed, the number of certificates issued, the date and amount of each, and to whom issued.

SECTION 41.    The auditor of each county shall furnish, at the expense of the county, all blanks and forms necessary for the provisions of this act, and he shall be entitled to a fee of fifteen cents for each certificate of the amount of road tax assessed to any one individual, to be collected from the person applying for the same, except in those counties where the auditor is paid a salary, no fee shall be charged.

SECTION 42.    All certificates issued by the supervisors as provided in section 39, of this act, must be filed with the auditor before the May meeting of the board in each year, or they will be barred from payment.

SECTION 43.    The board of county commissioners at their May meeting in each year, shall examine the certificates of road supervisors filed with the auditor as provided in section 42, of this act, and compare the same with the accounts of said supervisors as provided to be kept by section 40, of this act, and if

378          LOCAL AND PRIVATE LAWS.

found correct, the board shall certify the same in said road book, with their signatures attached, and attested by the clerk of said board; but in case the board shall find a deficiency against the county in the account of any supervisor, then said supervisor shall be held responsible for said deficiency as provided in section 34, of this act.

Section 41.  The board of county commissioners may, whenever they deem it necessary for the fulfillment of the requirements of this act, but not oftener than once a year, transfer any sum not exceeding one thousand dollars, from the county fund into the general road fund.

Section 42.  Any resident taxpayer who shall elect to work out his road tax under the provisions of this act, shall, if he own the same, and the supervisor direct, furnish a team, wagon, cart, scraper, plow, ax, pick, or other tools necessary to be used on the roads under the direction of said supervisor, who shall allow said person three dollars per day for the use of said team, and a reasonable compensation for the use of such wagon, cart, or tools, in discharge of any tax due from such person.

Section 43.  All parts of acts in conflict with the provisions of this act are hereby repealed.

Section 44.  This act to take effect and be in force from and after its approval by the Governor.

Approved, November 9th, 1877.

---

## AN ACT

### CREATING AND CONFERRING JURISDICTION UPON THE DISTRICT COURT OF STEVENS COUNTY.

Section 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That a court be and the same is hereby created and established within and for the county of Stevens to be called the district court of Stevens county.

Section 2.  That said district court shall have exclusive jurisdiction within said county of all matters and causes, except those in which the United States is a party in the same manner and to the same extent as is now had and exercised by the district court of the first judicial district holding terms at Colfax

for the counties of Stevens and Whitman with the same right of appeal certioria [certiorari] and writs of error to the supreme court as is now provided and allowed by law.

SECTION 3. Said court shall be held by the judge of the first judicial district at Fort Colville the county seat of Stevens county.

SECTION 4. The said judge of the first judicial district shall appoint a clerk of said district court of Stevens county who shall give bonds and security in such amount as shall be ordered by the court or the judge thereof and shall keep his office and the records of said court at said county seat of Stevens county.

SECTION 5. The district court of Stevens county shall be a court of record and the expenses of holding the same shall be paid by the said county of Stevens and the said county of Stevens shall also pay the amount of the necessary expenses incurred by the judge of the first judicial district in holding said district court of Stevens county said judge shall make a certified statement of the expenses necessari(a)lly incurred to the county auditor of Stevens county who shall draw a warrant on the treasury of said county for the amount so certified to by said judge.

SECTION 6. The various laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and criminal prosecution in Territorial causes shall govern the practice and proceedings in said district court of Stevens county except as herein otherwise provided.

SECTION 7. The regular terms of said district court of Stevens county shall be held on the second Monday in August in each and every year and each term shall be held for one week unless sooner adjourned: *Provided*, That no term of said court shall be held until the second Monday in August A. D. 1878.

SECTION 8. The board of county commissioners of said county of Stevens shall at their regular term in February in each and every year select from the statement of persons qualified a sufficient number of persons to serve as grand and petit jurors at the term of said court to be held next after said meeting and the auditor of said county shall furnish a list of the grand and petit jurors so selected to the clerk of the court of said Stevens county: *Provided*, That when for any cause there shall not be in attendance a sufficient number of qualified and competent grand and petit jurors or the regular jurors shall not have been summoned, or shall have been discharged, it shall be competent for the court to order a sufficient number of grand and petit jurors to be summoned from the bystanders or or from the body of the county.

SECTION 9. At least thirty days before the commencement of a term of said court the clerk thereof shall issue one

380        LOCAL AND PRIVATE LAWS.

venire embracing the names of the grand and petit jurors specifying which are grand and which are petit jurors commanding the sheriff of said county to summon the persons so named to attend at the first day of the term of said court.

SECTION 10.    The number summoned as grand jurors shall not exceed twelve and the number of petit jurors shall not exceed twenty-four and the provisions of law providing for the manner of selecting and procuring the attendance of jurors at terms of the several district courts of this Territory consistent with the foregoing and not modified thereby shall fully apply to district court of the county of Stevens.

SECTION 11.    The foregoing sections which relate to summoning grand and petit jurors for terms of said district court of Stevens county shall not be construed to alter, amend, or repeal the law now in force in regard to the quota of jurors to be summoned from said Stevens county on behalf of the United States to attend the district court of the first judicial district holding terms at Colfax but said county of Stevens shall not be chargeable in any event for the mileage or attendance of any grand or petit jurors who may be summoned to attend at the district court of the first judicial district at Colfax except upon the order of the judge thereof.

SECTION 12.    The various laws now in force and which may hereafter be enacted regulating the practice and proceedings in civil actions and criminal proceedings in Territorial causes shall govern the practice and procedings in said district court in the county of Stevens.

SECTION 13.    All provisions of any act or parts of acts in conflict with this act are hereby repealed.

SECTION 14.    This act shall take effect and be in force from and after its passage.

Approved, October 19th, 1877.

---

## AN ACT

"TO PROVIDE FOR THE LOCATION OF A TERRITORIAL ROAD FROM WILLAPA RIVER TO CHEHALIS STATION AND TO APPROPRIATE MONEY TO AID IN THE CONSTRUCTION OF SAID ROAD."

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of five hundred

dollars be and the same is hereby appropriated for the purpose of aiding in the location and construction of a Territorial road from Willapa river in Pacific county to Chehalis Station in Lewis county: *Provided, however,* That the county of Pacific shall appropriate the sum of ($500) in for a like purpose.

SECTION 2.    Sebastian Giesy and Hiram Towner of Pacific county and James T. Berry, of Lewis county are hereby appointed and constituted a board of commissioners to view, locate and mark out a Territorial road from Willapa river in Pacific county to Chehalis Station in the county of Lewis by the nearest and most practicable route.

SECTION 3.    Said commissioners shall meet on the first Monday in May (A. D. 1878) or as soon thereafter as a majority of said commissioners shall agree upon and after being duly sworn by an officer duly authorized to administer oaths faithfully to perform the duties assigned to them, shall proceed to view locate and mark out a road between said points on the ground best adapted for that purpose.

SECTION 4.    Said commissioners shall make a true report of their proceedings and cause a certified copy thereof to be filed with the secretary of the Territory and also with the county auditor of the respective counties through which the road will pass, within thirty days from the completion of the view and location of said road.

SECTION 5.    Before entering upon the construction of said road the commissioners shall enter into a bond to the Territory of Washington in the sum of two thousand dollars with at least two sufficient sureties which bond must be approved by the judge of the second judicial district and shall be conditioned for the faithful performance by said commissioners of their duties as such commissioners and for the economical expenditure of the money appropriated by this act, and file said bond in the office of the secretary of the Territory. And they shall be entitled to receive the sum of three dollars per day for the time actually employed in performing the duties assigned to them which amounts shall be deducted from the amount appropriated in section one of this act. And it shall be the duty of said commissioners to expend the balance of the said sum of five hundred dollars appropriated in section one of this act and also the sum of five hundred dollars appropriated by Pacific county in accordance with section one of this act, in a judicious and economical manner in the construction and opening of said road and to make a report of their proceedings and expenditures to the auditor of their respective counties and the money so disbursed shall be expended in each of the counties named in this act in proportion to the amount of work done in each county respectively.

382        LOCAL AND PRIVATE LAWS.

• SECTION 6. After the report of said commissioners has been filed in the office of the secretary of the Territory as provided in section four of this act, it shall be the duty of the Territorial auditor to draw a warrant on the Territorial treasurer which warrant shall be payable to the persons named in section two of this act or to their successors in office and shall be drawn for the sum of five hundred dollars as appropriated in section one of this act.

SECTION 7. This act to take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

## AN ACT

FOR THE RELIEF OF LEWIS COUNTY WASHINGTON TERRITORY APPRO-

PRIATING THE AMOUNT OF ITS TERRITORIAL TAXES FOR

THE YEARS A. D. 1877 AND 1878 TO SAID COUNTY FOR THE

BUILDING OF BRIDGES THEREIN.

WHEREAS, The county of Lewis, was organized under the provisional government of Oregon prior to the organization of the Territory of Oregon; and

WHEREAS, Said county embraced all that area of country between the Columbia river and British Columbia, and between the Pacific ocean and Cowlitz river; and

WHEREAS, Large indebtedness was incurred by said county prior to the organization of other counties within said area, and no part of said indebtedness was assumed by such later organized counties; and

WHEREAS, Much of said indebtedness, was incurred in the opening of a highway from the Columbia river to Puget Sound in the political and governmental organization of said district of country and other objects of a like public nature; and

WHEREAS, Much of said indebtedness, and with the interest thereon is subsisting against said Lewis county; and

WHEREAS, Said county is so embarrassed by accumulated indebtedness, as to be unable from its county revenues to build

the bridges that are necessary and indispensable to the wants of its people:

SECTION 1. *Therefore, Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Territorial tax of Lewis county for the year A. D., 1877, and the year A. D. 1878 be and the same is hereby appropriated to be expended under the direction and control of the county commissioners of Lewis county as heretofore provided by law for building and repairing bridges.

SECTION 2. The treasurer of said county of Lewis shall hold said Territorial tax for the years above specified upon collection thereof, subject only to the order of the county commissioners of said county and shall keep a true and correct account of all money so disbursed and said Territorial tax shall be considered and held, by said treasurer as a special fund for the purpose specified in section first of this act.

SECTION 3. The county commissioners of said county of Lewis, shall have power to make settlement with the treasurer of the said county in the same manner as heretofore provided by law for settlement of county taxes.

SECTION 4. The county auditor of the said county of Lewis shall make out a true statement of the expenditures of the taxes hereby appropriated under the seal of the county commissioners with his signature attached, countersigned by the chairman of the said board of commissioners, and transmit the same to the Territorial auditor who upon receipt of said account, shall credit the said county of Lewis, with the amount so expended in settlement with said county, as provided by law for such settlements.

SECTION 5. This act to take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

---

## AN ACT

TO PROVIDE FOR THE RECOVERY OF CERTAIN MONEY RAISED TO AID IN THE CONSTRUCTION OF A WAGON ROAD ACROSS THE CASCADE MOUNTAINS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That any person who may

384        LOCAL AND PRIVATE LAWS.

have received any money for the purpose of constructing a wagon road across the Cascade mountains by virtue of an act entitled an "act to aid in the construction of a wagon road across the Cascade mountains," approved, November 12th 1875, shall upon the written demand of the auditor of King county pay into the treasury of King county any and all such money so acquired.

Section 2. The board of commissioners of King county are hereby authorized to appropriate all moneys paid into the treasury under the provisions of this act for the purpose of aiding in the construction of a wagon road across the Cascade mountains from Snoqual(a)mia[e] Prairie in King county to a point at or near the south end of Lake Kichelas in Yakima county.

Section 3. Upon the refusal of any person so having received any money to pay said money into the treasury of King county it shall be the duty of the prosecuting attorney of the district in which said person resides to bring suit in the name of the Territory for the recovery of said money which shall be paid into the treasury of King county as provided in this act.

Section 4. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

----

## AN ACT

### IN RELATION TO ROADS AND BRIDGES IN KLICKITAT COUNTY.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That should the road supervisor from any cause fail to collect any of the taxes as already provided by law by the first Monday in May in each year it shall be the duty of the said road supervisor to immediately make a return verified by affidavit of all unpaid road taxes to the county auditor whose duty it shall be within ten days thereafter to add ten per cent to such unpaid road tax and to make a transcript of the same and attach his warrant thereto which transcript and warrant shall immediately be placed in the hands of the sheriff of the county.

## LOCAL AND PRIVATE LAWS.    385

SECTION 2. The sheriff shall collect the taxes and per cent in the same manner that unpaid Territorial, school and county taxes are collected and he shall be entitled to retain the ten per cent added as his fees for collections and no other or greater fees shall be allowed for collecting said delinquent road tax.

SECTION 3. The provisions of an act amendatory of an act in relation to roads ferries bridges and travel on public highways approved Dec 2 1869 be and the same are hereby repealed so far as they relate to Klickitat county.

SECTION 4. This act shall be in full force and effect from and after its passage and approval.

Approved, November 9th, 1877.

---

## . AN ACT

### AUTHORIZING THE COUNTIES OF PACIFIC AND CHEHALIS TO APPRO-PRIATE MONEY FOR THE PURPOSE OF BUILDING BRIDGES AND PUBLIC HIGHWAYS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the county commissioners of the counties of Pacific and Chehalis shall have power and they are hereby authorized to appropriate annually a sum not exceeding twelve hundred dollars out of the general fund in the county treasury of said counties, for the purposes of building bridges and public highways in said counties.

SECTION 2. All money appropriated by the commissioners of said counties for the purpose aforesaid shall be expended by and under the supervisors of the public roads in whose districts said appropriation shall have been made: *Provided, however,* That the said expenditure be by and under the direction of the board of county commissioners. This act shall take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

49

386        LOCAL AND PRIVATE LAWS.

## AN ACT

### IN RELATION TO DELINQUENT ROAD TAX IN YAKIMA COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section one of an act amendatory of an act approved November twelfth, one thousand eight hundred and seventy-five entitled an act in relation to roads ferries bridges and travel on public highways approved December second eighteen hundred and sixty-nine" be amended as follows:

That where the words first Monday of January appear in said section they be stricken out and the words second Monday in July be inserted instead.

SECTION 2. All acts or parts of acts in conflict with this act are hereby repealed.

SECTION 3. This act shall take effect and be in force from and after its passage and shall only apply to the county of Yakima.

Approved, November 9th, 1877.

## AN ACT

### RELATING TO ROAD DISTRICTS IN SAN JUAN COUNTY.

WHEREAS, The county of San Juan includes several small islands and it is necessary that each of said islands however small in area or few in population shall of itself be a road district and

WHEREAS, The board of county commissioners of said county have heretofore been necessitated to create separate road districts of several of those islands upon petitions without the number of signers thereof required by law, therefore,

LOCAL AND PRIVATE LAWS.     387

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the county commissioners of said San Juan county are hereby authorized upon the petition of a majority of citizens of either of the said small islands constituting said county of San Juan although such majority should not be equal to the number of petitioners as prescribed by the road laws of the Territory to constitute such small islands into a separate road district.

SECTION 2. The action heretofore of said board of county commissioners in constituting separate road districts in the islands of Blakely Decatur, Waldron, and Shaw although upon petitions signed by less than the legally required number of petitioners, be and the same is hereby declared valid, and all roads in such districts and all acts of road supervisors or such districts or other acts growing out of the section of such districts by the county commissioners are hereby fully legalized, as though done and performed in a road district in all respects lawfully established.

SECTION 3. This act to take effect from and after its passage.

Approved, November 9th, 1877.

----

## AN ACT

TO CREATE A TERRITORIAL ROAD FROM DAYTON IN COLUMBIA TO PALOUSE CITY IN WHITMAN COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of Washington Territory,* That C. A. McCabe of Columbia county, John B. Tabor and William P. Breeding of Whitman county be and are hereby constituted a board of commissioners to view, survey, and locate a Territorial road from Dayton in Columbia county via Marengo and crossing Snake river at Almota in Whitman county to Palouse city in Whitman county Washington Territory.

SECTION 2. Said commissioners shall meet at Palouse City on the 15th day of November A. D. 1877 or within ten days thereafter, and after being duly sworn by an officer author-

388        LOCAL AND PRIVATE LAWS.

ized to administer oaths faithfully to perform the duties assigned them, shall proceed to view, locate and mark out a road between said points on the ground best adapted for that purpose and on the most practicable route according to the provisions of this act and to make a report thereof to the county commissioners of Whitman and Columbia counties at their next regular terms thereafter and the county commissioners of said counties shall declare the same a Territorial road.

SECTION 3. The county commissioners of said counties shall cause the said report together with their action thereon to be recorded in the road book of their respective counties.

SECTION 4. The said viewers shall receive four dollars ($4.00) per day for performing the duties, assigned them each one to be paid out [of] the treasury of his own county.

SECTION 5. This act to take effect and be in force from and after its passage.

Approved, October 27th, 1877.

---

# AN ACT

## TO PROVIDE FOR THE PAYMENT OF THE EXPENSE OF A TELEGRAM TO THE PRESIDENT.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of thirteen dollars and sixty cents, (13.60), is hereby appropriated to pay the expense of a telegram, sent by the Governor, to the President, in reference to an extra session of the Legislative Assembly.

SECTION 2. The auditor is hereby authorized to draw a warrant upon the treasurer for said amount in favor of the Western Union Telegraph company and the treasurer is authorized to pay the same out of any money, not otherwise appropriated.

SECTION 3. This act to take effect, from and after its approval.

Approved, November 9th, 1877.

# AN ACT

### DECLARING A CERTAIN ROAD TO BE A TERRITORIAL ROAD.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the road leading from a point at or near Oliver Shead's mill on Skookumchuck in Thurston county to a point at or near the residence of Benj. McElroy in Lewis county intersecting the Territorial road at that point, be and the same is declared to be a Territorial road.

SECTION. 2. This act to take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

---

# AN ACT

### TO DEFRAY THE INCIDENTAL EXPENSES OF THE SIXTH BIENNIAL SESSION OF THE LEGISLATIVE ASSEMBLY OF THE TERRITORY OF WASHINGTON.

SECTION. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington* That the sum of two hundred dollars be and the same is hereby appropriated out of the Territorial treasury for the purpose of defraying incidental expenses of the Legislative Assembly of the Territory of Washington in the sixth biennial session thereof, for stationery, light, &c used, and to be used at said session.

SECTION 2. That the Territorial auditor be and is hereby authorized to draw a warrant in favor of the chairman of the committee appointed in accordance with the provisions of this act, on the Territorial treasurer for the sum of two hundred dollars for the purpose of defraying the incidental expenses, and the Territorial treasurer is hereby authorized to pay the same.

SECTION 3. The above amount, or as much thereof as shall

390        LOCAL AND PRIVATE LAWS.

be necessary, shall be expended for the purpose above mentioned by a special committee of one member of the council and two from the house of representatives to be appointed by the presiding officers of the respective branches of the Legislative Assembly.

SECTION 4.    It shall be the duty of said committee to keep a true and correct account of all moneys expended and purchases made, and make a return thereof as often as required by the council or house of representatives, and if any balance should remain on hand at the time of adjournment of the Legislature, the same shall be paid back into the Territorial treasury.

SECTION 5.    This act to take effect and be in force from and after its passage and approval.

Approved, October 20th, 1877.

---

## AN ACT

### FOR THE RELIEF OF HENRY L. CHAPMAN AND OTHERS.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of two hundred and fifty-two dollars be and the same is hereby appropriated out of the Territorial treasury to pay Henry L. Chapman for wharfage and storage of Territorial arms. That the sum of one hundred and seven dollars and fifty cents be and the same is hereby appropriated out of the Territorial treasury to pay E. P. Ferry governor of the Territory of Washington for actual traveling expenses incurred in visiting Eastern Washington during the time of Indian difficulties. That the sum of seventy-two dollars and seventy-five cents be and the same is hereby appropriated out of the Territorial treasury to pay the actual expenses incurred by John R. Wheat Territorial auditor, in visiting Eastern Washington to look after Indian matters. That the sum of ninety-three dollars and ninety-three cents be and the same is hereby appropriated out of the Territorial treasury to pay the Walla Walla and Columbia River Railroad Company for the transportation of arms and accoutrements from the Columbia river to Walla Walla City.

Section 2. The Territorial auditor is hereby authorized to draw warrants on the Territorial treasury in favor of the above named persons, and for the above named amounts.

Section 3. This act shall take effect and be in force from and after its approval.

Approved, November 9th, 1877.

---

# AN ACT

## TO PROVIDE FOR THE PAYMENT OF STORAGE AND TRANSPORTATION OF ARMS.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Territorial auditor be and he is hereby authorized to draw warrants upon the treasury in favor of the Oregon Steam Navigation Company, or any other transportation company for, not to exceed the sum of, eighty-five (85) dollars for storage, wharfage and transportation of Territorial arms from Celilo, in the State of Oregon to Olympia of Washington Territory.

Section 2. This act shall take effect and be in force from and after its approval.

Approved, November 9th, 1877.

---

# AN ACT

## FOR THE RELIEF OF THE BOARD OF TRUSTEES OF TACOMA LODGE NO. (4) FOUR, I. O. G. T.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of three hundred dollars ($300.00) be, and the same is hereby appropriated out

392        LOCAL AND PRIVATE LAWS.

of any funds of the Territorial treasury for the relief of the board of trustees of Tacoma Lodge number (4) four, I. O. G. T., whereof C. B. Mann is president, for the rental of a room in Olympia Hall building belonging to Tacoma Lodge number four (4) I. O. G. T; said room having been used to contain and for the sole use of the Territorial library since November first one thousand eight hundred and seventy-five, two years to November 1st, 1877.

SECTION 2. The Territorial auditor is hereby authorized and required to draw his warrant on the Territorial treasurer for the sum of three hundred dollars ($300.00) in favor of C. B. Mann, president of the board of trustees of Tacoma Lodge number four (4) I. O. G. T. and the Territorial treasurer is hereby authorized and required to pay the same out of any funds in the treasury not otherwise appropriated.

SECTION 3. This act shall take effect and be in force from and after its passage.

Approved, November 9th, 1877.

------

# AN ACT

## TO PROVIDE AND PAY FOR ADDITIONAL ENROLLING CLERKS FOR THE SIXTH BIENNIAL SESSION OF THE LEGISLATIVE ASSEMBLY OF WASHINGTON TERRITORY.

*Be it enacted by the Legislative Assembly of the Territory of Washington,*

SECTION 1. That the committee on enrolled bills of the two houses be and they are hereby authorized and directed to procure the services of additional enrolling clerks for the present session of said Assembly.

SECTION 2. The said committees shall issue vouchers to said clerks properly certified by the chairman of said committees and upon the presentation of said vouchers to the Territorial auditor such auditor shall audit the accounts and if found correct shall draw his warrant for the amounts due in favor of such clerks, and upon presentation of such warrants to the Territorial treasurer the same shall be paid by him out of any moneys in the treasury not otherwise appropriated: *Provided,*

## LOCAL AND PRIVATE LAWS.    593

That the total amount to be paid by the provisions of this act shall not exceed one hundred and fifty dollars.

SECTION 3. This act to take effect and be in force from and after its passage.

Approved November 9, 1877.

———————

## AN ACT

### FOR THE RELIEF OF JOHN T. HICKLIN.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of three hundred dollars be and the same is hereby appropriated out of any money in the Territorial treasury to pay John, T. Hicklin for labor and money advanced in opening the Territorial road from Olympia in Thurston county to Elma in Chehalis county.

SECTION 2. The Territorial auditor is hereby instructed to issue to said John T. Hicklin, a Territorial warrant for the above named sum on the Territorial treasurer, payable out of any money not otherwise appropriated.

SECTION 3. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

———————

## AN ACT

### FOR THE RELIEF OF JOHN SALTER.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,*

50

394        LOCAL AND PRIVATE LAWS.

SECTION 2.  That the sum of eighty-five dollars be and the same is hereby appropriated out of any funds in the Territorial treasury not otherwise appropriated for the payment of John Salter for services as secretary of the board of trustees, of the hospital for the insane since February twenty-third A. D. one thousand eight hundred and seventy-seven(ty) (1877) up to date.

SECTION 3.  That the Territorial auditor be and is hereby authorized and directed to draw a warrant in [on] the Territorial treasurer for said amount.

SECTION 4.  This act to take effect from and after its passage and approval

Approved, November 9th, 1877.

---

## AN ACT

FOR THE RELIEF OF EZRA P. BOYLS EX-TREASURER OF YAKIMA COUNTY WASHINGTON TERRITORY AND LEWIS H. GOODWIN, ORIN D. BARKER, JAMES S. FOSTER AND H. D. MERWIN HIS SURETIES FROM A JUDGMENT OBTAINED AGAINST THEM AT THE OCTOBER TERM A. D. 1877 OF THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT CF WASHINGTON TERRITORY HOLDING TERMS AT YAKIMA CITY.

SECTION 1.  *Be it enacted by the Legislative Assembly of Washington Territory*, That said Ezra P. Boyls late treasurer of Yakima county in Washington Territory and Lewis H. Goodwin, Orin D. Barker, James S. Foster, and H. D. Merwin sureties on the official bond of said Boyls as such treasurer be and they and each of them are hereby released and discharged from all and every obligation, indebtedness and demand created against them or any of them by virtue of a certain judgment rendered against them and in favor of said Yakima county at the October term A. D. 1877 of the District court of the first judicial district of Washington Territory holding terms at Yakima City and that execution be and is hereby perpetually stayed upon said judgment.

LOCAL AND PRIVATE LAWS.        395

SECTION 2.  This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

### FOR THE RELIEF OF E. L. WILLEY.

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1.  That the sum of eighty-seven dollars be and the same is hereby appropriated out of the Treasury of the Territory of Washington for the payment of E. L. Willey for per diem as trustee of the board of the Hospital for the Insane, the same being for services rendered for which there is no provision made for the payment of the same by the Territory of Washington.

SECTION 2.  When demanded it shall be the duty of the Territorial Auditor to draw a warrant on the Territorial Treasury for the said amount and it is hereby made the duty of the Treasurer to pay the same out of any moneys in the Treasury not otherwise appropriated.

SECTION 3.  This act to take effect and be in force from and after its passage.

Approved November 9th 1877.

---

# AN ACT

### FOR THE RELIEF OF WILLIAM BILLINGS.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That there be and hereby is ap-

396            LOCAL AND PRIVATE LAWS.

propriated out of any money in the Territorial treasury not otherwise appropriated the sum of four hundred and forty-one dollars to reimburse William Billings for money by him expended in bringing from the province of British Columbia and delivering to the proper authorities of Washington Territory Andrew StMartin and Dabney G. Jones fugitives from the justice of sa'd Territory.

SECTION 2. The Territorial auditor is hereby directed to draw his warrant on the Territorial treasurer in favor of said William Billings for the sum of four hundred and forty one (441) dollars and the Territorial treasurer is hereby directed to pay said warrant in its regular order.

SECTION 3. This act shall take effect from and after its passage.

Approved, November 9th, 1877.

————————●————————

# AN ACT

## FOR THE RELIEF OF J. C. KELLY, THOMAS DEALEY AND JOHN FITZPATRICK.

*Be it enacted by the Legislative Assembly of Washington Territory,* That J. C. Kelly, Thomas Dealey and John Fitzpatrick and each of them as well as the heirs, executors and administrators of each of them be and they hereby are fully released and discharged from all obligations and liability incurred by reason of a certain recognizance or bail-bond for five hundred dollars signed and executed by the said Dealey and Fitzpatrick—dated the — day of October A. D. 1875, and returned into the district court of the second judicial district of Washington Territory holding terms at Kalama, and further that each and all of said parties, their heirs, executors and administrators, be and they hereby are resolved, discharged and fully absolved from all obligation claim and liability on account of the judgment if [of] forfeiture entry upon said recognizance or bail-bond in the said district court at its June term A. D. 1876, upon payment of all costs incurred in said court by reason of said judgment of forfeiture.

LOCAL AND PRIVATE LAWS.     397

SECTION 2. That this act take effect and be in force from and after its passage.

Approved, November 9th, 1877.

———————

# AN ACT

### FOR THE RELIEF OF JOHN P. JUDSON.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of one hundred and twenty dollars, be and the same is hereby appropriated, to John P. Judson, out of any moneys not otherwise appropriated, for services rendered in securing three hundred and twenty acres of land for the University of Washington Territory, and for money expended for printing the proposed school law, at the request of the Territorial teachers institute.

SECTION 2. The Territorial auditor is hereby instructed to issue, to said John P. Judson, a Territorial warrant for the aforesaid sum, and the treasurer is instructed to pay the same.

SECTION 3. This act shall be in force from and after its passage.

Approved, November 9th, 1877.

———————

# AN ACT

### FOR THE RELIEF OF THE CLERKS AND EMPLOYEES OF THE PRESENT LEGISLATIVE ASSEMBLY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Territorial auditor be

398        LOCAL AND PRIVATE LAWS.

and he is hereby authorized to draw warrants on the Territorial treasury for the following sums of money, to the following named clerks and employees of this Legislature for two days extra services each: to wit   T. B. Merry, sixteen dollars; R. G. O'Brien, sixteen dollars; William Huges, twelve dollars; James T. Berry, twelve dollars; Fannie Baldwin, ten dollars; Clara E. Myers, ten dollars; Annie Knighton ten dollars; Stella Galligher, ten dollars; I. V. Mossman, ten dollars; L. B. Berry, ten dollars; Frank Hastings, ten dollars; L. G. Abbott, ten dollars; Minnie Hathaway, ten dollars; Robert Wilson, ten dollars; E. Harmon, ten dollars; Hector McKay, ten dollars: *Provided*, The forty-sixth Congress of the United States now in session do not make an appropriation to pay the same.

SECTION 2.   This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

———————•———————

AN ACT

TO PROVIDE FOR THE PROTECTION OF DEER IN THE COUNTIES OF
JEFFERSON AND CLALLAM, IN THE TERRITORY OF WASHINGTON.

SECTION 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That it shall be unlawful for any person or persons to kill deer for the purpose of selling the same, or offering the same to any market, resto[au]rant hotel or family.

SECTION 2.   That it is hereby declared unlawful for any person or persons to kill or hunt deer in the above named counties from the first day of January to the first day of July in each year.

SECTION 3.   That it shall be unlawful for any person or persons to hunt deer moose or elk, with dogs in the above named counties at any season of the year, any person or persons violating any of the provisions of this act shall be fined in the sum of seventy[-]five ($75.00) dollars or six months imprisonment in the county jail or both at [t]he discretion of the court for every offence so committed.

LOCAL AND PRIVATE LAWS.          399

SECTION 4. That one half of all fines under the provisions of this act shall be paid by the court to the informer, and the other half shall be paid into the general school fund to the county in which the offence is committed.

SECTION 5. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

————————

## AN ACT

### AUTHORIZING THE COUNTY COMMISSIONERS OF STEVENS COUNTY TO LEVY A SPECIAL TAX FOR BRIDGE PURPOSES.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the County Commissioners of Stevens County are hereby authorized to levy a special tax upon the assessable property of said County for the purpose of building a bridge across the Spokane river at or near Spokane Falls.

SECTION 2. Said amount shall be expended under the direction of the board of County Commissioners of the County of Stevens.

SECTION 3. This act to take effect and be in force from and after its approval by the Governor.

Approved October 30th 1877.

————————

## AN ACT

### DONATING THE ROAD PROPERTY TAX OF SAN JUAN COUNTY TO SCHOOL FUND OF SAID COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the road tax levied and

400        LOCAL AND PRIVATE LAWS.

collected in the county of San Juan shall be payable in money and be collected at the time and in the manner that Territorial, county and school taxes are now by law collected.

Section 2. So much of said road fund or road tax as shall be levied from assessments upon property is hereby set apart and donated to the school fund of said county, and the same shall be apportioned and expended as the common school fund in said county of San Juan is now by law apportioned and expended.

Section 3. Laws or parts of laws inconsistent with the provisions of this act shall be inoperative in the county of San Juan.

Section 4. This act to take effect and be in force from and after its passage and to apply to any road property tax of the year 1877, which may remain unexpended.

Approved, November 9th, 1877.

---

## AN ACT

### TO AUTHORIZE THE TERRITORIAL TREASURER TO REFUND CERTAIN MONEYS.

Section 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Territorial auditor shall audit the following bill and if found correct shall draw a warrant on the Territorial treasurer for such amount as is found to be due in favor of Mr. H. Hartley and the Territorial treasurer is hereby authorized to pay the sum out of any money in the treasury not otherwise appropriated.

(BILL.)

| The Territory of Washington to H. Hartley, | Dr. |
|---|---|
| To  cash deposited in the  treasury by the  Governor July 22d 1873, on account of fund for keeping patients at the Hospital for Insane  sixty dollars | $60.00 |
| Credit by four weeks board of inmate, | $28.00 |
| Balance due | $32.00 |

Section 2. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

## AN ACT

### TO AMEND AN ACT ENTITLED "AN ACT CONCERNING MARKS AND BRANDS IN CERTAIN COUNTIES IN WASHINGTON TERRITORY, APPROVED NOVEMBER 12TH 1875.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section four of an act entitled an act concerning marks and brands in certain counties in Washington Territory approved November 12th 1875, be and the same is hereby made to apply to the whole of Washington Territory.

SECTION 2.  All acts or parts of in conflict with this act are hereby repealed.

SECTION 3.  This act to (to) take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

### TO REPEAL AN ACT ENTITLED AN ACT TO REGULATE THE RUNNING OF SHEEP AT LARGE IN SAN JUAN COUNTY APPROVED, NOVEMBER 12th, 1875.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That an act entitled "An act to regulate the running of sheep at large in San Juan county approved November twelfth (12) one thousand eight hundred and seventy-five, be and the same is now hereby repealed.

SECTION 2.  This act to take effect, and be in force from and after its passage and approval.

Approved, November 9th, 1877.

51

402          LOCAL AND PRIVATE LAWS.

## AN ACT

### FOR THE RELIEF OF J. R. THOMPSON, D. N. UTTER, J. P. LUDLOW, AND A. ATWOOD.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the sum of twenty-five dollars each, be, and the same, is hereby appropriated out of any money in the Territorial treasury, not otherwise appropriated, for the relief of Rev. J. R. Thompson, D. N. Utter, J. P. Ludlow and A. Atwood.

SECTION 2. Upon demand, it shall be the duty of the Territorial auditor, to draw his warrant on the Territorial treasury, in favor of each, said, J. R. Thompson, D. N. Utter, J. P. Ludlow and A. Atwood for twenty-five dollars ($25.00) each, which shall be paid out of any money in the Territorial treasury, not otherwise appropriated.

SECTION 3. This act shall take effect and be in force from and after its approval.

Approved, November 9th, 1877.

## AN ACT

### FOR THE RELIEF OF HALL'S SAFE AND LOCK COMPANY.

WHEREAS A joint committee of the Legislative Assembly of the Territory of Washington did receive a proposition from Hall's Safe and Lock Company to deliver two safes on the wharf at Olympia Washington Territory, for the sum of one thousand dollars in Territorial warrants, the said safes to be of the dimensions hereinafter mentioned in this bill. Therefore:

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That upon the delivery of two safes by the Hall's Safe and Lock Company at Olympia Wash-

ington Territory to George A. Barnes and upon his becoming satisfied that the same are in good condition and of the following dimensions, to wit.:

One fire proof safe, inside measurements twenty-five by twenty-four and one half by sixteen inches deep. Weight two thousand seven hundred pounds.

One fire and burglar proof safe, inside measurements thirty-one by twenty-four and one half by seventeen inches deep. Weight, four thousand two hundred lbs. (pounds), and upon the certificates of the said George A. Barnes that said safes are of the dimensions aforesaid and in accordance with contract for the same, it is hereby made the duty of the Territorial auditor to draw a warrant on the Territorial treasurer for the sum of one thousand dollars in favor of said Hall's Safe and Lock Com[p]any, and for the further sum of one hundred dollars or as much as may be necessary to place said safes in the offices of the Territorial auditor and treasurer in favor of said George A. Barnes, out of which amount he is authorized to retain five dollars per diem for superintending the removal of said safes, and it is hereby made the duty of the Territorial treasurer to pay said amount out of any monies[eys in the treasury not otherwise appropriated.

This act to take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

# AN ACT

## TO PROVIDE FOR THE APPOINTMENT OF A COUNTY ASSESSOR IN THE COUNTY OF PIERCE AND DEFINING HIS DUTIES.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That at the regular meeting in November, A. D. one thousand eight hundred and seventy eight of the Board of County Commissioners of the county of Pierce, and at each November term thereof, there shall be appointed in said county, a county assessor who shall have the qualifica-

404      LOCAL AND PRIVATE LAWS.

tions of a voter, and shall continue in office for one year and until his successor is appointed and qualified.

SECTION 2. The said assessor shall, before entering on the discharge of the duties of his office, give a bond to the county of Pierce with two or more sureties to be approved by the board of county commissioners, in such penal sum as such board shall direct conditional for the faithful performance of his duties according to law, and shall take and subscribe an oath faithfully and impartially to discharge the duties of his office according to law and to the best of his ability.

SECTION 3. In addition to the other duties of assessor prescribed by the general revenue law, it shall also be his duty at the time of making his annual assessment to take a census of all the inhabitants in his respective county, comprising a complete list of all the white male inhabitants, their occupations, ages, nationality, whether married or single, citizens or aliens, also a list of all female inhabitants their ages, whether married or single and also a list of all taxable half-breeds, Indians, Negroes, Mulattoes, Kanakas, and Chinamen; the said list shall be returned to the county auditor, at the time now, or hereafter provided by law, to be filed in his office and a copy of the same shall be forwarded by the auditor to the Territorial auditor, the substance of the same to be embodied by him in his report to the Legislative Assembly.

SECTION 4. That it may be competent for any assessor, in case of his being prevented by sickness or any other unavoidable cause as above descr bed, to appoint some suitable person having the qualifications of a voter, his deputy, who shall perform all the duties of the assessor he represents, and for whose acts the assessor shall be responsible, and said deputy shall, before he enters upon the discharge of the duties of his office take and subscribe before the county auditor an oath faithfully and impartially to perform the duties devolving upon him which oath shall be filed in the office of the county auditor.

SECTION 5. Each assessor shall receive a compensation of five dollars per day for each day actually and necessarily employed in the discharge of the duties of his office and such reasonable compensation for the copy of the assessment roll, as the board of county commissioners may allow, which compensation shall be paid out of any moneys in the county treasury not otherwise appropriated.

SECTION 6. Any vacancy occurring in the office of county assessor before the expiration of his term of office shall be filled by the county commissioners at any session of their board.

SECTION 7. All parts of acts in conflict with this act be and the same are hereby repealed.

Approved, November 6th, 1877.

LOCAL AND PRIVATE LAWS.    405

## AN ACT

### TO DECLARE SAMAMISH SLOUGH IN THE COUNTY OF KING A PUBLIC HIGHWAY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the Samamish slough in King county be, and the same is hereby declared a public highway from Samamish Lake to Lake Washington.

SECTION 2. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

### IN RELATION TO THE RELOCATION OF THE COUNTY SEAT OF KLICKITAT COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall be the duty of the county commissioners of Klickitat county to submit the question of the relocation of the county seat of said county to the voters at the general election to be held A. D. 1878.

SECTION 2. Any legal voter may at such general election designate on his ballot by either printing or writing the name of the place he prefers as the county seat of said county and it shall be the duty of the county commissioners at its first regular meeting held after such general election to declare the place which has received a majority of legal votes to be the county seat of said county: *Providing,* That the county seat shall not be changed unless three fifths (3-5) of all legal votes cast shall be in favor of any one place.

SECTION 3. The votes cast in pursuance of this act shall be canvassed and returned at the same time and in the same

406        LOCAL AND PRIVATE LAWS.

manner as is required by law for canvassing and returning votes for the county officers.

SECTION 4.    It shall be the duty of the county commissioners at their regular meeting next after such general election to cause to be removed to the place declared to be the county seat, all books, papers, and all other county property which by law is required to be kept at the county seat: *Provided,* Such removal may be made at any time within sixty days after the adjournment of such meeting and it is *Provided, further* That before any county buildings are erected at the expense of the county the title to any lands upon which such buildings are to be erected shall first be approved by the judge of the second judicial district and such approval placed in the hands of the county auditor, to be by him filed in his office.

SECTION 5.    The provisions of any act conflicting with the provisions of this act be and the same are hereby repealed.

SECTION 6.    This act shall take effect and be in full force from and after its passage and approval.

Approved, November 9th, 1877.

---

## AN ACT

### DEFINING THE BOUNDARY LINES OF MASON COUNTY.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That Mason county shall be bounded as follows:

Commencing in middle of the main channel of Puget Sound where it is intersected by the mid-channel of Cases inlet, thence westerly along the mid-channel of Puget Sound via Dana's passage into Totten's inlet and up said inlet to its intersection by section line between sections twenty-eight (28) and twenty-nine (29) in township nineteen (19) north, range three (3) west of the Willamette Meridian; thence south to the south-west corner of section thirty-three (33) in said township nineteen north, three west; thence west along the township line dividing townships eighteen (18) and nineteen (19) twenty miles to the township line dividing ranges six (6) and seven (7) west of the Willamette

Meridian which constitutes a part of the east boundary line of Chehalis county thence north along said township line to the sixth standard parallel, thence east along said parallel line to the middle of the channel of Hood's canal, thence southerly along said mid-channel to a point due west of the intersection of the shore-line of said Hood's canal by the township line between township twenty-three (23) and twenty-four (24) thence east along said township line to the line dividing sections three and four in said township twenty-three north, one west of the Willamette Meridian, thence south along said section line to the head of Cases inlet, thence south by the mid-channel of said inlet to the place of beginning.

SECTION 2. All acts and parts of acts affixing county lines affecting said Mason county, inconsistent, or conflicting with this act are hereby repealed.

SECTION 3. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

IN RELATION TO HOGS, IN SNOHOMISH COUNTY AND CERTAIN TOWNSHIPS IN KLICKITAT COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That owner or occupant of any enclosed premises may take up any hogs found trespassing upon his or their said premises, and may safely keep the same at the expense of the owner of said hogs.

SECTION 2. All persons taking up hogs found trespassing upon their enclosed lands shall immediately thereafter post notices in three public places, containing a description of the ear, or other marks of such hogs whereby the owners may identify them.

SECTION 3. If the owners of such hogs come forward within ten days after the time such notices are posted the person taking them up shall deliver them to such owners upon their paying all costs and damages sustained by their trespassing.

408        LOCAL AND PRIVATE LAWS.

SECTION 4.  If however the owners do not come forward within the ten days, then the person taking up such hogs shall immediately notify a constable of the precinct wherein the trespass has been committed, or if there be no constable in said precinct, then the sheriff of said county or constable of a neighboring county and said constable or sheriff shall proceed to sell at public auction (after giving five days notice of sale, by posting notices in three public places in said precinct) all said hogs so taken:  *Provided however*, That the owners may prove their ownership of the hogs and receive them by paying all costs, charges and damages at any time before said sale takes place.

SECTION 5.  If the parties cannot agree as to the amount of the charges and damages, then each party may choose one disinterested person, and they may choose a third person who shall determine the amount of the damages and costs of keeping of said hogs.  Should the owner not come forward then the constable or sheriff shall appoint one or more disinterested persons to determine the amount.

SECTION 6.  The fees of the officer for making the sales under the provisions of this act shall be the same as are allowed for sales under execution.

SECTION 7.  If there should be any surplus money arising from such sales, after paying all costs charges and damages the constable or sheriff shall pay the same to the owner of said hogs sold provided they prove they are entitled to it within ten days after the sale; if not then he shall pay it to the county treasurer taking his receipt for the same:  *Provided*, The hogs sold do not pay all costs charges and damages, this shall not bar the right of the damaged party to bring his action against the party owning the hogs trespassing for the balance due or unpaid.

SECTION 8.  All monies paid to the county treasurer under the provisions of this act shall constitute a part of the school fund of the county.

SECTION 9.  Any constable or sheriff refusing to pay to the county treasurer or the owners of the hogs found trespassing the surplus(s) money derived from such sale, shall be liable for the same on his official bond, and shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding one hundred dollars.

SECTION 10.  The provisions of this act shall apply to townships sixteen, seventeen, eighteen, nineteen, twenty and twenty-one in township four north range sixteen east in Klickitat county according to the surveys made by the United States.

SECTION 11.  This act shall take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

LOCAL AND PRIVATE LAWS.        409

## AN ACT

FOR THE RELIEF OF PUGET SOUND STEAM NAVIGATION COMPANY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sum of two hundred and twenty-three and one-half dollars ($223.50) be and the same is hereby appropriated out of moneys not otherwise appropriated for transportation furnished to this Legislative Assembly in visiting the public Territorial institutions on a tour of inspection.

SECTION 2. The Territorial auditor is hereby instructed to issue to said Puget Sound Steam Navigation Company or its legal agent, a Territorial warrant for the aforesaid sum, and the Territorial treasurer is required to pay the same upon presentation out of any moneys not otherwise appropriated.

SECTION. 3. This act to take effect and be in force from and after its passage.

Approved, November 6th, 1877.

---

## AN ACT

TO AMEND AN ACT ENTITLED "AN ACT TO PROTECT DEER IN ISLAND COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That an act entitled "An act to protect deer in Island county approved November 9th 1875 be amended to read as follows:

SECTION 2. It shall be unlawful for any person or persons to hunt or kill deer in Island county, for the purpose of selling or offering the same for sale in the market.

SECTION 3. It shall be unlawful for any person to drive or run deer with dogs or bitches at any season of the year in Island county without first obtaining from the county auditor a license for each dog or bitch so used, which license must be

52

410          LOCAL AND PRIVATE LAWS.

kept by the person owning or hunting with such dog or bitch. in such a way, that it may be examined by any citizen of Island county demanding the same.

SECTION 4. The auditor of Island county is hereby authorized and directed to issue to any person desiring and paying for the same a license for and in accordance with the provisions of section three (3) of this act; no license to be granted for a period of more than one year nor without the payment of the sum of five dollars; for each license; which shall state the name size, color, and probable age and breed of said animal, together with permission to use the same in obtaining deer under the provision of this act.

SECTION 5. The county auditor shall record all dog licenses issued by him in a book kept for that purpose he to receive for each one, so issued, and recorded, the sum of fifty cents, and the balance to be paid in to the county treasury for the use of the general road fund.

SECTION 6. Any person or persons violating any of the provisions of this act shall be fined in any court of competent jurisdiction not less than twenty dollars nor more than fifty dollars for each offense; one-half to be paid to the informer and the other half to be paid into the general road fund of Island county, and in case of non-payment of fine to be imprisoned in the county jail for not more than thirty days.

SECTION 7. All acts or parts of acts in any way conflicting with this act are hereby repealed.

SECTION 8. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

## TO AMEND AN ACT ENTITLED AN ACT DEFINING LAWFUL FENCES IN YAKIMA AND WHITMAN COUNTIES.

SECTION 1. *Be it enacted by the Legislative Assembly of Washington Territory*, That section one be amended by striking out the words "four feet eight inches" and inserting in

LOCAL AND PRIVATE LAWS.            411

their stead the words " four feet six inches," also strike out the words " five feet" in first line of section two and insert " four feet six inches" also strike out all after the word plank in ninth line of section four.

SECTION 2. All parts of acts in conflict with this act are hereby repealed.

SECTION 3. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

# AN ACT

## TO ENCOURAGE THE PLANTING AND GROWING OF TIMBER IN THE COUNTIES OF STEVENS AND WHITMAN.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the board of commissioners of the respective counties of Stevens and Whitman are hereby required at their May meeting A. D. 1878 and at each regular spring term thereafter to exempt from taxation except for Territorial purposes the real or personal property of each tax payer who shall within the county within such year, plant, and suitably cultivate or having within such year or the preceding year planted shall suitably cultivate one or more acres of forest trees for timber to an amount not exceeding three hundred dollars ($300.00): *Provided,* That said board may fix the minimum number of trees which shall be grown on each acre.

SECTION 2. Any person claiming the benefit of such exemption may appear before the board of commissioners of the county at any regular meeting, and upon making proof by sworn evidence showing to the satisfaction of said board that he has complied with the requirements which entitle him to such exemption, he shall receive from the clerk of the board a certificate stating the amount of exemption, which shall be received by the county treasurer in satisfaction of the taxes exempted.

SECTION 3. All acts in conflict with this act are hereby repealed.

412          LOCAL AND PRIVATE LAWS.

SECTION 4.  This act to take effect and be in force  from and after its  passage.

Approved, October 27th, 1877.

---

## AN ACT

TO REPEAL AN ACT ENTITLED "AN ACT TO REGULATE THE COL-
LECTION AND DISBURSEMENT OF ROAD AND ROAD-POLL TAX IN
KING COUNTY WASHINGTON TERRITORY," APPROVED NOVEMBER
12TH 1875.

SECTION 1.  *Be it enacted by the Legislative Assembly of Washington Territory*, That the act of the Legislative Assembly of Washington Territory approved  November, 12th 1875, enti-tled "an act  to  regulate  the  collection  and  disbursement of road and road poll tax in  King county Washington Territory," be and the same is hereby repealed.

SECTION 2.  This act shall take effect and  be in  force from and  after its approval  by the governor.

Approved, October 30th, 1877.

---

## AN ACT

FOR THE RELIEF OF J. C. HORR AND OTHERS.

WHEREAS The parties  hereinafter named  have furnished goods, wares, and  merchandise to and  have performed labor for the Hospital for the Insane in Washington Territory  and

WHEREAS The fund  provided  for  the  payment of bills of a similar nature was inadequate  to  meet  the actual and neces-sary expenses of the said Hospital for the Insane, and

WHEREAS There is now justly due the following named persons the amounts respectively set opposite their names for goods, wares, and merchandise furnished, and labor performed at said asylum, to wit:

| | |
|---|---:|
| W. H. Mastin | $ 9.77 |
| Jamison McClang | 44.71 |
| John Latham | 19.68 |
| E. A. Light | 14.25 |
| Samuel Parker | 44.10 |
| Edward Harmon | 13.00 |
| Samuel Roberts | 4.00 |
| P. Renquist | 23.65 |
| J. R. Reynolds | 16.00 |
| Rufus Willard | 21.50 |
| Wm. Neison | 58.05 |
| Ed. Higgins | 5.00 |
| Pincus & Packscher | 32.07 |
| McCaw & Rogers | 83.62 |
| R. M. Rylath | 57.53 |
| Lionel Stuart | 44.10 |
| M. A. McConnell | 44.10 |
| Ellen Madden | 6.57 |
| Wm. P. Sooith | 44.10 |
| W. H. Orr | 14.00 |
| J. G. Weller | 14.00 |
| John Saulter | 20.00 |
| E. L. Willey | 42.50 |
| | $712.05 |

| | |
|---|---:|
| J. C. Horr | 82.00 |
| Daniel Tuite | 226.29 |
| Schwabacher Bros. & Co. | 28.80 |
| Samuel Williams | 19.00 |
| Ward & Mitchell | 71.61 |
| Waddell & Miles | 7.25 |
| | $434.95 |

AND WHEREAS The said accounts have been duly audited and approved by the trustees after accounts rendered by the said parties, therefore,

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1. That the sum of eleven hundred and fo(u)rty-seven dollars or as much thereof as may be necessary, be and the same is hereby appropriated out of any funds in the Territorial treasury not otherwise appropriated, for the relief of the said parties, to wit: fee

414        LOCAL AND PRIVATE LAWS.

| | |
|---|---:|
| Jamison McClang & Co. | $33.50 |
| W. H. Mastin | 9.77 |
| Howard Scott | 44.71 |
| John Latham | 19.68 |
| E. A. Light | 14.25 |
| Rufus Willard | 21.50 |
| Wm. Neison | 58.05 |
| Ed. Higgins | 5.00 |
| Pincus & Packscher | 32.07 |
| McCaw & Rogers | 83.62 |
| R. M. Rylatt | 57.53 |
| Samuel Parker | 44.10 |
| Edward Harmon | 13.00 |
| Samuel Roberts | 4.00 |
| P. Renquist | 23.65 |
| J. R. Reynolds | 16.00 |
| Lionel Stuart | 44.10 |
| M. A. McConnell | 44.10 |
| Ellen Madden | 6.57 |
| Wm. P. Sooth | 44.10 |
| N. H. Orr | 14.00 |
| J. S. Weller | 14.00 |
| John Latham | 20.00 |
| E. L. Willey | 42.50 |
| | $712.05 |

| | |
|---|---:|
| J. C. Horr | $82.00 |
| Daniel Tuite | 226.29 |
| Schwabacher Brothers | 28.80 |
| Samuel Williams | 19.00 |
| Ward & Mitchell | 71.61 |
| Waddell & Miles | 7.25 |
| | $434.95 |

SECTION 2.  Upon presentation to the Territorial auditor of the accounts of the parties above mentioned in this act duly audited by the trustees of the Hospital for the Insane for Washington Territory, and the same being by them duly approved and duly certified by them to the Territorial auditor, it shall be the duty of the Territorial auditor to draw his warrant on the Territorial treasurer in favor of each of said parties for the amount so found due on their appro(pro)ved vouchers, which said amount shall be paid out of any money in the Territorial treasury not otherwise appropriated.

This act to take effect and be in force from and after its passage and approval.

Approved, November 9th, 1877.

LOCAL AND PRIVATE LAWS.                415

# AN ACT

### TO REGULATE THE RAISING OF REVENUE FOR ROAD PURPOSES IN COLUMBIA AND WALLA WALLA COUNTIES

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall be the duty of the county commissioners of Columbia and Walla Walla counties it [at] the session now required by law to levy Territorial county and school taxes in each year, to levy on all the taxable property of said counties, one mill on the assessed value, for road purposes.

SECTION 2. That the tax provided for in the foregoing section is in lieu of road tax now required by law for road purposes as aforesaid, and shall be collected each year by the tax collectors of said counties at the same time, and in the same manner, that other taxes are collected by law.

SECTION 3. That the tax for road purposes when collected shall be paid immediately u[i]nto the county treasury of said counties and shall remain there subject to the order of said board of commissioners, for the purchase of material in building and repairing of bridges on county and Territorial roads in said counties, and for the purchase of material for any other purpose connected with highways in said counties, but said funds shall not be used for any other purposes whatsoever.

SECTION 4. It shall be the duty of the supervisor in each road district in Columbia and Walla Walla counties, to require of every male person, over twenty-one and under fifty years old, residing in his road district to perform two full days work on some highway in his road district in each year: *Providing,* That such person may pay to such supervisor in lieu thereof, the sum of one dollar and fifty cents for each days work, which money when paid shall be applied to the improvement of the highways in said district.

SECTION 5. If any person, as provided shall fail or refuse to perform the two days serivce, required by this act, after five days notice shall be given by the supervisor of said district, of time and place when such work will be required, or to pay therefor(e) one dollar and fifty cents, for each days work unperformed, then such person shall be liable to such supervisor for said sum and for all costs and necessary expenses in collecting the same by action at law, and such supervisor shall bring an action for the collection of the same.

SECTION 6. This act to take effect and be in force from and after January, First, one thousand eight hundred and sev-

416          LOCAL AND PRIVATE LAWS.

enty-eight: *Provided*, That this act shall not be construed to effect [affect] in any way the collection of taxes already levied in said counties by existing laws.

Approved, November 9th, 1877.

----

# AN ACT·

FOR THE PROTECTION OF QUAILS, COMMONLY CALLED BOB WHITES.

*Be it enacted, by the Legislative Assembly of the Territory of Washington.*

That any person, or persons, who shall buy, sell, shoot, kill, snare, or trap any quails in the counties of Walla Wall, Columbia, and Whitman, before the first day of September, A. D. one thousand eight hundred and eighty-one, shall be deemed guilty of a misdemeanor, and on conviction thereof, before any court, of competent jurisdiction, shall be fined in any sum not more than fifty dollars and not less than ten dollars; one-half to be paid to the informer and the other to go into the county school fund.

This act to take effect and be in force from and after its approval.

Approved, November 9th, 1877.

----

# AN ACT

TO AUTHORIZE THE BOARD OF COMMISSIONERS OF JEFFERSON COUNTY
TO BORROW MONEY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the board of county com-

LOCAL AND PRIVATE LAWS.        417

missioners of Jefferson county are authorized to borrow a sum or sums of moneys in gold coin, not aggregating more than five thousand dollars which may bear interest not exceeding one per cent per month in gold coin.

SECTION 2. Said board shall apply said money to the building of a court house and county offices at the county seat of said county.

SECTION 3. That thirty per cent of all moneys arising from licenses in said county shall be applied to pay the interest on said loan and extinguish the same.

SECTION 4. This act to take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

### DEFINING DISTRICTS IN SAN JUAN COUNTY FOR THE ELECTION OF COUNTY COMMISSIONERS.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That at the next general election in the Territory and thereafter the county commissioners of San Juan county shall be elected by districts for which purpose the said county is hereby divided into three several election districts—That is to say:

The Island[s] of San Juan, Henry and Spiden, shall be and compose the first county commissioners district, and be entitled to elect one county commissioner who shall reside therein;

Lopez, Shaw, Blakely and the small adjacent islands contiguous thereto shall constitute the second county commissioners district and be entitled to elect one county commissioner who shall reside therein.

Orcas, Waldron, and the islands north of Orcas island known as the "Three Sisters" shall constitute the third county commissioners district and be entitled to elect one county commissioner who shall reside therein.

SECTION 2. Any island in said San Juan county not herein above named shall be deemed as annexed to the nearest

53

418        LOCAL AND PRIVATE LAWS.

district adjacent herein named and in the election district including such adjacent district.

SECTION 3. Parts of acts providing for the election of county commissioners inconsistent with the above, shall have no force or effect within said county of San Juan.

SECTION 4. This act to take effect and be in force from and after its passage, though nothing herein contained shall interfere with the board of county commissioners of said county of San Juan as at present constituted.

Approved, November 8th, 1877.

## AN ACT

TO AID IN THE CONSTRUCTION OF A RAILROAD FROM THE CITY OF SEATTLE IN KING COUNTY THROUGH THE CITY OF WALLA WALLA IN WALLA WALLA COUNTY AND THE TOWN OF DAYTON IN COLUMBIA COUNTY TO THE TOWN OF COLFAX IN WHITMAN COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That it shall be lawful for the several counties in this Territory to subscribe as herein set out to the capital stock of the Seattle and Walla Walla Railroad and Transportation Company to aid in the construction of a railroad from the city of Seattle in King county through the city of Walla Walla in Walla Walla county and the town of Dayton in Columbia county to the town of Colfax in Whitman county.

SECTION 2. The county of King is authorized to subscribe to said capital stock the sum of one hundred thousand dollars.

The county of Walla Walla the sum of one hundred thousand dollars.

The County of Ya(c)kima the sum of fifty thousand dollars. ,

The county of Columbia the sum of seventy-five thousand dollars.

The county of Whitman the sum of sixty thousand dollars.
The county of Kitsap the sum of ten thousand dollars.
The county of Stevens the sum of twenty thousand dollars.

The county of Klickitat the sum of ten thousand dollars and the remaining counties of this Territory, save San Juan Clallam and Wahkiakum the sum of five thousand each and the said counties of San Juan Clallam and Wahkiakum the sum of two thousand five hundred dollars each.

SECTION 3.    Before any such subscription shall be made a special election of the legal voters of each of said counties shall be held on the ninth day of April one thousand eight hundred seventy-eight and at said election it shall be submitted to the thd said voters whether the county in which they vote will subscribe the sum set out in section two of this act to the stock of the Seattle and Walla Walla Railrord and Transportation Company and if at said election a majority of the legal votes in such county are in favor of subscription then the board of county commissioners of said county shall appoint an agent to subscribe to the capital stock of said company to the amount set forth in section two of this act and also an agent to negotiate a loan or loans in the name of the county so voting at a rate of interest not exceeding eight per cent per annum for the purpose of paying such subscription of stock and said board of commissioners shall be and are authorized to issue the bonds of the county for said loan coupon or registered for the amount authorized in section two of this act running from two to twenty years; and the said board of commissioners shall at the time when county taxes are assessed and fixed assess and collect additional taxes upon the taxable property in said county sufficient to pay interest on such loans and final extinction of the principal thereof.

SECTION 4.    The stock so subscribed and purchased shall be preferred stock and non-assessable and for every one hundred dollars in value thereof the said county shall be entitled to one vote in the board of directors of said company and the board of county commissioners of each county owning stock in said railroad company shall at their meeting in May of each year appoint a person to represent and vote for said county in the meetings of said board of directors.

SECTION 5.    Before said stock is subscribed the said railroad and transportation company shall file with the secretary of the Territory an amendment of their charter extending said road through Dayton in Columbia county to Colfax in Whitman county and shall further amend their charter or act of incorporation so as to accept and agree to the terms of this act and terms upon which such subscription is made: *And provided further*, That a sufficient sum of the amount paid for said capital stock in said company, by the counties of Walla Walla,

420        LOCAL AND PRIVATE LAWS.

Columbia Whitman and Stevens shall be first expended in constructing the eastern portion of said road from or near Wallula on the Columbia river to the said town of Colfax along the proposed route of said road.

SECTION 6.    If Walla Walla or King county should refuse to vote said subscription no other county notwithstanding their vote to subscribe, shall subscribe to said stock.    And if the county of Columbia refuse to vote their subscription the said road need not be extended to Dayton, and if the county of Whitman refuse to subscribe said stock said road need not be extended to Colfax and if the county of Columbia refuse to vote said subscription the county of Whitman notwithstanding its vote may be in favor of subscription in that event shall not be required to subscribe to said stock unless the board of county commissioners elect so to do.

SECTION 7.    The vote on the proposed subscription shall be by ballot either written or printed and said ballots if cast in favor of subscription shall contain the words "for railroad subscription" or words to that effect.    And if against said subscription the words "against railroad subscription" or words to that effect.

SECTION 8.    The judges appointed to hold the election for members of the constitutional convention shall be the judges of said election and the returns of said election shall be made to the county auditor of the county in which the election was held in the same manner as in the election of county officers and he shall canvass and make known the result to the board of county commissioners of his county.

SECTION 9.    This act to take effect from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

**EXTENDING THE TIME FOR THE COLLECTION OF TAXES IN KING COUNTY**

**W. T.**

WHEREAS By an act of the Legislative Assembly of the Territory of Washington approved October 8th 1877, it was

LOCAL AND PRIVATE LAWS.          421

provided that the board of commissioners of King county, Washington Territory hold a special meeting commencing on the 9th day of October 1877, for the equalization of the taxes of said county, and

WHEREAS, Under the operation of the said act it will be impossible to place the assessment rolls for the said county for the year 1877, in the hands of the treasurer for collection before the 1st day of December 1877; thus delaying the commencement of the collection of taxes two months, and giving to the treasurer but one month to make the collection; and

WHEREAS, It will be impracticable to receive and receipt for the taxes in that time thus working a great hardship upon the taxpayers by reason of the limited time allowed for collection, now therefore,

*Be it enacted by the Legislative Assembly of the Territory of Washington.*

SECTION 1. That the time allowed for the collection of taxes in King county for the year 1877, be, and the same is hereby extended to the first day of February 1878.

SECTION 2. No tax which shall have been assessed, in King county for the year 1877, shall be deemed delinquent nor shall any penalty attach thereto for delinquency or nonpayment before the first day of February 1878.

SECTION 3. At the expiration of the time herein allowed for the collection of taxes, the treasurer shall proceed in relation to delinquent taxes in the manner provided by law.

SECTION 4. This act shall take effect from and after its passage and approval by the Governor.

Approved, November 6th, 1877.

---

# AN ACT

TO REPEAL AN ACT ENTITLED "AN ACT TO PROVIDE FOR THE ELECTION OF COUNTY COMMISSIONERS AND COUNTY ASSESSORS OF KING COUNTY, WASHINGTON TERRITORY."

SECTION 1. *Be it enacted by the Legislative Assembly of Washington Territory,* That the act of the Legislative

422        LOCAL AND PRIVATE LAWS.

Assembly of Washington Territory approved November twelfth one thousand eight hundred and seventy-five, entitled " an act to provide for the election of county commissioners and county assessors of King county Washington Territory" be and the same is hereby repealed: *Provided*, That the respective officers elected pursuant to the provisions of the act hereby repealed shall not by this act be divested of their respective officers but the commissioners so elected, shall be the commissioners of said county and the assessors so elected shall be the assessors of their respective districts to the end of the term for which they were elected: *And provided further*, That in lieu of the compensation provided by the act hereby repealed for said assessors they shall receive for their services already performed as well as for services hereafter to be performed such reasonable compensation as the board of county commissioners of said county may determine, which shall be appropriated and paid out of the general fund of said county.

SECTION 2.    This act shall take effect and be in force from and after its passage.

Approved,  October 8th, 1877.

--------

# AN ACT

TO AMEND AN ACT, TO BETTER PROVIDE FOR THE MAINTENANCE OF COMMON SCHOOLS IN THE COUNTY OF JEFFERSON, APPROVED OCT. 20TH 1875.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section 1, of an act, to better provide for the maintenance of common schools in the county of Jefferson approved October 20th 1875: be amended to read as follows—

SECTION 2.    That fifty per cent of all moneys arising from the insurances [issuance] of licences for the sale of spirituous liquors in the county of Jefferson, Washington Territory, shall be set apart for the use of common schools in said county and be distributed as other school moneys are distributed, therein.

SECTION 3. All acts or parts of acts in conflict with this act are hereby repealed.

SECTION 4. This act to take effect and be in force from and after its passage.

Approved, November 6th, 1877.

---

# AN ACT

## TO REPEAL CERTAIN SECTIONS OF ACTS AND CERTAIN ACTS RELATING TO THE INCORPORATION OF THE CITY OR TOWN OF PORT TOWNSEND, JEFFERSON COUNTY, WASHINGTON TERRITORY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section two (2) of an act passed January 17th 1861. To amend an act passed January 16th 1860 to incorporate city of Port Townsend, be and the same is hereby repealed.

SECTION 2. That section one (1) relating to boundaries and section five (5) of article ninth of miscellaneous provisions relating to the appropriation of twenty-five (25) per cent of liquor licenses to city purposes of an act approved January 18, 1867 entitled an act to amend an act to incorporate the city of Port Townsend passed January 16th 1860 be, and the same is hereby repealed.

SECTION 3. That all of the act approved November 29th 1871. To amend an act to incorporate city or town of Port Townsend passed January 16th 1860, be and the same is hereby repealed.

SECTION 4. That all of the act approved November 5th 1873 to incorporate the town of Port Townsend be and the same is hereby repealed.

SECTION 5. That all of an act approved November 9th 1875 To amend an act to incorporate city or town of Port Townsend approved November 5th 1873, be and the same is hereby repealed.

SECTION 6. This act shall take effect and be in force from and after its approval by the Governor; and until the general

424          LOCAL AND PRIVATE LAWS.

election of city or town officers is held on the first Monday in April 1878. The following persons shall be trustees:

George Barthrop, J. G. Clinger, and A. H. Tucker, and A. R. Huffman, clerk; and Sumer Carr, city marshal, and said board shall have power to fill vacancies.

Approved, November 9th, 1877.

---

# AN ACT

TO REPEAL AN ACT ENTITLED AN ACT TO PROVIDE FOR THE ELEC-
TION OF THE COUNTY COMMISSIONERS OF JEFFERSON COUNTY
BY DISTRICTS APPROVED NOVEMBER 12TH 1875.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington.* That an act entitled an act to provide for the election of the county commissioners of Jefferson county by districts approved November 12th 1875, be and the same is hereby repealed.

SECTION 2. This act to take effect and be in force from and after its passage: *Providing,* That the commissioners now in office shall hold their respective offices until their successors are elected and qualified at the general election of 1878.

Approved, October 26th, 1877.

---

# AN ACT

IN RELATION TO THE COLLECTION OF LICENC[S]ES IN THE CITIES OF
TACOMA AND STEILACOOM.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That one-third of all county

licenc[s]e money paid within the cities of Steilacoom and Tacoma shall be paid directly into the city treasuries. The amount paid into the treasury of the city of Tacoma to be applied for the support of the common schools in said city, and the amount paid into the treasury of the city of Steilacoom shall be for the use of said city.

SECTION 2. This act to take effect and be in force from and after its passage.

Approved, November 6th, 1877.

---

## AN ACT

### AN ACT TO REPEAL AN ACT ENTITLED AN ACT AUTHORIZING THE COMMISSIONERS OF CLARKE COUNTY TO LEVY A TAX FOR SCHOOL PURPOSES APPROVED NOVEMBER 12TH 1875.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the act entitled an act authorizing the commissioners of Clarke county to levy a tax for school purposes approved November 12th 1875, be and the same is hereby repealed.

SECTION 3. This act to take effect and be in force from and after its approval by the Governor.

Approved, October 27th, 1877.

---

## AN ACT

### DEFINING THE BOUNDE[A]RY BETWEEN THE COUNTY OF ISLAND AND THE COUNTIES OF SAN JUAN WHATCOM AND SNOHOMISH.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the bounde[a]ry line between

54

the county of Island and the county of San Juan, shall be the center of the main channel between Blunts island and San Juan and Lopez island commencing at the center of Admiralty inlet and extending in an easterly direction of the west entrance of Deception pass.

SECTION 2. The boundary line between the county of Island and the county of Whatcom shall be the center of the main or deepest channel beginning at the west entrance of Deception pass and extending along said channel until it intersects the north west or west bounde[a]ry of Snohomish county.

SECTION 3. Snohomish county shall be bounded as follows: Commencing at the south west corner.of Whatcom county, thence east to the summit of the Cascade mountains thence southernly along the summit of said Cascade mountain to the north east corner of King county it being a point due east of the north east corner of township number twenty-six north of range four east, thence due west along the north boundary of King county to Admiralty inlet, thence northerly along the channel of said inlet to the entrance of Port Susan including Gedney island, thence up the main channel of Port Susan to the mouth of the Steilaguamish river, thence north westerly through the channel of the slough at the head of Camano island, known as Davis slough thence northerly to the place of beginning.

SECTION 4. All acts and parts of acts in any way in conflict with the provisions of this act are hereby repealed.

SECTION 5. That this to act take effect and be in force from and after its passage.

Approved, November 9th, 1877.

---

## AN ACT

RELATING TO THE RECEIVING OF COUNTY WARRANTS IN PAYMENT OF COUNTY TAXES IN CLARK[E] COUNTY.

SECTION 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That no order or warrant drawn on the county treasurer and payable out of the revenue of

LOCAL AND PRIVATE LAWS.                427

Clark[e] county, in said Territory shall be received in payment of county taxes or dues, except from the person or persons in whose favor the warrant was drawn.

SECTION 2.    All warrants or orders drawn upon the county treasurer except those named in section one of this act shall be paid in the order in which they were issued and numbered.

SECTION 3.    No warrant or order on the county treasurer shall be drawn in favor of any party, except to whom the amount is due.

SECTION 4.    All acts or parts of acts in conflict with this act are hereby repealed, so far as relates to Clarke county.

SECTION 5.    This act to take effect from and after its passage.

Approved, November 9th, 1877.

---

# AN ACT

### TO PROVIDE FOR EQUALIZATION OF TAXES IN KING COUNTY FOR THE YEAR ONE THOUSAND EIGHT HUNDRED AND SEVENTY-SEVEN.

SECTION 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the board of commissioners of King county shall hold a special session commencing on the twenty-ninth day of October one thousand eight hundred and seventy-seven for the equalization of taxes in said county for the year one thousand eight hundred and seventy-seven.

SECTION 2. The assessment roll for one thousand eight hundred and seventy-seven, shall be returned to said board by the assessors of said county on or before the first day of said session. All complaints in regard to assessments made by said assessors must be made to, and determined by said board of commissioners at said session; and said board shall at said session make all necessary corrections and alterations in said assessment roll; and all appraisements of property made by said assessors that may be found to be either above or below the average valuation of property of the same kind according to the appraisements of said

428        LOCAL AND PRIVATE LAWS.

assessors shall be raised or reduced as the case may require in order to make taxation in said county equal and uniform.

SECTION 3.  Public notice of said special session of said board and the purpose thereof shall be given by publication in the weekly editions of each of the three newspapers now published in said county, at least ten days prior to said twenty-ninth day of October, one thousand eight hundred and seventy-seven.

SECTION 4.  When the board shall have finally passed upon and approved the assessment roll it shall be certified and signed by the President of the board; and within twenty days thereafter the county auditor of said county shall transmit to the Territorial auditor a certified statement of the total value of all property real and personal as shall appear by said assessment roll; and shall estimate the amount of taxes due on the valuation of property in said county and shall make a duplicate assessment roll and deliver a copy thereof to the treasurer of said county and charge said treasurer with the amount of taxes to be collected on said roll as required by the general law of the Territory relating to the assessment and collection of taxes.

SECTION 5.  This act shall take effect and be in force from and after its passage.

Approved, October 8th, 1877.

---

## AN ACT

IN RELATION TO THE ELECTION OF COUNTY COMMISSIONERS AND DEFINING THEIR DUTIES IN THE COUNTIES OF CLARK[E], THURSTON, KLICKITAT YAKIMA AND KITSAP.

SECTION 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That there shall be established in each organized county of the Territory, three commissioner districts.

SECTION 2.  That it shall be the duty of the county auditor of each county, to furnish the board of county commissioners

## LOCAL AND PRIVATE LAWS.                    429

with a correct record of the legal vote of each county precinct, as taken at the last general election.

SECTION 3. That it shall be the duty of county auditors to furnish said record to the board of county commissioners, whenever the board demands the same.

SECTION 4. That it shall be the duty of the board of county commissioners, on receipt of said auditor's record, at any regular meeting, for the transaction of general business, to apportion the county into three districts, giving to each district, as nearly as possible, an equal number of legal voters, in accordance with said county auditor's record of the legal vote of the county: *Provided* That no municipal corporation shall constitute more than one commissioner district.

SECTION 5. That the districts so apportioned shall be styled, County Commissioner Districts.

SECTION 6. That the county commissioners of each county, shall apportion their several counties as provided(:) before the next general election, provided that the vote for each commissioner shall be general in the whole county.

SECTION 7. That no more than one county commissioner be elected at any general election in any one commissioner district, *Provided*, That this act shall apply to the counties of Clark[e] Thurston Yakima, Kitsap and Klickitat only.

SECTION 8. That at the next general election, for the choice of county officers there shall be two county commissioners elected, to serve for the term of two years, each, and one for the term of four years *Provided* that this act shall apply to the counties of Clark[e] Thurston, Yakima Kitsap and Klickitat.

SECTION 9. That at each succeeding election for choice of county officers, there shall be two county commissioners elected, one for the term of two years and one for the term of four years, *Provided* That the commissioner districts in each county shall be numbered as follows, Number one, two, and three.

SECTION 10. That the commissioner, for the long term shall be elected first from district number one, at the next election from district number two, at the next from district number three, and ever afterwards in regular rotation.

SECTION 11. All acts or parts of acts in any wise conflicting with this act, be and are hereby repealed.

SECTION 12. This act to take effect and be in force from and after its passage and approval by the Governor.

Approved, November 9th, 1877.

# MEMORIALS.

# MEMORIALS.

---

## MEMORIAL

PRAYING FOR THE RESTORATION TO SETTLEMENT OF CERTAIN
PUBLIC LANDS WITHDRAWN IN FAVOR OF THE NORTHERN
PACIFIC RAILROAD COMPANY.

*To the Senate and House of Representatives
of the United States of America in Congress Assembled:*

Your memorialists, the Legislative Assembly of the Terri-
tory of Washington, would respectfully represent: That the
western terminus of the Northern Pacific railroad was located
at Tacoma on Puget Sound, in township twenty north, range
three east, in one thousand eight hundred and seventy-three.
That prior to that time, viz: In one thousand eight hundred
and seventy and one thousand eight hundred and seventy-two,
the withdrawals on the main line of said road were made beyond
Tacoma as far north as Bellingham Bay, embracing over two
million acres of the public lands north of Tacoma, which lands
are still withheld from settlement, notwithstanding the location
of said terminus at Tacoma as aforesaid. That in one thousand
eight hundred and seventy-three the odd sections of the public
lands were withdrawn in favor of said company on their branch
line from lake Pen d'Oreille to Tacoma via the Skagit pass
amounting to over eight million acres. That said company
have abandoned said Skagit pass route, and in November, one
thousand eight hundred and seventy-six filed a map of their
branch line, in the office of the Commissioner of the General
Land Office, which last named branch line leaves the main line
55

434                    MEMORIALS.

near the mouth of Snake river and runs over the Cascade mountains to Tacoma via the Natche[z]es pass.

Wherefore your memorialists pray, that Congress will restore to the public domain, to be dealt with as other public lands under the direction of the Secretary of the Interior, all lands heretofore withdrawn in favor of said company on their main line north of the adjusted limits of their earned lands near Tacoma, and all lands heretofore withdrawn on their said branch line via the Skagit pass.

And your memorialists as in duty bound will ever pray.

Passed the House of Representatives Oct. 11, 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Oct. 6, 1877.

T. M. REED,
*President of the Council.*

---

# MEMORIAL

### IN RELATION TO THE EXTENSION OF TIME FOR BUILDING THE NORTHERN PACIFIC RAILROAD.

*To the Senate and House of Representatives*
*of the United States in Congress Assembled:*

Your memorialists the Legislative Assembly of Washington Territory would respectfully represent, that under and by virtue of the act of Congress, entitled "an act" granting lands to aid in the construction of a railroad "and telegraph line from Lake Superior to Puget Sound on the Pacific coast by the northern route" approved July 2nd 1864 and the acts amendatory thereof, the Northern Pacific Railroad Company definitely fixed the line of said railroad where the same runs through the Territory of Washington and filed a plat thereof in the office of the Commissioner of the General Land Office in August A. D. 1870. That the western terminus of the said Northern Pacific railroad was located at Tacoma on Puget Sound in township

## MEMORIALS.

20 north range 3 east in 1873. That by virtue of the aforesaid acts of Congress and the filing of the plat definitely locating the route of said railroad, twenty alternate sections of land per mile in the Territory of Washington on each side of said route have been withdrawn from settlement under the land laws of the United States. That by reason of the facts, that the Northern Pacific Railroad Company has no authority to sell lands within the grant not earned, and having fixed no price upon said lands, at which settlers could purchase the same after the company acquired title thereto, the settlement and prosperity of the Territory has been greatly retarded. That while the Northern Pacific Railroad Company is daily selling and disposing of its earned lands, it refuses to pay any taxes upon its lands and has instituted suits which are now pending to restrain our tax collectors from collecting the taxes. That this company demands and receives protection of our civil officers, and that its refusal to bear its proportion of the taxes to pay those officers is oppressive and unjust to the taxpaying settlers of the Territory. That we realize the fact that the speedy completion of this road would be a great benefit to the Territory. We nevertheless regard an extention of time for that purpose without terms and conditions, wrong and injurious to the people of our Territory.

Your memorialists would therefore respectfully pray, that the time for the completion of said railroad eastward from the western terminus be extended, but on the following terms and conditions only viz:

First. That the price of the lands within the limits of the grant be fixed at two dollars and a half ($2.50) per acre.

Second. That the registers and receivers of the United States land offices be the only persons authorized to dispose of any of these lands and that they be disposed of by entry and payment under such rules as the department may establish.

Third. That these lands be sold to actual settlers only and in such quantities as your honorable bodies may deem best.

Fourth. That the money arising from the sales of the lands aforesaid be paid to the Northern Pacific Railroad Company from time to time as the different sections of the road are completed.

Fifth. That the time within which said road shall be completed be limited by law, and that a failure to complete the road within the specified time, shall cause all the lands to revert to the government which have not been sold.

Sixth. That the company be required to pay taxes on all of its property whether acquired by purchase or otherwise upon the

436                    MEMORIALS.

same terms and conditions now imposed by law upon the settlers of the Territory.

And your memorialists will as in duty bound ever pray.

Passed the House of Representatives Oct. 6, 1877.

RUFUS G. NEWLAND,

*Speaker of House of Representatives.*

Passed the Council Oct. 18, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

IN RELATION TO CERTAIN LAND IN WASHINGTON TERRITORY.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington would most respectfully represent to your honorable body that under the land grant to the Northern Pacific Railroad Company a large portion of the public lands of Washington Territory has been held in reserve for said company and have not been subject to entry at the government land offices a great many of our citizens have settled upon such lands and others have notified and in both cases have valuable improvements thereon and the railroad company has issued certificates to such persons guaranteeing to them first right to purchase as soon as the company acquired title. Many of these persons have exhausted all their government rights to take land and in case the land grant of said company should revert to the government they would be left entirely at the mercy of unscrupulous parties who could take the land under some of the government land laws. We would also represent that within the limits of said grant homestead settlers have been restricted to eighty acres of land and if the company fails to construct the road a manifest injustice would be done these persons they having been subject to all the inconvenience and disadvantage in-

## MEMORIALS.                                    437

cident to the withdrawal of the land and having received none of the benefits on account of the failure of the company to construct a road, we therefore most respectfully memorialize your honorable body, that in case the land grant of the said company should revert to the government that you pass a law allowing all persons who have valuable and substantial improvements upon railroad land and have been acting in good faith with said company to enter at the minimum price of one dollar and twenty-five cents per acre, and further that some provision be made whereby homestead settlers that have been restricted to eighty acres of land in each part of the grant where the company has failed to build their road may be allowed to enter an additional eighty acres whether it be found to adjoin their original claims or not without settlement or cultivation provided they have complained [complied] with the law under the entry of their original claims.

And as in duty bound your memorialists will ever pray.

Passed the House of Representatives Nov. 1, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 9, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

### IN RELATION TO INDIANS EAST OF THE CASCADE MOUNTAINS.

*To the Senate and House of Representatives*
*of the United States in Congress Assembled:*

Your memorialist, the Legislative Assembly of Washington Territory, would respectfully represent: That the unsettled condition of the Indians east of the Cascade Mountains, in Washington Territory, is injurious alike to the Indians and the white people. The permanent location of the Indians east of the Cascade Mountains, in Washington Territory, upon one reservation, would result (result) in the prosperity and peace of both the white people and the Indians.

438                    MEMORIALS.

We would further represent that the Colville valley is admirably adapted for an Indian territory for all the Indians east of the Cascade Mountains, not only [on] account of its arable land, the roots, camas, and salmon fisheries, but also on account of its situation, which owing to the surrounding country, can never be intrenched upon by any white settlements. The remnants of different tribes to whom reservations have been assigned under different treaties, at [to] the exclusion of the white settlers. The Indians derive no benefit from these reservations which they could not fully enjoy in Colville valley. Yet there [their] occupancy of the different reservations keep a body of fine, arable land from cultivation and settlement by white people. These different reservations together contain more arable land than the Colville valley, and their situation in close proximity to the settlements of white people, make a change not only desirable, but also of ultimate benefit to all concerned and thereby the peace of the country will be more fully secured.

Wherefore your memorialists would earnestly pray that your honorable body would as soon as practicable enact a law, setting apart the Colville valley as an Indian territory and removing the Indians thereto, whenever their treaties with the government expire by limitation of law.

Passed the House of Representatives Nov. 5, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 5, 1877.

T. M. REED,

*President of the Council.*

———————

MEMORIAL.

PRAYING FOR THE ESTABLISHMENT OF A MILITARY POST AT SPOKANE FALLS IN STEVENS COUNTY WASHINGTON TERRITORY.

*To the Honorable Secretary of War of the United States:*

Your memorialists the Legislative Assembly of the Territory of Washington would respectfully represent that there is

## MEMORIALS.

439

a large number of Indians in Stevens, Columbia, and Whitman counties in said Territory, that many of them are untreated with and that large numbers roam over the country at will. That since the late war with Joseph and his tribe these Indians have manifested more or less hostile feeling toward the white people. That the white settlers in these counties and in the county of Yakima are widely scattered over this vast area of country and in case of Indian outbreak are totally unprotected. That experience has demonstrated the impossibility of the attempt to confine the majority of these Indians to reservations. That in view of the above mentioned facts there is an urgent necessity for a military post somewhere in the section of country above referred to.

Therefore your memorialists would respectfully and earnestly ask that a strong military post be established at Spokane Falls in Stevens county Washington Territory, and as in duty bound your memorialists will ever pray.

Passed the House of Representatives Oct. 19, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 24, 1877.

T. M. REED.

*President of the Council.*

## MEMORIAL

RELATIVE TO AUTHORITY BEING GIVEN THE RESIDENT DEPUTY INSPECTOR OF CUSTOMS RESIDING ON SAN JUAN ISLAND TO ENTER AND CLEAR VESSELS.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of Washington Territory would respectfully represent that between the counties of Whatcom and San Juan (counties), Washington Territory and British Columbia a large and increasing agricultural and other trade is springing up, that this trade at present

440                          MEMORIALS.

all has to be carried on by way of the custom house at Port Townsend; that to clear through said custom house vessels must sail from thirty-five to seventy-five miles and return out of their regular course and through waters that are dangerous for small crafts, that by reason of such extra distance and danger, trade between the place named is very much hindered and oftentimes rendered entirely impracticable; that there has been for twenty years last past a deputy inspector of customs stationed on San Juan island; that by giving said authority to the deputy inspector on San Juan island there would no longer exist the necessity of a revenue vessel cruising in the waters of the archipelago thereby saving expense to the government and preventing smuggling.

Therefore your memorialists would respectfully pray that in order to foster trade, prevent smuggling, accommodate a large class of settlers and lessen the expense of the customs department of Puget Sound, power to enter and clear vessels be conferred upon the officer of customs stationed at some point on San Juan island.

And your memorialists in duty bound will ever pray.

Passed the House of Representatives Oct. 27, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 27, 1877.

T. M. REED,

*President of the Council.*

---

# MEMORIAL

PRAYING FOR THE ESTABLISHMENT OF A LAND OFFICE AT PORT TOWNSEND W. T.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington, would respectfully represent that the establishment of a land office at the town of Port Townsend Washington Territory is a matter of vital importance to all the people in the northern part of the Territory and that Congress

## MEMORIALS.                                        441

in justice and right ought to act in this matter for the following reasons, to wit:

The only land office at which settlers in this part of the Territory can enter homestead and pre-emption land claims is at the city of Olympia near the center of the Territory and distant about two hundred miles from a majority of the settlers in said portion of the Territory, that there are in the counties of Clallam, Island, Jefferson, Snohomish, San Juan and Whatcom about seven hundred homesteads and pre-emption claimants who if a land office is not established at Port Townsend will be obliged to go to Olympia to prove up their claims at an expense of more than three times the amount that government receives in fees for such entries and in that portion of the Territory not one-tenth part of the land has been surveyed or settled. All this besides much valuable time to the settlers may be saved by the establishment of a land office at Port Townsend at but a small cost per annum to the general government.

In view of the foregoing and many other facts bearing on this question which we cannot embrace in this memorial we the representatives and councilmen of Washington Territory in our capacity as law makers, do earnestly request you to pass an act establishing a land office at Port Townsend,

And as in duty bound your memorialists will ever pray.

Passed the House of Representatives Oct. 27, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 1, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

PRAYING FOR VESSELS OF WAR TO BE STATIONED ON PUGET SOUND.

*To the Honorable Secretary of the Navy of the United States:*

Your memorialists the Legislative Assembly of the Territory of Washington respectfully represent that there are

56

442                    MEMORIALS.

many flourishing settlements on the shores of the great inland sea known as Puget Sound which do a large business with various ports in England, Scotland, Ireland, France and Spain in Europe, as well as with South America Republics, China, Japan, the East Indies and Australia: That vessels from all these countries frequent our bays and harbors, that the English government for the protection of a very inferior commerce, comparatively, has established a naval station at Esquimalt, Vancouver Island, and has a fleet of war vessels constantly stationed there; that our commerce is entirely unprotected and that the seamen and subjects of foreign powers draw comparison between us and the neighboring colonies of Great Britain which, however, are very humiliating and by no means comport either with the dignity of the United States or its true naval strength. In view of these facts your memorialists would earnestly urge the Navy Department to station such a number of vessels of war upon the waters of Puget Sound as are essential to our security as well as to convince foreign powers that the general government has the interest and honor of her most remote settlements at heart and as in duty bound your memorialists will ever pray.

Passed the House of Representatives Oct. 29, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 1, 1877.

T. M. REED,

*President of the Council.*

----

## MEMORIAL

### FOR AN EXTENSION OF TIME IN HOLDING SESSIONS OF THE LEGIS-LATIVE ASSEMBLY OF THE TERRITORY OF WASHINGTON.

*To the Senate and House of Representatives*
    *of the United States of America in Congress Assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington, would respectfully represent, that the

## MEMORIALS.    443

Territory is of vast extent that it has within its borders great variety of climate; mines of iron, coal, and the precious metals; and vast interests, lumbering, ship-building, fishing, grazing, agricultural and commercial; that these climatic differences require great attention to legislation, both in general and local matters, and that the varied industries of the Territory call for more care and attention than can be fitly given to them in a session of forty days, necessitating either neglect or hasty legislation.

Therefore, your memorialists would most respectfully ask that sessions of this body may be permitted, in the future, to extend to sixty days and as in duty bound, your memorialists will ever pray.

Passed the House of Representatives Nov. 3, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 31, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

### PRAYING THE ESTABLISHMENT OF A HARBOR OF REFUGE ON THE NORTHWEST COAST.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington, would respectfully represent, that there is an extensive shore line from San Francisco northward to the straits of Juan de Fuca, with no harbor of refuge of ready access and safe approach in heavy weather, between those points, much of which coast is rock-bound, contiguous to which are bars, shoals and other hidden dangers to navigation. That for several months of the year, during the winter season, storms are at times extremely severe and long continued. That the

444                    MEMORIALS.

increasing product of wheat, lumber, coal and other staple exports, and the growth of the north Pacific States and Territories in wealth and population are establishing a vast and growing commerce, requiring a rapidly increasing number of vessels of all kinds, compelled at all seasons to make voyages between the ports and places on the coast of Oregon and Washington, between San Francisco, the Columbia river, and Puget Sound. That the interests of humanity and commerce demand protection to the human life and wealth invested in this growing coast trade. That several points in that shore line with a comparatively small expenditure of money can be made into a harbor of refuge, whereby protection from danger and shipwreck could be insured, human life rendered more secure and the large amount of capital and property invested, less liable to destruction or loss.

Therefore your memorialists earnestly pray that steps be taken at once to locate and establish at some proper point or points on the coast line of Oregon, or this Territory or both, a harbor or harbors of refuge for shipping, to the end that many human lives and a large amount of property shall not needlessly be sacrificed or lost, and your memorialiats as in duty bound will ever pray.

Passed the House of Representatives Nov. 5, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 9, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

ASKING AN APPROPRIATION FOR THE REMOVAL OF OBSTRUCTIONS IN THE SKAGIT AND STILLAGUAMISH RIVERS.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington respectfully represent that in the Skagit

## MEMORIALS. 445

and Stillaguamish rivers (navigable streams flowing into Puget Sound) are certain obstructions to navigation that the removal of these obstructions will open to settlement a large area of the best agricultural lands in the Territory which by reason of such obstructions cannot now be settled.

Therefore, your memorialists pray that an appropriation of ten thousand dollars ($10,000.00) be made and placed in the hands of commissioners for the removal of these obstructions and for such commissioners we recommend William B. Moore, Frank Ledger and John Mathews, and your memorialists as in duty bound ever pray.

Passed the House of Representatives Oct. 9, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 12, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

RELATIVE TO THE ESTABLISHMENT OF A LAND OFFICE AT YAKIMA CITY WASHINGTON TERRITORY.

*To the Senate and House of Representatives*
*of the United States in Congress assemble*

Your memorialists the Legislative Assembly of the Territory of Washington would most respectfully represent, that many of the settlers of Yakima and Klickitat counties in Washington Territory are required in making proof upon land in contested cases to travel with their witnesses distances varying from one to four hundred miles, and while your memorialists are aware that under the present ruling of the General Land Office final proof can be made before a probate judge, these officers are constantly changing and as a consequence settlers are put to great inconvenience and vexatious delays, by new rules and regulations made by the Department.

446                        MEMORIALS.

We would also represent to your honorable body that Yakima and Klickitat counties have an area [of] twelve thousand square miles in which may be found large bodies of the finest agricultural and grazing lands in the world; that said counties are rapidly filling up with settlers at the present time, with every prospect that the rate of settlement will very materially increase during the next few years.

We therefore most respectfully but earnestly ask for the better accommodation of that class of citizens who have the courage and bravery to face the dangers and trials of frontior life, men who need every encouragement that the government can offer; that you do pass an act making Yakima and Klickitat counties a land district and that a land office be established at Yakima city, Washington Territory, and as in duty bound your memorialists will ever pray.

Passed the House of Representatives Oct. 19, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 25, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

ASKING AN APPROPRIATION TO ERECT FOG-BELL AND STEAM WHISTLE ON FOULWEATHER BLUFF AT THE ENTRANCE OF 'HOOD CANAL PUGET SOUND.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of Washington beg leave to represent to your honorable bodies that a fog-whistle or fog-bell should be placed on Foulweather bluff; the above named point is dangerous to shipping in foggy and thick weather and dangerous to navigation; commerce demands that fog signals be placed upon the above named point.

## MEMORIALS.                                    447

We therefore respectfully petition your honorable bodies to make an appropriation for the purpose herein stated.

Passed the House of Representatives Oct. 8, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 8, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

IN REGARD TO SCHOOL LANDS IN THE TERRITORY OF WASHINGTON.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

WHEREAS, Certain of the school lands of this Territory are valuable for use and cultivation, and

WHEREAS, The Legislative Assembly has by law provided for leasing said lands, (see Statutes of W. T. 1869, pages 401, and 402), and

WHEREAS, Several of the counties in the Territory, receive several hundred dollars each, toward defraying school expenses and

WHEREAS, Questions are, raised touching the validity of the aforesaid Legislative enactment,

Therefore we, the Legislative Assembly of the Territory of Washington do ask that your honorable body approve and make valid said act of the Legislative Assembly of Washington Territory.

Passed the House of Representatives Nov. 7, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 6, 1877.

T. M. REED,

*President of the Council.*

448                          MEMORIALS.

## MEMORIAL

### ASKING AN APPROPRIATION TO ERECT A STEAM WHISTLE AND FOG-BELL ON POINT WILSON.

*To the Senate and House of Representatives*
*of the United States in Congress Assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington beg leave to represent to your honorable bodies, that a fog-bell and steam whistle should be placed on Point Wilson at the entrance of Admiralty inlet. The above named point is a dangerous one to shipping, it has a sand bar nearly one mile in length which was caused by vessels getting ashore, and having to throw their ballast overboard to enable them to get afloat.

We therefore respectfully petition your honorable bodies to make an appropriation for the purpose herein stated, and in duty bound we will ever pray.

Passed the House of Representatives Oct. 30, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 9, 1877.

T. M. REED,

*President of the Council.*

---

## MEMORIAL

### RELATING TO MAIL SERVICE BETWEEN PORT TOWNSEND AND PORT ANGELES.

*To the Honorable Postmaster General of the United States:*

Your memorialists the Legislative Assembly of the Territory of Washington, respectfully represent that the United

## MEMORIALS.                                    449

States mails between Port Townsend and Port Angeles are now carried over route No.——— once a week by sailing vessel, that said route is on the straits of San Juan deFuca and owing to the roughness of the route during eight months of each year, said service is very uncertain and unsatisfactory, that at Scquim prairie, there is a large settlement without a postoffice or any mail facilities, that there is a good overland route from Port Townsend to Port Angeles.

Wherefore your memorialists pray; first that a postoffice may be established on Scquim prairie and second, that the road for [from] Port Townsend via; Port Discovery; Scquim prairie, New Dunginess to Port Angeles be made a post route, and that the United States mails be carried over said route once a week. And as in duty bound your memorialists will ever pray.

Passed the House of Representatives Nov. 5, 1877.

RUFUS G. NEWLAND,
*Speaker of House of Representatives.*

Passed the Council Nov. 6, 1877.

T. M. REED,
*President of the Council.*

---

## MEMORIAL

ASKING FOR AN APPROPRIATION TO ERECT A CUSTOM HOUSE AT PORT TOWNSEND THE PORT OF ENTRY FOR THE PUGET SOUND DISTRICT.

*To the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists the Legislative Assembly of the Territory of Washington hereby represent that at the port of entry for the Puget Sound district, Port Townsend is no safe or suitable government building for custom house, and that there is no bonded warehouse in said district. That the increase of

57

450                          MEMORIALS.

commerce demands better facilities; that there is no protection against destruction by fire of the valuable records of the custom house.

We therefore pray that an appropriation of twenty-seven thousand dollars ($27.000.00) be made for the purpose of purchasing a suitable site and for the erection of a safe and suitable building for custom house "etc.," and your memorialists as in duty bound will ever pray.

Passed the House of Representatives Oct. 19, 1877.

                          RUFUS G. NEWLAND,
                    *Speaker of the House of Representatives.*

Passed the Council Oct. 24, 1877.

                          T. M. REED,
                          *President of the Council.*

---

## MEMORIAL.

### PRAYING FOR THE OPENING OF THE U. S. LAND OFFICE AT COLFAX WHITMAN COUNTY, W. T.

*To the Senate and House of Representatives*
*of the United States in Congress Assembled:*

WHEREAS, By an act passed by your honorable body and approved August 15, A D 1876, as appears on page 207, chapter 307, of the statutes of the United States, passed at the first session of the forty-fourth Congress creating an additional land office at Colfax Whitman county Washington Territory and

WHEREAS, Said act has not been put into effect and said office not been opened for business by reason of no appropriation having been made for that purpose and

WHEREAS, The lands within the district embraced in said act are being rapidly occupied by settlers who are now required to travel from one hundred and fifty to five hundred miles going and returning in transacting their business at the Walla

## MEMORIALS.                    451

Walla land office, thereby entailing great expense inconvenience and loss of time.

We therefore your memorialists the Legislative Assembly of the Territory of Washington would most respectfully request your honorable body to make an appropriation and take such other action as may be needful and necessary to render the law aforesaid effective and enable the Secretary of the Interior to open said land office and place the same upon a practicable business footing at the earliest possible day; and as in duty bound your memorialists will ever pray.

Passed the House of Representatives Oct. 9, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 9, 1877.

T. M. REED,

*President of the Council.*

# RESOLUTIONS.

# RESOLUTIONS.

---

## RESOLUTION

### RELATIVE TO AN APPROPRIATION TO PAY THE MEMBERS AND OFFCERS OF THE SIXTH BIENNIAL SESSION.

WHEREAS, The second session of the forty-fourth Congress, did not make an appropriation, sufficient to cover the legislative expenses, of the Territory of Washington, and the incidental expenses thereof, for the fiscal year ending June thirtieth, one thousand eight hundred and seventy-eight, said appropriation, only being sufficient, to pay the per diem of members and officers, for thirty-eight days, and

WHEREAS, Important legislation, now pending, cannot be consummated short of the time fixed by law, for holding said session, therefore

*Be it resolved by the Council, the House concurring,* That the Legislative Assembly, continue the present session for forty days from date of convening, and. that the secretary of the Territory, be instructed to furnish without delay, a certified copy of this resolution, to the Secretary of the Treasury, recommending an appropriation sufficient to cover the per diem of members and officers, for the two days, for which they can receive no compensation, until such appropriation be made.

Passed the House of Representatives Nov. 6, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 5, 1877.

T. M. REED,

*President of the Council.*

456                        RESOLUTIONS.

## RESOLUTION

### RELATIVE TO THE JOINT CONVENTION OF BOTH HOUSES TO GIVE AUDIENCE TO THE SUB-COMMITTEE OF THE BOARD OF TRADE.

*Resolved by the House, the Council concurring*, That the two houses meet in joint convention in the Hall of Representatives on Monday 29th at 2:30 P. M. to give audience to the honorable gentlemen constituting the sub-committee of the board of trade of Portland Oregon on the subject of the protection of the salmon fisheries of the Columbia river and tributaries.

Passed the House of Representatives Oct. 27, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 27, 1877.

T. M. REED,

*President of the Council.*

## RESOLUTION

### RELATIVE TO AN EXTRA SESSION OF THE LEGISLATIVE ASSEMBLY OF WASHINGTON TERRITORY.

WHEREAS, The sixth biennial session of the Legislative Assembly of the Territory of Washington now being held at Olympia will expire by limitation on Friday, November 9th 1877, and

WHEREAS, the period of forty days is not at this session a sufficient time within which to accomplish the legislation demanded by the wants and interests of the Territory; their being a large number of important bills, relative to schools, roads,

## RESOLUTIONS. 457

public revenues and other matters of the highest importance that must fail of proper consideration and passage unless the said session be extended and,

WHEREAS, The Governor of the Territory has the authority by and with the advice and consent of the President of the United States to call an extra session of said assembly, therefore

*Be it resolved by the House of Representatives the Council concurring,* That the Governor of this Territory be and he is hereby requested to take the necessary steps toward calling an extra session of said assembly, said extra session to commence on Saturday November 10th 1877 and to continue fifteen days unless sooner adjourned; and be it further,

*Resolved* That the chief clerk of the Council be and he is hereby instructed to furnish the Governor a certified copy of these resolutions.

Passed the House of Representatives Oct. 30, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 1, 1877.

T. M. REED,

*President o the Council.*

---

## RESOLUTION

RELATIVE TO A JOINT COMMITTEE TO INQUIRE INTO THE EXPENDITURE OF FIFTEEN HUNDRED DOLLARS ($1500.00) APPROPRIATED FOR THE TERRITORIAL UNIVERSITY.

*Be it resolved by the House of Representatives the Council concurring,* That a special committee of five be appointed consisting of three on the part of the House and two on the part of the Council whose business it shall be to inquire into the expenditure of the fifteen hundred dollars ($1500.00) appropriated by an act of the Legislative Assembly of Washington Territory of 1875, for the purpose of making repairs on the University building and ascertain if the law has been complied

58

458                         RESOLUTIONS.

with in regard to said appropriation and report as soon as prac-
ticable: *Provided*, That the investigations be made on or
before Oct. 25th, 1877.

Passed the House of Representatives Oct. 20, 1877.

RUFUS G. NEWLAND,
*Speaker of House of Representatives.*

Passed the Council Oct. 20, 1877.

T. M. REED,
*President of the Council.*

----

## RESOLUTION

### RELATIVE TO NEW BUSINESS.

*Resolved by the House, the Council concurring*, That no
new business shall be introduced after Saturday November 3d
A. D. 1877, except by unanimous consent of the body in which
said new business shall originate.

Passed the House of Representatives Oct. 30, 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Nov. 3, 1877.

T. M. REED,
*President of the Council.*

----

## RESOLUTION

### TO RECEIVE BIDS FOR SAFES.

*Resolved by the Council, the House concurring*, That a
committee of two on the part of the Council and three on the

part of the House be appointed to receive bids and to arrange for the purchase of two safes, one for the Territorial auditor and one for the treasurer; said bids to be reported to the respective branches of the Legislature from which said committee are appointed, by the eight[th] of November. That said amounts to be paid for the two safes shall not exceed one thousand dollars ($1.000.00).

Passed the House of Representatives Nov. 7, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 7, 1877.

T. M. REED,

*President of the Council.*

---

# RESOLUTION

### RELATIVE TO THE DEATH OF SENATOR OLIVER P. MORTON.

*Resolved by the Legislative Assembly of the Territory of Washington*, That when the illustrious through life, the statesmen who have made their names immortal by long and patriotic service to the country, the idols of a grateful and admiring people pass away—it is eminently proper that a halt shall be called, to remind us of the lesson which death teaches.

The death of Oliver P. Morton, is such an event, and the people of Washington Territory appreciate the public loss in common with the whole nation.

The illustrious statesman and patriot whose death the people mourn, had introduced himself to our people a few short months ago; his words of encouragement, exhibiting deep it terest in our growth and progress inspired the hope for valuable results to the Pacific States and Territories. But disease which so long had prostrated his physical powers—which his iron will enabled him measurably to triumph over—at length wore him out and he left our midst to get home to die in his own Indiana, a State glorified by having given birth to such a son, which he had honored by having been its best Governor.

460                        RESOLUTIONS.

He needs no biographical notice—the name of Morton is historic—it speaks its own eulogy. Honest, truthful, earnest and sincere, his decided course on all national questions in the heat of political strife, made for him embittered enemies, but his sincerity and patriotism always demanded the respect of his fellow citizens of every party.

His death has silenced all partisan rancor, all without distinction of political opinion gather at the tomb to do honor to the memory of the illustrious patriot the profound statesman, the honest man.

*Resolved*, That this tribute of the Representatives of the people of this Territory, whom he visited among his latest acts and for whom he so freely attested his warmest sympathy, be spread upon the Journals of each House, and that copies thereof, under the seal of the Territory, be forwarded by the Governor to the widow and family of the deceased Senator, and to the Vice President of the United States.

Passed the House of Representatives Nov. 5, 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Nov. 9, 1877.

T. M. REED,
*President of the Council.*

---

## RESOLUTION

RELATIVE TO HEARING THE ADDRESS OF HON. ELWOOD EVANS

*Resolved by the Council, the House concurring,* That the Legislative Assembly meet in joint convention October thirteenth at half past seven P. M. in the Town Hall, to hear the address of Hon. Elwood Evans.

Passed the House of Representatives Oct. 12., 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Oct. 13, 1877.

T. M. REED,
*President of the Council.*

## RESOLUTIONS.                              461

## RESOLUTION

RELATIVE TO APPOINTMENT OF A COMMITTEE TO COMPUTE MILEAGE.

*Resolved by the Council, the House concurring*, That the President of the Council and two members of the House of Representatives be appointed a special committee to compute the mileage of the members of the Council and House, and to report the amount each member is entitled to receive for mileage.

Passed the House of Representatives Oct. 5, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 5, 1877.

T. M. REED,

*President of the Council.*

## RESOLUTION

RECOMMENDING THE PURCHASE BY COUNTIES OF MUSSER'S TAX BOOK ATTACHMENT.

*Be it resolved by the House, the Council concurring*, That all the boards of county commissioners in this Territory are hereby recommended to purchase R. W. Musser's tax book attachment, we being satisfied of its merit and of the pressing necessity for the use of such a system.

Passed the House of Representatives Nov. 8, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Nov. 9, 1877.

T. M. REED,

*President of the Council.*

462                    RESOLUTIONS.

## RESOLUTION

TO INFORM THE GOVERNOR OF THE ORGANIZATION OF BOTH
HOUSES.

*Resolved by the Council. the House concurring*, That a
committee of two be appointed by the President to confer with
a like committee chosen by the House to wait upon the Gov-
ernor and inform him that both houses are now organized and
ready to receive any communication he may be pleased to make

Passed the House of Representatives Oct. 2, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 2, 1877.

T. M. REED,

*President of the Council.*

---

## RESOLUTION

RELATIVE TO PRINTING 1,000 COPIES OF THE GOVERNOR'S MESSAGE
FOR THE USE OF THE BOARD OF IMMIGRATION OF W. T.

*Resolved, by the House, the Council concurring*, That
1,000 copies of the Governor's message be ordered printed, for
the use of the Board of Immigration of Washington Territory,
500 copies for the members of the Council.

Passed the House of Representatives Oct. 6, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 4, 1877.

T. M. REED,

*President of the Council.*

## RESOLUTION

### RELATIVE TO THE ENROLLMENT AND PRINTING OF ACTS, MEMORIALS AND RESOLUTIONS.

*Resolved by the Council, the House of Representatives concurring*, That all acts of the Legislative Assembly, and all memorials and joint resolutions shall be enrolled upon parchments or paper in a neat legible handwriting and without erasures or interlineations, and with the title, enacting clause, and sections following without break-lines paragraphs or vacant space sufficient for additions or incorporation of any word or figure and all dates and numbers shall be expressed in words and not in figures, and no ab[b]reviations shall be used.

*Resolved further*, That all enrolled acts, resolutions, and memorials shall be printed in separate paragraphs, each section and numbered subdivision of a section being a separate paragraph.

Passed the House of Representatives Oct. ,11 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 8, 1877.

T. M. REED,

*President of the Council.*

## RESOLUTION

### RELATIVE TO THE LEGALITY OF CERTAIN ACTS OF INCORPORATION OF TOWNS AND CITIES.

*Resolved by the Council, the House concurring*, That a special committee consisting of two on the part of the Council, and three on the part of the House, be appointed for the purpose of examining into the legality of the acts relating to the

464 ·          RESOLUTIONS.

incorporation of towns and cities and to report by bill or otherwise.

Passed the House of Representatives Oct. 6, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 4, 1877.

T. M. REED,

*President of the Council.*

---

## RESOLUTION

### REQUESTING HON. ELWOOD EVANS TO DELIVER HIS CENTENNIAL ADDRESS BEFORE A JOINT CONVENTION OF BOTH HOUSES.

*Resolved by the Council, the House concurring,* That a committee of two be appointed to act with a like committee on the part of the House, to wait upon Hon. Elwood Evans and request him to deliver to a joint convention of both Houses, his address delivered at the Centennial Exhibition.

Passed the House of Representatives Oct. 6, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 5, 1877.

T. M. REED,

*President of the Council.*

---

## RESOLUTION

### RELATIVE TO THE OBTAINING AND PRINTING OF THE ADDRESS OF HON. ELWOOD EVANS.

*Resolved by the Council, the House concurring,* That a committee consisting of two on the part of the Council and a

like number on the part of the House, be appointed to wait upon Hon. Elwood Evans and request a copy of his address delivered before the joint convention on the thirteenth inst. for publication, and that said committee ascertain what will be the cost of printing five thousand copies of said address.

Passed the House of Representatives Oct. 17, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 17, 1877.

T. M. REED,

*President of the Council.*

---

## RESOLUTION

### IN REGARD TO EXTENDING INVITATIONS ON EXCURSIONS TO VISIT PUBLIC INSTITUTIONS.

*Be it resolved by the House the Council concurring*, That the Speaker of the House of Representatives and the President of the Council be appointed a joint committee for the purpose of extending an invitation to the Territorial and Federal officials and reporter of press within the bar to (to) join the Legislative Assembly on its contemplated excursion to visit and inspect the several Territorial institutions on Monday October 22d, 1877.

Passed the House of Representatives Oct. 19, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 19, 1877.

T. M. REED,

*President of the Council.*

59

466                    RESOLUTIONS.

## RESOLUTION

### RELATIVE TO THE APPOINTMENT OF A JOINT COMMITTEE TO EXAMINE THE TERRITORIAL AUDITOR'S ACCOUNTS.

*Resolved by the House, the Council concurring,* That a committee of three on the part of the House and two on the part of the Council be appointed to examine the books, papers and accounts of the Territorial auditor with authority to destroy any and all paid and cancelled warrants and to report to the House and Council the result of their examination and action.

Passed the House of Representatives Oct. 8, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 6, 1877.

T. M. REED,

*President of the Council.*

---

## RESOLUTION

### RELATIVE TO THE PRINTING 1,000 ADDITIONAL COPIES OF THAT PART OF THE GOVERNOR'S MESSAGE RELATING TO THE NORTHERN PACIFIC R. R. CO.

*Resolved by the House, the Council concurring,* That one thousand additional copies of the Governor's message, so far as relates to the Northern Pacific railroad, be printed and that the secretary of the Territory be requested to furnish each member of Congress, a copy for reference at the coming session.

Passed the House of Representatives Oct. 4, 1877.

RUFUS G. NEWLAND,

*Speaker of the House of Representatives.*

Passed the Council Oct. 4, 1877.

T. M. REED,

*President of the Council.*

## RESOLUTION

RELATIVE TO APPOINTMENT OF A COMMITTEE TO MAKE A CONTRACT FOR THE PRINTING REQUIRED AT THE SIXTH BIENNIAL SESSION.

*Resolved by the Council, the House of Representatives concurring,* That a special committee, of two on the part of the Council, and three on the part of the House, be appointed to make arrangements and contract for the printing required to be done by the Territory of Washington at the sixth biennial session.

Passed the House of Representatives Oct. 4, 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Oct. 2, 1877.

T. M. REED,
*President of the Council.*

---

## RESOLUTION

RELATIVE TO APPOINTMENT OF A COMMITTEE TO VISIT INSANE ASYLUM, ETC.

*Resolved by the Council, the House concurring,* That a committee of two on the part of the Council, and three on the part of the House, be appointed to make necessary arrangements for the members, officers, and clerks, of both Houses to visit the Insane Asylum and Territorial University on Monday October 22d, one thousand eight hundred and seventy-seven, to enquire into the condition of those institutions.

Passed the House of Representatives Oct. 12, 1877.

RUFUS G. NEWLAND,
*Speaker of the House of Representatives.*

Passed the Council Oct. 12, 1877.

T. M. REED,
*President of the Council.*

# INDEX.

# INDEX

## TO THE

# FOREGOING LAWS.

---

## A.

ABATEMENT—                                                      Page.  Sec.

    death, marriage or other disability, nor transfer of interest,
      no cause of ....................................................   6    17
    successor in interest may maintain action within one year     6    17
    action for personal injury survives to wife and children      6    18
    of nuisance, mode of proceeding.......  ................   126   610

ABETTOR—

    in duel, action for damages against, in favor of widow of
      the slain...............................  .................   4     8

ABSENCE—

    from Territory deducted in period of limitation of actions     9    37
    of witnesses, motion to continue trial....................   49   209

ACCOUNT—

    limitation of action upon.................................    9    33
    mutual, when limitation begins to run.....................    9    33
    when mutual, ceases to be current.........................    9    33
    items of, need not be set forth in pleading................   21    93
    must be filed if demand be made........  ...............   21    93
    effect of failing to furnish copy to adverse party..........   21    93
    court may require further.................................   21    93
    examinatin of may be submitted to referee........  . ....   51   253
    debts due on, assessed...................................  154    3
    and settlements.........................................  169
    against incorporated cities, how presented................  190    72

Of Hospital for Insane—

    how to be kept..........................................  227    10
    opento inspection of legal visitors.......................  227    12
    to be examined before turning over to successor...........  229    22
    when found correct transmitted to Territorial Auditor....  229    24
    of contractor for keeping convicts, how paid.............  250    7
    of board of education, how paid..........................  263    15
    of schools, kept by District Clerk, how paid...  ........  272    43
    of printer how audited and paid..........................  288
    between Territory & counties, how settled................  290    1

472                                  INDEX.

ACKNOWLEDGMENT—                                              *Page.  Sec.*

    to take case out of statute of limitations must be in writing      10    45
    by wife, to mortgage of homestead exempted..............    72   348
    to release, by tenant for life or years, of proceeds of sale
      of real property in suits of partition.................   122   586
    notary public authorized to take........ ...............   254     5
    all deeds to be acknowledged............................   312     2
    of married woman....... ............... ............    312     3
    who authorized to take..................................   313     5
    how taken in other States and Territories..............   313     6
    how to be certified.....................................   313     7
    legalization of, previously taken.......................   313     8

ACTIONS, CIVIL—

    common laws of England, rule of decisions...............     3     1
    to enforce private rights, but one form called civil action..   3     2
    parties to, how designated ..............................     4     3
    to be prosecuted in the name of party in interest..........     4     4
    brought by assignee, same defense as between original par-
      ties....................................................     4     4
    except assignee of negotiable notes before maturity.......     4     4
    by executors, trustees, etc., beneficiary need not be joined     4     5
    when married woman is party may sue alone .............     4     6
    when husband and wife may join .......................     4     7
    wife may defend in all cases when interested..............     4     7
    for injuries to person, character or property of husband
      and wife, either or both .............................     4     7
    by widow or children of party killed in duel..............     4     8
    by persons injured by defective street, sidewalk, wharf or
      bridge..................................................     4     8
    defendants in such actions...............................     5     8
    for injury or death of child or ward.....................    5·     9
    for seduction of daughter or ward, by parent or guardian     5    10
    for seduction of unmarried female. in her own name.....     5    11
    by defendants, appointment of guardians when appointed     5    13
    all parties in interest must be joined ....................     5    14
    proviso.................................................     5    14
    when one may sue or defend for a number .............     5    15
    against persons severally liable..........................     6    16
    shall not abate, if cause survive.........................     6    17
    for personal injury. survives to wife, etc., when...........     6    18
    for recovery of purchase money, and specific performance
      of contract............................................     6    19
    bringing in of new parties by court, when ................     6    20
    when new parties introduced. requisites of notice ........     6    21
    substitution of third person for defendant, when..........     6    22
    intervention by new party, on his complaint..............     7    23
    how intervenor's complaint served ......................     7    24

*Time of commencement of, or limitation of—*

    general provisions concerning............................     7    25
    statute of limitations to be pleaded by answer.............     7    25
    for the recovery of real property or possession thereof.....     8    26
    upon a judgment or decree...............................     8    27
    upon a contract in writing or written instrument..........     8    27
    for rents and profits of use of real estate.................     8    27
    of waste or trespass on real property.....................     8    28
    for taking, detaining or injuring personal property ........     8    28
    for specific recovery of personal property.................     8    28
    for injury to the person or rights not otherwise provided
      for.....................................................     8    28
    upon a parol contract or liability........................     8    28
    for relief against fraud..................................     8    28

## INDEX.

ACTIONS, CIVIL—(Continued.)               *Page.*   *Sec.*

| | Page. | Sec. |
|---|---|---|
| against sheriff or officer for malfeasance or misfeasance, except escape | 8 | 28 |
| • upon statutory penalty or forfeiture to party aggrieved | 8 | 28 |
| for seduction and breach of marriage promise | 8 | 28 |
| for libel, slander, assault, assault and battery and false imprisonment | 8 | 29 |
| for statutory penalty or forfeiture to Territory | 8 | 29 |
| against sheriff or officer for escape | 9 | 30 |
| for penalty by private prosecutor | 9 | 31 |
| for penalty to Territory brought by prosecuting attorney | 9 | 31 |
| for other relief not specially provided for | 9 | 32 |
| upon mutual and current account | 9 | 33 |
| same limitation extended to Territory, county or public corporation | 9 | 34 |
| when deemed as commenced | 9 | 35 |
| attempt to commence, defined | 9 | 36 |
| where party is absent or concealed | 9 | 37 |
| exceptions as to parties laboring under disabilities | 9 | 38 |
| survivorship of, in case of death of party | 10 | 39 |
| by alien enemy, continuance of war to be deducted | 10 | 40 |
| stay by injunction or prohibition, not included in time | 10 | 41 |
| where judgment is reversed in court of error or appeal | 10 | 42 |
| all disabilities must be removed before limitation runs | 10 | 44 |
| new promises must be in writing to take case out of statute | 10 | 45 |
| date of last payment, time when statute begins to run | 10 | 46 |
| by non-residents, if barred in State or Territory where cause accrued, cannot be maintained | 10 | 47 |

*Venue of—*

| | | |
|---|---|---|
| when shall be commenced, where subject of is situated | 11 | 48 |
| when to be tried, where the cause of, arose | 11 | 49 |
| against a corporation | 11 | 50 |
| when in the district where defendant is served | 11 | 51 |
| against non-residents, plaintiff may designate district | 11 | 51 |

*Change of venue—*

| | | |
|---|---|---|
| may be changed by defendant by filing affidavit of merits | 11 | 51 |
| in what cases court may change | 12 | 52 |
| when judge disqualified | 12 | 52 |
| proceedings in case of change | 12 | 53 |
| when new county has been created | 12 | 54 |
| when changed, clerk to transmit papers | 12 | 55 |
| costs of such change | 12 | 55 |
| parties may agree to by stipulation or consent in open court | 13 | 56 |
| court must order such change | 13 | 56 |
| order may be vacated when, and no other allowed. | 13 | 57 |
| deemed complete, when | 13 | 58 |
| clerk to transmit certified transcript | 13 | 59 |

*Amendment of—*

| | | |
|---|---|---|
| complaint to be filed | 13 | 60 |
| summons to be issued | 13 | 60 |
| what operates as waiver of summons | 13 | 60 |
| requisites of summons | 13 | 61 |
| notice of *lis pendens* may be filed | 14 | 62 |
| who may serve summons | 14 | 63 |
| how to be served and returned | 15 | 64 |
| when publication may be had | 15 | 65 |
| manner of publication | 16 | 67 |
| rights of defendant, against whom publication is made | 16 | 68 |
| proof of service, how much | 16 | 70 |
| when court acquires jurisdiction | 17 | 71 |

61

474                            INDEX.

ACTIONS CIVIL—(Continued)                                        Page.   Sec.

    effect of voluntary appearance.............................   17    72

Pleadings in—

    forms of abolished, and this code to be rule to judge suffi-
      ciency of.............................................   17    73
    on the part of plaintiff..................................   17    74
    of the complaint........................................   18    76
    of demurrer by defendant.....  ..........................   18    77
    what to specify.........................................   18    78
    amended complaint, how served..........................   18    80
    when objection deemed waived..........................   18    81
    of the answer...........................................   18    82
    counter claim, what........  ...........................   19    83
    striking out sham and irrelevant pleadings.............   19    85
    verification of..........................................   20    91
    general rules of..  .....................................   21
    on instrument of writing or items of account.............   21    93
    construction of.........................................   21    94
    striking out irrelevant and redundant matter, and making
      certain...............................................   21    95
    judgment of court of special jurisdiction.................   21    96
    condition precedent.....................................   21    97
    private statute or right derived therefrom.................   21    98
    libel and slander.......................................   22    99
    for recovery of possession of distrained property.........   23   101
    several causes may be united in complaint, when..........   23   102
    material allegations undenied, effect of..................   23   103
    material allegation defined..............................   23   104
    mistakes in and amendments, and herein of variance......   23  105-10
    not verified or subscribed may be stricken out.............   24   111
    errors and defects disregarded, not affecting substantial
      rights of adverse party...............................   24   113
    supplemental, allowed by court..........................   24   114

Arrest and Bail—

    defendant may be arrested, when.........................   25   116
    claim to recover personal property......................   30   142
    when injunction or restraining order may be granted......   32   153
    notice to be given......................................   33   156
    bond to be entered into.................................   35   159
    no writ necessary.......................................   33   161
    disobeying order, contempt..............................   34   166
    motions to dissolve or modify...........................   34   169

Attachment—

    when property may be attached .........................   35   175
    when receiver may be appointed and herein of deposits in
      court. ...............................................   40   197

Issues and trial of—

    issues, how arise and kinds of...........................   42   204
    trial of................................................   42   208
    continuance of cause for absence of witness........ .....   43   209
    formation of trial jury and challenge.....................   43   210
    mode of trial...........................................   46   225
    verdict................................................   49   244
    trial by the court.......................................   50   249
    trial by referees........................................   51   252
    exceptions.............................................   53   261
    refusal of judge to allow, petition to supreme court........   53   265
    arbitration and award..................................   54   263
    new trial..............................................   56   279

.

## INDEX.                     475

ACTIONS, CIVIL—(Continued)                              *Page.*  *Sec.*

    submitted cases............................. ........... 61   302
*Judgment of—*
    mode of taking and entering........................... 62   305
    how person not served, bound by....................... 64   318
    defendant may answer................................. 65   321
    issue tried as in other cases......................... 65   323
    lien of, and revival of............................... 65   324
*Execution—*
    how and when issued.................................. 67   328
    stay of.............................................. 70   339
    exemptions from...................................... 71   345

*In particular cases—*

    claim to property levied on or attached........ ... ...... 75   354
    sales of property under execution..................... 76   358
    proceedings supplementary to execution................ 84   383

*Witnesses and evidence—*

    who may be.......................................... 85   390
    manner of compelling attendance of.................... 87   395
    parties to action may be............................. 88   405
    when and how depositions taken....................... 89   411
    to perpetuate testimony.............................. 93   425
    documentary......................................... 94   340

*Judgments—*

    definition of and when may be given................... 57   287
    of nonsuit........................................... 58   290
    on failure to answer................................. 59   293
    by confession........................................ 60   295
    how revised, vacated or modified in the court wherein ren-
      dered............................................ 96   438
    re-examination on writs of error or appeal............. 98   448
    set-off............................................. 107  501
    costs in............................................ 108  509
    commissioners to convey real estate................... 111  532
    to recover and affecting real estate.................. 112  540
    to recover possession as a donee of the United States...... 116  556
    of partition of real property........................ 117  557
    of waste and trespass................................ 125  605
    of nuisance......................................... 126  610
    of foreclosure of mortgage........................... 127  614
    of specific performance of contracts.................. 130  626
    of authority to change a person's name................ 132  638
    of *ne exeat*........................................ 133  639
    of sureties against principals....................... 134  647
    on official bonds, fines and forfeitures.............. 135  655
    by and against public corporation and officers......... 137  664
    *habeas corpus*...................................... 138  669
    mandate and prohibition.............................. 141  693
    information.......................................... 143  706
    by and against executors............................. 145  721
    contempts and their punishment....................... 147  730
    on foreign judgments................................. 150  644

*Miscellaneous provisions—*

    oath of parties to pleadings not deemed proof.......... 157  746
    of introduction of new party......................... 151  747
    time, how computed.................................. 151  748
    all process to be directed to sheriff................. 151  749
    what slanderous words and terms are actionable........ 152  752
    of construction...................................... 153  759

476                               INDEX.

ACTIONS, CIVIL—(Continued.)                              *Page.*   *Sec.*

    civil practice act as far as applicable to govern in actions
        pending................................................    153    762
    when donee of the U. S. deemed to have legal estate in fee
        simple................................................    327     1
    persons claiming title under patent may maintain action....    328

ACTIONS, CRIMINAL—

    persons engaged in gaming liable to......................    198     1
    no pleading in civil action to be used as evidence in.......     20    92
    depositions admitted, when..............................    204     1
    officers subject to, when................................    204     2
    persons liable to, for injuring bridges....................    205     3
    for marrying polygamists................................    205     4
    for disposing of spirituous liquor to minor................    206     5
    for attempt to commit felony............................    206     6
    continuance, and how obtained..........................    206     7
    fines and costs how paid when defendant committed.......    206     8
    writs of error, how served out...........................    207     9
    defendant not liable for costs, when.....................    207    10
    saving clause.....   ...................................    207    11
    casting sawdust in Columbia river, cause of..............    232     6
    officers liable to, for neglecting jurors..................    256     2
    persons liable to, for destroying fish.....................    293     6
    at common law, not taken away..........................    301     6
    setting fires to forests, cause of.........................    300
    against minors for misrepresentations....................    329     1
    evidence in, to be taken by reporter.....................    309
    in case of nuisances....................................    305
    teacher who maltreats pupils, liable to..................    238    88
    trespass for purposes of killing game, cause of...........    332     1

ADJOURNMENT—

    by court while jury absent..............................     49    239
    final, of court, if jury out, discharges the jury............     49    239
    power to grant, by referees.............................     52    257
    power of, by arbitrators or majority of them..............     55    274
    of sale, by sheriff when allowed and how to proceed.......     78    364
    of city council..........................................    187    58
    of probate court.......................................    209     1

ADMEASUREMENT OF DOWER—

    proceedings in suit by tenant in dower...................    115    525

ADMINISTRATION—See LETTERS OF ADMINISTRATION.

    damages for death, subject to, as other personal property..    145    721
    when put in issue, how far inventory may be contradicted
        or avoided........................................    146    725

ADMINISTRATORS—See EXECUTORS OF ADMINISTRATORS.

ADULTERY—

    charge of actionable...................................    152    752

ADVERSE CLAIM—

    by third party, in suits for the recovery of personal property    75    354
    to property levied upon or attached, procedure...........     75    357
    party making shall be plaintiff, and sheriff and plaintiff in
        execution the defendants............................     75    356
    judgment in such actions..............................     76    357

ADVERSE PARTY—

    affinity within third degree to judge, venue may be changed     12    52
    certain relation to, ground of challenge for cause.........     44    216
    trial of challenge for cause and exceptions....  ..........     45    220

## INDEX.   477

**ADVERSE PARTY—(Continued)**                                       *Page. Sec.*

judgment creditor may be ordered to institute action
   against party claiming interest in property of judgment
   debtor attached.................................... 85   388
examination of...................................... 88   405
may be required to answer interrogatories............... 89   406
penalty for refusing to make answer..................... 89   410
not compelled to answer if will criminate him ............ 89   410
action maintained against............... .............. 328   1

**AFFIDAVIT—**

by defendant, for substitution of other party demanding
   same debt or property .............................. 6 . 22
for change of venue in civil action, what shall contain..... 12   52
when in new county................................ . ..... 12   54
to entitle party to service by publication, in certain cases.. 15   65
of party serving notice other than officer ................ 16   70
of printer to publication of notice...................... 17   70
in verification of pleadings............................ 20   91
for issue of warrant of arrest in civil actions............. 26   117
in claims to recover personal property, what shall contain 30   143
by party other than defendant, in actions to recover
   personal property.................................. 32   151
to obtain a restraining order or writ of injunction......... 33   154
each party may read, on hearings for injunction........... 33   157
of disobedience to injunction, attachment for contempt.... 34   166
on hearing for reinstatement of injunction........ ....... 35   172
for issue writ of attachment of property, what shall contain 35   175
in motions to dissolve attachment ....................... 39   192
in motion to continue trial, what must be shown.......... 43   209
in motion for new trial................................ 57   282
to set aside a default.................. ...................... 60   294
of defendant, in judgments by confession, what shall con-
   tain................................................ 61   300
of defendant denying judgment.......................... 65   322
of judgment creditor in motion to reverse judgment....... 68   328
to have execution issued to another county............... 69   333
that homestead claim is worth over one thousand dollars... 72   349
list of exempt property verified by ...................... 74   353
of appraisers of property claimed as exempt.............. 74   353
in claim to property levied on or attached................ 75   354
in proceedings supplementary to execution............... 84   383
in claim to earnings for use of family.................... 85   387
in proceedings to perpetuate testimony................... 93   425
denying genuineness of book, record, etc., proposed to be
   read in evidence................................... 94   431
in proceedings to revive or modify judgments............ 97   441
to obtain injunction, in case to modify judgments......... 97   445
in diminution of record............................... 101   467
to fee bills and disbursements to be taxed as costs......... 109   517
for service by publication in suits of partition............. 117   561
of non-residence of lien creditor in suits of partition...... 120   574
to writ of *ne exeat*, what shall contain................... 133   639
delinquency in suits on official bonds, fines and forfeitures 136   657
of fear that one illegally in custody may be taken out of
   jurisdiction, summary proceedings thereon............. 140   685
for issue of writ of mandate or prohibition............... 142   696
for a contempt not committed in presence of court or officer 148   733
to make justice's judgment a lien on real estate........... 153   758
of publication of notice of tax sale........... ......... 167   60
certifying statement of county treasurer in settlement..... 171   (75)
may bind city by contract, when....................... 194   97
of claimant in attachment suit in justice court............ 201

478                    INDEX.

AFFIDAVIT—(Continued)                                      *Page. Sec.*

on allegations of claimant's, when property claimed by oth-
    ers, trial to proceed................................  202    6
of executor or administrator, before letters to issue.......  211    4
of insufficiency of sureties before approval of bond, pro-
    bate judge to issue citation...........................  212
of claim of persons, filed with auditor to secure lien.......  218    9
of client taken before counsel when notary, legal.......  254    5
before notary, when sufficient without seal................  254    6
for certifying to fees of notary.........    ...............  255    9
of parties to mortgage on personal property..............  286
when mortgage void unless accompanied by..............  286    3
of age of applicant for admission to practice as attorney
    at-law........................................  ......  322    2
application for bounty for scalps verified by.............  324    5
of applicant for ditch, to be recorded.  ..................  314    1

AFFINITY—

of judge within the third degree to adverse party, cause for
    change of venue......  ...............................  12    52
to adverse party within fourth degree, challenge for cause  44    216

AGENT—

of a corporation, may be served with complaint and notice  15    64
may verify pleadings...................................  20    91
of a corporation or in any fiduciary capacity, may be ar-
    rested for fraud, &c...................................  25    116
of plaintiff, may be examined in respect to payments, &c.,
    in actions commenced by publication..................  60    293
examination of in proceedings supplementary to execution  84    383
may make affidavit for issue of writ of *ne exeat*...........  133    639
may verify answer of appellee..........................  106    419
services at request of subject of lien.........  .......216 to 222

*Immigration Agent—*

by whom appointed.....................................  301
where appointed, and tenure of office....................  301
of firm or corporation to pay road tax....................  316    2

AGREEMENT—

to refer an issue of fact, or try by court instead of jury....  42    208
by jurors upon a verdict in civil actions .................  49    240
submitted cases upon, without action .....................  61    302
for revival and continuance of judgment and lien thereof  66    326
of waiver of exception, requisites of ....................  74    352
upon amendments to answers, in taking depositions.......  92    421
by parties interested in sale of real estate by referees......  123    598
not contained in mortgage, mortgages confined to mortgage
    itself....  .............................................  127    615
of parties for construction of ditch, drain or water course
    leading into Columbia river.....  .....................  315    4

ALIEN—

enemy, continuance of war deducted from time of limita-
    tion.................................................  10    40
to be included in census.................................  311    2
must pay road tax.............................  .........  317    4

ALLEGATION—SEE PLEADING, ACTION, COMPLAINT, ANSWER.

of complaint, must be denied by answer..................  18    82
of answer, must be replied to by plaintiff................  19    86
of pleading liberally construed with view of substantial
    justice..............................................  21    94
if indefinite and uncertain, amendment may be ordered....  21    95

## INDEX.

479

**ALLEGATION—(Continued)**  *Page.* *Sec.*

| | Page. | Sec. |
|---|---|---|
| of jurisdiction of special court, if controverted must be proven | 21 | 96 |
| of performance of conditions precedent, when must be proven | 21 | 97 |
| in actions for libel and slander | 22 | 99 |
| of defendant of lawful possession, sufficient in actions to recover possession of distrained property doing damage | 22 | 101 |
| material, if not denied, taken as true | 22 | 103 |
| material, defined | 23 | 104 |
| of variance and failure of proof | 23 | 105 |
| in pleadings, how to be regarded on trial | 151 | 746 |
| for removal of executor or administrator to be filed | 214 | |

**ALLEYS—**

| | Page. | Sec. |
|---|---|---|
| in incorporated | 178 | 16 |
| grade of, may be changed | 196 | 109 |
| in cities and towns declared highways | 299 | ·1 |
| in unincorporated towns, declared highways | 314 | 1 |

**ALTERNATIVE—**

| | Page. | Sec. |
|---|---|---|
| first writ of mandate shall be in the, when | 142 | 697 |

**AMENDMENT—**

| | Page. | Sec. |
|---|---|---|
| of complaint, copy thereof to be served on defendant | 18 | 80 |
| of pleading, to render definite and certain | 21 | 95 |
| of pleading, where party alleges he has been misled | 23 | 105 |
| when ordered by court, because of immaterial variance | 23 | .106 |
| in claims to personal property, where special interest proven instead of ownership | 23 | 108 |
| by striking out name or correcting mistake | 23 | 109 |
| when made, pleading to be newly filed and complete in itself | 24 | 110 |
| when motion to strike out has been allowed | 24 | 111 |
| of verdict of jury, when insufficient or informal | 49 | 242 |
| of return or proceedings in hearings on *habeas corpus* | 139 | 678 |
| to writs of *habeas corpus*, for defects therein or informalities | 141 | 691 |

**ANCESTOR—**

| | Page. | Sec. |
|---|---|---|
| seizure of within twenty years, to maintain real action when | 8 | 26 |

**ANIMALS—**

| | Page. | Sec. |
|---|---|---|
| certain, exempt from attachment and execution | 73 | 351 |

**ANSWER—**

| | Page. | Sec. |
|---|---|---|
| statute of limitations can only be pleaded by | 8 | 25 |
| when objections to complaint may be taken by | 18 | 79 |
| to amended complaint | 18 | 80 |
| when defendant deemed to have waived objection | 18 | 81 |
| what shall contain | 18 | 82 |
| counter claim, when may be pleaded by | 19 | 83 |
| may be set forth a number of defenses but be separately stated | 19 | 83 |
| to residue, after demurrer to part | 19 | 84 |
| sham, frivolous and irrelevant may be stricken out | 19 | 85 |
| when, states new matter plaintiff may reply | 19 | 86 |
| may be demurred to by plaintiff | 19 | 87 |
| new matter in, not replied to entitles defendant to judgment | 19 | 88 |
| in actions for libel or slander, truth and mitigating circumstances may be alleged | 22 | 100 |
| title to real property need not be averred, but possession in actions for distrained personal property | 22 | 101 |
| every material allegation of, uncontroverted deemed as true | 22 | 103 |

480                          INDEX.

ANSWER—(Continued)                                         *Page.*  *Sec.*

  allowed after time limited, when.........................  23   109
  controverting  complaint forms an issue of fact...........  42   205
  judgment on  failure to..................................  59   293
  set-off must be pleaded by...............................  108  506
  when tender is pleaded, as to costs......................  109  520
  in actions to recover and affecting real estate..........  112  541
  in suits of partition....................................  118  562
  in informations.........................................  144  710
  in suits upon certain foreign judgments.................  150  745

APPAREL—

  wearing, of every person and family exempt from execu-
    tion ..........................................  73   351

APPEALS—See Writs of Error.

  reversal on, if plaintiff die and action survive, representa-
    tives may commence new action. .....................  10   42
  decision by the court or referees, deemed excepted to when  54   267
  in submitted cases........................................  61   304
  shall not affect lien of judgment, and date of judgment is
    commencement of lien................................  66   327
  when equitable relief sought.............................  98   447
  from certain orders......................................  98   448
  court to  prescribe rules  for.............................  98   449
  when may be taken to Supreme court.....................  99   455
  from justice's courts, appellant liable for costs when.......  110  522
  to supreme court, costs within discretion of court.........  111  528
  to judgment of district court on writs of mandate and pro-
    hibition...........................................  143  705
  allowed on proceedings for contempt, but will not stay other
    proceedings........................................  150  743
  by a part of several co-partners..........................  99   456
  from part of an order, not disturb rights of party.........  100  459
  or writ of error, how taken..............................  100  460
  when perfected..........................................  100  461
  dismissal of............................................  100  463
  costs of persons blameable...............................  101  468
  not stay proceedings unless surety for damages be given....  102  469
  not vacate or affect judgment appealed from..............  102  469
  bond how approved......................................  102  470
  amount of penalty of bond...............................  103  474
  execution issued prior, countermanded...................  104  476
  dismissed, when, no further right to prosecute............  106  496
  manner of service of notices on..........................  106  498
  construction given to certain words in...................  106  500
  from justice court in attachment cases ..................  203  7

APPEARANCE—

  of infant, by guardian ..................................  5    12
  voluntary, of defendant equivalent to personal service.....  17   72
  of defendant in attachment suit before justice............  200
  of defendant when deposition is taken...................  203  8
  of physicians as witnesses in probate court..............  210  2
  of sureties on bond required...................... ...  212

APPORTIONMENT—

  of proceeds of sale under lien...........................  219  16
  of school fund by county superintendent.... ...........  263  18
  of school fund for new district..........................  267  29
  of school fund when district entitled to..................  267  31
  school three months before receiving.....................  267  32
  of school fund, how and by whom made..................  281  83
  of members of council..................................  319  1

## INDEX.    481

APPORTIONMEET—(Continued.)    Page.  Sec.

of member of house ........................................ 319  2

APPROPRIATION—

of money for hospital for insane ........................ 319  1
of money to pay code commissioner's clerk .............. 236  7
of money to pay expenses of convention to frame state
constitution ............................................ 240  10
of money for the Territorial University ................. 241
to pay for reports of decisions ......................... 244  2
to pay for salary of prosecuting attorney ............... 248  17
to pay for removing convicts ............................ 250  7
for reward for arrest of criminals ...................... 283  1
for certain printing .................................... 288  9
to pay pilot commissioners .............................. 297  2
to pay for training indigent mute and blind children .... 299  2
for reward for arrest of certain murderers .............. 322  2
to purchase a site for a pest house ..................... 323  1
to pay for removal of Territorial Library ............... 329  3
to pay expenses of regents of Territorial University .... 331  1
to pay incidental expenses of Territorial Treasurer ..... 334  1
to construct a certain road ............................. 380  1

APPRAISEMENT—See Assessment of Damages.

of property claimed to be exempt from attachment or exe-
cution .................................................. 74  353
of costs in certain cases ............................... 196  109

ARBITRATION—

controversies except relating to title of real estate may be
submitted to ............................................ 54  263
agreement of submission to be in writing, what shall con-
tain .................................................... 54  269
arbitrators to be sworn ................................. 54  270
award how to be made, what to contain and to whom deliv-
ered .................................................... 54  270
if not excepted to or controversy settled to be entered as
judgment ................................................ 54  270
compensation of arbitrators fixed, and how and by whom
paid .................................................... 54  271
a failure of party to appear subjects delinquent to costs,
except .................................................. 55  271
arbitrator failing to attend, penalty ................... 55  271
exceptions to award ..................................... 55  272
action of court upon exceptions to award ................ 55  273
power of arbitrators or majority ........................ 55  274
evidence and compelling attendance of witnesses ......... 55  275
same power to punish contempt as justice of peace ....... 55  276
costs to be taxed against losing party and how collected.. 55  277
award affirmed by district court, same as judgment ...... 56  278

ARBITRATORS—See Arbitration.

misbehavior of, cause for rejecting award ............... 55  272

ARGUMENT—

order in civil actions .................................. 46  225

ARREST—In Civil Actions.

See Bail, Contempt, Attachment.

shall not be made, except upon order of court or judge of
supreme court ........................................... 24  115
causes for which allowed ................................ 25  116
before allowed, court must be satisfied of its legality .. 26  117
court to fix amount of bail and plaintiff's bond ........ 26  118

61

482                          INDEX.

**ARREST** – (Continued)                                                    Page.  Sec.

clerk shall require plain'iff to do certain things before issu-
    ing order................................................   26   119
defendant may apply for vacation of order or reduction of
    bail ...................................................   26   120
warrant not to issue until filing of complaint, ............   26   121
sheriff to serve defendant and furnish copy of warrant.....   26   122
service of the warrant by taking defendant into custody...   27   123
plaintiff liable for sheriff's fees and board of prisoner......   27   123
bail of defendant, how and when given, conditions of.....   27   124
warrant to contain statement of cause of arrest and amount
    of bail...............................................   27   125
of surrender of defendant by bail or himself.............   27   126
bail may arrest defendant to secure their discharge .... ...   27   126
bail, how proceeded against..............................   28   1 8
causes by which bail may become exonerated. ............   28   129
return of sheriff, where defendant has been discharged on
    bail...................................................   28   129
failure of plaintiff to notify sheriff of exception to bail
    exonerates sheriff......................................   28   130
justification of bail excepted to by plaintiff................   28   131
of the qualifications of bail.............................   28   132
manner of justification of bail...........................   28   133
the approval of bail by court or officer exonerates sheriff   29   134
defendant may deposit amount mentioned in order, in lieu
    of bail................................................   29   135
such deposits shall be paid into court within ten days,    29   136
on giving bond, deposit to be refunded...................   29   137
such deposit to discharge judgment, surplus to be refunded   29   133
in case of escape, sheriff liable as bail ........ ..........   29   139
if judgment against sheriff unsatisfied, action on official
    bond..................................................   29   140
when shall bail be liable to sheriff.......................   30   141
for disobedience to injunction or restraining order..........   34   168
of judgment debtor, on execution against the person.......   60   332
defendant shall not be arrested if he deliver property to
    satisfy judgment.......................................   70   236
shall be imprisoned within jail liberties, at expense of whom   70   336
of absconding debtor, when allowed......................   84   383
of party about to leave without performing contract in
    writing, not due.......................................   133   640
security for the performance of contract being given dis-
    charges party.........................................   133   641
proceedings of *ne exeat* may be had in favor of surety, or
    one jointly bound.....................................   133   643
defendant may seek remedy of *habeas corpus*.............   134   644
justices of the peace may issue *ne exeat* process within juris-
    diction...............................................   134   645
proceedings may be had in district where defendant found   134   646
obedience to writs of mandate and prohibition may be en-
    forced by.............................................   142   701
against executors for their own acts or administrators.....   147   729
in proceeding for contempt of court, procedure...........   148   733
warrant for, in contempt cases, court to endorse whether
    bailable or not......................................   149   736
deposit of amount of bail allowed in all cases, to discharge
    persons from .........................................   152   755

*In criminal actions*—

by city marshal, for breach of the peace..................   191   81
time for trial after......................................   205
of certain criminals, rewards offered for.................   283   1
of murderers of Ole Haugenson, reward for .............   322   1

# INDEX.

**ASSESSMENT OF DAMAGES—See Damages.**     *Page.* *Sec.*

by jury in actions for recovery of personal property....... 50     245
in judgments upon failure to answer....................... 50     293
in judgments in the supreme court on writs of error...... 104     480
in actions of mandate and prohibition.................... 142     699
in proceedings by way of information.................... 143

**ASSETS—**

damages for death of person to be treated as............. 145     721
judgment against executor or administrator for failure to
    answer not deemed as evidence of, unless........ ...... 146     724
executors or administrators, when liable to extent of....... 146     725

**ASSIGNEE—**

right to maintain actions, if real party in interest......... 4     4
in action brought by, same defense may be made as against
    original party, except.............................. 4     4
of promissory note in good faith before due............... 4     4
of judgment, execution may issue in name of............. 70     333
rights of in matters of set-off.... ..................... 107     501
of cause of action after suit commenced, liability for costs 110     525
liable for wages when............................ ...... 223     34

**ASSIGNMENT—See Assignee.**

of judgment, requisites and recording of................. 70     333
of cause of action, after commencement of suit, liability
    for costs....... .............................. 110     525

**ATTACHMENT—Of Person.**

**See Arrest, Bail, Warrant.**

enforcement of order to satisfy claim admitted........... 41     203
of judgment debtor about absconding......... .......... 84     383
to compel production of books, &c...................... 94     420
proceedings of *ne exeat*........................ .......... 133
to compel officer of corporation to satisfy judgment....... 133     663
executor or administrator for acts of testator or intestate
    not allowed..................................... 147     729
but for the acts of executor or administrator, allowed as in
    other cases................................... 147     729

*Of property in civil actions—*

in what cases may issue.............................. 35     175
writ of, by whom and when to be issued................ 36     176
bond of plaintiff to be filed.......................... 36     176
writ to be directed to sheriff.......................... 36     177
what it shall require................................ 36     177
several may be issued, to different counties.............. 36     177
property subject to....... ....................... 36     178
duty of sheriff on receipt of writ..................... 36     179
inventory of property to be returned.................... 36     179
of real property how made........................... 37     179
of personal property capable of delivery................ 37     179
of stock or shares in a corporation.................... 37     179
of debts, credits or property incapable of manual delivery 37     179
debts and credits or property under control of a third per-
    son, how attached ........................... 37     180
persons holding such debts or credits liable to plaintiff until
    discharge of, or satisfaction of judgment....... ....... 37     181
examination of debtors of defendant.................... 37     183
return of the sheriff, inventory and schedule of debts, etc. 38     183
perishable property may be sold........................ 38     184
debts and credits may be collected......... ........... 38     184
judgment to be satisfied out of attached property.......... 38     185

484                                    INDEX.

**ATTACHMENT**—(Continued)                                    *Page.*   *Sec.*

for balance remaining due, proceedings.................. .........   38   185
execution for remainder due upon judgment..............   38   186
when defendant may move to discharge, upon giving bond   39   189
of defendant, sureties and justification............... .....   39   190
motion of defendant to discharge, because writ improperly
    issue.................................. .......... .............   39   191
if improperly issued, shall be discharged..................   40   193
when sheriff shall make return........ ..............,......   40   194
when court may order sale.............................   40   195
but sale can only be made after notice to adverse party....   40   195
judge conferred with full powers to make orders in vacation   40   196
of real estate, lien of judgment attached at service of writ   63   312
property exempt from  ................................72-3-4
claim of third person to property attached, mode of pro-
    cedure...................... ........ .......................   75
property taken on, subject to claims of mechanics and
    others........... ..................................   223   86

*Justices of the Peace*—

by whom executed, inventory made......................   200
on personal property, how executed........,............   199   2
notice of how served................................   200
released unless officer indemnified........ ........ ......   201
suit tried as in other civil actions.......................   201
property attached, how released.......................   202

**ATTORNEYS**--PROSECUTING ATTORNEY.

shall not be bail in civil actions...........................   28   132
in action, disqualified as receiver......................   40   197
disqualified as juror, when..........................   44   216
shall not testify as to communications of client............   56   394
compensation of to be fixed by parties...................   108   509
fee, as costs to prevailing party fixed ....................   109   516
prosecuting, to file information.........................143-4-5
misbehavior, a contempt, punishment.....................   147   730
of incorporated city, how elected.......................   184   40
removal of for malfeasance, inattention or incompetency..   184   40
eligibility to office of defined...........................   184   41
city, duties of...................................   189   70
fees allowed in cases of lien...........................   219   15
practicing, code commissioner to be.....................   235   1
United States and district to receive copy of reports........   244   3
when notaries, may administer oaths to clients............   254   5
act in relation to, amended ..............................   321
who may be admitted to practice as, in courts in this terri-
    tory...................... ..........................   321   1
must apply to supreme or district court when in session...   322   2
qualification of applicants...............................   322   2

**AUCTION**—SEE SALES.

sales of property on execution, must be by ...............   78   363
sales of property for taxes must be by...................   164   [47]
sales of property for road tax must be by................   317   2

**AUDITOR, COUNTY**—

in suits against counties, service upon ...................   15   64
in suits against county, may confess judgments ..........   60   296
to keep a record of transcript of judgments.............   64   316
when judgment is satisfied, his duty....................   66   325
from filing of judgment by, lien commences when........   66   325
not to record any sheriff's deed till endorsed, how........   84   382
duty of in actions by and against county..... ............   137
to record certain judgment of justices' of peace, when ....   153   758

**AUDITOR, COUNTY—(Continued.)** Page. Sec.

assessment roll to be returned to by assessor, when,....... 159 23
furnish road supervisors with proper lists. ................ 161 30
forward Territorial auditor statement of valuation of taxa-
    ble property in county................................. 161 30
make out duplicate assessment roll, when................. 161 33
deliver copy with warrant to sheriff...................... 161 33
take treasurer's receipt for roll with warrant............. 162 33
books and records kept by, *prima facie* evidence.......... 172 78
to file papers in cases of incorporation of cities........... 174 3
shall call election to fill office of justice of the peace, when 208 2
returns of election to be filed with ...................... 209 6
shall file claim for lien, fees for......................... 218 11
shall file claim for lien upon real property................ 220 23
must record claim, after filing........................... 221 25
shall certify election of delegates to constitutional conven-
    tion................................................ 239 4
certify to secretary of the Territory, votes given for prose-
    cuting attorney...................................... 246 4
books of, to be examined by prosecuting attorney, yearly.. 247 10
records of notaries to be deposited in office of, when...... 254 8
shall report to county superintendent of schools, amount
    of tax.............................................. 276 59
duty of in regard to special school tax .................. 281 82
mortgage on personal property to be filed in office of ...... 287 5
to record sales of oyster claims......................... 307 6
shall file census rolls and send substance thereof to Territo-
    rial auditor within sixty days.... ..................... 311 2
shall record deeds and mortgages..... ................. 312 4
authorized to take acknowledgments..................... 313 5
shall record plat of survey of ditch ..................... 314 1
duty of in relation to bounty for scalps........ .........324-5
when road recorded in office of, becomes a public highway,
    how................................................ 325
shall furnish assessor blank poll tax receipts........ ...... 335 2

**AUDITOR, TERRITORIAL—**

copies of records of office certified by, evidence.......... 95 434
to prescribe form of assessment roll and furnish blanks to
    counties............................................ 159 22
charge each county with quota of tax.................... 161 30
furnish county auditors and commissioners with blanks.... 161 31
shall settle with county treasurer, when................. 170 70
shall file receipt of territorial treasurer.................. 170 71
allowed cost of blanks, postage etc., by county commis-
    sioners............................................. 171 77
to be furnished with by-laws of Hospital for Insane....... 226 3
expenditure of trustees of hospital, certified to........... 226 7
to audit accounts of hospital for insane.................. 229 24
eligible to office of trustees of hospital for insane......... 230 26
to audit accounts of delegates to constitutional convention 240 10
before drawing certain warrant, shall require statement, ve-
    rified by board of regents............................ 242 3
draw warrants for salaries of professors and tutors when.. 243 7
to receive copy of reports of decisions................... 244 3
shall draw warrant, for keeping prisoners, when.......... 250 7
*ex officio* commissioner of prison........................ 251 9
to draw warrant on special notarial fund, when........... 255 13
to draw warrants on special commissioner fund, when.... 257 5
to draw amount for rewards, when...................... 284 2
duties in relation to certain printing.................287 to 290
duties in settlement with counties....................... 291
shall embody census in report to legislature.............. 311 2

486                    INDEX.

**AUDITOR, TERRITORIAL—(Continued.)**                                    *Page.*  *Sec.*

draw warrant for reward offered for murderers, when......     322      2
draw warrant to pay for site for pest house, when.........     323      2
draw warrant to pay for removing library to capital......     329      4
issue warrant to university regents for certain expenses....     331      1
to draw warrant in favor Union Telegraph Co..............     333      2
duty in relation to expense of sixth biennial session of legis-
   lative assembly.........................................     389      2
duty of in regard to relief of H. L. Chapman and others...     391      2
in regard to payment of storage and transportation of arms     391      1
in regard to relief of Tacoma Lodge No. 4. I. O. G. T.....     392      2
in regard to pay of additional enrolling clerks, for sixth
   biennial session of legislature............................     392      2
in regard to the relief John T. Hicklin...................     393      2
in regard to the relief of John Saltar.....  ............     394      3
in regard to the relief of E. L. Willy...................     395      2
in regard to the relief of William Billings...............     396      2
in regard to the relief of John P. Judson................     397      2
in regard to the relief of the clerks and employees of the .
   present Legislative Assembly............................     397      1
in regard to relief of J. R. Thompson, D. N. Utter, J. P. Lud-
   low and A. Atwood.....................................     402      2
in regard to safes for Territorial Auditor and Territorial
   Treasuer..............................................     403      1
in regard to relief of Puget Sound Steam Navigation Com-
   pany..................................................     409      2
in regard to relief of J. C. Horr and others...............     414      2
in regard to aid in construction of certain road...........     382      6

**AUTHORITY—**

of printed statutes of other States or Territories, how far
   and when............................................      95     437
officer construed as meaning person having...............     153     760

**AWARD**—See Arbitration, Assessment of Damages, Referee.

arbitration and award..................................      54     268
of persons mutually selected to arbitrate controversy, suit
   or quarrel............................................      54     268
bond of submission, that parties shall abide..............      54     269
to be made according to terms of submission.............      54     270
to be filed with clerk of district court, what shall contain      54     270
copy of, to be delivered to party in whose favor rendered      54     270
if not excepted to, or matter settled, judgment to be entered,
   when...............................................      54     270
losing party may except in writing......................      55     272
matters of exception prescribed.........................      55     273
when court will recommit, with direction to amend.......      55     273
failure of arbitrators to comply, the court becomes possessed
   of the case....  .....................................      55     273
fees, etc., to be endorsed upon, how collected...........      55     277
when affirmed by court, the same as a judgment..........      56     278

## B.

**BAIL**—*In Civil Actions.*

of arrest and........................................  .............      24     115
person shall not be held to, except by order of court or
   judge of supreme court...............................      25     115
court in ordering arrest shall fix amount of..............      26     118
defendant may give, requisites of and mode............      26     118
may surrender defendant and be exonerated.............      27     126
may arrest or empower arrest of defendant.............      28     127
can be proceeded against by action only.................      28     128

## INDEX. 487

| | Page. | Sec. |
|---|---|---|
| **BAIL**—(Continued) | | |
| death or imprisonment exonerates | 28 | 129 |
| discharge of defendant from liability exonerates | 28 | 130 |
| surrender of defendant exonerates | 28 | 130 |
| sheriff exonerated from liability, when | 28 | 130 |
| qualifications defined | 28 | 132 |
| examination of, in justifying | 29 | 133 |
| endorsement of allowance | 29 | 134 |
| deposit may be made in lieu of | 29 | 135 |
| deposit made, proceedings of sheriff | 29 | 135 |
| on escape of defendant after arrest, sheriff liable as | 28 | 139 |
| proceedings against sheriff when liable as | 28 | 140 |
| unless they justify, be liable to sheriff by action for what | 30 | 141 |
| in proceedings of *ne exeat* similar to other cases of arrest | 133 | 640 |
| defendant arrested on *ne exeat* to enter special | 133 | 641 |
| in replevin or special, remedies against co-defendants or co-sureties | 134 | 651 |
| power of court in proceedings on *habeas corpus* | 140 | 632 |
| admission to, of parties charged with contempt | 149 | 736 |
| person required to give, may make deposit with clerk | 152 | 755 |
| **BALLAST**— | | |
| discharge of, in certain waters prohibited, penalty | 285 | 1 |
| may be discharged above ordinary high tide | 285 | 1 |
| not to be discharged on flats within town limits | 285 | 1 |
| **BANKING GAMES**— | | |
| prohibited, penalty for keeping or gaming | 193 | 1 |
| **BILLS OF EXCHANGE**— | | |
| action by assignee of, rights of assignee | 4 | 4 |
| parties severally liable upon, may all or any be sued | 6 | 16 |
| limitation commences from last payment of interest | 10 | 46 |
| **BILLS OF PARTICULARS**— | | |
| court may order either party to furnish | 21 | 93 |
| **BOARD OF HEALTH**— | | |
| to procure site for pest house at expense of Territory | 323 | 1 |
| **BOATS AND VESSELS**—SEE VESSELS. | | |
| liens upon | 216 | |
| **BOND**—*In Civil Actions.* SEE BAIL. | | |
| required of plaintiff, to arrest defendant | 26 | 118 |
| to be filed with clerk upon issue of warrant of arrest | 26 | 119 |
| of defendant to be cancelled if he be discharged | 26 | 120 |
| of defendant, as bail, conditions and requisites | 27 | 124 |
| before defendant has failed to comply, his sureties may be qualifications of sureties | 28 | 132 |
| exonerated | 27 | 126 |
| liability of defendant's sureties to sheriff | 30 | 141 |
| in claims to recover personal property | 30 | 144 |
| defendant to be served with copy of | 30 | 144 |
| defendant may except to sufficiency of | 31 | 146 |
| of defendant, conditions and requisites of | 31 | 146 |
| third party claiming property, plaintiff to give to sheriff an indemnifying | 32 | 151 |
| of party asking for injunction or restraining order | 33 | 159 |
| the liability shall continue, when | 33 | 160 |
| injunction takes effect from filing of | 34 | 164 |
| of persons arrested for disobedience to injunction | 34 | 168 |
| of plaintiff for issue of attachment | 36 | 176 |
| when defendant may have attachment discharged by giving | 39 | 189 |
| qualifications of sureties, and conditions of receiver | 41 | 198 |

488                          INDEX.

BOND—(Continued)                                              *Page.* *Sec.*

   of parties submitting matter to arbitration................      54    269
   for stay of execution, conditions and requisites of.... ...      71    340
   judgment when may be entered against sureties on s ay....      71    341
   sureties on stays, qualification of.........................      71    342
   if execution issues before time for which judgment might
      be stayed defendant may give for balance of time.......      71    343
   stay, shall be filed with clerk of court....................      71    344
   by party claiming property as exempt.......................      74    353
   of party claiming property levied upon or attached........      75    354
   of party in replevin, suit to be returned to clerk..........      75    355
   judgment against plaintiff and sureties, if claim not made
      out..................................................      76    357
   of judgment debtor, for retention of property levied upon
      by execution.........................................      77    361
   of judgment debtor, to obey order of court in proceedings-
      supplementary to execution ..........................      84    383
   of appellant or plaintiff in error to stay proceedings........     102    469
   when approved. clerk issue an order.......................     102    469
   of non-resident plaintiff, security for costs may be required     111    531
   of guardian receiving proceeds of sale in partition ........     124    602
   of defendant, conditioned to abate nuisance..............     127    613
   of plaintiff in issue of writ of *ne exeat*...................     133    640
   defendant shall enter into special bail, liability of sureties     133    641
   surety on any, may be proceeded against by *ne exeat*.......     133    643
   may be filed in any county where defendant is found......     134    646
   any surety may require obligee to commence action upon     134    647
   if obligee fails to bring action, when surety released.......     134    648
   remedy of surety against co-defendant or co-sureties.......     135    642
   of defendant arrested for contempt of court..............     149    736
   suit upon, given, by parties arrested for contempt.........     150    742
   of special officer to serve process................. .......     151    750
   actions on defective, plaintiff may state legal effects as
      though perfect.......................................     152    754
   treasurer liable, on in certain cases.......................     168    [65]
   of person claiming property attached......................     201
   of defendant for release of property attached.............     202    3
   appeal, from sentences of justice, for offense.............     203    7

*Official—*

   of sheriff, action upon for deficiency due, in certain cases      29    140
   suits upon, procedure..................................     135
   shall be deemed a security to party to whom given for offi-
      cial delinquencies...................................     135    655
   who may maintain action upon..........................     135    656
   before commencing action court must grant leave.........     136    657
   showing to be made to court, of what shall consist........     156    592
   of trustees of hospital for insane........................     226    4
   of Prosecuting Attorney................................     236    5
   of contractor for keeping territorial prisoners.............     250    6
   of county superintendent of schools.....................     263    17
   of fish commissioners..................................     294    1
   of official short hand reporter...........................     310    11

*In Probate Court—*

   to be executed by executors or administrators before letters
      to issue...........................................     211    4
   form of, to be joint and several.........................     211    4
   additional required, when..............................     211    4
   conditions of.........................................     211    4
   when void and when may be recovered on................     211    4
   qualifications of sureties on............................     212
   when insufficient, not approved.........................     212

## INDEX. 489

BOOKS— | *Page.* | *Sec.*
---|---|---
to be kept by clerk, called execution docket.............. | 62 | 311
private libraries exempt from execution.................. | 73 | 351
libraries of professional men, how much exempt......... | 73 | 351
to be used in evidence, general provisions regarding....... | 94 | 42

BOOK OF LEVIES—

to be kept by clerks of court, what shall contain.......... | 64 | 317
sheriff's deeds shall be entered in, before recorded by auditor | 83 | 382
to be kept by probate judge............................. | 214 |
of trustees of hospital for insane to be turned over to new board when..... ....................................... | 229 | 22
of auditors to be examined by prosecuting attorney, when | 247 | 10
for school, uniform series to be adopted................. | 262 | 12
to be kept by superintendent of public instruction......... | 264 | 19
allowance for, to county superintendents................. | 266 | 25
for indigent children, how provided..................... | 270 | 38
of district clerk, presented for inspection, when.......... | 271 | 41
of certain characters excluded from schools ............. | 274 | 53
adopted by board of education to remain in use five years | 283 | 87
of certain officers to be inspected in settlement between territory and counties................................. | 291 |
plat of survey of ditches to be recorded in............... | 314 | 1
kept by sheriff, called jail register ..................... | 303 | 6
in territorial library to be moved to capitol............... | 329 |

BOUNTY—

county commissioners authorized to offer, for scalps of squirrels, sage rats or wild rabbits..................... | 324 | 1
shall be not less than five nor more than ten cents per scalp | 324 | 2
when offered........................................... | 324 | 3
auditor to post notice of, when.......................... | 324 | 4
manner of procuring.................................... | 324 | 5
auditor to keep a book for entering amounts.............. | 325 |

## C.

### CAUSE OF ACTION—See Action.

| | |
---|---|---
when it arose in other States and Territories, and barred by lapse of time, cannot be maintained here........... | 10 | 47
when facts stated do not constitute, cause for demurrer.... | 18 | 77
one or more may be demurred to, others answered......... | 19 | 84
plaintiff may unite several, when and in what cases........ | 22 | 102
for what defendant may be arrested ..................... | 25 | 116
to be stated by plaintiff, after swearing of jury............ | 46 | 225
assignment of after suit commenced, costs................ | 110 | 525
upon which, suits may be maintained by and against public corporations and officers........................... | 137 | 664
for death of person, representatives may bring action within two years....................................... | 145 | 721
all other, survive to personal representatives.............. | 146 | 722
for failing to collect tax................................. | 171 | [76]

### CENSUS OF THE TERRITORY OF WASHINGTON—

| | |
---|---|---
to be taken by assesors when............................ | 310 | 1
what shall comprise.................................... | 310 | 1
shall be returned to county auditors, when................ | 311 | 2
auditor shall within sixty days forward substance of to Territorial auditor..................................... | 311 | 2
compensation for taking................................ | 311 | 3
penalty for failing to take............................... | 311 | 4

62

490                              INDEX.

| | Page. | Sec. |
|---|---|---|
| **CERTIFICATE—** | | |
| by officer serving complaint and notice | 15 | 63 |
| of proof of service of process, how made | 16 | 70 |
| of sale of real property on execution to be delivered to purchaser by sheriff | 81 | 373 |
| of redemption, to be delivered by sheriff to redemptioner | 82 | 378 |
| to copies of books, records and other documents to entitle them to be regarded as evidence | 95 | 434 |
| of residence and cultivation upon public lands | 95 | 435 |
| in claims of settlement to real property under donation law, party holding the elder preferred, except | 116 | 556 |
| of sureties, attached to bond in certain cases | 312 | |
| of superintendent of hospital for insane, for removal of patient | 228 | 18 |
| of itemized bill for hospital | 229 | 24 |
| secretary to issue to delegates to constitutional convention | 239 | 4 |
| of auditor of election of prosecuting attorney to secretary of territory | 246 | 4 |
| of by builders, of security of prison | 251 | 10 |
| of commissioners of prison, to contractor | 251 | 10 |
| upon the granting of, contractor may demand certain prisoners | 251 | 11 |
| of clerk of court of conviction necessary to secure reward | 284 | 2 |
| of short hand reporter to transcript of evidence, sufficient | 310 | 10 |
| of official capacity of officers taking acknowledgments of deeds | 313 | 7 |
| of character required of persons desiring admission to practice as attorneys at law | 322 | 2 |
| of practicing attorney that applicant for admission to practice, is qualified | 322 | 3 |
| *School—* | | |
| territorial, granted by board of education | 262 | |
| of board of education may be revoked | 263 | 14 |
| to persons holding highest grades of with supt. to form a board of examination | 265 | 25 |
| county, three grades of | 266 | 26 |
| to entitle holder to teach three years | 266 | 26 |
| applicants for, in what branches examined | 283 | 89 |
| **CERTIORARI—** | | |
| from justice to district court | 184 | 40 |
| **CHALLENGES—***In Civil Actions.* | | |
| shall be to individual jurors | 43 | 211 |
| each party entitled to three peremptory | 43 | 211 |
| peremptory, defined | 43 | 212 |
| for cause, defined, and is general or particular | 43 | 212 |
| implied bias defined | 44 | 216 |
| actual bias defined | 44 | 217 |
| exemption from service a privilege, not cause for | 45 | 219 |
| to be taken separately and in order prescribed | 45 | 220 |
| exception to, for insufficiency and trial | 45 | 221 |
| on trial of, rules of evidence govern | 45 | 222 |
| the challenge, exception and denial may be made orally | 45 | 233 |
| court shall note, together with substance of testimony | 45 | 233 |
| to referees for trial of cause | 52 | 256 |
| peremptory, not allowed to referees | 52 | 256 |
| **CHARCOAL—** | | |
| act relating to measurement of | 333 | |
| size of baskets for measuring | 333 | 1 |
| other measures for, same dimensions | 333 | 1 |
| penalty for violation of act | 333 | 2 |
| fine for violation shall go to school fund | 333 | 2 |

## INDEX. 491

**CHARGE OF COURT—**                                                 *Page.*  *Sec.*

either party may request to have made in writing.........  46   225
court refusing to give, exception allowed.................  46   225
to be made to jury after argument of counsel.............  47   225
when may be oral.......................................  47   225
either party may except to all or any part...............  47   225
bill of exception to, must contain specific part excepted to,
 or be disregarded by supreme court..................  47   225

**CHATTELS—**

mortgage, suit for foreclosure...........................  128  622

**CHILD OR CHILDREN—See Infant.**

of man killed in duel, action against the slayer...........   4    8
action for death of......................................   4    9
action for injury or death survives to....................   6   18
indigent to be furnished school books....................  270   38
under six years of age excluded from school, when. ......  271   42
how taught, and how punished...........................  274
liable to suspension and punishment when...............  275   55
indigent, blind or mute, act to provide for...............  298
governor to contract with board of education of Oregon
 for tuition, board and education of...................  298    1
price fixed for maintenance and instruction of...........  298    1
apply only to indigent deaf mutes and blind.............  299    3

**CLAIM—See Counter-Claim.**

defendant may substitute another party making same as
 plaintiff, by deposit of amount in court. ..............   6   22
of intervention by a third person making.................   7   23
counter-claim of defendant, how pleaded................  19   82
several may be united in same action by plaintiff.........  22  102
to recover personal property.............................  30  142
of plaintiff admitted by defendant, may be enforced by
 attachment or execution ............................  41  203
in judgment on failure to answer, for excess of plaintiff's
 over counter-claim of defendant......................  59  293
by debtor that property is exempt from execution and
 attachment.........................................  74  353
to property levied upon or attached by other than judg-
 ment debtor........................................  75  354
of adverse, interest in property of judgment debtor by gar-
 nishee, action upon..................................  85  388
against decedent to be presented before action can be com-
 menced against executor or administrator.............  147  728

*To recover personal property—*

immediate delivery of, to plaintiff .......... ...........  30  142
affidavit of plaintiff, what shall contain.................  30  143
plaintiff must give bond, requisites of and condition......  30  144
defendant may within three days except to sufficiency of
 plaintiff's bond......... ...........................  31  145
power of sheriff to take property, if concealed...........  31  149
when claimed by other persons than defendant...........  32  151
in such cases plaintiff may be required to give bond of
 indemnity .........................................  32  151

**CLERGYMEN—**

libraries and property to what extent, exempt from attach-
 ment and execution.................................  73  351
in civil actions, shall not be examined as witness in certain
 cases..............................................  86  394

492                            INDEX.

CLERK—                                                    *Page.*  *Sec.*
*Of district court,*

    duty of, in changes of venue.............................. 20   54
    of court to which case is transferred, duties of............ 13   58
    to file all complaints served on day received............. 13   61
    duties of, in arrest of defendants in civil actions......... 26  119
    warrant of arrest and return to be delivered to, when...... 28  130
    shall not be bail in any action........................... 28  132
    to file justification of bail in arrests.................... 29  134
    to apply funds deposited to satisfaction of judgment, and
      refund surplus....................................... 29  138
    if defendant recovers judgment, deposit to be refunded by  29  138
    duty of clerk in claims to recover personal property....... 32  152
    to approve bond in application for injunctions............. 33  159
    to issue certified copy of order of injunction, instead of writ 33  161
    money collected on judgment afterwards enjoined, payable to 34  165
    attachment issued by, for disobedience to injunction....... 34  166
    when writ of attachment against defendant's property shall
      be issued by ........................................ 35  175
    affidavit and bond to be filed with....................... 36  176
    duty of clerk in empanneling trial jury................... 43  210
    jury to be asked whether they have agreed upon verdict.... 49  243
    duties of clerk in regard to verdict of jury.............. 49  243
    trial by court upon filing consent with .................. 50  249
    when case tried by court, decision to be in writing, filed with 51  250
    report of referees to be filed with...................... 52  259
    bills of exceptions to be filed with...................... 53  262
    to enter default of defendant to answer.................. 59  293
    duties of, in entering judgment by confession............. 61  301
    all judgments shall be entered by........................ 62  309
    all papers connected with case to be kept by............. 62  310
    shall keep an execution docket....... .................. 62  311
    shall enter all judgments in execution docket........ .... 63  312
    shall furnish a transcript of judgment for county auditor,
      when ................................................ 63  312
    fees of transcript to be paid by judgment creditor........ 63  312
    other duties of, in relation to judgments................. 63  313
    shall furnish transcript of when......................... 63  313
    how satisfaction shall be entered by..................... 64  314
    to prefix to execution docket an alphabetical index........ 64  315
    shall keep a book of levies, what shall contain........... 64  317
    transcript of judgment certified by a lien on real estate.... 66  325
    duties of, in revival of judgment........................ 66  326
    duty of, in issuing executions .......... .... .......... 68  332
    duty of, in issuing execution against real estate out of dis-
      trict................................................ 69  333
    on the payment of moneys to, by sheriff.................. 69  334
    shall notify party to whom money is due.................. 70  334
    penalty for failure ..................................... 70  334
    to approve bonds for stay of execution................... 71  340
    stay bonds to be lodged with............................ 71  344
    duty of, in claims to property levied upon or attached..... 75  355
    duty of, on receiving return of real estate sold on execution 79  370
    duty of with proceeds of sale of real estate ....... ...... 80  370
    duty of when judgment is against several................. 81  372
    sheriff's deed to be entered in books of levies............. 83  382
    filing of interrogatories........................ ........ 89  406
    may take deposition of witness in Territory.............. 90  413
    deposition to be directed to............................. 90  414
    duties of, in issuing commission to take deposition of wit-
      nesses out of Territory .............. . ............ 90  415
    duties of, in proceeding to perpetuate testimony........... 94  429
    records of court attested by, evidence.................... 94  432

## INDEX. 493

**CLERK—(Continued)** | *Page.* | *Sec.*

to make a transcript of record on payment of fees, and
transmit to clerk of supreme court ...................... 100 461
duties of in diminution of record ........................ 101 467
to approve appeal bond.................................. 102 469
may countermand issue of execution, when .............. 104 476
must docket same for rehearing.......................... 105 488
investment by, in sales in partition proceedings............ 123 599
duty of clerk in proceedings of *ne exeat*.................. 133 640
in judgments against public corporations, shall certify
· transcript of........................................... 138 667
all writs of *habeas corpus* must be issued by............. 141 691
misbehavior in office, or violation of duty, a contempt..... 147 730
exempt from jury duty.................................. 233 1
issue venires, one for grand and one for petit jurors....... 234 4
file certificate of secretary of commissions of notaries..... 225 10
authorized to take acknowledgment...................... 313 5
code commissioner has power to employ.................. 236 7
of school district appointed, when..... ................. 264 22
in school district lying in two counties to report to both
superintendents ...................................... 267 30
duties of, under school law ............................ 271-2
of union districts, duties of........................... 277 64
duties of, in regard to special school taxes ............... 280-1

**CODE OF WASHINGTON—CODE COMMISSION—**

commissioner, when and how appointed.................. 235 1
duties of commissioner................................. 235 2
what shall contain and how arranged .................... 236 3
what penal code shall embrace........ .................. 236 3
to contain syllabus, marginal notes, annotations and refer-
ences................................................. 236 4
embraced in one or more volumes....................... 236 5
title of................................................ 236 5
commissioner to report to governor, when ............... 236 6
commissioner may employ clerk......................... 236 7
salary of clerk......................................... 237
oath of commissioner taken and subscribed before secretary 237 8

**COMMENCEMENT OF ACTIONS—SEE CIVIL ACTIONS.**

periods of time within which shall be.................... 8, 9
what shall be regarded as............................... 9 35
an attempt to commence, equivalent to when............. 9 36
against person out of Territory or concealed.............. 9 37
time of disability not part of time limited............... 9 38
by representative, when party entitled to bring, dies... ... 10 39
by an alien or person at war with us.................... 10 40
by representatives, on reversal of judgment.............. 11 42
when stayed by injunction.............................. 10 41
on contracts where partial payments have been made..... 10 46
venue of fixed......................................... 10 47
against corporation, venue of........................... 11 50
in all other cases where defendant is found.............. 11 51
against non-resident, plaintiff may select venue........... 11 51
manner of............................................. 13 60

**COMMISSIONER OF DEEDS—**

deeds executed out of Territory may be acknowledged by 313 6
how appointed......................................... 257 1
how to be qualified.................................... 257 2
powers and duties of................................... 257 1
when commissioned.................................... 257 3

494                                 INDEX.

COMMISSIONERS—See County Commissioners, Fish Commis- *Page.* *Sec.*
  sion, Pilot Commissioners.

to take deposition of witnesses out of Territory, duty and
  power of............................................... 90    415
of immigration to appoint agents.... .................... 501   1

*To convey real estate—*

when may be appointed by district courts................ 111   532
deed of, to refer intelligibly to the judgment.......... .. 112   533
conveyance by, passes the title of party ordered to convey 112   534
may sign deed without annexing party's name whose title is
  conveyed.............................................. 112   537
conveyance by, to be recorded in county where lands are
  situated.............................................. 112   538
may be appointed, when party compelled to make convey-
  ance.................................................. 112   539
appointed to call election, when......................... 173   2

COMMITMENT—

of absconding debtor................................. ...... 84    383
by court, allowed in proceedings in *habeas corpus*......... 141   689

COMMON LAW—

how far in force in Territory............................. 3     1
forms of action abolished................................ 3     2
right to an action not taken away........................ 301   6
COMMON SCHOOLS—See Schools.

COMPENSATION—See Costs.

of arbitrators.......................................... 54    471
of attorneys and counselors............................. 108   509
of referees............................................. 109   518
of referees in partition proceedings..................... 119   568

COMPLAINT—*In civil action.*

all persons interested must join in making.............. 5     14
a third person may join by petition of intervention........ 7     23
in intervention by petition, and what shall be set forth.... 7     24
when filed, deemed commencement of action............. 9     35-6
how served upon defendant.............................. 13    60
service of, mode prescribed.............................. 13    61
first pleading on part of plaintiff........................ 17    75
what it shall contain.................................... 17    76
defendant may demur to, when.......................... 18    77
part may be demurred to, residue answered.............. 19    84
verification of ......................................... 20    91
in action for libel or slander, sufficient averments........ 22    99
several causes of action may be united, when............ 22    102
to secure restraining order.............................. 32    154
in actions to recover and affecting real estate.............. 113   542
in suits of partition, what shall contain.................. 117   558
in actions of foreclosure of mortgage.................... 128   620
application for *habeas corpus* shall be by................. 138   670
for violation of criminal law, by sheriff, constable, prosecut-
  ing attorney or justice of the peace.................... 198   1

COMPUTATION—
*Of time.  See time.*
the first day excluded, the last included........ .......... 151   748
if last day be Sunday, it shall be excluded................. 151   748
month shall mean calendar month....................... 333   1

CONDITION PRECEDENT—

performance of how pleaded............................. 21    97
performance of, to be established if controverted.......... 21    97

## INDEX. 495

**CONFESSION—** | | *Page.* | *Sec.*
| |

clergyman or priest to whom made, shall not testify in civil actions without consent of party making ............ ........ 86 394

*Of judgment. See judgment by confession.*

with assent of plaintiff may be given, for what............ 60 395
by corporation or minor, who can make.................. 60 296
by one of several defendants jointly liable............... 60 297
shall be in writing, acknoweledged...................... 60 298
may be entered without action, when .................... 61 299
what affidavit shall be made by defendant in such cases.... 61 300
clerk shall issue, when................................... 61 301

**CONSANGUINITY—**

with adverse party judge of, cause of change of venue..... 12 52

**CONSTABLE—SEE OFFICER, SHERIFF.**

limitation of action against, for malfeasance, misfeasance, nonfeasance, except escape............................. 8 28
serve writs of attachment when.......................... 200
shall make inventory of property attached................ 200
shall execute venue...................................... 202 5
to make complaint of criminal violations of law.......... 198 1

**CONSTRUCTION—*Civil Practice.***

of a pleading to be liberal with view to substantial justice 4 94
of provision excluding books, record, etc................. 94 430
of claim of settler under donation laws, as to his estate.... 116 556
of time within which an act is to be done................. 151 748
of bonds not to invalidate .............................. 152 754
district when necessary shall be held as county............ 153 759
officer includes person authorized by law to perform act... 153 760
of words implying number and gender.................... 153 761
strict, not applied to provisions of civil practice........... 153 763

**CONTEMPT—**

willful disobedience of injuction, procedure.............. 34 166
parties disobeying injunction, to indemnify plaintiff against 34 167
of party arrested in vacation...... ...................... 34 168
on default of bail,....................................... 34 168
by witness failing to attend or refusing to testify.......... 88 401
by adverse party refusing to make answer to interrogatories 89 410
of hearings for contempt............... ................ 149 737
acts or omissions in respect to a court or judicial proced- ings constituting................................... 147-8
every court and judicial officer has power to fine and imprison for .......................................... 148 731
summary punishment, if committed in presence of court.. 148 732
parties guilty of, liable to indictment, when.............. 150 741

**CONTRACTS—*Civil Practice.***

in writing, limitation of action upon ..................... 8 27
to revive, and take out of statute of limitation new prom- ise must be in writing................................ 10 45
limitation of action upon, commences from time of last partial payment. ...................................... 10 46
judgment upon, to bear interest stipulated in............. 65 324
when actions may be commenced before time of perform- ance expires........................................... 133 637

**CONVENTION—SEE STATE CONSTITUTION.**

an act to provide for the calling of...................... 237
preamble................................................ 237
delegates to, when elected............................... 238 1

496 INDEX.

CONVENTION—(Continued.)                                            Page.   Sec.

appointment of delegates to............. ................    238      2
qualifications of delegates to.............................    238      3
manner of conducting election for ............... ...,....    239      4
shall be held at Walla Walla.......... ....................    239      5
shall be judge of qualifications of its members............    239      5
governor to issue proclamation for special election for dele-
gates to......................................................    340      9

CONVICTS—SEE TERRITORIAL CONVICTS.

CONVEYANCE—

copy of record, certified by proper officer, evidence.......    95     433
by commissioner appointed by court ......................    111     478
mortgage of real estate not deemed, except...... .........    114     550
by referees of real estate sold in partition proceedings......    123     594

CORONER—

limitation of action against, for nonfeasance, misfeasance
or malfeasance .....................................    8      28

CORPORATION—

how served with process .................................    15      64
property of foreign, may be attached.....................    35     175
shares in, attachable, how.............................    36     178
in dissolution of, appointment of receiver................    41     197
who may confess judgment for a..........................    60     296
foreign, when plaintiff may be required to give security
for costs.................................................    111     351
action by and against, when can be maintained..............    137     664
who may verify pleadings for ...........................    137     666
judgment against, how to be enforced....................    137     667
writs of mandate and prohibition to.....................    142     695
dissolution of, by proceedings in information .............    144     715
of cities, petition for ..................................    173      1
manner of effecting.....................................    173      2
when complete.........................................    174      4

Special Charters—

when incorporated under, may abandon..................    175      6
manner of effecting abandonment ............. ..........    175
considered organized under act to incorporate cities........    175      10
rights under, not called in question......................    176      11

Powers—

of cities under act......................................    176
in whom vested ........................................    183      37

COSTS—COSTS AND DISBURSMENT—FEES AND COSTS.

In Civil Actions.
in intervention by whom paid...........................    7      24
of change of venue, to be paid by applicant...............    12      55
of maintaining defendant arrested.......................    27     123
of arbitration ..........................................    55     277
in judgment by confession..............................    61     301
duty of clerk regarding, in entering up judgments ........    63
shall be allowed to prevailing party, except ..............    108     510
when plaintiff shall not be allowed.......................    108     511
where several actions are commenced on bond, shall only
be allowed in one.......................................    108     513
if plaintiff not allowed, defendant is entitled to...........    109     514
costs taxed as attorney fee prescribed....................    109     516
fees of referees prescribed ..............................    109     518
guardian of infant plaintiff liable for, when..............    110     523
Territory and county liable as private parties.............    110     526

## INDEX.

|  | Page. | Sec. |
|---|---|---|
| **COSTS—(Continued)** | | |
| of appeals to supreme court, in discretion of court | 110 | 527 |
| of re-taxation of | 111 | 530 |
| security for, may be demanded of non-resident plaintiff | 111 | 531 |
| in judgments of foreclosure of mortgage | 128 | 616 |
| security for in *ne exeat* | 133 | 639 |
| mandate and prohibition, how awarded | 143 | 704 |
| adjudged in favor of plaintiff, in information | 144 | 715 |
| when information is filed by prosecuting attorney, how awarded | 145 | 720 |
| in action for contempt | 149 | 739 |
| in collection of taxes | 164 to 166 | |
| preferred claims, when | 224 | 36 |
| *In Criminal Actions.* | | |
| when to be worked out | 206 | 8 |
| witness fees; etc.; to be taxed as | 207 | 10 |
| services of short-hand reporter, when taxed as | 409 | 4 |
| **COUNTER CLAIM—** | | |
| new matter consisting, to be set out in answer of defendant | 19 | 82 |
| definition of | 19 | 83 |
| **COUNTY—COUNTIES.** | | |
| generally as to being venue of actions | 11 | |
| change of venue because of prejudice of inhabitants of | 12, 13 | |
| venue changed because of formation of new | 12 | 54 |
| how served with process | 15 | 64 |
| who may confess judgment for | 60 | 296 |
| who shall verify pleadings of | 137 | 666 |
| judgment against, for money, how enforced | 137 | 667 |
| **COUNTY COMMISSIONERS—** | | |
| duties of in regard to assessment rolls and taxes | 160 | |
| warrant of, attached to assessment roll when | 161 | 33 |
| warrant of, authority to collect taxes | 162 | 33 |
| settle with county treasurer, when | 170 | [74] |
| shall allow certain fees and costs | 171 | [77] |
| prosecuting attorney, legal advisor of | 246 | 6 |
| may have opinion in writing when | 247 | 8 |
| to fix amount of bond of county supt. of common schools | 263 | 17 |
| boundaries of school districts, furnished to | 265 | 23 |
| establish school districts, when | 266 | 27 |
| to levy school tax | 275 | 58 |
| allow compensation for collection of taxes | 281 | 82 |
| to settle with territorial auditor | 291 | 4 |
| to have filed and recorded, plats of survey, of ditches, drains or water courses | 314 | 1 |
| to borrow money, how | 319 | 3 |
| authorized to offer bounty for certain scalps | 324 | |
| tenure of office of | 330 | 2 |
| criminal to work under direction of | 206 | 8 |
| **COUNTY SUPERINTENDENT—** | | |
| to be elected, when | 263 | 17 |
| give bond to county | 263 | 17 |
| vacancy in office of, how filled | 263 | 17 |
| apportion school money, when | 263 | 18 |
| certify amounts apportioned to district clerk | 263 | 18 |
| powers of | 264 | 19 |
| failure to make report, penalty | 264 | 20 |
| may administer oaths, when | 264 | 21 |
| may appoint directors and clerk, when | 264 | 22 |
| duties of, in relation to boundaries of district | 265 | 23 |

63

498                                INDEX.

COUNTY SUPERINTENDENT—(Continued.)                         *Page.*  *Sec.*

  salary of...................................................  265   24
  call assistance to examine teachers, when..................  265   25
  may grant permits to teach, when..........................  266   26
  duties of in organizing new districts.....................  266   27
  teachers to report to.....................................  272   46
  district clerk to report to...............................  276   59
  clerk of union district to report to......................  277   64
  disputes, etc., referred to...............................  279   77
  shall hold teachers' institute, when......................  279   78
  may appoint deputy for certain purposes...................  280   80
  how to apportion school moneys............................  281   83
  county treasurer to notify of amount of money.............  282   85

COUNTY TREASURER—

  shall give receipt to auditor for tax roll................  162
  or deputy shall attend at county seat to receive taxes, when  162  36
  ten per cent. additional collected by, when...............  163   38
  to keep account of all credits made on county orders......  163   [40]
  may keep property distrained at expense of owner, when....  163   [41]
  penalty for impeding or resisting.........................  164   [42]
  mileage allowed to........................................  164   [43]
  shall continue to receive taxes after they become delin-
    quent by adding ten per cent. as penalty...............  164   [44]
  surplus to be paid to owner of property sold by...........  164   [45]
  percentage additional allowed to, when....................  164   [46]
  shall sell real estate at public auction..................  164   [47]
  shall give notice of sale, how and when...................  165   [49]
  shall file return of sale in office of county auditor.....  165   [51]
  shall account to territory, county, city, etc., for portion of
    proceeds of sale for taxes.............................  166   [53]
  make out a list of real estate sold for taxes, when.......  166   [55]
  liable for mistake or wrongful act when...................  168   [65]
  may give title deed to property sold for taxes, when......  169   [67]
  fee for executing tax deed................................  169   [67]
  shall pay territorial funds into territorial treasury when.  169   [68]
  shall render a statement when.............................  170   [70]
  what shall be credited with on settlement with territorial
    treasurer..............................................  170   [71]
  fees of, for receiving and disbursing money...............  170   [72]
  may assess property omitted by assessor...................  170   [73]
  shall settle with county commissioners, when..............  170   [74]
  shall be credited with, what..............................  171
  duties of, at settlement with commissioners...............  171   [75]
  penalty for refusal or failure to collect taxes...........  171   [76]
  records of, *prima facie* evidence in judicial proceedings.  172  [78]
  books of, to be examined by prosecuting attorney, when....  247   10
  school tax to be paid to..................................  276
  shall collect special school tax, when....................  281   82
  duties of, in relation to schools, school officers and school
    funds..................................................  282   85
  duties of, in regard to settlement between the territory and
    the counties...........................................  291
  penalty for refusing to make such settlement..............  291   3
  when remit territorial funds to territorial treasurer.....  293   1

CREDITS—See Debts and Credits.

CRIMES—See Action Criminal.

  charging commission of crimes falsely.....................  152   752
  against public policy.....................................  198   1
  willful neglect malfeasance or misfeasance in office......  205   2
  polygamous marriage.......................................  205   4
  keeping houses of prostitution, gambling, etc.............  205   1

INDEX.      499

| CRIMES –(Continued) | Page. | Sec. |
|---|---|---|
| injury to supports of bridge | 265 | 3 |
| selling liquor to minors | 206 | 5 |
| judges guilty of when | 256 | 2 |
| governor to offer reward for arrest of persons committing certain | 283 | 1 |
| discharging ballast in channel | 285 | 1 |
| destroying fish | 293 | 6 |
| unlawful kindling of fires | 300 | 2 |
| destroying oysters | 307 | 7 |
| minors obtaining liquor through false representations | 328 | 1 |
| trespass for purpose of killing game | 332 | 1 |

## D.

DAMAGES—

| | Page. | Sec. |
|---|---|---|
| husband and wife may join in action for, for injuries to | 4 | 7 |
| for death of man killed in duel, who may maintain action | 4 | 8 |
| for injury or death of child, who may maintain action | 5 | 9 |
| for seduction of minor, who may maintain action for | 5 | 10 |
| when unmarried female may sue for, for her own seduction | 5 | 11 |
| amount of claim, to be stated in complaint | 18 | 76 |
| mitigation of, in suits for libel and slander | 22 | 100 |
| claims for, what may be joined in same action | 22 | 102 |
| entry of judgment for, in certain actions | 62 | 308 |
| measure of, in actions of waste and trespass | 125 | |
| measure of, in action to abate nuisance | 126 | |
| how far an executor of his own wrong is liable for | 146 | 726 |
| for injury to person or taking or detaining personal property, less than $00 justice of the peace has jurisdiction | 199 | 1 |
| from fire, persons kindling liable for | 300 | 3 |

DEATH—

| | Page. | Sec. |
|---|---|---|
| action for, of man killed in duel or by wrongful act or neglect of another who may maintain | 4 | 8 |
| of child, action for who may maintain | 5 | 9 |
| of party does not abate action | 6 | |
| of party, after commencement of action, survivorship of action | 10 | 39 |
| action for, by executors and administrators | 145 | 721 |
| after, actions by and against personal representatives | 146 | 722 |

DEBT, DEBTS—SEE EXECUTOR, ETC.

| | Page. | Sec. |
|---|---|---|
| contracted by fraud, debtor may be arrested | 25 | 116 |
| fraud in contracting, a cause for attachment | 36 | 175 |
| party owing to defendant, garnishee of | 37 | 180 |
| wife's separate estate and personal earnings exempt from husband's | 72 | 345 |
| wife's separate estate liable for her, contracted before marriage | 72 | 345 |
| of deceased, when homestead liable for | 72 | 347 |
| property of garnishee may be levied upon to amount of | 77 | 359 |

DEBTS AND CREDITS—

| | Page. | Sec. |
|---|---|---|
| subject to attachment, and proceedings | 37, 38 | |

DECREE—SEE JUDGMENT, ORDER.

| | Page. | Sec. |
|---|---|---|
| of any court, limitation of action upon | 8 | 27 |
| on proceedings in partition | 117 | |
| in suits of foreclosure | 127 | |
| in specific performance of contracts | 130 | |

DEED—SEE CONVEYANCE.

| | Page. | Sec. |
|---|---|---|
| by sheriff for real property sold on execution | 82 | 377 |
| certified copy by recorder, received in evidence | 95 | 433 |

500                                    INDEX.

DECREE—(Continued)                                          *Page.*  *Sec.*

   of commissioner to convey real estate under order of court    112
   of commissioners, of real estate sold for taxes............    168    [62]
   commissioners of how appointed.........................    257
   how deeds must be executed.............................    312    2
   married woman not bound unless joining her husband in
     executing................................... ....... ...........    312    3
   to be recorded.........................................    312    4
   who may take acknowledgment of.......................    313    5
   how to be executed out of this Territory.................    313    6
   how foreign deeds to be authenticated...................    313    7
   curative provision concerning defective........ ..........    313    8
   scroll equivalent to seal..................................    313    9
   of site for pest house............. ......................    323    2

DEFAULT—

   of defendant to answer, judgment when to be entered.....    59
   may be set aside on motion, when.......................    60    294
   in performance of mortgage, action for foreclosure........    127    614
   no surety shall suffer judgment to go by, when ...........    135    653
   of party with information................................    144    710

DEFENDANT—

*In Civil Actions—*

   who shall be known as............................ ..........    4    3
   guardian of infant, how and when appointed........ ...    5    13
   all necessary to compel determination of action, to be joined    5    14
   when a party who should be plaintiff, may be made........    5    14
   when numerous, one may defend for all..................    5    15
   persons severally liable may be joined or not..............    6    16
   may have new party substituted, when and how..........    6    22
   third party interested may join as .......................    7    23
   service by publication, rights of on appearance, in what
     cases may defend after judgment................. ......    16    68
   written admission of, equivalent to proof of service upon    17    70
   voluntary appearance of, equivalent to personal service...    17    72
   pleadings by, (*see answer, demurrer, pleadings*)..........    17    74
   when name of, unknown, how designated in complaint....    24    112
   arrest of, procedure and remedies.......................    25
   apply for discharge of attachment when..................    39    191
   when entitled to judgment of non-suit...................    58    290
   entitled to costs, when plaintiff fails to recover............    109    514
   tender and deposits in court by, when entitling to costs....    109    520
   who are, in actions to recover and affecting real estate......    112
   who may be made, in actions for partition of real property    117
   remedies of sureties against co-defendants................    134

DEFENSE—SEE ANSWER, COUNTER CLAIMS, DEFENDANT.

DEFINITION—

   of plaintiff and defendant..............................:...........    4    3
   of trustees of an express trust............................    4    5
   of intervention.........................................    7    23
   of mutual open and current account......................    9    33
   of counter claim ........................................    19    83
   verification.............................................    20    91
   of material allegation....................................    23    104
   of variance contradistinguished from failure of proof.....    23    105
   of bias, implied and actual..............................44, 45
   of verdict, general and special...........................    50
   of exception...........................................    53    261
   of new trials...........................................    56    279
   of judgment ...........................................    57    287
   of submitted case.......................................    61    302

## INDEX.                                                       501

DEFINITION—(Continued)                                   Page.  Sec.

  of the word "representatives," who may defend against
    revival of judgment.................................... 67    328
  of representatives in sales of real property on execution... 81    374
  of set-off............................................... 107   501
  of word costs, as used in civil practice ................ 108   509
  of nuisance............................................. 126   610
  of contempts............................................ 148
  of the infamous crime against nature.................... 152   752
  of distinct............................................. 153   759
  of words. .............................................. 153   761
  "personal property" "land"............................. 154   2
  of levies on steamers, vessels and boats............... 216   1
  of gender and number .................................. 224   37
  of nuisances........................................... 305   1
  of deed................................................ 312   2
  of "months"............................................ 333   1
  of a bushel of oats.................................... 334   1

DELIVERY—

  of personal property, claim to ..................... 30, 31, 32
  of property levied upon or attached, claim to.......... 37 to 40
  of money or other property may be ordered, contempt for
    disobedience...................................... 41    200

DEMURRER—

  causes of, prescribed.................................. 18    77
  shall specify grounds of objection..................... 18    78
  it may be to whole complaint, or any cause of action..... 18    78
  when right of, deemed waived, except................... 18    81
  may be to one or more of several causes of action........ 19    84
  by plaintiff to answer..... ........................... 19    87
  if plaintiff fail to, or reply to answer judgment for defend-
    ant................................................ 19    88
  of defendant to reply.................................. 20    89
  must be subscribed but not verified.................... 20    91
  issue of law arises on................................. 42    205
  by judgment debtor in proceeding to revive judgment..... 67    328

DEPOSIT—

*In civil actions*—

  by defendant, on application to substitute party making
    same claim......................................... 6     22
  to discharge defendant from arrest..................... 29    135
  certificate of, to be given to defendant............... 29    135
  refunding and disposition of........................... 29    138
  court may order to be made............................. 4     195
  by defendant of amount admitted to be due, as to costs.... 110   521
  by non-resident plaintiff in lieu of security for costs....... 111   531
  any person required to give bail may make.... ......... 152   755

DEPOSITION—

  evidence of a prisoner may be taken upon............... 88    403
  shall not be used if reason for taking it ceases to exist..... 92    421
  used in the inferior court may be used in appeal......... 92    422
  of party in proceeding to perpetuate testimony.......... 93
  when shall be embodied in transcript of record in appealed
    cases.............................................. 101   466

*Of witness in the Territory*—

  when and before whom may be taken, and notice required 89, 90
  how taken and certified, form of certificate ............. 91
  to whom and how to be transmitted..................... 91    419
  by whom can be used at trial, and to what subject........ 91    420

502                                    INDEX.

|  | Page. | Sec. |
|---|---|---|

DEPOSITION--(Continued.)

if adverse party present at taking, concluded by, except
  objecting at time .................................... 91 420
shall not be used if reason for taking has ceased, except ... 92 421
if action discontinued, when may be used in subsequent
  action .............................................. 92 422
may be used in appellate proceedings, subject, however to 92 423
witness may be required to travel twenty miles to make .... 92 424
commission for taking .................................. 93 427
to be taken upon interrogatories ...................... 93 428

DISABILITY—

while under what, not included in time of limitations ..... 9 38
by alien subject of country at war with U S ............. 10 40
not available, except existing when right of action accrued 10 43
all must be removed before statute of limitation runs ...... 10 44

DISBURSMENTS—See Costs.

DISCHARGE—

of defendant in civil action, if plaintiff fail to pay sheriff's
  fees ................................................. 27 123
of defendant in civil action, on giving bail .............. 27
of defendant in civil action, on deposits in lieu of bail .... 29 135
of party arrested on *ne exeat*, giving special bail or security
  for performance of contract ......................... 133-4
of parties on *habeas corpus* ..........................139-40

DISTRICT—See County, Court, Roads, Venue.

when necessary, construed to mean county ............... 153 759

DISTRICT COURT—

*Time for holding —*

at Vancouver .......................... .............. 312
at Walla Walla ...................................... 312
at Dayton ............................................ 364 7
at county seat of Pacific county ....................... 367 11
at Laconner ......................................... 369 13
at Walla Walla ...................................... 370 1
at Fort Colville ..................................... 379 7

DITCHES, DRAINS OR WATER-COURSES—

act of 1875 amended .................................. 314 1
duties of county commissioners in relation to ............ 314 1
auditor to record plat of survey ....................... 314 1
auditor to keep a book for record ...................... 314 1
duties of viewers .................................... 315 2
time in which to be completed ........................ 315 2
upon failure of party having to dig, applicant may dig same 315 3
expense of digging to be a prior lien .................. 315 3
privilege of intersection with ........................ 315 3
not to connect with Columbia river unless by consent of
  owners ............................................. 315 4

DOCKET—

execution, to be kept by clerk of district court, what shall
  contain ............................................. 63
transcript of judgment of other courts to be entered in .... 63 313
how kept by clerk, and of indices to ................... 64
entry upon, of revived judgments ..................... 66 326
assignments of judgment, how entered ................. 70 338
trial, how clerk shall enter claim to property levied upon or
  attached ............................................ 75 355
entry of sale of land by sheriff on execution, for confirma-
  tion ................................................ 79 370

# INDEX.

503

DOCKET—(Continued.)      *Page. Sec.*

entry of notice by one of several defendants for others to make contribution.................................... 81   372

DOCUMENTS—SEE BOOKS, EVIDENCE, RECORDS.

what may be taken by jury on retiring to deliberate....... 48   235
subpœna to witness to produce and bring any, under his control....................................................... 87   396
general provisions concerning, used as evidence ...... .. 94-95
adverse party entitled to inspection of, or copy........... 94   430
authentication of, to be used as evidence................ 94   432

DOWER—

tenant in, action for possessing real property............ . 115   555
admeasurement of by referees, when allowed............. 115   555
estate in, one-third proceeds of sale in partitions proceedings 122   588

DUEL—

action for damages for death in, who may maintain....... 4   8

EMBEZZLE, EMBEZZLED, EMBEZZLEMENT—

by public officer, attorney, agent of corporation, broker or trustee, cause of arrest in civil action................. 25   116

EQUITY—

law and, distinction between abolished................... 3   2

EQUITY OF REDEMPTION—

foreclosure of, by civil action on mortgage............... 127
sale of mortgaged premises on execution for mortgage debt forecloses....................................... 129   623

ERROR, ERRORS AND DEFECTS, AND WRIT OF ERROR— SEE APPEAL.

*In Civil actions—*

in pleading, not affecting substantial rights of adverse party, disregarded........................................... 24   113

*Writ of in Civil actions—*

for what, and when may be sued out..... ................ 98   448
reversal of judgment on, not to affect title of property sold on execution....................................... 104   484

ESCAPE—

limitation of action against officer, for................... 9
of defendant arrested, when sheriff liable as bail, and proceedings............................................. 29   139

ESTATE—

married woman may sue alone concerning her separate.... 4   6
limitations of actions for recovery of, and for rents and profits............................................... 8
separate, of married woman exempt for husband's debts... 72   345
restoration of, to judgment debtor, on redemption of property sold on execution................................ 82
actions to recover and affecting real..................... 112
to be set forth in complaint, property how described....... 113   542
of defendant to be set out in answer, or evidence shall not be given of title..................................... 113   543
judgment in such actions............................... 113   543
in actions for real property, judgment conclusive as to.... 115   553
in dower, admeasurement of............................ 115   555
partition of real property (see partition)................. 117
of dower and curtesy, proportion of proceeds of sale in partition............................................. 422   588
mortgage of, (see foreclosure of mortgage)............... 127

504                          INDEX.

EVICTION—                                                    *Page.*  *Sec.*

  from property bought on execution, by reversal of judgment,
    remedy of purchaser.........................................    80   371
  judgment of, in favor of reversioner, in action of waste....   125   606
EVIDENCE—SEE AFFIDAVITS, BOOKS, DEPOSITIONS, DOCUMENTS,
    RECORDS, VARIANCE, WITNESSES.

*In Civil Actions—*

  pleadings shall not be used as, in a criminal prosecution...    20    91
  when account or instrument on which suit is brought shall
    be given in.................................................    21    93
  party having burden of proof to produce first, and parties to
    be confined to rebutting, except..........................    46   225
  to be addressed to jury, but rules of, to be decided by court   47
  exceptions to admission of, and settlement of in bills of ex-
    ception ....................................................    53
  of witnesses, their competency and credibility, and who
    shall not be examined as...............................85, 86
  manner of compelling attendance of witnesses, (see subpœna)87, 88
  examination of adverse party...............................    85   405
  depositions of witnesses, (see deposition)...............89 to 92
  proceedings to perpetuate testimony ....................93, 94
  authentication and use of records, books, documents, &c...94, 95
  printed statutes of other states, when admitted as..........    95   437
  of title, defendant cannot give in real actions, except plead-
    ed by answer.............................................   118   543
  in actions between donation claimants, elder patent conclu-
    sive, except the same be absolutely void.................   116   556
  to contradict an inventory as evidence of assets, in actions
    against executors and administrators.....................   146   725
  the measure of, allowed to pleadings sworn to.............   151   746

EXAMINATION—SEE AFFIDAVIT, DEPOSITION, EVIDENCE, WIT-
    NESS.

*Justice of the Peace.*

  of parties attached as garnishee of defendants..............   200
  of account, &c., may be ordered before entry of judgment
    for failure to answer.....................................    59
  of corporation or party garnishee of judgment debtor......    84   385
  of document, &c., in possession of adverse party may be
    compelled..............................................94, 95

*Of Parties—*

  order to deposit in court or deliver money or other thing
    admitted to be due to adverse party.....................    41   199
  in proceedings supplementary to execution................   84-5

EXCEPTIONS—SEE ERROR, OBJECTION.

  shall be disregarded by supreme court, if specific parts of
    charge be not designated to which taken... ............    46   225
  no particular form of required..............................    53   261
  to be disregarded if not material or do not affect substantial
    rights of parties........................................    66   259
  how made and settled......................................    53   262
  when judge refuses to allow, party may apply to supreme
    court...................................................    53   265
  when motion for a new trial denied.........................    54   267
  to award of arbiters.......................................    55   273

EXECUTION—
*In Civil Actions—*

  against sheriff liable as bail returned unsatisfied, suit on
    official bond, (see arrest)................................    29   140
  on judgment, where property has been attached...........37, 38

# INDEX.

**EXECUTION**—(Continued.)                                         Page.  Sec.

to satisfy part of claim admitted due by defendant's answer    41    203
on award of arbitrators, entered up as judgment...........    56    278
docket, to be kept by clerk, what shall contain............    63
leave to issue, after expiration of lien, revived judgment
   and mode of proceeding..............................67 to 70
writ of, to enforce judgment may issue of course within five
   years of rendition.....  ..............................    67    328
for the payment of money or delivery of property, as distin-
   guished from order to perform another act.............    68    330
requisites and essentials of the writ......................    68    332
runs to any county, but in first instance to county where
   judgment rendered...................................    69    333
sheriff to endorse time received and make return in sixty
   days...............................................    69    334
penalty of sheriff or clerk retaining moneys collected on...    70    334
where judgment debtor may be arrested on, and jail liber-
   ties defined........................................    70
real and personal property not exempt, liable.............    70    337
assignee of judgment may have in his own name, when....    70    339
for stay of...........................................    71
property exempt from, (see exemption)...................72, 73
manner of proceeding when property has been attached....    76    358
manner of proceeding with property of debtor in hands of
   garnishee..........................................    77    359
proceedings in levy upon personal property..............    77
sales of real and personal property, how conducted........    78
of real estate to be returned for confirmation, proceedings..    79    369
if purchaser be evicted, what he may recover from plaintiff    80    371
contribution by several defendants, when one pays more
   than proportion.....................................    81    372
who may redeem property sold, and are termed redemp-
   tioners..........................................81, 82
mode of redemption....................................    82    378
proceedings supplementary to.......................84, 85
stay of, in suing out writ of error......................    102    469
may issue from supreme court, or by its mandate from dis-
   trict court.......  ..............................    104    483
may issue against guardian of infant plaintiff............    110    523
against assignee of action after commencement...........    110    525
offer of sale in foreclosure suit, an execution for deficiency
   from sale of mortgaged premises......................    129    623
to use of surety in judgment against principal and sureties    134    650
against defendant owning interest jointly with another,
   restricted to defendant's interest, proceeding............    152    757

**EXECUTION DOCKET**—See Docket.

**EXECUTORS AND ADMINISTRATORS**—See Letters of Ad-
   ministration, Letters Testamentary.

may sue without joining beneficiary of action.............    4    5
suing or defending as such, adverse party cannot be witness
   for self............................................    86    391
set-off pleaded in actions by and against.................    107    503
liability of for costs in prosecuting or defending actions...    110    524
actions by and against .............................145-6-7
concerning appointment, qualification and duties of...211 to 214
additional bond of may be required......................    212
shall cease to act on failure to give additional security.....    212
no bond required of, when so expressed in will...........    212
additional bond of, matter investigated..................    212
may be compelled to attend court by attachment, when ...    214

506                                    INDEX.

EXEMPT, EXEMPTION—See Homestead.                        Page.  Sec.

    property, not liable to be attached..................  ......  36  177
    from jury service, a privilege but no cause of challenge....  45  218
    of separate estate of married woman, for debts of husband  72  345
    homestead, and mode of securing, (*see homestead*)..........  72
    specific articles of property, from attachment or execution 73-74
    waiver of, how made....................................  74  352
    defendant must deliver to official list of property and amount  75  353
    of personal earnings of judgment debtor or garnishee.....  85  387

## F.

FALSE—See Fraud.

    *charge* of incest, fornication, adultery, etc., against female,
      actionable ..........................  .....  .........  152  752
    imprisonment, limitation of action for....................  8  29
    imprisonment, in action for, when recovery fixes measure
      of damages..............  ..........................  108  512

FAMILY AND HEAD OF FAMILY—See Exemption, Home-
    stead.

    allowance of property to, exempt from attachment or exe-
      cution........................................ 72, 73, 74,

FARO—
    dealing at, penalty for................................  198  1

FEES—See Compensation. Costs.
    to sheriffs for food and maintenance of defendant arrested,
      how paid............................................  28  127
    of arbitrators, taxable as costs against losing party........  55  277
    of clerk, for transcript of judgment to be filed with audi-
      tor, to be paid....................  ..................  63  313
    of witnesses to be paid or tendered at service of subpœna  87  305
    attorney, taxed in favor of prevailing party..............  109  513
    of witnesses and officers, taxed as costs, whento be claimed  109  517
    of referees ..........  ..........................  .........  109  518
    of witnesses, payment of may be enforced as a condition
      of continuance....................................  109  519
    of referees, in partition proceedings, apportioned to parties
      in interest........................................  124  604
    immaterial, certified transcript, to be paid by person blam-
      eable................................................  101  466
    certificate of the diminution or record by whom paid....  101  467
    of treasurer for collection of taxes....  ............  ......  164  [46]
    of jury in justice's court................................  202  4
    of county auditor for recording claim under lien law......  218  11
    attorney's allowed by court....  ......................  219  16
    of prosecuting attorney for resisting divorce..............  247  11
    of notaries public............................  254  9
    for teachers' certificate....................  ..........  262  12
    district clerk for taking census..........................  272  42
    for fishing on Columbia river..........................  295  4

FINE, FINES AND FORFEITURES—See Contempts,
    Penalties.

    limitation of statutory action for forfeiture .............. .  8  28
    disabilities excepted in actions for........................  9  38
    property taken for, cannot be recovered by claim to per-
      sonal property....................................  30  143
    due by officer for official delinquencies, suits for recovery  135  556
    may be recovered by action, who may maintain...........  136  660
    to be paid into county treasury except....................  136  663
    venue of action for......................................  137  663

# INDEX.

507

| FEES—(Continued) | Page. | Sec. |
|---|---|---|
| action for, due to public corporation for official misfeasance | 137 | 664 |
| limitation of, for punishment for contempts | 148 | 371 |
| for refusing or neglecting to collect tax | 171 | [76] |

**FIRE—**

| | | |
|---|---|---|
| penalty for kindling on certain lands without consent of the owner | 300 | 1 |
| person convicted of kindling, stand committed until fine and costs are paid | 300 | 1 |
| kindling on his own land when a misdemeanor | 300 | 2 |
| how punished | 300 | 2 |
| for kindling, when liable to action on the case | 300 | 3 |
| who to be plaintiff in action for kindling | 300 | 3 |
| for kindling, while hunting or fishing liable to penalties | 300 | 4 |
| loggers, kindling, bound to use caution | 301 | 5 |
| for damages done by, common law right of action not taken away | 301 | 6 |
| persons kindling, liable for damages | 301 | 6 |

**FISH COMMISSIONER—**

| | | |
|---|---|---|
| for Columbia river and tributaries how appointed | 294 | 1 |
| tenure of office of | 294 | 1 |
| duties of | 294 | 1 |
| shall execute a bond with two or more sureties | 294 | 1 |
| may appoint deputies | 294 | 1 |
| may grant licenses to fishermen | 294 | 2 |
| unlawful to fish without such license | 294 | 2 |
| license granted by, how attested | 294 | 3 |
| to pay proceeds of licenses, except fees, to persons establishing hatching houses | 295 | 6 |
| one half of certain fines to be paid to | 296 | 7 |
| shall report to the governor, when | 296 | 8 |
| when this act to take effect | 296 | 9 |

**FISHERIES—See Salmon Fisheries.**

| | | |
|---|---|---|
| unlawful to carry on, when | 280 | 1 |
| persons making complaint entitled to one-half the fine | 232 | 4 |
| propagation of salmon not interfered with | 232 | 5 |
| imprisonment for violation, when party discharged from | 232 | 7 |
| Puget Sound and Straits of Fuca designated as | 292 | 1 |
| how to be managed | 293 | |
| hatching houses for | 294, 5 | |

**FLUME—See Incorporation.**

| | | |
|---|---|---|
| corporation for constructing | 326 | 1 |

**FOOD—**

| | | |
|---|---|---|
| fish, culture of | 294 | 1 |

**FORECLOSURE OF MORTGAGE—**

| | | |
|---|---|---|
| actions for, by whom maintainable | 127 | 614 |
| remedy confined to mortgaged premises if no separate agreement | 127 | 615 |
| judgment of, order of sale, and judgment for deficiency | 127 | |
| copy of order of sale is the execution, and proceedings of the sheriff | 127 | 6 8 |
| plaintiff cannot maintain, if prosecuting for debt secured by | 128 | 619 |
| in cases of mortgage payable by installments, and sale of premises for said installments | 128, 9 | |
| in all cases, surplus arising from sale to be paid mortgagor | 128 | 621 |
| of bills of sale and chattel mortgages | 128 | 622 |
| of levy on other property to satisfy deficiency | 129 | 622 |
| judgments over, like other judgments, etc | 129 | 6.5 |

508                                INDEX.

FOREIGN CORPORATION—See Corporation.                         *Page.*  *Sec.*

    service of process upon, by publication.....................     15     65
    property of, may be attached..............................     35    175
    when plaintiff, security for costs may be required.........    111    581

FOREIGN JUDGMENTS—

    limitation of action upon.................................      8     27
    used as evidence, how to be authenticated.................     95    436
    in suits upon, where personal service not had, shall be no
        higher evidence than original claim...................    150    744
    to suits upon, where personal service not had, defense
        same as if original proceeding........................    150    745

FOREIGN WILLS—

    probated in any other state or territory of the United States
        shall be admitted to probate in this territory, when......    284      1
    authenticated record of such probation, necessary.........    284      1
    law relating to domestic wills shall apply to.............    284      2

FORM—

    of action on established..................................      3      2
    of oath of trial jury, in civil actions...................     46    224
    used by clerk in keeping execution docket............ 63, 64, 65
    of certificate to deposition..............................     91    418
    as to, of interrogatories and settlement of...............     91    420
    of oath of superintendent of public instruction ..........    261      8
    assessment roll...........................................    159     22

*See justices of the peace—*

FORNICATION—

    false charge of, against female actionable.................    152    752

FRAUD—

    limitation of action for..................................      8     28
    in contracting debt, ground for arrest of defendant.......     25    116
    in contracting debt, ground for attachment................     36    175
    in purchase of property, receiver appointed...............     40    197


### G.

GAMBLING DEVICE, GAMBLING TABLE, etc.—See Bank-
    ing Games.

    penalty for keeping or suffering to be kept...............    198

GAME—

    act for protection of amended.............................    331      1
    when hunting for, a trespass..............................    332
    penalty for violation of law..............................    332
    act to apply to Clark and Pacific counties only...........    332      2

GARISHNEE—See Attachment.

    service of writ of attachment and notices to..............     36    179
    liable to plaintiff for amount of debts until attachment dis-
        charged...............................................     37    181
    may be required to answer under oath, proceeding..........     37    182
    execution against, mode of proceeding.....................     77
    sheriff's receipt a discharge of judgment debtor..........     77     36
    any person indebted to judgment debtor may pay to sheriff
        and be discharged debt................................     84    384
    order to garnishee to apply debt to satisfaction of judgment   85    387
    where interest is claimed by, in defendant's property, court
        may order action to try right of property..............     85    388
    disobedience by, of order of court contempt...............     85    389

## INDEX. 509

**GENDER—**       *Page. Sec.*

construction of word implying........................... 153   761

**GIFT—SEE HUSBAND AND WIFE.**

property acquired by, to either husband and wife, shall be respectively separate property........................... 450   1

sale of separate property for benefit of husband, or he using proceeds of sale deemed a............. ............. 452   7

rents and profits of property by, to wife depend upon terms of instrument.................. .................. 452   9

**GOVERNOR OF THE TERRITORY—**

may appoint trustees for insane hospital................. 225   2

empowered to fill vacancies in said board................. 225   2

to approve bonds of such trustees....................... 226   4

trustees to report to.................................... 227   11

is an *ex officio* visitor to hospital for the insane............. 227   13

may appoint a code commissioner....................... 235   1

code commisioner must report to, when.................. 236   6

submit the report and code of code commissioners to the legislative assembly, when........................... 236   6

authorized to fill vacancy in office of code commission..... 237   8

duty of to call special election for delegate to constitutional convention......................................... 240   9

required to declare the result of the vote cast at special election............................................. 240   9

may appoint free scholars to University.................. 242   2

authorized to contract with William Billings for the confinement and custody of territorial convicts....... ........ 249   1

may approve account of contractor....................... 250   7

*ex officio* commission for the prison....................... 251   9

physician of the prison shall report to..................... 250   9

shall be chairman of said board of commissioners........ 252   16

may appoint and commission all notaries public ......... 253   1

may revoke appointments.............................. 253   1

to approve seal of notaries public....................... 253   3

to appoint commissioners of deeds....................... 257  

may appoint superintendent of public instruction......... 259   1

to receive and transmit report of said superintendant to legislative assembly................................. 260   2

to appoint territorial board of education................. 261   10

to offer reward for certain criminals.....................283-4

may appoint fish commissioner.......................... 294   1

may appoint a board of pilot commissioners for the Columbia river and bar.................................... 297   1

may fill vacancy in said board........................... 297   1

commissioners to notify, and report to.................... 297   1

to contract for training and tuition of deaf mutes and blind persons............................................ 298   1

to appoint official short hand reporter.................... 308   1

may revoke said appointment............................ 308   1

to offer reward for arrest of murderers of Ole Haagenson 323   1

**GRAND JURORS—**

qualification of....................................... 233   1

who may be exempt from serving as...................... 233   1

disqualification of not to affect indictment................. 233   1

lists to be kept in the office of county auditor.............. 233   2

number of for each sub-district......................... 234   3

when venire to issue................................... 234   4

cannot serve twice within two years...................... 234   4

when may not be named in venire........................ 234   5

neglecting to perform duties of, how punished............ 235   7

GUARDIAN—

| | Page. | Sec. |
|---|---|---|
| may sue without joining the name of ward............ : | 4 | 5 |
| action by, for death or injury of ward................... | 5 | 9 |
| action by, for seduction, and when by, a bar to action by her for her own seduction.............. ............ | 5 | 10 |
| when court shall appoint *guardians ad litem* ............. | 5 | 12 |
| confession of judgment by............................... | 60 | 296 |
| responsible for costs adjudged against infant plaintiff...... | 110 | 524 |
| for mismanagement or bad faith, may be held liable for suits prosecuted or defended...................... | 110 | 524 |
| shall not be interested in purchase of property subject of partition, except for benefit of infant ward............. | 122 | 592 |
| receipt by, of ward's share of proceeds of sale in partition proceedings.................................. | 124 | 601 |
| of insane persons, death of.... .......................... | 124 | 602 |

## H.

HABEAS CORPUS—

| | Page. | Sec. |
|---|---|---|
| restraint of liberty under any pretense, inquiry into and discharge............................................ | 138 | 669 |
| complaint what to contain, and by whom verified......... | 138 | 670 |
| by whom granted, to whom directed, and service.......138, | 139 | |
| return, traverse upon, amendment of, and hearing........ | 139 | |
| if no legal cause for restraint, discharge of party......... | 139 | 679 |
| limitation of inquiry.................................... | 140 | 680 |
| court may compel attendance of witnesses, and do all other necessary acts.... .............................*... | 140 | 683 |
| obedience to writ, no liability in civil action............. | 140 | 684 |
| to prevent party from being taken out of jurisdiction of court ..................................... | 140 | 685 |
| warrant may be issued for apprehension of party restraining | 140 | 687 |
| returns to such writs and warrants...................... | 141 | 688 |
| temporary order as to custody of party may be made, &c.. | 141 | 689 |
| may be issued and served on Sunday..................... | 141 | 690 |
| requisites of writ, defects immaterial, amendments, &c.... | 141 | 691 |
| granted in favor of parents, guardians, masters and husbands............................................. | 141 | 692 |

HATCHING HOUSES—SEE FISHERIES.

| | Page. | Sec. |
|---|---|---|
| assisted by moneys obtained for fishing licenses on Columbia river and tributaries.............................. | 295 | 6 |
| when owners of shall receive such money................. | 296 | 6 |
| funds to be distributed *pro rata* to owners of............. | 296 | 6 |

HEALTH—SEE BOARD OF HEALTH.

| | Page. | Sec. |
|---|---|---|
| acts injurious to, a nuisance, civil action for.............. | 126 | 610 |

HEIRS, DEVISEES AND LEGATEES—SEE REPRESENTATIVES.

| | Page. | Sec. |
|---|---|---|
| execution against property in hands of................... | 69 | |

HIGHWAYS—SEE ROADS.

| | Page. | Sec. |
|---|---|---|
| streets in towns and cities declared public. ............... | 299 | 1 |
| streets and alleys in unincorporated towns declared public. | 314 | 1 |
| duties of supervisors of................................ | 316 | |
| act in relation to, amended........................... 316, | 317 | |

HOMESTEAD—SEE EXEMPTION.

| | Page. | Sec. |
|---|---|---|
| exempted to householder, head of a family, value of $1000 | 72 | 346 |
| of what may consist, and requisites to preserve as such.... | 72 | 346 |
| to go to survivors, failing which, liable for debts of deceased.......................................... | 72 | 347 |
| may be mortgaged, to be valid against wife, requisites...... | 72 | 348 |
| proceeding of creditor to sell, if he believes worth more than $1000......................................... | 72 | 349 |

# INDEX.

511

**HOMESTEAD** —(Continued.)                                   Page. Sec.

that sum, if sold, to be paid to judgment debtor free of
expense.......................................................   72   349
subsequent, obtained with proceeds, also exempt...........   73   350
exempt from lien of judgment if sold to *bona fide* purchaser   73   350

**HUSBAND AND WIFE**—
in what actions must join and when wife may sue alone....     4
in no case necessary for guardian or next friend for wife...   4
separate property of wife, what not liable for husband's
debts.......... ...............................................   72   345
surviving, entitled to homestead............................   72   347
mortgage of homestead, when valid as to wife's interest.....   72   348
waiver of exemption by, requisites to be valid.............   74   352
in what cases cannot testify for or against each other, and
when competent as witnesses...........................   80   394

**HOSPITAL FOR THE INSANE**—
act regulating the government of.........................   225    1
styled "The Hospital for the Insane in Washington Terri-
tory".................................................... .   225    1
appointment, qualification and tenure of office of trustees of   225    2
trustees may be removed by governor, when..............   225    2
trustees may appoint secretary...........................   225    2
governor may appoint trustees to fill vacancy.............   225    2
two trustees constituted a quorum.... ..................   225    2
general powers of the board of trustees...................   225    3
duties of the board of trustees...........................   225    3
trustees to give bonds..................................   226    4
appointment of superintendent, his qualifications and powers   226    5
necessary expenditures, how audited and paid............   226    7
superintendent exempt from jury and military duty........   226    6
compensation of trustees................................   226    8
trustees not to be interested in any contract..............   227    9
accounts of hospital for the, how to be kept.............   227   10
biennial meeting of trustees.............................   227   11
report of trustees, when and how made.................   227   11
books of the hospital open for inspection................   227   12
ex-officio visitors of...................................   227   13
patients having contagious diseases excluded from hospital
for the ...............................................   227   14
indigent, preference to admission.......................   227   15
persons acquitted of offenses by reason of insanity, may be
committed by district court...........................   227   16
costs of transportation of, how audited and paid..........   227   16
discharge of, from hospital regulated....................   228   19
paupers not to be discharged from hospital, without cloth-
ing or money... .....................................   228   19
superintendent of may employ assistants.................   228   20
salaries of superintendent and employees................   228   20
duty of superintendent of, relative to expenses of patients..   229   21
duty of retiring board of trustees of.....................   229   22
trustees of, to make purchases for.......................   229   23
trustees of, shall examine and certify to bills.............   229   24
appropriation for, limited...............................   229   24
fiscal year of, data.......................................   230   25
territorial auditor and treasurer eligible for trustees.......   230   26

## I.

**IMMIGRATION AGENTS**—
may be appointed, when and by whom.................   301    1

**IMPRISONMENT**—See **ARREST**.
false, limitations of actions for...   ....................    8   29

512     ·     INDEX.

| | Page. | Sec. |
|---|---|---|
| **IMPROVEMENTS—** | | |
| value of, when set off against damages for withholding real property | 113 | 545 |
| subject to mechanic's lien | 220 | |
| **INCEST—** | | |
| false charge of, against female, actionable | 152 | 752 |
| **INCUMBRANCE—See Lien.** | | |
| **INFANTS—See Guardian, Child and Children.** | | |
| actions by and against guardians, appointed | 5 | 12 |
| disability, not to be included within limitation | 9 | 88 |
| compensation by, in suits of partition | 124 | 600 |
| proceeds of sale in partition, to whom payable and of representation of by guardian | 124 | |
| **INFORMATION—** | | |
| causes for which may be filed and by whom, and proceedings | 143, 144, 145 | |
| **INJUNCTIONS AND RESTRAINING ORDERS—** | | |
| continuance of, not included within time of limitation | 10 | 41 |
| by whom may be granted | 32 | 153 |
| complaint on affidavit, what must show, and when may be applied for | 32, 33 | |
| except temporary, in emergencies, only granted upon notice, &c. | 32 | 156 |
| affidavits may be used by both parties on hearing | 33 | 157 |
| terms may be imposed on granting or continuing | 33 | 158 |
| bond to be given | 33 | 159 |
| copy of order, to be the writ, and service of | 33 | 161 |
| for stay of proceedings after adjournment, release of errors to be made | 33 | 162 |
| shall bind every person and officer from time of information | 34 | 163 |
| notice of application served, party bound from filing of plaintiff's bond | 34 | 164 |
| money collected on judgment enjoined, disposition of | 34 | 165 |
| disobedience to, how punished, procedure | 34 | |
| of motions to dissolve or modify | 34 | 169 |
| damages for injunction to stay proceeding | 34 | 170 |
| of reinstatement of | 35 | 172 |
| judge's power in vacation, same as in term | 35 | 173 |
| **INJURY—See Damages, Crimes, &c.** | | |
| occasioning death, action shall not abate | 6 | 18 |
| to property, limitation of action for | 8 | 28 |
| threatened to property, defendant may be arrested | 25 | 115 |
| **INSANITY—** | | |
| upon examination on charge may have jury | 210 | |
| **INSTRUCTIONS—See Charge of Court.** | | |
| **INSTRUMENT OF WRITING—See Documents, Evidence.** | | |
| **INTEREST—** | | |
| on judgments, legal rate or rate specially agreed upon | 65 | 324 |
| in event of action, may be shown to affect credibility of witness | 86 | 391 |
| **INTERROGATORIES—See Deposition, Examination.** | | |
| **INTERVENTION—** | | |
| who may petition for, and mode of proceeding | 7 | |
| **INTOXICATION—** | | |
| person in state of, incompetent to testify | 96 | 386 |

|  | Page. | Sec. |
|---|---|---|
| INTOXICATION—(Continued) |  |  |
| selling or giving liquor to minor, penalty ................ | 206 | 5 |
| INVENTORY—See Probate. |  |  |
| ISSUE—See Fact. |  |  |
| *In civil actions—* |  |  |
| arise upon pleadings, and are of law or of fact............ | 42 | 204 |
| of law, upon demurrer, of fact on material allegations controverted in pleadings ............ ................. | 42 | 205 |
| may arise on different parts of law first tried ............ | 42 | 207 |
| how tried (see trial)..................................... | 42 |  |
| involving title to real estate not allowed in justice's court.. | 199 | 2 |

## J.

| | Page. | Sec. |
|---|---|---|
| JAIL—See Arrest, Bail. Crimes, Fines, Imprisonment. |  |  |
| liberties, allowed to debtors imprisoned ................... | 70 | 336 |
| JOINDER OF ACTIONS—See Action. |  |  |
| improper, cause for demurrer............................ | 18 | 77 |
| what may be united in same complaint................... | 22 | 102 |
| JOINDER OF PARTIES—See Parties. |  |  |
| when beneficiary need not be joined with trustees, executor | 4 | 5 |
| of husband and wife maintaining actions................. | 4 |  |
| who shall be as plaintiff, and who defendant.............. | 5 |  |
| JOINT OWNERSHIP— |  |  |
| interest of defendant, liable to execution, how............ | 152 | 757 |
| JOINT TENANT—See Real Property. |  |  |
| JOINTURE—See Husband and Wife. |  |  |
| JUDGE—See Court. |  |  |
| duties of regarding incorporation of cities................ | 173 |  |
| JUDGMENT—See Action, Court, Execution. |  |  |
| *In civil actions—* |  |  |
| of any court of record, limitation of action on....... .... | 8 | 27 |
| on the pleadings, when defendant may ask for............ | 19 | 88 |
| how pleaded and what to be proven..................... | 26 | 93 |
| stay of, by injunction................................33, to 35 |  |  |
| upon decision, in trial by the court..................... | 51 | 250 |
| entry of, upon award of referees ........................ | 52 | 258 |
| award of arbitrators, may be entered as, when........ ... | 56 | 278 |
| definition of, and for and against whom may be entered...57, 58 |  |  |
| of non-suit, for what given, dismisses action but no bar to commencement of another suit........................ | 58 |  |
| on failure to answer, proceedings ........................ | 59 |  |
| by confession, (see confession) ........................60, 61 |  |  |
| on submitted cases, without action ...................... | 61 |  |
| on the mode of taking and entering, (see clerk)..........62 to 65 |  |  |
| lien of, and interest they bear............................65, 66 |  |  |
| of revival of, mode of procedure........................ | 66 | 326 |
| final, in supreme court, fixes commencement of lien....... | 66 | 327 |
| enforcement of (see execution)............................ | 67 |  |
| entered against sureties on bonds for stay of, when........ | 71 | 341 |
| in claim to property levied upon or attached.............. | 75 |  |
| how authenticated to be used as evidence................. | 94 | 432 |
| proceedings to reverse, vacate or modify..... ........ 96 to 98 |  |  |
| final, may be re-examined in supreme court, procedure.... | 98 | 447 |
| from what, appeals or writs of error may be taken........ | 98 | 448 |
| of the supreme court in suits of error.................... | 99 |  |

64

514                           INDEX.

JUDGMENT—(Continued.)                                 *Page. Sec.*

    in form only, may be ordered by court for purposes of
      appeal to supreme court............................   99    455
    in actions, where set-off pleaded.........................  107
    in actions affecting real property.................. 112 to 116
    in proceedings in partition..............................  117
    in actions of waste, and where forfeiture and eviction
      allowed...................... ........................  125
    for abatement of nuisance................................  126    611
    of foreclosure of mortgage, and of deficiency............  127
    in trials of suretyship, and when surety or co-obligor shall
      not confess or suffer a default...................... 134, 135
    in suits on official bonds and for fines and forfeitures......  136
    against public corporations and officer, and how enforced  137
    in mandates and prohibitions and appeals therefrom.......  141
    in information, and enforcement of.......................  143
    in proceedings for contempts.............................  147
    suits on foreign, (see foreign judgment)..................  150
    of justice of peace, made liens against real property.......  153    758

JUDGMENT DEBTOR—See Arrest, Debt, Defendant.

    when may be arrested, for disobeying an order of court....   25    116
    different kinds of execution against person or property of 65, 66
    exemption of property from execution (see exemption)....   72
    sale of personal property under execution................:....   76
    one paying more than share, entitled to contribution from
      other....................................................   81    372
    rights of, to redeem property sold on execution (see redemp-
      tion).......................... ...................... 81 to 84
    proceedings against, supplementary to execution..........   84
    earnings of, exempt from execution or order.............   85    387

JUDGMENT LIEN—See Lien.

JURISDICTION—

*In Civil actions—*

    when court deemed to acquire............................   17    71
    objection that court has not, never waived ...............   18    81
    when costs not allowed, if within, of justice of peace.....  108    511

JUROR—See Grand Jurors.

    qualification of..........................................  233    1
    venire for when issued...................................  234    4
    rights of, defined.......................................  256

JURY, TRIAL—

*In Civil actions.—*

    issue of fact to be tried by, unless waived...............   42    208
    empanneling of, and number.............................   43    210
    challenge of, and grounds of challenge...................  44-5
    exemption from service a privilege, not cause.......  ....   45    218
    order of challenges, peremptory and for cause and trial of
      latter........  ......................................   45
    oath administered to.....................................   46    224
    judges of fact and evidence addressed to .................   47    228
    when and how allowed to separate before verdict..........   47    230
    discharge of juror, effect of..............................   48    231
    juror may be examined as witness, but if not, must not com-
      municate private knowledge............................   48    232
    retirement of, and refreshments during deliberation....... 48-49
    as to disagreements among, as to testimony...............   48    246
    when may be discharged without returning verdict.......   48    231
    verdict of, declaring, filing, etc.........................   49

**JURY, TRIAL—(Continued.)** Page. Sec.

misconduct of, and what shall be considered, ground for new trial............................................ 56

findings of, in actions affecting real property............. 113

rights of................................................ 256

**JUSTICE OF THE PEACE—**

power to compel attendance of witnesses by attachment.... 88 402

in action within jurisdiction of, costs not allowed if commenced in district court.................................... 108 511

may issue *ne exeat* in casses within jurisdiction............ 134 645

how judgment of, becomes a lien on real estate............ 153 758

in incorporated cities, powers and duties........ ........ 184 40

action before regulated by general laws.................. 184 40

election and qualification of............................. 185

injury to real or personal property...................... 199 1

duties of in cases of attachment......................... 200

duties of when attached property is claimed by other persons 201 2

when jury demanded, fee to be paid...................... 202 4

proceedings of to release property from execution........ 203 6

appeal from, by person convicted. ...... . ............ 203 7

proceedings of in case of recognizance and depositions.... 203 8

not decide as to admisability of evidence................. 204 8

objections noted by...................................... 204 8

vacancy in the office of, how filled...................... 208 1

qualification of and tenure of office................. ........ 208 5

**JUSTIFICATION—See Bail.**

## L.

**LANDLORD—**

may be substituted as defendant for tenant............... 112 541

in such actions, judgment conclusive against.............. 113 543

action by, for rent, equivalent to demand and re-entry..... 114 552

**LANDS—See Damages, Estate, Real Property, Tide-Land.**

in action for recovery of purchase money, what relief granted............................................... 6 19

**LAPSE OF TIME—**

action barred for, in other State, cannot be maintained in this Territory............................................ 10 47

**LAW—See Common Law.**

of Washington Territory, to be codified.................. 235-6

to be known as "Washington Code"...................... 236 5

to be submitted to legislature............................ 236 6

**LEGISLATIVE ASSEMBLY—**

number of members prescribed ......................... 318

apportionment of members of........................319, 320

**LETTERS OF ADMINISTRATION—See Executor and Administrators, Probate.**

proceedings relative to in probate court..............211 to 214

to be reviewed in court.................................. 214

**LEVIES—See Book of Levies, Clerk, Execution, Sheriff.**

**LIBEL OR SLANDER—**

limitation of action for................................ 9 29

sufficiency of allegation in complaint, and defenses to action 22 99

what charges against female, and what false words spoken of any person actionable.............................. 152 752

**LIBRARY—**

of professional men, to what value exempt from execution 73 351

territorial, to be removed to Capitol...................... 229

516                          INDEX.

LIEN—See Mechanic's Lien, Redemption.                    *Page.  Sec.*

  of judgments, on real estate.............................  66    326
  continuance of, by revival and leave to issue execution..65 to 70
  not affected by appeal, writ of error or stay of execution...  66    327
  sale of homestead to *bona fide* purchaser not subject to any,
    against vendor........  .............................  73    350
  creditor's right to redeem property sold on execution......  81
  on personal property, by chattel mortgages, &c., foreclos-
    ure of..................................  .................  128    622
  of judgment of foreclosure, and for deficiency after sale....  128    622
  of judgment over for deficiency..........................  129    625
  on steamers, vessels and boats for what may be enforced..  216
  enforced by suit in admiralty, *in rem*...................  216     2
  logs, spars, lumber, &c. subject to for labor performed.....  217
  preferred...............................................  217     6
  claim for, when filed for record..........................  217     9
  how enforced...........................................  218    13
  persons claiming may join in action......................  219    15
  of mechanics upon real property...................219 to 222
  for salaries and wages..................................  223
  former acts relating to repealed.........................  224    38
  prior, on land, for construction of ditch.................  313     3

LIMITATION—See Commencement of Actions.

*Of Judgment Liens—*

  on real estate..........................................  65    325
  on personal property....................................  66    327

LOGGERS—See Mechanic's Liens.

  certain property of exempt from execution................  94

LUMBER—See Liens.
LUNATIC—See Guardian.

  guardian of, may sue without joining name of........ ....   4     5

## M.

MAGISTRATE—See Justice of the Peace.

  contempts of, defined..................................  147

MAINTENANCE—

  of defendants arrested in civil action, costs of.............  27    123
  of family, what shall be exempt from execution...........  73    351
  of territorial convicts .................................  249     1

MANDATE AND PROHIBITION—

  writs of and proceedings thereon........................141-2

MARRIAGES—

  record of by probate court..................... ..........  215

MARRIAGE CONTRACT—See Husband and Wife.

  actions for breach of, limitation.........................   8    28

MARRIED WOMEN—See Husband and Wife.

  in what actions she can sue or be sued alone.... ........   4
  separate estate of, exempt from husband's debts...........  72    345
  inchoate right of dower, protected in suits of partition.....  122    590

MARKS AND BRANDS—

  in certain counties made to apply to the whole of Washing-
    ton Territory........................................  401     1

MAYOR—

  powers and duties of...................................188-9

## INDEX. <span style="float:right">517</span>

| | Page. | Sec. |
|---|---|---|
| **MECHANIC'S LIEN—** | | |
| when mechanic or laborer is entitled to a lien | 219 | 19 |
| extent of | 220 | 19 |
| loggers, &c., entitled to | 217 | 3 |
| land owners entitled to | 217 | 5 |
| to be filed in auditor's office | 217 | 9 |
| for labor performed within eight months only | 217 | 7 |
| may be enforced in district court | 218 | 13 |
| practice in actions for enforcement of | 218 | 14 |
| several may be joined | 222 | 30 |
| costs, &c., preferred claim | 224 | 36 |
| **MINOR—SEE CHILD AND CHILDREN, GUARDIAN AND INFANTS, HUSBAND AND WIFE.** | | |
| service or process upon | 15 | 64 |
| confessions of, judgment by | 60 | 296 |
| selling or giving liquor to, penalty | 206 | |
| misrepresentation of to obtain liquor, penalty for | 327 | |
| **MONTHS—** | | |
| an act defining the word | 333 | |
| construed to mean calendar, when | 333 | |
| **MORTGAGE—SEE FORECLOSURE OF MORTGAGE.** | | |
| venue of action upon | 11 | 48 |
| not deemed a conveyance, to recover real property except by foreclosure | 114 | 550 |
| actions of foreclosure | 127 | |
| *On Personal Property.* | | |
| must be accompanied by affidavit of parties to that it is made in good faith, &c | 286 | |
| when corporation or joint stock company is a party, who may make affidavit | 286 | |
| what classes of personal property may be mortgaged | 286 | 1 |
| void against creditors or subsequent purchasers and encumbrancers, unless are accompanied by affidavit of good faith, &c | 286 | 3 |
| must be recorded | 287 | 5 |
| property mortgaged exempt. from operation thereof, when | 287 | 11 |
| effect of recording in counties where property is conveyed | 287 | 11 |
| **MORTGAGEE—** | | |
| may redeem property sold on execution | 81 | |
| cannot maintain action for possession, except by foreclosure and sale | 114 | 550 |
| cannot sue for debt while foreclosing his mortgage | 128 | 619 |
| **MUTES AND BLIND—SEE CHILD OR CHILDREN.** | | |
| act to provide for th training of indigent | 298-9 | |
| may be sent to school in Oregon | 298 | 1 |
| must be eight years of age | 298 | 1 |
| appropriation to pay for keeping, &c., of | 299 | 2 |

## N.

| | Page. | Sec. |
|---|---|---|
| **NE EXEAT—** | | |
| actions upon agreement in writing not yet due, commencement of | 133 | 639 |
| when writ of, may issue | 133 | 640 |
| arrest under, and proceedings of sheriff in admitting party to special bail | 133 | 641 |
| defendant may secure performance of contract instead of bail | 133 | 642 |
| may be had against party jointly bound with defendant, or against one or more of several co-contractors, when | 133 | 643 |
| writ of *habeas corpus* may be used by defendant | 134 | 644 |
| justices of peace may issue, within their jurisdiction | 134 | 645 |
| may issue in district where defendant found | 134 | 646 |

518                          INDEX.

| | Page. | Sec. |
|---|---|---|
| **NEW PARTY—** | | |
| bringing in of, and notice to.............. ............... | 6 | |
| **NEW TRIAL—** | | |
| *In Civil Actions—* | | |
| on conclusions of referees....'...... ............ .............. | 52 | 260 |
| by arbitrators may be ordered by court................... | 55 | 273 |
| definition of, and causes for which may be made.......... | 56 | |
| when notice of motion shall be given, and hearing of...... | 57 | 283 |
| in cases tried by court, decided out of term, when must be made............................................. | 57 | 284 |
| causes for, must be specifically stated, and none other can be regarded............. ................. | 57 | 285 |
| both parties may use affidavits........................... | 57 | 286 |
| judgments of the supreme court, remanding case for further proceedings.................................... | 104 | 483 |
| **NON RESIDENT—** | | |
| time during absence not included in limitation ........... | 9 | 37 |
| causes of action between, barred by lapse of time, cannot be maintained in this Territory..................... | 10 | 47 |
| service by publication upon, of commencement of action.. | 15 | 65 |
| attachment of property of.............................. | 35 | 175 |
| plaintiff to give security for costs.... ................... . | 111 | 531 |
| parties in proceedings in partition, notice to.............. | 117 | 561 |
| when co-contractors are, when writ of *ne exeat* may issue.. | 133 | 643 |
| **NON-SUIT—SEE JUDGMENT—** | | |
| when and for what cause given........................... | 58 | 290 |
| **NOTARY PUBLIC—** | | |
| how to be appointed..................................... | 253 | 1 |
| for the county where to reside......... .................. | 253 | 2 |
| terms of office........................................... | 253 | 2 |
| seal prescribed.......................................... | 253 | 3 |
| how to be qualified...................................... | 253 | 3 |
| when commissioned...................................... | 253 | 5 |
| duties and powers of..................................... | 254 | |
| fees of notary public.................................... | 254 | 9 |
| **NOTE—SEE PROMISSORY NOTE.** | | |
| **NOTICE—** | | |
| *In Civil Actions—* | | |
| to new party................. ...................... | 7 | 23 |
| by intervenor by publication............................. | 7 | 24 |
| by plaintiff, excepting to bail in arrest.... ............... | 28 | 130 |
| by defendant of justification of bail in arrest........ ..... | 28 | 131 |
| in actions for claim of personal property................. | 31 | 145 |
| in applications for injunction............................ | 33 | 156 |
| injunction applies from service of....................... | 34 | 164 |
| of applications to dissolve or modify injunctions.......... | 34 | 169 |
| of application to release property attached by bond........ | 39 | 189 |
| of application to dissolve attachment improperly issued.... | 39 | 192 |
| for sale of attached property pending suit................. | 40 | 195 |
| by arbitrators, to compel attendance of witnesses.......... | 55 | 274 |
| of motion for new trial.................................. | 57 | 283 |
| on revivals of judgment.................................. | 66 | 326 |
| of holding real estate as homestead........... ........... | 72 | 346 |
| in sales of property on execution......................... | 78 | 362 |
| of adjournment of sheriff's sale........... ............... | 78 | 364 |
| to produce records, books, documents.................... | 94 | 430 |
| to encumbrancers in suits of partition................... | 120 | 573 |
| of sale to make up deficiency on foreclosuae of mortgage.. | 129 | 624 |

INDEX.                                                519

| NOTICE—(Continued.) | Page. | Sec. |
|---|---|---|
| in an information..... ............................. ...... | 144 | 710 |
| new party entitled to..................................... | 151 | 747 |
| of sheriff to sell property for taxes........................ | 163 | [41] |
| of treasurer of sale of real property for taxes........ ..... | 165 | 49 |

*Justice of the Peace—*

| | | |
|---|---|---|
| of persons claiming property attached.................... | 201 | |
| of appeal to district court............................... | 203 | 7 |

NUISANCE—

| | | |
|---|---|---|
| what shall be deemed, and who shall bring action......... | 126 | |
| judgment in such cases, and when defendant may be enjoined...................................................... | 126 | 611 |
| warrant for abatement of, and proceedings................ | 126 | 612 |
| stay of, warrant, on application of defendant and proceedings.................................................. | 127 | 613 |
| amendatory act defining...................... ........... | 305 | |

## O.

OATHS AND AFFIRMATIONS—See Affidavit, Verification.

| | Page. | Sec. |
|---|---|---|
| administered to receiver................................ | 41 | 198 |
| to trial jurors............................ ............. | 46 | 224 |
| administered to arbitrators................................ | 54 | 270 |
| verification of statement of defendant in judgments by confession..................................................... | 61 | 300 |
| of code commission........................................ | 237 | 8 |
| of prosecuting attorney.................................... | 246 | 5 |
| of superintendent of schools.............................. | 261 | 8 |

OCCUPATION AND USE—See Possession.

| | | |
|---|---|---|
| of real estate, limitation of action for.................... | 8 | 27 |

OFFENSE—See Actions, Criminal.

OFFICE—See Officer.

| | | |
|---|---|---|
| action for liability for act by virtue of, limitation... ...... | 8 | 28 |
| venue of action for act done by virtue of................. | 11 | 49 |
| usurpation of, or intrusion into, relief by information..... | 143 | |

OFFICER—See Arrest, Attachment, Execution, Office, Sheriff.

| | | |
|---|---|---|
| limitations of actions against............................. | 8 | |
| venue of actions against, defined.......................... | 11 | 49 |
| refusal of, to obey order of court, contempt............... | 68 | 330 |
| suits on bonds of, and for fines and forfeitures............ | 135 | |
| actions by and against public............................. | 137 | |
| proceedings against by information........................ | 143 | |
| contempts by, and to whom may be committed............ | 147 | |
| power of, to deputize the performance of duties........... | 151 | 750 |
| process served by, return sufficient.... ................. | 151 | 751 |
| authorized to take bail, may justify sureties............... | 152 | 753 |
| includes any person authorized to perform duties......... | 153 | 760 |

OFFICIAL SHORT HAND REPORTER—See Short Hand Reporter.

ORDER—See Decree, Judgment.

OYSTERS—

| | | |
|---|---|---|
| act to encourage the cultivation of........................ | 306 | |
| citizen of Territory planting, be entitled to occupy twenty acres....................................................... | 306 | 1 |
| occupancy not to interfere with cutting timber or logging.. | 306 | 1 |

520                                    INDEX.

OYSTERS—(Continued.)                                  *Page. Sec.*

steps to be taken to secure oyster claims.................. 306      2
claim only to be held during occupancy.................. 307      3
may claim and occupy more than one place.............. 307      4
how persons may transfer right of holding oyster claim.... 307      5
duty of auditor in premises............................. 307      6
penalty for destroying or taking out of season............307-8

PARENT AND CHILD—SEE CHILD AND CHILDREN.

writ of *habeas corpus* to enforce rights.................... 141    692

## P.

PARTIES—SEE ACTION, DEFENDANT, INTERVENOR, JOINDER,
    PLAINTIFF.
*In Civil Actions.*

how designated.......................................... 4       3
actions must be prosecuted in name of real party in interest,
    except........................................  ............... 4       4
beneficiary need not be joined in certain cases............ 4       5
married woman, joinder or non-joinder of husband........ 4       6
when husband and wife may join........................ 4       7
infants to appear by guardian............................ 5      12
who shall be joined as plaintiffs and who defendants...... 6      14
when numerous, one may sue or defend for all............ 6      15
severally liable, may be joined at option of plaintiff........ 6      16
death or disability of, does not abate action.............. 6      17
transfer of interest does not abate...................... 6      17
successors in interest to, may maintain action............. 6      17
of introduction of new................................... 7      21
of substitution of third, for defendant.................... 7      22
of intervention by petition, manner of.................... 7
non-resident, served by publication....................... 15      65
defect of, in pleading.................................... 18
rights of, determined by a judgment...................... 57-8
not disqualified as witness on ground of interest........... 85     391
of examination of.... ................................. 89
may be compelled to produce books, records, &c.......... 94     430
introduction of new, same notice as original.............. 153    760

PARTITION OF REAL PROPERTY—

suit for, who may maintain......  ...................... 117    557
complaint, what shall contain........................... 117    558
lien creditors may be made defendants.................. 117    559
service of notice, in suits of........................... 117
answer of defendant, what to set forth................... 118    562
issues in, and proof of title on failure to answer.......... 118    563
when property cannot be divided without prejudice, sale
    may be ordered..................................... 118    564
appointment of referees to divide.... .................. 118    565
confirmation of report of referees and decree.............. 118    566
what parties not concluded by decree.....................118, 119
expenses to be paid by plaintiff and taxed as costs......... 119    568
estate for life or years, when set-off...................... 119    570
when reference ordered to ascertain liens.......... ...... 119    570
proceedings of referees, report and confirmation........119, 120
distribution of proceeds of sale........................... 120    576
sales, how conducted, notice of, order and securities...... 121
proceeds of sale, investment of ......................... 122
in all sales in partition proceedings, general provisions..... 123
may be equalized by compensation.......... ........... 124    600
of shares due to infants or insane, paid to guardian, and
    when latter may consent.............................. 124

## INDEX. 521

PATENT—See Letters Patent.                                           Page.  Sec.

in claims to property under acts of Congress, elder, to gov-
ern if not void.........................................  116   556

PEST HOUSE—See Board of Health.

board of health authorized to purchase site for............  323    1
appropriation for.........................................  323    1
manner of obtaining the money from territorial treasury...  323    2

PHYSICIAN—

what property of, shall be exempt........................   73   351
shall not be examined as a witness in civil actions as to
communications by client without consent of.... ......   83   394
superintendent of hospital for insane must be a...........  226    5

PILOT COMMISSIONERS AND PILOTS—

act amendatory of an act creating........................  297
board of, to be appointed by the governor................  297    1
shall examine candidates for pilotage on Columbia river
and bar...............................................  297    1
board may appoint pilots and give branch or warrant......  297    1
pilots to report deputies to..............................  297    1
governor to fill vacancy on, by appointment .............  297    1
notify governor of organization..........................  297    1
per diem and mileage of, and manner of obtaining the same  297    2

PLAINTIFF—See Complainant, Parties.

the party commencing action shall be called..............    4    3
an unmarried female may be, for her own seduction.......    5   11
infant, appointment of guardian..........................    5   13
all persons interested in cause of action to be joined, except  5   14
when third party may join, by intervention...........  ....    7   23
pleadings by, and rules regarding........................   19
verification of pleadings by.............................   20
when shall suffer non-suit, generally....................   58   290
in error, proceedings on suing out writ..................   98
when a non-resident, may be required to give security for
costs.................................................  111   531

PLEADING—
In Civil Actions.

forms of, to conform to the civil practice act, and rule of
sufficiency prescribed...............................   17   73
on the part of plaintiff..................................   17   74
on the part of defendant.................................   17   74
of the complaint, and what shall contain.................   18   76
demurrer by defendant, when allowed and how taken......   18   77
when objection to complaint must be by answer...........   18   79
complaint amended, must be served on defendant.........   18   80
when defendant is deemed to have waived objections, except  18   81
to jurisdiction or insufficiency of complaint, may be made
at any stage.........................................   18   81
answer, what shall contain...............................   18   82
a counter claim, and when it exists......................   19   83
defendant may demur to part and answer residue.........   19   84
sham, irrelevant and frivolous, may be stricken out on
motion...............................................   19   85
of reply by plaintiff, what may contain..................   19   86
plaintiff may demur to defendant's answer, when..........   19   87
if plaintiff fail to reply or demur to new matter in answer,
judgment.............................................   19   88
defendant may demur or move to strike out, reply... ....   20   89
supplemental, may be filed, rules prescribed by court......   20   90
verification of.........................................   20   91
66

522                        INDEX.

**PLEADING —(Continued.)**    *Page.* *Sec.*

| | | |
|---|---|---|
| when verification to answer may be omitted | 20 | 92 |
| shall not be used in criminal prosecutions as evidence | 20 | 92 |
| general rules regarding | 21 | |
| copy of instrument of writing or account, need not be set forth | 21 | 93 |
| but copy of, or bill of particulars may be demanded | 21 | 93 |
| motion to strike out irrelevant or redundant matter | 21 | 95 |
| of judgment of court of special jurisdiction | 21 | 96 |
| of the performance of conditions precedent | 21 | 97 |
| a private statute or right derived therefrom | 21 | 98 |
| in actions for libel or slander, defamatory matter how stated | 22 | 99 |
| in such actions, defendant may aver truth of matter and justify | 22 | 100 |
| in an action to recover possession of distrained personal property | 22 | 101 |
| plaintiff may join what causes of action, when | 22 | 102 |
| material allegation of, not controverted, taken as true | 22 | 103 |
| material allegation defined | 23 | 104 |
| mistakes in, and amendments | 23, 24 | |
| issues of law or fact arise upon, when | 42 | |
| in suits of error, limited to the errors assigned in precipe | 105 | 492 |
| by defendant in set-off | 107 | |
| in actions to recover and affecting real estate | 112 | |
| in suits of partition of real property | 117 | |
| for nuisance | 126 | |
| foreclosure of mortgage | 127 | |
| verification of, in suits by and against public corporations or officers | 137 | |
| in hearings upon *habeas corpus* | 138 | |
| in mandate and prohibition | 141 | |
| in informations | 143 | |
| in cases of real estate sold for taxes addressed ot the judge | 167 | [59] |
| in enforcement of liens | 216 to 223 | |

**POLL TAX—SEE TAX.**

| | | |
|---|---|---|
| of two dollars shall be collected | 335 | 1 |
| due at the time of assessment | 335 | 1 |
| to be paid to assessor, when | 335 | 1 |
| assessor shall give receipt for | 335 | 2 |

**PRINCIPAL AND SURETIES—SEE ACTION, BAIL.**

| | | |
|---|---|---|
| action of sureties against | 134 | |
| when surety may require creditor or obligee to commence action against, or be released | 134 | 648 |
| property of, to be exhausted before levy upon surety's | 134 | 650 |
| entering as defendant and securing surety, no surety to confess judgment or suffer default | 135 | 653 |

**PROBATE COURT AND PROBATE JUDGE.**

| | | |
|---|---|---|
| time of holding | 209 | 1 |
| action of in matters pertaining to insane and idiotic persons | 210 | 2 |
| shall inquire into ability to pay expenses for keeping | 210 | 2 |
| shall allow homestead to widow | 210 | 3 |
| issue letters testamentary, when | 211 | 4 |
| shall approve bond of executors or administrators | 211 | 4 |
| when shall require additional bond | 211 | 4 |
| may require additional security | 212 | |
| may appoint another executor or administrator when | 212 | |
| when letters testamentary may issue without bond | 212 | |
| may order publication of citation | 213 | |
| when orders may be made, and entered | 213 | |
| suspend powers of executors or administrators for waste or mismanagement | 213 | |

# INDEX.

523

**PROBATE COURT, Etc.—(Continued)**                         *Page.  Sec.*

must give notice of suspension............................ 213
allegations for removal, to be filed...................... 214
compel attendance of executor or administrator by attach-
 ment................................................... 214
books of records to be kept by........................... 214
act of 1875 repealed..................................... 215

**PRISON—See Jail.**

regulation of.....................................  302 to 305
grand jury to inquire into condition of................... 304        9

**PRISONER—See Arrest, Bail, Jail.**

evidence of, how and when can be taken................... 88       403
rules for keeping, by whom prescribed.................... 302        1
list of, kept in jail register............................ 303        6
solitary confinement of.................................. 304       11
hair of, to be closely cropped .......................... 305       12

**PRIVATE STATUTES—**

and right deprived therefrom, how pleaded............... 21        98

**PRINTING, PUBLIC—**

rate of compensation for................................ 287        1
how accounts to be audited and paid..................... 288        3
authorized to print address of Hon. Elwood Evans........ 288        1
how to be paid.......................................... 288        2
auditor to advertise for printing of certain laws......... 290        2

**PROHIBITION—See Mandate and Prohibition.**

actions stayed by, not included in limitation ............. 10        41

**PROMISE—**

to continue a contract, after expiration of limitation, to be
 in writing............................................ 10        45

**PROOF—See Failure, Service, Variance.**

**PROPERTY—See Attachment, Executor, Exemption, Land,**
 **Partition, Real Estate, Redemption, Sale, Trespass,**
 **Waste.**

separate, or common, of husband and wife, joinder in
 actions concerning................................... 4

*Personal—*

limitation of action for detention, injury, etc., of......... 8       28
all liable to execution, except exempt by law............. 70      337
exempt from attachment and execution............. 72, 73, 74
sale of, on execution ........  ........................ 76 to 83

**PROSECUTING ATTORNEY—See Attorney.**

actions in behalf of Territory, limitation ................ 9        31
filing of information by, in what cases................... 143      707
duty of, in judgments against corporations............... 145      716
in informations filed by, not liable for costs.............. 145      718
information may be filed on the relation of, annulling
 letters patent...................................... 145
to prosecute contempts................................. 149      735
shall report violations of law, when..................... 198        1
an act in relation to.................................... 245
when elected, qualifications of.......................... 245        1
tenure of office of...................................... 245        2
time of commencement prescribed....................... 246        3
votes for, how canvassed............................... 246        4

521 .           INDEX.

PROSECUTING ATTORNEY—(Continued.)     *Page.*   *Sec.*

oath to be filed in the office of the secretary............... 246   5
shall be legal adviser of county commissioners............ 246   6
shall prosecute or defend for district or county........... 246   6
shall appear for the territory in all cases where appeal or
    writ of error is taken to supreme court.................. 246   7
shall give opinion in writing to county commissioners,
    when..................................................... 247   8
shall give legal advice to county and precinct officers...... 247   9
visit the offices of county auditors, examine bonds of officers,
    public records, &c...................................... 247   10
shall resist petitions for divorce, when................. ... 247   11
shall not conduct suit for divorce on the part of petitioner
    nor resist, when........................................ 247   12
shall not be engaged as counsel in civil action, when...... 248   13
shall report to the governor, when........................ 248   14
what said report shall contain........ .................... 248   14
when court or judge may appoint.......................... 248   15
governor shall appoint, to fill vacancy in office of......... 248   16
salary of and how paid................................... 248   17
fees of, how paid........................................ 248   18

PURCHASE MONEY—

in action for recovery of, who may be made party, and or-
    der of court as to performance of contract............... 6   19

PURCHASER—

of homestead, when lien against vendor shall not bind
    property................................................ 72   350

## Q.

QUARTZ MINING CLAIMS—

an act in relation to, repealed so far as applies to Stevens
    county................................................... 326

## R.

REGENTS—See University.

expenses of attending meetings of the board, how paid.... 331
secretary of the board to give certificate of mileage, &c., to 331

REAL ESTATE—See Lands, Property, Real.

actions affecting, and for rents and profits of, limitation ... 8
controversy affecting title, cannot be arbitrated........... 54   268
lien of judgment upon, how acquired, revival, etc......... 63   312
of married women, exempt from husband's liabilities ...... 72   345
exempted as homestead................................... 72   346
sales of, under execution................................. 76
conveyance of, by commissioners, when may be appointed
    and procedure.......................................... 111
how judgment of justice of peace may become a lien upon 153   758

*Actions to recover and affecting—*

who may maintain, and parties to........................ 112   540
defendant may have landlord substituted, how............ 112   541
complaint, what shall be set forth ....................... 113   542
of the answer............................................ 113   543
findings of jury by verdict............................... 113   544
damages, limitation of................................... 113   545
alienation after commencement, does not affect rights of
    parties, but purchaser may be liable for damages when.. 114   547
mortgagee must first proceed by foreclosure.......... .... 114   550
plaintiff must show a denial of his rights by defendant.... 114   551

## INDEX.

MECHANIC'S LIEN—                                                Page. Sec.

brought by landlord against tenant, equivalent to demand
   for rent and re-entry.................................... 114   552
judgments in, upon whom conclusive..................... 115   553
possession taken under judgment, how effected by new
   trial.................... .......................... 115   554
admeasurement of dower, and after judgment............ 115   555
in adverse claims under donation law, eldest patent conclu-
   sive..... .................................... 116   556
partition of, (see partition of real estate)................. 117
for waste and trespass upon.............................. 125

RECEIVERS—

*In civil actions—*

when may be appointed........ ...................... 40   197
no attorney or party interested can be appointed ......... 41   197
oath and bond of......................................... 41   198
powers of................................................. 41   202
appointment of, in settling judgments against corporations
   dissolved ......................... .......... 144   716

RECOGNIZANCE—See Actions Criminal. Bail, Bond.

RECORDS—See Evidence, Books, Documents.

subpœna to produce .................................... 87   396
general provisions regarding use as evidence.... ......... 94
of proceeding of court, authentication of, as evidence...... 95

REDEMPTION—See Execution, Real Property.

equity of, foreclosed in suit on mortgage................... 127
parties entitled to, of property sold on execution, term of,
   and order of priority. ........................... 81, 82, 83

REFEREE—

issues in action may be tried by, action.................... 51   252
when court will direct a trial by........................... 51   253
appointment, qualification and challenge of................ 51
powers of, and trial by................................... 52   257
report of, judgment upon, or motion to set aside........... 52
exception to report of.................................... 54   267
to admeasure dower in real actions....................... 115   555
in partition proceedings, (see partition).................... 117

RENTS AND PROFITS—See Real Estate.

REPLY—See Pleading.

REPORTER—See Short Hand Reporter.

REPORTS—See Washington Territory Reports.

an act authorizing John B. Allen to publish.............. 243
title of same............................................. 244   1

REPRESENTATION—See Appointment.

RESTITUTION—

on reversal of judgment by supreme court, plaintiff may
   have action for, of property sold on execution .......... 104   483

RESTRAINING ORDER—See Injunctions.

RETURN—See Judgment, Notice, Process, Service.

REVENUE—See Taxes.

REVERSIONER—

in actions of waste, when entitled to judgment of eviction
   of tenant............... ....... ..................... 125   606

REVERSAL—See Judgment.

526 INDEX.

| | Page. | Sec. |
|---|---|---|
| ROADS—See Highways. | | |
| in towns and cities declared public highways when | 299 | 1 |
| an act to amend the general road law | 315 | |
| supervisor must notify all persons in his district, subject to labor | 316 | |
| three day's notice required | 316 | |
| persons, firms, corporations or companies must pay the road taxes of employes | 316 | |
| penalty for delinquency | 316 | |
| aliens subject to perform labor on, or pay tax | 317 | 4 |
| location of county, legalized and made valid | 325 | 1 |
| records of sufficient proof of location | 325 | 2 |

### S.

SALARY—See Compensation, Fees.

SALE—See Execution.

| | | |
|---|---|---|
| of perishable property attached | 38 | |
| of property under attachment and proceeds | 40 | |
| in partition, proceedings by referees (see partition of real property) | 117 to 124 | |
| made by executor or administrator at less than price inventoried | 146 | 725 |
| of property for taxes | 164 | [47] |
| of property to satisfy lien | 219 to 223 | |

SALMON FISHERIES—See Fisheries.

*On Columbia river—*

| | | |
|---|---|---|
| preamble | 230 | |
| salmon, when unlawful to fish for | 230 | 1 |
| unlawful to fish with certain appliances, when | 231 | |
| violation deemed a misdemeanor, offender punished | 232 | 4 |
| construction | 232 | 5 |
| casting saw-dust in Columbia river, an offense | 232 | 6 |
| penalties for violation of this act | 232 | 7 |
| when operative | 233 | 8 |

*On Puget Sound—*

| | | |
|---|---|---|
| waters designated as Puget Sound | 292 | 1 |
| salmon caught in, how marked | 293 | 2 |
| failure to comply with act, a misdemeanor | 293 | 3 |
| erection of traps and weir, a misdemeanor | 293 | 4 |
| proviso | 293 | 4 |
| killing fish by means of explosive matter, a misdemeanor | 293 | 6 |

*Hatching houses on Columbia river—*

| | | |
|---|---|---|
| fish commissioner, to be appointed by governor | 294 | ·1 |
| duties of commissioner | 294 | 1 |
| rates of licenses | 294 | 2 |
| commissioner to grant licenses | 295 | 3 |
| penalty for failure to take out license | 295 | 4 |
| money received for licenses, how disposed of | 295 | 6 |
| manner of enforcing penalty | 296 | 7 |
| commissioner to report to governor biennally | 296 | 8 |
| when act to take effect | 296 | 9 |

SCHOOLS—

| | | |
|---|---|---|
| appointment of superintendent of public instruction | 259 | 1 |
| duties and powers of such superintendent | 260 | |
| salary of superintendent | 260 | 5 |
| superintendent *ex-officio* president of board of education | 261 | 7 |
| shall hold territorial teachers' institute | 261 | 6 |
| qualification of superintendent | 261 | 8 |

INDEX.

SCHOOLS—(Continued.)                                            *Page. Sec.*

*Board of Education—*

how appointed.............................................. 261    10
meetings of, when and where held......................... 261    11
powers and duties of the said board......................262-3
to adopt uniform series of text books..................... 262    12
to superintend territorial normal school................. 262    .
to grant certificates to teachers......................... 262
fees for certificates..................................... 262
to prepare questions for examination of teachers......... 262    13
certificates may be revoked, when........................ 263    14
expenses, limit of, and how paid......................... 263    15
vacancy in the board filled by appointment............... 263    16

*County Superintendent—*

when and how elected and qualified....................... 263    17
shall apportion school moneys............................ 263    18
powers and duties of..................................... 264    19
penalty for failure to make full report to superintendent... 264    20
shall have power to administer oaths, when............... 264    21
may appoint district directors and clerks, when.......... 264    22
duties of, in regard to boundaries of districts........... 265    23
salaries of.............................................. 265 · 24
may call assistance to examine teachers, when............ 265    25
books, stationery, &c., paid for by county............... 266    25
three grades of certificates, and permits to be granted by... 266    26

*School Districts—*

how organized or changed................................ 266    27
when not entitled to public money........................ 267    28
when entitled to public money............................ 267    29
lying in more than one county, how managed.............. 267    30
how certain may obtain apportionment of school money... 267

*School Directors—*

custodians of school property............................ 268    34
when annual meeting for election of, shall be held....... 268    35
manner of voting at school meetings and qualifications of
voters................................................ 269    35
may administer oaths to directors elect.................. 269    35
tenure of office of...................................... 269    36
special meeting may be called for the election of, in new
districts ............................................. 269    37
powers and duties of.................................... 270
liabilities of........................................... 271    39
may transfer money to other districts, when............. 271    40

*School Clerk—*

duties of..........................................271-2
shall take census of children, when..................... 271    42
may receive pay for services, from school fund.......... 272    42
shall provide supplies for schools...................... 272    43
report to county superintendent, when.................. 272    44

*District Meetings—*

when and how organized and managed................... 272    45

*Teachers—*

shall report to county superintendent.................. 272    46
shall keep school register.............................. 273    47
not entitled to salary unless employed by a majority of
directors............................................ 273    47
what a school month shall contain...................... 273    48
holidays included...................................... 273    48

528                           INDEX.

SCHOOLS—(Continued.)                                          Page.   Sec.

    powers and duties of........................................ 273-4
    abuse of, a misdemeanor...................................... 279    74

Schools—

    manner of being conducted................................. 274-5
    branches to be taught in..................................... 274    52
    certain books, &c., to be prohibited........................ 274    53
    school day defined......................................... 274-5
    when pupils may be expelled................................ 275    55
    school year established..................................... 275    56
    how supported.........................................275, 276
    when and how union or graded, may be established....... 277
    in cities and towns, how conducted and maintained ...... 278

School officers—

    penalty for malfeasance in office.... ..................... 278    70
    how shall qualify.......................................... 278    71
    shall not be interested in any contract made by board of
        which he is a member................................... 279    72
    disputes, how settled...................................... 279    77
    when and how teachers' institutes shall be holden........ 280

Special Taxes—

    how levied, assessed and collected........................ 280-1
    shall be submitted to voters of district................... 280    81
    but one levied each year................................... 281    81
    certified by directors to county auditor................... 281    82
    how apportioned........................................... 281    83
    what children excluded.................................... 282    83
    administering undue and severe punishment by teacher, a
        misdemeanor....... ....................................... 283    88
    what branches applicants for certificates shall be exam-
        ined in............................................... 283    89

SEAL—

    of courts or officers, to be attached to records, to be used in
        evidence.............................................. 95
    sufficiency of ............................................. 95
    of notary public prescribed................................ 253    3
    of notary public to be approved by governor.............. 253    3
    board of education may use a common................... 262    12

SECRETARY OF THE TERRITORY—

    attested copies of records of, to be used in evidence....... 95    434
    certified papers of incorporation of cities to be filed with.. 174
    trustees of hospital for insane to file bond with........... 226    4
    to administer oath to code commissioners................. 237    8
    to issue certificate of election to delegates to constitutional
        convention........................................... 239    4
    to certify result of vote to governor....................... 240    9
    oath of prosecuting attorney to be filed in the office of..... 246    5
    inventory of shackles, &c., to be filed in the office of....... 252    12
    notaries public to file oath of office, impression of seal, and
        territorial treasurer's receipt with.................. 253    3
    shall notify governor when law complied with............ 253    4
    manner of procuring the expenses of appointing and com-
        missioning notaries.................................. 255    13
    duties of, relative to appointing commissioners of deeds... 257
    oath of superintendent of public instruction filed with.... 261    8
    shall distribute certain laws according to population...... 290    3

SECURITY—SEE BOND, COSTS.

INDEX.                                        529

|  |  | Page. | Sec. |
|---|---|---|---|
| SEDUCTION— |  |  |  |
| who may maintain actions for damages for | | 5 | 10 |
| limitation of actions for | | 8 | 23 |
| SET-OFF—See Counter Claim. | | | |
| issue of fact arising upon | | 42 | 206 |
| verdict for defendant, when beyond plaintiff's claim | | 50 | 248 |
| judgment, where pleaded | 107, | 108 | |
| what may be pleaded in | | 125 | 501 |
| when plaintiff sues for a beneficiary, what may be | | 107 | 502 |
| in actions by and against executors and other representatives | | 107 | 503 |
| must be set forth in answer | | 108 | 506 |
| in real actions, value of permanent improvements, when may be allowed against damages | | 113 | 545 |
| SETTLEMENT BETWEEN TERRITORY AND COUNTIES— | | | |
| preamble | | 290 | |
| territorial auditor to make out verified transcripts of accounts of counties | | 290 | 1 |
| auditor to forward said transcripts to prosecuting attorney | | 291 | 1 |
| duties of county officers in | | 291 | 2 |
| territorial auditor to commence suit against county in case of failure in officers to comply herewith | | 291 | 3 |
| manner of completing | | 291 | 4 |
| SEX—See Gender. | | | |
| SHERIFF—See Arrest, Bail, Officer, Service, Register and Receiver. | | | |
| action against, limitations of | | 8, 9 | |
| to serve summons in commencement of actions, except | | 14 | 63 |
| return of, competent proof of service | | 16 | 70 |
| duty of, on surrender of defendant by bail | | 28 | |
| disqualified to become bail in any action | | 28 | 132 |
| liability of, for escape of defendant | | 28 | 139 |
| duty of, in claims to recover personal property and taking bonds for delivering or retention | 30 to | 32 | |
| if property concealed, may break into inclosure | | 31 | 140 |
| duty of, in keeping property claimed, or when demanded by a third party | | 32 | 151 |
| return of proceedings of, in claims to property | | 32 | 152 |
| service by, of rule upon party disobeying injunction | | 34 | 166 |
| service of writs of attachment, (see attachment) | | 37 | 180 |
| sale of perishable property attached | | 38 | 184 |
| in summoning bystanders, names of talesmen to be returned to clerk | | 43 | 210 |
| to provide jury with food and lodging, when | | 48 | 234 |
| execution directed to, and duties of | 68 to | 70 | |
| penalty for failing to pay over money collected on | | 70 | 334 |
| claims to property as exempt, appraisers called, and trial | | 74 | 353 |
| claims to property levied upon or attached, service of affidavit, taking of bond, &c. | | 95-6 | |
| made a defendant in action | | 75 | 356 |
| judgment when against, and when liable for costs | | 76 | 357 |
| sales of property on execution, (see execution, sale) | 76 to | 81 | |
| redemption of property sold on execution, duties of sheriff | 81 to | 83 | |
| deed of, for property sold, entry and record of | | 83 | 382 |
| receipt of, to a debtor of judgment debtor, discharges debt. | | 84 | 384 |
| duty of, under warrant to abate nuisance | | 126 | |
| duty of, under judgment of foreclosure | 128, | 129 | |
| duty of, in ne exeat proceedings | | 133 | |
| compelled to pay a judgment by reason of a default, judgment to remain in force for use of | | 136 | |

67

|  | Page. | Sec. |
|---|---|---|
| SHERIFF —(Continued.) |  |  |
| service of writs of *habeas corpus* by, (*see habeas corpus*) | 139 |  |
| duty of, in warrants for contempt | 149 |  |
| SHORT HAND REPORTER— |  |  |
| to be appointed by the governor, by and with the consent of the council | 303 | 1 |
| tenure of office | 303 | 1 |
| title, "Official Short-hand Reporter" | 309 | 2 |
| considered as an officer of the court | 309 | 2 |
| qualifications of | 309 | 3 |
| to report evidence and rulings in cases of felony | 309 | 4 |
| report of, to complete bill of exceptions, how made | 309 | 4 |
| court may appoint, when | 309 | 4 |
| when shall report evidence in cases of misdemeanor | 309 | 5 |
| report in chancery and divorce cases when | 309 | 6 |
| fees of, to be taxed as costs in the case | 309 | 7 |
| fees of, in civil cases, how taxed and paid | 309 | 8 |
| fees of, for transcribing in long-hand | 309 | 9 |
| certified report of *prima facie* correct in case of appeal or writ of error | 310 | 10 |
| report of, shall be transmitted as evidence to the supreme court | 310 | 11 |
| official bond of, requisites | 310 | 11 |
| liable on bond if certified transcript be incorect | 310 | 11 |
| SLANDER—See Libel. |  |  |
| SOLITARY CONFINEMENT— |  |  |
| when prisoner may be ordered in | 304 | 11 |
| such confinement not to exceed twenty days at one time | 304 | 11 |
| bread and water to be the only food when | 304 | 11 |
| SPECIFIC CONTRACT AND SPECIFIC PERFORMANCE— |  |  |
| in actions for recovery of purchase money, when order for may be made | 6 | 19 |
| when court may direct specific performance of | 130 | 626 |
| STATE CONSTITUTION—See Convention. |  |  |
| when and where convention to assemble to frame | 239 | 5 |
| when shall proceed to frame | 240 | 7 |
| shall be submitted to Territory for ratification or rejection | 240 | 7 |
| separate articles of, may be submitted to electors | 240 | 7 |
| form of, shall be submitted to legal voters of the territory for ratification or rejection | 240 | 8 |
| what ballots for against shall contain | 240 | 8 |
| result of the votes cast for or against shall be declared by the governor | 240 | 9 |
| STATUTE—See Limitation. |  |  |
| action for penalty imposed by, limitation | 8 |  |
| private, or right derived therefrom, pleading of | 21 | 98 |
| of other States or Territories, evidence | 95 | 437 |
| STAY— |  |  |
| of commencement of actions, by injunction or prohibition not included in time of limitation | 10 | 41 |
| of proceedings by injunction, (see injunction) | 32 to 34 |  |
| appeal or writ of error shall not | 102 | 469 |
| *Of execution.* |  |  |
| does not affect existing lien of judgment | 66 | 327 |
| allowed on judgments | 71 | 339 |
| bond for, to be given, conditions of, etc | 71 | 340 |
| if judgment not satisfied within time of, execution against defendant and surety, when | 71 | 341 |

STAY—(Continued.) | Page. | Sec.
--- | --- | ---
justification of sureties on bonds | 71 | 343
stay for balance of time after issue of execution | 71 | 343
bonds required to be lodged where | 71 | 344
of warrant to abate nuisance | 148 | 559

STOCK—See Animals, Cattle.

SUBPŒNA—Attendance, Deposition, Evidence, Witnesses.

| Page | Sec
--- | --- | ---
how issued, and commands of writ | 87 | 397
service of and return | 87 | 398
personal presence in court, witness compelled as though served | 88 | 399
failure to obey, contempt, penalty for | 88 |
by officer taking depositions | 92 | 422
disobedience to, contempt | 148 |

SUCCESSOR IN INTEREST—See Representatives and Successors in Interest.

SUNDAY—

| | 
--- | --- | ---
writs of *habeas corpus* may be issued in emergencies | 141 | 690
if last day be, excluded from time for performance of service | 151 | 748

SUPERINTENDENT OF SCHOOLS—See Schools.

SUPERVISORS OF ROADS—See Roads.

SUPREME COURT—See Court.

act fixing time of holding ........ 311, 312

SURETY AND SURETIES—See Bail, Bond, Principal and Sureties.

SURRENDER—See Arrest, Bail.

SURVEYOR GENERAL—

| |
--- | --- | ---
of Oregon and Washington, records of, used as evidence | 95 | 434
certificates of residence or settlement in, used as evidence | 95 | 435

SURVIVORSHIP OF ACTIONS—See Abatement, Representatives.

## T.

TAXES—

| |
--- | --- | ---
property subject to | 154 |
property exempt from | 155 | 4
on polls on whom assessed | 155 | 5
property, when and to whom assessed | 155-6-7 |
districts for assessment of | 157 | 14
assessment roll, form of | 159 | 22
equalization of | 160 | 25

*Estimate and apportionment of—*

| |
--- | --- | ---
for county purposes | 160 | 29
Territorial and road | 161 | 30
poll of two dollars to be collected by assessor | 161 | 32
duty of auditor in regard to | 161 | 33

*Collection of—*

| |
--- | --- | ---
from person removing from Territory | 162 | 34
when become delinquent | 162 | 35
collectable at county seat | 162 | 36
demand for unnecessary | 162 | 37
when delinquent, sheriff to collect | 163 | 37
penalty added | 163 | 38

532                                        INDEX.

TAXES—(Continued.)                                                                *Page. . Sec.*
          local, how collected.................................... 163      39
          county orders received for.............................. 163      [40]
          compensation of treasurer for collection of.............. 164      [43]
          treasurer to receive after delinquent.................... 164      [44]
          for receiving, treasurer's compensation.................. 164      [46]
          sale of property for, by whom, and where............ 164 5-6    .
          conveyance of real estate sold for.................... 167-8-9
          statement of, rendered by treasurer..................... 170      70
          rolls of, errors corrected.............................. 170      [73]
          list of delinquent furnished by county treasurer to county
              commissioners, when................................. 171      [75]
          failure of treasurer to collect, penalty for............. 171      [76]
          additional fees allowed.  .............................. 171      [75]
          county fund shall not make up deficiencies in territorial or
              school fund......................................... 172      [79]
          manner of collecting special tax to be as herein provided  172      [81]
          for support of schools to be levied by county commission-
              ers, how............................................ 275      58
          annual, shall be not less than three nor more than six mills
              on the dollar....................................... 275      58
          how collected........................................... 276      58
          fines for breach of law regulating license for sale of liquors
              to be added to, for school purposes................. 276      58
          county auditor to report to county superintendent the
              amount of, when..................................... 276      59
          special, in school districts to be submitted to qualified
              voters, by the directors, when...................... 280      81
          how collected........................................... 281
          directors to certify vote of, to county auditor......... 281      82
          treasurer to place to credit of district................ 281      82

TENANT—
          in possession, actions against, for real property....... 112      541
          may have landlord substituted, when and how,........... 112      541
          in common, action by, plaintiff must also show denial of
              right of defendant.................................. 114      551
          payment of rent by, entitled to a continuance of possession  114      552
          in dower, admeasurement of before possession........... 115      555
          in common, suit for partition.......................... 117
          interests of, concluded on decree in partition......... 118      566
          for life or years, set-off on partition or sold........ 121      585
          share of proceeds of sale on partition........... 121 to 124
          compensation to, when sold............................. 124      600
          action against, for waste.............................. 125

TENDER—SEE COSTS, DEPOSIT.
          made by defendant, who liable for costs................ 109      520

TENURE OF OFFICE—
          of prosecuting attorneys...  .......................... 245      2
          of notaries public..................................... 253      2
          commissioners of deeds................................. 257      1
          of legislative, district, county and precinct officers, elected.  330      2
          of all officers appointed by governor by and with the con-
              sent of the legislative council..................... 330      3

TERMS OF DISTRICT COURT—
          act fixing times and places of holding.................311, 312

TERRITORIAL AUDITOR—SEE AUDITOR, TERRITORIAL.

TERRITORIAL CONVICTS—
          act providing for proper confinement of................ 249

## INDEX.                                      533

**TERRITORIAL CONVICTS** –(Continued)                         *Page.  Sec.*

governor to contract with William Billings for custody and
    maintenance of...................................   249      1
contract for keeping of, to be in force for six years........   249      2
buildings necessary to be erected for.....................   250      3
to be confined according to their respective sentences......   250      4
penalties and punishments for escape of..................   250      5
contractor execute a bond for safe keeping of.............   250      6
where confined...........................................   251      8
rules for keeping of, who prescribed by..................   251      9
contractor to receive all, when..........................   251     11
contractor to receive hand-cuffs, &c., for............ .....   251     12
divine worship held in prison, when.....................   251     13

**TERRITORIAL OFFICERS—**

when to be elected............................ .............   330      1

**TERITORIAL TREASURER—**

copies of papers certified by, evidence......... ..........    95    434
coun'y treasurers to forward funds to, when.............   169   [68]
shall direct county treasurers how to forward funds belong-
    ing to treasury.......................... ................   169   [68]
shall give or send receipts to county treasurers and territo-
    rial auditor, when........... ......................   170   [71]
shall pay warrants drawn in favor of delegates to conven-
    tion to form state constitution.........................   241     10
to receive copy of reports...............................   244      8
to pay salary of prosecuting attorneys, when.............   248     17
to be ex-officio commissioner for the prison for territorial
    convicts...............................................   251      9
to receive fees of applicants for office of notary public, and
    give receipt therefor..................................   253      3
to keep the said fees as special fund and pay the same
    out, when...........................................   255     12
duties of in relation to appointment of commissioner of
    deeds..................................................   257
duties of in regard to the printing of certain pamphlets
    and laws.....................................287 to 290
duty of in relation to transfer of territorial funds from
    counties to territorial treasury.....................   292
to pay per diem ard mileage of pilot commissioners, when.   298
to pay reward for arrest of certain murderers, when.......   223
to pay for site for pest house, when............. .........   223      2
to pay for moving territorial library.....................   330
incidental expenses of office of, how paid................   334      1
to pay for telegram to the president.....................   338      2
to pay incidental expenses of legislative assembly, 6th bien-
    nial session............................. ...............   389

**TERRITORY—**

action for statutory penalty to, limitation................     9
limitation applies to, as a private party..................     9     34
verification of pleadings by............... ..............    20     91
who may confess judgment for...........................    60    296
liable for costs as private party...........................   110    526
suits on official bonds, fines and forfeitures...............   135
informations for forfeitures to............................   143
plaintiff in cases of contempt............................   149    735

**TESTATOR**—SEE EXECUTOR AND ADMINISTRATOR.

**TESTIMONY**—SEE DEPOSITION, EVIDENCE, PROCEEDINGS TO
    PERPETUATE TESTIMONY.

534                            INDEX.

THREATS, THREATENING—                                       *Page.*  *Sec.*

 injury to property, defendant may be arrested in action for 25 116
 injury to property, ground for injunction................... 32 154
 of waste upon lands claimed adversely under land laws,
  ground for injunction.......... . .................... 125 607

TIDE LANDS—

 owners of, may designate boundary...................... 258 1
 manner of diking, and liability of owners for............ 258 1
 cost of constructing dike, a lien upon.................. 258 1
 how lien on, enforced.................................. 258 1
 persons taking up, may adopt constructed dike as boundary 258 2
 must pay owner of one-half value of dike............ ..... 259 2
 when dike shall become common boundary of......... ... 259 2

TIMBER—

 allowed tenant in possession till redemption expired....... 83 380
 action of trespass for cutting or injury to................ 125 607
 malicious setting fire to, punishment.................... 300 1
 lands, setting fire to, or suffering fire to pass own premises,
  penalty................................ ........ .............. 300

TIME—See Limitation.

 rules for computation of............................... 151 748
 act fixing, of holding term of supreme court............. 471

TITLE—

 of property, actions to try, venue of...................... 11 48
 to property on which distraint made need not be averred as
  defense to action for distrained property................ 22 101
 to real estate not to be submitted to arbitration............ 54 268
 trial of, of property attached or levied upon............... 75 355
 by commissioners to convey real estate................... 111
 in adverse claims under donation law, eldest patent conclu-
  sive.................................................. .. 116 556
 decree of partition not to affect, of what parties........... 119 567
 to property forfeited to Territory in information........... 145 717

TRANSCRIPT—

 of proceedings in changes of venue.....................·... 12 55
 of judgment filed with county auditor................... 63
 of proceedings in appeal............................... 99 453
 of judgment of justice of peace, to become lien on real estate 153 758

TRANSFERRING FUNDS—

 territorial, time for.................................. 292 1
 territorial treasurer to contract with persons for safe...... 292 2
 how paid for....... .............................. 292 2

TREASURER, COUNTY—See County Treasurer.

 shall set apart certain fines and apportion same with school
  fund..... ........................................ 276 58
 must pay to directors of school district upon their order
  countersigned by district clerk........................ 282 85

TREES—

 actions of trespass for cutting or injuring................. 125 607

TRESPASS—See Injury, Waste.

 limitation of action for................................. 8 28
 for what will lie, and treble damages awarded.............. 125 607
 where casual or involuntary, or other circumstances justified,
  single damages.... .................................. 125 608

## INDEX. 535

TRIAL—                                                                    *Page.* *Sec.*

*In Civil actions—*

    place of (*see venue*)....  ..............................  11
    at what time complaints shall be answered................  14
    of issues, by whom and when............................  42
    continuance of, motion for............................  43  209
    empanneling of jury, trial of challenges...............43 to 46
    swearing of jury, and order of............. ..........46 to 49
    by court when allowed, and what.......................  51
    by referees............................................  51-2
    by arbitrators.........................................54 to 56
    new, motion for, (*see new trial*,)......................  56
    of rights of property, attached or levied upon............  75

TRUSTEES—

    term  defined, may sue without joining beneficiary........  4

### U.

UNION OR GRADED SCHOOLS—See Schools.

    when may be established................................  276  60
    when established, entitled to school fund........ ........  277  62
    may levy taxes........................................  277  63
    single district has power to establish.....................  277  65

UNIVERSITY—

    apportionment of money for............................  241  1
    free scholarships in....................................  241  2
    apportionment and appointment of free scholars to........  241  2
    duties of the regents of...............................  242  3
    when appointment of free scholars to shall be made.......  242  4
    scholarships in, defined...............................  242  5
    vacancy of scholarships in, how filled...................  243  6
    money appropriated for, how applied... ................  243  7
    scholarships to, made in duplicate form..................  243  8
    appropriation to pay expenses of regents of..............  331

UNSOUND MIND—

    persons of, incompetent as witnesses....................  86  393
    persons of, examined in probate court, how..............  210
    if person found of, to be taken to asylum.......... .......  210

USURPATION—

    of office, &c., action for, by information.................  143

### V.

VARIANCE—See Amendment, Pleading.

    must have misled, to be material.................. .....  23  105
    distinction between, and failure of proof................  23  107

VENUE—

*In Civil actions—*

    when the situation of subject of the action, locates........  11  48
    when shall defend on, where cause of action arose........  11  49
    in actions against corporations.........................  11  50
    when it shall depend on personal service of defendant....  11  51
    when the plaintiff may designate in his complaint ........  11  51

*Change of—*

    when allowed by the court..............................  12  53
    when motion allowed, issue tried where..................  12  53
    where new county is created.............................  12  54

536                    INDEX.

| | Page. | Sec. |
|---|---|---|
| **VENUE—(Continued.)** | | |
| duties of clerk in cases of......................... ....... | 12 | 55 |
| costs of........................ . ........................ | 13 | 55 |
| when order of, may be vacated........................ | 13 | 57 |
| when shall be deemed complete, and jurisdiction.......... | 13 | 58 |

**VERDICT—**

*In Civil Actions—*

| | Page. | Sec. |
|---|---|---|
| rendition of by jury, and correction of form.............. | 49 | |
| to be in writing, filed and entered of day given........... | 49 | 243 |
| in general or special, definition of....................... | 49 | 244 |
| in actions for specific personal property.................. | 50 | 245 |
| in actions for money or specific real property, may be either general or special............................ | 50 | 246 |
| special finding will control general...................... | 50 | 247 |
| in actions where set-off pleaded.......................... | 50 | 248 |
| what objections to, ground for new trial.................. | 56 | 280 |
| in actions affecting real estate........................... | 113 | 544 |

**VERIFICATION—SEE AFFIDAVIT, PLEADING.**

| | Page. | Sec. |
|---|---|---|
| who may make, and of what to consist.................. | 20 | 91 |
| by one of several parties, or by agent or attorney.... ..... | 20 | 91 |
| when by agent or attorney, what must be stated........... | 20 | 91 |
| by corporation, or territory, who may make.............. | 20 | 91 |
| when may be omitted.................................... | 20 | 92 |
| for want of, pleading may be stricken out................. | 24 | 111 |
| of pleadings in actions by and against public corporations. | 137 | 666 |
| of applications for *habeas corpus*........................ | 138 | 670 |

**VESSELS—SEE BOATS AND VESSELS.**

**VIEW—**

| | Page. | Sec. |
|---|---|---|
| view may be ordered by court in trial of cause............ | 47 | 229 |

**W.**

**WARD—SEE GUARDIAN, MINOR, PROBATE.**

**WASTE—**

| | Page. | Sec. |
|---|---|---|
| limitation of action for................................ | 8 | 28 |
| tenant in possession, pending time for redemption of property sold on execution, restraint of, and what not deemed | 83 | 880 |
| action for, who may maintain and judgment.... ......... | 125 | |
| restraint of, in adverse claims under land laws............ | 125 | 609 |

**WEIGHTS AND MEASURES—**

| | Page. | Sec. |
|---|---|---|
| act of 1869 establishing uniform, and to create office of sealer, repealed.......... ..................... ...... | 332 | 1 |
| act of 1863, relating to, amended................ ......... | 334 | 1 |
| thirty-six pounds shall constitute a bushel of oats.......... | 334 | 1 |

**WIDOW—**

| | Page. | Sec. |
|---|---|---|
| action by, against party killing husband in duel............ | 5 | 8 |

**WIFE—SEE HUSBAND AND WIFE, MARRIED WOMAN.**

| | Page. | Sec. |
|---|---|---|
| actions by or against, when husband to be joined......... | 4 | |
| when competent as witness in actions where husband party | 86 | 394 |

**WITNESSES—SEE ATTENDANCE, DEPOSITION, EVIDENCE, SUBPŒNA.**

*In Civil actions.—*

| | Page. | Sec. |
|---|---|---|
| persons of sound mind, suitable age and discretion, competent.... ........................................... | 86 | 393 |
| parties to action not to be excluded, interest affects credibility | 86 | 391 |
| conviction of perjury until pardon or reversal, incompetent | 86 | 392 |

## INDEX.    537

**WITNESSES—(Continued.)**                                         *Page*    *Sec.*

    who incompetent as............................................. 86    393
    who shall not be examined as............................... 86    394
    manner of compelling the attendance of.................... 87
    residing in Territory, depositions of...................... 89
    out of Territory, deposition of............................ 90

**WOOD AND WOODS—**

    what may be used by tenant during time for redemption of
      property sold on execution.............................. 83    380
    malicious setting fire to, or permitting fire to pass......... 300

**WORDS—SEE CONSTRUCTION.**

**WRIT—SEE ARREST, ATTACHMENT, OFFICER, SHERIFF, WARRANT.**

**WRITS OF ERROR AND APPEAL—SEE APPEAL.**

    actions at law shall be removed to supreme court by writ
      of error ................................................. 98    447
    actions of an equitable nature, by appeal.................. 98    447
    when may be taken.....................................98, 99
    court may prescribe rules for taking ..................... 98    449
    a mistake of clerk shall not be ground for................. 99    450
    not allowed when error can be corrected on motion in court
      below until such motion is overruled.................... 99    451
    supreme court may review or reverse, although no motion
      was made in district court.............................. 99    452
    what the records must contain in.......................... 99    453
    supreme court may issue all necessary writs............... 99    454
    within what time shall be taken........................... 99    455
    a part of several copartners may prosecute................ 99    456
    when taken from part of a judgment, shall not other another
      part.................................................... 100    459
    how taken................................................. 100    460
    service of notice of, and what it shall contain.. .......... 100    460
    when perfected............................................ 100    461
    when notice of shall be served and case docketed......... 100    462
    effect of failure to file transcript in...................... 100    463
    when may be dismissed...........................100, 101
    what deemed part of record in............................ 101    466
    suggestion of diminution of record and effect of, in....... 101    467
    shall not be dismissed for informality or defects in notice
      or service ............................................. 101    468
    amendments in allowed, when............................. 102
    shall not stay proceedings unless bond filed............... 102    469
    when supreme court may fix penalty and approve appeal
      bond................................................... 102    470
    when supreme court may discharge bond.................. 103    471
    proceedings may be stayed by new bond.................. 103    472
    amount of bond........................................... 103    475
    part of judgment not appealed from not affected thereby.. 104
    when clerk may countermand execution.................. 104    476
    effect of such countermand............................... 104    477
    when judgment rendered against appellant or plaintiff in
      error.................................................. 104    479
    when damages may be awarded........................... 104    480
    how process may be issued to carry judgment into effect.. 104    481
    writ of restitution may issue, when....................... 104    483
    when property not affected by reversal of judgment....... 104    484
    supreme court has power to enforce its mandates.......... 104    485
    effect of petition for re-hearing.......................... 105    486
    suspension of rehearing may be extended, when........... 105    487
    clerk shall docket causes................................. 105    483
    when cause is decided.................................... 105    490

68

538                    INDEX.

WRITS OF ERROR AND APPEAL—(Continued.)                    *Page.* *Sec.*

what assignments of error must point out................. 105  492
motions, when made, entered and heard................. 105  493
when original paper transmitted........................ 105  494
cause not abated by death of parties.................... 106  495
when appellee or defendant in error may move to dismiss.. 106  496
pleadings of parties in................................ 106  497
service of notices of, how may be had.................. 106  498
executions and their consequences..................... 106  499
construction of certain words......................... 106  500

# INDEX

## TO THE

## PRIVATE AND LOCAL STATUTES.

### A.

APPROPRIATIONS—
  to pay for telegram to the President, $16 60............ ............ 383
  to defray incidental expenses of Legislature, $200............ 389
  to pay H. L. Chapman and others, $527 18 ................. 390
  "    "   O S. N. Co, $85.................................... 391
  "    "   Tacoma Lodge, No. 4, I. O. G. T., $300.............. 391
  "    "   additional enrolling clerks.......................... 392
  "    "   John T. Hicklin. $300................................ 393
  "    "   John Saltar, $85.................................... 393
  "    "   E. L. Willey. $87....:............................... 395
  "    "   William Billings. $441... .......................... 395
  "    "   John P. Judson, $120............................... 397
  "    "   clerks and employees of Legislative assembly, $72..... 397
  "    "   John R. Thompson. D. N. Utter, J. P. Ludlow, and A.
             Atwood. $100 .................... ............... 402
  "    "   Hall's Safe & Lock Company, $1000................... 403
  "    "   Puget Sound S. N. Co., $233 50...................... 409
  "    "   J. C. Horr and others, $1147........................ 412

### B.

BOUNDARIES—
  of the city of Vancouver defined ........................... 362
  of Mason county ........................................... 406
  between the county of Island and the counties of San Juan,
    Whatcom and Snohomish............................... 425

BOYLES, EZRA P.—
  an act for the relief of, and sureties........................ 394

### C.

CHEHALIS COUNTY—
  authorized to appropriate money for the purpose of building
    bridges and public highways............................. 385

540                                INDEX.

CLALLAM COUNTY—                                              *Page.*  *Sec.*

 unlawful to hunt deer in, when............................... 298
 unlawful at any time to hunt with dogs...................... 298

CLARKE COUNTY—

 act authorizing the levy of a special tax for school purposes in,
  repealed............................................... 425
 warrants of, shall not be received in payment of county taxes
  or dues, except from persons in whose favor warrants were
  drawn................................................ 426
 warrants to be paid in order as numbered..................... 427
 divided into three commissioner districts.................... 428
 auditor to furnish record of legal voters to commissioners.... 429
 commissioners shall apportion county in three districts....... 429
 manner of electing commissioners in......................... 429
 where commissioners to be elected, and town officers ........ 429
 an act for the protection of game in........................ 831

COLUMBIA COUNTY—

 creating and conferring jurisdiction of district court of...... 363
 act to create a road from Dayton in, to Palouse city in Whit-
  man county........................................... 387
 an act to raise revenue for road purposes in................. 415
 duty of commissioners...................................... 415
 tax for road purposes paid into treasury subject to order of
  commissioners........................................ 415
 duty of supervisors........................................ 415
 not affect taxes already levied in.......................... 416
 an act for the protection of quail in....................... 416

COUNTY COMMISSIONERS—

 of Stevens county authorized to levy a special tax for bridge
  purposes............................................. 399
 of Jefferson county authorized to borrow money for the build-
  ing of a court house................................. 416
 districts for the election of, in San Juan county defined...... 417
 of King county, an act to provide for the election of special.. 421
 of Jefferson county, to provide for the election of, districts
  repealed............................................. 424
 of the counties of Clarke, Thurston, Klickitat, Yakima and
  Kitsap, an act in relation to the election of............ 428
 of King county authorized to apply certain money to the con-
  struction of the Snoqualmie wagon road................ 384

COUNTY WARRANTS—

 not receivable for taxes in Clarke county except from those to
  whom drawn........................................... 427

COURTS—

*Of the county of Columbia—*

 jurisdiction of............................................ 363
 judge of the first judicial district shall hold................ 363
 not jurisdiction of U. S. cases............................. 363
 clerk of, how appointed and where he shall keep his office.... 363
 time of holding........................................... 364
 number and manner of summoning jurors.................... 364
 what laws shall govern in.................................. 365

*Of the county of Pacific—*

 act establishing........................................... 365
 jurisdiction of. .......................................... 365
 judge of the second judicial district shall hold.............. 366
 number and manner of summoning jurors.................... 366
 causes transferred to...................................... 367

INDEX. 541

COURTS—(Continued.)            *Page. Sec.*

time of holding.......................................... 367

*Of the county of Whatcom—*

act establishing....................................... 367
jurisdiction of........................................ 368
judge of the third judicial district shall hold.., ........... 368
appointment and qualifications of clerk................ 368
number and manner of summoning jurors.............. 369
causes transferred to................................. 369
time of holding....................................... 369

*Of Walla Walla—*

act changing the time of holding.... .................. 370
processes issued and returnable to stand over.......... 370

*Of the county of Stevens—*

act establishing....................................... 378
jurisdiction of........................................ 378
judge of first judicial district shall hold the same......... 379
appointment, qualification and residence of the clerk of...... 379
time of holding....................................... 379
time and manner of summoning jurors................. 380
laws regulating practice in............................ 380

## D.

DALY, THOMAS—

an act for the relief of................................ 396

DEER—

an act for the protection of, in the counties of Clallam and
Jefferson. ............................................ 398
an act for the protection of, in Island county............ 409

DISINCORPORATION—

of the city of Kalama................................. 360
of the town of Tumwater.... ......................... 361

## F.

FENCES—

act defining lawful, in Yakima and Whitman counties....... 410

FITZPATRICK, JOHN—

an act for the relief of................................ 396

## G.

GAME—

act for the protection of, in Clarke and Pacific counties...... 331

## H.

HOGS—

not allowed to run at large in Snohomish county nor in cer-
tain townships in Klickitat county..................... 407
may be sold, when.................................... 408
duty of constable in relation to....................... 408

## I.

INCORPORATION ACT—

of the town of Olympia.........................339 to 349
of the city of Seattle, amended......................... 351
of the city of Walla Walla, amended................... 357
of Port Townsend, certain sections of and certain acts repealed 423

542                                    INDEX.

ISLAND COUNTY—                                         *Page.  Sec.*

    boundary of defined.....................................    425

## J.

JEFFERSON COUNTY—

    roads and highways in....................................    370
    commissioners of to appoint supervisors, when.............    371
    qualifications, powers and duties of supervisors of..........    371
    auditor of, to furnish supervisors with boundaries of his district    371
    commissioners of, may purchase tools, &c..................    372
    how commissioners of, may vacate a road..................    373
    commissioners of, to levy a road-poll tax..................    373
    duties of commissioners and road supervisors of, at May meet-
      ing of commissioners.............................. ........    376
    duty of auditor of, in the premises.......................    377
    commissioners of, may transfer funds from county to general
      road fund........... ................................    378
    to provide for the protection of deer, in...................    398
    act to authorize commissioners of, to borrow money..........    416
    act to provide for maintenance of common schools in, amended    422
    to elect commissioners of by districts, repealed.............    424

## K.

KALAMA—

    an act disincorporating the town of........................    360
KING COUNTY—                                            .

    act to enable to borrow money............... .............    318
    act to regulate the collection of road and road poll-tax in,
      repealed... ....... ..............................    412
    time for collection of taxes in, extended...................    420
    act to provide for the equalization of taxes in, for the year 1877    427
    act to provide for the election of county commissioners and
      county assessors of, repealed ........................ ....    421

KITSAP COUNTY—

    an act in relation to election of commissioners of, and defining
      their duties ................... .....................    428-9

KELLY, J. C.—

    an act for the relief of....................................    396

KLICKITAT COUNTY—

    an act relating to roads and bridges, in...................    384
    re-location of county seat of, to be submitted to the voters of,
      in 1878....................................    405
    hogs prohibited from running at large in certain townships in.    407-8
    an act in relation to the election of commissioners in, and de-
      fining their duties...................................    408-9

## L.

LEWIS COUNTY—

    an act for the relief of....................................    282-3

## M.

MARKS AND BRANDS—

    in certain counties made to apply to the whole territory.......    401

# INDEX. 543,

MASON COUNTY—                                          Page. Sec.

boundary lines of, defined............................ ..... 406

## O.

OLYMPIA—

act incorporating......................................... 339
boundaries............................................... 339
divided into wards..................................... 340
officers of, elected, when.............................. 341
powers of board of trustees......................342 to 344
duties of officers of ................................ ..... 345-6
collection of delinquent taxes in........ . ............... 347
miscellaneous provisions .............................. 350

## P.

PACIFIC COUNTY—

district court established in............................. 365
authorized to appropriate money to build bridges and public
highways.......... ............................... 385
appropriate $500 to aid in building road................. 381

PIERCE COUNTY—

act to provide for the appointment of assessor and defining
his duties, in......................................... 403

PORT TOWNSEND—

acts in relation to incorporation of, repealed................. 423

## Q.

QUAILS—

an act for the protection of, in the counties of Walla Walla
Columbia and Whitman.............................. 416

## R.

RAIL ROAD—

an act to aid in the construction of, from Seattle, in King
county, to Colfax, in Whitman county .................. 418

ROADS, HIGHWAYS AND BRIDGES—

in Jefferson county, an act in relation to.................... 370
an act to locate, from Willapa river to Chehalis Station, and
to appropriate money to aid in its construction............ 381
an act for the building and repair of, in Lewis county........ 382
certain money to be recovered and applied to the construction
of, across the Cascade mountains....................... 384
in Klickitat county, an act in relation to.................... 384
Pacific and Chehalis counties to appropriate money for....... 385
districts in San Juan county.............................. 386
certain, declared territorial.............................. 389
Sammamish slough declared a public....................... 405
an act to regulate revenue for, in Columbia and Walla Walla
counties.............................................. 415
tax, delinquent in Yakima county......................... 336
an act to create a territorial, from Dayton to Palouse City..... 387

## S.

SAN JUAN COUNTY—

islands created road districts in.......................... 387
actions of commissioners of, declared valid................. 387

544                          INDEX.

**SAN JUAN COUNTY—(Continued.)**                          • P ge.   Sec.

    road tax in, set apart for school fund...................................    390
    an act to regulate the running at large of sheep in............    401
    districts for election of commissioners in.....................    417

**SAMAMISH SLOUGH—**

    an act declaring a public highway...........................    405

**SEATTLE—**

    city charter amended......................................    351
    powers of.........................................351 to 354
    officers of...............................................    354
    qualifications of voters in.................................    355
    tenure of office in.....................................    355–6
    an act to aid in the construction of a railroad from...........    418

**SNOHOMISH COUNTY—**

    an act in relation to hogs in...............................    407
    boundary of defined......................................    425

**STEILACOOM—**

    an act in relation to licenses in the city of........ ..........    424
    an act to enable, to borrow money.........................    318

**STEVENS COUNTY—**

    an act conferring jurisdiction upon district court of..........    378
    an act to authorize the commissioners of, to levy a special tax
        for bridge purposes.....................................    399
    an act to encourage the planting and growing of trees in......    411
    act in relation to quartz mining claims repealed so far as appli-
        cable to...............................................    336

## T.

**TACOMA—**

    an act in relation to licenses in the city of...................    424

**THURSTON COUNTY—**

    an act in relation to the election of commissioners in.........    428

**TERRITORIAL TREASURER—**

    authorized to refund certain moneys........................    400

**TIMBER—**

    an act to encourage the planting and growing of, in the counties
       of Stevens and Whitman.................................    411

**TUMWATER—**

    an act disincorporate the town of........... ...............    361

## V.

**VANCOUVER—**

    boundaries of the city of, defined..........................    362

## W.

**WALLA WALLA—**

    act to incorporate, amended...............................    357
    powers of mayor and common council.......................    357
    licenses in, to whom granted..............................    358
    other provisions..........................................    369
    an act changing the time of holding court, in................    370
    an act to regulate the raising of revenue for road purposes, in.    415

## INDEX.

545

WHATCOM COUNTY—                                                      *Page  Sec.*

    an act to create and confer jurisdiction on the district court of.    367

WHITMAN COUNTY—

    an act to create a territorial road to Palouse city, in...........    387
    lawful fences in, defined ..................................    410
    planting of timber in, encouraged.........................    411

### Y.

YAKIMA COUNTY—

    delinquent taxes in........................................    386
    lawful fences in, defined..................................    410
    an act in relation to election of commissioners, in...........    428

# ACTS

OF THE

# LEGISLATIVE ASSEMBLY

OF THE

# TERRITORY OF WASHINGTON:

PASSED AT THE SIXTH REGULAR SESSION,

BEGUN AND HELD AT OLYMPIA;

December 6th, A. D. 1858.

———————

OLYMPIA:

EDWARD FURSTE, PUBLIC PRINTER.

1859.

# LAWS

OF

# WASHINGTON TERRITORY:

## 1858-9.

## AN ACT

TO AMEND AN ACT ENTITLED " AN ACT ASSIGNING THE JUDGES OF THE
DISTRICT COURT TO THEIR RESPECTIVE DISTRICTS."

SEC. 1.  Judges assigned to the respective Districts.
2.  When either Judge may hold Court in any District.
3.  Repealing clause.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That Hon. E. C. Fitzhugh be, and hereby is, assigned to the Third District, and to reside therein; that Hon. O. B. McFadden be, and hereby is, assigned to the Second District, and to reside therein; that Hon. Wm. Strong be, and hereby is, assigned to the First District, and to reside therein.

4

SEC. 2.    Either of said District Judges may hold Court in any District, other than that for which he was assigned, in case of the absence, sickness, or disability of any one of the Judges to hold the regular term.

SEC. 3.    That all acts conflicting with this act be, and the same are hereby repealed.

Passed December 23, 1858.

# AN ACT

### RELATIVE TO INSTRUCTIONS BY THE COURT IN THE TRIAL OF CIVIL ACTIONS.

SEC. 1.  Twelfth section of Act of January 27th, 1857, repealed.
2.  Proceedings in the trial of civil causes, after the completion of the evidence; charge to the Jury, when; exceptions, when and how to be taken.
3.  Charge may be requested in writing.
4.  Repealing clause.

SEC. 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the twelfth section of the act passed January 27, 1857, entitled an act "to amend an act" entitled an act to regulate practice and proceedings in civil actions, be, and the same is hereby repealed.

SEC. 2.    When the evidence is completed, the plaintiff or party having the burden of proof, may, by himself or counsel, address the Court and Jury upon the law and facts of the case; after which the other party may address the Court and Jury in like manner, and be followed by the party first addressing the Court, by himself or one counsel.  The Court shall then proceed to charge the jury upon the law in the case, to which charge, or any part thereof, either party shall have the right to except—but no exception shall be regarded by the Supreme Court, unless the same shall specify the particular parts excepted to.

SEC. 3.    Either party shall have the privilege of requesting said charge to be made in writing, and may also ask the Court to give instructions, and if the Court refuse to give such instructions, the party asking the same may except.

SEC. 4.    Any acts or parts of acts conflicting with the foregoing sections be, and the same are hereby repealed.

Passed January 18th, 1859.

5

# AN ACT

## TO REPEAL AN ACT CONFERRING CIVIL AND CRIMINAL JURISDICTION ON JUDGES OF PROBATE.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the acts conferring criminal and civil jurisdiction on Judges of the Probate Court, be and the same are hereby repealed.

Passed January 28th, 1859.

---

# AN ACT

## RELATIVE TO MINORS AND PERSONS OF UNSOUND MIND RESIDING WITHOUT THE LIMITS OF THIS TERRITORY.

SEC. 1. When real estate of minors or persons of unsound mind, residing out of the Territory, may be sold.

2. When the Probate Court may appoint a Trustee for the property of such persons.

3. Extent of the appointment of such Trustee.

4. Trustee to give bond—Powers and duties of.

5. When and to whom said Trustee to deliver up said property.

6. Trustee to have no power to apply to the Probate Court for the sale of such real estate.

7. Term of office, and compensation of Trustee.

8. Moneys due such minor, &c.—To whom to be paid.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That real estate belonging to minors and persons of unsound mind, residing out of this territory, may be sold upon the application of the foreign guardian of such minor or person of unsound mind to the Probate Court of the county in which such land is situated, upon the terms as are or may be provided by law in case of the sale of real estate belonging to minors residing in this territory.

SEC. 2. That when any minor or person of unsound mind residing out of the limits of this territory, has any real estate, goods, chattels, rights, credits, money or effects, in this territory, the Probate Court having jurisdiction of the county in which such property or any part thereof is situate, or may be, shall, upon the application of the foreign guardian of such minor or person of unsound mind, appoint a Trustee of such minor or person of unsound mind to manage, collect, lease, and take care of said property.

6

SEC. 3.  The appointment of a Trustee first lawfully made, shall extend to all the property and effects of the minor in this territory, and shall exclude the jurisdiction of the Probate Court of any other county.

SEC. 4.  The said Trustee shall give bond with surety, to the satisfaction of the Probate Court, and shall take upon himself the management of the estate and property of such minors or persons of unsound mind situate in this territory, and the collection of debts and other demands due such minor or person of unsound mind from persons residing or being in this territory, and shall settle with the court, and be liable to suit or removal, or both, for neglect or misconduct in the performance of his duties, in like manner as is or may by law be provided in the case of guardians of minors.

SEC. 5.  The said Trustee shall, under the order of the Probate Court, deliver up to the foreign guardian of such minor or person of unsound mind, all the personal property, rights and credits belonging to such minor or person of unsound mind; Provided, that the Probate Court shall make no such order except upon application of the foreign guardian; they may be satisfied that such order is just and proper.

SEC. 6.  The said Trustee shall have no power to apply to the Probate Court for the sale of the real estate of such minor or person of unsound mind.

SEC. 7.  The said Trustee, unless removed by the court, holds his appointment so long as the services of a Trustee may be required, and shall receive such compensation for his services as may be stipulated between him and the foreign guardian; and in case no agreement has been made, then such compensation as is or may be by law provided for guardians.

SEC. 8.  All moneys due such minor or person of unsound mind, in the hands of such Trustee, shall be paid over to the foreign guardian so long as he shall remain such guardian; or in case of the decease of such minor or person of unsound mind, then to the Administrator or other legal representative of such minor or person of unsound mind.

Passed January 21st, 1859.

7

# AN ACT

TO CONSTRUE AN ACT ENTITLED "AN ACT TO AMEND AN ACT ENTITLED 'AN ACT RESPECTING EXECUTORS, ADMINISTRATORS, AND THE DISTRIBUTION OF REAL AND PERSONAL ESTATE.' "

Sec. 1. Property of Intestate, leaving no kindred, to belong to the county in which it is situated.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That sections five and six of the act to which this is an amendment shall be so construed, that all property of intestates who left no kindred, which had not at the time of the passage of said act been formally delivered up to the Territory according to law, shall belong to the county in which the estate is situated.

Passed January 11, 1859.

---

# AN ACT

IN RELATION TO THE CONSTRUCTION OF ROADS AND HIGHWAYS, AND DEFINING THE DUTIES OF SUPERVISORS OF HIGHWAYS.

Sec. 1.   County Commissioners to exercise jurisdiction over county roads.
    2.   At regular term of county court, roads may be established, altered, or vacated.
    3.   Provisions for establishment, alteration or vacation of county roads—Notice and petition; requisites of.
    4.   County Auditor to keep road book—Roads to be entered and recorded before declared—Road book to be a public record.
    5.   What road book shall contain.
    6.   Claim for damages for opening and altering roads, &c.—When complaint against Commissioner shall be dismissed.
    7.   Width of county roads.
    8.   When Supervisor may expend labor on territorial road.
    9.   Petitioners for roads liable for work thereupon.
    10.   Roads located shall be marked, but not surveyed.   Exception.
    11.   When and how road may be turned by owner of land over which it passes. Costs of such alteration to be paid by petitioners.
    12.   Manner of locating private roads.
    13.   Report of viewers of private roads—Damages of parties aggrieved, and appeal.
    14.   Assessment of damages caused by location of territorial roads—Damages to be paid by county where road lies.
    15.   Territorial road declared public highway, and how and by whom repaired.
    16.   Duties of Road Supervisors—Election of, qualification, and term of office—Special elections, when and how to be held.

8

Sec. 17   Penalty for Supervisor failing or refusing to act—No Supervisor compelled to act two successive years.

18.   County Auditors may appoint Supervisors to fill vacancies.

19.   County Commissioners at May term, to fix road districts—Road districts to be recorded.

20.   Supervisors to make lists of parties liable for road tax and labor—Requisites of list, and when to be made.

21.   County Commissioners to levy and assess road tax at May session—Amount of tax.

22.   Who shall be liable for road tax—Supervisor failing to notify, does not exempt party from road tax.

23.   Person liable may employ substitute.

24.   Person notified, proving delinquent, &c., penalty.

25.   Road tax, how to be collected on neglect or failure to pay the same.

26.   Supervisor to open and keep in repair, all roads laid out according to law—Authority to purchase, to enter lands, &c., and to commute tax.

27.   May enter upon adjacent land, and make ditches—Penalty for obstruction of ditches.

28.   Damages for Supervisor carrying away materials, &c.

29.   Obstruction of roads and bridges by falling timber—Supervisor to cause removal of—Person causing, liable for expense.

30.   Person performing more labor than due, credited next year.

31.   Accounts to be kept by Supervisor, and mode of settlement.

32.   Supervisor to give certificate of labor performed, or taxes paid—Requisites of certificate.

33.   Shall keep an account of all certificates issued, to whom, and the amount—To furnish abstract of same to County Treasurer—Certificates to be credited on tax roll.

34.   Supervisor neglecting duty, or giving false certificate—penalty.

35.   Omission or neglect to place persons on list—How corrected and supplied.

36.   Guide or finger-board, to be placed at crossing of roads.

37.   Compensation of Supervisors.

38.   County Auditor not to add any per cent to unpaid road tax—Sheriff, Auditor and Treasurer, not allowed fees out of road fund.   Proviso.

39.   Commissioners may cancel tax improperly assessed.

40.   Road fund to be paid over to County Treasurer; and subject to order of County Commissioners—When payable into the county fund.

41.   County Commissioners, at May session, to apportion road fund.

42.   Form of certificate of Road Supervisors.

43.   Repealing clause.

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the Board of County Commissioners of each county shall have the sole and conclusive jurisdiction over county roads within their respective counties, subject to such appeals to the Probate Court, and such rules and regulations as may be prescribed by law.

SEC. 2.   At any regular meeting, said board may establish, alter or vacate any county roads, and cause the same to be laid out, worked or surveyed, and worked and opened, as they shall deem most for the public interest.

9

SEC. 3.    They shall not establish, alter, or vacate any road, unless they shall be satisfied that at least twenty days public notice has been given of an intention to apply to said board for such alteration, or to vacate said road, without notice of the time when the application will be made, by posting at least three written or printed notices in three of the most public places in the county, one of which shall be at the county seat, and two in the two most public places in the vicinity of the road proposed to be altered or vacated; and at least a majority of the citizens in the district through which said road is located shall be in favor of such alteration.

SEC. 4.    The Board of County Commissioners shall cause their clerk to enter in a well bound book their action upon all roads which they shall establish, alter, or vacate, which book shall be called the "Road Book" of the county; in which book all the records concerning the roads at present established in the county, shall be entered; and no county road hereafter altered or established shall be opened until the same shall be fully recorded in said book.    Said road book shall be a public record, and be kept in the office of the clerk of the Board of County Commissioners, and shall be open to the inspection of the public.

SEC. 5.    Said road book shall contain the petition, if any, the report of the viewers, a description of the road, with a copy of the survey, if any has been made, and a copy of all claims for damages on the part of any person claiming to have been affected by the location, vacating, or altering of said road, together with all orders and proceedings of the board touching the same.

SEC. 6.    Any person claiming to have been injured by the action of the Board of County Commissioners, upon any county road, may, within six months after the action complained of, file his complaint against the Board of County Commissioners, in the District Court having jurisdiction over the county, setting forth a full copy of the record, and specifying in what respect he has been injured, of which complaint similar notices shall be given, and the same shall be verified, tried, and determined as is provided in civil actions: *Provided,* that if it shall appear that the party complaining had actual notice of the intended action of the board upon such road, in time to have appeared and presented his claim to said board, and did not so appear, and present his claim, or having appeared, took no exception to the action of the board; or having been tendered a reasonable amount of damages, refused to accept the same, or has acted in any other respect, contrary to good faith, then his complaint shall be dismissed.

I-2

10

SEC. 7.    County roads shall be sixty feet in width, unless the County Commissioners shall, upon the prayer of the petitioners for the same, determine on a less number of feet in point of width.

SEC. 8.    In any road district embracing a territorial road within the district, the supervisor of roads may, if the public benefit require it, expend a part of the labor due in his district on said territorial road or roads beyond the bounds of the county or district in which he is appointed; provided, that such portion of a territorial road so worked shall not be included in a road district of the adjoining county, or is so situated that there will not be sufficient labor in the adjoining road district to do the necessary work on said territorial road.

SEC. 9.    Any person signing a petition to the County Commissioners of any county, asking to open any new road, or to make any alteration in any established road requiring labor thereon, shall be required to perform or furnish two days labor on such road, or alteration, if the petition be granted.

SEC. 10.    Every territorial and county road hereafter to be located, shall be viewed and plainly worked throughout, but shall not be surveyed except the act locating such road shall expressly require it.

SEC. 11.    If any person or persons, through whose land any public highway is or may be established, shall be desirous of turning such road through any other part of his or their lands, such person or persons may, by petition, apply to the commissioners of the proper county to permit him or them to turn such road through any other part of his or their land, on good ground, and without materially increasing the distance to the injury of the public; and on the receipt of such petition, accompanied by a sufficient bond to pay the costs and expenses to be incurred thereby, the commissioners shall appoint three disinterested householders as viewers, and a surveyor, who, or a majority of such viewers, shall proceed to view the gound over which the road is proposed to be turned, and ascertain the distance such road will be increased by the proposed alteration, and make out a report in writing, stating the several distances so found, together with their opinion as to the utility of making such alteration; and if the viewers, or a majority of them, shall report to the commissioners that the prayer of the petitioner or petitioners is reasonable, and that the proposed alteration will not place the road on worse ground, or materially increase the distance to the injury of the public, they shall order the same to be so altered; and upon receiving satisfactory evidence that the proposed new road has been opened a legal width, and in all respects made equal to the old road for the convenience of travelers, the commissioners may declare such new road a public highway, and make record thereof.

11

and at the same time vacate so much of the old road as is embraced in the new, and the person or persons petitioning for the alteration, shall pay all costs and expenses of the view, survey, and return of such alteration.

## OF LOCATING PRIVATE WAYS.

SEC. 12.    Any person whose land shall be so situated that it has no connection with any public road, may make application in writing to the board of commissioners of his county, at a regular session, for a private road leading from his premises to some convenient public road, and there-upon the said commissioners shall appoint three disinterested householders of the county as viewers, and shall issue an order directing them to meet on a day named in such order, to view and locate a private road accord-ing to the application, and to assess the damages to be sustained thereby; and after being duly sworn faithfully and impartially to discharge the duties of their appointment, and after at least three days notice given to all persons through whose land such private road is to be located, such viewers shall proceed to locate and mark out thirty feet in width from some certain point on the premises of the applicant, to some certain point on the public road, or navigable waters, so as to do the least damage to the land through which said private road is located; and they shall also at the same time assess the damages sustained by the person or persons owning such land.

SEC. 13.    The viewers so appointed, or a majority of them, shall make a report to the Commissioners at their next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages ; and if the commissioners are satisfied that such report is just, and after payment by the applicant of all costs of locating such road, and the dam-ages assessed by the viewers, they shall order such report to be confirmed, and declare such road to be a private road, and the same shall be recorded as such; and any person aggrieved by the assessment of damages may appeal, within twenty days after such confirmation of the report, to the Probate Court, and such appeal shall be tried as appeals from the assess-ment of damages in cases of county roads.

## OF THE MANNER OF ASSESSING DAMAGES ON TERRITORIAL ROADS.

SEC. 14.    When any person, through whose land any territorial road may be located, shall conceive that he would be injured by the opening of the same through his premises, he may, within six months after the filing of the report and plot of survey of such road, in the office of the clerk of the board of commissioners of such county, make complaint in writing to

12

such commissioners, setting forth such damage, and thereupon the same proceedings shall be had to assess and determine the damages sustained by such complainant as in case of county roads, and such damages shall be paid out of the treasury of the county in which the lands are situated.

SEC. 15.   When any territorial road shall have been located according to the provisions of this act, the same shall be and remain a public highway, and shall be opened and worked by the counties through which it may be laid out, as county roads are; and such road may be altered or changed in any county in the same manner as county roads are altered.

#### OF THE DUTIES OF SUPERVISORS AND COMMISSIONERS.

SEC. 16.   That the supervisor of each road district in this territory, shall, at least ten days before the first Monday in April of each year, cause three written notices to be posted up in three conspicuous places in his road district, giving notice that there will be an election held in such district on the first Monday in April, at two o'clock in the afternoon, at some convenient place in said district, to be specified in said notice, for the purpose of electing a road supervisor for said district for the next succeeding year; at which election the old supervisor shall act as chairman of the meeting, if present; if not, a chairman shall be elected by the voters present; the meeting shall also elect a secretary who shall record the proceedings of the meeting, and all persons in the district who are required to labor on the roads, or who have road taxes to pay, may vote at such election, and the person having the highest number of votes shall be considered duly elected supervisor for that year, and shall act as such until his successor is elected, or appointed, and duly qualified:   *Provided*, however, from any cause there be no election on the first Monday, the supervisor, or any tax payer of the district may call a special election, by giving notice as provided in this section, which election is to be held within one month from the first Monday in April.   And it shall be the duty of the chairman and secretary of such meeting called to elect a supervisor, to notify the county auditor, in writing, by or before the regular meeting of the board of commissioners of the county, that the district has elected a supervisor, and give his full name, and said supervisor shall qualify within ten days after his election or appointment.

SEC. 17.   Any person having been elected or appointed supervisor, and failing to act as such shall forfeit and pay the sum of ten dollars, and the county auditor shall collect the same and pay over to the county treasurer, or return such delinquent to the county commissioners, who shall assess the amount against such person on the tax list, to be collected as other road taxes:   *Provided*, No person shall be bound to act in the capacity of supervisor two successive years.

13

SEC. 18. That if any vacancy shall happen in the office of supervisor by death, removal from the district, or disability in the supervisor to act, or when there has been no election of supervisor, the county auditor, on being notified of such vacancy, in writing, shall appoint some suitable person who is liable to perform labor on the roads in said district, and cause him to be notified in writing, whose duty it shall be to attend before some person authorized to administer oaths, within five days from such appointment, and take the oath and enter upon the duties of his office; and he shall remain in office until a successor is elected and qualified.

SEC. 19. The county commissioners shall, as often as they may deem necessary, but not oftener than once a year (at their May term,) divide their respective counties, or any parts thereof, into suitable and convenient road districts, and cause a brief description of the same to be entered on the county record.

SEC. 20. It shall be the duty of every supervisor, on or before the fifteenth day of April of each year, to obtain a correct list of the names, and make out in alphabetical order, a list of all persons liable to perform labor on the public roads, or that are liable to pay a property tax, designating those over fifty years of age, and those who are too infirm to labor on the roads, and to forward such list to the county auditor prior to the regular session of the board of county commissioners in May.

SEC. 21. It shall be the duty of the board of county commissioners of the several counties in this territory, at their May session, to levy and assess a road tax of nine dollars on every person liable to perform labor on the public roads, and also to assess twenty-five cents road tax on every one hundred dollars of the valuation as returned by the county assessor, which tax shall be collected with the county and territorial tax, and in the manner hereafter described, which shall constitute a road fund, and the county auditor shall, immediately after the May session, furnish each supervisor of road districts with an abstract or duplicate of the taxes so assessed for road purposes in his road district.

SEC. 22. Every white male inhabitant between the age of twenty-one and fifty years of age, except persons who are a public charge or who are too infirm to perform labor, shall be liable in each and every year to do and perform three day's labor on the public roads, or pay a road tax as provided in this act; the supervisor of every road district shall give every person within his road district, liable to perform labor on the roads, or who are liable to pay a road tax, at least three days notice of the time and place to appear, which notice may be in writing or otherwise, and by the supervisor in person or by his direction; the supervisor shall also notify every person within his road district the amount of road tax assessed

14

against such person, and such notice shall be given between the twentieth day of May and the first day of July, annually: *Provided*, that if from any cause the supervisor shall fail or neglect to give notice as required by this section, it shall be lawful to notify such person or persons as soon as the neglect is discovered.

SEC. 23.   Whenever it shall happen, in consequence of sickness, absence from home, or any other good cause, the person liable to perform work or to pay a road tax, does not attend in obedience to the notice of the supervisor at the time and place appointed, such person may tender his services, by himself or a sufficient substitute, to perform the labor required to pay the tax assessed; and in such case the supervisor shall employ such person or his substitute, at another time.

SEC. 24.   Every person notified to labor on the public roads under the provisions of this act, or who are not exempt by the provisions of this act, who does not produce the certificate of the supervisor of some other road district, showing that such person has worked out his road tax for that year in this territory, shall be required to appear at the place appointed by the supervisor, at the hour of eight o'clock in the forenoon, with such necessary tools and implements as said supervisor may direct; and on failure of such person to appear at the time and place as aforesaid, and no good cause being shown for such delinquency, or having attended, shall refuse to obey the directions of the supervisor, or shall pass his time in idleness and inattention to the duties assigned him, every such delinquent shall forfeit and pay for each day he shall neglect or refuse to attend, or for any of the offences above specified in this section, the sum of three dollars, to be recovered in a civil action at the suit of the supervisor before any Justice of the Peace having competent jurisdiction; or if the aggregate amount of such be over one hundred dollars, by action in the probate court; and all money so collected shall be appropriated in their respective districts where such labor properly belongs.

SEC. 25.   And if through neglect or otherwise, any person fails to pay their road tax as provided in this act, it shall be the duty of the tax collector to collect all such delinquent tax as is required by law, and pay the same over to the supervisor of the district to which it belongs.

SEC. 26.   The Supervisor shall open, or cause to be opened, all public roads which may have been or may hereafter be laid out and established according to law, in any part of his road district, and shall keep the same in good repair; and he shall have authority to purchase, with any money which may come into his hands as supervisor, for the use of his district, scrapers, or other implements which he may think proper, and to enter upon any land adjoining or near the public road, and dig and carry

15

away any stone, gravel or sand, and cut down and carry off any trees or wood necessary for the making and repairing any public road, and to pur-chase and pay for any timber or plank, or other materials necessary for making or repairing any public road in his district; and the supervisor has the authority to commute any labor due on his tax duplicate, for materials or tools necessary for his use on the public road, to the amount of tax against any individual, and shall give such person a certificate showing the transaction, and such certificate shall be received for taxes.

SEC. 27. And the supervisor shall have the right to enter upon any lands near or adjoining any public road in his district, and to cut, open, or dig any drains or ditches as he shall deem necessary, for the making or preservation of such road—doing as little injury as may be, to such lands. And any person stopping or obstructing said drains or ditches so made, shall forfeit and pay the sum of twenty dollars for each offence, to be re-covered by the supervisor of the district before any justice having jurisdic-tion, for the use of the district.

SEC. 28. If any person shall feel aggrieved by the acts of a super-visor cutting or carrying away timber or stone, as aforesaid, he may make complaint in writing to the county commissioners, at any regular session, within six months after the cause of such complaint shall exist, and such commissioners shall proceed to determine and assess the damages, which may be paid out of any funds in the treasury accruing out of penalty [penalties] for a violation of any provisions of this act.

SEC. 29. If at any time during the year, any public road shall be-come obstructed by the falling of timber, or from any other cause, or any bridge shall be impaired, or become dangerous, for the passage of teams or travelers, the supervisor of the road district, upon being notified there-of, shall forthwith cause such obstructions to be removed or bridges re-paired, for which purpose he shall immediately order out such number of the inhabitants of his district as he may deem necessary to remove such obstructions, or repair such bridge: *Provided*, that if such obstruction, or damages to any road or bridge be caused by any person or persons, clearing land adjacent to said road or bridge, that they shall be liable for the expense of removing such obstruction, and repairing said road or bridge, and the road supervisor shall authorize said person or persons to remove said obstruction, or repair said bridge, or said supervisor shall pro-ceed to have it done at the proper cost of said person or persons, and the costs of said work shall be recoverable before a justice of the peace, or any court having competent jurisdiction, by civil action in the name of said supervisor; and all persons so ordered out, shall, after having received

16

one day's notice, be subject to the same restrictions and liable to the same penalties as if ordered out under the twenty-fourth section of this act.

Sec. 30.  In all cases, where any person shall, under the direction of the supervisor of roads, perform more labor upon the public roads than may be due from him, the supervisor shall give such person a certificate specifying the amount of extra labor so performed, and which may be received from the holder in satisfaction of labor on the roads in such road district, in any subsequent year, for the amount of labor specified therein.

Sec. 31.  Every supervisor shall keep an account of the number of days' work performed on the public roads in his road district, and of the persons performing the same; he shall also keep an account of all moneys received by him from the county commissioners and tax-collector; and, also, an account of his expenditures as supervisor during his term of office; and such supervisor shall present his account to the board of commissioners for settlement at their May session in each year, and shall pay over to his successor in office all moneys remaining in his hands as such supervisor, taking his receipt therefor.  And if any supervisor shall fail to appear and make a settlement as required by this section, the board of county commissioners may, by an action in any court having competent jurisdiction, against such supervisor, and force such settlement, and recover any balance remaining in his hands.

Sec. 32.  The supervisor shall give every person, who labors on the public roads, under his direction, a certificate, certifying to the amount of labor performed by such person, at the rate of three dollars per day, for every day's work; which certificate shall state the precise amount of labor such person has performed, and such certificate shall be received by the tax collector at par value, to the full amount of road tax charged against such person; but such certificates shall not be assignable, nor shall they be received from any person for a greater amount in any one year, than sufficient to cancel or discharge the road tax or taxes against such person.

Sec. 33.  Every supervisor shall keep a correct account of all certificates issued by him to persons in discharge of their road tax, to whom issued, and the respective amount thereof, and shall furnish an abstract thereof to the county treasurer, on or before the first day of November of each and every year.  And the county treasurer shall note the same on the assessment roll or tax duplicate in proper manner and place, and give proper credit to each and every party in whose favor such certificates are issued; and such noting as aforesaid, shall be evidence in discharge of the road tax specified in such certificates.

Sec. 34.  If any supervisor of roads shall neglect or refuse to perform any of the duties enjoined on him by this act, or shall, under any

17

pretence whatever, give or sign any certificate purporting to be a certificate of labor performed, unless such labor has actually been so performed, prior to the giving or signing such certificate, shall forfeit and pay for every such offence, not less than twenty, nor over one hundred dollars, for the use and benefit of roads in the county, to be recovered before any justice having jurisdiction.

Sec. 35. Whenever the supervisor of any district shall, from any cause, have neglected or omitted to place on his list any person within his district, or when it shall happen, from any cause, that a name or names are omitted or left off the list, which of right should be on such list, in such case, it is made the duty of such supervisor to place such person or persons upon such list at any time within his term of office, and assess the amount which the commissioners would have had the right to have assessed, which assessment shall in all respects be as valid as if made in due time, and furnished to such supervisor by the board of county commissioners, and the supervisor shall receive such labor and give certificates as in other cases.

Sec. 36. Every supervisor shall erect and keep at the forks of every highway, and every crossing of public roads within his road district, a guide or finger board, containing an inscription, in legible letters, directing the way and specifying the distance to the next town or public place situated on such road respectively; and the county commissioners shall allow the supervisor the amount expended by him for such purpose, out of any moneys belonging to the road fund, as they may deem proper.

Sec. 37. The county commissioners shall allow the supervisors of highways what may seem to them reasonable and just, for all extra labor performed by them, not exceeding three dollars per day.

Sec. 38. The county auditor, when he receives any tax roll from the county treasurer, shall not add any per cent. to the unpaid road tax; and the county treasurer, county auditor, and sheriff, shall not be allowed any fees out of the fund; *Provided, however,* the sheriff levies upon and sells property in the collection of the road tax, he may charge and collect of such person the same as in other cases.

Sec. 39. The commissioners shall have power to cancel or strike from the tax roll any road tax which they believe to have been improperly assessed, and they shall exonerate the sheriff or supervisor having the collection of any road tax which, in their opinion, cannot be collected.

Sec. 40. The sheriff or collector of taxes, shall pay over all moneys which he has collected, belonging to the road fund, to the county treasurer, and such treasurer shall hold such road money subject to the orders of the county commissioners; and that portion of the road tax which may

18

stand charged and unpaid against lands, on the first day of January, shall be transferred to the county, and go into the county fund.

SEC. 41.   The county commissioners shall, at their May session, apportion to the several road districts their amount of road money which may have been collected in such district by the treasurer, sheriff or other officer, and the supervisors shall receive the same and lay out such money in the improvement of roads in his district.

SEC. 42.   The following form of certificate shall be observed by supervisors of road districts, as far as the same may be applicable:

I hereby certify that   (A. B.)   has performed labor on the public highways in                county, Washington Territory, under my direction, to the amount of        dollars, and        cents, in discharge of (or say in part payment), his road tax for the year 18  .

Dated at        , the                  }        D.    C.
day of        , 18  .                  }        Sup. Road Dist. No.

SEC. 43.   All acts heretofore passed and amendments to acts relating to county roads and the construction and maintaining of roads, be and the same are hereby repealed.

Passed January 15th, 1859.

# AN ACT

## TO AMEND AN ACT ENTITED " AN ACT TO PROVIDE FOR THE ASSESSING AND COLLECTING OF COUNTY AND TERRITORIAL REVENUE."

SEC. 1.   Section six, amended by inserting the word " April," instead of " May."

2.   Sections nine, ten, thirteen amended by inseting the word " May," instead of " June."

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section six of the act to which this is an amendment, be amended by inserting the word " April," instead of the word " May," where it occurs in said section.

SEC. 2.   That sections nine, ten and thirteen of said act be amended by inserting the word " May," instead of the word " June," wherever it occurs in said sections.

Passed January 17th, 1859.

19

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT TO PROVIDE FOR THE ASSESS-
ING AND COLLECTING COUNTY AND TERRITORIAL REVENUE."

SEC. 1. County orders received in payment of county taxes.
   Credit to be given on the back of said order, where it amounts to more than
      the taxes due.
   Correct account of all credits so given to be kept, to be presented to the
      county commissioners.
2. Repealing clause.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of
Washington,* That the fourteenth section of the act to which this is an
amendment, be so amended that the second sentence therein shall read as
follows : " County orders shall be received in payment of county taxes
and the treasurer, or sheriff, or tax collector be, and he is, hereby author-
ized to give credit upon the back of a county order which amounts to
more than the sum of taxes due from the person paying the same, for the
amount of his taxes, which amount shall be deducted from the original
county order thereafter ; and the said treasurer, sheriff or tax collector
shall keep a correct account of all credits made pursuant to the provi-
sions of this act, and present the same to the county commissioners in his
annual statement with them.

SEC. 2. All acts and parts of acts in conflict with the foregoing pro-
visions are hereby repealed.

Passsed January 22d, 1859.

# AN ACT

TO AMEND AN ACT TO PROVIDE FOR THE ASSESSING AND COLLECTING
COUNTY AND TERRITORIAL REVENUE.

SEC. 1. Sections fifteen and seventeen amended by inserting the word " February,"
   instead of " January."
2. Repealing clause.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of
Washington,* That sections fifteen and seventeen of the act to which this
is an amendment, be amended by inserting the word "February," instead
of the word "January," wherever it occurs in said section.

20

SEC. 2.   All acts or parts of acts conflicting with the provisions of this act are hereby repealed.

Passed January 28th, 1859.

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT TO PROVIDE FOR THE ASSESS-
ING AND COLLECTING OF COUNTY AND TERRITORIAL REVENUE."

SEC. 1.   One quarter of a mill tax to be levied for territorial purposes.
    2.   Certain church property subject to taxation.
    3.   Repealing clause.

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section first of the act to which this is an amendment, be so amended that it shall read :   There shall also be levied a tax of one quarter of a mill upon every dollar's worth of real and personal property in this Territory for territorial purposes.

SEC. 2.   That all church property over and above two town lots, on which a church may be erected, if in a town, and one half acre of land, on which a church may be erected, if in the country, shall be taxed as other property.

SEC. 3.   All acts and parts of acts conflicting with this act be and the same are hereby repealed.

Passed February 1st, 1859.

# AN ACT

TO AMEND AN ACT ANTITLED "AN ACT RELATING TO COUNTY AS-
SESSORS."

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That section three of the act to which this is an amend-

21

ment, be amended by inserting the word "April," instead of the word "May," wherever it occurs in said section.

Passed January 17th, 1859.

---

# AN ACT

## TO CHANGE THE TIME FOR HOLDING THE SESSIONS OF THE COUNTY COMMISSIONERS' COURTS.

Sec. 1.  County commissioners to hold but two regular sessions—first Monday of May and November
   2.  Business to be transacted at the May term, at the November term.
   3.  Repealing clause.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the board of commissioners in the several counties in this Territory shall hold but two regular sessions annually, at the seat of justice of their respective counties, commencing on the first Mondays of May and November, at each of which they shall transact any business which may be required by law.

Sec. 2.  All the business heretofore required to be transacted at the March and June sessions of said commissioners, shall be done and transacted at their May term ; and all business heretofore required to be transacted at the September and December sessions of said commissioners, shall be done and transacted at their November term.

Sec. 3.  All acts and parts of acts in conflict with the provisions of this act are hereby repealed.

Passed January 17th, 1859.

---

# AN ACT

## AUTHORIZING COUNTY AUDITORS TO TAKE ACKNOWLEDGMENTS.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That county auditors are hereby authorized to take acknowledgments of deeds and other instruments of writing.

Passed January 25th, 1859.

# AN ACT

### FOR THE RELIEF OF COUNTIES NOW IN DEBT.

Sec. 1. County commissioners may submit a proposition at the next general election to levy a tax.
2. Revenue so raised to be applied to outstanding orders, in regular order. Proviso.
3. Act not to apply to any county which has created debt since January 1858. Express object of this act.

Sec. I. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the county commissioners of any county in this territory, which is now in debt, may if they deem it proper, at their May session in the year 1859, submit a proposition to the legal voters of such county at the next general election to levy a tax for county purposes, not to exceed double the amount heretofore levied for the said year 1859.

Sec. 2. In any county where the revenue thereof is increased pursuant to the provisions of the foregoing section, the whole amount, or so much as may be necessary, shall be appropriated to the payment of all outstanding orders of said county in the regular order in which they issued : *Provided,* That whenever the total amount of the tax paid in pursuance of this act shall equal or exceed the indebtedness of the county, said orders may be paid as they are presented.

Sec. 3. This act shall not be so construed as to apply to any county which has created a debt or debts since January, eighteen hundred and fifty-eight ; and it is the express object of this act not ro authorize any increased tax in any county where the indebtedness thereof does not operate detrimental to the interest of the county, by depreciating the value of its " county orders," or otherwise.

Passed February 3d, 1859.

# AN ACT

### TO PREVENT STUD–HORSES, JACKASSES, RIDGLINGS, FROM RUNNING AT LARGE.

Sec. 1. Stud-horse, &c., over eighteen months old not to be allowed to run at large.
2. Penalty for the same, and how collected.
3. Person finding such animal to notify owner. Penalty for neglect or refusal to take care of such animal.
4. Proceedings when the owner is not known.

SEC. 5. Resident of the territory only allowed to take up said animals.

6. Owner of such animals responsible for any damage that may be done by them.

7. Moneys accruing under this act to be applied to common school purposes.

8. Repealing clause. Act not to apply to county east of the Cascades, or to Wah-kia-kum.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall not be lawful for any person owning or keeping any stud-horse, jackass, or ridgling, to suffer the same to run at large after they are eighteen months old, within the limits of any of the white settlements within this territory.

SEC. 2. Any person or persons keeping any of the animals mentioned in the first section of this act, and shall suffer them to run at large after they are eighteen months old, shall forfeit and pay the sum of five dollars, to be collected in an action of debt, with costs of suit, together with damages, before any justice of the peace living in the county where such animal was found.

SEC. 3. It shall be lawful for any person finding any of the animals described in the first and second sections of this act, to notify the owner to take such animal up from running at large, if he is known to the finder. If said owner neglect or refuse to take care of said animal, he shall be liable to be prosecuted for such neglect, and shall forfeit and pay the sum of ten dollars for every such neglect, and shall be liable to pay damages on complaint being made before any justice of the peace in the county where said animal was found.

SEC. 4. If any such animal shall be found running at large where the owner is not known, it shall be lawful for any person living in the settlement where said animal was found, to take the same up and alter or gild them; for which they shall be entitled to receive five dollars, and any other reasonable expenses for which the animal shall be held in security until the expenses are paid. If no owner is found to claim said animal within thirty days, said animal shall be sold at public auction to the highest bidder, and the expenses paid to the taker up, and the remainder, if any, shall be paid to the County Treasurer for the use of the owner; if no owner appears within one year, the money so paid shall be applied to the use of common schools.

SEC. 5. It shall not be lawful for any person who is not a resident of this Territory to take up any of the animals described in this act.

SEC. 6. Any person owning any of the animals described in this act shall be held responsible for any damage that may be sustained by them while running at large, and shall be liable to be prosecuted for the same and held responsible for all damages and costs that may accrue on account of said animals.

SEC. 7. All moneys accruing under this act shall be applied to the use of common schools.

SEC. 8. All acts or parts of acts contrary to this act, relating to stud-horses, jackasses, and ridglings, are hereby repealed.

Nothing in this act shall be so construed as to apply to the country east of the Cascade or Wahkiakum country.

---

# AN ACT

### DECLARING ALL MILITARY ROADS TO BE TERRITORIAL ROADS, IN THE TERRITORY OF WASHINGTON.

SEC. 1. All military roads declared to be territorial roads.
2. Act to take effect from and after its passage.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That all military roads in said territory be and the same are hereby declared territorial roads.

SEC. 2. This act to take effect and be in force from and after its passage.

Passed January 20, 1859.

---

# AN ACT

### TO AMEND "AN ACT AMENDATORY TO AN ACT TO REGULATE MARRIAGES"—PASSED JAN. 29TH, 1855.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the act to which this is an amendment be and the same is hereby amended by striking out the word "heretofore," in the second line of the first section of said act, and that the word "hereafter" be inserted in lieu thereof.

Passed January 21, 1859.

25

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT TO CREATE THE OFFICE OF WRECK-MASTER, AND DEFINE HIS DUTIES."

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the first and second sections of said act be so amended as to include the counties of Pierce, Kitsap, and Clalm.

Passed January 5, 1859.

---

# AN ACT

TO AMEND AN ACT ENTITLED "AN ACT TO PROVIDE FOR THE APPOINTMENT OF A LIBRARIAN AND DEFINING HIS DUTIES."

Sec. 1. Library when to be kept open.
　 2. Librarian to classify the books, make a new Catalogue, &c.
　 3. Repealing clause.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the sixth section of the act to which this is an amendment be amended so as to read:

The Library shall be kept open during the session of the Legislative Assembly, Supreme and District Court, from the hours of nine to twelve o'clock in the forenoon, and from two to nine o'clock in the afternoon, and at other times one day during each week.

Sec. 2. It shall be the duty of the Territorial Librarian to make a new classification of all the books contained in the library, number the shelves in a regular manner, and make a new catalogue in such manner, that a committee can begin at a given point and examine every volume, so that it can be ascertained what works are in the library, and what are missing, at any and all times; likewise report in a condensed manner all the catalogues of books that have been contained in the several annual reports of the Librarians that have been in office since the first annual report of the first elected Librarian for this Territory. Also the number of additional books, as near as may be, that have been added to the library since the winter and spring of 1854—and make his annual report within ten days after the commencement of the session of the Legislature.

L—4

26

SEC. 3.  All acts and parts of acts conflicting with this act are hereby repealed.

Passed January 28, 1859.

---

# AN ACT

### TO PROTECT CERTAIN FISHERIES IN WASHINGTON TERRITORY.

SEC. 1.  Certain persons only allowed to catch fish on the beach of the Columbia.

2.  Penalty for violation of this act.

3.  Act to take effect from and after its passage.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall not be lawful for any person or persons who are not at the time actual residents of this territory, and who have not been for six months next preceding actual residents as aforesaid to catch or take fish on the beach of the Columbia river between Point Ellis and Cape Hancock, on the Washington Territory side of the river.

SEC. 2.  Any person or persons who shall violate the provisions of the preceding section shall forfeit and pay fifty dollars and costs of suit for each and every offence, to be recovered by civil action in the name of any person who shall commence said action, before a justice of the peace or any court having competent jurisdiction; one-half of which sum shall go to the prosecutor, and the other half to the county in which the offence is committed.

SEC. 3.  This act to take effect and be in force from and after its passage.

Passed February 2, 1859.

27

# AN ACT

CONFERRING JURISDICTION UPON THE DISTRICT COURT OF THE COUNTY
OF PIERCE.

SEC. 1.  The county of Pierce constituted a Judicial district to a certain extent.
  2.  Terms of court—when to be held—length of terms.
  3.  Clerk to be appointed.  Said court to be a court of record.  Expense of same
        —how paid.
  4.  Practice and proceedings governed by present laws.
  5.  Grand and petit jury—how selected.
  6.  Venires—when to issue, and what to contain.
  7.  Number of grand and petit jurors, and provisions for selecting, &c.
  8.  Construction of the law as to summoning jurors for the 2d District Court.
        Court fund not chargeable with expense.
  9.  Repealing clause.                       . .

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That for the trial of civil actions, and of offences committed within its jurisdiction against the peace and dignity of Washington Territory, the county of Pierce shall be considered a district, and not a portion of the Second Judicial District of said territory.  But for the trial of offences cognizable under the laws of the United States, the said county of Pierce shall, as heretofore, be a portion of said Second Judicial District.

SEC. 2.  Terms of said District Court of the county of Pierce, shall be held at the county seat of said county, by the district Judge of said Second Judicial District, upon the fourth Monday of March and the third Monday of September of each and every year; but any one term of said District Court shall not exceed in duration the space of two weeks.

SEC. 3.  The said district Judge of the Second Judicial District, shall appoint a clerk of said District Court, who shall keep his office and the records of said court, at the county seat of said county; and said District Court shall be a court of record, and the expense of holding the same shall be payable out of the court fund of said county of Pierce.

SEC. 4.  The various laws now in force regulating the practice and proceedings in civil actions and in criminal prosecutions, shall govern the practice and proceedings in said District Court of the county of Pierce.

SEC. 5.  The County Commissioners, at their May session, shall select from the statement of persons qualified to serve as grand and petit jurors, persons who shall respectively serve as grand and petit jurors at each term of said District Court for the ensuing year.  And the County Auditor shall thereupon furnish a list of grand and petit jurors so selected, to the clerk of said District Court of the county of Pierce; Provided, that the ensuing March term (1859) of said District Court of the county

28

of Pierce, it shall be competent for the court to order a sufficient number of qualified grand and petit jurors to be summoned from the bystanders.

SEC. 6. At least thirty days before the commencement of said terms of court, the clerk shall issue one venire, embracing the names of the grand and petit jurors, specifying which are grand, and which petit jurors, commanding the sheriff to summons the persons so named to attend on the first day of the term of said court.

SEC. 7. The number summoned as grand jurors shall not exceed sixteen; and the number of petit jurors summoned shall not exceed twenty-four; and the provisions of the act to provide for the manner of selecting and procuring the attendance of jurors at the terms of the District Court, passed January 27th, 1857, consistent with the foregoing, and not modified thereby, shall fully apply to the said District Court of the county of Pierce.

SEC. 8. The foregoing sections which relate to summoning grand and petit jurors for the terms of said District Court of the county of Pierce, shall not be construed to alter, amend, or repeal the law now in force in regard to the quota of jurors to be summoned from said county of Pierce, to attend the District Court of the Second Judicial District. But the court fund of said county of Pierce shall not be chargeable in any event for the mileage and attendance of any grand or petit jurors who may be summoned from said county of Pierce, to attend any term of the District Court of the Second Judicial District.

SEC. 9. All acts and parts of acts inconsistent with the foregoing, be, and the same are hereby repealed.

Passed January 21, 1859.

# LOCAL LAWS.

# LOCAL LAWS

OF

# WASHINGTON TERRITORY.

---

# AN ACT

TO INCORPORATE THE TOWN OF OLYMPIA.

### ARTICLE FIRST.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the town of Olympia shall be bounded as follows, to wit: Commencing at a point on Budd's Inlet, where the northern boundary of section No. 11 intersects the shore; thence along the meandering of the beach southerly to a point of intersection with the bay at the northern boundary of section No. 14; thence east on section line, between sections 14 and 11, to the northeast corner of section 14; thence south on section line, between sections 13 and 14, and sections 23 and 24; thence west, on the southern boundary of sections 22 and 23, to the southwest corner of section 22; thence north, on the west boundary of sections 22 and 15, to the northwest corner of section 15; thence east, on northern boundary of section 15, to a point of intersection with the western shore of Budd's Inlet; thence northerly, along said western shore,

32

following the meandering of the beach to the intersection of the northern boundary of section 10 with the beach; thence east, across Budd's Inlet, to the place of beginning.

SEC. 2. The inhabitants of said town of Olympia shall be, and are hereby, constituted a body politic and corporate, by the name and style of "The Town of Olympia," and by that name they and their successors shall be known in law, and have perpetual succession, sue and be sued, plead and be impleaded, in all courts whatsoever, and receive property, personal and real, within said town, for public buildings, public works, and town improvements, and may dispose of the same in any way for the benefit of the town, may purchase property beyond the limits of the town to be used for burial purposes, and for the establishment of a hospital for the reception of persons infected with contageous diseases.

## ARTICLE SECOND.

SEC. 1. For the government of the said town of Olympia there shall be annually elected, in the manner hereinafter provided, the following officers: A Board of Trustees, (consisting of five members,) who shall hold their offices for one year or until their successors shall be duly elected and qualified; and there shall be appointed annually by the board of trustees, one town clerk and one town marshal.

## ARTICLE THIRD.

SEC. 1. That a general election for all town officers of the corporation required under this act, shall be held on the first Monday in April of each year.

SEC. 2. No person shall be entitled to vote at any town election who shall not be an elector for territorial offices, and who shall have resided in this town ten days next preceding the day of election, and no person shall be eligible to any office under this charter who is not a qualified voter of said town.

SEC. 3. At all elections for town officers the vote shall be by ballot, at the time and place designated by the board of trustees.

SEC. 4. That all vacancies happening before the annual election shall be filled by the board of Trustees.

SEC. 5. That all elections for town officers shall continue for one day, during which time the polls shall be kept open from 10 o'clock A. M. to 4 o'clock P. M.

SEC. 6. The person who shall receive a plurality of votes for any office, shall be declared duly elected, and the clerk shall issue to him a

33

certificate of election, and on presentation of the same to the board of trustees, and he shall be sworn into office.

## ARTICLE FOURTH.

SEC. 1.  The members of the board of trustees shall annually elect one of their number president of the board of trustees, who shall hold his office for one year or until his successor shall be elected and qualified.

SEC. 2.  The members of the board of trustees shall fix the time and place for holding their stated meetings, and may be convened by the president of the board of trustees at any time.  A majority of the members shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members.

SEC. 3.  Any ordinance which shall have passed by the board of trustees shall, before it becomes a law, be signed by the president of the board.

SEC. 4.  Said board of trustees shall have full power and authority,

1st.  To make all needful by-laws, ordinances and town regulations, not repugnant to the constitution or laws of the United States, and the laws of this territory.

2nd.  To levy taxes for municipal purposes, not to exceed one-half of one per centum per annum upon all taxable property, as is shown by the assessment made for territorial and county purposes.

3d.  To prohibit and prevent the introduction of contagious diseases into said town limits, and to make such regulations as shall promote the security of health, peace, cleanliness and good order within said town.

4th.  To prevent and restrain any disturbances or disorderly conduct, riot, drunkenness, or any indecent and immoral practices, within the limits of said town.

5th.  To appoint one of the justices of the peace, residing within said town, as committing magistrate, whose duty it shall be to hear all complaints of violation of the said ordinances, and to examine all parties arrested by the town Marshal.

6th.  The roads, streets and alleys within said town limits, shall be under the exclusive control of said board of trustees, who shall make all needful rules in regard to the improvement, repair, grading, cleaning, &c., &c., thereof.  And for the purposes of this act said town shall not be included in any road district, but the road tax now due by law within said town, shall be collected by the town marshal, and laid out and expended by him as directed by ordinance.

L—5

34

## ARTICLE FIFTH.

SEC. 1.    The trustees shall receive no compensation for their services.

SEC. 2.    The town clerk shall receive such compensation for his services as may be allowed him by ordinance.

SEC. 3.    The marshal shall receive the same fees for his services as constables are entitled to for services of a similar nature, and for other services, such compensation as may provided for by ordinance.

## ARTICLE SIXTH.

SEC. 1.    It shall be the duty of the board of trustees, at their first meeting, annually, to elect one of their number to perform the duties of town treasurer, who shall hold his office for one year, or until his successor is elected and qualified.

SEC. 2.    It shall be the duty of the town marshal, in addition to the duties prescribed by the board of trustees, to execute and return all processes issued by any justice of the peace residing within the town limits, to collect all moneys and tax, and pay the same over to the treasurer monthly.

SEC. 3.    It shall be the duty of the town treasurer to receive all moneys which shall come to said town by taxation or otherwise, and pay out the same as may be provided by ordinance.

SEC. 4.    The board of trustees shall define the duties of all officers by ordinance, which are not herein prescribed.

## ARTICLE SEVENTH.

SEC. 1.    All officers required to be elected under this act shall, before entering upon the duties of their office, take an oath or affirmation of office before any person competent to administer oaths.

SEC. 2.    All resolutions and ordinances, calling for an appropriation for any sum exceeding one hundred dollars, shall lie over two meetings.

## ARTICLE EIGHTH.

SEC. 1.    This charter shall go into operation as soon as the law receives the signatures of the presiding officers of the Legislative Assembly; and, until the first election held under the provisions of this law shall have been held, the following persons shall be trustees, viz: George A. Barnes, T. F. McElroy, James Tilton, Joseph Cushman, and Elwood Evans; and William Mitchell shall be town marshal.    And the said board of trustees shall have power to fill vacancies.

Passed January 28, 1859.

35

# AN ACT

## TO INCORPORATE THE OLYMPIA BRIDGE COMPANY.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That all persons who shall become stockholders in the "Olympia Bridge Company," pursuant to this act, be, and they are hereby, constituted a body corporate by the name of the "Olympia Bridge Company," for the purpose of constructing, maintaining, and managing a draw-bridge across the western arm of Budd's Inlet, at Olympia, Thurston county, in the Territory of Washington; said body corporate, to continue for the term of twenty years from the passage of this act, subject to the regulations and restrictions hereinafter provided, and under the name and style as above; that they shall be authorized and empowered to sue and be sued, to plead and be impleaded, defend and be defended, in any court of record; and to have, use and alter, a common seal.

SEC. 2. The capitol stock of said incorporation shall consist of ten thousand dollars, or two thousand shares of fifty dollars each. The same shall be deemed personal property, and be transferable only upon the books of the company. And said company be, and the same is hereby empowered to increase its capitol stock at any time, to an amount not exceeding fifteen thousand dollars.

SEC. 3. All the property, affairs, business, and concerns of said company, shall be managed and conducted by and under the direction of seven directors, who shall be stockholders of said incorporation, and who shall be annually elected by ballot, at an election to be held in the town of Olympia on the first Monday in January of each year, by a plurality of the votes of the stockholders present, and represented by proxy; each share having one vote for each share of stock that may be held in said company upon which all installments called have been paid.

SEC. 4. The first directors, in pursuance of this act of the Legislature, shall be Wm. W. Miller, Wm. Rutledge, Jr., Edwin Marsh, Moses Hurd, Wm. McLane, Elwood Evans, and T. F. Berry; who shall continue in office until their successors shall be legitimately chosen in their stead. The directors shall, at their first meeting after such election, appoint one of their number President, and also choose a secretary and treasurer, and they shall have power to fill all vacancies occasioned by death, resignation or otherwise.

SEC. 5. The directors named in section fourth, shall meet on or before the first Monday in May, 1859, and make the appointments designated in said section, and proceed to open books. Each of said directors may receive subscriptions.

36

SEC. 6. The directors may require payments of all sums subscribed in such portions, and at such times as they may deem proper; and in case of default of such payment on the part of any person so subscribing, the said directors may enforce such payments by action against such defaulting subscriber, or, at their own option, may forfeit the stock subscribed for, together with all payments which may be made thereupon.

SEC. 7. The proposed bridge shall connect with Fourth street, as laid down upon the town plat of Olympia, and extend across the western arm of Budd's Inlet to the most practicable point on the opposite shore.

SEC. 8. Said bridge shall be provided with a good and suitable draw of sufficient width to admit vessels to pass through it of the usual size that ply upon said Inlet within the vicinity of said bridge, and said company shall at all times cause some person to be in attendance, to open and close said draw when necessary; and it shall be the duty of any person wishing to pass through said draw, to give a signal by the firing of a gun or ringing of a bell.

SEC. 9. The said company shall be invested with power to convey real and personal estate; and shall have power to make all reasonable by-laws, not inconsistent with general laws, for the government of the company, its officers and agents, which may be needful to carry into effect, fully, the purposes and objects of this act. They shall also have the power to regulate the rates of toll upon said bridge; Provided, that at any time the rates of toll shall not exceed the rates established by an act "establishing the rates of ferriage across the Columbia river, in Clarke county," passed January 4th, 1857.

SEC. 10. In qualification of the foregoing act, it is to be expressly understood that should the corporation of the town of Olympia, or the legally constituted authorities of Thurston county, (that is to say the county commissioners) or the authorities of said corporation, deem it advisable or to the interest of said town corporation or the county, at any time within the twenty years for which this charter or act of incorporation is granted, to purchase of the stockholders of the said Bridge Company all their rights and interests in the same, for the purpose of making said bridge a free bridge; then in that case, one or either shall have the privilege, by paying to the Bridge Company the amount of capitol by said company expended in constructing and maintaining said bridge. There shall be three commissioners to appraise the value of the same—one of the commissioners to be chosen by the directors of said Bridge Company, and another to be chosen by the corporation of the town of Olympia or the authorities of Thurston county, as aforesaid; which two appraisers shall appoint a third person—to the three of whom, shall be allotted the

37

duty of appraising the value of the improvements made by the said Bridge Company, and should a fair and equitable agreement be made between the contracting parties to that effect, then shall the Bridge Company sur-render its charter, all its rights and privileges, to the corporation or county, as aforesaid.

SEC. 11.    This act to take effect and be in force from and after its passage.

Passed January 26, 1859.

---

# AN ACT

### ENTITLED AN ACT TO INCORPORATE THE " CASCADE RAILROAD COM-PANY."

SEC. 1.    *Be it enacted by the Legislative Assembly of the Territory of Washington,* That B. B. Bishop, William H. Fauntleroy and George W. Murray and their associates, owners of the land bordering on the Cascades of the Columbia River in, Washington Terrritory, their heirs and assigns, be, and they are hereby, constituted and declared a body corporate and politic, by the name and style of the " Cascade Railroad Company." The said road to be used for the transportation of freights, passengers and mails, and to be constructed between the navigable waters above and below the " Cascades." The said Bishop, Fauntleroy and Murray having power to select for said purpose the most convenient, economical, and practicable site for said road of thirty feet in width, together with one acre of land immediately adjoining, and a continuation of the road bordering on the water, with the privilege and power to construct, and for the purpose, good and sufficient warehouses, depots and wharves, or other buildings ; it being particularly understood and enacted, that the owners of the property, land and other appurtenances over which such road shall be constructed, shall have the privilege over all others of taking up or subscribing the stock of the said company on the opening of the books for said purpose, which shall take place at Fort Vancouver, on the Columbia River, by and in the presence of B. B. Bishop, William H. Fauntleroy and George W. Murray, on the first day of June, A. D. 1859, after due notice of sixty days in one paper printed in Olympia, W.

38

T., and notice posted at Fort Vancouver, W. T., in some conspicuous place ; after which notice, and on the opening of the books for subscription, if no property-holder bordering on the Cascades, as above, shall appear and demand stock, by the tender of the necessary money to provide for the first installment, then the public shall have the privilege of subscribing or taking up the said stock by payment of the necessary amount of money ; it being also enacted, that the owners of said property, land, &c., on the Cascades, shall have the privilege of constructing the railroad, to be equal in point of efficiency, thus constructed, over any other portion of the road, and according to the provisions of this charter, and upon the completion of the same, the said Bishop, Fauntleroy and Murray shall issue to the proprietor making application, an amount of capitol stock of the said company, equal in number of shares, as compared to the whole number of shares, as the length of said portion of the road so completed by said applicant owner, is to the whole length of road as per survey.

SEC. 2.    The railroad shall be surveyed by the said Bishop, Fauntleroy and Murray, or at their instance, and recorded in the office of the secretary of this territory.

SEC. 3.    The " Cascade Railroad Company " is hereby authorized and empowered to have and to receive, purchase and possess, enjoy and retain, lands, lots, tenements, goods, chattels, rents, and effects of any and every kind, and to any amount necessary to carry into effect the objects of said company, and the same to use, alien, sell and dispose of at pleasure ; to sue and be sued in any court having competent jurisdiction ; to have and to use a common seal ; to ordain and establish such rules, regulations and by-laws as may be necessary for the well-being of said corporation, subject to the constitution of the United States and the laws of this territory.

SEC. 4.    Each share of stock shall be entitled to one vote.    There shall be six hundred shares, at the rate of five hundred dollars per share ; and the capitol stock shall be three hundred thousand dollars.    The company shall at no time, after the expiration of one year from the completion of said road, keep on hand the receipts of said road, when they shall exceed fifty thousand dollars, for more than thirty days, without it be by consent of the majority of the stockholders, and never over one hundred thousand dollars over sixty days ; but a dividend shall be declared and the money paid the stockholders every three months.

SEC. 5.    The company shall consist of a president, vice president, three directors, and a secretary, who shall keep the books of said company, all of whom shall be elected by a majority of the stockholders once a year, and shall hold office for one year from the date of their election.

39

The stock of the company shall be transferred only on the books of the company.

Sec. 6. *Be it further enacted,* That nothing contained in this charter shall be construed so as to prohibit the legislature from granting charters to other persons, from building or constructing additional roads on the said Cascade portage.

Sec. 7. The company shall have power to assess the capitol stock of said company, and if after due notice in some newspaper in this territory for thirty days, any of the stockholders shall fail to pay the assessment, the company shall proceed to sell the same at public auction, after ten days' notice, as before, after the following manner :    The person or purchaser taking the least number of shares, and paying the assessment on the entire number of the delinquent shares, shall be entitled to have issued to him by the company such number of shares.

Sec. 8. It is obligatory on the said company to construct within three years a good railroad of wood, as per survey ; and in five years, a good and sufficient railroad with iron track.    The company shall at such latter period (five years,) have at least one good warehouse at each end of the road, and good commodious passenger and freight cars, to be propelled by steam power, or the company shall forfeit all the privileges of this charter.

Sec. 9. In the event of the survey of the said road embracing the land of settlers and owners, parties failing to agree, the district court shall have power to appoint three citizens of Washington Territory, (freeholders,) who shall assess the damages, and the amount of money to be paid to the owner by the company, it being obligatory on the persons so appointed, to furnish to the owner of said property so taken or damaged, a copy of their proceedings relating to the owner's particular property ; if the owner of the property thinks his property has been assessed below its value, he shall have the privilege of providing testimony before the district court, and the judgment shall be final, except the parties shall appeal the case to the supreme court of the United States ; but on the judgment of the district court, the company shall be placed in possession of the land and the property, having full full power to proceed with the construction of the road and the necessary buildings, as per charter.

Sec. 10. *Provided, however,* That the aforesaid charter shall in no event obstruct the military and territorial roads at that place.

Passed January 31st, 1859.

40

# AN ACT

### TO INCORPORATE AN INSTITUTION OF LEARNING AND CHARITABLE PURPOSES IN THE COUNTY OF CLARK.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That Sister Joseph, and all persons who may associate themselves with her, and their successors, be, and they are hereby, declared a body politic and corporate, under the name and style of the " Sisters of Charity, of the house of Providence, in the Territory of Washington."

Sec. 2. *And be it further enacted,* That the ends of said corporation shall be the relief of needy and suffering humanity ; in the care of the orphans, invalids, sick and poor, and in the education of the youth.

Sec. 3. That the said corporation shall have continual, perpetual succession, and shall have power to acquire, receive and possess by donation, gift or purchase, and to retain and enjoy property, real, personal and mixed, and the same to sell, grant, convey, rent, or otherwise dispose of at pleasure ; *Provided, however,* That no part of the resources thereof shall ever be used for any other than the purposes above specified. *And, provided further,* That the yearly income accruing from said property to said corporation shall not exceed twenty thousand dollars. Such corporation shall have power to contract and be contracted with, sue and be sued, plead and be impleaded, in all courts of justice, both at law and in equity; they shall cause to be made for their use, a common seal, impressed with such devices and inscriptions as they shall deem proper, by which said seal, all deeds and acts of said corporation shall pass and be authenticated, and they shall have power to alter or amend said seal at their pleasure ; they shall have power to form and adopt a constitution and by-laws for their government, to make and carry into effect all necessary regulations for the management of their fiscal concerns ; to appoint subordinate officers and agents ; to make, ordain and establish such ordinances, rules and regulations as they may deem necessary or expedient for the good government of said corporation, its officers and agents ; *Provided, however,* That the said ordinances, rules and regulations shall in no manner conflict with the constitution of the United States or the laws of this terrritory.

Sec. 4. That when it may be deemed expedient to add any new member to said corporation, or become necessary to fill vacancies which may occur in said corporation, by reason of death or otherwise, the majority of the remaining members of said corporation shall elect said additional member or members to fill such vacancies.

Sec. 5. That all deeds, or other instruments of conveyance, shall be signed by the Superioress President of the corporation, and by her ac-

41

knowledged in her official capacity, and sealed with the seal of the corporation.

Passed January 28th, 1859.

---

# AN ACT

## TO INCORPORATE THE COWLITZ RIVER STEAM NAVIGATION COMPANY.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That Royal C. Smith and Noyes H. Smith, together with all other persons who shall become associated with them by subscribing stock in said company, their assigns and successors, be, and they are hereby, constituted and declared a body corporate and politic, by the name and style of the "Cowlitz River Steam Navigation Company," for the purpose of improving the bed of the Cowlitz River, so as to render it navigable for steamboats from Monticello, on said river, to the Cowlitz Landing, and keeping on said river a steamboat, or steamboats, suitable for, capable of, and to be used in the transportation of freight and passengers to and from said points, and all intermediate points or places on said river, as shall be determined by said company, or those owning a majority of the stock thereof.

SEC. 2. Said company may own and possess any amount of stock and property necessary to carry on its business, which they may purchase, possess, sell and dispose of at pleasure ; may sue and be sued in any court of competent jurisdiction ; may have and use a common seal, which they may alter, break and review at pleasure ; may appoint one or more agents for the transaction of their business, whom they may dismiss and change at pleasure, and may from time to time make such rules, regulations and by-laws as they may deem necessary or useful, and the same amend and change at pleasure, subject, however, to the constitution and lows of the United States and the laws of this territory.

SEC. 3. Said company shall, within six months after the passage of this act, have in running condition on said Cowlitz River, a steamer suitable for navigating said river between the points aforesaid, and shall within nine months after the date thereof have the obstructions removed, so far as to have said boat or boats navigating said river between the points aforesaid, and failing so to do, all rights under this act shall be forfeited.

L–6

42

SEC. 4.   All the stock and property of said company shall be liable for the debts of said company, and each stockholder shall be personally liable for the indebtedness of said company to twice the amount of the capital stock of said company, owned by said stockholders.

SEC. 5.   The said company complying with the provisions of this act, shall have and enjoy the exclusive right to navigate the said Cowlitz river in vessels propelled in whole or in part by steam, from the said Cowlitz Landing to and from tide-water on said river, for the period of five years, from and after the date of the passage of this act, and shall have the right to charge such a sum for freight and passage as they shall deem reasonable, not exceeding five dollars per passage and five dollars per ton for freight, for the entire distance; way-trade for freight and passengers, subject to such agreement as may be made, not exceeding, between any two points, the sums allowed to be charged for the entire distance.

SEC. 6.   Should said company at any time fail to have a steamer running, for the period of three months, at any one time, after the time hereinbefore limited for the commencement of said navigation, then, upon complaint being made to the District Court, in the District in said Territory, in which Monticello may be situated, and such fact being established to the satisfaction of said court, said company shall be adjudged to have forfeited all their rights under this act.

SEC. 7.   This act to take effect and be in force from and after its passage.

Passed January 21, 1859.

# AN  ACT

TO INCORPORATE MONTICELLO DIVISION NO. 1, OF SONS OF TEMPERANCE.

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the officers and members of Monticello Division No. 1, of Sons of Temperance, and their successors, be, and they are hereby, constituted and declared a body corporate, to be known by the name of Monticello Division No. 1, Sons of Temperance.

SEC. 2.   Said Division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended against, in all the

43

courts in this territory, and may receive and hold all moneys and other property coming into their hands by voluntary subscriptions, contributions, or otherwise, as well as all legacies and devises of real or personal estate; and shall be empowered to have, hold, possess or acquire, lands, tenements, furniture, chattels, regalia, and property of any description incident to such bodies, to an amount not exceeding ten thousand dollars, and the estate hereinbefore mentioned, to lease, grant, convey and dispose of, in such manner as they may deem expedient.

SEC. 3.   Said division may, at any of their meetings, enact and pass such rules, regulations and laws for the government and management of said division as they may deem expedient; Provided, the same be not inconsistent with the laws of the United States or this territory.

SEC. 4.   The said division may hold its meetings at such times and places, and elect such officers for the management of its affairs, as the members thereof may deem proper.

Passed January 28, 1859.

---

# AN ACT

TO INCORPORATE OLYMPIA DIVISION NO. 2 OF SONS OF TEMPERANCE.

SEC. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the officers and members of Olympia Division No. 2, of " Sons of Temperance," and their successors, be and they are hereby constituted and declared a body corporate, to be known by the name of "Olympia Division No. 2, Sons of Temperance."

SEC. 2.   Said division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended in all the courts in this territory, and may receive and hold all moneys and other property coming into their hands by voluntary subscriptions, contributions or otherwise, as well as all legacies and devises of real or personal estate; and shall be empowered to have, hold, possess or acquire lands, tenements, furniture, chattels, regalia, and property of any description incident to such bodies, to an amount not exceeding ten thousand dollars, and the estate herein before mentioned to lease, grant, convey, and dispose of in such manner as they may deem expedient.

44

SEC. 3.  Said division may, at any of their meetings, enact and pass such rules, regulations, and laws, for the government and management of said division as they may deem expedient; *Provided*, the same be not inconsistent with the laws of the United States, or this territory.

SEC. 4.  The said division may hold its meetings at such times and places, and elect such officers for the management of its affairs as the members thereof may deem proper.

SEC. 5.  This act to take effect and be in force from and after its passage.

Passed January 25, 1859.

---

# AN ACT

TO INCORPORATE TUM-WATER DIVISION NO. 3, SONS OF TEMPERANCE.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the officers and members of Tum-Water Division No. 3, of Sons of Temperance, located at Tum-Water, county of Thurston, and their successors, be and they are hereby  constituted and declared a body corporate, to be known by the name of Tum-Water  Division No. 3, Sons of Temperance.

SEC. 2.  Said division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended in all courts in this territory, and may receive and hold, all moneys and other property coming into their hands by voluntary subscriptions, contributions, or otherwise, as well as all legacies and devises of real or personal estate; and shall be empowered to have, hold, possess or acquire lands, tenements, furniture, chattels, regalia, and property of  any description incident to such bodies, to an amount not exceeding twenty thousand dollars, and the estate hereinbefore mentioned, to lease, grant, convey and dispose of in such manner as they may deem expedient.

SEC. 3.  Said division may, at any of their meetings, enact and pass such rules, regulations and laws, for the government and management of said division, as they may deem expedient; *Provided*, the same be not inconsistent with the laws of the United States, or this territory.

45

Sec. 4. The said division may hold its meetings at such times and places, and elect such officers for the management of its affairs, as the members thereof may deem proper.

Sec. 5. This act to take effect and be in force from and after its passage.

Passed January 28th, 1859.

---

# AN ACT

#### TO INCORPORATE GRAND MOUND DIVISION, NO. 4, SONS OF TEMPERANCE.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the officers and members of Grand Mound Division, No. 4, Sons of Temperance, located on Grand Mound Prairie, in the county of Thurston, and their successors, be, and they are hereby constituted and declared a body corporate, to be known by the name of "Grand Mound Division, No. 4, Sons of Temperance."

Sec. 2. Said Division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended, in all the courts in this Territory, and may receive and hold all moneys and other property coming into their hands by voluntary subscriptions, contributions or otherwise, as well as all legacies and devises of real or personal estate, to an amount not exceeding twenty thousand dollars, and the estate hereinbefore mentioned to lease, grant, convey and dispose of in such manner as they may deem expedient.

Sec. 3. Said Division may, at any of their meetings, enact and pass such rules, regulations and laws for the government and management of said Division as they may deem expedient, provided the same be not inconsistent with the laws of the United States or this Territory.

Sec. 4. The said Division may hold its meetings at such times and places, and elect such officers for the management of its affairs as the members thereof may deem proper.

46

Sec. 5. This act to take effect and be in force from and after its passage.

Passed January 29, 1859.

<hr>

# AN ACT

TO INCORPORATE WASHINGTON DIVISION, NO. 5, SONS OF TEMPERANCE.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the officers and members of Washington Division, No. 5, of Sons of Temperance, located in Vancouver City, county of Clarke, and their successors, be, and they are hereby constituted and declared a body corporate, to be known by the name of "Washington Division, No. 5, of Sons of Temperance."

Sec. 2. Said Division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended against, in all courts in this Territory; and may receive and hold all moneys and other property coming into their hands by voluntary subscriptions, contributions or otherwise, as well as all legacies and devises of real and personal estate, and shall be empowered to have, hold, possess or acquire lands, tenements, furniture, chattels, regalia, and property of any description incident to such bodies, to an amount not exceeding twenty-five thousand dollars, and the estate hereinbefore mentioned to lease, grant, convey and dispose of in such manner as they may deem expedient.

Sec. 3. Said Division may, at any of their meetings, enact and pass such sules, regulations and laws for the government and management of said Division as they may deem expedient: Provided, the same be not inconsistent with the laws of the United States or this Territory.

Sec. 4. The said Division may hold its meetings at such times and places and elect such officers for the management of its affairs as the members thereof may deem proper.

Sec. 5. This act to take effect and be in force from and after its passage.

Passed January 27, 1859.

47

# AN ACT

TO INCORPORATE GOOD SAMARITAN DIVISION NO. 6, SONS OF TEMPERANCE.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the officers and members of Good Samaritan Division No. 6, of Sons of Temperance, located in Steilacoom, county of Pierce, and their successors, be, and they are hereby constituted and declared a body corporate, to be known by the name of Good Samaritan Division No. 6, Sons of Temperance.

SEC. 2. Said division may, by their corporate name, sue and be sued, plead and be impleaded, defend and be defended against, in all the courts in this territory; and may receive and hold all moneys and other property coming into their hands by voluntary subscriptions, contributions or otherwise, as well as all legacies and devises of real or personal estate; and shall be empowered to have, hold, possess or acquire lands, tenements, furniture, chattels, regalia, and property of any description incident to such bodies, to an amount not exceeding twenty thousand dollars, and the estate hereinbefore mentioned to lease, grant, convey and dispose of in such manner as they may deem expedient.

SEC. 3. Said division may, at any of their meetings, enact and pass such rules, regulations and laws for the government and management of said division, as they may deem expedient; *Provided*, the same be not inconsistent with the laws of the United States or this territory.

SEC. 4. The said division may hold its meetings at such times and places, and select such officers for the management of its affairs as the members thereof may deem proper.

SEC. 5. This act to take effect and be in force from and after its passage.

Passed January 29, 1859.

---

# AN  ACT

TO LOCATE A TERRITORIAL ROAD FROM OLYMPIA, IN THE COUNTY OF THURSTON, TO STEILACOOM, IN THE COUNTY OF PIERCE.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That Frank Clark, John M. Chapman, of Pierce county,

48

and J. M. Hawk, of Thurston county, be and are hereby constituted a board of commissioners to view and locate a territorial road from Olympia to Steilacoom.

SEC. 2.  Said commissioners shall meet at the house of George Shazer, in Thurston county, on the first Monday in May, 1859, or as soon thereafter as circumstances will permit, after being duly sworn faithfully to perform their duties, shall proceed to view and locate said road.

SEC. 3.  Said commissioners shall make out a true report of their proceedings, and a certified copy thereof to be deposited with the county auditors of Pierce and Thurston counties, who shall file and preserve the same; and when said report is so deposited, the said road shall be considered a territorial road, and shall be opened and kept in repair as other territorial roads are in this territory.

SEC. 4.  If from any cause any one or more of said commissioners shall fail to qualify and act, his or their associate or associates may appoint some suitable person or persons, who shall have all the power granted in this act.

SEC. 5.  No charge for services shall be made by said commissioners against either county.

Passed January 25, 1859.

# AN ACT

TO LOCATE AND ESTABLISH A TERRITORIAL ROAD FROM THE YELM PRAIRIE, IN THURSTON COUNTY, TO A POINT ON THE NATCHEZ RIVER, WHERE THE MILITARY ROAD LEAVES THE SAME.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That William Packwood, James Longmire, and G. C. Blankenship, be, and they are are hereby constituted a board of commissioners, with full power to view and establish a territorial road, commencing at a point on the Yelm Prairie where the county road leaves the same, passing up the Nesqually river, following the same by the most practicable route to a point known as the Three Butes, in the Cascade mountains; thence by the most direct route to the point on the Natches river where the military road leaves the same.

49

Sec. 2.  Said commissioners, or a majority of them, shall meet at the residence of James Longmire on the first Monday in June, 1859, at 1 o'clock P. M., or as soon thereafter as circumstances will permit, and after being duly sworn faithfully to view and locate said road, shall proceed to view, locate and mark the same on the nearest and most practicable route from point to point, as above described in section one.

Sec. 3.  Said commissioners shall have authority to adjourn from time to time, and from place to place, to fill any vacancies which may happen in their board; and after their first meeting, as provided in section two, the said commissioners shall have authority to administer any oath necessary and proper to carry into effect the provisions of this act.

Sec. 4.  And the commissioners aforesaid shall cause a true report of their proceedings to be made, and a true copy of the same to be deposited with the county auditors of Thurston and Pierce counties, and secretary of the territory, who shall file and preserve the same; after which, said road shall be in every respect a territorial road, and shall be opened and kept in repair as other territorial roads.

Sec. 5.  Said commissioners shall make their report to the county auditors and the secretary of the territory, immediately after they shall have completed their commission, and the said commissioners shall receive no compensation for their services except by voluntary subscriptions.

Passed January 20, 1859.

# AN ACT

TO LOCATE A TERRITORIAL ROAD FROM SKOOKUM BAY TO THE HEAD OF TIDE WATER ON THE CHEHALIS RIVER.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That John Brady, David Shelton, and Jackson Morrow, or any two of them, be and they are hereby constituted a board of commissioners to view and locate a territorial road, commencing at Oakland on Skookum Bay, thence on the most practical route to the head of tide water on the Chehalis river.

Sec. 2.  Said commissioners shall meet at Oakland post-office on Skookum Bay on the first Monday in March, 1859, or as soon thereafter as circumstances will permit, and after being duly sworn faithfully to perform the duties assigned them, shall proceed to view and locate said road.

L–7

50

SEC. 3.  Said commissioners shall cause a true report of the proceedings, and a certified copy thereof, to be deposited with the county auditors of Chehalis and Sawamish counties within sixty days from the meeting of said commissioners.

SEC. 4.  No charge for services shall be made by said commissioners against either county.

Passed January 7, 1859.

---

# AN ACT

### TO LOCATE A TERRITORIAL ROAD FROM A POINT ON HOOD'S CANAL, AT OR NEAR A. D. FISHER'S CLAIM, TO THE HEAD OF TIDE-WATER ON CHEHALIS RIVER.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That A. D. Fisher, Ewal Branan, and James King, be, and are hereby constituted a board of commissioners to view and work out a territorial road from some point on Hood's Canal, at or near the residence of A. D. Fisher, to the head of tide-water on Chehalis river.

SEC. 2.  Said commissioners, or a majority of them, shall meet at the house of Wm. F. O'Haver, on the fourth Monday of May, or as soon thereafter as practicable; and after being duly sworn faithfully and impartially to perform their duties as such Commissioners, shall proceed to locate said road on the nearest and most practicable route.

SEC. 3.  Said commissioners shall make out a report, to be deposited with the clerks of the board of county commissioners of Sawamish and Chehalis counties; and when so deposited, said road shall be considered as a territorial road to all intents and purposes, and shall be opened and kept in repair in the same manner as other territorial roads are opened and kept in repair.

SEC. 4.  Said commissioners shall make no charge or [and] receive no compensation for their services except by voluntary contribution.

Passed January 25, 1859.

51

# AN ACT

TO LOCATE AND ESTABLISH A TERRITORIAL ROAD FROM OAKLAND, IN SAWAMISH COUNTY, VIA SHERWOOD'S MILLS, TO SEABECK ON HOOD'S CANAL.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, that W. K. Temple, Mr. Sherwood (of Sherwood's Mills), and W. B. Sinclair (of Kitsap county), be, and are hereby constituted a board of county commissioners with full power to view and locate a territorial road from Oakland in Sawamish county, via Sherwoods Mills, to Seabeck, on Hood's Canal.

SEC. 2. The said commissioners, or a majority of them, shall meet at Oakland, on the first Monday in April, 1859, at 1 o'clock, or as soon thereafter as circumstances will permit, and after being duly sworn faithfully and impartially to act as such commissioners, shall proceed to view and locate said road from point to point, as described in section one.

SEC. 3. The commissioners shall have authority to adjourn from time to time, and from place to place, as may be necessary, and shall have power to fill all vacancies that may occur in said board, and also to administer all oaths necessary to carry into effect the provisions of this act.

SEC. 4. And the aforesaid commissioners shall cause a full report of their proceedings to be made—a certified copy of which shall be, by said commissioners, deposited with the county auditors of Kitsap and Sawamish counties, the said auditors shall file and preserve the same, and after which said road shall be opened and kept in repair as other territorial roads are.

SEC. 5. That said commissioners shall receive no payment for their services except by voluntary subscription, and no charge shall be made against any county in this territory for viewing, surveying, or locating said road.

52

# AN ACT

TO REVIEW AND RELOCATE SO MUCH OF THE TERRITORIAL ROAD LEADING
FROM CATHLAMET TO THE HOUSE OF SIDNEY S. FORD, AS LIES BE-
TWEEN THE HOUSE OF JOHN J. ELLIOT AND THE SOUTH END OF
BOISFORT PRAIRIE.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of
Washington,* That Wm. S. Jackson, Henry Brewer, and James Birnie,
Jr., be, and are hereby appointed commissioners, and authorized to view
and relocate so much of the territorial road leading from Cathlamet, on
the Columbia river, to Sidney S. Fords, in Thurston county, as lies be-
tween the house of John J. Elliot and the south end of Boisfort Prairie.

SEC. 2.  Said commissioners, or a majority of them, after they shall
have taken the oath of office, shall have full authority to change and
relocate any portion or portions of said road for the purpose of shorten-
ing the distance or improving the ground over which the road passes, as
they shall deem most for the public interest.

SEC. 3.  When said commissioners shall have completed the dis-
charge of their duties, they shall report to the secretary of the territory
such alterations as they shall have made, and to the auditor of each
county all alterations made within the limits of such county.

SEC. 4.  If, for any cause, any one or more of said commissioners
shall fail to qualify, or, having qualified, shall fail or cease to act, the act-
ing commissioner or commissioners shall select and appoint some person or
persons to fill such vacancy—and the person so appointed shall have the
same powers, and discharge the same duties, as though he had been origi-
nally appointed.

SEC. 5.  The said commissioners shall receive no compensation for
their services except by voluntary subscription.

Passed January 28, 1859.

53

# AN ACT

## TO LOCATE A TERRITORIAL ROAD FROM MONTICELLO TO THE UPPER CASCADES.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That H. J. G. Maxon, Joseph L. Durgan, Joseph Goddard, W. H. Martin, and Solomon Strong, be, and they are hereby constituted a board of commissioners to view and locate a territorial road, commencing at or near Monticello, so as to connect with the military road; thence on the most practicable route via Vancouver to Daniel Boughfman's land claim at the upper Cascades.

Sec. 2. Said commissioners shall meet at the house of Solomon Strong, on the first Monday in June, 1859, or as soon thereafter as circumstances will permit, after being duly sworn faithfully to perform the duties assigned them, shall proceed to view and locate said road.

Sec. 3. Said commissioners shall cause a true report of the proceedings, and a certified copy thereof, to be deposited with the county auditors of Cowlitz, Clark and Skamania, within sixty days from the meeting of said commissioners.

Sec. 4. Said commissioners shall receive no compensation for said services except by voluntary subscription.

Passed January 15, 1859.

# AN ACT

## DECLARING THE ROAD LEADING FROM FORT SIMCOE TO FORT DALLES A TERRITORIAL ROAD.

Sec. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the road (now used by the military) leading from Fort Simcoe to Fort Dalles, or so much thereof as lies in the Territory of Washington, be, and the same is hereby declared a territorial road.

Passed January 17, 1859.

54

# AN ACT

AUTHORIZING I. H. BUSH TO ESTABLISH A FERRY ACROSS THE COLUM-
BIA RIVER.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That I. H. Bush, his heirs and legal representatives, be, and they are hereby, authorized to establish and keep a ferry across the Columbia river, in the territory aforesaid, in Skamania county, at the point where the main road strikes said Columbia river in crossing over to the Dalles, in Wasco county, Oregon ; and to land and deposit from the Washington shore of said river ; and extending from said point, up and down said river, one-half mile each way ; and that the said I. H. Bush, his heirs and legal representatives, have, and they are hereby endowed with, the exclusive privilege of ferrying in Skamania county, within the above limit, for the term of five years, from and after the passage of this act ; *Provided, always*, That when said ferry, so established, shall be subject to the same regulations any under the same restrictions as other ferries are, or may hereafter be, by the laws of this territory, precribing the manner in which licensed ferries shall be kept and regulated.

SEC. 2. That it shall be lawful for the said I. H. Bush, his heirs and legal representatives, to receive and collect the foregoing rates of ferriage :

| | |
|---|---:|
| For crossing a footman, | $ 50 |
| For crossing man and horse, | 1 00 |
| For crossing horse and carriage, | 3 00 |
| For crossing two horses and wagon, | 3 50 |
| For crossing two oxen and wagon, | 3 50 |
| For crossing each additional span of horses, or pair of cattle, | 1 00 |
| For crossing loose animals, other than sheep and hogs, | 40 |
| For crossing sheep and hogs, each, | 25 |

*Provided*, That the said I. H. Bush, his heirs and legal representatives, shall not charge emigrants, crossing the plains with the intention of settling on this coast, more than half the above rates.

SEC. 3. That no courts, or board of county commissioners, shall authorize any other person, except as herein provided, to keep a ferry within the limits set out in this act ; *Provided*, That the said I. H. Bush, his heirs and legal representatives, shall, within six months after the passage of this act, procure for said ferry a good and sufficient flatboat and boats, which shall be kept at said ferry, with sufficient hands to work them, for the transportation of all persons and their property across said river without delay ; and should the laws regulating ferries, now or such

55

as may be in force, be violated by the said I. H. Bush, his heirs and legal representatives : or if no good and sufficient flatboat and boats, with sufficient hands to work them, be provided within the time required by this act, upon proof thereof being made to the satisfaction of the board of county commissioners of Skamania county, then this act shall be void.

Sec. 4.   This act to take effect and be in force from and after the date of its passage.

Passed February 1, 1859.

# AN ACT

## AUTHORIZING EDWARD L. MASSEY TO ESTABLISH A FERRY ON SNAKE RIVER.

Sec. 1.   *Be it enacted by the Legislative Assembly of the Territory of Washington,* That Edward L. Massey, his heirs or assigns, be, and they are hereby, authorized to established and keep a ferry across Snake river, at a point where the territorial road, leading from Fort Wall-walla to Fort Colville, crosses the same ; and that the said Edward L. Massey, his heirs and assigns, have the exclusive privilege of ferrying upon Snake river within the following limits, to wit :—a distance up and down said river of one mile from said ferry, for the terms of six years from the passage of this act ; *Provided,* That said ferry, when so established, shall be subject to the same regulations and under the same restrictions as other ferries are, or may hereafter be, by the laws of this territory prescribing the manner in which licensed ferries shall be kept and regulated.

Sec. 2.   That no courts, or board of county commissioners, shall authorize any person to keep a ferry within the prescribed limits of this act.

Sec. 3.   It shall be lawful for the said Edward L. Massey, his heirs and assigns, to demand and collect from all persons desiring to cross on said ferry the following rates of ferriage, to wit ; *Provided, however,* That the said Edward L. Massey, his heirs and assigns, shall not charge more than one-half of the aforesaid rates of ferriage to emigrants, crossing the plains with the intention of settling on this coast :

56

For each wagon, with two animals attached,....................$5 00
For each pleasure wagon, with two animals,................... 3 00
For each hack or sulky, with one horse,............. ......... 2 00
For each man and horse,............. .................... 1 50
For each animal (packed), ................................ 1 50
For each head of horses, or mules (loose),.................... 75
For each footman,........................................ 50
For each loose cattle, each,........... .................... 50
For sheep, goats, or hogs, each,........................... 10

SEC. 4. The said Edward L. Massey, his heirs and assigns, shall, within six months from and after the passage of this act, procure and keep on said ferry a fufficient ferry boat, with a sufficient number of hands to work the same, for the transportation of all persons and their property without unnecessary delay ; and should the laws regulating ferries, now or such as may hereafter be in force, be violated by the said Edward L. Massey, his heirs or assigns : or should the said Edward L. Massey, his heirs or assigns, fail or neglect to furnish a good and sufficient boat, and the requisite number of hands, to cross all persons and their property without unnecessary delay, upon proof being made thereof to the satisfaction of the board of county commissioners of Walla-walla county, this act shall be void.

SEC. 5. The said Edward L. Massey, his heirs or assigns, shall, before collecting any moneys for ferriage, as provided in this act, pay into the county treasury, as an annual tax, a sum not to exceed twenty-five dollars per annum, for the use and benefit of Walla-walla county.

SEC. 6. After the expiration of three years, the legislature to regulate the rates of ferriage as to them may seem just.

SEC. 7. This act to be in force from and after its passage.

Passed January 11th, 1859.

# AN ACT

TO AUTHORIZE C. C. VAIL TO ESTABLISH A FERRY ACROSS THE LUMMI, OR NOOT-SACK RIVER.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That Charles C. Vail, his heirs or assigns, be, and they are

57

hereby, authorized to establish and keep a feery across the Lummi, or Noot-sack river, in Whatcom county, at the point where the road from Whatcom to Fort Hope crosses, or may cross said river, to the opposite shore, commencing at a point in the centre of said river where it strikes said river, and to land and deposite from each shore of said river, and extending from said point up and down said river, on each side thereof, one-half mile each way ; and that the said Charles C. Vail, his heirs and assigns, have the exclusive privilege of ferrying in Whatcom county, within the above limits, for the term of three years from the passage of this act ; *Provided*, That said ferry, when so established, shall be subject to the same regulations, and under the same restrictions as other ferries are or may hereafter be, by laws of this territory prescribing the manner in which licensed ferries shall be kept and regulated.

SEC. 2.   That it shall be lawful for the said Charles C. Vail, his heirs or assigns, to receive and collect the following rates of toll for ferriage upon said ferry :

| | |
|---|---:|
| For crossing a footman,...............................$ | 25 |
| For crossing a man and horse,............................... | 50 |
| For crossing horse and carriage,............................... | 75 |
| For crossing two horses and carriage,........................... 1 | 00 |
| For crossing two oxen and wagon,........................... 1 | 00 |
| For crossing each additional span of horses, or pair of cattle,..... | 50 |
| For crossing loose stock, other than sheep and hogs, for each,.... | 25 |
| For crossing sheep and hogs, each,........................... | $12\frac{1}{2}$ |

SEC. 3.   That no courts, or board of county commissioners, shall authorize any person, except as hereafter provided in this act, to keep a ferry within the limits set out in this act ; *Provided*, That the said Charles C. Vail, his heirs or assigns, shall, within three months after the passage of this act, procure for said ferry a good and sufficient flat boat, or boats, which shall be kept at said ferry, with sufficient hands to work them, for the transportation of all persons and their property across said river without delay ; and should the laws regulating ferries now, or such as may hereafter be in force, be violated by the said Charles C. Vail, his heirs or assigns : or if no good and sufficient flat boat, or boats, with sufficient hands to work them, be provided within the time required by this act, upon proof thereof being made to the satisfaction of the board of county commissioners of Whatcom county, then this act shall be void.

SEC. 4.   This act to take effect and be in force from and after its passage.

Passed January 17, 1859.

L-8

58

# AN ACT

### INCREASING THE SALARY OF TERRITORIAL AUDITOR.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the annual salary of the territorial auditor shall be seventy-five dollars per annum.

SEC. 2.  All acts conflicting with this act are hereby repealed.
Passed February 1, 1859.

---

# AN ACT

### APPROPRIATING MONEY TO PROVIDE FOR THE SAFE KEEPING OF PAPERS CONNECTED WITH THE LATE INDIAN WAR IN THIS TERRITORY.

SEC. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington*, That a sum of money, not exceeding three hundred dollars, is hereby appropriated out of any money in the territorial treasury, to provide suitable means for the safe keeping of all papers having a connection with the late Indian war in this territory.

SEC. 2.  Said money shall be expended under the direction of the Quartermaster-General; but the correctness of all accounts for such expenditure shall be certified to by the Governor of this territory before payment shall be made by the territorial treasurer.

Passed February 1, 1859.

59

# AN ACT

"APPROPRIATING MONEY OUT OF THE TERRITORIAL TREASURY TO PAY FOR THE CLEANING AND REPAIRING OF THE PUBLIC ARMS."

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That forty-five dollars are hereby appropriated out of the territorial treasury, to pay for cleaning and repairing the public arms; and the auditor of the territory is hereby authorized to audit accounts to that amount, certified to by the territorial quartermaster-general, and to draw warrants for the same on the territorial treasurer.

Passed January 10, 1859.

# AN ACT

DEFINING THE BOUNDARY LINE OF PIERCE COUNTY.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington*, That the boundary line of Pierce county shall be bounded as follows:

Commencing at a point in the middle of the channel of Puget Sound opposite the mouth of the Nisqually river; thence westerly along the middle of the main channel of Puget Sound to a point opposite Case's Inlet; thence north along the main channel to the head of said Inlet; thence due north to the line of township 22 north, range 1 west; thence due east to the middle of the channel of Colver's Passage; thence south along the middle of said passage and the middle of the main channel of Commencement Bay to a point on the 5th standard parallel; thence due west to the middle of the channel of White river to the summit of the mountains in the Nachess pass; thence south along the summit of said mountains to the head waters of the Nisqually river; thence westerly along the middle of the main channel of the Nisqually river to the place of beginning.

SEC. 2. All acts or parts of acts conflicting with this act are hereby repealed.

Passed January 29th, 1859.

60

# AN ACT

TO CORRECT AND CONSTRUE AN ACT ENTITLED AN ACT TO ALTER THE BOUNDARY LINE OF WHATCOM COUNTY.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That section first of the act to which this [is] a correction be so construed as to read "the point dividing the American and British possessions in the Gulf of Georgia; thence through the middle of the Canal de Arrow to the Straits of Juan de Fuca; thence easterly to the place of beginning.

Passed January 31, 1859.

---

# AN ACT

TO LOCATE THE COUNTY SEAT OF CLALM COUNTY.

SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Washington,* That it shall be lawful for the citizens of the county of Clalm to vote at the next annual election for a site on which to locate the county seat of said county.

SEC. 2. It is hereby made the duty of the county commissioners of said county at the holding of their March [May] term of court, to designate two or more sites to be voted for at the election aforesaid. The site having the highest number of votes shall be adopted as the site on which the county seat of said county shall be located.

SEC. 3. This act to take effect and be in force from and after its passage.

Passed January 18, 1859.

61

# AN ACT

### APPOINTING OFFICERS FOR SKAMANIA COUNTY.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That S. M. Hamilton, Henry Shepherd, and E. C. Hardy, be and they are hereby appointed a board of county commissioners for Skamania county.

And that George W. Johnston be and he is hereby appointed county auditor for Skamania county; and that John W. Stephenson be and he is hereby appointed treasurer for Skamania county, and that William Wilson be and he is hereby appointed sheriff for Skamania county; and that Isaac Bush be and he is hereby appointed Probate Judge for Skamania county; and that John Woodard be and he is hereby appointed justice of the peace for Skamania county.

Sec. 2.  That the persons appointed officers by the first section of this act shall, before entering upon the discharge of their respective duties, qualify in the same manner, and with like restrictions, as those elected at an annual election, and shall serve until their successors are elected and qualified.

Passed January 18th, 1859.

# AN ACT

### APPOINTING OFFICERS FOR WALLA-WALLA COUNTY.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That John Mahan, Walter Davis and John C. Smith, be and they are hereby appointed county commissioners for Walla-walla county, and Edward Pearce is hereby appointed sheriff of Walla-walla county, and that R. H. Reighart be and he is hereby appointed auditor of Walla-walla county, and that Samuel D. Smith be and is hereby appointed probate judge for Walla-walla county, and that J. L. Sims be and is hereby appointed justice of the peace in Walla-walla county.

Sec. 2.  The officers named in the foregoing section shall, before entering upon the duties of their respective offices, qualify as required by

62

the laws of this territory, and shall hold their office until the next annual election, or until their successors are elected and qualified.

Sec. 3.  This act to take effect and be in force from and after its passage.

Passed January 19, 1859.

# AN ACT

## APPOINTING OFFICERS FOR SPOKANE COUNTY.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That Robert Douglass, John McDugald, and Augus McLoud, be and they are hereby appointed county commissioners for Spokane county, and that Thomas Brown be and he is hereby appointed sheriff for Spokane county, and that Patrick McKenzie be and he is hereby appointed county auditor for Spokane county, and that Thomas Sternsger be and he is hereby appointed probate judge for Spokane county, and that Solomon Pilkey be and he is hereby appointed justice of the peace for Spokane county.

Sec. 2.  The officers named in the foregoing section shall, before entering upon the duties of their respective offices, qualify as required by the laws of this territory, and shall hold their offices until the next annual election, or until their successors are elected and qualified.

Passed January 18, 1859.

# AN ACT

## TO DISSOLVE THE BONDS OF MATRIMONY EXISTING BETWEEN WILLIAM H. PULLEN AND HIS WIFE MARIA B. PULLEN.

Sec. 1.  *Be it enacted by the Legislative Assembly of the Territory of Washington,* That the bonds of matrimony heretofore existing between

63

William H. Pullen and his wife Maria B. Pullen be, and the same are, hereby dissolved.

Sec. 2.   That the said Maria B. Pullen have the sole custody of her children, Anna Windsor, and James Edward Pullen, until they shall become of age.

Sec. 3.   This act to take effect and be in force from and after its passage.

Passed January 11, 1859.

# JOINT RESOLUTIONS.

I-9

# JOINT RESOLUTIONS

## OF

# WASHINGTON   TERRITORY.

## JOINT RESOLUTION

RELATIVE TO APPOINMENT OF JOINT COMMITTEE TO WAIT ON THE ACT-
ING GOVERNOR.

*Resolved,* That a committee of two be appointed on the part of the
Council, to act with a similar committee that may be appointed by the
House, to wait upon the Acting Governor of this territory, and inform
him that the two branches are now permanently organized and are ready
to receive any communication that he may be pleased to make.

Passed December 7, 1858.

## JOINT RESOLUTION

RELATIVE TO APPONITMENT OF JOINT COMMITTEE, TO EXAMINE THE
REPORT OF B. P. ANDERSON, ESQ., ONE OF THE CODE COMMISSIONERS.

*Resolved,* That a special committee of two be appointed on the part
of the Council, to confer with a like committee that may be appointed on

68

the part of the House, to take into consideration and recommend some course to be pursued by this legislature, relative to the report made by B. P. Anderson, Esq., one member of the commission appointed at the last session of the Legislative Assembly, to revise and compile the laws of Washington Territory, in accordance with a joint resolution passed the Council January 6th, 1858.

Passed December 16th, 1859.

# JOINT RESOLUTION

### RELATIVE TO THE ESTABLISHMENT OF A LINE OF MILITARY POSTS ALONG THE LINE OF THE EMIGRANT ROAD FROM THE MISSOURI RIVER TO FORT WALLA-WALLA.

*Whereas*, The great and growing interests of the northwest coast demand and should receive, at the hands of the Federal authorities, that attention which has been accorded heretofore to other sections of our common country.

*And Whereas*, In consequence of the Indian wars, and the hostile attitude of the Indian tribes occupying the country east of the Cascade and west of the Rocky Mountains, emigration to the Territories of Washington and Oregon has been entirely cut off; thus preventing the many thousands who are desirous of seeking homes for themselves in our beautiful valleys, from carrying into effect their desires, unless by a perilous ocean passage and at an expense too onerous to bear.

*Therefore, be it resolved by the Legislative Assembly of the Territory Washington*, That the Hon. I. I. Stevens, our Delegate in Congress, be requested to call upon the President of the United States and represent to him the great and urgent necessity for prompt and vigorous action on the part of the Federal Government in opening up and protecting the route of emigration, so that the same may be traveled in safety at all times; and that he be requested to urge upon the President the great importance and necessity of establishing a line of permanent military posts on the route of emigrant travel between the Walla-walla, in Washington Territory, and the waters of the Missouri, that ample protection and aid

69

may be afforded emigrants the coming season, from the bands of hostile savages who infest the line of the road, and who have heretofore committed so many brutal outrages upon our brethren.

*Resolved,* That the thanks of our people are due to the President of the United States for the establishment of a separate military department for the Territories of Washington and Oregon, and that in the assignment of the command of this department to the gallant and efficient chieftain, Brigadier Gen. W. S. Harney, he has but anticipated the wishes of our people.

*Resolved,* That the Governor of this Territory be and he is hereby requested to forward a copy of these resolutions to the Hon. I. I. Stevens, our Delegate in Congress, to be presented by him to the President of the United States; and that he also forward a copy to Brigadier Gen. W. S. Harney.

Passed December 22, 1858.

# JOINT RESOLUTION

### RELATIVE TO THE ADJOURNMENT OF THE LEGISLATURE OVER THE HOLIDAYS.

*Resolved by the House, the Council concurring,* That when the Legislature adjourns on Thursday, the 23d day of December, 1858, the adjournment shall be until Tuesday the 4th day of January, 1859.

# JOINT RESOLUTION

### RELATIVE TO CREATING WHATCOM (BELLINGHAM BAY) A PORT OF ENTRY.

*Resolved by the Legislative Assembly of the Territory of Washington,* That our Delegate in Congress be and he is hereby instructed to use his influence with the Congress of the United States, to have Whatcom, (Bellingham Bay) made a port of entry.

Passed December 23, 1858.

70

# JOINT RESOLUTION

EXPRESSIVE OF THE CONFIDENCE OF THIS LEGISLATURE CONCERNING THE PRESENT ADMINISTRATION, AND ALSO OF THE OPINION WHICH THEY ENTERTAIN OF THE DELEGATE IN CONGRESS.

*Resolved by the Council of Washington Territory, the House concurring*, That this body, as the representatives of the people thereof, have an abiding and unimpaired confidence in the integrity, justice and ability of the administration of President Buchanan; and that we hereby extend the gratitude of our citizens to the departments of War, the Post-office, and the Interior, for the able manner in which they have given us to understand that it is their determination to discharge their duties, nationally, to the great interest of the U. S. possessions.

*Resolved*, That our confidence in the integrity, ability, and working qualities of Gov. Stevens, the present Delegate in Congress for this Territory, is unimpaired; and that we can confidently look forward to his services in Congress for the interests of these Territories with pride and pleasure : being assured that he will do *all* that one man can do for the advancement of *all* the interests with which that portion of the United States possessions are identified.

Passed January 12, 1859.


# JOINT RESOLUTION

RELATIVE TO EMPLOYMENT OF ENROLLING CLERK.

*Resolved by the House, the Council concurring*, That the Joint Enrolling committee be, and they are hereby authorized to procure tho services of some suitable person as Enrolling Clerk, whose per diem shall not exceed four dollars.

Passed January 4, 1859.

71

# JOINT RESOLUTION

FOR THE ELECTION OF TERRITORIAL OFFICERS.

*Resolved by the Legislative Assembly of the Territory of Washington,* That the election of Territorial officers, designated by law to be elected on joint ballot of the two Houses of said Assembly, shall take place on the 22d day of January, 1859.

*Resolved,* That the Council and House of Representatives meet in joint convention on the day above set forth, at 11 o'clock, A. M., for the purpose of electing one Territorial Printer, one Territorial Librarian, one Territorial Treasurer, one Territorial Auditor, and three Capitol Commissioners.

Passed January 19, 1859.

# JOINT RESOLUTION

RELATIVE TO APPOINTMENT OF A COMMITTEE TO EXAMINE INTO THE CONDITION OF THE TERRITORIAL LIBRARY.

*Resolved by the Legislative Assembly of the Territory of Washington,* That a joint committee, consisting of two on the part of the Council and three on the part of House, be appointed to enquire into the condition of the Territorial Library.

Passed January 25, 1859.

# JOINT RESOLUTION

RELATIVE TO THE INTRODUCTION OF NEW BUSINESS.

*Be it resolved by the Legislative Assembly of the Territory of Washington,* That there shall be no new business introduced in either branch of the Legislative Assembly after Saturday the 29th inst.

Passed January 25, 1859.

72

# JOINT RESOLUTION

PRAYING TO BE BETTER SECURED FROM FIRE IN THE LAND OFFICES.

*Resolved by the Legislative Assembly of the Territory of Washington,* That our Delegate in Congress be requested to make immediate representation to the proper department of the condition of the Register's and Receiver's office, and to urge upon it the necessity of placing them in a proper condition to secure its papers from accident from fire; and further, to represent that there is no proper accommodation for the books and papers therein.

Passed January 26, 1859.

# MEMORIALS.

t-10

# MEMORIALS

#### OF

# WASHINGTON TERRITORY.

---

## MEMORIAL

#### RELATIVE TO A MILITARY ROAD FROM COWLITZ RIVER TO DALLES.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent to your honorable bodies the great necessity of a practicable wagon road, from some point on the Cowlitz river, (intersecting the military road from Puget Sound to Monticello, on the Cowlitz river,) *via* Vancouver, to Fort Dalles, on the upper Columbia, a distance of about 145 miles.

Your memorialists further represent, that great inconvenience and delay results from the want of such a road ; that the large expenditures of money, and damage done to property of the United States by the present difficult mode of transportation from one point to another,—the inconveniences and delay, and the irregularities and delay of the mails occasioned by the obstruction of river navigation by ice, are such as to command the speedy attention of Congress to the existing difficulty.

Therefore, your memorialists would pray your honorable bodies to

76

pass an act appropriating forty thousand dollars to build and open said road, and your memorialists as in duty bound will ever pray.

Passed December 21st, 1858.

---

# MEMORIAL

### RELATIVE TO ESTABLISHING A LIGHTHOUSE UPON HOOD'S CANAL.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would most respectfully represent that there is a large and increasing commerce upon Hood's Canal, principally growing out of the lumbering business ; that Hood's Canal is at present entirely destitute of any lighthouse, one being most essentially needed, not only to facilitate its commerce, but more readily to distinguish it from the numerous bays and inlets that branch off from the main part of Puget Sound proper.

Therefore, your petitioners most earnesty pray that there be an appropriation for the purpose of building a lighthouse upon Hood's Canal, at such place near its junction with Puget Sound as the proper officers appointed for that purpose may select.

Passed December 22d, 1858.

---

# MEMORIAL

### RELATIVE TO ERECTING A LIGHTHOUSE AT POINT ROBERTS.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that in consequence of the dis-

77

covery of gold in British Columbia, and the opening of Frazer river to the navigation of American vessels, a large and increasing trade for American products has sprung up in that quarter ; and in order to protect and facilitate this trade, it is highly necessary that a lighthouse should be erected at or near Point Roberts, in this territory.

Your memorialists would therefore humbly pray your honorable bodies to pass an act appropriating a sufficient sum of money to erect a lighthouse at said point.

Passed December 22d, 1858.

---

# MEMORIAL

### RELATIVE TO THE ESTABLISHMENT OF A MILITARY ROAD FROM FORT VANCOUVER TO FORT SIMCOE.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that there has been a good pass discovered through the Cascade mountains, between the McClelland and Columbia river passes, and that said pass is of less elevation than any pass yet discovered, except the Columbia river pass ; that the citizens of Vancouver and vicinity have expended a large amount of money in opening a trail through said pass, from Vancouver to the open country east of the mountains ; that said trail avoids all water courses of any size ; that said trail is the shortest route from Vancouver to Fort Simcoe, and the open country east of the Cascade mountains ; and that a good wagon road on or near said trail would be a great convenience to the citizens of this territory, and saving to the military in transporting men and supplies.

And your memorialists would further represent, that a good wagon road can be made, on or near said trail, which will be free from troublesome water courses all seasons of the year.

Therefore, your memorialists would respectfully pray your honorable bodies to pass an act appropriating thirty thousand dollars to build a wagon road on or near the trail leading from Vancouver to Fort Simcoe.

Passed December 21st, 1858.

78

# MEMORIAL

PRAYING AN APPROPRIATION BY CONGRESS FOR A MILITARY ROAD
FROM BAKER'S BAY, BY SHOALWATER BAY AND GRAY'S HARBOR, TO
PORT TOWNSEND.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of
Washington, would respectfully represent that there are no means of com-
munication between Astoria, Oregon Territory, and Port Townsend, on
Puget Sound, except by sea ; that in case of an attack by Indians, or
other enemy, communication between the military posts on the Columbia
river and Puget Sound, with Shoalwater Bay and Gray's Harbor, would
be liable to great danger and delay, by storms on the sea and bad weather
in winter, or by the great distance to be passed over ; that a military
road connecting these posts would very much contribute to the safety of
the country, to say nothing of the development of the resources of that
interesting belt of territory stretching from the Straits of Juan de Fuca
and Puget Sound to the Columbia river ; that those citizens who have
carried the arts of husbandry and the benefits of civilization into the re-
cesses of the wilderness, have at all times a right to expect protection
from the government, especially at this time, when the chances of Indian
disturbances are greatly increased by the extensive accessions which the
northwest is receiving to its population ; that the construction of that
part of the road laying between Baker's Bay, on the Columbia river, and
Gray's Harbor, will be attended with but little expense, from the fact
that the proposed route will pass through a prairie, or open county, with
with the exception of a short distance.

To avert such dangers, and to secure an easy, safe, reliable and
rapid transportation of troops and munitions of war, at all seasons, to the
isolated and unprotected citizens inhabiting that portion of our western
frontier, your memorialists pray your honorable bodies to pass an act
granting a sufficient appropriation to construct a military road from Cape
Disappointment, at a point on Baker's Bay, (to connect with the military
post at Astoria, Oregon,) by way of Shoalwater Bay and Gray's Har-
bor, to Port Townsend, Washington Territory, for which we will ever
pray.

Passed December 23d, 1858,

79

# MEMORIAL

RELATIVE TO THE ERECTION OF A LIGHT-HOUSE AT GRAY'S HARBOR, AND
TO SURVEY AND BUOY OUT ITS BAR AND CHANNEL.

*To the Honorable the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of
Washington, would most earnestly and respectfully represent, that the
increasing settlement in the valley of the Chehalis, and in the country
surrounding Gray's Harbor, demands that a light-house should be erected
at Gray's Harbor, and that the channel and bar thereof should be sur-
veyed and buoyed out.

Therefore, your memorialists would respectfully pray your honorable
bodies to pass an act appropriating a sufficient sum to construct a light-
house thereat, and also to survey and buoy out the bar and channel as
aforesaid, thereby improving commercial advantages of that place—for
which we will ever pray.

Passed December 22, 1858.

# MEMORIAL

RELATIVE TO THE EXTINGUISHMENT OF THE RIGHT OF THE HUDSON
BAY AND PUGET SOUND AGRICULTURAL COMPANIES.

*To the Honorable the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of
Washington, would respectfully represent, that there are certain claims
set up by the Hudson Bay and Puget Sound Agricultural companies,
under the treaty of 1846, which are seriously retarding the growth and
prosperity of our territory, and doing great injustice to our citizens. By
that treaty, the *possessory* rights of the Hudson Bay Company were to be

80

*respected*, and the farms, land, and other property of every description, belonging to the Puget Sound Agricultural Company, on the north side of the Columbia, were to be confirmed.

The general nature of the terms used, render it apparent that there must be an extreme indefiniteness as to the limits of the rights and property supposed to be guarantied by the treaty. This has proved a serious grievance to many of our citizens, who have not been willing to admit or acknowledge that a simple alleged occupancy at some indefinite time, without any fences, metes or bounds, or the mere roving of cattle over an open country, were sufficient evidences of title to debar them from the rights and privileges of the provisions of the various land laws applicable to this territory.

Moreover, these pretended rights have been set up in three of the most populous counties in the territory, the counties of Clark, Lewis and Pierce. In each of these three are many settlers, whose claims otherwise perfect, have this defect, of being claimed by these companies, the government surveys having been stopped at their alleged lines. It must at once be apparent what a detriment this uncertainty is to the occupant. Litigation has already taken place, and will continue so to do, a matter which can only effect individual cases, and is as a general thing to be avoided.

It is not our desire or intention to enter into a discussion of the legal rights, or the extent of what is secured to them by the treaty. We simply suggest that they are an injury to our social progress in a business point of view, and effect the title to a large quantity of the best and most available land in the western portion of the territory.

The request of the citizens of Canada for the definition of their rights, and the extinction of their privileges over a large portion of their territory—the formation of the colony of Columbia and the probable connection of Vancouver's Island with the same, are evidence of the estimation in which they are held by their own people in reference to social progress. It must certainly be considered as natural, that we, having no connection with these foreign corporations, but suffering injury from their pretended claims, should desire a speedy settlement of the same.

Your memorialists would therefore respectfully represent that they deem it of the greatest importance to the present and future welfare of this territory, not only the determination of this vexed question but the extinction by purchase of all the rights of these companies within our midst, and the confirmation of their titles, to our citizens for their claims taken by virtue of the land laws applicable to this territory, and which claims come within the bounds of the land claimed by either or both, the

81

Hudson Bay and Puget Sound Agricultural companies.   This has already been a subject of memorial to a previous Congress, and your memorialists would respectfully and earnestly pray for speedy action in the matter.

Passed December 22, 1858.

# MEMORIAL

### PRAYING FOR THE CONFIRMATION OF THE INDIAN TREATIES IN WASHINGTON TERRITORY.

*To the President and Senate of the United States:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully again call your attention to the necessity of having the treaties heretofore made by the proper authorities with the Indians of this territory confirmed, and their stipulations enforced and carried out.

Passed December 22, 1858.

# MEMORIAL

### RELATIVE TO THE SUPERINTENDENCY OF INDIAN AFFAIRS.

*To the Honorable, the Senate and House of Representatives*
*of the United States :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that it is highly necessary that the present Superintendency of Indian Affairs, embracing the Territories of Oregon and Washington, should be divided, and a separate Superintendency created, embracing the Territory of Washington. The extent of territory, the number of Indians, and the amount of business to be trans-

82

acted render it necessary that this office should be created. The number of Indians in this Territory approximate to twenty-five thousand, and they are allowed to roam over the lands now occupied by our rapidly increasing white population. This renders the duties of the officers of the Indian department in our territory both intricate and laborious. The discovery of gold in the British Possession, immediately to the North of this Territory, which causes many miners and seekers of gold to pass through the interior of our Territory in armed bands, adds still more to the duties of those officers.

Your petitioners would therefore respectfully pray, that Washington Territory be created into a separate Superintendency, with a Superintendent of Indian Affairs to reside therein.

Passed Dec. 22d, 1858.

# MEMORIAL

RELATIVE TO THE ESTABLISHMENT OF A COAL DEPOT AT WHATCOM, BELLINGHAM BAY.

*To the Honorable, the Senate and House of Representatives*
*of the United States:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that there exists within the limits of the Territory of Washington, large fields of admirable coal, comparing favorably with the best English coals, and well adapted for all purposes of commerce, both in the manufacture of steam and for domestic use. Some of these on Bellingham Bay have been worked to some extent, and have yielded returns of the most satisfactory quality, rendering it positive that it will answer all the necessary requisites of steam vessels. It can also be furnished here at two-thirds the cost of the simple transportation of coals from any other part of the globe.

In view of the frontier nature of our Territory, its proximity to a foreign colony, its extreme exposure to innumerable hordes of savage tribes to the North, the character of its waters, it is apparent that the only kind of vessels of war that can be of material service are such as are navigated

83

by steam. As a matter of convenience to such, and as tending materially to develop this great interest, we respectfully request the establishment of a coal depot on Puget Sound, at Bellingham Bay, similar to what is maintained in other parts of the world, at which a certain number of tons should always be kept on hand, for the use of the national vessels of war.

Passed Dec. 23d, 1858.

# MEMORIAL

ASKING FOR AN APPROPRIATION FOR A MILITARY ROAD FROM GREY'S BAY, ON THE COLUMBIA RIVER, TO FORT STEILACOOM, ON PUGET SOUND.

*To the Honorable, the Senate and House of Representatives*
*of the United States, in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully ask for an appropriation of thirty thousand dollars for the construction of a military road from Grey's Bay, on the Columbia river, by the way of the head of navigation on the Willapa river; thence to the mouth of Black river to Fort Steilacoom on Puget Sound: as your memorialists are informed and believe there is no formidable obstructions on the route proposed to be overcome, and that the amount asked for will be sufficient to open the communication between the points named.

The interest of the Territory of Washington require the road.

The present isolated situation of the settlement on the lower Chehalis river, Grey's Harbor, the Willapa and Shoal-water Bay, demands the road, that the military may afford themselves some protection in the event of Indian hostilities. The district of country through which the proposed road would run, is well adapted to agricultural and grazing purposes, and the construction of the road would induce settlers to occupy it, and thereby enhance the value of the land along the line of the proposed road.

Your memorialists would respectfully but earnestly request your early and favorable consideration of this memorial.

Passed Dec. 23, 1858.

84

# MEMORIAL

RELATIVE TO AN ADDITIONAL APPROPRIATION FOR COMPLETING THE
MILITARY ROAD FROM FORT WALLA-WALLA TO FORT BENTON.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully call the special attention of Congress to that portion of the domain of the United States on the Pacific, within the limits of the Territory of Washington. With its long line of sea-coast; its great commercial importance; its numerous and capacious harbors; its lumbering, fishing and agricultural interests, and its vast mineral wealth, it is believed to possess far greater important advantages than any other of our territorial possessions.

We beg leave, also, to call your attention to the fact that from the Atlantic side of the Rocky Mountains, leading directly into this Territory, not a military or emigrant road has ever been opened. The adaptability of the country from the Mississippi along the line of the Missouri to Fort Benton, and from thence to Walla-walla, for the construction of roads, is as favorable as any route across the continent within the limits of the United States.

By an act of Congress, approved February 6th, 1855, thirty thousand dollars was appropriated for the construction of a military road from the great falls of the Missouri to Fort Walla-walla, a distance of about 700 miles.

Orders issuing from the War Department early last spring, assigned the duty of opening this road to a well known and energetic officer of the army. Taking the field for the prosecution of his work in the month of May, he was compelled to abandon the expedition for the season, on account of the open war waged upon the whites by the Indian tribes in that quarter. From present indications it is believed the work can be resumed again in the spring.

Taking into consideration the long line of road to be opened, the appropriation made the 6th of February, 1855, is deemed insufficient, and the engineer in charge estimates as necessary for the effective prosecution of the work, an additional sum of fifty thousand dollars.

In view of the prospective rapid settlements likely to spring up in the recently organized colony of British Columbia on the North; the great and vital importance of this line of communication to our government in a military point of view, is fully apparent. Passing as it would, a greater portion of the way, through a good grazing and farming region, it is high

85

ly important that this route should be opened as an emigrant road, and also, as a post route; the Post Master General having recently invited proposals for carrying the United States mails, semi-monthly, in covered wagons or post-coaches, from St. Paul, on the Mississippi, by Fort Union and Fort Benton to Seattle, on Puget Sound.

Your memorialists, therefore, in view of the facts above set forth, earnestly and respectfully request that an additional appropriation of fifty thousand dollars be made at an early day, to open the military road from Fort Walla-walla to Fort Benton the coming spring.

Passed Dec. 22, 1858.

# MEMORIAL

### ASKING FOR A GRANT OF LAND TO THE TERRITORY OF WASHINGTON FOR RAILROAD PURPOSES.

*To the Hon. the Senate and House of Representatives*

*of the United States, in Congress assembled:*

Your Memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that an act of incorporation passed the Legislature of this Territory on the 28th day of January, 1857, creating the "Northern Pacific Railroad Company." The aim and desire of the company is to connect Puget Sound with the head of Lake Superior. The route contemplated by the act locates the road through Washington, Nebraska and Minnesota, by the most direct practicable route.

The necessity now existing for a railroad connection between our Pacific possessions and the Atlantic States is no longer a question for argument. Its great importance was admitted by the Democratic and Republican conventions, which nominated respectively Hon. James Buchanan and Col. Fremont, for the Presidency.

In view of the prompt steps already taken by the English Government towards the speedy construction of works of internal improvement within her newly organized Colony of British Columbia, and the establishment of a great naval depot on Vancouver's Island; the necessity for such a communication to the maintenance of our present position on the Pacific is fully apparent.

86

A more speedy and direct means of intercourse with the Atlantic sea-board than is at present afforded by the route through a tropical climate, and the possessions of a foreign power, is demanded. The security and protection of American citizens, to say nothing of the possessory rights of the United States in this quarter, demand the construction of a railroad through our own territories. Without it no defence of the Pacific coast against a great naval force can possibly be made. Such a highway is needed for the commerce of our own country, for its defence in war and its prosperity in peace. It is needed for the national necessities of our people, for the intercourse of our citizens, and for the commercial commerce of the civilized world. Simple justice to the Pacific State which are, and which will be, demand it.

Looking to these important facts, your memorialists would beg to again refer to the act of the Legislative Assembly of this territory, incorporating the "Northern Pacific Railroad Company," and to respectfully request that Congress pass an act making a grant of land to the Territory of Washington for railroad purposes, of the same nature and under like restrictions as the act donating lands to the Territory of Minnesota, approved March 3d, 1857.

Passed December 23, 1858.

# MEMORIAL

PRAYING FOR AN ADDITIONAL APPROPRIATION TO COMPLETE A MILITARY ROAD FROM FORT STEILACOOM TO FORT BELLINGHAM.

*To the Honorable the Senate and House of Representatives of the United States, in Congress assembled* :

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that the sum of money heretofore appropriated by Congress to construct a military road from Fort Steilacoom to Fort Bellingham, on Bellingham Bay, in this Territory, has all been expended in the construction of said road and has proved to have been insufficient to accomplish the object for which it was appropriated; and in view of the great importance of this road for the better defence

87

against the Indians who inhabit the country through which it is constructed, and that the completion of said road is of the most vital importance, therefore, your memorialists would earnestly solicit your honorable body to appropriate a sum sufficient to complete said road, and your memorialists, as in duty bound, will ever pray.

Passed January 4, 1859.

# MEMORIAL

## PRAYING THE ESTABLISHMENT OF A LIGHT HOUSE AT SANDY POINT, ON ADMIRALTY INLET.

*To the Honorable the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that a light house on Sandy Point would most materially facilitate the navigation of the upper portion of the Sound; and we therefore, most earnestly solicit an appropriation for that object.

Passed January 14, 1859.

# MEMORIAL

## ASKING AN APPROPRIATION FOR THE CONSTRUCTION OF BRIDGES ON THE NISQUALLY AND DES-CHUTES RIVERS.

*To the Honorable, the Senate and House of Representatives*
*of the United States, in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would most respectfully represent the great necessity of

88

bridges being placed across the Nisqually and Des-Chutes rivers, where the military road from Vancouver to Fort Steilacoom crosses said rivers. Your memorialists would ask for an appropriation to be made by your honorable bodies for the construction of good and substantial bridges at the points above mentioned.

Passed January 14, 1859.

---

# MEMORIAL

### RELATIVE TO THE ESTABLISHMET OF A MILITARY ROAD FROM SEATTLE, ON PUGET SOUND, VIA SNOQUALMIE PASS, TO FORT COLVILLE.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memolialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that there has been a good pass discovered through the Cascade mountains, known as the Snoqualmie Pass, and that said pass is of much less elevation than the Natches Pass ; that the citizens of Seattle and vicinity have expended a large amount of money and labor in opening a trail through said pass, from Seattle to the open country east of the mountains ; that said trail is the shortest and most practicable route from Seattle to the open country east of the Cascade mountains ; and that a good wagon road on or near said trail would be a great convenience to the citizens of this territory, and saving to the military in transporting men and supplies ; therefore, your memorialists would respectfully pray your honorable bodies to pass an act appropriating a sufficient sum to build a wagon road from Seattle, on Puget Sound, *via* Snoqualmie Pass, to Fort Colville.

Passed January 18th, 1859.

89

# MEMORIAL

### RELATIVE TO THE FREE NAVIGATION AND IMPROVEMENT OF DEWAMISH AND WHITE RIVERS.

*To the Honorable the Senate and House of Representatives*
*of the United States in Congress assembled:*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that the Dewamish and White rivers are navigable streams for small class steamers, at all seasons of the year, for thirty-five or forty miles from Seattle, on Puget Sound ; and, whereas, said rivers are now obstructed by drifts, etc., to the great detriment of the free navigation of said rivers and the speedy settlement of the public lands lying adjacent thereto, and the transportation of goods and supplies ; believing that six thousand dollars would be amply sufficient to clean out all obstructions from said rivers, making said rivers open to the free navigation of steamers drawing from twenty to thirty inches, at all seasons of the year ; therefore, your memorialists would respectfully pray your honorable bodies to pass an act appropriating six thousand dollars for the improvement and free navigation of said rivers.

Passed January 26th, 1859.

# MEMORIAL

### PRAYING FOR AN INCREASE OF PAY FOR SURVEYING PUBLIC LANDS IN WASHINGTON TERRITORY.

*To the Honorable the Senate and House of Representatives*
*of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully represent that in view of the rapid increase in the settlement of this Territory; the many conflicting disputes arising from the occupancy of unsurveyed lands, and more particularly the great difficulty of surveying the lands in this Territory; therefore, your memorialists earnestly pray your honorable body to make such increase of the legal allowance per mile, for surveying the public lands of this Territory, west of the Cascade Mountains, as will, in your judgment, insure its speedy and vigorous prosecution.

Passed January 26, 1859.

90

# MEMORIAL

RELATIVE TO ELECTING GOVERNORS AND JUDGES BY THE PEOPLE.

*To the Honorable the Senate and House of Representatives
of the United States, in Congress assembled :*

Your memorialists, the Legislative Assembly of the Territory of Washington, would respectfully request that your honorable body would pass an act authorizing American citizens, over whom Territorial governments are established, to choose their own Governors and Judges.

# INDEX.

# INDEX.

## A

PAGE.

ACKNOWLEDGMENT—
    County Auditors authorized to take,     21
ANDERSON, B. P.—
    Compilation of laws, report of,     67
APPROPRIATION—
    For safe keeping of papers connected with the Indian war,     58
    For cleaning and repairing public arms,     59
ASSESSORS—
    See County Assessors.

## B

BOND—
    By party desirous to turn road,     10
BRIDGE—
    Repairing of, caused by falling timber, etc.,     15
BUSH, I. H.—
    Authorized to establish ferry across the Columbia,     54

## C

CASCADE RAILROAD COMPANY—
    Act to incorporate,     37
    Powers of,     37
    Books to be opened, when,     37
    As to privilege of subscribing to stock,     37, 38
    Road to be surveyed, by whom,     38
    General powers of, as to holding and disposing of property, etc.,     38
    As to votes, and number of shares,     38

94

PAGE.

CASCADE RAILROAD COMPANY—
 Dividend when to be declared,   38
 Officers of,   38
 Stock of, how transferred,   39
 Other charters may be granted,   39
 Capital stock may be assessed,   39
  "  "  "  " sold on failure to pay assessment,   89
 Road when to be constructed,   39
 Warehouses to be built,   39
 Damages of owners of property how assessed,   39
 Charter not to obstruct military or territorial roads,   39
CERTIFICATE—
 Of extra road labor by Supervisor,   16
 Of performance of road labor, not assignable,   16
 Of Road Supervisor, form of,   18
CHURCH PROPERTY—
 Exemption from taxes,   20
CLALM COUNTY—
 Act to locate county seat of,   60
COLUMBIA RIVER—
 Certain fisheries are protected,   26
 Ferry established across,   54
COMPLAINT—
 Of grievances of County Commissioners in opening roads,   9
 Of grievances caused by locating private ways,   11
 Of grievances by opening territorial roads,   11
 Of acts of Road Supervisor,   15
COUNTY—
 Tax payable in county orders,   19
 In debt, act for relief of,   22
 Clalm, act to locate county seat of,   60
 Pierce, act defining boundary line of,   60
 Skamania, act appointing officers for,   61
 Spokane,  "  "  "  "   61
 Walla-Walla, "  "  "  "   61
 Whatcom, act defining boundary line of,   60
COUNTY ASSESSORS—
 Amendatory act relative to,   20
COUNTY AUDITOR—
 To keep road book,   9
 To collect fine of delinquent Supervisor,   12
 To fill vacancy of Road Supervisor,   13
 To furnish Road Supervisor with abstract of road taxes, etc.,   13
 Not to add any per cent. to unpaid road tax,   17
 Not allowed fees out of road fund,   17
 May take acknowledgment of deeds,   21
COUNTY COMMISSIONERS—
 Jurisdiction over roads and highways,   8
 May alter, vacate, or establish county roads,   8
 Not to establish, &c., any road unless notice has been given,   9
 To cause County Auditor to keep road book,   9
 Damages for acts of, upon county roads,   9
 May fix width of county roads,   10

PAGE.

COUNTY COMMISSIONERS—
Petitioners to, for roads, to contribute labor, 10
Petitions to, for turning roads, &c., 10
Mode of grantion locating of private ways, 11
Damages caused by locating private ways, 11, 12
To assess taxes, against delinquent Supervisor, 12
To divide county into road districts, 13
To levy road tax, when, amount, and on whom, 13
To assess damages for acts of Supervisor, 15
Settlement of accounts of Supervisor, 16
To allow expenses of erecting guide and finger boards, 17
To fix compensation of Supervisor, 17
May cancel road tax improperly taxed, 17
To apportion road fund at May session, 18
To hold two terms of court annually, 21

COUNTY ORDERS—
May be endorsed when county taxes are paid, 19
Not to be depreciated by increasing county tax, 22

COUNTY REVENUE—
Payable in county orders, 10

COUNTY TREASURER—
Not allowed fees out of road fund, 17
To hold road survey subject to order of county commissioners, 17
To endorse credits on county orders, and how 19

COURT—
Instructions by, act relating to, 4
To instruct after argument, 4
County Commissioners, terms of, 21
District, of county of Pierce, act conferring jurisdiction, 27
Probate, deprived of civil and criminal jurisdiction, 5
In estates of minors and persons of unsound mind out of territory, 5
To appoint trustees for such estates, 5
Supreme, when to regard exceptions to instructions, 4

COWLITZ RIVER STEAM NAVIGATION COMPANY—
Act to incorporte, 41
Name, and object of, 41
Powers of, 41
To have a steamer runing, when, 41
To remove obstructions, when, 41
Liability of stockholders, 42
Exclusive privileges, 42
Rates for freight and passage, 42
Charter how forfeited, 43

## D

DAMAGES—
For action of County Commissioners upon county roads, 9
Caused by locating private way 11
On territorial roads—manner of assessing, 11, 12
Caused by Assessor in constructing roads, 15
To roads by falling of timber, &c., 15

## 96

|  | PAGE. |
|---|---|
| **DELINQUENT—** | |
| Road taxes, penalty and mode of collection, | 14 |
| **DISTRICT COURT OF PIERCE COUNTY—** | |
| Act conferring jurisdiction, | 27 |
| Pierce county made a District, | 27 |
| Terms of, | 27 |
| Judge and Clerk of, | 27 |
| Practice therein, | 27 |
| Grand and petit jury of, | 27 |
| **DIVORCE—** | |
| Act granting to Maria B. Pullen and Wm. H. Pullen, | 63 |

## E

| | |
|---|---|
| **ELECTION—** | |
| Territorial officers, time of, | 71 |
| **EXCEPTION—** | |
| To instructions by court, | 4 |
| When to be regarded by Supreme Court, | 4 |
| Of church property from taxes, | 20 |
| **ESCHEAT—** | |
| Of lands to county, when to take effect, | 7 |
| **ESTATE—** | |
| Of persons of unsound mind and minors (act), | 5 |
| Sale of property of persons of unsound mind and minors, | 5 |
| Trustees of minors and persons of unsound mind, | 5 |
| Of intestate, when to escheat to county, | 7 |

## F

| | |
|---|---|
| **FERRIES—** | |
| Act authorizing I. H. Bush to establish a ferry across the Columbia river, | 54 |
| " E. L. Massey to establish a ferry on Snake river, | 55 |
| " C. C. Vail to establish a ferry across the Lummie or Nootsack, | 56 |
| **FINES—** | |
| Of delinquent road Supervisor, how collected, | 12 |
| For obstructing drain made by road Supervisor, | 15 |
| Of road Supervisor for neglect of duty, | 16 |
| " " for giving false certificate, | 17 |
| **FISHERIES—** | |
| An act for the protection of certain fisheries, | 21 |
| **FORMS—** | |
| Of certificate of road Supervisor, | 18 |

## G

| | |
|---|---|
| GUIDE and finger-board to be erected at cross roads, | 17 |

## H

| | |
|---|---|
| **HARNEY—** | |
| Gen. Wm. S., U. S. Army, commendatory resolution, | 68 |
| Highways. (See roads and highways.) | |

97

# I

|  |  | PAGE. |
|---|---|---|
| INCORPORATION, ACTS OF— | | |
| | Of town of Olympia, | 31 |
| | Of Olympia Bridge Company, | 35 |
| | Of Cascade Railroad Company, | 37 |
| | Of Institution of Learning, &c., in Clarke county, | 40 |
| | Of Cowlitz river Steam Navigation Company, | 41 |
| | Of Monticello Division No. 1 of Sons of Temperance, | 42 |
| | Of Olympia Division No. 2 of Sons of Temperance, | 43 |
| | Of Tum-water Division No. 3 of Sons of Temperance, | 44 |
| | Of Grand Mound Division No. 4 of Sons of Temperance, | 45 |
| | Of Washington Division No. 5 of Sons of Temperance, | 46 |
| | Of Good Samaritan Division No. 6 of Sons of Temperance, | 47 |
| INSTITUTION OF LEARNING AND CHARITABLE PURPOSES— | | |
| | Act to incorporate, in the county of Clarke, | 40 |
| | Name of, | 40 |
| | Object of, | 40 |
| | Powers of, | |
| | New members added, and vacancies filled, how, | 40 |
| | Deeds, &c., of—how executed, | 40 |
| INSTRUCTIONS— | | |
| | By the Court to be after argument, | 4 |
| | Exceptions to, when regarded by Supreme Court, | 4 |
| | May be requested in writing, | 4 |
| INTESTATES— | | |
| | Estates of, when to escheat to county, | 7 |

# J

| | | |
|---|---|---|
| JACKASSES— | | |
| | Act concerning, | 22 |
| JOINT RESOLUTIONS—(See Resolution.) | | |
| JUDGES— | | |
| | Assignment of, act concerning, | 3 |
| | When may hold court, out of respective district, | 4 |

# L

| | | |
|---|---|---|
| LABOR— | | |
| | On roads, who liable, | 13 |
| | Notice of, on roads, when to be given, | 13, 14 |
| | Extra, on roads, to be credited by Supervisor, | 16 |
| | Certificates of, to be given, | 16 |
| | Certificates of, not assignable, | 16 |
| LAND OFFICE— | | |
| | Records of, resolution to secure, | 72 |
| LIBRARIAN, TERRITORIAL— | | |
| | Act defining his duties, | 25 |
| | Hours to attend at library, | 25 |
| | Duties of, | 25 |

13–L

## 98

|  | PAGE. |
|---|---|
| **LIBRARY, TERRITORIAL—** | |
| Hours to be kept open, | 25 |
| Resolution concerning, | 71 |
| **LIGHT-HOUSES—** | |
| Memorials concerning, (See memorials.) | |
| **LUMMI RIVER—** | |
| Ferry established on, | 56 |

## M

| | |
|---|---|
| **MARRIAGES—** | |
| Amendatory act, concerning, | 14 |
| **MASSEY, E. L.—** | |
| Authorized to establish a ferry on Snake river, | 55 |
| **MATRIMONY—** | |
| Bonds of, between William H. Pullen and Maria B. Pullen, dissolved, | 62 |
| **MEMORIALS—** | |
| Relative to a military road from Cowlitz river to the Dalles, | 75 |
| " to establishing a light-house on Hood's Canal, | 76 |
| " to erecting a light-house at Point Roberts, | 76 |
| " to the establishment of a military road from Fort Vancouver to Fort Simcoe, | 77 |
| Praying an appropriation for a military road from Baker's Bay to Fort Townsend, | 78 |
| Relative to the erection of a light-house at Gray's Harbor, and to survey, &c., | 79 |
| Relative to the extinguishment of Hudson Bay and Puget Sound Agricultural Companies, | 79 |
| Praying for the confirmation of the Indian treaties, | 81 |
| Relative to the Superintendency of Indian Affairs, | 81 |
| Relative to the establishment of a coal depot at Whatcom, | 82 |
| Asking for an appropriation from Gray's Bay, on the Columbia river, to Fort Steilacoom, | 83 |
| Relative to an additional appropriation for completing the military road from Fort Walla-walla to Fort Benton, | 84 |
| Asking for a grant of land for railroad purposes, | 85 |
| Praying an additional appropriation to complete a military road from Fort Steilacoom to Fort Bellingham, | 86 |
| Praying the establishment of a light-house at Sandy Point, | 87 |
| Asking an appropriation for construction of bridges on the Nisqually and Deschutes rivers, | 87 |
| Relative to the establishment of a military road from Seattle to Fort Colville, | 88 |
| Relative to the free navigation and improvement of Dewamish and White rivers, | 89 |
| Praying for increase of pay for survey of public lands, | 89 |
| Relative to electing Governor and Judges by the people, | 90 |
| **MILITARY ROADS—** | |
| Declared to be territorial roads, | 24 |
| Memorials for (see memorials.) | |
| **MINORS—** | |
| Estates of, residing out of territory, act relating to, | 5 |

# N

|  | PAGE. |
|---|---|
| NATIONAL ADMINISTRATION— | |
| Resolution endorsing, | 70 |
| NOTICE— | |
| Of establishing, altering or vacating roads, | 9 |
| Of election of road Supervisors, | 12 |
| By Supervisor, for labor on roads, | 18 |

# O

| | PAGE. |
|---|---|
| OBSTRUCTION— | |
| Of ditches made by Supervisor, | 15 |
| Of roads, &c., by falling timber, | 15 |
| OLYMPIA— | |
| Act to incorporate the town of, | 31 |
| Boundaries of | 31 |
| Constituted a body politic, &c., | 32 |
| Board of Trustees to be elected, | 32 |
| Town Clerk and Marshal of, | 32 |
| Officers of, when to be elected, | 32 |
| Who entitled to vote for officers of, | 32 |
| Who eligible to office, | 32 |
| Time and manner of election of officers, | 32 |
| Trustees to fill vacancies, | 32 |
| Election to continue but for one day, | 32 |
| Plurality of votes, to elect, | 32 |
| Clerk to issue certificate, | 32, 33 |
| Trustees to elect a President, | 33 |
| Trustees to fix the time and place of meetings, | 33 |
| Majority of Trustees to constitute a quorum, | 33 |
| Ordinance to be signed by the President, | 33 |
| Power and authority of Trustees, | 33 |
| Trustees to receive no compensation, | 34 |
| Compensation of Town Clerk, | 34 |
| Fees of Marshal, | 34 |
| Town Treasurer to be elected, when, | 34 |
| Duty of Town Marshal, | 34 |
| Duty of Town Treasurer, | 34 |
| Duties of all officers to be defined by ordinance, | 34 |
| All officers to make oath, before entering upon their duty, | 34 |
| Appropriation for over one hundred dollars to lie over two meetings, | 34 |
| Act when to take effect, and who appointed trustees, &c., | 34 |
| OLYMPIA BRIDGE COMPANY— | |
| Act to incorporate, | 35 |
| Powers of, | 35 |
| Capital stock of, | 35 |
| Management of business of, | 35 |
| Election of Directors, | 35 |
| Who to be first Directors, | 35 |
| Election of officers, | 35 |
| First meeting of Directors, when, | 35 |
| Directors may enforce payment of subscriptions, | 35 |

100

|  | PAGE. |
|---|---|
| Location of said bridge, | 36 |
| Bridge to be provided with a draw, | 36 |
| General powers of, as to property, rates of toll, &c., | 36 |
| When, and how said bridge may be purchased from stockholders, | 37 |

# P

PAPERS CONNECTED WITH THE INDIAN WAR—

| Appropriation for safe keeping of, | 58 |
|---|---|

PENALTY—

| For violating bill concerning Jack-asses, Stud-horses, &c., | 23 |
|---|---|
| For violating act protecting certain Fisheries, | 26 |

PIERCE COUNTY—

| Wreck Master law extended to, | 25 |
|---|---|
| District Court of, act conferring jurisdiction, | 27 |
| Act defining boundary of, | 59 |

PUBLIC ARMS—

| Appropriation for cleaning and repairing, | 59 |
|---|---|

PULLEN—

| William H. and Maria B., divorced, | 62 |
|---|---|

# R

RAILROAD—(See Cascade Railroad Company.)

RELIEF OF COUNTIES IN DEBT—

| Act concerning, | 22 |
|---|---|

RESOLUTION—

| To wait on Governor informing of organization of Assembly, | 67 |
|---|---|
| Joint Committee, to examine compilation of laws, | 67 |
| Line of military posts from Missouri river to Fort Walla-walla, | 68 |
| Adjournment of Assembly for the Holidays, | 69 |
| As to Whatcom a Port of Entry, | 69 |
| Endorsing Administration, and Delegate in Congress, | 70 |
| Employment of an Enrolling Clerk, | 70 |
| Election of Territorial officers, | 71 |
| To examine Territorial Library, | 71 |
| Relative to new legislative business, | 71 |
| Security of land office records, | 72 |

REVENUE —

| Act regulating County and Territorial, amended, | 18 |
|---|---|
| "            "            " | 19 |
| County, may be paid in county orders, | 19 |
| Territorial to be one-quarter of a mill, | 20 |

RIDGLINGS—

| Act concerning, | 22 |
|---|---|

ROADS—(See Territorial Road)—

| Military declared Territorial, | 24 |
|---|---|

ROADS AND HIGHWAYS—

| Act in relation to construction of, | 7 |
|---|---|
| County Commissioners to exercise jurisdiction over county roads, | 8 |
| At regular term of county court, roads may be established, altered, or vacated, | 8 |

# 101

PAGE.

Provisions for establishment, alteration or vacation of county roads—notice and petition; requisites of, 9

County Auditor to keep road book—roads to be entered and recorded before declared—road book to be a public record, 9

What road book shall contain, 9

Claim for damages for opening and altering roads, &c.—when complaint against Commissioner shall be dismissed, 9

Width of county roads, 10

When Supervisor may expend labor on territorial road, 10

Petitioners for roads liable for work thereupon, 10

Roads located shall be marked, but not surveyed. Exception, 10

When and how road may be turned by owner of land over which it passes. Cost of such alteration to be paid by petitioners, 10

Manner of locating private roads, 11

Report of viewers of private roads—damages of parties aggrieved, and appeal, 11

Assessment of damages caused by location of territorial roads—damages to be paid by county where road lies, 11

Territorial road declared public highway, and how and by whom repaired, 12

Duties of Road Supervisors—election of, qualification, and term of office—special elections, when and how to be held, 12

Penalty for Supervisor falling or refusing to act—no supervisor compelled to act two successive years, 12

County Auditors may appoint Supervisors to fill vacancies, 13

County Commissioners at May term, to fix road districts—road districts to be recorded, 13

Supervisors to make lists of parties liable for road tax and labor—requisites of list, and when to be made, 13

County Commissioners to levy and assess road tax at May session—amount of tax, 13

Who shall be liable for road tax—Supervisor failing to notify, does not exempt party from road tax, 13

Person liable may employ substitute, 14

Person notified, proving delinquent, &c., penalty, 14

Road tax, how to be collected on neglect or failure to pay the same, 14

Supervisor to open and keep in repair, all roads laid out according to law—Authority to purchase, to enter lands, &c., and to commute tax, 14

May enter upon adjacent land, and make ditches—Penalty for obstruction of ditches, 15

Damages for Supervisor carrying away materials, &c., 15

Obstruction of roads and bridges by falling timber—Supervisor to cause removal of—Persons causing, liable for expense, 15

Person performing more labor than due, credited next year, 16

Accounts to be kept by Supervisor, and mode of settlement, 16

Supervisor to give certificate of labor performed, or taxes paid—Requisites of certificate, 16

Shall keep an account of all certificates issued, to whom, and the amount—To furnish abstract of same to County Treasurer—Certificates to be credited on tax roll, 16

Supervisor neglecting duty or giving false certificate—penalty, 16

Omission or neglect to place persons on list—How corrected and supplied, 17

Guide or finger-board to be placed at crossing of roads, 17

Compensation of Supervisors, 17

102

|  | PAGE. |
|---|---|
| County Auditor not to add any per cent to unpaid road tax—Sheriff, Auditor and Treasurer, not allowed fees out of road fund. Proviso, | 17 |
| Commissioners may cancel tax improperly assessed, | 17 |
| Road fund to be paid over to County Treasurer, and subject to order of County Commissioners—When payable into the county fund, | 17–18 |
| County Commissioners, at May session, to apportion road fund, | 18 |
| Form of certificate of Road Supervisors, | 18 |
| Repealing clause, | 18 |

ROAD BOOK—

| To be kept by County Auditor, | 9 |
|---|---|
| What to contain, | 9 |
| To be a public record, | 9 |

ROAD DISTRICT—

| Embracing territorial road, duty of Supervisor, | 10 |
|---|---|
| To be fixed by County Commissioners—when, | 13 |
| Labor in one, exempt from working in another, | 14 |
| Apportionment of road fund to, | 18 |

ROAD FUND—

| Amount of, and how levied, | 13 |
|---|---|
| Who liable to contribute to, | 13 |
| Apportionment of, | 18 |

ROAD SUPERVISOR—

| When may expend labor on territorial road, | 10 |
|---|---|
| Duties of, | 12 |
| Election of, when and how, | 12 |
| Special election, when to be held, | 12 |
| Person elected failing to act—penalty | 12 |
| Of vacancy to be filled by County Auditor, | 13 |
| To make out list of persons liable to perform labor, | 13 |
| To notify persons who owe labor, | 13 |
| May accept labor of a substitute, | 14 |
| Receipt of one, good in another district, | 14 |
| Duty of in case of delinquency, illness, &c., | 14 |
| Duty of in the opening and repair of roads, | 14 |
| May purchase tools, materials, &c., | 14 |
| Authority to commute tax for tools, &c., | 15 |
| May enter upon lands and make drains, | 15 |
| To collect fines for obstructing drains, | 15 |
| In the removal of fallen timber, or repair of bridges, &c., | 15 |
| To give certificate for extra labor, | 18 |
| Accounts of, how made and settlement of, | 16 |
| To give certificate to person performing labor, | 16 |
| Certificate of, not assignable, | 16 |
| To keep a correct account of all certificates issued, | 16 |
| Penalty for neglect of duty, | 16 |
| "        " giving false certificate, | 17 |
| As to omissions of the road list, | 17 |
| To erect guide and finger boards, | 17 |
| Compensation of, | 17 |
| To receive and lay out the money apportioned by County Commissioners, | 18 |
| Form of certificate of, | 18 |

ROAD TAX—

| Amount of, and collection, | 13 |

## 103

|  | PAGE. |
|---|---|
| Who liable for, | 13 |
| Payable in labor, and by substitute, | 14 |
| Receipt for in one district good in another, | 14 |
| Delinquent, how collected, | 14 |
| May be commuted for tools, materials, &c., | 14 |
| Fee of officers collecting not allowed out of, | 17 |
| Improperly assessed—cancellation of, | 17 |
| What portion to go into the county fund, | 17–18 |

## S

SALARY—
Of Territorial Auditor increased, ... 58

SHERIFF—
Fees of, in collection of road tax, ... 17
Payment by, of road taxes collected, ... 17
Endorse county orders, credit for county taxes, ... 19

SKAMANIA COUNTY—
Act appointing officers for, ... 61

SNAKE RIVER—
Ferry established on, ... 55

SONS OF TEMPERANCE—
Act to incorporate  Monticello  Division No. 1, ... 42
"        "        Olympia        "    No. 2, ... 43
"        "        Tum-water    "    No. 3, ... 44
"        "        Grand Mound  "    No. 4, ... 45
"        "        Washington    "    No. 5, ... 46
"        "        Good Samaritan "  No. 5, ... 47

SPOKANE COUNTY—
Act appointing officers for, ... 62

STEVENS, I. I.—
Delegate—Resolution of confidence, ... 68

STUD HORSES—
Act concerning, ... 12

SUPERVISORS—
(See Roads, Road Supervisors,)

## T

TAX—(See Road Tax,)
Double for county purposes, levied for relief of counties in debt, ... 27

TAX COLLECTOR—
May endorse credit on county orders, ... 19
TEMPERANCE—(See Sons of Temperance,)

TERMS of County Commissioners Court, ... 21

TERRITORIAL AUDITOR—
Act to increase salary of, ... 58

TERRITORIAL LIBRARIAN—
Act concerning, ... 25
TERRITORIAL OFFICERS—
Resolution fixing time of election of, ... 71

104

|  | PAGE. |
|---|---|
| TERRITORIAL REVENUE— | |
| To be one-quarter of a mill, | 20 |
| TERRITORIAL ROADS—(See Roads and Highways,) | |
| Act to locate from Olympia to Steilacoom, | 47 |
| "    "    "    " Yelm Prairie to Nachess Pass, | 48 |
| "    "    "    " Skookum Bay to Chehalis River, | 49 |
| "    "    "    " Hood's Canal to Chehalis River, | 50 |
| "    "    "    " Oakland to Seabeck, | 51 |
| "    "    "    " Monticello to Upper Cascades, | 53 |
| "  " review part of, from Cathlamet to S. S. Ford's, | 52 |
| " declairing road from Fort Simcoe to Fort Dalles a territorial road, | 53 |

## V

| VAIL, C. C.— | |
|---|---|
| Authorized to establish a ferry across Lummi River, | 56 |

## W

| WALLA-WALLA COUNTY— | |
|---|---|
| Act appointing officers for, | 61 |
| WAYS— | |
| Of locating private ways, | 14 |
| To be thirty feet in width, | 14 |
| Damages for location of, | 14 |
| WHATCOM COUNTY— | |
| Act defining boundary line of, | 60 |
| WRECK MASTER— | |
| Law extended to counties of Pierce, Kitsap and Clalm, | 25 |

This acid-free reprint was electronically imaged to exactly
replicate the original image, was printed using permanent and
durable paper, and laser printed with carbon black pigment to
produce permanent images. Reproduction is done under strict
quality control guidelines established by William S. Hein & Co.,
Inc.'s "Preservation Program". This program was established to
preserve the integrity of legal classics for future generations of
legal researchers.



William S. Hein & Co., Inc.
Buffalo, New York

**JAY INSLEE**
**Governor**



**STATE OF WASHINGTON**
## OFFICE OF THE GOVERNOR
P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov

## PROCLAMATION BY THE GOVERNOR

### 20-05

**WHEREAS**, On January 21, 2020, the Washington State Department of Health confirmed the first case of the novel coronavirus (COVID-19) in the United States in Snohomish County, Washington, and local health departments and the Washington State Department of Health have since that time worked to identify, contact, and test others in Washington State potentially exposed to COVID-19 in coordination with the United States Centers for Disease Control and Prevention (CDC); and

**WHEREAS**, COVID-19, a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person; and

**WHEREAS**, The CDC identifies the potential public health threat posed by COVID-19 both globally and in the United States as "high", and has advised that person-to-person spread of COVID-19 will continue to occur globally, including within the United States; and

**WHEREAS**, On January 31, 2020, the United States Department of Health and Human Services Secretary Alex Azar declared a public health emergency for COVID-19, beginning on January 27, 2020; and

**WHEREAS**, The CDC currently indicates there are 85,688 confirmed cases of COVID-19 worldwide with 66 of those cases in the United States, and the Washington State Department of Health has now confirmed localized person-to-person spread of COVID-19 in Washington State, significantly increasing the risk of exposure and infection to Washington State's general public and creating an extreme public health risk that may spread quickly; and

**WHEREAS**, The Washington State Department of Health has instituted a Public Health Incident Management Team to manage the public health aspects of the incident; and

**WHEREAS**, The Washington State Military Department, State Emergency Operations Center, is coordinating resources across state government to support the Department of Health and local officials in alleviating the impacts to people, property, and infrastructure, and is assessing the magnitude and long-term effects of the incident with the Washington State Department of Health; and

**WHEREAS,** The worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and Washington State significantly impacts the life and health of our people, as well as the economy of Washington State, and is a public disaster that affects life, health, property or the public peace.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a State of Emergency exists in all counties in the state of Washington, and direct the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented. State agencies and departments are directed to utilize state resources and to do everything reasonably possible to assist affected political subdivisions in an effort to respond to and recover from the outbreak.

As a result of this event, I also hereby order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I direct the Washington State Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Signed and sealed with the official seal of the state of Washington this 29th day of February, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____

Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____

Secretary of State



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**
**OFFICE OF THE GOVERNOR**
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

## PROCLAMATION BY THE GOVERNOR
## AMENDING PROCLAMATIONS 20-05, 20-07, and 20-11

### 20-14
### Reduction of Statewide Limits on Gatherings

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS**, as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, and 20-13, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS**, the spread of COVID-19 has been classified by the World Health Organization as a pandemic that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS**, the COVID-19 disease has and continues to spread quickly across the state of Washington, beyond the original community outbreaks in King, Pierce, and Snohomish counties, significantly increasing the threat of significant associated health risks statewide; and

**WHEREAS**, to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately expand the restrictions on large gatherings of 250 or more as amended under Proclamation 20-11 to gatherings of 50 people or more; and

**WHEREAS**, the worldwide COVID-19 pandemic and its progression in Washington State continue to threaten the life and health of our people as well as the economy of Washington State and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a state of emergency

continues to exist in all counties of Washington State, that Proclamations 20-05 and all amendments thereto remain in effect, and Proclamations 20-07 and 20-11, pertaining to gatherings of 250 people or more, is amended to reduce the size of gatherings to 50 people or less. Furthermore, activities of less than 50 people are also prohibited, unless organizers of those activities comply with social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines. The provisions of this order shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 16th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State



**STATE OF WASHINGTON**
— Office of Governor Jay Inslee —

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATIONS 20-05 and 20-14

#### 21-14.1

### COVID-19 VACCINATION REQUIREMENT

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout Washington State as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations and our health care system, I have subsequently issued several amendatory proclamations, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations, including issuance of Proclamations 20-25, et seq., which limit Washingtonians' ability to participate in certain activities unless certain conditions are met; and

**WHEREAS,** during early stages of the COVID-19 pandemic, health professionals and epidemiological modeling experts indicated that the spread of COVID-19, if left unchecked, threatened to overwhelm portions of Washington's public and private health-care system; and

**WHEREAS,** to protect some of our most vulnerable populations—persons in health care facilities, long-term care facilities (which includes nursing homes), and similar congregate care facilities—and to protect our health and congregate care systems themselves, I issued several proclamations imposing heightened protections on workers, residents, and visitors in those facilities; and

**WHEREAS,** although COVID-19 continues as an ongoing and present threat in Washington State, the measures we have taken together as Washingtonians over the past 18 months, including the willingness of most Washingtonians to take advantage of the remarkable, life-saving vaccines being administered throughout the state, have made a difference and have altered the course of the pandemic in fundamental ways; and

**WHEREAS,** after months of improving COVID-19 epidemiological conditions in Washington State, the emergence of highly contagious COVID-19 variants, including the "Delta" variant that is at least twice as transmissible as the virus that emerged in late 2019, coupled with the continued significant numbers of unvaccinated people, have caused COVID-19 cases and hospitalizations to rise sharply among unvaccinated populations and have resulted in breakthrough infections in some fully vaccinated individuals; and

**WHEREAS,** COVID-19 vaccines are effective in reducing infection and serious disease, and widespread vaccination is the primary means we have as a state to protect everyone, including persons who cannot be vaccinated for medical reasons, youth who are not eligible to receive a vaccine, immunocompromised individuals, and vulnerable persons including persons in health care facilities, long-term care facilities and other congregate care facilities from COVID-19 infections; and

**WHEREAS,** widespread vaccination is also the primary means we have as a state to protect our health care system, to avoid the return of stringent public health measures, and to put the pandemic behind us; and

**WHEREAS,** COVID-19 vaccinations have been available in Washington State from December 2020 to the present, and since April 15, 2021, all Washingtonians over the age of 16 have been eligible to receive free COVID-19 vaccinations from a wide variety of providers at many locations; and

**WHEREAS,** as of August 4, 2021, nearly 4.4 million Washingtonians, about 70% of those eligible and 58% of the total population, had initiated their vaccine series, leaving 2.1 million eligible Washingtonians who were unvaccinated; and

**WHEREAS,** according to the U.S. Centers for Disease Control and Prevention (CDC), as of August 1, 2021, approximately 67% of staff in Washington state nursing homes were fully vaccinated; and

**WHEREAS,** healthcare workers face COVID-19 exposures in a variety of healthcare settings, with those involving direct patient care likely at higher risk; and

**WHEREAS,** COVID-19 vaccines are safe and effective. COVID-19 vaccines were evaluated in clinical trials involving tens of thousands of participants and met the U.S. Food & Drug Administration's (FDA) rigorous scientific standards for safety, effectiveness, and manufacturing quality needed to support emergency use authorization; and, to date, more than 346 million doses of COVID-19 vaccines have been given in the United States with 8.2 million of those doses administered in Washington, and serious safety problems and long-term side effects are rare; and

**WHEREAS,** on July 6, 2021, the Office of Legal Counsel of the United State Department of Justice issued a legal opinion stating that federal and state governments were not prohibited by federal law from imposing vaccination mandates, even when the only vaccines available are those authorized under the FDA's Emergency Use Authorizations; and

**WHEREAS,** on July 26, 2021, approximately 60 medical groups, including the American Medical
Association, the American College of Physicians, the American Academy of Pediatrics, the American Academy of Family Physicians, the American Nurses Association, the American Academy of Physician Assistants, the Association of Professionals in Infection Control and

2

Epidemiology, the American Public Health Association, the Infectious Diseases Society of America, LeadingAge, the National Hispanic Medical Association, the National Medical Association, and the Society of Infectious Disease Pharmacists, issued a memorandum supporting mandatory, universal vaccination of all public and private health care and long-term care workers, noting that such a requirement is the "fulfillment of the ethical commitment of all health care workers to put patients as well as residents of long-term care facilities first and take all steps necessary to ensure their health and well-being"; and on August 2, 2021, the Washington State Society of Post-Acute and Long-Term Care Medicine submitted a letter in support of the above noted July 26, 2021 memorandum; and

**WHEREAS,** on July 15, 2021, the American College of Obstetricians and Gynecologists, together with the Society for Maternal-Fetal Medicine, posted a formal opinion stating that medical professionals have an ethical obligation to be vaccinated against COVID-19 to prevent the spread of harmful infectious diseases, and that women who are or may become pregnant should be vaccinated against COVID-19; and

**WHEREAS,** it is the duty of every employer to protect the health and safety of employees by establishing and maintaining a healthy and safe work environment and by requiring all employees to comply with health and safety measures; and

**WHEREAS,** state employees live in and provide services to the public in every county in our state, and many interact with the public on a regular basis, and they all interact with some portion of the community at large to varying degrees before and/or after state work hours; and

**WHEREAS,** to further our individual and collective duty to reduce the spread of COVID-19 in our communities, I issued Proclamation 21-14 requiring all employees, on-site independent contractors, volunteers, goods and services providers, and appointees of designated state agencies to be fully vaccinated against COVID-19 on or before October 18, 2021; and

**WHEREAS,** child-care settings, K-12 schools, colleges, universities, and community colleges, (collectively, "educational settings") are foundations of Washington's communities and its future, and provide a variety of vital services to students, families, and communities, thereby making providing childcare services and in-person instruction in the fall 2021 a priority; and

**WHEREAS,** increasing vaccination rates at educational settings is the strongest protective measure against COVID-19 available and, together with masking, vital to providing in-person instruction in as safe a manner as possible; and

**WHEREAS,** on July 12, 2021, I issued Proclamation 20-12.4 prohibiting institutions of higher education from providing in-person instruction unless the institutions comply with specific requirements related to vaccination, masking, and operations; and

**WHEREAS,** on July 30, 2021, I issued Proclamation 20-9.4, prohibiting K-12 schools from providing in-person learning unless the schools comply with masking instructions provided by the Department of Health and the Office of the Superintendent of Public Instruction; and

3

**WHEREAS,** the sharp increase in COVID-19 cases and hospitalizations, primarily among unvaccinated populations but also in breakthrough infections in some fully vaccinated individuals, makes it vital to expand the vaccination requirement to workers in educational settings; and

**WHEREAS,** to provide additional clarity I am extending the prohibition to additional groups and providing additional guidance relating to the vaccination requirement imposed in Proclamation 21.14; and

**WHEREAS,** the worldwide COVID-19 pandemic and its persistence in Washington State continue to threaten the life and health of our people as well as the economy of Washington State, and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS,** the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS,** the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the state Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people; and

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim and order that a State of Emergency continues to exist in all counties of Washington State, that Proclamation 20-05, as amended, remains in effect, and that, to help preserve and maintain life, health, property or the public peace pursuant to RCW 43.06.220(1)(h), and (3), I hereby amend and supersede the prohibitions in 20-14 as set out below, subject to the conditions, exceptions, and circumstances also set forth below, for the following activities:

1. Prohibitions. This order prohibits the following:

   a. Any Worker from engaging in work for a State Agency after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19;
   b. Any State Agency from permitting any Worker to engage in work for the agency after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19 and provided proof thereof as required below;
   c. Any Worker from engaging in work for the operator of an Educational Setting after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19;
   d. Any operator of an Educational Setting from permitting a Worker to engage in work for the operator after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19 and provided proof thereof as required below;

4

e. Any Health Care Provider from failing to be fully vaccinated against COVID-19 after October 18, 2021; and

f. Any operator of a Health Care Setting from permitting a Health Care Provider to engage in work for the operator as an employee, contractor, or volunteer in their capacity as a Health Care Provider after October 18, 2021 if the Health Care Provider has not been fully vaccinated against COVID-19 and provided proof thereof as required below. Providers who do not work in a Health Care Setting must provide proof of vaccination to the operator of the facility in which the Provider works, if any, or, if requested, to a lawful authority. A lawful authority includes, but is not limited to, law enforcement, local health jurisdictions, and the state Department of Health.

2. Exemptions from Vaccine Requirement.

a. Disability and Religious Accommodations

- Workers for State Agencies, Workers for operators of Educational Settings, and Health Care Providers are not required to get vaccinated against COVID-19 under this Order if they are unable to do so because of a disability or if the requirement to do so conflicts with their sincerely held religious beliefs, practice, or observance. Workers for State Agencies, Workers for operators of Educational Settings, and Health Care Providers are prohibited from claiming an exemption or accommodation on false, misleading, or dishonest grounds, including by providing false, misleading, or dishonest information to a State Agency, operator of an Educational Setting, or operator of a Health Care Setting when seeking an accommodation.

- In implementing the requirements of this Order, State Agencies, operators of Educational Settings, and operators of Health Care Settings:

  o Must provide any disability-related reasonable accommodations and sincerely held religious belief accommodations to the requirements of this Order that are required under the Americans with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), Title VII of the Civil Rights Act of 1964 (Title VII), the Washington Law Against Discrimination (WLAD), and any other applicable law. As provided in the above-noted laws, State Agencies, operators of Educational Settings, and operators of Health Care Settings are not required to provide accommodations if they would cause undue hardship.

  o Must comply with the procedures required under the above-noted laws and any other applicable law when considering and deciding whether to provide accommodations;

  o Must, to the extent permitted by law, before providing a disability-related reasonable accommodation to the requirements of this order, obtain from the individual requesting the accommodation documentation from an appropriate health care or rehabilitation professional stating that the individual has a disability that

5

necessitates an accommodation and the probable duration of the need for the accommodation;

o Must, to the extent permitted by law, before providing a sincerely held religious belief accommodation to the requirements of this Order, document that the request for an accommodation has been made and include a statement in the document explaining the way in which the requirements of this order conflict with the sincerely held religious belief, practice, or observance of the individual;

o Must, to the extent permitted by law, require an individual who receives an accommodation to take COVID-19 safety measures that are consistent with the recommendations of the state Department of Health for the setting in which the individual works; and

o Are prohibited from providing accommodations:

• That they know are based on false, misleading, or dishonest grounds or information;

• That they know are based on the personal preference of the individual and not on an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance; or

• Without conducting an individualized assessment and determination of each individual's need and justification for an accommodation; i.e., "rubberstamping" accommodation requests.

c. Any individual who is unable to get fully vaccinated against COVID-19 by October 18, 2021 due to the requirements of their participation in a COVID-19 vaccine clinical trial is exempt from this Order. Any such individual who is a Worker for a State Agency or a Worker for an operator of an Educational Setting must provide documentary proof of their participation in the COVID-19 vaccine clinical trial to any State Agency or operator of an Educational Setting for which they engage in work. Any such individual who is a Health Care Provider must provide documentary proof of their participation in the COVID-19 vaccine clinical trial to any operator of a Health Care Setting for which they engage in work as an employee, contractor, or volunteer in their capacity as a Health Care Provider. A State Agency, operator of an Educational Setting, or operator of a Health Care Setting is prohibited from permitting any such individual to engage in work for them after October 18, 2021 if the individual fails to provide such proof.

d. Individuals who are too young to receive any COVID-19 vaccine, as authorized for emergency use, licensed, or otherwise approved by the FDA, are exempt from this Order. Any individual who becomes old enough to receive any COVID-19 vaccine, as authorized for emergency use, licensed, or otherwise approved by the FDA, while this Order is in effect must come into compliance with the requirements of this Order within 60 days of the day they became eligible. Any State Agency, operator of an Educational Setting, or operator of a Health Care Setting for which such an individual engages in work must also come into

6

compliance with the requirements of this Order with respect to the individual by that deadline.

3. <u>Proof of Full Vaccination Against COVID-19</u>:
   a. Where required above, Workers for State Agencies, Workers for operators of Educational Settings, and Health Care Providers must provide proof of full vaccination against COVID-19 by providing one of the following:
      - CDC COVID-19 Vaccination Record Card or photo of the card;
      - Documentation of vaccination from a health care provider or electronic health record;
      - State immunization information system record; or
      - For an individual who was vaccinated outside of the United States, a reasonable equivalent of any of the above.
   b. A State Agency, operator of an Educational Setting, or an operator of a Health Care Setting must obtain a copy of or visually observe proof of full vaccination against COVID-19 for every individual who is engaged in work for them and required to provide such proof under this Order.
   c. Personal attestation is not an acceptable form of verification of COVID-19 vaccination.

4. <u>Election to Require Employers of Contractors to Assume Responsibility for Vaccination Verification and Accommodation Requirements</u>
   a. Notwithstanding anything to the contrary in this Order, a State Agency, an operator of an Educational Setting, or an operator of Health Care Setting may elect to require the employer of a contractor who is subject to this Order to assume responsibility for the vaccination verification and accommodations requirements in this Order. This election may be made with respect to any or all of an employer's contractor-employees who are subject to this Order.
   b. If such an election is made, after October 18, 2021, the employer's contractor-employees are prohibited from engaging in work for the State Agency, operator of the Educational Setting, or operator of the Health Care Setting, and the State Agency, operator of the Educational Setting, or operator of the Health Care Setting is prohibited from permitting such employee to engage in work for them, unless the following requirements are met:
      - By October 18, 2021, the employer must obtain a copy of or visually observe proof of full vaccination against COVID-19 for every current employee who is subject to the vaccination requirement in this Order;
      - The employer must obtain a copy of or visually observe proof of full vaccination against COVID-19 for every employee hired after October 18, 2021 who is subject to the vaccination requirement in this Order;
      - The employer must follow the requirements for granting disability and religious accommodations to its current and future employees that apply to State Agencies, operators of Educational Settings, and operators of Health Care Settings under this Order;
      - By October 18, 2021, the employer must submit to the State Agency, operator of the Educational Setting, or operator of the Health Care Setting

7

a signed declaration in substantially the form prescribed in RCW 5.50.050 declaring that the employer has met the above requirements;

■ The employer must submit additional signed declarations upon the request of and by the date designated by the State Agency, operator of the Educational Setting, or operator of the Health Care Setting;

■ If an employer is also a contractor subject to this Order, the employer must include in their declaration that the employer is fully vaccinated against COVID-19 or is unable to get vaccinated because of a disability or a conflict between the vaccination requirement and their sincerely held religious beliefs, practice, or observance, as applicable; and

■ The employer must cooperate with any investigation or inquiry the State Agency, operator of the Educational Setting, or operator of the Health Care Setting makes into the employer's compliance with these requirements, including by providing information and records upon request, except any information or records that the employer is prohibited by law from disclosing.

c. Any State Agency, operator of an Educational Setting, or operator of Health Care Setting who makes the election above retains the right to investigate or inquire into the employer's compliance with the above requirements, to obtain proof of vaccination directly from any contractor-employee, and to withdraw the election in whole or in part at any time.

5. Public and Private Entities and Employers May Exceed These Requirements: Nothing in this order prohibits State Agencies, operators of Educational Settings, and operators of Health Care Settings from implementing requirements that exceed the requirements of this Order.

6. Definitions.
   a. "Worker":
      ■ "Worker" includes:
        • A person engaged to work as an employee, on-site volunteer, or on-site contractor for a State Agency, an operator of an Educational Setting, or an operator of a Health Care Setting, as applicable;
        • The director, secretary, or other executive officer of a State Agency; and
        • A person appointed to serve on a board, commission, or similar body that is an executive cabinet agency listed at https://www.governor.wa.gov/office-governor/office/executive-cabinet or a small cabinet agency listed at https://www.governor.wa.gov/officegovernor/office/small-cabinet, the State Board for Community and Technical Colleges, a board of trustees for a community or technical college, or a governing board of a four-year institution of higher education.
      ■ The following exceptions apply to the definition of "Worker":
        • Visitors and patrons are not Workers.
        • In Educational Settings:

8

- o Students of, persons attending, and persons receiving services at or from an Educational Setting are not Workers.
- o On-site contractors are not Workers if they do not work in places where students or persons receiving services are present.
- o Family, friend, and neighbor (FFN) child care providers are not Workers.
- For any State Agency that is listed as an agency under the authority of a board, council, or commission at https://ofm.wa.gov/sites/default/files/public/publications/2021_State_Org_Chart.pdf and that is not also listed as an executive cabinet agency at https://www.governor.wa.gov/office-governor/office/executive-cabinet or a small cabinet agency at https://www.governor.wa.gov/officegovernor/office/small-cabinet, other than the State Board for Community and Technical Colleges, the boards of trustees for community and technical colleges, and the governing boards of four-year institutions of higher education, only the State Agency's compensated employees are "Workers" subject to the requirements of this proclamation.

b.  "Contractor" includes any person who provides goods, services, or public works services pursuant to a contract with another person or entity, including, for purposes of this Order, a State Agency, an operator of an Educational Setting, or an operator of a Health Care Setting. The term includes subcontractors. The term does not include parties to a lease or rental agreement, unless the agreement requires a party to provide services, in which case only the persons who provide those services are "contractors."

c.  "Contract" is defined as provided under Washington law. Generally, a contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty, regardless of the particular form, title, or description is not relevant.

d.  "Health Care Provider" includes:
- Individuals with credentials listed in the Healthcare Professional Credentialing Requirements list;
- Individuals who are permitted by law to provide health care services in a professional capacity without holding a credential;
- Long-term care workers unless specifically excluded in this order; and
- Workers in any Health Care Setting, as defined herein.

"Health Care Provider" does not include, for purposes of this order:
- Individual providers, as defined in RCW 74.39A.240;
- Individuals who provide only personal care services, as defined in RCW 74.39A.009(24), in people's homes;
- Providers who are not actively practicing or providing services; and

9

- Providers who provide services only at one or more of the settings that are expressly excluded from the list of Health Care Settings under this order.

e. "Health Care Setting" is any public or private setting that is primarily used for the delivery of in-person health care services to people, except as specifically exempted below. If located at a facility that is primarily used for the delivery of health-care services, such as a hospital, then the entire facility is a Health Care Setting. If located at a facility that is primarily used for another purpose, such as a pharmacy within a grocery store, school nurse's office, or vaccination clinic within a business establishment, the Health Care Setting includes only the areas that are primarily used for the delivery of health care, but not the other areas of the facility.

"Health Care Setting" includes, but is not limited to:
- Acute care facilities, including, but not limited to, hospitals;
- Long-term acute care facilities;
- Inpatient rehabilitation facilities;
- Inpatient behavioral health facilities, including, but not limited to, evaluation and treatment facilities, residential treatment facilities, secure detox facilities;
- Residential long-term care facilities, including, but not limited to, nursing homes, assisted living facilities, adult family homes, settings where certified community residential services and supports are provided, and enhanced services facilities;
- Mobile clinics or other vehicles where health care is delivered;
- Outpatient facilities, including, but not limited to, dialysis centers, physician offices, and behavioral health facilities (including offices of psychiatrists, mental health counselors, and substance use disorder professionals);
- Dental and dental specialty facilities;
- Pharmacies (not including the retail areas);
- Massage therapy offices (this includes designated areas where massage is administered within non-health care settings like spas and wellness/fitness centers);
- Chiropractic offices;
- Midwifery practices and stand-alone birth centers;
- Isolation and/or quarantine facilities;
- Ambulatory surgical facilities;
- Urgent care centers; and
- Hospice care centers.

"Health Care Setting" does not include:
- Settings where sports and spectator events or other gatherings are held (including when credentialed athletic trainers are providing care to players), other than areas primarily used for the delivery of health care

10

> services, such as designated first aid areas (which are Health Care Settings);
> - Department of Children, Youth & Families (DCYF)-licensed foster homes that do not primarily provide health care services;
> - Research facilities where no health care is delivered to people;
> - Veterinary health care settings;
> - Animal control agencies; and
> - Non-profit humane societies.

d.   "State Agency" includes:
   - Every agency listed at https://www.governor.wa.gov/officegovernor/office/executive-cabinet;
   - Every agency listed at https://www.governor.wa.gov/officegovernor/office/small-cabinet; and
   - Every agency under the authority of a board, council, or commission listed at https://ofm.wa.gov/sites/default/files/public/publications/2021_State_Org_Ch art.pdf.

e.   "Educational Setting" includes:
   - All public and private universities, colleges, community colleges, and technical colleges and private career/vocational schools subject to licensure by the Workforce Training & Education Coordinating Board;
   - All public schools, public school districts, charter schools, private schools, educational service districts, the Washington School for the Deaf, the Washington State School for the Blind, and the Washington Youth Academy; and
   - All early learning and child care programs serving groups of children from multiple households, including, but not limited to, Early Childhood Education and Assistance Programs, Family Home Child Care, Child Care Centers, Outdoor, Nature-based Child Care, School-aged Child Care, license-exempt preschools, and license-exempt youth development programs (e.g., municipal parks & recreation programs, YMCA, Boys & Girls Clubs).

e.   "Fully Vaccinated against COVID-19": A person is fully vaccinated against COVID-19 two weeks after they have received the second dose in a two-dose series of a COVID-19 vaccine (e.g., Pfizer-BioNTech or Moderna) or a single-dose COVID-19 vaccine (e.g., Johnson & Johnson (J&J)/Janssen) authorized for emergency use, licensed, or otherwise approved by the FDA or listed for emergency use or otherwise approved by the World Health Organization.

f.   "On-site volunteer" and "on-site contractor" includes:
   - A volunteer or contractor who is reasonably likely or contractually obligated to engage in or in fact engages in work while physically present at a building, facility, jobsite, project site, unit, or other defined

11

area owned, leased, occupied by, or controlled by a State Agency, an operator of an Educational Setting, or an operator of a Health Care Setting.

"On-site volunteer" and "on-site contractor" does not include:

- A volunteer or contractor who is reasonably likely or contractually obligated to engage in or in fact engages in work during which they are physically present at a site for only a short period of time and any moments of close physical proximity to others on site are fleeting. Examples include contractors delivering supplies by truck to a construction site where they remain physically distanced from others on the site or a driver for a contracted shipping and delivery service briefly entering a site to pick up parcels for shipping.

g. "Operator of an Educational Setting" and "operator of a Health Care Setting" do not include clients, patients, patrons, customers, or similar individuals served by Worker for a State Agency, Worker for an Educational Setting, or Health Care Provider.

**ADDITIONALLY**, the specific prohibitions in this Proclamation are severable and do not apply to the extent that compliance with a prohibition would violate (1) any U.S. or Washington constitutional provision; (2) federal statutes or regulations; (3) any conditions that apply to the state's receipt of federal funding; (4) state statutes; or (5) applicable orders from any court of competent jurisdiction.

**ADDITIONALLY**, nothing in this Proclamation limits otherwise applicable requirements related to personal protective equipment, personnel training, and infection control policies and procedures.

I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

12

Violators of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5). Further, if people fail to comply with the required facial coverings, social distancing and other protective measures while engaging in this phased reopening, I may be forced to reinstate the prohibitions established in earlier proclamations.

This order is effective immediately. Unless extended or amended, upon expiration or termination of this amendatory proclamation the provisions of Proclamation 20-25, et seq., will continue to be in effect until the state of emergency, issued on February 29, 2020, pursuant to Proclamation 20-05, is rescinded.

Signed and sealed with the official seal of the state of Washington on this 20th day of August, A.D., Two Thousand and Twenty-One at Olympia, Washington.

By:

_____/s/_____

Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____

Secretary of State

13

**From**    Lisa Mould
          <lisamould10@yahoo.com>

**To:**     C. C. C. <rick@crossculturalcom.us>

**Date**    Oct 20, 2021 at 3:31 PM

Is CCC 100% sure that 100% of my jobs removed from my schedule on October 18, 2021 are mandating the vaccine for vendors and interpreters?? The other agencies I contract with didn't remove my appts. Not every doctors office and hospitals are following the mandate.

I would like the removed jobs to be contacted and added back to my schedule accordingly, if they are not following the mandate.

Thank you,
Lisa


Sent from Yahoo for iPhone

**Subject**    RE:

**From**    Rick Bidwell
        <rick@crossculturalcom.us>

**To:**    'Lisa Mould'
        <lisamould10@yahoo.com>

**Date**    Oct 20, 2021 at 3:57 PM

CCC had to sign multiple attestations to our clients that said we will not send unvaccinated interpreters to onsite appointments effective 10/18/21.

**From:** Lisa Mould <lisamould10@yahoo.com>
**Sent:** Wednesday, October 20, 2021 3:32 PM
**To:** C. C. C. <rick@crossculturalcom.us>
**Subject:**

Is CCC 100% sure that 100% of my jobs removed from my schedule on October 18, 2021 are mandating the vaccine for vendors and interpreters?? The other agencies I contract with didn't remove my appts. Not every doctors office and hospitals are following the mandate.

I would like the removed jobs to be contacted and added back to my schedule accordingly, if they are not following the mandate.

Thank you,
Lisa

Sent from Yahoo for iPhone

View less

**Subject**    Religious Exemption Letter

**From**    Lisa Mould
<lisamould10@yahoo.com>

**To:**    C. C. C.
<rick@crossculturalcom.us>, C.
C. C.
<randy@crossculturalcom.us>

**Date**    Nov 5, 2021 at 12:07 PM

November 05, 2021

Covid-19 Vaccine Mandate:

To Whom it may concern,

As per agency directive, and in compliance with, please find my religious exemption based primarily upon my sincerely held religious belief that I am a child of God and my body is a temple. I chose what enters it and what doesn't, and also my personal dietary laws that I have followed for quite some time. Therefor I can not and will not vaccinate.

While I realize that organized religion may not qualify as a valid religious exemption, I am submitting this letter of exemption because I simply do not believe in harming animals, and I have been faithful in my choices not to harm them. In this way, I do consider my Vegan diet as a form of religion. As a Vegan, I cannot consume animal products, and I choose not to consume animal reservoirs. Therefor I can not and will not vaccinate. I am submitting this letter accordingly and in good faith.
"And consume no blood at all, neither of animals or cattle, or any bird which flies in the heaven, or of any living thing upon this earth." (Jubilees 21:6)

My reasonable accommodations that I am requesting will not impose a cost or any undue hardships on the conduct of the agency or businesses doing business with your agency. I am requesting that I be able to continue to work the same as I have been working since March 2020, wear a mask, wash/sanitize hands often, social distance 6ft, stay home if I am sick or been exposed.

I am asking that my reasonable accomodations be reviewed and a decision be made in a timely manner and the discrimination against me stops, because I chose to remain unvaccinated and I am able to return back to full time interpreting in person and or remotely.

Sincerely,

Lisa M Davy

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **551-2022-01986** |
| | | and EEOC |

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Lisa M. Davy | (360) 790-2781 | |

Street Address

6709 Compton Blvd SE

LACEY, WA 98513

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CROSS CULTURAL COMMUNICATIONS | Unknown Number Of Employees | (253) 447-2000 |

Street Address

5220 126th ave. Ct. E.

EDGEWOOD, WA 98372

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest                 Latest |
| Religion | 11/15/2021              03/22/2022 |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Lisa M. Davy** **05/26/2022** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **551-2022-01986** |

and EEOC

*State or local Agency, if any*

I was hired by Respondent on or about August of 2009. I perform the duties of my position of American Sign Language interpreter in a satisfactory manner. On November 5, I informed Respondent that I could not receive the COVID-19 vaccine, which Respondent is stating is a requirement of my position, because of my religious belief. However, I have yet to be given a response of any kind. Respondent has no such statutory requirements of vaccination for my specific job title, and I have successfully completed tele-appointments. I believe I have been discriminated against because of my religious belief, Veganism, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. Lisa M. Davy**<br>05/26/2022<br><br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED    AND    SWORN    TO    BEFORE    ME    THIS    DATE<br>(*month, day, year*) |



**Cross Cultural Communications, Inc.**

P.O. Box 2166 ~ Sumner, WA 98390
Phone:  253-447-2000 ~ 800-893-5258
Fax:  253-447-2041 ~ 888-918-8524

www.crossculturalcom.us
ccc@crossculturalcom.us

6/17/22

Cross Cultural Communications INC (herein after CCC), denies the allegation by Lisa Davy that Cross Cultural Communications, Inc has discriminated against her for Veganism or any other religious reason.

Lisa Davy has worked with CCC as an independent Interpreter Sub-Contractor since February 2009. Interpreters with CCC perform interpretation assignments onsite at the various clients that CCC has contracts with. Almost all clients that CCC work with are in the Medical or Educational field.

In October 2021 Washington State issued Proclamation 21-14 which requires all employees and sub-contractors of State, Health care providers and educational settings to be fully vaccinated.

All independent subcontractors with CCC in order to perform assignments on site at facilities we work with are required to have a Covid card on file.

Lisa Davy has been active on our roster to perform Virtual appointments since the Proclamation was issued. CCC does not get many Virtual assignments though and post them online for all interpreters to accept.

In January 2022 Lisa completed a mask presentation and fitting that would allow her to provide onsite services for clients at all Multicare facilities. Those assignments have been posted for her to accept also.

Thank You

CCC Management

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-

A) Issued On: 09/05/2022

**To:** Ms. Lisa M. Davy
6709 Compton Blvd SE
LACEY, WA 98513
Charge No: 551-2022-01986

EEOC Representative and email:    Melanie Carter
Investigator
melanie.carter@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2022-01986.

On behalf of the Commission,

_____ for                                09/05/2022
Elizabeth Cannon                           Date
Director

**Cc: Cross Cultural Communications**
Attn: John Bidwell
5220 126th Ave Ct E
Edgewood, WA 98372

Please retain this notice for your records.



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

September 5, 2022

Ms. Lisa M. Davy
lisa66davy@gmail.com
6709 Compton Blvd SE
LACEY, WA 98513

RE: Ms. Lisa M. Davy v. CROSS CULTURAL COMMUNICATIONS
    EEOC Charge Number: 551-2022-01986

Dear Ms. Lisa M. Davy

My name is Melanie Carter and I am the Investigator with the Seattle Field Office of the U.S. Equal Employment Opportunity Commission (EEOC) assigned to investigate the charge that you filed. As you are aware, your complaint alleged that you were denied a religious accommodation by the Respondent. As the investigator assigned to your case, I want to confirm that I have had the opportunity to carefully review all the information and evidence submitted by you and Respondent to date. During the investigation of your charge, the EEOC obtained information and documentation relevant to your allegations of discrimination, including Respondent's statement of position and responses to the EEOC's request(s) for information. As part of the investigation, you were provided with the statement of position that Respondent submitted and given the opportunity to submit a rebuttal response with any additional supporting information or documentation you had in support of your allegations.

In order to establish that you were denied a religious accommodation under Title VII of the Civil Rights Act of 1964, as amended, you must show that you have a sincerely held religious belief that needs to be accommodated and that there is a reasonable accommodation available that would allow you to perform *all* of the essential functions of the position in question, and/or allow you to enjoy the privileges and benefits of employment; that you asked the employer for an accommodation because of your sincerely held religious beliefs; and that the employer failed to provide you with reasonable accommodation. An accommodation is an adjustment or change to a job that allows the employee to perform *all* of the functions essential to the position. An employer is not required to change, alter, or eliminate functions that are essential to a position, create a position, provide a position that would be a promotion, or lower production standards, and the employer may hold all employees to the same performance and/or conduct standards regardless of religious beliefs. The employer has the ultimate discretion in choosing between accommodations, and the employer is not required to provide an accommodation if it would pose an undue hardship, that is more than a *de minimis* burden on the operations of the employer's business.

The evidence obtained and reviewed to date has been analyzed consistent with the legal standards of proof required to establish a violation of the laws that the EEOC enforces. Specifically, the evidence shows you performed primarily in person and onsite work for the employer's clients in the fields of medicine and education. You were able to continue accepting appointments that were virtual and you provided evidence that you accepted roles through at least January 5, 2022. The employer was not able to provide you with a religious accommodation to allow you to continue performing in person and onsite work because doing so would have caused an undue hardship, especially since they had contracts with clients requiring that they verify employee vaccination status. In January 2022, you completed a mask fitting at one of Respondent's clients to allow you to conduct in person appointments in their facilities in person. These appointments are available to you online in addition to virtual appointments for other clients. The Supreme Court has held that requiring an employer to bear more than a 'de minimis,' or minimal, cost to accommodate an employee's religious belief is an undue hardship. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.

Based upon an analysis of your charge, the EEOC is ending its investigation into your allegations will not proceed further with its investigation. Under our Priority Charge Handling Procedures, we focus our limited resources on those charges in which we believe a violation of the laws enforced by the EEOC can be established; however, there is no indication that further investigation of your charge would lead to a different outcome.

While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretation of the available evidence and the laws that we enforce. Although you may disagree with our decision, our determination regarding your charge is final.

Since the EEOC has ended its investigation in this matter, a Determination and Notice of Rights has been issued to you in the EEOC Public Portal which will allow you to file a private lawsuit against the Respondent within 90 days of its receipt.

If you do not file a private lawsuit within the required 90-day time frame, your right to sue in this matter will expire and cannot be restored by the EEOC. You should download a copy of this Determination immediately.

If you have any further questions concerning this matter, please call me at (206) 576-3046.

Sincerely,

*Melanie Carter*
Melanie Carter, Investigator



**Washington State (/)**
*Office of the Attorney General*
**Attorney General Bob Ferguson**

(/)

Home (/) | AGO Opinion (/ago-opinions) | **AUTHORITY OF GOVERNOR TO ISSUE EXECUTIVE ORDER HAVING THE FORCE AND EFFECT OF LAW**

# AUTHORITY OF GOVERNOR TO ISSUE EXECUTIVE ORDER HAVING THE FORCE AND EFFECT OF LAW

(https://www.atg.wa.gc

AGO 1991 No. 21 - Jun 11 1991

*Attorney General Ken Eikenberry*

**GOVERNOR -- EXECUTIVE ORDER -- LEGISLATURE -- WETLANDS -- AUTHORITY OF GOVERNOR TO ISSUE EXECUTIVE ORDER HAVING THE FORCE AND EFFECT OF LAW**

The legislative authority of the State of Washington is vested in the Legislature. In absence of a statute or constitutional provision that serves as a source of authority authorizing the Governor to act, the Governor cannot create obligations, responsibilities, conditions or processes having the force and effect of law by the issuance of an executive order.

- - - - - - - - - - - - -

June 11, 1991

Honorable George L. Sellar
State Senator, District 12
312 Legislative Building, AS-32
Olympia, Washington 98504

Cite as: AGO 1991 No. 21

Dear Senator Sellar:

By letter previously acknowledged you have asked for our opinion regarding the Governor's authority to issue executive orders. In particular, you have directed our attention to Executive Order 90-04. This order was issued by Governor Gardner on April 21, 1990, and it relates to the protection of wetlands. We paraphrase your question:

Can a Governor, without statutory authority, create obligations and responsibilities having the force and effect of law by issuing an executive order for the protection of wetlands?

The answer to this question is no.

[[Orig. Op. Page 2]]

<u>ANALYSIS</u>

We begin our analysis with two preliminary observations. First, while governors frequently issue statements which are entitled "executive order," these statements serve a wide variety of purposes. There are three basic types of statements commonly labeled as "executive orders" and a single "executive order" may combine elements from each type. The three basic types are:

1. General Policy Statements. An executive order may be a general policy statement made by the Governor. The order does not have the force and effect of law. The purpose of such an order is to persuade or encourage persons, both within and without government, to accomplish the Governor's policy set out in the order.

2. Directives. An executive order many be a directive from the Governor to state agencies, communicating to those agencies what the Governor wants the agency to accomplish. The order does not have the force and effect of law. However, compliance by state agency heads who serve at the pleasure of the Governor is normally expected. If such an agency head does not comply with the Governor's policy enunciated in the order, the Governor may decide to remove the agency head from office.

3. Operative Effect. An executive order issued by the Governor may require that certain actions be taken. Such an order has the force and effect of law and serves as a source of authority for actions taken in response to the order.

Your question focuses on the third type of order and presents two interrelated legal issues:

(1) Does the Governor have the authority to create legally binding obligations or conditions having the force and effect of law by issuing an executive order for the protection of wetlands?

(2) Does the Governor have the authority to override statutes enacted by the Legislature, by issuing an executive order for the protection of wetlands?

Both of these issued relate to the Governor's power to issue executive orders that have operative effect. For this reason we have combined these issues into a single question.

Our second preliminary observation relates to executive orders that have operative effect. In certain situations the Legislature has enacted statutes that specifically authorize the Governor to issue orders that have operative effect. For [[Orig. Op. Page 3]] example, RCW 43.06.010(12) authorizes the Governor to declare a state of emergency under certain circumstances. Once the Governor has declared an emergency, RCW 43.06.220 empowers the Governor to issue orders related to the emergency such as establishing a curfew. RCW 43.06.220 also provides that: "Any person wilfully violating any provision of an order issued by the governor under this section shall be guilty of a gross misdemeanor."

In such situations executive orders have the force and effect of law and serve as a source of authority for those who act in response to the orders. However, the ultimate authority is a delegation of power by the Legislature to the Governor in a statute. As the court said in Cougar Business Owners Ass'n v. State, 97 Wn.2d 466, 474, 647 P.2d 481 (1982), which concerned Governor Ray's executive order establishing the red zone around Mt. St. Helens: "These statutory powers evidence a clear intent by the Legislature to delegate requisite police power to the Governor in times of emergency."

Your question concerns an executive order pertaining to the protection of wetlands. We have reviewed Executive Order 90-04 and the statutes relating to the protection of wetlands. We find no statute similar to RCW 43.06.220 that authorizes the Governor to issue orders relating to the protection of wetlands, which have the force and effect of law. Thus, the essence of your question is whether the Governor, in the absence of specific statutory authority, can create obligations and responsibilities for the protection of wetlands having the force and effect of law by the issuance of an executive order. In our judgment the answer to this question is no.

The only Washington case directly on point is Young v. State, 19 Wash. 634, 637, 54 Pac 36 (1898), wherein our Court adopted the view that the Governor possesses only those powers as are conferred upon the office by constitutional or statutory provisions. While there are a number of references to the Governor in the Constitution, we believe that the pertinent provisions to your inquiry are in article 3. Section 2 declares "[t]he supreme executive power of the state shall be vested in a governor . . . ." Section 5 states that the Governor may require information in writing from the officers of the state upon any subject relating to the duties and the obligation of their respective offices. The same section also directs the Governor to "see that the laws are faithfully executed." Article 3, section 6 authorizes the Governor to communicate messages to the Legislature concerning "the condition of the affairs of the state" and grants authority to "recommend such measures as he shall deem expedient for their action."

[[Orig. Op. Page 4]]

In Young v. State, the court concluded that neither constitutional provisions nor any statute authorized the Governor's action challenged in that case. The court held that the Governor lacked legal authority and ruled that his powers were limited to those conferred by either constitutional or statutory provision. 1/

In this case, there is no statutory authority authorizing the Governor to issue an executive order for the protection of wetlands that has the force and effect of law. Accordingly, we must examine the Governor's power under the Washington Constitution.

The Constitution treats in separate articles executive legislative powers. 2/

In discussing the extent of the Governor's power that is not dependent upon legislation, it is necessary to consider the interrelation of constitutional powers between the Governor and the Legislature.

Article 2, section 1 (amendment 72) of the Washington Constitution, provides: "The legislative authority of the state of Washington shall be vested in the legislature . . . . "3/

By virtue of a state's police power, the legislative branch of government has all legislative powers not withheld or limited by the Constitution. In other words, the Legislature may enact into [[Orig. Op. Page 5]] law any measures which are not expressly or by necessary implication prohibited either by the State Constitution or Federal Constitution. Fain v. Chapman, 89 Wn2d 48, 53, 569 P.2d 1135 (1977). Under the separation of powers doctrine, only the Legislature may undertake to perform legislative acts. Such power is not vested by the Constitution in the executive who, therefore, cannot act in a legislative manner without an appropriate delegation of authority from the Legislature.

Executive power given to the Governor by Washington's Constitution closely resembles, for obvious historical reasons, similar powers given to the President by the Federal Constitution. Thus, the Question of the extent of presidential power has instructive value in the interpretation of a state's Constitution with respect to the powers of its chief executive officer. Brown v. Barkely, 628 S.W.2d 616, 622 (Ky. 1982); Chang v. University of Rhode Island, 375 A.2d 925, 928, 118 R.I. 631 (1977).

The leading case regarding the extent of executive power under the Federal Constitution is Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 96 L. Ed. 1153, 72 S. Ct. 863 (1951). The majority opinion rejected the argument that President Truman's authority to seize the steel mills could be implied from the aggregate of executive powers delegated to the President under the Constitution. While the President has the power to see that the laws are faithfully executed, that power does not confer the authority to affirmatively be a lawmaker. Justice Black, speaking for a majority of the Court, stated:

The Constitution limits his (the President's) functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad. And the Constitution is neither silent nor equivocal about who shall make laws which the President is to execute. . . .

The President's order does not direct that a congressional policy be executed in a manner prescribed by Congress—it directs that a presidential policy be executed in a manner prescribed by the President. The preamble of the order itself, like that of many statutes, sets out reasons why the President believes certain policies should be adopted, proclaims these policies of rules of conduct to be followed, and again, like a statute, authorizes a government official to promulgate additional rules and regulations consistent with the policy proclaimed and needed to carry that policy into execution.

[[Orig. Op. Page 6]]

343 U.S. at 587-88.

Justice Jackson's concurring opinion, in Youngstown, posited three kinds of "practical situations in which a President may doubt, or others may challenge, his powers". 343 U.S. at 635.

1.    When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate. In these circumstances, and in these only, may he be said (for what it may be worth) to personify the federal sovereignty. If his act is held unconstitutional under these circumstances, it usually

means that the Federal Government as an undivided whole lacks power. . . .

2.    When the President acts in absence of either a congressional grant or denial of authority, he can only rely upon his own independent powers, but there is a zone of twilight in which he and Congress may have concurrent authority, or in which its distribution is uncertain. Therefore, congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility. In this area, any actual test of power is likely to depend on the imperatives of events and contemporary imponderables rather than on abstract theories of law.

3.    When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter. Courts can sustain exclusive Presidential control in such a case only by disabling the Congress from acting upon the subject. Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system.

343 U.S. at 635-38.

As previously discussed, under Young v. State the Washington court is committed to the view that the Governor lacks inherent power except as delegated by the Constitution or a statute.

Under the approach of either Justice Black or Justice Jackson in Youngstown, the President likewise possesses no [[Orig. Op. Page 7]] inherent power to issue executive orders which have the force and effect of law. According to Justice Black, presidential authority must be predicated upon some provision of the Constitution, or an act of Congress. 343 U.S. at 585, 587-88. Under Justice Jackson's approach, even an emergency would not justify issuance of an executive order, having the force and effect of law, absent an act of Congress authorizing it. He explained:

In view of the ease, expedition and safety with which Congress can grant and has granted large emergency powers, certainly ample to embrace this crisis, I am quite unimpressed with the argument that we should affirm possession of them without statute.

343 U.S. at 653.

The Executive, except for recommendation and veto, has no legislative power. The executive action we have here originates in the individual will of the President and represents an exercise of authority without law. . . . With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law, and that the law be made by parliamentary deliberations.

343 U.S. at 655.

Similar expressions have been made by state courts respecting the Governor's authority to, by order, create legally binding obligations or conditions. We will briefly note such decisions from Alabama, Kentucky, Massachusetts, New Jersey, New Hampshire, New York, Pennsylvania and Rhode Island.

In Chang v. University of Rhode Island, 375 A.2d 925, the issue was whether Rhode Island's governor could, by executive order, override a directive of the legislature. The court concluded:

The governor lacked authority to act with respect to that subject (of his executive order). By express constitutional grant, that power belonged to the Legislature; and it had delegated a portion thereof to the Board of Regents, not to the governor.

375 A.2d at 929.

[[Orig. Op. Page 8]]

In Brown v. Barkley, 628 S.W.2d 616, the Supreme Court of Kentucky indicates that even if the governor be deemed to possess "inherent" powers, such powers are subordinate to statute.

This means, we think, that when the General Assembly has placed a function, power or duty in one place there is no authority in the Governor to move it elsewhere unless the General Assembly gives him that authority.

628 S.W.2d at 623.4/

In Pennsylvania inPagano v. Pennsylvania State Horse Racing Comm., 413 A.2d 44, 45, 50 Pa. Commw. 499 (1980), the Court held that proclamations or communications issued as executive orders without authority "cannot be enforced by the courts." Such proclamations are of the two types we earlier noted (general policy statements and directives) when we referred to the variety of what are commonly denominated as executive orders. See infra at 2-3. See also Wilt v. Department of Rev., 436 A.2d 713, 714, 62 Pa. Commw. 316 (1981).

New Jersey law requires that an executive order must find support for its validity either in the constitution, statutes or "a state of facts which gives rise to an emergent situation". De Rose v. Byrne, 343 A.2d 136, 144, 135 N.J.S. 273 (1975).

Although somewhat ambiguous on the point, Alabama law provides that the governor possesses no authority to issue executive orders in the absence of a clear grant of power from the legislature or the Constitution. An executive order was invalidated which conflicted with a statute on the ground of gubernatorial lack of authority. Jetton v. Sanders, 275 So.2d 349, 352, 49 Ala. 669 (1973).

Some jurisdictions recognize inherent gubernatorial power but, in all cases, the exercise of an inherent power may not derogate from a valid exercise of legislative power.

[[Orig. Op. Page 9]]

Massachusetts recognizes inherent executive powers in the office of governor. This authority of the governor to nominate and appoint judicial officers conferred by the state constitution provided an adequate basis for an executive order creating a judicial nomination commission to make recommendations to him to fill judicial vacancies. Opinion of the Justices to the Council, 334 N.E.2d 604, 609, 368 Mass. 866 (1975). However, the Massachusetts governor may not, by executive order, suspend or modify the operation of duly-enacted legislation. Massachusetts Bay Transp. Auth. Advisory Bd. v. Massachusetts Bay Transp. Auth., 417 N.E.2d 7, 13, 382 Mass. 569 (1981).

New Hampshire has a similar view to that of Massachusetts but has ruled that inherent executive power may not be used to frustrate valid legislative enactments. Opinion of the Justices, 381 A.2d 1204, 1208, 118 N.H. 7 (1978). Thus, where there is a conflict between an executive order and a statute, the statute must prevail. O'Neil v. Thompson, 316 A.2d 168, 173, 114 N.H. 155 (1974). Where no conflict between an executive order and legislation was found, the executive order was upheld. The Court "presumed" that the governor was within the exercise of his constitutional powers in the absence of conflicting legislation. Opinion of the Justices, 392 A.2d 125, 130, 118 N.H. 582 (1978).

In New York when the executive acts in a manner inconsistent with the legislature "or usurps its prerogatives," the doctrine of separation of powers is violated. Inherent power to determine methods of enforcement of existing law is accorded the executive, but executive orders have been struck down in the absence of legislative authorization. Clark v. Cuomo, 486 N.E.2d 794, 495 N.Y.S.2d 936, 939-40 (1985). CompareHase v. Civil Serv. Dep't, 535 N.Y.S.2d 338, 340-341, 141 Misc.2d 868 (1988).

Based on these authorities, we reach two conclusions. First, the Governor cannot by an executive order, create an operative effect that conflicts with a statute enacted by the Legislature. The authorities we reviewed are essentially unanimous on this point. Second, in absence of a statute authorizing the Governor to act (e.g., RCW 43.06.220), the Governor cannot create obligations, responsibilities, conditions or processes having the force and effect of law by the issuance of an executive order. This is true even if the order does not conflict with a statute enacted by the Legislature. We acknowledge that some states such as Massachusetts and New Hampshire recognize some inherent executive power in the office of governor. However, in 1898 the Washington Supreme Court declined to follow this path when it decidedYoung v. State.

Accordingly, it is our opinion that the Governor does not have the authority to create obligations and responsibilities, [[Orig. Op. Page 10]] having the force and effect of law, for the protection of wetlands by issuing an executive order. More specifically, Executive Order 90-04 does not have operative effect. It does not have the force and effect of law and cannot serve as a source of authority for persons or agencies that take action with regard to wetlands.

Executive Order 90-04 merely serves the general policy statement or directive function we discussed at the outset of this opinion. For example, Section 1 of the order states: "All state agencies shall rigorously enforce their existing authorities to assure wetlands protection". This section does nothing more than set out the Governor's policy with regard to wetlands. Many of the sections in Executive Order 90-04 expressly state that agencies shall exercise their authority to protect wetlands "to the extent legally permissible."5/

Other sections of the order are more specific but these specific sections have no more operative effect than Section 1. For example, Section 12 provides a definition of mitigation to be used by state agencies with the first preference being to avoid "the impact altogether by not taking a certain action or part of an action" to the least preferred definition, "monitoring the impact and taking appropriate corrective measures". This section does not establish as a matter of state law either a definition of mitigation or a priority of preferences. It is simply a policy statement by the Governor of which options are preferable, if there is a choice between those options. Individual agencies for various programs may not have the statutory authority to avoid "the impact altogether by not taking any action." If so, the first preference expressed by the Governor is simply not available legally to that agency for that particular program. Agencies also may have in their statutes other orders of preference expressed. For example, see RCW 90.58.020 of the Shoreline Management Act reflecting a specific order of preference.

In summary, the Governor does not, by the issuance of an executive order for the protection of wetlands, have the authority to create obligations and responsibilities having the force and effect of law. Executive Order 90-04 can only be read as a general policy statement by the Governor and/or a directive communicating the Governor's policy to agency heads that serve at the Governor's pleasure. However, it is not a source of authority for agencies to take action with regard to wetlands.

[[Orig. Op. Page 11]]

The only authority for agency action are statutes duly enacted by the Legislature.

We trust that the foregoing will be of assistance to you.

Very truly yours,

KENNETH O. EIKENBERRY
Attorney General

WILLIAM B. COLLINS
Assistant Attorney General

### *** FOOTNOTES ***

1/Young v. State was distinguished but cited with approval in State ex rel. Hartley v. Clausen, 150 Wash. 20, 25, 272 Pac. 22 (1928), which viewed the source of authority more broadly than was done in Young, but both cases recognize a need to find a source of authority.

2/The Governor's veto authority is confirmed in article 3, section 12, which pertains to the executive. However, when the Governor exercises the veto power, he is acting in a legislative rather than an executive capacity. Washington Ass'n. of Apartment Ass'ns. v. Evans, 88 Wn.2d 563 565, 564 P.2d 788 (1977).

3/Prior to amendments, article 2, section 1 originally read:

The legislative powers shall be vested in a senate and house of representatives, which shall be called the legislature of the State of Washington.

[Constitution of Washington, 1889.]

4/See also, Legislative Research Comm. v. Brown, 664 S.W.2d 907 (Ky. 1984) which reaffirms the separation of powers doctrine (that the legislative branch has all powers which are solely and exclusively legislative in nature). 664 S.W.2d at 913. Kentucky adopts the view that gubernatorial power is limited to that conferred by the Constitution or duly enacted legislation. Martin v. Chandler, 318 S.W.2d 40, 44 (Ky. 1958).

5/Sections 2, 3, 4, 6, and 13.

**News**

Media Contacts (/media-contacts)

News Releases (/pressrelease.aspx)

Ferguson File (/news/ferguson-file)

Social Media (/social-media)

**Office Information**

About Bob Ferguson (/about-bob-ferguson)

AGO Environmental Policies (/environmental-policies)

Mission, Vision & Values (/mission-vision-values)

Contact Us (/contactus.aspx)

Office Divisions (/office-divisions)

Office Locations (/office-locations)

Annual Reports (/annual-reports)

Budget (/budget)

History (/brief-history-office-attorney-general)

Washington's Attorneys General – Past and Present (/washingtons-attorneys-general-past-and-present)

Roles of the Office (/roles-office)

Task Forces (/task-forces)

FAQs (/frequently-asked-questions-faqs)

Procurements & Contracts (/contracts)

Technology (/technology)

Privacy Notice (/privacy-notice)

Rulemaking Activity (/rulemaking-activity)

Tribal Consent & Consultation Policy (/tribal-consent-consultation-policy)

**Serve The People**

**Economic Justice & Consumer Protection**

Safeguarding Consumers (/safeguarding-consumers)

Antitrust/Unfair Trade Practices (/antitrustunfair-trade-practices)

Medicaid Fraud Control (/medicaid-fraud)

Lemon Law (/lemon-law-0)

Protecting Ratepayers - Public Counsel (/utilities-regulated)

Protecting Youth (/protecting-youth)

Protecting Seniors (/protecting-seniors)

**Social Justice & Civil Rights**

Civil Rights Division (/wing-luke-civil-rights-division)

Environmental Protection Division (/environmental-protection-division)

Hanford Litigation (/hanford)

Veteran and Military Resources (/veteran-and-military-resources)

Campaign Finance Law Enforcement (/enforcement-campaign-finance-laws)

**Criminal Justice & Public Safety**

Criminal Justice (/criminal-justice)

Sexually Violent Predators (/sexually-violent-predators)

Homicide Investigation Tracking System (HITS) (/homicide-investigation-tracking-system-hits)

Financial Crimes Unit (/financial-crimes-unit)

Firearms (/firearms)

**Initiatives**

Open Government (/open-government)

Wing Luke Civil Rights Division (/wing-luke-civil-rights-division)

Environmental Justice (/environmental-justice-initiative)

Human Trafficking (/human-trafficking)

Sexual Assault Kit Initiative (/sexual-assault-kit-initiative)

Combating Dark Money/Campaign Finance Unit (/enforcement-campaign-finance-laws)

Opioid Epidemic (/2017-opioid-summit)

Veterans Advocacy (/veteran-and-military-resources)

2022 Legislative Agenda (/2022-legislative-agenda)

Student Loans/Debt Adjustment and Collection (/studentloanresources)

Immigration Services Fraud (/immigration-services)

Vulnerable Adult Abuse (/vulnerable-adult-abuse)

Robocall and Telemarketing Scams (/robocall-and-telemarketing-scams)

Federal Litigation (/federal-litigation)

**Resources**

Consumer Scam Alerts (/scam-alerts)

File a Complaint (/file-complaint)

Executive Ethics Board (http://www.ethics.wa.gov/index.htm)

Sign up for Newsletter Emails (http://atg.us10.list-manage1.com/subscribe?u=28a64d02479d9d79402df2b20&id=ae281aef5b)

Avoiding Unconstitutional Taking (/avoiding-unconstitutional-takings-private-property)

Publications & Reports (/publications-reports)

Student Loan Survival Guide (/studentloanresources)

Veteran and Military Resources (/veteran-and-military-resources)

Civil Rights Resource Guide (/wing-luke-civil-rights-division)

Immigration Guidance (/immigrationguidance)

Open Government Resource Manual (/open-government-resource-manual)

Data Breach Report (https://agportal-s3bucket.s3.amazonaws.com/2021%20Data%20Breach%20Report.pdf)

Keep Washington Working Act FAQ for Law Enforcement (/keep-washington-working-act-faq-law-enforcement)

**AG Opinions**

Opinions by Year (/ago-opinions-year)

Opinions by Topic (/ago-opinion/glossary)

Opinion Requests (/pending-attorney-generals-opinions)

**Employment**

Experience Excellence (/experience-excellence)

Employee Testimonials (/employee-testimonials)

Attorneys & Law Clerks (/attorneys-and-law-clerk-careers)

General Employment Opportunities (/general-employment-opportunities)

Exempt Positions (/exempt-positions)

WA Management Service (/wa-management-service-exempts)

Volunteer and Internship Opportunities (/volunteer-and-internship-opportunities)

Diversity (/diversity)

Office Locations (/office-locations)

Contact Us (/contactus.aspx)

Privacy Notice (/privacy-notice)

Accessibility Policy (/ago-accessibility-policy)

Employee Resources (/employee-resources)

Rulemaking Activity (/rulemaking-activity)

Sitemap (/sitemap)

Access Washington (http://access.wa.gov)

Contact Webmaster (https://fortress.wa.gov/atg/formhandler/ago/WebmasterContactForm.aspx)



(/employee-resources-page)1125 Washington St SE • PO Box 40100 • Olympia, WA 98504 • (360) 753-6200
OFFICE HOURS: 8:00 AM - 5:00 PM Monday - Friday  Closed Weekends & State Holidays